IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-10926-TMD |
| | § | |
| | § | |
| Debtor. | § | |

**JOINDER OF MICHAEL OLDNER, TRUSTEE OF THE ORLY GENGER
1993 TRUST, TO JUDGMENT CREDITOR SAGI GENGER'S MOTION
TO DISMISS BANKRUPTCY CASE OR, ALTERNATIVELY, TO
TRANSFER VENUE, AND MEMORANDUM OF LAW IN SUPPORT**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE

Michael Oldner, in his capacity as the trustee ("Trust Trustee") of The Orly Genger 1993 Trust (the "Trust"), a nominal pre-petition creditor of the Debtor ("Orly" or the "Debtor") in the above-captioned, putative Chapter 7 case ("Bankruptcy Case"), and, pursuant to 11 U.S.C. §§ 305(a) and 707, and Rules 1014 and 1017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), files this Joinder ("Joinder") to the *Motion to Dismiss this Chapter 7 Bankruptcy Case or, Alternatively, to Transfer Venue, and Memorandum of Law in Support* [Docket No. 32] (the "Motion") filed by Sagi Genger ("Sagi"), and in support would respectfully show the Court as follows:

## I.    SUMMARY

1.    The Trust Trustee joins in the Motion's request that this Court dismiss this Bankruptcy Case for cause, or transfer venue to the Southern District of New York. This Bankruptcy Case is merely the latest stage of an acrimonious domestic dispute between two sides of the Genger family over the proceeds of equity interests in a business named Trans-Resources, Inc. ("TRI"). This dispute spans well over a decade and includes a dizzying array of litigation proceedings, all pending in New York courts or previously resolved in New York and Delaware

1

courts.

2.      The Trust occupies a unique and critical position relative to the vast litigation involving the Debtor and her family, the estate's potential interests therein, and related considerations supporting dismissal or transfer of this case: **The holder of the TRI interests at relevant times, to the extent that such interests relate to the Debtor, was the Trust**.

3.      The relevant, material facts are well-established through numerous prior opinions and decisions by multiple courts.[1] The copious proceedings produced by the Genger family's litigation disputes clearly establish that this Bankruptcy Case was conceived by the Debtor and her insiders for the sole purpose of advancing a desperate and textbook forum shopping effort to frustrate the valid judgments and legal rights of the Debtors' own family.

4.      In addition, the Debtor and her cohorts have since struck a proposed compromise with the putative chapter 7 trustee ("Settlement Agreement") that confirms that this case is nothing more than an effort to improperly solicit this Court to adjudicate entirely state law claims and causes of action that remain pending before these prior and pending courts, relating to a broader subject matter (i.e., the TRI dispute) that these courts have been tackling for more than a decade.  That Settlement Agreement requires the chapter 7 trustee to "take all necessary steps to remove and transfer" multiple litigation cases pending in New York state courts, including the chapter 7 trustee's incredibly perplexing agreement to attempt to remove, sever and transfer a previously dismissed action.  Such an agreement is wholly improper and fundamentally flawed in the face of well-established law, including but not limited to broad and compelling doctrines of abstention, and proves that the Bankruptcy Case is intended for improper purposes.

5.      Indeed, in that certain Civil Action No. 109749/09, pending before the New York

---

[1] These facts are recently summarized by the Southern District of New York.  *Genger v. Genger*, 2018 U.S. Dist. LEXIS 126958 (S.D.N.Y. 2018); *Genger v. Genger*, 76 F. Supp. 3d 488 (S.D.N.Y. 2015).

Supreme Court for New York County (the "Dismissed Action"), the Debtor and her insiders managed to cajole the chapter 7 trustee to misuse his authority – and in the process destroy his credibility – solely in order to make a litigation "Hail Mary" attempt to resurrect claims under **a fully dismissed case**, in which **the estate could have no possible interest**, but for the benefit of the Debtors' insiders.  Through the Debtors' insider law firm (and without a prior application disclosing the engagement or proposed settlement to this Court), the chapter 7 trustee intervened to argue that a claim asserted by the Debtor **in her capacity as the beneficiary of the Trust**[2], should be revived and severed under the chapter 7 trustee's authority, so that it could be transferred to this Court.  On October 4, 2019, the presiding New York Supreme Court flatly rejected this attempt because prior rulings fully dismissed all such claims.

6.    This case is intended solely for the inappropriate purposes of providing the Debtors' insiders a "do-over" on claims that they have rightfully lost, and shielding them from the avoidance and recovery of millions of dollars in fraudulent transfers for the benefit of the Debtor's true estate. This Court should decline the Debtor's and her conspirators' desperate invitations to tread upon the integrity of its sister State and Federal courts who have already taken custody of the parties' disputes and conducted abundant proceedings thereon.

## II.    BACKGROUND

7.    On July 12, 2019, the Debtor filed her voluntary petition under chapter 7 of Title 11 of the United States Code, §§ 101 *et seq*. (as amended, the "Bankruptcy Code"). Ron Satija has been appointed as (interim) chapter 7 trustee ("Chapter 7 Trustee").

## A.    The Genger Divorce and Initial Litigation Relating to TRI Shares

8.    The longstanding saga of the Genger family and their copious litigation history

---

[2] As discussed below, well-established, elementary bankruptcy jurisprudence provides that a debtor's beneficial interests in a spendthrift trust are not within the bankruptcy estate.

3

begins with the divorce of the Debtor's father (Arie Genger, hereinafter "Arie"), from the Debtor's mother (Dalia Genger, hereinafter "Dalia"). That divorce produced a separation agreement in 2004 under which the Genger family's extremely valuable interests in TRI were allocated among Arie, the Trust – established primarily for the benefit of the Debtor – and a separate trust established for the benefit of the Debtors' brother, Sagi ("Sagi Trust" and collectively, the "Trusts"). *Genger v. Genger*, 76 F.Supp.3d. 488, 492-493 (S.D.N.Y. 2015), *aff'd Genger v. Genger*, 771 Fed.Appx. 99, 99 (2d. Cir. 2019).[3]

9.      The Genger family's ownership in TRI was initially held through TPR Investment Associates, Inc. ("TPR"). In 2001, a group known as the "Trump Group" (no relation to the President) purchased a minority stake in TRI. *Id*. at 184.

