## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>ORLY GENGER,<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 19-13895 (JLG) |

**REPLY OF SAGI GENGER TO THE OPPOSITION BY KBT
TO MOTION TO DISQUALIFY KBT AS SPECIAL COUNSEL**

Sagi Genger ("**Sagi**"), by and through his undersigned counsel of record, hereby files this Reply to the Opposition (the "**Opposition**") of Kasowitz Benson Torres LLP ("**KBT**") to Sagi's Motion to Disqualify KBT as Special Counsel (the "**Motion**"). In support of his reply, Sagi respectfully states as follows:

**REPLY**

A.  The Opposition Was Unnecessary Because the Motion is Moot

1. Sagi originally filed the Motion to prevent the inappropriate retention by Ron Satija ("**Satija**"), the chapter 7 trustee appointed when this case was pending before the Western District of Texas Bankruptcy Court. That proposed retention was directly linked to the proposed settlement (the "**Satija Settlement Agreement**") reached among Satija, the Debtor, her spouse, her father and other parties aligned with them. Notwithstanding KBT's latest claims, there is no reason to believe that Deborah Piazza (the "**Trustee**"), the chapter 7 trustee appointed upon the transfer of the case to this District, intends to preserve the fatally-flawed Satija Settlement Agreement or to retain KBT as her special counsel. In fact, the Trustee's counsel indicated that they "were a little surprised by the filing from [KBT] as all retention issues remain in abeyance pending the Trustee's evaluation of the case."

2. Indeed, it should have been clear to all of the parties that the Satija Settlement Agreement was doomed from the comments made by Judge Davis in connection with his decision to transfer venue. In finding that the existence of that Settlement Agreement did not justify keeping the case in Texas, Judge Davis held that: "The [Satija Settlement Agreement] is only 14 pages and is mostly platitudes, very sparse description of the many facts in play here and it does not even identify, let alone discuss, the issues being settled." Exh. A at 3. (A copy of Judge Davis's November 5, 2019 Ruling is annexed hereto as Exhibit A.)

3. Thus, the Opposition was wholly unnecessary, although it is not hard to see why KBT filed it. KBT saw an opportunity to try to damage this Court's opinion of Sagi through a series of dishonest smears and false allegations, and sadly took it. Sagi now files this Reply solely to clarify some of the salient facts for the Court.

B.   <u>The Opposition Barely Addresses the Propriety of KBT's Mooted Retention But Instead Focuses on Airing Irrelevant and False or Misleading Allegations about Sagi</u>

4. Of the twenty pages of text in KBT's Opposition, at least nine are significantly or exclusively focused on making accusations that Sagi had engaged in some form of wrongdoing. These accusations are entirely false and/or misleading. Most of them are based upon context-free excerpts, cherry-picked by KBT from statements made by judges in prior cases over a decade of litigation. What the Opposition fails to mention is that each of those statements were made at preliminary stages by Courts who ultimately found for Sagi. Indeed, in transferring this case to this District, Judge Davis observed that it was "important to note … that [<u>the Debtor</u>] had, months before [filing for bankruptcy], … <u>already suffered many adverse decisions from New York Courts</u>. The inference is clear that the move to Texas in February of 2019 was at least, in part, prompted by <u>a desire</u> to file bankruptcy in Texas should it become necessary <u>to get away from the New York Courts</u>." Exh. A at 10. (Emphases added.)

5.  Incredibly, rather than acknowledge and quote from Judge Davis's findings in his November 5, 2009 transfer ruling, which was the outcome of a day-long evidentiary hearing with significant witness testimony, KBT quotes from an earlier, preliminary ruling by Judge Davis—before taking testimony—at which Judge Davis questioned whether he could "believe" the allegation that Orly was being disingenuous about her true place of residence. Just two weeks later, however, after spending a day taking evidence on the issue, Judge Davis came around to Sagi's position, concluding that: "this Debtor can and will claim residence in a location that suits her legally strategic interests."

6.  What took the federal courts mere weeks to determine, sometimes took the state courts a little longer. Although one would never know it from reading KBT's Opposition, Sagi was the winning party in each of those "adverse decisions from New York Courts" suffered by the Debtor (with KBT the losing counsel in each and every case).[1] Most significantly, less than a year ago, U.S. District Judge Forrest entered judgment in Sagi's favor in the amount of $3.2 million, none of which has yet been paid. KBT appealed to the U.S. Court of Appeals for the Second Circuit, which unanimously affirmed. *See Genger v. Genger*, 2018 WL 3632521 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x. 99 (2d. Cir. 2019).

