# EXHIBIT A

```
                    UNITED STATES BANKRUPTCY COURT
                      WESTERN DISTRICT OF TEXAS
                           AUSTIN DIVISION




IN RE:                          )    CASE NO: 19-10926-TMD
                                )    CHAPTER 7
                                )
ORLY GENGER,                    )    Austin, Texas
                                )
                                )    Tuesday, November 5, 2019
          Debtor.               )
                                )    2:29 p.m. to 2:39 p.m.


                            COURT'S RULING

              BEFORE THE HONORABLE TONY M. DAVIS,
                 UNITED STATES BANKRUPTCY JUDGE




APPEARANCES:               See page 2


Courtroom Deputy:          CRD Jennifer

Court Recorder:            ECRO Laurie

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988
```

**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

2

**APPEARANCES FOR:**

Debtor:                ERIC J. TAUBE, ESQ.
                       Waller Lansden Dortch & Davis
                       100 Congress Ave., Suite 1800
                       Austin, TX 78701

Creditors:             DEBORAH D. WILLIAMSON, ESQ.
                       DANIELLE N. RUSHING, ESQ. (via phone)
                       Dykema Gossett
                       112 E. Pecan St., Suite 1800
                       San Antonio, TX 78205

                       RAYMOND W. BATTAGLIA, ESQ.
                       66 Granburg Circle
                       San Antonio, TX 78218

                       SABRINA L. STREUSAND, ESQ.
                       Streusand Landon Ozburn & Lemmon
                       1801 S. Mopac Expressway, Suite 320
                       Austin, TX 78746

                       JOHN DELLAPORTAS, ESQ. (PHONE)
                       THOMAS A. PITTA, ESQ. (PHONE)
                       Emmet Marvin & Martin
                       120 Broadway, 32nd Floor
                       New York, NY 10271

                       MICHAEL BOWEN, ESQ. (PHONE)
                       ERIC D. HERSCHMANN, ESQ. (PHONE)
                       Kasowitz Benson Torres
                       1633 Broadway
                       New York, NY 10019

                       SHELBY A. JORDAN, ESQ.
                       ANTONIO ORTIZ, ESQ.
                       Jordan Hyden Womble, et al.
                       500 N. Shoreline, Suite 900-N
                       Corpus Christi, TX 78401
                       JAY ONG, ESQ.
                       Munsch Hardt Kopf & Harr
                       303 Colorado St., Suite 2600
                       Austin, TX 78701

1 **Austin, Texas; Tuesday, November 5, 2019; 2:29:45 p.m.**

2 **(Partial transcript - Ruling of Court)**

3     **THE CLERK:** All rise.

4     **THE COURT:** Please be seated.

5     This is my oral Ruling on the matter of transfer of
6 venue of the bankruptcy case of *Genger*, 19-10926.

7     I'm going to start with the economic administration
8 of the estate.

9     According to the Fifth Circuit this is the most
10 important factor, the Trustee here has already conducted an
11 investigation and reached a settlement.  A move to New York
12 could lead to a new Trustee, and a need for that Trustee to
13 investigate anew and redo what has been done for the past
14 several months.  But it's not clear how much, in fact, has been
15 done.

16     The 9019 is only 14 pages and is mostly platitudes,
17 very sparse description of the many facts in play here and it
18 does not even identify, let alone discuss, the issues being
19 settled.

