FOLEY
FOLEY & LARDNER LLP

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
212.338.3411
plabov@foley.com

CLIENT/MATTER NUMBER
125232-0101

April 17, 2020

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York , New York 10004

Re: **In the Matter of Orly Genger, Case No. 19-13895 (JLG)**

Hon. Judge Garrity,

The undersigned, Foley & Lardner LLP and Ira Daniel Tokayer Esq., are co-counsel to Dalia Genger ("Dalia") and D&K GP LLC, creditors in this bankruptcy case. Dalia, is also a plaintiff in an adversary proceeding currently pending before this Court, entitled Dalia Genger v. Orly Genger, et al., bearing Adv. Proc. No. 20-01010 (the "Adversary Proceeding"). Both Dalia and D&K GP LLC are plaintiffs in another adversary proceeding before the District Court entitled Dalia Genger and D&K GP LLC v. Genger, Adv. Proc. No. 19-01445 (the "Discharge Action"). We submit this status report in accordance with Your Honor's direction at the status conference held on March 4, 2020.

This bankruptcy case is the latest attempt and last-ditch effort by Orly Genger ("Orly" or the "Debtor") to swindle Dalia out of funds set aside for Dalia's retirement. Dalia has joined in Sagi Genger's motion to dismiss this case as a bad faith filing. It is Dalia's position that the motion to dismiss should be addressed as a threshold matter and granted. Nevertheless, should the Court decide to allow the case to proceed, Dalia possesses a constructive trust on the $32.3 million the Debtor monetized from the sale of certain stock assigned to Orly by Dalia, $17.3 million having been fraudulently conveyed to creditors of Orly's father and $15 million which is in the form of unmatured promissory notes issued by the Trump Group to Michael Bowen, Esq., of the Kasowitz Benson firm. As such, these proceeds are not part of the bankruptcy estate. Below is a brief synopsis of Dalia's claim to a constructive trust as set forth in the Adversary Proceeding. As more fully set forth below, Dalia easily establishes the elements of constructive trust under New York law in that these issues have largely been decided in final opinions issued by the United States District Court for the Southern District of New York and affirmed by the Second Circuit.

1. Dalia, the Debtor's mother, is a 74 year old retired homemaker who receives no ongoing support payments from her ex-husband, Arie Genger ("Arie"), since their divorce in 2004. Instead, Dalia has relied upon the 2004 Divorce Agreement in which she contributed her shares of the family

business in exchange for the ability to request living expenses as needed equally from her son and daughter.

2. In 2004, as part of her divorce from Arie, Dalia relinquished marital rights in 794.40 shares (the "Shares") of Trans-Resources, Inc. ("TRI") in favor of the Debtor in exchange for an undertaking by the Debtor to transfer a portion of the proceeds of the Shares back to Dalia upon request in order to fund Dalia's retirement. Since agreeing to contribute to her mother's retirement, the Debtor and Arie have devised devious and even fraudulent schemes to deprive Dalia of her bargain. In two opinions unanimously affirmed by the Second Circuit, U.S.D.J. Forrest determined that just over $12 million of the $32 million in consideration received for the Shares are attributable to Dalia's claw-back rights.

3. The Court need not take Dalia's word for it. In cases in which Orly was a party, the United States District Court for the Southern District of New York has already rendered two final judgments, both unanimously affirmed by the Second Circuit, finding the facts laid out above. Below are a sample of the most relevant findings from those decisions.

4. The story begins with Dalia's divorce from Arie in 2004. As the court found:

> As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of TRI to trusts benefitting Sagi and Orly (the "Sagi Trust" and the "Orly Trust," respectively) in exchange for a commitment by Sagi and Orly to financially support her. This arrangement was effectuated via three documents.
>
> First, Dalia and Arie signed a stipulation of settlement finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed on October 30, 2004. In the 2004 Divorce Stipulation, Dalia promised to convey equal interests in a total of 794.40 shares of TRI to the Orly Trust and the Sagi Trust. The 2004 Divorce Stipulation contains an "entire understanding" clause, which is subject to a carve-out for other agreements…"entered into concurrently herewith." …
>
> The second was a letter signed by Sagi and Dalia dated October 30, 2004 (the "2004 Promise"). In the 2004 Promise, Sagi agreed to pay Dalia up to an amount equal to all dividends, distributions, proceeds or other payments attributable to the TRI shares, upon Dalia's demand. The 2004 Promise also states that the agreement is made "in consideration of" the following: "Orly and [Sagi] are benefitting by the receipt of a total of 794.40 shares of [TRI], or beneficial interests in those shares, by trusts for [their] benefit." …
>
> At the time the 2004 Promise was signed, Orly was vacationing in Fiji, and thus could not contemporaneously sign the 2004 Promise.

