

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Rocco A. Cavaliere, Partner
Email: rcavaliere@tarterkrinsky.com
Phone: (212) 216-1141

April 17, 2020

**POSITION STATEMENT OF DEBORAH J. PIAZZZA, CHAPTER 7 TRUSTEE**

**BY EMAIL AND ECF**

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

   Re: In re Orly Genger
     Chapter 7 Case No. 19-13895

Dear Judge Garrity:

  This firm is counsel to Deborah J. Piazza, in her capacity as successor chapter 7 trustee (the "Trustee") of the above-referenced Debtor's estate.

  The Trustee and I hope that Your Honor and Chambers' staff and their respective families are healthy and well during these difficult times.

  On March 4, 2020 (the "March 4th Conference") the Trustee and undersigned counsel, as well as numerous parties in interest in this case appeared at a lengthy status conference before the Court. During the March 4th Conference, all of the parties in interest expressed their views regarding the history of pre-bankruptcy litigation and the administration of the Debtor's bankruptcy case. Counsel to Sagi Genger ("Sagi") also requested that the Court schedule an immediate hearing on Sagi's Motion to Dismiss this Chapter 7 Bankruptcy Case or Alternatively, to Transfer Venue, dated September 12, 2019 (the "Motion to Dismiss") which was filed earlier in the case while the case was pending in the Western District of Texas (the "Texas Bankruptcy Court"). Judge Davis decided not to address the dismissal aspect of the Motion to Dismiss, and alternatively transferred venue to this Court. As Your Honor may recall, you politely declined

Honorable James L. Garrity
April 17, 2020
Page 2 of 5

Sagi's request during the status conference to schedule a hearing on the Motion to Dismiss, which would in any event need to be amended and updated to reflect the current status of this case.

In connection with maintaining the *status quo*, the Court asked that all of the parties prepare their own position papers (the "Position Papers") identifying their views on the future administration of this case, including the scheduling of hearings on contested matters and related discovery, if any. See Transcript, p.40:9-40:13 (What I'll ask for is, prior to that, two weeks ahead of time, that I get submissions –we can call them status; we can figure out how to style it. But it basically -- from my perspective, it's being heard from the parties telling me what it is they would like to do, and what they think as far as moving forward is concerned"); see also Transcript, p. 69:24 – 70:6 (if we go out beyond April the 7th, I'd like three weeks, if you could, but two weeks I can probably live with…so that I have, again, the summary from the parties as to where things stand and your views on these things, so that, when we get together the next time we do, we can talk about scheduling and how to proceed with the various actions").

As reported at the March 4th Conference, the Trustee spent significant time and effort understanding the background of the Genger family litigation and the issues surrounding the estate's potential recovery of $32.3 million negotiated as part a certain Settlement Agreement dated June 16, 2013 (the "Trump Settlement Agreement") by and between Arie Genger (the Debtor's father), Orly Genger, individually and beneficially, Arnold and David Broser and entities that they control (the litigation funders), and other related parties (collectively, the "AG Group"), on the one hand, and TR Investors, LLC, Glencova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources LLC, Jules Trump, Eddie Trump and Mark Hirsch (collectively, the "Trump Group") on the other hand.  The Settlement Agreement called for, among other things, a cash payment of $17.3 million (the "Settlement Cash Proceeds" and two promissory notes totaling $15 million (the "Trump Notes", together with the Settlement Cash Proceeds, the "Trump Settlement Proceeds").  The Trump Notes have not yet been paid by the Trump Group because the payment thereof is conditioned on satisfaction of certain conditions, which include either final orders resolving any litigation against Trump Group from the "Sagi Group" (as defined in the Settlement Agreement), or releases exchanged by the Sagi Group.[1]  The Trump Group may have a right to indemnification costs of Trump Group under the Settlement Agreement.  Upon information and belief, those indemnification costs are at least $3 million to $4 million, thereby reducing the amounts expected from the Trump Notes from $15 million to $11 million to $12 million.

During the Texas case, the prior trustee had reached a settlement with (i) the Brosers and Arie Genger (and entities they control) for $250,000 in cash, plus $750,000 to be paid to the estate from the eventual recovery that the Brosers or the Genger Litigation Trust (of which the Brosers, the Debtor and Arie are members) recovers from the Trump Notes, (ii) $200,000 from Eric Herschmann (the Debtor's husband) and a waiver of the Debtor's homestead exemption valued at approximately $170,000 in exchange for full resolution of the Trustee's rights in the

---

[1] The Sagi Group is defined to include TPR Investment Associates, Inc., Sagi Genger, the Sagi Genger 1993 Trust, the Orly Genger 1993 Trust other than the Orly Trust Action (as defined below)), D&K Limited Partnership, D&K GP LLC, Rochelle Fang, and/or David Parnes.

Honorable James L. Garrity
April 17, 2020
Page 3 of 5

Debtor's and Mr. Herschmann's condominium apartment in Austin, Texas (the "Homestead"), and (iii) the prior Trustee's retention of Kasowitz Benson Torres LLP as contingency counsel on behalf of the Trustee on a 33% contingency fee to pursue the estate's claims against Sagi, Dalia Genger, the Debtor's mother, and others, including the new trustee, Michael Oldner, of the Orly Genger Trust (the "Prior Settlement"). Sagi, Dalia Genger (the Debtor's mother) and Michael Oldner filed objections to the predecessor trustee's motion to approve the Prior Settlement. Judge Davis did not hold a hearing on the settlement motion to consider the Prior Settlement, instead transferring the case to this Court.

