

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway 32nd Floor
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

John Dellaportas
*Partner*
Tel: 212-238-3092
Fax: 212-238-3100  Fax (alt.) 212-406-6953
jdellaportas@emmetmarvin.com

April 20, 2020

**Via Email**

Eric D. Herschmann, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

**Re:  *In re Orly Genger*, Case No.: 19-13895-jlg**

Dear Mr. Herschmann:

I write in response to your April, 8, 2020 email, in which you inquire, *inter alia*, about the retention of Sason Matityahu by Sagi Genger's Israeli counsel.

As you know, Sagi has a $3.2+ million judgment against your wife, Orly Genger (the "Debtor"), no portion of which has ever been paid. *See* Exhibit A.  Following entry of that judgment, Sagi was met with a series of false statements by you and the Debtor, under oath, concerning your joint whereabouts and accounts, which the U.S. District Court for the Western District of Texas later found to be "an attempt to frustrate the post-judgment discovery being attempted by Sagi Genger." *See* Exhibit B at 5.

The Debtor, during the relevant time period, was claiming to have permanently moved her residence to Texas, prior to claiming to have permanently moved her residence to Israel.  As the issue of her residence was highly relevant to the bankruptcy, Sagi had to retain Israeli counsel, who in turn had to retain an Israeli private investigator, the aforementioned Mr. Matityahu, who is licensed under Israel's Private Investigators and Security Services Law, 5732-1972.  Mr. Matityahu was never asked to do anything illegal, nor are we aware of any illegal actions having been taken by him.  Indeed, in the six months during which you have been claiming that an Israeli "law enforcement" investigation is underway, neither Sagi (an Israeli passport holder) nor his Israeli attorney has ever been contacted by any Israeli authority over this or any other matter.

As you already know, last September Mr. Matityahu prepared an investigative report concerning  the Debtor, which we provided to you shortly thereafter. *See* Exhibit C. We understand why this report continues to upset you, as Mr. Matityahu's findings proved

EMMET, MARVIN & MARTIN, LLP

instrumental in the U.S. Bankruptcy Court's realization that it had been hoodwinked, and its resulting decision to transfer venue to New York. *See, e.g.,* Exhibit D at 9 ("As Judge Austin observed this Debtor can and will claim residence in a location that suits her legally strategic interests."). Nevertheless, the report was accurate and warranted.

At around the same time, Mr. Matityahu prepared a report of similar limited scope concerning you for Israeli counsel. The report lists your date of birth, Israeli ID number, Israeli entrances/exits, and bank names and addresses, albeit with no account numbers or other detail. (Should the Court request it, we will provide the report *in camera*.) After that, as you know, you went to Israel and intimidated Mr. Matityahu into no longer working on this matter, after which he provided no further reports on this matter.

To be clear, Sagi ordinarily would not care about your whereabouts or accounts. However, during post-judgment discovery, as documented below, you made to the Courts multiple affirmatively false statements with respect to where you and the debtor were <u>jointly</u> living at the time, and about what <u>joint</u> accounts you and the Debtor held--matters which are highly material to the present bankruptcy case.

### <u>Your False Statements About the Debtor's and Your Joint Residency</u>:

To recap, in 2018, you swore to the U.S. District Court for the *Southern District of New York* that since "the fall of 2016" you "live" in Tel Aviv with your wife and daughter. Just a few months later, however, you swore to the U.S. District Court for the *Western District of Texas* that "since 2010" you have actually been "living in Austin" and before that Houston, and that your "home" was in "Texas and only Texas." Obviously, at least one of these sworn statements was false. We actually suspect that they both are, as your wife's AmEx charges reflect that, during the period in question, she actually spent most of her time at your joint home in Englewood, which also happens to be just a short commute to your only law office, and to the courts where you have recently appeared in several cases as counsel of record. *See* Exhibit E (our sanctions motion based on your false affidavit, which is currently stayed by virtue of your wife's bankruptcy filing).

### <u>Your False Statements About The Debtor's and Your Joint Accounts</u>:

Similarly, in a 2019 declaration you filed with the U.S. District Court for the Western District of Texas, you stated under oath that you and your wife "do not share any credit cards" and that you "have given [the Debtor] cash to buy food but no other funds and definitely nowhere near $10,000 total." When we subpoenaed American Express, however, we discovered that--contrary to your sworn statement-- you and your wife have been sharing an AmEx Centurion Card (*i.e.,* a "Black Card" reserved for those who charge over $250,000 per year) for almost your entire marriage, during which the Debtor has charged sums far in excess of $10,000, sums we presume you have been paying. *See*

EMMET, MARVIN & MARTIN, LLP

Exhibit F (our other sanctions motion, based on your other false affidavit).[1]

In your email, you ask how, since Mr. Matityahu makes no mention of the fact in his report, Sagi could state in his May 30, 2018 declaration that: "upon information and belief, during the six-month period immediately preceding the filing of the suit …, [the Debtor] spent less than one month (just 27 days) in Israel."  The answer is that Mr. Mattiyahu's investigation was not the basis for Sagi's information and belief on this issue. Sagi's declaration as to the Debtor's 2017 whereabouts has since been proven correct by the subpoenaed AmEx records and, in any case, that assertion only involved the Debtor and not yourself, and thus is not relevant to your professed concern.

There have been many more false statements made by you and your wife that have further frustrated Sagi's judgment enforcement efforts, which we will be outlining in our amended motion to dismiss the bankruptcy case.  If history is any judge, discovery in this case will uncover yet still further false statements, which, we suspect, is why you have been fighting discovery so vociferously up until now.  (For example, we question whether you will be able to produce a receipt for the engagement ring you gave your wife, which she now claims is a worthless cubic zirconium.)  However, we believe this letter provides a good backdrop for Sagi's *proper* use of a private investigator.

By contrast, in 2015, you and your client (who later became your wife) made wholly improper use of an *unlicensed* private investigator who, until his apprehension by the New Canaan police, was stalking Sagi's wife and minor children.

Turning to your question about your pre-nuptial agreement, the only persons with whom Sagi has shared that document are counsel retained by Sagi for the SDNY action and counsel who are assisting him in connection with judgment enforcement, both of which are authorized under the Protective Order.  In addition, to the extent that the pre-nuptial agreement was annexed to or described in any motion papers filed under seal, the Chapter 7 Trustee would have access to those sealed filings under 11 U.S.C. § 107(c)(3) ("The United States trustee, bankruptcy administrator, trustee, and any auditor serving under section 586(f) of title 28— (A) shall have full access to all information contained in any paper filed or submitted in a case under this title; ….").

We believe this letter fully describes the private investigative information obtained relating to you, such that you can now finally advise us as to whether you will be cooperating with discovery absent judicial intervention.  Our interest in your affairs is limited to information relevant to the bankruptcy case you are spearheading.  You have

---

[1] Both of the above-cited sanctions motions relating to your prior false sworn statements are outstanding, and nothing herein should be construed to waive either of them.  Rather, if this bankruptcy case is not dismissed as a threshold matter, we will address those matters with Judge Garrity and seek appropriate monetary and other relief.

EMMET, MARVIN & MARTIN, LLP

now been dodging deposition and document discovery for over a year. The aforementioned adjudication out of the Western District of Texas that you were lying to do so is not an excuse to continue doing so.  We insist that you comply.

   We await your response regarding the above.

     Sincerely,

     John Dellaportas

Enclosures (Exhs. A-F)

cc: None

EMMET, MARVIN & MARTIN, LLP

## APRIL 20, 2020 LETTER--EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------- x

DALIA GENGER,

                Plaintiff,

          v.

SAGI GENGER,

                Defendant/Third-Party Plaintiff,

          v.

ORLY GENGER,

                Third-Party Defendant.

------------------------------------------------------------------------------- x

Index No. 1:17cv8181

**JUDGMENT IN
THIRD-PARTY ACTION**

**WHEREAS** the above-captioned third-party action having come before this Court, and the matter having come before the Honorable Katherine B. Forrest, United States District Judge, and the Court, on July 27, 2018, having rendered its Opinion & Order denying third-party defendant's Orly Genger's ("Orly") motion to dismiss and granting defendant/third-party plaintiff Sagi Genger's ("Sagi") cross-motion for partial summary judgment, it is hereby

        **ORDERED, ADJUDGED, DECLARED AND DECREED**:

    1.    That, for the reasons stated in the Opinion & Order dated July 27, 2018, Orly's motion to dismiss is denied; Sagi's cross-motion for partial summary judgment is granted; the balance of Sagi's First Amended Third-Party Complaint is dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2); and the third-party action is closed.

    2.    That, on Sagi's First Cause of Action for Breach of Contract, for the reasons stated in the Opinion & Order dated July 27, 2018, the Clerk is directed to enter judgment in favor of Sagi in the amount of $3,000,000 in base damages, plus statutory interest in the amount of $219,698 pursuant to CPLR Article 50 at 9% per annum from October 24, 2017 through entry of this Judgment, plus 50% of Sagi's reasonable counsel and other professional fees, expenses and

costs in connection with this action, in an amount to be determined.

3. That, on Sagi's Second Cause of Action for Promissory Estoppel, for the reasons stated in the Opinion & Order dated July 27, 2018, the Clerk is directed to enter judgment in favor of Sagi in the amount of $3,000,000 in base damages, plus statutory interest in the amount of $219,698 pursuant to CPLR Article 50 at 9% per annum from October 24, 2017 through entry of this Judgment, plus 50% of Sagi's reasonable counsel and other professional fees, expenses and costs in connection with this action, in an amount to be determined.

