UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

*In re* ORLY GENGER,

      Debtor.

Chapter 7

Case No. 19-13895 (JLG)

**Motion of the Orly Genger Trust, by its Trustee Michael Oldner,
Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order
Confirming that the Automatic Stay does not
Apply to Certain Non-Bankruptcy Litigations**

CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Blvd
Garden City, NY 11530
(516) 296-9124
*Attorneys for the Orly Genger Trust,
by its Trustee Michael Oldner*

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361
*Attorneys for the Orly Genger Trust,
by its Trustee Michael Oldner; Recovery Effort, Inc.;
and Manhattan Safety Maine, Inc.*

## Table of Contents

INTRODUCTION ...................................................................................................................1

JURISDICTION AND VENUE...........................................................................................3

PROCEDURAL HISTORY....................................................................................................3

      I.     The Bankruptcy Case .................................................................................3

           A.     Background..............................................................................3

           B.     The Proposed "Settlement"..................................................4

      II.     The MSM Action ......................................................................................5

      III.    The Lawyers Action ..................................................................................6

STATEMENT OF FACTS .....................................................................................................6

      I.     The Genger Divorce and Related Litigation ...........................................6

      II.    New York State Court Litigation .............................................................9

      III.    The 2013 Resolution of the Derivative Claims .......................................9

RELIEF REQUESTED .......................................................................................................11

BASIS FOR RELIEF REQUESTED ..................................................................................11

ARGUMENT .......................................................................................................................12

      I.     The automatic stay does *not* apply. ......................................................13

           A.     The Actions involve *non*-debtors only. .............................13

           B.     The Actions do *not* involve property of the Debtor's estate. ......................13

                1.     The MSM Action Does Not Involve Property of the Estate. ........14

                2.     The Lawyers Action Does Not Involve Property of the Estate. ....16

      II.    The stay should not be extended to the Actions......................................16

           A.     This is not a case in which the stay should be extended...........................16

           B.     The Chapter 7 Trustee has had sufficient time to consider the Actions. ..18

           C.     The Trustee is seeking a stay in furtherance of an insider transaction with no cognizable benefit to the estate...................................................20

III.    If the Court declines to issue an order confirming that the stay does not apply
        to the Actions, it should nonetheless permit discovery in the District Court. .......21

RESERVATION OF RIGHTS .................................................................................................23

CONCLUSION ........................................................................................................................24

# Table of Authorities

## Cases

*CAE Indus. Ltd. v. Aerospace Holdings Co.,*
    116 B.R. 31 (S.D.N.Y. 1990) ............................................................22

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995) ......................................................................22

*Genger v. Genger* ("*Genger 1*"),
    966 N.Y.S.2d 346 (Sup. Ct. 2013) ....................................................9

*Genger v. Genger* ("*Genger 2*"),
    121 A.D.3d 270 (1st Dep't 2014) ...........................................6, 7, 8, 9

*Genger v. Genger* ("*Genger 3*"),
    76 F. Supp. 3d 488 (S.D.N.Y. 2015) .............................................7, 8

*Genger v. TR Inv'rs, LLC,*
    26 A.3d 180 (Del. 2011) .............................................................9, 10

*Glenclova Inv. Co. v. Trans-Res., Inc.,*
    874 F. Supp. 2d 292 (S.D.N.Y. 2012) ...............................................7

*In re Granite Partners, L.P.,*
    194 B.R. 318 (Bankr. S.D.N.Y. 1996) ........................................19, 22

*In re Iridium Operating LLC,*
    478 F.3d 452 (2d Cir. 2007) ...........................................................20

*In re Kleist,*
    114 B.R. 366 (Bankr. N.D.N.Y. 1990) ............................................12

*In re Lazarus Burman Assocs.,*
    161 B.R. 891 (Bankr. E.D.N.Y. 1993) ........................................17, 22

*In re McCormick,*
    381 B.R. 594 (Bankr. S.D.N.Y. 2008) .............................................17

*In re Quackenbush,*
    339 B.R. 845 (Bankr. S.D.N.Y. 2006) .............................................12

*In re Residential Capital, LLC,*
    480 B.R. 529 (Bankr. S.D.N.Y. 2012) ........................................21, 22

*In re The 1031 Tax Grp., LLC,*
    397 B.R. 670 (Bankr. S.D.N.Y. 2008) ....................................18, 19, 22

*Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC,*
    2014 WL 4783008 (S.D.N.Y. Sept. 25, 2014) ..............................21, 22

*Matter of Estate of Sanders,*
    602 N.Y.S.2d 742 (Sur. 1991) ........................................................................................... 15, 18

*Matter of Hecht,*
    54 B.R. 379 (Bankr. S.D.N.Y. 1985) ........................................................................... 12, 15, 18

*Queenie, Ltd. v. Nygard Int'l,*
    321 F.3d 282 (2d Cir. 2003) ............................................................................................... 17, 18

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.,*
    121 F. Supp. 3d 321 (S.D.N.Y. 2015) ...................................................................................... 13

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    429 B.R. 423 (Bankr. S.D.N.Y. 2010) ..................................................................................... 19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    491 B.R. 27 (S.D.N.Y. 2013) ................................................................................................... 17

*TR Inv'rs, LLC v. Genger,*
    2010 WL 2901704 (Del. Ch. July 23, 2010) .............................................................................. 8

*TR Inv'rs, LLC v. Genger,*
    2010 WL 3279385 (Del. Ch. Aug. 9, 2010) .............................................................................. 8

*TR Investors, LLC v. Genger,*
    2013 WL 603164 (Del. Ch. Feb. 18, 2013) ............................................................................. 10

*Trustees of the Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.,*
    2005 WL 273017 (S.D.N.Y. Feb. 3, 2005) .............................................................................. 16

**Statutes**

11 U.S.C. § 105 .................................................................................................................1, 3, 12, 17

11 U.S.C. § 362 ...................................................................................................................... passim

