

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

Thomas A. Pitta
*Partner*
Tel: 212-238-3148
Fax: 212-238-3100 •Fax (alt.) 212-608-0544
tpitta@emmetmarvin.com

July 9, 2020

**<u>Via ECF</u>**

Honorable James J. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

      RE:   *In re Orly Genger*, Case No.: 19-13895-jlg

Dear Judge Garrity:

      This firm represents judgment creditor Sagi Genger ("Sagi"). By this letter, we respectfully move this Court for an order of preclusion and/or a negative inference under Fed. R. Civ. P. 37(b)(2), and request a telephone conference regarding same.[1]

      Since this Court, on June 3, 2020, ordered discovery to proceed "in connection with the Motion to Dismiss and the Trustee's Motion" (Doc. 254) (the "Discovery Order"), Sagi has endeavored to comply therewith, producing thus far approximately 33,000 pages of materials demanded by the Trustee and others, and offering himself for deposition on various dates (in both his individual and corporate capacities). Unlike his adversaries, Sagi has endeavored to tailor his discovery requests to only the relevant materials. Unfortunately, in response to his discovery requests, Sagi has been met with a uniform strategy of stonewalling--refusals to produce even the most basic relevant documents, directions not to answer at depositions, refusals to meet and confer, *etc.* The strategy is to delay and frustrate this Court's consideration of the motion to dismiss.

      Ordinarily, an order compelling discovery, with an award of fees and costs, might cure the problem. Here, however, the Court has set an expedited discovery schedule, one that has already been delayed a month to accommodate the other side's discovery motions. Discovery is now set to conclude on July 15, with a tight briefing schedule to follow. Further delay would only award the malefactors. We respectfully submit that, as set forth below, preclusion and/or a negative inference is the just result.

---

[1]    As we noted on last week's teleconference, in order to minimize the burden on the Court, we have combined these discovery issues into a single letter motion.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 2

There is no question that this Court has the authority to grant such relief as a cure for willful violations of the Discovery Order. Rule 37(b)(2), made applicable to this case pursuant to Fed. R. Bankr. P. 7037, provides that: "[i]f a party … fails to obey an order to provide or permit discovery, … the court where the action is pending may issue … just orders … (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; [and] (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Nor have Courts hesitated to grant such relief where warranted. *See, e.g., Haney v. Macy's E. Inc*., 2008 WL 2694766, *1 (S.D.N.Y. Feb. 27, 2008) (precluding defendant from offering plaintiff's expert's deposition as evidence at trial based on failure to comply with discovery orders); *Excellent Home Care Servs., LLC v. FGA, Inc.,* 2018 WL 4782340, **3-5 (E.D.N.Y. Sept. 4, 2018) (precluding plaintiff from using any document to establish defendant's liability or plaintiff's damages unless furnished to defendant by a specific date based on failure to comply with discovery obligations); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, 2001 WL 91707, **1-2 (S.D.N.Y. Feb. 1, 2001) (precluding plaintiff from introducing documentary evidence received after a specific date based on failure to comply with discovery orders); *New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.,* 2000 WL 377513, **8-10 (S.D.N.Y. Apr. 12, 2000) (precluding plaintiff from contesting the defendants' performance under the agreements at issue based on the repeated failure to comply with discovery orders); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc*., 1994 WL 419830, **1, 7 (S.D.N.Y. Aug. 10, 1994) (precluding defendants from introducing any evidence in opposition to plaintiff's claim of willful infringement based on failure to comply with discovery orders).

In addition, or in the alternative: "When a party has exclusive knowledge of facts and fails to testify to them ... <u>a negative inference can be drawn against the party</u>." *In re Craig Systems Corp.,* 244 B.R. 529, 542-43 (Bankr. D. Mass. 2000) (emphasis added) (quoting *In re Crabtree*, 39 B.R. 718, 724 (Bankr. E.D. Tenn. 1984)).

