UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                              :
                                                    :    Chapter 7
ORLY GENGER,                                        :
                                                    :    Case No.: 19-13895 (JLG)
                         Debtor.        :
                                                    :
------------------------------------------------------------ x

## DECLARATION OF SAGI GENGER

SAGI GENGER, pursuant to 28 U.S.C. § 1746(2), declares as follows:

1. I am a judgment creditor in the above-referenced bankruptcy case. I respectfully submit this declaration in support of the common interest privilege shared by counsel for (a) myself, (b) my mother, Dalia Genger ("Dalia"), (c) the Trustee of the Orly Genger 1993 Trust, Michael Oldner (the "Orly Trust"), and our respective affiliated entities.

### Common Legal Interests I Share With Dalia Genger

2. On August 17, 2018, the U.S. District Court entered judgment in favor of Dalia against me in the amount of $6.4 million (plus legal fees). That same day, the Court also entered judgment on my third-party claim against the debtor Orly Genger ("Orly") in the amount of $3.2 million (plus legal fees), based on her contractual obligation to indemnify me for 50% of the judgment to our mother. (The Second Circuit subsequently affirmed both.)

3. Shortly after judgment entry, by Settlement Agreement dated September 17, 2018, I pledged to Dalia, *inter alia*, "all amounts collected pursuant to the judgment issued in favor of Sagi against Orly in the Action in the amount of $3,219,698…." (A true and correct copy of our Settlement Agreement, as amended, is annexed hereto as Exhibit A.) Since then, Dalia and I have shared a common legal interest in collecting my judgment, which will fund Dalia's retirement and, in the process, reduce my liability to her on a dollar-for-dollar basis.

4. Separately, Dalia has brought a constructive trust adversary proceeding against third-party transferees of the $32.3 million (Adversary Proceeding # 20-01010-jlg), in which she seeks to collect the aforementioned debt directly from the transferees. If successful, Dalia's constructive trust action will also reduce my judgment on a dollar-for-dollar basis. We therefore share a common legal interest in seeing that action succeed as well.

5. Since Orly filed for bankruptcy, my attorneys and Dalia's attorneys (Ira Tokayer, the Jordan Holzer firm, and the Foley Lardner firm) have also confidentially communicated in furtherance of our common legal interest to, *inter alia*, obtain transfer and/or dismissal of the bankruptcy, so a court in New York, either the District Court or the Bankruptcy Court, can rule upon the pending application to turn over the $32.3 million fraudulently transferred out of the estate by Orly and her cohorts. We have also jointly sought to convince the two Chapter 7 trustees (first Ronald Satija in Texas, then Deborah Piazza in New York) either (a) to purse recovery of the $32.3 million, or (b) to permit our attorneys to do so.

6. In addition, prior to the bankruptcy, Dalia Genger and I, along with certain entities with which we are affiliated (TPR Investment Associates, Inc. ("TPR"), D&K GP LLC, and the Sagi Genger 1993 Trust) were co-defendants in multiple lawsuits brought by Orly, in which we were (falsely) alleged to be joint tortfeasors and co-conspirators. These lawsuits included, *inter alia*: (a) *Orly Genger v. Dalia Genger,* Index No. 109749/2009 (the "2009 Action"); and (b) *Arie Genger v. Sagi Genger,* Index No. 651089/2010. With respect to the 2009 Action, <u>Dalia and I share the same counsel</u>, the law firm of Greenberg Traurig.

7. Dalia and I ultimately prevailed in all of Orly's meritless lawsuits against us. However, the Trustee now asserts that the bankruptcy estate still has live appeals against us in the 2009 Action. While I disagree, Dalia and I share a common legal interest in defeating those

appeals, pursuant to which there have confidential communications with our attorneys.

8. The only action in which Dalia and I were both named parties but did <u>not</u> share a common legal interest was Case No. 1:17-cv-08181-VSB-DCF. In that case, Dalia and I were adverse until judgment was entered in 2018 and we then entered into the above-referenced Settlement Agreement. Pre-judgment communications in that case would not be subject to a common interest privilege, but they also would not be relevant to the two motions to be heard on July 21, 2020, as they relate solely to a concluded litigation.

### **Common Legal Interests I Share With The Orly Trust**

9. One key issue created by the aforementioned rulings was the District Court's finding that: "<u>Orly</u> monetized her beneficial interest in <u>the Orly Trust</u> shares for $32.3 million." *Genger v. Genger*, 576 F.Supp.3d 488, 501 (S.D.N.Y. 2015) (emphases added). This ruling left ambiguity as to whether the Orly Trust had a legal right to the $32.3 million superior to that of Orly personally. (The distinction was immaterial to, and thus not reached by, the Court in its decision because, under the contract at issue, Orly's liability was triggered irrespective of whether she or her trust monetized the proceeds from the TRI shares.)

10. Rather than expend resources litigating this issue, prior to the commencement of this bankruptcy, I, TPR, the Orly Trust, Recovery Effort Inc. (a subsidiary of the Orly Trust), Manhattan Safety Maine, Inc. ("MSM") (the Orly Trust's principal creditor), and Manhattan Safety Company Ltd. (MSM's parent company) executed an Inter-Creditor Agreement dated June 16, 2019 (a true and correct copy of which, as amended, is annexed hereto as Exhibit B). We provided copies to both Trustees upon their respective appointments.

