

**New York**
885 Third Avenue, 20th Floor
New York, NY 10022-4834
Tel: 212.209.3050
Fax: 212.371.5500

**Princeton**
4 Independence Way, Ste. 120
Princeton, NJ 08540
Tel: 609.514.1500
Fax: 609.514.1501

**www.reitlerlaw.com**

July 14, 2020

<u>**Via Electronic Case Filing**</u>

Honorable James L. Garrity, Jr.
United States Bankruptcy Court
One Bowling Green
New York, NY 10004

      Re:     **Orly Genger, Debtor; Case No. 19-13895-JLG**

Dear Judge Garrity:

      This submission is made on behalf of Orly Genger (the "<u>Debtor</u>") and creditors Kasowitz Benson Torres, LLP, ADBG LLC and Arie Genger in support of their common interest and joint defense privilege, and in opposition to the Sagi Parties' submission (ECF No. 293) on the common interest privilege.

      The Sagi Parties assert that their shared economic interest, created by the Inter-Creditor Agreement, is part of a "legal" strategy to use the courts to recover $32.3 million in cash proceeds paid (or to be paid) out of the $50 million 2013 Trump Group/AG Group settlement agreement and to divide it up among themselves so that Sagi, Dalia and MSM receive payment in full on their "claims" before the OG Trust gets whatever is left (despite having asserted a legal claim to be entitled to the entirety of the funds). Sagi Ltr. at 2. However, in reality, Sagi and Dalia's acts are part of a years-long scheme to defraud the Debtor. Their scorched earth litigation tactics in multiple courts are the reason that the Debtor had to file for bankruptcy. Yet now they seek to deflect attention away from their own bad acts and the fact that they have absconded with $44 million that was received as a result of Sagi's sale of 100% of the TRI shares (including 100% of the OG Trust shares he and Dalia sold out from under Orly) by making up claims and repeatedly and blatantly misrepresenting facts, even after being presented with evidence directly contradicting their claims. Sagi failed to provide any of that money to the OG Trust and instead has conspired with Dalia to layer bogus debt on to the OG Trust in order to pursue their claims here and in other courts. In furtherance of their scheme, Sagi and Dalia have caused the new purported trustee of the OG Trust to deliver "releases" to Dalia, Sagi and Sagi's wife during the pendency of this



Honorable James L. Garrity, Jr.
July 14, 2020
Page 2

chapter 7 case, which releases the OG Trust failed to produce in connection with discovery served on it and its trustee, Mr. Oldner.  *See* Exhibit A[1].

But having a business plan to game the court system to share in recovery for bogus debts is not a common legal interest.  They nowhere show, because they cannot, that their conflicting legal claims to the same funds are somehow "common" legal interests despite the conflicts.  As a matter of logic and common sense, conflicting legal claims and legal theories are not and cannot be sufficient to invoke the common interest privilege.  They also argue, without any showing, that it would be "prejudicial" to them to have to disclose their intra-group communications.  But prejudice is neither necessary nor sufficient to support a claim of privilege.

While invoking common interest privilege for themselves on specious grounds, they seek to deny the privilege and the related joint defense privilege to all the parties who have in common that they are all named defendants and all stand accused by the Sagi Parties on specious grounds of concealing assets, perpetrating fraudulent transfers and/or committing outright fraud.  Because the Debtor and the other parties filing these letter briefs jointly with her (KBT, ADBG, and Arie Genger) along with the Brosers, certain of their other related entities, and Herschmann are all named parties in various lawsuits and legal proceedings instituted by the Sagi Parties, they share a joint-defense privilege.  The Sagi Parties' argue that that privilege should be overruled because, in their view, the privilege "hides" the truth.  They should look in the mirror.  Nevertheless, that is an invalid argument on every level:  all privilege, by definition, allows nondisclosure; that's the whole point of the privilege.  More importantly, this argument underscores the fundamental rot at the heart of the Sagi Parties' claims:  They hurl accusations of fraud, based on nothing, and then demand that the accused are somehow required by law to turn over all their private and confidential information – including bank records, legal records and invoices and communications among legal counsel – to "prove" the negative.  That turns fundamental due process and justice upside down.

