

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Rocco A. Cavaliere, Partner
Email: rcavaliere@tarterkrinsky.com
Phone: (212) 216-1141

July 14, 2020

**BY FEDERAL EXPRESS AND ECF**

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

   Re: In re Orly Genger
      Chapter 7 Case No. 19-13895

Dear Judge Garrity:

  This firm is counsel to Deborah J. Piazza, in her capacity as successor chapter 7 trustee (the "Trustee") of the above-referenced Debtor's estate.

## INTRODUCTION

  This letter is the Trustee's reply (the "Reply") to the opening letter brief dated July 10, 2020 (the "Sagi Parties' Letter") [Dkt. No. 293] jointly submitted by Sagi Genger ("Sagi"), Dalia Genger ("Dalia"), and the Orly Genger 1993 Trust, through Michael Oldner (the "OGT Trustee"), and their respective representatives and counsel (collectively, the "Sagi Parties"), as well as supporting declarations of Sagi, Dalia, the OGT Trustee, Paul Labov, Adam Pollock and John Dellaportas. See Dkt. Nos. 293-1, 293-4, 294-297. Capitalized terms that are not otherwise defined herein shall have the meanings ascribed to such terms in the Trustee's opening letter brief dated July 10, 2020 (the "Trustee's Opening Brief"). See Dkt. No. 299. In support of the Reply, the Trustee respectfully sets forth her position in response to the arguments raised in the Sagi Parties' Letter.

Honorable James L. Garrity
July 14, 2020
Page 2 of 7

## TRUSTEE'S REPLY TO SAGI PARTIES' LETTER

The Sagi Parties' Letter request two legal rulings. <u>First</u>, the Sagi Parties claim a common interest privilege (the "Common Interest Privilege") preventing from disclosure various documents requested by that the Trustee as well as other parties (Orly Genger and Kasowitz Benson Torres LLP) that submitted subpoenas or document requests in connection with the Motions. The description of the legal issue in the Sagi Parties' Letter is similar to the description of the legal issue on page 1 of the Trustee's Opening Brief, except, of course, the Trustee's position is that the Common Interest Privilege does <u>not</u> apply. <u>Second</u>, on behalf of Sagi only, the Sagi Parties Letter seeks a ruling that communications among the Debtor, Arie Genger Eric Herschmann, Kasowitz Benson Torres LLP, and David Broser (collectively defined in the Sagi Parties' Letter as the "<u>Debtor-Transferee Parties</u>") are not subject to any common interest/joint defense privilege. This second requested ruling does not request any communications by and between the Debtor-Transferee Parties and the Trustee, and thus the Trustee will defer to the Debtor-Transferee Parties, who presumably will respond to the requested second ruling from Sagi.

<u>First</u>, in support of their position, the Sagi Parties' Letter states that "the [Sagi Parties] share a common legal interest in obtaining the return of the $32.3 million that Orly monetized but then dissipated to family and friends." <u>See</u> Sagi Parties' Letter, p. 1; <u>see also</u> Sagi Parties' Letter, p. 5 ("this collective approach and strategy of members of the [Sagi Parties] against common legal adversaries plainly qualifies as common interest"). This statement improperly assumes that the law recognizes this right of the Sagi Parties to pursue "the $32.3 million". As Sagi and his counsel are well aware, as a judgment creditor, Sagi has no standing to pursue the Potential Avoidance Action in light of the bankruptcy filing. Only the Trustee has standing to do so. Thus, Sagi's legal strategy, together with the Sagi Parties, to control the disposition of the Potential Avoidance Action through various courts, as more fully set forth in the Trustee's Opening Brief, is not a proper legal purpose to which the Common Interest Privilege may apply. *See In re Hypnotic Taxi, LLC*, 566 B.R. 305, 315 (Bankr. E.D.N.Y. 2017) ("the shared desire to succeeed in a legal action does not meet the requirement of the [common interest] doctrine"); *see also N. River Ins. Co. v. Columbia Cas. Co.*, 1995 WL 5792 at *4 (S.D.N.Y. Jan 5, 1995) (holding that a shared desire to succeed in litigation "does not qualify as an identical legal interest"). Privileges should be narrowly construed and expansions cautiously extended. Hypnotic Taxi, 566 BR. at 314 (citation omitted).

<u>Second</u>, while on the one hand indicating that the Sagi Parties have a "common legal interest" in pursuing the Potential Avoidance Action such that the Common Interest Privilege applies to them, the Sagi Parties next argue that the communications by and between the Debtor-Transferee Parties relating to "the Debtor's interest in $32.3 million is not a 'common interest' that this Court should protect". <u>See</u> Sagi Parties' Letter, p. 1. This internally inconsistent position cannot withstand scrutiny.

