

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

Thomas A. Pitta
*Partner*
Tel: 212-238-3148
Fax: 212-238-3100 •Fax (alt.) 212-608-0544
tpitta@emmetmarvin.com

July 14, 2020

**Via ECF and Fedex**

Honorable James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

> RE: *In re Orly Genger,*
> *Case No. 19-13895 (JLG)/Common Interest Privilege*

Dear Judge Garrity:

      This firm represents judgment creditor Sagi Genger ("Sagi") in connection with the above-referenced bankruptcy proceeding. We write on behalf of the Creditor Group[1] in opposition to the letter briefs filed by the Debtor and Chapter 7 Trustee seeking to invade the common interest privilege protecting communications by and among the Creditor Group and its attorneys.

      Before addressing that, however, we first wish to reaffirm our request for a ruling that communications among the Debtor-Transferee Parties are not protected by the common interest or similar privileges. Despite being on notice that we would be challenging their assertion, Debtor-Transferee Parties did not seek to defend their own assertions of common interest privilege, and accordingly they have failed to meet their burden. Specifically, we ask that each Debtor-Transferee Party or counsel be compelled to produce all communications with any other Debtor-Transferee Party or counsel concerning the pending motion to dismiss the bankruptcy case, the constructive trust action, the Trustee's Motion, 2013 Settlement Agreement, the $15 million Trump Notes created thereby, the March 31, 2017 Escrow Agreement by which the Debtor-Transferee Parties sought to divvy up the proceeds, and the purported encumbrances placed on those proceeds by the Debtor for the benefit of her husband and father.

---

[1]  Unless otherwise defined herein, defined terms shall have the same meaning ascribed to them in Sagi Genger's Letter Brief in Support of the Common Interest Privilege, filed on July 10, 2020, (the "Sagi Letter Brief") Dkt. No. 293.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 2

Such communications should consist of those that Mr. Herschmann has had with KBT, as he takes the position that he is a party to this bankruptcy solely as a creditor, and also with the Debtor, as no spousal privilege can attach to communications regarding a business transaction for which a creditor seeks to collect against his spouse. *See G-Fours, Inc. v. Miele*, 496 F.2d 809, 811-812 (2nd Cir. 1974) (communications regarding a spouse's bank accounts and ownership and transfer of property "would not seem to invade the marital privilege"); *Saint Annes Dev. Co., LLC v. Trabich*, 2009 WL 324054, *10 (D. Md. Feb. 9, 2009) (spousal privilege "does not protect underlying facts from disclosure and may not be used in a blanket fashion to shield information about business transactions or other such events") (citation omitted).

By contrast, the Creditor Group has more than met its burden of establishing a common legal interest amongst its members and their counsel. Both the Debtor and Trustee have filed briefs that fail to address the overriding and most important fact in connection with the Creditor Group's common legal interest; *to wit*, that the Creditor Group parties have worked in concert over the last several years for the common legal purpose of exposing and remediating the actual and constructive fraud committed by the Debtor-Transferee Parties.

The key step in the Creditor Group strategy was undertaken on June 11, 2019, when Sagi filed a turnover action before Judge Broderick, in an action in which Dalia Genger ("Dalia") was a party (the "Turnover Action"). Adjudication of the Turnover Action, seeking to restore the $32.3 million, would entirely obviate the need for this bankruptcy case and all the fraudulent transfer litigation the Trustee complains about in her submission.

Importantly and contrary to the suggestion of the Trustee, no member of the Creditor Group sought recovery of assets from the Debtor, only restoration of assets to the Debtor – the $32.3 million. Indeed, it is an unusual feature of this bankruptcy that the Debtor has and remains committed to blocking the restoration of the funds necessary to pay her creditors – preferring that assets remain in the custody of her insiders.

The Debtor and Trustee's arguments in connection with the common interest privilege fall into three general categories, each of which is addressed below.[2]

First, the Trustee and Debtor argue that members of the Creditor Group share only a "commercial" interest and therefore, the common interest privilege is not applicable. The

---

[2] The Trustee has a fourth "argument" - that the common interest privilege should not be applied broadly – but the cases relied upon are largely subsumed in the argument on "commercial" v. "legal" interest and therefore, will be discussed in that section of the response. Moreover, the "facts" set forth in this section of the Trustee's brief are an indication that that the Trustee and her counsel are still unfamiliar with the record, despite studying the issues for more than half a year.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 3

Debtor and Trustee cite to *In re Leslie Controls. Inc.*, 437 B.R. 493 (Bankr. D. Del. 2010), to establish the elements of the common interest privilege and to support their contention that the Creditor Group shares only a common "commercial" interest, not a common legal interest. In *Leslie Controls*, however, on facts similar to the case at bar, the Court found that the common interest privilege <u>applied</u>. *Id*. at 502. Moreover, the *Leslie Controls* Court distinguishes cases that found only a commercial interest existed – some of which are relied upon by the Debtor and Trustee. *Id.* at 498-500.

