**POLLOCK | COHEN** LLP
60 BROAD STREET, 24TH FLOOR
NEW YORK, NEW YORK 10004
(212) 337-5361

*CONTACT:*
Adam Pollock
Adam@PollockCohen.com
(646) 290-7251

July 15, 2020

**VIA ECF**

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, NY 10004

      Re:    *Orly Genger*, Case No.: 19-13895-jlg

Dear Judge Garrity,

We represent the Orly Genger 1993 Trust, by Michael Oldner, trustee (the "Orly Trust") in the above-referenced bankruptcy. We write on behalf of the Orly Trust in further support of last week's joint submission with respect to our common interest privilege (ECF nos. 293-297) and today's further submission on behalf of the "Creditor Group" (the Orly Trust, Dalia Genger, and Sagi Genger), and in opposition to the submissions of the Chapter 7 Trustee (the "Trustee" and ECF no. 299, "Trustee Ltr.") and the Debtor (ECF no. 298) seeking to pierce that privilege.

The letters submitted by the Trustee and the Debtor make a lot of factual arguments—some accurate, some misleading, and some simply false—that have no bearing whatsoever on the common interest privilege. Their legal argument, however, is brief, asserting only that the Creditor Group has a shared commercial interest and not a shared legal strategy. That argument is simply untrue. As detailed in our previous submission, and as detailed herein, the Creditor Group *does* have a shared legal strategy. The privilege stemming therefrom is an important one and should be protected.

**The Trustee's background sections do not raise a basis for piercing the privilege.**

*The District Court Actions*

As noted in the previous letter, the parties have a common legal interest and strategy in recovering the $32.3 million fraudulently transferred by the Debtor, both through their bankruptcy claims and through the four legal actions filed earlier in the District Court.

In the Trustee's letter, she asserts (through counsel) that these actions constitute an "orchestrated strategy to impede the Trustee's ability to maximize value on the Potential Avoidance Action." (Trustee Ltr. at 5.) But these actions were filed between 2017 and June 2019, *before* the Debtor sought bankruptcy protection, so they could hardly be a strategy to impede the Trustee. (The Debtor apparently threatened for many months to file for bankruptcy, but no one

Hon. James L. Garrity, Jr.
July 14, 2020
Page 2 of 7

took her seriously: The Debtor has ample assets at her disposal, both as an individual and through her marriage to the extraordinarily wealthy Eric Herschmann.)

The Trustee's letter also contends that the Creditor Group is using the common interest privilege for the goal of "wreaking havoc on this bankruptcy case to the detriment of all parties."[1] (Trustee Ltr. at 7.) This contention is absurd.

The reality is that the Creditor Group worked closely with the Trustee, and the former Texas-based trustee, consenting to an interim stay of these actions for nearly a year while we sought to cooperatively maximize value on the "Potential Avoidance Action."

However, in late May 2020, the Trustee decided to contract away her ability to pursue what she characterizes as "the largest potential asset in this bankruptcy case" – the "Potential Avoidance Action." (Trustee Ltr. at 3.)

Instead, she proposed to sell separate claims against the Creditor Group to an entity for which the Trustee has identified Eric Herschmann as the representative. (*See* Transcript of Court Conference, May 22, 2020, at 20.) The Trustee's counsel contends that these claims are "very costly" and have "some risk." (Transcript, May 22, 2020, at 13.) Indeed, there is more than "some risk"—the claims to be sold have no value to the bankruptcy estate because the Trustee has no standing to pursue them.[2]

---

[1] This case has certainly been extraordinary. Debtor filed for bankruptcy in July 2019 in Texas, which Judge Tony M. Davis (W.D.Tx.) concluded was "a location that suits her legally strategic interests" … "to get away from the New York Courts." (Oral Ruling, Nov. 5, 2019, ECF no. 215, at 9–10.) Judge Davis sent the case to New York, where the Trustee and the various Debtor-aligned parties have embarked on a sideshow campaign, trying to make this case all about Sagi and Dalia Genger. And, on top of that, the Debtor's husband, Eric Herschmann, has inundated this Court with countless letter submissions regarding Sagi's investigator's alleged acts in Israel and Mr. Herschmann's premarital agreement.

