

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

John Dellaportas
*Partner*
Tel: 212-238-3092
Fax: 212-238-3100 •Fax (alt.) 212-608-0544
jdellaportas@emmetmarvin.com

August 4, 2020

**<u>Via ECF</u>**

Honorable James J. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

      **RE:**   *In re Orly Genger*, **Case No.: 19-13895-jlg**

Dear Judge Garrity:

      This firm represents judgment creditor Sagi Genger ("Sagi"). We are in receipt of the letter filed by Eric Herschmann last night (the "Letter"). The Letter unfortunately compounds the misleading statements in Mr. Herschmann's prior declarations by grossly mischaracterizing Sagi's recent deposition testimony. (We attach the relevant portions of that deposition transcript to this letter for the Court's reference.)

      As the Court will recall, Mr. Herschmann previously submitted an April 12, 2019 declaration with the U.S. District Court for the Western District of Texas in which he claimed the Debtor and he "do not share any credit cards. … I have given my wife cash to buy food but no other funds and definitely nowhere near $10,000 total." The context of that declaration was Mr. Herschmann's attempt to quash Sagi's subpoena *duces tecum* on the ground, *inter alia*, that he would have no responsive records.

      We subsequently came to learn through a third-party subpoena, notwithstanding the foregoing declaration, that the Debtor and Mr. Herschmann, for most of their marriage, did in fact share an American Express Centurion Card, and Mr. Herschmann had paid well over $100,000 in charges incurred by the Debtor on that shared AmEx. In response, Mr. Herschmann wrote to the Court with the non-sequitur that the Debtor did not jointly "own" the AmEx account, which of course does not change the fact that the Debtor had use of a credit card account that she shared with Mr. Herschmann.

      That is all by way of background for the recent deposition, in which Mr. Herschmann escerpts Sagi as supposedly admitting that Mr. Herschmann's declaration was "technically accurate." Here is the complete answer to the question, which Mr. Herschmann conveniently neglects to provide the Court:

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
August 4, 2020
Page 2

> Q. What evidence do you have in the world that <u>as of April 12th, 2019</u>, Orly Genger had any charge card associated with me whatsoever?
>
> A. We had credit card statements that reflect that you shared a card. I'm not sure that we had it for that date. **<u>If it turns out that you didn't have it on that date, then I think that you have a technically accurate affidavit, but I, you know, given that Orly [said she] didn't share any credit cards at all and we found them and given that Orly Genger denied having credit cards for the previous five years that she had -- and given the fact that she denied having bank accounts, that she in fact had, I think that's the weight of the allegation stands</u>**. I really don't know on that precise day if you continued to share credit cards. And to the extent she didn't and we are technically inaccurate in that precise point then I apologize.

*See* Depo. Tr. at 263-64 (emphases added).

In other words, Mr. Herschmann's use of the present tense to deny that he did not, as of that date, "share" any credit cards with his wife, because he canceled the card shortly before signing the declaration, even if literally correct, remains fundamentally dishonest, as it was employed to seek to quash a subpoena for highly relevant records for the period in which they <u>did</u> in fact share a credit card. Nor does Mr. Herschmann explain how he could truthfully claim to have provided his wife with "definitely nowhere near $10,000 total" in funds, when he had paid off over $100,000 in her credit card charges.

In his Letter, Mr. Herschmann also raises once more the matter of his prenuptial agreement, and connects it with the matter of his firm's pro bono legal work for the Debtor, which he is now seeking to walk back. In response, for now, we would note two points. First, the Kasowitz firm still has not provided us with the complete legal bills from which we could assess these denials, nor a deponent to testify under oath.

More fundamentally, the aspect of the prenuptial agreement that we previously described as "rooted in fraud" was the deliberate omission therefrom of the Debtor's assets and liabilities, which the Debtor testified was "a joint decision with my husband. …Well, it was really his. … My husband understood my legal situation. He understood my possible exposure and liabilities." That testimony remains unrebutted and continues to be part of the evidentiary foundation for the pending Motion to Dismiss.

Respectfully submitted,<br>
*/s/*<br>
John Dellaportas

Encl.
cc:    All Counsel of Record (via ECF)