```
                                                           Page 1
 1

 2   IN THE UNITED STATES BANKRUPTCY

 3   SOUTHERN DISTRICT OF NEW YORK

 4   ------------------------------------------------X

 5   IN RE:

 6                              Case No.:

 7                              19-13895-jlg

 8   ORLY GENGER,

 9      Debtor.

10   ------------------------------------------------X

11

12                   July 15, 2020
                     9:48 a.m.
13

14

15       INTERNET STREAMING EXAMINATION BEFORE

16   TRIAL of SAGI GENGER, the Non-Party Witness in

17   the above-entitled action, taken on behalf of

18   the aforementioned parties, held at the above

19   time and place, and taken before Dorene Glover,

20   a reporter and Notary Public within and for the

21   State of New York.

22

23

24

25   Job No. 181828
```

Page 260
GENGER

2 of describing, right, should Orly decide to
3 have it, that's appropriate you believe, right,
4 sir?
5   A.   Yes, what's wrong with that?
6   Q.   Sir, just so we're clear --
7   A.   Maybe there's some sensibility that
8 I'm not attuned to.
9   Q.   I know you're a caring big brother.
10   A.   I'm not saying I'm a caring big
11 brother. I'm saying it's a matter of fact
12 statement that --
13   Q.   I understand. I'm certain when you
14 went over with Mr. Dellaportas you showed to be
15 concerned, I just want to move on, sir.
16   So, sir, the issue here is you and
17 your mother are saying that all the $32,300,000
18 belongs to the Orly Genger Trust. Orly is not
19 entitled to any of it, right, sir; that's your
20 allegation, right?
21   A.   That's not the allegation I don't
22 think I received the documents, but I believe
23 this was, if I recall, this document was about
24 money being deposited in courts. So that a
25 proper adjudication could be made and the court

Page 261
GENGER

2 decided that it lack jurisdiction here, and it
3 was dismissed.
4   Q.   Sir, let's do this, I want to move
5 to your motion to dismiss, and sir --
6   A.   Bankruptcy --
7   Q.   Your amended and restated are not
8 the exact term of art that you use --
9   A.   The bankruptcy.
10   Q.   I want -- let me see if I can get
11 it on the record Mr. Genger.
12   Judgment creditor Sagi Genger's
13 amended and updated motion to dismiss and end
14 or fall in support to get signed by Mr.
15 Dellaportas, right; this is April 24th of this
16 year, sir?
17   A.   Okay.
18   Q.   So can you go to paragraph 10,
19 please? Paragraph 10, the last sentence, you
20 say on April 24th of 2020, the couple share --
21   A.   Hold on for a second.
22   Q.   Mr. Genger, I want to direct your
23 attention to the last sentence.
24   A.   Hold on. I don't see it, so, hold
25 on a second.

Page 262
GENGER

2   Q.   The last sentence it's right in
3 front of you. I'll read it for you so it will
4 make it easier.
5   A.   Your reading is different than what
6 I'm seeing.
7   Q.   Let me see if I can get the
8 question out before you do anything let me get
9 the question out.
10   A.   Go ahead.
11   Q.   This document is filed on
12 April 24th, of 2020, this year, sir.
13   You say the couple share an Amex
14 black card.
15   Do you see those words, sir?
16   A.   Yeah, why would --
17   Q.   Mr. Genger listen to the question.
18   MR. HERSCHMANN: Move to strike the
19   answer as nonresponsive.
20   Q.   We're going to have to come back
21 again. I suggest you wait for a question.
22 Provide to us any evidence you have in the
23 world as of April 24th, 2020, the couple as you
24 say meaning Orly Genger and I share an Amex
25 black card.

