**UNITED STATES BANKRUPTCY COURT**                    **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

In re:                                                      :

                                                            :    Case No. 19-13895(JLG)

Orly Genger,                                                :    Chapter 7

                                        Debtor.    :

---------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER GRANTING
## <u>MOTION FOR PROTECTIVE ORDER</u>

<u>A P P E A R A N C E S</u> :

Emmet, Marvin & Martin, LLP
*Attorneys for Sagi Genger*
120 Broadway, 32nd Floor
New York, New York 10271


Kasowitz Benson Torres, LLP
*Attorneys for Eric D. Herschmann*
1633 Broadway
New York, New York 10019

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

Orly Genger ("Orly") is a chapter 7 debtor herein. Her brother, Sagi Genger ("Sagi"), is a creditor with a $3 million judgment against Orly. He has filed a motion to dismiss this case (the "Motion to Dismiss").[1] Orly's husband, Eric D. Herschmann, Esq. ("Mr. Herschmann"), asserts a $2.3 million secured claim against Orly (the "Herschmann Claim"). He, and others, oppose the Motion to Dismiss. As discussed below, the Court issued a Confidentiality Order (defined below) governing the litigation in this case. At that time, Mr. Herschmann contended that he was entitled to obtain a copy of a report produced by an Israeli private investigator for Sagi's benefit concerning matters personal to Mr. Herschmann (defined below as the "Herschmann Report"). Mr. Herschmann asks the Court to compel Sagi to turn-over the Herschmann Report to him. In opposing that request, Sagi principally contends that the attorney work product doctrine protects the disclosure of the report. Mr. Herschmann disputes that contention. For the reasons stated herein, the Court finds that the report is subject to the work product doctrine and that Sagi has not waived that privilege. Accordingly, the Court denies Mr. Herschmann's request that Sagi be compelled to turn-over the report to him.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1]    *See* Judgment Creditor Sagi Genger's Amended and Updated Motion to Dismiss and Memorandum of Law in Support. [ECF No. 239] ('Motion to Dismiss"). Citations to "ECF No. ___" refer to documents filed on the electronic docket of this case (Case No. 19-13895).

## Background[2]

In 1985, Arie formed Trans–Resources, Inc. ("Trans-Resources"), a Delaware corporation that specializes in manufacturing fertilizer and producing chemicals for agricultural use. Trans-Resources was wholly owned by TPR Investment Associates, Inc. ("TPR"), an entity that in turn was wholly owned by Arie, his now ex-wife, Dalia, and his family trusts.[3]  Arie was TPR's majority shareholder and Dalia, and their two children, Orly and Sagi,   held minority shareholder interests in TPR.  Orly and Sagi held their shares in the Orly Genger 1993 Trust (the "Orly Trust") and Sagi Genger 1993 Trust (the "Sagi Trust"), respectively.[4]

On October 26, 2004, Arie and Dalia divorced.[5]  On October 29, 2004, in accordance with the divorce settlement, Arie transferred the TPR stock to Dalia, and Arie caused TPR to transfer its 52.85% stake in Trans–Resources as follows: approximately 13.9% to himself); 19.5% to the Sagi Trust; and 19.5% to the Orly Trust.[6]  As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of Trans-Resources to the Sagi Trust and Orly Trust in exchange for a commitment by Sagi and Orly to support her financially.[7]  This arrangement was effectuated through the following three documents:

> A stipulation of settlement among Dalia and Arie finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed on October 30, 2004.

> A letter dated October 30, 2004 and signed by Dalia and Sagi (the "2004 Promise") pursuant to which Sagi agreed to pay Dalia up to the value of the Trans-Resources

---

[2]   There is a long history of litigation among Arie Genger ("Arie"), his ex-wife, Dalia Genger ("Dalia"), and their children, Orly and Sagi, in state and federal courts.  The Court reviews some of that history in discussing the facts underlying the matter before the Court.  Unless otherwise indicated, the facts discussed herein are not in dispute.

[3]   *See Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 184 (Del. 2011).

[4]   *Id.*

[5]   *Id.* at 184.

[6]   *Id.* at 185.

[7]   *See Genger v. Genger*, 76 F. Supp. 3d 488, 492 (S.D.N.Y. 2015) ("*Genger I*").

> stock she conveyed to the two trusts, upon Dalia's demand.
>
> A letter dated November 10, 2004 and signed by Sagi and Orly (the "2004 Indemnity") pursuant to which, in substance, Orly agreed to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations. . . . including reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]."

*Genger I* at 492-493.

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004

Promise, which Sagi paid. *Genger I* at 494.  On January 23, 2014, Sagi informed Orly of Dalia's

demand. *Id.*  On February 17, 2014, Sagi demanded $100,000 from Orly under the 2004

Indemnity.  Orly refused to pay. *Id.*  Thereafter, Sagi sued Orly for breach of contract in the

United States District Court for the Southern District of New York (the "New York District

Court"). *See id.* at 488.  The court granted summary judgment to Sagi.  *Id.* at 503.[8]  On appeal,

---

[8]    At the outset of her opinion, Judge Forrest summed up the matters at issue, as follows:

> Sagi alleges that he and Orly entered into a tri-party agreement with Dalia, under which Sagi and Orly would receive shares of stock in exchange for providing Dalia with financial support derived from the economic value obtained from that stock. Sagi contends that Orly has breached the agreement, and now seeks damages from her.  Orly, for her part, denies the agreement's validity and enforceability, primarily because she claims she never actually received the promised shares of stock, which means that the agreement is not supported by consideration. But, as it turns out, Orly has effectively monetized an interest in the very shares she claims not to have received to the tune of $32.3 million.

*See Genger I* at 491.   In opposing the motion, Orly argued that she did not receive the Trans-Resources shares from Dalia.  In granting summary judgment to Sagi, the District Court determined that Orly could not contemporaneously sign the 2004 Promise because she was vacationing in Fiji at the time Sagi and Dalia executed the 2004 Promise, and that before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for one-half of the payments he would have to make under the 2004 Promise. *Id.* at 492-493.  Judge Forrest held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement (the "2004 Integrated Agreement") that purported to provide each party with a benefit in exchange for a legal obligation:

> Dalia receives financial support in exchange for the transfer of the [Trans-Resources] shares to the Sagi Trust and the Orly Trust; Sagi receives an ownership interest in the [Trans-Resources] shares in exchange for a commitment to financially support Dalia; and Orly receives an ownership interest in [Trans-Resources] shares in exchange for a commitment to indemnify Sagi.

*Id.* at 499.  In finding that the 2004 Integrated Agreement was supported by consideration,  Judge Forrest rejected Orly's assertion that no such consideration exists because she never received the Trans-Resources shares:

> [T]he 2004 Promise states that Orly and Sagi are benefiting from receipt of *either* the [Trans-Resources] shares *or* "beneficial interests in those shares," by their respective trusts. . . . Thus, the

the Second Circuit affirmed that decision.  *See Genger v. Genger*, 663 Fed.Appx. 44 (2d Cir.

2016) ("*Genger II*").[9]

On October 21, 2017, Dalia demanded $6 million from Sagi under the 2004 Promise,

which Sagi refused to pay.  On October 24, 2017, Dalia sued Sagi (the "2017 Lawsuit") in the

New York District Court for breach of contract. *See Genger v. Genger*, No. 17-CV-8181 (KBF),

2018 WL 3632521, at *2 (S.D.N.Y. July 27, 2018) ("*Genger III*").  In answering the operative

complaint, Sagi conceded that the 2004 Promise was valid and enforceable, but argued "the

payment obligation was a joint obligation of his with Orly, who has recently indicated she will

not honor that obligation, and thus it would be inequitable for Sagi to once again make a

payment to Dalia without Orly's immediate reimbursement." *Id.*  Sagi brought a third-party

complaint against Orly for breach of the 2004 Indemnity.  *Id.*  Dalia moved for summary

judgment against Sagi on her breach of contract claim.  The Court granted the motion and

entered a first-party judgment against Sagi in favor of Dalia for $6 million.  *Id.* at *6-7.[10]  Sagi

---

question becomes whether Orly has benefited from the Orly Trust's receipt of beneficial interests in the [Trans-Resources] shares. There is no genuine dispute as to whether she has so benefited: Orly's claims to beneficial ownership of the [Trans-Resources] shares individually and as a trust beneficiary enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement.

*Id.*

[9]    On appeal, Orly argued that the New York District Court erred in finding that any contract between her and Sagi is not void for lack of consideration.  The Second Circuit rejected that contention:

To the extent Orly attempts to make this argument, she seeks to ground it by suggesting that the record does not reveal that she received any money from the settlement. But surely any $32 million transaction for her shares would confer upon her more than a peppercorn, which is all we need to conclude (and all we do conclude) as to the extent of any benefit she received. Consideration encompasses more than just receiving cash: it "exists where there is 'either a benefit to the promisor or a detriment to the promisee.'" *See Hollander v. Lipman*, 65 A.D.3d 1086, 1087, 885 N.Y.S.2d 354 (2009) (quoting *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 444 (1982)). Orly does not dispute that she was part of a group that settled a claim involving the shares she was to receive as part of the Divorce Stipulation. Orly benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation partners.

*See Genger II* at 49-50.

