

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Rocco A. Cavaliere, Partner
Email: rcavaliere@tarterkrinsky.com
Phone: (212) 216-1141

March 10, 2021

**BY FEDERAL EXPRESS, ECF AND EMAIL**

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

        Re:    In re Orly Genger
              Chapter 7 Case No. 19-13895

Dear Judge Garrity:

       This firm is counsel to Deborah J. Piazza, in her capacity as successor chapter 7 trustee (the "Trustee") of the above-referenced Debtor's estate.

       At the most recent status conference on March 5, 2021, the Court requested short letters by today from the parties that sought the deposition of Dalia Genger in connection with (i) Sagi Genger's amended motion to dismiss the bankruptcy case (the "Amended Motion to Dismiss") and (ii) the Trustee's motion to sell certain estate claims and enter into a financing agreement (collectively, the "Motions").  By way of background, the parties that had served Ms. Genger with notices of deposition/subpoenas were the Trustee, the Debtor, and Kasowitz Benson Torres LLP.

       As mentioned at the March 5th conference, the Court held oral argument on July 2, 2020 relating to the reasons why Dalia Genger's testimony was necessary and critical to a proper and full record on the Motions, especially the Motion to Dismiss.  A copy of the relevant portions of the July 2nd transcript are annexed hereto for ease of reference for the Court as **Exhibit "A"**.  In reviewing the record, other than the letter of Paul Labov dated June 16, 2020 [Dkt. No. 263],

Honorable James L. Garrity
March 10, 2021
Page 2 of 4

there do not appear to be any other detailed correspondence regarding the deposition of Dalia Genger.[1]

As requested by the Court, the Trustee will attempt to summarize as concisely as possible in this letter some of the reasons why Dalia Genger's deposition should take place in connection with the Motions.

First, as an initial matter, the Amended Motion to Dismiss and other documents filed in the case, attempt to cast a narrative that the Debtor engaged in massive fraud while Dalia Genger is a mere victim of such fraud, with Sagi Genger alleging that the entire bankruptcy case is about trying to avoid the Debtor's promise in 2004 that she would provide support for her mother Dalia Genger. Obviously, the Debtor, the Trustee and others with a stake in the outcome of this matter have a right to take the deposition of the family matriarch, Dalia Genger, to refute the narrative espoused by Sagi Genger in the Amended Motion to Dismiss. In other words, the Trustee and other parties have a right to present their case as to why the Amended Motion to Dismiss should be denied, and those arguments will include some legal reasons but also factual reasons, including those facts that may be gleaned from the deposition of Dalia Genger.

Second, as was the case with Michael Oldner in his capacity as trustee of the Orly Genger Trust, who previously claimed that he should not be deposed because he is not a "party" to the Amended Motion to Dismiss, to the extent Dalia Genger raises this argument, it is easily dismissed. Aside from the movant, Sagi Genger, many people have already been deposed relating to the Motions even though they were not responsible for drafting the Amended Motion to Dismiss. These people included Mr. Oldner, the Debtor, Lance Harris (the Debtor's accountant), Arie Genger, Eric Herschmann, Michael Bowen on behalf of Kasowitz Benson Torres LLP, William McManus, David Broser, and even Ronald Satija, the prior Chapter 7 trustee appointed in Texas, before transfer of the case. Deborah Piazza is scheduled for her deposition on March 24, 2021. Thus, the fact that Dalia Genger did not "join" in the Amended Motion to Dismiss does not mean that her deposition is not critical (but she did join in the original motion to dismiss filed in Texas) as none of the foregoing witnesses are "parties" to the Amended Motion to Dismiss. By way of example, it certainly cannot be said that the prior Chapter 7 trustee, who was forced to be deposed by Sagi Genger, had any more relevant information than Dalia Genger relating to the reasons for the Debtor's bankruptcy and the Debtor's alleged bad faith. In sum, Dalia Genger is the only key witness that has refused to testify.

Third, in considering the need for Dalia Genger's deposition, the Trustee respectfully requests that the Court also take judicial notice of Dalia Genger's forty-seven page document

---

[1] After the June 16th letter filed by Mr. Labov, without substantively responding to the letter, I wrote the Court on June 18, 2020 and June 23, 2020 that we disagreed with the contents of the June 16th letter and looked forward to the status conference to address the Dalia deposition issue, which conference ultimately took place on July 2, 2020.

Honorable James L. Garrity
March 10, 2021
Page 3 of 4

filed in this case on October 18, 2019 which is titled ***Dalia Genger's and D&K GP LLC's Omnibus Statement of Background*** Facts [Dkt. No. 112] (the "Omnibus Statement"), and, on its face, states that it relates to the original motion to dismiss [Dkt. No. 32] and several other documents on file in the case.  Mr. Labov's attempts on the record of the July 2nd hearing to minimize the importance of this Omnibus Statement (filed in a federal court bankruptcy proceeding) are meritless and contrary to the actual words in the Omnibus Statement, which include numerous allegations by Dalia about the Debtor's and her father's alleged fraud in attempting to avoid monetary support of Dalia.  For the sake of brevity, the Trustee will not waste this Court's time going over all of the accusations by Dalia about her ex-husband, the Debtor and others in the Omnibus Statement. Notably, the Omnibus Statement's WHEREFORE clause says it best: "Dalia requests this Court to review and consider these Background Facts in determining that this Chapter 7 case is a bad faith filing, seeking only manipulation of multiple federal and state courts and the entire bankruptcy process, and dismiss this Chapter 7 case".  Ms. Dalia Genger cannot advise the Court in a filed document that she has pertinent "Background Facts" relating to the original motion to dismiss that must be considered and now claim that she has no factual knowledge pertinent to the Motions.

