

PACHULSKI STANG ZIEHL & JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP
NEW YORK, NY
LOS ANGELES, CA
COSTA MESA, CA
SAN FRANCISCO, CA
WILMINGTON, DE

780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212/561 7700**

FACSIMILE: 212/561 7777

**LOS ANGELES**

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

**TELEPHONE: 310/277 6910**

FACSIMILE: 310/201 0760

**COSTA MESA**

650 TOWNE CENTER DRIVE
SUITE 1500
COSTA MESA
CALIFORNIA 92626

**TELEPHONE: 714/384 4750**

FACSIMILE: 714/384 4751

**SAN FRANCISCO**

150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415/263 7000**

FACSIMILE: 415/263 7010

**DELAWARE**

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302/652 4100**

FACSIMILE: 302/652 4400

WEB: www.pszjlaw.com

Paul J. Labov

March 15, 2021

(212) 561-7783
plabov@pszjlaw.com

**VIA E-MAIL AND ECF**

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, New York 10004

Re:    In re Orly Genger, Case No. 19-13895 (JLG)

Dear Judge Garrity:

On or about June 3, 2020, the Trustee and the Debtor subpoenaed Dalia Genger ("Mrs. Genger"), seeking to depose her in connection with Sagi Genger's Amended and Updated Motion to Dismiss and Memorandum of Law in Support (the "Motion to Dismiss") [Dkt. No. 239], as well as with respect to the Trustee's motion seeking to sell certain claims and to obtain financing (the "Trustee's Motion", and collectively with the Motion to Dismiss, the "Motions") [Dkt. No. 248]. The Kasowitz Firm also noticed the deposition of Mrs. Genger without a subpoena. Mrs. Genger, however, does not have first-hand knowledge of any information relevant to deciding either Motion. And, after all this time, the Trustee and the other interested parties have yet to identify even a single allegation for which Mrs. Genger has relevant information. Given the lack of probative value of Mrs. Genger's testimony, balanced against her medical situation, requiring Mrs. Genger to sit for a deposition would create an undue burden for Mrs. Genger. Thus, the Court should deny the requests to compel Mrs. Genger to sit for a deposition.

DOCS_NY:42564.10 30398/001

Hon. James L. Garrity, Jr.
March 15, 2021

## LEGAL STANDARD

The party seeking to take discovery must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.,* 2003 U.S. Dist. LEXIS 23179, at *23 (S.D.N.Y. Dec. 23, 2003); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018) (quotation omitted); *Malanga v. NYU Langone Med. Ctr.*, No. 14-cv-9681, 2016 WL 7477561, at *1 (S.D.N.Y. Dec. 29, 2016) (quotation omitted) ("The reach of a subpoena is tempered by the relevancy standard outlined [ ] in Rule 26(b)(1)").

Upon establishing relevance, "the movant bears the burden of demonstrating an undue burden." *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, at *4 (S.D.N.Y. Sep. 6, 2019) (internal citations omitted). In determining whether a subpoena imposes an undue burden a trial court must consider whether the information is necessary and whether it is available from any other source. *Alcon Vision*, 2019 U.S. Dist. LEXIS 152073, at *4. Moreover, the burden on non-parties such as Mrs. Genger—who has not made, and will not be making, a submission in support of or opposed to either Motion—is accorded greater deference than is the burden for parties. *See In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) ("[T]he Court must weigh the probative value of the information against the burden of production on [] non-parties."); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (ruling that non-party witnesses are entitled to "consideration regarding expense and inconvenience").

## ARGUMENT

The Trustee and other interested parties cannot indicate any information they could obtain from Mrs. Genger relevant to deciding the Motions, therefore there are no interests in favor of the deposition that must be balanced against the undue burden on Mrs. Genger of being deposed. The best that can be said of the proposed deposition topics is that they seek Mrs. Genger's opinions of Sagi Genger's allegations. Those views are irrelevant. The Court will infer from the facts, many of which are already established, and the inferences inferred from those facts, whether the Debtor and her cohorts engaged in the alleged misconduct. Mrs. Genger was obviously not a party to any of the alleged misconduct (e.g., backdating and falsifying records, false statements made by the Debtor, *etc*.) or to any part of the negotiation related to the Trustee's Motion.

