# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ANDREW R. KURLAND
DIRECT DIAL: (212) 506-3306
DIRECT FAX: (212) 835-5254
AKurland@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

March 26, 2021

VIA ECF

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Court
One Bowling Green
New York, NY 10004

Re:    *In re Orly Genger*, Case No. 19-13895-JLG

      As the Court is aware and as summarized herein, Sagi Genger and his counsel, John Dellaportas, have repeatedly accused our law firm of creating fraudulent billing records related to the representation of Orly Genger in various matters.[1] There are no grounds – not a shred of evidence – to support such a serious charge and Sagi and his counsel should be sanctioned for their conduct. Last summer, pursuant to Rule 9011, we served our sanctions motion on Mr. Dellaportas and Sagi regarding their false allegations against our firm. We subsequently requested a hearing date for our motion from your Courtroom Deputy, but were informed that we could not schedule a hearing date at the time. In light of the continuing blatantly false accusations from Sagi and Mr. Dellaportas, including those stated on the record at the February 25, 2021 status conference, we request that the Court either sanction Sagi and Mr. Dellaportas pursuant to its inherent powers to do so, or permit us to obtain a hearing date so that our Rule 9011 motion can be filed and heard.

      The false claims advanced by Sagi and his lawyer began after Mr. Herschmann's on-the-record statement during the fraud trial in 2015 that he was working on the matter pro bono, and that the retainer letter from this firm for the matter "reflect[s] that all of the attorneys that are on the trial for Kasowitz are working pro bono." March 2, 2015 Trial Tr. at 957:26 to 958:3. These were and remain accurate statements. Nonetheless, in a multitude of filings with this Court alone, Sagi warped these statements, as well as the contents of Orly and Mr. Herschmann's prenuptial agreement, to argue that the firm could not and did not ever charge Orly for legal work, in an attempt to invade Orly's attorney-client relationship with her counsel and to malign this firm.

      For example: In the adversary proceeding Sagi commenced against Orly, in which he objects to the discharge and dischargeability of Orly's debts, Sagi falsely claims that the firm's "bills are a sham" because the firm "work[s] for free." Sagi Genger's and TPR Investment

---

[1] This is not the first time that they have made serious, unfounded fraud-related allegations. *See, e.g.*, ECF Doc. 348 at 31 (re nonexistent Israeli bank account); Exhibit D (Herschmann deposition) at 208:24 to 215:10 (allegations re nonexistent *ex parte* interaction with former chapter 7 trustee).

Associates, Inc.'s Objection to the Discharge and Dischargeability of Orly Genger, at ¶ 16, *Sagi Genger and TPR Investment Associates, Inc. v. Orly Genger*, Adv. Proc. No. 19-01444-JLG. In a letter Sagi filed on May 20, 2020, Sagi challenged the legitimacy of the outstanding balance Orly owed to the firm because Mr. Herschmann "previously told the Court and the debtor that [all] services were being provided 'pro bono'" (ECF No. 247 at 1-2); he repeated this false claim on June 12, 2020 (ECF No. 262 ("Kasowitz's legal services were 'pro bono'")). Sagi also echoes the foregoing misstatements in his motion to dismiss this bankruptcy, in which he falsely claims that "the lion's share" of this firm's work for Orly was pro bono to support his allegations of the firm being involved in a grand conspiracy. ECF No. 32 ¶ 24; ECF No. 239 ¶ 34.

Sagi also claims that this firm has no legitimate standing as a creditor in this bankruptcy and that the firm's proof of claim constitutes a bankruptcy fraud that is part and parcel of the overall purported fraudulent scheme that Sagi claims has taken place to the detriment of himself and his mother, Dalia. *See* ECF No. 42 at ¶ 13 (Kasowitz "has aided the Debtor in frustrating her rightful creditors by assisting in the fraudulent transfer of Debtor's assets and undermining efforts of those rightful creditors to recover those assets.")

Sagi and Mr. Dellaportas have no evidentiary support for a single one of their claims about this firm, which are demonstrably false and have been categorically disproven time and again by the documents and under-oath testimony the firm and others have provided to Sagi. The three engagement letters the firm has with Orly (previously produced to Sagi, and attached as Exhibit A), each from January 2015, expressly state that the Firm is charging Orly its customary and ordinary fees with the exception of the 2015 bench trial in which the firm agreed to waive the hourly charges of the attorneys working on the trial itself, but to charge paralegal time, support staff time, and disbursements, and also to charge all attorney time for certain trial-related out-of-court activities, including a deposition and post-trial briefing.[2] The firm's invoices to Orly (previously produced to Sagi, and attached as Exhibit B) confirm this, and also reflect the substantial work this firm has done for Orly in connection with other state Supreme Court actions, Surrogate's Court actions, and actions in federal court, all of which were billed, and all of which also involved Sagi.

