

**EMMET, MARVIN & MARTIN, LLP**
COUNSELLORS AT LAW

120 Broadway 32nd Floor
New York, New York 10271
212-238-3000

www.emmetmarvin.com

John Dellaportas
*Partner*
Tel: 212-238-3092
Fax: 212-238-3100  Fax (alt.) 212-406-6953
jdellaportas@emmetmarvin.com

March 29, 2021

**Via ECF**
Honorable James J. Garrity, Jr.
U.S. Bankr. Ct. for the Southern Dist. of N.Y.
One Bowling Green
New York, NY 10004

**Re:  *In re Orly Genger*, Case No.: 19-13895-jlg**

Dear Judge Garrity:

On behalf of Judgment Creditor Sagi Genger ("Sagi"), we respectfully submit this letter in response to the March 26, 2021 letter of Andrew R. Kurland, Esq., counsel to putative creditors Kasowitz Benson Torres LLP and Eric Herschmann, Esq. (Doc. 389).[1]

In his letter, Mr. Kurland demands that Sagi and I be sanctioned for telling this Court at the February 25, 2021 conference (correctly, as it turns out) that "some of the billing may have been improperly shifted … from the pro bono to the non-pro bono, which would artificially inflate or improperly inflate [the Kasowitz and Herschmann claims]." *See* Exh. 1 at 22:1-9.

In response, the Court directed Mr. Kurland, "for the months of April, May, and June of 2015, … [to] please produce the narratives … for that monthly billing." *Id.* at 34:17-19.  For the next four weeks, Mr. Kurland disregarded the Court's directive, even though the billing narratives amounted to only a few dozen pages, a privilege review of which would have required at most an hour or so of time.  Finally, last Friday night on the eve of Passover--apparently to get ahead of the bad news--Mr. Kurland finally "produced" the records by attaching them as "Exhibit F" to his letter motion.  The billing narratives confirm our suspicions that roughly a half million dollars' worth of "pro bono" trial work was shifted to the non-pro bono/billable matter.

By way of background, on January 23, 2015, the debtor Orly Genger executed three separate engagement letters with the Kasowitz firm, which we annex hereto as Exhibit 2.  The first engagement letter was for work "in connection with the appeal in the *Genger v. Genger*, No. 14 Civ. 5683 (KBF) (S.D.N.Y.) litigation," and is not relevant here.  The second engagement letter was for "appellate work in the *Genger v. Genger*, No. 100697/08 (Sup. Ct. N.Y. Cnty.) litigation."  That, too, is irrelevant to the current issue.  The third and final engagement letter is the one that matters for the instant purposes.  It provides in relevant part as follows:

---

[1]   We limit our response herein only to Kasowitz's recent production of billing narratives, which is the key issue.  However, should the Court wish us to further detail support for the allegations in Sagi's amended motion to dismiss, we are prepared to do so now.

EMMET, MARVIN & MARTIN, LLP                                                                                          2

>     This letter memorializes the terms of the retention of Kasowitz, Benson, Torres & Friedman LLP ("KBT&F") by Orly Genger to handle the trial originally scheduled to commence Tuesday, January 27, 2015, in the *Genger v. Genger*, No. 100697/08 (Sup. Ct. N.Y. Cnty.) litigation. This letter agreement covers only the trial; any further work on the case will be subject to further discussion and agreement between us. … [We] have agreed to handle the trial of this matter on partial pro bono basis. Accordingly, KBT&F will bill only for the hourly time charges of its legal assistants and any out-of-pocket disbursements.

We are not aware of any further engagement letters executed by the debtor.

      The bench trial in the above-referenced *Genger v. Genger*, No. 100697/08 (Sup. Ct. N.Y. Cnty.) litigation ultimately continued until mid-July 2015. (A copy of the relevant portion of the docket is annexed hereto as Exhibit 3.) The Kasowitz firm tried the case in its usual manner, with lots of trial motion practice, a mid-trial deposition of one of Sagi's trial witnesses (David Parnes), and lengthy post-trial briefs filed in lieu of closing arguments. All of this work was conducted as part of the trial, which Kasowitz had agreed to handle on a "partial pro bono basis."

      When we examined the dollar amounts billed, however, we noted that, beginning in April, the billing amounts for the pro bono retention (denominated as "Genger State Court Trial" on the Kasowitz invoices) dropped dramatically, even though the trial work had not. Meanwhile, the billing amounts for a non-pro bono matter denominated as "Genger State Miscellaneous" increased dramatically, even though the other Genger state court cases in those months (including the appeal referenced in the only other engagement letter) were largely dormant.

      Now, we know why. At least of as of that April, the relationship partner in charge of Kasowitz's bills (presumably, the debtor's husband) began taking the position that *only time spent by attorneys actually sitting in Justice Jaffe's courtroom* constituted work "to handle the trial," and that all of the other work that goes into handling a trial--*e.g.,* deposition designations, legal research, motion practice, closing statements, etc.--would now be moved off balance sheet, so to speak, into the amorphous "Genger State Miscellaneous" matter.

      The timing is surely no coincidence. In mid-March 2015, in the federal case then pending before Judge Forrest, the U.S. District Court entered Judgment (including attorney's fees) in favor of Sagi and against the debtor in the amount of $258,048.01. Doc. 113. In an accompanying Opinion & Order, Judge Forrest further noted that "[t]he stakes in this case are in fact higher than first meets the eye," because "<u>the contract at issue imposes continuing obligations on the parties, such that its true economic impact on the parties is likely to greatly exceed the exact amount of damages sued over</u>." Doc. 112 (emphasis added).

