# GLENN AGRE BERGMAN & FUENTES LLP

Michael Paul Bowen
mbowen@glennagre.com
55 Hudson Yards, 20th Floor
New York, NY 10001
o: (212) 358-5600
m: (914) 319-1827

March 29, 2021

<u>Via ECF</u>
Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, New York 10004

    Re:    <u>In re Orly Genger, Ch. 7, Case No. 19-13895</u>

Your Honor:

    On behalf of Debtor Orly Genger, I write in compliance with the court order concerning disputed questions in the continued deposition of Michael Oldner as purported trustee of the Orly Genger 1993 Trust (the "OG Trust").

    At his court-ordered continued deposition last week, Mr. Oldner, on advice of his counsel Adam Pollock, refused to answer certain questions as "beyond the scope" of the motion to dismiss. Mr. Oldner also gave nonresponsive answers to other questions posed by Mr. Herschmann. The parties agreed to hold these questions until the end of the deposition and contacted the Court that afternoon for a ruling. Because the court reporter encountered difficulty in locating the marked questions, the parties agreed to await the transcript. Now that the transcript is available, Debtor requests a court hearing to obtain rulings on the unanswered questions listed in Appendix A and on the nonresponsive answers to questions in Appendix B, both attached hereto.

                                  Respectfully submitted,

                                  /s *Michael Paul Bowen*

cc: All Counsel (via ECF)

New York
San Francisco
www.glennagre.com

GLENN AGRE BERGMAN & FUENTES LLP

Hon. James L. Garrity, Jr.
March 29, 2021
Page 2 of 6

# APPENDIX A

Q. Mr. Oldner, if you look at Exhibit 7 first – [A. One moment, please] -- that's a release that you signed; right?

Q. Okay. You also gave a release to Sagi Genger and his -- I think it's his wife, right – Elana Genger, or Elana -- yeah, Elana Genger, on the same day, correct, on behalf of the trust; right?

Q. Why did you give a general comprehensive release to Dalia Genger on behalf of the trust?

Q. Why did you give a release to Sagi Genger on behalf of the trust, and his wife?

Q. Mr. Oldner, do you know who Elana Genger is?

Q. What relationship does Elana Genger have with the Orly Genger Trust?

Q. You were in Austin, Texas in the offices of Munsch Hardt when these releases were executed by you; correct?

Q. And Sagi was also present when you signed these releases; isn't that correct?

Q. Was David Parnes (phonetic) also present when you signed these releases?

Q. Mr. Oldner, did -- was, was anyone else present when you signed these releases of Dalia Genger and of Sagi and Elana Genger?

Q. Was it Sagi Genger who asked you to execute these releases, both of Dalia Genger and of himself, personally, and Elana Genger?

Q. What kind of due diligence, if any, did you do, Mr. Oldner, before you signed the general release of Dalia Genger?

Q. What kind of due diligence did you do, Mr. Oldner, before you signed the release of Sagi Genger and Elana Genger?

Q. Mr. Oldner, you are aware that if your release of these other people constitutes a breach of fiduciary duty to the trust or its beneficiaries that you personally can be liable for having executed these releases; are you aware of that?

Q. … Mr. Oldner, has anybody given you a written indemnification agreement to indemnify you in case anybody brings claims related to these general releases or anything else that you're doing on behalf of the Orly Genger Trust?

GLENN AGRE BERGMAN & FUENTES LLP

Hon. James L. Garrity, Jr.
March 29, 2021
Page 3 of 6

Q. Has Sagi Genger paid you money directly related to anything having to do with the Orly Genger Trust or Recovery Effort?

Q. So, Mr. Oldner, did you do anything to evaluate the claims that Orly Genger had asserted against Dalia Genger for fraud before executing a general, general release of Dalia Genger on behalf --?

GLENN AGRE BERGMAN & FUENTES LLP

Hon. James L. Garrity, Jr.
March 29, 2021
Page 4 of 6

**APPENDIX B**

Q. So, sir, if I didn't meet Orly Genger until after the year 2013, what is your basis for saying that in structuring this settlement, the 2013 settlement, I conspired with her in any way whatsoever? How is that humanly possible, sir? A. Mr. Herschmann, I cannot say at this time, but I have – …-- but I had – Q. Well, sir, let me see if I can break it down for you. Would you … -- agree with me that I couldn't conspire with someone who I never met before in my life, or do you think that that's -- … -- still possible, based on the allegation? A. I don't know if -- once again, I would be required to read this entire document and talk it over with counsel before I was able to tell you if I meant what you just said.

Q. Well, sir, I'm just reading your words in the filing that you made in court where you accused me of conspiracy and fraud. Explain to me how I could have conspired with anyone in this case if I didn't know any of them in 2013. Give us any explanation you have on earth for that allegation, sir. … A. Mr. Herschmann, I, I would, once again, have to read this with counsel that prepared it for me to be able to answer that question fully and honestly.

