# KASOWITZ BENSON TORRES LLP

|  | 1633 BROADWAY | ATLANTA |
|---|---|---|
| ANDREW R. KURLAND | NEW YORK, NEW YORK 10019 | HOUSTON |
| DIRECT DIAL: (212) 506-3306 | (212) 506-1700 | LOS ANGELES |
| DIRECT FAX: (212) 835-5254 | FAX: (212) 506-1800 | MIAMI |
| AKurland@kasowitz.com |  | NEWARK |
|  |  | SAN FRANCISCO |
|  |  | SILICON VALLEY |
|  |  | WASHINGTON DC |

April 2, 2021

VIA ECF

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Court
One Bowling Green
New York, NY 10004

Re:   *In re Orly Genger*, Case No. 19-13895-JLG

Dear Judge Garrity:

Mr. Dellaportas' opposition (ECF No. 391) to our letter regarding sanctions further confirms that sanctions against him and Sagi are completely warranted and necessary.[1] At the February 25, 2021 status conference, this Court understandably had trouble comprehending Mr. Dellaportas' latest theory about the supposed massive multi-year conspiracy that he claims this firm orchestrated against Sagi and Dalia Genger. That is because the theory makes no sense, and, as with all of the prior outlandish conspiracy theories he has espoused, has been categorically disproven by the evidence.

In over-zealously claiming that our firm impermissibly charged fees in violation of our partial pro bono engagement terms that our firm had with our own client, Orly Genger, Mr. Dellaportas has violated the fundamental professional constraint that lawyers may not make claims that contradict proven matters of fact, and are themselves inherently unprovable. In this case, Mr. Dellaportas does not know and cannot know the understanding our firm had with its own client; his self-serving re-interpretation of our engagement letters to which he is a stranger can never be credited over the understanding and testimony of the parties' themselves; and he has no standing to object to fees already paid by Orly to her own lawyers years ago (to pursue claims against and defend claims asserted by Sagi). These are basic truths that cannot be challenged. This firm did not modify its agreement with Orly, and Mr. Dellaportas and Sagi cannot do so to try to support their nonsensical theories. So instead they claim, based on nothing other than their fanciful thinking, that in April 2015, Mr. Herschmann decided to modify the firm's billing arrangement with Orly so that work that was supposed to be pro bono would in fact be charged, and that Orly would then pay money she did not really owe, so that she could avoid a

---

[1] Contrary to what Mr. Dellaportas claims, this firm does not represent Mr. Herschmann in connection with this proceeding.

future hypothetical liability to Sagi and Dalia that did not exist until years later, and so this firm could become a creditor in a bankruptcy case that Orly would have to file. All of this was done – under this absurd theory – to defraud Dalia and Sagi based on a demand that Dalia would eventually make to Sagi, and which Sagi would not even pay. Of course, under their absurd theory, it would make no sense for Mr. Herschmann to not have billed *anything* for his time (which is what actually happened), especially considering his hourly rate was much higher than the other attorneys working on the matters. Even trying to write down their theory is head-spinning. Of course, Sagi has no proof with respect to any of the foregoing, because no proof can exist for a claim so manifestly at odds with both common sense, logic, and the truth. This latest conspiracy theory is just as knowingly false as his prior false allegations, and Sagi and Mr. Dellaportas should be sanctioned for making them.

     Our firm's engagement letter itself states that the pro bono arrangement "covers only the trial" and "any further work on the case will be subject to further discussion and agreement between" the firm and Orly. The retainer letter also addresses that the firm agreed to do the trial itself pro bono only after discussions with Orly revealed, among other things, her limited financial resources. Orly has never claimed, in 2015 or otherwise, that our firm impermissibly billed her. No evidence exists that, contrary to the plain language of our engagement letter, Orly and the firm somehow really meant that any and all contingencies for matters outside the trial itself, such as the lengthy court-ordered mid-trial deposition and post-trial briefing, were to be handled pro bono no matter what. Mr. Dellaportas and Sagi were, and remain, Orly's adversaries. They have no insight into this firm's relationship with its client, and no witness to contradict this firm and its client. Yet again, these undeniable reality-based facts negate Mr. Dellaportas' conspiratorial tall tale. There is no conceivable legal theory that would allow Orly's adversaries (Sagi and Mr. Dellaportas) to insert themselves into Orly's attorney-client relationship and demand that billable work our firm did and that was paid for years ago be retroactively converted to pro bono work now.

