**EXHIBIT A**

## SETTLEMENT AGREEMENT

Chapter 7 debtor Orly Genger ("Orly"), Eric Herschmann ("Herschmann"), Arie Genger ("Arie"), Kasowitz Benson Torres LLP ("KBT"), individually and in its capacity as escrow agent, David Broser (individually and in his capacity as trustee of the Genger Litigation Trust) and Arnold Broser and related entities ADBG LLC and Tedco, Inc. (collectively, the "Broser Parties"), Lance Harris, solely in his capacity as trustee of the Genger Litigation Trust ("Harris"), the Genger Litigation Trust, Michael P. Bowen ("Bowen"), Claims Pursuit, Inc. (the "Estate Claims Assignee" and, together with Orly, Herschmann, Arie, KBT, the Broser Parties, Harris and Bowen, the "Settling Parties"), and Deborah J. Piazza, successor Chapter 7 Trustee (the "Trustee"), hereby enter into this settlement agreement (the "Agreement") dated as of May 26, 2021.  The Settling Parties and the Trustee are collectively referred to herein as the "Parties." The "Effective Date" as used herein shall mean the date on which the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued a final, non-appealable order, in form and substance acceptable to the Settling Parties, granting the 9019 Motion (as defined herein) which has not been reversed, stayed, modified or amended, and as to which order (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired, or if appealed, the date on which such order has been upheld on appeal and is no longer appealable to any other court (such order, the "Final 9019 Order").

## RECITALS

WHEREAS, on July 12, 2019, Orly filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the Bankruptcy Court for the Western District of Texas (the "Petition Date") (such Chapter 7 case, the "Bankruptcy Case").

WHEREAS, on December 10, 2019, the Bankruptcy Case was transferred to the Bankruptcy Court for the Southern District of New York.

WHEREAS, on December 11, 2019, the Trustee was appointed as the successor Chapter 7 Trustee in this proceeding to administer the assets of and claims of and against Orly's bankruptcy estate (the "Bankruptcy Estate");

WHEREAS, by virtue of a gift by Herschmann in 2016, Orly is the owner of a one-half undivided interest in a condominium located at 210 Lavaca Street, Unit 1903, Austin, TX 78701, exclusive of any parking or storage units (the "Condo Interest");

WHEREAS, KBT asserts that it has provided legal services to Orly since 2015, and that as of the Petition Date, Orly owed KBT $1,572,627 for fees, costs, and disbursements related to legal services rendered to Orly and filed a proof of claim in this Bankruptcy Case seeking payment of that amount as a general unsecured claim (Claim No. 13) (the "KBT Claim");

WHEREAS, Herschmann loaned $2,000,000 to Orly in 2016 and Orly promised to pay back this loan, with interest, pursuant to the terms of a Secured Promissory Note, dated December 30, 2016 (the "Herschmann Note"), which loan is secured by the filing of a UCC-1 financing statement on or about May 10, 2017;

WHEREAS, Arie asserts that he loaned $5,451,389.27 to Orly between 2007 and the Petition Date, and Orly promised to pay back this amount, with interest, pursuant to the terms of (i) an Amended and Consolidated Secured Promissory Note, dated December 31, 2016, (ii) a Secured Promissory Note, dated March 27, 2018, and (iii) a Secured Promissory Note, dated April 23, 2018, which amount is set forth in the proof of claim that Arie filed in the Bankruptcy Estate (the "Arie Genger Claim"), which loan is secured by the filing of a UCC-1 financing statement on or about August 3, 2018;

2

WHEREAS, pursuant to the Genger Litigation Trust Agreement dated as of June 28, 2012 (the "Genger Litigation Trust Agreement"), Orly and Arie, as grantors, created a trust known as the "Genger Litigation Trust", and appointed David Broser and Harris to be the trustees of that trust;

WHEREAS, pursuant to the Genger Litigation Trust Agreement, Orly and Arie transferred and assigned to David Broser and Harris, certain property identified on Schedule A thereto, "to hold in trust for the benefit of ADBG, LLC", and David Broser and Harris are then obligated to pay amounts received under the agreement to ADBG LLC to pay all outstanding obligations under a litigation funding agreement under which ADBG LLC loaned over $20 million to Arie to fund a variety of litigation (certain of which involved Orly) relating to Arie's now former company, Trans-Resources Inc. ("TRI"), including but not limited to the litigation that gave rise to the Trump Group Settlement Agreement (defined below);

