# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


IN RE:                          )       CASE NO: 19-10926-TMD
                                )       CHAPTER 7
                                )
ORLY GENGER,                    )       Austin, Texas
                                )
                                )       Wednesday, October 23, 2019
            Debtor.             )
_____)       1:58 p.m. to 2:28 p.m.


MOTIONS HEARING

BEFORE THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE


**APPEARANCES**:                    See page 2


**Courtroom Deputy:**           CRD Lopez

**Court Recorder:**             ECRO Wallace

**Transcribed by:**             Exceptional Reporting Services, Inc.
                                P.O. Box 8365
                                Corpus Christi, TX 78468
                                361 949-2988


**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

**CALENDARED MOTIONS:**

**MATTER:**       DOC #106
                  MOTION TO CONTINUE HEARING FOR DEBTOR
                  ORLY GENGER;

                  STATUS HEARING DOC #76
                  EXPEDITED MOTION FOR PROTECTIVE ORDER
                  FOR CREDITOR ARIE GENGER;

                  STATUS HEARING DOC #62
                  MOTION TO QUASH SUBPOENAS FOR DEBTOR
                  ORLY GENGER;

                  STATUS HEARING DOC #88
                  MOTION FOR PROTECTIVE ORDER FOR CREDITOR
                  ERIC HERSCHMANN;

                  STATUS HEARING SHOW CAUSE HEARING:
                  RETENTION OF KASOWITZ BENSON TORRES, LLP;

                  STATUS HEARING DOC #31 MOTION FOR AN ORDER,
                  PURSUANT TO BANKRUPTCY RULE 9018
                  AND SECTION 107(b) OF THE BANKRUPTCY CODE,
                  AUTHORIZING SAGI GENGER TO FILE UNDER SEAL
                  CERTAIN OF THE EXHIBITS AND PORTIONS OF THE
                  MOTION TO DISMISS BANKRUPTCY CASE OR,
                  ALTERNATIVELY, TO TRANSFER VENUE,
                  AND MEMORANDUM OF LAW IN SUPPORT FOR CREDITOR
                  SAGI GENGER;

                  STATUS HEARING DOC #59
                  APPLICATION TO EMPLOY SPECIAL COUNSEL,
                  KASOWITZ BENSON TORRES, LLP FOR TRUSTEE
                  RON SATIJA;

                  STATUS HEARING DOC #81
                  MOTION TO EXTEND TIME TO FILE NOTICES OF REMOVAL
                  OF CIVIL ACTIONS FOR TRUSTEE RON SATIJA;

                  STATUS HEARING DOC #60
                  MOTION TO QUASH SUBPOENA FOR TRUSTEE RON SATIJA

**APPEARANCES FOR:**


Debtor:                          ERIC J. TAUBE, ESQ.
                                 Waller Lansden Dortch & Davis
                                 100 Congress Ave., Suite 1800
                                 Austin, TX 78701


Creditors:                       DEBORAH D. WILLIAMSON, ESQ.
                                 DANIELLE N. RUSHING, ESQ. (via phone)
                                 Dykema Gossett
                                 112 E. Pecan St., Suite 1800
                                 San Antonio, TX 78205

                                 RAYMOND W. BATTAGLIA, ESQ.
                                 66 Granburg Circle
                                 San Antonio, TX 78218

                                 STEVE LEMMON, ESQ.
                                 Streusand Landon Ozburn & Lemmon
                                 1801 S. Mopac Expressway, Suite 320
                                 Austin, TX 78746

                                 JOHN DELLAPORTAS, ESQ.
                                 Emmet Marvin & Martin
                                 120 Broadway, 32nd Floor
                                 New York, NY 10271

Kasowitz Benson Torres:          MICHAEL BOWEN, ESQ. (via phone)
                                 Kasowitz Benson Torres
                                 1633 Broadway
                                 New York, NY 10019


Ron Satija,                      BRIAN T. CUMINGS, ESQ.
Chapter 7 Trustee:               Graves Dougherty Hearon & Moody
                                 401 Congress Ave., Suite 2700
                                 Austin, TX 78701


Interested Parties:              SHELBY A. JORDAN, ESQ.
                                 ANTONIO ORTIZ, ESQ.
                                 Jordan Hyden Womble, et al.
                                 500 N. Shoreline, Suite 900-N
                                 Corpus Christi, TX 78401

4

1        <u>**Austin, Texas; Wednesday, October 23, 2019; 1:58 p.m.**</u>

2                        **(Call to Order)**

3            **THE COURT:** Please be seated.

