# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------X

DALIA GENGER,

                         Plaintiff,

          -against-

ARIE GENGER,

                         Defendant.

------------------------------------------------------X

Index No. 302436/02

**STIPULATION**

        Stipulation of Settlement ("Stipulation" or Agreement") made as of

October 26, 2004, by and between Dalia Genger (the "Wife"), residing at 210 East 65th

Street, Apt. 11J, New York, NY 10021, (Soc. Sec. No. 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), and Arie Genger

(the "Husband), residing at 2600 Island Blvd., Penthouse One, Williams Island,

Aventura, FL 33160, (Soc. Sec. No. 114-42-294).

                     W I T N E S S E T H:

        WHEREAS, the parties were duly married to each other on July 23, 1967

in a religious ceremony held in Israel; and

        WHEREAS, the children of the marriage, Sagi Genger and Orly Genger,

are all emancipated and there are no expected additional children of the marriage; and

        WHEREAS, the Wife has commenced the above-captioned action against

the Husband seeking a divorce (the "Divorce Action") and the parties desire to resolve

and settle all issues in that action except the entitlement of either party to a divorce; and

        WHEREAS, except as otherwise provided or reflected herein, it is the

intention of the parties that upon completion of implementation of this Agreement, each

r74s1888v-212770083.3

PLAINTIFF'S EX 0200
Orly Genger v. Sagi Genger
Index No. 100697/08

party will have received distributions equal to approximately 50% of the aggregate value

of the Husband and the Wife's net marital assets.

NOW THEREFORE, it is agreed as follows:

## ARTICLE I

## ARTICLE HEADINGS, RECITALS AND DRAFTING

1.    The headings at the beginning of each Article of this Agreement are for reference purposes only and shall not in any manner, constitute terms or conditions of this Agreement; nor shall they be applicable to any interpretation of the intention or meaning of the parties or of any part of this Agreement.

2.    The "Whereas" clauses at the beginning of this Agreement are an integral part of this Agreement and shall be considered in any interpretation of the intention or meaning of the parties or of any part of this Agreement.

3.    This Agreement is entered into after negotiation and comments by each party and by counsel for both parties. The fact that the following have participated in the drafting shall not be a consideration in the interpretation of this Agreement: Blank Rome LLP, David Parnes, Esq., Sonnenschein Nath & Rosenthal LLP, Carter Ledyard & Milburn LLP, Goldman & Greenbaum, P.C., and Philip Greenhaus, Esq.

2

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0002
Orly Genger v. Sagi Genger
Index No. 100697/08

# ARTICLE II

## DISTRIBUTION OF ASSETS

1. The parties' marital property shall be divided and disposed of as is set forth in this Article and Articles III and IV, with the exception of the parties' debts and other obligations to third parties (provisions for which are set forth in Article V). Schedule II(1), annexed hereto and made part hereof, sets forth an itemized list of all of the marital property of the Husband and the Wife, as of January 31, 2002 and as of the date of this Agreement with the values as of the dates indicated on such Schedule. The Husband and the Wife (to her knowledge) each represent to the other that such Schedule completely and correctly sets forth all such marital property as of such dates and to the best of each of his/her knowledge with the values of such property as of the dates indicated in such Schedule; the Husband and the Wife represent to the other party that he/she has no knowledge of any marital property not set forth on such Schedule.

2. <u>Distributions Upon Execution of this Agreement</u>.

(a)     *Cash and Other Distributions*. The Husband and the Wife shall each receive concurrently with the execution of this Agreement certain distributions (for each party, the "Immediate Payment(s)"). The Immediate Payments will be made from cash accounts maintained in the Husband and Wife's joint or individual names, investments made jointly or individually, as well as from an escrow account maintained by Blank Rome LLP for the parties' benefit, with approximately $2,504,537.00 dollars ("BR Escrow"), as of the date of this Agreement, all as more fully detailed, and the sources of which specifically identified, in Schedule II(2)(a) annexed hereto and made

3

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0003
Orly Genger v. Sagi Genger
Index No. 100697/08

part hereof. The Husband's and the Wife's Immediate Payments, upon execution of this

Agreement, shall be as follows:

    (i)    Husband: The Husband shall receive (A) the sole

ownership of all life insurance policies (set forth on Schedule

II(2)(a)(i), annexed hereto and made part hereof) which as of January

15, 2004 had an aggregate cash surrender value of $2,447,782;

provided, however, that (w) the life insurance policy (Equitable

Single Life Split Dollar #150224782) in the face amount of

$1,950,000 and with a cash surrender value to the Husband of

$147,833 and with a total death benefit of $2,097,833 shall provide

from the date hereof that the net death benefit payable to the Wife

shall be at least $2,000,000, (x) if for any reason the total net death

benefit payable to the Wife shall be less than $2,000,000 during the

first year of this Agreement, the Husband shall immediately notify

the Wife and deposit $50,000 in escrow with David A. Parnes, Esq.

to be paid to the Wife upon the Husband's death prior to the first

anniversary of this Agreement, (y) the amount of the net death

benefit payable to the Wife may be reduced at every anniversary

hereof by $200,000, and (z) the Husband has directly authorized the

insurance broker to provide the Wife all information regarding such

policy and hereby agrees not to revoke such authorization prior to

the tenth anniversary hereof; (B) all of the Husband and Wife's

investment in Conservation Securities, which has an estimated value

4

1270083.3
1745188BV-2

PLAINTIFF'S EX 0200-0004
Orly Genger v. Sagi Genger
Index No. 100697/08

of $2,128,000; (C) a cash distribution from several cash accounts,

including the BR Escrow, of $1,345,000; and (D) 79,045 shares of

common stock of Lumenis Ltd. ("Lumenis") held in certain

retirement accounts.

(ii)    Wife:  The Wife shall receive (A) sole ownership of the

Husband's two hundred and fifty (250) shares of common stock of

TPR Investment Associates Inc. ("TPR"), free and clear of any liens

or other encumbrances initially valued as set forth on Schedule II(1),

annexed hereto and made part hereof, which represents fifty one

percent (51%) of the issued and outstanding shares of common stock

of TPR (exclusive of the 1.96% ownership of TPR which the Wife

owns indirectly through her general partnership interest in D&K

defined below), together with a duly executed stock power

transferring said shares to the Wife and all documents in the

Husband's possession, custody or control relating to TPR, including

the adjusted tax basis thereof, (accordingly, the marital asset consists

of 52.96% of the outstanding shares of common stock of TPR (the

"Marital TPR Percentage") and (B) a cash distribution from several

cash accounts, including the BR Escrow, of $1,345,000.


(b) *Marketable Securities.*  All securities in the Smith Barney account

referenced as Item F. 1 on Schedule II(1) will, to the extent possible, be divided between

5

PLAINTIFF'S EX 0200-0005
Orly Genger v. Sagi Genger
Index No. 100697/08

the Husband and the Wife in kind, so that the Husband and the Wife shall each have sole ownership of fifty percent (50%) of such securities.

(c) *Retirement Accounts.* With the exception of 79,045 shares of common stock of Lumenis allocated to the Husband from various IRA accounts per paragraph (a) above, all IRA accounts, pension plans, retirement accounts and the like (the "Pension Accounts"), whether in the name of the Husband or in the name of the Wife, shall be divided equally as follows: each party shall cause fifty percent (50%) of the amount accrued and existing in each Pension Account of such party, to be transferred to the other party and shall use his reasonable best efforts to cause such transfer to be made to a Pension Account of the other party, as more fully described in Article IV of this Agreement.

(d) *Disposition of TRI Stock.* See Article II(9)(b) below.

3.     Residual Cash.  To the extent not distributed pursuant to Section 2 of this Article II, any cash available at the time of execution of this Agreement, and at any time thereafter until distribution thereof ("Residual Cash"), shall be placed in escrow ("RC Escrow Account") with David A. Parnes, Esq., ("RC Escrow Agent") or with any other individual or entity designated for such purpose by Sagi Genger (and if Sagi Genger does not promptly make such designation, Orly Genger) pursuant to an Escrow Agreement substantially in the form of Exhibit II(3), annexed hereto.

4.     Non-Liquid Assets.

(a)     All of the parties' other marital assets which are not distributed pursuant to Section 2 of this Article II, including, but not limited to, personal and real property, and securities and investment accounts that cannot be divided in kind (the "Non

6

PLAINTIFF'S EX 0200-0006
Orly Genger v. Sagi Genger
Index No. 100697/08

Liquid Assets"), shall be sold as promptly as practicable on terms determined by agreement of the parties; provided, however, that if the parties cannot agree on such terms within six (6) months of the date of execution of this Agreement (the "Initial Period"), the Husband and the Wife agree that thereafter authority and control over any then unsold Non Liquid Assets as to which the terms of sale have not been agreed on by the parties shall be vested in Sagi Genger pursuant to a power of attorney substantially in the form of Exhibit II(4)(a) (the "P/A"). Sagi Genger shall have full and complete authority to sell any and all Non-Liquid Assets at such prices and upon such terms and to distribute the proceeds of such sales as he, in his sole discretion, sees fit, subject however to paragraph (b) of this Section 4 of this Article II below, the terms of the P/A and his fiduciary duties to effectuate the intent of the parties in entering into this Agreement. Concurrently with the execution of this Agreement, each of the parties will execute the P/A and deliver it to Sagi Genger. After the Initial Period and during such time as there exist any unsold Non-Liquid Assets as to which the parties have not agreed on sale terms during the Initial Period, each of the parties will promptly execute and deliver to Sagi Genger any and all additional documents requested by Sagi Genger to effectuate the provisions of this paragraph (a) of this Section 4. At any time, the Husband and the Wife may mutually revoke the authority and control vested in Sagi Genger over such Non-Liquid Assets by providing him with written notice signed by the Husband and the Wife to that effect ("Revocation Notice"), in which case Sagi Genger will immediately surrender the P/A, the other documents and the Non Liquid Assets, to a party designated in the written notice by the Husband and the Wife in his stead (the "Successor Attorney in Fact"). If no Successor Attorney in Fact is designated in the Revocation Notice, David

7

1270083.3
1745188NV-2

PLAINTIFF'S EX 0200-0007
Orly Genger v. Sagi Genger
Index No. 100697/08

A. Parnes, Esq. is designated as Successor Attorney in Fact. If Mr. Parnes is unwilling to

act in such capacity or the parties revoke the authority and control vested in him by

providing him with written notice signed by both of them to that effect and fail to

designate a Successor Attorney in Fact in such notice, Eric Gribetz is designated as

Successor Attorney in Fact. If Mr. Gribetz is unwilling to act in such capacity or the

parties revoke the authority and control vested in him by providing him with written

notice signed by both of them to that effect and fail to designate a Successor Attorney in

Fact in such notice, Orly Genger is designated as Successor Attorney in Fact. If Sagi

Genger is unable to act and the Husband and Wife do not promptly send the Revocation

Notice, then Elana Genger (the spouse of Sagi Genger) together with either the Husband

or the Wife may send the Revocation Notice to Sagi Genger, and in such event David A.

