# EXHIBIT 5

Execution Copy
6/28/12

# GENGER LITIGATION TRUST AGREEMENT

Arie Genger and Orly Genger, make this trust agreement ("Agreement") and hereby appoint David Broser and Lance Harris, as the initial trustees (hereinafter, along with any other trustees serving hereunder, the "Trustees").

Arie Genger and Orly Genger hereby transfer and assign to the Trustees the property listed on Schedule "A" annexed hereto and made a part hereof, to hold in trust for the benefit of ADBG, LLC ("Lender"), in accordance with the provisions of Article I. This trust may be referred to as the "Genger Litigation Trust."

## ARTICLE I.   GENGER LITIGATION TRUST

## ARTICLE II.   The Trustees shall administer the Genger Litigation Trust (sometimes referred to herein as the "Trust") as follows:

A.   **Mandatory Payments.**  (1) The Trustees shall pay the entire net proceeds received pursuant to the terms of the First Amendment to Credit Agreement annexed hereto as Schedule "B" (together with the Credit Agreement dated September 19, 2008 the "Credit Agreement"). Terms not defined herein shall have the meaning ascribed to them in the Credit Agreement.

**(2)**   In addition, the Trustees shall further pay all amounts distributed to the Genger Litigation Trust, whether such amounts are classified as distributions of income, capital gains or principal, net of any debts or expenses, excluding shares of Trans-Resources, Inc. within thirty (30) days of receiving such amount.

1

CONFIDENTIAL                                    AGENGER000209

B.    **Termination of Trust.**  The Genger Litigation Trust shall terminate upon the later to occur conclusion of the Lawsuits, Additional Lawsuits and/or Future Lawsuits or payment of all sums due under the Credit Agreement.

C.    **Administration of the Genger Litigation Trust.**    The following administrative provisions shall apply to the Genger Litigation Trust:

(1)    Arie Genger shall have the power to direct the Trustees to make any litigation decisions in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits involving his claims in such Lawsuits, Additional Lawsuits, and/or Future Lawsuits wherein he is a party.

(2)    Should the Genger Litigation Trust receive any shares of Trans-Resources, Inc. ("TRI"), immediately prior to such receipt Arie Genger will become a Trustee hereunder with exclusive rights to vote such shares so long as he is alive.  Such shares shall be held in a separate trust from all other assets.

(3)    If, upon Arie Genger or Orly Genger's death, any Death Taxes are imposed upon such estate by reason of the inclusion of the assets of the Genger Litigation Trust in their gross estate, the Trustees shall have no liability for the payment of such Death Taxes. Instead, such Death Taxes shall be paid by the executors or other legal representatives of the estate, who shall have no right to reimbursement from the Genger Litigation Trust for said Death Taxes.  For purposes of this Article, the term "Death Taxes" shall mean all estate, inheritance, generation-skipping transfer taxes on direct skips, transfer, succession and other enforceable death taxes, domestic or foreign, including interest and penalties thereon, imposed by reason of either Arie Genger or Orly Genger's death.

2

## ARTICLE III.    POWER OF APPOINTMENT/TRUST BENEFICIARIES

A.    Any property payable to a descendant of Arie Genger and Orly Genger (each such descendant being referred to herein as the "Beneficiary") subject to the provisions of this Article shall not be paid outright to the Beneficiary, but instead shall be held in as many separate trusts for the Beneficiary as the Trustees, in their discretion, determine. Shares of TRI shall be held in a separate trust.

B.    **General Powers of Appointment.**    Notwithstanding any contrary provision of this Article:

(1)    The Trustees are authorized (but are not required) to grant to any beneficiary hereunder a testamentary general power of appointment (as defined in Section 2041 of the Code) over so much or all of the principal of such trust and upon such terms and conditions as the Trustees, in their discretion, determine. Any such power shall be conferred in an acknowledged written instrument signed by the Trustees, a copy of which is delivered to the beneficiary and the original of which is filed with the records of the trust. Any power of appointment so conferred may be modified or revoked by the Trustees (which may but need not be the Trustees that originally conferred the power) in the same manner at any time before the beneficiary's exercise of the power becomes effective. If revoked, a new power may be granted as provided in this section. The Trustees may irrevocably release the power conferred upon it hereunder if they believe it desirable to do so. If a power is conferred over only a portion of a trust, the Trustees may divide the trust into two (2) shares to constitute separate trusts so that the power applies entirely to one of the separate trusts and not to the other.

(2)    Without limiting the purposes for which the Trustees may confer a general power of appointment as provided herein, we suggest that the Trustees consider granting

3

such a power if the generation-skipping transfer taxes that would be imposed at the beneficiary's death are estimated to be greater than the estate taxes that would be payable at his or her death if the trust property were included in his or her gross estate for Federal estate tax purposes. In determining whether to grant or revoke a general power of appointment, the Trustees may rely conclusively on any statement provided by or on behalf of the beneficiary as to the potential value of his or her gross estate.

(3)    Notwithstanding the foregoing provisions of this Paragraph, if, in the judgment of the Trustees, potential claims of the beneficiary's creditors against his or her estate would render the granting of a general power of appointment economically unfeasible, we urge the Trustees to refrain from granting such a power (or to revoke such a power, if previously granted), until such claims have been satisfied out of other assets during the beneficiary's lifetime.

C.    **Application of Rule Against Perpetuities.**  Notwithstanding any contrary provision in this Agreement, each trust created hereunder shall terminate, if not sooner terminated, no later than the expiration of the longest period that property may be held in trust under the law of the jurisdiction governing such trust, provided that if the jurisdiction has a rule against perpetuities or similar rule which applies only to certain types of property (such as, for example, real property), the provisions of this paragraph shall apply only to such property. If under the law of such jurisdiction the longest period that property may be held in trust may be determined with reference to the death of the last survivor of a class of persons in being upon a specified date, that class shall consist of all of Arie Genger's parents' descendants in being on the date of this Agreement. Upon termination of a trust pursuant to the provisions of this paragraph, the remaining assets shall be paid to the Beneficiary.

