# EXHIBIT 7

# $10,000,000.00

# CREDIT AGREEMENT

## between

## Arie Genger, as Borrower

## and

## ADBG LLC, as Lender

## Dated as of September 19, 2008

NY 71756529v16

CONFIDENTIAL

BROSER_19-13985_E_000656

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND RELATED MATTERS ................................................1
   1.01    Definitions...............................................................................................1
   1.02    Related Matters .......................................................................................4

ARTICLE II AMOUNTS AND TERMS OF THE CREDIT FACILITY .........................4
   2.01    Loans. .....................................................................................................4
   2.02    Use of Proceeds......................................................................................5
   2.03    Interest....................................................................................................5
   2.04    Additional Consideration .......................................................................5
   2.05    Repayments and Prepayments. ...............................................................5
   2.06    Optional Prepayments ............................................................................6
   2.07    Manner of Payment ................................................................................6
   2.08    Note, Etc ................................................................................................6

ARTICLE III CONDITIONS TO LOANS ........................................................................7
   3.01    Notice and Approval of Borrowing ........................................................7
   3.02    Representations and Warranties..............................................................7
   3.03    No Default...............................................................................................7
   3.04    Satisfaction of Conditions......................................................................7

ARTICLE IV REPRESENTATIONS AND WARRANTIES.............................................7
   4.01    Authority; Execution..............................................................................7
   4.02    No Conflict.............................................................................................7
   4.03    Solvency.................................................................................................8

ARTICLE V COVENANTS OF THE BORROWER.........................................................8
   5.01    Lawsuits.................................................................................................8
   5.02    Liens.......................................................................................................8
   5.03    Further Instruments ................................................................................8

ARTICLE VI EVENTS OF DEFAULT ............................................................................8
   6.01    Events of Default ...................................................................................8
   6.02    Remedies................................................................................................9

ARTICLE VII MISCELLANEOUS ...................................................................................9
   7.01    Expenses ................................................................................................9
   7.02    Indemnity. ............................................................................................10
   7.03    Waivers; Amendments in Writing. .......................................................11
   7.04    Notices, Etc ..........................................................................................11
   7.05    Successors and Assigns........................................................................11
   7.06    Confidentiality .....................................................................................12
   7.07    Governing Law .....................................................................................12
   7.08    Choice of Forum. .................................................................................12
   7.09    Headings ...............................................................................................12
   7.10    Severability...........................................................................................12

i

7.11    Survival of Agreements, Representations and Warranties ....................................12
7.12    Execution in Counterparts..................................................................................12
7.13    Complete Agreement; Third Party Beneficiaries.................................................13
7.14    WAIVER OF TRIAL BY JURY ........................................................................13

**EXHIBITS**

Exhibit A                          Form of Note
Exhibit B                          Form of Notice of Borrowing

NY 71756529v16

CONFIDENTIAL

BROSER_19-13985_E_000658

# CREDIT AGREEMENT

**CREDIT AGREEMENT**, dated as of September 19, 2008 (as may be amended or supplemented from time to time, the "<u>Agreement</u>"), by and between Arie Genger, an individual located at c/o RDA Ventures, LLC, 630 Third Avenue, 7th Floor, New York NY 10017, as the borrower (the "<u>Borrower</u>"), and ADBG LLC, a Delaware limited liability company, as the lender (the "<u>Lender</u>").

## PRELIMINARY STATEMENTS

WHEREAS, in order to pay legal fees and expenses incurred by the Borrower related to the lawsuits brought in New York in the United States District Court for the Southern District of New York by Glenclova Investment Co. entitled <u>Glenclova Investment Co. v. Trans-Resources, Inc. and TPR Investment Associates Inc.</u> and in Delaware by TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC and New TR Equity II, LLC, in the Court of Chancery of the State of Delaware, C.A. entitled, <u>TR Investors, LLC, Glenclova Investment Co., New TR Equity I, LLC and New TR Equity II, LLC, v. Arie Genger and Trans-Resources, Inc.</u>, C.A. No. 3994-VCS (collectively, the "<u>Lawsuits</u>") and to fund other related lawsuits, expenses or obligations, the Borrower has requested the Lender to provide a loan in principal amount up to ten million Dollars ($10,000,000.00), as described herein;

WHEREAS, the Lender has been provided with access to all pleadings in the Lawsuits and all other documents it has requested;

WHEREAS, the Lender is willing to provide the term loan facility on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto hereby agree that:

## ARTICLE I

## DEFINITIONS AND RELATED MATTERS

1.01. **Definitions**. The following terms with initial capital letters have the following meanings:

"**Additional Consideration**" is defined in Section 2.04.

"**Affiliate**" means with respect to any Person, (i) any Person who directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such Person, or (ii) any Person who is a member of the Immediate Family of such Person.

"**Agreement**" is defined in the Preamble and includes all Schedules and Exhibits.

"**Applicable Law**" means all applicable provisions of all (i) constitutions, treaties, statutes, laws, rules, regulations and ordinances of any Governmental Authority, (ii) Governmental Approvals and (iii) orders, decisions, judgments, awards and decrees of any Governmental Authority (including common law and principles of public policy).

NY 71756529v16
CONFIDENTIAL

"**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. Section 101 *et seq.*), as amended from time to time.

"**Borrower**" is defined in the Preamble, and includes any successor.

"**Business Day**" means any day that is not a Saturday, Sunday or other day on which banks in New York, New York are authorized or obligated to close.

"**Capital Stock**" means, with respect to the Borrower, all of his (i) shares, interests, participations or other equivalents (howsoever designated) of capital stock and other equity interests in the Company and (ii) rights, warrants or options to acquire any such capital stock or other equity interests in the Company.

"**Closing Date**" means the date hereof.

"**Commitment**" is defined in Section 2.01(a)

"**Company**" means Trans Resources, Inc., a Delaware corporation, and includes any successor.

"**Current Member(s)**" means the Persons admitted as of the date hereof as a member of the Lender.

"**Default**" means any condition or event that, with the giving of notice or lapse of time or both, would, unless cured or waived, become an Event of Default.

"**Dollars" and "$**" means lawful currency of the United States of America.

"**Event of Default**" is defined in Section 6.01.

"**Funding Date**" means any date on which a Loan is made.

"**Governmental Approval**" means an authorization, consent, approval, permit or license issued by, or a registration or filing with, any Governmental Authority.

"**Governmental Authority**" means any nation and any state or political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and any tribunal or arbitrator of competent jurisdiction.

"**Immediate Family**" means with respect to any individual, such individual's spouse, parents, brothers, sisters, children (natural or adopted), stepchildren, and grandchildren, but not other members of the individual's extended family.

"**Initial Commitment**" is defined in Section 2.01(a).

"**Lawsuits**" is defined in the Preliminary Statements.

"**Lender**" is defined in the Preamble.

2

CONFIDENTIAL

"**Lien**" means any lien, mortgage, pledge, security interest, charge, or encumbrance of any kind (including any conditional sale or other title retention agreement or any-lease in the nature thereof) and any agreement to give or refrain from giving any lien, mortgage, pledge, security interest, charge, or other encumbrance of any kind.

"**Line of Credit**" means the line of credit up to ten million Dollars ($10,000,000.00) granted by the Lender to the Borrower pursuant to Section 2.01(a).

"**Loan**" is defined in Section 2.01(a).

"**Loan Documents**" means, collectively, this Agreement, the Note and any other agreement, instrument, side letter or other writing executed or delivered by the Borrower in connection herewith, and all amendments, exhibits and schedules to any of the foregoing.

"**Mandatory Prepayment**" means any mandatory prepayment described in Section 2.05(b).

"**Maturity Date**" means September 19, 2015 (or if that date is not a Business Day, the immediately preceding Business Day), or such later date to which the Lender in its sole discretion shall have extended the Maturity Date by written notice to the Borrower.

"**Note**" means the Note made by the Borrower payable to the order of the Lender in substantially the form of Exhibit A, as amended from time to time.

"**Notice of Borrowing**" is defined in Section 2.01(b).

"**Obligations**" means all present and future obligations and liabilities of the Borrower of every type and description arising under or in connection with the Loan Documents.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, a trust, an unincorporated organization or any other entity or organization, including a government or any agency or political subdivision thereof.

"**Post-Default Rate**" is defined in Section 2.03(a)(ii).

"**Realization Event**" means (i) a sale or transfer of any Stock, (ii) a sale or transfer of any assets of the Company out of the ordinary course of business, (iii) the merger, consolidation, or business combination of the Company, and/or (iv) a settlement of any Lawsuit.

