# EXHIBIT 12

223

1

2   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK : CIVIL TERM : PART 12
3   ---------------------------------------------x
    ORLY GENGER, in her individual capacity and
4   on behalf of the Orly Genger 1993 Trust (both
    in its individual capacity and on behalf of
5   D&K Limited Partnership),

6                                        Plaintiff,
                                                  Index No.
7        -against-                                109749/09

8   DALIA GENGER, SAGI GENGER, LEAH FANG, D&K GP
    LLC, and TPR INVESTMENT ASSOCIATES, INC.,
9
                                         Defendants.
10  ---------------------------------------------x
                                         August 3, 2016
11                                       60 Centre Street
                                         New York, NY  10007
12  B e f o r e:

13       HON. IRA GAMMERMAN, Judicial Hearing Officer.

14  A p p e a r a n c e s:

15

16       KASOWITZ, BENSON, TORRES, & FRIEDMAN, LLP
         Attorneys for Plaintiff
17           1633 Broadway
             New York, New York  10019
18       BY:  ERIC D. HERSCHMANN, ESQ., and
             MICHAEL PAUL BOWEN, ESQ.
19

20
         (Appearances continue on next page.)
21

22

23

24

25

26

1

2      KELLEY, DRYE & WARREN, LLP
       Attorneys for Defendants SAGI GENGER and
3      TPR INVESTMENT ASSOCIATES
            101 Park Avenue
4           New York, New York  10178
       BY:  JOHN G. DELLAPORTAS, ESQ.

5

6      PEPPER, HAMILTON, LLP
       Attorneys for Mark Hirsch
7           1313 Market Street
            Wilmington, Deleware 19899-1709
8      BY:  DOUGLAS D. HERMANN, ESQ.

9
                   MINUTES OF NONJURY TRIAL
10
                              Reported By:
11                            John Phelps, and
                              William L. Kutsch
12                            Senior Court Reporters

13

14

15

16

17

18

19

20

21

22

23

24

25

26

359

1                        Proceedings

2            THE COURT:  Maybe he can work through for two

3    hours.  90 minutes it said?

4            MR. DELLAPORTAS:  60 to 90 minutes.

5            THE COURT:  So 90 minutes is an hour and a half.

6    Let's see if we can stretch another 15 minutes out of that.

7            MR. DELLAPORTAS:  So your Honor knows, yesterday he

8    became violently ill in the courtroom.

9            THE COURT:  Look, you tell me how you are feeling

10   and when you want a break, and you'll get it; okay?

11           THE WITNESS:  Yes.  Thank you.

12           THE COURT:  I'll let you be the judge.

13           THE WITNESS:  May I remove my jacket?

14           THE COURT:  Of course.

15           You be the judge in how you feel and what you need;

16   okay?

17           THE WITNESS:  Thank you very much.

18           THE COURT:  I will let him decide.

19           MR. DELLAPORTAS:  Thank you, your Honor.

20   S A G I    G E N G E R, called as a witness by Plaintiff,

21   having been first duly affirmed by the Court, was examined

22   and testified as follows:

23           THE COURT:  In a loud and clear voice, give your

24   name and address to the court reporter.

25           THE WITNESS:  My name is Sagi Avi Genger.  I live

26   at 10031 West Broadview Drive, Bay Harbor Islands, Florida.

S. Genger - by Plaintiff - Direct

2  fungible, do you remember that, when you were being questioned

3  in front of Judge Jaffe?

4       MR. DELLAPORTAS:  Objection.

5       THE COURT:  Overruled.

6  Q    Let me ask you.  Do you agree dollars are fungible?

7       MR. DELLAPORTAS:  Objection.

8       THE COURT:  Overruled.

9  A    Depends on the context.

10 Q    How much money, actual dollars, is sitting in

11 Lichtenstein with Dr. Roland Mueller?

12 A    I have no idea.  I don't have any money in

13 Lichtenstein.

14 Q    I'm sorry?

15 A    I have no money in Lichtenstein.

16 Q    Where did the money go?

17      MR. DELLAPORTAS:  Objection.  Vague.

18      THE COURT:  What money are you talking about?

19 Q    Let me do it this way.  We'll take a step back.

20      When you got the -- just so we are clear on timing,

21 outside of TPR, beginning in October of 2004, have you worked as

22 an employee of any other business that's non-Genger related?

