# EXHIBIT 18

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

DALIA GENGER,

      Plaintiff,                                      CASE NO.:

v.

SAGI GENGER,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Dalia Genger ("Dalia"), by and through the undersigned counsel, sues Defendant, Sagi Genger ("Sagi"), for damages in the amount of $18,500,000 due and owing under an October 30, 2004 written agreement, and alleges as follows:

### THE PARTIES

1.      Plaintiff Dalia is a natural person who resides in the State of New York.

2.      Defendant Sagi is a natural person who, upon information and belief, maintains residences in the States of Florida (Miami-Dade County) and Connecticut.

### JURISDICTION

3.      This is an action for damages in excess of Fifteen Thousand Dollars ($15,000), exclusive of costs or attorney's fees.

### BACKGROUND FACTS

4.      Pursuant to a written agreement dated October 30, 2004, Sagi agreed to pay Dalia an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of Trans-Resources, Inc. ("TRI"), received by Sagi and/or his sister Orly Genger (and/or any trust for the benefit of either of them), or any lesser amount demanded by Dalia. A copy of the October 30, 2004 agreement is attached hereto as Exhibit A

-1-

5.     The October 30, 2004 agreement has since been adjudicated by the courts to be valid and enforceable.  In 2018, the U.S. District Court determined that "the maximum amount payable to Dalia [thereunder] … is approximately $24.7 million." *Genger v. Genger*, No. 17-CV-8181 (KBF), 2018 WL 3632521, *6 n. 5 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99 (2d Cir. 2019).  This 2018 decision is attached hereto as Exhibit B.

6.     In 2014, Dalia made written demand of Sagi for $200,000 under the October 30, 2004 agreement.  Sagi paid that amount in full (the "2004 Payment").

7.     In 2017, Dalia made a written demand of Sagi for $6,000,000 under the October 30, 2004 agreement.  In 2018, judgment was rendered by the U.S. District Court on that amount (the "2018 Judgment").

8.     On December 2, 2019, Dalia made a written demand of Sagi for the remaining sum due under the October 30, 2004 agreement ($24.7 million - $6 million - $0.2 million).   As calculated by the U.S. District Court's methodology (referenced above), $18.5 million remains due, after deduction of the 2004 Payment and the 2018 Judgment.

9.     To date, payment has not been made on the December 2, 2019 demand.

### COUNT I – BREACH OF CONTRACT

10.     Dalia repeats and realleges each and every one of the allegations contained in preceding Paragraphs as if fully set forth herein.

11.     Dalia and Sagi entered into the October 30, 2004 agreement.

12.     Dalia has performed her obligations under the October 30, 2004 agreement.

13.     Sagi has not performed under the October 30, 2004 agreement.

14.     Sagi's failure to perform constitutes a material breach thereof.

15.     As a result, Dalia has been damaged in the amount of $18,500,000.

**WHEREFORE,** Dalia demands that this Court enter judgment in her favor against Sagi in the sum of Eighteen Million, Five Hundred Thousand Dollars ($18,500,000), together with such other and further relief as this Court deems just and proper.

December 20, 2019                                    Respectfully submitted,

By: /s/ *Eric M. Sodhi*
Eric M. Sodhi (FBN: 0583871)
eric@sodhispoont.com
Secondary: michelle@sodhispoont.com
SODHI SPOONT PLLC
3050 Biscayne Blvd., Suite 904
Miami, FL 33137
Tel: 305-907-7573
Fax: 305-675-6461

# EXHIBIT A

11/11/2004 THU 15:59 FAX                                                      ☎001/001

**Sagi Genger**
**1121 Park Avenue,**
**New York, NY 10028**

October 30, 2004

Dalia Genger
210 East 65th St.
New York, NY 10021

**Promise**

Dear Mom,

This letter confirms our understanding with respect to certain payments that I am prepared to make to you in consideration of the following. My sister Orly and I are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for our benefit. In reliance on this letter and in consideration of the trusts' receipt of these shares and other consideration, you are giving up valuable marital rights, and you desire further assurance that you will have sufficient funds to support your lifestyle.

If you, in your sole and absolute discretion, from time to time desire funds to support your lifestyle, you may request in writing that I make payment to you as provided in this letter. Promptly upon receipt of the request, I will pay to you (1) an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of TRI (adjusted for any splits or similar action) that have previously been paid to Orly, me or any trust for the benefit of either of us, less any amounts previously paid to you pursuant to this letter, or (2) any lesser amount indicated in your request.

We intend for this letter to be a binding agreement under New York law. Please confirm that this letter correctly reflects your understanding by signing below.

