# EXHIBIT 23

Page 1

1

2   IN THE UNITED STATES BANKRUPTCY

3   SOUTHERN DISTRICT OF NEW YORK

4   ------------------------------------------------X

5   IN RE:

6                                   Case No.:

7                                   19-13895-jlg

8   ORLY GENGER,

9      Debtor.

10  ------------------------------------------------X

11

12                  July 15, 2020
                    9:48 a.m.
13

14              *3RD REVISED*

15       INTERNET STREAMING EXAMINATION BEFORE

16  TRIAL of SAGI GENGER, the Non-Party Witness in

17  the above-entitled action, taken on behalf of

18  the aforementioned parties, held at the above

19  time and place, and taken before Dorene Glover,

20  a reporter and Notary Public within and for the

21  State of New York.

22

23

24

25  Job No. 181828

```
                                              Page 8
 1                      GENGER
 2          MR. LEBOV:  Yeah, I'm here.  You
 3      have my information.  I e-mailed it to
 4      you.  Paul Lebov on behalf of Dalia
 5      Genger.
 6          MR. HERSCHMANN:  We also have John
 7      Gonzalez.  He is a paralegal.  Can you
 8      swear in the witness, please?
 9          THE WITNESS:  Dorene, I would like
10      to affirm.
11  S A G I G E N G E R,
12  the witness herein, having first been duly
13  sworn by a Notary Public of the State of New
14  York, was examined and testified as follows:
15                  EXAMINATION
16  BY MR. HERSCHMANN:
17      Q.   Mr. Genger, my name is Eric
18  Herschmann.  I'm going to ask you a series of
19  questions today.  I ask that you listen to my
20  questions very carefully and only answer to the
21  question that I pose to you.  Is that okay?
22      A.   I'll do my best.
23      Q.   And just before we get started, Mr.
24  Genger, are you familiar with the phone number
25  501-221-7574?
```

```
 1                      GENGER
 2   you a release between 2014 and August of 2019
 3   while she was still trustee -- or in June of
 4   2019, when she was still trustee?
 5        A.   'Cause I didn't ask her for it.
 6        Q.   So let's look at and if you can
 7   pull up the release, it states, Sagi-Dalia
 8   33452.
 9             MR. DELLAPORTAS:  Will you be
10        e-mailing this?
11             MR. HERSCHMANN:  You produced this
12        last night.  We'll have it e-mailed
13        around.
14             MR. DELLAPORTAS:  I produced
15        10,000 pages.
16             MR. HERSCHMANN:  You need this
17        e-mailed around to you we will take care
18        of it.
19             I want to look at this agreement,
20        sir.  First of all, who drafted this
21        document, sir?
22             MR. DELLAPORTAS:  I need the
23        witness to hold off answering until I
24        get the document by e-mail.
25             MR. HERSCHMANN:  Mr. Dellaportas,
```

```
 1                    GENGER
 2   Mr. Oldner?
 3        A.   Yes, I believe so.
 4        Q.   Was Mr. Dellaportas with you?
 5        A.   I don't believe so.  I don't recall
 6   that he was there.
 7        Q.   Did you bring this document with
 8   you when you came to Texas?
 9        A.   I don't remember seeing this
10   document before I received it.
11        Q.   I'm sorry, I didn't --
12        A.   No, I don't recall seeing this
13   document before I received it.
14        Q.   Who did you receive it from?
15        A.   Mr. Oldner.
16        Q.   Do you know who drafted it on
17   behalf of Mr. Oldner?
18        A.   I do not.
19        Q.   Did you ask Mr. Oldner if this
20   document would give you a release?
21        A.   He did this in response to a
22   request from me, yes.
23        Q.   And did you actually ask him to
24   also include a release of your wife?
25        A.   I don't remember if I asked him for
```

```
                                              Page 206
 1                    GENGER
 2   it or not.  Maybe it will be.
 3         Q.    So did he know Elana, E-L-A-N-A,
 4   Genger?  Did he know her?
 5         A.    He doesn't knows her today.  I
 6   don't think he knows her even today.  I don't
 7   think that they have ever met.
 8         Q.    She didn't go to the bakery with
 9   you, did she?
10         A.    No, she was not in Arkansas.
11         Q.    Did you ask Mr. Oldner why he
12   should be releasing your wife on behalf of the
13   Orly Genger trust?
14         A.    I don't remember that discussion,
15   no.  I remember asking -- I may have said that
16   also, but I don't remember it.
17         Q.    Tell us everything you can recall
18   you discussed with Mr. Oldner about any release
19   of you, your wife, or your mother in
20   relationship to the Orly Genger trust?
21         A.    I said I'd like to close this thing
22   out, and that the litigation breached the
23   fiduciary duty.  I forgot the name of the other
24   thing, but whatever.  There was a trial but
25   there was zero damages that the matter was
```

```
                                              Page 207
 1                    GENGER
 2   disclosed of.  That there was still
 3   theoretically a possibility of an appeal
 4   nevertheless we wanted to work together and
 5   feel that if we wanted to work together in
 6   common 'cause it would be a lot healthier if we
 7   were not adverse to each other and that with
 8   respect to my mother, that there was a clause,
 9   we trust adventure which specifically
10   envisioned the trustee releasing his or her
11   predecessor.  And that's it.  That I asked for
12   it and he ultimately agreed to it.
13         Q.   Did he ask for any documentation to
14   support your position, sir?
15         A.   He asked for a lot of -- I don't
16   know.  We discussed a lot of documents.  I
17   don't know that he was asking or dealing with
18   the stuff in connection with considering the
19   release or considering what's going on more
20   widely.
21         Q.   Mr. Genger, do you know what an
22   automatic stay is?
23         A.   I'm familiar with an automatic
24   stay.  Yes.
25         Q.   Sir, let's just talk about what you
```

