# EXHIBIT 24

Oldner, Michael 6/25/2020                                                    v.

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re

Orly Genger,                    Chapter 7
                                CASE NO. 19-13895(JLG)
Debtor.
_____

ORAL DEPOSITION OF MICHAEL OLDNER

June 25, 2020

_____

BUSHMAN COURT REPORTING
620 West Third, Suite 302
Little Rock, Arkansas 72201
501.372.5115

Oldner, Michael 6/25/2020                                              v.

Page 2

1                      A P P E A R A N C E S

2    ON BEHALF OF ORLY GENGER TRUST:

3    ADAM POLLOCK, ESQ.
     Pollock Cohen LLP
4    60 Broad Street
     24th Floor
5    New York, New York  10004
     Adam@PollockCohen.com
6

7    ON BEHALF OF MICHAEL OLDNER:

8    TIM CULLEN, ESQ.
     Cullen & Co., PLLC
9    P.O. Box 3255
     Little Rock, Arkansas  72203
10   tim@cullenandcompany.com

11
     ON BEHALF OF KASOWITZ BENSON TORRES LLP:
12
     MICHAEL PAUL BOWEN, ESQ.
13   ANDREW R. KURLAND, ESQ.
     Kasowitz Benson Torres, LLP
14   1633 Broadway
     New York, New York  10019
15   MBowen@kasowitz.com
     AKurland@kasowitz.com
16

17   ON BEHALF OF ORLY GENGER:

18   YANN GERON, ESQ.
     Reitler Kailas & Rosenblatt LLC
19   885 Third Avenue
     20th Floor
20   New York, New York  10022
     ygeron@reitlerlaw.com
21

22   ON BEHALF OF THE CHAPTER 7 TRUSTEE:

23   ROCCO A. CAVALIERE, ESQ.
     Tarter Krinsky & Drogin LLP
24   1350 Broadway
     New York, New York  10018
25   rcavaliere@tarterkrinsky.com

                          Janess Ferguson Smith
     Bushman Court Reporting                              501-372-5115

Oldner, Michael 6/25/2020                                                      v.

Page 3

1                     (Appearances Continued)

2    ON BEHALF OF MICHAEL OLDNER, TRUSTEE TO THE ORLY
     GENGER 1993 TRUST:
3
     ELIZABETH M. ABOULAFIA, ESQ.
4    Cullen and Dykman LLP
     100 Quentin Roosevelt Boulevard
5    Garden City, New York  11530
     eaboulafia@cullenllp.com
6

7    ON BEHALF OF ADBG LLC:

8    CHRIS GARTMAN, ESQ.
     Hughes Hubbard & Reed LLP
9    One Battery Park Plaza
     16th Floor
10   New York, New York  10004
     chris.gartman@hugheshubbard.com
11

12   ON BEHALF OF CREDITOR:

13   ERIC D. HERSCHMANN, ESQ.
     Kasowitz Benson Torres, LLP
14   1633 Broadway
     New York, New York  10019
15   EHerschmann@kasowitz.com

16

17   ON BEHALF OF SAGI GENGER:

18   JOHN DELLAPORTAS, ESQ.
     Emmet, Marvin & Martin LLP
19   120 Broadway
     32nd Floor
20   New York, New York  10271
     jdellaportas@emmetmarvin.com
21

22   Also present:  Sagi Genger

23

24

25

1          Trust.
2                 I join in what Mr. Cullen said.  We
3          are here in an effort to, in a good faith
4          effort here.
5                 As I mentioned when I spoke with
6          everybody last week, we do -- we appear
7          without prejudice and without waiver of the
8          pending Motion to Quash.
9                 I trust that consistent with the
10         judge's direction on the teleconference
11         that was on Tuesday we will be able to have
12         a successful deposition and hopefully avoid
13         further motion practice on that matter.
14                MR. BOWEN:  Well, let's go on the
15         record and swear in the witness, please.
16                MICHAEL OLDNER,
17  the witness hereinbefore named, having first been
18  duly cautioned and sworn or affirmed to tell the
19  truth, the whole truth and nothing but the truth,
20  testified as follows:
21                MR. BOWEN:  As I stated off the
22         record, my name is Michael Bowen,
23         B-o-w-e-n.  I'm a lawyer from the law firm
24         Kasowitz Benson Torres, a creditor in this
25         bankruptcy, and I'll be asking you

