# EXHIBIT 34

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

ARIE GENGER and ORLY GENGER,     :
in her individual capacity and on behalf of     :
THE ORLY GENGER 1993 TRUST,     :
     :
    Plaintiffs,     :    Index No. 651089/2010
     :
   -against-     :    IAS Part 12 (Jaffe, JSC)
     :
SAGI GENGER, TPR INVESTMENT     :
ASSOCIATES, INC., DALIA GENGER,     :
THE SAGI GENGER 1993 TRUST,     :
ROCHELLE FANG, individually and as trustee of  :
THE SAGI GENGER 1993 TRUST,     :    **AFFIRMATION OF JOHN**
GLENCLOVA INVESTMENT COMPANY,     :    **DELLAPORTAS ON BEHALF OF**
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,:    **SAGI GENGER AND THE SAGI**
NEW TR EQUITY II, LLC, JULES TRUMP,     :    **TRUST, IN SUPPORT OF AND**
EDDIE TRUMP, MARK HIRSCH and     :    **JOINING IN DALIA GENGER'S**
TRANS-RESOURCES, INC.     :    **MOTION TO SUBSTITUTE AND**
     :    **FOR PAYMENT INTO COURT**
    Defendants.     :

---------------------------------------------------------------x

SAGI GENGER, individually and as assignee of    :
THE SAGI GENGER 1993 TRUST, and TPR    :
INVESTMENT ASSOCIATES, INC.     :
     :
   Cross-Claimants, Counterclaimants, and   :
   Third-Party Claimants,     :
     :
   -against-     :
     :
ARIE GENGER, ORLY GENGER,     :
GLENCLOVA INVESTMENT COMPANY,     :
TR INVESTORS, LLC, NEW TR EQUITY I, LLC,:
NEW TR EQUITY II, LLC, JULES TRUMP,     :
EDDIE TRUMP, MARK HIRSCH,     :
TRANS-RESOURCES, INC., WILLIAM     :
DOWD, and THE ORLY GENGER 1993 TRUST, :
     :
   Cross-Claim, Counterclaim and/or    :
   Third-Party Defendants.     :

---------------------------------------------------------------x

JOHN DELLAPORTAS, an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms pursuant to CPLR 2016 as follows:

1.      I am a member of the firm of Morgan, Lewis & Bockius, L.L.P., counsel for Sagi Genger and the Sagi Genger 1993 Trust (together, the "Sagi Trust").  Sagi Genger and the Sagi Trust <u>support and join in</u> Trustee Dalia Genger's Motion To Substitute For Plaintiff Orly Genger On Her Derivative Claims against the Trump Group and for an Order Directing Settlement Proceeds To Be Paid Into Court.  (NYSCEF Doc. No. 1108.)

### Introduction

2.      By her motion, Trustee Dalia Genger ("Dalia") seeks to recover, for the Orly Genger 1993 Trust (the "Orly Trust"), $32.3 million in Trust assets which Orly Genger ("Orly") has misappropriated for her own benefit and that of her father ("Arie") and the hedge fund investors who fund Arie's lawsuits (the "Brosers").  New York law requires that the proceeds from the settlement of the Orly Trust's claims be paid into Court.

3.      Orly is not the only victim when she steals from the Orly Trust.  Although Orly has repeatedly represented to this Court that she is the "sole beneficiary" of the Orly Trust (*see, e.g.*, NYSCEF Doc. No. 218 at 1), she is not.  In addition to Orly, the Orly Trust also has a contingent remainder beneficiary, the Sagi Trust.  The Sagi Trust, in turn, has six beneficiaries, five of whom are the grandchildren of the original grantor.  As discussed below, they have rights under New York law which Orly cannot simply disregard.

4.      In addition to the existing grandchildren, New York law recognizes the rights of Orly's own potential children, and Orly is not free to rob from them either.  Indeed, for this very reason, the Surrogate's Court has recently appointed a Guardian *Ad Litem*, Steve Riker, Esq., to represent Orly's potential children.  (*See* Exhibit A annexed hereto.)

## The Claims In Orly's Complaint Are Derivative
## Claims Brought On Behalf Of The Orly Trust

5.      For purposes of the instant motion, the operative pleading is Orly's Third

Amended and Supplemental Complaint (the "Complaint").  (NYSCEF Doc. No. 112.)  In it, Orly

asserted claims against, *inter alia*, defendants Glenclova Investment Company, TR Investors,

LLC, New TR Equity I, LLC, New TR Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch

and Trans-Resources, Inc. ("TRI") (collectively, the "Trump Parties").  As stated in paragraph 2

of her pleading, Orly Genger "brings this action on behalf of the Orly Trust as the beneficiary of

the Orly Trust to protect her interests thereunder."  (*Id.* at 1, emphases added.)

