# EXHIBIT 46



**From:** William Wachtel Wachte @wm p.com
**Subject:** 6-30-13 B ngo!
**Date:** June 30, 2013 at 3:40 PM
**To:** Ar e Genger ar e@ar egengerho dngs.com
**Cc:** dav d brosser dav dbros@ao .com, E ot S verman es verman@wm p.com

[REDACTED]

William Wachtel, Esq.
Wachtel Masyr & Missry LLP
885 second ave. New York, NY 10017
P ( 212 ) 909 9595
C ( 917 ) 658 9595

On Jun 30, 2013, at 10:28 PM, "Arie Genger" <arie@ariegengerholdings.com> wrote:

> [REDACTED]
>
> On Jun 30, 2013, at 3:00 PM, "William Wachtel" <Wachtel@wmllp.com> wrote:
>
>> [REDACTED]
>>
>> William Wachtel, Esq.
>> Wachtel Masyr & Missry LLP
>> 885 second ave. New York, NY 10017
>> P ( 212 ) 909 9595
>> C ( 917 ) 658 9595
>>
>> Begin forwarded message:
>>
>> From: Mark Hirsch <mhirsch@trumpgroup.com<mailto:mhirsch@trumpgroup.com>>
>> Date: June 30, 2013, 9:31:53 PM GMT+03:00
>> To: "William Wachtel (Wachtel@wmllp.com<mailto:Wachtel@wmllp.com>)" <Wachtel@wmllp.com<mailto:Wachtel@wmllp.com>>
>> Subject: FW: Trump Group/Sagi Genger/TPR
>>
>> Bill,
>>
>> This has gone out.  More to come.
>>
>> Mark
>>
>> From: Allingham II, Thomas J [mailto:Thomas.Allingham@skadden.com]
>> Sent: Sunday, June 30, 2013 2:28 PM
>> To: 'Dellaportas, John' (jdellaportas@morganlewis.com<mailto:jdellaportas@morganlewis.com>)
>> Cc: Mark Hirsch
>> Subject: Trump Group/Sagi Genger/TPR
>>
>> John,
>>
>> During the course of both our conference call with Justice Jaffe on Thursday afternoon and my call

with you on Friday, you left me with the impression that Sagi and the Sagi Trust intend to seek some sort of a judicial review of the Trumps' settlement with Orly, and that you may well question the fairness of that settlement as it affects claims that the Orly Trust purportedly has relating to the so called "Orly Trust Shares." Similarly, in papers you filed with Justice Jaffe on Wednesday, you object to our settlement because, as stated in paragraph 4 of Nicholas Schretzman's affidavit, it "purports to dismiss claims brought on behalf of the [Orly] Trust, and give away its claim to title to the Trust's central asset – its claim to 1,102.80 shares of Trans-Resources, Inc. (the "TRI Shares") – without any consideration to the Orly Trust." Mr. Schretzman goes on to make clear in paragraph 5 that his objection is being registered on behalf of the Sagi Trust, as the Orly Trust's remainderman beneficiary. Again in paragraph 14, Mr. Schretzman refers to the so called "Orly Trust Shares" as the Orly Trust's "central asset." You made similar comments in the call with Justice Jaffe.

Please believe me that my clients fervently hope that Sagi and his family find a peaceful resolution to their differences. But as we have maintained throughout this lengthy battle, the fight between Sagi and his family is not our fight, and we take no position in that dispute. Notwithstanding our strict neutrality in a war that is not our war, however, you and Sagi cannot expect us to sit by while you interfere with and attempt to disrupt the Settlement Agreement we have reached with Arie and Orly on grounds that are diametrically opposed to positions that Sagi has taken in court and the contractual obligations of TPR, Sagi and the Sagi Trust.

Sagi, as President of TPR, negotiated the terms of the sale of the so called "Orly Trust Shares" and then signed the agreement and later the stock powers transferring those shares to our clients. He repeatedly acknowledged on the record that the consideration received for those shares was fair and reasonable. On August 27, 2008, almost a week after Sagi on behalf of TPR agreed to sell the Orly Trust Shares, he represented in writing that "TPR and Sagi Genger have concluded that the Purchase Price for the Common Stock provided in the Purchase Agreement, and all other terms and conditions specified in the Agreements [which, as defined in that letter, included the so called 'Letter Agreement' by which the Orly Trust Shares were to be sold], were fair, reasonable and acceptable to each of Seller, TPR and Sagi Genger."

In addition, please remind your client that, when Sagi came to us complaining that the $1.5 million of sale proceeds we had agreed would be free of the escrow was now being tied up by the courts, on October 3, 2011 we agreed to make a loan to TPR, which loan has since been extended. Section 2.08 of the Loan Agreement relates to the Letter Agreement by which the Orly Trust Shares were to be sold. In Section 2.08 the parties acknowledge that the purchase of those shares "have been consummated in accordance with the Letter Agreement" and that "the closing of such transactions occurred on February 2, 2011 and are binding and effective against Borrower and Lenders." Sagi should also be reminded that both he and Dalia (on behalf of the Orly Trust, through its counsel Bob Meister) strongly urged my clients to consummate the purchase of the Orly Trust Shares in February 2011. My clients had little reason to do so as they were content to wait out judicial determinations rather than commit to the purchase at a time when questions concerning the future of the business remained unanswered and they had an open date option to complete the purchase.

All of these representations, statements and actions are fundamentally inconsistent with the proposition that the Orly Trust had or has any "claim to 1,102.80 shares of Trans-Resources, Inc.", or that such shares can in any manner be considered the Trust's "central asset." Your arguments before Justice Jaffe in opposition to our settlement with Arie and Orly are in direct violation of contractual commitments of TPR, the Sagi Trust and Sagi, and are contrary to Sagi's repeated representations to our client and the courts regarding the effective and appropriate disposition of the Orly Trust Shares on fair, reasonable and acceptable terms. Section 7.09 of the Loan Agreement contains an indemnification from Sagi personally, whereby he agrees to indemnify the Lender and its Affiliates (very broadly defined) for any costs and losses by reason of or resulting from the taking of any action "at the direction of, or directly or indirectly consented to by, Sagi Genger or The Sagi Genger Trust, that is contrary to, or inconsistent with any covenant or agreement contained in Sections 2.08 or 2.09 of this Agreement." Section 7.10 of the Loan Agreement contains Sagi's personal guaranty to pay all Damages arising under or in connection with that indemnity.

John, please know that the Trumps harbor no ill will of any kind toward Sagi. They have dealt fairly and honestly with him throughout the five years they have known him. Nothing evidences this more than their willingness to date to not call their loan, even though Sagi and TPR violated one of its fundamental covenants when they assigned rights to the Trump's collateral (the escrowed funds) to the Orly Trust (see Paragraph 5.07). While the Trumps continue to hope that Sagi will find a basis on which to settle his differences with Arie and Orly, we cannot allow our own settlement with Arie and Orly to be held hostage to those differences. If, as you state, your true concern is what happens to the escrowed sale proceeds, I can assure you that Skadden will not release those proceeds other than in accordance with the terms of the Escrow Agreement. Accordingly, I urge you to advise Sagi immediately to stop suggesting, in any forum and in any manner whatsoever, that the Orly Trust has any rights whatsoever to TRI shares, and to withdraw his objections and those of his Trust to our settlement of claims brought against the Trump Group by Arie and Orly in Justice Jaffe's court.

Tom

---------------------------------------------------------------------------
**************************************************

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************
**************************************************

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
================================================================================
======