10.     Under their October 2004 divorce settlement, Arie and Dalia agreed to transfer TPR's shares of TRI out of TPR to Arie and the two Trusts. *Id*. at 185. As the Southern District of New York later found, in exchange for Dalia's corresponding agreement to this arrangement, Sagi agreed, pursuant to an integrated agreement, to financially support his mother, on demand, up the value attributable to the TRI shares gifted to the Trusts, and the Debtor agreed to indemnify Sagi for 50% of such payments. *Genger*, 76 F.Supp.3d. at 492-493.

11.     In 2008, the Trump Group brought suit in the Southern District of New York, asserting that Arie's divorce settlement violated TRI's Stockholders' Agreement and the Trump Group's right of first refusal thereunder, such that the 2004 transfers were void and the Trump Group was entitled to acquire the shares from TPR. *Genger*, 26 A.3d at 185.

12.     At Arie's request, the foregoing action was stayed in favor of a Delaware Chancery Court action to which Arie and the Trumps, but not the Trust, were parties. *See*

---

[3] TRI is a holding company whose principal asset is a fertilizer business with manufacturing facilities in Israel. *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 183 (Del. 2011).

*Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F.Supp.2d. 292, 297 (S.D.N.Y. 2012).

13.    In 2011, the Delaware Supreme Court affirmed a 2010 Chancery Court opinion finding that: (i) Arie had misrepresented to his wife TPR's ability to transfer its interests in TRI; (ii) the 2004 transfers were void as to record ownership; and (iii) Arie's conduct was perfidious and included the intentional spoliation of evidence "in the dead of night" (for which he was sanctioned $4 million).  *See* TR Investors, LLC v. Genger, 2009 Del.Ch.LEXIS 203, *3 (Del.Ch. 2009); *TR Investors, LLC v. Genger*, 2013 Del.Ch.LEXIS 48, *14, *23-24  (Del.Ch. 2013); *Genger*, 26 A.3d at 191-192.

14.    Because, however, TPR (a necessary party) had been left off the suit, the Delaware Supreme Court held that beneficial ownership of the TRI shares could not be adjudicated in that action,  In a subsequent action naming TPR, the Delaware Chancery Court then extinguished Arie's repeated, frivolous claims to beneficial ownership of the TRI shares in question and explicitly warned him against continued re-litigation, on pain of contempt.  *TR Investors, LLC*, 2013 Del.Ch.LEXIS 48, at *7 *21, *45, *91-93.  Because, however, the Trust was not a party to that action, the Chancery Court did not determine any issue of beneficial ownership of the TRI shares that had been transferred to the Trust in 2004.

15.    While the Delaware courts continued to grapple with the parties, in 2010, the Debtor and her father filed a further proceeding in New York state court, styled *Arie Genger et al. v. Sagi Genger et al.*, N.Y.Sup.Ct. (N.Y.Cy.), No. 651089/2010 (the "2010 Action").  In the 2010 Action, Arie sought reformation of the divorce decree so as to retroactively repair his breach of contract and extinguish all rights the Trump Group have in any shares subject to the 2004 transfers.  *Glenclova Inv. Co.*, 874 F.Supp.2d. at 297.

16.    The Debtor, for her part, asserted personal claims and derivative claims expressly

and purportedly on behalf of the Trust against Dalia, Sagi, and the Trump Group seeking hundreds of millions in damages for the lost TRI shares as an alternative to declaratory relief. *See Third Amended Complaint,* filed September 20, 2011, 2010 Action [Docket No. 112] ("2010 Action Complaint"), at ¶¶ 190-241, 247-264. The New York Supreme Court subsequently held that the Debtor had legal standing to bring claims on the Trust's behalf. *See Genger v. Genger*, 38 Misc.3d 1213(A), *6 (N.Y.Sup.Ct., N.Y.Cy. 2013).

17.     In support of her effort to control the Trust, the Debtor also separately applied before New York Surrogate's Court to remove Dalia as Trust Trustee and appoint a successor trustee or "special trustee" to investigate alleged wrongdoing as Trust Trustee.  However, that Court rejected these claims entirely. *See Decision*, entered January 2, 2009 ("Trustee Affirmation Ruling"), *In re the Orly Genger 1993 Trust*, No. 0017/2008 (N.Y.Sur.Ct. N.Y.Cy. 2009).  In the Trustee Affirmation Ruling, the Surrogate's Court traced the history of the trustee appointments under the Trust, determined that Dalia was duly appointed and acting as Trust Trustee, found that the Debtor's request to remove Dalia as Trust Trustee was based on "What appears to a material misstatement" and otherwise vague and speculative allegations, and denied the Debtor's requests.  A true and correct copy of the Trustee Affirmation Ruling is attached hereto as **Exhibit "A"** and incorporated herein by reference.

18.     Subsequently, after the New York Supreme Court exonerated her of all wrong doing, Dalia appointed Mr. Oldner as successor Trust Trustee, which the Trust Trustee accepted, in June 2019.  The Trust Trustee is a retired bond trader.

19.     Prior to that time, however, and undaunted by the Trustee Affirmation Ruling, the Debtor continued to attempt to wrest control of the Trust.  On August 24, 2009, both individually and expressly in a derivative capacity on behalf of the Trust, the Debtor sued Dalia, a prior

6

trustee of the Trust, Sagi and certain Genger family entities in New York Supreme Court, under

Cause No. 109749/2009 (as defined above, the since Dismissed Action) alleging as the "Nature

of the Action" that the defendants, "engaged in a fraud and conspiracy designed to completely

loot the Orly Genger 1993 Trust of its value…" *See Second Amended Verified Complaint*, filed

August 11, 2010 ("Dismissed Complaint"), Dismissed Action [Docket No. 83], at ¶ 1.

Notwithstanding the pendency of Dalia's position as Trust Trustee, the Debtor was granted

standing to assert derivative claims on behalf of the Trust in the Dismissed Action. *See Genger*

*v. Genger*, 39 Misc.3d 1235(A), *14 (N.Y.Sup.Ct. N.Y.Cy. 2013).