7.  In its summary judgment ruling in Sagi's favor, District Judge Forrest found that, in 2013, the Debtor "had monetized her beneficial interest [in the shares of a family business called "TRI"] for $32.3 million." *Id.* at 2. That $32.3 million, however, appears nowhere on the Debtor's bankruptcy schedules, which list only nominal liquid assets. The story of how that $32.3 million was dissipated/encumbered is one in which KBT was intricately involved, and will likely

---

[1] The trial court has not yet had the opportunity to review and adopt the court-appointed valuation expert's findings, as KBT has declined to proceed with the case.

- 3 -

be the central focus of this bankruptcy. As Judge Davis held in his transfer ruling: "the Debtor will be required to explain what happened to 32 million dollars, and in either a fraudulent transfer suit or the hearing to consider a 9019 settlement of that suit." Exh. A at 4.

8. In its Opposition, KBT makes the bizarre, false statement that: "Sagi's 'fraudulent conveyance' claim … has been repeatedly rejected by the very federal courts Sagi cites as (somehow) proof of his claim." One can read KBT's twenty-page Opposition in vain for any such federal court "rejection," because there is none. Indeed, KBT actively prevented any federal court review of those transfers. When Sagi brought a turnover proceeding before District Judge Broderick (who succeeded to Judge Forrest), KBT procured a lengthy extension of the Debtor's response time, claiming attorney scheduling issues, and then the Debtor filed for bankruptcy shortly before KBT was due to file its response on her behalf.

9. Thus, the matter of the missing $32.3 million remains to be resolved either by this Court or the District court that is determined to be the appropriate venue. Sagi looks forward to addressing it with the Court at the appropriate juncture, with the active participation of the new chapter 7 trustee.

10. The balance of KBT's Opposition is an irrelevant and unseemly smear. The Genger family, unfortunately, has been embroiled in litigation for more than a dozen years (most of it filed by the Debtor and her father; very little of it by Sagi). In the course of those cases, the Courts have made critical comments about each member of the Genger family, Sagi included, but also complimentary ones. The most relevant such finding was by Justice E. Leo Milonas (Ret.) in a 2008 Arbitration Award: "The various submissions on the valuation of TRI/TPR have been considered and the arguments relating to them have been evaluated. **The most credible, reliable and the fairest assessment was prepared by Sagi** … and appear in his 11/25/06 and 1/6/07

Memoranda." (Emphasis added.)  <u>That is the same TRI whose shares Orly monetized for $32.3 million—the central issue in this bankruptcy.</u>

11. Since this saga began, the Debtor has brought at least half a dozen specious, vindictive suits against Sagi and other family members—all of which have come to nothing. KBT's descriptions of those suits is palpably dishonest. For example, KBT claims that: "During the damages inquest in the Fiduciary Action, the Judicial Hearing Officer … made contemporaneous findings rejecting Sagi's testimony as not credible." KBT uses the word "contemporaneous" here to cover up the fact that, at the end of the case, after Judicial Hearing Officer Gammerman had heard *all of Sagi's testimony*, he adopted Sagi's position in full, finding that: "It's argued by Sagi that no damages resulted from the [alleged] breach of fiduciary duty, however Orly seeks an award of $85 million in damages. …  I find that … no damages were suffered." The state court then adopted this finding in full, entering judgment in Sagi's favor on Orly's Complaint. *See Genger v. Genger*, 2019 WL 1330905 (N.Y. Sup. Ct. Mar. 25, 2019)..

12. Strangely, KBT finds no room in its twenty-page Opposition to inform the Court that Sagi ultimately prevailed on the merits of the Debtor's so-called "breach of fiduciary duty" suit. Space apparently was also lacking to tell the Court what happened in the Debtor's so-called "fraud" suit. That suit involved a transaction whereby Sagi, as a favor to his sister, agreed to purchase the Debtor shares in a money-losing family real estate business for $100,000, with an option for the Debtor to buy back the very same shares for only $10,000 if she changed her mind. Later, when the Genger family fractured, the Debtor took the preposterous position that this was all some sort of grand scheme to deprive her of a business interest actually worth a whopping $12 million. A decade of litigation ensued, until a Court-appointed professional, Michael Kupka

CPA/ABV/CFF, CFE, CVA, following a year-long review, issued a 145-page report in which he found that Sagi likely *overpaid* the Debtor for her interest.

13. Naturally, the Debtor is challenging/appealing these and other losing actions, all of them handled by KBT.  It is bad enough that KBT seeks to bill the estate for this meritless and conflicted legal work, after publicly representing that it would be representing the Debtor pro bono.  Sagi respectfully submits the estate should cut its losses with KBT, and is confident the new chapter 7 trustee will come to the same conclusion.

14. We thank the Court for its consideration.

Dated:  New York, New York  
       January 13, 2020

EMMET, MARVIN & MARTIN, LLP

By: */s/ Thomas A. Pitta*  
   Thomas A. Pitta  
   John Dellaportas  
   120 Broadway  
   New York, NY 10271  
   Tel 212.238.3000  
   *Attorneys for Sagi Genger*