20     For example, statute of limitations is mentioned.
21 Well, for which cause of action, fraudulent conveyance?

22     New York has a six-year statute with a discovery
23 rule, none of which is addressed, and that's just one of the
24 many, many material issues.  That's as to Austin, as to New
25 York, there are lots of lawsuits, some resolved, some pending,

```
 1  all in New York and this has been going on for 10 years.
 2  Nonparties to the bankruptcy are involved in those suits.
 3          It's easier for a New York Trustee to navigate, can
 4  simply remove State Court litigations, does not have to
 5  transfer it, and can also more easily address the matters on
 6  appeal.
 7          And, finally, the Trustee's settlement has not been
 8  approved.
 9          All of these favor the Movants and for the following
10  reasons:
11          The very reason for this bankruptcy is the ongoing
12  related lawsuits that are all pending in New York.  It doesn't
13  matter where the bankruptcy was filed because of the pending
14  turnover Motion or the Second Circuit's decision to affirm
15  Genger.
16          Two, the bankruptcy will create a new layer of
17  litigation that arises from the same transactions, facts and
18  set of occurrences that are the subject of litigation that has
19  been concluded and the litigation that remains pending in New
20  York.
21          In particular I'm thinking of the Section 727
22  adversaries in which the Debtor will be required to explain
23  what happened to 32 million dollars, and in either a fraudulent
24  transfer suit or the hearing to consider a 9019 settlement of
25  that suit.  Findings made by the New York courts previously may
```

1   well have collateral estoppel effect in this latest layer of

2   litigations spawned by the bankruptcy filing.

3   When litigation like this gets fractured it creates

4   turf wars, and by that I don't mean Judges fight for cases, I

5   mean the question of where will have to be fought time and time

6   again and will not always get resolved consistently.  It's far

7   more efficient for the parties to the bankruptcy and to the

8   related litigation to litigate in one District Court rather

9   than two, particularly where the two are either 1,500 or 1,700

10  miles apart.

11  I am not persuaded by the point that the Debtor is

12  not a party to the fraudulent transfer suit.  It's clearly an

13  important part of the administration of this estate.  Not only

14  is this the most important factor legally in this case, the

15  facts that bear upon this factor by far outweigh the facts

16  bearing upon the other factors.

17  Also, in the abacus case Judge Clark made much of the

18  need for a Judge to be able to "evaluate the case in the new

19  you in which the Debtor operates."

20  The new you in which this Debtor has operated for the

21  past decade has been New York State and Federal Courts.

22  The next factor, the proximity of creditors of every

23  kind in Court, Mr. Herschmann is in Austin, Mr. Arie Genger,

24  the father, is in Florida.  Mr. Herschmann has access to a

25  house in New Jersey, he has an office in New Jersey -- or in

1  New York.

2  Mr. Arie Genger is in Florida, has traditionally
3  maintained an office in New York and it's just as easy to get
4  to New York as it is to get to Texas.  This factor slightly
5  favors Movants.

6  Debtor argues that they're not really creditors and
7  the Movants bear the burden of proof, but in the I*n Re:*
8  *Columbia* case, 183 BR 660 the Court found the creditors with
9  disputed claims should have the right to complain about venue
10  because their claims will have to be litigated wherever the
11  case ends up.

12  Here the Debtor has satisfied the Movants burden by
13  listing the disputed claims in her schedules, I guess I
14  neglected to mention other creditors, Kasowitz has a New York
15  office, Market Sureties (phonetic) in Connecticut, Orly Trust
16  is in Arkansas, Sagi is in Connecticut with counsel in New
17  York.

18  The fact that the AG/OG parties in 2017 elected to
19  have an important agreement covered by New York law is
20  meaningful; that's Exhibit 16.

21  Again, this dispute over the disputed claims has, in
22  part, been the subject of litigation in the New York Courts.

23  To the extent that this goes to convenience, though,
24  is not significant.  The Debtor and these alleged creditors are
25  all highly mobile.

1        The proximity of the bankrupt, the Debtor, to the
2   Court, the Debtor lives in Austin.  By her testimony the Debtor
3   has access to a house in the New Jersey suburb of New York.
4        Relevant to this factor and others it was the Debtor
5   that chose New York State Courts as a venue on at least three
6   occasions.  This favors the Debtor, but it's not a significant
7   factor.  She can easily get to New York.  This highly mobile
8   individual can clearly be where she needs to be, and she has a
9   house available in New Jersey, again, according to her
10  testimony.
11       The proximity of witnesses necessary to the
12  administration of the estate.
13       The Debtor is in Austin, the Debtor's husband is in
14  Austin.  The Debtor's accountant, Mr. Fisher, is in New York.
15       Mrs. Genger, the mother, was last in New York.  Bowen
16  is in New York, Woktell (phonetic) is in New York, Sagi is in
17  Connecticut, both Brogers (phonetic) are in New York, the Trust
18  is in Arkansas.
19       The arbitration provisions mentioned by Mr. Jordan
20  are not in evidence.
21       This factor favors the Movants, but it's not a
22  significant factor.  Everyone is lawyered up in both New York
23  and Austin, everyone can get to where they need to be, or at
24  least compel testimony under Rule 45.
25       The location of assets:

1    The condo and personal property are both located in
2 Austin.  The Debtor claims that the lawsuits, including the two
3 notes payable to her lawyers, are not assets at all.  Movants
4 claim they are.  This dispute which must resolve one way or
5 another is a big part of the litigation that has been pending
6 in New York all these years.
7    The issues related to the condo, the gift and the
8 pledge, will be only a fraction of the issues dealt with in the
9 fraudulent conveyance and nondischarge cases.  The other issues
10 all relate to the 32 million and where it went, all of which
11 has been the subject of more than a decade of litigation
12 pending in New York.
13    On the interest of justice, both sides would have me
14 side with one side or the other, but I refuse to do that so I
15 am doing neither justice nor injustice, I am leaving that to
16 the Courts that have been dealing with this for the past
17 decade.
18    Some Courts have found that there is a presumption in
19 favor of Debtor's choice of forum, or that deference should be
20 given to the Debtor.
21    Other Courts, including the Fifth Circuit, have found
22 that a Plaintiff's choice of venue is just something to take
23 into account when considering that the Movant -- in considering
24 whether the Movant has met its burden; that's *Volkswagen of*
25 *America* 545 F3d 304, Fifth Circuit, 2008, and then there's the

1   *Lucas* case 2012 Westlaw 5198368, Judge Isgur found that though

2   *Volkswagen* was not a bankruptcy case:

3           "The same analysis undercuts a home Court presumption

4           in bankruptcy cases as well."

5           Even if there were such a presumption in the Fifth

6   Circuit it's entitled to very little weight here.  Judge

7   Austin's decision has little in common with my decision,

8   different legal principles, but his finding, after looking at

9   many of the same Declarations I have looked at, is germane.

10          As Judge Austin observed this Debtor can and will

11  claim residence in a location that suits her legally strategic

12  interests.  The Debtor retained Texas bankruptcy counsel in

13  August of 2018.  Since she got married in 2016 in Israel she

14  lived for a short time in Texas, and until February of 2019,

15  when she moved to Texas, lived for a long periods of time in

16  New York and Tel Aviv.  This is based on her testimony and it's

17  corroborated by the American Express statements.

18          In November of 2018, three months after hiring Texas

19  bankruptcy counsel, and while the Debtor twice testified that

20  the decision to move to Texas was "cooking for awhile," her

21  lawyer stated that the Debtor "previously residing in New

22  York," this is her lawyers, "already was married in Israel in

23  September 2016 and shortly thereafter she permanently moved to

24  a Tel Aviv home newly purchased by her husband."

25          Her testimony is that shortly after this statement

1  was made, the decision to move to Texas was made and was made
2  based on a desire to be able to more easily see the adult
3  children and due to her husband's travel.
4      What's important to note is that she had, months
5  before then, retained Texas bankruptcy counsel and had already
6  suffered many adverse decisions from New York Courts.  The
7  inference is clear that the move to Texas in February of 2019
8  was at least, in part, prompted by a desire to file bankruptcy
9  in Texas should it become necessary to get away from the New
10 York Courts.
11     Motion is granted as to the change of venue to the
12 Southern District of New York of both the case and all
13 associated adversaries.  I leave the alternative relief of
14 dismissal for a decision by the Southern District of New York.
15     We are adjourned.
16     **(This proceeding was adjourned at 2:39:40 p.m.)**

11

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                         **November 9, 2019**
        Signed                                                                     Dated

*TONI HUDSON, TRANSCRIBER*