> However, before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for 50% of the payments he would have to make under the 2004 Promise.
>
> The third agreement was a letter signed by Sagi and Orly dated November 10, 2004 (the "2004 Indemnity"). In the 2004 Indemnity, Orly agreed to indemnify Sagi "for and against one-half (½) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations, including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]."
>
> On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with the Trump Group and others regarding her claims to ownership of the TRI shares. <u>The agreement provides that Orly, Arie, and their litigation funders, will receive $32.3 million</u> in exchange for a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and that Orly waives all of her claims to the TRI shares….

*Genger v. Genger*, 76 F. Supp. 3d 488, 492-494 (S.D.N.Y. 2015) (emphasis added).

5. Orly claimed she should be relieved of her financial obligation to Dalia because she never actually received the money. Judge Forrest disagreed, holding that: "as it turns out, Orly has effectively monetized an interest in the very [TRI] shares she claims not to have received to the tune of $32.3 million." 76 F. Supp. 3d at 491.

6. Orly appealed Judge Forrest's decision against her. The Second Circuit unanimously affirmed the Judgement, finding, <u>inter</u> <u>alia</u>, that "Orly benefitted from the shares regardless of whether the settlement money went to Orly, or as a gift to Arie..." *Genger v. Genger*, 663 Fed. App'x 44, 49-50 (2d Cir. 2016).

7. Nonetheless, Orly repudiated her commitment yet again in 2017, necessitating further litigation. Orly then argued that Judge Forrest's previous findings in 2014 that Orly received $32.3 million in consideration from the sale of the shares and Sagi received $37 million were not binding. Judge Forrest disagreed, finding that: "Based on the prior rulings of this Court… the Second Circuit's subsequent affirmance… [it] has been conclusively established that Sagi and Orly monetized their beneficial interests in the TRI shares for a total of $69.3 million…" 2018 WL 3632521, *2. The United States District Court calculated the exact amount owed to Dalia:

> Both Dalia and Sagi agree that Dalia's conveyed marital interest of 794.4 shares represents 36% of the total TRI shares that were monetized. Using that figure, the maximum amount payable to Dalia under the 2004 Integrated Agreement is approximately $24.7 million (or 36% of the total $69.3 million value). Orly has not specifically disputed the 36% figure, though she has raised unrelated questions about how the so-

> called "cap" in the 2004 Integrated Agreement affects her obligations to Sagi.

*Genger v. Genger*, 2018 U.S. Dist. Lexis 126958, *15 (S.D.N.Y. July 27, 2018). Once again, Orly appealed; and once again, the Second Circuit affirmed. *Genger v. Genger*, 771 Fed. App'x 99, 101–02 (2d Cir. 2019).

8. In order to frustrate Dalia's rights to these funds as later found by the District Court and the Second Circuit, Orly in 2013 fraudulently transferred approximately $17 million to Arie's creditors/partners and encumbered the $15 million balance with fraudulent obligations to Arie, her husband, and Arie's business partners. The details of the machinations used to encumber the $15 million are laid out in summary form in the letter which is being contemporaneously submitted by Sagi Genger. Following years of litigation, the United States District Court for the Southern District of New York (Broderick, J.) was about to consider a motion to set aside those conveyances. Orly filed this case (originally in Texas) to halt that proceeding.

9. Thus, while the background facts are a long-winded tragic path of family litigation, this case is actually fairly simple. This Chapter 7 bankruptcy is about Orly's attempt to prevent Dalia from recovering her marital settlement through a fraudulent scheme to divert those funds. The other material "creditors" in this action are parties who are themselves fraudulent transferees who facilitated the fraudulent transfers through their own knowing misconduct, or others who would favor Dalia's imposition of a constructive trust to the extent of $12 million.

10. Under New York law, Dalia is entitled to a constructive trust over the amounts to which the District Court found she was entitled of the res attributable to the TRI Share transfer, to wit, $12.25 million, and therefore her interest is superior to that of the Bankruptcy Trustee under Second Circuit precedent.