As reported at the March 4th Conference, the Trustee had spent considerable time negotiating with the parties to the Prior Settlement in hopes of improving the consideration contained in the Prior Settlement (the "Global Settlement Option"). Those arms-length negotiations have continued through the filing of this Position Statement. However, unfortunately, the negotiations have not led to an acceptable settlement agreement that would allow the Trustee to file a settlement motion at this time. The Trustee intends to continue to negotiate in good faith with the foregoing parties in hopes of reaching an acceptable settlement, and if such settlement is reached before May 5, 2020, the Trustee will advise all the parties and the Court accordingly by separate letter before May 5, 2020.

Further, the Trustee is also entertaining proposals from Sagi, a judgment creditor of the Debtor, in furtherance of the administration of the case (the "Sagi Option"). Likewise, if the Trustee reaches a resolution with Sagi before May 5, 2020, the Trustee intends on advising the parties and the Court accordingly by separate letter in advance of May 5, 2020.

Thus, if the Global Settlement Option or the Sagi Option is finally negotiated before May 5th, the Trustee will request at the May 5th conference that the Court schedule a further hearing to obtain authority to implement either option. However, in the event that neither the Global Settlement Option nor the Sagi Option is possible, the Trustee will appear at the Status conference on May 5th and advise the Court that the Trustee intends to pursue the following forms of relief:

(1) The Trustee will commence an action before May 31, 2020 to pursue and recover the Trump Settlement Proceeds (the "Trustee's Action");

(2) To the extent the Trustee's Action is pursued, the Trustee will request that the Court stay all other pending actions described in the Actions Chart, whether pending in this Court or elsewhere, that may have an impact on the Trustee's administration of the case, thereby allowing the Trustee to preserve estate resources and focus all efforts on pursuing the Trustee's Action to judgment (or possible settlement in the future);

(3) The Trustee will request that any member of the Sagi Group with pending actions seeking to enjoin payment of the Trump Notes or against the Trump Group for any reason dismiss such actions unless such parties can demonstrate that they have independent personal claims against the Trump Group. The

Honorable James L. Garrity
April 17, 2020
Page 4 of 5

>   Trustee also will request that the Sagi Group consent to provide releases to the Trump Group to allow the Trump Group to pay into the Trustee's escrow account any remaining proceeds from the Trump Notes, which are anticipated to be at least $11 million to $12 million, with such monies to remain in the Trustee's escrow account pending a final determination of the Trustee's Action. As Sagi has repeatedly stated in numerous pleadings in this Court and elsewhere, the Trump Notes are "property of the estate". As such, absent (i) dismissal of all pending claims against the Trump Group and (ii) consent from the Sagi Group to provide releases to the Trump Group to allow the Trustee to monetize the Trump Notes into her escrow account for further disposition pursuant to Court order, the Trustee intends on filing a motion with the Court on or before May 31, 2020 seeking monetary damages for violations of the automatic stay;
>
> (4) For the avoidance of all doubt, the Trustee does not presently intend to take any action to sell the Homestead where Mr. Herschmann, the Debtor, and their infant daughter live. Notably, if the Trustee pursues the Trustee's Action, according to Sagi, there would likely be sufficient funds in the estate to pay creditors a sizable, if not full recovery, such that it simply may not be necessary to pursue a contested sale of the Homestead under section 363(h) of the Bankruptcy Code; and
>
> (5) Assuming the Trustee pursues the Trustee's Action and for some of the other reasons stated in the March 10, 2020 letter to the Court (Dkt. No. 224), the Trustee believes the Motion to Dismiss is moot and will request that Sagi agree that the Motion to Dismiss be withdrawn without prejudice, and absent Sagi's agreement otherwise, the Trustee will request that the Court adjourn a hearing on the Motion to Dismiss *sine die* to allow the Trustee to pursue the Trustee's Action.

The Court also requested a chart listing all of the pending related Genger litigations pending in various courts with input from all parties (the "Actions Chart"), which will be filed separately on the Court docket today. The Actions Chart is intended to be a useful tool for the Court to understand some of the parties' issues and positions with respect to each pending action but as more fully described in footnote no. 1 of the Actions Chart, the positions of the parties therein are not intended to be used against any other party in any other litigation and are not a waiver of any rights. Due to the numerous competing views and positions, finality on the Actions Chart would never occur absent a "hard stop" imposed by the undersigned counsel. The filed copy of the Actions Chart was circulated at 4:50 p.m. today, at which time I advised the parties that to the extent that they deemed necessary to rebut any other non-binding assertions of any other party, that they clarify their positions in their position statements or at the upcoming conference.

We look forward to the upcoming status conference on May 5, 2020.

Honorable James L. Garrity
April 17, 2020
Page 5 of 5

  Please do not hesitate to have Chambers contact me should the Court have any questions. Thank you for the Court's consideration.

                Respectfully submitted,

                /s/Rocco A. Cavaliere

                Rocco A. Cavaliere

Enclosure
cc: Deborah J. Piazza, Esq.
   Thomas Pitta, Esq. (by email and ECF)
   John Dellaportas, Esq. (by email and ECF)
   Michael P. Bowen, Esq. (by email and ECF)
   Andrew Kurland, Esq. (by email and ECF)
   Frank Oswald, Esq. (by email and ECF)
   Adam Pollock, Esq. (by email and ECF)
   Elizabeth Aboulafia, Esq. (by email and ECF)
   Yann Geron, Esq. (by email and ECF)
   Raymond Battaglia, Esq. (by email and ECF)
   Eric Herschmann, Esq. (by email and ECF)
   Douglas Spelfogel, Esq. (by email and ECF)
   Paul J. Labov, Esq. (by email and ECF)
   Ira Tokayer, Esq. (by email and ECF)