4. That, on Sagi's Third Cause of Action for Declaratory Judgment, for the reasons stated in the Opinion & Order dated July 27, 2018, the Court declares that Orly must indemnity Sagi for 50% of Dalia's $6,000,000 payment demand, plus statutory interest in the amount of $219,698 pursuant to CPLR Article 50 at 9% per annum from October 24, 2017 through entry of this Judgment, plus 50% of Sagi's reasonable counsel and other professional fees, expenses and costs in connection with this action, in an amount to be determined.

5. The amounts set forth in paragraphs 2, 3 and 4 above are not cumulative.

6. Pursuant to Fed. R. Civ. P. 54(d)(2), any motion for attorney's fees shall be made no later than 14 days following the entry of this Judgment.

Dated:   New York, New York
         8/17, 2018

SO ORDERED.

_____
KATHERINE B. FORREST
United States District Judge

EMMET, MARVIN & MARTIN, LLP

### APRIL 20, 2020 LETTER--EXHIBIT B

## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SAGI GENGER | § | |
| | § | |
| V. | § | 1:19-MC-0366-LY-AWA |
| | § | (SDNY No. 1:17-CV-8181) |
| ORLY GENGER | § | |

### <u>ORDER</u>

Before the Court is Non-Party Eric Herschmann's Motion to Quash Subpoena (Dkt. No. 1); the Third-Party Plaintiff's Response and Motion to Transfer (Dkt. No. 3); Supplement to Motion to Transfer (Dkt. No. 4), and Herschmann's Opposition and Reply (Dkt. Nos. 6 & 7). The motion was referred to the undersigned for resolution. Herschmann moves pursuant to Rule 45 to quash a subpoena issued by third-party Plaintiff Sagi Genger regarding post-judgement discovery related to a lawsuit in the Southern District of New York.

The lawsuit arises out of a family dispute between Sagi and Orly Genger, who are brother and sister. The third party that is the subject of the subpoena at issue is Eric Herschmann, Orly Genger's husband. On August 17, 2018, Sagi Genger obtained a judgment against Orly in the Southern District of New York. Dkt. No. 3-3. There remains at least $3.2 million unpaid on the judgment and since last September the parties have been engaged in a fight in the Southern District of New York over Sagi's post-judgment discovery, in which he is attempting to identify assets of Orly that could satisfy his judgment. On March 13, 2019, Mr. Genger served Mr. Herschmann with a subpoena issued out of the New York court, commanding his appearance at a deposition and the production of documents in Austin, Texas. Dkt. No. 1-1. The subpoena includes eleven document requests, which seek information designed to provide greater clarity into Mr. Herschmann and Ms. Genger's financial relationship.

Mr. Herschmann argues that the subpoena should be quashed or modified because it does not

allow for a reasonable time for compliance, requires privileged material to be produced without

justification, imposes an undue burden, and unnecessarily invades his personal privacy.  Mr. Genger

responds to these arguments in detail, and explains why he believes the material is all discoverable.

He also argues that the Motion to Quash should be transferred to the Southern District of New York

because the issuing court is in the best position to rule on issues of post-judgment discovery related

to this case.  Mr. Herschmann replies that he resides in Austin, and that this Court should resolve the

dispute, and further argues that the New York court has not ruled on the issues he raises in his

motion to quash.  The Court, however, believes that this matter should be transferred.

The Court's analysis in deciding disputes regarding out-of-district subpoenas is governed by

Rule 45.  *Paws Up Ranch, LLC v. Green*, 2013 WL 6184940, at *1 (D. Nev. Nov. 22, 2013).

Generally speaking, Rule 45 requires that disputes related to non-party subpoenas be resolved

locally, to avoid imposing undue travel or expense burdens on non-parties who are challenging a

subpoena.  *See, e.g.,* FED. R. CIV. P. 45(d)(2)(B)(i) (directing that motions to compel be filed in "the

district in which compliance is required").  Effective December 1, 2013, however, a significant

change was made to Rule 45 through the addition of a new subsection, which states:

> (f) **Transferring a Subpoena-Related Motion**. When the court where compliance
> is required did not issue the subpoena, it may transfer a motion under this rule to the
> issuing court if the person subject to the subpoena consents or if the court finds
> exceptional circumstances.

FED. R. CIV. P. 45(f).  The Advisory Committee's comments to the amendment indicate that "transfer

to the court where the action is pending is sometimes warranted," when the interests in having the

issuing court decide the dispute "outweigh the interests of the nonparty served with the subpoena in

2

Case 1:19-mc-00366-LLP   Document 15   Filed 04/15/19   Page 3 of 6

obtaining local resolution of the motion." *Id.* The Committee notes that "transfer may be warranted

in order to avoid disrupting the issuing court's management of the underlying litigation, as when that

court has already ruled on issues presented by the motion or the same issues are likely to arise in

discovery in many districts." *Id.*; *Gaddis v. Garrison Prop. and Cas. Co.*, 2016 WL 3081067, at *2

(W.D. Tex. May 31, 2016). This is such a case.

As noted, the underlying case is pending in the Southern District of New York. The case is

part of what appears to be a highly contentious (and disturbingly litigious) dispute between the

Gengers, a dispute that appears to have spanned many years, and many courts. The case in the

Southern District of New York has been on file since September 2017, and the court there has been

immersed in the dispute for some time. It recently ruled on post-judgment discovery issues that

touch on some of the very same issues raised by Mr. Herschmann in his motion to quash here. At

a post-judgment discovery hearing on January 8, 2019—a hearing at which Mr. Herschmann was

present—Magistrate Judge Freeman of the Southern District noted that

> this is my at least second go-around, possibly third go-around with the parties to this
> case. And, you know, family feuds always seem to be the worst. And as family
> feuds go, this one seems to be among the worst of the worst. The level of
> argumentative submissions, just put it that way, obviously, lawyers are often
> argumentative. But the level of hostilities in the cases that involves these parties
> seem to be quite high, and I would like to try to dial it back. Here's the thing, there
> is a judgment. The judgment creditor is entitled to discovery to try to find the assets
> to enforce the judgment. If there are none to be found, there are none to be found but
> judgment creditor is entitled to try. There are rules that allow that. And so I have to
> allow some leeway for that party to try to locate assets and to follow whatever money
> there might be to track it through time and try to figure it out because there's a fairly
> significant judgment out there.

Dkt. No. 3-5. The transcript of just this one hearing spans 149 pages, and the hearing lasted several

hours. In this hearing, Judge Freeman discussed issues related to Mr. Herschmann and his

finances—including one of his properties in Tel-Aviv—as it relates to Sagi Genger's attempts to identify assets owned by Orly or traceable to her, the very same topic implicated by the subpoena of Mr. Herschmann. As recently as ten days ago, Judge Freeman made rulings related to the pre-nuptial agreement between Mr. Herschmann and Orly Genger, another of the issues Herschmann raises in his motion to quash. Dkt. No. 198 in 1:17-cv-8181 VSB-DCF (S.D.N.Y., April 5, 2019). The fact that some of the issues raised here are also pending before the New York court supports the conclusion that exceptional circumstances warrant transferring this motion to New York.

Moreover, it is more than apparent that Mr. Herschmann will not face any burden, much less an "undue" one, by having the motion to quash heard in New York City. From Mr. Herschmann's filings in this matter, it would appear that he would be dumbfounded that anyone would think he was anything other than an Austin resident. To put it mildly, however, the answer to the question of where Mr. Herschmann and Ms. Genger reside is a moving target. In a filing in the underlying lawsuit made less than a year ago, Orly Genger swore that she and her infant daughter (the child of Mr. Herschmann) are permanent, full-time residents of Tel Aviv, Israel. Dkt. No. 65 in 1:17-cv-8181 VSB-DCF (S.D.N.Y., May 16, 2018). She details how she and Herschmann were engaged and married in Israel, states she moved from Austin to Tel Aviv in 2016 when she *and Herschmann* found a home there, which they purchased in 2016. *Id.* She relates how she spent several years overseeing the remodeling of that home, and swears under oath that she runs her art business from, and has her studio in, Tel Aviv, that her synagogue is there, and states unequivocally that when she moved to Israel she "intended at that time, and still intend[s], to live permanently in Israel, and have no intention to move from Israel." *Id.* Mr. Herschmann confirmed this in a declaration he submitted in the New York case—and executed in Tel Aviv in January 2018—where he swears that "Orly and

Case 1:19-mc-00366-LTS   Document 15   Filed 04/15/19   Page 8 of Ex

I got engaged in Israel in 2016 and were married here in the fall of 2016.  Since that time, Orly has

lived in Tel Aviv, Israel. *She lives here with me and our infant daughter*, who was born in 2017."

Dkt. No. 44 in 1:17-cv-8181 VSB-DCF (S.D.N.Y., January 25, 2018) (emphasis added).

Despite these sworn states of relatively recent vintage, Herschmann submitted a declaration

just days ago in this proceeding that paints quite a different picture. Dkt. No. 7-1.  Conspicuously

absent from that filing is any mention that he ever lived in Tel Aviv, much less as recently as May

2018.  The only reference to the Tel Aviv home is a cryptic statement that, through an Israeli entity,

he owns a house there with his children.  *Id.*  Instead, the recent declaration strongly suggests that

Herschmann is a full time resident of Austin, and that "[p]rior to living in Austin [he] lived in

Houston." *Id.*  He also protests that, despite being a partner listed as resident in the Manhattan office

of the Kasowitz Benson Torres law firm, he actually spends very little time there, and apparently

does very little legal work for the firm, or at least does not do so in New York. *Id.*  The most

charitable interpretation of these very different sworn statements is that Herschmann moves between

at least Austin and Tel Aviv[1]—though nothing in any sworn document actually says this.  The more

likely actual state of affairs is that Herschmann and Genger, as owners of multiple residences, have

used this fact to their legal advantage by claiming to reside in whichever location most suits their

legal needs at the time.  In this instance, in an attempt to frustrate the post-judgment discovery being

attempted by Sagi Genger, Herschmann claims to have such a strong connection to Austin that it

would be a burden for him to have to deal with his subpoena objections in Manhattan.  The Court's

not buying it.