11 U.S.C. § 541 .........................................................................................................................11, 13

28 U.S.C. § 157 ................................................................................................................................. 3

28 U.S.C. § 1334 ............................................................................................................................... 3

28 U.S.C. § 1408 ............................................................................................................................... 3

28 U.S.C. § 1409 ............................................................................................................................... 3

The Orly Genger 1993 Trust ("Orly Trust"), by its trustee Michael Oldner, Recovery Effort, Inc. ("REI"), and Manhattan Safety Maine, Inc. ("MSM" and, together with REI, "Plaintiffs," and together with the Orly Trust, "Movants"), by and through their counsel, hereby submit this motion ("Motion") for entry of an order pursuant to sections 105(a) and 362(j) of chapter 11 of title 11 of the United States Code, §§ 101−1532 *et seq.* ("Bankruptcy Code") confirming that the automatic stay of 11 U.S.C. § 362(a) does not apply to the following pre-petition actions involving all non-debtor parties pending before the United States District Court for the Southern District of New York ("District Court"): (i) *Recovery Effort Inc. v. Zeichner Ellman & Krause LLP and Wachtel Missry*, 19-cv-05641-VSB ("Lawyers Action"); and (ii) *Manhattan Safety Maine, Inc. and Recovery Effort, Inc. v. Michael Bowen, Arie Genger, Arnold Broser, David Broser, Genger Litigation Trust, ADBG LLC and Tedco, Inc.*, 19-cv-05642-MKV-DCF ("MSM Action," and together with Lawyers Action, "Actions").

## **INTRODUCTION**

Movants respectfully submit that the Actions should be allowed to move forward. Movants request that this Bankruptcy Court enter an order confirming that the automatic stay of section 362(a) of the Bankruptcy Code does not apply to either of the Actions because: (i) the parties to the Actions are exclusively non-debtors; and (ii) the claims asserted in the Actions are unique to the Orly Trust (and its assignee REI and the creditor MSM, plaintiffs in the Actions), and therefore, by definition, do not affect property of the estate. Accordingly, the automatic stay does not apply to the Actions and there is no basis for the extension of the stay to the Actions.

Nonetheless, the Chapter 7 Trustee has agreed, in her 9019 Motion and Settlement Agreement ("9019 Motion," dkt. no. 248), to support a seven-month stay of the MSM Action. (The Chapter 7 Trustee has not formally stated that the Lawyers Action should be stayed, but her counsel has informally suggested as much.) Movants submit that the Actions—each of which

involves exclusively non-debtor parties and asserts particularized claims that do not affect property of the bankruptcy estate—should be permitted to move forward despite the pendency of this Bankruptcy Case.

The Actions seek to recover $32 million in settlement proceeds ("Proceeds") payable under a 2013 Settlement Agreement ("2013 Settlement") and related damages sustained by the Orly Trust arising out of the improper diversion of the Proceeds. That 2013 Settlement resolved derivative claims brought on behalf of the Orly Trust. But the Proceeds were improperly diverted from the Orly Trust—the real party in interest—to Arie Genger, David and Arnold Broser, and/or entities controlled by them ("MSM Defendants"). In the MSM Action, the plaintiffs seek to recover those Proceeds from the MSM Defendants. In the Lawyers Action, the plaintiff seeks to recover damages from lawyers who colluded with the MSM Defendants to divert the Proceeds.

The Debtor in this bankruptcy—Orly Genger—is *not* a party to either Action. Nor does either action involve property of the Debtor's estate. The Debtor has repeatedly acknowledged that she has no claim or right to the Proceeds at issue in these Actions. There is, in short, no justification whatsoever to extend the automatic stay to these Actions, and Movants submit that they should be able to proceed with the Actions despite the pendency of the Bankruptcy Case.

At most, this Court should impose a partial stay that allows discovery to proceed in the Actions. Discovery between non-debtors cannot possibly harm the Debtor, nor her bankruptcy estate. If anything, information uncovered in discovery would be helpful to the Trustee in evaluating how best to marshal assets for the estate. On the other hand, to prevent Movants from pursuing non-debtor discovery in pre-petition lawsuits based on the Chapter 7 Trustee's unsupported suggestions of an impact on the bankruptcy estate would risk the loss of relevant evidence and be unduly prejudicial to Movants.

Movants seek to prosecute the claims asserted in the Actions against the non-debtor

parties therein without further delay and, by this Motion, Movants seek entry of an order

confirming that the automatic stay does not apply before proceeding with the litigation of the

Actions.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).

The statutory predicates for the relief sought in this Motion are sections 105(a) and 362 of

the Bankruptcy Code.

## PROCEDURAL HISTORY

### I.    The Bankruptcy Case

#### A.    Background

On July 12, 2019 ("Petition Date"), Orly Genger filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code ("Bankruptcy Case") in the United States Bankruptcy Court

for the Western District of Texas.

Following a determination of a motion to transfer venue or alternatively to dismiss the

proceeding pending in Texas, the Bankruptcy Case was transferred to the United States

Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") on December 10,

2019, and is now pending before Judge James L. Garrity.

On December 11, 2019, Deborah Piazza was appointed as chapter 7 trustee ("Chapter 7

Trustee" or "Trustee").

On March 4, 2020, May 5, 2020, and May 22, 2020, the Bankruptcy Court conducted

status conferences in the Bankruptcy Case wherein, among other things, counsel to the

Chapter 7 Trustee described the status of litigations pending in various courts involving the parties in interest in the Bankruptcy Case.

On April 17, 2020, the Chapter 7 Trustee filed a *Status Report of Pending Actions* ("Status Report"), dkt. no. 234. The Lawyers Action is listed in the Status Report as Item No. 10 and the MSM Action is listed in the Status Report as Item No. 3, and set forth therein are the Chapter 7 Trustee's arguments as to why the Actions allegedly have an impact on the bankruptcy estate.