As set forth below, Sagi requests preclusion orders and/or negative inferences with respect to the following matters:

**Debtor's Refusal To Answer Questions About
Her Co-Signing Authority Over $8.5 Million**

As this Court is aware, the debtor entered into a litigation settlement in 2013 in which she was found by the District Court to have "monetized her beneficial interest [in a family business] for $32.3 million." *Genger v. Genger*, 2018 WL 3632521, *2 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99 (2d Cir. 2019). By the time of her bankruptcy filing six years later, that $32.3 million was nowhere to be found on the debtor's schedules, even though $15 million of the settlement remains to be paid.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 3

In their April 17, 2020 joint status report, the debtor and the transferees of the debtor's largesse jointly argued that not a single dollar of that $15 million (which they defined as the "Remaining Trump Group Settlement Proceeds") belongs to Orly. However, a March 31, 2017 escrow agreement signed by those same parties (a document which they denied the existence of, under oath, until the District Court compelled production of another document that made reference to the escrow agreement) revealed the opposite to be true. To this day, the debtor maintains co-signing authority with her father over at least $8.5 million of the "Remaining Trump Group Settlement Proceeds."

Thus, a natural, important question we wished to ask the debtor at her deposition was, how did she intend to exercise that authority? Remarkably, she was given an instruction not to answer that question, not by her counsel, but *by her husband.* Exh. A at 114:15-116:8. (Eric Herschmann: "I'm instructing you not to answer the questions as to what would happen with the remainder of the Settlement Proceeds.").

In light of this refusal, Sagi requests that <u>the debtor and her husband be precluded from contending that the $8.5 million do not belong to the bankruptcy estate, or in the alternative, that an adverse inference be drawn to that effect</u>.

### **Debtor's Refusal To Produce Bank And Credit Card Records**

Of all parties, the debtor presumably should have the greatest disclosure obligation. In this case, however, the debtor could only be bothered to produce a measly 121 pages of largely trivial materials. Among the many missing documents are: (a) *any* bank or credit card records and (b) *any* law firm invoices. It is not that such materials do not exist. Merely from third party discovery, we have uncovered a number of accounts the debtor has used in recent years for which she has not provided not a single sheet of paper. (In fact, prior to the bankruptcy, she falsely swore under oath that those accounts did not exist.) Such records are relevant for a number of reasons, including whether the case should be dismissed under 11 U.S.C. § 707(b) due to the debtor's failure to belt-tighten before filing. *See, e.g., In re Uddin,* 196 B.R. 19, 24 (Bankr. S.D.N.Y. 1996).

We have repeatedly asked for bank and credit card records. At her deposition, the debtor admitted she undertook no steps to gather the records in her control, *e.g.,* by requesting them from the relevant banks. Exh. A at 37:12-38:21. Nor has her counsel committed to doing so subsequently. In light of the foregoing, Sagi requests that <u>the debtor be precluded from contending she lacks the means to repay her debts</u>.

### **Debtor's Refusal To Produce Law Firm Invoices**

Equally, if not more, important are law firm invoices. The debtor now claims that she encumbered millions of dollars in settlement proceeds to her husband and father for legal fees supposedly incurred on her behalf, *yet she has not produced a single supporting*

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 4

*invoice*.  At her deposition, the debtor admitted that she had undertaken no steps to gather the records in her control, *e.g.,* by requesting them from the law firms in question. Exh. A at 32:14-34:18.  Nor has her counsel committed to doing so subsequently.  In light of the foregoing, Sagi requests that <u>the debtor be precluded from contending that any of her supposed "debts" to her husband and father are for legal fees</u>.

### Kasowitz's/Herschmann's Refusal To Produce Invoices

The debtor claims to have encumbered the 2013 settlement proceeds to her husband as security for a $2 million payment which he made to his own law firm, to cover legal fees for his own client/wife on matters for which he was the lead counsel.  Central to this argument are the legal services supposedly rendered.  Yet incredibly, Kasowitz and Mr. Herschmann (who, as a senior partner at the firm, has control over such records) have refused to provide anything more than cover pages of invoices.