11. Under the Inter-Creditor Agreement, the parties agreed to a sharing arrangement for any recoveries on the fraudulently transferred $32.3 million, *"regardless of the plaintiff who*

-3-

*recovers it and/or the legal theory on which it is recovered."* The signatories to the Inter-Creditor Agreement share a common legal interest in recovering the $32.3 million in fraudulently transferred assets, both from our respective bankruptcy claims and from the following four legal actions pending in U.S. District Court: (a) *Dalia Genger v. Sagi Genger,* 1:17-cv-08181; (b) *Sagi Genger v. David Broser*, 1:19-cv-06100; (c) *Manhattan Safety Maine v. Bowen*, and (d) *Recovery Effort Inc. v. Zeichner Ellman*, 1:19-cv-05641.[1] Indeed, at around the same time the Inter-Creditor Agreement was entered, email correspondence between respective counsel reconfirmed that their communications would be subject to a common interest privilege.

13. In addition, as discussed above, my attorneys and the Orly's Trust's attorneys (Pollock Cohen and two predecessor law firms) have also confidentially communicated among ourselves in furtherance of our common goal of trying to persuade successive Chapter 7 trustees to pursue recovery for the bankruptcy estate of the $32.3 million fraudulently transferred out of the estate by Orly and her cohorts, or alternatively to permit our attorneys to do so, either on the estate's behalf or on our own behalf by purchasing the claims from the estate.

14. Because neither Trustee has to date pursued recovery of the $32.3 million, nor allowed us to do so, counsel for Dalia, the Orly Trust and myself have also sought transfer and/or dismissal of the bankruptcy, so the courts in New York, either the District Court or the Bankruptcy Court, can resume the turnover motion stayed by this bankruptcy. Docs. 32, 108, 124. The same parties also both filed adversary cases opposing discharge. Docs. 98, 99, 148.

---

[1] The Inter-Creditor Agreement also effectuated an assignment of a promissory note. Years earlier, for $4 million cash consideration, TPR had sold to Manhattan Safety Co. a promissory note from the Orly Trust. However, in 2013, that note was voided by court decision. In satisfaction of its obligation thereunder, TPR assigned its rights in an earlier note (partly guaranteed by the Orly Trust) which the voided note had sought to replace.

15. Indeed, at the Bankruptcy Court hearing on October 31, 2019, counsel for the Orly Trust (Jay Ong) made opening arguments in support of transfer to this District, then my counsel (John Dellaportas) cross-examined the debtor, and then counsel for Dalia Genger (Shelby Jordan) made closing arguments. This joint effort was the product of many confidential communications among the three parties' counsel toward this shared goal.

16. Mr. Ong, it should be noted, also acts as counsel to TPR, a company that I run, which is also a creditor in the bankruptcy and, as noted above, a signatory to the Inter-Creditor Agreement. Communications between my counsel and Mr. Ong would also have been made pursuant to the common legal interests that TPR and I share.

### Chapter 7 Trustee's Prior Recognition Of These Common Legal Interests

17. Indeed, counsel to the Chapter 7 Trust has repeatedly recognized these common legal interests--referring to myself, Dalia and the Orly Trust, collectively, as a single "team" or "group"--and we have negotiated with him as such. At the March 4, 2020 conference, Mr. Cavaliere told the Court that the prior (rejected) settlement agreement was "controversial insofar as Sagi Genger team raised a number of issues." *See* 3.4.2020 Tr. at 36:19-20 (emphasis added). Subsequently, at the May 15, 2020 conference, Mr. Cavaliere told the Court that: "we did receive an updated proposal by the Sagi group, which I would call the Dalia Genger, Sagi Genger, and the Orly Genger trustee just for shorthand. I know they have different positions, but I'm just using the Sagi group for purposes of just the ease of reference." *See* 5.5.2020 Tr. at 15:20-24.

18. Since Mr. Piazza's appointment, we have made multiple collective offers to her counsel, Mr. Cavaliere, to arrive at a group settlement. Our communications amongst ourselves and our counsel concerning those negotiations reveal our counsel's legal impressions as how to approach these matters, and would be prejudicial to us if revealed to the Trustee and, in particular,

-5-

to the other parties to this bankruptcy, who (from what we understand) are the promulgators of various competing collective settlement proposals.

**No Consent To Waiver**

19. Neither I, nor any entity with which I am affiliated, consents to disclosure of any of the foregoing confidential common interest privilege communications. These communications reflect the thought processes and legal strategies of our respective counsel, and were undertaken with the agreement and expectation of confidentiality. It would be highly prejudicial if such communications disclosed, as they would reveal our attorney impressions not only to the Trustee, but also to our litigation adversaries; *i.e.*, the very parties who received the fraudulent transfer of the $32.3 million, and now seek to prevent its recovery by the estate.

20. I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: New Canaan, Connecticut
July 10, 2020

SAGI GENGER