## I.     The Sagi Parties Failed to Show a Common Legal Interest

The Sagi Parties do not deny, but admit, that they each have conflicting legal claims to the same funds at issue in this bankruptcy.  They do not even try to harmonize their legal claims other than saying that they reached an economic accommodation in the Inter-Creditor Agreement to share the proceeds, however lopsidedly in favor of Sagi and Dalia. Sagi Ltr. at 5.  But that business agreement to share in and divide up funds is not a common legal interest.  For example, while the OG Trust does not dispute the Debtor's claim to have no right or interest in the subject funds, Sagi

---

[1] Confidential information redacted pursuant to confidentiality and protective order [DE 259].



Honorable James L. Garrity, Jr.
July 14, 2020
Page 3

and Dalia do dispute that claim.  (Sagi and Dalia claim that they have a joint defense interest in connection with communications pertaining to the pending Debtor fraud actions against the two of them; neither the Debtor nor KBT seek such documents in the discovery in this action, which would have been evident to the Sagi Parties had they met and conferred in good faith on the discovery requests.)  And Sagi shockingly claims that he has a common interest with Dalia because they share an interest in recovering money to pay Dalia's judgment against Sagi.  Taking this non-sensical argument to its conclusion, Sagi argues that a judgment creditor shares a common interest with a judgment debtor, which would mean that he and the Debtor have a common interest in recovering his judgment against her.  This argument is laughable and has absolutely no support in law.

The Sagi Parties also claim that they had "negotiations with successive Chapter 7 Trustees" in furtherance of a settlement that they proposed and made arguments to support dismissal of the bankruptcy. Sagi Ltr. at 2, 5.  But this ignores the fact that Dalia and the OG Trust did not join in Sagi's "amended" motion to dismiss and now claim that they do not support dismissal.  *See, e.g.*, Oldner Dep. at 218:10 ("The trust has not joined in [the] motion [to dismiss]"); July 10, 2020 status conf. Tr. at 49:20-21 (Dalia counsel: "We didn't file the motion to dismiss, Your Honor.  We didn't even join it").  Additionally, as noted in our prior letter, we already clarified that no one was seeking the Sagi Parties' settlement communications with the Chapter 7 Trustees.

Because the Sagi Parties have failed to establish both a common legal interest and that the subject material constitutes communications or work in furtherance of that common legal interest, they cannot sustain their common interest privilege claim.  *See* Common Interest Letter Brief, ECF No. 298.  Their various pro forma declarations affirming that each of them intended these communications to remain privilege do not change this outcome.  They are noteworthy, however, because Dalia Genger – the party who has claimed to be so incapacitated that she cannot be subjected to questioning – had the wherewithal to study Sagi's declaration and to submit a sworn declaration of her own that, without reservation or so much as a quibble, affirms *everything* that Sagi said in his six-page declaration.  *See* ECF No. 293 ("I have reviewed the accompanying declaration of Sagi Genger [Dkt. No. 293-1] ("Sagi Declaration"), and hereby attest to this Court that it is correct and consistent with my understanding.  In support of this Declaration, I hereby incorporate by reference all of the statements and assertions made in the Sagi Declaration, including those supporting a common interest privilege among the Parties and their counsel.")  Given that endorsement, she apparently abandoned her position, previously represented by her counsel to this Court, that she has no knowledge of or interest in the pending Rule 9019 motion and the motion to dismiss.  Her submission of a sworn statement on this privilege issue further underscores the necessity of taking her deposition in connection with these motions, as does the fact that she demanded (from an email stating that it was sent from her iPhone despite claiming



Honorable James L. Garrity, Jr.
July 14, 2020
Page 4

not to be able to coordinate a video call with her doctor) $18 million from Sagi in December 2019 (during this case). Dalia's rights to seek payment from Sagi are conditioned on her need to support her lifestyle. If she is so incapacitated that she cannot leave her apartment, then there is no conceivable basis for which she needs over $24 million (including her past demands) to support her lifestyle. Again, these fraudulent demands by Dalia, and in turn by Sagi to Orly, are the very reason why Orly had to seek bankruptcy protection in the first place. Dalia should not be allowed to continue her go-to ploy of hiding behind doctor's notes when she has to face the music when it is Dalia's bad acts that are at the very core of these proceedings.