<u>Third</u>, the Sagi Parties suggest in their submission that their "Common Interest Privilege" stems from two documents relating to a 2018 Sagi-Dalia Settlement Agreement described in the Sagi Parties' Letter and the Inter-Creditor Agreement. <u>See</u> Sagi Parties Letter, p 4. However, as

{Client/086201/1/02138507.DOCX;1 }

stated in the Trustee's Opening Brief, the Inter-Creditor Agreement in which the parties have agreed to split the proceeds of any recoveries from the Potential Avoidance Action and other courts is not a "legal interest" that must be protected as a Common Interest Privilege but is instead in furtherance of a commercial purpose. Likewise, the 2018 purported settlement of all claims by and between Sagi and Dalia does not give rise to a "common legal interest in collecting his judgment, which will fund Dalia's retirement." This purported 2018 settlement agreement is not a basis by which these parties can share a common legal interest with the OGT Trustee whose interests are legally adverse to Sagi and Dalia. Further, this reference to the 2018 Settlement Agreement only further bolsters the pending motions to dismiss the Constructive Trust Action insofar as Sagi and Dalia admit in the Sagi Parties' Letter that Sagi's effort to collect the judgment will be paid to Dalia on account of her judgment against him, and in light of the foregoing admission, there is no merit to Dalia asserting a constructive trust on the Potential Avoidance Action. Thus, as recognized in the Trustee's Opening Brief, the commencement of the Constructive Trust Action appears to be a concocted legal maneuver to create an obstacle to the Trustee's pursuit of the Potential Avoidance Action for the benefit of the entire estate. The strategy that led to the commencement of all these separate actions is not a "legal interest" that gets the benefit of a Common Interest Privilege.

<u>Fourth</u>, the Sagi Parties state that the following in footnote no. 1 of the Sagi Parties Letter:

> The Chapter 7 Trustee's demands do not expressly seek privileged communications. After the expiration of the Court-ordered discovery deadline, however, the Trustee took the position that the members of the Creditor Group, although not curiously, the Debtor-Transferee Parties must produce common interest materials. As the Trustee is proposing to enterinto various business arrangements with the Debtor-Transferee Parties, this strikes us a backwards. Regardless, having not sought such materials, the Trustee has no standing to move to compel them.

The Trustee responds to the above "point" as follows. The Trustee included as Exhibit "A" to the Trustee's Opening Brief an example of the Discovery Requests propounded on Sagi, which are similar to those served on the other Sagi Parties. It is true that the Trustee did not seek "privileged communications". Neither did the Debtor-Transferee Parties. The Sagi Parties' statement is simply a misstatement of fact on their part which is at the very heart of the legal exercise that we are undertaking at this very moment. In other words, the Trustee's requests seek relevant documents which are <u>not</u> protected by the Common Interest Privilege, and therefore, as a legal matter, the Trustee is not seeking privileged communications.[1] The mere assertion of a

---

[1] The Trustee does not understand what is meant by the reference in the above-statement to "after the expiration of the Court-ordered discovery deadline…the Trustee took the position that they must produce common interest materials". Soon after the delivery of Responses to the Discovery Requests on June 17, 2020 and well before the original deadline for discovery, July 2, 2020, the Trustee repeatedly raised with the Sagi Parties that their decision to withhold documents on the basis of a Common Interest Privilege was incorrect. Indeed, the Trustee's concerns regarding the lack of production based on the Common Interest Privilege was set forth in her June 23rd letter and discussed at conferences with the Court on June 23, 2020 and July 2, 2020, which led to the briefing on the

privilege does not make it so. Furthermore, the fact that the Trustee did not seek documents from the "Debtor-Transferee Parties" is not at all "curious" insofar as the Debtor-Transferee Parties are not the parties advancing the Motion to Dismiss for which discovery would be pressed by the Trustee against them. Indeed, in this case, there will come a time where the Trustee may be aligned with one party in interest or another, depending on the motion on file with the Court. For instance, if the Trustee were to enter into a claim allowance stipulation with Sagi Genger, by way of example only, the Trustee would not send Sagi Genger discovery requests requesting discovery on the merits of his claim. That would be up to any party that wished to object to this hypothetical claim allowance stipulation. Thus, the Sagi Parties' insinuation that the Trustee was playing favorites by not seeking documents from the Debtor-Transferee Parties makes no sense. This is especially so considering the aggressive litigation stance of Sagi, who has subpoenaed all of the Debtor-Transferee Parties and many other non-debtor parties, and the documents, once produced by the foregoing parties, would, in any event, be provided to the Trustee, a party with a right to see all production by all parties in connection with the Motions.