The question in *Leslie Controls* was whether privileged communications between the debtor and its counsel and various other parties were protected from discovery under the common interest doctrine. *Id.* at 495. There, an insurance company argued that the parties shared, at most, a common commercial interest and, therefore, the common interest privilege did not apply. *Id.* at 498. After broadly stating the origins and elements of the common interest doctrine, the Court distinguished a number of cases cited by the insurance company – some of which are now cited by the Debtor and Trustee – and determined that the party invoking the common interest doctrine must present evidence that a legal interest is implicated. *Id.* at 500. "If such legal interest is established then the common interest doctrine will apply…even if there are separate or overlapping commercial interests." *Id.*

The Court found that at the time the documents were exchanged, the parties shared a common interest in preserving and maximizing insurance proceeds available to pay claimants. *Id.* at 502. "This is an inherently legal question. It involves an analysis of the insurance documents, as well as contract, insurance and bankruptcy law." *Id.* at 500. Moreover, the Court specifically found that the parties "were not merely third-party bystanders." *Id.* The Court was persuaded that the parties were directly involved in the effort to maximize insurance coverage in order to "maximize the size of the pie." *Id.* Importantly, the Court noted that <u>whether the parties had competing interests later on in connection with individual pieces of that pie was not of import in determining that the common interest privilege applied</u>. *Id.* at 502. The facts in the case at bar are more closely aligned to those in *Leslie* than in any of the other cases also cited by the Debtor or Trustee[3].

---

[3] The cases cited by the Trustee and Debtor are entirely inapposite and readily distinguishable to the case at bar. In *Bank of America, N.A. v. Terra Nova Insurance Co., Ltd.,* 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002), the issue turned squarely on the negotiation of a credit agreement by and among the parties. There was no legal interest implicated and there was "no evidence that the letter of credit agreements constituted anything more than a business transaction – that is, a commercial endeavor." *Id.* at 497. In *Bank of Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*, 160 F.R.D. 437 (S.D.N.Y. 1995), the parties seeking the privilege provided no evidence to establish anything other than a business interest in a commercial transaction, nor that their attorneys ever coordinated in their legal efforts. The case at bar stands in stark contrast as there have been multiple instances of the Creditor Group's attorneys working in close coordination to

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 4

      The Creditor Group has worked together for the purpose of exposing and remediating the actual and constructive fraud committed by the Debtor-Transferee Parties[4]. Those efforts have been <u>exclusively</u> through litigation and the court process. Although they add a lot of negative spin, the Debtor and Trustee actually describe a common enterprise encapsulating an "orchestrated" strategy to seek relief from the courts for a common purpose. See Trustee Brief at p. 5. Simply stated, the Creditor Group, through its members, are not "merely third party bystanders." *Leslie*, 437 B.R. at 500. Each is directly involved in the effort to maximize the impact of litigation to expose and remediate the fraud committed by the Debtor-Transferee Parties and having the $32.3 million returned.

      Moreover, as *Leslie* instructs, it is of no moment that the parties may have conflicting positions in connection with how the proceeds of the Turnover Action are to be distributed once recovered from the fraudulent transferees.

> The common interest privilege does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects. The privilege applies even where a lawsuit is foreseeable in the future between co-defendants.

*Leslie.*, 437 B.R. at 497 (citations omitted).

---

advance their ultimate legal strategy. In *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D 466 (S.D.N.Y. 2003), there was no evidence of any legal strategy was discussed and indeed, testimony was such that the parties "did not discuss the 'legal strategy concerns of [Bombardier Capital]' and that Bombardier Capital was 'essentially a third-party.'" *Id.* at 472 (citation omitted). Again, this case was distinguished by Judge Sontchi in *Leslie Controls*. In *In re Vitamin C Antitrust Litigation*, 2011 WL 197583 (E.D.N.Y. Jan 20, 2011), no legal interests were implicated in sharing the documents at issue. Indeed, the parties in that case cited no authority to support that their "common interest with respect to the regulation and the efficient regulation of the economy… can support assertion of the attorney-client privilege as extended by the common interest rule." *Id.* at 6. Finally, in *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16 (E.D.N.Y. 1996), the common interest doctrine failed on multiple levels, including that the confidences shared were not between parties and their attorneys, but between a party and his own attorney and then again shared not with another party's attorney, but with the other party. "To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its own attorneys." *Id.* at 18. Plainly, that would not describe the case at bar.