[2] The Trustee is seeking to sell the claims against Dalia Genger and Michael Oldner for their alleged breaches of fiduciary duty to the Orly Trust. (ECF no. 248.) These are inherently derivative claims, do not belong to the Bankruptcy Estate, and the Trustee has no standing to pursue or sell them. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) ("the trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings."); *In re CIL Ltd.*, 2018 WL 878888, at *4 (Bankr. S.D.N.Y. Feb. 9, 2018) (the Chapter 7 Trustee has standing to prosecute cases of action that "could have been asserted by the debtor against third parties as of the petition date. In contrast, estate property does not include a cause of action that belongs solely to a debtor's creditors or shareholders."); *see, e.g., In re Treadway*, 117 B.R. 76, 86-87 (D. Vt. Bankr. 1990) (bankruptcy court does not have jurisdiction over proceeding which cannot have any effect on

(continued…)

---

POLLOCK | COHEN LLP

So, the Trustee is not pursuing the valuable claims while allowing the Herschmann group to pursue the value-less claims. If anyone is impeding the bankruptcy, it's apparently the Trustee.

And, in any event, even if the Creditor Group had a shared legal strategy of impeding the Trustee's ability to recover assets for the creditors (which would also be at odds with our actual interest, as creditors, in recovering assets), that shared legal strategy would not be a reason to pierce the common interest privilege.

### *The Orly Trust and Releases*

The Trustee's letter expends considerable ink on the Creditor Group's background and agreements, and the release of Dalia Genger, the previous trustee of Orly Trust. Questions about the administration of the Orly Trust, fiduciary duties, etc., were topics that Your Honor had expressly directed, during our June 23, 2020 telephonic discovery conference, would *not* be the subject of the Mr. Oldner's deposition. Instead, Your Honor clearly limited the deposition to the topics in Sagi Genger's motion to dismiss. Nonetheless, Michael Bowen (on behalf of the putative creditor Kasowitz Benson law firm) violated Your Honor's direction almost immediately, spending barely 90 seconds on the motion to dismiss before turning to Mr. Oldner's fiduciary duties and spending countless hours on the topic.

Before the deposition, the Debtor, the Trustee, and the Kasowitz Benson firm had sought documents and communications with Dalia Genger. We objected to the extent that these documents were not relevant to the pending Motion to Dismiss. Following our document production, the parties did not follow-up or seek to overcome our objections (other than in connection with the instant motion regarding the common interest privilege). Thus, the release of Dalia Genger was not produced—not because it would have somehow been subject to the common interest privilege, as the Trustee incorrectly asserts in her letter—but because it simply wasn't relevant to the pending Motion to Dismiss.[3]

---

the debtor's bankruptcy estate); *see also Yudell v. Gilbert*, 99 A.D.3d 108 (2d Dep't 2012) (adopting Delaware law in explaining the difference between a direct and derivative claim: "a court should consider (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)") (quotation and citation omitted).

We also note that Orly Genger is not the sole beneficiary of the trust – her children are also beneficiaries – and the trust has its own distinct creditors. These are among the reasons that the distinction between Orly in her individual Chapter 7 debtor capacity versus Orly in her trust beneficiary capacity must be respected.

[3] When Mr. Oldner testified about the release, he mis-remembered its date. He released the prior trustee in August 2019, some two months after his appointment. (He will correct his testimony with an errata sheet.)

POLLOCK | COHEN LLP

Hon. James L. Garrity, Jr.
July 14, 2020
Page 4 of 7

And, in any event, the release of the prior trustee, if anything, weighs in favor of their shared legal strategy and not against it.

**The Debtor's letter also does not raise a basis for piercing the privilege.**

The Debtor's letter, like the Trustee's letter, makes very limited arguments as to why the Creditor Group's common interest privilege should be pierced.