Page 263
GENGER

2   A.   It's true on the date in which this
3 was filed as opposed to the dates on which we
4 got anything. I don't think we have -- I
5 will -- I think that it's fair. I don't want
6 John jumping out of his chair, but I think it's
7 fair to say that we don't know that on the day
8 we filed this that you shared that card only,
9 that you filed it at a point -- only that you
10 had the card together a few months earlier
11 after both denying that the card exists. To
12 the extent that this read is read to mean that
13 you have a shared card on the day in which this
14 motion is filed, I don't know that we have
15 evidence to support that allegation. I don't
16 think that was the intent.
17   Q.   Sir, let me ask you a question
18 because you've used the word from my
19 declaration of April 12th, 2019. When I said
20 we don't share any credit cards, and that's the
21 term that you discussed in multiple filing,
22 you've said that statement is false, right?
23   What evidence do you have in the
24 world that as of April 12th, 2019, Orly Genger
25 had any charge card associated with me

Page 264

GENGER

1 whatsoever?
2  A.  We had credit card statements that
3 reflect that you shared a card. I'm not sure
4 that we had it for that date. If it turns out
5 that you didn't have it on that date, then I
6 think that you have a technically accurate
7 affidavit, but I, you know, given that Orly
8 didn't share any credit cards at all and we
9 found them and given that Orly Genger denied
10 having credit cards for the previous five years
11 that she had -- and given the fact that she
12 denied having bank accounts, that she in fact
13 had, I think that's the weight of the
14 allegation stands. I really don't know on that
15 precise day if you continued to share credit
16 cards. And to the extent she didn't and we are
17 technically inaccurate in that precise point
18 then I apologize.
19  Q.  Just so you're perfectly clear on
20 this statement, your lawyer just filed a letter
21 with the court that said you did not subpoena
22 American Express through the date of Orly's
23 deposition, but the subpoena that you issued in
24 fact, did go through the date of her deposition

Page 265

GENGER

1 and went through the date of my declaration.
2 He signed it on April 29th of 2019. And the
3 American Express records reflect that Orly
4 didn't have a Centurion American Express card
5 in any way associated with anyone? And in
6 April 12th, 2019, there's no question about it,
7 sir. So after you had made multiple
8 allegations that claimed I committed perjury,
9 what's the basis for the allegation since no
10 card existed as of April 12, 2019, sir? I want
11 you to talk about me, not anything you
12 associate with what Orly said in her
13 interrogatory responses. What's the basis for
14 the allegations, sir, or are you telling us now
15 that you're wrong?
16  MR. DELLAPORTAS: Mr. Herschmann
17  are you testifying? Because you went on
18  for several minutes.
19  MR. HERSCHMANN: Mr. Dellaportas,
20  please do not interrupt. Please do not
21  give a speaking objection. You
22  understand the parameter of what the
23  deal is. I want an answer to the
24  question.

Page 266

GENGER

1  MR. DELLAPORTAS: Objection. Asked
2  and answered. I would once again ask
3  the witness --
4  MR. HERSCHMANN: Do not coach the
5  witness. Do not coach the witness on
6  this question. I want an answer to the
7  question.
8  MR. DELLAPORTAS: -- on his
9  accountability and I'm not screaming --
10  MR. HERSCHMANN: Mr. Dellaportas,
11  you are trying to interfere with this.
12  You're now showing the witness
13  information which is completely
14  inappropriate. I want an answer to the
15  question.
16 BY MR. HERSCHMANN:
17  Q.  The serious allegation, Mr.
18 Genger --
19  A.  Mr. Dellaportas never showed me
20 information of a serious allegation he showed
21 me nothing. I don't know what you're talking
22 about. What's your -- it's simply not true.
23  MR. HERSCHMANN: Mr. Dellaportas.
24  Let's get the question answered, please.

Page 267

GENGER

1  A.  No, I want to know right now why
2 you think that Mr. Dellaportas showed me
3 anything? Right now. You're accusing me -- I
4 want to know -- this is on an record for the
5 court. What you're doing is way off. If you
6 have some allegation that I made is technically
7 incorrect, God bless you, but saying that I'm
8 somehow being coached when I'm not is wrong. I
9 want to take minute.
10  MR. HERSCHMANN: Let's take all
11  take a minute to calm down. For the
12  record let's go off the video -- Dorene,
13  let's go on the record now, right, the
14  video will reflect that Mr.
15  Dellaportas made a -- I'm sorry -- the
16  transcript will reflect that Mr.
17  Dellaportas was making speaking
18  objections in relationship to this,
19  right? And then Mr. Genger looked to
20  the left which is where Mr. Dellaportas
21  has been sitting. All I want is an
22  answer to the question. Mr. Dellaportas
23  interrupted and now they've walked out
24  of the deposition.