[10]    In granting summary judgment, the New York District Court stated, as follows:

4

moved for partial summary judgment against Orly on: (1) his breach of contract claim; (2) his

promissory estoppel claim; and (3) his declaratory judgment claim to the extent of the $3 million

liability sought in the action.  The New York District Court granted the motion and entered a $3

million third-party judgment in favor of Sagi and against Orly (the "Judgment").  *Id.* at *7-8.[11]

---

> Based on the prior rulings of this Court in *Genger* I (and the Second Circuit's subsequent
> affirmance in *Genger II*), it has been conclusively established that: (1) the 2004 Integrated
> Agreement is valid and enforceable; (2) Sagi and Orly monetized their beneficial interests in the
> [Trans-Resources] shares for a total of $69.3 million, a substantial portion of which was
> attributable to Dalia's conveyed marital interest; and (3) pursuant to the 2004 Integrated
> Agreement, Dalia is entitled to demand payment up to a certain amount in her "sole and absolute
> discretion." Sagi has not contested any of those facts and has not made any legal arguments in
> defense of his own liability besides a vague assertion that it would be "inequitable" for him to pay
> without immediate indemnification by Orly.
>
> In New York, a breach of contract claim requires: (1) the existence of a contract; (2) performance
> by the plaintiff; (3) breach by the defendant; and (4) damages to the plaintiff caused by that
> breach. Based on the established facts recited above, there is no triable issue as to whether all of
> the elements of Dalia's breach of contract claim are satisfied. Accordingly, the Court hereby
> GRANTS Dalia's motion for partial summary judgment . . . .

*See Genger III* at *6-7 (internal citations omitted).

[11]   In granting the motion, the New York District Court ruled, as follows:

> As previously noted, it has already been conclusively established that the 2004 Integrated
> Agreement is valid and enforceable, and therefore that Orly is required to indemnify Sagi for half
> of any payments made pursuant to the 2004 Promise. Indeed, Sagi's third-party claims in this
> action are nearly identical to the claims he prevailed on in the 2014 Lawsuit, the only difference
> being the quantum of Dalia's demand (and the fact that Sagi has yet to pay). The Court has
> reviewed all of Orly's arguments in opposition to summary judgment and finds them to be without
> merit for the reasons below.
>
> First, Orly argues that she is entitled to further discovery under Fed. R. Civ. P. 56(d). But
> summary judgment can only be postponed pursuant to Rule 56(d) when further discovery is
> reasonably expected to create a genuine issue of material fact. *See Hoffmann v. Airquip Heating &
> Air Conditioning*, 480 Fed.Appx. 110, 112 (2d Cir. 2012). Here, there is simply no question as to
> Orly's liability, and therefore no reasonable likelihood that further discovery will affect the
> outcome of Sagi's motion. . . .
>
> Second, Orly argues that Sagi is not entitled to summary judgment because he has not yet paid
> Dalia. As an initial matter, that argument is now moot in light of this very Opinion & Order, which
> grants Dalia's motion for summary judgment against Sagi. Furthermore, Orly's refusal to pay
> (which does not appear to have been conditioned on Sagi's own refusal) constitutes an anticipatory
> breach of the 2004 Indemnity. Sagi is entitled to seek relief for that anticipatory breach in the form
> of a judgment setting the amount of Orly's liability.
>
> Put simply, the plain language of the 2004 Integrated Agreement makes clear that Orly is
> obligated to indemnify Sagi for half of Dalia's demand, and there is no triable issue of fact with
> regards to Sagi's three causes of action. Orly did not have any valid defense in the 2014 Lawsuit,
> and she does not have any valid defense today.

The Second Circuit affirmed the Judgment on appeal.  *See Genger v. Genger*, 771 Fed. Appx. 99

(2d Cir. 2019) ("*Genger IV*").  Orly has not paid any portion of the Judgment.

In the 2017 Lawsuit, Orly put the location of her residence into issue in two ways.  First,

she challenged service of process on the grounds that Sagi had not served her with the underlying

complaint at her residence in Israel, since he had attempted to serve her at a residence in

Jerusalem.  *See* Sagi May 29, 2020 Letter at 3.[12]  Ultimately, Sagi effected service of the

complaint on Orly at her residence in Tel Aviv.  Sagi learned of Orly's address in Tel Aviv from

a licensed Israeli private investigator.[13]  Second, Orly moved to dismiss Sagi's third-party

complaint for lack of subject matter jurisdiction, arguing, in part, that because she is a United

States citizen then domiciled in Israel, she was a non-diverse party. *See Genger III* at *3.  In

support of the motion, Orly and Mr. Herschmann filed declarations in the New York District

Court and the Second Circuit Court of Appeals in which they asserted, in substance, that they

resided in Israel.[14]  The Court denied the motion, finding that it had supplemental jurisdiction

over Sagi's third party claims.  *Id.* at *5-6.  The Second Circuit affirmed that determination on

appeal.  *See Genger IV* at 100-101.

---

*Id.* at *7-8**.**

[12]   *See* Letter of John Dellaportas, as Sagi's counsel, dated May 29, 2020 [ECF No. 252] (the "Sagi May 29, 2020 Letter").

[13]   Sagi contends that

> [W]hen process was served on Orly at her homes in Austin and New Jersey, and at the Jerusalem
> address which she had registered with the Israeli government, Orly moved to dismiss on the
> ground that that she could only be lawfully served at an address in Tel Aviv she would not
> disclose. (1:17-cv-08181, Doc. 27, p. 14 of 18 (Orly: "For some reason known only to him (and
> his counsel), [Sagi] chose to ignore Orly's sworn declaration about living in Tel Aviv and tried to
> effect service at Texas and Jerusalem addresses that he had to know were wrong.")).  Sagi thus
> had to retain a licensed Israeli private investigator (not Mr. Matityahu), who discovered that Orly
> was residing in a home listed in the name of a shell entity registered to Mr. Herschmann's sister-
> in-law.

*See* Sagi May 29, 2020 Letter at 2-3.

[14]   In a May 16, 2018 declaration in support of her motion in the New York District Court, Orly stated that:

**Sagi's Post-Judgment Discovery**

After Sagi obtained the Judgment he commenced discovery in an effort to identify Orly's

assets.  On March 13, 2019, Sagi served Mr. Herschmann with a subpoena issued out of the New

York District Court, commanding his appearance at a deposition and the production of

documents in Austin, Texas.  *See* Sagi May 29, 2020 Letter,  Ex. A at 1.  Mr. Herschmann filed a

motion to quash or modify the subpoena (the "Motion to Quash") in the United States District

Court for the Western District of Texas (the "Texas District Court").  Sagi opposed the Motion to

Quash, arguing, in part, that the motion should be transferred to the New York District Court

because, as the issuing court, it was in the best position to rule on issues of post-judgment

discovery related to the case.  *Id.* at 2.  In his reply to the objection, Mr. Herschmann argued,

among other things, that the Texas District Court should resolve the motion because he resided in

Austin, Texas.  *Id.*[15]  In an April 15, 2019 ruling (the "Texas Discovery Order"),[16] the Texas

---

> Many months before this action was commenced by my mother and brother [in October 2017], I had moved from Austin, Texas to Tel Aviv, Israel. I intended at that time, and still intend, to live permanently in Israel, and have no intention to move from Israel. . . . All of Sagi's previous claims that my domicile is in. . . Texas. . . are inaccurate.

*Id.*, Ex. B at 3. Mr. Herschmann submitted a declaration dated January 25, 2018 in support of that motion in which he stated, in part, that:

> Orly and I got engaged in Israel in 2016 and were married here in the fall of 2016.  Since that time, Orly has lived in Tel Aviv, Israel. She lives here with me and our infant daughter, who was born in 2017.

*Id.*, Ex. B ¶ 2.

[15]    In his April 12, 2019 declaration in support of the Motion to Quash, Mr. Herschmann stated, as follows:

**My Home in Austin**

3. I am a resident of Texas and have been since 2010.

4. I live at 210 Lavaca Street, Unit 1903 in Austin (the W Residences), my (only) homestead-protected property. Prior to living in Austin, I lived in Houston, Texas.

*See* Sagi May 29, 2020 Letter, Ex. F.

[16]    *See* Texas Discovery Order. Sagi May 29, 2020 Letter, Ex. A.

District Court transferred the Motion to Quash to the New York District Court for resolution.  In

part, the Texas District Court (Austin, J.) stated, as follows:

> [I]t is more than apparent that Mr. Herschmann will not face any burden, much
> less an "undue" one, by having the [M]otion to [Q]uash heard in New York City.
> From Mr. Herschmann's filings in this matter, it would appear that he would be
> dumbfounded that anyone would think he was anything other than an Austin
> resident. To put it mildly, however, the answer to the question of where Mr.
> Herschmann and Ms. Genger reside is a moving target. In a filing in the
> underlying lawsuit made less than a year ago, Orly Genger swore that she and her
> infant daughter (the child of Mr. Herschmann) are permanent, full-time residents
> of Tel Aviv, Israel. Dkt. No. 65 in 1:17-cv- 8181 VSB-DCF (S.D.N.Y., May 16,
> 2018). She details how she and Herschmann were engaged and married in Israel,
> states she moved from Austin to Tel Aviv in 2016 when she *and Herschmann*
> found a home there, which they purchased in 2016. *Id.* She relates how she spent
> several years overseeing the remodeling of that home, and swears under oath that
> she runs her art business from, and has her studio in, Tel Aviv, that her synagogue
> is there, and states unequivocally that when she moved to Israel she "intended at
> that time, and still intend[s], to live permanently in Israel, and have no intention to
> move from Israel." *Id.*  Mr. Herschmann confirmed this in a declaration he
> submitted in the New York case—and executed in Tel Aviv in January 2018—
> where he swears that "Orly and I got engaged in Israel in 2016 and were married
> here in the fall of 2016. Since that time, Orly has lived in Tel Aviv, Israel. *She
> lives here with me and our infant daughter*, who was born in 2017." Dkt. No. 44
> in 1:17-cv-8181 VSB-DCF (S.D.N.Y., January 25, 2018) (emphasis added).
>
> Despite these sworn state[ment]s of relatively recent vintage, Herschmann
> submitted a declaration just days ago in this proceeding that paints quite a
> different picture. Dkt. No. 7-1. Conspicuously absent from that filing is any
> mention that he ever lived in Tel Aviv, much less as recently as May 2018. The
> only reference to the Tel Aviv home is a cryptic statement that, through an Israeli
> entity, he owns a house there with his children. *Id.* Instead, the recent declaration
> strongly suggests that Herschmann is a full time resident of Austin, and that
> "[p]rior to living in Austin [he] lived in Houston." *Id.* He also protests that,
> despite being a partner listed as resident in the Manhattan office of the Kasowitz
> Benson Torres law firm, he actually spends very little time there, and apparently
> does very little legal work for the firm, or at least does not do so in New York. *Id.*
> The most charitable interpretation of these very different sworn statements is that
> Herschmann moves between at least Austin and Tel Aviv — though nothing in
> any sworn document actually says this. The more likely actual state of affairs is
> that Herschmann and Genger, as owners of multiple residences, have used this
> fact to their legal advantage by claiming to reside in whichever location most suits
> their legal needs at the time. In this instance, in an attempt to frustrate the post-
> judgment discovery being attempted by Sagi Genger, Herschmann claims to have
> such a strong connection to Austin that it would be a burden for him to have to
> deal with his subpoena objections in Manhattan. The Court's not buying it.

*See* Sagi May 29, 2020 Letter, Ex. A at 4-5.

Sagi also served post-judgment discovery requests on the Debtor. Sagi points to the

following interrogatory and answer, as relevant to the discovery dispute before the Court:

> INTERROGATORY NO. 16:
> Identify all bank (checking or savings) accounts, brokerage accounts, credit card
> accounts, debit card accounts, or other financial accounts held by, in the name of,
> or for the benefit of, Defendant, either individually or jointly, or any account
> which Defendant has a direct or indirect interest in or control over, for any period
> during the last six years.
>
> RESPONSE:
> Orly objects to this interrogatory on the grounds that it is overbroad and unduly
> burdensome. Subject to these objections and the foregoing general objections,
> Orly identifies the following accounts in her name: Vanguard brokerage account #
> [redacted]; Vanguard money market account # [redacted]; Morgan Stanley
> account # [redacted]; and Bank of America account # (unknown; attached by Sagi
> in 2017).

*See* Orly Genger's Objections and Responses To First Set of Post-Judgment Discovery Requests

at 15.[17]  Sagi contends that in a subsequent deposition taken in March 2019, Orly again denied

having any credit card other than a Bank of America Visa, either individually or jointly with her

husband.[18]  In his declaration in support of his Motion to Quash, Mr. Herschmann denied having

any joint accounts with Orly:

### My Separate Assets and Tax Returns

> 44. I have no joint bank or household accounts with my wife Orly Genger. We
> have not commingled any of our assets. Orly does not have access to my bank
> accounts. We do not share any credit cards. My assets are separate and apart for
> Orly's [remainder of text of paragraph redacted].
>
> 45. [Redacted text]. These reasonable and necessary household expenses include
> homeowner's association (HOA) fees, property taxes, and utilities to the
> apartment in Austin, and none of that goes to Orly.  I have given my wife cash to
> buy food but no other funds and definitely nowhere near $10,000 total.

---

[17]  *Id.*, Ex. D.

[18]  *See* March 7, 2019 deposition transcript. *Id.*, Ex. E.

*See* Sagi May 29, 2020 Letter, Ex. F.

Sagi maintains that the responses he received to his third-party subpoenas are inconsistent

with those answers.  He cites to the following examples:

> Sagi subpoenaed AmEx directly for "[c]opies of all credit card statements and
> records for Orly Genger, aka Orly Herschmann, SS#: [redacted] for the past six
> years." Sagi May 29, 2020 Letter, Ex. G. In response, AmEx produced statements
> showing that Orly had three undisclosed AmEx cards. Further, one of the AmEx
> cards was a joint "Black Card" with her husband.  [Sagi May 29, 2020 Letter, Ex.
> H].

Sagi May 29, 2020 Letter at 4.  He also asserts that Orly continued to claim, to the New York

District Court and on appeal to the Second Circuit, that she was an Israeli resident, even as Mr.

Herschmann, her (non-estranged) husband (in support of the Motion to Quash), was claiming to

have always lived in Texas. *See id.* [19]

---

[19]    In an April 30, 2019 letter to Michael Bowen (of the Kasowitz firm), as Orly's counsel, Sagi's counsel notified
Mr. Bowen of an alleged "material false declaration that your client Orly Genger filed with the United States District
Court in the [2017 District Court Litigation]."  *See* Sagi May 29, 2020 Letter, Ex. I at 1.  Sagi's counsel asserted that

> In paragraph 2 of his January 25, 2018 declaration (Doc. 44), Ms. Genger's husband, and your law
> partner, Eric Herschmann swore under penalty of perjury that:
>
> > Orly and I got engaged in Israel in 2016 and were married here in the fall of
> > 2016. Since that time, Orly has lived in Tel Aviv, Israel. She lives here with me
> > and our infant daughter, who was born in 2017.
>
> However, in a more recent declaration filed with the United States District Court for the Western
> District of Texas, which we presume you have seen, Mr. Herschmann now recants his claim to
> live in Israel, and admits that, in fact: "I live at 210 Lavaca Street, Unit 1903 in Austin (the W
> Residences), my (only) homestead-protected property. Prior to living in Austin, I lived in Houston,
> Texas." Later in the same declaration, Mr. Herschmann reaffirms, under penalty of perjury, that:
> "Sagi repeatedly argued in the underlying New York action that 'it was Texas and only Texas'
> where Orly and I reside. He was correct as to me."

*Id.*  Sagi's counsel goes on to assert, as follows:

> Suffice it to say, we find it hard to believe you do not know where your partner/co-counsel lives;
> surely your client knows. Yet your firm filed this knowingly false declaration with the Court.
> While Orly did not prevail in the case below, she is currently relying on that very same declaration
> in her appeal to the United States Court of Appeals for the Second Circuit, citing the declaration in
> both her opening and reply appeal briefs.

> In light of the foregoing, we hereby request that—consistent with your ethical obligations—you
> immediately withdraw Mr. Herschmann's declaration from both the Second Circuit and District
> Court, notify both those Courts of the specific false statement made therein, and explain to both
> Courts how this false statement came to be filed.

**Orly Commences Her Bankruptcy**
**Case in The Western District of Texas**

On July 12, 2019, Orly commenced a voluntary case under chapter 7 of the Bankruptcy

Code (the "Chapter 7 Case") in the United States Bankruptcy Court for the Western District of

Texas (the "Texas Bankruptcy Court").[20]   A chapter 7 trustee was appointed (the "Texas

Trustee") in the case.   In her bankruptcy petition, Orly claimed to reside in Austin, Texas, and

that "[o]ver the last 180 days before filing this petition, I have lived in this district longer than in

any other district."   *See* Chapter 7 Petition, Part I, ¶ 5.   At her section 341 Meeting, in response

to questions from Sagi's counsel regarding the place of her residence, Orly testified that she

married Mr. Herschmann in September 2016 and became a resident of Texas before they were

married.   She explained that at some point after the marriage, Mr. Herschmann bought a home in

Israel and "over a period of time, soon after [the] marriage, [Mr. Herschmann and Orly] started

to live [in Israel] for a while[.]"  *See* Transcript of section 341 Meeting at 5-6.[21]   Orly also

---

*Id.* at 2.  Daniel Benson of the Kasowitz Benson firm took strong exception to Sagi's counsel's contentions.  In his
May 2, 2019 letter to Sagi's counsel, Mr. Benson stated, among other things that

> Your charge that our firm filed a knowingly false declaration is baseless and irresponsible. Among
> other things, over the past several years, I, personally, have visited Mr. Herschmann and Ms.
> Genger at their Tel Aviv home on two occasions (in September 2017 and October 2018), as have
> Michael Bowen (in December 2018 and January 2019), Andrew Kurland (in March 2019), and
> numerous other people, including other lawyers from this firm. During this time, I also have
> received hundreds of calls with a +972 country code (Israel) from Mr. Herschmann.

*See* Sagi May 29, 2020 Letter, Ex. J at 1. Mr. Benson also denied that Mr. Herschmann made a false statement in his
declaration.

> Your accusation that Eric Herschmann has made a knowingly false statement is likewise baseless.
> The fact that he affirmed in Texas that he resides in Austin, Texas in no way contradicts his
> declaration in this action that he also lives in Tel Aviv with his wife. Indeed, as you are well
> aware, your own client himself owns multiple residences in different states, and which of those
> was his legal residence for purposes of subject-matter jurisdiction was the subject of litigation in
> the case you filed against Ms. Genger in 2014.

*Id.* at 1, n.1.

[20]    Voluntary Petition for Individuals Filing For Bankruptcy [ECF No. 1] (the "Chapter 7 Petition").