For the above reasons and the reasons stated on the record of the July 2nd conference, in addition to any other arguments set forth in other letters submitted to the Court by the Debtor and Kasowitz Benson Torres LLP (or others), there is no real controversy about the relevance and importance of Dalia Genger's deposition to the issues at hand and a fulsome record on the Motions (especially the Amended Motion to Dismiss).  As such, this takes us to the following remaining issue: should this Court nonetheless allow Ms. Dalia Genger to avoid a deposition based on an *in camera* submission of a doctor's note (and any supplemental materials, if any) which have yet to be shared with any of the parties in this case.  The Trustee respectfully requests that the answer is no.

The Trustee is obviously sensitive to any legitimate health concerns of senior citizens. However, much has changed since Ms. Genger's initial doctor's note to the Court in June 2020, for which the Court on July 2, 2020 requested additional information, which presumably was provided.  While no one has seen the doctor's note (or any other supplemental information) other than Your Honor we did learn from Mr. Labov that Ms. Genger was "deathly afraid of coming out of her house or to sit for a deposition." See July 2nd Transcript, p. 37:10 – 37:12.  As an initial matter, the circumstances have certainly changed since the Summer 2020.  There is now a vaccine in place and senior citizens have been the first in line to receive the vaccine since late 2020.  While the Trustee is not aware as to whether Ms. Genger has obtained her vaccine shots, it would be surprising to learn she has not done so, especially in light of Mr. Labov's comments about her fears of the disease.  In any event, whether she was vaccinated or not (hopefully Mr. Labov will disclose this fact in his March 12th submission), her deposition should go forward. As was the case with all other witnesses, the deposition can take place over Zoom, and before

{Client/086201/1/02331333.DOCX;1 }

Honorable James L. Garrity
March 10, 2021
Page 4 of 4

Ms. Genger answers a question, Mr. Labov or any other lawyer representing her will be given an opportunity to lodge any legitimate deposition objections recognized by the Federal Rules of Civil Procedure.

Finally, while Ms. Genger has claimed that she has medical issues that impact her ability to sit for a deposition, the record reflects that she is more than capable of making important strategic decisions to serve her interests in this case and elsewhere, including, by way of example only: (i) the appointment of a substitute trustee for the Orly Genger Trust in June 2019, (ii) the settlement of alleged claims by and between herself and her son in December 2019, during this case, and (iii) the hiring of lawyers in various courts who have been taking litigation positions on her behalf, including, most recently, the constructive trust complaint and other filings, including the Omnibus Statement and the adversary proceeding she commenced against the Debtor to deny her a discharge.

As the Court is aware, the hearing on the Motions is April 27, 2021. As a result thereof, and as previously articulated to the Court in a prior status conference, I had reached agreement with Mr. Pitta, counsel to Sagi Genger, with a copy to all parties, including Mr. Labov, that we would attempt to take any remaining depositions from March 15, 2021 to March 26, 2021. Since the March 5th conference, and in an effort to maintain the current schedule, I have reached out twice to Mr. Labov (and copied all the parties) to request that he confirm that Ms. Dalia Genger is available for a deposition on a day between March 17, 2021 to March 26, 2021, and that she is also available on April 27, 2021 for the evidentiary hearing, to the extent the Court finds Ms. Genger should be deposed. Copies of relevant portions of the emails are attached as **Exhibit "B"**. To date, Mr. Labov has not responded to my requests. For the Court's and the parties' benefit, when preparing his letter due on March 12, 2021, I ask that Mr. Labov confirm Ms. Genger's availability for a deposition and the evidentiary hearing in the event that the Court finds her deposition must take place. Otherwise, this schedule may need to be adjusted.

Unless the Court is prepared to rule on the submissions without the need for another conference, the Trustee respectfully requests that any hearing or conference on these issues take place as early as the Court is available in the week of March 15, 2021, in light of the previously articulated schedule. Finally, while the Trustee is not requesting, at this time, copies of the doctor's notes and any supplemental materials provided to the Court *in camera*, the Trustee reserves the right to request the foregoing, subject to the confidentiality order, to the extent that it becomes necessary.

Respectfully submitted,

/s/Rocco A. Cavaliere

Rocco A. Cavaliere

**EXHIBIT A**

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  ORLY GENGER,                              Lead Case No.

8         Debtor.                           19-13895-jlg

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, New York

15

16                  July 2, 2020

17                  3:00 PM

18

19

20

21  B E F O R E:

22  HON. JAMES L. GARRITY, JR.

23  U.S. BANKRUPTCY JUDGE

24

25

1          THE COURT:  All right.  Yeah, I think I saw the letter

2     this morning, but I definitely saw the letter and had a chance

3     to look at some of it.  But why don't we start, then, with Ms.

4     Genger.

5          So Mr. Labov, could you give me an update, if there's

6     an update on where things stand with Ms. Genger and her health,

7     her status, ability to be available for a deposition?

8          MR. LABOV:  Thank you, Your Honor.  This is Paul Labov

9     of Foley & Lardner.

10         Since we last spoke, I did hear from Ms. Genger, who

11    did indicate that she is still deathly afraid of coming out of

12    her house or to sit for a deposition.  I don't have any

13    additional information from any doctor beyond what I've

14    provided to Court under seal.