The Trustee has offered three possible reasons for Mrs. Genger's deposition, none of which meet the standard that would allow her to take Mrs. Genger's deposition. Andrew Kurland, on behalf of Kasowitz Benson Torres LLP, lists nine allegations for which he thinks Mrs. Genger should be required to testify. Mr. Kurland's proposed deposition topics, however, consist entirely of (a) conclusory statements made by Sagi Genger (Mrs. Genger's opinion of which carries no weight), (b) previously contested facts already conclusively determined by

2

Hon. James L. Garrity, Jr.
March 15, 2021

other trial and appellate courts, and (c) uncontested facts such as Mrs. Genger's desire that Sagi Genger prevail. Finally, Michael Bowen, now representing the Debtor, lists four areas regarding which he believes Mrs. Genger's testimony is necessary. Mr. Bowen's response, however, is littered with misstatements, misleading averments, and irrelevancies. At best, it is duplicative of the Trustee's and Kasowitz's letters.

In sum, there is no relevant need for the deposition of Mrs. Genger, for whom sitting for a deposition poses a serious threat to her health. The undue burden of the deposition far outweighs the necessity and the Court should not require Mrs. Genger sit for a deposition.

### A. **Mrs. Genger Has No Information Relevant to the Motion to Dismiss**

*1) The Trustee Has Not Presented a Single Valid Reason for Mrs. Genger's Testimony*

The Trustee has provided three reasons why she supposedly needs Mrs. Genger's testimony in connection with the Motion to Dismiss:

1. The Debtor and others with a stake in the outcome of the Motion to Dismiss have a right to take a deposition of the "family matriarch," Dalia Genger, to refute the narrative espoused by Sagi Genger in the Motion to Dismiss;

2. Other non-parties have already been deposed so why not Dalia Genger;

3. Dalia Genger's Austin attorney drafted and filed a pleading one and a half years ago in which prior Court findings and decisions and testimony of others were summarized for the Bankruptcy Judge in Texas.

None of these reasons identify any relevant information Mrs. Genger could provide through a deposition. The Motion to Dismiss avers, among other things, that the Debtor's motivating factor in filing bankruptcy was to protect her fraudulent transfer of $32 million in value derived from the sale of her TRI shares to various third parties, in an effort to nullify promises she made to her brother and mother upon her parents' divorce. The Debtor's motivation, according to the Motion to Dismiss and its supporting exhibits, can be gleaned from the multitude of false oaths and other statements written and uttered by the Debtor, her husband, and her father. Many of the facts relevant to the Motion to Dismiss are not in dispute. Both the District Court and Second Circuit have made findings on the fact that the Debtor promised to indemnify her brother for up to half of Mrs. Genger's demands. *See Genger v. Genger*, 76 F.Supp.3d 488 (2015).

Mrs. Genger does not have first-hand knowledge of facts that would supplement or otherwise be relevant to those allegations not already adjudicated by the District Court. As it relates to the Debtor's decision to file for bankruptcy protection, Mrs. Genger has no first-hand knowledge as to the Debtor's motivation. Indeed, the Trustee has failed to point to a single

3

Hon. James L. Garrity, Jr.
March 15, 2021

allegation in the Motion to Dismiss for which Mrs. Genger would have any first-hand knowledge not already contained in a finding of another court. The Trustee may wish to re-litigate the findings of the New York State Supreme Court, Appellate Division, District Court, and Second Circuit, but she is not permitted to do so generally under the principals of collateral estoppel, and she is more specifically barred from subpoenaing Mrs. Genger in this bankruptcy to achieve that objective. *See Russo v. Dement*, 84 N.Y.S.3d 754, 761 (Sup. Ct. 2018) (denying defendant's deposition request when defendant was collaterally estopped from re-litigating topics of proposed deposition). Simply stated, compelling Mrs. Genger to testify when she has no first-hand relevant information as to the Debtor's transfer of funds or motivation to file for bankruptcy will cause Mrs. Genger to suffer an undue burden.