The documents and testimony also reflect that beginning in 2015, Orly paid her invoices as they came due; as her finances deteriorated, she was unable to pay the invoices so at the end of 2016, she and her father borrowed $2 million from Mr. Herschmann, leaving an outstanding balance through the date Orly filed for bankruptcy of approximately $1.5 million (for which the firm filed a Proof of Claim). Records already produced to Sagi reflect the dates all funds on Orly's account were credited, including the funds borrowed from Mr. Herschmann. Exhibit C. Sagi even has been provided the cancelled checks and wire confirmations that show when the actual payments were received by the firm. *Id.*

Sagi also took this firm's deposition in connection with this bankruptcy. A portion of the firm's testimony was provided by Mr. Herschmann, and the remainder by Mr. Bowen. Both firm witnesses testified about the limited nature of the pro bono representation of Orly. *See, e.g.*, July 2, 2020 Dep. Tr. at 74:23 to 75:9 (attached hereto as Exhibit D) ("the only pro bono services that were provided by the firm as it related to Orly Genger was, as I stated on the record and as is

---

[2] Mr. Herschmann, as Orly's spouse, also never charged any of his time to any matter for Orly.

2

contained in the retainer agreement, was the pro bono trial time for the lawyers"); Aug. 18, 2020 Dep. Tr. at 55:16 to 56:8 (attached hereto as Exhibit E) ("anything that was post-trial, post-trial briefs, appeals, ancillary proceedings that may have been related to that trial, were no longer under that partial pro bono arrangement"). The testimony is entirely consistent with the documents the firm produced.

Because the volumes of documents produced and testimony provided unequivocally demonstrate that there is no basis to maintain their false claims, at the February 25, 2021 status conference, Mr. Dellaportas finally conceded that this firm provided only "*some*" of its services on a pro bono basis. But instead of withdrawing the knowingly false allegations entirely, he doubled down again, advancing a new, equally nonsensical theory that "some of the billing may have been improperly shifted … from the pro bono to the non-pro bono" matters in 2015 (more than four years before Orly filed for bankruptcy). The concocted theories, which Sagi and Mr. Dellaportas have used to gain access to our firm's confidential relationship with our client and to try to support their baseless accusations of fraud, are dizzying. Mr. Dellaportas and Sagi now allege:

> [D]uring the months when the trial was very busy, towards the latter months, the hours were very reduced on the pro bono matter, and hours sprung up on the non-pro bono matter at a time when those non-pro bono matters were dormant. So we have *at least a suspicion* that some of the billing may have been improperly shifted … from the pro bono to the non-pro bono, which would artificially inflate or improperly inflate the two claims [filed by this firm and Mr. Herschmann].

Feb. 25 Hearing Tr. at 22:1-9 (emphasis added). According to Mr. Dellaportas, "in April and May of 2015, when the trial was going virtually every day, the pro bono bills dropped to almost -- to very little. And all of a sudden, the non-pro bono bills, in the months where not much was happening, are inflated enormously." *Id.* at 32:8-13.

According to Mr. Dellaportas and Sagi, the firm did this to inflate its bills to Orly in 2015, somehow knowing that Orly would eventually be unable to pay those fees so that the firm could become a creditor of Orly's. This was all done, according to them, to frustrate Sagi's ability to collect from Orly on a non-existent debt premised on a non-existent demand from Dalia purportedly to support her lifestyle, which was not made until years later. For this outlandish new conspiracy theory to be true, this firm not only would have had to have been clairvoyant, it would have had to have been willing to sacrifice its very existence and commit multiple frauds in order to become a creditor of Orly's in this bankruptcy. Obviously, no such thing ever occurred. Moreover, this new theory of how the firm supposedly "padded" its bills cannot be reconciled with its willingness to do any work pro bono: If the firm wanted to overcharge Orly, why agree to any pro bono arrangement in the first place; why not just charge all of its time? Such a ridiculously implausible and internally inconsistent fact scenario is unworthy of belief on its face.

Nonetheless, in accordance with the Court's instructions in granting Mr. Dellaportas' request, we have conducted an entry-by-entry privilege review of our time entries for the months

3

April, May, and June 2015.  Because these documents once again definitively refute Sagi's claims, we are submitting them to the Court herewith, as Exhibit F.³

      Contrary to Sagi and Mr. Dellaportas' representation to this Court, only two of the 28 days of the fraud trial took place in April 2015 (the 14th and 21st), and only three in May 2015 (the 12th, 14th, and 15th).  Many of these were not even full days.  **That is why the time billed to the pro bono matter is lower during these months than it was in prior months.**  As has been explained to Sagi and Mr. Dellaportas *ad nauseam*, including in this firm's deposition, during the partial pro bono trial, which ended in May 2015, Orly was billed for ancillary proceedings related to the trial, including the mid-trial deposition of David Parnes, which was supervised by a court-appointed special master and occurred over the course of six days from April 16, 2015 through May 5, 2015.  That time is reflected in matter 12119402, a fully-billed matter.  That billable matter number also is where time spent on the extensive post-trial briefing was recorded.

* * * *

      The Court should not let stand Sagi's and Mr. Dellaportas' unfounded claims against this firm and members of the bar.  Baseless accusations like these, which impose real costs, should not be made without consequence.  It undermines the orderly function and integrity of the courts and cannot be tolerated.  We request that the Court sanction both Sagi and his counsel pursuant to its inherent powers to do so, or provide a hearing date so that our Rule 9011 motion can be noticed and heard.

Respectfully submitted,

/s/ Andrew R. Kurland

Andrew R. Kurland

Enclosures

cc:  John Dellaportas, Esq. (via email)

---

³ The firm has three separate matter numbers for Orly: 12119401, 12119402, and 12119403.  The partial pro bono trial was billed to matter number 12119403.

4