      Thus, by Spring 2015, it had become even more apparent that the debtor had a potential liability of up to $12 million from her 2004 commitment to her mother. While the debtor also had earned more than $32.3 million from her mother's generosity, by then the two were estranged, so the debtor had little interest in sharing the windfall. The ensuing months instead reflect a flurry of activity by the debtor, her father, and her now-husband to get ahead of that liability by encumbering the $15 million in unpaid settlement proceeds with debts to themselves.

EMMET, MARVIN & MARTIN, LLP                                                                                        3

      We will be laying out the evidence at the motion to dismiss hearing. For purposes of the instant response to Mr. Kurland's "sanctions" letter, we wish only to provide the Court with a sampling of the kinds of work Kasowitz now claims had nothing to do with "handling the trial" (which was going full throttle during this same period). For simplicity, we excerpt billing entries only from Mr. Kurland, as he is best able to explain his own billing:

| Date: | Narrative: | Hrs.: |
|---|---|---|
| 04/01/15 | Meet with S. Khojasteh and E. Herschmann re post trial briefing. | 1.20 |
| 04/08/15 | Revise letter re Parnes; draft follow-up submission to Court re Arie designation; draft letter to court re objections to Orly designations/ calls with E. Herschmann. | 6.00 |
| 04/10/15 | Discuss deposition designation objections with M. Bowen; revise designations and draft letter to court re same; revise letter to court responding to and objecting to admission of certain exhibits; calls with E. Herschmann and ZEK firm re Redacted. | 8.20 |
| 04/14/15 | Trial; prep for Parnes deposition. | 13.50 |
| 04/23/15 | Meetings with E. Herschmann and M. Bowen re continuation of Parnes deposition; emails with opposing counsel re exhibits and privilege log; revise memo on Redacted; emails with April Ferguson re videos for judge; finalize and transmit copy of Ex 573B to judge. | 9.20 |
| 05/14/15 | Finalize clips of Parnes deposition for use at final day of trial. | 2.50 |
| 05/21/15 | Revise draft of letter to court re admission of Parnes dep exhibits and reserved-upon exhibits; call with E. Herschmann re same; draft opposition to motion to claw back Parnes privilege documents. | 7.40 |
| 05/27/15 | Meet with E. Herschmann and S. Khojasteh re post trial brief; discuss Redacted; research with M. Cowherd; export video files of Parnes deposition clips from trial director. | 1.20 |
| 06/01/15 | Calls with E. Herschmann and S. Khojasteh; draft, and file response letter to court re admission of documents into evidence. | 1.90 |
| 06/02/15 | Finalize and file letter to court re admission of exhibits; emails with M. Bowen re same/review revised Parnes transcripts and prepare designation clip binder for delivery to Court, cross-checking with former. | 1.40 |

EMMET, MARVIN & MARTIN, LLP                                                                 4

| 06/09/15 | Calls and meetings with E. Herschmann and M. Bowen re Redacted and post-trial briefing; work on draft statement of facts for Redacted | 2.20 |
|---|---|---|
| 06/16/15 | Review defendant's post trial brief and summarize same; Redacted call with ZEK re defendant's brief; compare "corrected" version of post-trial brief with original-filed version; discuss briefing schedule of Hard Drive opposition with ZEK; review memo on Redacted | 5.40 |
| 06/25/15 | Work on appendices to post trial brief. | 6.40 |
| 06/27/15 | Work on post-trial brief addendums. | 8.60 |

*See* Exhibit 4.

Plainly, the foregoing entries (indeed, almost all entries for those months billed under "Genger State Miscellaneous") are work performed in "handling the trial." To get around this fact, Mr. Kurland foes so far in his letter as to try to *retroactively change the terms of the firm's pro bono engagement letter,* even though it is attached to his own submission. Specifically, he claims the engagement letter "expressly state[s] that the Firm is … also to charge all attorney time for certain trial related out-of-court activities, including a deposition and post-trial briefing." (Underlining added.) In truth, the engagement letter states nothing of the sort.

At the February 25, 2021 conference, Mr. Herschmann further claimed that this dramatic shift in billing could not possibly have been intended "to help Orly Genger, who, candidly, none of us knew in 2015 and only met her shortly before that." Exh. 1 at 31:11-13. It is our understanding (Mr. Herschmann will surely correct us if we are wrong) that, by that point, Mr. Herschmann had known the debtor for approximately one year. Further, this understates the point, because there was a considerable lag between the creation of these entries and the issuance of the bills. For example, the bill for June 2015 was only issued *on May 31, 2016,* by which point the debtor and Mr. Herschmann had already entered in a Premarital Agreement.

In any event, we are prepared to tell the whole story on April 27, 2021. For now, we only state that Kasowitz's recently-produced billing narratives vindicate the suspicions articulated at the February 25 conference. If any sanctions are issued as a result of the revelations therein, Sagi respectfully submits that they should be directed elsewhere.

We thank the Court for its consideration.

                                                          Respectfully,

                                                          John Dellaportas

cc:      All Counsel of Record (via ECF)