Q. Well, why don't you try to give us any explanation you can think of, sir, as to how that's possible, because you only – … -- spoke to Mr. Ong you told us; right? Correct? Explain to us how you can make the allegation, sir, since you told us on multiple occasions, I am certain I was aware of the information that went into this document before I signed it. What's your explanation, sir? . . . A. I would have to go over this document, likely, with the attorney that prepared it to be able to answer your question in a fair and honest way.

Q. … Did Sagi Genger tell you any of these facts that are contained in paragraphs 22 and 23? … Yes or no? A. I'm, I'm reading paragraphs 22 and 23 again. Q. We just covered -- sir, I don't need you to read them again. I just want to know did – A. Do you want me to guess?

Q. Sir, you -- if you turn to page ten now, on paragraph 29, sir, what -- let me ask you a general question. What is the basis for you to claim that my submission as a creditor for $2 million is fraudulent, if any? …Q. Sir, I'm asking you as a general question first. Do you believe that my submission of a $2 million claim as a creditor is fraudulent? A. I don't believe what I believe about whether its fraudulent or not has anything to do with the Motion to Dismiss. Q. That's not my question, sir. Please answer the question that I posed to you, since you filed a joinder, and you made the allegation. I'm asking you do you have any factual basis to believe that my demand for $2 million as a creditor is fraudulent; yes or no? A. Is that -- … Is that in this joinder?

Q. … Do you have any factual basis to believe that my submission of a $2 million claim as a creditor in this bankruptcy is fraudulent; yes or no? A. I don't know if that claim is in this joinder. Q. That's not my question, sir. You don't -- do you believe -- do you have any basis at all to believe that I'm not a legitimate creditor in this case? A. I don't know how to answer your question. Q. Well, sir, do you have any factual information about me whatsoever? … A. I

Hon. James L. Garrity, Jr.
March 29, 2021
Page 5 of 6

really don't know. I, I don't know what you're asking. Of course I have -- I have factual information.

Q. I'm going to give you just a really broad question. Tell us every bit of information that you have at all that would justify any allegation that my claim in this bankruptcy is not appropriate, any information you have, sir. A. Any information that I had at the time this was filed I believe to be true, correct, and reasonable. Q. Mr. Oldner, here's the question. Listen carefully, please. Tell us every factual basis that you're aware of to claim that my submission of a $2 million claim as a creditor is inappropriate. Anything you know, tell us now. … A. Mr. Herschmann, if you will point to the part of this document that contains the allegation that you are talking about, I will be happy to review it and discuss it.

Q. So I'm not asking you about the document. … Tell us every factual basis you are aware of that in any way will support a claim that my $2 million submission as a creditor is inappropriate. Any facts that you know in the world, tell us now. A. Mr. Herschmann, if you will point to where I made such an accusation, I would be happy to do that.

Q. Okay. Sir, do you see where you say, After the motion was filed Sagi discovered that the Debtor apparently maintains an undisclosed bank account in her own name that exists in Israel, and informed the Debtor's counsel on or about September 17th, 2019. Do you see that sentence, sir? A. I do. Q. Then you say, In response, the Debtor commenced litigation in Israel seeking to pressure the investigator who discovered this information. That litigation complaint refers to the Bank Hapoalim. Do you see that, sir? A. I do. Q. What's your basis for that allegation? A. I would have to discuss that with [attorney] Jay Ong to be able to answer the question.

Q. Sir, you say on the third line "false liabilities" referring to the debtor. See that, sir? Please identify for us every false liability that you believe exists in this bankruptcy. … A. I would have had that information -- I would have known the answer to that at the time of this filing – … -- over a year and a half ago.

Q. Sir, I want you to please answer my questions. I'm asking you to identify any false liabilities that you're aware of at all in this bankruptcy. Take your time right now and identify them. … A. I am not an attorney. I do not know. They would be as detailed in any filings that any attorney has made on my behalf.

Q. Sir, I'm not asking about filings by your attorneys. I'm going to ask you again. Identify any false liabilities you believe exists in this bankruptcy, anything. … A. I cannot answer that question on the basis of what I know at this moment.

Q. All right, sir. Can you turn to page 18, turn to paragraph 50. And I'm going to read to you the last sentence. You say, Upon information and belief, the Debtor and her husband, including through additional trusts, beneficially own multiple homes in New York, New Jersey, Florida, Texas, and Israel. Do you see that, sir? A. I do. Q. What's the factual basis for that? … A.

GLENN AGRE BERGMAN & FUENTES LLP

Hon. James L. Garrity, Jr.
March 29, 2021
Page 6 of 6

I'm reading the paragraph. Q. Sir, I'm not asking you to read the paragraph. You're wasting my time. I have read the sentence to you. A. I'm telling you I'm reading the paragraph so I can understand what that last sentence means, please. … I am certain there is a factual basis that I knew at the time. This document is old. It has already been ruled on. … I have no other way to answer this.