     In any event, in 2015 and 2016, Orly paid the invoices for the billable work – including for the mid-trial, multi-day deposition, post-trial briefing, and other ancillary legal work – as they came due. As the financial records show, Orly paid the bulk of these invoices with her own funds. It is inconceivable that Orly paid these bills as part of a conspiracy to defraud her brother and mother years later. What was the plan? To make herself judgment proof by agreeing to pay and actually paying legal bills she otherwise did not have to pay? In order to do what exactly? She wanted to deprive her mother and brother of money that was not owed to either of them at the time by paying her lawyers for their services? And what did the firm get out of this conspiracy? It got paid for unanticipated non-trial work in a partial pro bono arrangement? In reality, only that last point is what the engagement letter says (precisely), and how the arrangement was intended to be and was in fact implemented by the parties to that arrangement. The idea that a law firm is involved in the massive conspiracy that Sagi and Mr. Dellaportas claim exists simply because it received payment for work it performed pursuant to the terms of its engagement letter is nonsensical on its face.

     Nor can Mr. Dellaportas escape the constraints of reality and logic by claiming that mid-trial depositions and post-trial briefing are "usually" considered part of a trial, or that he knows what this firm's "usual" practices are with respect to trying cases. This firm has no "usual"

practice. Rather, its approach and decisions are tailored to the case at hand, and depend on both the needs of the case itself and the particular arrangement with the client for the case. Nothing in our engagement letters with Orly defined the scope of what constitutes trial work, but both parties understood and interpreted the agreement in the same manner. In any event, the 2015 fraud trial against Sagi was anything but usual. The trial, which was expected to take approximately three days, ended up taking 28 days spread out over four months, in large part due to Sagi's evasive and noncredible testimony. The mid-trial court-ordered deposition of "Sagi's trial witness" David Parnes – overseen by a special master (a retired judge) and which was ordered because Mr. Dellaportas withheld evidence and then lied to the Court about it – was also not "usual." In fact, "Sagi's trial witness" Mr. Parnes fled the country before he was due to testify in court, so we had to prepare and play videotaped excerpts of his deposition at the trial. None of the forgoing was expected.

The rest of the contentions in Mr. Dellaportas' letter – such as that I disregarded any directive from the Court, that I produced documents around the Passover holiday as some sort of deliberate ploy to prejudice Mr. Dellaportas or his client, and the extent of our firm's relationship with Orly when we began our representation in January 2015 barely having even met her (let alone any other Genger family members) – are falsehoods that do not merit any response.

It is important to recognize that Sagi and Mr. Dellaportas have a long history of making baseless claims concerning the nature of this firm's representation of Orly. At the very start of the representation, Mr. Dellaportas claimed that none of our work was in fact pro bono, because he accused Mr. Herschmann of having "business dealings" with Arie Genger and that is how our firm was being paid for the work we performed. Feb. 20, 2015 Trial Tr. at 633:17-18 (Exhibit G, hereto) (Dellaportas: we have reason to believe [Eric Herschmann] is in business dealings with Ari[e] Genger and that's his compensation."). In reality, he had no reason to believe this, and it was never true. Mr. Herschmann barely knew Arie Genger at the time Mr. Dellaportas made his allegation. Not surprisingly, Mr. Dellaportas dropped this one. At some point thereafter, he shifted to accusing this firm of performing all or the large majority of its work entirely pro bono. *See, e.g.*, ECF No. 262 ("Kasowitz's legal services were 'pro bono'"); ECF No. 239 ¶ 34 ("the lion's share" of this firm's work for Orly was pro bono); Adv. Pro. 19-01444 Doc. No. at ¶ 16 (the firm's "bills are a sham" because it "work[s] for free."). Until recently, those were the bulk of his allegations to this Court, including in his pending motion to dismiss. As set forth in our letter dated March 26, 2021 (ECF No. 389), he now has shifted again, abandoning his prior bogus allegations, and instead accusing the firm of having decided in April 2015 to fraudulently charge Orly for work it had agreed to do for free, so that Orly might one day be unable to satisfy a then-nonexistent debt to Dalia, and this firm could have the luxury of becoming a creditor in this case.

He has made other baseless accusations as well, including, for example, that Eric Herschmann, on behalf of this firm, had inappropriate ex parte communications with the former chapter 7 trustee, Ron Satija to coerce him into entering a settlement, that Mr. Herschmann had joint bank accounts with Orly, and that he facilitated the concealment of an Israeli bank account in Orly's name from this Court. Every single one of these claims has been proven false.

3

      We therefore reiterate our request for the Court to appropriately sanction Sagi and his counsel as a result of their refusal to withdraw their knowingly false claims about this firm, or permit us to obtain a hearing date on our Rule 9011 motion so that it can be formally noticed and heard.

      Respectfully submitted,

      /s/ Andrew R. Kurland

      Andrew R. Kurland