WHEREAS, Orly, Arie, Arnold Broser and David Broser are signatories to that certain Agreement and Release, dated as of June 16, 2013, by and between the "AG Group" (defined in that agreement as "Arie Genger and Orly Genger (in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust), Arnold Broser, David Broser, (in their individual capacity and on behalf of all entities managed, owned or controlled in any way by Arnold Broser or David Broser and which are in any way related to the subject matter hereof")) and the "Trump Group," as those terms are defined in that agreement (the "Trump Group Settlement Agreement");

WHEREAS, pursuant to the terms of the Trump Group Settlement Agreement, which provided total consideration of $50 million, approximately $17.3 million of which has been paid to date by the "Trump Group" to the "AG Group", certain proceeds of which have been received

by certain of the Broser Parties, $15 million (subject to certain setoffs, as described in the Trump Group Settlement Agreement) in notes payable to Bowen, as escrow agent for the AG Group, has yet to be paid by the "Trump Group" to the "AG Group" (such yet to be paid amount, the "Escrowed Trump Group Settlement Proceeds" and together with the $17.3 million that has already been paid to date, the "Disputed Trump Group Settlement Proceeds"), while $17.7 million – the amount of Sagi Genger's ("Sagi") sale of the Orly Trust's and Arie's TRI shares to the Trump Group at discounted values of $10.3 million and $7.4 million, respectively, without Orly or Arie's consent – was ultimately paid to a company controlled by Sagi, TPR Investment Associates, Inc., following litigation and is the subject of claims against Sagi;

WHEREAS, Sagi, Dalia Genger ("Dalia"), and/or various entities created by, controlled by and/or affiliated with them have asserted a variety of claims and lawsuits against certain of the Settling Parties, as well as against the Trump Group, relating to the Disputed Trump Group Settlement Proceeds, including but not limited to the Derivative or Duplicative Actions (defined below), and have contended that the Disputed Trump Group Settlement Proceeds should be turned over to them and/or avoided and recovered as fraudulent transfers;

WHEREAS, the Settling Parties deny and dispute all allegations against them relating to the Disputed Trump Group Settlement Proceeds and have alleged that Sagi, Dalia and their related entities have intentionally interfered with the Disputed Trump Group Settlement Proceeds and caused substantial damage to the Settling Parties through their actions and manufactured false allegations against the Settling Parties;

WHEREAS, the Trustee has conducted an 18-month investigation of the claims being settled hereunder, including without limitation, review of numerous court decisions, thousands of pages of documents produced by the relevant parties, multiple meetings and communications

4

with the relevant parties, attendance and participation (through counsel) at all hearings and at all

depositions of the relevant parties in this Bankruptcy Case and related adversary proceedings,

including but not limited to the Dalia Constructive Trust Action (defined below), and a review of

the prior chapter 7 trustee's settlement with certain of the Settling Parties relating to the claims

settled hereunder prior to the transfer of this case (Docket No. 52), and in the Trustee's business

judgment believes that this Agreement represents a proper exercise of her business judgment and

that entry into this Agreement is in the best interests of the Bankruptcy Estate, and is fair and

reasonable.

NOW, THEREFORE, the Parties agree as follows:

1.      No later than May 28, 2021, the Trustee shall file a motion (the "Motion") and

proposed order, each in form and substance acceptable to the Settling Parties, pursuant to

Bankruptcy Rule 9019, to incorporate the terms of this Agreement and request the Bankruptcy

Court's approval of this Agreement.  Simultaneously with the filing of the Motion, the Trustee

will withdraw, without prejudice, the *Chapter 7 Trustee's Motion for Order Pursuant to Sections*

*105, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 9006 and*

*9019: Approving (A) Settlement Agreement, (B) Sale of The Debtor's Estate's Causes of Action*

*Against Certain Third Parties, and (C) Financing To Support the Continued Administration of*

*the Case and (D) Granting Related Relief* (Docket No. 248).

2.      The Settling Parties agree to cause to be paid to the Trustee an aggregate amount

totaling (i) upon execution and no later than June 1, 2021, $300,000 (the "Non-Refundable

Settlement Payment"), which amount shall be non-refundable and shall immediately become

property of the Bankruptcy Estate regardless of whether the Effective Date occurs, and (ii)

$2,200,000, subject to the occurrence and within twenty-one days of the Effective Date (the

"Effective Date Settlement Payment", and together with the Non-Refundable Settlement

Payment, the "Settlement Payments").  The Settlement Payments shall be made for the benefit of

the Bankruptcy Estate in full satisfaction of any and all claims that the Bankruptcy Estate, or

Orly in any capacity (including but not limited to in her capacity as beneficiary of the Orly

Genger 1993 Trust, even though none of the Settling Parties believe that the Orly Genger 1993

Trust, or Orly as a beneficiary of it, has any interest in the Disputed Trump Group Settlement

Proceeds), may have relating to, in connection with or arising from Orly being a signatory to the

Trump Group Settlement Agreement, or otherwise, including any and all rights to proceeds

which already have been paid and any and all rights to proceeds that have yet to be paid pursuant

to the terms of the Trump Group Settlement Agreement (all such claims being collectively

referred to as the "Trump Group Settlement Claims").