4        **(Pause)**

5            **THE COURT:** I have a page here entitled parties in

6    alignment. I see that everybody's aligned properly. I'm glad

7    to see that. Mr. Taube, how do you pronounce the debtor's last

8    name?

9            **MR. TAUBE:** Genger, your Honor.

10            **THE COURT:** Okay. Orly Genger, 19-10926, appearances

11   in the courtroom.

12            **MR. TAUBE:** Good afternoon, your Honor. Eric Taube

13   on behalf of the debtor, Orly Genger.

14            **MS. WILLIAMSON:** Your Honor, Deborah Williamson, on

15   behalf of Arie Genger, the father.

16            **MR. BOWEN:** Mike Bowen.

17            **MR. BATTAGLIA:** Your Honor, Ray Battaglia, for Eric

18   Herschmann. Mr. Herschmann is the debtor's spouse.

19            **THE COURT:** And he lives in Austin?

20            **MR. BATTAGLIA:** He lives in Austin. He's a non-

21   filing spouse.

22            **THE COURT:** Practices in New York.

23            **MR. BATTAGLIA:** He's really still a partner with the

24   firm, but I would say generally not practicing in the

25   traditional sense.

1          **THE COURT:**  Locations are really important.

2          **MR. BATTAGLIA:**  Yes, he lives in Austin.  His

3   letterhead would still show, or the firm's website would still

4   show him as a partner in the New York office.

5          **THE COURT:**  Okay.

6          **MR. CUMINGS:**  Good afternoon, your Honor.  Brian

7   Cummings for the Chapter 7 Trustee and the Chapter 7 Trustee is

8   in the courtroom as well.

9          **MR. LEMMON:**  Your Honor, Steve Lemmon, I'm here for

10  Sabrina Streusand today, who's out of town.  We represent Sagi

11  Genger.  And this is Mr. Dellaportas from New York, your Honor.

12         **MR. DELLAPORTAS:**  Good afternoon, your Honor.

13         **THE COURT:**  Good afternoon.

14         **MR. JORDAN:**  Your Honor, I'm Shelby Jordan.  I

15  represent Dalia Genger and I also represent D&K GP, LLC.

16         **MR. ORTIZ:**  Antonio Ortiz, I also represent Dalia

17  Genger and D&K, LLC.

18         **THE COURT:**  Okay.  Appearances on the telephone?

19         **MS. RUSHING:**  Good afternoon, your Honor.  Danielle

20  Rushing, on behalf of Arie Genger.

21      **(Pause)**

22         **THE COURT:**  Okay.

23         **MR. BOWEN:**  I don't know if this is --

24         **THE CLERK:**  The line's unmuted.

25         **MR. BOWEN:**  -- Judge, this is Mike Bowen, I'm with

6

1   the Kasowitz law firm, calling you from New York.

2          **THE COURT:**  Okay.  Thank you.

3      **(Pause)**

4          **THE COURT:**  I thought maybe what I'd do is give you a

5   piece of my mind, and then we'd kind of go from there.  What,

6   where we're headed at the end of today, is we're going to set a

7   date and we're going to have a very short and succinct hearing

8   to determine whether I should transfer venue of this case.

9          We're going to, we might have to have some discovery.

10  It's hard for me to understand what could possibly not be

11  discovered by now, after the better part of two decades of

12  litigation.  But, you tell me.  Do you have copies of her

13  passport?  Probably ought to have that.  Beyond that, I don't

14  know.  I mean, ten years, that, we can get around to dismissal

15  if I keep the case.  We can get around to that.  It's probably

16  a non-starter.

17         Texaco was solvent when it filed.  But, it had a big

18  creditor problem.  Had a judgment that it couldn't, didn't have

19  the capital and didn't have access to capital to bond.  And so,

20  the Court said, hey, that's a big creditor problem, that sounds

21  like something bankruptcy would take care of.  Now, I

22  understand the two party dispute. I mean I could look at the

23  schedules, and I can see that.  But, I also think there's a

24  creditor problem here.

25         And I've also heard allegations of fraudulent

7

1　transfers.  We can do that in Bankruptcy Court.  We can address

2　fraudulent transfers.  So, I mean, I'm just assuming everything

3　that's in the motion to dismiss is true, gosh, this sounds like

4　it ought to be in bankruptcy somewhere.