Parnes, Esq. shall be designated as Successor Attorney-in-Fact.

  (b)    The net proceeds of the sales of the Non-Liquid Assets, whether

effectuated within the Initial Period or thereafter, shall be distributed as follows: (i) such

amount as would be required to cause the balance in the RC Escrow Amount to equal

Twenty Five Thousand dollars ($25,000) ("Basic Escrow Amount") to the RC Escrow

Account; and (ii) all amounts in excess of the Basic Escrow Amount to TPR in

satisfaction of the parties' indebtedness to TPR as set forth in Article V hereof. Upon

payment in full of such indebtedness to TPR, subject to the provisions of this Article II,

Sagi Genger (or a Successor Attorney in Fact) shall, subject to his fiduciary duties to

effectuate the intent of the parties in entering into this Agreement, have the complete

authority, in his sole discretion, to determine the equitable distribution of the remaining

net proceeds of the sales of the Non-Liquid Assets, whether to the Husband, the Wife or

8

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0008
Orly Genger v. Sagi Genger
Index No. 100697/08

to the RC Escrow Account. The Husband and the Wife shall each be obligated to pay any Federal, state or local taxes due by them upon the sale of the Non-Liquid Assets.

5.    First Anniversary Distributions. Within twenty (20) days of the first anniversary of this Agreement ("First Anniversary"), Sagi Genger (or a Successor Attorney in Fact) will provide the Husband and the Wife with a reasonably detailed written summary of the proceeds of the sale of the assets, and the distributions received by each party or deposited into the RC Escrow Account and any related expenses from and including the date of execution of this Agreement through the First Anniversary. The parties agree that, should there be an imbalance in the distributions received by either party ("Imbalance") in favor of either the Husband or the Wife (the "Overpaid Party") Sagi Genger will cause the RC Escrow Agent to pay to the other party ("Underpaid Party") promptly a sum in cash equal to the Imbalance. In determining any Imbalance with regard to the assets of TPR, the parties will adjust the value attributed to the assets of TPR, as set forth on Schedule III(1) annexed hereto and made a part hereof, based on the net proceeds from the sales of such assets from the execution of this Agreement through the First Anniversary.

6.    Second Anniversary Distributions.

(a)    Within twenty (20) days of the second anniversary of this Agreement ("Second Anniversary"), Sagi Genger (or a Successor Attorney in Fact) will provide the Husband and the Wife with a reasonably detailed written cumulative summary of the proceeds of sale or the Assets, and the distributions received by each party from and including the date of this Agreement through the Second Anniversary or deposited in the RC Escrow Account and any related expenses. Should an Imbalance

9

PLAINTIFF'S EX 0200-0009
Orly Genger v. Sagi Genger
Index No. 100697/08

exist, at the election of Sagi Genger (or a Successor Attorney in Fact), either (i) the

Overpaid Party shall promptly pay the Underpaid Party a portion of such Imbalance in

cash, as instructed by Sagi Genger and/or (ii) Sagi Genger shall instruct the RC Escrow

Agent to distribute the balance of the RC Escrow Account, in each case, to redress the

Imbalance as of the Second Anniversary.  With regard to TPR, the parties will adjust the

value attributed to the assets of TPR, as set forth on Schedule II(1) annexed hereto and

made a part hereof, based on the net proceeds from the sales of such assets from the

execution of this Agreement through the Second Anniversary.

      (b)    Any Non-Liquid Asset that has not been sold by the Second

Anniversary shall be valued and distributed as the Husband and the Wife mutually agree.

If there are any assets as to which such agreement has not been reached (the "Remaining

Assets") by the 45th day after the Second Anniversary, the Husband and the Wife agree

to purchase from, or to sell to, the other party the Remaining Assets, in accordance with

the following procedure:

      (i) a coin will be tossed in the air, by Orly Genger or in her absence by a person

mutually acceptable to the Husband and the Wife;

      (ii) the Husband will be designated as "Head" (i.e. – the side of the coin where

the profile of a person is impressed) and the Wife will be designated as "Tail" (i.e.

– the other side of the coin);

      (iii) if the Head side of the coin shall lay face up, the Husband will become the

Evaluating Party for the first Remaining Asset selected by the person tossing the

coin, and if the Tail side of the coin shall lay face up, the Wife shall become the

10

1270083.3
1745188SW-2

PLAINTIFF'S EX 0200-0010
Orly Genger v. Sagi Genger
Index No. 100697/08

Evaluating Party for the first Remaining Asset selected by the person tossing the coin;

(iv) the Evaluating Party shall value and indicate in writing by five business days following the coin toss to the other party, the sum at which he or she values such Remaining Asset ("Evaluated RA Value");

(v) by the fifth business day following receipt of the Evaluated RA Value from the Evaluating Party ("Determination Date"), the other party shall notify the Evaluating Party in writing whether he or she intends to acquire from, or to sell to, the Evaluating Party his or her fifty percent (50%) interest in such Remaining Asset, in which case the other party shall either remit to the Evaluating Party fifty percent (50%) of the Evaluated RA Value or receive from the Evaluating Party fifty percent (50%) of the Evaluated RA Value in cash, within thirty (30) business days following the Determination Date, against receipt of such Remaining Asset. If the Evaluating Party does not deliver to the other party the Evaluated RA Value within 30 days of the Determination Date, the other party shall be entitled to take the Remaining Asset in question free of any payment or obligation.

In the event that there is more than one Remaining Asset, the party who was not the Evaluating Party for the prior Remaining Asset, shall be entitled to select the next Remaining Asset to be evaluated and shall be the Evaluating Party for such Remaining Asset and the procedures in paragraphs (iv) and (v) above shall be followed. The parties shall thereafter alternate selection of the Remaining Asset for evaluation and acting as Evaluating Party as provided above, until all Remaining Assets have been evaluated and disposed of, as provided above.

11

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0011
Orly Genger v. Sagi Genger
Index No. 100697/08

7.    Notwithstanding anything to the contrary contained herein, with a view to avoid the need for direct payments between the Husband and the Wife, when distributing proceeds from the sales of Non-Liquid Assets from time to time, Sagi Genger (or a Successor Attorney in Fact) will take into consideration anticipated changes caused by the sales of assets of TPR.

8.    (a)    Sagi Genger shall be entitled, in his sole discretion and subject to his fiduciary duty to implement the intent of the parties, to incur reasonable expenses necessary for the maintenance of the marital property (with the exception of the apartment (the "Apartment") at 2600 Island Boulevard, Penthouse One, Williams Island, Aventura, Florida 33160), where all maintenance and other ordinary monthly expenses (including, without limitation, taxes and insurance) shall be borne solely by the Husband, in accordance with paragraph (b) below, the expenses of selling the Non-Liquid Assets and other related activities, and to pay such expenses from the RC Escrow Account.

(b)    Concurrently with the execution of this Agreement, the Wife hereby acknowledges the Husband's sole occupation and use of the Apartment until such time as the apartment is sold. The Husband will assume and promptly pay all maintenance and other ordinary monthly expenses incurred in connection with the Apartment until the time of sale of Apartment. The Husband and the Wife agree to cooperate in the sale of the Apartment during the Initial Period and to cooperate and not to interfere in any way with the sale of the Apartment by Sagi Genger (or a Successor Attorney in Fact) as part of the sale of the Non-Liquid Assets, after the Initial Period.

9.    (a) TPR owns three thousand (3,000) shares of common stock in Trans - Resources, Inc. ("TRI Stock"). The Husband represents and warrants to the Wife that the

12

1270083.3
1745185RV-2

PLAINTIFF'S EX 0200-0012
Orly Genger v. Sagi Genger
Index No. 100697/08

TRI Stock represents 52.85% of the issued and outstanding shares of common stock of TRI, and that the balance of 47.15% of the common stock of TRI is owned beneficially and of record, pursuant to an arm's length transaction with TRI, by (i) Glencova Investment Co., and (ii) TR Investors LLC, subject to a Shareholders Agreement, dated as of March 30, 2001, a complete and correct copy of which has been delivered to the Wife (the "TRI Shareholders Agreement"). The Husband further represents and warrants to Wife that he has no interest in Glencova Investment Co. or in TR Investors LLC and except for the options provided to Bank Hapoalim B.M. (a copy of the agreement granting an option to Bank Hapoalim has been delivered to the Wife), there exist no other direct or indirect ownership interests in TRI, whether by way of issuance of additional shares of any other class of stock, share options, warrants, convertible debt or the like and there is no agreement or understanding among the parties to the TRI Shareholders Agreement except as provided therein. Except for the Consent of TPR, the Husband further represents and warrants that no consent, approval or similar action of any person is required in connection with the transfer of TRI Stock as contemplated hereby and that such transfer will not conflict with any agreement to which the Husband is party or by which he is bound. The Husband further represents and warrants to the Wife that TRI equity may reasonably be considered to be a distressed private security. Concurrently with the execution of this Agreement, the TRI Stock shall be distributed as follows:

(i)     The Husband will receive 794.40 shares of the TRI Stock representing 13.99468% of the common stock of TRI;

(ii)    Each of Sagi Genger and Orly Genger, will receive in trust 1,102.80 shares of the TRI Stock representing 19.42766% of the common stock of

13

1270083.3
1745188NY-2

PLAINTIFF'S EX 0200-0013
Orly Genger v. Sagi Genger
Index No. 100697/08

TRI for each of Sagi and Orly and such trusts will simultaneously therewith execute

and deliver irrevocable proxies to Husband for all of the TRI stock owned by the

trusts; and

(c)     Concurrently with the execution of this Agreement, each of the

Husband and Wife will execute and deliver or cause TPR to execute and deliver (i) all

documents reasonably necessary to effect the transfers required by subparagraph (a) of

this Section 9, and (ii) duly executed stock powers to transfer the shares as required by

subparagraph (a) of this Section 9.