4

CONFIDENTIAL                                                                 AGENGER000212

## ARTICLE IV.   ULTIMATE DISPOSITION.

If upon the termination of any trust created under this Agreement there is no living beneficiary to whom the remaining assets of such trust may be paid, the Trustees shall pay such property to the person or persons, other than creditors, who would have taken, and in the amounts and proportions to which they would have been entitled, had Arie Genger or Orly Genger then died intestate, unmarried and a domiciliary of the State of New York.

## ARTICLE V.   ADMINISTRATION OF TRUSTS

A.    **General Administrative Provisions Relating to Trusts.**   (1)    The Trustees' power to pay income or principal to a trust beneficiary shall include the power to apply the same for the benefit of the beneficiary, or to pay to another trust for the benefit of the beneficiary.

(2)    The Trustees shall act primarily in the interests of the current beneficiaries (even to the extent of distributing the entire principal, thereby terminating the trust) and without regard to the interests of subsequent beneficiaries or remaindermen or any rules of trust law which may require impartiality as among such interests, and the interests of all subsequent beneficiaries or remaindermen are subordinate to the exercise of such powers.

(3)    The Trustees may make discretionary payments of income and principal in equal or unequal amounts (without the necessity to equalize payments upon termination) and at any time may exclude any one or more beneficiaries from any such payment. In considering whether or not to make any discretionary distribution, the Trustees may but need not consider the beneficiary's other assets and sources of income, and the obligation of any person to support the beneficiary.

5

CONFIDENTIAL                                                            AGENGER000213

(4)     Whenever the Trustees pay the remaining principal upon termination of any trust, such principal may be paid in cash or in kind and, except as otherwise provided in connection with the Genger Litigation Trust, shall also include all accumulated, undistributed and accrued income thereon.

B.     **S Corporation Stock.**     Notwithstanding any other provision of this Agreement, [i] if any trust hereunder at any time holds or purchases shares of stock of an S corporation (as defined in Section 1361(a) of the Code) ("S corporation stock") and [ii] the Trustees thereof intend to make or have made an election under Section 1361(d)(2) of the Code to become a qualified subchapter S trust (within the meaning of Section 1361(d)(3) of the Code):

(1)     The Trustees shall divide such trust into separate trusts so that at least one trust shall consist solely or partly of S corporation stock and at least one trust shall consist solely of assets other than S corporation stock.

(2)     No Trustee who is a discretionary income beneficiary or remainderman of the trust shall participate in a decision to purchase S corporation stock.

(3)     Any trust holding S corporation stock shall be governed by the following terms, whether or not such trust continues to hold such S corporation stock:

(a)     Such trust shall have only one (1) income beneficiary during that beneficiary's lifetime (who, in the case of a trust under Article I, shall be such descendant as the Trustees shall select, and in the case of a trust under Article II, shall be the Beneficiary);

(b)     All of the trust's income (within the meaning of Section 643(b) of the Code) shall be distributed currently to the current income beneficiary;

(c)     Any corpus distributed during the life of the current income beneficiary shall be distributed only to such beneficiary;

(d)     The income interest of the current income beneficiary shall terminate on the earlier of such beneficiary's death or the termination of the trust;

6

CONFIDENTIAL                                    AGENGER000214

(e)     If the current income beneficiary is not then a citizen or resident of the United States, the Trustees shall promptly dispose of any shares of S corporation stock then held in the trust, such disposition to be in compliance with any shareholder agreement then in effect concerning such shares;

(f)     Upon the termination of the trust during the current income beneficiary's lifetime, the trust shall distribute all of its assets to such beneficiary; and

(g)     The Trustees shall not have or exercise any power that could cause the trust not to be eligible to qualify as a qualified subchapter S trust (within the meaning of Section 1361(d)(3) of the Code).

C.     **Interests Not Transferable or Subject to Creditors' Claims.** No trust beneficiary shall have any right or power to pledge, assign, sell, transfer, alienate, or in any other manner encumber his or her interest in income or principal, nor shall any trust hereunder be subject to any legal process, bankruptcy proceedings or the claims, interference or control of the creditors of such beneficiary. In addition, Section 7-1.6 of the New York Estates, Powers and Trusts Law, or any successor or similar section which may hereafter be in effect, shall not be applicable to any trust established hereunder.

## ARTICLE VI.    DISTRIBUTIONS OF PROPERTY

A.     **Payments to Persons Under a Disability.** When property is payable outright to a person under the age of twenty-one (21) years or under another legal disability, the Trustees are authorized, in their discretion, to pay the same:

(1)     To such person directly, notwithstanding his or her age or legal disability, regardless of whether a guardian has been appointed;

(2)     To the guardian of his or her person or property, or his or her committee, conservator or other like fiduciary, wherever appointed;

(3)     Without the intervention of such fiduciary, to any adult with whom such person resides, but for such person's sole benefit; or

7

CONFIDENTIAL
AGENGER000215

(4)    To a custodian selected by the Trustees (including any Trustee but excluding any person who has transferred property to a trust hereunder) for such person under the Uniform Transfers to Minors Act or comparable law of any jurisdiction, until the maximum age permitted by the applicable law.

B.    **Receipt of Property.**  The written receipt of any person to whom property is paid pursuant to this Agreement or the canceled check or other evidence of the application of any amount by the Trustees for the benefit of any beneficiary shall be a full discharge to the Trustees for any amount so paid or applied and from further accountability therefor, and the Trustees shall not be required to see to the use or application thereof by any beneficiary or recipient.