"**Stock**" means, (A) with respect to the Borrower, the Capital Stock, and (B) with respect to the Trust, all of its (i) shares, interests, participations or other equivalents (howsoever designated) of capital stock and other equity interests in the Company and (ii) rights, warrants or options to acquire any such capital stock or other equity interests in the Company.

"**Stockholder Agreement**" means the stockholder agreement of the Company dated March 30, 2001, as may be amended, modified or supplemented from time to time. The Lender acknowledges that it has received a copy of the Stockholder Agreement as well as a copy of the Stipulation of Settlement in the Genger v. Genger matrimonial case dated October 26, 2004.

3

CONFIDENTIAL

"**Stockholders**" means, collectively, the Borrower and the Trust.

"**Trust**" means Orly Genger 1993 Trust, a holder of Stock, and any successor.

1.02. **Related Matters**. Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, the singular includes the plural, the part includes the whole, and "including" is not limiting. The words "hereof," "herein," "hereby," "hereunder" and similar terms in this Agreement refer to this Agreement as a whole (including the Preamble, the Schedules and the Exhibits) and not to any particular provision of this Agreement. Article, section, subsection, exhibit, schedule, recital and preamble references in this Agreement are to this Agreement unless otherwise specified. References in this Agreement to any agreement, other document or law "as amended" or "as amended from time to time," or to amendments of any document or law, shall include any amendments, supplements, replacements, renewals, waivers or other modifications. References in this Agreement to any law (or any part thereof) include any rules and regulations promulgated thereunder (or with respect to such part) by the relevant Governmental Authority, as amended from time to time.

## ARTICLE II

## AMOUNTS AND TERMS OF THE CREDIT FACILITY

2.01. **Loans**.

(a) **Term Loans**. The Lender agrees, upon the terms and subject to the conditions set forth in this Agreement, to make one or more term loans (each, a "**Loan**") to the Borrower from and after the Closing Date and on or before the Maturity Date, in an aggregate principal amount not to exceed at any time the lesser of (i) the Commitment and (ii) ten million Dollars ($10,000,000.00). The initial commitment shall be in the amount of five million Dollars ($5,000,000.00) (the "**Initial Commitment**"). The Initial Commitment may be increased by two million Dollars ($2,000,000.00) up to two (2) times and thereafter by one million Dollars ($1,000,000.00) on or before the Maturity Date by mutual agreement in writing of the Lender and the Borrower, up to a maximum commitment of ten million Dollars ($10,000,000.00) (such Lender's commitment under this Agreement, the "**Commitment**"). The Commitment may be terminated by the Lender, in whole or in part, at any time after a settlement of, or the entry of a final, non-appealable judgment in, both of the Lawsuits.

(b) **Notice of Borrowing**. When the Borrower desires to borrow pursuant to this Section 2.01, it shall deliver to the Lender a written request therefor in the form of Exhibit B (a "**Notice of Borrowing**") at least two (2) Business Days in advance of the proposed Funding Date, or such lesser period as may be agreed by the Lender. The minimum amount of each such borrowing request shall be one hundred thousand Dollars ($100,000.00). The Lender shall remit the requested amount not later than the proposed Funding Date pursuant to the Borrower's instructions as set forth in the Notice of Borrowing.

4

CONFIDENTIAL

BROSER_19-13985_E_000662

2.02. **Use of Proceeds**. The proceeds of the Loan shall be used by the Borrower to pay legal fees and expenses incurred by the Borrower related to the Lawsuits and to fund other related lawsuits, expenses or obligations.

2.03. **Interest**.

(a) **Interest Rate and Payment**.

(i) Each Loan shall bear interest on the unpaid principal amount thereof, from and including the Funding Date for such Loan to and excluding the date of any repayment thereof, at a rate per annum equal to ten percent (10%).

(ii) Notwithstanding the foregoing provisions of this Section 2.03(a), while an Event of Default exists, each Loan shall bear interest on the outstanding principal amount thereof at a rate equal to the interest rate set forth in Section 2.03(a)(i) above plus an additional two percent (2%) per annum for a total of twelve percent (12%) per annum (the "**Post-Default Rate**"), from the date of occurrence of such Event of Default, in the case of an Event of Default under Section 6.01(a) or, in the case of any other Event of Default, from the date of written demand by the Lender, and in each case for so long as such Event of Default is continuing.

(iii) Accrued interest shall be payable in arrears (A) in the case of any interest accrued at the Post-Default Rate, on demand; and (B) otherwise, when the Loan shall become due (whether at maturity, by reason of prepayment, acceleration or otherwise), or shall be repaid or prepaid (in whole or in part, on the amount repaid or prepaid).

(b) **Computations**. Interest on each Loan shall be computed on the basis of a 360-day year and the actual number of days elapsed (including the first and excluding the last day of the period).

2.04. **Additional Consideration**. As additional consideration for agreeing to make the Loans, the Borrower agrees to make the payments to Lender set forth in Third and Fourth of Section 2.05(b) ("**Additional Consideration**").

2.05. **Repayments and Prepayments**.

(a) **Repayment**. The Loans shall be paid in full on the Maturity Date. The principal amount of any Loan prepaid or repaid by the Borrower may not be reborrowed.

(b) **Mandatory Prepayment**. If on any date the Borrower and/or the Trust shall receive proceeds from any Realization Event, the Borrower agrees that any proceeds from such Realization Event, whether or not there are any amounts outstanding under the Note, shall be distributed on a cumulative aggregate basis as follows (such proceeds shall be distributable on each Realization Event):

First, to the Lender for the payment of principal and interest due and owing under the Note, including the unreimbursed expenses of the Lender described in Section 7.01;

5

CONFIDENTIAL

**Second**, the next forty-five million Dollars ($45,000,000.00) in the aggregate from all Realization Events shall be paid to the Stockholders, as they determine;

**Third**, the next thirty million Dollars ($30,000,000.00) in the aggregate from all Realization Events shall be paid fifteen percent (15%) to the Lender and eight-five percent (85%) to the Stockholders, as they determine; and

**Fourth**, the balance shall be paid ten percent (10%) to the Lender and ninety percent (90%) to the Stockholders, as they determine.

For the avoidance of doubt, the Borrower shall be obligated to pay the Lender the amounts determined pursuant to sub-paragraphs First, Third and Fourth above, regardless of the proportion of proceeds received by the Borrower and the Trust upon the occurrence of a Realization Event.

The parties hereto shall work together in good faith to cause the Trust to become a co-obligor under this Agreement. If the Trust consents to become a party to this Agreement on terms reasonably acceptable to the Lender and the Borrower, the Lender hereby agrees that it shall initially look to the Trust to pay its portion (determined by its respective interest in the proceeds of the Realization Event) of payments due to the Lender under sub-paragraphs Third and Fourth above. If the Trust defaults on its obligations to pay the Lender under sub-paragraphs Third and Fourth above and the Borrower pays in full its Obligations under sub-paragraph First above and its proportionate share of the Obligations under sub-paragraphs Third and Fourth above, the Lender agrees to conditionally waive the Default by the Borrower for the non-payment by the Trust of its proportionate share of the Obligations under sub-paragraphs Third and Fourth above; provided, however, the Borrower (i) must use commercially reasonable efforts to assist the Lender, at the Borrower's expense, to collect from the Trust the payments due to the Lender, and (ii) shall be obligated to pay the Lender all amounts due pursuant to sub-paragraphs Third and Fourth above (less any amounts paid by the Trust) if (y) the Trust fails to pay such amounts owed to the Lender within one (1) year of the Realization Event, and (z) the Lender has provided the Borrower with a thirty (30) day written notice of demand for payment. The Borrower hereby unconditionally guarantees to the Lender the prompt payment when due and performance of the Obligations of the Borrower under clause (ii) hereof.

2.06.  **Optional Prepayments**. The Borrower may, at its option, at any time or from time to time, prepay the Loans, in whole or in part, on any Business Day; provided, however, the Borrower shall remain responsible for the payment of Additional Consideration.

2.07.  **Manner of Payment**. Except as otherwise expressly provided, the Borrower shall make each payment under the Loan Documents to the Lender in Dollars and in immediately available funds, without any deduction whatsoever, to an account the Lender designates by notice to the Borrower.