23 A    Yes -- repeat the question.  I want to make sure I

24 answered correctly.

25 Q    Sure.  As of October 30th of 2004, have you been

26 employed at any other entity that's non-Genger related?

1                    S. Genger - by Plaintiff - Direct

2       A     Yes.

3       Q     Which?  Where did you work?

4       A     Cordell.

5       Q     I'm sorry?

6       A     Cordell.

7       Q     What is Cordell?

8       A     Cordell is basically a group of companies, part of a

9    group of companies, that engages in all sorts of structured

10   finance.

11      Q     When did you work at Cordell?

12      A     I started working there right before I moved to

13   Florida.

14      Q     Right before you moved to Florida?

15      A     Like two or three months beforehand.

16      Q     Two to three months ago?

17            MR. DELLAPORTAS:  Objection.

18            THE COURT:  Overruled.

19      Q     I'm sorry.  Is it this year?

20            THE COURT:  What period of time did you work at

21      this company?

22            THE WITNESS:  Take the date I moved to Florida,

23      then two or three backwards, so I think now five months, six

24      months.

25            THE COURT:  He worked five months before he moved

26      to Florida.

371

                    S. Genger - by Plaintiff - Direct

1

2              THE WITNESS:  Something -- no, no.  Two or three

3       months before I moved to Florida, which I believe is -- we

4       can check, but I think about five or six months from today.

5              THE COURT:  How long did you work for that company?

6              THE WITNESS:  That's when I started.

7              THE COURT:  It's your own company?

8              THE WITNESS:  No, it's not my own company.

9              THE COURT:  How long have you worked there?

10             THE WITNESS:  I have been working there now for

11      about half a year.

12             THE COURT:  What, a half year?

13             THE WITNESS:  Yes.

14             THE COURT:  You are still employed by that company?

15             THE WITNESS:  Yes.

16             THE COURT:  Say yes or no.

17             THE WITNESS:  Yes.

18      Q    What do you do for Cordell?

19      A    Cordell works on a variety of projects.  And for

20      instance, the project I'm working on now --

21      Q    I just want to know what you do for them.  I don't want

22      you to tell me what the company does.  I want you to tell me

23      what you do for them.

24             MR. DELLAPORTAS:  Objection.  He interrupted the

25      witness.

26             THE COURT:  Please.

1                    S. Genger - by Plaintiff - Direct

2                    Objection overruled.

3                    What is your function at the company?

4                    THE WITNESS:  My function at the company is to

5        either assist or oversee specific financial projects,

6        whether we have -- whether or not the company itself has an

7        interest in them or whether we are assisting someone else

8        who has a financing.

9        Q    Who works at Cordell besides you?

10       A    Robin Rodriguez.

11       Q    Is that the Robin Rodriguez from the Anglo Financial

12   Manhattan Safety, the same guy?

13       A    Those are separate entities.

14       Q    Well, all right.

15                   THE COURT:  The same individual?

16                   THE WITNESS:  He was a guy from Anglo Financial?

17       Yes, absolutely.

18       Q    Is Robin Rodriguez's name Robin Cordell Rodriguez?

19       A    Yes.

20       Q    You're working -- let me make sure that we are all on

21   the same page.

22            Manhattan Safety was the vehicle in which Mr.

23   Dellaportas, Mr. Meister, you, and your mother entered into a

24   global resolution, supposedly settling all of your sister's

25   rights; correct?

26                   MR. DELLAPORTAS:  Objection.

394

Mr. S. Genger - Direct/Mr. Herschmann

1

2    Q    One of which trusts?

3    A    I think it's the 2009 Trust.

4    Q    Okay.  2000 what trust?

5    A    No, not -- what you just said, Horizon.

6         THE COURT:  The Horizon Trust.

7    Q    The Horizon 2009 Trust?

8    A    No, is it -- I get confused.  I don't remember which is

9    which.

10        THE COURT:  How many trusts are there?  I take it

11   the trust you're the beneficiary of -- let me finish the

12   question.

13        THE WITNESS:  Yes, your Honor.

14        THE COURT:  Is the trust you're the beneficiary

15   that was created in 1993 still in existence?