Sincerely,

Sagi Genger

Agreed

Dalia Genger

1268584.3

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 27, 2018
```

------------------------------------------------------------X
DALIA GENGER,

               Plaintiff,      :

              v.               :

SAGI GENGER,               :       17-cv-8181 (KBF)

          Defendant/Third-Party  :
          Plaintiff,       :     OPINION & ORDER

              v.              :

ORLY GENGER,             :

          Third-Party Defendant.  :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Once again before the Court is the seemingly never-ending saga of the Genger family.[1] Joining the fray for the first time is Dalia Genger, the family matriarch. The other two parties—siblings Sagi and Orly Genger—are frequent fliers. The present dispute, like those that came before it, stems from the contentious divorce of Dalia and Arie Genger, Sagi and Orly's parents.

All three parties have filed dispositive motions—Dalia moved for summary judgment against Sagi, Sagi moved for summary judgment against Orly, and Orly moved to dismiss the third-party complaint. Those motions are now fully briefed. Though at first glance the issues raised appear complex, the Court's resolution of this action is not; many if not all of the relevant questions have been decided in prior proceedings.

---

[1] For the sake of clarity, in this Opinion & Order the Court will refer to the members of the Genger family by their given names.

For the reasons stated below, the Court hereby DENIES Orly's motion to dismiss, GRANTS Dalia's motion for summary judgment, and GRANTS Sagi's motion for summary judgment.

## I. BACKGROUND

What follows is a brief recitation of the facts[2] most relevant to resolution of the outstanding motions. The facts are undisputed unless otherwise noted.

### A. Factual Background

#### 1. Divorce and Integrated Agreement

In 2004, Arie and Dalia Genger divorced. As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of Trans-Resources, Inc. ("TRI") to trusts benefiting Sagi and Orly. In exchange, Sagi and Orly committed to financially support Dalia. This arrangement was effectuated via three separate agreements:

- First, Dalia and Arie signed a stipulation of settlement finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed on October 30, 2004.

- Second, Sagi and Dalia signed a letter dated October 30, 2004 (the "2004 Promise") pursuant to which Sagi agreed to pay Dalia up to the value of the TRI stock she conveyed to the two trusts, upon Dalia's

---

[2] The following facts are derived from: (1) the Local Civ. R. 56.1 statements submitted by the parties in connection with the two motions for summary judgment (ECF Nos. 73, 75, 92, 94); (2) supporting materials submitted by the parties in connection with their motions; and (3) public records of the parties' prior judicial proceedings, including those in this Court. The Court primarily recites facts relevant to the claims and defenses currently at issue, but also includes some facts that, while not directly material to the present dispute, are nonetheless important to understanding the context of this litigation.

2

demand. The 2004 Promise further specifies that Dalia has "sole and absolute discretion" to demand funds under the agreement.

- Third, Sagi and Orly signed a letter dated November 10, 2004 (the "2004 Indemnity") pursuant to which Orly agreed to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations . . . , including [Sagi's] reasonable counsel and other professional fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]."

In a prior proceeding in this Court, it was determined that Orly was vacationing in Fiji at the time the 2004 Promise was signed, and therefore could not contemporaneously sign the document. See Genger v. Genger, 76 F. Supp. 3d 488, 493 (S.D.N.Y. 2015) ("Genger I"). However, before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for one-half of the payments he would have to make under the 2004 Promise. Id. As such, and for the reasons set forth in the Court's Opinion & Order dated January 5, 2015, the Court held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement, noting "neither agreement makes any sense without the promises expressed in the other." See id. at 497. The Second Circuit subsequently affirmed that decision. See Genger v. Genger, 663 F. App'x 44 (2d Cir. 2016) ("Genger II"). Accordingly, the 2004 Promise and 2004 Indemnity will be referred to collectively as the "2004 Integrated Agreement" for purposes of this Opinion & Order.

3

2.    The 2014 Demand and Lawsuit

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise (the "2014 Demand"), which Sagi paid.  Sagi subsequently informed Orly of Dalia's demand, and on February 17, 2014 formally demanded payment of $100,000 pursuant to the 2004 Indemnity.  Orly refused to pay, and Sagi filed suit in this Court the very next day (the "2014 Lawsuit").

The Court resolved the 2014 Lawsuit by Opinion & Order dated January 5, 2015.  See generally Genger I.  As previously noted, the Court held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement (the "2004 Integrated Agreement"), and that the 2004 Integrated Agreement was valid and enforceable.  The Court further found that Sagi had monetized his beneficial interest in the TRI shares for $37.0 million, and that Orly had monetized her beneficial interest for $32.3 million, a substantial portion of each attributable to Dalia's conveyed marital interest.  Id. at 493-94.  Finally, the Court held that Orly was liable for breach of contract as a result of her failure to pay Sagi $100,000 (representing one-half of Sagi's payment to Dalia).  Id. at 502.