Page 293

```
 1                    GENGER
 2   sir?
 3       A.   I don't know what records she keeps
 4   or doesn't keep.
 5       Q.   Sir, let's go back to the
 6   schedules.  So on page 37 is where we were.
 7   You'd agree there was a reference to turn over
 8   the alleged --
 9       A.   Stop.  Stop.  You're speaking as
10   though I have the agreement in front of me.  I
11   don't.  I can't give you an answer.
12       Q.   We'll pull it back up.  Again, sir,
13   not a problem.  On page 37, sir, you see that
14   it's Dalia Genger as Trustee of Orly Genger
15   1993 Trust seeking turnover alleged property to
16   trust; do you see that, sir?
17       A.   Yes.
18       Q.   Then, sir, we're going to show you
19   pages 57, 61, and 63 of Orly's scheduled
20   disclosures and you're going to see, sir, the
21   first one is the Dalia Genger, Sagi Genger,
22   Orly Genger Southern District case which is
23   where the turnover action is.  The next one, if
24   you can read to us, what does it say on the
25   right side of this caption page, sir?
```

Page 294

1                        GENGER

2        A.   New York County, Surrogates Court.

3        Q.   The right side, sir, the big thing

4   that says petition.  I want you to read that.

5        A.   Petition for turnover of trust

6   property and other relief.

7        Q.   Sir, did you understand that the

8   trust property that was filed there related to

9   the seven and a half -- two seven and a half

10  million dollar promissory notes?

11       A.   Yes.

12       Q.   Sir, why don't we look at the next

13  page.  Why don't you read to us what it says

14  there under amended?

15       A.   I can't see what you're discussing.

16       Q.   The big heading that says amended

17  petition, can you read that aloud for us

18  please?

19       A.   Amended petition for turnover of

20  property and other relief.

21       Q.   That also relates to the two seven

22  and a half million dollar promissory notes,

23  right, sir?

24       A.   Yes.

25       Q.   Sir, I want to go back for a moment

Page 357

1                        GENGER

2              C E R T I F I C A T E

3

4   STATE OF NEW YORK        )
                             ss.:
5   COUNTY OF BRONX          )

6

7

8          I, DORENE GLOVER, a Notary Public for

9   and within the State of New York, do hereby

10  certify:

11         That the witness whose examination is

12  hereinbefore set forth was duly sworn and that

13  such examination is a true record of the

14  testimony given by that witness.

15         I further certify that I am not related

16  to any of the parties to this action by blood

17  or by marriage and that I am in no way

18  interested in the outcome of this matter.

19         IN WITNESS WHEREOF, I have hereunto set

20  my hand this 22nd day of July, 2020.

21

22              *Dorene Glover* (signature)

23         _____
                    DORENE GLOVER

24

25