Page 202

1              the entity Claims Pursue.
2                   And, on top of that, he won't -- he
3              has not even identified who he is
4              representing in this questioning, and it
5              appears that, in effect, he is representing
6              the interest of the Claims Pursue entity.
7                   And I've asked him to clarify who he
8              is representing in this proceeding during
9              the deposition, during which he is asking
10             the questions.
11  BY MR. BOWEN:
12  Q.   Go ahead, Mr. Oldner.  Let me, I think for the
13  third time I'll restate the question.  And, again,
14  I'm just asking you to clarify.  If I misstate it,
15  just correct it.
16                  MR. POLLOCK:  Mr. Bowen --
17  Q.   I understood you to say that you did not
18  conduct any investigation of Dalia Genger before you
19  signed a release as the successor trustee releasing
20  any claims the trust may or may not have against
21  Dalia Genger; is that correct?
22                  MR. POLLOCK:  Objection;
23             mischaracterizes his testimony.
24  Q.   You can answer it.  Am I right or wrong?
25  A.   I did not conduct any investigation into Dalia

Page 203

1   Genger before I signed the release.
2   Q.   Now the 8.9 or 9 million dollar debt that the
3   trust has, you, you understand that's connected to
4   something called the D&K note; correct?
5   A.   Yes, sir.
6   Q.   And do you, do you know that Dalia -- well, let
7   me ask it this way.  At the time that you decided to
8   be the successor trustee were you aware of the fact
9   that Dalia Genger had purported to transfer that note
10  and, and incur debt on behalf of the trust that was
11  disallowed by the Court?
12              MR. DELLAPORTAS:  Object to form.  It
13         misstates the record.
14              MR. POLLOCK:  I join in that
15         objection.
16              MR. DELLAPORTAS:  It's just not true.
17  A.   Could you, could you point me to what you're
18  talking about?
19  Q.   Well, were you aware that there was any
20  transaction involving the D&K note that Dalia Genger
21  was involved in?
22  A.   Not at all.
23  Q.   You have no knowledge of that at all?
24  A.   I had no knowledge whenever I accepted the
25  position.

Oldner, Michael 6/25/2020                                                    v.

Page 233

1  A.   It's beneficiaries, plural.
2  Q.   Okay.  Well, we -- you know that one
3  beneficiary is Orly Genger; correct?
4  A.   Yes.  One beneficiary is Orly Genger.  The
5  other beneficiary is her daughter.  The other
6  beneficiary is future generations.
7  Q.   Okay.
8  A.   I want to make sure we're on the same page.
9  Q.   Right.  Well, that, that's helpful that that's
10 part of your understanding as the trustee.
11 A.   Yes.
12 Q.   So you have to keep in mind not just the
13 interest of Orly Genger but the interests of her
14 descendents; right?
15 A.   Yes, sir.  Yes, sir.
16 Q.   And right now the trust has no assets, other
17 than the two legal claims you mentioned, and it has a
18 multimillion dollar debt; right?
19 A.   Yes, sir.
20 Q.   Okay.
21 A.   Yes, sir.  It has multimillion dollar claims
22 and a multimillion dollar debt.
23 Q.   Okay.  Now before, before I go on to the topic
24 of the Motion to Dismiss I just want to clarify on
25 the release, that was a document that Sagi Genger

Page 234

1  brought to you in Arkansas on the day that you signed
2  the acceptance of the position; is that right?
3  A.   I believe that to be true.
4  Q.   So he had two documents; right?  He had the
5  document where you accepted the position, and he had
6  a separate document, which was the release of Dalia
7  Genger.  Is that right?
8  A.   I'm thinking.  Yes, he had those two documents
9  for sure.
10 Q.   Okay.  And your testimony, though, earlier was
11 you don't think he had any other documents with him,
12 and he didn't show you anything else; is that right?
13 A.   No, sir.  That was not my testimony.
14 Q.   Okay.  What, what else did he have with him,
15 and what else did he show you?
16 A.   The Inter-Creditor Agreement you brought up.
17 Q.   That, that was brought up on the very day that
18 you accepted the position?
19 A.   Yes.
20 Q.   Okay.  But you didn't sign that until sometime
21 over the weekend; is that right?
22 A.   Yes, sir.
23 Q.   Why -- what was the delay in signing that?
24 A.   Are you asking what I'm thinking, what I was
25 thinking when I did that?

19-13895-jlg    Doc 424-24    Filed 06/01/21    Entered 06/01/21 13:05:52    Exhibit 24
Pg 10 of 18
Oldner, Michael 6/25/2020                                                        v.

Page 263

1           record.
2   Q.     Is that correct?
3   A.     Will you ask that again, please?
4   Q.     Now that the case is in bankruptcy court in New
5   York, you have made the determination that it's no
6   longer in the best interest of Orly Genger and her
7   descendents as the beneficiaries of the trust that
8   the bankruptcy be dismissed?
9              MR. POLLOCK:  Objection; misstates the
10          record, and, again, purely calls for
11          privileged communications.
12             You've asked this repeatedly, and I've
13          asked you repeatedly to stop calling for
14          privileged communication.
15             At this point you're just harassing
16          the witness by asking the same questions
17          again and again.  I respectfully ask you,
18          Mr. Bowen, to move on.
19  Q.     Is that correct, Mr. Oldner, that you now made
20  the determination that it's no longer in the best
21  interest of the beneficiaries of the trust to seek
22  dismissal of the bankruptcy?
23             MR. POLLOCK:  Same objection.
24  A.     Your characterization is not correct, sir.
25  Q.     Well, how is it not correct?