6.      "An injury is indirect or derivative when the loss arises solely as a result of

injuries sustained by another party." *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris

USA Inc.*, 3 N.Y.3d 200, 207 (2004).  Although Orly purports to also bring claims in her

"individual capacity," the only harm she identifies in her Complaint is to the Orly Trust.  Here is

how Orly describes her own "NATURE OF THE CASE" in her Complaint:

> In this case, Plaintiffs Arie and Orly, in her individual capacity and on behalf
> of the Orly Trust, are seeking declaratory, injunctive, and other equitable relief, as
> well as additional compensatory damages in an amount yet to be determined
> arising from, inter alia, the loss of Arie's voting control of TRI and the tortious
> conduct of the defendants as set forth herein, in connection with the Trump
> Parties' campaign to take over and dilute the value of plaintiffs' interests in TRI, a
> company founded by Arie nearly three decades ago, including the defendants'
> wrongful, concerted efforts to strip Arie of his ownership and control of 52.85% of
> the shares of TRI's common stock, including the Orly Trust's interest in a portion
> of this TRI stock, and to oust Arie from his management control of TRI—all in an
> audacious series of breaches of contractual, fiduciary and legal obligations giving
> rise to each of the causes of action alleged in this Complaint.

(NYSCEF Doc. No. 112 at 4, emphases added.)  It is undisputed that Orly has never had a direct

interest in TRI stock.  Her only interest was an indirect one as a beneficiary of the Orly Trust,

which bought TRI shares in 2004 from TPR Investment Associates, Inc. ("TPR").  Accordingly,

her claims in her Complaint are exclusively derivative in nature.

**This Court Rules Three Times, At The Settling Parties' Behest,
That Orly's Claims Are Derivative On Behalf Of The Trust**

7.      All defendants, including the Trump Parties, moved to dismiss the Complain on the ground, *inter alia*, that Orly lacked standing to assert claims derivatively on behalf of the Orly Trust.  (NYSCEF Doc. No. 137 at 19.)  Orly opposed those motions.  In a section of her brief entitled "ORLY HAS STANDING TO ASSERT CLAIMS ON BEHALF OF THE ORLY TRUST", she argued that: "this Court has previously rejected the identical argument in the course of denying defendants' motions to dismiss the related case, holding that, '<u>as the beneficiary of the Orly Genger 1993 Trust</u>, [Orly] has a right to assert causes of action on behalf of the trust.' *Orly Genger v. Dalia Genger et al.*, Index No. 109749/2009, slip op. at 4 (June 28, 2010)."  (NYSCEF Doc. No. 218 at 1, emphasis added.)

8.      In its January 2, 2013 Amended Decision and Order, this Court adopted Orly's position that she had standing to assert the derivative claims in the Third Amended and Supplemental Complaint, referring back to the above-quoted language from the Court's June 28, 2010 decision in the parallel 2009 action.  (NYSCEF Doc. No. 285 at 10.)

9.      Thereafter, this Court has twice reaffirmed its January 2, 2013 ruling that Orly's claims are derivative ones brought on behalf of the Orly Trust.  The first such ruling came in response to a motion by Orly Genger to restrain Dalia from seeking a declaratory judgment in Delaware Chancery Court that the Orly Trust was the beneficial owner of the TRI shares.  In an affidavit in support of that motion, Orly urged the Court to enjoin Dalia because the Delaware declaratory judgment action was "duplicative" of this action.  According to Orly: "In the instant action …, I seek, among other things, the return of those TRI Shares to the Orly Trust." (NYSCEF Doc. No. 148-1, ¶¶ 2, 5.)  In further support of her motion, Orly submitted a brief advocating the Court's authority to enjoin "duplicative" suits. (NYSCEF Doc. No. 149 at 8-12.)

According to Orly, "Dalia's contention that the Orly Trust is not a party to this action … is meritless. Orly is prosecuting this action on behalf of the Orly Trust". (*Id.* at 11.)

10.    Over the Sagi Trust's objection,[1] this Court adopted Orly's position that Dalia's declaratory judgment action – which only sought relief on behalf of the Orly Trust – was entirely duplicative of Orly's claims in this action, and should be enjoined pending a determination of "the proper forum or jurisdiction for hearing and adjudicating the beneficial interest in the disputed [TRI] shares". (NYSCEF Doc. No. 229 at 2; *see also* Doc. Nos. 150, 165.)  In other words, the Court once again agreed with Orly that this lawsuit involved Orly's effort, on behalf of the Orly Trust, to obtain a recovery for the Trust.

11.    Most recently, in its January 7, 2015 Decision and Order dismissing the Sagi Trust's claims against TRI, the Court reaffirmed the purely derivative nature of the Sagi Trust's equivalent claims, finding that: "Given the concession that Sagi … has no right to those [TRI] shares except to the extent that he was a beneficiary of the Sagi Trust, TPR/Sagi (the cross-claimants) are estopped from arguing that Sagi's interest in pursuing the cross claims is separate and apart from that of the Sagi Trust." (NYSCEF Doc. No. 1159 at 10-11.)  Here, as well, Orly had no claim to the TRI shares except as beneficiary of the Orly Trust.