20.    Following a trial, the presiding Court entered its Decision dismissing the entire

action due to the Debtor's failure to establish any damages on account of her claims.  Critically,

the Court, in rejecting the Debtor's attempt to include as damages the alleged value of the TRI

shares transferred to the Trust in 2004, held that it would allow the Debtor to obtain a double

recovery, **because prior courts, including the Second Circuit Court of Appeals, had already**

**determined that the Debtor had "monetized" her beneficial interest in these shares through**

**the 2013 Settlement**.  Decision, entered March 25, 2019, Dismissed Action [Docket No. 1594]

("March 25, 2019 Decision"), at p. 2 (emphasis supplied).  A true and correct copy of the March

25, 2019 Decision is attached hereto as **Exhibit "B"** and incorporated herein by reference.  *See*

*also Genger v. Genger*, 76 F.Supp.3d 488, 501 (S.D.N.Y. 2015) ("Orly monetized her beneficial

interest in the [TRI] shares for $32.3 million."), *aff'd,* 663 Fed. Appx. 44 (2d. Cir. 2016).

**B.    The 2013 Settlement**

21.    Returning to the 2010 Action, the Debtor therein was expressly asserting

**derivative claims on behalf of the Trust**.  A true and correct copy of the 2010 Action

Complaint is attached hereto as **Exhibit "C"** and incorporated herein by reference.

22.    Promptly following the Trump Group's request to the Delaware Chancery Court

7

on June 14, 2013 (No. 3994-CS) to Arie in contempt of court for prosecuting the 2010 Action, and the Chancery Court's indication that it would do so absent Arie's immediate withdrawal of the 2010 Action, Arie and the Debtor settled with the Trump Group (the "2013 Settlement"). Thereunder, the Trump Group paid $32.3 million, comprised of $17.3 million in cash and two promissory notes of $7.5 million each, in exchange for the resolution of the Trump Group's ownership of the TRI shares that had been transferred to the Trust in 2004, and the Debtor's corresponding release of all of her related, personal claims **as beneficiary of the Trust**.  A true and correct copy of the 2013 Settlement is attached hereto as **Exhibit "D"** and incorporated herein by reference.

23.     In structuring this settlement, the Debtor, **in her capacity as a derivative claimant purportedly on behalf of the Trust**, conspired with her father, her (also extremely wealthy) husband Eric Herschman, and their insiders in a fraudulent effort to frustrate her mother's trusteeship and her brother's claims.  They did so by diverting the entirety of these settlement proceeds of the Trust's claims relating to its interests in TRI to these conspirators while saddling the Debtor's estate with millions of dollars in fraudulent claims.

24.     Specifically, the Debtor directed that the $17.3 million in cash be funded to her counsel and that counsel immediately wire the proceeds to the purported "Orly Genger Litigation Trust", a sham trust established for the repayment of Arie's creditors (*i.e.*, David and Arnold Broser, the "Brosers").  *See* Motion, at ¶¶ 13.  The Brosers are business associates of Arie's who are also signatories to the 2013 Settlement due merely to a release of claims against them, but the Brosers had never asserted any claim against any member of the Trump Group.  *See also* 2013 Settlement, at § 4, detailing relevant claims to be dismissed).  By the Brosers' own admission, the Brosers and other beneficiaries of the Genger Litigation Trust are, or were, Arie's creditors,

8

and not the Debtor's. They certainly have never been creditors of the Trust's. Therefore, the purpose and result of this "Orly Genger Litigation Trust" were merely to attempt to redirect the assets of the Trust (as well as any proceeds of property of the Debtor's estate) to Arie and his creditors.

25.     In furtherance of this fraudulent scheme, the Motion details the Debtor's diversion of the $15 million in unmatured notes, by pledging them as security to secure millions of dollars in false liabilities to, of all people, her father and husband. *See* Motion, at ¶¶13-14, 17-25.

26.     Incredibly, the Debtor fails to list either of these unmatured notes in her bankruptcy schedules as potential assets. Laughably, the fraudulent transferees now contend that neither the Debtor nor the Trust have ever had any interest in the proceeds of the 2013 Settlement that produced $32.3 million dollars based on the value of the TRI shares that were owned by the Trust. Only the Trust, and through the Trust, the Debtor as beneficiary, had or could have asserted any claims to such interests at the time of the settlement. A simple review of the 2013 Settlement and the litigation claims proves this.

27.     Indeed, the 2013 Settlement goes on to expressly affirm that the purpose was to quiet the Trump Group's title to "the shares of Trans-Resources purportedly transferred by TPR in October 2004 to Arie and to the Orly Genger 1993 Trust". *Id*., at § 4. While the 2013 Settlement purports to also settle Arie's claims to shares in TRI, as recited above, Arie's claims had, by that time, been wholly and repeatedly denied and rejected by prior courts, and his contrary assertion led directly to an invitation by the Delaware Chancery Court to entertain a contempt motion. The only other two settling parties, the Brosers, never held any interests in TRI.

28.     As to the Debtor, the 2013 Settlement affirms that she agreed thereto in her

9

individual capacity, "as beneficiary of the Orly Genger 1993 Trust". *Id*., at p. 1.  Of course, it is

undisputed that the Debtor never held any shares of TRI, but rather only had, at most, a

beneficial interest indirectly / derivatively therein, through the Trust. *Id*., at § 4 ("…she,  in her

individual capacity, and as beneficiary of the Orly Genger 1993 Trust…").  However, like Arie

and Broser, she personally benefitted from a release from the Trumps under the Settlement

Agreement.

29.    This fraudulent scheme diverted and absconded with millions of dollars in Trust

assets, which transfers the Trust has the right to avoid and recover from the recipients, entirely

apart from the Debtor's estate, for the benefit of the Trust, its creditors, the Debtor herself, her

dependents and the other potential beneficiaries of the Trust. The Trust Trustee's efforts to

recover these fraudulent transfers made to nondebtor transferees for the benefit of the Trust and

its beneficiaries (who are primarily comprised of the Debtor and her daughter), renders the Trust

a nominal creditor of the Debtor insofar as may be necessary to recover the proceeds of the 2013

Settlement that constitutes property of the Trust, and to the limited extent that she is a necessary

party in recovering amounts from third parties.  The 2013 Settlement proceeds should be

recovered by the Trust and preserved beyond the reach of the Debtor's estate and its creditors.