11. Under New York law, a constructive trust is an equitable remedy imposed to prevent unjust enrichment. See *Simonds v Simonds*, 45 N.Y.2d 233 (1978); *Sharp v Kosmalski*, 40 N.Y.2d 119 (1976). According to the New York Court of Appeals, the constructive trust is "the formula through which the conscience of equity finds expression. Where property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. *Simonds*, 45 N.Y.2d at 241 (citing *Beatty v Guggenheim Exploration Co.*, 225 N.Y. 380, 386 (1919)). "[I]ts applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Latham v Father Divine*, 299 N.Y. 22, 27 [1949].

12. Often, a constructive trust is applied to transfers between family members. In *Sharp v. Kosmalski*, property had been transferred to the plaintiff's daughter subject to an implied promise of support (as determined by the court) that was broken creating a constructive trust. 40 N.Y.2d 119 (1976). Here, Orly made an express promise of support that is reflected in a written instrument. Thus, Dalia's current and ongoing priority rights to the constructive trust encumbering the funds to which Dalia is entitled under New York law is clear.

13. Constructive trusts are honored in bankruptcy. In *In Matter of Southmark Corp.,* 49 F.3d 1111, 1117 (5th Cir. 1995), the Fifth Circuit held "funds in question were held in "quasi" (or constructive) trust by Southmark for ARA and that Section '541(d) excludes property subject to a constructive trust from the bankruptcy estate. *Id*. at 1115 n.8 (citing *In re Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 597 (5th Cir. 1991)) ("A constructive trust generally arises when a person with legal title to property owes equitable duties to deal with the property for the benefit of another."). *Accord In re Bullion Reserve of N. Am*., 836 F.2d 1214, 1217 n. 3 (9th Cir. 1988) (presumption that funds in debtor's account belong to its estate is overcome by showing that funds were held in constructive trust). In *Allen-Bradley Co. v. Commodore Business Machines, Inc.*, 180 B.R. 72 (Bankr. S.D.N.Y. 1995), this Court recognized that a constructive trust is a valid cause of action in the bankruptcy context and may serve as the basis for an adversary proceeding.

14. A constructive trust in favor of Dalia was triggered when Orly repudiated her obligation of support. In *In re Balgobin*, the Bankruptcy Court explained:

> The duty of restitution does not arise until the constructive trustee breaches or repudiates the agreement. … For this reason, the few cases in this Circuit in which a constructive trust has been imposed against a bankruptcy estate have found some pre-petition unjust conduct by the debtor relating to the property upon which the constructive trust was sought to be imposed.

490 B.R. 13, 22-23 (Bankr. E.D.N.Y. 2013) (citation omitted).

15. Here there is far more than "some pre-petition unjust conduct" by Orly. There is <u>a total repudiation</u> of the Integrated Agreement, and actual fraud in accomplishing the denuding of the Debtor. Orly's transfer and encumbrance of the $32 million in proceeds of the sale of the Shares was made with the frustration of her obligation to Dalia in mind. In fact, it was immediately after a judgment was entered against her that she proceeded to encumber the $15 million in un-matured promissory notes to secure millions of dollars in false liabilities to her father and her husband.

16. As part of the Court's analysis in recognizing Dalia's constructive trust, it should be noted that, under New York law, Orly as Dalia's daughter was a fiduciary to Dalia at the time of the transfer. Under New York law, family members stand in a fiduciary relationship with each other. As the New York Court of Appeals explained in *Braddock v. Braddock*, 871 N.Y.S.2d 68, 88-89 (1st Dep't 2009):

> Family members stand in a fiduciary relationship toward one another in a co-owned business venture … A fiduciary relationship is "[f]ounded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. (Citations omitted).

Separately, removed to this Court are actions from the Surrogate Court to which Dalia is a named party. Aside from the jurisdictional issues raised in the remand motions, it is worth noting that any claim against or by Dalia are now moot as to her. The claim against removing her as a trustee (the only remedy sought against her) is moot as she resigned well before this bankruptcy. She also prevailed on claims against her by Orly in New York Supreme Court which sought monetary damages for the same purported misconduct. The claims by Dalia belong to the successor trustee.

We look forward to conferencing with the court on May 5, 2020.

Thank you for your consideration.

Respectfully submitted,

*/s/ Ira Daniel Tokayer*
Ira Daniel Tokayer, Esq.
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 695-5250

*/s/ Paul Labov*
Paul Labov, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016
(212) 338-3411

*Co-Counsel for Dalia Genger and D&K GP LLC*

cc: All Counsel of Record (By ECF)