---

[1]The Court says "at least," because Herschmann, through a trust, also has a house in
Englewood, New Jersey, and plainly sometimes spends time there as well.

Herschmann has attended two hearings in the underlying New York case, one in person and the other telephonically, and at least one of those was to represent his own interests, not those of his wife.  Given his status as a partner in a New York City law firm, and his likely residence in Israel, it is hard to imagine a third party who would be *less* burdened by the transfer of his motion to quash from Austin to New York.  Moreover, and more importantly, transfer of this motion will foster the interests of fairness, consistency, judicial economy, and speed of resolution. Uniformity of rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties.  The court in the Southern District of New York has been dealing with this dispute for years, and with the post-judgment discovery issues for several months.  Any ruling this Court might issue could easily disrupt the New York court's management of the underlying litigation, both procedurally and substantively.

It is therefore **ORDERED** that Mr. Genger's Motion to Transfer (Dkt. No. 3) is **GRANTED**, and Non-Party Eric Herschmann's Motion to Quash Subpoena (Dkt. No. 1) is **TRANSFERRED** to the United States District Court for the Southern District of New York.  It is **FURTHER ORDERED** that this matter is **CLOSED**.

SIGNED this 15th day of April, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

EMMET, MARVIN & MARTIN, LLP

### APRIL 20, 2020 LETTER--EXHIBIT C

גילוי נאות
חברה לחקירות פרטיות

**לכבוד**                                                                                              12/09/2019
<u>**מר שגיא גנגר**</u>

<u>**הנדון: גנגר אורלי**</u>

לבקשתכם ביצענו חקירה לאיתור הפרטמטרים הר"מ:

# איתור סניפי בנקים בהם מנהלת הנבדקת את חשבונותיה
# בדיקה אודות יציאותיה של הנבדקת לחו"ל

<u>**להלן ממצאאינו:**</u>

<u>**1. פרטים אישיים וכלליים:**</u>

שם פרטי: אורלי
שם משפחה: גנגר
שם הוריה: אריה ודליה
ארץ מוצא: ארצות הברית
תאריך עליה: 01/1982
תאריך לידה: ▮▮▮▮
מספר זהות: ▮▮▮▮▮

מחקירתנו עולה כי הנבדקת אינה מפעילה תיק עוסק מורשה ברשויות המס.
בדיקה ברשם החברות העלתה כי הנבדקת אינה מחזיקה במניות בחברות כלשהן.

גילוי נאות
חברה לחקירות פרטיות

**2. בנקים:**

מחקירתנו עולה כי הנבדקת מנהלת חשבונות בסניפי הבנקים הר"מ:

**2.1 בנק הפועלים**
שם הסניף: הגבעה הצרפתית (784)
כתובת הסניף: רחוב ההגנה 21 ירושלים

**3. שהות הנבדקת בארץ:**

**3.1** מחקירתנו עולה כי הנבדקת יצאה מהארץ בתאריך 06/02/2019 וחזרה ב-12/03/2019.

**3.2** הנבדקת יצאה מהארץ בתאריך 24/04/2019 ומאז לא שבה ארצה.

**בכבוד רב,**
**גילוי נאות חקירות**

EMMET, MARVIN & MARTIN, LLP

## APRIL 20, 2020 LETTER--EXHIBIT D

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


IN RE:                          )       CASE NO: 19-10926-TMD
                                )       CHAPTER 7
                                )
ORLY GENGER,                    )       Austin, Texas
                                )
                                )       Tuesday, November 5, 2019
            Debtor.             )
_____)       2:29 p.m. to 2:39 p.m.


COURT'S RULING

BEFORE THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE



**APPEARANCES**:              See page 2


Courtroom Deputy:       CRD Jennifer

Court Recorder:         ECRO Laurie

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988






Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Debtor:                        ERIC J. TAUBE, ESQ.
                               Waller Lansden Dortch & Davis
                               100 Congress Ave., Suite 1800
                               Austin, TX 78701


Creditors:                     DEBORAH D. WILLIAMSON, ESQ.
                               DANIELLE N. RUSHING, ESQ. (via phone)
                               Dykema Gossett
                               112 E. Pecan St., Suite 1800
                               San Antonio, TX 78205

                               RAYMOND W. BATTAGLIA, ESQ.
                               66 Granburg Circle
                               San Antonio, TX 78218

                               SABRINA L. STREUSAND, ESQ.
                               Streusand Landon Ozburn & Lemmon
                               1801 S. Mopac Expressway, Suite 320
                               Austin, TX 78746

                               JOHN DELLAPORTAS, ESQ. (PHONE)
                               THOMAS A. PITTA, ESQ. (PHONE)
                               Emmet Marvin & Martin
                               120 Broadway, 32nd Floor
                               New York, NY 10271

                               MICHAEL BOWEN, ESQ. (PHONE)
                               ERIC D. HERSCHMANN, ESQ. (PHONE)
                               Kasowitz Benson Torres
                               1633 Broadway
                               New York, NY 10019

                               SHELBY A. JORDAN, ESQ.
                               ANTONIO ORTIZ, ESQ.
                               Jordan Hyden Womble, et al.
                               500 N. Shoreline, Suite 900-N
                               Corpus Christi, TX 78401
                               JAY ONG, ESQ.
                               Munsch Hardt Kopf & Harr
                               303 Colorado St., Suite 2600
                               Austin, TX 78701

3

1          **Austin, Texas; Tuesday, November 5, 2019; 2:29:45 p.m.**

2              **(Partial transcript - Ruling of Court)**

3          **THE CLERK:**  All rise.

4          **THE COURT:**  Please be seated.

5          This is my oral Ruling on the matter of transfer of

6  venue of the bankruptcy case of *Genger*, 19-10926.

7          I'm going to start with the economic administration

8  of the estate.

9          According to the Fifth Circuit this is the most

10  important factor, the Trustee here has already conducted an

11  investigation and reached a settlement.  A move to New York

12  could lead to a new Trustee, and a need for that Trustee to

13  investigate anew and redo what has been done for the past

14  several months.  But it's not clear how much, in fact, has been

15  done.

16          The 9019 is only 14 pages and is mostly platitudes,

17  very sparse description of the many facts in play here and it

18  does not even identify, let alone discuss, the issues being

19  settled.

20          For example, statute of limitations is mentioned.

21  Well, for which cause of action, fraudulent conveyance?

22          New York has a six-year statute with a discovery

23  rule, none of which is addressed, and that's just one of the

24  many, many material issues.  That's as to Austin, as to New

25  York, there are lots of lawsuits, some resolved, some pending,

4

 1   all in New York and this has been going on for 10 years.

 2   Nonparties to the bankruptcy are involved in those suits.

 3          It's easier for a New York Trustee to navigate, can

 4   simply remove State Court litigations, does not have to

 5   transfer it, and can also more easily address the matters on

 6   appeal.

 7          And, finally, the Trustee's settlement has not been

 8   approved.

 9          All of these favor the Movants and for the following

10   reasons:

11          The very reason for this bankruptcy is the ongoing

12   related lawsuits that are all pending in New York.  It doesn't

13   matter where the bankruptcy was filed because of the pending

14   turnover Motion or the Second Circuit's decision to affirm

15   Genger.

16          Two, the bankruptcy will create a new layer of

17   litigation that arises from the same transactions, facts and

18   set of occurrences that are the subject of litigation that has

19   been concluded and the litigation that remains pending in New

20   York.

21          In particular I'm thinking of the Section 727

22   adversaries in which the Debtor will be required to explain

23   what happened to 32 million dollars, and in either a fraudulent

24   transfer suit or the hearing to consider a 9019 settlement of

25   that suit.  Findings made by the New York courts previously may

5

1   well have collateral estoppel effect in this latest layer of

2   litigations spawned by the bankruptcy filing.

3          When litigation like this gets fractured it creates

4   turf wars, and by that I don't mean Judges fight for cases, I

5   mean the question of where will have to be fought time and time

6   again and will not always get resolved consistently.  It's far

7   more efficient for the parties to the bankruptcy and to the

8   related litigation to litigate in one District Court rather

9   than two, particularly where the two are either 1,500 or 1,700

10  miles apart.

11         I am not persuaded by the point that the Debtor is

12  not a party to the fraudulent transfer suit.  It's clearly an

13  important part of the administration of this estate.  Not only

14  is this the most important factor legally in this case, the

15  facts that bear upon this factor by far outweigh the facts

16  bearing upon the other factors.

17         Also, in the abacus case Judge Clark made much of the

18  need for a Judge to be able to "evaluate the case in the new

19  you in which the Debtor operates."

20         The new you in which this Debtor has operated for the

21  past decade has been New York State and Federal Courts.

22         The next factor, the proximity of creditors of every

23  kind in Court, Mr. Herschmann is in Austin, Mr. Arie Genger,

24  the father, is in Florida.  Mr. Herschmann has access to a

25  house in New Jersey, he has an office in New Jersey -- or in

1   New York.

2          Mr. Arie Genger is in Florida, has traditionally

3   maintained an office in New York and it's just as easy to get

4   to New York as it is to get to Texas.  This factor slightly

5   favors Movants.