Notwithstanding the Chapter 7 Trustee's allegations that each of the Actions allegedly implicate property of the estate, the Chapter 7 Trustee has taken no formal action in either the Bankruptcy Court or the District Court to seek to extend the automatic stay to either of the Actions.

### B.    The Proposed "Settlement"

On May 21, 2020, the Chapter 7 Trustee filed the 9019 Motion seeking to approve: (a) the sale of certain claims the Chapter 7 Trustee to Claims Pursuit, Inc.; and (b) a financing agreement with ADBG, LLC (a defendant in the MSM Action) ("Trustee's Agreement," dkt. no. 248-1).[1]

As part of the proposed Trustee's Agreement, David and Arnold Broser (also defendants in the MSM Action), through their entity ADBG, will pay $300,000 to the bankruptcy estate in the form a "loan." 9019 Motion ¶ 35. Then, "[i]n exchange for [this] consideration," the Trustee's Agreement requires that the Chapter 7 Trustee "promptly" seek a stay of the MSM Action until December 31, 2020. *See* Trustee's Agreement ¶ 5(a). During the stay period, the Trustee will "decide[] on the best path forward on the Potential Avoidance Action," by which

---

[1] Although the 9019 Motion is styled as a motion to approve a settlement, no disputes are settled by the Trustee's Agreement and Bankruptcy Rule 9019 is inapplicable to the 9019 Motion.

she refers to a possible action against the defendants in the MSM action (David and Arnold
Broser, ADBG, and Arie Genger) relating to the 2013 Settlement Proceeds. *See* 9019 Motion
¶ 63. The 9019 Motion is silent as to the Lawyers Action.

At the status conference held on May 22, 2020, counsel to the Movants advised the Court
of their desire to move forward with the Actions pending before the District Court. Given the
Chapter 7 Trustee's assertion in the Status Report and on the record of the proceedings of its
position that the Actions fall within the scope of the automatic stay, out of an abundance of
caution, the Movants seek the relief set forth herein.

## II.    **The MSM Action**

The MSM Action was filed on June 17, 2019, prior to the Petition Date. The MSM
Action seeks to recover $32 million in Proceeds payable under the 2013 Settlement of the
derivative litigation which were improperly diverted from the Orly Trust—the real party in
interest—to Arie Genger, David and Arnold Broser, and/or entities controlled by them.

The MSM defendants initially lobbied the bankruptcy trustee in Texas to seek a stay.
When that proved unsuccessful, the MSM defendants sought a stay of the proceeding pending in
the District Court purportedly due to the pendency of the Bankruptcy Case. (ECF no. 53.) The
District Court did not rule on the merits of those arguments. Instead, by minute order dated
February 6, 2020, following the request of the newly-assigned New York Chapter 7 Trustee, and
with the agreement of all parties, the District Court entered an interim stay of the action until
March 30, 2020. (ECF no. 60.) Movants consented to this stay as a professional courtesy to allow
the Chapter 7 Trustee to familiarize herself with the case and seek a negotiated resolution. At the
request of the Chapter 7 Trustee, the interim stay was extended on consent of the parties to May
5 (ECF no. 62) and to May 22, 2020 (un-numbered ECF order dated May 6, 2020).

### III.   The Lawyers Action

The Lawyers Action was also filed on June 17, 2019, approximately a month prior to the Petition Date. In the Lawyers Action, the plaintiff seeks to recover damages from the lawyers who colluded with the MSM Defendants to divert the Proceeds of the derivative litigation.

The defendants in that Action have never sought a stay due to the bankruptcy filing despite being on notice of the events taking place before this Bankruptcy Court. (Indeed, one of the two defendant law firms (Zeichner Ellman) has appeared in the Bankruptcy Case.)

The plaintiff in the Lawyers Action (REI) filed its amended complaint on February 20, 2020. (ECF no. 34.) Defendants filed motions to dismiss on March 30, 2020 (ECF nos. 42–46), and plaintiff filed its opposition papers on May 7 (ECF no. 49.) Following the May 5, 2020 status conference in the bankruptcy case, at the request of the Chapter 7 Trustee, the court in the Lawyers Action stayed the proceedings through May 22, 2020. (ECF no. 50.)

### STATEMENT OF FACTS

As noted above, the Actions relate to $32 million in Proceeds from the 2013 Settlement that arose from a derivative suit brought on behalf of the Orly Trust. The parties' history, as led to this 2013 Settlement, is detailed herein.

### I.   The Genger Divorce and Related Litigation

In 1985, Arie Genger founded Trans-Resource, Inc. ("TRI"), a company that produces and distributes fertilizer. *Genger v. Genger*, 121 A.D.3d 270, 274 (1st Dep't 2014) ("*Genger 2*"). Until 2001, TRI was a wholly-owned subsidiary of TPR Investment Associates, Inc. ("TPR"). *Id.* The Genger family—Arie, father, Dalia, mother, Orly (the Debtor), daughter, Sagi, son—each held

an interest in TPR. Sagi and the Debtor held indirect interests in TPR through their respective trusts, the Sagi Genger 1993 Trust ("Sagi Trust") and the Orly Trust.[2]

In 2001, a group of investors ("Trump Group") purchased a minority stake in TRI. The Stockholders Agreement ("2001 Stockholders Agreement") governing that purchase placed restrictions on future transfers of TRI stock and provided a right of first refusal to the Trump Group. A transfer that violated those conditions would be void, the shares would revert to TPR, and the Trump Group would have a right to purchase the invalidly transferred shares at their fair market value as of the date of the voided transfer.

In October 2004, Arie and Dalia entered into a divorce settlement. As part of that settlement, TPR transferred the family's interests in TRI to (i) Arie, (ii) the Orly Trust, and (iii) the Sagi Trust ("2004 Transfers").

In 2008, after a dispute between the Trump Group and TRI regarding additional financing, the Trump Group sued TPR in federal court claiming that the 2004 Transfers violated the 2001 Stockholders Agreement and triggered their right of first refusal. *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 296 (S.D.N.Y. 2012).