Each of the cover pages to the alleged invoices notes that it is: "FOR PROFESSIONAL SERVICES rendered through the month of [month and year] *as reflected on the attached printout*." (Emphasis added.)  The attached printouts presumably will describe the services rendered, and identify the timekeepers, their billing rates, and the time charged.  Such invoices are generally not privileged.  *See, e.g., Riddell Sports, Inc. v. Brooks,* 158 F.R.D. 555, 560 (S.D.N.Y.1994) ("Under federal common law, attorney fee arrangements, including the general purpose of the work performed, are not generally protected from disclosure by the attorney-client privilege."); *Renner v. Chase Manhattan Bank*, 2001 WL 1356192, *8 (S.D.N.Y. Nov.2, 2001) (holding that attorney billing records are generally discoverable, unless they reveal client confidences).

Despite this well-established case law, at his deposition Mr. Herschmann and Kasowitz refused to produce the complete invoices. Exh. B at 66:14-68:15.  The underlying timekeeping is particularly important as Kasowitz has maintained that their bills exclude Mr. Herschmann's time and certain matters done *pro bono*.  Further, Kasowitz has failed to provide documentation showing how the payments it did receive were applied.

In the absence of proper invoices and contemporaneous payment records, Sagi requests that <u>Kasowitz and Mr. Herschmann be precluded from asserting that these are legitimate legal expenses for services rendered on behalf of the debtor</u>.

### Herschmann's/Claims Pursuit's Refusal To Identify
### True Counterparty to Trustee's Proposed Transaction

As the Court is aware, the Trustee proposes to enter into a transaction with an entity called "Claims Pursuit, Inc.," the sole officer/employee of which is a longtime business associate of Mr. Herschmann's named William McManus.  At his deposition, Mr.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 5

McManus deferred to the Kasowitz firm on almost every substantive question concerning the proposed transaction with the Trustee. We intend to re-ask those questions of the firm, if it ever provides us with a Rule 30(b)(6) witness as promised.

However, there is one question we asked of Mr. McManus for which he knew the answer but was directed not to answer. Once again, the direction was joined in by Mr. Herschmann, who was not the witness's counsel.

Claims Pursuit, Inc. is just a shell entity, created specifically for this transaction. It is owned by a trust recently created by Mr. Herschmann. The trustee of that trust has the authority, as sole shareholder, to replace Mr. McManus at any time. In light of the foregoing, a reasonable question becomes, who is the trustee? This should not be a secret; after all, the Trustee is asking the Court to approve the transaction on the promise of millions of dollars in supposed back-end litigation recoveries. Yet both Mr. McManus and Mr. Herschmann have refused to identify the trustee. Exhs. B at 30:21-31:4, C at 19:18-20:10. (The Chapter 7 Trustee also seems uninterested in learning the identity of the party with which it proposes to do business. Exh. B at 276:11-24.)

In light of this refusal to testify, Sagi requests that <u>Mr. Herschmann, Claims Pursuit, Inc., and the Chapter 7 Trustee be precluded from asserting that Claims Pursuit, Inc. is fit to enter into any transaction with the bankruptcy estate, or in the alternative, that an adverse inference be drawn to that effect</u>.

### **Herschmann's/Kasowitz' Refusal To Identify Hearing Exhibits**

Lastly, Sagi has sought, through discovery, production from Mr. Herschmann and Kasowitz of any materials they intend to show witnesses and/or introduce at the upcoming motion hearing. These are routine discovery requests, but once more, Mr. Herschmann and Kasowitz have refused to comply with them. Exh. B at 40:5-42:22. In light of this refusal, Sagi requests that <u>Mr. Herschmann and Kasowitz be precluded from showing witnesses or introducing any materials they have not produced</u>.

\* \* \*

Despite our best efforts to aggregate these discovery issues for consideration, we (unfortunately) anticipate additional applications ahead. Several key witnesses have refused to provide us with deposition dates, despite prior promises to do so. This has been going on for over a month, and while we have patiently tried to work through these issues, time is now running out. If we are not able to resolve these remaining deposition scheduling and other discovery issues by the new close of discovery (July 15, with limited exceptions), we shall bring these matters to the Court's attention.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 6

    We thank the Court for its consideration.

          Respectfully submitted,

          /s/ *Thomas A. Pitta*
          Thomas A. Pitta
          Emmet, Marvin & Martin, LLP
          120 Broadway, 32nd Floor
          New York, New York 10271
          *Attorneys for Sagi Genger*

cc:    All Counsel of Record (via ECF)