The other arguments raised by the Sagi Parties amount to improper objections to discovery, not arguments in support of a common interest privilege. They claim that it would be prejudicial for them to have to reveal their internal discussions about their divergent legal claims in this case. But purported prejudice is not a basis for privilege. The admission that these communications are prejudicial to their respective legal positions only underscores that *withholding* such evidence would prejudice the requesting parties.

They also claim that it is somehow improper to seek relevant information that Oldner has about other Sagi Parties because it would violate common interest privilege. Sagi Ltr. at 6. But that skips over the establishment of common interest privilege altogether, and simply assumes one exists. Privilege is lost where, as here, once-privileged information is not maintained confidentially, but is shared with a third party. That is exactly what happens if information created by Sagi's lawyer, or communications between Sagi and his lawyer, are shared with a third party – *i.e.*, Oldner or Dalia. Contrary to what the Sagi Parties argue, in that event, the veil of privilege is not expanded. Rather, the documents and communications are no longer protected by any privilege.[2]

## II.    The KBT, Arie, Herschmann, and the Broser Parties Share a Common Interest and Joint Defense Privilege

The Court directed briefing on the common interest privilege in the context of objections raised by the Trustee, the Debtor and KBT, to the assertion of the privilege by the Sagi Parties. In the submission by the Sagi Parties they raised for the first time a challenge to the common interest

---

[2] The decision in *In re Treadway*, 117 B.R. 76 (Bankr. D. Vt. 1990), cited by the Sagi Parties, provides no support for the Sagi Parties' argument that this Court somehow lacks jurisdiction to hear claims of breach of fiduciary duty against Oldner. In *Treadway*, the claims against the trustee were being pursued outside of the bankruptcy proceeding and no proceeds from those claims would benefit the debtor's estate. The opposite is true here. *See* 9019 Settlement, ECF Doc. No. 248.



Honorable James L. Garrity, Jr.
July 14, 2020
Page 5

privilege asserted by the Debtor, KBT, Arie Genger, the Brosers, their related entities (including ADBG) and Herschmann (the "Common Interest Parties").  Sagi Ltr. at 7-8.

Unlike the Sagi Parties, the Common Interest Parties *do* have a common legal interest. They have all been accused of fraud and are all joint defendants against the Sagi Parties' scattershot and contradictory claims of fraudulent transfers, lying, perjury and other wild and unsubstantiated and specious claims.  This is evident, for example, in the joint status report filed April 17, 2020 by these parties (ECF No. 237) and in their submissions in support of dismissal of Dalia Genger's constructive trust adversary proceeding (Adv. P. 20-01010-jlg ECF Nos. 12, 14).

Pursuant to the June 16, 2013 Settlement Agreement (the "Trump Group Settlement Agreement") with the "Trump Group" that is at the heart of the Sagi Parties' accusations, the other parties to that agreement, referred to as the "AG Group," included Arie Genger, Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust), David Broser, Arnold Broser, and all entities managed, owned or controlled in any way by David and Arnold Broser and which were in any way related to the subject matter thereof.  Michael Bowen, a member of the Kasowitz firm, is the current escrow agent with respect to two $7.5 million notes issued pursuant to the Trump Group Settlement Agreement.  Prior to the Debtor's bankruptcy filing, Kasowitz also represented the Debtor and has acted on behalf of the AG Group (as defined in the Trump Group Settlement Agreement) with respect to certain matters.  William Wachtell of the Wachtell Missry law firm negotiated the Trump Group Settlement Agreement on behalf of the AG Group.