Fifth, none of the cases cited by the Sagi Parties in their submission supports a common interest privilege based on the facts and circumstances of this case. The case of *In re Quigley Co., Inc.*,, 2009 WL 9034027 (Bankr. S.D.N.Y. April 24, 2009) dealt with the joint efforts of a debtor in possession and its direct parent to create a fund for creditors to settle litigation claims against them in a case in which they were also joint defendants. Here, the Sagi Parties have multiplied proceedings, each asserting a different claim against the Trump Settlement Proceeds and Trump Notes. Further, *Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.,* 160 F.R.D. 437, 447 (S.DN.Y. 1995) and *Gulf Islands Leasing v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003), each of which were coincidentally cited in the Trustee's Opening Brief are cases in which the courts did not allow a common interest privilege due to the commercial nature of the relationship. Moreover, *In re National Medical Imaging LLC*, 2005 WL 3299712 (Bankr. E.D. Pa. Oct. 31, 2005) is clearly inapposite insofar as the Court, in that case, the petitioning creditor filed an involuntary bankruptcy proceeding in order to create an estate to preserve value. In our case, the Sagi Parties wish for this case to be dismissed so that they can pursue the Debtor-Transferees for years to come in the hope that they collect something for themselves, as opposed to for the entire estate, which they are looking to eliminate. Further, a close review of the *National Medical Imaging* case reveals that the Court only protected some, but not all of the communications between the petitioning creditors on the basis of an asserted privilege between the parties. Finally, a quick review of *U.S. v. American Tel. and Tel. Co.*, 642 F.2d 1285 (D.C.C. 1980), a non-bankruptcy case from 40 years ago in a different circuit, will reveal that it has no relevance to the issues at hand and is clearly distinguishable.

Sixth, the Sagi Parties argue that "no member of the Creditor Group or their counsel consents to the disclosure of any of their confidential common interest privilege communications", going so far as to submit declarations to the Court as to their understandings and "expectation" that their communications amongst themselves were protected from

---

Common Interest Privilege. If anyone was late in asserting the issue it was Sagi that only after the Trustee raised it against the Sagi Parties did Sagi then wish to obtain communications by and between the Debtor-Transferees

Honorable James L. Garrity
July 14, 2020
Page 5 of 7

disclosure.[2]   Unfortunately, for the Sagi Parties, this is not the test.  Even if these parties believed that their concocted strategy outlined in the Trustee's Opening Brief was protected from disclosure, it simply does not make it so.  The Sagi Parties' gross miscalculation of the availability of the Common Interest Privilege is a problem of their own making, and this Court should not reward such mistakes. *See Hypnotic Taxi*, 566 B.R. at 316 (rejecting parties' mistaken belief as to applicability of common interest privilege, stating that law firm's "bare assertion that a common interest exists" and "their belief that the common interest applies" is not sufficient).  When considering what we have learned thus far, it is hard to imagine why the Sagi Parties would have thought that their communications could be kept from a court of equity.  As referenced in the Trustee's Opening Brief, in June 2019, Mr. Oldner was appointed in a bakery by Sagi, a judgment creditor, not the prior trustee, Dalia Genger.  Further, Mr. Oldner has an inherent conflict insofar as he has a personal relationship with Robin Rodriguez, whose entity, MSM, has a disputed claim against the Trust. The circumstances surrounding the inter-creditor agreement and Dalia and Sagi's "settlement agreement" in December 2019 (a different agreement than the one mentioned in the Sagi Parties' Letter) to increase Dalia's and Sagi's clam by over $9 million during this case are all suspect.  And the Trustee believes we have only scratched the surface. Earlier today, in advance of Sagi's deposition tomorrow, Sagi produced a written release he obtained from Mr. Oldner in August 2019, just one month after commencement of the case. *See Bank Brussels Lambert*, 160 F.R.D. at 447 ("the common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation").  All of these facts are relevant to the Motion to Dismiss and the need to keep this case in Chapter 7 for the Trustee's continued investigation.