[4]    A list of the actions taken in furtherance of the Creditor Group's joint legal strategy is set forth in the Sagi Letter Brief.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 5

As Judge Sontchi found, "[t]o return to the pie analogy, <u>the size of the pie and the size of the pieces are two separate questions. The parties are in accord as to the former and adversaries as to the latter</u>." *Id.* at 502 (emphasis added). Here, the Creditor Group has put aside their differences with respect to the pieces and are in complete accord with respect to the size of the pie. Indeed, the case at bar presents even stronger facts than *Leslie* for finding that the common interest privilege applies, in that the Creditor Group has collectively sought to minimize litigation in connection with the size of the pieces.

The Debtor and Trustee's submission misidentify the actual legal distinction between the members of the Creditor Group's positions. All members of the Creditor Group take the position that the $32.3 belong to the Debtor, they each argue a distinct view as to in what capacity she holds those funds or the right to those funds (personal capacity, as a quasi-fiduciary to the Orly Trust, or in part as a constructive trustee for Dalia). Those distinct arguments are each based on a good faith interpretation of the facts, which is why compromises between the parties have ensued in the form of written agreements as to how to treat any recovered assets. There exists a "strong judicial policy in favor of settlements…" *In re Painewebber Ltd. P'ships Litig.,* 147 F.3d 132, 138 (2d Cir. 1998) (citation omitted). Rather than disparage the Creditor Group for seeking a compromise, the Trustee should be looking into the fraudulent acts of the people from whom she is seeking a loan intended solely to pay her law firm.

<u>Second</u>, the Trustee argues that there was no "intent" to create a common interest privilege. In this regard, the Trustee seems to misunderstand the law in connection with the "intent" requirement. It appears she believes that the common interest privilege must be reduced to a writing. This is simply not the law. *See Vacco v. Harrah's Operating Co., Inc.*, 2008 WL 4793719, *9 (N.D.N.Y. Oct. 29, 2008) (oral agreement established common interest); *see Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) (common interest doctrine requires an agreement, but "not necessarily in writing"); *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) (same), *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 1113 (2007) (holding that the common law, not a writing, creates the common interest privilege). In any event, although not dispositive, but providing further evidence of the common legal interest, there is in fact, a writing reflecting such an intent between Sagi's counsel and Mr. Oldner's counsel. <u>See "Exhibit A"</u>. As for Dalia's inclusion, she and Sagi have been co-defendants since 2007 in eight legal misadventures of the Debtor alleging they were joint tortfeasors – sometimes sharing the same attorney.

<u>Finally</u>, the Trustee argues that "full transparency" dictates invading the attorney-client privilege. According to the Trustee, disclosure of the requested documents – mental impressions and attorney work-product by and among the Creditor Group and its lawyers

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 6

in their litigation strategy – is somehow important to the pending motions and the integrity of the bankruptcy process. Nothing could be more incorrect.

First, the Trustee does not cite to a single case standing for the proposition that breaching the attorney-client privilege or work product doctrine – cornerstones of the American legal system – is warranted just because it may be advantageous to an adversary. Second, the Trustee cannot (and has not) articulated a single reason as to why the withheld communications are important to the determination of the pending motions (the Motion to Dismiss and the Trustee's Motion). What can be so critical about the Creditor Group litigation strategy in connection with the Trustee's Motion? That motion, in so far as it purports to sell claims against Dalia (claims that have already been decided against the Debtor by the New York Supreme Court) is not objectionable (so long as all defenses are maintained) as was reported to this Court at the June 30, 2020 and July 2, 2020 hearings. As for the "loan" portion of the claim, there is no conceivable portion of attorney-client privileged documents addressing litigation strategy that has any bearing on the Trustee's ability to enter into such a loan. The requested documents evidence the mental impressions of the attorneys advising the Creditor Group and have no bearing on the Trustee's ability to obtain, or the rationale for obtaining, a loan.