### *The Document Production*

The Debtor complains that the Orly Trust didn't produce enough documents in advance of Mr. Oldner's deposition. But, as detailed in my letter to the Court dated July 2, 2020 (ECF no. 284), the parties had served a subpoena and emailed five PDFs that were dramatically overbroad, including three hundred categories of requests in total, seeking documents and correspondence covering 16 years of Genger-family litigation, and having nothing to do with the pending motions.

After receiving these hundreds of document requests, we engaged in many hours of meet and confer calls with the Kasowitz Benson law firm, as well as counsel for the Debtor and the Trustee. Ultimately, we produced 5,500 pages of documents responsive to the ten categories of the parties' document requests that were possibly related to the pending motion to dismiss. *See* Cover Letter, ECF no. 284-1. As noted above, the parties did not follow-up or seek to meet and confer any further with respect to the document production. Instead, they decided to take Mr. Oldner's deposition, only to later complain that they were supposedly missing documents.

### *Sworn Statements*

The Debtor argues that the Creditor Group did not file sworn statements of their common legal strategy. But we did exactly that, filing six declarations on ECF well before the Debtor's filing. *See* ECF nos. 293-1, 293-4, 294–297.

**The common interest privilege should be protected.**

The common interest privilege, as an extension of the attorney-client privilege, "play[s] a critical role in our judicial system." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999); *see In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005) ("The common interest privilege is an extension of the attorney-client privilege." (citing *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). Such privilege "encourages observance of the law and aids in the administration of justice." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (citing *Commodity Futures Trading Commn. v. Weintraub*, 471 U.S. 343, 348 (1985)); *see United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) ("the attorney-client privilege creates a rule of confidentiality that recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.") (quotation omitted).

"[T]he privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." *Schwimmer*, 892 F.2d at 243.

The common interest privilege "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Schaeffler*, 806 F.3d at 40. It applies "where multiple parties are represented by separate counsel that share a common interest about a legal matter." *In re Velo Holdings Inc.*, 473 B.R. 509, 514 (Bankr. S.D.N.Y. 2012) (quotations omitted). "The rationale for the doctrine is that it 'permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers.'" *Id.* (quoting Restatement (Third) of the Law Governing Lawyers ("Restatement") § 76 cmt. b.).

### *The common interest privilege applies to the Creditor Group's shared legal strategy.*

The Trustee and the Debtor contend that the common interest privilege should be pierced because, in their view, the Creditor Group has only a shared commercial interest. But, as detailed in the prior letter and sworn declarations, the members of the Creditor Group share a joint legal strategy in seeking to recover the $32.3 million in settlement proceeds fraudulently transferred and encumbered by the Debtor-Transferee Parties. We have engaged in numerous confidential communications, sharing our respective attorneys' mental impressions, legal opinions, and strategies. In making those communications, we relied on the parties' common interest privilege.'

For the privilege to apply, "[t]he communication must relate to the common interest, which may be either legal, factual, or strategic in character." *Velo Holdings*, 473 B.R. at 514 (quoting Restatement § 76 cmt. e). Importantly, "[t]he interests of the separately represented clients need *not be entirely congruent*." *Id.* (emphasis added). Indeed, the clients may have "conflicting interests without losing the benefit of the common interest doctrine where the communications they seek to protect relate to their common interests." *Id.* (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 787–88 (3d Cir. 1985)).

Although a common interest that is *solely* commercial is generally not subject to the common interest privilege, commercial interests often accompany legal interests that are subject to the common interest privilege. *Id.* at 515–16. The common interest privilege will apply if the: "(1) the party who asserts the rule ... share[s] a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [were] designed to further that interest." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009). Generally, this standard is satisfied if there is "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.*.