[21]    A copy of the transcript of the section 341 Meeting is annexed as Exhibit K to the Sagi May 29, 2020 Letter.

testified that (i) she decided to move back to Texas in September or October of 2018, (ii) she did

not recall when she actually physically moved from Tel Aviv to Austin, and (iii) she has mostly

lived in Texas since September/October 2018, but could not recall the exact dates. *Id.*

**The Texas Bankruptcy Court Transfers**
**The Chapter 7 Case to New York**

On or about September 13, 2019, Sagi filed a motion to dismiss the Chapter 7 Case or,

alternatively, to transfer the venue of the case to the United States Bankruptcy Court for the

Southern District of New York.[22]  The Debtor opposed the motion.  The Texas Bankruptcy Court

directed that venue of the case be transferred to this Court.[23]  In so ruling, the Texas Bankruptcy

Court found that some of Judge Austin's findings in his decision to transfer the venue of the

Motion to Quash to the New York District Court were "germane" to its decision.[24] The Texas

Bankruptcy Court stated, in part, as follows:

> As Judge Austin observed this Debtor can and will claim residence in a location
> that suits her legally strategic interests. The Debtor retained Texas bankruptcy
> counsel in August of 2018. Since she got married in 2016 in Israel she lived for a
> short time in Texas, and until February of 2019, when she moved to Texas, lived
> for a long period of time in New York and Tel Aviv. This is based on her
> testimony and it's corroborated by the American Express statements.
>
> In November of 2018, three months after hiring Texas bankruptcy counsel, and
> while the Debtor twice testified that the decision to move to Texas was "cooking
> for a while," her lawyer stated that the Debtor "previously residing in New York,"
> this is her lawyers, "already was married in Israel in September 2016 and shortly
> thereafter she permanently moved to a Tel Aviv home newly purchased by her
> husband."
>
> Her testimony is that shortly after this statement was made, the decision to move
> to Texas was made and was made based on a desire to be able to more easily see
> the adult children and due to her husband's travel.

---

[22]    *See* Judgment Creditor Sagi Genger's Motion to Dismiss Bankruptcy Case Or, Alternatively, To Transfer
Venue, and Memorandum of Law In Support Motion [ECF No. 32].

[23]    *See* Order Transferring Case [ECF No. 168].

[24]    *See* Nov. 5, 2019 Hr'g. Tr. at 9 [ECF No. 173].

What's important to note is that she had, months before then, retained Texas bankruptcy counsel and had already suffered many adverse decisions from New York Courts. The inference is clear that the move to Texas in February of 2019 was at least, in part, prompted by a desire to file bankruptcy in Texas should it become necessary to get away from the New York Courts.[25]

## The Orly and Herschmann Reports

David Parnes is Sagi's longstanding Israeli counsel.  Parnes Declaration ¶¶ 1, 3.[26]  Mr. Parnes asserts that in August 2019, his law firm retained Sason Matityahu, a private investigator licensed in Israel, on behalf of Sagi, to provide investigative services in connection with Sagi's judgment collection efforts.  *Id.* ¶ 3.  He says that Mr. Matityahu provided the law firm with two reports. *Id.* One is related to Orly Genger (the "Orly Report") and the other of which related to Mr. Herschmann (the "Herschmann Report"). *Id.*  The reports are personal to each individual, but the scope of the reports is identical. They include data reflecting the dates of Orly and Mr. Herschmann's entries into and exits from Israel, and the location of Orly's and Mr. Herschmann's bank accounts in Israel.

The Orly Report is dated September 12, 2019.  Among other things, it shows that Orly "manage[d] her accounts [in Israel]" at the following bank branch:

> 2.1 Bank Hapoalim
> Name of Branch: French Hill (784)
> Branch Address: 21 Ha'hagana Street,
> Jerusalem

Orly Report, ¶ 2.1[27]  In support of her Chapter 7 Petition**,** Orly did not list any bank account on her Schedules of Assets and Liabilities, and during the case she represented under oath that she had no such accounts.  On September 17, 2019, Sagi's Texas counsel advised Orly's Texas

---

[25]   *See id.* at 9-10.

[26]   A copy of the Parnes Declaration is annexed as Exhibit O to the Letter of John Dellaportas, as Sagi's counsel, dated June 12, 2020 [ECF No. 262] (the "Sagi June 12, 2020 Letter").

[27]   A copy of the Orly Report is annexed in Exhibit A to the Declaration of Yovel Nachmani, dated October 16, 2019. [ECF No. 205], Ex. 13 (the "Nachmani October 2019 Declaration").

counsel about the bank account at Bank Hapoalim in Jerusalem (identified in the Orly Report)

that Orly allegedly failed to disclose.  On September 18, 2019, Sagi's Texas counsel provided the

Texas Trustee and Orly's Texas counsel with copies of the Orly Report.  *See* Nachmani October

2019 Declaration, Ex. A.  On or about September 25, 2019, Sagi filed an Expedited Motion to

Show Cause  (the "Expedited Motion") in the Texas Bankruptcy Case seeking an order denying

the Texas Trustee's attempt to retain Kasowitz Benson & Torres as his counsel in certain

litigation pending in New York.[28]  As support, he argued that Kasowitz lawyers retained by the

Texas Trustee, including Mr. Herschmann, engaged in  misconduct "to fraudulently transfer,

conceal and encumber Debtor's assets." Expedited Motion ¶ 8.  He also asserted that

> Kasowitz's misconduct has continued unabated in this action. An investigator
> hired by Movant recently identified an Israeli bank account held by Debtor which
> was not listed on her schedule. Movant promptly notified Debtor's counsel and
> Trustee. Debtor's counsel then demanded the source of the information. When
> Movant provided the underlying investigative report, Kasowitz's Herschmann
> responded *not* by pledging his cooperation to help his wife cure this discrepancy,
> but rather by having his Israeli attorney *threaten* the private investigator for
> supposedly revealing his wife's private information.
>
> We have no idea if this bank account is significant. What we do know is that the
> Trustee should not entrust estate claims to an attorney who is continuing to
> actively frustrate discovery of potentially relevant estate assets.

Expedited Motion ¶¶ 9-10.  After Mr. Herschmann learned of the existence of the Orly Report,

he retained Yovel Nachmani, an attorney in Israel admitted to practice in Israel, "to assist the

debtor Orly Genger to make an independent determination of whether she had any current or

former bank accounts in Israel at Bank Hapoalim as alleged by Sagi, and, if she did, to

immediately provide the information to Ron Satija, the bankruptcy trustee appointed by the

Court in Austin, Texas, USA in connection with this proceeding." Nachmani October 2019

Declaration ¶ 2.  Mr. Nachmani explains that after he was retained, he and Orly attended a

---

[28]    *See* Expedited Motion to Show Cause [ECF No. 42].

meeting with the manager of the Bank Hapoalim, branch 784, at which time the manager advised

that Orly has no accounts and only had one account that was opened at that branch on January 5,

2000 and closed on February 28, 2003. *Id.* ¶ 6. Thereafter, the manager provided them with a

letter confirming those facts. *See id.*, Ex. C. Thus, contrary to Sagi's assertion, Mr. Herschmann

did not turn a blind eye to Sagi's accusation that Orly failed to disclose a bank account.

Moreover, Sagi's concerns about undisclosed bank accounts allegedly maintained by Orly in

Israel were not well taken. Orly did not fail to disclose a bank account in Israel, and there was

no substance to Sagi's assertions to the contrary. The evidence that Orly produced to the Texas

Trustee after she learned of the Orly Report showed that she had no accounts at Bank Hapoalim

and only had one account that was opened at that branch and closed several years pre-petition.

In a letter dated April 20, 2020, Sagi's counsel, John Dellaportas, advised Mr.

Herschmann that in September 2019, Mr. Matityahu had prepared a report for Israeli counsel

concerning Mr. Herschmann that was similar in scope to the Orly Report. In that letter, he

described the contents of the report, as "list[ing] your date of birth, Israeli ID number, Israeli

entrances/exits, and bank names and addresses, albeit with no account numbers or other detail."

*See* Sagi April 20, 2020 Letter at 1.[29] Further, he explained –

> To be clear, Sagi ordinarily would not care about your whereabouts or accounts.
> However, during post-judgment discovery, as documented below, you made to
> the Courts multiple affirmatively false statements with respect to where you and
> the [D]ebtor were jointly living at the time, and about what joint accounts you and
> the Debtor held--matters which are highly material to the present bankruptcy case.

---

[29]    In the April 20 letter, Mr. Dellaportas advised Mr. Herschmann, as follows:

> As you already know, last September Mr. Matityahu prepared an investigative report concerning
> the Debtor, which we provided to you shortly thereafter. . . . At around the same time, Mr.
> Matityahu prepared a report of similar limited scope concerning you for Israeli counsel. The report
> lists your date of birth, Israeli ID number, Israeli entrances/exits, and bank names and addresses,
> albeit with no account numbers or other detail. (Should the Court request it, we will provide the
> report *in camera*.) . . .

Letter of John Dellaportas, as Sagi's counsel, to Mr. Herschmann, dated April 20, 2020 [ECF No. 241-1] at 1-2 (the
"Sagi April 20, 2020 Letter").

*Id.* at 2.[30]  Upon receipt of the letter, Mr. Herschmann demanded that Mr. Dellaportas provide him with a copy of the Herschmann Report.  Mr. Dellaportas declined to do so.