15         I did provide the cover letter to the Court to Mr.

16    Bowen, I believe, and maybe one other person at his firm.  But

17    I do not have any further status, other than there's been no

18    change in either the growing problem outside or Ms. Genger's

19    individual issues.

20         THE COURT:  All right.  And all right, and I did have

21    an opportunity to review the letter from Ms. Genger's doctor.

22    Does anyone else --

23         Mr. Gartman, do you wish to be heard on this?

24         MR. GARTMAN:  Sure, Your Honor.  It's not my

25    deposition request.

1          THE COURT:  Mr. Garman --

2          MR. GARTMAN:  (Audio interference) --

3          THE COURT:  Wait, Mr. Gartman.  I'm sorry to interrupt

4    you.  I only asked because I thought you had your hand up, and

5    if --

6          MR. GARTMAN:  I may have.  I apologize.  What I would

7    suggest, Your Honor, is that maybe let the issuers of the

8    subpoenas speak, and if I have anything to add, I will do so.

9          THE COURT:  That will be fine, thank you.

10          Mr. Bowen.

11          MR. BOWEN:  Yes, Your Honor, thank you.  We haven't,

12    obviously, seen the letter that was submitted for in camera

13    review.  But we submitted, also for in camera consideration --

14    and I provided copies of these letters to Mr. Labov as well --

15    prior doctors' notes that Ms. Genger has done -- has used in

16    the past to either avoid deadlines or avoid -- court-imposed

17    deadlines or avoid testimony.  And it seems to be the same

18    doctor every time.

19          And so I think that's a relevant fact for the Court to

20    know.  I have no idea if it's the same doctor this time, but we

21    suspect that it is.

22          The other point that I would just emphasize -- that we

23    emphasized in the prior status conference when we were

24    discussing this; that Ms. Genger is a critical fact witness on

25    the pending motion to dismiss.  In fact, Sagi Genger, who is

1  the movant to dismiss this entire bankruptcy as somehow a sham

2  and fraudulent, refers to his mother Dalia Genger in the very

3  first sentence of his motion.

4          And the allegation here, the crux of Mr. Genger's --

5  Sagi Genger's motion to dismiss, that Orly Genger has conspired

6  with various people, including me and other lawyers, to conceal

7  thirty-two million dollars in proceeds from a settlement in

8  order to frustrate Sagi Genger's judgment against her.  And at

9  the same time, Dalia Genger is arguing that the money -- that

10 same thirty-two million dollars belongs, not to Orly Genger,

11 but to the Orly Genger Trust, which would mean it's not a part

12 of this estate, or it belongs to Dalia Genger directly.  And

13 Dalia Genger has taken that position -- these contradictory

14 positions even when she was the trustee for the Orly Genger

15 Trust before the Surrogate's Court in New York and before New

16 York Supreme Court.  And therefore, she is a direct witness to

17 the claim that Sagi Genger is making about these proceeds.

18         In addition, there was evidence elicited from the

19 testimony for the -- from Mr. Oldner, who is the -- who

20 purports to be the current trustee for the Orly Genger Trust,

21 that he was hired by Sagi Genger, not Dalia Genger.  And he

22 never discussed with Dalia Genger anything about the trust, and

23 that he then purported to sign a release releasing her of any

24 claims that the Orly Genger Trust may have had against her for

25 her own breaches of fiduciary duties to the beneficiaries of

 1   the trust.

 2          And Mr. Oldner has testified, and I don't think

 3   there's any dispute about this, that he has entered into an

 4   agreement with Sagi so that Sagi Genger gets -- would get any

 5   recovery to fully meet all of his demands and all of Dalia

 6   Genger's demands for this money before a single dollar of it

 7   would ever go to the Orly Genger Trust, never mind ever go to

 8   Orly Genger.

 9          And so it -- her testimony is critical to establishing

10   the fact that the demands that Dahlia Genger is purporting to

11   make through Sagi Genger on Orly Genger bankrupted her.  And

12   they're demanding millions of dollars that she doesn't have.

13   And that that demand is a real demand.  It's not a sham, and

14   it's not some kind of bankruptcy fraud.  And that the same

15   money that they say that she -- that's part of her estate, and

16   that she supposedly is hiding from them, they're claiming is

17   not part of the estate and belongs to them.

18          So we -- from our point of view -- and I don't mean to

19   speak for the debtor, because I don't represent her, although

20   we used to represent her.  We certainly, from our own creditor

21   point of view, want to establish that there was no sham.  There

22   was no fraud here, certainly nothing that Kasowitz and me

23   personally or Mr. Herschmann were participating in.  And we can

24   demonstrate a big part of that through the eyewitness testimony

25   of Dalia Genger.

 1              THE COURT:  All right.

 2         Mr. Labov?

 3              MR. LABOV:  Thank you, Your Honor.  When we last --

 4    when we last met with Your Honor back on June 30th, Your Honor

 5    had determine that you were going to read the motion to dismiss

 6    and also docket number 112 in the Texas action because a lot

 7    had been made by the various parties that Dalia Genger made

 8    some incredibly -- I think we even heard today frivolous

 9    allegations and has come up with some crazy facts.

10              But if Your Honor did look at docket number 112 in the

11    Texas action, then what you would have seen, of course, is the

12    fact that all Dalia Genger, through her attorney, did was list

13    the litigations that were pending at the time leading up to

14    what we have today -- up to the bankruptcy in Texas, I should

15    say, and the judge's decisions on what Orly did or did not do,

16    on what Arie did or did not do.