> a. *Mrs. Genger's Role as the "Family Matriarch" and the Deposition of Other Non-Parties Create No Legal Right for the Trustee To Take Mrs. Genger's Deposition*

The Trustee points to no legal right entitling the Debtor or others to depose Mrs. Genger simply because she is supposedly (in the Trustee's words) the "family matriarch." Further, the Trustee's argument that other non-parties have been deposed so Mrs. Genger should be deposed is confounding. First, it bears no relationship to the Trustee's legal right to take the deposition only if the potential for obtaining relevant information outweighs the undue burden on Mrs. Genger. Second, the various non-parties referenced by the Trustee as having been (or that will be) deposed have information that is relevant or likely to lead to relevant information, in connection with the Motions. Mrs. Genger does not.

The Motion to Dismiss provides evidence in the form of documents and deposition testimony that illustrate the Debtor's scheme to transfer value she received from the sale of her TRI shares. According to that evidence, the Debtor did not act alone. Rather, the transfer of that value involved various other parties including her father, her husband, her husband's former law partner Mr. Bowen (who acted and may still act as a holder of the two $7.5 million promissory notes under the 2013 Settlement Agreement), and others. As such, these "non-parties" have relevant information (or information that may lead to relevant information) in connection with the Debtor's alleged bad acts and motivation to file for bankruptcy protection. Mrs. Genger was not involved in, and has no information in connection with, the Debtor's transfer of value to third parties, concealing those transfers, or the decision to file for bankruptcy protection once the Second Circuit found that the Debtor had breached her promise to Sagi Genger and Mrs. Genger.

> b. *Mrs. Genger's Lawyer's 2019 Statement Merely Compiled Previous Court Filings and Does Not Indicate Mrs. Genger Has Relevant Information Requiring a Deposition*

4

Hon. James L. Garrity, Jr.
March 15, 2021

      The Trustee's final "reason" as to why Mrs. Genger should testify is that Mrs. Genger filed a statement in 2019 containing background facts in the prior bankruptcy proceeding in Texas (the "Omnibus Statement") [Dkt. No. 112]. The Trustee's reliance on this filing as a reason for Mrs. Genger to sit for a deposition in connection with the Motion to Dismiss is misplaced. The Trustee suggests that the Omnibus Statement contains numerous allegations about the Debtor, the Debtor's father, and their alleged fraud. In fact, the Omnibus Statement contains a recitation of various Court decisions and findings, along with testimony from trial and deposition transcripts and other documentary evidence. <u>It is not the Omnibus Statement that forms the core of the Motion to Dismiss (in fact, the Omnibus Statement is not even referenced in the Motion to Dismiss), as the Trustee would have this Court believe. Instead, it is the prior court decisions, deposition testimony, documentary evidence, and trial testimony contained in the Omnibus Statement and the inferences drawn therefrom that form the basis for the Motion to Dismiss.</u> Mrs. Genger has no first-hand knowledge of the bad acts committed by Orly Genger, Arie Genger, Eric Herschmann, and Mr. Bowen that are outlined in those papers. By their nature, those acts were committed without her presence or involvement.

      *2) Mr. Kurland Also Fails to Present a Single Valid Reason for Mrs. Genger's Testimony*

      The allegations about which Mr. Kurland proposes deposing Mrs. Genger are conclusory statements made by Sagi Genger. Mrs. Genger's opinion of those conclusions are irrelevant and she has no first-hand knowledge about the unadjudicated facts underlying those conclusions. Specifically, Mr. Kurland highlights the following allegations that are actually conclusions made by Sagi Genger, and to which Mrs. Genger has no additional information:

- The purpose of the Bankruptcy Case is not to aid a good faith debtor to deal with her debts and obtain a fresh start. Rather, it is to frustrate the efforts of one particular creditor, the Debtor's brother Sagi, to collect on a judgment representing Orly's half of a financial commitment they made to support their mother Dalia Genger ("Dalia").

- Debtor has spent the last seven years trying to shield $32.3 million from….Dalia[] by transferring that money to and encumbered it in favor of, her husband Eric Herschmann ("Herschmann"), her father Arie Genger ("Arie"), and her father's purported lenders Arie and David Broser (the "Brosers") and their various entities (together, the "Debtor Group").