3.      Subject to approval by the Bankruptcy Court, in exchange for the consideration

set forth below, the Trustee hereby sells and assigns to the Estate Claims Assignee all claims,

whether past, present or future, known or unknown, and asserted or unasserted, that the

Bankruptcy Estate may have against Dalia, present, former or successor trustees of the Orly

Genger 1993 Trust, and affiliated or related entities other than Sagi (collectively, the "Estate

Claims").  The Estate Claims include, among others, but are not limited to, those currently

pending in the (i) the action captioned *In the matter of the Application of Orly Genger, as a*

*person interested, for the removal of Dalia Genger as Trustee of the Orly Genger 1993 Trust*,

Bankr. S.D.N.Y., Adv. Pro. No. 21-ap-01187 (Garrity, J.), and (ii) the claim against Dalia that

Orly has asserted in the action captioned *Orly Genger, etc. v. Dalia Genger, et al.*, on appeal to

the New York State Appellate Division at Case No. 2020-01940.  The sale and assignment of the

Estate Claims to the Estate Claims Assignee shall be free and clear of any and all liens, claims,

encumbrances, and other interests of any kind or nature whatsoever, including, without

limitation, rights or claims based on successor or transferee liability, to the maximum extent

permissible by applicable law.  Upon the Bankruptcy Court's order approving the sale and

assignment of the Estate Claims, the Estate Claims Assignee shall (i) automatically be vested

with standing to pursue, settle and compromise any and all Estate Claims without further order of

the Bankruptcy Court, and (ii) shall be entitled to the fullest protections of section 363 of the

Bankruptcy Code, including but not limited to findings that it is a good faith purchaser pursuant

to 11 U.S.C. § 363(m).

   4. As consideration for the Estate Claims, the Estate Claims Assignee agrees that it

shall pay the Trustee (i) $50,000 (the "Initial Estate Claims Consideration"), which amount has

previously been provided to the Trustee in escrow and which amount will continue to be held in

an escrow account by the Trustee pending consideration of the Motion, and which may be used

by the Trustee immediately upon entry by the Bankruptcy Court of an order approving the sale

and assignment of the Estate Claims to the Estate Claims Assignee, and (ii) after deduction of its

professionals' fees of the Estate Claims Assignee and out of pocket costs from any recoveries on

Estate Claims, 75% of the first $1.25 million of any remaining recoveries on Estate Claims, 60%

of the portion of any remaining recoveries on Estate Claims totaling between $1,250,000.01 and

$2.25 million, 50% of the portion of any remaining recoveries on Estate Claims totaling between

$2,250,000.01 and $5 million, and 25% of the portion of any remaining recoveries on Estate

Claims that exceed $5 million, up to a maximum aggregate recovery to the Trustee not to exceed

$11 million. Any such recoveries shall be paid to the Trustee within 10 business days of receipt

of such funds by the Estate Claims Assignee.  The Estate Claims Assignee shall not assign its

rights under this Agreement to any other party without prior written notice to the Trustee. The

Estate Claims Assignee shall hire its own counsel to pursue the Estate Claims and consult with

the Trustee regarding any settlements of the Estate Claims and provide periodic updates to the

Trustee as to the status of any pending litigation.  The Settling Parties agree that the Initial Estate

Claims Consideration shall, upon approval of this Agreement, become property of the

Bankruptcy Estate, and further agree that they will not be entitled to any distribution from the

Initial Estate Claims Consideration.

5.      Effective upon the Effective Date, and without waiver of the right to receive the

Settlement Payments pursuant to the terms hereof, the Trustee, on her behalf and on behalf of

Orly and the Bankruptcy Estate, and their respective successors (including any successor

bankruptcy trustee) and assigns, unconditionally and irrevocably releases, discharges, and holds

harmless Orly, Arie, each and all of the Broser Parties, Harris, Herschmann, Bowen, KBT, the

Estate Claims Assignee and the Genger Litigation Trust and all of their respective members,

family members, managers, agents, legal representatives, attorneys, predecessors, successors,

officers, directors, shareholders, insurers, employees, employers, parent entities, subsidiary

entities, affiliated entities and related entities (collectively, the "Settling Party Releasees") from

all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts,

obligations, liabilities, accounts, remedies, offsets, rights, actions, proofs of claims, and causes of

action, including but not limited to any of the foregoing arising from or relating to the Trump