5　　　　　　The 9019, of course, was very interesting.  It raises

6　the questions in my mind of, if the creditors, clearly the

7　Trustee has the right to compromise the litigation.  Or at

8　least I think that's clear, you can convince me otherwise; I'm

9　open to new arguments.  It looks to me the Trustee would have

10　that right.  But, every creditor has the right to object to

11　exemptions.  So, if we're going to litigate the exemptions

12　anyway, what does the settlement accomplish?  That's part one.

13　　　　　　Part two, I'm really glad, Mr. Satija, that you got

14　advice of Counsel entering the settlement.  That's not going to

15　cut what we need to do at a 9019.  I know I don't I have to

16　have a mini trial.  I'm aware of that law out there.  There

17　will be a mini trial on this one.  I'm going to want to see

18　wire transfers, I'm going to want to see the facts concerning

19　whether or not the discovery rule applies, all those things I

20　would need to see.  So, we're not going to avoid, we're going

21　to have something, we're going to look at this stuff.  There's

22　no doubt about that.  If I keep the case.

23　　　　　　Mr. Taube has heard this lecture before on excessive

24　advocacy.  I don't know how many of you others have.  So, we've

25　got this motion to dismiss.  We've got an objection to debtor's

1    motion to continue.  And we've got DK joinder to exemption to

2    the objection.  Two supposedly signed by, or prepared by

3    Ms. Streusand, one by Mr. Jordan.  I think one person wrote all

4    three.  And I don't think I need a linguistic algorithm to tell

5    me that.  And I know they weren't written by either

6    Ms. Streusand or Mr. Jordan.  Excessive advocacy.  Only a few

7    hours before the filing of this bankruptcy, the debtor

8    described herself, again, her domicile Israel in her brief for

9    *en banc* review to the Second Circuit Court of Appeals.

10        **(Pause)**

11            How much of what you write can I believe?  That's

12    false.  Her statement spoke as of a point in time two years

13    earlier.  So, all three of these briefs, there's more time

14    spent calling Orly a liar than there is on the substance of the

15    motion.  That kind of pleading I find disgusting and unhelpful.

16    That's why I know that neither Ms. Streusand or Mr. Jordan

17    prepared those briefs.  If I keep this case, so.

18            Yeah, here we don't serve subpoenas without

19    consulting the party from whom discovery is sought ever.  We

20    don't serve on holidays.  We don't demand production in two

21    days.  And as I said before, after ten years of litigation,

22    what else is out there that hasn't been discovered?

23        **(Pause)**

24            The debtor will sit for a deposition.  It will be

25    limited to venue.  Venue.  Four hour deposition.  And you all

9

1  decide who gets what of the four hours.  But, it's only going

2  to be four hours.  I want to know when the deposition takes

3  place, so I can be available.  You'll bring me in by conference

4  call.  Everything I say and everything said to me will be on

5  the record.

6      **(Pause)**

7          Now, what discovery do you need?

8      **(Pause)**

9          **MR. LEMMON:**  Your Honor, Steve Lemmon for Arie

10  Genger.  The only, so our view is that assuming that there's no

11  objections to the authenticity of the pleadings, and the Court

12  opinions in New York --

13          **MR. TAUBE:**  Your Honor, I just, I'm sorry, I didn't

14  mean to interrupt.

15          **MR. LEMMON:**  Oh, I said Arie.

16          **MR. TAUBE:**  Yes, just want to make sure I correct it.

17          **MR. LEMMON:** No, thank you.  I apologize, thank you

18  for correct me.  For Sagi Genger, yes.

19          **MR. TAUBE:**  Sagi, thank you.

20          **MR. LEMMON:**  So, assuming that there's no objections

21  to the authenticity of the pleadings and the Court opinions in

22  New York, your Honor, that solves 99 percent of the discovery

23  that we --

24          **THE COURT:**  Now, those Court opinions, I mean, just

25  the two *Forest* opinions, they don't say anything about fraud.

10

1          **MR. LEMMON:** I agree, your Honor.

2          **THE COURT:**  They don't say anything about perfidy.

3          **MR. LEMMON:**  And, your Honor --

4          **THE COURT:**  So, I, breach of contract and indemnity,

5   that's it.

6          **MR. LEMMON:**  I do not believe those issues to be

7   relevant to the change of venue.

8          **THE COURT:**  Okay.

9          **MR. LEMMON:**  And so, I'm just addressing the venue

10  issue.

11         **THE COURT:**  Okay.  Good.

12         **MR. LEMMON:**  And so --

13         **THE COURT:**  Now I think they are relevant to venue.