(d)     The parties will cause TRI to provide the Husband, Sagi Genger

and Orly Genger with all documents in TRI's possession, custody and control relating to

the adjusted tax basis of the TRI Stock.

(e)     Following the foregoing transfers of the TRI Stock, the Wife will

have no ownership interest in TRI.

10.    Lumenis Stock Options.  The Husband is the owner of 1,400,000 stock

options to purchase shares of Lumenis common stock ("Options") as set forth on

Schedule II(10) annexed hereto and made part hereof, of which (i) 100,000 Options were

granted to the Husband after the  Commencement Date, (ii) prior to the Commencement

Date the Husband transferred the economic interest in 250,000 Options to a third party

(the options specified in (i) and (ii) are not marital property, and (iii) 1,050,000 options

which are marital property (hereinafter referred to "Marital Options"); such Schedule

II(10) will include the exercise prices of the Options.

(a)     The parties agree that the Wife shall be the beneficial owner of and

receive the economic benefits of 525,000 Options as set forth on Schedule 11(10),

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0014
Orly Genger v. Sagi Genger
Index No. 100697/08

representing 50% of Marital Options hereinafter referred to as the "Wife's Options"); the

remaining 525,000 Marital Options are referred to herein as the "Husband's Options."

Pursuant to the Options' governing documents, the Husband is not allowed to transfer

any of the Options. Accordingly, the Wife can not receive an actual transfer or

assignment of the Wife's Options and the Wife has no claim directly or indirectly against

Lumenis with respect to the Wife's Options.

(b)    The Husband agrees to notify Lumenis of the exercise of Wife's Options,

at her written direction, as promptly as practicable and no later then the fifth (5th)

business day following the date on which the Husband shall receive "actual notice" (as

defined below) in writing from the Wife requesting the exercise, provided that the Wife

simultaneously with such notice remits payment of the appropriate exercise price by wire

transfer to the Husband or, if directed by the Husband, directly to Lumenis, with respect

to those of the Wife's Options that she wishes to exercise, and, further provided that there

are no legal impediments to such exercise, including, without limitation, any restrictions

as set forth in the applicable agreements covering such Options, any "blackout periods"

imposed by Lumenis on its officers and directors, or restrictions under the Federal

Securities Laws or the rules and regulations of any applicable stock exchange. "Actual

notice" shall mean the Husband's actual receipt of the written notice, which shall include

the number of Wife's Options of each Class of Options she directs him to exercise, and, if

required, appropriate payment from the Wife. In addition, the Wife also agrees to give

written notice of any exercise of the Wife's Options to the person then designated to

receive copies of notices to the Husband (see Article XX) concurrently with any notice to

the Husband. The Husband shall not be liable with regard to any diminution in value or

15

PLAINTIFF'S EX 0200-0015
Orly Genger v. Sagi Genger
Index No. 100697/08

divestiture of option rights between the Wife's sending of notice and either (x) the

Husband's receipt of the same and (y) the Husband's exercise of the Wife's Options on

the Wife's behalf, provided that the Husband provides actual notice to Lumenis as

promptly as practicable and no later than the 3rd business day following his receipt of

notice from the Wife. Upon any exercise of the Wife's Options, the Husband will deliver

or cause to be delivered to the Wife the shares of Lumenis stock received upon such

exercise as promptly as practicable.

(c)    The parties recognize the possibility that the Husband's interest in the

Options may terminate for reasons specified in applicable agreements or otherwise, and

the Husband may thereby lose his rights to the Options.  As long as the Wife's Options

are outstanding, the Husband will use his best efforts to maintain his rights to such

Options.  If there is nonetheless a forfeiture or loss of all or any portion of the Options

while Wife's Options remain outstanding, the Husband shall give the Wife notice of such

forfeiture or loss and the Husband and the Wife shall each sustain a fifty percent (50%)

share in the loss of his and her outstanding share in the Marital Options.

11.    (a)    It is the intention and agreement of the parties that, pursuant to the

provisions of Section 1041 of the Internal Revenue Code, the transfers and payments

between them pursuant to this Article are not taxable transactions to either party.

Moreover it is the intention and agreement of the parties that such transfers and payments

between them are not includible in the income of either the Wife or Husband pursuant to

Sections 61 or 71(a) of the Code, and shall not be deductible by either the Wife or

Husband pursuant to Section 215 of the Code.  Both parties further agree that they shall

not henceforth assert a position (in filing future tax returns) inconsistent with this

16

1270083.3
J7451888V-2

PLAINTIFF'S EX 0200-0016
Orly Genger v. Sagi Genger
Index No. 100697/08

Agreement or with this undertaking, and each will be liable to the other for damages, including taxes, penalties and interest, as well as reasonable attorneys' and accountants' and other professional fees, expenses and court costs, occasioned by breach of this covenant.

(b)    In the event that the tax assumptions set forth in paragraph (a) of this paragraph should ever prove to be incorrect, the relevant provisions of this Agreement will be modified by the parties so as to approximate as closely as possible the after-tax effects to the parties anticipated by paragraph (a). If the parties have not so agreed within 30 days, one or both parties shall give notice of the failure to agree to Sagi Genger (or in his absence David A. Parnes, Esq.) who shall promptly appoint tax counsel in his discretion, subject to his fiduciary obligations to the parties, and such tax counsel shall have full authority to resolve the matter.

## ARTICLE III

## VALUATION OF TPR ASSETS FOLLOWING EXECUTION OF THIS AGREEMENT

1.    TPR has agreed, by resolutions of its Board of Directors (substantially in the form attached hereto as Exhibit III(1)), to be bound by the provisions of this Article III and the other provisions that contemplate action by it, and will cooperate with the Husband and the Wife in order to fulfill the provisions hereof.

A FUNDAMENTAL PART OF THIS AGREEMENT IS THE HUSBAND'S RELINQUISHMENT OF HIS OWNERSHIP OF SHARES OF COMMON STOCK IN TPR, AND THE TRANSFER OF SUCH OWNERSHIP TO THE WIFE. THE PARTIES ARE UNABLE TO DETERMINE THE PRECISE VALUE OF TPR UPON EXECUTION OF THIS AGREEMENT AND ARE RELYING AT THE TIME OF EXECUTION OF THIS AGREEMENT ON TPR'S BOOK VALUE, AS SET FORTH ON SCHEDULE III(1).

17

1270083.3
17451558\V-2

PLAINTIFF'S EX 0200-0017
Orly Genger v. Sagi Genger
Index No. 100697/08

2. The parties agree that the assets of TPR as listed on Schedule III(1) are divided into three (3) categories;

> (i) Cash and marketable securities, designated as (Category A) on Schedule III(1).

> (ii) Assets valued designated as (Category B) on Schedule III(1).

> (iii) Assets as to which neither party accepts the valuation, designated as (Category C) on Schedule III(1).

The parties accept the value of the assets in Category A as binding upon them (subject to updating due to the passage of time).

(a)    The Husband represents to the Wife that TPR's total liabilities are no more than $10,000.

(b)    TPR, by its Chief Executive Officer or Vice President, within one hundred twenty (120) days of the date of execution of this Agreement must notify the Husband, in writing, whether it accepts the value of the assets in Category B. Should TPR either (x) fail to notify its acceptance in writing or (y) express disagreement with the valuations of the assets in Category B, TPR will be obligated to sell the assets in its discretion, but subject to its duties to its shareholders, and the sales price will be definitive and binding upon the parties as the value of the assets in Category B.

(c)    All of the assets in Category C will either be (x) sold or (y) appraised, by an appraiser selected by Sagi Genger or David A. Parnes, Esq., as determined by TPR in its discretion, but subject to its duties to its shareholders. The sale or appraised value of each asset will be definitive and binding upon the parties as the value of the assets in Category C.

18

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0018
Orly Genger v. Sagi Genger
Index No. 100697/08

(d)        In the event that by the Second Anniversary there remains

disagreement as to the valuation of assets in Category B, or if any assets in Category B or

Category C have not been sold (the "Non Sold Assets"), the Husband and TPR agree to

purchase or to sell, from or to, the other party such Non Sold Assets, in accordance with

the following procedure:

(i) a coin will be tossed in the air, by Orly Genger or in her absence by a

person mutually acceptable to the Husband and TPR;

(ii) the Husband will be designated as "Head" (i.e. – the side of the coin

where the profile of a person is impressed) and TPR will be designated as

"Tail" (i.e. – the other side of the coin);

(iii) if the Head side of the coin shall lay face up, the Husband will become

the Evaluating Party for the first Non Sold Asset selected by the person

tossing the coin, and if the Tail side of the coin shall lay face up, TPR shall

become the Evaluating Party for the first Non Sold Asset selected by the

person tossing the coin;

(iv) the Evaluating Party shall value and indicate in writing by the fifth

business day following the coin toss to the other party,  the sum at which it

values such Non Sold Asset ("Evaluated NSA Value");

(v) by the fifth business day, following receipt of the Evaluated NSA Value

from the Evaluating Party ("TPR Determination Date"), the other party shall

notify the Evaluating Party in writing whether it intends to acquire from, or

to sell to, the Evaluating Party its part of such Non Sold Asset, in which

case the other party shall either remit to the Evaluating Party its Obligated

19

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0019
Orly Genger v. Sagi Genger
Index No. 100697/08

Share (as defined below) of the Evaluated NSA Value or receive from the Evaluating Party its Obligated Share of the Evaluated NSA Value, within 30 business days following the TPR Determination Date against receipt of such Non Sold Asset. If the Evaluating Party does not deliver to the other party the Evaluated NSA Value, within 30 days of the TPR Determination Date, the other party shall be entitled to take the Non Sold Asset in question free of any payment or obligation.

In the event that there is more than one Non Sold Asset, the party who was not the Evaluation Party for the prior Non Sold Asset shall be entitled to select the next Non Sold Asset to be evaluated and shall be the Evaluating Party for such Non Sold Asset; and the procedures in paragraphs (iv) and (v) above shall be followed. The parties shall thereafter alternate selection of the Non Sold Asset for evaluation and acting as Evaluating Party as provided above, until all Non Sold Assets have been evaluated. "Obligated Share" shall mean (a) for TPR, 26.48% and (b) for the Husband, 73.52%.