## ARTICLE VII.    ADDITIONS TO TRUSTS

The Trustees are authorized, but are not required, to accept any property to be added to any trust hereunder by any person.  Notwithstanding the foregoing, shares of TRI shall be held in a separate trust from all other assets, pursuant to the provision of Article II paragraph C(2).

## ARTICLE VIII.    TRUSTEES' POWERS

A.    In addition to the powers conferred generally upon fiduciaries under the laws of the State of New York:

(1)    **General Powers.**  The Trustees shall have the following general powers, authority and discretion with respect to all property, real or personal, that at any time may be held by them, to be exercised without the authorization of any court and without regard to present or future statutory limitations thereon:

8

CONFIDENTIAL

(a)    To retain all property in the form received by them, and successive interests received on account thereof, for as long as the Trustees, in their discretion, deem it advisable to do so, and to invest any funds of any trust in any stocks, bonds, or other securities or property, real or personal, regardless of the proportion of the total trust assets which such property (or property of a similar character) may represent, notwithstanding that such investments may not be of the character allowed to fiduciaries by statute or general rules of law, without any duty to diversify investments, and, except as otherwise provided in connection with the Genger Litigation Trust, regardless of whether or not such property is income producing, the intention being to give the broadest investment powers and discretion to the Trustees;

(b)    To sell (at public or private sale, without application to any court) or otherwise dispose of any property, whether real or personal, for cash or upon credit of any duration and to grant options for the purchase of any property, with or without consideration and without limitation on the period of any such option, in such manner and on such terms and conditions as the Trustees deem advisable, including, the giving or granting of options for periods in excess of six months in connection therewith;

(c)    To vote on any securities by discretionary proxy or otherwise; to join in or act in regard to any reorganization, recapitalization, consolidation, sale or merger; to deposit any property with voting trustees or protective or similar committees, to delegate to them discretionary power, to pay a share of their expense and compensation, and to pay any assessment levied with respect to any such property; and without limiting the generality of the foregoing, to enter into any contract or agreement or execute any power of attorney, revocable or irrevocable, required to carry out the terms of any contractual agreement to which any securities may be subject;

(d)    To manage any real property held in any trust hereunder in the same manner as if the Trustees were the absolute owner thereof, including, without limitation, the power from time to time to lease the same, without application to any court, for any term of years, even if such term extends beyond the duration of the administration of the trust holding such property, with options for renewals and the purchase or disposal of buildings thereon or to be placed thereon; to make ordinary and extraordinary repairs and alterations to any building, to raze old buildings and to erect new buildings and make other improvements; to insure against loss by fire or other casualties; to subdivide and plot any such property; to refrain from paying taxes and maintenance charges thereon, all as the Trustees deem advisable; to partition any such property held by the Trustees or in which the Trustees hold an interest, even if the Trustees (or relatives of the Trustees) hold an interest in the same property in their individual capacity or in another capacity; to give or receive money for equality of partition; to extend any existing mortgage or mortgages; to borrow upon the security of any such property, and to execute a mortgage or mortgages as security therefor;

(e)    To abandon such property, real or personal, as the Trustees deem advisable, or to dispose of the same without consideration or for nominal consideration; to extend the time for, or modify the terms of, payment of any claim or obligation, and to abandon, compromise, settle, renew, release, adjust or submit to arbitration upon such terms as the Trustees deem advisable any claim or obligation, in each case without application to any court;

9

CONFIDENTIAL

AGENGER000217

(f)     Except to the extent prohibited by law, to delegate, in whole or in part, to any agent (who may be a Trustee), any of the powers granted to the Trustees, including but not limited to, the authority and power to (i) sign checks, drafts or orders for the payment or withdrawal of funds from any account in which funds of any trust are deposited, (ii) endorse for sale, transfer or delivery, or sell, transfer or deliver, or purchase or otherwise acquire, any and all stocks, bonds or other securities or any other property whatsoever, and (iii) gain access to any safe deposit box in which assets of any trust may be located or which may be in the name of the Trustees and remove part or all of the contents of any such safe deposit box and release and surrender the same;

(g)     Except to the extent prohibited by law, to cause any securities to be registered in the name of a nominee, or to hold any securities in such condition that they will pass by delivery;

(h)     To employ such attorneys, paralegals, law clerks, accountants, custodians, investment advisors (and except to the extent prohibited by law, to give discretionary trading authority to such advisors without liability for investment losses resulting from investment decisions made by such advisors), real estate consultants and other persons as they may deem advisable in the administration of any trust hereunder, including any Trustee who may act in such capacity and any firm of which any Trustee hereunder may be a member, and to pay them from such trust such compensation as they may deem proper, in advance of the settlement of the account of any Trustee hereunder, and without court order, without any diminution of or offset against the commissions to which the Trustees may be entitled by law;

(i)     To use any securities or brokerage firm or bank or trust company in the purchase or sale of stocks, bonds or other securities or property for the account of any trust hereunder and to pay such organization such brokerage commissions in connection therewith as the Trustees deem appropriate, without any diminution of or offset against the commissions to which the Trustees may be entitled, notwithstanding that a Trustee may be a member of, or otherwise connected with, such organization;

(j)     To divide property into shares and to distribute property in kind, or partly in cash and partly in kind, and to effect such division and distribution in whole or in part by allocating to each share or distribution an undivided interest in any asset held, or by allocating certain assets to certain shares or distributions and other assets to other shares or distributions, on a non-pro rata or disproportionate basis or otherwise, regardless of the amount of unrealized appreciation or depreciation for capital gain or loss purposes of each asset thus sold, exchanged or allocated, without adjustment in the amount of any share or distribution by reason of any difference in the income tax bases of the assets thus allocated to such shares or distributions and, in the discretion of the Trustees, to elect or not to elect to recognize gain on any such distribution;