2.08.  **Note, Etc.** At the request of the Lender, the Loans shall be evidenced by one Note. The Lender is hereby irrevocably authorized to record on the schedule attached to its Note (or a continuation thereof) the information contemplated by such schedule. The Lender shall deliver to the Borrower on a quarterly basis a copy of an updated schedule to the Note. The failure to record, or any error in recording, any information contemplated by the schedule to the Note or the failure to deliver to the Borrower a copy of the updated schedule to the Note, shall not, however, affect the

6

NY 71756529v16
CONFIDENTIAL

obligations of the Borrower hereunder or under the Note to repay the principal amount of the Loans evidenced thereby, together with all interest accrued thereon. All such notations shall constitute conclusive evidence of the accuracy of the information so recorded, in the absence of manifest error.

## ARTICLE III

## CONDITIONS TO LOANS

The obligation of the Lender to make the Loan on each Funding Date shall be subject to the following conditions precedent:

3.01.    **Notice and Approval of Borrowing**.  The Borrower shall have delivered to the Lender a Notice of Borrowing as and when required pursuant to Section 2.01(b).

3.02.    **Representations and Warranties**.  All of the representations and warranties of the Borrower contained in the Loan Documents shall be true and correct in all material respects on and as of such Funding Date as though made on and as of that date (except to the extent that such representations and warranties expressly were made only as of a specific date, in which case they shall be true and correct as of such date).

3.03.    **No Default**.  No Default or Event of Default shall exist or result from the making of such Loan.

3.04.    **Satisfaction of Conditions**.  Delivery of a Notice of Borrowing for the borrowing of such Loan shall constitute a representation and warranty by the Borrower as of the date of delivery and the applicable Funding Date that the conditions contained in Sections 3.02 and 3.03 have been satisfied.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

The Borrower represents and warrants to the Lender as follows:

4.01.    **Authority; Execution**.  The Borrower has full legal right, power and authority, and all approvals required by Applicable Law, to enter into the Loan Documents and to perform all of its Obligations.  The Loan Documents have been duly executed and delivered by the Borrower and constitute a legal, valid and binding obligation of the Borrower and its respective heirs, successors and assigns, enforceable in accordance with its terms.

4.02.    **No Conflict**.  The execution, delivery and performance by the Borrower of each Loan Document to which he is or will be a party, and the consummation of the transactions contemplated thereby, do not, except for the Stockholder Agreement and consents that have been obtained and are in full force and effect, violate, conflict with, result in a breach of, or constitute (or, with the giving of notice or lapse of time or both, would constitute) a default under, or require the approval or consent of any Person pursuant to, any contractual obligation of the Borrower, or violate any Applicable Law binding on the Borrower.

7

CONFIDENTIAL

4.03. **Solvency**. The Borrower is solvent after giving effect to any Loan then being requested.

## ARTICLE V

## COVENANTS OF THE BORROWER

So long as the Line of Credit is in effect or any Obligations remain unpaid or have not been performed in full:

5.01. **Lawsuits**. The Borrower shall keep the Lender reasonably well-informed on the status of the Lawsuits, from time to time as any material change or event occurs, and upon the request of Lender.

5.02. **Liens**. Subject to the Lawsuits and the Stockholder Agreement, the Borrower shall not, directly or indirectly, create, incur, assume or permit to exist any Lien on or with respect to the Capital Stock.

5.03. **Further Instruments**. The Borrower shall execute, deliver and acknowledge from time to time at the request of the Lender, and without further consideration, all such further instruments and documents as may be required in order to give effect to the Loan Documents.

## ARTICLE VI

## EVENTS OF DEFAULT

6.01. **Events of Default**. The occurrence of any one or more of the following events, acts or occurrences shall constitute an event of default (each an "**Event of Default**"):

(a) **Failure to Make Payments**. The Borrower (i) shall fail to pay as and when due (whether at stated maturity, upon acceleration, upon required prepayment or otherwise) any principal of any Loan or any Additional Consideration, including any amounts payable pursuant to clause (ii) of Section 2.05(b) hereof, or (ii) shall fail to pay any interest, fees or other amounts payable under the Loan Documents within three Business Days of the date when due under the Loan Documents; or

(b) **Defaults Under Loan Documents**. The Borrower shall fail to perform, comply with or observe any agreement, covenant or obligation under any provision of any Loan Document; or

(c) **Breach of Warranty**. Any representation or warranty or certification made or furnished by the Borrower under any Loan Document shall prove to have been false or incorrect in any material respect when made (or deemed made); or

(d) **Involuntary or Voluntary Bankruptcy; Appointment of Receiver, Etc.** There shall be commenced by or against the Borrower a voluntary or involuntary case under the Bankruptcy Code or any similar proceeding under any other Applicable Law; or the Borrower shall file a petition, answer a complaint or otherwise institute any proceeding seeking, or shall consent to or acquiesce in the appointment of, a receiver, liquidator, sequestrator, custodian, trustee or other

8

CONFIDENTIAL

officer with similar powers of it or to take possession of all or a substantial portion of its property or to operate all or a substantial portion of its business; or shall make a general assignment for the benefit of creditors; or shall generally not pay its debts as they become due, and any of the following occurs: (i) the Borrower consents to the institution of such case or proceeding; (ii) the petition commencing the case or proceeding is not timely controverted; (iii) the petition commencing such involuntary case or proceeding remains undismissed and unstayed for a period of 60 days; or (iv) an order for relief shall have been issued or entered therein.; or

      (e)    **Insolvent**. The Borrower is not solvent; or

      (f)    **Termination of Loan Documents, Etc**. Any Loan Document, or any material provision thereof, shall cease to be in full force and effect for any reason, except upon a release or termination of such Loan Document pursuant to the terms thereof; or the Borrower shall contest or purport to repudiate or disavow any of its obligations under or the validity of enforceability of any Loan Document or any material provision thereof; or

      (g)    **Final Judgment**. A final, non-appealable judgment shall be rendered by a court of competent jurisdiction that the Borrower is not the owner of the Capital Stock; or

      (h)    **Death**. The death of the Borrower.

    6.02.  **Remedies**.

      (a)    If an Event of Default occurs pursuant to Sections 6.01(a), (b), (c), (d), (e), (f), or (h), the Lender may, by written notice to the Borrower, declare the Line of Credit terminated, whereupon the obligation of the Lender to make any Loan shall cease, and/or declare the unpaid principal amount of the Loan and all other Obligations to be, and the same shall thereupon become, due and payable, without presentment, demand, protest, any additional notice or other requirements of any kind, all of which are hereby expressly waived by the Borrower; provided, that, if an Event of Default described in Section 6.01(d) or Section 6.01(e) hereto has occurred the Line of Credit will automatically terminate and all Obligations of the Borrower hereunder shall be immediately due and payable without demand, protest or any notice of any kind, all of which are hereby expressly waived by the Borrower.

      (b)    If an Event of Default occurs pursuant to Section 6.01(g), the Lender may, by written notice to the Borrower, declare the Line of Credit terminated, whereupon the obligation of the Lender to make any Loan shall cease, and/or declare the unpaid principal amount of the Loan and all other Obligations to be, and the same shall thereupon become, due and payable, in five (5) equal annual installments bearing interest at the rate set forth in Section 2.03(a)(i) above (not at the Post-Default Rate), the first of which shall be due and payable three (3) months after the entry of a final, non-appealable judgment is rendered by a court of a competent jurisdiction that the Borrower is not the owner of the Capital Stock; provided, however, that in no event shall the maturity date extend beyond September 19, 2015.

## ARTICLE VII

## MISCELLANEOUS

    7.01.  **Expenses**. The Borrower shall pay promptly after demand:

9

NY-71756529v16

(a) any and all reasonable fees and disbursements of the Lender's advisors and attorneys and other out-of-pocket costs and expenses incurred by the Lender in connection with (i) the development, drafting and negotiation of, and due diligence associated with, the Loan Documents and the closing of the transactions contemplated thereby and (ii) any amendments to or the administration of the Loan Documents;

(b) any and all costs and expenses (including fees and disbursements of attorneys, appraisers and consultants) incurred by the Lender in any workout, restructuring or similar arrangements or, after a Default, in connection with the protection, preservation, exercise or enforcement of any of the terms of the Loan Documents or in connection with any foreclosure, collection or bankruptcy proceedings, including, but not limited to any and all costs and expenses (including fees and disbursements of attorneys, appraisers and consultants) incurred by the Lender seeking payment by the Trust following a Default in connection with clause (i) of Section 2.05(b) hereof; and

(c) any and all reasonable fees and disbursements of the Lender's advisors and attorneys and other out-of-pocket costs and expenses incurred by the Lender in connection with the Lawsuits not included in Section 7.01(a) and (b) above, including but not limited to travel expenses and monitoring the Lawsuits and interacting with the parties thereto, _provided_, _however_, that the maximum amount under this Section 7.01(c) for which the Borrower shall be responsible in each year (measured from the date of the execution of this Agreement) shall be ten thousand Dollars ($10,000.00).