16        THE WITNESS:  Yes.

17        THE COURT:  Who is the trustee?

18        THE WITNESS:  Citco.

19        THE COURT:  What?

20        THE WITNESS:  Citco.

21        THE COURT:  I'm sorry?

22        THE WITNESS:  C-I-T-C-O.  Citco.

23        THE COURT:  Who is that?

24        THE WITNESS:  It's a professional trustee company.

25        THE COURT:  Okay.  Now what other trusts are there

26   that you're the beneficiary of?

1                    Mr. S. Genger - Direct/Mr. Herschmann

2              THE WITNESS:  There are at least two.

3              THE COURT:  Identify them.

4              THE WITNESS:  The years.  There's the 1993.

5              THE COURT:  We've covered that.

6              THE WITNESS:  I'm thinking.  There's 1993, there's

7       2009.

8              THE COURT:  Just a minute.  Stop there.  There was

9       a trust established in 2009.  Is that the Horizon Trust?

10              THE WITNESS:  Yes.

11              THE COURT:  Okay.  Wait.  Wait.  Wait.

12              THE WITNESS:  Yes, your Honor.

13              THE COURT:  Who was the trustee of that trust?

14              THE WITNESS:  It's all Citco.

15              THE COURT:  Okay.  Stop talking.

16              THE WITNESS:  Yes, sir.

17              THE COURT:  You're the beneficiary of the 1993

18       Trust?

19              THE WITNESS:  My children and I are, yes.

20              THE COURT:  You added beneficiaries to the 1993

21       Trust.

22              THE WITNESS:  No, they were always beneficiaries to

23       the 1993 Trust.

24              THE COURT:  You had children in '93?

25              THE WITNESS:  No.  No.

26              THE COURT:  That's what I'm asking.

396

1                    Mr. S. Genger - Direct/Mr. Herschmann

2                    THE WITNESS:  Well, trust indenture made them

3           beneficiaries upon their births.

4                    THE COURT:  Okay.  How many children do you have?

5                    THE WITNESS:  I have five children.  Thank you.

6                    THE COURT:  All right.  So is your wife a

7           beneficiary of that trust?

8                    THE WITNESS:  No.

9                    THE COURT:  So there are six beneficiaries of the

10          1993 Trust?

11                   THE WITNESS:  Correct.

12                   THE COURT:  Okay.  Now we're going to the 2009

13          Trust.

14                   THE WITNESS:  That's correct.

15                   THE COURT:  Who's the beneficiary of that trust?

16                   THE WITNESS:  The same beneficiaries.

17                   THE COURT:  Those six.

18                   THE WITNESS:  Yes.

19                   THE COURT:  Who is the beneficiary of the 2009

20          Horizon Trust?

21                   THE WITNESS:  It's mirror images.  The trusts are

22          being settled by the original trust, so that each time money

23          comes in, it's segregated --

24                   THE COURT:  Into a separate trust?

25                   THE WITNESS:  To make sure there's a question about

26          those funds that it's being dealt with.

397

1                    Mr. S. Genger - Direct/Mr. Herschmann

2                    THE COURT:  And the separate trust has the same

3       trustee and same beneficiaries.

4                    THE WITNESS:  Same trustee and beneficiaries.

5                    THE COURT:  That's two trusts.  Is there a third

6       trust?

7                    THE WITNESS:  I think in 2014, they settled another

8       one to deal, maybe it's not 2014.  Maybe it's 2013.

9                    THE COURT:  All right.  And all those trusts are

10      located in the Cook Islands?

11                   THE WITNESS:  Yes.  They're --

12                   THE COURT:  Just a second.  Correct?

13                   THE WITNESS:  Correct.

14                   THE COURT:  What's the corpus of the first trust,

15      the 1993 Trust?

16                   THE WITNESS:  When you say "corpus"?

17                   THE COURT:  The assets.  The trust had certain

18      assets?

19                   THE WITNESS:  Its asset, principal asset is TPR.

20                   THE COURT:  Stock?

21                   THE WITNESS:  Stock here in the United States.

22                   THE COURT:  What percentage of the stock is in that

23      company?