Orly appealed, and on September 29, 2016, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued an Opinion affirming this Court's decision in full.  See generally Genger II.  The Second Circuit explicitly held that "the [2004 Promise] and the [2004 Indemnity] form an integrated agreement in which Orly has a contractual duty to reimburse Sagi for half of the

4

amount he pays Dalia for living expenses." Id. at *48.  The Second Circuit further

held that because the 2004 Promise gave Dalia "sole and absolute discretion" to

demand funds up to the value of the TRI stock she conveyed, there was "no merit" to

the argument that Sagi or Orly could avoid payment by "challenging Dalia's need

for the money she demanded." Id. at *50.

      3.   The 2017 Demand and Procedural History

On October 21, 2017, Dalia demanded $6,000,000 from Sagi under the 2004

Promise (the "2017 Demand").  Unlike the 2014 Demand, however, Sagi refused to

pay.  As a result, Dalia commenced the instant breach of contract action against

Sagi three days later, on October 24, 2017.  (See generally Compl., ECF No. 1.)

Dalia subsequently filed an Amended Complaint on March 23, 2018.  (See Amend.

Compl., ECF No. 58.)

In answering the operative complaint, Sagi conceded that the 2004 Promise

was valid and enforceable, but argued "the payment obligation was a joint

obligation of his with Orly, who has recently indicated she will not honor that

obligation, and thus it would be inequitable for Sagi to once again make a payment

to Dalia without Orly's immediate reimbursement." (See Answ. to Amend. Compl.

and First. Amend. Third-Party Compl. ("Third-Party Compl.") ¶ 10, ECF No. 59.)

Accordingly, Sagi brought a third-party complaint against Orly for breach of the

2004 Indemnity. (Id. at 3-8.)

B.    <u>Orly's Motion to Dismiss</u>

On May 16, 2018, Orly filed a motion to dismiss Sagi's third-party complaint. (ECF No. 64.) Orly argues that because she is a United States citizen domiciled in Israel, she is a non-diverse party and the Court lacks subject-matter jurisdiction. (<u>See</u> Mem. of Law in Support of Mot. to Dismiss ("Orly MTD Mem.") at 4-6.) Orly further argues, in sum, that the Court lacks supplemental jurisdiction over the third-party claims because there is no actual legal controversy between Dalia and Sagi, and therefore she is properly considered a defendant in this action (not a third-party defendant). (<u>Id.</u> at 7-9.)

Sagi opposed Orly's motion to dismiss as part of his omnibus memorandum dated May 30, 2018. (<u>See</u> Sagi Mem. at 5-17.)[3] Sagi argues that Orly's domicile is irrelevant with regards to the primary action, and that the Court has supplemental jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1367(a). (<u>Id.</u> at 6-9.) With respect to Orly's argument that the parties should be "realigned," Sagi argues that there is a bona fide controversy between himself and Dalia as a result of his refusal to pay. (<u>Id.</u> at 7-8.) Sagi further denies that there was any collusion between himself and Dalia. Orly replied on June 6, 2018, reiterating many of the same arguments she had previously made. (ECF No. 86.)

On June 4, 2018, the Court solicited further briefing from the parties regarding Orly's argument that the parties should be realigned, with a specific focus

---

[3] For purposes of this Opinion & Order, "Sagi Mem." refers to Sagi's omnibus "Memorandum of Law in Opposition to Orly Genger's Motion to Dismiss and Dalia Genger's Motion for Partial Summary Judgment and in Support of His Cross-Motion for Partial Summary Judgment," filed at ECF No. 76.

on "[t]he scope of a district court's power to realign parties" and "the nature and application of the 'collision of interests' test in the Second Circuit." (ECF No. 83.) In doing so, the Court noted "if Orly's argument is correct, the result would be full dismissal of this action . . . for lack of subject matter jurisdiction." (Id.) All three parties to this action subsequently filed supplemental briefs addressing those questions on June 22, 2018. (ECF Nos. 97, 98, 99.)

    C.   <u>Motions for Summary Judgment</u>

    Subsequent to Orly's motion to dismiss, both Dalia and Sagi filed motions for partial summary judgment. Those motions (and corresponding responses) are briefly summarized below:

- On May 22, 2018, Dalia moved for partial summary judgment on her breach of contract claim against Sagi, arguing that because this Court previously held the 2004 Promise to be valid and enforceable, there is no triable issue as to whether Sagi is required to pay Dalia's demand in full. (See Mem. of Law in Supp. of Mot. for Summ. J. ("Dalia SJ Mem."), ECF No. 72.) Sagi responded as part of his of his omnibus memorandum dated May 30, 2018, but did not raise any substantive arguments <u>on his own behalf</u> in opposition to Dalia's motion. (See Sagi Mem. at 17.) Sagi did, however, note that he was refusing to pay "[g]iven Orly's prior insistence that she be afforded an opportunity to defend any claim by Dalia." (See id. at 3.) Dalia replied on June 5, 2018.