1   A.    The trust at this time is not taking a position
2   one way or the other through the Motion to Dismiss in
3   New York.
4   Q.    Well, in your mind, you personally, as the
5   trustee, is it still your position that it's in the
6   best interest of Orly Genger and her descendents as
7   beneficiaries of the trust that the bankruptcy be
8   dismissed?
9             MR. POLLOCK:  Mr. Bowen, why do you
10            still keep asking and questioning and
11            questioning again and again?  You're just
12            harassing the witness.  He has given you
13            his answer.  Move along.
14  BY MR. BOWEN:
15  Q.    You can answer, Mr. Oldner.
16            MR. POLLOCK:  He already gave you his
17            answer.
18  Q.    You can answer the question.
19            MR. POLLOCK:  He did.
20  A.    My position --
21  Q.    Go ahead.
22  A.    -- right now is that the trust will take no
23  position right now in the Motion to Dismiss in New
24  York.
25  Q.    So you have made no conclusion as the trustee

1  A.   Will you post the Inter-Creditor Agreement
2  again while we're talking about it?
3  Q.   Yes, yes.
4  A.   Thank you.  I think that puts me over on the
5  side bar to talk.
6  Q.   Yes.
7  A.   Okay.  There we are.
8  Q.   Okay.  So if you look at paragraph two on page
9  two, there's a Distribution of Litigation Recovery,
10 and it describes how the money goes first to Robin
11 Rodriguez's company, and to Sagi Genger.
12         And then -- and, secondly, it goes to those
13 two parties again, and, lastly, it goes to recovery.
14 Do you see that?
15 A.   I do.
16 Q.   Okay.  And you understood that; right?  You
17 understood that the $32 million, if the trust won and
18 got all of the $32 million into the trust, it would
19 have to divide up that money according to this
20 paragraph; correct?
21 A.   No, sir, not correct.
22 Q.   What's incorrect about that?
23 A.   Pretty much all of what you said.
24 Q.   Okay.  Well, then, if you're saying if the
25 trust wins on the claim, and the $32 million gets

19-13895-jlg  Doc 424-24  Filed 06/01/21  Entered 06/01/21 13:05:52  Exhibit 24
Pg 13 of 18
Oldner, Michael 6/25/2020                                              v.

Page 303

1  paid into the trust, the trust gets to keep that
2  money?
3  A.   Well, those are two opposite ends, but, no, I'm
4  not saying that either.  The trust -- if REI wins,
5  the trust will then receive money -- REI will pay its
6  expenses.
7         The trust will then receive the money.
8  Money will be paid out of REI as follows.  Number
9  one, it will retire the trust legitimate debts at
10 that time.
11        And, obviously, we use the phrase "Proof of
12 Claim."  Obviously there has to be a Proof of Claim
13 on everything if the trust, if the trust wins, just
14 the same as it would be for anybody else.
15        The trust will not be handing money out on
16 the street corner.  This is our general agreement.
17 Our general agreement is that the D&K note will be
18 paid off.
19 Q.   Well, that would include the payment in
20 paragraph two to MSM; right?
21 A.   That would be the D&K note, yes.
22 Q.   Right.  And then Sagi Genger gets his payment?
23 A.   Depending on what that payment is, yes.
24 Q.   Well, it's defined in this agreement, and
25 you'll see that, if you look at the "where as"

19-13895-jlg Doc 424-24 Filed 06/01/21 Entered 06/01/21 13:05:52 Exhibit 24
Pg 14 of 18
Oldner, Michael 6/25/2020                                          v.

Page 309

1  one more time, I will answer that question.
2  Q.   How did you understand what this agreement
3  requires of the trust if the trust is awarded the
4  $32.3 that it claims belongs to it?
5              MR. POLLOCK:  Objection; seeks
6         speculation.
7  A.   Number one, I see that at some point in the
8  future.  And at some point in the future, parameters
9  on everything not only likely will change, parameters
10 will have changed.
11             So, consequently, I do not -- I look at
12 this note as a guideline and as an indication -- this
13 Inter-Creditor Agreement is an indication that we are
14 not going to fight with each other over the money.
15             It is, it is my anticipation that the trust
16 will be able to satisfy, to pay its expenses, to
17 satisfy its legitimate creditors, and that the trust
18 will have money after that for its beneficiaries, not
19 only Orly Genger, but Orly Genger's descendents going
20 into the future.
21 Q.   So your understanding is this agreement doesn't
22 bind the trust to pay any particular amount to
23 anybody else; is that correct?
24             MR. DELLAPORTAS:  Objection; misstates
25        the prior testimony.