### Orly's Settles The Derivative Claims Brought On Behalf Of The Orly Trust For $32.3 Million, But Does Not Remit Those Proceeds To The Trust

12.    In June 2013, Orly settled her claims on behalf of the Orly Trust, pursuant to a settlement agreement (the "Settlement Agreement") whereby she, Arie, and two of their creditors (Arnold and David Broser) would receive $32.3 million in cash from the Trump Parties (all of

---

[1] Among other things, the Sagi Trust pointed out that, in Count I of her Complaint, Orly was actually seeking "to give away TRI shares to Arie, rather than try to procure them for the Orly Trust."  (NYSCEF Doc. No. 180 at 2; *see also* Doc. Nos. 181, 181-1-13.)

the parties to the Settlement Agreement, collectively, the "Settling Parties") in exchange for extinguishing the Orly Trust's claims to the TRI shares.

13.    The Sagi Trust immediately sought the production of the Settlement Agreement, but Orly refused to produce it, *claiming confidentiality*. When I proposed that the document be produced under "Attorney's Eye's Only" limitation, such that only I, but not my client, could review it, Orly's counsel refused. Apparently, the Settlement Agreement was so secret that even I, as an officer of the Court, could not be trusted to lay eyes upon its contents. Instead, Orly submitted the Settlement Agreement, unsolicited, for *in camera* inspection.

14.    Having recently had the opportunity to review the Settlement Agreement, when it was produced in federal court, it is now apparent why Orly was so adamant about not producing it. While there is nothing whatsoever that is confidential about the document – *no social security numbers, no bank account numbers, etc.* – it does reveal that Orly made out like a bandit by compromising the Orly Trust's rights. (*See* Exhibit B annexed hereto.)[2]

15.    According to its signatories, the purpose of the Settlement Agreement was "to resolve all issues, disputes and disagreements between [Orly and the other Settling Parties], including but not limited to the issue of ownership of all [TRI] shares. (Exh. B at 2.) Consistent with this purpose, Orly signed the Agreement both "in her individual capacity and in her capacity as beneficiary of the Orly Genger 1993 Trust" (*id.* at 1, emphasis added) – the latter being the very capacity by which this Court permitted Orly to assert derivative claims.

16.    In Section 6(a) of the Settlement Agreement, Orly expressly agreed to release her

---

[2] The Settlement Agreement was produced without a confidentiality agreement in the federal court case, but Orly has nonetheless designated it as "Confidential" in this case. While we see no conceivable basis for this designation, in an abundance of caution, we are filing Exhibit B under seal.

claims against the Trump Parties "in all capacities" (*i.e.*, including her derivative capacity). (Exh. B at 10.)  In Section 8(a), in turn, Orly agreed to cooperate with the Trump Parties *against* the Orly Trust by, *inter alia*, "caus[ing] the Orly Genger 1993 Trust to release any and all claims against the Trump Group Released Parties …."  (*Id.* at 16.)

17.     In exchange for the extinguishment of the Orly Trust's claim to the TRI shares, the Trump Parties agreed, in Sections 2 and 3, to pay Orly, Arie and the Brosers $32.3 million. (Exh. B. at 2-3.)  Orly, in turn, agreed to indemnify the Trump Parties for TPR's and the Sagi Trust's claims, and "covenants that for so long as the indemnity … remains in effect, … she … shall not contribute or deposit any amounts, or permit to be contributed or deposited any amounts (including, without limitation, any payments made under Paragraphs 2 and 3), to or with the Orly [] Trust …."  (*Id.* at 17.)  In other words, the Trust gets nothing.

18.     In order to make sure that the Orly Trust does not interfere with her diversion of $32.3 million in Trust assets to herself and her father and their creditors, Orly is currently seeking to replace Dalia as Trustee of the Orly Trust with her own personal accountant, Joel Isaacson.  (*See* Exhibit C annexed hereto.)  Under Section 8(b) of the Settlement Agreement, Orly agreed that, "as a condition to any agreement by the AG Group to a replacement trustee for the Orly Genger 1993 Trust, [Orly *et al.*] shall use [their] best efforts to cause such trustee to agree in writing on behalf of the Orly Genger 1993 Trust that it shall be a member of the AG Group for purposes of providing the indemnity contained in Paragraph 5."

19.     In other words, although the Orly Trust is contractually barred from receiving even one red cent of the $32.3 million in settlement payments received in consideration for the extinguishment of the Trust's claims against the Trump Parties, Orly agreed to cause the new trustee she wishes to install in place of Dalia (*i.e.*, Mr. Isaacson) to cause the Orly Trust to indemnify the Trump Parties for potentially significant liabilities.

**Orly Submits A Stipulation of Discontinuance With Prejudice,**
**Extinguishing Her Derivative Claims Brought On Behalf Of The Trust**

20.     The Sagi Trust first learned of the *existence* of the Settlement Agreement (but not,

for another seventeen months, of its *contents*) on June 18, 2013, when Orly and the other Settling

Parties jointly filed a proposed Stipulation of Discontinuance with Prejudice. (NYSCEF Doc.