**C.    The Trust's and Sagi's Attempts to Avoid and Recover the Fraudulent Transfers**

30.    As a result of the foregoing fraudulent scheme, shortly prior to the Petition Date,

in June 2019, Recovery Effort, Inc. ("REI"), a wholly owned subsidiary of the Trust to which the

Trust assigned its rights in connection with the 2013 Settlement, brought suit in the Southern

District of New York, styled *Manhattan Safety Maine, Inc. & Recovery Effort, Inc. v. Michael*

*Bowen, et al.*, Civil Action No. 1:19-cv-5642 (S.D.N.Y. 2019) (the "Trust Avoidance Action"),

in order to recover the 2013 Settlement proceeds that rightfully belonged to the Trust (and/or its

10

assignee REI).    The Debtor is not a defendant in the REI Action, which is directed to the

transferees of her fraudulent transfers.

31.    Concurrently and also prior to the Petition Date, Sagi also sought to pursue and

recover those same 2013 Settlement proceeds assets as a judgment creditor in that certain

proceeding styled *Dalia Genger v. Sagi Genger v. Orly Genger*, Civil Action No. 1:17-cv-8181

(S.D.N.Y. 2017) ("Sagi Avoidance Action").  Following the filing of a Motion on June 11, 2019,

to compel certain of the recipients of the Debtor's fraudulent transfers to turn over the proceeds

of their fraudulent transfers, these parties sought and obtained an extension of the deadline to

respond, and instead, filed notice of the Debtor's intervening bankruptcy filing.  *See* Sagi

Avoidance Action, Docket Nos. 214, 217, 218 and 221.[4]

**D.    Post-petition Background**

32.    On September 16, 2019, Herschman's law firm, Kasowitz Benson Torres, LLP

("Kasowitz"), appeared in the previously Dismissed Action, cloaked with the Chapter 7

Trustee's authority, for the purpose of attempting to resurrect a Cause of Action No. 4 that had

been previously dismissed by the New York Supreme Court, expressly intending to remove and

transfer that litigation to this Court for re-trial.    A true and correct copy of the Chapter 7

Trustee's Memorandum in support of his Motion to Reargue and Sever, filed in the Dismissed

Action, is attached hereto as **Exhibit "E"** and incorporated herein by reference.

33.    Cause of Action No. 4 formerly asserted in the Dismissed Action is a claim for

fraud by the Debtor against Dalia.  Dismissed Complaint, at p. 44.  That count specifically pled

that: (i) Dalia conspired in bad faith to enforce a note owed by D&K Limited Partnership, a

Genger family entity ("D&K LP"); (ii) Dalia misrepresented that she, "never intended to protect

---

[4] While REI and Sagi have somewhat different positions on ownership of the 2013 settlement proceeds, these parties
and the Trust have agreed under an intercreditor agreement to share in any recovery, rather than expend limited
resources competing with one another for the same funds.

either **the Orly Trust's** interest in D&K's Pledged Shares of the **Orly Trust's TRI Shares**"; (iii) Dalia failed to inform the Debtor of an agreement "endangering **the Orly Trust's ownership interest in TRI**"; (iv) **as Trust Trustee**, Dalia had a fiduciary duty to inform the Debtor about the Trust's affairs; and (v) the Debtor has suffered damages comprised of the "total loss of **the Orly Trust's interest in TPR**, **the Orly Trust's potential liability** for the intentionally manufactured deficiency under the Note, a possible further foreclosure on **the Orly Trust's TRI Shares**…." and attorneys' fees.  Dismissed Complaint, at ¶¶ 133-143 (emphasis supplied).

34.    A review of the Dismissed Complaint should have made it clear and obvious to the Chapter 7 Trustee that these claims were exclusively comprised of claims the Debtor asserted in her capacity **as a beneficiary of the Trust**; in other words, <u>**derivative claims**</u>.

35.    Of course, any claim asserted by the Debtor on behalf of the Trust or for damages suffered proximately by (or through) the Trust is a derivative claim that actually belongs to the Trust.  *Yudell v. Gilbert*, 99 A.D.3d 108, 113 (N.Y.Sup.Ct. N.Y.Cy. 2012).  The same is true of claims asserted by the Debtor for damages suffered by D&K LP.  The Debtor, in fact, has never held any relevant interests in D&K LP, but rather, her nexus to that entity is once again through the Trust, which holds 48% of the interests in D&K (with the Sagi Trust holding 48% and D&K GP, D&K's general partner, holding the remaining 4%.  D&K GP is wholly owned by Dalia and Sagi, and therefore, the Debtor has no interest in D&K other than indirectly, as a beneficiary of the Trust).  Dismissed Complaint, at ¶¶ 8-11.

36.    Not surprisingly, the Chapter 7 Trustee was in no hurry to disclose these activities to the Court and parties in interest contemporaneously with his authorization for Kasowitz to use his authority to attempt to assert a previously dismissed claim that cannot belong to the estate.

12

37.      Predictably, the Chapter 7 Trustee's improper effort, apparently without having duly investigated the Dismissed Action or obtained this Court's prior authorization, was a complete and utter failure.  On October 4, 2019, the presiding New York Supreme Court entered its order flatly rejecting the Chapter 7 Trustee's rehearing motion and holding, once again, that the entire case has been dismissed with no award of damages on account of the Debtor's alleged claims against Dalia and/or Sagi.  A true and correct copy of this Decision and Order, entered October 4, 2019, is attached hereto as **Exhibit "F"** and incorporated herein by reference.

38.      It was not until Sagi filed a Motion to Show Cause to bring to this Court's attention the Chapter 7 Trustee's engagement of a clearly conflicted law firm [*see* Docket No. 42], that the Chapter 7 Trustee filed his Motion for this Court's authorization for him to proceed with his proposed Settlement Agreement, on September 27, 2019 [Docket No. 52] ("9019 Motion").  Under the 9019 Motion, the Chapter 7 Trustee is obligated to:

> take all necessary steps to remove and transfer to the Bankruptcy Court (i) the action captioned *In the matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 0017/2008 (Anderson, J.), (ii) the action captioned *In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees, to Turnover Property of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 2008-0017/E, and (iii) the fraud claim against Dalia Genger ("Dalia") that Orly has asserted in the action captioned *Orly Genger, etc. v. Dalia Genger, et al.*, New York County Supreme Court Index No. 109749/09 (Jaffe, J.), with respect to which KBT has already been authorized by the Trustee to make a motion to sever that claim from the other claims in that proceeding to facilitate the removal and transfer thereof. In the event severance of the fraud claim against Dalia not granted by the New York court, the Trustee will take all necessary steps to remove and transfer the entirety of the action to the Bankruptcy Court…

Settlement Agreement, at § 2.