6          Debtor argues that they're not really creditors and

7   the Movants bear the burden of proof, but in the I*n Re:*

8   *Columbia* case, 183 BR 660 the Court found the creditors with

9   disputed claims should have the right to complain about venue

10  because their claims will have to be litigated wherever the

11  case ends up.

12         Here the Debtor has satisfied the Movants burden by

13  listing the disputed claims in her schedules, I guess I

14  neglected to mention other creditors, Kasowitz has a New York

15  office, Market Sureties (phonetic) in Connecticut, Orly Trust

16  is in Arkansas, Sagi is in Connecticut with counsel in New

17  York.

18         The fact that the AG/OG parties in 2017 elected to

19  have an important agreement covered by New York law is

20  meaningful; that's Exhibit 16.

21         Again, this dispute over the disputed claims has, in

22  part, been the subject of litigation in the New York Courts.

23         To the extent that this goes to convenience, though,

24  is not significant.  The Debtor and these alleged creditors are

25  all highly mobile.

1          The proximity of the bankrupt, the Debtor, to the

2   Court, the Debtor lives in Austin.  By her testimony the Debtor

3   has access to a house in the New Jersey suburb of New York.

4          Relevant to this factor and others it was the Debtor

5   that chose New York State Courts as a venue on at least three

6   occasions.  This favors the Debtor, but it's not a significant

7   factor.  She can easily get to New York.  This highly mobile

8   individual can clearly be where she needs to be, and she has a

9   house available in New Jersey, again, according to her

10  testimony.

11         The proximity of witnesses necessary to the

12  administration of the estate.

13         The Debtor is in Austin, the Debtor's husband is in

14  Austin.  The Debtor's accountant, Mr. Fisher, is in New York.

15         Mrs. Genger, the mother, was last in New York.  Bowen

16  is in New York, Woktell (phonetic) is in New York, Sagi is in

17  Connecticut, both Brogers (phonetic) are in New York, the Trust

18  is in Arkansas.

19         The arbitration provisions mentioned by Mr. Jordan

20  are not in evidence.

21         This factor favors the Movants, but it's not a

22  significant factor.  Everyone is lawyered up in both New York

23  and Austin, everyone can get to where they need to be, or at

24  least compel testimony under Rule 45.

25         The location of assets:

8

1           The condo and personal property are both located in

2    Austin.  The Debtor claims that the lawsuits, including the two

3    notes payable to her lawyers, are not assets at all.  Movants

4    claim they are.  This dispute which must resolve one way or

5    another is a big part of the litigation that has been pending

6    in New York all these years.

7           The issues related to the condo, the gift and the

8    pledge, will be only a fraction of the issues dealt with in the

9    fraudulent conveyance and nondischarge cases.  The other issues

10   all relate to the 32 million and where it went, all of which

11   has been the subject of more than a decade of litigation

12   pending in New York.

13          On the interest of justice, both sides would have me

14   side with one side or the other, but I refuse to do that so I

15   am doing neither justice nor injustice, I am leaving that to

16   the Courts that have been dealing with this for the past

17   decade.

18          Some Courts have found that there is a presumption in

19   favor of Debtor's choice of forum, or that deference should be

20   given to the Debtor.

21          Other Courts, including the Fifth Circuit, have found

22   that a Plaintiff's choice of venue is just something to take

23   into account when considering that the Movant -- in considering

24   whether the Movant has met its burden; that's *Volkswagen of*

25   *America* 545 F3d 304, Fifth Circuit, 2008, and then there's the

1   *Lucas* case 2012 Westlaw 5198368, Judge Isgur found that though

2   *Volkswagen* was not a bankruptcy case:

3   　　　　"The same analysis undercuts a home Court presumption

4   　　　　in bankruptcy cases as well."

5   　　　Even if there were such a presumption in the Fifth

6   Circuit it's entitled to very little weight here.  Judge

7   Austin's decision has little in common with my decision,

8   different legal principles, but his finding, after looking at

9   many of the same Declarations I have looked at, is germane.

10   　　　As Judge Austin observed this Debtor can and will

11   claim residence in a location that suits her legally strategic

12   interests.  The Debtor retained Texas bankruptcy counsel in

13   August of 2018.  Since she got married in 2016 in Israel she

14   lived for a short time in Texas, and until February of 2019,

15   when she moved to Texas, lived for a long periods of time in

16   New York and Tel Aviv.  This is based on her testimony and it's

17   corroborated by the American Express statements.

18   　　　In November of 2018, three months after hiring Texas

19   bankruptcy counsel, and while the Debtor twice testified that

20   the decision to move to Texas was "cooking for awhile," her

21   lawyer stated that the Debtor "previously residing in New

22   York," this is her lawyers, "already was married in Israel in

23   September 2016 and shortly thereafter she permanently moved to

24   a Tel Aviv home newly purchased by her husband."

25   　　　Her testimony is that shortly after this statement

1    was made, the decision to move to Texas was made and was made

2    based on a desire to be able to more easily see the adult

3    children and due to her husband's travel.

4            What's important to note is that she had, months

5    before then, retained Texas bankruptcy counsel and had already

6    suffered many adverse decisions from New York Courts.  The

7    inference is clear that the move to Texas in February of 2019

8    was at least, in part, prompted by a desire to file bankruptcy

9    in Texas should it become necessary to get away from the New

10   York Courts.

11           Motion is granted as to the change of venue to the

12   Southern District of New York of both the case and all

13   associated adversaries.  I leave the alternative relief of

14   dismissal for a decision by the Southern District of New York.

15           We are adjourned.

16       **(This proceeding was adjourned at 2:39:40 p.m.)**

17

18

19

20

21

22

23

24

25

11

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    November 9, 2019

           Signed                                      Dated

                    *TONI HUDSON, TRANSCRIBER*

EMMET, MARVIN & MARTIN, LLP

## APRIL 20, 2020 LETTER--EXHIBIT E

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

————

(212) 808-7800

WASHINGTON, DC

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICE

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

JOHN G. DELLAPORTAS

May 6, 2019

**Via ECF**

Hon. Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

Re:     *Genger v. Genger, Index No. 1:17cv8181*

Dear Judge Broderick:

Pursuant to Your Honor's Individual Rules & Practices 1(A) and (G), defendant/third-party plaintiff and judgment creditor Sagi Genger ("Sagi") respectfully submits this letter motion seeking to strike from the docket the January 25, 2018 declaration (Doc. 44) that third-party defendant and judgment debtor Orly Genger ("Orly") filed in this case, on the ground that the declaration has now been recanted in a later-filed declaration on Your Honor's docket. *See Genger v. Genger,* Case 1:19-mc-00210-VSB, Doc. 7-1.

We ordinarily would be loath to burden the Court with this motion; however, a pending appeal before the Court of Appeals, to be argued by Marc Kasowitz on June 18, 2019, necessitates our request.  The Court entered judgment in Sagi's favor on August 17, 2018 (Doc. 112).  Orly appealed, arguing, *inter alia*, that the Court erred in not dismissing the case based on alleged lack of diversity jurisdiction.  Orly's appeal hinges on her claim that she was an Israeli domiciliary on the October 24, 2017 filing date of the suit.

In support of dismissal, Orly submitted a declaration from her husband, Kasowitz Benson partner Eric Herschmann. (Exh. A.)  In it, he declared under oath that:

Orly and I got engaged in Israel in 2016 and were married here in the fall of 2016. Since that time, Orly has lived in Tel Aviv, Israel. She lives here with me and our infant daughter, who was born in 2017.

Significantly, Orly has included Mr. Herschmann's declaration in her Second Circuit Appendix (A-133-134), and she directly cites to it in both her opening and reply Appeal Briefs. *See* 2d Cir. Case No. 18-2471, Doc. 39 (p. 24 of 56) and Doc. 62 (p. 17 of 32).

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Vernon S. Broderick
May 6, 2019
Page Two

More recently, however, Mr. Herschmann filed with the U.S. District Court for the Western District of Texas a motion to quash a subpoena served in this case, whereupon Sagi moved to transfer the motion back to this District. In a new declaration, Mr. Herschmann recants his claim to have ever lived in Israel, declaring under oath that:

> **My Home in Austin**
>
> 3.  I am a resident of Texas and have been since 2010.
>
> 4.  I live at 210 Lavaca Street, Unit 1903 in Austin (the W Residences), my (only) homestead-protected property.  Prior to living in Austin, I lived in Houston, Texas. …
>
> 15.  <u>Sagi repeatedly argued in the underlying New York action that "it was Texas and only Texas" where Orly and I reside.  He was correct as to me.</u>

(Exh. B, underlining added.)

The U.S. District Court for the Western District of Texas later granted Sagi's transfer motion.  In the accompanying Order, Magistrate Judge Austin held that Orly and her husband were playing fast and loose with the facts about their multiple residences: "[Eric] Herschmann and [Orly] Genger, as owners of multiple residences, have used this fact to their legal advantage by claiming to reside in whichever location most suits their legal needs at the time." *See Genger v. Genger*, W.D. Tex. Case #: 1:19-mc-00366-LY, Doc. 11 (p. 5 of 6).