While that litigation was pending, in 2008, TPR and the Sagi Trust reached a two-part settlement with the Trump Group. (At the time, Sagi controlled TPR.) In the "Main Agreement," TPR and the Sagi Trust agreed to sell the TRI shares purportedly held by the Sagi Trust to the Trump Group for approximately $26.7 million, regardless of whether a court determined that the 2004 Transfers were void. *Genger 2*, 121 A.D.3d at 275; *see Genger v. Genger*, 76 F. Supp. 3d 488, 493 (S.D.N.Y. 2015) ("*Genger 3*"), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). In the

---

[2] Dalia, the Sagi Trust, and the Orly Trust owned a minority stake in TPR through a limited partnership. Arie owned a majority stake in TPR directly.

"Side Letter Agreement," TPR agreed to give the Trump Group the option to buy whatever rights TPR held in the TRI shares purportedly held by Arie and the Orly Trust for approximately $7.4 million and $10.3 million, or 60% less than the price the Trump Group paid for the Sagi Trust's TRI stock. *Genger 2*, 121 A.D.3d at 275; *see Genger 3*, 76 F. Supp. 3d at 493. This option would be trigged only if a court determined that the 2004 Transfers were void, resulting in the legal and/or beneficial ownership of the TRI shares reverting to TPR.

Meanwhile, in 2008, after a dispute over control of TRI's board, the Trump Group filed suit against Arie in Delaware Chancery Court to determine who controlled TRI. In July 2010, the Chancery Court found that the 2004 Transfers *did* violate the 2001 Stockholders Agreement and that the Trump Group had majority control through the Main Agreement with TPR and the Sagi Trust. *TR Inv'rs, LLC v. Genger*, 2010 WL 2901704 (Del. Ch. July 23, 2010), *aff'd*, 26 A.3d 180 (Del. 2011). Then, in August 2010, the court also determined that the 2004 Transfers to Arie and the Orly Trust were invalid and that the stock had reverted to TPR, triggering the Trump Group's option to buy the stock under the Side Letter Agreement. *TR Inv'rs, LLC v. Genger*, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010), *rev'd in part*, 26 A.3d 180 (Del. 2011).

In 2011, the Delaware Supreme Court affirmed that the 2004 Transfers were invalid, which meant that TPR held *record* ownership of the shares purportedly transferred to Arie and the trusts as a result of the 2004 Transfers.[3] The court also found that Arie was personally bound by the Chancery Court's ruling that the transfer out of TPR was void, as Arie was before the court, but that it lacked the power to declare who owned the *beneficial* interests in the shares

---

[3] Of course, as a result of this, the Trump Group obtained record ownership under the 2008 agreements (the Main and Side Letter Agreements) with the Sagi Trust and TPR. *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 200 (Del. 2011).

transferred by TPR to the Orly Trust because it lacked personal jurisdiction over the Orly Trust and TPR. *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 202 (Del. 2011).

## II.     New York State Court Litigation

While the Delaware actions were still pending, the Debtor and her father Arie jointly commenced two state court lawsuits in 2009 and 2010: *Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Dalia Genger, et al.*, Supreme Court, New York County, No. 109749/2009 ("2009 Action"), and *Arie Genger and Orly Genger in her individual capacity and on behalf of The Orly Genger 1993 Trust against Sagi Genger, et al.*, Supreme Court, New York County, No. 651089/2010 ("2010 Action").

The 2013 Settlement at issue here arose out of the 2010 Action. In that action, brought before the Delaware Supreme Court's decision in 2011, Arie and the Debtor (derivatively, on behalf of the Orly Trust) brought claims related to the ownership of the TRI shares and the Trump Group's allegedly unfair purchase price paid to TPR for the Orly Trust and Arie shares (i.e., the 60% discount compared to the price paid for the Sagi Trust's shares). The Debtor purported to bring her claims derivatively *and individually*, but because the Debtor never owned any shares in her individual capacity, her claims were *necessarily derivative* of the Orly Trust. In fact, at *no* point did the Debtor *ever* directly or indirectly own any shares of TRI *as an individual*.

In January 2013, the state court resolved motions to dismiss and permitted the Orly Trust's and Arie's breach of fiduciary duty and unjust enrichment claims to proceed. *Genger v. Genger*, 966 N.Y.S.2d 346 (Sup. Ct. 2013) ("*Genger I*").

## III.     The 2013 Resolution of the Derivative Claims

In February 2013, the Delaware Chancery Court indicated that it would hold a contempt proceeding against Arie for continuing the 2010 Action in New York, in violation of the Chancery Court's prior finding that the share transfers were void. *See TR Investors, LLC v. Genger*,

2013 WL 603164 (Del. Ch. Feb. 18, 2013). Then, in June 2013, with Arie days away from a likely contempt citation, TRI, the Debtor, Arie, the Brosers and their related entities, and the Trump Group entered into the 2013 Settlement.

This 2013 Settlement Agreement provided that the Trump Group would pay $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each) to "resolve all issues, disputes and disagreements between the [parties]," including the "issue of ownership of all [TRI] shares."[4] The Agreement said *nothing*, however, about how the $32.3 million should be distributed. Nonetheless, on July 1, 2013, $17.3 million of the Proceeds of the 2013 Settlement were paid to Arie Genger and the Brosers and/or entities controlled by them. (The Debtor has never made any claim to the Proceeds.)

The Agreement further required the parties to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group," making clear that the purpose of the settlement—and the only material consideration for the $32 million payment—was to release claims belonging to the *Orly Trust*.

But regardless of how the signatories to the 2013 Settlement Agreement chose to dispose of the settlement proceeds, one thing is absolutely clear: The Proceeds represent the monetization of the claims brought *derivatively* by Orly on behalf of the Orly Trust and not by Orly in her individual capacity.[5]

---

[4] The two promissory notes are to be paid upon the happening of various events, some of which have not yet occurred. No payment has yet been made under either promissory note. The two promissory notes are currently held by Michael Bowen, a successor escrow agent under the 2013 Settlement (in place of William Wachtel, the agent named in the Agreement).