The Sagi Parties have filed numerous claims against the Common Interest Parties.  *See, e.g., Dalia Genger v. Sagi Genger*, No. 17-cv-8181 (S.D.N.Y.); *Manhattan Safety Maine, Inc. v. Bowen, et al.*, No. 19-cv-5642 (S.D.N.Y.); *Dalia Genger v. Orly Genger, et al.*, Adv. Pro. No. 20-01010 (JLG) (Bankr. S.D.N.Y.); and *In the Matter of the Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust Agreement dated December 13, 1993 between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees, to Turnover Property to the Orly Genger 1993 Trust*, Adv. Pro. No. 20-01188 (JLG) (Bankr. S.D.N.Y.).  Certain of the other Common Interest Parties are co-defendants in certain of these lawsuits, as applicable.  Moreover, Sagi Genger's Amended Motion to Dismiss this chapter 7 case and many related filings by Sagi and Dalia Genger assert false accusations against many of the Common Interest Parties.

As reflected by the declarations filed in support of this response, the Common Interest Parties and/or their counsel have communicated with and among certain of the Common Interest Parties and/or their counsel in anticipation of litigation, in response to litigation and/or in the course of an ongoing common interest.  These communications were made in furtherance of their common



Honorable James L. Garrity, Jr.
July 14, 2020
Page 6

interest and joint legal defense strategy. The Common Interest Parties and their counsel kept the communications confidential and understood that the other Common Interest Parties and their counsel were doing the same. None of the Common Interest Parties consented to disclosure of any confidential common interest/joint defense communications between or among the Common Interest Parties and/or any of their respective counsel.

Because the Common Interest Parties are united by their legal defense in common against these irresponsible and baseless legal claims by the Sagi Parties, they are entitled to assert a common interest and joint defense privilege.

The Court also should deny Sagi Genger's letter motion to the extent that it requests that the Court compel production of additional communications between ADBG/the Brosers and Arie Genger, or their respective counsel, because those parties share a litigation funder/borrower relationship. In addition to the other bases for privilege noted herein, communications between a litigant and a litigation funder necessarily contain and reflect "opinions . . . regarding the strength of . . . claims, the existence and merit of . . . defenses, and other observations and impressions regarding issues" that have arisen or may arise in litigation, and "fall squarely within" work product protection. *Doe v. Society of Missionaries of Sacred Heart*, No. 11–cv–02518, 2014 WL 1715376 at *3 (N.D. Ill. May 1, 2014); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350 VM KNF, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (refusing to order production of litigation funding documents). Thus, the communications regarding ADBG's/the Brosers' litigation funding inherently implicates the work product doctrine and should remain protected because "[l]itigation strategy, matters concerning merits of claims and defenses … would be revealed if the documents were produced." *Devon It, Inc. v. IBM Corp.*, No. 10–2899, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012).

Nor do the Sagi Parties have any basis to claim waiver. They try to stand on technicalities and argue that KBT and other parties failed to interpose objections to third-party subpoenas served in Sagi's judgment enforcement proceedings; according to him that failure somehow transposes into a failure to timely object to Sagi's discovery requests in this action. It does not and he cites to no authorities otherwise. But, even so, there was no waiver in the prior proceeding either.

As it relates to KBT, that prior subpoena was improperly served. When this bankruptcy intervened, Sagi served a new subpoena in this bankruptcy in the fall of 2019, and KBT timely moved to quash (*See* Adv. P. No. 19-01446-jlg). The Sagi Parties ignore this.

Further, Sagi fails to acknowledge that this Court stayed all pending litigation in this case until late May, after which a scheduling order was entered pertaining to the motion to dismiss and



Honorable James L. Garrity, Jr.
July 14, 2020
Page 7

parties served discovery relating to it prior to an early June 2020 deadline (as Sagi did to Mr. Broser and the other parties hereto). Sagi also ignores the fact that the discovery the Court permitted all parties, including Sagi, to take, relates to Sagi's amended motion to dismiss, filed on April 24, 2020, and the Trustee's settlement motion, filed on May 21, 2020, both of which post-date the defective March 2020 subpoenas.