Seventh, the Sagi Parties argue that the Common Interest Privilege applies because they made settlement offers to the Trustee during this case as a "team" or "group".  See Sagi Parties' Letter, p. 5.  As indicated in the Trustee's Opening Brief, the Trustee is not seeking those communications, and to the best of the Trustee's knowledge, neither are the Debtor-Transferees.  Nor is there any merit that the Trustee's reference at Court hearings of the "Sagi Group" means that the Sagi Parties have, by law, the right to withhold documents that may be relevant to the Motions to Dismiss and which may affect the integrity of the bankruptcy process.  Further, in any event, this specific argument as it pertains to settlement communications by the Sagi Parties does not protect other documents and communications between the parties, which did not involve the Trustee, when the strategy in preparation of an eventual bankruptcy case was put into action in early to mid-2019.

Eighth, the Sagi Parties also cite to numerous cases relating to the attorney-work product doctrine.  Here again, the Sagi Parties are missing the point.  Since Sagi Parties and their counsel have been working together for a purpose that is not a legal interest, and instead for a

---

[2] Curiously, it is interesting that Dalia Genger was able to provide the supporting declaration as the Court has previously been advised by her counsel that she does not have a computer and that she is afraid to see anyone in light of the COVID-19 crisis. It is a fair question, then, as to how Dalia Genger is able to appear on one matter (in support of the briefing on common interest privilege) but not another (a deposition as to relevant facts pertaining to the Motions).

Honorable James L. Garrity
July 14, 2020
Page 6 of 7

commercial purpose, the Common Interest Privilege does not apply to protect any of the attorney-work product shared between the parties.

Ninth, the Sagi Parties refer to certain statements by Judge Davis in support of transfer of venue to New York in which Judge Davis stated "the Debtor will be required to explain what happened to the $32 million dollars." The Sagi Parties then go on to state that the "Motion to Dismiss seeks squarely to address the central question of what became of the $32.3 million". See Sagi Parties' Letter, p. 10. However, as the Court is well aware, we all know what happened to the $32.3 million. Judge Davis further viewed dismissal as a "non-starter, suggesting that in light of all of the litigation between the parties "this sounds like it ought to be in bankruptcy somewhere". See Dkt. No. 140 (October 23rd Transcript, p. 6:15-16; p. 7:2:4). Curiously, the Sagi Parties forgot to cite to Judge Davis's views on the Sagi Parties' proposed inappropriate remedy of dismissal. The Sagi Parties' comment that the Trustee's Motion "ducks the question" regarding the Potential Avoidance Action is incorrect. As reflected in the Trustee's Motion, the Trustee is prepared to address the Potential Avoidance Action in one of several ways, as succinctly stated in the Trustee's Motion, well before the two year statute of limitations expires. The fact that the Trustee has not done so yet is of no consequence. As repeatedly stated, the entry into the transactions contemplated in the Trustee's Motion keeps the Potential Avoidance Action as "property of the estate", and the Trustee will determine, after careful analysis of the risks and costs of litigation, how best to proceed with the maximizing of value on the Potential Avoidance Action. Meanwhile, the Motion to Dismiss, if granted, would allow the Sagi Parties to pursue various actions against similar defendants in numerous courts, bypassing this collective bankruptcy proceeding which is keenly positioned to decide the Potential Avoidance Action.

## CONCLUSION

As set forth herein and in the Trustee's Opening Brief, the Common Interest Privilege does not apply to protect the Sagi Parties' communications from disclosure. To the extent that the Sagi Parties were incorrect in their assumptions, this is a problem of their own making. Sagi has decided to wage war on this estate through the filing of the Amended Motion to Dismiss and the pursuit of discovery against numerous parties in the hope that this Court dismisses this case. This is a fight he brought to the forefront. And now, he wishes to hold back documents, while suggesting other parties have engaged in fraud. It does not work that way. The mere fact that the Sagi Parties have gone to such lengths to keep their communications secret from the Court based on a faulty legal premise implies that those communications, once released, will reflect poorly on their good faith in this case, and may very well give rise to actionable claims for the benefit of the estate.

In sum, the Trustee and the various other parties that believe this case belongs in Chapter 7 have a right to obtain relevant information and documents from the Sagi Parties that may pertain to the Motion to Dismiss and the entire bankruptcy process. The Sagi Parties have failed to satisfy their burden to demonstrate that the Common Interest Privilege applies. As such, for the reasons set forth herein, the Trustee respectfully requests that the Court determine that the Common Interest Privilege does not apply.

Honorable James L. Garrity
July 14, 2020
Page 7 of 7

    The Trustee looks forward to the hearing to consider this legal issue on July 21, 2020.

    Respectfully submitted,

    /s/Rocco A. Cavaliere

    Rocco A. Cavaliere


To: All Counsel of Record by Email and ECF