Moreover, allegations against the Debtor and her cohorts form the basis for the Motion to Dismiss, not allegations concerning the Creditor Group. As such, whether Dalia, Mr. Oldner, or Sagi, entered into a settlement agreement, provided for a release as part of an agreement to cooperate in a common legal effort (a standard provision that this particular Trustee included in her own proposed 9019 Motion to the Creditor Group) is entirely irrelevant.

Instead, the Trustee and her counsel excoriate Dalia for filing a constructive trust complaint to protect her interests in the TRI share proceeds that the Debtor-Transferee Parties have fraudulently retained. The Trustee and her counsel suggest Dalia filed the constructive trust action to frustrate the bankruptcy process, but then cannot explain why she asked that it not be heard until after the motion to dismiss was adjudicated. In fact, Dalia's timing in filing a constructive trust action is easily understood – it was filed just prior to the sixth anniversary of her first demand under the promises made in 2004. That anniversary may have implicated a statute of limitations barring her action and is addressed in her opposition to the motion to dismiss the constructive complaint and cross-motion for summary judgment filed contemporaneously herewith.

That the equities of this situation, conclusively adjudicated by both the Federal and State courts, are now being re-opened for examination by the Trustee, is just more evidence of the Debtor's improper use of the bankruptcy process. Importantly, much of the information from these Courts, including their decisions and memorandum on the facts and circumstances surrounding these various cases, has been provided to the Trustee and her

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
July 9, 2020
Page 7

counsel. Nevertheless, the Trustee and her counsel do not seem to have assimilated them. Notwithstanding the fact that the Trustee and her counsel were presented with evidence of fraud committed by the Debtor-Transferee Parties, the Trustee and her counsel apparently determined it was not that important and instead, entered into a business relationship with them.

In conclusion, the Creditor Group satisfies the elements necessary to find that a common interest privilege exists to shield the discovery at issue: (i) the communications were made by separate parties in the course of a matter of common legal interest, (ii) the communication was designed to further that effort, and (iii) the privilege has not otherwise been waived. *Leslie,*. 437 B.R. at 496 (citations omitted). Instead of recognizing the long history of coordinated effort among the Creditor Group of resort to the courts to expose and remediate the Debtor-Transferee Parties' fraud, the Trustee resorts to "what-about-isms" and other misdirections that are entirely irrelevant to (a) the existence of a common interest privilege, (b) the Trustee's Motion, and (c) the Motion to Dismiss. Moreover, for the reasons stated above, the Debtor cannot establish that the common interest privilege is applicable to communications by and among the Debtor-Transferee Parties.

We thank the Court for its consideration.

Respectfully submitted,

/s/ *Thomas A. Pitta*
Thomas A. Pitta
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, New York 10271
*Attorneys for Sagi Genger*

cc:   All Counsel of Record (via ECF)

   Encl.

# EXHIBIT A

## John Dellaportas

| | |
|---|---|
| **From:** | Daniel Cohen <dcohen@wmhlaw.com> |
| **Sent:** | Thursday, June 13, 2019 2:14 PM |
| **To:** | John Dellaportas |
| **Subject:** | RE: COMMON INTEREST PRIVILEGE |

Thanks John. I believe your email crossed with mine.  Yes, I confirm.

Daniel A. Cohen
Walden Macht & Haran LLP
One Battery Park Plaza, 34th Floor
New York, New York  10004
Office Phone: (212) 335-2042
Cell Phone: (347) 385-2470
Email: dcohen@wmhlaw.com

This email message comes from a law firm and it may contain information that is confidential, privileged and/or attorney work product, subject to all privileges and protections. If you are not an intended recipient, any dissemination, distribution or copying of this email or any of its attachments is strictly prohibited. Please immediately notify the sender by replying to this email and please delete the message and any attachments. Thank you.

**From:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Sent:** Thursday, June 13, 2019 2:13 PM
**To:** Daniel Cohen <dcohen@wmhlaw.com>
**Subject:** COMMON INTEREST PRIVILEGE

Dan, as I have recently switched law firms, I wanted to reiterate our prior agreement that any and all communications between us relating to Genger matters shall be within the scope of the common interest privilege between your clients and mine.  Please confirm by reply email that this is still the case.  Thank you.  John

**John Dellaportas**
**Co-Chair, Litigation Department**
Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Tel:  212-238-3092
Fax: 212-238-3100
Email: jdellaportas@emmetmarvin.com



**John Dellaportas**
Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Tel: 212-238-3092

1