POLLOCK | COHEN LLP

In *Velo Holdings*, for instance, the debtor worked with the administrative agent of its first lien lenders to preserve credit card processing agreements with a merchant. The debtor asserted a common interest privilege with the agent in an adversary proceeding with the vendor. The court found that although the relationship between the debtor and the agent was "grounded in the parties' commercial relationship," once the debtor and the agent began to "formulate a legal strategy aimed at preserving [the processing] agreements," their communications thereafter were protected by the common interest privilege. *Velo.*, 473 B.R. at 516; *see also, e.g.*, *Schaeffler*, 806 F.3d 34, 41 (2d Cir. 2015) (fact that valuable investment funds were at stake did not render joint legal strategy "commercial" for purposes of common interest privilege); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 413 (S.D.N.Y. 2014) (bank's disclosure to investment managers regarding legal advice on ERISA compliance reflected "more than a simple commercial interest" and therefore protected under common interest privilege); *U.S. v. United Techs. Corp.*, 979 F. Supp. 108, 112 (D. Conn. 1997) (common interest privilege upheld where members of a consortium shared legal advice in an effort to minimize tax liability).

Since at least 2007, Sagi Genger and Dalia Genger, individually and on behalf of the Orly Trust, have been co-defendants in the litany of actions filed by Orly and Arie Genger. Sagi, Dalia, and the Orly Trust share a long-standing joint defense and common interest privilege stemming from these proceedings, and that privilege carries through to the present actions. The shared communications contain legal strategy and legal impressions as how to approach these cases. *See Schwimmer*, 892 F.2d at 243 ("The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter.").

Finally, the common interest communications of the Creditor Group are also protected by the attorney work product doctrine, which protects attorneys' mental impressions, opinions, and legal theories concerning litigation:

> So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary.

*Costabile v. Westchester, New York*, 254 F.R.D. 160, 165 (S.D.N.Y. 2008) (quotation omitted); *see also, e.g.*, *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 446 (S.D.N.Y. 2004) (no waiver of work product privilege where parties share a common interest).

### *No written agreement is necessary to establish the privilege.*

Finally, the Trustee asserts that there can be no common interest privilege because there was no writing evidencing that agreement. (Trustee Ltr. at 9.) But the parties agreed long ago on their common interest. And, more recently, after Michael Oldner was appointed as the trustee of

the Orly Trust, John Dellaportas (counsel for Sagi and TPR) ratified the common interest privilege agreement in correspondence with incoming counsel for the Orly Trust.

Regardless, the common interest privilege may be established without a written agreement. *See Vacco v. Harrah's Operating Co., Inc.*, 2008 WL 4793719, at *9 (N.D.N.Y. Oct. 29, 2008) (oral agreement established common interest); *see Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) (common interest doctrine requires an agreement but "not necessarily in writing"); *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) (same).

### *Settlement communications are not privileged.*

Finally, in Footnote 4 of the Trustee's letter, she asserts that her settlement-related communications with the "Sagi Parties" are somehow confidential. Presumably, she intends to take the same position as to her communications with the Herschmann-related parties with respect to their proposed agreement.

But these communications—with the "Sagi Parties" and the Herschmann-group—are *not* confidential and are *not* privileged. FRE 408 is a rule of evidence, which bars the entry of settlement communications at trial to prove or disprove liability. It does not bar the discovery of such communications in discovery. *See Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 586 (S.D.N.Y. 2011) ("Rule 408 does not apply to discovery.").[4]

\*   \*   \*

For the reasons stated herein, and for the reasons stated in our previous submissions, there is no reason to pierce the Creditor Group's common interest production and compel production of our communications.   Thank you for Your Honor's consideration in this matter.

Sincerely,

/s/ *Adam Pollock*

Adam Pollock

---

[4] Finally, separate and apart from any communications with the Trustee, the Debtor and the Herschmann-group have plainly communicated extensively with each other. They have not produced any of these communications. Unlike the Creditor Group, the Herschmann-group is seeking to obstruct the bankruptcy estate from recovering assets—indeed, even arranging to pay for the Trustee to *not* pursue assets—and, accordingly, their assertion of a valid common interest privilege should be rejected.

POLLOCK | COHEN LLP