**Orly and Mr. Herschmann File Civil and Criminal**
**Complaints, Respectively, Against the Investigator**

Mr. Herschmann contends that in Israel it is a felony (i) to obtain a person's travel

records without their specific authority or (ii) to obtain a person's banking information of the

kind identified in the Orly Report.  *See* Nachmani October 2019 Declaration ¶ 10.  He says that

Sagi and his private investigator's conduct are a direct violation of the Israel Protection of

Privacy Act and the Israel Law of Computers.  *Id.* ¶ 10.[31]  *See also* Herschmann May 4, 2020

---

[30]    As support for that contention, Sagi's counsel cited to the following:

> **Your False Statements About the Debtor's and Your Joint Residency**:
>
> To recap, in 2018, you swore to the U.S. District Court for the *Southern District of New York* that since "the fall of 2016" you "live" in Tel Aviv with your wife and daughter. Just a few months later, however, you swore to the U.S. District Court for the *Western District of Texas* that "since 2010" you have actually been "living in Austin" and before that Houston, and that your "home" was in "Texas and only Texas." Obviously, at least one of these sworn statements was false. We actually suspect that they both are, as your wife's AmEx charges reflect that, during the period in question, she actually spent most of her time at your joint home in Englewood, which also happens to be just a short commute to your only law office, and to the courts where you have recently appeared in several cases as counsel of record. *See* Exhibit E (our sanctions motion based on your false affidavit, which is currently stayed by virtue of your wife's bankruptcy filing).
>
> **Your False Statements About The Debtor's and Your Joint Accounts**:
>
> Similarly, in a 2019 declaration you filed with the U.S. District Court for the Western District of Texas, you stated under oath that you and your wife "do not share any credit cards" and that you "have given [the Debtor] cash to buy food but no other funds and definitely nowhere near $10,000 total." When we subpoenaed American Express, however, we discovered that--contrary to your sworn statement-- you and your wife have been sharing an AmEx Centurion Card (*i.e.,* a "Black Card" reserved for those who charge over $250,000 per year) for almost your entire marriage, during which the Debtor has charged sums far in excess of $10,000, sums we presume you have been paying. *See* Exhibit F (our other sanctions motion, based on your other false affidavit).

*See* Sagi April 20, 2020 Letter at 2-3.

[31]    *See also* Nachmani October 2019 Declaration ¶13 ("To be clear, there is no legitimate or legal way in Israel to obtain banking or travel records of the kind contained in the Investigator's report. Individual entry and exit records from Israel are maintained in a secure database controlled by the Israeli Government.  Sagi Genger and the Investigator are currently under criminal investigation for their conduct in obtaining the travel and banking records of Orly Genger and Eric Herschmann.  I have met with the police about this matter and they have acknowledged that the conduct is a felony.")

16

Letter at 2 ("Israeli law, like United States law, strictly forbids access to 'entrance/exit' travel information or bank account information of the kind Sagi has finally admitted that he has obtained. Under the Israel Protection of Privacy Act and the Israel Law of Computers, it is in fact a serious felony (violations of which are punishable by up to 3 and 5 years in prison, respectively) to obtain such information without a court order, subpoena or consent, as Sagi has now admitted he has done.").[32] Mr. Herschmann contends that the fact that Sagi employed an investigator does not absolve him from liability for the alleged criminal acts. *See* Nachmani June 2020 Declaration ¶¶ 5-6.[33] In the fall of 2019, the Debtor filed a lawsuit in Israel against Mr. Matityahu over the Orly Report. That action is pending in The Shalom Court of Tel-Aviv Jaffe. *See* Sagi May 29, 2020 Letter, Ex. N (translated copy of Debtor's Israeli civil complaint). Mr. Herschmann has filed a criminal complaint against Sagi and the private investigator in Israel and Mr. Herschmann advises that the Israel National Police Fraud Unit and the District Attorney's Office has an ongoing criminal investigation of Sagi and the investigator's conduct under matter number 440494/2019.[34]

**The Court Enters the Confidentiality Order and Mr.**
**Herschmann Seeks Discovery of the Herschmann Report**

On June 10, 2020, the Court entered a Confidentiality and Protective Order in this case.[35] In connection with the entry of that order, Mr. Herschmann requested the Court to order Sagi and his counsel:

> (i) to produce to me (and only to me) any and all reports or other documents, including electronic and native format versions with metadata, that contain or refer to any of my personal information not obtained by subpoena or court order; (ii) to identify all persons to whom such information has been communicated; (iii)

---

[32]  *See* Letter of Mr. Herschmann dated May 4, 2020 [ECF No. 240] at 2.

[33]  Nachmani Declaration dated June 3, 2020 [ECF No. 257-8] (the "Nachmani June 2020 Declaration").

[34]  *See* Email of Mr. Herschmann dated May 4, 2020 [ECF No. 242] Ex. B.

[35]  *See* Confidentiality and Protective Order [ECF No. 259] (the "Confidentiality Order").

to produce the contents of those communications; (iv) to hold all such information, reports or other documents in strict confidence pending further order of this Court; and (v) to identify all persons who have been provided a copy of my confidential pre-nuptial agreement.

Sagi and his counsel object to any disclosure of the Herschmann Report.

**Sagi Seeks Protective Order Shielding
Disclosure of the Herschmann Report**

Rule 26(c) of the Federal Rules of Civil Procedure states, as follows:

**(1) *In General.*** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery . . .

Fed. R. Civ. P. 26(c)(1)(A). [36] The party seeking a protective order bears the burden of

establishing that good cause for the order exists. *Gambale v. Deutsche Bank AG,* 377 F.3d 133,

142 (2d Cir.2004).  Sagi contends that the Herschmann Report should be shielded from

discovery and seeks a protective order on three grounds:

The Herschmann Report is protected by the attorney work product doctrine, in that it was prepared at the request of counsel, in anticipation of matters to be litigated as part of this bankruptcy case;

The Herschmann Report cannot be the subject of a valid discovery request by Mr. Herschmann, as it contains no information that is likely to be relevant to his claim in this case, as would be required under Fed. R. Civ. P. 26(b)(1) and Bankruptcy Rule 7026; and

By demanding the Herschmann Report in this forum, Mr. Herschmann is improperly seeking to usurp/circumvent the role of the Israeli Court, which has jurisdiction over the Debtor's suit against Mr. Matityahu, is best situated to determine any matters of Israeli law, and to date has not directed the turnover of the Report.

---

[36]    Rules 9014 and 7026 of the Federal Rules of Bankruptcy Procedure make Rule 26 of the Federal Rules of Civil Procedure applicable in this contested matter.

Mr. Herschmann opposes that relief.  He asks the Court to direct Sagi to turn-over the
Herschmann Report to him. The Court considers those matters below.

### Discussion

As a preliminary matter, the Court finds that the fact that the Herschmann Report may not
contain information that is relevant to the Herschmann Claim, is not grounds for denying
production of the report to Mr. Herschmann.   That is because, as Sagi's counsel noted in his
letter to Mr. Herschmann, the places where Mr. Herschmann and Orly lived together, and what
joint accounts Orly and Mr. Herschmann held are "matters which are highly material to the
present bankruptcy case."  Sagi April 20, 2020 Letter at 2.  They are also relevant to the issues
that Sagi raises in support of the Motion to Dismiss – particularly issues relating to Orly's and
Mr. Herschmann's credibility.  Further, the Court finds that in seeking production of the report,
Mr. Herschmann is not  usurping/circumventing the role of the Israeli Court, which has
jurisdiction over the Debtor's suit against Mr. Matityahu.  Thus, that is not grounds for denying
production of the report to Mr. Herschmann. Clearly, that court is best suited to determine any
matters of Israeli law.  As set forth below, in considering whether the report is shielded from
disclosure under the work product doctrine, the Court considers whether Mr. Herschmann has
demonstrated that there are grounds for finding that the crime fraud exception defeats any work
product claim.  The Court is able to make that determination based on the evidence submitted by
Mr. Herschmann.  The Court's resolution of that issue plainly is not binding on the Israeli Court.

The Court considers Sagi's contention that the Herschmann Report is protected from
disclosure under the work product doctrine. The work product doctrine "is intended to preserve a
zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an
eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v.
Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 511

(1947)).  *See also United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.")  The doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Under that rule, the party invoking the doctrine must show that the documents or materials at issue were prepared in anticipation of litigation by or for a party or its representative, including its attorney or agent. *See* Fed. R. Civ. P. 26(b)(3)(A).  If it meets that burden, the party's documents are not discoverable unless the party seeking disclosure of the documents "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  If the court orders disclosure of the documents, it "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).[37]

In sum, the work product privilege "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir.2007) (quoting *In re Grand Jury Subpoenas*

---

[37]    Rules 9014 and 7026 of the Federal Rules of Bankruptcy Procedure make Rule 26 applicable in this contested matter.  As relevant, Rule 26(b)(3) states, as follows:

> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > **(i)** they are otherwise discoverable under Rule 26(b)(1); and
> >
> > **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> **(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A), (B).

*Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir.2003)).  It applies to "(1) a

document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was

prepared by or for a party, or by or for his representative." *Gucci America, Inc. v. Guess?, Inc*.,

271 F.R.D. 58, 73-74  (S.D.N.Y. 2010).  The party asserting the protection afforded by the work

product doctrine has the burden of showing both that the protection exists and that it has not been

waived. *See e.g., Granite Partners v. Bear, Stearns & Co. Inc.,* 184 F.R.D. 49, 52 (S.D.N.Y.

1999) (citing cases). Below, the Court considers whether Sagi has demonstrated that the work

product doctrine applies to the Herschmann Report.

The report plainly qualifies as a "document." For these purposes, a document is prepared

in anticipation of litigation when, "'in light of the nature of the document and the factual

situation in the particular case, [it] can fairly be said to have been prepared or obtained *because

of* the prospect of litigation.'" *United States v. Adlman,* 134 F.3d at 1202 (quoting 8 Charles A.