17              Those aren't Ms. Genger's words.  Those are Judge

18    Forrest's words.  And the other plethora of judges that decided

19    the issues that go back fifteen years.  And so there's nothing

20    that -- whether it's in docket number 112, which just lists the

21    actions and actually cites chapter and verse to an actual

22    judge's decision, or what's been recited to as the reason for

23    the motion to dismiss or the grounds upon which to dismiss this

24    bankruptcy case that Ms. Genger has had any eyewitness

25    knowledge of or facts of to stand in front of the Court or

 1   these people to say this is what happened.

 2          We certainly submitted docket number 112, but that is

 3   just a recitation of what judges have found over the last

 4   fifteen years, and how Orly monetized thirty-two million

 5   dollars, how the stock was taken from -- was given by Ms.

 6   Genger to the trust under false pretenses.  These are all --

 7   these aren't Dalia saying, I was defrauded.  These are courts

 8   saying you were defrauded because these things all happened.

 9          So these are already decisions that we're citing to.

10   It's not as if we're coming up with them for the first time.

11   It sounds like the moving parties here are trying to -- or the

12   parties trying to get Ms. Genger's deposition now.  It sounds

13   to me as if they're trying to relitigate those issues that have

14   already been litigated and decided by not only district courts,

15   Judge, but by appellate courts, as well.

16          And so I just think it's twisting the facts of what's

17   in the motion to dismiss; certainly twisting what's in docket

18   number 112 to suggest that there is some need for eyewitness

19   testimony.  It just doesn't exist, it doesn't happen.  And

20   really, it is an attempt to harass Ms. Genger.  That's really

21   what's going on here.

22          THE COURT:  Okay.

23          MR. LABOV:  Oh, Judge, one other note.  One other

24   note, Your Honor.  Mr. Bowen did send me a copy of the letter

25   that he sent to court regarding Ms. Genger prior physician, and

 1  I will note for Your Honor that the letter is very clear -- and

 2  this is further evidence of harassment -- that at one point

 3  there was some discovery -- I don't know what it is, Ms. Genger

 4  could not remember, but at one point there was some discovery

 5  sought, or maybe it was a deposition that was sought to be

 6  taken, and if Your Honor looks at the letter, it's very clear.

 7  At the time, Ms. Genger was living in a hospital.  She was

 8  living in an institution.  That's what the letter said.  It

 9  wasn't she had this or that or the other thing, or couldn't do

10  this or couldn't do that, it was that she was actually living

11  in an institution.

12          And so what are really doing here except showing you

13  that this woman is embattled?  And they keep picking away and

14  they keep harassing and they keep moving forward.  I haven't

15  seen anything to suggest to the contrary, Your Honor.

16          THE COURT:  Thank you.

17          Anyone else?

18          Mr. Herschmann?

19          MR. HERSCHMANN:  Yes, Your Honor.  Just briefly,

20  because I listened to Mr. Labov very carefully, and it seems to

21  me that the general theory that Sagi and his team have in mind

22  is that they're going to make allegations about the mens rea of

23  Orly and everyone's involvement, and say we're going to allege

24  this and you're not allowed to question or defend it at all.

25  And the theory is that Orly was aware that her mother would

1  need this money, and everybody conspired to deprive her of the
2  money.
3          And it's in paragraph 22 that they talked about Dalia
4  becoming aware that her children had monetized the position,
5  and therefore she made a demand first for 200,000.  Then she
6  made a demand for 6 million dollars to supposedly support her
7  lifestyle, and during this bankruptcy we just got a production
8  from Dalia Genger that on December 2nd of 2019 she writes,
9  "Dear Sagi, please pay me 18,500,000 dollars as agreed under
10 the promise from 2004.  Love, mom."
11         Well, Mr. Labov wants us to believe that she's totally
12 incapacitated -- obviously, I don't know who needs eighteen-
13 and-a-half million dollars if you're in that circumstance --
14 but we're entitled to inquire do you believe Orly monetized it?
15 Did she get any money?  Where is the money?  Do you think she
16 has it in the bank?  Why do you think she's filing in bad
17 faith?  All the normal questions you would ask, especially
18 because she took contrary positions beforehand.
19         And as Mr. Bowen pointed out, the trustee for her
20 daughter's trust, she turned over to some man in Arkansas who
21 she'd never met, never spoke to, never had any communication
22 with, and Sagi Genger shows up with two documents.  One
23 appointing this guy and two is purportedly trying to release
24 his mother for any liability that she did.
25         I think we're entitled to question her like every

 1   other witness.  We will accommodate her.  We're not telling her
 2   to go out.  Sagi Genger, who's supposedly the only person that
 3   sees Dalia Genger, has been appearing at every single
 4   deposition with his lawyers together, in person, no social
 5   distancing, it's -- in the video, you could see it Your
 6   Honor -- no mask, nothing.  They're obviously not that
 7   concerned.

 8          We're going to give her a computer that has a camera
 9   on it.  She can be protected like every other witness.  We have
10   a process in place already for giving witnesses a time for
11   delay in between a question and answer so lawyers can object.
12   We will accommodate everything.  But this idea that she is a
13   linchpin of everything as to why Orly's acting in bad faith,
14   but she's unavailable to answer any questions about it, she did
15   not testify in any of the cases in the Southern District.

16          She didn't testify in the first demand case for
17   200,000 dollars, she didn't testify in the second one.  We're
18   entitled to know why she believes, since she is the linchpin of
19   everything, that her daughter has filed for bankruptcy in bad
20   faith, and why does she think everyone else is involved?