- Her bankruptcy filing lacks good faith and has no proper purpose. Its only goal is to keep her assets in the hands of her father…and her husband, who supports the Debtor in a lavish lifestyle, while leaving her one true creditor – Sagi (and by extension, her estranged mother, Dalia) – holding the bag.

5

Hon. James L. Garrity, Jr.
March 15, 2021

- At its core, this is a two-party dispute between two family factions, over the Debtor's decade- long effort to frustrate her mother's right to financial support.

- On the other side are Sagi, Dalia, and the Orly Genger 1993 Trust. All these parties wish to see the $32.3 million used to satisfy her obligations, and consequently support dismissal as the most efficient path to that result.

The Motion to Dismiss, filed by *Sagi Genger*, states that the purpose of the bankruptcy petition was to frustrate *his* efforts. As evidentiary support for the Motion to Dismiss, Sagi Genger provides, among other things, two backdated promissory notes signed by the Debtor totaling $7.4 million, and false oaths made by the Debtor and her cohorts. Mrs. Genger has no knowledge (other than the record) as to the backdated promissory notes or Arie Genger's and Mr. Herschmann's motivation for making false oaths. Nor does she even have first-hand knowledge of facts that would demonstrate the truth or falsity of those statements. Moreover, the reference to a financial commitment Orly and Sagi made to support their mother, Mrs. Genger, is not in dispute (the "<u>2004 Promise</u>"). The 2004 commitment is a finding by the District Court and Second Circuit Court of Appeals. "As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of TRI to trusts benefiting Sagi and Orly . . . in exchange for a commitment by Sagi and Orly to financially support her." *See, Genger v. Genger*, 76. F.Supp.3d 488, at 492 (2015), *aff'd. by Genger v. Genger*, 663 Fed.Appx. 44, 48 (2016).

Mr. Kurland also indicates the following allegations as potential deposition topics, even though they are direct findings from previous court proceedings:

- Orly agreed, in writing, to indemnify Sagi for half of certain domestic support obligations to their mother [Dalia].

    - This is a direct finding of the U.S. District Court for the Southern District of New York relating to the 2004 Promise: "The arrangement was effectuated via three documents. . . . The third agreement was a letter signed by Sagi and Orly dated November 10, 2004 (the "2004 Indemnity"). In the 2004 Indemnity, Orly agreed to indemnify Sagi 'for and against one-half (1/2) of any and all payments'. . . ." *See Genger v. Genger, 76. F.Supp.3d 488, at 493 (2015), aff'd. in Genger v. Genger, 663 Fed.Appx. 44, 48 (2016)*. As such, there is nothing to testify to, and Mr. Kurland should not be permitted to try to re-litigate this issue.

- In 2014, upon learning of the 2013 Settlement Agreement (and thus of the fact that both her children had financially gained from the TRI shares whose rights were assigned in her 2004 divorce), Dalia made her first support request under the aforementioned 2004 agreement, for $200,000.

6

Hon. James L. Garrity, Jr.
March 15, 2021

- o  This is also a direct finding of the District Court. "On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise, which Sagi paid." *See Genger v. Genger*, 76. F.Supp.3d 488, at 494 (2015).

- Dalia invoked her clawback rights for a second time, requesting financial support from Sagi and Orly in the amount of $6 million.

  - o  This as well is a direct finding of the District Court. "On October 21, 2017, Dalia demanded $6,000,000 from Sagi under the 2004 Promise (the "2017 Demand")." *See Genger v. Genger*, 2018 WL 3632521 at *2.

- [F]or over a year, they concealed the terms of the Settlement Agreement from Dalia…while misrepresenting to various Courts the contents thereof.

  - o  It is a matter of public record that Dalia and Sagi sought production of the "Confidential" Settlement Agreement in litigation, and that Orly successfully resisted such production for over a year, from July 2013 until October 2014, when the U.S. District Court finally ordered production of the document. The specific misrepresentation is identified in the next sentence of the brief (which Mr. Kurland omits) and is a statement made to the District Court by the Debtor's counsel which is inconsistent with the terms of the (later-revealed) Settlement Agreement. Mrs. Genger has no knowledge of the statement beyond what is already on the record.