Group Settlement Agreement, the Disputed Trump Group Settlement Proceeds and any Trump

Group Settlement Claims, in each case whether known or unknown, absolute or contingent,

foreseen or unforeseen, asserted or unasserted, legal or equitable, sounding in contract, tort, or

strict liability, choate or inchoate, arising in indemnity or subrogation and whether suspected or

actually known as a claim, arising at law or in equity, statute, rule or regulation, presently

possessed or possessed in the future, direct or derivative, now or in the future recognized by decisional law, whether liability be direct or indirect, liquidated or unliquidated, matured or unmatured, whether presently accrued or to accrue hereafter, and whether for compensatory, punitive, exemplary, or any other damages of any kind or character, including, without limitation, claims relating to the Condo Interest and any associated objection to Orly's asserted homestead exemption, claims pursuant to chapter 5 of the Bankruptcy Code, fraudulent conveyance claims under applicable non-bankruptcy law, and claims for turnover, unjust enrichment, money had and received or any similar or related legal theory, any objection to discharge or dischargeability relating to the Bankruptcy Case, and any claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, remedies, offsets, rights, actions, proofs of claims, and causes of action that are derivative or duplicative of any of the foregoing, or which could have been asserted by the Trustee.  This release shall be liberally construed to give the Settling Party Releasees the broadest possible protection.

6.      For the avoidance of doubt, nothing in this Settlement Agreement shall release or enjoin any claims by any members of the AG Group against any member of the Trump Group to enforce the terms of the Trump Group Settlement Agreement.  In addition, nothing in this Settlement Agreement shall release or enjoin any claims by any of the Parties or their successors or assignees, including but not limited to Claims Pursuit, Inc., against non-Parties Sagi Genger, Elana Genger, Dalia Genger, Michael Oldner, Robin Rodriguez, the Orly Genger 1993 Trust, the Sagi Genger 1993 Trust, D&K LP, D&K GP LLC, TPR Investment Associates, Inc., Manhattan Safety Maine, Inc., Recovery Effort, Inc., David Parnes, any entity or trust directly or indirectly controlled by any of the foregoing, any trust for which any of the foregoing is a beneficiary, and

any of the foregoing persons or entities' respective past, present or future attorneys, representatives, affiliates, subsidiaries, shareholders, members, managers, agents, trustees, beneficiaries and heirs, in each case except to the extent any such persons or entities are Parties hereto.

7.      Effective upon the timely receipt of the Settlement Payments, the Condo Interest shall be deemed transferred to Herschmann, free and clear of any liens, claims, interests or encumbrances, and the Trustee, on her behalf and on behalf of the Bankruptcy Estate and successors, and assigns, (i) unconditionally and irrevocably releases, discharges, and holds harmless Orly and Herschmann, from all claims to the Condo Interest, (ii) agrees to withdraw and dismiss with prejudice, any and all other objections filed by the predecessor trustee to the exemptions scheduled and asserted by Orly, and (iii) agrees to use best efforts to obtain a Court order effectuating the removal of any actual or purported abstract of judgment or lien on the Condo Interest in favor of Sagi Genger or any affiliated or related person or entity.  Solely in connection with this transaction, and subject to the occurrence of the Effective Date, Orly agrees, and to the extent necessary the Trustee agrees on behalf of the Bankruptcy Estate, to waive any and all homestead protections and exemptions that Orly may be entitled to, relating to the Condo Interest, including the Texas homestead exemption to the maximum amount allowed under the law.  Orly further agrees, and the Trustee agrees to permit her to execute, all documentation necessary to effect the transfer of the Condo Interest to Herschmann.

8.      Subject to Paragraph 6 above, the Final 9019 Order shall include an order by the Bankruptcy Court pursuant to, *inter alia*, sections 105(a) and 362(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 7065, permanently enjoining any creditor of the Bankruptcy Estate, anyone acting on their behalf or in concert or participation with them, or any

person whose claim in any way arises from or relates to the Disputed Trump Group Settlement

Proceeds, the Condo Interest or the other claims settled by this Agreement, from asserting any

claim against the Bankruptcy Estate or any of the Settling Party Releasees or any member of the