14         **MR. LEMMON:**  -- and so, your Honor, the only other

15  conceivable thing would be a copy of the debtors extension on

16  their tax return, to see, and only to see the state that they

17  show of, or where they show their residence to be.  And that

18  would have been the one filed 04/15/2019.

19         **MR. TAUBE:**  Happy to do that, your Honor.

20         **MR. LEMMON:**  And so, with that, your Honor, I'm not,

21  I'm not even certain that the parties would even, because she's

22  been questioned on these venue issues in the 341.

23         **THE COURT:**  So, you don't need the deposition.  We

24  don't need it, let's not do it.

25         **MR. LEMMON:**  Your Honor, I don't think we need it.

11

1        **THE COURT:**  Good.

2        **MR. LEMMON:**  And so, my view is that the movants are

3 prepared to go forward with what documents exist on the venue

4 hearing.  And that, from our perspective, of course the debtor

5 can show up and testify regarding venue facts, but we don't

6 have to take any depositions.

7        **THE COURT:**  Okay.  What about the authenticity and

8 admissibility of those documents?

9        **MR. LEMMON:** I'm hopeful, your Honor, that we can

10 achieve a stipulation on those, on the Court documents, I'll

11 call them.  And if we can, then I would view as submitting all

12 of those things, I don't, and of course I think that perhaps

13 the parties can enter into a list of facts that we stipulate,

14 and then facts that are in issue.

15        **THE COURT:**  Well, that would be great.  It sounds

16 ambitious, but.

17        **MR. LEMMON:**  Well, I, I would like for all of this to

18 be addressed in New York by other lawyers, is my goal, your

19 Honor.

20      **(Pause)**

21        **MR. TAUBE:**  I'm speaking only for the debtor.  We

22 have similar documents that our briefs, where Sagi is taking

23 the position that she lives in Austin, that we'll, I'm sure

24 we'll be able to reach stipulations as to authenticity.  I have

25 a couple of other documents such as things like, which I'm

12

1    happy to produce to the other side, her driver's license, her

2    voter's registration, similar types of issues. And I'm happy

3    to provide the extension that was requested, properly redacted

4    obviously, for certain information.

5         **THE COURT:** The, to the extent possible, dealing with

6    redacted documents makes things a lot more challenging. I

7    mean, I understand why somebody's, I don't quite understand how

8    the non-debtor spouse's income is going to remain secret.

9         **MR. TAUBE:** I understand. And I'll --

10        **THE COURT:** I'm just kind of struggling with that.

11   But, putting that aside --

12        **MR. TAUBE:** -- yes, sir.

13        **THE COURT:** -- I mean, the father's finances, okay.

14   But, do we really need to talk about those in a venue hearing?

15        **MR. TAUBE:** I don't think we need to talk about, the

16   only thing I was going to redact, your Honor, was her social

17   security number, which I'm sure somebody has reams of

18   information on already.

19        **THE COURT:** Even I would agree to that.

20        **MR. TAUBE:** I don't know what else would need to be

21   redacted from the extension request, that was the only thing, I

22   was limiting the reaction to the request for extension on the

23   filing of the tax return. I've actually provided the tax

24   returns previously to the Trustee, they have them. I mean, I

25   may actually use the tax returns to show where she lists --

1      **THE COURT:** The Trustee's on that side of the

2  courtroom though, so.

3      **MR. TAUBE:** -- he's right, yes, well, whatever the, I

4  mean, again, your Honor, that's the only thing that we're going

5  to be talking about is venue. Now, if they don't want a

6  deposition, I do intend to have Ms. Genger present to testify.

7      **THE COURT:** And I was thinking, well I don't know,

8  this is getting, okay

9      **MR. TAUBE:** So, I don't need any discovery.

10      **THE COURT:** Do you need witnesses? Do you need

11  people testifying?

12      **MR. JORDAN:** Your Honor, if I might add, on behalf of

13  Dalia Genger --

14      **THE COURT:** You'll have two hours.

15      **MR. JORDAN:** -- okay, but --

16      **THE COURT:** Each.

17      **MR. JORDAN:** -- I don't think we need, I mean, I don't

18  think my clients need depositions. The only thing I think in

19  discovery that I need, and it's, I know it's not up for today,

20  but it is pending, is the access to the confidential documents

21  that everybody else has, or the other parties have. And

22  that's, other than that, of course I've always said I'll sign

23  the confidentiality agreement and live by the terms of the

24  confidentiality agreement, or a new one if they want, that

25  would give me access to the documents. But, that's the only

14

1  thing, and I have to say that I don't know that I necessarily

2  need them for venue, but I don't know if I need them for venue

3  because I don't know what they say.