## ARTICLE IV

## PENSION RIGHTS

1.     The parties shall divide all of their IRA's and other retirement vehicles as provided in this Article and Article II. All such IRA's and retirement vehicles are included in Schedule II(1).

2. The Husband's IRA's and retirement vehicles included in Schedule II(1) contain 79,045 shares of Lumenis which were purchased after the commencement of the parties' divorce action; such shares shall be the Husband's separate property. The

20

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0020
Orly Genger v. Sagi Genger
Index No. 100697/08

remainder of the assets contained in such IRA's, as of the date of execution of this

Agreement shall be divided into two equal portions and one of those portions will be

transferred by direct transfer into an IRA owned by the Wife as promptly as practicable

after the entry of the Judgment of Divorce.

       3.    One half (1/2) of any other IRA's owned by either party, as of the

date of execution of this Agreement will be transferred to the other party by direct

transfer to an IRA owned by the other party as promptly as practicable after the entry of

the Judgment of Divorce.

       4.    One-half (1/2) of the assets (other than Lumenis shares referred to

in paragraph IV(2) above) in each of the parties' other pension plans and retirement plans

(including but not limited to any plan qualified under § 401 of the Internal Revenue Code

to which Section 401(a)(11)(B) of the Code or Section 205(b) (1) of ERISA shall apply)

(hereafter a "Qualified Plan") shall be transferred to the other party pursuant to a

Qualified Domestic Relations Order ("QDRO") as promptly as practicable and in any

event within ninety (90) days after service by one party or the other of notice of entry of a

judgment of divorce between the parties.  With respect to the portion of the electing

party's Qualified Plans as described in this paragraph 4 which the electing party is to

retain, the other party consents to the electing party's current and future designation of

beneficiaries under any of such Qualified Plans other than the consenting party (and to

any and all revocations and/or modifications of such designations), including any of such

plans referred to in Section 401(a)(11)(B)(iii) of the Code or Section 205(b)(1)(C) of

ERISA.

12700833
I7451688V-2

PLAINTIFF'S EX 0200-0021
Orly Genger v. Sagi Genger
Index No. 100697/08

5.      Except as is specifically provided to the contrary in the prior provisions of this Article and Article II, each party forever waives any interest that he or she may have to any IRA, Keogh plan, pension plan, profit sharing plan, 401(k) plan, individual retirement plan, employee stock ownership plan or stock bonuses or other employee benefit or other retirement plan of any description whatsoever (including, without limitation, any life insurance benefits contained therein), in the future held in the other's name or associated with any employer of the other or with any entity owned, now or previously, by the other.

6.      Each party has simultaneously executed and delivered to the other (and in the future will, without further consideration or remuneration, promptly execute and deliver to the other) all documents that are presented to him or her and that are reasonably required in order to effectuate the intentions and provisions of this Article.

## ARTICLE V

## RESPONSIBILITY FOR DEBTS

1.      Except for certain obligations (provisions for which are set forth in paragraph 3 of this Article), the Wife represents that she has not heretofore incurred or contracted, or caused to be incurred or contracted, for herself, any debt, charge, obligations or liability whatsoever (contingent or otherwise) for which the Husband or his estate is or may become liable.  The Wife shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, for necessaries or otherwise, upon the credit of the Husband for which the Husband or his estate may become liable.  Except as provided otherwise in paragraph 3 of this Article, the Wife shall satisfy and shall indemnify the Husband against all debts, charges,

22

1270083.3
1745185WV-3

PLAINTIFF'S EX 0200-0022
Orly Genger v. Sagi Genger
Index No. 100697/08

obligations or liabilities of every kind and nature whatsoever (including reasonable fees of attorneys and other professionals and costs of litigation) which were heretofore or may hereafter be incurred or contracted solely by her.

2.     Except for certain obligations (provisions for which are set forth in paragraph 3 of this Article), the Husband represents that he has not heretofore incurred or contracted, or caused to be incurred or contracted, for himself, any debt, charge, obligations or liability whatsoever (contingent or otherwise) for which the Wife or her estate is or may become liable. The Husband shall not hereafter incur or contract or cause to be incurred or contracted any debt, charge, obligation or liability whatsoever, for necessaries or otherwise, upon the credit of the Wife for which the Wife or her estate may become liable. Except as provided otherwise in paragraph 3 of this Article, the Husband shall satisfy and shall indemnify the Wife against all debts, charges, obligations or liabilities of every kind and nature whatsoever (including reasonable fees of attorneys and other professionals and costs of litigation) which were heretofore or may hereafter be incurred or contracted solely by him.

3.     (a) The Husband shall indemnify, defend, and hold harmless the Wife, from and against 100% of any and all liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations, (each a "Claim") including her reasonable counsel and other professional fees, expenses and costs, including but not limited to or arising from, existing, threatened and/or future actions, or proceedings naming the Wife (either solely or jointly with other parties) as a party, arising out of, or due to, events that occurred on or before the date of this Agreement. In addition, the Husband shall indemnify, defend and hold harmless the Wife from and against 100% of

23

PLAINTIFF'S EX 0200-0023
Orly Genger v. Sagi Genger
Index No. 100697/08

any and all Claims which arise by reason of any transaction made hereunder between the Wife or any affiliate of the Wife and any third party without sufficient consideration.

(b) (i)   The Husband shall indemnify, defend, and hold harmless the Wife, from and against 100% of the Marital TPR Percentage of any and all Claims, including her reasonable counsel and other professional fees, expenses and costs (except as otherwise specified in sub-paragraph (ii) below), naming TPR as a party arising out of, or due to, events that occurred on or before the date of this Agreement.

(ii)      The Husband shall indemnify, defend, and hold harmless the Wife, from and against 50% of the Marital TPR Percentage of any and all existing or threatened Claims, including her reasonable counsel and other professional fees, expenses and costs arising from the action against TRI pending in Louisiana and Mississippi referred to as the Bogalusa Litigation. Schedule V(3)(ii) attached to this Agreement contains an update of the status of the Bogalusa litigation. Husband represents and warrants to Wife that to the best of his knowledge there is no other Claim naming TPR as a party, arising out of, or due to, events that occurred on or before the date of this Agreement.

(c) Husband further represents and warrants to Wife she has no liability with respect to the promissory note, dated December 31, 2001 made by the Husband in favor of Sash A. Spencer in the principal amount of one hundred twenty thousand dollars ($120,274.20), a copy of which is annexed hereto as Exhibit V(3)(c) . In any event, the Husband shall indemnify, defend, and hold harmless the Wife from and against 100% of any and all liabilities, damages, claims, actions, losses, settlements, penalties, judgments

24

PLAINTIFF'S EX 0200-0024
Orly Genger v. Sagi Genger
Index No. 100697/08

or obligations, including her reasonable counsel and other professional fees, expenses and costs in connection with such note.

4.    The Husband or the Wife may each, prior to the Second Anniversary, submit a request to an Arbitrator (as such term is defined Article XIII, and upon the terms detailed therein), with notice to the other party, to prevent distribution to the indemnifying party, by Sagi Genger (or his successor Attorney in Fact) of Non Liquid Assets, and Arbitrator shall be entitled to prevent the distribution of Non Liquid Assets to the indemnifying party provided Arbitrator has reasonable grounds to believe that on the preponderance of evidence submitted to him by the parties (i) an actual liability exists, and (ii) the indemnifying party has not provided reasonably satisfactory assurances that assets are available to cover such liability pursuant to indemnities made hereunder. The Arbitrator may order the non-distribution of Non Liquid Assets to the indemnifying party only in the amount and to the extent necessary to cover the Arbitrator's expected value of such liability; a notice to that effect will be promptly delivered to Sagi Genger (or to his successor Attorney in Fact).

5.    Concurrently with the execution of this Agreement, the Husband and the Wife shall each assume two percent (2%) of the amount due (as of the date hereof, approximately $9,880,000, inclusive of interest) under the promissory note to TPR, dated December 21, 1993, in the original principal amount of $8,950,000 made by D&K Limited Partnership ("D&K") of which the Wife is general partner (the "D&K Note"). A copy of the D&K Note, together with the form of the Instrument of Assumption by Husband and Wife and the Acknowledgment and Consent by TPR is annexed hereto as

25

1270083.3
[74518894V-2]

PLAINTIFF'S EX 0200-0025
Orly Genger v. Sagi Genger
Index No. 100697/08

Exhibit V(5). The Husband's and the Wife's aggregate liability of four percent (4%)

represents the entire marital obligation and indebtedness under the D&K Note.

6. Concurrently with the execution of this Agreement, each of the parties

will assume one half (1/2) of the liability under certain promissory notes (the "TPR

Notes") made by the Husband in favor of TPR in the aggregate amount including

outstanding principal and interest of $920,143.36 as of the date of this Agreement.

Husband represents and warrants that as of the date of this Agreement the TPR Notes are

legal, valid and binding obligations of Husband. Copies of the TPR Notes, together with

the form of the Instrument of Assumption by Husband and Wife and the

Acknowledgment and Consent by TPR are annexed hereto as Exhibit V(6).

7. Concurrently with the execution of this Agreement, the Husband will

forgive all obligations owed to him by D&K in the aggregate amount including

outstanding principal and interest of $772,880.16 as of the date of this Agreement ("D&K

Obligations to Husband"). A copy of a schedule of the D&K Obligations is annexed

hereto as Exhibit V(7). Husband hereby forgives the D&K Obligations to Husband and

hereby acknowledges that they are cancelled.

8. The Husband represents and warrants that to the best of his actual

knowledge, the obligations set forth in Schedule II(1) and as specifically described above

in this Article represent a complete and accurate list of all marital obligations and

liabilities in excess of $10,000 that he has entered into, or has caused the Wife to enter

into or become responsible for, prior to the date of this Agreement and to the best of his

knowledge all material contingent liabilities to which he or she or D&K may be subject

arising from any events, actions or omissions prior to the date of this Agreement. The

1270083.3
1745188NV-2

PLAINTIFF'S EX 0200-0026
Orly Genger v. Sagi Genger
Index No. 100697/08

Wife represents and warrants, to the best of her actual knowledge, that the obligations set forth in Schedule II(1) and as specifically described above in this Article represent a complete and accurate list of all marital obligations and liabilities in excess of $10,000 that she has entered into, or has caused D&K to enter into, prior to the date of this Agreement and all material contingent liabilities to which she or D&K may be subject as a result of her actions or omissions prior to the date of this Agreement.