(k)     To hold and administer the income and principal of any two or more separate trusts hereunder in a consolidated fund, invested in solido, in which the separate trusts have undivided interests;

10

(l)    To renew, assign, alter, extend, compromise, release, with or without consideration, or submit to arbitration, obligations or claims, including taxes, held by or asserted against them or which affect the assets of any trust hereunder;

(m)    To sell or exercise any rights issued on any securities held in any trust hereunder;

(n)    To lend or borrow such amounts to or from one or more beneficiaries of any trust hereunder, or to or from any trust under my Will, upon such terms and conditions and for such purposes as the Trustees deem advisable, and to pledge any assets of any trust to secure the repayment of any amounts so borrowed, provided that [i] no loan shall be made from, or assets pledged out of, the Genger Litigation Trust other than to Arie Genger, and [ii] no beneficiary or remainderman who is serving as Trustee of a trust hereunder shall participate in a decision to make loans from such trust [x] to himself or herself, or [y] to any other beneficiary of such trust upon terms that do not conform with the then prevailing commercial practice; and

(o)    In general, to exercise all powers in the management of any trust which individuals could exercise in the management of property owned in their own right, upon such terms and conditions as the Trustees deem advisable, and to execute and deliver all instruments and to do all acts which the Trustees deem necessary or advisable to carry out the purposes of any trust.

(2)    **Closely Held Businesses.**    With respect to each Closely Held Business (as defined in clause (d) below) in which the Trustees hold or acquire any stock, interests in limited liability companies, partnerships or joint ventures, or any similar equity interest, and any subsidiaries thereof or successors thereto:

(a)    If the Closely Held Business is a partnership or limited liability company, the Trustees are authorized to retain such interest as an investment in any trust hereunder and to perform each and every condition, provision or agreement affecting such trust contained in any partnership or operating agreement to which I was, or the Trustees are, a party; to enter into new partnership or operating agreements and to retain an interest, whether as a general partner, limited partner, member or otherwise, in any successor partnership or limited liability company for such period of time as the Trustees deem advisable; to purchase any property, real or personal, or an undivided interest in any property from any such partnership or limited liability company as an investment; to determine the manner and degree of the Trustees' participation in the business of such partnership or limited liability company; to contribute to the capital of such partnership or limited liability company and to place assets of any trust hereunder at the risk of the business of such partnership or limited liability company; to make loans to such partnership or limited liability company; to assume obligations arising from or in connection with such partnership or limited liability company; in receiving any payment in liquidation or partial liquidation of any interest in any partnership or limited liability company, to accept cash, securities or other property, including an undivided interest in any property; and in the case of a

11

CONFIDENTIAL

AGENGER000219

partnership, to pledge assets of any trust hereunder as collateral for any borrowing of such partnership; and

(b)    The Trustees are authorized to continue or to permit the continuation of all other Closely Held Businesses, whether incorporated or unincorporated, for such period as the Trustees deem advisable, including, without limitation, the power to organize a corporation (or a partnership or limited liability company) to carry on the Closely Held Business by themselves or with others, to contribute all or part of the property of said business as capital to such corporation (or partnership or limited liability company) and to accept stock in such corporation (or an interest in such partnership or limited liability company) in payment thereof, and to hold such stock (or partnership interest) for such period as the Trustees deem advisable; and without limiting the generality of the foregoing, the Trustees are authorized to invest additional sums in any such Closely Held Business (notwithstanding that any trust hereunder may be invested largely in such Closely Held Business), to act as or to select other persons (including relatives of mine or of a Trustee hereunder) to act as directors, officers or other employees of any such Closely Held Business (such persons to be compensated without regard to their being Trustees or relatives of the Trustees hereunder), and to make such other arrangements and exercise such powers in respect thereof as the Trustees deem advisable; to liquidate all or any part of any such Closely Held Business in such manner and upon such terms as the Trustees, in their discretion, deem advisable, all without application to any court or furnishing any bond in connection therewith; and I hereby direct that the Trustees shall incur no liability for any loss which may be sustained by reason of the retention, continuance, liquidation or sale of such Closely Held Business or interest therein or because of anything done or omitted by the Trustees, in good faith, in connection therewith, or the exercise of any other power conferred upon the Trustees with respect thereto. The Trustees shall be entitled to reasonable compensation for any services rendered by the Trustees in respect of the operation of any such Closely Held Business, which compensation shall be in addition to the commissions allowed to the Trustees by law or by this Agreement and notwithstanding that the Trustees (whether individually or as Trustees hereunder) may be in a position to determine, or control the determination of, the amount of such compensation;

(c)    We are aware that conflicts of interest may arise by reason of service on the part of a Trustee acting as an officer, partner, director, manager or employee of any such Closely Held Business and by reason of such Trustee owning an interest in such Closely Held Business in his or her own right. We intend that the Trustees shall be free, in all respects, to exercise the powers and discretion herein conferred as fully and unrestrictedly as if there were no such conflicting interests. With this thought in mind, we expressly exempt the Trustees from the adverse operation of any rule of law which might otherwise apply to the Trustees in the performance of their fiduciary duties by reason of conflict of interest. Without limiting the generality of the foregoing, we specifically direct that the Trustees shall not have any greater burden of justification in respect of their acts as Trustees by reason of conflict of interest than they would have in the absence of any such conflict;

(d)    For purposes of this Agreement, a "Closely Held Business" shall include any foreign or United States entity, an interest in which is held by the Trustees, for which entity price quotations on established securities exchanges or over-the-counter markets

12

CONFIDENTIAL

    (i)  are not readily available, or

    (ii)  are readily available, provided that the Trustees exercise "control" over the Closely Held Business within the meaning of Rule 405 of the Securities Act of 1933, as amended, or any successor United States securities law ("Securities Act").