The expenses of the Lender payable hereunder shall be deemed a borrowing hereunder. Upon presentation of an invoice by Lender to Borrower, the amount of such expenses shall be deemed a borrowing hereunder and shall increase the principal amount of the Loan without any requirement of a Notice of Borrowing.

7.02. **Indemnity**.

(a) The Borrower shall indemnify, defend and hold harmless the Lender and the officers, directors, employees, agents, attorneys, affiliates, successors and assigns of the Lender (collectively, the "**Indemnitees**") from and against any and all liabilities, losses, damages, penalties, judgments, claims, costs and expenses of any kind or nature whatsoever (including reasonable attorneys' fees and disbursements in connection with any actual or threatened investigative, administrative or judicial proceeding, whether or not such Indemnitee shall be designated a party thereto) that may be imposed on, incurred by or asserted against such Indemnitee, in any manner relating to or arising out of the Loan Documents, the Loans, the Lawsuits and the use or intended use of the proceeds of the Loans (the "**Indemnified Liabilities**") _provided_ that no Indemnitee shall have the right to be indemnified or held harmless hereunder for its own gross negligence, bad faith or willful misconduct, as determined by a final judgment of a court of competent jurisdiction.

(b) To the extent that the undertaking to indemnify and hold harmless set forth in Section 7.02(a) may be unenforceable because it violates any Applicable Law or public policy, the Borrower shall make the maximum contribution to the payment and satisfaction of each of the Indemnified Liabilities that is permissible under Applicable Law. All Indemnified Liabilities shall be payable on demand.

10

CONFIDENTIAL WAL71756529v16

BROSER_19-13985_E_000668

7.03. __Waivers; Amendments in Writing__.

(a) No amendment of any provision of this Agreement or any other Loan Document (including a waiver thereof or consent relating thereto) shall be effective unless the same shall be in writing and signed or consented to by the Borrower and the Lender.

(b) Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

7.04. __Notices, Etc__. All notices and other communications under this Agreement shall be in writing and (except for financial statements, other related informational documents and routine communications, which may be sent by first-class mail, postage prepaid) shall be personally delivered or sent by prepaid courier, by overnight, registered or certified mail (postage prepaid), or by telecopy, and shall be deemed given when received by the intended recipient thereof. Unless otherwise specified in a notice sent or delivered in accordance with this Section 7.04, all notices and other communications shall be given to the parties hereto at their respective addresses (or to their respective telecopier numbers) indicated below:

>    __If to the Borrower, to him at:__
>
>    c/o RDA Ventures, LLC
>    630 Third Avenue, 7th Floor
>    New York NY 10017
>
>    __If to the Lender, to it at:__
>
>    c/o RDA Ventures, LLC
>    630 Third Avenue, 7th Floor
>    New York NY 10017
>    Attention: David Broser

7.05. __Successors and Assigns__.

(a) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. The Borrower may not assign or transfer any interest hereunder without the prior written consent of the Lender.

(b) The Lender shall have the right at any time to sell, assign, transfer or negotiate all or any part of its rights and obligations under the Loan Documents; provided, however, the Lender, the Current Member(s) of the Lender and/or their Affiliates shall retain control over all decisions relating to this Agreement. The Lender shall have the right at any time to furnish one or more potential assignees or participants with any information concerning the Borrower that has been supplied by the Borrower to the Lender. The Borrower shall supply all reasonably requested information and execute and deliver all such instruments and take all such further action (including, in the case of an assignment, the execution and delivery of a replacement Note) as the Lender may reasonably request in connection with any assignment or participation arrangement.

11

CONFIDENTIAL

7.06. **Confidentiality**. The Borrower and the Lender and their permitted assignees hereunder shall keep the Loan Documents confidential, except for disclosure: (a) to legal counsel, accountants and other professional advisors to the Borrower or Lender, as applicable, on a confidential basis; (b) required by Applicable Law or in connection with any legal proceeding; and (c) of information that has been previously disclosed publicly without breach of this provision.

7.07. **Governing Law**. **THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND THIS AGREEMENT AND ALL CLAIMS AND CAUSES OF ACTION ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.**

7.08. **Choice of Forum**.

(a) Pursuant to Section 5-1402 of the New York General Obligations Law, all actions or proceedings arising in connection with this Agreement shall be tried and litigated in state or Federal courts located in the Borough of Manhattan, New York City, State of New York. **EACH OF THE BORROWER AND THE LENDER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.**

(b) Nothing contained in this Section shall preclude the Lender from bringing any action or proceeding arising out of or relating to this Agreement in the courts of any place where the Borrower or any of its assets maybe found or located.

7.09. **Headings**. The Article and Section headings used in this Agreement are for convenience of reference only and shall not affect the construction hereof.

7.10. **Severability**. If any provision of this Agreement shall beheld to be invalid, illegal or unenforceable under Applicable Law in any jurisdiction, such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability, which shall not affect any other provisions hereof or the validity, legality or enforceability of such provision in any other jurisdiction.

7.11. **Survival of Agreements, Representations and Warranties**. All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement, the closing and the extensions of credit hereunder and shall continue until payment and performance of any and all Obligations. Any investigation at any time made by or on behalf of the Lender shall not diminish the right of the Lender to rely thereon. Without limitation, the agreements and obligations of the Borrower contained in Sections 2.04, 2.05, 7.01 and 7.02 shall survive the payment in full of all other Obligations.

7.12. **Execution in Counterparts**. This Agreement may be executed in any number of counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. Faxed signatures to this Agreement shall be binding for all purposes.

NY 71756529v16

CONFIDENTIAL

BROSER_19-13985_E_000670

7.13. **Complete Agreement; Third Party Beneficiaries**. This Agreement, together with the other Loan Documents, is intended by the parties as the final expression of their agreement regarding the subject matter hereof and as a complete and exclusive statement of the terms and conditions of such agreement. There are no third party beneficiaries of this Agreement other than the Indemnified Parties.

7.14. **WAIVER OF TRIAL BY JURY.** **EACH BORROWER AND THE LENDER WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION UNDER THIS AGREEMENT OR ANY ACTION ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY, REGARDLESS OF WHICH PARTY INITIATES SUCH ACTION OR ACTIONS.**

*[Signature Page Follows]*

13

NY 71756529v16
CONFIDENTIAL

BROSER_19-13985_E_000671

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered as of the date first set forth above.

**BORROWER:**

_____
Arie Genger

**LENDER:**

**ADBG LLC**

By: _____
Name:  David Broser
Title:  Authorized Person

$10,000,000.00                                                    September 19, 2008

## TERM NOTE

FOR VALUE RECEIVED, the undersigned, ARIE GENGER (the "Borrower"), hereby promises to pay to the order of ADBG LLC, a Delaware limited liability company (the "Lender"), the lesser of (i) the principal sum of TEN MILLION DOLLARS ($10,000,000) plus interest from time to time added to the principal of the Loans pursuant to Section 2.03(a) of the Credit Agreement (as defined below), or (ii) the aggregate unpaid principal amount of the Loans made by the Lender to the Borrower pursuant to the Credit Agreement, including interest added to the principal of the Loans from time to time pursuant to Section 2.03(a) of the Credit Agreement, on the dates and in the amounts set forth in the Credit Agreement. The Borrower further promises to pay interest on the unpaid principal amount of each such Loan from time to time outstanding on the dates and at the rates specified in the Credit Agreement. The Borrower further agrees to pay the Additional Consideration. Expenses of Lender shall be added to principal as set forth in Section 7.01 of the Credit Agreement.

This Note (the "Note") is the Note referred to in, and is entitled to the benefits of, the Credit Agreement, dated as of September 19, 2008, as the same may be amended, supplemented, replaced, renewed or otherwise modified from time to time (as so modified, the "Credit Agreement"), by and between the Borrower and the Lender. Reference is hereby made to the Credit Agreement for a more complete statement of the terms and conditions on which the Loans evidenced hereby are made and are to be repaid.