24                   THE WITNESS:  Close to a hundred percent.

25                   THE COURT:  All right.  What about the 2013 Trust?

26                   THE WITNESS:  I couldn't tell you.

398

1                    Mr. S. Genger - Direct/Mr. Herschmann

2              THE COURT:  What's that?

3              THE WITNESS:  I couldn't tell you.

4              THE COURT:  You don't know -- just a minute.  You

5        and your children are beneficiaries of the trust and you

6        have --

7              THE WITNESS:  No.

8              THE COURT:  Let me finish the question, sir.

9              THE WITNESS:  I'm sorry.

10             THE COURT:  You and your children are the

11       beneficiaries of a trust created in 2013 and you have no

12       idea what the assets of that trust are?

13             THE WITNESS:  Because I know collectively what they

14       are.  I don't know individually.

15             THE COURT:  Well, there are only two more trusts.

16       We're talking about a trust in 2013 and 2014.

17             THE WITNESS:  No.  No.  No.  I didn't say that.

18             THE COURT:  How many trusts are there?

19             THE WITNESS:  I know of three.  1993, 2009.

20             THE COURT:  Yes.

21             THE WITNESS:  Then another one that's either '13 or

22       '14.

23             THE COURT:  Okay.  Okay.  Just a minute.

24             THE WITNESS:  Go ahead.

25             THE COURT:  All three trusts have the same trustee

26       now?

399

1                    Mr. S. Genger - Direct/Mr. Herschmann

2                    THE WITNESS:  Correct.  Yes.

3                    THE COURT:  All three trusts are located in the

4        Cook Islands?

5                    THE WITNESS:  Correct.

6                    THE COURT:  And all three trusts have the same

7        beneficiaries?

8                    THE WITNESS:  Correct.

9                    THE COURT:  Now we know what the assets of the

10       first, the 1993 Trust are.  You just told me that.

11                   THE WITNESS:  Yes.

12                   THE COURT:  What are the assets --

13                   THE WITNESS:  I mean, the assets are TPR and I

14       don't know, that's the point that I don't know.  I don't

15       know how much cash and securities each trust has.  I

16       couldn't tell you.

17                   THE COURT:  But that's cash and securities, but not

18       stock?

19                   THE WITNESS:  What do you mean by "not stock"?

20                   THE COURT:  TPR is shares.

21                   THE WITNESS:  Well, it could be stock in a company.

22       It could be stock in General Motors.

23                   THE COURT:  What company shares are owned by those

24       trusts?

25                   THE WITNESS:  It's like public companies.

26                   THE COURT:  You mean public traded companies?

408

1                    S. Genger - by Plaintiff - Direct

2      A    Yes.

3                 THE COURT:  All right.  That's the answer.

4      A    I asked him --

5      Q    What is the reason that almost as soon as the money

6  came into your Sagi Genger trusts in New York, that you

7  immediately sent it out of the country?

8      A    Because we had just -- you have to understand the

9  context.  We had just finished a litigation about trusts.  I

10  knew approximately zero about trusts.  The only person I had any

11  serious relationship -- I know it sounds strange, but the only

12  person I had a serious relationship about trusts with was this

13  gentleman who litigated -- who happens to be in Lichtenstein,

14  but that's where the litigation was, so I called him and I said,

15  "I have been very fortunate, and I would like to first" --

16                 THE COURT:  So the money went to Lichtenstein?

17                 THE WITNESS:  Right.

18                 THE COURT:  Okay.

19      A    And I said I wanted to figure out what to do.

20                 THE COURT:  I see.  Okay.

21      Q    Just so we are clear, what did Larry Small do?  Just

22  tell me what he did for a job when he was the trustee of your

23  trust.

24      A    He's had many jobs.

25      Q    Was he vice chairman of Citicorp at some point; yes or

26  no?

441

1                    Mr. S. Genger - Direct/Mr. Herschmann

2                    THE WITNESS:  I feel fine.

3                    THE COURT:  Terrific.  Okay.  See you in the

4          morning.

5                    THE WITNESS:  May I step down, your Honor?

6                    THE COURT:  Of course.

7                    (Whereupon, at this time, the proceedings were

8          adjourned to August 4, 2016.)

9                              C E R T I F I C A T E

10                   I do hereby certify that the foregoing taken at the

11         time and place aforesaid, is a true and correct

12         transcription of my shorthand notes.