- On May 30, 2018, as part of an omnibus memorandum opposing the other dispositive motions in this case, Sagi moved for partial summary against Orly. (See Sagi Mem. at 17-19.) Sagi argues, in sum, that there are no triable issues of material fact, and that Orly is required to indemnify him in the amount of $3,000,000 pursuant to the 2004 Indemnity. (Id.) Sagi further argues that it doesn't matter that he hasn't paid Dalia's demand, because the 2004 Indemnity calls for indemnification of all "claims." (Id. at 19.) Orly opposed Sagi's motion on June 13, 2018, arguing that further discovery is necessary pursuant to Fed. R. Civ. P. 56(d). (See Mem. of Law in Opp'n to Sagi Genger's Mot. for Partial Summ J. ("Orly SJ Opp'n") at 9-12, ECF No. 89.) Specifically, Orly argues that the following potential issues require further discovery: (1) whether Orly's obligation to Sagi is "capped" by virtue of the 2004 Promise; (2) whether the money demanded by Dalia is necessary to support her lifestyle; and (3) whether Dalia and Sagi violated the implied duty of good faith and fair dealing. (Id. at 9.) Orly further argued that Sagi is not entitled to summary judgment because he has not yet paid Dalia's demand. (Id. at 13-14.) Sagi replied on June 20, 2018. (ECF No. 93.)

Both motions for summary judgment are now fully briefed.

8

II.   LEGAL PRINCIPLES

A.   <u>Summary Judgment Standard</u>

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Only disputes relating to material facts— "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. <u>Id.</u> at 248; <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In reviewing a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

    B.    Diversity Jurisdiction

    Pursuant to 28 U.S.C. § 1332, federal courts may exercise "diversity jurisdiction" over civil actions between citizens of different States, between U.S. citizens and foreign citizens, and by foreign states against U.S. citizens when the matter in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Courts have consistently interpreted § 1332 as requiring complete diversity; that is, "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) (citations omitted).

    For purposes of diversity jurisdiction, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990); accord Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001). Indeed, "the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." Cresswell, 922 F.2d at 68. Even if one

party is a foreign citizen, the presence of another party who is a U.S. Citizen domiciled abroad prohibits maintenance of the action on the basis of diversity. Id. at 68-69.

That being said, a federal court may, in certain circumstances, exercise supplemental jurisdiction over non-diverse third-party claims. See 28 U.S.C. § 1367(a). The court may do so when such third-party claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 726-27 (2d Cir. 2000). Section 1367(b) prevents plaintiffs from bringing third-party claims against non-diverse parties, but not defendants. See 28 U.S.C. § 1367(b). This reflects "Congress' intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity." Viacom, 212 F.3d at 726.

C.   Realignment of Parties

In Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941), the Supreme Court held that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants." In other words, the parties themselves may not manufacture diversity jurisdiction by manipulating the pleadings. To protect against such occurrences, the Court must "look beyond the pleadings and arrange the parties according to their sides in the dispute." Id. (internal quotation omitted); see also Maryland Cas. Co. v. W.R. Grace & Co., 23 F.3d 617, 623 (2d Cir. 1993) (holding that "[t]he purpose in realigning

11

parties is to make sure that there is a <u>bona fide</u> controversy between, as the
[diversity jurisdiction] statute commands, citizens of different states.")

In determining whether realignment is warranted, the court must inquire as
to whether there is a "collision of interests" between the parties as named in the
pleadings. <u>See</u> <u>Maryland Cas. Co.</u>, 23 F.3d at 622. Under the so-called "collision of
interests" test, the court must satisfy itself that there exists "an actual, substantial
controversy" between the parties, and not merely "[h]ypothetical conflicts
manufactured by skillful counsel." <u>Id.</u> at 622-23 (citations omitted). Realignment is
a "fact-specific inquiry" which requires the court to examine not only the pleadings
themselves, but also "the realities of the record." <u>Id.</u> at 623 (quoting <u>Indianapolis</u>,
314 U.S. at 69.)

D.     <u>Breach of Contract</u>

Under New York law, to recover for breach of contract, a plaintiff must prove
"(1) the existence of a contract between [plaintiff] and that defendant; (2)
performance of the plaintiff's obligations under the contract; (3) breach of the
contract by that defendant; and (4) damages to the plaintiff caused by that
defendant's breach." <u>Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d
42, 52 (2d Cir. 2011) (citation omitted); <u>see also</u> <u>Flomenbaum v. N.Y. Univ.</u>, 71
A.D.3d 80, 91 (N.Y. App. Div. 2009); <u>Clearmont Prop., LLC v. Eisner</u>, 58 A.D.3d
1052, 1055 (N.Y. App. Div. 2009).

III.    DISCUSSION

For purposes of this Opinion & Order, the Court addresses each of the three pending motions separately, in the order in which they were filed.

A.    Orly's Motion to Dismiss

Orly's motion to dismiss is premised on the argument that, as a U.S. citizen domiciled in Israel, she is a non-diverse party over whom the Court lacks subject-matter jurisdiction. Because the Court concludes, however, that there is an actual controversy between Dalia and Sagi (and therefore no basis to realign the parties), it need not actually resolve the contested question of Orly's domicile.

As previously noted, it is well-established that federal courts may exercise supplemental jurisdiction over non-diverse third-party claims that are "so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a); see also Viacom Int'l, Inc., 212 F.3d at 726-27. As such, assuming that Orly was properly brought into this action as a third-party, her domicile is effectively irrelevant—since § 1367(a) gives the Court supplemental jurisdiction over Sagi's third-party claims, it makes no difference whether the Court would have original jurisdiction over those same claims.