1               MR. POLLOCK:  Objection.
2   Q.    Is that correct?
3   A.    My understanding, my understanding is that this
4   agreement provides a general outline, but in the real
5   world things change.  I do understand --
6   Q.    So you expect to renegotiate the agreement?
7   A.    Mr. Bowen, I, I would be derelict in my
8   fiduciary responsibility if I don't try to
9   renegotiate some portions.
10  Q.    Do you understand that Sagi Genger is adverse
11  to Orly Genger, who is the beneficiary, or one of the
12  beneficiaries or the Orly Genger Trust?
13              MR. DELLAPORTAS:  Objection; misstates
14          the record.
15              MR. POLLOCK:  Objection.
16  A.    Can you tell me what "adverse" means in this
17  case?
18  Q.    That, that he's an opponent in the litigation
19  between the two of them.
20              MR. DELLAPORTAS:  Same objection.
21  A.    I understand that Sagi Genger may be an
22  opponent in the litigation, but I also understand
23  that Sagi Genger would like to settle this litigation
24  and get this behind him.
25  Q.    And do you --

19-13895-jlg    Doc 424-24    Filed 06/01/21    Entered 06/01/21 13:05:52    Exhibit 24
Pg 16 of 18
Oldner, Michael 6/25/2020                                                         v.

Page 316

1       invitations.
2  BY MR. BOWEN:
3  Q.    Mr. Oldner, in that -- under that
4  Inter-Creditor Agreement -- we can put it back up if
5  you want to see it.  It's Exhibit 1 to your
6  deposition.
7  A.    I do.
8  Q.    Does that agreement provide for payment of fees
9  to you, or does that fall under the renegotiation
10 that you intend to pursue?
11            MR. POLLOCK:  Objection.  Did you ask
12         if there's a payment from you, Mr. Bowen,
13         to Mr. Oldner?
14            Can we get the question read back from
15         the stenographer?
16            MR. BOWEN:  I'll restate it.  Maybe
17         you didn't hear it correctly.
18 BY MR. BOWEN:
19 Q.    Mr. Oldner, the question is does the
20 Inter-Creditor Agreement provide for payments to you
21 in your capacity in operating Recovery Effort?
22            MR. DELLAPORTAS:  Objection; the
23         document speaks for itself.
24 A.    The Inter-Creditor Agreement is solely an
25 agreement between the parties -- Sagi, Robin

Page 317

1    Rodriguez, the trust, REI -- not to fight with each
2    other over the money.  It has nothing whatsoever to
3    do with my payment.
4    Q.    And who, who did you expect was going to pay
5    your fee when the time came to pay?
6    A.    Recovery Effort Inc.
7    Q.    And where was Recovery Effort Inc. going to get
8    the money from the, whatever's left by, by virtue of
9    the Inter-Creditor Agreement?
10   A.    From whatever has been recovered.
11   Q.    And would you get the remainder of that money,
12   whatever's left to, that goes to Recovery; is that
13   the idea?
14               MR. POLLOCK:  Objection.
15   A.    That's ludicrous.
16   Q.    Then what's your thinking on that?  What's the
17   fee amount you get?
18   A.    That's a ludicrous question.  I actually take
19   offense to that question.  It's the first thing
20   you've said that's offended me.
21               I'm going to get the -- so Robin is going
22   to get paid.  Sagi is going to get paid a bunch of
23   money.  The trust is going to be left with nothing?
24   No, that's not true at all.  Actually, I find that
25   very offensive, that characterization.

Oldner, Michael 6/25/2020                                                    v.

Page 406

COURT REPORTER'S CERTIFICATE

STATE OF ARKANSAS)
                 )ss.
COUNTY OF SALINE )

      I, JANESS FERGUSON SMITH, CCR, RPR, a Notary Public in and for Saline County, Arkansas do hereby certify that the facts stated by me in the caption of the foregoing matter are true; and that the foregoing matter was transcribed by me, to the best of my ability and understanding, from my machine shorthand notes taken at the time and place set out in the caption hereto.

      In accordance with Rule 30(e) of the Rules of Civil Procedure, review of the transcript was requested by the deponent or a party thereto.

      I FURTHER CERTIFY that I am neither counsel for, related to, nor employed by any of the parties to the action in which this proceeding was taken; and, further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, not financially interested or otherwise, in the outcome of this action.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE on this, the 25th day of June, 2020.

*[signature: Janess Ferguson Smith]*

JANESS FERGUSON SMITH, CCR, RPR
Notary Public for Saline County
and Court Reporter.