Nos. 465-66.)  On that date, counsel for Arie <u>accurately</u> disclosed that:

> … Plaintiffs/Counterclaim Defendants Arie Genger and Orly Genger, in <u>her
> individual capacity and on behalf of the Orly Genger 1993 Trust</u>; Third-Party
> Defendants    …;   and   Defendants/Counterclaimants/Third-Party   Plaintiffs
> Glenclova Investment Co., TR Investors, LLC, New TR Equity I, LLC, New TR
> Equity II, LLC, Jules Trump, Eddie Trump, Mark Hirsch, and [TRI] have entered
> into a confidential settlement agreement to resolve all issues among the
> stipulating parties.

(NYSCEF Doc. No. 465, emphasis added.)

21.     Later that day, the Sagi Trust filed Objections to the proposed Stipulation of

Discontinuance with Prejudice.  Among its Objections was the following:

> … <u>[T]he claims which Orly Genger proposes to discontinue are not in fact
> hers to settle – they are derivative claims which belong to the Orly Trust</u>. While
> the Court granted Orly standing to pursue such claims on behalf of the Trust, any
> settlement of such claims would require the approval of either the principal (the
> Orly Trust) or the Court, in a process by which the other beneficiary of the Trust
> (the Sagi Trust) could object.  <u>Further, any benefit from such settlement would
> have to be paid to the principal (the Orly Trust) – not to the beneficiary
> personally, and certainly not to her father, Arie Genger</u>.

(NYSCEF Doc. No. 467 at 3, emphases added.)

22.     A week before all this occurred, on June 12, 2013, the Appellate Division had

issued an Order granting an interim stay of the parallel 2009 action (the "Stay Order").  My

office notified Chambers of the Stay Order (*see* Exhibit D annexed hereto), and Ms. Paszkowska

acknowledged receipt thereof.  (*See* Exhibit E annexed hereto.)  Upon receipt of Chambers'

acknowledgement of the Stay Order, I had understood that the June 26, 2013 motion hearing that

had been set in the 2009 action would be stayed.  I was mistaken.

23.     Despite the Stay Order, counsel for Orly appeared for the motion call that day, as did counsel for Arie and the Trump Parties, *who are not even parties to that case*.  The Settling Parties' counsel then proceeded to take advantage of this opportunity to submit a Second Amended Stipulation and Order of Discontinuance with Prejudice, and to lobby on behalf of its enactment.  When we learned that the motion hearing would be going forward despite the Stay Order, my colleague Mr. Schretzman raced down to the Courthouse, but he missed the hearing.  Much later, we obtained a transcript of the hearing, which shows that the Court entertained extensive *ex parte* arguments *from counsel in another case*, at a hearing held *in contravention of the Stay Order*.  (*See* Exhibit F annexed hereto.)

24.     At the outset of the June 26, 2013 hearing, the Court acknowledged that the Appellate Division had stayed the case (Exh. E at 3:10-11), but then proceeded with the hearing anyway.  For the balance of the day, I learned of the Court's rulings via emails from opposing counsel.  First, at 4:10 PM that day, Ms. Wachtler advised me as follows:

> As you know, we have filed a Second Amended Stipulation to be "So Ordered".  <u>Justice Jaffe indicated that if you have objections to the stipulation which your associate took with him from the Courthouse this morning that you make them before the end of the day.  If you intend to do so, I suggest you do it before the end of the day. I believe the Courts close at 4:30</u>[.]

(*See* Exhibit G annexed hereto, emphasis added.)

25.     In other words, opposing counsel was informing us that the Sagi Trust had twenty minutes to prepare objections and then run them down to the Courthouse for filing.  At 5:47 PM, as we were in the process of drafting new objections, we were further informed by one of Orly's counsel, Mr. Wachtel, of yet another of the Court's rulings:

> The court specifically directed that any motion you make in respect of the Stipulation of Discontinuance should be brought by Order to Show Cause.  Guide yourself accordingly.

(*See* Exhibit H annexed hereto.)

26.     Obviously, since the Courthouse was closed, we could not submit an Order to Show Cause that day, but later that evening, the Sagi Trust did file on the electronic docket a motion asking the Court: (a) to decline to "So Order" the Second Amended Stipulation of Discontinuance with Prejudice, and (b) to enjoin and restrain Orly from "accepting consideration from, or in any other way seeking to enjoy the benefits of, any settlement agreement pending the Court's approval" of the settlement.  (NYSCEF Doc. Nos. 467-72, 486.)