39.      These three proceedings are clearly matters as to which mandatory (and permissive) abstention apply, or at least that would be the case with respect to the Dismissed

Action (the third proceeding listed above), had the Debtor's "claims" not already predictably, repeatedly, and spectacularly failed.  *See* 28 U.S.C. § 1334(c)(2).

## III.    ARGUMENTS AND AUTHORITIES SUPPORTING RELIEF

**A.    Statutory Predicates**

40.    The Trust joins in the Motion's passages regarding the authority of Bankruptcy Courts to dismiss chapter 7 bankruptcy cases for cause.  *See* Motion at ¶¶ 33-40; 11 U.S.C. § 707(a); *In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) ("This circuit joins those courts that have held a debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal "for cause," even if the bad faith conduct is arguably encompassed by other provisions of the Code."). As the Fifth Circuit Court of Appeals has held: "[C]ause is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process....This can include prepetition bad-faith conduct…postpetition bad faith conduct, or petitions that simply serve no legitimate bankruptcy purpose…" *Id.* at 370 (citations and quotations omitted).

41.    As set forth in the Motion, there are two inquiries that are relevant to the issue of good faith: "'(1) whether the petition serves a valid bankruptcy purpose' and '(2) whether the petition is filed merely to obtain a tactical litigation advantage.'" *In re 15375 Mem'l Corp.*, 589 F.3d 605, 618 (3d. Cir. 2009) (emphasis added, citations omitted).

42.    Critically, where a bankruptcy case may be filed as a pure litigation tactic has particular significance in bankruptcy, given that the Bankruptcy Code expressly incorporates abstention considerations into its bases for dismissal. *See* 11 U.S.C. § 305(a)(1) (the Court "may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – the interests of creditors and the debtor would be better served by such dismissal or suspension."). Dismissal under 11 U.S.C. § 305(a)(1) is appropriate in instances where "the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." *In re*

14

*Amc Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009). "Courts generally abstain in two-

party disputes where relief is available in a non-bankruptcy forum." *Id.* at 488.

43.    As this Court itself stated in *In re Abacus Broadcasting Corp.*, 154 B.R. 682

(Bankr. W.D. Tex. 1993):

> Then there is the issue of forum shopping….How much deference should be
> given to a debtor's concern that it get what it perceives to be a "debtor's judge?"
> Whenever a creditor raises the venue question, none at all. Forum shopping has
> never been favored by federal courts, and courts are quick to discern the evil in all
> its disguises. In bankruptcy, too often the tactic is masked by pious
> pronouncements about the debtor's "right" to select the most advantageous of
> several possible forums, in order to advance the prospects for reorganization.
> That rationale, however, should in the usual instance, be taken with several grains
> of salt. Too many corporations with familiar household names are operating in
> bankruptcy under the name of some obscure subsidiary whose venue happens to
> coincide with either the debtor's or the debtor's lawyers' perception of the most
> favorable judicial forum in which to operate. This tactic is not simply unfair to the
> creditors of these estates. It is also unfair to the judges.

*Id.*, at 686-687.

44.    *See also In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 169 (Bankr. S.D. Tex.

1989) (Court dismissed bankruptcy case where "the bankruptcy filing had been used as a

litigation tactic in what is essentially a two-party dispute….[u]se of the bankruptcy process as a

litigation tactic . . . constitute[ed] a lack of good faith in filing which warrants dismissal."); *In re*

*First Financial Enterprises, Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989) ("Abstention is

appropriate 'in a case in which an attempt is made to circumvent the Bankruptcy Code by doing

indirectly what cannot be done directly, such as . . . the use of a [bankruptcy] case purely as a

litigation strategy.'"); *In re Forest Hill Funeral Home & Mem. Park - East, LLC*, 364 B.R. 808,

810 (Bankr. E.D. Okla. 2007) (where debtor had engaged in pre-petition misconduct and filed

case to prevent state proceedings, dismissal and abstention were appropriate).

45.    Closely related to issues of abstention are matters of permissive transfers of venue

of bankruptcy cases.  Even where venue is proper, a court may nevertheless transfer a case, "in the interest of justice or for convenience of the parties." 28 U.S.C. § 1412.  *See also* Fed. R. Bankr. P. 1014(a)(1); *In re Innovative Commc'n Co., LLC*, 358 B.R. 120, 127-28 (Bankr. D. Del. 2006) (where the U.S. Virgin Islands has a public interest in the case, and the debtor's creditors, regulators, employees, shareholders, operating subsidiaries, principal place of business, and assets are located in the Virgin Islands, the case should be transferred from Delaware despite the debtor's incorporation in Delaware).

46.    "The 'interest of justice' component of § 1412 is a broad and flexible standard applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness...."  *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d. Cir. 1990).  In consideration of the second clause of this statute – the convenience of the parties – courts typically engage in a factor-based analysis that contemplates:

      a.      The proximity of creditors of every kind to the Court;

      b.      The proximity of the bankrupt (debtor) to the Court;

      c.      The proximity of the witnesses and proof necessary to the administration of the estate and availability of subpoena power for unwilling witnesses;

      d.      The location of the assets;

      e.      The enforceability of judgments and economic administration of the estate;

      f.      The ability to receive a fair trial;

      g.      The state's interest in having local controversies decided within its borders, by those familiar with its law; and

      h.      The necessity for ancillary administration if bankruptcy [liquidation] should result.

16

*See In re LaGuardia Associates, L.P.*, 316 B.R. 832, 837 (Bankr. E.D. Pa. 2004) (citations omitted);

*Matter of Continental Airlines, Inc.*, 133 B.R. 585, 587-88 (Bankr. D. Del. 1991) (simultaneously

addressing interests of justice and convenience of the parties as related considerations).

**B.     The Circumstances of this Case Clearly Demonstrate it Was Filed as a Litigation Tactic**

47.     The foregoing background should make it painfully obvious that this Bankruptcy

Case is no more than a litigation strategy in what equates to a two-party dispute between the two

sides of the Genger family.  The dispute has been ongoing for more than ten (10) years, during

which numerous cases and disputes asserted by the Genger family parties have been resolved by

at least seven (7) different courts, five of them presiding in New York over New York law: the

Supreme Court of New York, New York Surrogate's Court, New York Appellate Division, the

Southern District of New York, and the Second Circuit Court of Appeals.