Prior to moving before Your Honor, we tried to resolve the matter with Orly's counsel, asking that Mr. Herschmann's earlier, false declaration be withdrawn.  Our request was rebuffed.  In a May 2, 2019 letter (Exh. C), Daniel R. Benson of the Kasowitz Benson firm advised us that: "The fact that [Mr. Herschmann] affirmed in Texas that he resides in Austin, Texas in no way contradicts his declaration in this action that he also lives in Tel Aviv with his wife." Mr. Benson also threatened to seek "sanctions and disciplinary measures" against me if I did not withdraw my letter, copying the Managing Partner of the firm in which I am a member.

Respectfully, we do not believe Mr. Herschmann's two declarations can be reconciled.  There is no doubt Mr. Herschmann and his wife, who are well to do, own multiple residential properties around the world.  However, Mr. Herschmann has now recanted his prior assertion that he has lived in Tel-Aviv with his wife since 2016.  Instead, he now swears under oath that since 2010, he has resided in "Texas and only Texas."  Doc. 44 is therefore false, and we ask that it be stricken from the docket.  We thank the Court for its consideration.

Respectfully submitted,

John Dellaportas

Encls.

Case 1:19-cv-00181-VSB-DCF    Document 201-1    Filed 09/06/19    Page 1 of 4

# Exhibit A

# 18-2471-cv

## United States Court of Appeals

*for the*

### Second Circuit

———◆———

DALIA GENGER,

*Plaintiff,*

– v. –

SAGI GENGER,

*Defendant-Third-Party-Plaintiff-Appellee,*

– v. –

ORLY GENGER,

*Third-Party-Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOINT APPENDIX**
**Volume 1 of 3 (Pages A-1 to A-251)**

JOHN G. DELLAPORTAS
KRISTINA ALLEN
KELLEY DRYE & WARREN LLP
*Attorneys for Defendant-Third-Party-*
  *Plaintiff-Appellee*
101 Park Avenue
New York, New York 10178
(212) 808-7800

MICHAEL PAUL BOWEN
ANDREW KURLAND
KASOWITZ BENSON TORRES LLP
*Attorneys for Third-Party-*
  *Defendant-Appellant*
1633 Broadway
New York, New York 10019
(212) 506-1700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DALIA GENGER, | X |
| Plaintiff, | : |
| -v- | : |
| SAGI GENGER, | : |
| Defendant/Third-Party Plaintiff, | : |
| -v- | : |
| ORLY GENGER, | : |
| Third-Party Defendant. | : |
|  | X |

### DECLARATION OF ERIC HERSCHMANN

ERIC HERSCHMANN hereby makes the following declaration pursuant to 28 U.S.C.

§ 1746:

1.      I am an attorney in good standing admitted to practice before this Court, among

others. I have handled matters throughout the United States during my 30+ years of practice.  I

am the husband of Orly Genger, who has been named by defendant Sagi Genger as a third-party

defendant in this action.  I submit this declaration in support of Orly's challenge to service and

jurisdiction.

2.      Orly and I got engaged in Israel in 2016 and were married here in the fall of 2016.

Since that time, Orly has lived in Tel Aviv, Israel.  She lives here with me and our infant

daughter, who was born in 2017.

3.      I do not own any property in New Jersey nor do I vote in New Jersey.  My adult

children own a home in Englewood, New Jersey, that I (and obviously they) are able to use.  For

at least the past year, no one has lived at that house full-time.

4.      I had lived in Englewood years ago and still maintain membership in the East Hill Synagogue (amongst other synagogues in the United States and Israel).  I visit with friends and family in Englewood from time to time and occasionally attend services at East Hill Synagogue. After Orly and I were married, Orly accompanied me to that Synagogue only once on Rosh Hashanah when all my children were in town.  I have been in East Hill Synagogue less than a handful of times in the last one and one-half plus years.

5.      I support numerous charitable causes both in Israel and the U.S., including an organization called NORPAC, a political action committee that works to strengthen the relationship between the United States and Israel.  I have contributed to NORPAC for many years before my marriage to Orly, and continue to do so.

6.      I rarely attend NORPAC events, even those for which I am credited as "hosting" or a "chairperson," normally because I am not in town.  To my knowledge, Orly has not attended any NORPAC events since we were married.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Tel Aviv, Israel on January 25, 2018

Eric Herschmann

2

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SAGI GENGER, | § | |
| | § | |
| Third-Party Plaintiff, | § | Cause No. A-19-MC-0366-LY |
| | § | |
| v. | § | SOUTHERN DISTRICT OF NEW YORK |
| | § | Civil Action No. 1:17-CV-8181 |
| ORLY GENGER | § | |
| | § | |
| Third-Party Defendant. | § | |

**DECLARATION OF NON-PARTY ERIC HERSCHMANN**

Eric Herschmann, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1.       I submit this declaration in support of my response to Sagi Genger's motion to transfer venue of my motion to quash to the U.S. District Court for the Southern District of New York and my reply in support of my motion to quash.

2.       I am not a party to the underlying action against Orly Genger, my wife, brought by her brother Sagi Genger in the U.S. District Court for the Southern District of New York, nor was I counsel of record in that action.

**My Home in Austin**

3.       I am a resident of Texas and have been since 2010.

4.       I live at 210 Lavaca Street, Unit 1903 in Austin (the W Residences), my (only) homestead-protected property.  Prior to living in Austin, I lived in Houston, Texas.

5.       I am an attorney duly admitted to practice law in Texas.

6.       I am registered to vote in Texas.  I have a Texas Driver's license.

7.       I was the Vice-Chairman, President and Chief Operating Officer of Southern Union Company, which was our local Austin gas company previously headquartered at 5th and Lavaca Street.

Herschmann Declaration, p. 1

8.      While I was an officer and director of Southern Union, I remained a partner of the Kasowitz Benson Torres LLP law firm but was almost never present in the firm's offices. Kasowitz has offices in ten cities, including New York and Houston.

9.      After the sale of Southern Union in 2012 to Energy Transfer, I was a consultant to Energy Transfer, which is headquartered in Dallas, until approximately 2015.  My non-competition agreement with Energy Transfer expired in 2017.

10.      One of my children graduated from UT Austin, and another is there now.

11.      I am on the Board of Directors of the Blanton Museum of Art at UT and The Contemporary Austin.

12.      I am actively involved in various Austin philanthropies, including the Seton Fund, the Chancellor's Circle at UT, the Long Center, the Austin Ballet, and others.

13.      I have been a UT football season ticketholder for years.

14.      I am a lifetime member of the Texas Exes. I am a member of the UT Club. I was a close personal friend of Frank Denius for more than 25 years and gave his eulogy last year.

15.      Sagi repeatedly argued in the underlying New York action that "it was Texas and only Texas" where Orly and I reside.  He was correct as to me. Attached hereto as Exhibit 1 is a true and correct copy of excerpts from Sagi's filings making those arguments.

**The Post-Judgment Subpoena**

16.      On March 7, 2019, the day Orly was deposed in the underlying New York action here in Austin, Sagi's counsel John Dellaportas attempted to leave a copy of the instant subpoena at the security desk in the building lobby of my home at 210 Lavaca Street when I was not there. Upon learning of this, Michael Bowen of the Kasowitz firm informed counsel for Sagi that I had

Herschmann Declaration, p. 2

# Exhibit C

## KASOWITZ BENSON TORRES LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019

(212) 506-1700

FAX: (212) 506-1800

DANIEL R. BENSON
DIRECT DIAL: (212) 506-1720
DIRECT FAX: (212) 835-5020
DBenson@kasowitz.com

ASPEN
ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

May 2, 2019

<u>Via FedEx and Email</u>

John Dellaportas, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Re:   <u>*Genger v. Genger*</u>, Case No. 17-cv-8181-VSB-DF

Dear Mr. Dellaportas:

In your April 30, 2019 letter to Michael Bowen and Andrew Kurland of this law firm, you state that you "find it hard to believe [we] do not know where [our] partner/co-counsel [Eric Herschmann] lives; surely your client [Orly Genger] knows" and that our firm "filed [a] knowingly false declaration with the Court." You then demand, among other things, that our firm withdraw the declaration.

Whatever your motivation, your statements are demonstrably false, your demands are completely misplaced, and your letter is contemptible.

Your charge that our firm filed a knowingly false declaration is baseless and irresponsible. Among other things, over the past several years, I, personally, have visited Mr. Herschmann and Ms. Genger at their Tel Aviv home on two occasions (in September 2017 and October 2018), as have Michael Bowen (in December 2018 and January 2019), Andrew Kurland (in March 2019), and numerous other people, including other lawyers from this firm. During this time, I also have received hundreds of calls with a +972 country code (Israel) from Mr. Herschmann.[1]

---

[1] Your accusation that Eric Herschmann has made a knowingly false statement is likewise baseless. The fact that he affirmed in Texas that he resides in Austin, Texas in no way contradicts his declaration in this action that he also lives in Tel Aviv with his wife. Indeed, as you are well aware, your own client himself owns multiple residences in different states, and which of those was his legal residence for purposes of subject-matter jurisdiction was the subject of litigation in the case you filed against Ms. Genger in 2014.

K A S O W I T Z   B E N S O N   T O R R E S   LLP

     I understand that your latest letter is part of a broader pattern of unprofessional and unethical conduct, including your leveling repeated false assertions about, among other things, this firm's billing records and practices and wild, irresponsible and baseless charges of criminal conduct (such as assault) against lawyers at this firm.

     Please confirm to me immediately in writing that you withdraw your scurrilous April 30 letter and will cease and desist from further such conduct.  If you do not do so and if you repeat any false and reckless accusations, we will take all necessary and appropriate steps to seek sanctions and disciplinary measures.  Enough is enough.