[5] Although some of the settlement value is conceivably attributable to Arie's purported TRI shares, the Delaware Supreme Court affirmed that Arie had no ownership interest in the TRI shares, and thus the value of his ownership claim was, at most, de minimis. *See Genger*, 26 A.3d 180.

Without question, the proceeds of a settlement between a derivative plaintiff and a defendant belong to the real party in interest. Indeed, in agreeing to pay $32 million, the Trump Group explicitly said that it had "bargained and paid for" the resolution of the Orly Trust derivative claims. Letter to Judge, *2010 Action* (NYSCEF no. 485), attached as Exhibit A.

### RELIEF REQUESTED

By this Motion, Movants request entry of an order, substantially in the form attached as Exhibit B, confirming that the automatic stay of 11 U.S.C. § 362(a) does not apply to the Actions and authorizing Movants to continue to prosecute the Actions in the District Court despite the pendency of the Bankruptcy Case.

### BASIS FOR RELIEF REQUESTED

Pursuant to section 362(a)(1) of the Bankruptcy Code, the filing of a bankruptcy petition is an automatic stay of "the commencement or continuation … of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added).

Section 362(a)(3) of the Bankruptcy Code also stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541(a)(1) provides that the "estate is comprised of … all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). But an exception to the concept that all interests of the debtor in property become "property of the estate" is found under section 541(c)(2) of the Bankruptcy Code, which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Accordingly, if a trust—such as the Orly Trust—qualifies as a spendthrift trust

- 11 -

under applicable state law and the beneficiary of the trust is the debtor, the property of the trust does not become "property of the estate" within the meaning of section 541(a)(1) and thus the automatic stay of section 362(a)(3) does not apply. *See Matter of Hecht*, 54 B.R. 379, 382 (Bankr. S.D.N.Y. 1985) ("Spendthrift trusts … are excluded from [the] otherwise broad coverage [of 541(a)(1)] by § 541(c)(2)"); *see also In re Quackenbush*, 339 B.R. 845, 848 (Bankr. S.D.N.Y. 2006); *In re Kleist*, 114 B.R. 366, 369 (Bankr. N.D.N.Y. 1990).

Against this backdrop, Movants respectfully request that this Court enter an order confirming that the automatic stay does not apply to the Actions. While not technically a "comfort order" under section 362(j) of the Bankruptcy Code, primarily because here the automatic stay did not "terminate" with respect to the Actions—it never applied—Movants seek similar relief under sections 362 and 105(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(j) ("On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated."); 11 U.S.C. § 105(a) (granting bankruptcy courts the authority to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title").

## **ARGUMENT**

The automatic stay does not apply to either Action. Neither Action is a proceeding against the Debtor. Nor do the Actions involve any property of the Debtor's bankruptcy estate.

Moreover, while there is no request pending before this Bankruptcy Court to extend the automatic stay to the Actions, in the event such relief is requested in the future, Movants submit that the stringent standards required under applicable law to extend the automatic stay to non-debtors have not been satisfied.

Finally, should this Court ultimately deny this Motion or otherwise decide to extend the automatic stay to enjoin the Actions, at a minimum, it should permit discovery to proceed in the

Actions during the pendency of the stay. In addition, any denial of this Motion or extension of the stay should be without prejudice to Movants' right to seek relief from the automatic stay at a later date.

## I.    The automatic stay does *not* apply.

### A.    The Actions involve *non*-debtors only.

As relevant here, the automatic stay applies to "action[s] or proceeding[s] *against the debtor*." 11 U.S.C. § 362(a)(1). Without question, neither Action is one "against the debtor." The captions make that clear: The Debtor has *never* been a party to either Action.

Accordingly, because neither of the Actions constitute actions against the Debtor within the plain and unambiguous meaning of section 362(a)(1) of the Bankruptcy Code, the automatic stay does not apply on that basis.

### B.    The Actions do *not* involve property of the Debtor's estate.

Nor do the Actions involve "any act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). The defendants to the Actions—as well as the Debtor herself—agree that the Proceeds at issue in these Actions do not belong to the Debtor. Rather, as set forth above, the Proceeds represent assets belonging to the Orly Trust—a valid New York State spendthrift trust—which are beyond the scope of the bankruptcy estate pursuant to section 541(c)(2) of the Bankruptcy Code. Moreover, the damage claims asserted in the Actions represent particularized claims for injuries experienced by the Orly Trust.[6]

---

[6] See, e.g., *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 333 (S.D.N.Y. 2015) (distinguishing between general claims held by all creditors and claims that arise from a particularized injury to a single party), *aff'd*, 821 F.3d 349 (2d Cir. 2016).

Indeed, as is clear from the pleadings in the Actions, these Actions seek the recovery of the funds of *only* the Orly Trust. If the Proceeds represented the Debtor's assets in her individual capacity, the claims at issue in the Actions would not exist.

Accordingly, despite the Chapter 7 Trustee's unsupported statements in the Status Report and on the record of the proceedings that the Actions *may* potentially impact property of the bankruptcy estate, the Chapter 7 Trustee has failed to put forth any factual or legal basis to support these allegations and has not requested that this Court extend the automatic stay to the Actions. Indeed, because the assets sought in the Actions are not the property of the bankruptcy estate, there can be no impact on the Debtor or the estate.