This discovery was set forth at the May 22, 2020 status conference and in the June 3, 2020 Scheduling Order. The subpoenas at issue now – the subpoenas from Sagi Genger in March 2020 (these were not "joint" subpoenas from the Sagi Parties) – also were not properly served. Without waiving objections to the improper service, KBT and other parties nevertheless responded by producing responsive discovery and timely serving written responses and objections under Rule 9030, which is the applicable rule (not Rule 45, which Sagi consistently cites). In these written responses, KBT and the other parties explicitly preserved all privilege objections.

Similarly, contrary to Sagi's contentions, Mr. Broser did not waive his right to assert privilege over protected materials in connection with Sagi's purported March 2020 subpoena. Mr. Broser timely responded to new, duplicative document requests served by Sagi Genger on or about June 3, 2020, produced documents in response thereto subject to his objections and asserted privileges, and appeared for a full day deposition. Mr. Broser interposed objections based, in part, on an assertion that certain documents were protected from disclosure by the work product doctrine and common interest privilege. Mr. Broser's objections and responses made clear that he objected to Sagi's defective March 2020 subpoena in its entirety. The March subpoena that Sagi's letter references was not properly served, as Sagi obviously knows since he served his duplicative June 2020 document requests on Mr. Broser, along with a new notice of deposition. The recipient named in the March subpoena was "Davis" Broser—not David—and the subpoena was left with an unidentified "doorman" at an office building (July 10, 2020 S. Genger Letter, Ex. A, ECF No. 293-5), rather than being delivered directly to Mr. David Broser. Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person"). As it relates to his purported March 2020 subpoena, Sagi has failed to establish that he made diligent efforts to personally serve Mr. Broser. *See Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC. 327 (P1), 2016 WL 5930265, at *4 (S.D.N.Y. Oct. 11, 2016) ("weight of authority in this Circuit requires first a diligent attempt to personally serve the commanded person"). Even if Sagi had made such efforts, Sagi's attempted alternative service also was insufficient. For example, under Rule 4(e), a summons may be left at an individual's dwelling with someone who—unlike a doorman—*resides* there. *See* Fed. R. Civ. P. 4(e).

Finally, the Sagi Parties' claim that Mr. Herschmann asked leading questions at the deposition of Arie Genger also does not undermine any common interest privilege. It is a matter



Honorable James L. Garrity, Jr.
July 14, 2020
Page 8

of record that Herschmann is adverse to Arie Genger with respect to the $2 million judgment Herschmann has obtained against him, which was the focus of that portion of Herschmann's examination of Arie during the deposition noticed by Sagi. *See Herschmann v. Arie Genger*, N.Y. Sup. Ct. Index No. 657020/2019, ECF Nos. 12, 17. Of course, the Federal Rules of Evidence permit leading questions when a party is adverse to the witness on a given topic, as was the case here. This is the exact same standard that the Sagi Parties should be held to – there can be no common interest amongst parties who are adverse to each other (ie, the Sagi Parties, as confirmed by, *inter alia*, the Intercreditor Agreement and the claims that they acknowledge exist amongst them in the releases that the Orly Trust purports to have given to Dalia, Sagi, and Sagi's wife).

III.    **Conclusion**

For the foregoing reasons, the Court should overrule the Sagi Parties' assertion of a common interest privilege and order them to produce the responsive materials withheld on these invalid grounds. In addition, Oldner, as purported trustee of the OG Trust, should be ordered to answer at his upcoming continued deposition the hundreds of questions that he was previously directed not to answer on the ground of "common interest" privilege by his lawyer as well as by John Dellaportas, counsel to Sagi, and even by Sagi himself at his prior deposition, as well as questions relating to the purported releases he delivered to Dalia, Sagi and Sagi's wife during the course of these bankruptcy proceedings that he failed to produce in responses to numerous document requests. Finally, the Court should uphold the Common Interest Parties' valid assertion of common interest and joint defense privilege, as well as ADBG/the Brosers and Arie's assertion of work product privilege with respect to their litigation funding relationship.

Respectfully submitted,

**ORLY GENGER**

        */s/ Yann Geron*
By:    Yann Geron
        Reitler Kailas & Rosenblatt LLC


cc:    All Counsel of Record (by ECF)