Wright, Arthur R. Miller & Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024, at 343

(1994)).  Sagi contends that this bankruptcy litigation was the sole purpose of the Herschmann

Report.  *See* Sagi May 29, 2020 Letter at 8.  He says that the private investigator was retained

following the Debtor's bankruptcy filing for the following two reasons:

> To investigate the Debtor's residency, in anticipation of a contested venue
> motion.  He asserts that because Mr. Herschmann has previously used his own
> residency to bolster his wife's claims as to her residency, his whereabouts, too,
> were relevant to the venue issues.
>
> To investigate the Debtor's bank and credit card accounts.  He says that Mr.
> Herschmann's bank and credit card information was relevant, because the Debtor
> was making most of her charges on the couple's joint AmEx card, the existence of
> which he says both had both falsely denied under oath.  He contends that those
> accounts were important because the charges reflect the Debtor's location, and
> because they might also indicate the location of the Debtor's assets.

*Id.*

Mr. Herschmann asserts that any post-judgment discovery by Sagi would have had to

pre-date July 19, 2019, the date of Debtor's Chapter 7 Petition and, as such, the report dated

September 2019 could not have been issued in anticipation of litigation. However, at a May 5

hearing, Mr. Dellaportas explained that "the issue that we have is that through post-judgment

discovery we've now been trying for a year-and-a-half to get discovery from Mr. Herschmann.

He hasn't produced a single document. He's never agreed to a single day to sit for a deposition.

*See* May 5, 2020 Hr'g. Tr. at 72:20-24 [ECF No. 246]. The "year and a half" refers to fall 2018

through spring 2020. Sagi June 12, 2020 Letter at 9. Given the history of litigation among Orly

and Sagi, it was not unreasonable for Sagi to conclude that information regarding Orly and Mr.

Herschmann's residences and bank accounts in Israel could be relevant to matters arising in the

Chapter 7 Case. The Court finds that Sagi has demonstrated that the Herschmann Report was

prepared "because of" the prospect of litigation in the bankruptcy case.[38]

David Parnes is Sagi's longstanding Israeli counsel. Parnes Declaration ¶ 1.[39] Mr.

Parnes asserts that in August 2019, his law firm retained Mr. Matityahu to provide investigative

services in connection with Sagi's judgment collection efforts. *Id.* ¶ 3. He says that Mr.

Matityahu provided the law firm with the Orly Report and Herschmann Report. *Id.* Mr. Parnes

---

[38] Mr. Herschmann argues that Sagi attempts to justify use of a private investigator by claiming:

> (i) that Orly tried to "dissipate the $32.3 million [Trump Settlement] to her husband . . .;"
>
> (ii) that Orly falsely claimed when she lived in Israel and when she moved back to Texas, and therefore our "joint whereabouts" are relevant;
>
> (iii) that "Orly continued to claim, to the Southern District of New York and on appeal to the Second Circuit, that she was an Israeli resident, notwithstanding that her (non-estranged) husband was now claiming to have *always* lived in Texas," and that Daniel R. Benson of the Kasowitz Benson law firm threatened Mr. Dellaportas with sanctions "for suggesting that [Orly] and [I] might actually be living in Texas as opposed to Israel;" and
>
> (iv) that Sagi believes that Orly and I had a joint American Express account, and that she lied about it during her March 7, 2019 deposition testimony.

*See* Herschmann June 5, 2020 Letter at 9-10. He asserts that "[a]ll those actions are false, and, under all circumstances, they could not justify Sagi's illegal conduct here[,]" *id.* at 10, and then sets forth a number of arguments to support his position. *Id.* at 10-12. Sagi disputes each of those arguments. Sagi June 12, 2020 Letter at 3-5. In resolving the motion, the Court need not address those disputed issues.

[39]    *See* Sagi June 12, 2020 Letter, Ex. O.

objects to any disclosure of the Herschmann Report, as part of his attorney work product.  *Id.*
Sagi maintains that he has never met, spoken with, or written to Mr. Matityahu.  *See* Sagi
Declaration ¶ 2.[40]

Mr. Herschmann disputes those assertions.  First, he notes that the Herschmann Report is
addressed to Sagi.  Mr. Herschmann's Israeli counsel, Mr. Nachmani, contends that on
September 23, 2019, he, his law partner and Mr. Herschmann met with Mr. Matityahu in Tel
Aviv, Israel to discuss the report and how he obtained the information contained therein.  *See*
Nachmani October 2019 Declaration ¶ 12.  He says at that meeting, Mr. Matityahu
acknowledged that he had prepared the Herschmann Report for Sagi and provided it to Sagi.
*Id.*[41]  Mr. Nachmani also contends that the investigator denies ever having heard of, or knowing,
David Parnes.  *See* Nachmani June 2020 Declaration ¶ 2.[42]

All of that may be true.  However, Mr. Nachmani does not assert that the private
investigator says (i) that he was retained by Sagi to compile the Reports, or (ii) that he met with,

---

[40]    Declaration of Sagi Genger. *Id.*, Ex. P.

[41]    Mr. Nachmani states, as follows:

> The Investigator voluntarily agreed to meet with me and my law partner and Mr. Herschmann on
> September 23, 2019 in my office in Tel Aviv to discuss the report and how he obtained the
> information contained therein. During that meeting, the Investigator acknowledged that he
> obtained both the travel records and banking information related to Orly and was likewise retained
> to obtain similar information on Mr. Herschmann and that he had prepared a similar report on Mr.
> Herschmann for Sagi and provided it to Sagi. Obviously, this is further criminal conduct by Sagi
> and the Investigator against Mr. Herschmann. The Investigator agreed to provide a copy of his
> report on Mr. Herschmann to Mr. Herschmann on the condition that Mr. Herschmann provide him
> with both civil and criminal immunity. Mr. Herschmann refused to do so.

Nachmani October 2019 Declaration ¶ 12.

[42]    The Declaration states, as follows:

> As described in my prior declaration dated October 16, 2019, on September 23, 2019, I met along
> with Mr. Herschmann and my law partner with Sagi Genger's investigator, Sasson ("Sasi")
> Matityahu at our offices. During that meeting, Mr. Herschmann asked the investigator, among
> many other things, if he ever heard of or knew David Parnes. The investigator said that he never
> heard of Parnes or knew him.

Nachmani June 2020 Declaration ¶ 2.

spoke with or otherwise directly communicated with Sagi with respect to the Orly Report,

Herschmann Report or any other matter.  The undisputed facts demonstrate that the law firm

retained the investigator, the investigator delivered the reports to the law firm, and Sagi's

counsel, an attorney with the law firm, objects to disclosure of the investigator's report as

attorney client work product.  The Court finds no merit to Mr. Herschmann's assertion that the

Herschmann Report was not prepared for Sagi's counsel.[43]  Accordingly, the Court finds that

Sagi has made a prima facie showing that the Herschmann Report is Sagi's counsel's work

product that is protected from disclosure.  *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58,

73-74 (S.D.N.Y. 2010).

Nonetheless, Mr. Herschmann contends that the report is not protected from disclosure

because (i) it contains fact work product, not the mental impressions of counsel, (ii) Sagi waived

the work product privilege as to the report, and (iii) because the crime fraud exception defeats

Sagi's claim to privilege.  The Court considers those matters below.

Work product consists of fact work product and opinion work product. *In re Grand Jury

Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir.2007).  Fact work product "may

encompass factual material, including the result of a factual investigation." *Id.* (citing  *In re*

---

[43]    *See* Herschmann June 5, 2020 Letter at 8-9.  Mr. Herschmann did not submit evidence to contradict the facts
asserted in the Parnes Declaration.  Nonetheless he attacks Mr. Parnes's credibility by asserting that

> (i) New York Supreme Court Judge Jaffe found that Parnes assisted Sagi in creating "false" and
> fictitious "legal" documents to defraud Orly out of her interests in a real estate business and other
> assets.  *See* Herschmann June 5, 2020 Letter at 8 (citing *Orly Genger v. Sagi Genger*, No.
> 100697/08, 2016 WL 551444, at *5, 7, 8 (N.Y. Sup. Ct., N.Y. Cty. Feb. 10, 2016));
>
> (ii) Parnes, along with Sagi, drafted the divorce agreement between Dalia and Arie Genger which
> has led to so many years of litigation amongst the Genger family, *see id.*; and
>
> (iii) Parnes testified on Sagi's behalf in another case in which Sagi wrongly accused the former
> Prime Minister of Israel's son as being involved in a massive international conspiracy to somehow
> defraud Sagi. *See id.* at 9 (asserting that U.S. District Court Judge Shira Scheindlin found Sagi's
> case to consist of "a maze of backdated, incomplete and contradictory documents [many of which
> were created by Parnes], and even more dubious testimony.")

The Court has considered those matters and attaches no weight to them.

*Grand Jury Subpoena Dated Oct. 22, 2001,* 282 F.3d 156, 161 (2d Cir.2002)).  "In contrast,

opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of

an attorney or other representative,' and is entitled to greater protection than fact work product."

*Id*. (quoting *United States v. Adlman,* 134 F.3d at 1197 (quoting Fed. R. Civ. P. 26(b)(3))).  *See*

*also United States v. Adlman,* 134 F.3d at 1197 (documents that "tend[ ] to reveal the attorney's

mental processes" receive special protection not accorded to factual material) (citing *Upjohn v.*

*United States,* 449 U.S. 383, 399 (1981).  In *Doe v. United States (In re Grand Jury Subpoena*

*Dated October 22, 2001),* 282 F.3d 156 (2d Cir.2002), the Second Circuit stated, as follows:

> [w]hile it may well be that work product is more deeply concerned with the
> revelation of an attorney's opinions and strategies, and that the burden of showing
> substantial need to overcome the privilege may be greater as to opinions and
> strategies than as to facts, *see* Fed. R. Civ. P. 26(b)(3), we see no reason why
> work product cannot encompass facts as well. It is helpful to remember that the
> work product privilege applies to preparation not only by lawyers but also by
> other types of party representatives including, for example, investigators seeking
> factual information. *See* Fed. R. Civ. P. 26(b)(3). If an attorney for a suspect, or
> an investigator hired for the suspect, undertakes a factual investigation, ... we see
> no reason why a work product objection would not properly lie if the Government
> called the attorney or investigator before the grand jury and asked "What facts
> have you discovered in your investigation?". . . . Broad categorical statements
> about the scope of the work product privilege are risky, as individual applications
> are highly fact specific. In our view, analysis should proceed cautiously, case by
> case.