21          Mr. Tokayer says they made an allegation for our
22   involvement in fraud.  Obviously, she has to know about that.
23   I think we should take her deposition like everyone else in the
24   world and accommodate her for the many breaks or whatever else
25   that she needs, like we've done for thousands and thousands of

 1  other witnesses.  Thank you, Your Honor.

 2            THE COURT:  All right.

 3            Mr. Cavaliere.

 4            MR. CAVALIERE:  Thank you, Your Honor.

 5            I echo some of these comments by my predecessors here.

 6  I think, just very briefly, a number of parties here, many of

 7  whom are not moving parties, have had to subject themselves to

 8  depositions, and there's a few other depositions to come.  And

 9  I do agree with Mr. Herschmann and some -- and I think Mr.

10  Bowen and others that have commented that, really, if you look

11  at the papers, much of the story is about the fact that a fraud

12  has alleged to have been committed by the debtor and her

13  father, Mr. Arie Genger, to hurt Dalia.  And that's not just in

14  the motion to dismiss, it's also, I think, in various other

15  pleadings, including -- and one that we didn't really

16  mention -- but Dalia has filed a discharge action in this

17  court, a complaint that speaks to the debtor's fraud, the same

18  fraud that we're talking about as part of the vast discovery

19  that's taking place on the motion to dismiss.

20            Similar type allegations that she was not very

21  sympathetic to, certainly, elderly people that may actually be

22  ill -- and I have no knowledge as to her current health,

23  certainly -- but she certainly has the capability of hiring a

24  number of different lawyers in many different actions and,

25  frankly, causing havoc on this bankruptcy case, increasing the

1  legal fees for this estate significantly.  And I think she

2  should be called to answer questions as to what she knows and

3  what she doesn't know, and if she doesn't know she can state

4  that.

5       As far as the eyewitness testimony, I don't know if

6  that was a misstatement by, I think it was Mr. Bowen.  Clearly,

7  under the circumstances, everyone has been doing video

8  depositions, and that should be something that she can deal

9  with.  And Mr. Labov can make arrangements like every other

10 lawyer has to either appear in the same room with her if he

11 thinks that necessary, but many of the other lawyers -- and

12 these video depositions we've been doing have been capably

13 handling and representing their clients in the comfort of their

14 own home.  So she doesn't need Mr. Labov sitting there holding

15 her hand if she was concerned about exposure from him.

16      And I would say, Your Honor -- and maybe Mr.

17 Herschmann and Mr. Bowen will complain about this suggestion,

18 but he -- and others, and certainly I can be overruled -- but

19 to piggyback on Mr. Herschmann's suggestion that there could be

20 a number of breaks, I mean, maybe one solution would be that we

21 limit her deposition, at least in the first instance, if Your

22 Honor is inclined, to maybe four hours where we really try to

23 tighten up the schedule.  And if there's really a need to

24 continue further, we would come back to the Court for further

25 relief for -- I think the federal rules allow for seven hours,

ORLY GENGER                                           48

1   but maybe that's one way to bridge the gap here on the issues.

2          So to get her to answer specific important questions

3   without -- if there was a concern that she'd be subjected to

4   too long a deposition that was not organized, that might be one

5   way to address it, and I would recommend that as potentially a

6   way to kind of bridge the gap on the issues.  Thank you, Your

7   Honor.

8          THE COURT:  All right.  Okay.

9          Mr. Geron, do you wish to be heard?

10          MR. GERON:  Thank you, Your Honor.  Yann Geron for

11   Orly Genger.

12          Just very quickly to say that I don't want to repeat

13   that which has already been said, only to add that description

14   that Mr. Labov gave of the seventy-one paragraph submission,

15   number 112, that was filed by Dalia Genger is not accurate, I

16   would submit, and that there is a significant amount of

17   argument and significant amount of factual submissions that are

18   far beyond recap of that which was said by other courts or

19   other judges.  I can give illustrations, but I just would urge

20   the Court to take a look at number 112, and I think that the

21   Court will --

22          THE COURT:  You can trust me that I --

23          MR. GERON:  -- find that it --

24          THE COURT:  -- I've read it.

25          MR. GERON:  Okay.

1            THE COURT:  I've read 112.

2            MR. GERON:  Then I have nothing to add, Your Honor.

3    That was the only thing.  Okay, thank you, Your Honor.

4            THE COURT:  Okay.  Thank you.

5            Mr. Labov?

6            MR. LABOV:  Thank you, Your Honor.  Your Honor, I'll

7    just -- I'll be very brief here.  I believe they're conflating

8    the issues.  I'll give you an example.  Mr. Herschmann just

9    said we need to know why does she think her daughter filed in

10   bad faith?  That's not an issue with whether or not she filed

11   in bad faith.  It doesn't go to the point.

12           Do you think she has the money?  Do you think Orly has

13   the money?  That has nothing to do with the motion to dismiss.

14           Do you think Orly absconded with the money or sent it

15   somewhere else?  It has nothing to do with the motion to

16   dismiss.

17           Where did the money go, Mr. Herschmann said?  That's

18   one of the questions.  It has nothing to do with the motion to

19   dismiss.

20           Where has the fraud been committed?  We didn't file

21   the motion to dismiss, Your Honor.  We didn't even join in it.

22           In 112, what you're seeing is other courts saying what

23   happened after lengthy and full litigation.  And so I just --

24   it just doesn't make any sense that there could be anything

25   that Ms. Genger could say in live testimony that would in any

 1  way affect the allegations which Your Honor read in the motion

 2  to dismiss in terms of what Mr. Genger did, what Mr.