In sum, the above allegations seek to re-litigate findings made by Judge Forrest in her first opinion. In her second opinion, Judge Forrest held that those findings were affirmed by the Second Circuit. *See Genger v. Genger*, 2018 WL 3632521 at *6. Her second opinion was then also affirmed by the Second Circuit. As such, one can only surmise that Mr. Kurland, much like the Trustee, is attempting to re-litigate issues firmly decided and affirmed four times by seven federal judges. Parties may not use depositions to re-litigate issues on which they are collaterally estopped. *Russo*, 84 N.Y.S.3d at 761; *T. McGann Plumbing,* 522 F. Supp. 2d at 1017. Mr. Kurland, therefore, also fails to raise a single allegation regarding which Mrs. Genger has relevant information.

   *3) Mr. Bowen Also Fails to Present a Single Valid Reason for Mrs. Genger's Testimony*

Finally, Mr. Bowen also fails to raise any relevant facts to which Mrs. Genger can testify. Of note, Mr. Bowen opines that: "Orly would not be in bankruptcy were it not for Dalia and her *seriatim* demands for millions of dollars under the 2004 Agreements coupled with her self-contradicted accusation that Orly has Settlement Cash that she supposedly fraudulently transferred." Bowen Letter at 2. Each of these statements is contradicted by the facts. As this Court held in its Decision dated February 24, 2021, "[Dalia] and Sagi were co-defendants since

7

Hon. James L. Garrity, Jr.
March 15, 2021

2007 in eight legal actions in which the Debtor has alleged they are joint tortfeasors…" *Decision on Common Interest Privilege* at 39. In those cases (spanning over a decade and that included multiple depositions of Mrs. Genger), Orly and her father failed to convince any court of any merit in any of their demands for hundreds of millions in damages. Indeed, some of the largest claims in the Debtor's estates are from Orly or Arie's attorneys in bringing those failed suits. In contrast, Mrs. Genger never brought any claim against the Debtor prior to her filing for bankruptcy. Further, the validity and enforceability of the 2004 Promise, freely made by Orly and in consideration of $32.3 million in value received by her, has already been conclusively established by two District Court opinions and two Second Circuit opinions.

According to Mr. Bowen, Dalia is an "avowed fact witness." To support this contention, Mr. Bowen, like the Trustee, refers the Court to the Omnibus Statement. As previously mentioned, reliance on the Omnibus Statement is misplaced.

Mr. Bowen next claims that Mrs. Genger has taken inconsistent positions with respect to the ownership of the Settlement Cash. This is simply not true. Orly brought her claims that led to the $32.3 million settlement "on behalf of the Orly Genger 1993 Trust." Dalia, consistent with her fiduciary duties as then-Trustee of the Orly Genger 1993 Trust, sought to have the settlement proceeds deposited with the state court, so that the Court could properly award those proceeds to the real-party-in-interest (the Trust). Orly opposed, on the ground that she had the right to direct the settlement proceeds without input from the Trustee or the Court. Orly ultimately prevailed on Dalia's request when the state court dismissed Dalia's motion as "moot" in light of the Appellate Division's affirmation of the dismissal of the plaintiffs' underlying claims. It is the Debtor and her cohorts, all of whom opposed Mrs. Genger's motion in State Court, who now seek to take the inconsistent position that the Debtor never had any right to the funds. Regardless of who owns the Settlement Cash, Mrs. Genger has no first-hand information. Her opinion of the legal implication of those facts is irrelevant to the Motions. Here, Mr. Bowen attempts to create an issue where one does not exist.

Mr. Bowen then avers that Mrs. Genger has adopted Sagi's factual claims and is an active participant in this bankruptcy proceeding. The fact that Mrs. Genger supports her son's efforts is not relevant. Moreover, far from being an active participant in this bankruptcy case, since the transfer to this District, Mrs. Genger has filed only those pleadings (Declaration in Support of Common Interest Privilege, for instance) that were necessary to maintain her rights. Mr. Bowen's reference to the constructive trust complaint is also misleading. The constructive trust complaint was filed to ensure compliance with the statute of limitations. Counsel for Mrs. Genger indicated to all defendants that he would adjourn their time to answer indefinitely while the Motion to Dismiss was being decided. Notwithstanding counsel's suggestion, opposing counsel decided to move to dismiss and to bring this issue before the Court in an accelerated manner.