Trump Group that is duplicative or derivative of any claim brought by the Trustee or which

could have been brought by the Trustee against the Settling Party Releasees or any member of

the Trump Group (such injunction, the "Permanent Injunction").  The Permanent Injunction shall

enjoin the prosecution, and the Trustee agrees, subject to paragraph 20 of this Agreement and to

the extent applicable, to join in requests to dismiss or otherwise support the dismissal of the

actions (or motion in the case of the Sagi Turnover Motion) captioned:

      i.     *Dalia Genger, trustee of the Orly Genger 1993 Trust v. Orly Genger, Arie Genger, Glencova Investment Company, TR Investors LLC, New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, Inc., Arnold Broser, David Broser, John Does 1-20 and Jane Does 1-20*, originally in Surrogate's Court, now Bankr. S.D.N.Y., Adv. Pro. No. 20-ap-01188 (Garrity, J.) (the "Orly Trust Avoidance Action");

     ii.     the appeal filed by *Dalia Genger in Arie Genger et al. v. Sagi Genger et al.*, 1st Dept. Case No. 2019-4438 (the "Dalia Appeal");

    iii.     the turnover motion filed by Sagi Genger in *Sagi Genger v. Orly Genger*, No. 17-cv-8181 (Broderick, J.) (S.D.N.Y. June 11, 2019) (Docket Nos. 212-214) (the "Sagi Turnover Motion");

    iv.     *Sagi Genger v. David Broser, individually and as trustee of the Genger Litigation Trust, Arnold Broser, ADBG LLC, Tedco, Inc. Arie Genger, and John Does 1-10*, S.D.N.Y. Case No. 19-cv-6100 (Broderick, J.) (the "Sagi Avoidance Action");

     v.     *Manhattan Safety Maine, Inc. et al. v. Michael Bowen, Arie Genger, Arnold Broser, David Broser, Genger Litigation Trust, ABDG LLC, and TEDCO, Inc.*, S.D.N.Y. Case No. 19-cv-5642 (Vyskocil, J.) (the "Manhattan Safety Avoidance Action");

    vi.     *Dalia Genger and D&K GP LLC v. Orly Genger, Michael Bowen, Arie Genger, Arnold Broser, David Broser, Eric Herschmann, the Genger Litigation Trust, ADBG LLC, Tedco Inc., and Deborah Piazza as chapter 7 trustee*, Bankr. S.D.N.Y., Adv. Pro. No. 20-ap-1010 (Garrity, J.) (the "Dalia Constructive Trust Action");

    vii.     *Sagi Genger and TPR Investment Associates, Inc. v. Orly Genger*, Bankr. S.D.N.Y., Adv. Pro. No. 20-ap-1444 (Garrity, J.) (the "Sagi Discharge Objection");

viii.   *Dalia Genger v. Orly Genger*, Bankr. S.D.N.Y., Adv. Pro. No. 20-ap-1445 (Garrity, J.) (the "<u>Dalia Discharge Objection</u>");

ix.   *Michael Oldner, as trustee of the Orly Genger 1993 Trust v. Orly Genger*, Bankr. S.D.N.Y., Adv. Pro. No. 20-ap-1447 (Garrity, J.) (the "<u>Orly Trust Discharge Objection</u>");

x.   *Sagi Genger v. Eric Herschmann*, Bankr. S.D.N.Y., Adv. Pro. No. 21-ap-01135 (Garrity, J.) (the "<u>Herschmann Action</u>");

xi.   and any similar actions against any of the Parties hereto that are derivative or duplicative of the claims settled hereunder, or that could have been pursued by the Trustee, including but not limited to any and all claims relating to or arising from the Condo Interest, the Trump Group Settlement Agreement, the Disputed Trump Group Settlement Proceeds and any Trump Group Settlement Claims (the actions identified in this clause (ix), together with the Orly Trust Avoidance Action, the Dalia Appeal, the Sagi Turnover Motion, the Sagi Avoidance Action, the Manhattan Safety Avoidance Action, the Dalia Constructive Trust Action, the Sagi Discharge Objection, the Dalia Discharge Objection, the Orly Trust Discharge Objection and the Herschmann Action, are collectively referred to herein as the "<u>Derivative or Duplicative Actions</u>").

9.      Upon the occurrence of the Effective Date, all amounts due and owing in connection with the Escrowed Trump Group Settlement Proceeds shall be paid to the Genger Litigation Trust, and each of the Parties agrees to promptly transfer any Disputed Trump Group Settlement Proceeds he, she or it receives to the Genger Litigation Trust.  Upon the occurrence of the Effective Date, the Trustee agrees to use best efforts to obtain the release of the Escrowed Trump Group Settlement Proceeds from the Trump Group and the transfer of such amounts to the Genger Litigation Trust.  David Broser and Harris hereby reaffirm their acceptance of their role and service as trustees of the Genger Litigation Trust, as well as all rights and obligations as trustees under the Genger Litigation Trust Agreement.

10.     On the Effective Date, that certain Agreement dated as of March 31, 2017 by and between Arie, Orly, ADBG LLC, Herschmann, and KBT, as escrow agent (the "<u>March 31, 2017 Agreement</u>"), shall be terminated.