4       So, that's my only issue on discovery for my client

5  is, access to those documents that were marked confidential by

6  the debtor or debtor's Counsel, or the parties that were

7  involved in that, in the litigation in New York.

8       **THE COURT:** Okay.

9   **(Pause)**

10      **THE COURT:** So, so far we've got one witness.

11  **(Pause)**

12      **MR. BATTAGLIA:** You opened the box a little bit,

13 Judge. Ray Battaglia for Eric Herschmann. And if

14 Mr. Herschmann needs to come and say he hasn't been in the New

15 York office for 18 months, he'll come and say that. But, I'm

16 not sure --

17      **THE COURT:** I didn't follow what you just said.

18      **MR. BATTAGLIA:** -- oh, you said that a location is

19 important earlier.

20      **THE COURT:** Yes, it is

21      **MR. BATTAGLIA:** And I just wanted to point out

22 Mr. Herschmann hasn't been in that office in 18 months. But,

23 I'm not sure that testimony's necessarily relevant. I think

24 he'll be available, whether he's testifying or not remains to

25 be seen.

15

1          As far as discovery on venue, we don't think there's

2   a need for discovery.  As far as admissibility of exhibits, I

3   don't think we're going to have an issue authenticating

4   pleadings.  There were some 40 documents attached to the motion

5   to dismiss, perhaps more, including a lot of pleadings, which

6   have been their pleadings.  I think there could be

7   admissibility issues or relevance issues.  But, as far as

8   authentication, I don't think we're going to trouble the Court

9   with whether this is a true and correct copy.  And to the

10  extent we can work that out, specifically, what's relevant for

11  that hearing on venue, I'm sure we'll do it.

12          **THE COURT:**  And to be fair, the motion that was filed

13  covered a lot more.

14          **MR. BATTAGLIA:**  Covered a lot more.  But, I don't

15  know what they plan to use.  So, hopefully we can pare that

16  down and hopefully that's not an issue.  I fully expect to do

17  that, because that's the way I've always worked with lawyers,

18  with the caliber of the lawyers that were sitting here in the

19  room.

20          So, there are other issues, Judge, and I'm not, we're

21  not waiving them.  For example, Dalia Genger, we don't believe

22  is a creditor of this estate.  But, for purposes of standing on

23  the motion for venue, that can rest for another day.  I just

24  don't want it to be taken as some kind of admission that

25  Ms. Genger or D&K have standing in these cases.

1          THE COURT:  Okay.

2          MR. BATTAGLIA:  So, those are issues for another day.

3    Just one more thing, I have to comment, because you said it.

4    The debtor's spouse's income is not relevant.  There is a

5    prenuptial agreement and their post-marital income is separate

6    property.  So, there's a lot of issues that fly out of that

7    that Mr. Herschmann's assets are not exposed at all here, and

8    not relevant to the issues before the Court.

9          THE COURT:  Well, they're relevant to the means test,

10   aren't they?

11         MR. BATTAGLIA:  I'm sorry.

12         THE COURT:  Aren't they relevant to the means test?

13         MR. BATTAGLIA:  I don't think they are if she has no

14   right to them.

15         MR. TAUBE:  And also, your Honor, this is not a

16   consumer debtor.

17         MR. BATTAGLIA:  Right.

18         MR. TAUBE:  So, I don't think the means test applies.

19         THE COURT: Okay.

20         MR. BATTAGLIA:  Again, issue for another day.  I only

21   say it because I heard what you said and my ears perked up.

22         THE COURT:  I think that's right.

23         MR. BATTAGLIA:  My ears perked up because you said

24   something.  I felt compelled to respond.

25         THE COURT:  Okay.

1          **MR. TAUBE:** Your Honor, and I apologize, the only

2    thing I wanted to add in terms of documents so the, again,

3    trying to piece through the motion, and try to isolate on the

4    venue issues and the venue facts was a little more difficult as

5    I was preparing to come to Court today then I thought there

6    might be. But, they've made a lot about the notes, I might

7    want to introduce the notes themselves. There's two notes for

8    seven and half million each.

9          **THE COURT:** Do you have the documents that evidence

10   the advances that gave rise to the notes?

11         **MR. TAUBE:** Yeah, I'm not sure that I do, your Honor.