9. Except as specifically stated to the contrary in this Agreement, each party will be solely responsible for the payment of all debts in his or her own name, whether incurred previously or in the future.

1270083.3
1745183AV-2

PLAINTIFF'S EX 0200-0027
Orly Genger v. Sagi Genger
Index No. 100697/08

## ARTICLE VI

## INCOME TAX RETURNS

1.      The parties have previously filed joint, federal, state and local

income tax returns for all tax years through the year ended December 31, 2003 for the

following jurisdictions:

US Federal Income Tax

New York State

New York City

(the "Joint Tax Returns"). The Husband represents and warrants that there are not any

pending or threatened investigations or audits of any of the Joint Tax Returns.

2.      With respect to any tax return either party filed separately for any

tax year, any refunds received or liabilities incurred in connection with such return shall

be for the account of the party filing such return. With respect to the parties' joint tax

returns for the years 2002 and 2003, any refunds received or liabilities incurred in

connection with such returns shall be for the benefit of the Husband.

3.      Promptly after either party receives notice of any investigations or

audit after the date hereof, he or she shall give prompt written notice to the other party.

The parties shall endeavor in good faith to agree on the handling of the investigation or

audit. If the parties have not so agreed within 30 days of notice to the other party, one or

both parties shall give notice of the failure to agree to Sagi Genger (or in his absence

David Parnes), who shall promptly appoint tax counsel in his discretion, subject to his

fiduciary obligations to the parties, and such tax counsel shall have full authority to

determine handling of the investigation or audit, including without limitation settling with

28

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0028
Orly Genger v. Sagi Genger
Index No. 100697/08

the investigatory or auditing authority and apportioning liability for any deficiency

(including penalties and interest), entitlement to any refund and costs of the investigation

or audit including reasonable attorneys', accountants' and other professional fees in

accordance with relative responsibility therefor. Husband and Wife may at any time by

joint written notice to Sagi Genger (or David A. Parnes, Esq.) and tax counsel appointed

as described above revoke the authority of tax counsel and proceed according to mutual

agreement. In any such case, liability for any deficiency (including penalty and interest),

entitlement to any refund and costs of the investigation or audit including reasonable

attorneys', accountants' and other professional fees shall be apportioned in accordance

with relative responsibility therefor.  In the event that either the Husband or the Wife

pays more than his or her share (as determined by this Article) of any deficiency, tax,

penalty, or interest relating to a previously filed Joint Tax Return, the Husband or Wife,

as the case may be, shall reimburse the other for 50% of the same, together with any

reasonable expenses the other party may incur in connection with payment of the excess,

including without limitation the other's reasonable attorneys', accountants' and other

professional fees and costs of litigation.

  4. Husband and Wife shall cooperate in the handling of the investigation

or audit, including without limitation execution of such powers of attorney as may be

required to enable Sagi Genger (or David A. Parnes, Esq.) and tax counsel to act as

contemplated by this Article, execution of amended tax returns or other documents as

may be reasonably appropriate in connection with such investigation or audit (provided

that the execution of any such other document would not adversely affect the party's

financial interest) and promptly and without any charge or other consideration making

29

1270083.3
1745188W-2

PLAINTIFF'S EX 0200-0029
Orly Genger v. Sagi Genger
Index No. 100697/08

available such papers, records, documents and information as may be reasonably appropriate in connection with such investigation or audit.

## ARTICLE VII

## MEDICAL INSURANCE AND RELATED EXPENSES FOR THE PARTIES

1. The Husband will maintain his own medical insurance for his own benefit without contribution by the Wife to the cost thereof. He shall be responsible for all of his own unreimbursed medical expenses (whether incurred before or after the date of execution of this Agreement), including, but not limited to, doctors, dentists, orthodontists, pharmacists, psychiatrists, psychologists or other mental health professionals. Such unreimbursed medical expenses include, but are not limited to, insurance deductibles, co-payments and uninsured medical expenses.

2. If the Wife may lawfully choose to do so, she may elect at her expense to obtain coverage through the Husband's plan of medical insurance under the Consolidated Omnibus Budget Reconciliation Act of 1985 (commonly referred to as "COBRA") or other similar laws (or if such coverage is not available for any reason she may obtain other substantially equivalent coverage reasonably satisfactory to her) for a period of 36 months. The Wife shall be responsible for all of her own medical expenses (whether incurred before or after the date of execution of this Agreement) unreimbursed by such COBRA or other coverage, including, but not limited to, doctors, dentists, orthodontists, pharmacists, psychiatrists, psychologists or other mental health professionals. Such unreimbursed medical expenses include, but are not limited to, insurance deductibles, co-payments and uninsured medical expenses.

30

PLAINTIFF'S EX 0200-0030
Orly Genger v. Sagi Genger
Index No. 100697/08

# ARTICLE VIII

## EQUITABLE DISTRIBUTION

1.    The parties acknowledge and agree that the resources of the parties and the provisions of this Agreement, including the transactions contemplated hereby, are intended, except as otherwise provided or reflected herein, , to effect approximately a 50-50 distribution of their net marital assets and represent and set forth a fair, reasonable and equitable distribution of each of their maintenance, necessaries, property and other rights arising from their marital relationship or otherwise and that the payments, property transfers and releases, whether past, present or due in the future ("Distribution") represent an agreeable and equitable division of such rights.  Henceforth all such rights shall be governed solely by this Agreement.

2.    Without limiting paragraph 1 of this Article, but subject to paragraph 5 of this Article, Wife's audit rights as provided in Article XII, the Wife further acknowledges and agrees that:

(a) she is accepting any and all Distributions and other rights under or contemplated by this Agreement in full satisfaction of any claim for equitable distribution or maintenance or spousal support from the Husband, all payments due pursuant to the *pendente lite* order of Judge Judith Gische made on December 3, 2002 and of any claim to any property of the Husband whether owned directly or beneficially by  him individually or jointly with the Wife or any third party or parties, that she may have, or may have asserted, including any claim under Section 236(B)(5) of the Domestic Relations Law of New York commonly known as the Equitable Distribution Law, or any applicable law of the United States, the State of New York, or any other state, nation,

31

PLAINTIFF'S EX 0200-0031
Orly Genger v. Sagi Genger
Index No. 100697/08

territory or province now or hereafter having jurisdiction over the parties, or over any of their marital assets; and

(b) in accepting the said Distributions and rights, she is waiving any and all rights, either under the Equitable Distribution Law or any other provision of law to any property of the Husband which she has heretofore claimed or may hereafter claim, constitutes "marital property" as defined by Section 236 Part B(1)(c) of the Domestic Relations Law, as well as to all Husband's separate property disclosed to her.

3.  Without limiting paragraph 1 of this Article, but subject to paragraph 5 of this Article, the Husband further acknowledges and agrees that:

(a) he is accepting any and all Distributions and other rights under or contemplated by this Agreement in full satisfaction of any claim for equitable distribution or maintenance or spousal support from the Wife, and of any claim to any property of the Wife whether owned directly or beneficially by her individually or jointly with the Husband or any third party or parties, that he may have, or may have asserted, including any claim under Section 236(B)(5) of the Domestic Relations Law of New York commonly known as the Equitable Distribution Law, or any applicable law of the United States, the State of New York, or any other state, nation, territory or province now or hereafter having jurisdiction over the parties, or over any of their marital assets; and

(b) in accepting the said Distributions and rights, he is waiving any and all rights, either under the Equitable Distribution Law or any other provision of law to any property of the Wife which he has heretofore claimed or may hereafter claim, constitutes "marital property" as defined by Section 236 Part B(1)(c) of the Domestic Relations Law, as well as to all Wife's separate property.

1270083.3
17451888W-2

PLAINTIFF'S EX 0200-0032
Orly Genger v. Sagi Genger
Index No. 100697/08

4.  Subject to paragraph 5 of this Article, each of the parties forever

waives, releases, renounces and relinquishes any and all rights or claims to the other's

licenses and certificates, degrees, professional practices, business, anticipated income,

career, goodwill, earned but as yet undistributed income, enhanced earning capacity,

bank accounts, retirement vehicles (including, without limitation, IRAs, 401(k) plans and

insurance policies), constructive trusts, equitable liens, pensions, automobiles, claims to

intangible assets of the other party, any and all rights or claims based upon the active or

passive role of either party in the management of a particular asset, as well as any other

rights or claims against the past, present or future property of the other, whether such

rights or claims arise at law, in equity or by virtue of the marital relationship.

5.      Notwithstanding any other provision of this Agreement, the parties

agree that neither party is waiving any rights, claims, liabilities, causes of action or other

obligations that may arise from a breach of any representation or any other term of this

Agreement, including, without limitation, the representation contained in Article II(9)(a).

## ARTICLE IX

## MUTUAL RELEASE AND DISCHARGE OF CLAIMS
## AND CLAIMS TO ESTATES

Subject to paragraph 5 of Article VIII:

1.  The Husband hereby remises, releases and forever discharges the Wife,

the Wife's heirs, executors, administrators, successors and assigns from all actions,

causes of action, suits, debts including without limitation the D&K Obligations to

Husband, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

contracts, controversies, agreements, promises, variances, trespasses, damages,

33

1270083.3
I745188HV-2

PLAINTIFF'S EX 0200-0033
Orly Genger v. Sagi Genger
Index No. 100697/08

judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, which the Husband, the Husband's heirs, executors, administrators, successors and assigns ever had or now has against the Wife, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all "separate property" and all "marital property" as those terms are defined in Section 236(B) of the Domestic Relations Law or arising out of the marital relationship, except for any cause of action for Divorce, Annulment or Separation and any defenses thereto.

2.      The Wife hereby remises, releases and forever discharges the Husband, the Husband's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, claims, and demands whatsoever, in law, admiralty or equity, known or unknown, which the Husband, the Husband's heirs, executors, administrators, successors and assigns ever had or now has against the Wife, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, including (without limitation) claims with respect to all "separate property" and all "marital property" as those terms are defined in Section 236(B) of the Domestic Relations Law or arising out of the marital relationship, except for (a) any amounts that may be due pursuant to the audits referred to in Article XII and (b) any cause of action for Divorce, Annulment or Separation and any defenses thereto.