For purposes of this Agreement, a foreign securities exchange or market shall not be deemed to be "established" unless it is a "designated offshore securities market" within the meaning of Rule 902(a) of the Securities Act.

Notwithstanding the above, TRI shall not be considered a Closely Held Business for the purposes of this Agreement.

    (3)  **Environmental Concerns.** In taking into consideration any environmental concerns that may be relevant to property owned by any trust hereunder:

    (a)  The Trustees, in their discretion, may periodically inspect, review and monitor any and all property held in any trust hereunder for the purpose of determining compliance with any law, rule or regulation affecting such property, with all expenses of such inspection, review and monitoring to be paid from income or principal;

    (b)  The Trustees shall have the power to take any and all action they deem necessary, in their discretion, to prevent, abate, clean up, or otherwise respond to any actual or threatened violation of any law affecting any property held in any trust related to the generation, use, treatment, storage, disposal, release, discharge, or contamination by any materials or substances that are prohibited or regulated by law or that are known to pose a hazard to the environment or human health. Such actions may be taken prior to the initiation of enforcement action by any government agency. The Trustees may notify the beneficiaries hereunder as to the estimated costs of such response, and such beneficiaries shall have the right to pay for such response costs or authorize payment of such costs by the Trustees from trust assets. Notwithstanding the preceding sentence, the Trustees shall be entitled to use trust assets to pay such costs or, in their discretion, resign. The Trustees shall have no personal liability to any beneficiary for the costs incurred pursuant to this provision.

    (c)  To the extent provided by law, the Trustees shall be relieved from all personal liability (including fines, penalties and the cost of any litigation or administrative proceeding) pertaining to any actual or threatened violation of any federal, state or local law, rule or ordinance affecting any property held in any trust related to the generation, use, treatment, storage, disposal, release, discharge or contamination by any materials or substances that are prohibited or regulated by federal, state or local law or that are known to pose a hazard to the environment or human health, provided that the Trustees shall not be relieved from such personal liability resulting from their own gross negligence or willful misconduct. The Trustees shall be indemnified from the assets of the trusts to which such liability relates (to the entire extent thereof) for any such personal liability from which the Trustees have been relieved.

13

CONFIDENTIAL AGENGER000221

B.   **Restrictions on Fiduciary Powers.**   Notwithstanding any provision of this Agreement to the contrary:

(1)   No Trustee who has transferred property to a trust hereunder (or who is deemed to have transferred property to a trust hereunder) shall exercise any discretion to pay the income or principal of such trust to any beneficiary thereof.

(2)   In no event shall any part of the income or principal of any trust to which we (or any other transferor) have added property revert to the donor (or such other transferor) unless, at any time subsequent to such addition, the beneficiary thereof has possessed a general testamentary power of appointment over the income and principal of such trust, within the meaning of Section 2041(b) of the Code.

(3)   No Trustee shall exercise any discretion to pay income or principal (a) to himself or herself as a beneficiary of any trust hereunder, or (b) to any other beneficiary of a trust of which such Trustee is a current income beneficiary, or (c) to any person to whom [i] such Trustee, in his or her individual capacity, or [ii] a transferor of property to a trust hereunder, is legally obligated to support, if such payment or application constitutes the discharge of any part of such legal support obligation.

(4)   No Trustee shall pay income or principal of a trust to any beneficiary thereof if such Trustee (a) has a beneficial interest in the remainder of such trust that would cause the exercise of such discretion to be treated as a taxable transfer by such Trustee for federal gift tax purposes, or (b) is the current beneficiary of any other trust (whether created under this Agreement or under any other instrument) of which the beneficiary hereunder is the trustee.

14

C.    **Independent Trustees.**  The Trustees whose powers are not limited by reason of the restrictions set forth in preceding provisions of Paragraph B of this Article are referred to herein as "Independent Trustees."  Notwithstanding the preceding sentence:

(1)    A Trustee shall not be considered an Independent Trustee unless he or she also qualifies as an "Independent Trustee" under Section 674(c) of the Code.

(2)    Notwithstanding any contrary provision herein, if at any time any two beneficiaries hereunder are serving as a Trustee of separate trusts hereunder for the benefit of each other, then each of them, in his or her capacity as Trustee, shall only participate in the determination to make distributions to the other of them or the other's descendants.

D.    Notwithstanding any other provision of this Agreement, with respect to any property, if any, transferred or deemed to be transferred to the trust by either of us, we shall have no power over such property that would subject such property to inclusion in either of our gross estates under any provision of Code, including, but not limited to:  [i] the power to make discretionary distributions of income and principal under Article I or Article II; [ii] the power to terminate the trust under Article IV; [iii] the power to vote the shares of stock of any "controlled corporation" (within the meaning of Section 2036(b) of the Code); and [iv] the power to exercise any "incident of ownership" (within the meaning of Section 2042 of the Code) over any insurance on our lives held hereunder, regardless of the transferor of any such policy.  In any such case where we are prohibited from taking certain actions as Trustee, such power shall be exercised by the then acting co-Trustee.