Terms with initial capital letters used but not defined herein have the meanings assigned to them in the Credit Agreement. All payments due hereunder shall be made to the Lender at the time and place, in the type of funds, and in the manner set forth in the Credit Agreement, without any deduction whatsoever, including, without limitation, any deduction for any set-off, recoupment, counterclaim or taxes. The Borrower hereby waives diligence, presentment, demand, protest, notice of dishonor and all other demands and notices in connection with the execution, delivery, performance or enforcement of this Note.

The Lender is authorized to endorse on the Schedule hereto, or on a continuation thereof, each Loan made by the Lender and each payment or prepayment with respect thereto. The Borrower promises to pay all costs and expenses, including attorneys' fees and disbursements, incurred in the collection or enforcement hereof.

Except as permitted by Section 7.05 of the Credit Agreement, this Note may not be assigned to any Person.

**THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE BORROWER AND, BY ACCEPTANCE HEREOF, THE LENDER WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION UNDER THIS NOTE OR ANY ACTION ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY, REGARDLESS OF WHICH PARTY INITIATES SUCH ACTION OR ACTIONS.**

NY 71804934v1

CONFIDENTIAL

Arie Genger

NY 71804934v1
CONFIDENTIAL

# FIRST AMENDMENT TO CREDIT AGREEMENT

THIS FIRST AMENDMENT TO CREDIT AGREEMENT ("Amendment") dated as of ___March 30___, 2012, by and between Arie Genger, an individual at c/o RDA Ventures, LLC, 104 West 40th Street, 19th Floor, New York, New York 10018 as the borrower (the "Borrower"), and ADBG LLC, a Delaware Limited Liability Company, as the lender (the "Lender").

This Amendment shall be deemed to be a part of and subject to that certain Credit Agreement dated as of September 19, 2008, as it may be amended from time to time, and any and all addenda and riders thereto (collectively the "Agreement"). Unless otherwise defined herein, all terms used in this Amendment shall have the same meanings as in the Agreement. To the extent that any of the terms or provisions of this Amendment conflict with those contained in the Agreement, the terms and provisions contained herein shall control.

## PRELIMINARY STATEMENTS

WHEREAS, in order to continue to pay legal fees and expenses incurred by the Borrower related to the lawsuits brought in New York in the United States District Court for the Southern District of New York by Glenclova Investment Co. entitled <u>Glenclova Investment Co. v. Trans-Resources, Inc. and TPR Investment Associates Inc.</u> Index No. 08 CV. 7140 and by Borrower in New York in the New York State Supreme Court, New York County entitled <u>Arie Genger and Orly Genger v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Saga Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and Trans-Resources, Inc.</u> Index No. 651089/2010 (collectively, the "<u>Lawsuits</u>") and to fund other related lawsuits, expenses or obligations, the Borrower has requested the Lender to increase the loan by the principal amount of three million dollars ($3,000,000.00) effective January 1, 2012, as described herein;

WHEREAS, the Borrower acknowledges that the outstanding loan under the Agreement as of December 31, 2011 is fifteen million one hundred and sixty-eight thousand three hundred and eighty-three dollars and 88/00 cents ($15,168,383.88) of principal and two million seven hundred and twenty-five thousand and thirty-eight dollars and 58/00 cents ($2,725,038.58) of interest for a total balance due of seventeen million eight hundred and ninety-three thousand four hundred and twenty-two dollars and 46/00 cents ($17,893,422.46);

WHEREAS, the Borrower and the Lender mutually desire to modify the Agreement;

WHEREAS, the Lender has been provided with access to all pleadings in the Lawsuits and all other documents it has requested;

WHEREAS, the Lender is willing to provide the loan on the terms and conditions set forth herein.

1

CONFIDENTIAL

BROSER_19-13985_E_000643

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto hereby agree that:

1.      **Amendment to Agreement.** The Agreement shall be amended as follows:

(a)      Section 2.01(a) of the Agreement shall be deleted in its entirety and replaced by the following:

a.      **Term Loans.** The Lender agrees, upon the terms and subject to the conditions set forth in this Agreement, to make one or more term loans (each, a "**Loan**") to the Borrower from and after the Closing Date and on or before the Maturity Date, in an aggregate principal amount not to exceed at any time eighteen million one hundred and sixty-eight thousand three hundred and eighty-three dollars and 88/00 cents ($18,168,383.88) (such Lender's commitment under this Agreement, the "**Commitment**").  The Commitment may be terminated by the Lender, in whole or in part, at any time after a settlement of, or the entry of a final, non-appealable judgment in, both of the Lawsuits.

(b)      Section 2.05(b) of the Agreement shall be deleted in its entirety and replaced by the following:

b.      **Mandatory Prepayment.** If on any date the Borrower and/or the Trust shall receive proceeds from any Realization Event, the Borrower agrees that any proceeds from such Realization Event, whether or not there are any amounts outstanding under the Note, shall be distributed on a cumulative aggregate basis as follows (such proceeds shall be distributed on each Realization Event):

First, to pay any and all outstanding fees and disbursements of attorneys of record in the Lawsuits and related lawsuits;

Second, to the Lender for the payment of principal and interest due and owing under the Note, including the unreimbursed expenses of the Lender described in Section 7.01;

Third, to the Stockholders an amount equal to the above payment to the Lender;

Fourth, to pay any and all bonus/contingency fees due attorneys; and

Fifth, the balance shall be paid thirty percent (30%) to the Lender and seventy percent (70%) to the Stockholders, as they determine.

CONFIDENTIAL

BROSER_19-13985_E_000644

For the avoidance of doubt, the Borrower shall be obligated to pay the Lender the amounts determined pursuant to sub-paragraphs <u>Second</u>, and <u>Fifth</u> above, regardless of the proportion of proceeds received by the Borrower and the Trust upon the occurrence of a Realization Event.

The parties hereto shall work together in good faith to cause the Trust to become a co-obligor under this Agreement. If the Trust consents to become a party to this Agreement on terms reasonably acceptable to the Lender and the Borrower, the Lender hereby agrees that it shall initially look to the Trust to pay its portion (determined by its respective interest in the proceeds of the Realization Event) of payments due to the Lender under sub-paragraph <u>Fifth</u> above. If the Trust defaults on its obligations to pay the Lender under sub-paragraph <u>Fifth</u> above and the Borrower pays in full its Obligations under sub-paragraph <u>Second</u> above and its proportionate share of the Obligations under sub-paragraph <u>Fifth</u> above, the Lender agrees to conditionally waive the Default by the Borrower for the non-payment by the Trust of its proportionate share of the Obligations under sub-paragraph <u>Fifth</u> above; <u>provided</u>, <u>however</u>, the Borrower (i) must use commercially reasonable efforts to assist the Lender, at the Borrower's expense, to collect from the Trust payments due to the Lender, and (ii) shall be obligated to pay the Lender all amounts due pursuant to sub-paragraph <u>Fifth</u> above (less any amounts paid by the Trust) if (y) the Trust fails to pay such amounts owed to the Lender within one (1) year of the Realization Event, and (z) the Lender has provided the Borrower with a thirty (30) day written notice of demand for payment. The Borrower hereby unconditionally guarantees to the Lender the prompt payment when due and performance of the Obligations of the Borrower under clause (ii) hereof.

2.     **Confirmation of Other Terms and Conditions of the Agreement.** Except as specifically provided in this Amendment, all other terms, conditions and covenants of the Agreement unaffected by this Amendment shall remain unchanged and shall continue in full force and effect and the Borrower hereby covenants and agrees to perform and observe all terms, covenants and agreements provided for in the Agreement, as hereby amended.

3.     **Governing Law.** This Amendment shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of law provisions.

4.     **Counterparts.** This Amendment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**[Remainder of Page Intentionally Blank]**

3

BROSER_19-13985_E_000645

**IN WITNESS WHEREOF,** this Amendment has been executed by the parties hereto as of the date first hereinabove written.

**BORROWER:**

Arie Genger

**LENDER:**
ADBG LLC

By: _____

Name:  David Broser
Title:  Authorized Person

4

CONFIDENTIAL

BROSER_19-13985_E_000646

## FIRST AMENDMENT TO CREDIT AGREEMENT

THIS FIRST AMENDMENT TO CREDIT AGREEMENT ("Amendment") dated as of March 31, 2012, by and between Arie Genger, an individual at c/o RDA Ventures, LLC, 104 West 40th Street, 19th Floor, New York, New York 10018 as the borrower (the "Borrower"), and ADBG LLC, a Delaware Limited Liability Company, as the lender (the "Lender").