13

14                        JOHN PHELPS, CSR, RPR, CRR

15

16                   -------------------------------------

17                   WILLIAM KUTSCH, SENIOR COURT REPORTER

18

19

20

21

22

23

24

25

26

```
                                                                    442
 1

 2   SUPREME COURT OF THE STATE OF NEW YORK.
     COUNTY OF NEW YORK : CIVIL TERM : PART 12
 3   -------------------------------------------x
     ORLY GENGER, in her individual capacity and
 4   on behalf of the Orly Genger 1993 Trust (both
     in its individual capacity and on behalf of
 5   D&K Limited Partnership),

 6                                      Plaintiff,
                                                 Index No.
 7        -against-                              109749/09

 8   DALIA GENGER, SAGI GENGER, D&K GP LLC, and
     TPR INVESTMENT ASSOCIATES, INC.,
 9
                                       Defendants.
10   -------------------------------------------x
                                       August 4, 2016
11                                     60 Centre Street
                                       New York, NY  10007
12   B e f o r e:

13        HON. IRA GAMMERMAN, Judicial Hearing Officer.

14   A p p e a r a n c e s:

15        KASOWITZ, BENSON, TORRES, & FRIEDMAN, LLP
          Attorneys for Plaintiff
16             1633 Broadway
               New York, New York  10019
17        BY:  ERIC D. HERSCHMANN, ESQ., and
               MICHAEL PAUL BOWEN, ESQ.
18
          KELLEY, DRYE & WARREN, LLP
19        Attorneys for Defendants SAGI GENGER and
          TPR INVESTMENT ASSOCIATES
20             101 Park Avenue
               New York, New York  10178
21        BY:  JOHN G. DELLAPORTAS, ESQ.

22             MINUTES OF NONJURY TRIAL

23                            Reported By:
                              John Phelps, and
24                            William L. Kutsch
                              Senior Court Reporters
25

26
```

445

1          S. Genger - by Plaintiff - Direct/Herschmann

2               THE COURT:  If Mr. Parnes -- who I assume now he's

3      living in Israel?

4               MR. DELLAPORTAS:  Correct.

5               THE COURT:  If he has electronically stored

6      information or records, he can transmit those, and since I

7      assume you can contact him, have him do that.

8               MR. DELLAPORTAS:  Agreed, your Honor.

9               MR. BOWEN:  Thank you, Judge.

10              MR. HERSCHMANN:  May I inquire?

11              THE COURT:  Yes.  This is continued, I guess direct

12     examination, except it's really cross-examination.

13              Let's move on.

14              (At this time the witness, Sagi Genger, previously

15     affirmed, resumed the witness stand.)

16  DIRECT EXAMINATION

17  BY MR. HERSCHMANN (continuing):

18     Q    Mr. Sagi Genger, I want to follow up where we ended

19  yesterday, and we had e-mailed your counsel last night, first of

20  all, to ask you to check records so you can recall the names of

21  the various trusts that you have.

22              Have you had a chance to look?  Do you recall the name

23  of the 2013 or 2014 trust names?

24     A    No.  Just that denoted by year.

25     Q    How about Double-Gen Trust; is that it?

26     A    No.

455

S. Genger - by Plaintiff - Direct/Herschmann

1

2          THE COURT:  Overruled.

3     A     That's correct.  Yes.

4     Q     You had not gone to Lichtenstein beforehand to research

5     this; right?

6     A     No, not to Lichtenstein for sure.

7          THE COURT:  "No" is the answer.

8     Q     Did David Parnes ever discuss with you his purported

9     expertise in how to hide assets in Lichtenstein?

10          MR. DELLAPORTAS:  Objection, your Honor.

11          THE COURT:  Overruled.

12          MR. DELLAPORTAS:  Lack of foundation.

13          THE COURT:  Overruled.

14    A     No.

15    Q     Did he ever discuss with you where you should put your

16    money so you could become judgment-proof in case someone got

17    judgments against you?

18          MR. DELLAPORTAS:  Objection to the extent --

19          THE COURT:  Overruled.

20          MR. DELLAPORTAS:  Your Honor, it calls for

21    privileged --

22          THE COURT:  Overruled.  Just say "objection."

23          MR. DELLAPORTAS:  Objection.  Privileged.

24          THE COURT:  Overruled.

25    A     Repeat the question please.

26          THE COURT:  Did he ever give you advice concerning

456

1        S. Genger - by Plaintiff - Direct/Herschmann

2    protecting your funds or assets from creditors to, if

3    possible, make you as judgment-proof as possible?