Orly, however, argues that she was not properly brought into this action as a third-party, and that is the crux of her motion to dismiss. According to Orly, there is no true "collision of interests" between Dalia and Sagi. Instead, Orly alleges that Dalia and Sagi have improperly manipulated the pleadings in an attempt to

artificially manufacture supplemental jurisdiction, and that the Court should realign the parties according to their true interest in this action.

The Court understands Orly's argument. It certainly appears, based on the timing of the pleadings and certain similarities in the language used, that there was some coordination between Dalia and Sagi. Furthermore, Sagi has not seriously contested his <u>own</u> legal obligation to pay the 2017 Demand. Indeed, he has conceded that the 2004 Promise is valid and enforceable, and does not appear to contest the amount of Dalia's demand. The only "defense" Sagi has raised is that it would be inequitable for him to pay without immediate reimbursement, and his "opposition" to Dalia's motion for summary judgment is limited to just <u>four</u> sentences. (<u>See</u> Sagi Mem. at 17.) All of these factors suggest that Dalia and Sagi may have more in common than they let on.

Nonetheless, the practical reality is that Sagi has refused to pay. In determining whether parties should be realigned, the relevant inquiry is whether there exists a "bona fide controversy" (or "collision of interests") between the parties as named in the pleadings. <u>See</u> <u>Maryland Cas. Co.</u>, 23 F.3d at 623. Here, Sagi's refusal to perform under the 2004 Promise represents such a controversy. Although Sagi may not have any legal basis to refuse (and although he may be well aware of that), there is simply no indication that Sagi will pay the 2017 Demand absent a Court order requiring him to do so. For that reason alone, there is a justiciable controversy between Dalia and Sagi, and therefore no basis to rearrange the parties.

14

Because the Court concludes that realignment is not warranted, and because

the Court has supplemental jurisdiction over Sagi's third-party claims against Orly,

the Court hereby DENIES Orly's motion to dismiss at ECF No. 64.

### B.    Dalia's Motion for Partial Summary Judgment

Dalia has moved for summary judgment against Sagi on her breach of

contract claim.[4]  Based on the prior rulings of this Court in Genger I (and the

Second Circuit's subsequent affirmance in Genger II), is has been conclusively

established that: (1) the 2004 Integrated Agreement is valid and enforceable;

(2) Sagi and Orly monetized their beneficial interests in the TRI shares for a total of

$69.3 million, a substantial portion of which was attributable to Dalia's conveyed

marital interest; and (3) pursuant to the 2004 Integrated Agreement, Dalia is

entitled to demand payment up to a certain amount[5] in her "sole and absolute

discretion."  Sagi has not contested any of those facts, and has not made any legal

arguments in defense of his own liability besides a vague assertion that it would be

"inequitable" for him to pay without immediate indemnification by Orly.

In New York, a breach of contract claim requires: (1) the existence of a

contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4)

---

[4] Dalia has not moved for summary judgment on her second cause of action for declaratory judgment. (See Amend. Compl. ¶¶ 17-21.)

[5] Both Dalia and Sagi agree that Dalia's conveyed marital interest of 794.4 shares represents 36% of the total TRI shares that were monetized.  Using that figure, the maximum amount payable to Dalia under the 2004 Integrated Agreement is approximately $24.7 million (or 36% of the total $69.3 million value).  Orly has not specifically disputed the 36% figure, though she has raised unrelated questions about how the so-called "cap" in the 2004 Integrated Agreement affects her obligations to Sagi.  In any event, there has been absolutely no suggestion by any party that Dalia's demand for $6 million exceeds the amount attributable to her conveyed marital interest of 794.4 shares, and indeed the figure cited by Dalia and Sagi is consistent with documents previously submitted to the Court in connection with the 2014 Lawsuit.

damages to the plaintiff caused by that breach. <u>See</u> <u>Diesel Props. S.r.l.</u>, 631 F.3d at

52. Based on the established facts recited above, there is no triable issue as to

whether all of the elements of Dalia's breach of contract claim are satisfied.

Accordingly, the Court hereby GRANTS Dalia's motion for partial summary

judgment at ECF No. 70.

   C.   <u>Sagi's Motion for Partial Summary Judgment</u>

   Sagi has moved for partial summary judgment against Orly on: (1) his breach

of contract claim; (2) his promissory estoppel claim; and (3) his declaratory

judgment claim to the extent of the $3,000,000 liability sought in this action.[6] As

previously noted, it has already been conclusively established that the 2004

Integrated Agreement is valid and enforceable, and therefore that Orly is required

to indemnify Sagi for half of any payments made pursuant to the 2004 Promise.

Indeed, Sagi's third-party claims in this action are nearly identical to the claims he

prevailed on in the 2014 Lawsuit, the only difference being the quantum of Dalia's

demand (and the fact that Sagi has yet to pay). The Court has reviewed all of Orly's

arguments in opposition to summary judgment, and finds them to be without merit

for the reasons below.

   First, Orly argues that she is entitled to further discovery under Fed. R. Civ.