27.     Rather than set the Sagi Trust's motion down for full briefing, the Court directed the parties to appear in a telephone conference the following day, June 27, 2014.  I requested that the Court place the conference on the record, but the Court declined my request.  In this off-the-record telephone conference, I advised the Court that New York law required Court approval of the Settlement Agreement, because it involved derivative claims, and that the Sagi Trust could not properly formulate all of its objections to the Agreement until a copy was produced to the Sagi Trust and, as importantly, to the Trustee of the Orly Trust.  I asked the Court to direct that it be produced.  The Court advised me that I would need to bring a formal motion to compel production of the document, but in the meantime the Court would proceed to consider the Second Amended Stipulation of Discontinuance with Prejudice.

28.     As noted above, no transcript was taken of the June 27, 2014 telephonic Court conference.  However, in a later sworn statement, Mr. Griver, Orly's counsel, described the call as follows:  "During this conference, TPR/Sagi counsel claimed that the Court should not sign the stipulation of discontinuance because the confidential Settlement Agreement might affect his clients' claims and Orly Trust claims.  In response, I and counsel for plaintiff Arie Genger … confirmed the confidential Settlement Agreement has no effect on remaining defendants or the Orly Trust."  (NYSCEF Doc. No. 539 at 2, emphasis added.)

29.     That is indeed what was said at the conference.  As we now know, Orly and her

counsel were not truthful about the contents of the Settlement Agreement, which directly affects, concerns, and addresses both the Orly Trust and the Sagi Trust in myriad ways. As noted above, it dismisses Orly's derivative claims brought on behalf of the Orly Trust, and commits the next Trustee to have the Trust indemnify the Trump Parties for the Sagi Trust's claims.

30.    Nevertheless, the Court adopted Orly's characterization of the Settlement Agreement, twice ruling it "irrelevant." (NYSCEF Doc. Nos. 700 at 7, 1134.)

31.    Unlike Orly, the Trump Parties spoke honestly to the Court about the scope of the Settlement Agreement. They repeatedly and forthrightly made clear to the Court that Orly had released her claims against them in all capacities, including her derivative capacity as a beneficiary suing on behalf of the Orly Trust. After counsel to Arie submitted another revised Stipulation of Discontinuance which would have expressly carved out derivative claims from the scope of the dismissal (NYSCEF Doc. No. 484), counsel to the Trump Parties, Mr. Allingham, refused to consent. Writing "on behalf of the parties to the settlement agreement that was submitted *in camera* to Your Honor yesterday," he advised the Court that:

> A material term of the [Settlement Agreement] was the dismissal of ***all*** the claims presently pending against one another, in whatever capacity they were brought. … Excluding such claims from the claims that are to be dismissed is not what the Trump Group bargained and paid for in the settlement, and as a consequence we cannot stipulate to entry of an order that includes such carve-out language.

(NYSCEF Doc. No. 485, emphasis in original.) Tellingly, none of the other Settling Parties responded to this letter by claiming that Mr. Allingham did not in fact speak for all Settling Parties, or that Mr. Allingham had mischaracterized the Settlement Agreement. As we now know, Mr. Allingham's description of its scope was entirely accurate.

32.    On July 1, 2013, the Court so-ordered the Second Amended Stipulation of Discontinuance with Prejudice, with only one immaterial revision from the prior version – the words "on behalf of" the Orly Trust were changed to "as a beneficiary of" the Orly Trust.

(NYSCEF Doc. No. 877 at 1.)  This obviously changed nothing, as the two terms are one and the same.  As set forth in paragraph 2 of her Third Amended and Supplemental Complaint, Orly brought this action "on behalf of the Orly Trust as the beneficiary of the Orly Trust to protect her interests thereunder."  (NYSCEF Doc. No. 112, emphases added.)

33.    Nevertheless, the Court signed the Second Amended Stipulation of Discontinuance with Prejudice, without briefing, without a Court hearing on the merits of the underlying settlement, and without allowing the Trustee of the Orly Trust, or the Trust's Contingent Remainderman Beneficiary (the Sagi Trust), to review the Settlement Agreement. The Court deferred, however, on the Sagi Trust's motion to enjoin release of the settlement proceeds.  That ruling only came much later, and is discussed below.

### The Settling Parties Hand-Alter the Settlement Agreement To Change How They Will Testify About It, But Not What It Actually Does

34.    At some point while all this was going on – it is unclear exactly when – the Settling Parties undertook efforts to cover their tracks by hand-altered the Settlement Agreement in such a manner as to conceal from the Sagi Trust the scope of the parties' settlement.  The handwritten markings bear the initials "MH", whom we presume to be the Trump Parties' General Counsel, Mark Hirsch.  (When we tried to depose Mr. Hirsch on the Settlement Agreement, he was directed not to answer, an instruction which this Court sustained.  *See Orly Genger v. Dalia Genger et al.,* Index No. 109749/2009, NYSCEF Doc. No. 698.)