48.     The timing of the case demonstrates that it was initiated specifically in order to

protect insider transferees from an impending determination by the Southern District of New

York as to their obligations to surrender proceeds of the 2013 Settlement.  The Trust recognizes

that it is exceedingly common that a litigation exigency faced by a potential debtor often

precipitates the filing of a voluntary bankruptcy petition.  However, it is simply and flatly

outrageous that the Debtor would file such a case solely in order to alleviate an exigency faced

only by fraudulent transferees of the estate.

49.     The results of these prior proceedings also clearly demonstrate forum shopping

efforts by the Debtor.  Therein, Sagi and Dalia have successfully obtained judgments against the

Debtor and her father for millions in domestic support and interrelated – if not integrated –

obligations, as well as multiple rulings providing them access to critical discoverable information

which the Debtor's cohorts have vehemently opposed in order to conceal their fraudulent

schemes. In contrast, the Debtor's and her father's affirmative claims before these courts,

including but not limited to repeated claims seeking to wrest control over the Trust, have consistently imploded in the face of strenuous rejections by the presiding courts.

50.     There can be no doubt this case was NOT filed in order to address any genuine financial distress.  While the Debtor contends that she live in Texas, there is at least no dispute that she spends substantial of her time traveling internationally to and from Israel.  She owns one half of a luxury penthouse condominium located at the top of the "W" Hotel in downtown Austin.  Bankruptcy Schedule A/B [Docket No. 20], at No. 1.1.  In 2013, she settled her claims to beneficial interests in her Trust's ownership of what proved to be $32.3 million in proceeds that have simply evaporated in the hands of her attorneys, her husband, father and his business partners.  Her husband is, upon information and belief, extremely wealthy.   Upon information and belief, the Debtor and her husband, including through additional trusts, beneficially own multiple homes in New York, New Jersey, Florida, Texas, and Israel.  *See Genger v. Genger*, Civil Action No. 1:19-mc-00366-LY (W.D. Tex.), Docket No. 11 (pp. 5-6).

51.     The Debtor discloses that within the past four (4) years preceding the Petition Date, she held interests in at least ten (10) different investment funds, real estate funds, and other businesses, but only held interests in two such entities as of the Petition Date (both of which she lists as valueless).  Bankruptcy Schedule A/B, at No. 19; Statement of Financial Affairs [Docket No. 20], at No. 27.  These too, have evaporated.  She discloses that she transferred her interests in two of these entities to another family trust, but what happened with her interests in the others is not disclosed. Statement of Financial Affairs, at No. 19.  Critically, other than her insiders, family members and their related entities, the Debtor has **no pre-petition debt**, save for a $750 claim allegedly held by a bonding company.  She obviously can afford to pay her debts generally, having paid $75,000.00 to her bankruptcy counsel for a Chapter 7 bankruptcy filing. Statement of Financial Affairs [Docket No. 20], at No. 16.

18

52.      Here, *In re 801 S. Wells St. Ltd. Pshp.*, 192 B.R. 718 (Bankr. N.D. Ill. 1996) is instructive.  As in the case at bar, the Court there addressed a debtor who had no bona fide non-insider debt, and instead, the bankruptcy was the result of litigation contested among insiders of the debtor over the sole property at issue in the bankruptcy but over which the debtor and her estate could have no interest.  *Id*., at 425.  That case was dismissed pursuant to principals of abstention and so too should this one be (if not transferred).

53.      After the Motion was filed Sagi discovered that the Debtor apparently maintains an undisclosed bank account in her own name that exists in Israel, and informed the Debtor's counsel on or about September 17, 2019.  In response, the Debtor commenced litigation in Israel seeking to pressure the investigator who discovered this information.  That litigation complaint refers to the Debtor's account at Bank Hapoalim.

**C.      The Chapter 7 Trustee's Proposed Settlement Agreement Further Confirms That This Case was Commenced for an Improper Purpose**

54.      As noted above, when the Motion was filed, the movant did not have the benefit of the Chapter 7 Trustee's subsequent 9019 Motion and proposed Settlement Agreement.

55.      The terms of the proposed agreement further confirm that the Bankruptcy Case was commenced in bad faith as a forum-shopping effort. As cited above, it requires the Chapter 7 Trustee to do whatever is necessary to remove and transfer to this Court three proceedings pending in New York state court, two of which were commenced in 2008, another in 2009, and one of which is the fully and finally Dismissed Action.  100% of the claims and causes of action asserted by the parties in these litigation disputes arise under state law.

56.      To the extent not dismissed, mandatory abstention would apply to any such effort. 28 U.S.C. § 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title

11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

28 U.S.C. § 1334(c)(2)

57.    The Fifth Circuit has interpreted this statute to require five (5) elements: (i) a timely motion for mandatory abstention; (ii) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (iii) the claim is a non-core proceeding; (iv) an action has been started in state court; and (v) the action could be adjudicated timely in state court." *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 726,  (5th Cir. 2014).

58.    All five elements would be satisfied as to each of these three cases, thus demonstrating that the intention behind the Settlement Agreement is improper.

59.    The first listed matter, *In the matter of the Application of Orly Genger, as a person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No. 0017/2008 (Anderson, J.) (the "First Surrogate Court Case"), is an action that is wholly based on the Debtor's status as a beneficiary of the Trust and in which the estate can have no potential interest whatsoever.

60.    As is obvious from the very title and caption of this action, it concerns the Debtor's request **as beneficiary of the Trust**, to remove Dalia, as the then-Trust Trustee.  A review of the Debtor's operative Third Amended Petition in the First Surrogate Court Case ("Third Petition") confirms this.  A true and correct copy of the Debtor's Third Petition is attached hereto as **Exhibit "G"** and incorporated herein by reference.

61.    The Third Petition, expressly proceeds in the Debtor's capacity as beneficiary of the Trust, and expressly pleads for relief the removal of Dalia as trustee and the appointment of a proposed replacement trustee.  *See* Third Petition, at pp. 1, 31.