          Sincerely,

          Daniel R. Benson

cc:    Lewis Rose, Esq.
       Marc E. Kasowitz, Esq.
       Michael P. Bowen, Esq.
       Andrew R. Kurland, Esq.

2

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

———

(212) 808-7800

WASHINGTON, DC
LOS ANGELES, CA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICE
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

JOHN G. DELLAPORTAS

May 10, 2019

**Via ECF**

Hon. Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

Re:      *Genger v. Genger, Index No. 1:17cv8181*

Dear Judge Broderick:

On behalf of judgement credit Sagi Genger, we wish to briefly respond to Wednesday night's letter from Michael Bowen, Esq., counsel to judgment debtor Orly Genger, opposing Sagi's motion to strike the declaration of Eric Herschmann (Doc. 44).

Orly, through her attorneys at Kasowitz Benson, would have this Court believe that it is powerless to deal with the false affidavit filed by Orly's husband/lawyer (Kasowitz Benson partner) Eric Herschmann. We respectfully disagree. No doubt, the Court has many tools at its disposal to deal with false swearing. We ask only that the Court do what Orly's attorneys could have and should have done on their own: withdrawn the false affidavit.

It is black letter law that a District Court has an "inherent power to control its docket." *See Estate of Ungar v. Palestinian Auth.*, 344 Fed. Appx. 631, 634 (2009); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). That power includes the ability to strike a false affidavit, even while an appeal in the case is pending. *See, e.g., United States v. Nash*, 342 F.2d 326, 327 (1965) (affirming district court ruling "ordering stricken from appellant's appendix an affidavit of false testimony made by the principal witness for the government").[1]

———

[1]      The principal case cited by Orly, *LaSalle Bank N.A. v. CAPCO Am. Securitization Corp.*, 2006 WL 1227539 (S.D.N.Y. May 5, 2006), is not to the contrary. In that case, the District Court (apparently unaware of the *Nash* decision, *supra*) held only that: "There does not appear to be any precedent on the issue of whether the court has jurisdiction after a notice of appeal is filed to decide motions to strike affidavits. …In the interest of judicial efficiency, the court declines to alter the record by striking these affidavits. ") *Id.* at **5-6.

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Vernon S. Broderick
May 10, 2019
Page Two

     Second, Orly argues that the contradictory declarations filed by Mr. Herschmann do not actually contradict one another.  To recap, Mr. Herschmann told this Court, under oath, that starting in "the fall of 2016" he "lives" in Tel Aviv with his wife and infant daughter.  Not long thereafter, however, he told the U.S. District Court for the Western District of Texas, again under oath, that "since 2010" through today he has been "living in Austin" and before that Houston.  His "home" was in "Texas and only Texas," to quote Mr. Herschmann.

     Like Magistrate Judge Austin, we believe these statements are irreconcilable.  We sought to resolve the matter privately.  Kasowitz Benson, unfortunately, responded by having the firm's second named partner (Daniel Benson) threatened me personally with "disciplinary measures" and trouble at my place of work unless I withdraw the demand and thereby allow the firm's *first* named partner (Marc Kasowitz) to argue these false facts to the Second Circuit.

     At times throughout this case, and especially during this post-judgment phase, it has been difficult to decipher where Orly's interests end and her law firm's interests begin.  Whatever the case here, the fact remains that Kasowitz Benson, on Orly's behalf, filed an admittedly false declaration.  We ask that it be withdrawn.

     We thank the Court for its consideration.

Respectfully submitted,

John Dellaportas

EMMET, MARVIN & MARTIN, LLP

### APRIL 20, 2020 LETTER--EXHIBIT F

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, DC

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

—————

BRUSSELS, BELGIUM

—————

AFFILIATE OFFICE
MUMBAI, INDIA

**101 PARK AVENUE**

**NEW YORK, NY 10178**

—————

(212) 808-7800

FACSIMILE

(212) 808-7897

www.kelleydrye.com

JOHN G. DELLAPORTAS

May 6, 2019

**Via ECF**

Hon. Debra Freeman
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Genger v. Genger*, Index Nos. 1:17cv8181, 1:19-mc-00210

Dear Judge Freeman:

    Pursuant to Your Honor's Individual Rule & Practice 1(C), defendant/third-party plaintiff and judgment creditor Sagi Genger ("Sagi") respectfully submits this letter motion seeking to strike from the docket of the related proceeding *Genger v. Genger*, Case 1:19-mc-00210-VSB, the April 12, 2019 Declaration of Non-Party Eric Herschmann, Doc. 7-1, on the ground that the declaration contains one or more deliberately false statements.

    The declaration comes before Your Honor in support of a motion to quash that Mr. Herschmann filed in the U.S. District Court for the Western District of Texas.  By Order dated April 15, 2019, the motion was transferred to this District. *See Genger v. Genger*, W.D. Tex. Case #: 1:19-mc-00366-LY, Doc. 11.  Mr. Herschmann's motion is *sub judice*.

    In his declaration, Mr. Herschmann declares that his assets are "separate and apart from Orly's".  (Exh. A, ¶ 44.)  In support thereof, Mr. Herschmann further declares, under oath, that: "We do not share any credit cards" and that "I have given my wife cash to buy food but no other funds and definitely nowhere near $10,000 total." (*Id.*, ¶¶ 44-45.)  At her deposition, third-party defendant and judgment debtor Orly Genger ("Orly") similarly testified that she and her husband share no credit cards and that her only credit card was a dormant Visa. (Exh. B.)

    The documents tells a different story.  Post-judgment, we subpoenaed American Express for Orly's account records.  They revealed that Orly has three American Express cards in her name, none of which she identified in her sworn interrogatory answers (which were signed both by Orly and by Mr. Herschmann's co-counsel at the Kasowitz firm, Mr. Bowen).  Amongst them was an American Express Centurion Card (*i.e.*, the so-called "Black Card" reserved for those who charge over $250,000 per year) issued to her just a few days after her marriage.  The name of the joint accountholder was redacted, consistent with our subpoena.

### K E L L E Y   D R Y E   &   W A R R E N   LLP

Hon. Debra Freeman
May 6, 2019
Page Two

In the ensuing 2+ years, Orly has charged considerable sums to that account; indeed, she spent over $10,000 in a single store (a Nordstrom's in Austin) in a single day. (Exh. C.) We have subpoenaed all records from the bank accounts Orly has identified. As far as we can tell, none were used to pay these bills, nor would they have held sufficient assets to do so.

Naturally, we suspect this is a shared AmEx account with Mr. Herschmann. Further, we find it difficult to believe either Mr. Herschmann or Orly could have forgotten about it, given that it has accumulated a reward balance of 7.3 million points.

Prior to moving before Your Honor, we tried to resolve the matter with Mr. Herschmann's counsel, asking that she confirm whether our supposition was correct and, if so, withdraw the declaration. Our request was rebuffed. In a May 2, 2019 letter, Jennifer Lloyd, counsel to Mr. Herschmann, did not deny this was a shared account, but she did assert that her client was not the source of the funds covering Orly's sizable bills. (Exh. D)

Taking Ms. Lloyd's response at face value, Mr. Herschmann still appears to have sworn out a false statement, as he concealed an account through which Orly has access to considerable funds. If so, then we submit that the proper remedy is to strike his entire declaration. *See The Santissima Trinidad*, 20 U.S. 283, 339 (1822) ("where the party speaks to a fact in respect to which he cannot be presumed liable to mistake, … if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood; and Courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the *maxim falsus in uno, falsus in omnibus*). That is the relief Sagi requests here.

We thank the Court for its consideration.

Respectfully submitted,

John Dellaportas

Encls.
cc:   Via Email (jlloyd@millerlloyd.com)
      Jennifer A. Lloyd, Esq.
      Counsel to Non-Party Eric Herschmann

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SAGI GENGER, | § | |
| | § | |
| Third-Party Plaintiff, | § | Cause No. A-19-MC-0366-LY |
| | § | |
| v. | § | SOUTHERN DISTRICT OF NEW YORK |
| | § | Civil Action No. 1:17-CV-8181 |
| ORLY GENGER | § | |
| | § | |
| Third-Party Defendant. | § | |

## DECLARATION OF NON-PARTY ERIC HERSCHMANN

Eric Herschmann, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1.     I submit this declaration in support of my response to Sagi Genger's motion to transfer venue of my motion to quash to the U.S. District Court for the Southern District of New York and my reply in support of my motion to quash.

2.     I am not a party to the underlying action against Orly Genger, my wife, brought by her brother Sagi Genger in the U.S. District Court for the Southern District of New York, nor was I counsel of record in that action.

**My Home in Austin**

3.     I am a resident of Texas and have been since 2010.

4.     I live at 210 Lavaca Street, Unit 1903 in Austin (the W Residences), my (only) homestead-protected property.  Prior to living in Austin, I lived in Houston, Texas.

5.     I am an attorney duly admitted to practice law in Texas.

6.     I am registered to vote in Texas.  I have a Texas Driver's license.

7.     I was the Vice-Chairman, President and Chief Operating Officer of Southern Union Company, which was our local Austin gas company previously headquartered at 5th and Lavaca Street.

8.      While I was an officer and director of Southern Union, I remained a partner of the Kasowitz Benson Torres LLP law firm but was almost never present in the firm's offices. Kasowitz has offices in ten cities, including New York and Houston.

9.      After the sale of Southern Union in 2012 to Energy Transfer, I was a consultant to Energy Transfer, which is headquartered in Dallas, until approximately 2015.  My non-competition agreement with Energy Transfer expired in 2017.