### 1.   *The MSM Action Does Not Involve Property of the Estate.*

The Proceeds that the Plaintiffs seek to recover in the MSM Action do not belong to the Debtor. Accordingly, the claim for the return of those wrongfully diverted Proceeds—which is the crux of the MSM Action—is a claim unique and particular to the Orly Trust (and its assignee REI and creditor MSM), and not one belonging to the Debtor or her creditors. The 2013 Settlement purported to resolve all the disagreements between its signatories, but it lists only one: "the issue of ownership of all [TRI] shares." In fact, the only material consideration for the 2013 Settlement was the resolution of TRI ownership. The Debtor, however, *never* owned any shares in TRI. Only her trust—the Orly Trust—owned shares in TRI. (And of course, the litigation from which the 2013 Settlement arose was a *derivative* suit brought *on behalf of the Trust.*) Therefore, she has—as she has repeatedly acknowledged—no claim whatsoever to the Proceeds. *See, e.g.*, Transcript of May 22, 2020 Status Conference, statement of Debtor's counsel, 24:48 ("They disclose the fact that the [D]ebtor does not believe that she has a right to collect on the notes, but

she also discloses the actual litigation and the fact that there is no value to the [D]ebtor.").[7] Rather, the Proceeds represent assets of the Orly Trust which were improperly transferred to the MSM Defendants without fair consideration, and the misappropriation of such funds forms the basis of the claims asserted in the MSM Action.

Of course, one key purpose of a spendthrift trust such as the Orly Trust is to protect property from its beneficiaries' creditors. *Matter of Estate of Sanders*, 602 N.Y.S.2d 742, 742–43 (Sur. 1991) ("The purpose of a New York spendthrift trust is to protect a beneficiary against his own improvidence by giving him an interest that he cannot transfer and that his creditors cannot reach."). Thus, to allow a bankruptcy proceeding against the Trust's beneficiary—the Debtor— to prevent the Trust from asserting its independent legal rights would frustrate its very purpose. *See Matter of Hecht*, 54 B.R. 379, 383 (Bankr. S.D.N.Y. 1985) ("A spendthrift trust prevents the beneficiary from transferring his right to future payments of income or capital; the creditors of the beneficiary are also prevented from attacking the beneficiary's interest to satisfy their claims."), *aff'd sub nom.*, *Togut v. Hecht*, 69 B.R. 290 (S.D.N.Y. 1987).

Moreover, the Chapter 7 Trustee has done nothing to demonstrate its entitlement to the Proceeds and the claims for the return thereof. The Chapter 7 Trustee's suggestions that she believes that the bankruptcy estate—and not the Orly Trust—may potentially hold this property right are insufficient to demonstrate that the claims at issue belong to the bankruptcy estate. It is unduly prejudicial to the Orly Trust and its assignee to have their efforts to recover the Proceeds

---

[7] *See also* Joint Position Letter of Debtor Orly Genger, Arie Genger, ADBG LLC (the entity of David and Arnold Broser), et al., dated April 17, 2020 (dkt. no. 237), at 11, 12, 15 (asserting that the Proceeds do not belong to Orly Genger or the Orly Genger Trust).

Of course, if all parties are wrong—and the Proceeds are an asset of the bankruptcy estate—then that would be a defense to the Actions and not a reason to stay them.

which arose of the *Trust's* claims stymied by the Chapter 7 Trustee's unsupported suggestions, particularly where the Chapter 7 Trustee has had some six months to assess the claims and has taken no affirmative action to extend the stay.

### 2.    *The Lawyers Action Does Not Involve Property of the Estate.*

The claims at issue in the Lawyers Action represent particular claims belonging to the Orly Trust. The claims stem entirely from the defendant attorneys' conduct with respect to the Orly Trust in their facilitating the misappropriation and diversion of the Orly Trust's assets. It is without question that these claims do not belong to the bankruptcy estate.

Theoretical impacts that the pursuit of the Lawyers Action could have on potential claims by the Chapter 7 Trustee against the Trump Group do not give rise to an act to exercise possession or control over property of the estate. *See Trustees of the Sickness & Accident Fund of Local One-L v. Philips Winson, Inc.*, 2005 WL 273017, at *2 (S.D.N.Y. Feb. 3, 2005) (declining to extend stay to non-debtor co-defendant because "[t]he potential harm to the corporation is more in the nature of the possible precedential effect on the debtor's case emanating from a ruling against [the controlling shareholder]. As the Second Circuit noted in *Queenie*, however, that is not an adequate basis for extending the automatic stay to a non-debtor.").

Finally, the Court should reject any argument by the Chapter 7 Trustee that the Lawyers Action should be stayed due to the risk that the plaintiffs therein would win the "race to the malpractice policy." Simply stated, the claims at issue in the Lawyers Action involve non-debtor parties and non-estate property and should not be stayed as a matter of law.

## II.    **The stay should not be extended to the Actions.**

### A.    **This is not a case in which the stay should be extended.**

Moreover, while there is no request to extend the stay currently before this Court, to the extent the Chapter 7 Trustee undertakes her obligation under the Trustee's Agreement to

promptly seek the stay of the MSM Action against her lender, among others, it is submitted that the unique and exceptional circumstances that warrant extension of the automatic stay to non-debtor actions involving non-estate property are not present here.

In rare circumstances, bankruptcy courts may extend the automatic stay under § 105 of the Bankruptcy Code to enjoin litigation and other actions against *non*-debtors when those actions would "interfere with, deplete or adversely affect" the debtor's estate, *In re Lazarus Burman Assocs.*, 161 B.R. 891, 898 (Bankr. E.D.N.Y. 1993) (citing *In re Johns-Manville Corp.*, 33 B.R. 254, 263 (Bankr. S.D.N.Y. 1983)), or "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). "Although section 105 grants broader authority than section 362, nonetheless, [s]ection 105 does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 38 (S.D.N.Y. 2013) ("*Madoff*") (quotations omitted), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014).

But "[t]he extension of the automatic stay under Code Section 362(a) to a nondebtor [is] extraordinary relief." *In re McCormick*, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008). Here, these Actions in no way interfere with or adversely affect the Debtor's estate: They involve parties other than the Debtor and Proceeds to which the Debtor has no claim.