*Id.* at 161. The Court reviewed the Herschmann Report *in camera.*[44] The report states that

it was prepared for "Sagi Genger" and it contains information of the kind described by

Sagi's counsel in his April 20, 2020 letter; i.e. Mr. Herschmann's date of birth, his Israeli

ID number, his Israeli entrances/exits, and the names and addresses of Mr. Herschmann's

banks in Israel (without account numbers or other detail).  The report contains facts.  It

does not include the investigator's mental impressions or opinion or legal theories of an

---

[44]    *See In re Dow Corning Corp.,* 261 F.3d 280, 282-83 (2d Cir.2001) (submitting documents to district court for
in camera review of attorney-client and work product claims); *In re Richard Roe, Inc.,* 168 F.3d 69, 71 (2d Cir.1999)
(reviewing documents in camera to evaluate claims of attorney-client and work product protection).

attorney. However, the work product doctrine protects materials prepared by attorneys themselves, as well as those prepared by their agents, including reports compiled by investigators retained by counsel in anticipation of litigation. *See Aboeid v. Saudi Arabian Airlines, Inc.*, No. CV-10-2518 (SJ) (VVP), 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012) ("Generally speaking, reports of investigations undertaken by a private investigator hired by a party in connection with an ongoing litigation are work-product.") *accord United States v. Nobles*, 422 U.S. at 238-239 ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial ... [and] the doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself"). The Herschmann Report is protected from disclosure by the work product doctrine. *See, e.g., Costabile v. Westchester, New York,* 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (report compiled by private investigator retained by counsel in anticipation of litigation that records the investigator's findings based on his interviews of witnesses to the incidents alleged in the complaint protected by work product doctrine); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 19 (N.D.N.Y. 2007) (investigator's report protected by work product doctrine because information gathered could create strategies for plaintiff in prosecuting claims against defendant); *Weinhold v. Witte Heavy Lift, Inc.*, 90 CIV. 2096, 1994 WL 132392, at *3 (S.D.N.Y. Apr. 11, 1994) (content of surveillance reports relating to an accident, prepared by investigator hired by defendant's counsel in anticipation of litigation, are protected by work product privilege).

Still, Mr. Herschmann contends that the work product doctrine does not protect the factual information contained in the Herschmann Report, but instead would protect only the attorney's interpretation of those facts. As support for that contention he cites to Jeff A. Anderson et al., *The Work Product Doctrine*, 68 Cornell L. Rev. 760, 842-43 (1983)

("Anderson").  *See* Letter of Mr. Herschmann, dated June 5, 2020 [ECF No. 257] at 6 (the

"Herschmann June 5, 2020 Letter").  That portion of the law review article addresses issues

relating to "intangible work product;" i.e., "tangible work product in oral or unwritten form."

*See* Anderson at 839.  It is irrelevant to whether the Herschmann Report is subject to the work

product doctrine.  Moreover, the cases cited by Mr. Herschmann are distinguishable because they

do not involve application of the work product doctrine to a report compiled by a private

investigator.  *See Hickman v. Taylor*, 329 U.S. 495 (1947); *Resolution Trust Corp. v. Dabney*, 73

F.3d 262, 266 (10th Cir.1995); *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306-07 (E.D.

Mich. 2000).

Work product protection "is not absolute. Like other qualified privileges, it may be

waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975).  The waiver may be express or

implied.  Waiver of work-product protection occurs "when the covered materials are used in a

manner that is inconsistent with the protection." *Bank of America, N.A. v. Terra Nova Ins. Co.*,

212 F.R.D. 166, 170 (S.D.N.Y. 2002) (citation omitted).  As that court noted:

> One circumstance that is inconsistent with the need for work product protection is
> when work product materials are either given to an adversary or used in such a
> way that they may end up in the hands of an adversary. Case law is clear that
> "[o]nce a party allows an adversary to share the otherwise privileged thought
> processes of counsel, the need for the privilege disappears." *In re Steinhardt
> Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993). Thus, "a voluntary disclosure of
> work product to an adversary waives the privilege as to other parties." *Id.*
> (citations omitted).

*Id.*  Sagi has not used the Herschmann Report in this or other litigation and has not delivered a

copy of the report to Mr. Herschmann.  As such, Sagi has not waived the work product privilege

through voluntary disclosure of the report.

A form of implied waiver of work product protection is "subject matter" waiver.  It

"allows the attacking party to reach all privileged conversations regarding a particular subject

once one privileged conversation on that topic has been disclosed," and is grounded in "fairness

considerations at work in the context of litigation." *Falise v. Am. Tobacco Co.*, 193 F.R.D. 73, 84 (E.D.N.Y. 2000) (quoting *In re von Bulow*, 828 F.2d 94, 103 (2d Cir.1987)).  "Based principally on notions of fairness, courts have imposed. . .  a 'subject matter waiver'. . . when [a] privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or when the party attacking the privilege would be prejudiced at trial."  *In re Leslie Fay Cos., Inc. Secs. Litig.,* 161 F.R.D. 274, 282 (S.D.N.Y. 1995) (citing *In re von Bulow,* 828 F.2d 94, 103 (2d Cir.1987)).  *See also In re Kidder Peabody Secs. Litig.,* No. 168 F.R.D. 459, 469 (S.D.N.Y. 1996)  ("[T]he circuit court [has] held that the scope of any waiver by virtue of disclosure [is] to be defined by the so-called fairness doctrine, which aims to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged  information.")

Rule 502 of the Federal Rules of Evidence states that when the disclosure of a communication covered by work-product protection is made in a "federal proceeding" and waives the work-product protection, "the waiver extends to an undisclosed communication or information in a federal . . . proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a).  *See also In re Symbol Technologies, Inc. Securities Litigation*, No. CV 05-3923, 2016 WL 8377036, at * 5 (E.D.N.Y. Sept. 30, 2016) ("Federal Rule of Evidence 502 codifies the doctrine of subject-matter waiver where disclosure is made in a federal proceeding or to a federal office or agency.")  The Advisory Committee Note to Federal Rule of Evidence 502 is clear that the intentional waiver provision is to be narrowly construed:

> [A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. . . . [S]ubject matter waiver is

28

> limited to situations in which a party intentionally puts protected information into
> the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502, Advisory Committee Notes.  Thus, the rule "curtails prior waiver doctrine significantly." *Chick–fil–A v. ExxonMobil Corp.,* No. 08-61422-CIV, 2009 WL 3763032, *4 (S.D.Fla. Nov. 10, 2009); *see also Eden Isle Marina, Inc. v. United States,* 89 Fed. Cl. 480, 503 (2009) ("By requiring the waiver to be intentional, Congress made it clear that a subject-matter waiver cannot result from an inadvertent disclosure. And, by requiring a fairness analysis, Congress recognized that '[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.'") (citations omitted).  In practice, "courts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have affirmatively been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege, such as for the unilateral testimonial use of privileged communications." *The Shinnecock Indian Nation v. Kempthorne*, 652 F.Supp. 2d 345, 365 (E.D.N.Y. 2009) (citations omitted).  *See also Granite Partners, L.P. v. Bear Stearns & Co. Inc.,* 184 F.R.D. 49, 54 (S.D.N.Y.1999) ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege. It is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.' ") (internal quotation marks and citation omitted).  As Magistrate Judge Francis explained in *Freedman v. Weatherford Int'l Ltd.,* 12 Civ. 2121(LAK)(JCF), 2014 WL 3767034 (S.D.N.Y. July 25, 2014):

> Subject matter waiver is justified "when a party uses an assertion of fact to
> influence the decisionmaker while denying its adversary access to privileged
> materials potentially capable of rebutting the assertion." *In re County of Erie,* 546
> F.3d 222, 229 (2d Cir.2008) (internal quotation marks omitted). This is necessary
> in order to "void prejudice to the adversary party and 'distortion of the judicial

29

process' that may result from selective disclosure." *Robbins & Myers, Inc. v. J.M. Huber Corp.,* 274 F.R.D. 63, 94–95 (W.D.N.Y.2011) (quoting *In re von Bulow,* 828 F.2d 94, 101 (2d Cir.1987)); *see also United States v. Treacy,* No. S208 CR 366, 2009 WL 812033, *3 (S.D.N.Y. March 24, 2009) (subject-matter waiver of attorney-client privilege necessary "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary").

*Id.* at *3.