 3  Herschmann, whoever -- whoever did it.  It had nothing to do

 4  with Ms. Genger.  Other courts have found that Mr. Genger

 5  committed fraud.  Other courts have found that Ms. Genger was

 6  absolved from any liability.  That's what other courts found.

 7          So the allegations contained in the motion to dismiss

 8  are irrelevant to anything that Ms. Genger would know.  And in

 9  December of 2019, it's quite possible Ms. Genger could have sat

10  for a deposition when she asked her son for money which she was

11  entitled to, which Judge Forrest found she was entitled to in

12  the district court, and which the appellate division found she

13  was entitled to from the district court's decision.  But we're

14  not there.  We're not in  December of 2019.

15          THE COURT:  Okay.  This is what I'd like to do.

16  I'm --

17          MR. GARTMAN:  Your Honor, can I address one point?

18  This is Chris Gartman from Hughes Hubbard?

19          THE COURT:  Sure.  Go ahead.

20          MR. GARTMAN:  I just want to point out something that

21  I don't think has been mentioned, okay.  There's a lot of back-

22  and-forth here.  I'd just like to refer to page 15 of the

23  motion to -- this is Sagi Genger's amended motion to dismiss,

24  Your Honor.  There's an entire section of the motion to dismiss

25  with a title.  The title is "The debtor group schemes to

1  frustrate the debtor's financial obligation to her mother."

2  The entire motion to dismiss is based on the allegation that

3  Orly Genger filed for bankruptcy to frustrate Sagi Genger's

4  judgment enforcement.  That judgment enforcement is based on a

5  judgment that is based on a demand made by Dalia Genger.

6         As you've heard, Dalia Genger made another demand in

7  December of this year to up her demand to Sagi by another

8  eighteen million dollars.  That was right on the eve of the

9  deadline to file proofs of claim in this case, the bar date.

10 Okay?

11        You can check the dates, you can check the claims, and

12 all of a sudden Sagi Genger's claim goes from three million

13 dollars up to twelve-point-something million dollars.  And

14 obviously, if the allegation is that Orly Genger filed to

15 frustrate the judgment, then the continued efforts to increase

16 the demand and, therefore, increase the debts of Orly Genger

17 would be, perhaps, the most relevant fact in this entire

18 bankruptcy to the intent of Orly Genger as to whether she filed

19 for bankruptcy or not.

20        So I'm a little sick of the games that are being

21 played by Mr. Labov and others on the other side, but this is a

22 critical, critical issue in this case, if not the most

23 important issue.  Thank you, Your Honor.

24        MR. PITTA:  Your Honor?

25        THE COURT:  All right.

1          MR. PITTA:  Your Honor, if I could.  It's Thomas

2     Pitta.

3          Could I just respond to that quickly --

4          THE COURT:  Yeah.

5          MR. PITTA:  -- because I think it's --

6          THE COURT:  Yes.

7          MR. PITTA:  Your Honor, Mr. Gartman points -- Your

8     Honor, Mr. Gartman points --

9          THE COURT:  I'm sorry, Mr. -- I'm sorry, Mr. Pitta,

10    I'm having trouble hearing you.

11         MR. PITTA:  Sorry.  Mr. Gartman mentioned that the

12    motion -- our motion to dismiss is based on the misconduct of

13    Orly Genger in frustrating the ability of Sagi to collect on

14    account of the obligation to his mother through the integrated

15    2004 agreement by which Orly has an indirect obligation to her

16    mother.

17         The question on the motion to dismiss is not Dalia's

18    conduct.  The question on the motion to dismiss is the debtor's

19    conduct.  So Dalia's conduct is irrelevant to the motion to

20    dismiss.  No one could dismiss Orly's bankruptcy case because

21    of the conduct of Dalia Genger.  The question on the motion to

22    dismiss is the conduct of Orly Genger and those who she has

23    worked with to frustrate Sagi's judgment.  So Dalia Genger's

24    testimony with respect to that is irrelevant.

25         With respect to Dalia's claims against Sagi, the

```
 1   Second Circuit has found that Dalia -- on multiple occasions,
 2   that Dalia has valid claims against Sagi.  Dalia's maximum
 3   claims against Sagi are -- were found to have been eighteen-
 4   and-a-half million dollars.  There's no question of facts with
 5   respect to that.  That is a finding that has been made by the
 6   Southern District of New York on two occasions and upheld by
 7   the Second Circuit on two occasions.  Dalia's testimony is
 8   irrelevant to the motion to dismiss.
 9             UNIDENTIFIED SPEAKER:  Judge, this is --
10             THE COURT:  All right.  This is what I'm going --
11   yeah, I've heard enough.  This is what I'm going to do.
12             I have reviewed the letter from a doctor who is not
13   the doctor mentioned in the letters that -- other letters that
14   have been submitted to the Court.  My concern, as it relates to
15   the doctor's assessment of Ms. Genger's fitness, is basically
16   her ability to perform in a clear way in response to a
17   deposition.
18             There -- so Mr. Labov, what I would like, I would like
19   you to reach out to Ms. Genger.
20             MR. LABOV:  Yes.
21             THE COURT:  I'd like you to have her doctor have a
22   meeting with her.  I'd like it, if at all possible, that it can
23   be done in a way that the doctor is able to conduct a meeting
24   at least via Zoom.  Something I know that he is -- at least as
25   I understand it, he's spoken to her, but it was without the
```

1  benefit of a Zoom-like function.  And I would like you to

2  please reach out and arrange for that to happen, if that is at

3  all possible, and get back to the Court, all right?

4           MR. LABOV:  Your Honor, may I ask you a question?

5           THE COURT:  Sure.

6           MR. LABOV:  So you would like me to have the doctor

7  reach out with a Zoom-type of meeting with Ms. Genger for the

8  purpose of determining whether or not -- for the doctor's

9  purpose of determining whether or not Ms. Genger would have the

10  ability to perform in a clear way to an oral deposition; is

11  that accurate?

12           THE COURT:  Well, what I would like to -- look, you

13  know what's in the letter.

14           MR. LABOV:  Yes.

15           THE COURT:  All right.  No one else on the phone knows

16  what's in the letter.

17           MR. LABOV:  Correct.

18           THE COURT:  Right.  And what I'd like is that there be

19  an updated assessment on the --

20           MR. LABOV:  Oh, okay.

21           THE COURT:  In the second paragraph of the letter he

22  describes, at least what I would say in very general terms, her

23  fitness for providing testimony.  And what he had indicated,

24  that he was unable to have a virtual meeting with Ms. Genger --

25           MR. LABOV:  Correct.

1          THE COURT:  -- and I'd like to see -- okay, that if he
2    could have a virtual meeting with her so that he could further
3    refine, as needed, his assessment of her fitness for providing
4    deposition testimony.
5          MR. LABOV:  Yes, Your Honor.  I understand your -- I
6    understand your point.
7          THE COURT:  Right, you understand it in the context of
8    the letter.  I don't know if you're looking at it, but that
9    letter?
10         MR. LABOV:  Yes, sir.
11         THE COURT:  Okay.
12         MR. LABOV:  I do.  I'm a little -- I have to be
13   completely honest with the Court, I'm not sure how to get a
14   video conference in there, but I'm going to endeavor to try and
15   get that done.
16         THE COURT:  Well, I would ask you to try to do that
17   because, look, I would like to know where things stand as far
18   as those things go, if she is able to have other visitors.
19   Look, the COVID is obviously a very, very serious problem, even
20   more so for people of Ms. Genger's age, et cetera.  So I am
21   very, very sensitive to that.
22         And all I'm trying to do is to get a better
23   understanding of what she's capable of doing, including as far
24   as being able to arrange for a virtual meeting.  And once I
25   have a better understanding of that, I will be in a better

 1  position to determine how I want to proceed with respect to a

 2  deposition.  All right?

 3          MR. LABOV:  Yes, sir.

 4          THE COURT:  All right.  Thank you very much.

 5          Okay.  Let's turn our attention next, then, to the

 6  deposition of Mr. Dellaportas.

 7          Mr. Bowen or Mr. Herschmann?  I'm not sure which one

 8  of you was --

 9          MR. BOWEN:  Judge, this is Mike Bowen.  I can address

10  that.

11          THE COURT:  Yes, thank you.

12          MR. BOWEN:  We submitted the letter that Your Honor

13  directed both us, as movants, and Mr. Dellaportas to submit.  I

14  think there was some confusion about whether or not there

15  should have been three letters or only two letters.  But in any

16  event, both parties submitted letters with their position.

17          The crux of our argument is simply that Mr.

18  Dellaportas has himself made factual allegations that relate

19  directly to some of the allegations that underpin their motion

20  to dismiss, including the allegation, which is a pure fact

21  question -- a pure question of fact, a pure fact allegation

22  that the law firm -- my law firm had agreed to work pro bono

23  and not charge Orly either any fee or the lion's share of the

24  fee.  I'm not really sure what Mr. Dellaportas' view is on

25  that, but he's used different phraseology in this motion to

**EXHIBIT B**

## Sheree Nobles

**From:**          Rocco A. Cavaliere
**Sent:**          Wednesday, March 10, 2021 3:17 PM
**To:**            Sheree Nobles
**Subject:**       FW: [EXT] RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement



**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Tuesday, March 9, 2021 9:52 AM
**To:** Adam Pollock <Adam@pollockcohen.com>; Andrew R. Kurland <AKurland@kasowitz.com>
**Cc:** Thomas A. Pitta <TPITTA@emmetmarvin.com>; John Dellaportas <JDellaportas@emmetmarvin.com>; Beth Khinchuk
<BKHINCHUK@emmetmarvin.com>; Gartman, Chris <chris.gartman@hugheshubbard.com>; Frank Oswald
<frankoswald@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; Paul J. Labov (plabov@pszjlaw.com)
<plabov@pszjlaw.com>; imtoke@mindspring.com; ygeron@geronlegaladvisors.com; Van Benthysen, Brett
<BVanBenthysen@reitlerlaw.com>
**Subject:** RE: [EXT] RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement

Adam,

Thank you. I will check my schedule and get back to you promptly, as I am hoping others will as well.

Paul, I am just following up with you. Ms. Dalia Genger's prior position is that she does not like to leave her house, and thus, unless I hear otherwise from you, presumably she would be available any day during the week of March 17th to March 26th (except March 24th) for a deposition, if Judge Garrity determines that she should sit for a deposition. I would appreciate you calling her at home and confirming her availability for a possible deposition as we do not want any issues with her availability during those weeks to impact the hearing/objection deadline schedule set by the Court. As previously indicated, all possible accommodations will be provided to Ms. Dalia Genger in connection with a video deposition.

Also, please confirm Ms. Genger is not otherwise traveling or otherwise busy with other outdoor activities on April 27th, the proposed date of the evidentiary hearing.

Regards,

Rocco

**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

**Sheree Nobles**

| | |
|---|---|
| **From:** | Rocco A. Cavaliere |
| **Sent:** | Wednesday, March 10, 2021 4:11 PM |
| **To:** | Sheree Nobles |
| **Subject:** | FW: [EXT] RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement |



**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Monday, March 8, 2021 11:44 AM
**To:** Thomas A. Pitta <TPITTA@emmetmarvin.com>
**Cc:** Andrew R. Kurland <AKurland@kasowitz.com>; John Dellaportas <JDellaportas@emmetmarvin.com>; Beth Khinchuk
<BKHINCHUK@emmetmarvin.com>; Gartman, Chris <chris.gartman@hugheshubbard.com>; Frank Oswald
<frankoswald@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; Adam Pollock
<Adam@pollockcohen.com>; Paul J. Labov (plabov@pszjlaw.com) <plabov@pszjlaw.com>; imtoke@mindspring.com;
ygeron@geronlegaladvisors.com; Van Benthysen, Brett <BVanBenthysen@reitlerlaw.com>
**Subject:** Re: [EXT] RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement

Tom,

As you know, the main reason the Trustee's deposition has moved from time to time is because of movement of the
Court's scheduling of the hearing just prior to her previously scheduled deposition.

Thank you for your opinion about Dalia Genger but I await Paul Labov's confirmation that this deposition window will be
workable in the event that Judge Garrity rules later this week or early next week that Dalia Genger must sit for a
deposition. Thank you.

Rocco

Sent from my iPhone



**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

On Mar 8, 2021, at 10:35 AM, Thomas A. Pitta <TPITTA@emmetmarvin.com> wrote:

Rocco,

We would like to include the deposition date for the trustee in the order as it has been moved a number of times previously. Happy to include a date for Mr. Oldner and would ask Adam Pollock to provide available dates for that. I'm not sure it makes sense to include a deposition date for Dalia Genger when the Court has not indicated that she will be required to sit for a deposition at this time. If Judge Garrity rules that Dalia will have to sit for a deposition, I'm sure Mr. Labov will make appropriate arrangements.

We are OK with making any supplemental production by March 12.

Copying Yann Geron and Brett Van Benthysen of Reitler. If I understood Michael Bowen on Friday to be suggesting that he will be Orly's counsel going forward, I'd request Eric or Andrew to copy him in on this exchange. Thank you.

**Thomas A. Pitta**
Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Tel:  212-238-3148
Cell: 917-692-7533
Email: tpitta@emmetmarvin.com



**Confidentiality Disclosure:** The information in this email and in attachments is confidential and intended solely for the attention and use of the named addressee(s). This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to and must not disclose, copy, distribute, or retain this message or any part of it.

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Monday, March 8, 2021 10:05 AM
**To:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>; Andrew R. Kurland <AKurland@kasowitz.com>; John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Cc:** Beth Khinchuk <BKHINCHUK@EMMETMARVIN.COM>; Gartman, Chris <chris.gartman@hugheshubbard.com>; Frank Oswald <frankoswald@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; Adam Pollock <Adam@pollockcohen.com>; Paul J. Labov (plabov@pszjlaw.com) <plabov@pszjlaw.com>; imtoke@mindspring.com
**Subject:** RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement

Tom,

Please see attached revisions. The proposed document discovery date of March 12th will work for the Trustee's production. Will this be sufficient time for you and others to supplement their productions, to the extent necessary.

We are set on the deposition of the Chapter 7 trustee, Deborah Piazza. It is set for March 24th at 9:30 a.m. I don't think we need to identify that specific date in the order. Otherwise, we will need to identify in the order the date of Mr. Oldner's continued deposition and Ms. Dalia Genger's deposition date (at least tentatively). On that front, for purposes of scheduling, I would appreciate Mr. Pollock advising of some available dates for Mr. Oldner's continued deposition. I would also appreciate Mr. Labov advising what dates Ms. Dalia Genger may be free from March 17th to March 26th in the event that the Court determines this Friday (or more likely, early next week once he has reviewed this week's correspondence) whether Ms. Dalia Genger's deposition will be going forward. Obviously, if it is determined that Ms. Genger's deposition will take place and we later learn that Ms. Genger is not available during the selected dates, the Trustee reserves the right to request that the Court re-schedule the hearing on the motion to dismiss (and possibly the Trustee's motion, to the extent her deposition is needed for the Trustee's motion).

Also, I saw you have dropped Debtor's counsel from the email. I understand we are awaiting for clarity on the Debtor's counsel's retention but I think we should forward the next version to Reitler firm and Yann Geron firm to give them an opportunity to respond, if they wish.

Rocco

<image001.png>

**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

**From:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Sent:** Friday, March 5, 2021 5:27 PM
**To:** Andrew R. Kurland <AKurland@kasowitz.com>; John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Cc:** Beth Khinchuk <BKHINCHUK@EMMETMARVIN.COM>; Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>; Gartman, Chris <chris.gartman@hugheshubbard.com>; Frank Oswald <frankoswald@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; Adam Pollock <Adam@pollockcohen.com>; Paul J. Labov (plabov@pszjlaw.com) <plabov@pszjlaw.com>; imtoke@mindspring.com
**Subject:** [EXT] RE: Genger: Intercreditor Agreement and Dalia-Sagi Settlement Agreement

Please let me know by close of business Monday if you have any issues with the attached form of scheduling order. Thanks.

**Thomas A. Pitta**
Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Tel:  212-238-3148