8

Hon. James L. Garrity, Jr.
March 15, 2021

Finally, Mr. Bowen suggests that Dalia's motivation for requesting funds pursuant to the 2004 Promise is somehow relevant to the Debtor's bankruptcy filing. Mr. Bowen claims that Mrs. Genger did not need the money she requested pursuant to the 2004 Promise and only did so to drive the Debtor into bankruptcy. He makes that argument while simultaneously acknowledging that Mrs. Genger supports the dismissal of the bankruptcy. This argument is not only utterly false as a factual matter, but more importantly here irrelevant according to both the District Court and Second Circuit. Both those Courts found that Dalia's ability to request funds pursuant to the 2004 Promise was not conditioned upon need. Indeed, in addressing this very issue, the Judge Forrest pointed out: "The Second Circuit further held that because the 2004 Promise gave Dalia 'sole and absolute discretion' to demand further funds up to the value of the TRI stock she conveyed, there was 'no merit' to the argument that Sagi and Orly could avoid payment by 'challenging Dalia's need for the money she demanded.'" *See*, *Genger v. Genger*, 2018 WL 3632521 at *7. As such, discovery aimed at advancing this argument is not probative or something the Court should consider. *Russo*, 84 N.Y.S.3d at 761; *T. McGann Plumbing,* 522 F. Supp. 2d at 1017.

### B. No Party Has Indicated Any Reason for Mrs. Genger's Deposition in Connection with the Trustee's Motion

No party points to any reason why Mrs. Genger should be deposed in connection with the Trustee's Motion. None exists. Through the Trustee's Motion, the Trustee seeks to sell certain claims against third parties and to obtain financing from parties subject to the turnover action in District Court. Mrs. Genger has no information relevant to the Trustee's decision or motivation to sell the claims or obtain financing. To the extent the Trustee seeks to take Mrs. Genger's deposition in furtherance of those claims, such request is improper. *See Nicholas v. Poughkeepsie Sav. Bank/FSB,* No. 90 Civ. 1607 (RWS), 1991 U.S. Dist. LEXIS 8083, at *5 (S.D.N.Y. June 13, 1991) ("Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.").

### C. Participating in a Deposition Poses a Significant Burden for Mrs. Genger

Beyond Mrs. Genger's lack of information concerning the Motions, the Court must weigh the harm resulting to Mrs. Genger if she is compelled to testify. Mrs. Genger's health is something that all parties are aware of to a significant extent. The Debtor, her husband, and Mr. Bowen are all aware that Mrs. Genger has been hospitalized for extended periods and is presently under active medical care while at home. They are also aware of the general nature of that medical care. Sagi Genger answered questions about it at his deposition on July 17, 2020, which is attached hereto (filed confidentially). As such, the parties' requests for Mrs. Genger's deposition should be seen for what they are, harassment. It is not said lightly, and the medical record available to the Court supports the proposition, that compelling Mrs. Genger to testify will have potentially life threatening effects on her health and well-being. To this end, Mrs. Genger's physician remains available to answer any questions the Court may have in this regard.

Hon. James L. Garrity, Jr.
March 15, 2021

### CONCLUSION

       There is no relevant information to the Motions that the Trustee or other parties can gain by taking Mrs. Genger's deposition. The parties seeking to take Mrs. Genger's deposition bear the burden of proving relevance, and have failed to do so here. Mrs. Genger's health may be significantly threatened by compelling her deposition. The extreme burden to Mrs. Genger of participating in the deposition must be weighed against the non-existent necessity of taking her deposition. Balancing those two opposing forces yields only one result. There is no justification or need for Mrs. Genger's deposition, and the Court should deny these requests.

       Respectfully submitted,

       */s/ Paul J. Labov*

       Paul J. Labov