11.     Notwithstanding the foregoing, and for purposes of this Agreement and limited solely hereto, and subject to the occurrence of the Effective Date, the Arie Genger Claim will be reclassified from a secured claim in the amount of $5,451,389.27 to a general unsecured claim, which claim shall be reconciled at a later date[1]; provided, further, Arie waives any priority or preference to any distribution on account of the proceeds received by the Bankruptcy Estate as a result of the receipt of the Settlement Payments that Arie would otherwise be entitled as the holder of an allowed general unsecured claim, and Arie agrees that the proceeds from the Settlement Payments received by the Bankruptcy Estate, and only these particular funds, shall be permitted to be distributed *pro rata* to all creditors of the Bankruptcy Estate with allowed claims pursuant to 11 U.S.C. § 502; provided, however, for the avoidance of doubt, the Arie Genger Claim, to the extent allowed, shall be entitled to its pro rata share of any other funds in the Bankruptcy Estate distributed by the Trustee to the holders of allowed general unsecured claims; provided, further, to the extent the Effective Date fails to occur, all of Arie's right, title and interest to assert that Arie Genger Claim is a secured claim, and any right to a distribution, recovery, priority, preference or otherwise on account of the Arie Genger Claim is expressly reserved and preserved for any and all purposes to the extent necessary, and such treatment of the Arie Genger Claim under this Agreement shall not be deemed or construed to be a release or waiver as to its validity as a secured claim.

12.     ADBG LLC and the Genger Litigation Trust agree that subject to and solely upon the Genger Litigation Trust's receipt of the Escrowed Trump Group Settlement Proceeds, each of their respective proofs of claim shall be deemed satisfied.

---

[1] Such allowance may be higher or lower subject to documentation demonstrating the amount of the claim to the satisfaction of the Trustee or by Order of the Bankruptcy Court.

13.    Herschmann agrees to subordinate his proof of claim, solely to the extent of any proceeds received by the Bankruptcy Estate as a result of the Settlement Payments and for no other purpose, to any other allowed proofs of claim that are not equitably subordinated in the Bankruptcy Case, and Herschmann agrees that these particular funds received by the Bankruptcy Estate, and only these particular funds, shall be permitted to be distributed *pro rata* to all creditors of the Bankruptcy Estate with allowed claims pursuant to 11 U.S.C. § 502 that have not been equitably subordinated.  To the extent Herschmann collects any amount from Arie with respect to the Herschmann Note, Herschmann's claim in the Bankruptcy Case shall be reduced by such amount.

14.    The KBT Claim shall be allowed as a general unsecured claim in a reduced amount totaling $1,450,000.

15.    The Trustee agrees, subject to paragraph 20 of this Agreement, to seek to void each of the purported "releases" dated August 15, 2019 that were provided by Michael Oldner, purportedly on behalf of the Orly Genger 1993 Trust and its beneficiaries (i.e. Orly) to Dalia, Sagi, Elana Genger, Dalia Genger, TPR, D&K GP, David Parnes, and the other "releases" identified in such "releases", which purported "releases" were provided by Mr. Oldner during the pendency of this Bankruptcy Case, without the permission of the then-Texas Chapter 7 Trustee, the Trustee, the Texas Bankruptcy Court or the New York Bankruptcy Court, and without prior notice to any such trustees or courts or any of the other parties to this case who were not party to or beneficiaries of such purported releases, as well as any similar purported postpetition "releases" that purport to be on behalf of Orly without Bankruptcy Court authorization.

16.    The Trustee agrees that she will not challenge the pre-marital agreement by and between Herschmann and Orly, which was determined to be valid and enforceable by the District

14

Court for the 419th Judicial District, Travis County, Texas, on October 24, 2016, in Case No. D-1-GN-16-004247.

17.    WITH RESPECT TO ANY AND ALL CLAIMS BEING RELEASED HEREUNDER, ORLY, THE TRUSTEE, ON HER BEHALF AND ON BEHALF OF ORLY, THE BANKRUPTCY ESTATE AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AGREES THAT SUCH RELEASING PARTIES EXPRESSLY WAIVE THE PROVISIONS, RIGHTS AND BENEFITS OF CALIFORNIA CIVIL CODE § 1542 AND ANY PROVISIONS, RIGHTS AND BENEFITS CONFERRED BY ANY LAW OF ANY STATE OR TERRITORY OF THE UNITED STATES OR PRINCIPLE OF COMMON LAW WHICH IS SIMILAR, COMPARABLE OR EQUIVALENT TO CALIFORNIA CIVIL CODE § 1542, WHICH PROVIDES:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

THE TRUSTEE AND ORLY ACKNOWLEDGE THAT THEY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO OR DIFFERENT FROM THOSE THAT THEY NOW KNOW OR BELIEVE TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THE CLAIMS RELEASED HEREUNDER, BUT THE RELEASING PARTIES HEREUNDER SHALL EXPRESSLY HAVE FULLY, FINALLY AND FOREVER SETTLED, RELEASED AND DISCHARGED ANY AND ALL CLAIMS AGAINST THE SETTLING PARTY RELEASEES, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, CONTINGENT OR NON-CONTINGENT, WHETHER OR NOT CONCEALED OR HIDDEN, WHICH NOW EXIST, OR HERETOFORE HAVE EXISTED UPON ANY THEORY OF LAW

OR EQUITY NOW EXISTING OR COMING INTO EXISTENCE IN THE FUTURE,
INCLUDING, BUT NOT LIMITED TO, CONDUCT WHICH IS NEGLIGENT, RECKLESS,
INTENTIONAL, WITH OR WITHOUT MALICE, OR A BREACH OF ANY DUTY, LAW
OR RULE, WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE
OF SUCH DIFFERENT OR ADDITIONAL FACTS.

18.    Each party to this Agreement represents and warrants that he, she, or it is fully
authorized to bind the party for which he, she, or it acts, that he, she, or it is fully competent to
execute this Agreement, and that he, she, or it does so of his, her, or its own free will and accord.

19.    The Trustee agrees that she shall not sell, assign, transfer or encumber or enter
into any agreement to sell, assign, transfer or encumber the claims being settled hereunder,
including but not limited to the Derivative or Duplicative Claims, pending the occurrence of the
Effective Date.

20.    The Settling Parties agree to provide reasonable cooperation and support to the
Trustee in connection with the (i) approval and consummation of this Agreement, and (ii)
prosecution of claims, causes of action and claims objections against Sagi Genger; provided,
however, that the Broser Parties' and the Genger Litigation Trust's obligations pursuant to this
paragraph shall terminate upon such date on which ADBG LLC's and the Genger Litigation
Trust's claims are deemed satisfied pursuant to the terms of this Agreement.

21.    The running of any statutes of limitations applicable to the claims being settled
pursuant to this Agreement is hereby tolled and suspended through and including the earlier of:
(a) (i) thirty (30) days after the Payment Due Date; and (ii) the receipt by the Trustee of the
Settlement Payments; or, (b) in the event that this Agreement is not approved by the Bankruptcy
Court or a decision approving the Agreement is overturned on appeal, thirty (30) days after the

16

date of such decision (such period, the "Tolling Period").  Nothing in this Agreement shall (i) affect any applicable statute of limitations defense or any other time-related defense that may be available by reason of the expiration of the duration of the applicable statutes of limitations before the commencement of the Tolling Period, or (ii) be construed to revive any proceeding or claims that may currently be barred by any applicable statutes of limitations or any other time-related defense that may be available by reason of the expiration of the duration of any applicable statutes of limitations before the commencement of the Tolling Period.  This Paragraph shall be effective to toll the statute of limitations whether or not this Agreement is approved by the Bankruptcy Court and the tolling agreement shall stand alone and survive any decision of the Bankruptcy Court to deny approval of this Agreement's other provisions.

22.    The Parties represent that they each have received good and valuable consideration in exchange for the transactions set forth in this Agreement.

23.    The Parties acknowledge that this Agreement reflects a compromise of disputed claims.  By entering into this Agreement, no Party admits the sufficiency of any claims, allegations, assertions, contentions, or positions of any other Party or the sufficiency of the defenses to any such claims, allegations, assertions, contentions or positions.

24.    This Agreement, once fully executed, constitutes the entire agreement among the Parties pertaining to the subject matter hereof and fully supersedes any and all prior discussions, undertakings, representations, warranties and agreements among the Parties pertaining to the subject matter hereof.  This Agreement may only be modified in writing and by agreement of all Parties hereto.

25.    Each Party shall bear its own attorneys' fees and costs incurred with respect to all matters arising out of or relating to this Agreement.

26.     In the event that the Effective Date fails to occur, this Agreement shall be null and void; provided, however, that the Non-Refundable Settlement Payment shall remain due and owing, shall not be refundable once paid, and shall be offset against any claim by the Trustee against the Settling Parties; and, provided, further, that the tolling provisions in Paragraph 21 above shall survive and remain enforceable and binding on the Parties.

27.     This Agreement may be executed by electronic signatures and in counterparts.

28.     This Agreement shall be binding upon and shall inure to the benefit of each of the Parties hereto and their respective successors and assigns.

29.     The Parties acknowledge that they have had the opportunity to read this Agreement and have consulted with their own separate legal counsel of their choosing regarding the meaning and effect of it and their rights and liabilities under this Agreement.  Each Party further represents that it is entering into this Agreement freely and voluntarily, relying upon the advice of its own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

30.     This Agreement was executed after arm's length negotiations among the Parties and their respective counsel and reflects the conclusion of each of the Parties that this Agreement is in his, her or its best interest.

31.     The terms of this Agreement are mutually dependent, interrelated and non-severable.  Unless otherwise agreed to in writing by the Settling Parties, this Agreement shall terminate and be deemed null and void *ab initio* if any term in this Agreement is held by a court of competent jurisdiction to be invalid, void, or otherwise unenforceable.

32.     The provisions of Bankruptcy Rule 6004(h), to the extent applicable to this Agreement shall not be stayed after, and shall be effective immediately upon, entry of an Order

18

approving this Agreement, and its provisions shall be self-executing.  The Trustee and the Estate

Claims Assignee are authorized to close the sale and assignment of the Estate Claims

immediately upon entry of such Order.

[Signature Pages Follow]

**AGREED AS OF THE DATE FIRST STATED ABOVE:**

**DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE**

_____

**ARNOLD BROSER, ADBG LLC AND TEDCO, INC.**

_____
By: Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

**DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**ERIC HERSCHMANN**

_____

**MICHAEL P. BOWEN**

_____

**KASOWITZ BENSON TORRES LLP**

By: _____
      Andrew Kurland, a member of the Firm

20

AGREED AS OF THE DATE FIRST STATED ABOVE:

DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE

_____

ARNOLD BROSER, ADBG LLC AND TEDCO, INC.

_____
By:  Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER
LITIGATION TRUST

_____

LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST

_____

ERIC HERSCHMANN

_____

MICHAEL P. BOWEN

_____

KASOWITZ BENSON TORRES LLP

By: _____
     Andrew Kurland, a member of the Firm

20

**AGREED AS OF THE DATE FIRST STATED ABOVE:**

**DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE**

_____

**ARNOLD BROSER, ADBG LLC AND TEDCO, INC.**

_____
By:  Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

**DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**ERIC HERSCHMANN**

_____

**MICHAEL P. BOWEN**

_____

**KASOWITZ BENSON TORRES LLP**

By: _____
     Andrew Kurland, a member of the Firm

20

**AGREED AS OF THE DATE FIRST STATED ABOVE:**

**DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE**

_____

**ARNOLD BROSER, ADBG LLC AND TEDCO, INC.**

_____

By:  Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

**DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER
LITIGATION TRUST**

_____

**LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**ERIC HERSCHMANN**

_____

**MICHAEL P. BOWEN**

_____

**KASOWITZ BENSON TORRES LLP**

By: _____
     Andrew Kurland, a member of the Firm

20

AGREED AS OF THE DATE FIRST STATED ABOVE:

DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE

_____

ARNOLD BROSER, ADBG LLC AND TEDCO, INC.

_____
By:  Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER
LITIGATION TRUST

_____

LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST

_____

ERIC HERSCHMANN

_____

MICHAEL P. BOWEN

_____

KASOWITZ BENSON TORRES LLP

By: _____
      Andrew Kurland, a member of the Firm

20

**AGREED AS OF THE DATE FIRST STATED ABOVE:**

**DEBORAH J. PIAZZA, CHAPTER 7 TRUSTEE**

_____

**ARNOLD BROSER, ADBG LLC AND TEDCO, INC.**

_____
By:  Christopher Gartman, counsel of record
Hughes Hubbard & Reed LLP

**DAVID BROSER, INDIVIDUALLY AND AS TRUSTEE OF THE GENGER
LITIGATION TRUST**

_____

**LANCE HARRIS, AS TRUSTEE OF THE GENGER LITIGATION TRUST**

_____

**ERIC HERSCHMANN**

_____

**MICHAEL P. BOWEN**

_____

**KASOWITZ BENSON TORRES LLP**

By: _____
      Andrew Kurland, a member of the Firm

20

**CLAIMS PURSUIT, INC.**

By:  William T. McManus
Its Authorized Representative

**ARIE GENGER**

By:  Frank A. Oswald, counsel of record
Togut, Segal & Segal LLP

**ORLY GENGER**

21

**CLAIMS PURSUIT, INC.**

By:  William T. McManus
Its Authorized Representative


**ARIE GENGER**

By:  Frank A. Oswald, counsel of record
Togut, Segal & Segal LLP


**ORLY GENGER**

21

**CLAIMS PURSUIT, INC.**

By:  William T. McManus
Its Authorized Representative

**ARIE GENGER**

By:  Frank A. Oswald, counsel of record
Togut, Segal & Segal LLP

**ORLY GENGER**