12   I actually have the notes themselves. Yeah, these are

13   different notes, I think your Honor, than what you're talking

14   about.

15         **THE COURT:** Oh, I was talking about the ones that

16   were in the settlement agreement.

17         **MR. TAUBE:** Yeah, these are notes actually, your

18   Honor, that relate to the, if you look at the pleadings, I

19   think it's in paragraph 14 of their motion to dismiss. They

20   are talking about two $7.5 million notes, and that those are

21   the assets that are in New York, they say, and that's important

22   to them for the purpose of the venue motion. And I have the

23   notes, and I would like to get them into evidence so that the

24   Court sees them. I hope there won't be any problem stipulating

25   to the authenticity or copies of them. That's the only thing I

18

1 can think of that might be an issue.

2       **THE COURT:** Okay.

3     **(Pause)**

4       **MS. WILLIAMSON:** Your Honor, again, Deborah

5 Williamson on behalf of Arie Genger. Your Honor, we don't

6 anticipate, again, authenticity. Pleadings are what they are,

7 we can all check on PACER or wherever it is, and make sure,

8 yeah, that's a true and correct copy of what was filed.

9 Again, if it was a pleading filed by Sagi, then it can be used

10 against him. If it was a pleading filed by the other side, it

11 because against them That's a different purpose and it can

12 come in.

13       They did, in their motion for change of venue, attach

14 a complete deposition of Mr. Genger. He said what he said in

15 the deposition, your Honor. We don't believe the deposition

16 should be admitted. If he need to be here and be present, he

17 can be. But, I don't know that his deposition is relevant to

18 the issue of Ms. Genger's venue, where she lives and what the

19 evidence the Court will hear. And I don't know if we're going

20 to have a dispute about that.

21       The other issue, your Honor, on confidentiality. We

22 had submitted with our protective order, a proposed form of

23 confidentiality. What we were told --

24       **THE COURT:** What are the subject matters of, what are

25 we keeping confidential?

1        **MS. WILLIAMSON:  --** we're trying to keep

2   confidential, your Honor, well, there's a little bit of

3   backstory here.  They are asking, for example, if you gave them

4   everything they asked for, your Honor, they would have Mr. Arie

5   Genger's complete financial records.  They would have

6   appraisals of on his assets.  They would have description and

7   documentation for all his business dealings, with the Brosier

8   (phonetic) family.  None of that is relevant to this bankruptcy

9   case, your Honor.  But they've asked for that.  So, part of the

10  confidentiality issue is, and we do have, is what's --

11       **THE COURT:**  What is covered by the agreement, is

12  there one agreement or are there multiple agreements?

13       **MS. WILLIAMSON:  --** there is one existing agreement,

14  your Honor, that was originally, my understanding, that Arie

15  Genger was basically, agreed into.  And we've attached that to

16  our motion for protective order.  So we, the Court has those,

17  that prior confidentiality order.

18       **THE COURT:**  Okay.  And that covers what?  His assets

19  and business dealings and --

20       **MS. WILLIAMSON:**  Well, those weren't produced.  So,

21  he's, they didn't ask for them before, they're asking for them

22  now.  And so, the prior confidentiality order, it was

23  litigated, but with other Counsel.  I mean, we were not there,

24  that's the reason we proposed a new one here, using this

25  Court's form.  And my understanding, is that we, that Sagi's

1  Counsel, had agreed to the form with one caveat, which is they

2  could share anything labeled confidential with anyone who

3  claims to be a creditor.  And that's a problem, because we

4  don't know who a creditor is in this case right now.

5          **THE COURT:**  Uh huh.

6          **MS. WILLIAMSON:**  So, I don't, again, I don't think

7  it's an issue for venue.  But, I do want the Court to

8  understand we're trying, we do see issues in the future on

9  this.  We'll continue to try to work them out.

10         **THE COURT:**  What about Mr. Jordan?

11         **MS. WILLIAMSON:**  Mr. Jordan?  Your Honor, I don't

12  know that Dalia Genger is a creditor.  She hasn't a proof of

13  claim.

14         **THE COURT:**  What if she's willing to sign the

15  confidentiality agreement?

16         **MS. WILLIAMSON:**  Oh, if she'll sign the

17  confidentiality agreement, I would think that we would be

18  willing to do it.  But, I mean, truly confidential, and not

19  sharing with anybody else.

20         **THE COURT:**  Yeah, I mean, you can't share with

21  anybody that hasn't signed a confidentiality agreement.

22  What's --

23         **(Pause)**

24         **MR. JORDAN:**  Judge, the answer's almost obvious, I,

25  if the confidentiality agreement restricts sharing, it won't be

21

1    shared.  I'm not sure what Counsel was referring to.

2              **MS. WILLIAMSON:**  You're --

3              **MR. JORDAN:**  I've always offered to sign the

4    confidentiality agreement that's been signed and live by it.

5    That's in writing, delivered several times.  That if I can just

6    see the documents that everybody else has, not these new

7    documents that are requested, I don't, I have not ever

8    requested new documents or other documents.  But, the one's

9    that --

10             **THE COURT:**  We have a limited number of parties to

11   the litigation.  That's the whole point of the bad faith

12   business.

13             **MS. WILLIAMSON:**  Right.

14             **THE COURT:**  If the parties that are involved in this

15   all sign the confidentiality agreement, then they should have

16   access --

17             **MS. WILLIAMSON:**  Yes, your Honor.

18             **THE COURT:**  -- to the documents, and whatever terms

19   the confidentiality agreement are.  But surely, the

20   confidentiality agreement says you can't give it to somebody

21   that hasn't signed the agreement.

22             **MS. WILLIAMSON:**  I believe it says, and I'll go back

23   and verify your Honor, we were told that what we had attached

24   was not acceptable.  If you look at their response to motion

25   for protective order, they said they want the right to share

1    with other creditors.  If they'll withdraw that request, and --

2             THE COURT:  They'll withdraw that request.

3             MS. WILLIAMSON:  -- then your Honor, we have no

4    problem sharing, as long as they sign the confidentiality

5    order.  Agreement.

6             THE COURT:  Okay.

7         (Pause)

8             THE COURT:  Sure.

9             MR. DELLAPORTAS:  So, I believe with regard to the

10   confidentiality order --

11            THE CLERK:  State your name, please.

12            MR. DELLAPORTAS:  -- oh, I'm sorry, John Dellaportas,

13   for Sagi Genger.  With regard to the confidentiality order, I

14   don't think we meant everyone who claims to be a creditor.  I

15   think just the ones, essentially, in this room today.

16            THE COURT:  Well, it's the people that sign the

17   confidentiality agreement.

18            MR. DELLAPORTAS:  Understood.  Yes, your Honor.  I

19   just wanted to understand your Honor's, limiting comments

20   briefly, significantly just to venue.  So, just one comment on

21   Ms. Williamson's concern about the use of the Arie Genger

22   deposition transcript.

23            THE COURT:  Okay.

24            MR. DELLAPORTAS:  And just because, I'm addressing it

25   just because I took that deposition.  So, that deposition,

23

1  she'll correct me if I'm wrong, but it was taken, I believe, in

2  May.  Which is after the debtor said she moved here.  We asked

3  the debtor's father where his daughter lived, and he said she

4  lived in Israel.  So, that's really the only purpose we want to

5  use it for.  It's like --

6          **THE COURT:**  That's sounds relevant.

7          **MR. DELLAPORTAS:**  Yeah.

8          **MS. WILLIAMSON:**  But, your Honor --

9          **MR. DELLAPORTAS:**  We don't need to use the rest.

10         **MS. WILLIAMSON:**  -- that was my point.  We have no

11  problem with, excuse me Deborah Williamson, no problem with

12  that quote being used.  It's the entire deposition they

13  attached.  So, I have no problem with stipulating, yes, this is

14  what he testified to and when he testified to --

15         **THE COURT:**  Yeah, I'd rather not read the whole

16  transcripts of depositions.  I would rather just --

17         **MR. DELLAPORTAS:**  Understood, your Honor.

18      **(Pause)**

19         **THE COURT:**  -- what I'm wondering out loud, it might

20  be helpful for me to see some of this stuff in advance.

21      **(Pause)**

22         And so, we'd be talking about excerpts from

23  depositions that are relevant.  Possibly documents.  You all

24  need to exchange your documents in advance of the hearing.

25         **MR. TAUBE:**  I think they're due Friday, your Honor.

24

1    And that was when we had planned on exchanging them, unless the

2    Court has an earlier timeframe.  I'll be with Judge Mott

3    tomorrow afternoon, or tomorrow, but.

4                **THE COURT:**  I think Friday sounds fine.

5                **MS. WILLIAMSON:**  Are we still --

6                **THE COURT:**  And you'll be ready to go on Thursday,

7    then.

8                **MR. TAUBE:**  Your Honor, I read the Court's order,

9    that's when you said I should be here, and we'll be here and be

10   ready.

11       **(Pause)**

12               **THE COURT:**  Wake my computer back up.

13       **(Pause)**

14               **THE COURT:**  Why don't you meet and confer over the

15   weekend and Monday.  And then, you're going to have to get hard

16   copies, I'll get you an address, you're going to have to Fed Ex

17   them to me at my apartment in Houston.  I have some venue

18   issues of my own.

19               **MR. TAUBE:**  Yes, sir.

20               **THE COURT:**  And so, I, basically if Monday night for

21   Tuesday delivery, you can Fed Ex what you've agreed to on the

22   exhibits.  And then, I envision getting here are the exhibits

23   we all agree are admissible and authentic.  Here are the

24   proponents of the change in venue have exhibits that the other

25   side doesn't agree to.  And the folks that want to stay in

25

1    Austin have a set of exhibits they want to get in that the

2    other side doesn't agree to, and that's fine.  But, give me the

3    exhibits in those categories, so I understand where the fight's

4    coming.

5            **MR. TAUBE:**  Yes, sir.

6            **THE COURT:**  And then, we might have to spend some

7    time resolving the admissibility issues.  And we can do that if

8    we need to.

9            **MS. WILLIAMSON:**  Your Honor, I think it would be

10   helpful if Counsel would also designate those portions of the

11   depositions they would, of any deposition they would like to

12   use.

13           **THE COURT:**  Yes.

14           **MS. WILLIAMSON:**  And we have a chance to then, decide

15   do we want to object or do we want to supplement.  And I'm more

16   than willing to do that.

17           **THE COURT:**  Yes.  So ordered.

18           **MR. TAUBE:**  And I'm assuming, your Honor, that since

19   Ms. Genger will be here, and obviously they can use the 341 if

20   they think that her testimony is inconsistent.  But, that

21   wouldn't be coming in except for impeachment purposes.

22           **THE COURT:**  Okay.

23           **MR. TAUBE:**  But, if they want to use the 341 for

24   something else, I assume they'll tell me.

25       **(Pause)**

26

1        **THE COURT:** Okay. Anything else?

2        **MR. BATTAGLIA:** Your Honor, just for my muddled mind,

3   we're going forward on venue and the basis you've discussed

4   here. The other matters that previously have been set, in our

5   now status conference, you'll tell at some point at that

6   hearing or after that hearing, what we're doing with the rest

7   of this.

8        **THE COURT:** If I keep the case.

9        **MR. BATTAGLIA:** Understood.

10       **THE COURT:** Otherwise, somebody else will.

11       **MR. CUMINGS:** Yeah, Brian Cumings for the Chapter 7

12  Trustee, your Honor. There is a deposition that was noticed of

13  the Trustee for tomorrow. My understanding is, at this point

14  in time, it's not necessary because no one wants his deposition

15  for the venue. But also, Mr. Taube, I believe Ms. Williamson

16  and Mr. Battaglia, were never available for that date. So, I

17  guess this is really more of a question for Counsel if they

18  want to keep that deposition. If they do --

19       **THE COURT:** You need his deposition for venue? Okay,

20  well, then the deposition is off.

21       **MR. CUMINGS:** Thank you, your Honor.

22       **THE COURT:** For now.

23       **MR. JORDAN:** And your Honor, Shelby Jordan, one

24  clarification, will I be getting a, the confidentiality order

25  from somebody that's got authority to let me sign it and then,

27

1   be able to get the documents?

2          **MS. WILLIAMSON:**   If you'll look at the one that was

3   attached to our motion for protective order, and provide

4   comments to me, I think we can resolve.

5          **MR. JORDAN:**  Okay.  All right.

6          **THE COURT:**  Okay.  Good.

7      **(Pause)**

8          And then we're scheduled to go on --

9          **MR. TAUBE:**  -- the 31st at 9:00.

10         **THE COURT:**  31st at 9:00 a.m.?

11         **MR. JORDAN:**  Yes, sir.

12         **THE COURT:**  Okay.  That's sounds good.  I'll see you

13  all then.

14         **MR. TAUBE:**  Thank you, your Honor.

15         **MR. JORDAN:**   Thank you, your Honor.

16         **MS. WILLIAMSON:**   Thank you, your Honor.

17     **(Proceeding ended 2:28 p.m.)**

18

19

20

21

22

23

24

25

28

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>October 24, 2019</u>

       Signed                                        Dated

*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**