34

1270083.3
1745188NV-2

PLAINTIFF'S EX 0200-0034
Orly Genger v. Sagi Genger
Index No. 100697/08

3. Each of the parties recognizes the existence of certain imbalances,

resulting from (a) inequality of distribution of marital assets prior to the date of this

Agreement; (b) the unequal bearing of marital expenses prior to the date of this

Agreement; and (c) the misuse by the Husband of marital IRA or other retirement funds

for the purchase of Lumenis stock. Each party agrees to disregard such past imbalances,

and to release the other, forever and for all purposes whatsoever from, any and all rights

and claims arising from such past imbalances.

4.      Each party waives, renounces, grants, remises and releases to the

other, forever and for all purposes whatsoever any and all rights and claims against the

other's estate including dower, curtesy and community property rights and interests, any

right of election under the relevant provisions of the Estates, Powers and Trusts Law of

the State of New York ("EPTL") or similar laws of other States or jurisdictions, domestic

or foreign, including, without limitation, EPTL Sections 5-1.1-A and 5-3.1 or under the

laws of testacy or intestacy (including, without limitation, EPTL Sections 4-1.1) in any

jurisdiction whatsoever, which he or she ever had, now has or may hereafter acquire in

the real or personal property or estate of the other, wherever situated and whether

acquired before or subsequent to the date of this Agreement, by reason of inheritance or

descent or by virtue of any decedent estate law or any other statute or custom, or arising

of the marital relationship, or for any other reason whatsoever.

5. (a) Each of the parties expressly revokes his or her Last Will and

Testament ("Will") insofar as the same makes any disposition (whether outright or in

trust) to or for the benefit of the other party and further expressly revokes any nomination

35

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0035
Orly Genger v. Sagi Genger
Index No. 100697/08

of the other party as an estate representative or in any other representative or fiduciary capacity thereunder.

(b) It is furthermore the intent of the parties that all Wills made and executed by either of them prior to the execution of this Agreement shall be read and administered as if the other party had predeceased him or her for purposes of distribution of his or her respective estate and of the property interests otherwise passing thereunder.

6. Where a party may be designated a beneficiary or survivor in a testamentary substitute (as defined in Section 5-1.1-A of the EPTL) or any other interest in property passing outside of the Will by operation of law (including but not limited to life insurance but excluding any life insurance specifically required to be maintained by one party for the benefit of the other pursuant to the terms of this Agreement) pursuant to which any interest in property does not pass under a Will, each of the parties will be irrevocably and permanently deemed to have renounced any such designation.

7. Each of the parties irrevocably and irrebuttably renounces any right of administration upon the estate of the other or nomination by the other as estate representative, contained in the other party's Will.

8. Neither party shall object to the probate of the other's Will, and in the event that either party dies intestate, the surviving party shall allow administration upon the estate and personal effects of the deceased party to be taken and received by any person who would have been entitled thereto had the surviving party predeceased the deceased party unmarried.

9. Each party shall, upon request by the executors, administrators or other legal representatives of the other party and receipt of the relevant instruments,

36

1270083.3
T74518888V-2

PLAINTIFF'S EX 0200-0036
Orly Genger v. Sagi Genger
Index No. 100697/08

promptly execute, acknowledge and deliver (without charge or other consideration) any

instrument which in the opinion of said executors, administrators or other legal

representatives is reasonably necessary to effectuate the waivers and other provisions of

this Article.

10.    Notwithstanding the foregoing, nothing contained in this

Agreement shall bar a claim on the part of either party for any cause arising out of a

breach of any representation or other term of this Agreement arising or accruing during

the lifetime of the deceased party against whose estate such a claim may be made, and

such claim shall be in addition to any other remedies which may be available.

## ARTICLE X

## SEPARATE OWNERSHIP

Except as specifically provided to the contrary in this Agreement, each

party shall own, as his or her separate property, free of any claim or right of the other, all

of the items of property, real, personal and mixed, of any kind, nature or description and

wherever situate, which are now or hereafter in his or her name, control or possession,

with full power to dispose of the same as fully and effectually in all respects and for all

purposes as if unmarried, provided that this provision shall not in any way limit the

ability of the Husband or the Wife to enforce his or her rights with respect to breach of

any representation or any other breach of the terms of this Agreement by the other party.

37

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0037
Orly Genger v. Sagi Genger
Index No. 100697/08

## ARTICLE XI

## RESIDENCE AND NONINTERFERENCE

1. It is, and shall be, lawful for the Husband and Wife at all times to reside from time at such places as each may see fit and to contract, carry on and engage in any employment, profession, business or trade, which either may deem fit, free from control, restraint or interference, direct or indirect, by the other in all respects as if and she were single and unmarried.

2. Neither the Husband nor the Wife shall in any way molest, disturb, trouble, or interfere with the peace and comfort of the other or compel or seek to compel the other to associate, cohabit or dwell with him or her by any action or proceeding for restoration of conjugal rights or by any means whatsoever.

3. The foregoing provisions of this Article shall not in any way limit the ability of the Husband or the Wife to enforce his or her rights with respect to breach of any representation or any other breach of the terms of this Agreement by the other party, as provided in Article XIII.

## ARTICLE XII

## THE WIFE'S RIGHT TO CERTAIN AUDITS OF THE HUSBAND'S ASSETS

1. On the Wife's request, upon not less than ten (10) business days' written notice, the Husband shall allow the Wife to audit his assets and liabilities as of the date of commencement of the parties' matrimonial action, *i.e.* January 31, 2002, as set forth on Schedule II(1) annexed hereto and made part hereof and as of the date of this Agreement in order to test the correctness and completeness of the items included on such Schedules

38

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0038
Orly Genger v. Sagi Genger
Index No. 100697/08

(including contingent liabilities) and the values assigned to each such item based on all information available at the time of audit.

    (a)     The Wife shall be entitled to conduct a total of five (5) such audits during the Husband's lifetime.

    (b)     Each such audit is to be conducted by a reputable accounting firm.

    (i)     Within two (2) weeks of the date of execution of this Agreement, the Husband will provide the Wife with the names of two accounting firms and the principals thereof who will be acceptable to the Husband to perform all of the audits. If the Wife chooses one of those accounting firms and principals, that firm and principal will conduct the audits when requested by the Wife in accordance with the guidelines set forth herein.

    (ii)     If the Wife does not choose one of those two firms and principals, the Husband shall have the right on one occasion and only one occasion prior to the commencement of an audit to reject the Wife's selection of any other accounting firm to conduct the audits. Provided that the Husband has not previously exercised that right, he may do so on any of the remaining audits. If the Husband elects to exercise that right, the Wife may not utilize the rejected firm in that or any other audit.

    (c)     The Husband will cooperate, and will cause persons under his control to cooperate, with the auditors and will promptly furnish such documents as the auditors may request from time to time. It is expressly understood that the auditors' document requests may relate to matters up to and including the date of the audit.

39

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0039
Orly Genger v. Sagi Genger
Index No. 100697/08

(d)    Such audits shall be at the Wife's sole expense, except that if the audits find assets not previously disclosed by the Husband on Schedule II(1) with a cumulative value greater than two hundred fifty thousand dollars ($250,000), the Husband will be responsible for the entire reasonable cost of all audits which may have been performed.

2.    (a)    If the audits, individually or cumulatively, find that the Husband owned any property on January 31, 2002, which is not listed on Schedule II(1), the Husband will pay to the Wife one-half (1/2) of the value of that property.

(b)    In addition, if the audits, individually or cumulatively, find assets not listed on Schedule II(1) with a cumulative value greater than two hundred fifty thousand dollars ($250,000), then (i) such error will be presumed willful on the Husband's part, and (ii) the Husband will pay to the Wife one-half (1/2) of three (3) times of that value (in addition to paying audit expenses as provided above). However, the Husband will have the opportunity to rebut the presumption of willful error at an arbitration conducted in accordance with Article XIII and at his expense by a "preponderance of evidence" test. If the Husband has previously made payments pursuant to subparagraph 2 (a) of this Article, in respect of those assets, he shall receive a credit therefor against the amounts owed pursuant to this subparagraph (b).

(c)    If the Wife conducts a third audit, (i) after two consecutive audits have failed to find assets not listed on Schedule II(1) or have failed to find a difference in assets between the first and second of such consecutive audits of more than twenty five thousand dollars ($25,000), and (ii) the third audit fails to find assets not listed on such Schedule or finds a difference of less than twenty five thousand dollars ($25,000) from

40

1270083.3
17451888V-2

PLAINTIFF'S EX 0200-0040
Orly Genger v. Sagi Genger
Index No. 100697/08

the previous two audits, then the Wife will be liable to the Husband for his reasonable

expenses incurred as a consequence of cooperating with the third consecutive audit.

(d)      If the Husband disputes the results of any audits or asserts that the

cumulative errors (if greater than two hundred fifty thousand dollars ($250,000)) were

not willful, the dispute will be determined by arbitration as is provided in Article XIII of

this Agreement.

(e)      Any payments due under paragraphs 2 (a) and (b) above shall be

made in cash within 60 days of the later of the completion of the audit or the receipt of

the arbitration decision.

## ARTICLE XIII

## GOVERNING LAW AND ARBITRATION

1.      This Agreement will be governed and interpreted in accordance

with laws of the State of New York, without application of its conflicts of law provisions.

This provision for arbitration shall be specifically enforceable by the parties.

Any controversy, claim or dispute between the parties directly or indirectly arising out of

this Agreement shall be finally settled by arbitration as provided herein. Either party may

give written notification to the other party requesting arbitration to resolve any

controversy, claim or dispute arising out of this Agreement between the parties.

2.      Subject to the provisions of paragraph 5 of this Article, any award

rendered by the Arbitrator (as defined below) may be confirmed in any court having

jurisdiction thereof. Notwithstanding the foregoing paragraphs of this Article, either

party may file a claim for temporary emergency relief or other temporary remedies not

otherwise available through arbitration, in a court of competent jurisdiction, without first

41

1270083.3
17451888W-2

PLAINTIFF'S EX 0200-0041
Orly Genger v. Sagi Genger
Index No. 100697/08

having to arbitrate the dispute, provided that such claim for injunctive relief arises from

an alleged breach of a specific term of this Agreement.

3.       In the event that a dispute is submitted to arbitration, there shall be

one (1) arbitrator (the "Arbitrator") selected (x) by the parties or (y) if the parties fail to

select an Arbitrator within twenty (20) days following receipt of a list of potential

arbitrators from the American Arbitration Association ("AAA"), the Arbitrator shall be

selected by the AAA.  The Arbitration shall be conducted as promptly as practicable after

the selection of the Arbitrator in accordance with the Commercial Arbitration Rules and

Mediation Procedures.  The Arbitrator shall be someone who has at least fifteen (15)

years of commercial law experience or who was a judge of a court of general jurisdiction.

(a)       The arbitration hearing shall be held in Manhattan, New York,

pursuant to the Commercial Arbitration Rules and Mediation Procedures, except where

those rules conflict with the provisions of this Article, in which case the provisions of this

Article shall control.

(b)       The Arbitrator shall arrange a hearing at a mutually agreeable time

and location in Manhattan, New York, which hearing shall be not less than thirty (30)

calendar days, and not more than sixty (60) calendar days, after the date on which the

Arbitrator was appointed.

(c)       The parties shall each have the right to submit documents,

testimony, information, data and memoranda to the Arbitrator in support of their

respective positions.

(d)       Within sixty (60) calendar days after such hearing, the Arbitrator

shall render a decision with respect to the dispute.

1270083.3
1745168MV-2

PLAINTIFF'S EX 0200-0042
Orly Genger v. Sagi Genger
Index No. 100697/08

(e)     The party against whom the Arbitrator found shall bear the total

costs, Arbitrator's fees and other expenses of the arbitration between the parties,

including the legal fees borne by the other party in bringing or defending the action.

4.     The Arbitrator shall have the authority to require the submission

(at hearing or otherwise) of such documents, information, testimony, and other items as

the Arbitrator may deem necessary to make a fair and reasonable decision, including the

authority to issue subpoenas and similar process to compel production of such

documents, information, testimony and other items.

5.     Subject to the remaining provisions of this paragraph 5, any award

rendered by the Arbitrator shall be conclusive and binding upon the parties hereto;

provided, however, that any such award shall be accompanied by a written opinion of the

Arbitrator giving the reasons for the award.

(a)     The findings of the Arbitrator may not change the express terms of

this Agreement and shall be consistent with the Arbitrator's belief as to what findings a

court of proper jurisdiction would have made in applying the applicable law to the facts

underlying the dispute.

(b)     There shall be no right of appeal from the Arbitrator's

determination unless the Arbitrator shall not have complied with the provisions of this

Article.

(c)     The Arbitrator shall have no authority to award relief in excess of

what this Agreement provides. Moreover, the Arbitrator shall have no authority to award

non-monetary or equitable relief.

## ARTICLE XIV

43

1270083.3
17451888W-2

PLAINTIFF'S EX 0200-0043
Orly Genger v. Sagi Genger
Index No. 100697/08

## LEGAL AND EXPERT FEES

1.      (a) The Wife has previously been represented in the parties'

matrimonial litigation and/or in the negotiation, preparation and execution of this

Agreement by Dominic Barbara and Marilyn B. Chinitz, of the Law Offices of Dominic

Barbara, 1100 Stewart Avenue, Garden City, NY 11530; Sheldon M. Greenbaum of

Goldman & Greenbaum, P.C., 60 East 42nd Street, New York, NY 10165; Philip

Greenhaus, 50 East 42nd Street, New York, NY 10017; and, as to certain commercial

aspects of this Agreement, Carol Robinson Schepp of Carter Ledyard & Milburn LLP, 2

Wall Street, New York, New York 10005.

(b) The Husband has been represented in the parties' matrimonial

litigation and in the negotiation, preparation and execution of this Agreement by Stanford

G. Lotwin and Jay D. Silverstein of Blank Rome LLP, 405 Lexington Avenue, New

York, New York 10174, and Edward Klimerman of Sonnenschein Nath & Rosenthal

LLP, 1221 Avenue of the Americas, New York, NY 10020.

2.      (a) Except as otherwise provided in sub-paragraph (b) of this

Section 2, each party will be solely responsible for the payment of all legal fees, expert

fees and expenses incurred by him or her for services in connection with their

matrimonial litigation and with the negotiation, preparation and execution of this

Agreement (or in connection with any subsequent divorce) and each shall indemnify the

other from all loss and/or expense arising from any claims for counsel fees and

disbursements made by any attorney (or claims for fees and disbursements by any other

professional or expert) in reference to the negotiation and preparation of this Agreement,

and in reference to any other matters related to the matrimonial difficulties existing

44

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0044
Orly Genger v. Sagi Genger
Index No. 100697/08

between the Husband and the Wife including the procurement of an undefended

judgment of divorce.

(b) The following legal fees (i) approximately $200,000 prepaid by

the Wife to the Law Offices of Dominic Barbara, prior to May 24, 2004, for which legal

services are in dispute, and (ii) all legal fees, owed to the lawyers enumerated in Section

3 of Article I and in Section 1(b) of this Article XIV and their respective firms, and

incurred by the Husband and the Wife in connection with the negotiations of this

Agreement from May 24, 2004 until the date of execution of this Agreement, shall be

paid by Sagi Genger (or David A. Parnes, Esq.), or reimbursed to the parties, from the

assets made available to him pursuant to Article II, as soon as practicable.

(c) In consideration for sharing the expense of legal fees, and their

payment from assets made available pursuant to Article II, the Wife will pursue in good

faith (personally, or – at her election – appoint Sagi Genger to pursue in her stead) the

Law Offices of Dominic Barbara, to reclaim the approximately $200,000 prepaid by the

Wife which shall be equally shared by the parties.

## ARTICLE XV

## FULL DISCLOSURE

1.       Each party acknowledges that:

(a)       he or she understands, and has been advised of, his or her right: (i)

to obtain full and complete financial disclosure from the other with respect to all assets

and income owned by the other party whether titularly or beneficially, and (ii) to obtain

appraisals from independent appraisers of his or her own choosing of any property owned

45

1270083.3
I7451888XV-2

PLAINTIFF'S EX 0200-0045
Orly Genger v. Sagi Genger
Index No. 100697/08

by the parties' collectively, or either party individually, including, without limitation,

appraisals of tangible and intangible assets;

(b)    he or she has utilized the rights specified in paragraph 1(a) of this

Article to the fullest extent that he or she wishes to do so both in the parties' litigation,

including depositions and appraisals, and in earlier extensive voluntary document

discovery;

(c) that he or she is satisfied with the disclosure that he or she has received

from the other; and

(d) that he or she has knowingly and intentionally directed his or her

counsel not to seek further disclosure from the other party or to cause appraisals to be

made.

2. (a)    The Wife acknowledges that she has made inquiry into the

financial circumstances of the Husband to the extent that she wishes to do so at this time;

(b)    The Wife has had a full opportunity to consult with, and has

consulted at length with, her attorneys identified or referenced in Article XIV regarding

all of the circumstances hereof to the extent that she wishes to do so at this time;

(c)    The Wife acknowledges that this Agreement has not knowingly

been the result of any fraud, duress or undue influence exercised upon her by the

Husband or by any other person or persons; and

(d) The Wife acknowledges that she is fully satisfied with the services

rendered on her behalf by her attorneys identified or referenced in Article XIV.

46

PLAINTIFF'S EX 0200-0046
Orly Genger v. Sagi Genger
Index No. 100697/08

3.    The Wife's acknowledgments in paragraphs (1) and (2) above are based on her ability to seek remedies in the event of a breach of any representation in this Agreement and to exercise her audit rights as provided in Article XII.

4.    The Husband acknowledges that (x) he has made inquiry into the financial circumstances of the Wife to the extent that he wishes to do so, and (y) that he cannot appropriately make a claim against the Wife by reason of her non-willful failure to disclose or his failure of knowledge of the financial circumstances of the Wife;

(a) The Husband has had a full opportunity to consult with, and has consulted at length with, his attorneys, to wit: Blank Rome LLP and Sonnenschein Nath & Rosenthal LLP regarding all of the circumstances hereof;

(b) The Husband acknowledges that this Agreement has not knowingly been the result of any fraud, duress or undue influence exercised upon him by the Wife or by any other person or persons; and

(c) The Husband acknowledges that he is fully satisfied with the services rendered on his behalf by Blank Rome LLP and by Stanford G. Lotwin and Jay D. Silverstein in particular.

## ARTICLE XVI

## POSSIBLE INVALIDITY

If any provision of this Agreement, for any reason whatsoever, be declared invalid or unenforceable by any Court of competent jurisdiction, by statute or governmental regulation, the remainder of this Agreement and the application of such provision to any person or situations, other than those as to which such provision may have been held invalid or unenforceable shall not be affected thereby and shall continue

47

1270083.3
1745188NV-1

PLAINTIFF'S EX 0200-0047
Orly Genger v. Sagi Genger
Index No. 100697/08

to be enforced to the fullest extent that such severance of the invalid portions is possible

without vitiating the original intent and purposes and economic intentions of the parties

(the "Original Intent"), as herein set forth. If it shall appear impossible or impracticable to

continue this Agreement in force after such severance, then and in such event, the parties

hereto each undertake and agree that they will, upon request of the other party, make,

execute, acknowledge and deliver any and all instruments which may be lawfully

effective to again reflect the parties Original Intent, without diminishing the rights of the

parties or increasing their obligations, financial or otherwise, herein. In the event a

provision is superseded under this Article XVI, either party may seek reformation of the

affected provision in any court of competent jurisdiction, which shall be empowered to

revise the provision to reflect the parties' Original Intent to the greatest extent possible,

consistent with New York law. It is the intention of the parties hereto that this provision

may be enforced in equity in addition to, and not to the exclusion of, any other remedies

which may be available to the parties. The parties do not intend by this paragraph to

imply the illegality, invalidity and/or unenforceability of any term, provision, article or

paragraph of this Agreement.

## ARTICLE XVII

## RECONCILIATION AND MATRIMONIAL DECREES

1.    Simultaneously with the execution of this Agreement, each of the

parties will execute and deliver to the other, and in the future will promptly execute and

deliver (without further consideration) to the other:

(a)(i)    All documents reasonably necessary to vacate any and all

restraining orders and injunctions that have been issued in any action between the parties

48

1270083.3
J745188W-2

PLAINTIFF'S EX 0200-0048
Orly Genger v. Sagi Genger
Index No. 100697/08

resumption of cohabitation and/or sexual relationships even if on a permanent basis or (b)

the parties' actual remarriage (irrespective of whether or not that marriage ever ends).

      3.     This Agreement shall not be invalidated or otherwise affected by

any decree or judgment made in any Court in any pending or future action or proceeding

between the parties.

      4.     Each party agrees that the provisions of this Agreement shall be

submitted to any court in which either party may seek a judgment, order or decree in a

matrimonial action or any other action or proceeding affecting the marital status of the

parties and that the provisions of this Agreement shall be incorporated in said judgment,

order or decree with such specificity as the Court shall deem permissible and by reference

as may be appropriate under law and under the rules of the Court. However,

notwithstanding said incorporation, the provisions of this Agreement shall survive any

decree, order or judgment and shall not merge therein, and this Agreement may be

independently enforced.

      5.     Both parties will fully cooperate with each other in obtaining a

religious divorce or annulment and each will promptly execute and deliver (without

further consideration) all documents reasonably required therefor by the religious court,

tribunal or body. In addition, each party will, if requested, appear (at any reasonable time

and location) before any religious court, tribunal or body in order to effectuate the

purposes of this paragraph. All the costs of such religious divorce or annulment shall be

borne equally by the parties.

50

1270083.3
1743188RV-2

PLAINTIFF'S EX 0200-0049
Orly Genger v. Sagi Genger
Index No. 100697/08

## ARTICLE XVIII

## IMPLEMENTATION

The Husband and Wife shall, at any and all times, upon request by the other party or his

or her legal representatives, promptly make, execute and deliver (without charge or other

consideration) any and all other and further instruments as may be reasonably required

for the purpose of giving full force and effect to the provisions of this Agreement.

## ARTICLE XIX

## GENERAL PROVISIONS

1.    No failure by either party to exercise any right hereunder or to

insist upon strict compliance by the other party with any obligation hereunder and no

custom or practice of the parties at variance with the terms hereof shall constitute a

waiver of either party's right to demand exact compliance with the terms hereof.  Any

waiver by either party (whether formal or informal) nonetheless found to exist by an

Arbitrator with respect to any particular default by the other party shall not affect or

impair the waiving party's rights in respect of any subsequent default of the same or of a

different nature, nor shall any delay or omission of either party to exercise any right

arising from such a default affect or impair his or her rights as to such default or any

subsequent default.

2.    This Agreement shall inure to the benefit of and shall be binding

and obligatory upon the heirs, personal representatives, administrators, executors and

assignees of the parties herein.

1270083.3
1745188NV-2

PLAINTIFF'S EX 0200-0050
Orly Genger v. Sagi Genger
Index No. 100697/08

3.    Neither this Agreement nor any provision hereof shall be terminated, amended or modified in any respect except by an agreement in writing duly subscribed and acknowledged by both parties with the same formality as this Agreement. Any asserted termination, annulment or modification not so subscribed and acknowledged shall be without effect even if it was substantially and detrimentally relied upon.

4.    The parties may at any time amend, modify or annul this Agreement (in the manner set forth in paragraph 3 of this Article) without the consent of any third person and no third person shall be deemed to have been given any interest or right hereunder.

5.    This Agreement may be executed in counterpart copies and shall become effective when copies executed by both parties have been exchanged. The parties intend to execute in all eight (8) counterpart copies hereof.

## ARTICLE XX

## NOTICES

Any notice required by this Agreement shall be in writing and shall be made to the addresses first listed above (or to any address changed by like notice) or to the facsimile numbers listed below:

Arie Genger
2600 Island Boulevard
Penthouse One
Williams Island
Aventura, Florida   33160

With a copy to:

52

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0051
Orly Genger v. Sagi Genger
Index No. 100697/08

Edward Klimerman, Esq.
Sonnenschein Nath & Rosenthal LLP
1221 Ave. of the Americas,
New York, NY 10010-1089
Fax: (212) 768 6800

Dalia Genger
210 East 65th Street
New York, NY 10021
Fax (212) 735-9021

With a copy to

Carol Robinson Schepp, Esq.
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005
Fax (212) 732-3200

Any such notice shall be delivered by certified mail, return receipt requested or by personal (receipted) delivery or by confirmed facsimile. Unless otherwise provided, such notice shall be effective one (1) day after actual receipt of personal or faxed delivery or ten (10) days after mailing, whichever is applicable.

## ARTICLE XXI

## ENTIRE UNDERSTANDING

This Agreement contains the entire understanding of the parties who hereby acknowledge that between them there have been and are no representations, warranties, covenants or undertakings (whether written or oral, express or implied) with respect to the subject matter hereof including, without limitation, all rights or claims arising at law, in equity or pursuant to the parties' marital relationship other than those expressly set forth herein or in the transactions contemplated hereby or entered into concurrently herewith.

53

1270083.3
1745188RV-2

PLAINTIFF'S EX 0200-0052
Orly Genger v. Sagi Genger
Index No. 100697/08

# ARTICLE XXII

## REPRESENTATIONS AS TO UNDERSTANDING OF THE TERMS OF THIS AGREEMENT

1.    Each party represents that:

(a)    He or she has had independent legal counsel of his or her own selection;

(b)    His or her legal counsel has advised him or her fully (i) with respect to his or her rights in and to the property and income and estate of the other party if they were divorced in the absence of an agreement such as this one and (ii) with respect to the effect of this Agreement on those rights and (iii) with respect to the rights and obligations set forth in this Agreement. Each party additionally acknowledges that he or she understands such advice from counsel and the terms of this Agreement;

(c)    He or she has given due consideration to all the facts and circumstances likely to influence his or her judgment with respect to matters embodied in this Agreement;

(d)    He or she has no educational, medical (including the use of medications, whether prescription or otherwise), psychological, addictive, sociological, language or cultural disability which would prevent him or her from understanding each and every aspect of this Agreement and the legal and economic and personal consequences of executing this Agreement; and

(e)    He or she believes that the provisions of this Agreement are fair and reasonable as of the date of execution of this Agreement, and that he or she believes

1270083.3
17451888\V-2

PLAINTIFF'S EX 0200-0053
Orly Genger v. Sagi Genger
Index No. 100697/08

that the provisions of this Agreement are not unconscionable now will not be
unconscionable in the future.

2.    After time to reflect upon the significance and terms of this
Agreement, he or she makes this Agreement freely and voluntarily by him or her and
acknowledges that this Agreement has not knowingly been the result of any fraud, duress,
coercion or undue influence exercised by either party upon the other or by any other
person or persons upon such party.

55

PLAINTIFF'S EX 0200-0054
Orly Genger v. Sagi Genger
Index No. 100697/08

EACH OF THE PARTIES ACKNOWLEDGES:

THAT HE OR SHE HAS CAREFULLY READ THIS AGREEMENT ;

THAT HE OR SHE UNDERSTANDS THE TERMS OF THIS AGREEMENT;

INCLUDING ARTICLE XXII OF THIS AGREEMENT;

THAT HE OR SHE UNDERSTANDS THAT THIS AGREEMENT WILL BE

BINDING ON HIM OR HER IN ALL CIRCUMSTANCES; AND

THAT HE OR SHE HAS HAD A FULL OPPORTUNITY TO CONSULT WITH

(AND HAS CONSULTED WITH) COUNSEL OF HIS OR HER OWN

SELECTION WITH RESPECT THERETO.

IN WITNESS WHEREOF, the parties have hereunto set their respective

hands and seals as of the day and year first above written to eight (8) counterparts hereof,

each of which shall constitute an original.

Witness for the Wife
Carol Robinson Schepp, Esq.

DALIA GENGER

Witness for the Husband
Edward Klimerman, Esq.

ARIE GENGER

56

1268492.3
17451888\V-2

PLAINTIFF'S EX 0200-0055
Orly Genger v. Sagi Genger
Index No. 100697/08

STATE OF NEW YORK )

                            ) ss.:

COUNTY OF NEW YORK )

On this 30ᵗʰ day of Oct., 2004, before me, the undersigned, a Notary Public in and for the State, personally appeared DALIA GENGER, personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual executed the instrument.

_Deborah Kempf_
Notary Public

DEBORAH KEMPF
Notary Public, State of New York
No. 31-OIKE 4999904
Qualified in New York County
Commission Expires August 3, 2006

STATE OF NEW YORK )

                            ) ss.:

COUNTY OF NEW YORK )

On this 28ᵗʰ day of OCT. 2004, before me, the undersigned, a Notary Public in and for said State, personally appeared ARIE GENGER, personally known to me known or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that his executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_Deborah Kempf_
Notary Public

DEBORAH KEMPF
Notary Public, State of New York
No. 31-OIKE 4999904
Qualified in New York County
Commission Expires August 3, 2006

12684923.3
17451888W-2

PLAINTIFF'S EX 0200-0056
Orly Genger v. Sagi Genger
Index No. 100697/08

**PLAINTIFF'S EX 0200-0057**
**Orly Genger v. Sagi Genger**
**Index No. 100697/08**

CERTIFICATE OF SUBSCRIBING WITNESS

State of New York       )
                        ) ss.
County of New York  )

On the _30_ day of _October_ in the year 2004 before me, the undersigned, a Notary Public in and for said State, personally appeared CAROL ROBINSON SCHEPP, the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that she resides at _____ _165 Circle Drive, Manhasset, NY 11030_ ; that she knows DALIA GENGER to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said DALIA GENGER execute the same; and that said witness at the same time subscribed her name as a witness thereto.

_Deborah Kempf_
Notary Public

DEBORAH KEMPF
Notary Public, State of New York
No. 31-OIKE 4999904
Qualified in New York County
Commission Expires August 3, 2006

CERTIFICATE OF SUBSCRIBING WITNESS

State of New York       )
                        ) ss.:
County of New York  )

On the _28_ day of _OCT._ in the year 2004 before me, the undersigned, a Notary Public in and for said State, personally appeared EDWARD KLIMERMAN, the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he resides at _14 EAST_ _75th STREET   NEW YORK, N.Y. 10021_ ; that he knows ARIE GENGER to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said ARIE GENGER execute the same; and that said witness at the same time subscribed his name as a witness thereto.

_Deborah Kempf_
Notary Public

DEBORAH KEMPF
Notary Public, State of New York
No. 31-OIKE 4999904
Qualified in New York County
Commission Expires August 3, 2006

58

1268492.3
1745185RV-2

PLAINTIFF'S EX 0200-0058
Orly Genger v. Sagi Genger
Index No. 100697/08