15

CONFIDENTIAL

AGENGER000223

E.       It is our intention that we, nor any other transferor of property to any trust

hereunder, shall be treated as the owner of any trust under this Agreement for purposes of

Subpart E of Part I of Subchapter J of Chapter 1 of Subtitle A of the Code.  We therefore direct

that, notwithstanding any provision of this Agreement to the contrary, no power or discretion

conferred upon the Trustees pursuant to any provision of this Agreement or pursuant to law shall

be construed:

(1)       To enable any person (a) to purchase, exchange or otherwise deal

with or dispose of the principal of income of any trust for less than an adequate and full

consideration in money or money's worth, or (b) to borrow the principal or income of any trust,

directly or indirectly, without adequate interest or without adequate security;

(2)       To permit any person in a nonfiduciary capacity (a) to vote or

direct the voting of stock or other securities of a corporation in which the holdings of any

transferor of property to a trust hereunder and of such trust are significant from the viewpoint of

voting control, or (b) to control the investment of any trust assets either by directing investments

or reinvestments or by vetoing proposed investments or reinvestments, to the extent that the trust

assets consist of stocks or securities of a corporation in which the holdings of a transferor of

property to a trust hereunder and of such trust are significant from the viewpoint of voting

control, or (c) to acquire or reacquire, directly or indirectly, any trust assets or any portion

thereof by substituting other property of an equivalent value; all within the meaning of Section

675 of the Code;

(3)       To apply the income or principal of any trust to the payment of

premiums on policies of insurance on the life of any transferor to a trust hereunder or such

transferor's spouse; or

16

CONFIDENTIAL                                                                     AGENGER000224

(4)     Except as otherwise provided in Article I, to enable any person to exercise any other power or to perform in any other manner whatsoever which would be inconsistent with such intention.

F.     **Additional Provisions Relating to Trustees.** (1)     Each          Trustee (whether or not originally appointed hereunder) shall have the same rights, powers, duties and privileges, whether or not discretionary, except as to any right, power, duty or privilege expressly withheld from any such Trustee by law, by any provision of this Agreement or by an instrument appointing such Trustee.

(2)     Whenever we have conferred any discretion upon the Trustees without mandating that they act, it is my intention that their determination as to the extent to which such discretion is exercised shall be conclusive on all persons interested in the trusts hereunder, unless such discretion is limited by an ascertainable standard, within the meaning of section 2041(b) of the Code.

(3)     So long as they have acted in good faith and with reasonable care, diligence and prudence, the Trustees are exonerated from any individual responsibility or liability to any person interested in the trusts hereunder for any loss or lack of benefit that may occur to any property passing under this Agreement, or result by reason of the Trustees having exercised or not exercised the powers, discretion and authority granted under this Agreement or conferred by law.

(4)     In no event shall any Trustee be liable for the acts or omissions of any other Trustee who acts or fails to act without the consent of the majority of his or her co-Trustees.

17

CONFIDENTIAL                                          AGENGER000225

(5)     Any individual Trustee may delegate any or all of his or her rights, powers, duties, authority and privileges, whether or not discretionary, to another then acting Trustee (except as to matters involving any right, power, duty, authority or privilege withheld from or not conferred upon such Trustee by law, by any provision of this Agreement or by an instrument appointing such Trustee), by delivering an instrument in writing, signed and acknowledged, provided that any such instrument shall be revocable at any time. Notwithstanding the above, no right, power, duty, authority or privilege may be delegated if such delegation violates any restriction on any asset involved in such delegation.

(6)     If more than one Trustee is serving at any time, all decisions shall be made by a majority of the Trustees authorized to act.  Notwithstanding the foregoing, ministerial duties and decisions of the Trustees, if more than one of them are serving (including, but not limited to, the signing of checks, the execution of standard custody or brokerage agreements relating to securities and similar transactions), may be executed by any one Trustee.

(7)     As to third parties dealing with the Trustees:

(a)     Instruments executed and acts performed by one Trustee shall be fully binding as if executed or performed by all Trustees.  An authorization shall be valid until those acting in reliance on it receive actual notice of its revocation.

(b)     No one dealing with any Trustee shall be required to investigate into such Trustee's authority for entering into any transaction or to see to the application of the proceeds of any transaction.

## ARTICLE IX.   IRREVOCABILITY OF TRUSTS

We hereby declare this trust to be irrevocable and agree to execute any further instruments required to vest the Trustees with full title to the assets hereby transferred.  We expressly waive all rights and powers, whether alone or in conjunction with others, to alter, amend, revoke or terminate any trust or any terms of this Agreement, in whole or in part.

18

CONFIDENTIAL                                        AGENGER000226

Notwithstanding the foregoing, any administrative provision of this Agreement may be amended by written instrument signed by all of the Trustees serving at the time of the amendment and consented to in writing by a majority of the trust's permissible beneficiaries living at the time of the amendment who are not under any legal disability. An "administrative provision" is one which does not affect the identity of the trust's beneficiaries, the size of the trust share passing to any beneficiary or the terms upon which distributions to such beneficiary are required or permitted. The determination by the Trustees of what constitutes an administrative provision shall be final and binding on all persons.

## ARTICLE X.    APPLICABLE LAW

A.    All questions pertaining to the validity, construction, interpretation and administration of this agreement shall be determined in accordance with the laws of the State of New York.

B.    Notwithstanding the foregoing, the Trustees, without the approval of any court, may change the situs of any trust hereunder and its governing law, to any other state of the United States, and to the extent permitted by law, to any foreign jurisdiction, and may move the assets of the trust from one jurisdiction to another, if they determine in their sole discretion that such a change or removal would be in the best interests of the trust.

19

CONFIDENTIAL                                                            AGENGER000227

C.     Upon any such change of situs, the trust estate may thereafter, at the election of the Trustees of said trust, be modified to conform to, and administered exclusively under, the laws of (and subject, as required, to the exclusive supervision of the courts of) the jurisdiction to which it has been transferred.  Accordingly, if the Trustees of any trust created hereunder elect to change the situs of any such trust, the Trustees of said trust are hereby relieved of any requirement of having to qualify in any other jurisdiction and of any requirement of having to account in any court of such other jurisdiction.  Notwithstanding the foregoing, if a change in situs or a modification to conform to the laws of the jurisdiction to which it has been transferred would result in any modification to the administrative provisions of any trust which is exempt from the generation-skipping transfer tax, such modification shall not broaden any Trustees' powers herein so as to cause the trust to be subject to Chapter 13 of the Code.

## ARTICLE XI.   ANNUAL ACCOUNTINGS; SERVICE OF PROCESS

A.     **Annual Accountings.**  (1) Each Trustee is relieved from any duty to file annual or other periodic accounts in any court, whether required by the laws of the State of New York or any other jurisdiction.  Notwithstanding the foregoing, the Trustees may render a judicial account of their proceedings if they deem it advisable to do so.  Compliance by any Trustee with the provisions of any law now or hereafter in effect requiring qualification, administration and accounting by any Trustee to any court is hereby waived.  The Trustees may also choose to effect a nonjudicial settlement of their account by agreement.  For purposes of this Paragraph A, the term "Trustees" shall include any former Trustee, his or her legal representative or the executor of the estate of any deceased Trustee.

20

(2)     The Trustees shall render an account annually to such living person or persons as are entitled, or in the sole discretion of the Trustees might be entitled, at the time of any such accounting to receive all or a portion of the income of the trust herein created.

(3)     The approval of any person of full age, or the parent or legal representative of an incompetent person, to whom the account is so rendered shall, as to all matters stated therein, be final and binding upon him or her or such incompetent person, or any persons claiming through him or her or such incompetent person, as the case may be. The approval of a majority of the persons to whom an accounting is rendered, because of their interest in a particular portion of the trust, shall be final and binding upon all such persons then or thereafter interested in such portion of the trust as to the matters stated in such account. Any person of full age, or the guardian or parent of an incompetent person, to whom an account is rendered as herein provided shall be deemed to have approved the same if (i) such person assents to the account in writing, or (ii) he or she does not communicate to the Trustees his or her written objection to the account within sixty (60) days after the date the account is rendered. Nothing in this Article shall be deemed to give the person or persons to whom such accounts are rendered any power or right to enlarge or shift the beneficial interest of any beneficiary therein.

B.     **Service of Process.** In any proceeding in which all persons interested in any trust hereunder are required to be served with process, if a party to the proceeding has the same interest as or a similar interest to a person under a legal disability (including, without limitation, an infant or an incompetent) it shall not be necessary to serve the person under a disability or otherwise make such person a party to the proceeding, it being my intention to avoid the appointment of a guardian ad litem wherever possible.

21

CONFIDENTIAL                                                                                              AGENGER000229

## ARTICLE XII.   TRUSTEE APPOINTMENTS

A.    **Successor Trustees.**  Upon the death of Arie Genger, Orly Genger shall become a Trustee.  If for any reason David Broser or Lance Harris cease to act as a Trustee of any trust hereunder, we appoint _____, or the survivor of them, as successor Trustee in their place.

B.    **Successor Trustees and Co-Trustees.**  (1) Except as otherwise provided in this Article, the individual Trustees at any time acting hereunder, acting by a majority, or if none, the primary beneficiary of such trust, are authorized:

(a)    To appoint one or more individuals or a bank or trust company, to serve with him, her or them or as successors or alternate successors upon any contingency.  Any Trustee appointed pursuant to this clause (a) as a Trustee of the Genger Litigation Trust may be appointed with general powers or for the limited purpose of making decisions regarding discretionary distributions of principal from the Genger Litigation Trust.  This shall be a continuing power in any such person; and

(b)    To establish the order of succession and to revoke any such appointment until, by its terms, it is effective, whether or not he, she or they made such appointment; provided that, so long as I am living and am not mentally incapacitated, only I may revoke an appointment made by me.

(2)    Any such appointment or revocation shall be made by a written instrument, duly signed and acknowledged, and filed with the records of the trust to which such appointment or revocation relates.

(3)    Any successor Trustee shall qualify to act when his, her or its appointment becomes effective under the terms of the appointment by an instrument ("Acceptance of Trust"), duly signed and acknowledged, and delivered [i] to Lender, [ii] to Arie Genger and Orly Genger, if they are then living and not mentally incapacitated, and [iii] to any Trustee then acting.  A copy of the Acceptance of Trust also shall be filed with the records of the trust to which the appointment relates.

22

CONFIDENTIAL                                                                                      AGENGER000230

C. **Trustees to Act by Majority.** Except as otherwise provided in this Article, if more than one Trustee is serving at any time, all decisions shall be made by a majority of the Trustees authorized to act.

D. **Resignation of Trust.** Any Trustee may resign as Trustee of any trust hereunder without any prior court approval by giving written notice of resignation, duly acknowledged, personally or by mail, to the same persons to whom an Acceptance of Trust must be delivered. Such notice shall specify the date when such resignation shall take effect, which date shall be at least thirty (30) days after the service or mailing thereof, unless the persons to whom notice has been given consent otherwise, provided that the resignation of any Trustee acting alone shall be effective only upon the appointment and qualification of a successor Trustee.

E. **Disqualification of Trustees.** If any Trustee becomes mentally incapacitated, the determination of such mental incapacity also shall constitute such Trustee's immediate resignation.

F. **No Bond Required.** No bond or other security shall be required in any jurisdiction of Trustee serving at any time.

G. **Compensation.** (1) Each Trustee shall be entitled to reimbursement for his or her reasonable out-of-pocket expenses incurred in connection with his or her services as Trustee.

(2) Each individual Trustee waives compensation for his or her services in the amount permitted trustees under the laws of the State of New York.

(3) Any corporate Trustee shall be entitled to compensation for its services as Trustee as prescribed in its schedule of rates, including minimum fees and additional

23

CONFIDENTIAL

compensation for special investments and interests in closely held businesses, published from time to time and in effect at the time the compensation is paid.

## ARTICLE XIII.   DEFINITIONS; CONSTRUCTIONS OF TERMS

A.   References in this Agreement to the "Code" are to the Internal Revenue Code of 1986, as amended or replaced from time to time.

B.   The word "descendant" shall include any descendant of a designated ancestor, whether natural born or adopted during minority.

C.   Property payable to a person's then living descendants shall be paid to such descendants "per stirpes," that is, such property shall be divided into as many equal shares as there are children of such person who are then living or who have died leaving then living descendants.  A share allocated to such person's deceased child shall be divided further among such child's then living descendants in the same manner.

D.   The term "legal representative" shall refer to the guardian, conservator or similar fiduciary appointed for a person or the holder of a person's valid power of attorney.

E.   Whenever notice or other communications are required to be delivered hereunder to a beneficiary who is a minor or incapacitated or otherwise under a legal disability, such notice or other communication may be delivered to the parent of the minor or his or her legal representative or to the legal representative of the person who is incapacitated or otherwise under a legal disability.

F.   References to the "Trustees" shall be construed in the singular or the plural, as appropriate, and in the appropriate gender.

G.   The headings in this Agreement are included only for convenience of reference, and shall not be interpreted to modify the terms of this Agreement.

CONFIDENTIAL                                                          AGENGER000232

H.     Where the context so requires, the use herein of any gender shall be deemed to include the other genders, the plural shall include the singular and the singular shall include the plural.

I.     A person shall be considered "incapacitated" if (i) a committee, guardian, conservator or similar fiduciary has been appointed for such person, or (ii) whether or not a committee, guardian, conservator or similar fiduciary has been appointed for such person, two (2) physicians (one of whom is such person's personal physician) certify that such person has sustained significant loss of mental capacity, or (iii) whether or not any physician has so certified, the person (or his or her legal representative) has refused to submit to an examination by a physician for such purpose or has refused to provide such person's medical record or other health care information upon the request for such information by the acting or successor Trustees, or if none, by a majority of the permissible income beneficiaries (with a parent or the legal representative of any such beneficiary under a legal disability acting on behalf of such beneficiary).

## ARTICLE XIV.   SEVERABILITY; SIGNATURES REQUIRED.

A.     **Severability.**  Any provision of this Agreement that is determined to be invalid or unenforceable shall be deemed a separate provision, severable from the remainder of the provisions contained herein that are not invalid or unenforceable, and this Agreement, without such invalid or unenforceable provision, shall continue in effect as if such invalid or unenforceable provision were not contained herein.

B.     **Signatures Required.**  This Agreement shall become effective when signed by the Grantor and Trustee.

25

CONFIDENTIAL                                                      AGENGER000233

IN WITNESS WHEREOF, the undersigned, as Grantor and Trustee, has signed this Agreement as of this _____ day of April, 2012.

Witness:

_____

_____          Arie Genger, Grantor

                                          _____
                                          Orly Genger, Grantor

26

CONFIDENTIAL                                           AGENGER000234

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK     )

On this _____ day of April, 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be one of the individuals whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
                Notary Public

27

IN WITNESS WHEREOF, the undersigned, as Grantor and Trustee, has signed this Agreement as of this _____ day of April, 2012.

Witness:

_____          _____
                                          Arie Genger, Grantor

_____          _____
                                          Orly Genger, Grantor

26

STATE OF NEW YORK   )
                    : ss.:
COUNTY OF NEW YORK  )

On this ___ day of April, 2012 before me, the undersigned, a Notary Public in and for

said State, personally appeared _____, personally known to me or

proved to me on the basis of satisfactory evidence to be one of the individuals whose name is

subscribed to the within instrument and acknowledged to me that he executed the same in his

capacity, and that by his signature on the instrument, the individual, or the person on behalf of

which the individual acted, executed the instrument.

_____
Notary Public

LANCE G. HARRIS
Notary Public, State of New York
Attorney and Counselor at Law
No. 02HA5048936
Qualified in New York County
Commission Expires September 5, 2013

27

**SCHEDULE A**

The Trustees shall collect all net proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that Arie Genger and/or Orly Genger have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits including the receipt of monies by Arie Genger or Orly Genger from any of the named parties, including, directly or indirectly, through third parties, in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits including but not limited to Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, and attorney.

The Trustees shall collect all proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that Arie Genger and/or Orly Genger have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits including the receipt of TRI shares by Arie Genger or Orly Genger.

28

CONFIDENTIAL

AGENGER000238

## AMENDMENT TO THE TERM SHEET, CREDIT AGREEMENT AND GENGER LITIGATION TRUST AGREEMENT

This amendment is to memorialize a compensation and incentive agreement entered between borrower and Bill Wachtel ((BW) regarding his fees and incentives;

With Lender consent borrower has entered into an agreement with BW on 6 -20-12 that in consideration for BW services provided from 2010 to present and until completion of TRI / TPR associated litigations the following would be paid to BW for his services ;

1. first $35 M $750.000 + all net BW costs
2. $35M - $50 M additional $750.000
3. $50m - $75 M additional $1.0 M
4. $75M - $100 M additional $1,5 M
5. over $100 M 5%
6. if $100 M deal is reached within 12 month additional $3 M

**AGREED TO:**

**BORROWERS**

**ARIE GENGER**
**GENGER**

ORLY

**LENDER**

**ADBG**

**BY:** _____

Date _____7/17/17_____

CONFIDENTIAL

AGENGER000239