This Amendment shall be deemed to be a part of and subject to that certain Credit Agreement dated as of September 19, 2008, as it may be amended from time to time, and any and all addenda and riders thereto (collectively the "Agreement").  Unless otherwise defined herein, all terms used in this Amendment shall have the same meanings as in the Agreement.  To the extent that any of the terms or provisions of this Amendment conflict with those contained in the Agreement, the terms and provisions contained herein shall control.

### PRELIMINARY STATEMENTS

WHEREAS, in order to continue to pay legal fees and expenses incurred by the Borrower related to the lawsuits brought in New York in the United States District Court for the Southern District of New York by Glenclova Investment Co. entitled Glenclova Investment Co. v. Trans-Resources, Inc. and TPR Investment Associates Inc. Index No. 08 CV 7140 and by Borrower in New York in the New York State Supreme Court, New York County entitled Arie Genger and Orly Genger v. Sagi Genger, TPR Investment Associates, Inc., Dalia Genger, The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and Trans-Resources, Inc. Index No. 651089/2010 (collectively, the "Lawsuits") and to fund other related lawsuits, expenses or obligations, the Borrower has requested the Lender to increase the loan by the principal amount of Three Million Dollars ($3,000,000.00) effective January 1, 2012, as described herein;

WHEREAS, the Borrower acknowledges that the outstanding loan under the Agreement as of December 31, 2011 is Fifteen Million One Hundred and Sixty-Eight Thousand Three Hundred and Eighty-Three Dollars and 88/00 cents ($15,168,383.88) of principal and as of March 31, 2012 Three Million Ninety-Eight Thousand Two Hundred and Eighty-Four Dollars and 00/00 cents ($3,098,284.00)  of interest for a total balance due of Eighteen Million Two Hundred and Sixty-Six Thousand Six Hundred and Sixty-Seven Dollars and 88/100 cents ($18,266,667.88);

WHEREAS, the Lender has agreed upon the substantial exhaustion of the Loan principal  to make an additional loan of up to One Million Five Hundred Thousand Dollars ($1,500,000) upon the request of Borrower to fund the Lawsuits and/or Additional Lawsuits (as defined herein).  Should Lender not make such loan Lender agrees to allow Borrower to seek the loan from third-parties on the same terms as provided for in this Agreement, on a *pari passu*, pro-rata basis;

1

BROSER_19-13985_E_000647

WHEREAS, the Lender has agreed that should Borrower need an addition loan, to fund the Lawsuits, Additional Lawsuits, and/or Future Lawsuits (as defined herein) Borrower may seek funds from third parties on term agreed upon between the parties. Notwithstanding the above, Lender may make such loan on the same terms as Borrower agreed upon with such third party;

WHEREAS, the Stockholders, including Arie Genger ("Arie") and Orly Genger ("Orly") individually at the request of the Lender have assigned their rights to collect any and all proceeds from the Lawsuits, the Additional Lawsuits, and any and all future lawsuits ("Future Lawsuits") that the Stockholder, Arie, or Orly have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits ("Additional Lawsuits" shall be defined as the following additional New York State Supreme Court, New York County lawsuits entitled <u>Arie Genger v. Sagi Genger and Dalia Genger</u> Index No. 104249/07 and <u>Orly Genger v. Sagi Genger</u> Index No. 590215/09 less any liabilities and payments due attorneys relating to the above lawsuit Index No. 590215/09 existing at the time of receipt of proceeds by judgment or settlement thereof; "Future Lawsuits" shall be defined as all claims that Stockholders, Arie or Orly have or may have, in entity or individual capacity, including claims made against Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, attorneys, and the like ) including the receipt of monies by the Stockholders, Arie, or Orly from any of the named parties, including, directly or indirectly, through third parties, in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits including but not limited to Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, and attorney to a trust with David Broser and Lance Harris as trustees (the "New Trust");

WHEREAS, the Borrower and the Lender mutually desire to modify the Agreement;

WHEREAS, the Lender has been provided with access to all pleadings in the Lawsuits and all other documents it has requested;

WHEREAS, the Lender is willing to provide the loan on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto hereby agree that:

1. **Amendment to Agreement.** The Agreement shall be amended as follows:

(a) Section 2.01(a) of the Agreement shall be deleted in its entirety and replaced by the following:

a. **Term Loans**. The Lender agrees, upon the terms and subject to the conditions set forth in this Agreement, to make one or more term loans (each, a "**Loan**") to the

2

BROSER_19-13985_E_000648

Borrower from and after the Closing Date and on or before the Maturity Date, in an aggregate principal amount, excluding accrued interest, not to exceed at any time Eighteen Million One Hundred and Sixty-Eight Thousand Three Hundred and Eighty-Three Dollars and 88/00 cents ($18,168,383.88) (such Lender's commitment under this Agreement, the "**Commitment**").    Further the Commitment may be increased by the Lender by up to One Million Five Hundred Thousand Dollars ($1,500,000) upon the request of Borrower to fund the Lawsuits and/or Additional Lawsuits.  Should Lender not make such loan Lender agrees to allow Borrower to seek the loan from third-parties on the same terms as provided for in this Agreement, on a *pari passu*, pro-rata basis, such third-party loan must be approved by Lender. Further, Lender has agreed that should Borrower need an addition loan, to fund the Lawsuits, Additional Lawsuits, and/or Future Lawsuits (as defined herein) Borrower may seek funds from third parties on term agreed upon between the parties, including Lender and Borrower.  Notwithstanding the above, Lender may make such loan on the same terms as Borrower agreed upon with such third party. The Commitment may be terminated by the Lender, in whole or in part, at any time after a settlement of, or the entry of a final, non-appealable judgment in, both of the Lawsuits;

(b)      Section 2.05(b) of the Agreement shall be deleted in its entirety and replaced by the following:

b.      **Mandatory Prepayment.**  If on any date the Borrower,  the Trust, and/or the New Trust shall receive proceeds from any Realization Event, the Borrower agrees that any proceeds from such Realization Event, including collecting any judgments from the Lawsuits and/or Additional Lawsuit whether or not there are any amounts outstanding under the Note, shall be distributed on a cumulative aggregate basis as follows (such proceeds shall be distributed on each Realization Event):

First, to the Lender for the payment of principal and interest due and owing under the Note which as of March 31, 2012, excluding any borrowing hereunder,  equals Eighteen Million Two Hundred and Sixty-Six Thousand Six Hundred and Sixty-Seven Dollars and 88/100 ($18,266,667.88).  Payment shall include all new borrowing and interest calculated hereunder and include the unreimbursed expenses of the Lender described in Section 7.01;

Second,  to the Stockholders up to Eight Million Dollars ($8,000,000)  which shall include Two Million Seven Hundred and Fifty Thousand ($2,750,000) to Arie Genger to reimburse him for monies expended in the Lawsuits and related lawsuits, with the balance used to pay any and all fees/bonus/contingency fees due attorneys of record in the Lawsuits, Additional Lawsuits, and related lawsuits, including Stein & Harris, exclusive of the Loan and not as otherwise reimbursed pursuant to sub-paragraph First above; and

Third, the balance shall be paid thirty percent (30%) to the Lender and seventy percent (70%) to the Stockholders, as they determine.

CONFIDENTIAL                                              BROSER_19-13985_E_000649

For the avoidance of doubt, the Borrower and/or the New Trust shall be obligated to pay the Lender the amounts determined pursuant to sub-paragraph <u>First</u> above, regardless of the proportion of proceeds received by the Borrower and the Trust upon the occurrence of a Realization Event.

The parties hereto shall work together in good faith to cause the Trust to become a co-obligor under this Agreement. If the Trust consents to become a party to this Agreement on terms reasonably acceptable to the Lender and the Borrower, the Lender hereby agrees that it shall initially look to the Trust to pay its portion (determined by its respective interest in the proceeds of the Realization Event) of payments due to the Lender under sub-paragraph <u>Third</u> above. If the Trust defaults on its obligations to pay the Lender under sub-paragraph <u>Third</u> above and the Borrower pays in full its Obligations under sub-paragraph <u>First</u> above and its proportionate share of the Obligations under sub-paragraph <u>Third</u> above, the Lender agrees to conditionally waive the Default by the Borrower for the non-payment by the Trust of its proportionate share of the Obligations under sub-paragraph <u>Third</u> above; <u>provided</u>, <u>however</u>, the Borrower (i) must use commercially reasonable efforts to assist the Lender, at the Borrower's expense, to collect from the Trust payments due to the Lender, and (ii) shall be obligated to pay the Lender all amounts due pursuant to sub-paragraph <u>Third</u> above (less any amounts paid by the Trust) if (y) the Trust fails to pay such amounts owed to the Lender within one (1) year of the Realization Event, and (z) the Lender has provided the Borrower with a thirty (30) day written notice of demand for payment. The Borrower hereby unconditionally guarantees to the Lender the prompt payment when due and performance of the Obligations of the Borrower under clause (ii) hereof.

Notwithstanding anything to the contrary herein the Lender shall first look to the New Trust for all payments due hereunder provided such New Trust receives proceeds from the Lawsuits and/or Additional Lawsuits.

Further, Orly Genger hereby agrees to use her best efforts to ensure that should she not be the beneficiary of the Trust that she cause the Trust to become a co-obligor under this Agreement.

Lender shall send Borrower from time to time statements as to the outstanding balance due hereunder.

2.      **Assignment.** the Stockholders, Arie, and Orly individually at the request of the Lender hereby assign all their rights to collect any and all net proceeds from the Lawsuits, the Additional Lawsuits, and any and all Future Lawsuits that the Stockholder, Arie, or Orly have or may have relating to the Company including the settlement of any Lawsuits, Additional Lawsuits or Future Lawsuits and further including the receipt of monies by the Stockholders, Arie, or Orly from any of the named parties, including, directly or indirectly, through third parties, in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits including but not limited to Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, and attorneys to the New Trust.

4

3.      **Confirmation of Other Terms and Conditions of the Agreement.**  Except as specifically provided in this Amendment, all other terms, conditions and covenants of the Agreement unaffected by this Amendment shall remain unchanged and shall continue in full force and effect and the Borrower hereby covenants and agrees to perform and observe all terms, covenants and agreements provided for in the Agreement, as hereby amended.

4.      **Governing Law.**  This Amendment shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of law provisions.

5.      **Counterparts.**  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.


        **IN WITNESS WHEREOF,** this Amendment has been executed by the parties hereto as of the date first hereinabove written.


                                        **BORROWER:**


                                        _____

                                        Arie Genger



                                        **Accepted and Agreed:**



                                        Orly Genger



                                        **LENDER:**
                                        ADBG LLC

                                        By:_____
                                        Name:  David Broser
                                        Title:  Authorized Person

5

3.    **Confirmation of Other Terms and Conditions of the Agreement.**  Except as specifically provided in this Amendment, all other terms, conditions and covenants of the Agreement unaffected by this Amendment shall remain unchanged and shall continue in full force and effect and the Borrower hereby covenants and agrees to perform and observe all terms, covenants and agreements provided for in the Agreement, as hereby amended.

4.    **Governing Law.**  This Amendment shall be governed and construed in accordance with the laws of the State of New York without regard to its conflict of law provisions.

5.    **Counterparts.**  This Amendment may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

       **IN WITNESS WHEREOF,** this Amendment has been executed by the parties hereto as of the date first hereinabove written.

**BORROWER:**

Arie Genger

**Accepted and Agreed:**

_____

Orly Genger

**LENDER:**
ADBG LLC

By:_____
Name:  David Broser
Title:  Authorized Person

5

CONFIDENTIAL

June 11, 2012

### TERM SHEET

### CREDIT AGREEMENT AND GENGER LITIGATION TRUST AGREEMENT

This term sheet is intended to summarize the principal terms of the Credit Agreement and First Amendment thereto, dated September 19, 2008 and March 31, 2012 respectively and the Genger Litigation Trust Agreement dated June ⅩⅠ, 2012 between the parties, including Arie Genger, Orly Genger, the Orly Genger 1993 Trust, and ADBG, LLC. If there is any ambiguity in the language contained in this Term Sheet, the Credit Agreement, as amended, and the Genger Litigation Trust Agreement, the language of the Genger Litigation Trust Agreement shall prevail and supersede the language in either the Credit Agreement, as amended, or this term sheet.

1.    Loan: ADBG, LLC ("Lender") has loaned Arie Genger ("Borrower" or "Arie") $18,266,667.88, including interest, thru March 31, 2012. Bob Kane (Lender's accountant) shall provide a monthly accrual of interest calculation to Borrower, if the Borrower does not object within 30 days, such interest calculation shall be deemed accepted by Borrower. Effective January 1, 2012 the Lender agrees to make an additional loan of $3,000,000. Lender may increase the loan by up to an additional $1,500,000 on the same terms. Should Lender not make the $1,500,000 loan Lender agrees to allow Borrower to seek the loan from third-parties on the same terms, on a pari passu, pro-rata basis. The ratio shall be set upon the execution of the third party loan documents and re-calculated, if necessary, if the loan is not fully drawn at time of re-payment. [By way of example: if the Loan upon execution of the third party loan document is $23.5m ($22m from Lender and $1.5m from a third party), the ratio shall be set at such time on the 30% fee to be divided, so that the ratio would be set at 93.60% for Lender ($22m/$23.5m) and 6.40% for third party lender ($1.5m/$23.5m). If the settlement is $50m, then Lender would receive $22m (plus accrued interest), third party would receive $1.5m (plus accrued interest), Arie Genger and counsel would receive $8m. This leaves a balance as follows: $50m - $22m - $1.5m - $8m = $18.5m. Lender and third party would receive 30% of the $18.5m as follows: 30% x $18.5m = $5,550,000. Lender and third party would split the $5,550,000 as follows: 93.60% x 5,550,000 = $5,194,800. Lender would receive $5,194,800 and the third party would receive $355,200. If the third party loan was partially drawn at time of re-payment the ratio would be reduced accordingly. So if the

1

BROSER_19-13985_E_000653

third party loan at time of repayment was say only $1m. The ratio would be reduced to 4.35% due to the ratio of $1m/$23m, using the other numbers from above)]. Lender has agreed that should additional funds be needed – in addition to the $3,000,000 and $1,500,000 loans, Borrower may seek funds from third parties on term agreed upon between such third-party and Borrower, subject to written approval by Lender.  No additional loan(s) other than stated herein or any new attorney commitments, which may have an adverse impact on the repayment of the Loan may be made without Lender review and written approval.

2.      Assignment: the Stockholders (defined as Arie Genger and Orly Genger ("Orly") on behalf of herself and the Orly Genger 1993 Trust) have assigned their rights to collect all proceeds from the Lawsuits (Glenclova Investment Co. v. Trans -Resources, Inc., et. al., No. 08 Civ. 7140 (JFK)), Additional Lawsuits ("Additional Lawsuits" shall be defined as  the following additional New York State Supreme Court, New York County lawsuits entitled Arie Genger v. Sagi Genger and Dalia Genger Index No. 104249/07 and Orly Genger v. Sagi Genger Index No. 590215/09 less any liabilities and payments due attorneys existing at the time of receipt of proceeds by judgment or settlement thereof), and Future Lawsuits ("Future Lawsuits" shall be defined as all claims that Stockholders, Arie or Orly have or may have, in entity or individual capacity, including claims made against Dalia Genger, Sagi Genger, TPR Investment Associates, Inc., The Sagi Genger 1993 Trust, Rochelle Fang, Glenclova Investment Company, TR Investors, LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch and/or Trans-Resources, Inc. and all of their related entities, associates, employees, attorneys, and the like) including the settlement of any Lawsuits, Additional Lawsuits, or Future Lawsuits to a trust with David Broser and Lance Harris as trustees.

3.      Re-Payment/Payment Obligation of Trust: Upon the Assignment, the Lender shall look to the trust for the re-payment of the loan. The Borrower agrees that all net proceeds from the Lawsuits and Additional Lawsuits shall be distributed on a cumulative aggregate basis as follows: First, to the Lender for the payment of principal and interest due and owing under the Note (any term not defined herein shall have the meaning ascribed in the applicable document); Second,  (i) to  Arie Two Million Seven Hundred and Fifty Thousand ($2,750,000) to reimburse him for monies expended; and (ii) up to Five Million Two Hundred and Fifty Thousand ($5,250,000) to pay any and all bonus/contingency/legal

2

BROSER_19-13985_E_000654

fees due attorneys not otherwise reimbursed; and  Third, the balance shall be paid thirty percent (30%) to the Lender and seventy percent (70%) to the Stockholders, as they determine.

4.     Trust Terms: Arie and Orly are the Grantors of the trust with the Lender as third party beneficiary.  The purpose of the Trust is to receive the proceeds of Arie and Orly from the  Lawsuits, Additional Lawsuits, and/or the Future Lawsuits and to use those proceeds to pay the Note and satisfy the Credit Agreement as amended. The following provisions shall apply to the Genger Litigation Trust: (i) Arie Genger shall have the power to direct the Trustees to make any litigation decisions in the Lawsuits, Additional Lawsuits, and/or Future Lawsuits; (ii) should the Genger Litigation Trust receive any shares of Trans-Resources, Inc. ("TRI"), immediately prior to such receipt Arie Genger will become a Trustee hereunder with exclusive rights to vote such shares so long as he is alive, such shares shall be held in a separate trust from all other assets, in order to conform to the terms of the TRI Shareholders Agreement then in effect; (iii) the trust is irrevocable;  and (iv) upon the death of Arie Genger, Orly Genger shall become a Trustee.

5.     Lender Approval: No settlement of the Lawsuits, Additional Lawsuits, and/or Future Lawsuits may be made without the prior written approval of Lender if upon the settlement the Loan including interest will not be repaid in full.  If the settlement is for restricted shares of TRI prior written approval of Lender shall be required unless Arie has a binding commitment to be effective within twelve (12) months to monetize enough of the TRI shares so as to pay the Loan including interest in full.  Any remaining shares shall be subject to the terms of the Credit Agreement, as amended.

CONFIDENTIAL

BROSER_19-13985_E_000655

AMENDMENT TO THE TERM SHEET, CREDIT AGREEMENT AND GENGER LITIGATION TRUST AGREEMENT

This amendment amends, updates and summarizes the terms of the Term Sheet dated June 11, 2012,

the Credit Agreements dated, September 18, 2008 and March 31, 2012 respectively, and the Genger

Trust Agreement dated June 2X 2012 among Arie Genger and Orly Genger (borrowers) and ADBG

(Lender)

(1) Borrowers are engaged in a series of claim and litigation activities involving third parties named
    in aforementioned Credit, Trust and Term Sheet Agreements. Lender has provided funds to
    enable borrowers to assert such claims.

(2) The purpose of this amendment is to clearly set forth amounts loaned or to be loaned by lender
    to borrowers in the future and the amounts that lender shall be repaid from third party
    recoveries in the future.

(3) As of June 30, 2012 lender advanced and will be owed by borrowers the following amounts of
    principal and interest:

|  |  |
|---|---|
| Advances to June 30, 2012 | $16,018,384 |
| Accumulated interest to June 30, 2012 | $ 3,493,733 |
| Total P&I owed to June 30, 2012 | $19,512,117 |
| Additional advances committed, | |
| But not yet made by lender | $ 2,150,000 |
| Total | $21,662,117 |

Bob Kane shall compute on a monthly basis the interest accruing to lender at the rate of 10%

after June 30, 2012 and the amounts of interest and principal owed by borrowers to lender on a

monthly basis after June 30, 2012.

CONFIDENTIAL

(4) In addition to the repayment of the principal and interest described above from the proceed, lender shall also receive 30% of the proceeds realized by borrowers as described in (7) below in consideration for the loans made by lender to borrowers.

(5) If borrowers require additional $1,500,000 of financing and lender declines to participate, borrowers may seek a new lender who shall participate pari passu with lender as follows:  In addition to the 10% interest rate that the new lender shall be entitled to, the participating rate for new lender shall be based on a percentage computed by dividing $1,500,000 by the sum of $1,500,000 attributed to new lender and the amount attributed to lender accrued to the date of such new loan.  For example, if such loan were to be made on June 30, 2012, the percentage attributed to new lender would be 6.47% computed by dividing $1,500,000 by $23,162,117. Based on such percentage, repayments of amounts owed to lender and new lender would be 93.53% to lender and 6.47% to new lender.   If there is 30% proceeds (as discussed further below) to be allocated to lenders the 30% would be allocated 28.06% to lender and 1.94% to new lender.

(6) If the new lender shall provide funds subsequent to June 30, 2012, the 6.47% allocated to new lender for both repayment of amounts owed and the 30% additional share of proceeds will be reduced monthly by the accrual of monthly interest owed to lender subsequent to June 30, 2012 until such new lender funds the new loan.  It is lender's desire not to make further loans and therefore request borrowers to seek as soon as possible the $1,500,000 new loan from other sources on terms described above, if such additional  loan is needed.

(7) Any proceeds  realized from claims asserted by borrowers shall be promptly paid in following order:

> First repayment of principal and interest owed to lender and new lender (if there is any).

BROSER_SUPP_19-13895_000549

Next repayment of up to $8MM to borrowers (after full repayment of loans made by lenders including interest)

Any remaining proceeds shall be shared 30% by lenders and 70% by borrowers.

(8) The amount of up to $8,000,000 is to be paid as follows: (i) $2,750,000 to Arie Genger to reimburse him for legal fees expended by him to date, and (ii) up to $5,250,000 to pay legal fee contingencies as identified on **Exhibit A** hereto .

(9) Arie Genger shall have the power to direct Trustees to make litigation decisions involving the lawsuits and/or future lawsuit as it relates to his claims.  However, settlement of lawsuits, additional lawsuits and/or future lawsuits require the prior written approval of lender if such settlement does not repay in full the principal and interest owed to lender at the time of such settlement.  If the settlement involves only restricted shares of TRI, lender must be satisfied before such settlement that Arie has a binding commitment that will without question result in the repayment of the loan and interest owed to lender within twelve months.

(10) Borrowers shall not enter into any other agreements with third parties, including attorneys and/or lenders, that will diminish in any way the amounts that lender is entitled to under this Agreement.

(11) This amendment to the Term Sheet, Credit Agreement and Genger Litigation Trust Agreement shall prevail and supersede the language of the other Agreements if there is any ambiguity or inconsistencies.

**AGREED TO:**

**BORROWERS**

_____          _____

**ARIE GENGER**                                              **ORLY GENGER**

CONFIDENTIAL

**LENDER**

**ADBG**

**BY:** _____

Next repayment of up to $8MM to borrowers (after full repayment of loans made by lenders including interest)

Any remaining proceeds shall be shared 30% by lenders and 70% by borrowers.

(8) The amount of up to $8,000,000 is to be paid as follows: (i) $2,750,000 to Arie Genger to reimburse him for legal fees expended by him to date, and (ii) up to $5,250,000 to pay legal fee contingencies as identified on **Exhibit A** hereto .

(9) Arie Genger shall have the power to direct Trustees to make litigation decisions involving the lawsuits and/or future lawsuit as it relates to his claims.  However, settlement of lawsuits, additional lawsuits and/or future lawsuits require the prior written approval of lender if such settlement does not repay in full the principal and interest owed to lender at the time of such settlement.  If the settlement involves only restricted shares of TRI, lender must be satisfied before such settlement that Arie has a binding commitment that will without question result in the repayment of the loan and interest owed to lender within twelve months.

(10) Borrowers shall not enter into any other agreements with third parties, including attorneys and/or lenders, that will diminish in any way the amounts that lender is entitled to under this Agreement.

(11) This amendment to the Term Sheet, Credit Agreement and Genger Litigation Trust Agreement shall prevail and supersede the language of the other Agreements if there is any ambiguity or inconsistencies.


**AGREED TO:**

**BORROWERS**

_____         _____
**ARIE GENGER**                                             **ORLY GENGER**

**LENDER**

**ADBG**

BY: _____

BROSER_SUPP_19-13895_000553

**EXHIBIT A**

1) **Mitchell Silberberg & Knupp** – A success fee if Arie receives his 14% TRI interest or recovers more than $30 million. If either are achieved then all time billed by Lauren Wachtler and Paul Montclare from November 2010  will be recalculated at an hourly rate of $855 (increase of $355/hr) and associates rate will increase by 10%. If Arie receives $25 million or more but less than $30 million Lauren Wachtler and Paul Montclare's hourly rates will be recalculated at an hourly rate of $655 (increase of $155/hr) and associates rate will increase by 10%.

2) **Stein & Harris** – a success fee of $360,000 for work thru November 30, 2011 and $5,000 per month thereafter until settlement or successful completion of matters concerning Arie and Orly's TRI shares

3) **Wachtell & Massyr** – a fee to be determined pursuant to negotiations among Bill Wachtell, David Broser and Arie Genger.

CONFIDENTIAL