4            THE WITNESS:  In the form of the question you're

5    asking, that's partially correct.

6            THE COURT:  What's incorrect about that?

7            THE WITNESS:  Because the point was, when I wanted

8    to take money out, people were like:  You're getting sued,

9    you're crazy to bring money back to the United States.  But

10   sending money there, the point was --

11           THE COURT:  He recommended that you not bring any

12   money back into the United States?

13           THE WITNESS:  He said --

14           THE COURT:  Is that correct?

15           THE WITNESS:  Him or the trustee.  But, yes:  You

16   are out of your mind to bring money --

17           THE COURT:  Back to the United States.

18           Okay.  Next question.

19   Q    So the Double-Gen Trust, when it was set up, was for

20   the benefit of your children; right?

21   A    Originally, yes.

22   Q    How much money, where did the Double-Gen Trust get its

23   money from initially in 2007?

24           THE COURT:  The $200,000 worth of investments,

25   where did it come from?

26           THE WITNESS:  General income.

496

 1                S. Genger - by Plaintiff - Direct/Herschmann

 2                    THE WITNESS:  Ever in life?

 3                    THE COURT:  Out of that $44 million.

 4                    THE WITNESS:  No.

 5        Q    Did he get at some point an interest in businesses that

 6   your sister got an equal percentage to, that you had also

 7   received?

 8        A    Yes, but nothing related --

 9                    THE COURT:  "Yes" is the answer.

10                    Next question.

11        Q    Now, I want to take a step back, sir, because you were

12   talking yesterday about the Manhattan Safety, and you were

13   talking about Robin Rodriguez.  Let me ask you this.  I looked

14   at the record last night.  We never closed the loop.

15                    Are you getting paid a salary by Cordell?

16        A    Yes.

17        Q    What is your salary?

18        A    It's $600,000 a year.

19        Q    Do you have an employment agreement?

20        A    Yes.

21        Q    And is the $600,000 a year that you are now getting

22   paid based on any parameters associated with investments that

23   are made?

24        A    You mean, are there yardsticks that I get paid

25   according to?

26        Q    Right.

497

1          S. Genger - by Plaintiff - Direct/Herschmann

2     A    No.  It's just a flat salary.

3     Q    Do you own any part of Cordell?

4     A    No.

5     Q    Do you have any investments with Cordell?

6     A    I don't want to give a misleading answer.  Cordell is a

7  group of companies, and we discussed yesterday syndicated loans

8  that we had invested in, which are associated with that group.

9  I don't know if it's necessarily Cordell or something like that.

10    Q    Were you invested in things dealing with Robin

11 Rodriguez and Cordell in August of 2008?

12    A    Certainly soon thereafter.  I don't know that in

13 August.  Certainly soon thereafter.  Whether in August, I don't

14 know.

15    Q    Okay.

16    A    You know, actually -- I don't know.  I'm not sure.

17    Q    Now, Mr. Genger, in August of 2008, is it accurate that

18 the TRI shares, just your interest, was worth approximately

19 $195 million?

20    A    I'm sorry.  In what time?

21    Q    Is it accurate, sir, that in August of 2008, you

22 believe that your interest, pursuant to the ones attributed to

23 your trust, was worth about $195 million?

24    A    It's difficult for me to answer the question because

25 it's a lot --

26              THE COURT:  I can't hear you.

577

1              Mr. S. Genger - Direct/Mr. Herschmann

2              MR. DELLAPORTAS:  Thank you, your Honor.

3              MR. HERSCHMANN:  Have a good weekend.

4              THE WITNESS:  Thank you, your Honor.

5              (Whereupon the proceedings were adjourned to

6      August 8, 2016, at 10:00 a.m.)

7                        C E R T I F I C A T E

8              I do hereby certify that the foregoing taken at the

9      time and place aforesaid, is a true and correct

10     transcription of my shorthand notes.

11

12                    JOHN PHELPS, CSR, RPR, CRR

13

14              ------------------------------------

15              WILLIAM KUTSCH, SENIOR COURT REPORTER

16

17

18

19

20

21

22

23

24

25

26