P. 56(d). But summary judgment can only be postponed pursuant to Rule 56(d)

when further discovery is reasonably expected to create a genuine issue of material

---

[6] Sagi has not moved for summary judgment on his third cause of action to the extent it seeks
declaratory judgment in excess of the $3,000,000 sought in this action. (<u>See</u> Third-Party Compl. ¶¶
25-28.)

fact. See Hoffmann v. Airquip Heating & Air Conditioning, 480 F. App'x 110, 112

(2d Cir. 2012). Here, there is simply no question as to Orly's liability, and therefore

no reasonable likelihood that further discovery will affect the outcome of Sagi's

motion. Indeed, Orly's Rule 56(d) affidavit makes clear that she is effectively

seeking to relitigate issues already conclusively decided in Genger I. For instance,

Orly seeks discovery related to, inter alia, Dalia's assets and financial expenses.

(See Decl. of Michael Paul Bowen ("Bowen Decl.") ¶ 7, ECF No. 90.) But the Second

Circuit has already explicitly held that there is "no merit" to the argument that Sagi

or Orly could avoid payment by challenging Dalia's need for the payment. See

Genger II at *50. The other discovery sought by Orly—including records related to

Sagi's potential control of certain funds and whether Dalia and Sagi have acted in

bad faith—are simply irrelevant. Orly's contractual obligation to indemnify Sagi for

payments made under the 2004 Integrated Agreement has nothing to do with the

relationship between Dalia and Sagi or any other litigation the parties are currently

involved in.

Second, Orly argues that Sagi is not entitled to summary judgment because

he has not yet paid Dalia. As an initial matter, that argument is now moot in light

of this very Opinion & Order, which grants Dalia's motion for summary judgment

against Sagi. Furthermore, Orly's refusal to pay (which does not appear to have

been conditioned on Sagi's own refusal) constitutes an anticipatory breach of the

2004 Indemnity. Sagi is entitled to seek relief for that anticipatory breach in the

form of a judgment setting the amount of Orly's liability.

17

Put simply, the plain language of the 2004 Integrated Agreement makes clear that Orly is obligated to indemnify Sagi for half of Dalia's demand, and there is no triable issue of fact with regards to Sagi's three causes of action. Orly did not have any valid defense in the 2014 Lawsuit, and she does not have any valid defense today.

For the reasons set forth in <u>Genger I</u> and reaffirmed in this Opinion & Order, the Court GRANTS Sagi's motion for partial summary judgment at ECF No. 74.

IV.    CONCLUSION

For the reasons stated above, the Court hereby:

- DENIES the motion to dismiss at ECF No. 64;

- GRANTS the motion for summary judgment at ECF No. 70; and

- GRANTS the motion for summary judgment at ECF No. 74.

The Clerk of Court is directed to close all open motions. The parties are directed to meet and confer and file a joint letter not later than **Monday, August 13, 2018** setting forth a schedule for resolution of the outstanding claims.

SO ORDERED.

Dated:    New York, New York
         July 27, 2018

 

_____
KATHERINE B. FORREST
United States District Judge

| [X] IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| [ ] IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| DIVISION | | CASE NUMBER |
| --- | --- | --- |
| [X] CIVIL<br>[ ] DISTRICTS<br>[ ] FAMILY<br>[ ] OTHER | **CIVIL COVER SHEET** | |

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
| --- | --- | --- |
| DALIA GENGER | SAGI GENGER | |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

[ ] 001 - Eminent Domain
[X] 003 - Contracts and Indebtedness
[ ] 010 - Auto Negligence
[ ] 022 - Products Liability
[ ] 023 - Condominium
[ ] **Negligence - Other**
   [ ] 097 - Business Governance
   [ ] 098 - Business Torts
   [ ] 099 - Environmental/Toxin Tort
   [ ] 100 - Third Party Indemnification
   [ ] 101 - Construction Defect
   [ ] 102 - Mass Tort
   [ ] 103 - Negligent Security
   [ ] 104 - Nursing Home Negligence
   [ ] 105 - Premises Liability - Commercial
   [ ] 106 - Premises Liability - Residential
   [ ] 107 - Negligence - Other
[ ] **Real Property/Mortgage Foreclosure**
   [ ] 108 - Commercial Foreclosure $0 - $50,000
   [ ] 109 - Commercial Foreclosure $50,001 - $249,999
   [ ] 110 - Commercial Foreclosure $250,000 - or more
   [ ] 111 - Homestead Residential Foreclosure $0 - $50,000
   [ ] 112 - Homestead Residential Foreclosure $50,001 - $249,999
   [ ] 113 - Homestead Residential Foreclosure $250,000 or more
   [ ] 114 - Non-Homestead Residential Foreclosure $0 - $50,000
   [ ] 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
   [ ] 116 - Non-Homestead Residential Foreclosure $250,000 or more
   [ ] 117 - Other Real Property Actions $0 - $50,000
   [ ] 118 - Other Real Property Actions $50,001 - $249,999

   [ ] 119 - Other Real Property Actions $250,000 or more
[ ] **Professional Malpractice**
   [ ] 094 - Malpractice - Business
   [ ] 095 - Malpractice - Medical
   [ ] 096 - Malpractice - Other professional
[ ] **Other**
   [ ] 120 - Antitrust/Trade Regulation
   [ ] 121 - Business Transactions
   [ ] 122 - Constitutional Challenge - Statute or Ordinance
   [ ] 123 - Constitutional Challenge - Proposed amendment
   [ ] 124 - Corporate Trust
   [ ] 125 - Discrimination - Employment or Other
   [ ] 126 - Insurance Claims
   [ ] 127 - Intellectual Property
   [ ] 128 - Libel/Slander
   [ ] 129 - Shareholder Derivative Action
   [ ] 130 - Securities Litigation
   [ ] 131 - Trade Secrets
   [ ] 132 - Trust Litigation
[ ] 133 - **Other Civil Complaint**
   [ ] 009 - Bond Estreature
   [ ] 014 - Replevin
   [ ] 024 - Witness Protection
   [ ] 080 - Declaratory Judgment
   [ ] 081 - Injunctive Relief
   [ ] 082 - Equitable Relief
   [ ] 083 - Construction Lien
   [ ] 084 - Petition for Adversary Preliminary Hearing
   [ ] 085 - Civil Forfeiture
   [ ] 086 - Voluntary Binding Arbitration
   [ ] 087 - Personal Injury Protection (PIP)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐  No ☒

REMEDIES SOUGHT (check all that apply):

☒      monetary;

☐      non-monetary declaratory or injunctive relief;

☐      punitive

NUMBER OF CAUSES OF ACTION: [    ]

(specify)   (1) Breach of Contract _____

_____

IS THIS CASE A CLASS ACTION LAWSUIT?

☐ Yes

☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒ No

☐ Yes    If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?

☐ Yes

☒ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature   /s/ Eric Sodhi _____    Florida Bar #   0583871 _____

              Attorney or party                                   (Bar # if attorney)

  Eric Sodhi

_____        12/20/19

(type or print name)                                  _____

                                                            Date

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET**

Plaintiff must file this cover sheet with first paperwork filed in the action or proceeding (except small claims cases or other county court cases, probate, or family cases). Domestic and juvenile cases should be accompanied by a completed Florida Family Law Rules of Procedure Form 12.928, Cover Sheet for Family Court Cases. Failure to file a civil cover sheet in any civil case other than those excepted above may result in sanctions.

**I. Case Style.** Enter the name of the court, the appropriate case number assigned at the time of filing of the original complaint or petition, the name of the judge assigned (if applicable), and the name (last, first, middle initial) of plaintiff(s) and defendant(s).

**II. Type of Case.** Place an "X" in the appropriate box. If the cause fits more than one type of case, select the most definitive. If the most definitive label is a subcategory (indented under a broader category label, place an "X" in the category and subcategory boxes. Definitions of the cases are provided below in the order they appear on the form.


(A) Condominium - all civil lawsuits pursuant to Chapter 718, Florida Statutes, in which a condominium association is a party.

(B) Contracts and indebtedness - all contract actions relating to promissory notes and other debts, including those arising from sale of goods, but excluding contract disputes involving condominium associations.

(C) Eminent domain - all matters relating to the taking of private property for public use, including inverse condemnation by state agencies, political subdivisions, or public service corporations.

(D) Auto negligence - all matter arising out of a party's allegedly negligent operation of a motor vehicle.

(E) Negligence-other - all actions sounding in negligence, including statutory claims for relief on account of death or injury, that are not included in other main categories.

(F) Business governance - all matters relating to the management, administration, or control of a company.

(G) Business torts - all matters relating to liability for economic loss allegedly caused by interference with economic or business relationships.

(H) Environmental/Toxic tort - all matters relating to claims that violations of environmental regulatory provisions or exposure to a chemical caused injury or disease.

(I)  Third party indemnification - all matters relating to liability transferred to a third party in a financial relationship.

(J) Construction defect - all civil lawsuits in which damage or injury was allegedly caused by defects in the construction of a structure.

(K) Mass tort - all matters relating to a civil action involving numerous plaintiffs against one or more defendants.

(L) Negligent security - all matters involving injury to a person or property allegedly resulting from insufficient security.

(M) Nursing home negligence - all matters involving injury to a nursing home resident resulting from negligence of nursing home staff or facilities.

(N) Premises liability-commercial - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a commercial property.

(O) Premises liability-residential - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a residential property.

(P) Products liability - all matters involving injury to a person or property allegedly resulting from the manufacture or sale of a defective product or from a failure to warn.

(Q) Real property/Mortgage foreclosure - all matters relating to the possession, title, or boundaries of real property. All matters involving foreclosures or sales of real property, including foreclosures associated with condominium associations or condominium units.

(R) Commercial foreclosure - all matters relating to the termination of a business owner's interest in commercial property by a lender to gain title or force a sale to satisfy the unpaid dept secured by the property. Check the category that includes the estimate of the amount in controversy of the claim (section 28.241, Florida Statutes).

(S) Homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has been granted a homestead exemption. Check the category that includes the estimate of the amount in controversy of the claim (section 28.241, Florida Statutes).

(T) Non-homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has not been granted a homestead exemption. Check the category that includes the estimate of the amount in controversy of the claim (section 28.241, Florida Statutes).

(U) Other real property actions - all matters relating to land, land improvements, or property rights not involving commercial or residential foreclosure. Check the category that includes the estimate of the amount in controversy of the claim (section 28.241, Florida Statutes).

(V) Professional malpractice - all professional malpractice lawsuits.

(W) Malpractice-business - all matters relating to a business's or business person's failure to exercise the degree of care and skill that someone in the same line of work would use under similar circumstances.

 (X) Malpractice-medical - all matters relating to a doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances.

(Y) Malpractice-other professional - all matters relating to negligence of those other than medical or business professionals.

(Z) Other - all civil matters not included in other categories.

(AA) Antitrust/Trade regulation - all matters relating to unfair methods of competition or unfair or deceptive business acts or practices.

(AB) Business transactions - all matters relating to actions that affect financial or economic interests.

(AC) Constitutional challenge-statute or ordinance - a challenge to a statute or ordinance, citing a violation of the Florida Constitution.

(AD) Constitutional challenge-proposed amendment - a challenge to a legislatively initiated proposed constitutional amendment, but excluding challenges to a citizen-initiated proposed constitutional amendment because the Florida Supreme Court has directed jurisdiction of such challenges.

(AE) Corporate trust - all matters relating to the business activities of financial services companies or banks acting in a fiduciary capacity for investors.

(AF) Discrimination-employment or other - all matters relating to discrimination, including employment, sex, race, age, handicap, harassment, retaliation, or wages.

(AG) Insurance claims - all matters relating to claims filed with an insurance company.

(AH) Intellectual property - all matters relating to intangible rights protecting commercially valuable products of the human intellect.

(AI) Libel/Slander - all matters relating to written, visual, oral, or aural defamation of character.

(AJ) Shareholder derivative action - all matters relating to actions by a corporation's shareholders to protect and benefit all shareholders against corporate management for improper management.

(AK) Securities litigation - all matters relating to the financial interest or instruments of a company or corporation.

(AL) Trade secrets - all matters relating to a formula, process, device, or other business information that is kept confidential to maintain an advantage over competitors.

(AM) Trust litigation - all civil matters involving guardianships, estates, or trusts and not appropriately filed in probate proceedings.

---

**III. Remedies Sought.** Place an "X" in the appropriate box. If more than one remedy is sought in the complaint or petition, check all that apply.

**IV. Number of Causes of Action.** If the complaint or petition alleges more than one cause of action, note the number and the name of the cause of action.

**V. Class Action.** Place an "X" in the appropriate box.

**VI. Related Cases.** Places an "X" in the appropriate box.

**VII. Is the Jury Trial Demanded In Complaint?** Check the appropriate box to indicate whether a jury trial is being demanded in the complaint.

**VIII. Complex Business Court -** Check the appropriate box to indicate whether or not this case is to be assigned to the Complex Business Court.

**ATTORNEY OR PARTY SIGNATURE.** Sign the civil cover sheet. Print legibly the name of the person signing the civil cover sheet. Attorneys must include a Florida Bar number. Insert the date the civil cover sheet is signed. Signature is a certification that the filer has provided accurate information on the civil cover sheet.

CFN: 20200086971 BOOK 31807 PAGE 3429
DATE:02/05/2020  03:06:33 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-037141-CA-01
SECTION: CA09
JUDGE: Pedro P Echarte Jr.

**Dalia Genger**

Plaintiff(s)

vs.

**Sagi Genger**

Defendant(s)

_____/

## AGREED FINAL JUDGMENT

   **THIS CAUSE** came before the Court on a Joint Motion for Entry of Judgment by Consent, following a settlement between Plaintiff, DALIA GENGER ("Dalia") and Defendant, Sagi Genger ("Sagi"), and upon consent of the duly authorized representatives of both parties, respectively, as evidenced by their signatures on the Joint Motion, and the Court being otherwise fully advised in the premises, it is now therefore,

   **ORDERED AND ADJUDGED** that:

1. Sagi is liable to Dalia under the October 30, 2004 written agreement.

2. Dalia Genger, 200 East 65 Street, New York, NY 10065, shall recover from Sagi Genger, 10031 West Broadview Drive, Bay Harbor Islands, Florida 33154, the sum of $18,500,000, inclusive of attorneys' fees and costs, that shall bear interest at the statutory rate, for which let execution issue.

3. This Court retains jurisdiction over the parties and this matter to enforce the terms of this Final Judgment by Consent or to enter any modification hereupon.

CFN: 20200086971 BOOK 31807 PAGE 3430

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 3rd day of February, 2020.

2019-037141-CA-01 02-03-2020 1:46 PM

2019-037141-CA-01 02-03-2020 1:46 PM
Hon. Pedro P Echarte Jr.

**CIRCUIT COURT JUDGE**
Electronically Signed

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

**Copies Furnished To:**

Eric Matthew Sodhi , Email : eric@sodhispoont.com
Eric Matthew Sodhi , Email : josh@sodhispoont.com
Eric Matthew Sodhi , Email : service@sodhispoont.com
Scott A Wagner , Email : sw@WagnerLegalCo.com
Scott A Wagner , Email : swagner305@gmail.com
Scott Wagner , Email : sw@wagnerlegalco.com