35.    Specifically, in Section 4 of the Settlement Agreement (Exh. B at 6), the parties made the following handwritten alterations to the document:

Any member of the AG Group including, without

limitation, Orly Genger, who is called to testify in the Litigation or the Orly Trust Action, agrees

to testify that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as

beneficiary of the Orly Genger 1993 Trust) or it has waived all claims he, she (in her individual

capacity, ~~on behalf of the Orly Genger 1993 Trust,~~ and as beneficiary of the Orly Genger 1993

Trust) or it had or may have to ownership (record, beneficial or otherwise) of any shares of

Trans-Resources and that he, she (in her individual capacity, ~~on behalf of the Orly Genger 1993~~

~~Trust,~~ and as beneficiary of the Orly Genger 1993 Trust) or it is opposed to the Orly Genger

1993 Trust seeking any remedy of any kind against any member of the Trump Group.

36.     The Court should take careful note of what the cross-outs do, *and what they do
not do*.  The changes do not limit the scope of Orly's release of her claims against the Trump

Parties – it remains "in all capacities."  The changes only limit how Orly *can testify* about those

commitments, by requiring her to take the stand and falsely deny that she settled her claims "on

behalf of the Orly Genger 1993 Trust," when she clearly did.

### Orly Continues To Mislead About The Settlement Agreement

37.     Consistent with the foregoing secret agreement, on February 14, 2014, Orly made

a submission in this case in which she alleged as follows:

> Orly's right to bring claims on behalf of the Orly Trust has long been, and
> remains, law of the case. Moreover, it is already of record that the confidential
> settlement agreement only dismisses Orly's individual claims against the Trump
> Group, but does not resolve or dismiss any claims of the Orly Trust against the
> Trump Group …. That Orly no longer represents the Orly Trust as to the Trump
> Group (while allowing Dalia Genger to pick up the cudgel if she so chooses)
> ensures there is no conflict of interest here.

(NYSCEF Doc. No. 775 at 2, emphasis added.)

38.     Having finally seen the Settlement Agreement, it is eminently clear that there is

no "cudgel" for Dalia to pick up.  The claims were released, as Mr. Allingham had correctly told

-12-

the Court in his June 2013 letter submitted on behalf of all the Settling Parties.  Nevertheless, on

May 13, 2014, the Court denied the Sagi Trust's motion to enjoin release of the settlement

proceeds, albeit without prejudice, noting that:

> [T]o the extent that there remain issues of fact and law as to which claims
> filed by Orly against the Trump Group belong to Orly individually and/or are
> derivative claims belonging to the Orly Trust, I invite the parties to the settlement
> agreement to set forth the claims given up by Orly in her individual and beneficial
> capacities, and to explain why any derivative claims advanced in the complaint
> are not released by the agreement.  Unless and until the issue of derivative claims
> is resolved, I cannot determine whether some or all of the settlement proceeds
> with the Trump Group belong to Orly or the Orly Trust, particularly when the
> Sagi Trust has asserted a contingent remainderman interest in the Orly Trust.

(NYSCEF Doc. No. 925 at 4, emphasis added.)

39.    More than half a year later, none of the Settling Parties has yet accepted the

Court's invitation.  The reason is obvious.  Any explanation would involve an admission that

Orly and Arie repeatedly misled the Court, while the Trump Parties sat silently by allowing them

to do so, Rule of Professional Conduct 3.3(b) notwithstanding.

### The Court Enters An Order Dismissing With Prejudice
### Orly's Derivative Claims Brought On Behalf Of The Trust

40.    When it became painfully clear that the Settling Parties would be ignoring the

Court's invitation "to explain why any derivative claims advanced in the complaint are not

released by the agreement," Dalia proceeded to "pick up the cudgel" on behalf of the Orly Trust,

or at least tried to do so.  On August 11, 2014, Dalia brought the instant motion before this

Court, whereby she sought an order "substituting [herself] as plaintiff on Orly Genger's

[derivative] Trump Group claims and … pursuant to CPLR 2701 directing that the Trump Group

settlement fund be paid into Court."  (NYSCEF Doc. Nos. 1099-1108.)

41.    Given their prior statements to the Court, the Settling Parties should have all

stipulated to Dalia's act of cudgel-picking.  Instead, they all noted their intention to *oppose* the

motion, and sought additional time to do so.  When Dalia opposed a second extension of the return date on her motion, counsel for Arie went directly to the Court with a letter request, which the Court so-ordered the next day.  (NYSCEF Doc. Nos. 1141-42.)

42.    At the same time that Dalia was trying, unsuccessfully, to get the Court to hear the instant motion, on October 31, 2014, Arie submitted his own motion, by letter request, seeking a Dismissal Order providing, *inter alia*, that: "Plaintiffs' Third Amended and Supplemental Complaint is dismissed in its entirety with prejudice, including all claims and causes of action stated therein …."  (NYSCEF Doc. No. 1148.)

43.    Given the cudgel Dalia was at that very moment trying to pick up, this was a curious motion, as it would have the effect of forever burying that cudgel.  Indeed, Dalia noted that fact in a letter to the Court the next day, and asked the Court to note on any Dismissal Order that Dalia's motion "remains pending and unaffected".  (NYSCEF Doc. No. 1148.)

44.    On November 25, 2014, the Court entered Arie's proposed Dismissal Order, <u>without</u> Dalia's qualifying language.  (NYSCEF Doc. No. 1153.)  In other words, to the extent there remained a sliver of a doubt that the Settlement Agreement resulted in the dismissal of the derivative claims Orly had brought on behalf of the Orly Trust, that sliver is now gone.  The only question that remains before this Court is what to do with the $32.3 million in proceeds paid in settlement of the Orly Trust's claims.  We address that issue below.  But first, we address the threshold issue of the Sagi Trust's standing to raise this objection.

### The Sagi Trust, As Contingent Remainderman Beneficiary, Has Standing To Seek Recovery of Misappropriated Trust Funds

45.    At an October 9, 2013 hearing before this Court, counsel for Orly challenged the Sagi Trust's standing to be heard on Orly's diversion of Trust assets: "[T]he Sagi Genger Trust, and I've looked through their papers and I see a number of times they create this mystical word

called 'remainderman beneficiary.' Now, the reason I suggest it's mystical is because it doesn't exist anywhere in law." (NYSCEF Doc. No. 651 at 13.) In its March 20, 2014 Decision and Order, this Court – citing to counsel's argument – held that the Sagi Trust "must establish their standing to pursue such relief, which they have failed to do. Hence, the requested relief is denied without prejudice." (NYSCEF Doc. No. 925 at 5.)[3]

46.    The Orly Trust is an irrevocable trust. Under the Trust Agreement (*see* Exhibit I annexed hereto), the Sagi Trust is a contingent remainder beneficiary of the Orly Trust. Under Paragraph 1 of Subsection C of Section FIRST, at Orly's death the principal of the Orly Trust shall pass to Orly's children. If, however, Orly ultimately has no children (she is 36 and currently childless), then under Paragraph 3 of Subsection C of Section FIRST, the principal of the Orly Trust passes in trust to the grantor's five grandchildren, who are beneficiaries of the Sagi Trust. This makes the Sagi Trust a contingent remainder beneficiary.

47.    Under black letter New York law, parties with a contingent remainder interest in an irrevocable trust have a clearly identifiable interest in both the income and the corpus of that trust and therefore have standing to interpose objections on matters impacting the trust's principal. *See, e.g., Matter of Malasky*, 290 A.D.2d 631, 632 (3d Dep't 2002). Such parties continue to have such standing so long as there is any possibility that their interest might ultimately vest. *See Matter of Drago*, 2012 N.Y. Misc. Lexis 5171, at *6 (Surr. Ct. Bronx Cnty. 2012) ("parties with a contingent remainder interest, such as the objectant, may not be precluded from interposing objections that relate to the trust principal where there is a possibility that their

---

[3] As Dalia seeks, by way of her motion, relief which is comparable to the result sought by the Sagi Trust in its June 2013 injunction motion, for purposes of judicial economy the Sagi Trust joins in Dalia's motion rather than re-file its prior motion.

interest ultimately might vest"); *In re Crane*, 34 N.Y.S.2d 9, 11 (Sup. Ct. N.Y. Cnty. 1942) ("the remaindermen are interested parties, who had a legal standing to file objections at the time of the commencement of the proceeding"), *aff'd*, 266 A.D. 726 (1943); *In re Estate of Hunt*, 38 Misc. 30, 35 (Surr. Ct. Rensselaer Cnty. 1902) (holding that the petitioners "have vested rights as remaindermen" and thus were interested parties in the estate), *aff'd*, 179 N.Y. 570 (1904); *Matter of Prior v. Bd. of Trustees of City of NY Fire Dept. Pension Fund*, 800 N.Y.S.2d 355 (Sup. Ct. Kings Cnty. 2004), *decision reached on appeal,* 923 N.Y.S.2d 590 (2d Dep't 2011) (holding that contingent beneficiaries have standing to pursue relief).

48.     As of today, the Sagi Trust has a contingent remainder interest in the Orly Trust. Accordingly, it has standing to be heard.

49.     Indeed, the Surrogate's Court has itself recently opined on the Sagi Trust's status, shedding some light on the supposedly "mystical" concept of a contingent remainder beneficiary. In the case of *Estate of Arie Genger, Grantor* (08/0017/B), Surrogate Anderson declined to even consider Orly's (fourth!) petition to remove her mother as Trustee because "Orly failed to join the Sagi Trust as contingent remainder beneficiary and to serve it with the third amended petition."   According to the Surrogate's Court, the Sagi Trust had a right to be heard on the appointment of a successor Trustee.   (*See* Exhibit J annexed hereto.)   Here, as well, the Sagi Trust has a right to be heard on the diversion of Trust assets.

### The Settlement Proceeds Should Be Deposited With The Court

50.     As Orly herself argued, successfully, in the *Orly Genger v. Dalia Genger et al.,* Index No. 109749/2009, NYSCEF Doc. No. 221 at 19: "N.Y. Partnership Law 115-a(4) expressly requires the Court approve the settlement of any action involving derivative claims, and tasks the Court with determining whether the settlement 'is the result of good faith negotiation at arms length, or of collusion, chicanery or fraud.' *Rodgers v. Sound of Music Co.*,

74 Misc. 2d 699, 703-04 (Sup. Ct. N.Y. Cnty. 1972); *212 Inv. Corp. v. Kaplan*, 2008 WL

2388696, at *4 (Sup. Ct. N.Y. Cnty. May 27, 2008) (same)."

51.    Here, Orly brought claims expressly "on behalf of the Orly Trust as the

beneficiary of the Orly Trust" (NYSCEF Doc. No. 112 at 1), but settled those claims and did not

turn over the proceeds to the Trust.  That is *per se* unlawful.  In *Steinberg v. Steinberg*, 106 Misc.

2d 720, 722 (Sup. Ct. N.Y. Cnty. 1980), for example, the derivative plaintiff *merely offered* to

discontinue her derivative claims "on the condition that she be paid a premium of approximately

one million dollars above market value for her outstanding shares."  Even that mere offer was

too much for the Court, which flatly condemned such conduct, explaining that it "evinces a

possibility, and indeed, a likelihood, that the instant action would be discontinued with prejudice

before its conclusion" as well as "a strong financial inducement for her to settle on terms

advantageous to her as an individual, rather than as a fiduciary…." *Id.*

52.    Here, Orly did not merely *offer* to cash in on the Orly Trust's claims; she actually

*cashed in*.  As the United States District Court recently found, after reviewing the very same

Settlement Agreement in the parallel case of *Sagi Genger v. Orly Genger,* 14-cv-5683 (KBF):

"Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million …."  (*See*

Exhibit K annexed hereto.)  That finding is binding in this proceeding, and cannot be re-litigated.

*See Mutual Fire, Marine & Inland Ins. Co. v. Fred S. James & Co.,* 92 A.D.2d 203, 207 (1st

Dep't 1983) (citations omitted) (holding that the principle of collateral estoppel "is grounded on

the premise that once a person has been afforded a full and fair opportunity to litigate a particular

issue, that person may not be permitted to do so again").

53.    It is precisely because of conduct like Orly's that courts have long held that,

where a "[p]laintiff is a member of two groups with distinct and conflicting relevant interests, in

that her [personal] economic interest … outweighs her interests in recovering derivatively, on

behalf of the company. ... [P]laintiff has an impermissible conflict of interest." *Priestley v. Comrie*, 2007 U.S. Dist. Lexis 87386, at *20 (S.D.N.Y. Nov. 27, 2007).

54.    Here, the Court cannot undo the original trust it placed in Orly as a fiduciary who, as it turns out, was simultaneously advancing direct claims as well.  What it can do, however, is help Dalia recover the misappropriated Trust assets.  In the first instance, that should include *all* $18.3 million in cash already paid out by the Trump Parties under Section 2 of the Settlement Agreement, regardless of who is currently holding those funds.

55.    It is the Sagi Trust's position that all or almost all of the settlement proceeds belong to the Orly Trust.  While co-plaintiff Arie might arguably have a claim to a share of those proceeds, that share would necessarily be *de minimis*.   At the time Arie settled his claims against the Trump Parties, he was facing a contempt citation from Chancellor Strine if he did not immediately withdraw his claims.  *See T.R. Investors, LLC v. Genger,* 2012 Del. Ch. Lexis 261, at *14 (Del. Ch. Nov. 9, 2012) (issuing an order for Arie to show cause why he should not be held in contempt of court for circumventing the Delaware Court's ruling on the ownership of the TRI shares by litigating in New York).  Accordingly, the settlement value of his claims, versus that of the Orly Trust's claims, would be miniscule at best.

56.    Lastly, the Brosers never had any claim against the Trump Parties at all, but rather, upon information and belief, are simply the two principals of a hedge fund which finances Arie's and Orly's various lawsuits.  According to a March 21, 2013 affidavit by Eddie Trump, "the Brosers have arranged for or provided approximately $20 million to finance Arie Genger's and Orly Genger's litigation expenses ... [and accordingly] the Brosers held full settlement authority for the Gengers."  (NYSCEF Doc. No. 413.)

57.    The first step is for the Court to recover the misappropriated funds.  Once that is done, the Court can then hold an evidentiary hearing as to the proper allocation.

## Conclusion

58.    The Sagi Trust beseeches the Court to exercise judicial oversight and help Dalia recover the Orly Trust's assets, so that she can preserve a portion of them for her daughter's children, should Orly choose to have any, and otherwise for the five existing grandchildren of the Trust grantor.  In no event, however, should the $32.3 million go to cover the losses of the hedge fund that financed this horrible, intra-family series of litigations – which, upon information and belief, holds most of the diverted Trust assets.  (NYSCEF Doc. No. 411.)

Executed on February 13, 2015
in New York, New York                    By: _____

                                                        JOHN DELLAPORTAS