20

62.     Sometimes referred to as the "spendthrift trust exclusion", section 541(c)(2) of the

Bankruptcy Code excepts from property of the estate a debtor's beneficial interests in a trust that

contains valid spendthrift provisions restricting the transfer of interests.   "The United States

Supreme Court has ruled that in accordance with the plain meaning of § 541(c)(2), property is

excluded from the estate when 1) debtor has a beneficial interest in a trust, 2) there is restriction

on the transfer of such interest, and 3) the restriction is enforceable under applicable

nonbankruptcy law." *Colish v. United States (In re Colish)*, 289 B.R. 523, 539 (Bankr. E.D.N.Y.

2002) (citing and quoting *Patterson v. Shumate*, 504 U.S. 753, 757-758, 119 L. Ed. 2d 519, 112

S. Ct. 2242, (1992)).  *See also Traina v. Sewell (In re Sewell)*, 180 F.3d 707, 709, (5th Cir. 1999)

(Debtor's beneficial interest in ERISA plan containing spendthrift provision is exempted from

property of the estate under section 541(c)(2)).

63.     As indicated by the Trustee Affirmation Ruling, the Trust is a valid spendthrift

trust under New York law.  *See also In re Hilsen*, 405 B.R. 49, 55-56 (Bankr. E.D.N.Y. 2009)

(Also stating that, "Under New York law, 'all express trusts are presumed to be spendthrift

unless the settlor expressly provides otherwise.'").

64.     As a result, the Chapter 7 Trustee should know that he has no right, basis or

ability, nor any valid interest or purpose, in attempting to take control over this claim.  It is not

an asset of the estate and cannot benefit the estate.  This is also true with respect to the

underlying 2013 Settlement, and its proceeds, which is really what this bankruptcy case and the

parties' disputes are all about.  As discussed above, the plain language of that settlement and the

record of the litigation proceedings that produced it lead to the unavoidable that the Debtor's

estate has no interest in the proceeds of the settlement.  That settlement either compromised the

Trust's interests in TRI, and/or it compromised the Debtor's beneficial interests therein.

21

However, under section 541(c)(2), this is a distinction without a difference as the corpus of the Trust, and the Debtor's beneficial interests in property held by the Trust, are beyond the reach of the estate and its creditors.

65.    Mandatory abstention would clearly apply here.  The first element of a timely motion is not at issue, given that removal and transfer to this Court have not yet occurred.  There is no basis for federal jurisdiction other than section 1334 because the claim to remove Dalia, as Trust Trustee expressly proceeds under the New York Surrogate Court's Procedure Act § 711, no federal law is cited, and the Debtor expressly pled herself as a domiciliary of New York, so diversity jurisdiction cannot apply. *See* Third Petition, at ¶¶ 1, 4.

66.    A claim for removal of the Trust's trustee cannot be a core proceeding because the Debtor's beneficial interest therein is not property of the estate and the Trust has filed no claim against the estate the adjudication of which would require the resolution of this claim.  No provision of 28 U.S.C. § 157 is triggered.  In addition, while the proceeding has been pending for some time, the history of the litigation reveals numerous decisions by the Court disposing of multiple claims asserted by the parties.  Critically, even were all of the foregoing not compelling, this proceeding is also moot because Dalia is no longer Trust Trustee.  Even were Dalia still the Trustee Trustee, the factual bases pled under the Third Petition are the exact same allegations as resulted in a take-nothing judgment in the Dismissed Action, and therefore, this proceeding is precluded by doctrines of res judicata and collateral estoppel.  *Cf.* Exhs. D and H.  *See also Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d. 767 (1979); *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374, 377 (5th Cir. 1997).

**D.    If Not Dismissed This Case Should Be Transferred to the Southern District of New York**

67.    The Chapter 7 Trustee's lamentable attempt to take custody of claims that have been finally resolved, are excluded from the estate under section 541(c)(2), and which duplicate

22

prior claims that have been adjudicated and dismissed by these New York Courts also further underscores the propriety of transferring this case to the Southern District of New York, which has a close nexus to the parties' copious prior and pending litigation claims. Indeed that Court has presided over and continues to preside over substantially related disputes.

68.    As cited above, one of the factors considered under permissive transfers of venue is "the state's interest in having local controversies decided within its borders, by those familiar with its law." Here, those interests have already acutely arisen. Were the Chapter 7 Trustee possessed of greater familiarity with controlling New York law, and had hew had greater access to the parties, New York Courts and their records, he might not have made the egregious missteps he committed attempting to revive the Dismissed Action (in which the estate has no interest), at the invitation of the Debtor and her fraud conspirators. These same types of considerations underlie section 321 of the Bankruptcy Code, which requires that a chapter 7 trustee reside or have an office in the district in which the chapter 7 case is pending, or an adjacent judicial district. 11 U.S.C. § 321. *See also In re Oklahoma City Associates*, 98 B.R. 194, 199 (Bankr. E.D. Pa. 1989) ("The administration of the estate is likely to be most economically conducted where it is in close proximity to the principal asset and witnesses (including creditors)"). Here, as confirmed by the Settlement Agreement, the primary asset to which this case is directed, is comprised of substantial litigation pending in New York.

69.    In fact, all of the factors considered by the Courts weigh in favor of transferring this case to the Southern District of New York, due to the close nexus that this case bears to the Genger family's litigation disputes, of which this case comprises a mere part. Most of that prior and pending litigation exists in New York (the rest in Delaware). It is undisputed that the Genger family and their related entities are extremely familiar with New York and its courts,

23

having long resided or been domiciled in New York, and litigated there for decades. The Debtor

and her husband have interests in homes in New York and New Jersey. Therefore, the primary

asserts, the parties and the witnesses, are all located in, or have a close nexus with and

demonstrated ability to transact business and litigate in, New York. As to the enforceability of

judgments and the possibility of liquidation, from the perspective of bankruptcy and nationwide

jurisdiction, there is little difference between this Court and the Southern District of New York,

but what difference there is weighs in favor of New York, which has a much closer nexus to the

parties, the witnesses, the primary litigation assets, and the historical transactions.

70.     As to those litigation "assets", the remaining listed matter under the Chapter 7

Trustee's proposed Settlement Agreement, *In the Matter of the Petition of Dalia Genger, as*

*Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993*

*between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees, to*

*Turnover Property of the Orly Genger 1993 Trust*, New York County Surrogate's Court File No.

0017/2008 (Anderson, J.) is an entirely state law matter consolidated with the First Surrogate

Court Case (the "Surrogate Court Turnover Claims"), and is asserted by the Trust against the

Debtor and her fraudulent transferee insiders for the turnover of the 2013 Settlement proceeds

which belong to the Trust.

71.     The Trust has not sought to prosecute these claims against the Debtor

individually, on a post-petition basis, or to file any proof of claim in the Bankruptcy Case on

account of same. Yet, the Trust does have the right to sever its claims against the Debtor and to

proceed presently against nondebtors. Accordingly, this provision in the Settlement Agreement

is intended to benefit nondebtors.

72.     Mandatory abstention plainly applies to this proceeding exactly the same as it

24

applies in the First Surrogate Court Case.  It is an entirely state law matter, not yet removed to this Court, in which diversity jurisdiction does not exist and as to which the Trust has filed no claim in this case.  The Surrogate's Court, which has already resolved multiple Genger family disputes and has thereby also developed substantial familiarity with the parties and their disputes, can clearly adjudicate this matter within a reasonable time.  Finally, this is a chapter 7 case in which timing of administration is a minor consideration. *IO at Tech Ridge LP v. Hartford Fire Ins. Co. (In re IO at Tech Ridge LP)*, 2018 Bankr. LEXIS 1323 (Bankr. W.D. Tex. 2018) (explaining that this element, "…is not difficult to meet.  According to some courts, the issue is not which court can adjudicate the action faster; but whether the state court can dispose of the action timely.").

73.    Even were that not the case, the probate exception to federal jurisdiction renders improper any effort to place before this Court the liquidation of any Trust claim against the Debtor for the turnover of trust property.  *Mercer v. Bank of New York Mellon, N.A.*, 609 Fed.Appx. 677 (2015) (where New York Surrogate's [probate] Court had taken supervisory custody over the administration of a trust, causes of action sought in federal court by beneficiaries of against trustees for breach of fiduciary duty and breach of contract, were properly dismissed); *Janvey v. Hamric*, 2015 U.S. Dist. LEXIS 193158, *20 (N.D. Tex. 2015) (where request for turnover implicated res subject to the probate exception, court denied same).

74.    Of course, even if mandatory abstention and the probate exception did not apply, this Court should abstain from adjudicating any of these state law proceedings in this Chapter 7 case.  The analysis of the specific, permissive abstention factors can be left for another day, if necessary – including in the Trust's formal objection to the 9019 Motion and Settlement Agreement, as to which the Trust reserves all rights.  For now, as this Court stated in *IO at Tech*

*Ridge*:

> In reading the statute, it is apparent that Congress believed that state court matters generally belong in state court unless a strong federal interest suggests otherwise….This suit is a state court matter as there is no independent basis for federal jurisdiction. So what is the strong federal interest?....The right question is: Must the lawsuit be tried in bankruptcy court to resolve the bankruptcy case? The answer would be yes, if a plan could not be confirmed absent resolution of the lawsuit. But here the answer is no….that suit can be pursued in state court in the ordinary course of the litigation process…by a chapter 7 trustee.

*Id.*, at *8-9, *16-17.

75.      Here, given that this case was filed as a chapter 7 case, this consideration has little weight. Indeed, the District Court for the Southern District of New York has already opined that these disputes belong in New York state court. *Glenclova Inv. Co.*, 874 F.Supp.2d. at 314 ("The Court…strongly suggests that the parties agree to litigate their claims in the New York Supreme Court.").

## IV.    <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, Michael Oldner, Trustee of the Orly Genger 1993 Trust, hereby, respectfully joins for all purposes in the request by Sagi Genger for entry of an Order dismissing the Debtor's case with a two-year refiling bar or, in the alternative, transferring the case to the United States Bankruptcy Court for the Southern District of New York.

Dated: October 18, 2019

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Jay H. Ong_____
    Jay H. Ong, Esq.
    Texas Bar No. 24028756
    Colorado Tower
    303 Colorado Street, Suite 2600
    500 N. Akard Street, Suite 3800
    Austin, Texas  78701
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149

**ATTORNEYS FOR MICHAEL OLDNER, TRUSTEE OF THE ORLY GENGER 1993 TRUST**

## CERTIFICATE OF SERVICE

    I hereby certify that on this 18th day of October, 2019, I personally caused to be served a true and correct copy of the above and foregoing document, by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to all parties of interest receiving notice in this case through the CM/ECF system, and upon the party shown on the attached service matrix, via first class U.S. mail.

               _/s/ Jay H. Ong_____
                  Jay H. Ong

27

## SERVICE LIST

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701

ARIE GENGER
19111 COLLINS AVE., APT 706
SUNNY ISLES, FL 33160

ARIE GENGER
C/O DEBORAH D. WILLIAMSON
DYKEMA GOSSETT PLLC
112 EAST PECAN ST., #1800
SAN ANTONIO, TX 78205

ERIC HERSCHMANN
210 LAVACA ST., UNIT 1903
AUSTIN, TX 78701

ERIC HERSCHMANN
C/O RAYMOND BATTAGLIA
66 GRANBURG CIRCLE
SAN ANTONIO, TX 78218

IRS
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA, PA 19101

KASOWITZ, BENSON, TORRES
ATTN: DANIEL BENSON
1633 BROADWAY, 21ST FLOOR
NEW YORK, NY 10019

SAGI GENGER
C/O JOHN DELLAPORTAS
EMMT MARVIN & MARTIN
120 BROADWAY 32ND FLOOR
NEW YORK, NY 10271

SAGI GENGER
C/O SABRINA STREUSAND
STREUSAND LANDON OZBURN &
LEMMON LLP
1801 S. MOPAC EXPWY #320
AUSTIN, TX 78746

U.S. TRUSTEE
903 SAN JACINTO, SUITE 230
AUSTIN, TX 78701

ZEICHNER ELLMAN & KRAUSE
1211 AVENUE OF THE AMERICAS
40TH FLOOR
NEW YORK, NY 10036

ERIC TAUBE
WALLER LANSDEN DORTCH &
DAVIS, LLP
100 CONGRESS AVE., STE 1800
AUSTIN, TX 78701

ORLY GENGER
210 LAVACA ST., UNIT 1903
AUSTIN, TX 78701

RON SATIJA
PO BOX 660208
AUSTIN, TX 78766

ERIC J. TAUBE
WWALLER LANSDEN DORTCH &
DAVIS, LLP
100 CONGRESS AVE., SUITE 1800
AUSTIN, TX 78701

4837-3971-3186v.1 018606.00001