10.     One of my children graduated from UT Austin, and another is there now.

11.     I am on the Board of Directors of the Blanton Museum of Art at UT and The Contemporary Austin.

12.     I am actively involved in various Austin philanthropies, including the Seton Fund, the Chancellor's Circle at UT, the Long Center, the Austin Ballet, and others.

13.     I have been a UT football season ticketholder for years.

14.     I am a lifetime member of the Texas Exes. I am a member of the UT Club. I was a close personal friend of Frank Denius for more than 25 years and gave his eulogy last year.

15.     Sagi repeatedly argued in the underlying New York action that "it was Texas and only Texas" where Orly and I reside.  He was correct as to me. Attached hereto as Exhibit 1 is a true and correct copy of excerpts from Sagi's filings making those arguments.

**The Post-Judgment Subpoena**

16.     On March 7, 2019, the day Orly was deposed in the underlying New York action here in Austin, Sagi's counsel John Dellaportas attempted to leave a copy of the instant subpoena at the security desk in the building lobby of my home at 210 Lavaca Street when I was not there. Upon learning of this, Michael Bowen of the Kasowitz firm informed counsel for Sagi that I had

Herschmann Declaration, p. 2

authorized him to accept email service of the subpoena to me in Austin on the condition that my deposition take place on a mutually agreeable date in Austin.

17.     The subpoena Sagi subsequently served by email calls for production of documents one block from my home in Austin, and sets a location for deposition one block from my home in Austin, the same location where Orly was deposed in March.  Both the locations in the subpoena and my home in Austin are a few blocks from the federal courthouse in Austin, which is more convenient and less burdensome for me than the Southern District of New York.

18.     No other subpoenas have been served on me and I have never made any motion in New York related to any of the issues contained in the instant motion to quash and/or for a protective order.

19.     The court in the underlying New York action has not ordered me to do anything related to this subpoena or directed me to produce any documents.  None of my personal issues that are addressed in the instant motion are being heard or considered in New York.

20.     Sagi has conducted post-judgment discovery, and the court in the underlying New York action has never consolidated Sagi's post-judgment discovery in various parts of the country. In fact, Sagi has litigated post-judgment disputes in the U.S. District Court for the Southern District of Florida, Cause No. 1:18-MC-2429 8-KMM, regarding the subpoena he served on his father, Arie Genger, who lives in Florida, even though his father's counsel had appeared before the New York court for certain issues.

21.     In his motion, Sagi refers to purported contacts I have with New Jersey.  In fact, I do not own any property in New Jersey, and have not for many years.

22.     I do not live in New Jersey.  I do not vote in New Jersey.  I do not have a New Jersey driver's license.

Herschmann Declaration, p. 3

23. The house in New Jersey that Sagi references is owned by a trust whose beneficiaries are my adult children. That house was transferred to the trust years ago. I am the trustee. As the documents Plaintiff submits to this Court show, the address for the trust is my home here in Austin on Lavaca Street. (Dckt. 3-10; P's Ex. A-8).

24. I have not lived in New York for almost 20 years.

25. I do not maintain an active full-time law practice in New York. Sagi's claim that the Kasowitz website suggests that fact is false; it nowhere makes that statement. Other than doing pro bono work related to my wife, I have only appeared for one court appearance in New York during the last decade.

26. My adult children and I own a house in Tel Aviv, Israel through an Israeli entity. In Sagi's post-judgment discovery against Orly, he demanded documents related to that house from Orly, who did not have any documents.

27. Magistrate Judge Freeman asked me "Can you please produce documents sufficient to show who owns the house [in Israel]. (Dkt. 3-5 at 118, (P's Ex. A-3, Trans. p. 117)). I voluntarily agreed, subject to the documents being designated "Attorney's Eyes Only" in the Protective Order to which that Orly is a party, to which Sagi's counsel agreed.

**The Premarital Agreement**

28. I met my wife Orly Genger in Austin in 2014. We negotiated and signed a Premarital Agreement in Austin in May 2016.

29. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It was later reaffirmed in Austin in November 2016.

30. We were married in September 2016.

Herschmann Declaration, p. 4

31.  The validity and enforceability of the Premarital Agreement were upheld by the Travis County District Court by Judge Tim Sulak in Austin on October 24, 2016 in Cause No. D-1-16-004247.

32.  ████████████████████████████████████████████

████████████████  I have confirmed that there are no drafts of the Premarital Agreement that list Orly's separate assets.  The attorney that represented me in the Premarital Agreement, Michael Burnett of the Austin law firm Burnett Turner PLLC, has similarly confirmed that there are no drafts of the Premarital Agreement that list Orly's separate assets.

**The Secured Promissory Note**

33.  As demonstrated by the wire transfer confirmations from the Kasowitz law firm and from my bank, I loaned $2,000,000 to Orly and her father Arie Genger pursuant to a Promissory Note, and, on the afternoon of December 29, 2016 and at Orly's request, I wired the $2,000,000 to the Kasowitz law firm so Orly could satisfy part of her legal fees owed the firm. Attached here to as Exhibit 2 is the wire transfer from my bank and wire confirmation from the Kasowitz firm.

34.  The Promissory Note ███████████████████████████████████
██████

35.  The  Promissory  Note  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Herschmann Declaration, p. 5

███████████████████████████████████████████████████████████████████

██████  (Dck. 5-B, Note filed under seal).

36.    To that end, I filed a UCC financing statement on Orly and Arie's assets in May

2017, months before Sagi commenced the underlying New York action in October 2017.

37.    The Promissory Note ███████████████████████████. Plaintiff's

counsel did not, apparently for strategic reasons, ask Orly or her father Arie about the reference to

that date at their depositions. Sagi can ask me about this at my deposition if he so chooses.

38.    Additionally, I contingently perfected a lien on Orly's half of our homestead on

Lavaca Street through a Deed of Trust filed in Travis County in September 2018. As the Deed of

Trust states, it is merely a ***contingent*** perfection of the lien, ██████████████████

████████████████  and has not effected the transfer of any of Orly's assets to me. Orly's

interest in our apartment continues to be hers.

39.    The Deed of Trust is subject to conditions that have not occurred yet and likely will

never occur: including a final judicial determination that I and Orly have waived our homestead

protection in our Austin apartment. No one has commenced a proceeding seeking to challenge

Orly's or my homestead protection. And the Texas Constitution and the Texas Property Code

prohibit Orly's waiver of the homestead protection without my joinder, which has not occurred.

Tex. Const. Art. XVI Section 50(B) and Tex. Prop. Code Section 41.004.

40.    The Deed of Trust does not affect valid previously recorded liens.

41.    Sagi claims that the $2,000,000 Promissory Note is part of some type of fraudulent

conveyance to improperly frustrate his judgment. It is not. Orly did not transfer anything to me;

instead she borrowed money from me to pay part of the legal fees she incurred for defending and

prosecuting years of litigation with her brother. Sagi was found liable for fraud in one of those litigations and for breaching his fiduciary duties to Orly in another.

42. Contrary to Sagi's claim, the Kasowitz law firm did not represent Orly pro bono, except to a very limited extent. In the transcript submitted by Sagi at Dckt. 3-17, I informed a court in New York that in that one state court matter, the Kasowitz attorneys provided the **trial work** pro bono, but all pre- and post-trial attorney work on that one matter was billed, as were all costs and staff and paralegal time. I personally did not charge my time to Orly.

43. Other than that one state court matter, Orly is charged the full amount by the Kasowitz firm, which the retainer agreement(s) confirm. I understand the Kasowitz firm has produced the retainer agreements with Orly and records showing moneys paid (including the money I sent the Kasowitz firm on her behalf reflected in the Promissory Note), credited and amounts still outstanding.

**My Separate Assets** and Tax Returns

44. I have no joint bank or household accounts with my wife Orly Genger. We have not commingled any of our assets. Orly does not have access to my bank accounts. We do not share any credit cards. My assets are separate and apart from Orly's.

45. These reasonable and necessary household expenses include homeowner's association (HOA) fees, property taxes, and utilities to the apartment in Austin, and none of that goes to Orly. I have given my wife cash to buy food but no other funds and definitely nowhere near $10,000 total.

46.     My personal bank account and charge card statements show my personal expenditures unrelated to Orly, and include those reasonable and necessary household expenses described above.  My personal bank account and charge card statements show what I chose to spend my money on, which have nothing to do with Orly, and it would be highly invasive and harassing to be ordered to turn over my personal, separate expenditures.  It would also be very time-consuming, costly and burdensome for me to go through all my bank and charge card statements to segregate what were reasonable and necessary household expenses versus my personal expenditures.

47.     My wife Orly and I have never filed joint tax returns.  Orly has already produced her personal, separately-filed tax returns to Sagi Genger in post-judgment discovery.

48.     I did not deduct any of the $2,000,000 that I loaned Orly to pay part of her legal bills on my tax returns.  Nor could it be deductible because it was and is a loan.

49.     My separately-filed tax returns contain highly confidential and private information about my personal finances, unrelated to my wife Orly.

**Privileged Information**

50.     Michael Rosenbloom and Jack Schulman are attorneys who have represented me personally for many years.

51.     All of my communications with them on the topics in the subpoena were confidential communications for the purpose of seeking or providing legal advice or attorney work-product. It would serve no purpose and it would be unduly burdensome, time-consuming, costly and inefficient to require me (or them) to log each individual email, call, or letter between us in a privilege log.

52.     Michael Bowen is an attorney and one of my law partners who tried with me the first case by Orly against Sagi four years ago.

53.     All of my communications with Mr. Bowen on the topics in the subpoena were confidential communications for the purpose of seeking or providing legal advice or attorney work-product.  It would serve no purpose and it would be unduly burdensome, time-consuming, costly and inefficient to require me (or him) to log each individual email, call, or letter between us in a privilege log.

I hereby declare under penalty of perjury that the foregoing is true and correct.


Executed on April 12, 2019.


_____
Eric Herschmann

# Exhibit B

1   ████████████████████████

████████████████████████████████████████████

████████████████

4       Q.    Okay.   What about credit cards; do you have any

5   credit cards?

6       A.    I have a credit card.

7       Q.    What credit card do you have?

8       A.    I think it's Visa.

9       Q.    Okay.

10      A.    I think Bank of ████████ .

11      Q.    Any other credit cards?

12      A.    No.

13      Q.    Do you have your name on a credit card where

14  someone else may be an account holder, such as your

15  husband?

16      A.    No.

17  ████████████████████████████████████████████

████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████

████████████████████████



# Exhibit C

DUPLICATE COPY
Account Ending 3-13007

## Detail Continued

|  |  |  |  | Foreign Spend | Amount |
|---|---|---|---|---|---|

**ORLY GENGER**
Card Ending 3-12017

|  |  |  |  | Foreign Spend | Amount |
|---|---|---|---|---|---|

| Date | Merchant |  | Location | State |  | Amount |
|---|---|---|---|---|---|---|
| 02/05/17 | NORDSTROM | | AUSTIN | TX | | $644.09 |
| | 8002855800 | | | | | |
| | Description | Price | | | | |
| | DEPT. STORES | $644.09 | | | | |
| 02/05/17 | NORDSTROM | | AUSTIN | TX | | $184.03 |
| | 8002855800 | | | | | |
| | Description | Price | | | | |
| | DEPT. STORES | $184.03 | | | | |

**Centurion® Card**

**DUPLICATE COPY**

Closing Date 03/02/17

Account Ending 3-13007

| Detail Continued | | | | | | |

| | | | | | Foreign Spend | Amount |
|---|---|---|---|---|---|---|
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$1,077.09 | AUSTIN | TX | | $1,077.09 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$644.09 | AUSTIN | TX | | $644.09 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$193.77 | AUSTIN | TX | | $193.77 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$184.03 | AUSTIN | TX | | $184.03 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$389.70 | AUSTIN | TX | | $389.70 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$703.63 | AUSTIN | TX | | $703.63 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$541.25 | AUSTIN | TX | | $541.25 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$455.73 | AUSTIN | TX | | $455.73 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$184.03 | AUSTIN | TX | | $184.03 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$671.15 | AUSTIN | TX | | $671.15 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$714.45 | AUSTIN | TX | | $714.45 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$958.01 | AUSTIN | TX | | $958.01 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$644.09 | AUSTIN | TX | | $644.09 |
| 02/05/17 | NORDSTROM<br>8002855800<br>Description<br>DEPT. STORES | Price<br>$110.42 | AUSTIN | TX | | $110.42 |

19-13895-jlg    Doc 241-1    Filed 05/04/20    Entered 05/04/20 17:00:28    Exhibit 1
Pg 63 of 67
Case 1:19-cv-00181-VSB-DCF    Document 202-3    Filed 09/06/19    Page 4 of 4
DUPLICATE COPY
Account Ending 3-13007
p. 10/15

## Detail Continued

| | | | | | Foreign Spend | Amount |
|---|---|---|---|---|---|---|
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $947.19 | AUSTIN | TX | | $947.19 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $644.09 | AUSTIN | TX | | $644.09 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $514.19 | AUSTIN | TX | | $514.19 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $416.76 | AUSTIN | TX | | $416.76 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $699.22 | AUSTIN | TX | | $699.22 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $184.03 | AUSTIN | TX | | $184.03 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $644.09 | AUSTIN | TX | | $644.09 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $815.12 | AUSTIN | TX | | $815.12 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $644.09 | AUSTIN | TX | | $644.09 |
| 02/05/17 | NORDSTROM 8002855800 Description DEPT. STORES | Price $644.09 | AUSTIN | TX | | $644.09 |

# Exhibit D



|  | OFFICE | MAIL |
|---|---|---|
|  | 500 West 5th Street, Suite 1010 | P.O. Box 302068 |
|  | Austin, Texas 78701 | Austin, Texas 78703 |

jlloyd@millerlloyd.com | MILLERLLOYD.COM
T: 512.694.5578 | F: 512.532.6882

May 2, 2019

**John Dellaportas**

101 Park Avenue
New York, NY 10178

Via Email jdellaportas@kelleydrye.com

**Re: Response to Letter of April 30, 2019 regarding Non-Party Eric Herschmann**

Dear Mr. Dellaportas:

In response to your April 30, 2019 letter, we decline your demand that we withdraw the Declaration of Eric Herschmann dated April 12, 2019 and filed in Cause No. 19-MC-0366.

Your demand rests on your belief that Mr. Herschmann's declaration was "woefully untrue—in a single day (February 5, 2017), Ms. Genger spent over $14,000 at a Nordstrom's in Austin, a bill paid from Mr. Herschmann's funds." Your belief and that allegation are incorrect.

Your letter, however, shows that you have apparently accessed private financial records belonging to Mr. Herschmann. I understand that you previously represented to the Court that you did not subpoena Mr. Herschmann's personal information and the Court directed you to provide advance notice if a third party "might have a confidentiality interest implicated."

Please immediately respond in writing whether you have obtained any of Mr. Herschmann's personal information via subpoena or otherwise, and if so, when and how. If you have issued any subpoenas that resulted in production of Mr. Herschmann's personal information, please provide copies of those subpoenas and any documents or information (with cover letters) you have received in response.

Finally, with regards to your demand for a response within 24 hours, that demand and your general rhetoric is unhelpful.

I remain available to discuss.

Best regards,

**Jennifer A. Lloyd, Esq.**

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NY 10178**

———

(212) 808-7800

WASHINGTON, DC

LOS ANGELES, CA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICE

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

JOHN G. DELLAPORTAS

May 9, 2019

**Via ECF**

Hon. Debra Freeman
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Genger v. Genger*, **Index Nos. 1:17cv8181, 1:19-mc-00210**

Dear Judge Freeman:

On behalf of judgment creditor Sagi Genger, we write in brief response to last night's letter from Jennifer Lloyd, Esq., counsel to non-party Eric Herschmann.

To recap, Mr. Herschmann—who is the husband of the judgment debtor, and a member of the New York Bar admitted to practice in this Court—submitted a declaration in support of his motion to quash Sagi's subpoena for financial and tax information from him. In it, Mr. Herschmann swore to this Court, under penalty of perjury, that: "We do not share any credit cards" and that "I have given my wife cash to buy food but no other funds and definitely nowhere near $10,000 total." Now, however, his story has changed.

Specifically, Mr. Herschmann now concedes that: "For a period of time,[1] [Orly] had an AMEX card bearing her name under Mr. Herschmann's account." While he claims that certain Nordstrom's charges were reversed, he does not dispute that he funded tens of thousands of dollars in *other* AmEx charges made by Orly. Indeed, in at least four different months, Mr. Herschmann funded over $10,000 in his wife's purchases *for that month alone*. In other words, Mr. Herschmann's declaration contains at least two verifiably false statements.[2]

---

[1]   Mr. Herschmann does not specify the "period of time." Based on the records, the period is their marriage. Orly was first issued a card in October 2016 (for a $2500 annual fee), which she has used continuously thereafter through at least this January. For the Court's reference, we append hereto relevant excerpts from Orly's AmEx bills.

[2]   This is not the only issue of false testimony Sagi has had to confront in this case. A motion to strike another one of Mr. Herschmann's false declarations is currently pending before Judge Broderick. *See* Doc. 201.

**K E L L E Y   D R Y E   &   W A R R E N** LLP

Hon. Debra Freeman
May 9, 2019
Page Two

Both of Mr. Herschmann's false statements are material to this matter. Judgment enforcement discovery fast becomes ineffectual when a debtor and spouse feel free to conceal accounts, even when speaking under oath. That is particularly so in this case, where Orly has granted her husband (pursuant to backdated documents) a $2 million lien against her future income. If, as it now appears, Mr. Herschmann is funding his wife's lavish spending, then the lien is just a circular end-run around Sagi's judgment.

Ms. Herschmann also contends that "Sagi's questions about [his] declaration should be dealt with at a deposition." Given the track record here, it is perfectly reasonable for Sagi to seek objective documentation and not simply rely upon unverifiable testimony.

Next, Mr. Herschmann argues that "Motions to strike are viewed with disfavor and [are] infrequently granted." That may be so in most cases; however, this is no ordinary case. The movant here is demanding relief from this Court premised on a declaration he now admits to be false. Yet he refuses to withdraw even his declaration, let alone his motion.

Lastly, while Mr. Herschmann disparages our "1822 case," the Supreme Court still subscribes to the doctrine of *falsus in uno, falsus in omnibus*. *See United States v. Castleman*, 572 U.S. 157, 182 (2014). If ever there were a case in which the principle should be applied, it is this one. Accordingly, Sagi respectfully requests that Mr. Herschmann's declaration be struck *in toto*, and that the motion to quash on which it is based be denied as well.

We thank the Court for its consideration.

Respectfully submitted,

John Dellaportas

Encl.

cc:   Via Email (jlloyd@millerlloyd.com)
      Jennifer A. Lloyd, Esq.
      Counsel to Non-Party Eric Herschmann