The Second Circuit has provided examples of cases in which the automatic stay may apply to a non-debtor, including: "a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party

- 17 -

defendant." *Queenie*, 321 F.3d at 287–88 (quotations omitted); *see also In re The 1031 Tax Grp., LLC*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (providing additional, non-applicable, examples).

The Actions are unlike all of those examples. No party to the Actions was the Debtor's guarantor or insurer, nor is there such an identity between the Debtor and the Orly Trust that the Debtor may be said to be the real party defendant. (In fact, the *Orly Trust* was the real party in interest in the Debtor's *derivative* suit on the Trust's behalf.) And, as noted above, the purpose of a spendthrift trust is precisely to ensure that creditors of the beneficiary (here, the Debtor) cannot pursue assets of the trust (here, the Orly Trust). *Matter of Estate of Sanders*, 602 N.Y.S.2d at 742–43. This barrier between beneficiary and trust is the very reason that a stay against the Debtor and her assets should not bar the Orly Trust's pursuit of its own assets—which would effectively nullify an important purpose of the trust. *See Matter of Hecht*, 54 B.R. at 383.

The Actions are based on specific misconduct on the part of non-debtors directed at the Orly Trust and, accordingly, these claims could *not* be pursued by any other creditors of the Debtor or by the Chapter 7 Trustee because they do not affect property of the Debtor's estate. As a consequence, there is no basis to extend the stay as to the Actions.

   **B.    The Chapter 7 Trustee has had sufficient time to consider the Actions.**

Finally, the Trustee's delay in deciding whether to get involved in the Actions militates against extending the automatic stay. The Bankruptcy Case was filed on July 12, 2019, and was transferred to this Bankruptcy Court on December 10, 2019. Thus, the Chapter 7 Trustee has now had some six months to investigate the claims at issue and has done nothing more than suggest that the stay *may* apply and request that Movants stay prosecution of the Actions without specifying the authority for doing so.

Yet, despite the passage of half a year since her appointment and nearly a year since the Petition Date, the Chapter 7 Trustee now asserts that "[t]he Trustee will support the continued stay of the MSM Action"—for *another* seven months, until December 31, 2020—"while the Trustee decides on the best path forward on the Potential Avoidance Claim." 9019 Motion ¶ 63.

While the Chapter 7 Trustee has noted that a chapter 7 trustee is given typically two years to determine how to administer an estate, where the claims at issue are subject to pre-petition lawsuits filed by non-debtors against non-debtors, Movants submit that the analysis of these particular claims should be necessarily expedited. Simply stated, the Chapter 7 Trustee should not need 13 months to make a decision here. *See, e.g.*, *In re The 1031 Tax Grp., LLC*, 397 B.R. 670, 686 (Bankr. S.D.N.Y. 2008) (citing *In re Granite Partners, L.P.*, 194 B.R. 318, 338 (Bankr. S.D.N.Y. 1996)) ("[O]ne factor supporting denial of [an injunction or extension of the automatic stay is a] trustee's delay in filing [a] plan, commencing lawsuits against claimants, or reaching consensual agreements with claimants.").

In comparison, in one of the Madoff cases, the stay was extended to non-debtor district court actions because the Trustee was *already* litigating similar claims seeking the same funds in the bankruptcy court. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 432 (Bankr. S.D.N.Y. 2010), *aff'd sub nom.*, *In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (noting that because the trustee had a "pending adversary proceeding," allowing non-debtor litigation to proceed that sought the same funds would "derail the bankruptcy proceedings"), *aff'd sub nom.*, *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir. 2014).

Here, in light of Movants' request that this Bankruptcy Court issue an order confirming that the automatic stay does not apply to the Actions, Movants submit that the Chapter 7 Trustee's delayed approach can no longer serve as an acceptable basis to support a continued stay of the Actions without any authority therefor.

**C.**    **The Trustee is seeking a stay in furtherance of an insider transaction with no cognizable benefit to the estate.**

Moreover, any argument by the Chapter 7 Trustee that the stay of the MSM Action is a critical term of an "integrated settlement" embodied within the Trustee's Agreement and 9019 Motion seeking approval thereof, should be subject to heightened scrutiny given the questionable nature of the proposed insider financing transaction and associated settlement.

As detailed above, as part of the proposed Trustee's Agreement, David and Arnold Broser, through their entity ADBG, seek to pay $300,000 to the bankruptcy estate in the form a "loan" made "on very favorable terms." Then, "[i]n exchange for [this] consideration," the Trustee's Agreement requires that the Chapter 7 Trustee "promptly" seek a stay of the MSM Action against the Brosers and ADBG. *See* Trustee's Agreement ¶ 5. David and Arnold Broser and ADBG, LLC, the purported lender under the Trustee's Agreement, are defendants in the MSM Action.

The proposed transaction simply does not pass the "smell test": (1) the proceeds of the purported "loan" will primarily be used to pay the Chapter 7 Trustee's own law firm; (2) the loan is being made "in exchange" for the Chapter 7 Trustee's agreement to seek a stay of non-bankruptcy litigation pending against the lender and its affiliates in the District Court; and (3) the Chapter 7 Trustee is purportedly using the seven additional months to decide whether to pursue identical claims against its own lender. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (One critical factor in determining whether a proposed settlement under Rule 9019 should be approved is "the extent to which the settlement is the product of arm's length bargaining.").

As will be set forth more fully in Movants' opposition to the 9019 Motion, this "loan" is far from an arm's length transaction. The MSM Defendants are purchasing a stay of the District Court action against them for the next seven months in exchange for $300,000 to be used by the

Bankruptcy Trustee and her law firm. Yet the proposed Trustee's Agreement does not justify

why a 13-month stay is necessary or warranted. *If* the Chapter 7 Trustee truly believed that the

estate held a fraudulent transfer claim, the proceeds of which would generate up to $32 million

for the estate, it defies logic that the Chapter 7 Trustee would sit on this valuable asset for over a

year and take money from the would-be defendants to pay her law firm's legal fees incurred in

evaluating whether to sue them.[8] Any argument by the Chapter 7 Trustee that she requires a stay

of the MSM Action to perform under the agreement with ADBG should be deeply discounted, at

best.

### III.     **If the Court declines to issue an order confirming that the stay does not apply to the Actions, it should nonetheless permit discovery in the District Court.**

Even if the Court were to decline to issue an order confirming that the automatic stay

does not apply or otherwise rules that the Actions should be subject to a stay (either as of right or

by extension upon proper motion), Movants respectfully request that in all cases they should be

permitted to proceed with discovery in the District Court.

In general, parties may seek discovery against even *debtors* in non-debtor litigation. *See Le
Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, 2014 WL 4783008, at *5 (S.D.N.Y. Sept. 25,

2014) ("Section 362(a) does not prevent litigants from obtaining discovery from a debtor as a

third-party witness where the requests pertain to claims against the nondebtor parties." (citing *In
re Residential Capital, LLC*, 480 B.R. 529, 536 (Bankr. S.D.N.Y. 2012)). Only in rare circumstances

will bankruptcy courts extend the automatic stay to discovery in non-debtor litigation, and then

only when discovery will *substantially interfere* with the debtor's bankruptcy. *See In re Residential
Capital*, 480 B.R. at 537 ("The power to stay discovery against a debtor must be exercised

---

[8] The Orly Trust will separately file an objection as to the pending 9019 Motion.

cautiously, particularly where a stay of discovery may interfere with the prosecution or defense of third-party litigation pending in other courts."). Here by contrast, the Plaintiffs in the Actions seek primarily *non-debtor* discovery. Thus, there is little concern that discovery will interfere with the Debtor's bankruptcy.

In addition, "in situations where third-party discovery of a debtor could burden the bankruptcy proceeding, courts have generally placed the onus on the debtor to seek injunctive relief, rather than requiring the party requesting discovery to obtain a lift of the bankruptcy stay." *See Le Metier Beauty Inv. Partners LLC*, 2014 WL 4783008, at *5.

In general, bankruptcy courts extend the automatic stay to discovery in non-debtor litigation only where the parties from whom discovery is sought are deeply involved in the debtor's Chapter 11 reorganization efforts and the burdens of discovery could be large. *See, e.g.*, *In re Residential Capital*, 480 B.R. at 535; *see also In re Lazarus Burman Assocs.*, 161 B.R. at 898 (citing cases and noting that stays in non-debtor litigation are generally applied where the non-debtor's "time and energy [is] important" to the bankruptcy proceedings); *In re Granite Partners, L.P.*, 194 B.R. 318, 338 (Bankr. S.D.N.Y. 1996); *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 34 (S.D.N.Y. 1990); *In re The 1031 Tax Grp., LLC*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008); *cf. Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995) ("The jurisdiction of bankruptcy courts may extend more broadly in [a Chapter 11] case than in [a Chapter 7 case].").

Here, by contrast, the Debtor is an individual debtor in a Chapter 7 personal bankruptcy, and none of the parties to the Actions are deeply involved in the Debtor's bankruptcy. *See CAE Indus. Ltd.*, 116 B.R. at 34) (rejecting request for extension of the stay where there was a single non-debtor litigation that would not have any "substantive effect upon [the debtor's] reorganization"); *see also Aetna.*, 140 B.R. at 60. The pendency of the Bankruptcy Case would certainly have no impact on the law firm defendants' ability to continue discovery in the Lawyers

Action, and any suggestion by the MSM defendants that their role as lender to the Chapter 7

Trustee would impact their ability to proceed with discovery should not be countenanced. The

Debtor, for her part, will not incur costs in time or money associated with responding to

discovery, and there is no reorganization in the case of a personal chapter 7 case that must be

prioritized over the pursuit of legitimate non-debtor claims.

In fact, in this case, the Debtor's estate will *benefit* from discovery. The Chapter 7

Trustee's 9019 Motion asks for an extension of the automatic stay to the Actions so that she may

determine whether she would like to pursue them. While Movants submit that the Chapter 7

Trustee cannot pursue these claims as a matter of law for the reasons set forth herein, even if for

some reason this was ultimately proven incorrect, the discovery could simply be turned over to

the Chapter 7 Trustee who would presumably be pursuing similar information under similar

theories. Thus, allowing discovery to proceed against the non-debtor defendants in the Actions

will not have any prejudicial effect on the Chapter 7 Trustee or the estate she is administering.

## **<u>RESERVATION OF RIGHTS</u>**

Movants reserve any and all rights to supplement or modify the requests for relief set

forth herein and arguments in support thereof and/or to submit opposition to any additional

requests for relief sought by the Chapter 7 Trustee or other parties in interest in connection with

this or any other matter related to the Bankruptcy Case. The relief requested herein is without

prejudice to any rights of the Movants to seek relief from any stay imposed in connection with

the Actions or any other matter, and all rights are reserved.

## **CONCLUSION**

For all of the foregoing reasons, we respectfully submit that the Court should allow the

Actions to proceed.


Dated: June 8, 2020
      New York, NY

**POLLOCK COHEN LLP**

By: __/s/ *Adam Pollock*_____
  Adam Pollock
60 Broad St., 24th Floor
New York, NY 10004
Adam@PollockCohen.com
Ph: (212) 337-5361

*Attorneys for the Orly Genger Trust, by its Trustee*
*Michael Oldner; Recovery Effort, Inc.; and*
*Manhattan Safety Maine, Inc*

**CULLEN AND DYKMAN LLP**

By: __/s/ *Elizabeth M. Aboulafia*_____
  Elizabeth M. Aboulafia
100 Quentin Roosevelt Blvd
Garden City, NY 11530
EAboulafia@Cullenllp.com
Ph: (516) 296-9124

*Attorneys for the Orly Genger Trust, by its Trustee*
*Michael Oldner*