Mr. Herschmann contends that fairness mandates that Sagi should be compelled to disclose the Herschmann Report. He says that Sagi cannot shield the Herschmann Report behind a claim of work product, while using the Orly Report to accuse him of wrongdoing improperly and falsely. *See* Herschmann June 5, 2020 Letter at 13. Sagi certainly misplaced his reliance on the Orly Report in contending that Orly failed to disclose her bank account in Israel, and that Mr. Herschmann turned a blind eye to Orly's alleged failure to do so. Orly did not fail to disclose a bank account in Israel in her Chapter 7 Petition. As noted, Orly closed the account cited in the Orly Report in 2003. Moreover, as described above, after learning of Sagi's accusations regarding Orly's alleged failure to disclose a bank account, Mr. Herschmann promptly retained Mr. Nachmani for the express purpose of providing the Texas Trustee with account information, if such account existed. Sagi disclosed the Orly Report and, in doing so, waived any work product privilege associated with that report. The Herschmann Report does not contain any information about Orly's bank accounts in Israel, or elsewhere. Moreover, to date, Sagi has not used the Herschmann Report for any purpose in this or related state/federal court litigation. Thus, Sagi is not attempting to use the Herschmann Report as a sword and simultaneously attempt to shield its contents. Mr. Herschmann has failed to demonstrate that Sagi waived the work product privilege as to the Herschmann Report.

Finally, the Court considers whether the crime fraud exception defeats Sagi's claim that the work product doctrine protects disclosure of the Herschmann Report. Neither the attorney-client privilege nor the attorney work-product doctrine protects communications made in

furtherance of a crime or fraud. *See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1038 (2d Cir.1984). *See also United States v. Zolin,* 491 U.S. 554, 563 (1989) ("It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime.") (citations omitted). The crime fraud exception has also been applied to deny privilege protection to what would otherwise have been protected documents because of the misconduct of a party's private investigators. *See*, *e.g., Meyer v. Kalanick*, No. 15-Civ.-9796, 2016 WL 3189961, at *3-4 (S.D.N.Y. June 7, 2016) (crime-fraud exception applied and required defendant to produce materials from private investigator, who had lied to third parties during investigation to obtain information about plaintiff and plaintiff's counsel).

Mr. Herschmann contends that even assuming that an attorney commissioned the Herschmann Report, and that the report is attorney work product, application of the "crime fraud" exception to the work product doctrine mandates disclosure of the report. *See* Herschmann June 5, 2020 Letter at 15-17.[45] To prevail on that argument, as the party seeking "to invoke the crime-fraud exception [Mr. Herschmann] must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed" – or has been attempted – "and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs,* 117 F.3d 82, 87 (2d Cir.1997), *abrogated on other grounds by Loughrin v. United States,* 573 U.S. 351 (2014); *see also In re Richard Roe, Inc.,* 168 F.3d 69, 71 (2d Cir.1999) (The crime fraud exception applies when there is "(i) a determination that the client communication or attorney work product in question was itself in furtherance of the crime

---

[45]    Mr. Herschmann also contends that Sagi has conceded that his private investigation was illegal. *See* Herschmann June 5, 2020 Letter at 12-15.  The Court finds no support for that contention.

or fraud and (ii) probable cause to believe that the particular communication with counsel or

attorney work product was intended in some way to facilitate or to conceal the criminal

activity.") (internal quotation marks omitted).   "The crime or fraud need not have occurred for

the exception to be applicable; it need only have been the objective of the client's

communication." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d

1032, 1039 (2d Cir.1984).

Mr. Herschmann contends that the information in the Herschmann Report is "clearly

stolen," that the Herschmann Report was gathered and distributed in violation of Israeli law, and

as such, in furtherance of illegal activity in the United States.  *See* Herschmann June 5, 2020

Letter at 15-17.  He asserts that the multiple times that Sagi used investigators to illegally obtain

his and the Debtor's personal financial and travel records in Israel, and the transmission of that

information via electronic means and via the mail and their use of those materials in the court

proceedings to obtain money, constitutes mail fraud, wire fraud and conspiracy.  *Id.* at 16.[46]  Mr.

Herschmann relies, in part, on the declarations of Mr. Nachmani as support for his contention

that Sagi and the private investigator violated Israeli law in compiling the Herschmann Report.[47]

Mr. Nachmani is an attorney duly admitted to practice law in Israel, whose areas of expertise

include commercial litigation and criminal law.  Nachmani June 2020 Declaration ¶ 1.[48]

---

[46]    As support, Mr. Herschmann cites to 18 U.S.C. §§ 1341, 1343, 1349. *See* Herschmann June 5, 2020 Letter at 16, n.12.  "The essential elements of both [mail fraud and wire fraud] are: "(1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." *United States v. Carpenter*, 190 F. Supp. 3d 260, 265 (D. Conn. 2016) (citation omitted).  The crime of conspiring to commit mail and wire fraud imposes liability on "[a]ny person who . . . conspires to commit" the substantive offense. To prove conspiracy, it must be shown that "the defendant agreed with another to commit the offense [and] that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy." *Id.* at 266 (internal quotations omitted).  Mr. Herschmann also contends that in addition to the crime fraud exception, the multiple ethical violations would also mandate production. *See* N.Y. Rules of Prof'l Conduct R.4.4(a); 5.3(a); 5.3(b)(1); and 8.4(a)-(d).

[47]    *See* Nachmani October 2019 Declaration and the Nachmani June 2020 Declaration.

[48]    Mr. Nachmani describes himself as the primary teacher of criminal law at the Israeli Government School of Investigation for Police Officers and explains that he has instructed many members of Israel's law enforcement community.  Nachmani June 2020 Declaration ¶ 1. As previously noted, on September 21, 2019, Mr. Herschmann

He says that in Israel, it is a felony to obtain a person's travel records without their specific authority and a felony to obtain a person's banking information of the kind identified in the investigator's report. Nachmani October 2019 Declaration ¶ 10. He asserts that the banking information that the private investigator obtained about Orly is not commonly available in Israel, and that "there is no legitimate or legal way in Israel to obtain banking or travel records of the kind contained in the Investigator's report. Individual entry and exit records from Israel are maintained in a secure database controlled by the Israeli Government." *Id.* ¶ 13. In Mr. Nachmani's view, Sagi and his investigator's conduct are a direct violation of the Israel Protection of Privacy Act (punishable by 3 years in prison) and the Israel Law of Computers (punishable by 5 years in prison). *Id.* ¶ 10; *see also* Nachmani June 2020 Declaration ¶4. As support for that opinion, Mr. Nachmani cites two decisions of the Israeli Supreme Court: *State vs. Zuberi* (CrimA 1497/92, Vol. 47 p. 176), and *Osnat Laufer vs. State* (CrimA, 9893/06). *See* Nachmani June 2020 Declaration ¶¶ 5-6.[49]

As described by Mr. Nachmani, in *State vs. Zuberi*, a defendant hired a private investigator in attempt to obtain a reporter's phone records. The investigator set up an illegal wiretap to obtain this information. The Israeli Supreme Court ruled that the defendant was guilty of conspiracy, since the private investigator who committed the illegal wiretap acted as the defendant's agent. *Id.* ¶ 5. Mr. Nachmani explains that in *Osnat Laufer vs. State*, a judge suspected that her husband was having an extramarital affair. She hired a private investigator to obtain his call records, which the investigator obtained by illegally gaining access to a cell phone

---

retained Mr. Nachmani to assist Orly in determining whether she had any current or former bank accounts in Israel at Bank Hapoalim as alleged by Sagi and, if she did, to immediately provide the information to Ron Satija, Texas Trustee, in connection with this proceeding. Nachmani October 2019 Declaration ¶ 2. He also submitted the declarations to provide the Court with his view on whether Sagi and the Private Investigator violated Israeli law in compiling the Herschmann Report.

[49]    Mr. Nachmani did not include copies of the decisions with his declaration.

company database.  *Id.* ¶ 6.  He says that in upholding the lower court's conviction of the judge, the Israeli Supreme Court agreed that the investigator had acted as the former judge's agent, finding that her actions violated the Israeli Law of Computers, even though the database was accessed through the work of the investigator the judge had hired.  *Id.*  Mr. Nachmani contends that in *Osnat Laufer vs. State*, the Israeli Supreme Court stressed the gravity of the offenses and the need to protect privacy**.**  *Id.*

There is no dispute that Mr. Matityahu is a duly licensed private investigator in Israel, and that he obtained banking and travel records of both Orly and Mr. Herschmann.  Mr. Herschmann does not contend that the act of hiring the investigator broke any laws.  The Court understands Mr. Herschmann to contend that the mere fact that the private investigator obtained the banking and travel information contained in the Herschmann Report establishes that he violated Israeli criminal law in producing the report.  That view is not supported by either *Osnat Laufer vs. State* or *State vs. Zuberi*.  As described by Mr. Nachmani, in each case, the Israeli Supreme Court found that the private investigator broke Israeli laws in obtaining the information contained in the investigator's report.  The record contains no evidence of the actions that Mr. Matityahu took in gathering the information contained in the Herschmann Report, let alone evidence that he obtained the information illegally.  As such, neither *Osnat Laufer vs. State*, nor *State vs. Zuberi* supports Mr. Herschmann's assertion that Mr. Matityahu violated Israeli criminal law in gathering the information contained in the Herschmann Report.  To demonstrate that the crime fraud exception is applicable herein, Mr. Herschmann must show that there is probable cause to believe that a crime or fraud has been attempted or committed and that the privileged communications furthered such crime or fraud.  *In re Omnicom Group, Inc. Securities Litigation,* 233 F.R.D. 400, 404 (S.D.N.Y. 2006).  He has failed to meet that burden.

## **Conclusion**

Based on the foregoing, the Court finds that the Herschmann Report is privileged and protected by the work product doctrine. Accordingly, the Court denies Mr. Herschmann's request for an order directing Sagi to turn-over the Herschmann Report to him.

IT IS SO ORDERED.

Dated: New York, New York
February 9, 2021

/s/ *James L. Garrity, Jr.*

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge