# EXHIBIT 55

## PART 1 OF 2

| **Fill in this information to identify the case:** | |
|---|---|
| Debtor 1   Orly Genger | |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court    **Western District of Texas** | |
| Case number:  **19−10926** | |

**FILED**

U.S. Bankruptcy Court
**Western District of Texas**

12/6/2019

**Barry . Knight, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to
make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any
documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments,
mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available,
explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:  Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Arie Genger |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Arie Genger<br>Name<br><br>19111 Collins Ave.<br>Apt. 706<br>Sunny Isles, FL 33160<br><br>Contact phone _____917−325−3555_____<br>Contact email<br>___ARIE@ARIEGENGERHOLDINGS.COM___<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br><br><br>Contact phone _____<br>Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

Official Form 410                                    Proof of Claim                                    page 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 5451389.27     **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money Loaned |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☑ Other. Describe:   See Exhibits D and E to Attachment One.<br><br>**Basis for perfection:**   UCC Financing Statement.<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $<br>**Amount of the claim that is secured:**   $ 5451389.27<br>**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $<br><br>**Annual Interest Rate** (when case was filed)   2.75 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**<br>**18 U.S.C. §§ 152, 157 and 3571.** | Check the appropriate box:<br><br>☑ I am the creditor.<br>☐ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date    12/6/2019

MM / DD / YYYY

/s/  Arie Genger

Signature

Print the name of the person who is completing and signing this claim:

| Name | Arie Genger |
|---|---|
| | First name     Middle name     Last name |
| Title | |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 19111 Collins Avenue, #706 |
| | Number  Street |
| | Sunny Isles Beach, FL 33160 |
| | City  State  ZIP Code |

Contact phone   917−325−3555    Email   ARIEGENGER@ARIEGENGERHOLDINGS.COM

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Brian F. Moore

*Counsel to Arie Genger*

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                          :
In re:                                    :     Chapter 7
                                          :
ORLY GENGER                               :     Case No. 19-10926-tmd
                          Debtor.         :
                                          :
                                          :
                                          :
-------------------------------------------------------------x

## RIDER TO PROOF OF CLAIM

1.      The Proof of Claim does not generally encompass claims or rights that Arie Genger (the "Claimant") may have that arise after the Petition Date and that are entitled to administrative priority, including, without limitation, rights to adequate protection and the payment of fees and expenses that constitute administrative claims, and the Claimant expressly reserves its right to file and assert such claims and rights at the appropriate time. The mention of a claim herein does not constitute a waiver of the right to administrative priority.

2.      The Claimant requests that copies of any and all notices, pleadings, motions, orders to show cause, applications, presentments, petitions, memoranda, affidavits, declarations, orders, disclosure statement(s) and plan(s) of reorganization, or other documents, filed or entered in this case be given and served upon:

Arie Genger
19111 Collins Avenue, Apt. 706
Sunny Isles Beach, FL 33160
arie@ariegengerholdings.com

With a copy to:        TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Attn: Frank A. Oswald, Esq.
       Brian F. Moore, Esq.
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
E-mail: frankoswald@teamtogut.com
       bmoore@teamtogut.com

3. This Proof of Claim shall not be deemed a waiver of the Claimant's rights (i) to have final orders in non-core matters entered only after de novo review by the District Court, (ii) to trial by jury in any proceeding so triable in these cases, or any other case or controversy or proceeding related to these cases, (iii) to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, set-offs or recoupments to which the Claimant is or may be entitled by law, or in equity, all of which rights, claims, actions, defenses, set-offs, and recoupments the Claimant expressly reserves.

4. The Claimant does not waive, and expressly reserves, any right of action that they have or may have against the Debtors or any other person or persons. In filing this Proof of Claim, the Claimant does not submit itself to the jurisdiction of the Court for any purpose other than with respect to the Proof of Claim.

5. The Claimant reserves the right to amend or supplement this Proof of Claim at any time for any purpose, including but not limited to: (i) fixing or

liquidating any claims stated herein;  (ii) specifying and quantifying expenses or other charges or claims incurred by the Claimant;  (iii) asserting any claim for priority;  or (iv) further describing the claim or providing further evidence relating to the claim.

## ATTACHMENT ONE

1.    In 2007, Creditor Arie Genger began advancing funds to or for the benefit of Debtor

Orly Genger for costs incurred in litigation. Such advances were memorialized in annual secured

promissory notes as follows:

| Year | Principal |
|------|-----------|
| 2007 | $67,454.95 |
| 2008 | 301,978.68 |
| 2009 | 552,458.28 |
| 2010 | 372,776.90 |
| 2011 | 354,617.23 |
| 2012 | 596,004.32 |
| 2013 | 1,083,632.44 |
| 2014 | 1,336,555.13 |
| 2015 | 502,988.30 |
| 2016 | 203,858.50 |
| **Principal as of 12/31/16** | **$5,372,324.73** |

2.    On December 31, 2016, Arie Genger and Orly Genger executed the Amended and

Consolidated Secured Promissory Note (the "Secured Consolidated Note"). In doing so, all

promissory notes from 2007 through 2016 were superseded and destroyed. Upon execution, the

principal sum due to Arie Genger under the Secured Consolidated Note was $5,372,324.73.

Interest accrues on the Secured Consolidated Note at an annual rate of 2.75%. A true and correct

copy of the Consolidated Note is attached hereto as **Exhibit A**.

3.    Since the execution of the Secured Consolidated Note, Orly Genger has issued to

Arie Genger two additional promissory notes, promising repayment of additional principal

advances totaling $79,064.54, plus accrued interest at a rate of 2.75% interest per annum, as

described below:

    a.  Secured Promissory Note, dated March 27, 2018, in the amount of $21,005.24. A

        true and correct copy of this note is attached hereto as **Exhibit B**.

b.  Secured Promissory Note, dated April 23, 2018, in the amount of $58,059.30.  A
true and correct copy of this note is attached hereto as **Exhibit C**.

4.  A true and correct copy of Arie's Texas UCC-1 is attached hereto as **Exhibit D**.

5.  A true and correct copy of Arie's New Jersey UCC-1 is attached hereto as
**Exhibit E**.

6.  Orly filed her voluntary petition under chapter 7 of title 11 of the United States
Code (the "Bankruptcy Code") on July 12, 2019 (the "Petition Date").

7.  Arie Genger asserts a secured claim against Orly Genger's estate for no less than
**$5,451,389.27**, plus accrued but unpaid interest and reasonable attorneys' fees to the extent
authorized by law.

8.  Evidence of the underlying advances is voluminous.  Much of this information has
been produced to counsel for Sagi Genger prior to the Petition Date.  Due to the voluminous nature
of such information, the undersigned counsel has not attached such records to this proof of claim,
but will endeavor to make such additional documentation available upon reasonable request.

# EXHIBIT A

## AMENDED AND CONSOLIDATED

## SECURED PROMISSORY NOTE

$5,372,324.73                                                                December 31, 2016

WHEREAS, during 2007 **ARIE GENGER** ("Lender") loaned **ORLY GENGER** ("Borrower") Sixty-Seven Thousand Four Hundred Fifty-Four Dollars and Ninety-Five Cents ($67,454.95) pursuant to a Promissory Note between Lender and Borrower (the "First Note");

WHEREAS, during 2008 Lender loaned Borrower Three Hundred One Thousand Nine Hundred Seventy-Eight Dollars and Sixty-Eight Cents ($301,978.68) pursuant to a Promissory Note between Lender and Borrower (the "Second Note");

WHEREAS, during 2009 Lender loaned Borrower Five Hundred Fifty-Two Thousand Four Hundred Fifty-Eight Dollars and Twenty-Eight Cents ($552,458.28) pursuant to a Promissory Note between Lender and Borrower (the "Third Note");

WHEREAS, during 2010 Lender loaned Borrower Three Hundred Seventy-Two Thousand Seven Hundred Seventy-Six Dollars and Ninety Cents ($372,776.90) pursuant to a Promissory Note between Lender and Borrower (the "Fourth Note");

WHEREAS, during 2011 Lender loaned Borrower Three Hundred Fifty-Four Thousand Six Hundred Seventeen Dollars and Twenty-Three Cents ($354,617.23) pursuant to a Promissory Note between Lender and Borrower (the "Fifth Note");

WHEREAS, during 2012 Lender loaned Borrower Five Hundred Ninety-Six Thousand Four Dollars and Thirty-Two Cents ($596,004.32) pursuant to a Promissory Note between Lender and Borrower (the "Sixth Note");

WHEREAS, during 2013 Lender loaned Borrower One Million Eighty-Three Thousand Six Hundred Thirty-Two Dollars and Forty-Four Cents ($1,083,632.44) pursuant to a Promissory Note between Lender and Borrower (the "Seventh Note");

WHEREAS, during 2014 Lender loaned Borrower One Million Three Hundred Thirty-Six Thousand Five Hundred Fifty-Five Dollars and Thirteen Cents ($1,336,555.13) pursuant to a Promissory Note between Lender and Borrower (the "Eighth Note");

1

WHEREAS, during 2015 the Lender loaned Borrower Five Hundred Two Thousand Nine Hundred Eighty-Eight Dollars and Thirty Cents ($502,988.30) pursuant to a Promissory Note between the Lender and Borrower (the "Ninth Note");

WHEREAS, during 2016 the Lender loaned Borrower Two Hundred Three Thousand Eight Hundred Fifty-Eight Dollars and Fifty Cents ($203,858.50) pursuant to a Promissory Note between the Lender and Borrower (the "Tenth Note"); and

WHEREAS, the parties desire to have this Secured Promissory Note supersede and replace the First Note, Second Note, Third Note, Fourth Note, Fifth Note, Sixth Note, Seventh Note, Eighth Note, Ninth Note and Tenth Note.

FOR VALUE RECEIVED, the undersigned Borrower hereby promises to pay to the order of Lender, or any subsequent holder of this Secured Promissory Note, the principal sum of Five Million Three Hundred Seventy-Two Thousand Three Hundred Twenty-Four Dollars and Seventy-Three Cents ($5,372,324.73) (the "Principal"), plus interest accrued thereon as herein provided.

1.    Interest Rate. Interest shall accrue on the unpaid Principal balance owed on this Secured Promissory Note (the "Note") from time to time at the rate of 2.75% per annum, computed on the basis of a 365-day year counting the actual number of days elapsed. Accrued interest on the Principal amount of this Note which has not otherwise been paid shall be added to the Principal amount of this Note on December 31 of each year. Notwithstanding the foregoing, during the continuance of any uncured Event of Default (hereinafter defined), interest shall accrue on the unpaid Principal balance at the rate of 12% per annum, which interest shall be payable on demand.

2.    Payment; Maturity. This Note shall mature, and all principal and accrued interest thereunder shall be immediately due and payable on (i) May 31, 2020; or (ii) an Event of Default (the earliest to occur of (i) or (ii), the "Maturity Date").

3.    Prepayment. The Borrower may prepay the Principal amount of this Note, either in whole or in part, upon the provision of notice to the Lender. Any such prepayment shall be accompanied by all accrued and unpaid interest on the Principal amount being prepaid.

4.    Subordination. This Note is subordinate in right and time of payment of principal and interest to certain indebtedness of the Borrower to Eric Herschmann in the principal amount of Two Million Dollars ($2,000,000) (the "Senior Indebtedness"). Borrower represents and warrants

2

that as of the date of this Note (i) the outstanding principal amount of the Senior Indebtedness is Two Million Dollars ($2,000,000); and (ii) no default has occurred and is continuing in respect of the Senior Indebtedness. This Note is senior in right and time of payment of principal and interest to any other current indebtedness of Borrower other than the Senior Indebtedness. Until payment in full of all amounts due hereunder, Borrower shall not incur any indebtedness that is either parri passu or senior in right or time of payment to the indebtedness evidenced hereby (other than the current indebtedness under the Senior Indebtedness) and shall not grant any type of security interest in or lien upon the Collateral without the prior written consent of the Lender (other than the security interest in favor of Lender granted pursuant to Section 5 below).

5. Creation and Perfection of Security Interests.

a) As security for any and all Obligations (hereinafter defined), Lender shall be entitled to hold, and Borrower hereby grants to Lender, a continuing lien, upon, security interest in and to, and right of set off on or against all of the following, whether now or hereafter existing or acquired, and wherever located (collectively, the "Collateral"): all personal and real property and fixtures of the Borrower and interests therein, including all accounts, all reserves, instruments, documents, notes, bills and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Lender, bank and other deposit accounts, whether or not reposed with Lender's Affiliates (hereinafter defined), general intangibles (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Borrower's credit or in Lender's possession or in the possession of any of Lender's Affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form. The continuing lien upon, security interest in and to, and right of set off on or against the Collateral shall attach to the foregoing without further action on the Borrower's or Lender's part.

b) "Obligations" shall mean and include all loans, advances, indebtedness, liabilities, debit balances, letter of credit, acceptances, covenants, duties and obligations of whatever kind and nature at any time owing by Borrower to Lender or any of Lender's Affiliates, whether fixed or contingent, due or to become due, matured or unmatured, no matter how or when

3

arising and whether under this Note or otherwise. For the purposes hereof, "Affiliate" shall mean any person, firm or corporation directly or indirectly controlling, controlled by or in common control with Lender or any corporation the stock of which is owned or controlled directly or indirectly by Lender. This Note includes all Obligations of Borrower to Lender and supersedes all previous notes.

c)    Borrower guarantees that the Obligations will be paid strictly in accordance with the terms of the Note, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Borrower with respect thereto.

d)    Borrower irrevocably and unconditionally authorizes Lender (or its agent) to file at any time and from time to time such financing statements in any jurisdiction with respect to the Collateral naming Lender or its designee as the secured party and such Borrower as debtor, as Lender may require, and including any other information with respect to such Borrower or otherwise required by part 5 of Article 9 of the Uniform Commercial Code of such jurisdiction as Lender may determine, together with any amendment and continuations with respect thereto, which authorization shall apply to all financing statements filed on, prior to or after the date hereof. Borrower hereby authorizes Lender to adopt on behalf of such Borrower any symbol required for authenticating any electronic filing. In the event that the description of the Collateral in any financing statement naming Lender or its designee as the secured party and any Borrower as debtor includes assets and properties of such Borrower that do not at any time constitute Collateral, whether hereunder or otherwise, the filing of such financing statement shall nonetheless be deemed authorized by such Borrower to the extent of the Collateral included in such description and it shall not render the financing statement ineffective as to any of the Collateral or otherwise affect the financing statement as it applies to any of the Collateral. In no event shall any Borrower at any time file, or permit or cause to be filed, any correction statement or termination statement with respect to any financing statement (or amendment or continuation with respect thereto) naming Lender or its designee as secured party and such Borrower as debtor.

e)    Borrower shall take any other actions reasonably requested by Lender from time to time to cause the attachment, perfection, and the ability of Lender to enforce, the security interest of Lender in any and all of the Collateral, including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto

4

under the UCC or other applicable law, to the extent, if any, that any Borrower's signature thereon is required therefore, (ii) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Lender to enforce, the security interest of Lender in such Collateral, and (iii) obtaining the consents and approvals of any governmental authority or third party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, and taking all actions required by any law, as applicable in any relevant jurisdiction.

f)   Borrower represents and warrants that: (i) Borrower owns each item of the Collateral upon which she purports to grant a lien hereunder and have rights in or the power to transfer each item of Collateral in which a lien is granted by it hereunder, free and clear of any liens or encumbrances and (ii) this Note is effective to create a valid and continuing lien upon the Collateral. Upon filing of appropriate financing statements, Lender shall have a perfected lien on the Collateral which shall have priority over all other liens.

6.   Default. An "Event of Default" will occur if any of the following occurs:

a)   the Borrower fails to make any payment to Lender when such payment is due hereunder;

b)   the Borrower breaches any representation or warranty contained in, or fail to comply with, any of the terms or covenants of this Note other than a payment obligation (governed under subsection (a) above), and such breach or failure is not cured within 15 days after the Lender has given the Borrower written notice of such breach;

c)   Intentionally left blank;

d)   involuntary proceedings shall have been commenced against either Borrower (i) under federal bankruptcy law or under any applicable federal or state bankruptcy, insolvency, or similar law, which seek the general adjustment of a Borrower's debts, or (ii) seeking the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Borrower or for any material part of Borrower's property, or (iii) seeking an order winding up or liquidating the assets of Borrower, are initiated and continue for a period of 45 days;

e)   (i) a voluntary proceeding shall have been commenced under federal bankruptcy law, or any other applicable federal or state bankruptcy, insolvency, or other similar

5

law, (ii) the consent by Borrower to the appointment of, or taking possession by, a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Borrower or for any material part of Borrower's property, (iii) Borrower making any assignment for the benefit of creditors, (iv) the failure or admission in writing of Borrower generally to pay the its debts as they become due, or (v) the taking of any formal action by Borrower in furtherance of any of the foregoing;

      f)     Intentionally left blank; or

      g)    judgment(s) for the payment of money in excess of $100,000, individually or in the aggregate, shall have been rendered by a court of record against Borrower, and such judgment shall continue unsatisfied and in effect for a period of 30 consecutive days without being vacated, discharged, satisfied or bonded pending appeal.

7.     Remedies on Default, Etc.

      a)    Upon the occurrence of an Event of Default, the entire unpaid Principal amount and accrued and unpaid interest on this Note, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, be forthwith due and payable, and the Lender may, among other things, proceed to protect and enforce its rights hereunder by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein, or for an injunction against a violation of any of the terms hereof or thereof or in the exercise of any power granted hereby or thereby or by law.

      b)    Lender shall have, in addition to all rights and remedies of a secured party under the Uniform Commercial Code or other applicable statute or rule, the following rights and remedies:

      i.     Lender may peaceably by his own means or with judicial assistance enter the Borrower's, or any other premises, and take possession and unencumbered ownership of the Collateral described herein, and remove or dispose of it. Borrower agrees not to resist or interfere with such action.

      ii.    Lender may require the Borrower to assemble or disassemble all or any part of the Collateral described herein and make it available to Lender at any place designated by Lender and reasonably convenient to both Parties.

6

iii.  Borrower agrees that a notice sent to Borrower at least 5 days before the date of any intended public sale or the date after which any private sale or other intended disposition of the assets described herein is to be made, shall be deemed to be reasonable notice of such sale or other disposition. All notice is waived if the assets described herein are perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

iv.  In the event of any such public or other disposition, Borrower will pay to Lender on demand any deficiency remaining after crediting the net proceeds of sale, less all expenses of taking, handling, and sale, including reasonable counsel fee. All rights of redemption are waived. Lender shall account to Borrower for any surplus.

c)  No right conferred upon the Lender hereby shall be exclusive of any other right referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

8.  Intentionally left blank.

9.  Notice. Any and all notices, consents or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or 3 days after the date mailed, postage prepaid, by first class registered or certified mail, return receipt requested or 1 business day after being sent by recognized overnight courier, addressed to the parties at the addresses set forth above (or at such other address as any party may specify by notice to all other parties given as aforesaid). A copy shall also be sent to Lance G. Harris, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 and Michael Bowen, Esq., Kasowitz Benson Torres, 1633 Broadway, New York, NY 10019.

10.  Severability. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect and in no way shall be affected, prejudiced, or disturbed thereby.

7

11.     Transferability. No sale, pledge or transfer of this Note will be accepted or recognized by the Lender without the Lender's prior written consent.

12.     Defenses. The obligations of the Borrower under this Note shall not be subject to reduction, limitation, impairment, termination, defense, set-off, counterclaim or recoupment for any reason.

13.     *Attorneys' and Collection Fees.* Should *the indebtedness evidenced by this Note* or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceedings, or this Note be placed in the hands of attorneys for collection or to defend or enforce any of Lender's rights hereunder, the Borrower agrees to pay, in addition to the Principal amount and accrued interest due and payable hereon, all costs relating thereto, including, without limitation, reasonable attorneys' fees and expenses, incurred by the Lender in collecting such indebtedness or enforcing this Note.

14.     Waiver of Presentment. The Borrower hereby waives presentment, demand for payment, notice of dishonor, notice of protest and all other notices or demands in connection with the delivery, acceptance, performance or default of this Note.

15.     Governing Law; Venue. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Florida, without regard to conflict of law principles that would result in the application of any law other than the law of the State of Florida. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in Brown County, State of Florida, in any action or proceeding arising out of or relating to this Note and agrees that all claims in respect of the action or proceeding shall only be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Note in any other court.

16.     Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE, ANY DOCUMENT DELIVERED UNDER THIS NOTE, THE LOAN EVIDENCED BY THIS NOTE OR THE ACTIONS OF BORROWER AND THE

8

LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

17. Application of Payments. Payments received hereunder by Lender shall be applied first to any accrued and unpaid interest due hereunder; and second, to the Principal amount.

18. Joint and Several Liability. If this Note is now or hereafter shall be signed or endorsed by more than one party or person, it shall be the joint and several obligation of all such parties or persons (including, without limitation, all makers, endorsers, guarantors and sureties), and shall be binding on all parties hereto and their successors and assigns.

19. Subordination Agreement Controls. This Note and the lien on and security interest in the Collateral granted hereunder are subordinated in the manner and to the extent set forth in the Subordination Agreement dated as of December, 31 2016 among the Lender, as Subordinated Creditor and Eric Herschmann, as Senior Creditor, and acknowledged and agreed to by the Borrower (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "Subordination Agreement"). Prior to the payment in full of all Senior Obligations (as defined in the Subordination Agreement), neither Borrower nor Lender shall take, or fail to take, any action to the extent that such action, or failure to take such action, would be prohibited by, or would in any way conflict with, the Subordination Agreement.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

9

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed effective as of the day and year first above written.

BORROWER:

**ORLY GENGER**

# EXHIBIT B

## SECURED PROMISSORY NOTE

$21,005.24                                                                                    March 27, 2018

FOR VALUE RECEIVED, the undersigned, **ORLY GENGER** (the "Borrower") hereby promises to pay to the order of **ARIE GENGER**, or any subsequent holder of this Secured Promissory Note (the "Lender"), the principal sum of Twenty-One Thousand and Five Dollars and Twenty-Four Cents ($21,005.24) (the "Principal"), plus interest accrued thereon as herein provided.

1.      Interest Rate. Interest shall accrue on the unpaid Principal balance owed on this Secured Promissory Note (the "Note") from time to time at the rate of 2.75% per annum, computed on the basis of a 365-day year counting the actual number of days elapsed. Accrued interest on the Principal amount of this Note which has not otherwise been paid shall be added to the Principal amount of this Note on December 31 of each year. Notwithstanding the foregoing, during the continuance of any uncured Event of Default (hereinafter defined), interest shall accrue on the unpaid Principal balance at the rate of 12% per annum, which interest shall be payable on demand.

2.      Payment; Maturity. This Note shall mature, and all principal and accrued interest thereunder shall be immediately due and payable on (i) May 31, 2020; or (ii) an Event of Default (the earliest to occur of (i) or (ii), the "Maturity Date").

3.      Prepayment. The Borrower may prepay the Principal amount of this Note, either in whole or in part, upon the provision of notice to the Lender. Any such prepayment shall be accompanied by all accrued and unpaid interest on the Principal amount being prepaid.

4.      Subordination. This Note is subordinate in right and time of payment of principal and interest to certain indebtedness of the Borrower to Eric Herschmann in the principal amount of Two Million Dollars ($2,000,000) (the "Senior Indebtedness"). Borrower represents and warrants that as of the date of this Note (i) the outstanding principal amount of the Senior Indebtedness is Two Million Dollars ($2,000,000); and (ii) no default has occurred and is continuing in respect of the Senior Indebtedness. This Note is senior in right and time of payment of principal and interest to any other current indebtedness of Borrower other than the Senior Indebtedness and the indebtedness between the parties hereto which is evidenced by a Secured Promissory Note dated

1

December 31, 2016 in the principal amount of $5,372,324.73 (the "Secured Promissory Note #1"). Until payment in full of all amounts due hereunder, Borrower shall not incur any indebtedness that is either parri passu or senior in right or time of payment to the indebtedness evidenced hereby (other than the current indebtedness under the Senior Indebtedness and the Secured Promissory Note #1) and shall not grant any type of security interest in or lien upon the Collateral without the prior written consent of the Lender (other than the security interest in favor of Lender granted under Secured Promissory Note #1 and pursuant to Section 5 below).

5.    Creation and Perfection of Security Interests.

a)    As security for any and all Obligations (hereinafter defined), Lender shall be entitled to hold, and Borrower hereby grants to Lender, a continuing lien upon, security interest in and to, and right of set off on or against all of the following, whether now or hereafter existing or acquired, and wherever located (collectively, the "Collateral"): all personal and real property and fixtures of the Borrower and interests therein, including all accounts, all reserves, instruments, documents, notes, bills and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Lender, bank and other deposit accounts, whether or not reposed with Lender's Affiliates (hereinafter defined), general intangibles (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Borrower's credit or in Lender's possession or in the possession of any of Lender's Affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form. The continuing lien upon, security interest in and to, and right of set off on or against the Collateral shall attach to the foregoing without further action on the Borrower's or Lender's part.

b)    "Obligations" shall mean and include all loans, advances, indebtedness, liabilities, debit balances, letter of credit, acceptances, covenants, duties and obligations of whatever kind and nature at any time owing by Borrower to Lender or any of Lender's Affiliates, whether fixed or contingent, due or to become due, matured or unmatured, no matter how or when arising and whether under this Note or otherwise. For the purposes hereof, "Affiliate" shall mean any person, firm or corporation directly or indirectly controlling, controlled by or in common

2

control with Lender or any corporation the stock of which is owned or controlled directly or indirectly by Lender. This Note includes all Obligations of Borrower to Lender and supersedes all previous notes.

c)    Borrower guarantees that the Obligations will be paid strictly in accordance with the terms of the Note, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Borrower with respect thereto.

d)    Borrower irrevocably and unconditionally authorizes Lender (or its agent) to file at any time and from time to time such financing statements in any jurisdiction with respect to the Collateral naming Lender or its designee as the secured party and such Borrower as debtor, as Lender may require, and including any other information with respect to such Borrower or otherwise required by part 5 of Article 9 of the Uniform Commercial Code of such jurisdiction as Lender may determine, together with any amendment and continuations with respect thereto, which authorization shall apply to all financing statements filed on, prior to or after the date hereof. Borrower hereby authorizes Lender to adopt on behalf of such Borrower any symbol required for authenticating any electronic filing. In the event that the description of the Collateral in any financing statement naming Lender or its designee as the secured party and any Borrower as debtor includes assets and properties of such Borrower that do not at any time constitute Collateral, whether hereunder or otherwise, the filing of such financing statement shall nonetheless be deemed authorized by such Borrower to the extent of the Collateral included in such description and it shall not render the financing statement ineffective as to any of the Collateral or otherwise affect the financing statement as it applies to any of the Collateral. In no event shall any Borrower at any time file, or permit or cause to be filed, any correction statement or termination statement with respect to any financing statement (or amendment or continuation with respect thereto) naming Lender or its designee as secured party and such Borrower as debtor.

e)    Borrower shall take any other actions reasonably requested by Lender from time to time to cause the attachment and perfection, and the ability of Lender to enforce, the security interest of Lender in any and all of the Collateral, including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the UCC or other applicable law, to the extent, if any, that any Borrower's signature thereon is required therefore, (ii) complying with any provision of any statute, regulation or treaty of the

3

United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Lender to enforce, the security interest of Lender in such Collateral, and (iii) obtaining the consents and approvals of any governmental authority or third party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, and taking all actions required by any law, as applicable in any relevant jurisdiction.

f) Borrower represents and warrants that: (i) Borrower owns each item of the Collateral upon which she purports to grant a lien hereunder and have rights in or the power to transfer each item of Collateral in which a lien is granted by it hereunder, free and clear of any liens or encumbrances other than as identified herein and (ii) this Note is effective to create a valid and continuing lien upon the Collateral subject to existing liens as identified herein. Upon filing of appropriate financing statements, Lender shall have a perfected lien on the Collateral which shall have priority over all other liens, except as identified herein.

6. Default. An "Event of Default" will occur if any of the following occurs:

a) the Borrower fails to make any payment to Lender when such payment is due hereunder;

b) the Borrower breaches any representation or warranty contained in, or fail to comply with, any of the terms or covenants of this Note other than a payment obligation (governed under subsection (a) above), and such breach or failure is not cured within 15 days after the Lender has given the Borrower written notice of such breach;

c) Intentionally left blank.

d) involuntary proceedings shall have been commenced against either Borrower (i) under federal bankruptcy law or under any applicable federal or state bankruptcy, insolvency, or similar law, which seek the general adjustment of a Borrower's debts, or (ii) seeking the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Borrower or for any material part of Borrower's property, or (iii) seeking an order winding up or liquidating the assets of Borrower, are initiated and continue for a period of 45 days;

e) (i) a voluntary proceeding shall have been commenced under federal bankruptcy law, or any other applicable federal or state bankruptcy, insolvency, or other similar law, (ii) the consent by Borrower to the appointment of, or taking possession by, a receiver,

4

liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Borrower or for any material part of Borrower's property, (iii) Borrower making any assignment for the benefit of creditors, (iv) the failure or admission in writing of Borrower generally to pay the its debts as they become due, or (v) the taking of any formal action by Borrower in furtherance of any of the foregoing;

    f)  Intentionally left blank; or

    g)  judgment(s) for the payment of money in excess of $100,000, individually or in the aggregate, shall have been rendered by a court of record against Borrower, and such judgment shall continue unsatisfied and in effect for a period of 30 consecutive days without being vacated, discharged, satisfied or bonded pending appeal.

7.  Remedies on Default, Etc.

    a)  Upon the occurrence of an Event of Default, the entire unpaid Principal amount and accrued and unpaid interest on this Note, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, be forthwith due and payable, and the Lender may, among other things, proceed to protect and enforce its rights hereunder by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein, or for an injunction against a violation of any of the terms hereof or thereof or in the exercise of any power granted hereby or thereby or by law.

    b)  Lender shall have, in addition to all rights and remedies of a secured party under the Uniform Commercial Code or other applicable statute or rule, the following rights and remedies:

    i.  Lender may peaceably by his own means or with judicial assistance enter the Borrower's, or any other premises, and take possession and unencumbered ownership of the Collateral described herein, and remove or dispose of it. Borrower agrees not to resist or interfere with such action.

    ii.  Lender may require the Borrower to assemble or disassemble all or any part of the Collateral described herein and make it available to Lender at any place designated by Lender and reasonably convenient to both Parties.

5

iii.   Borrower agrees that a notice sent to Borrower at least 5 days before the date of any intended public sale or the date after which any private sale or other intended disposition of the assets described herein is to be made, shall be deemed to be reasonable notice of such sale or other disposition. All notice is waived if the assets described herein are perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

iv.   In the event of any such public or other disposition, Borrower will pay to Lender on demand any deficiency remaining after crediting the net proceeds of sale, less all expenses of taking, handling, and sale, including reasonable counsel fee. All rights of redemption are waived. Lender shall account to Borrower for any surplus.

c)   No right conferred upon the Lender hereby shall be exclusive of any other right referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

8.   Intentionally left blank.

9.   Notice. Any and all notices, consents or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or 3 days after the date mailed, postage prepaid, by first class registered or certified mail, return receipt requested or 1 business day after being sent by recognized overnight courier, addressed to the parties at the addresses set forth above (or at such other address as any party may specify by notice to all other parties given as aforesaid). A copy shall also be sent to Lance G. Harris, Esq., Stein & Harris, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 and Jack Schulman, Esq., Kasowitz Benson Torres, 1633 Broadway, New York, NY 10019.

10.   Severability. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect and in no way shall be affected, prejudiced, or disturbed thereby.

6

11.    Transferability. No sale, pledge or transfer of this Note will be accepted or recognized by the Lender without the Lender's prior written consent.

12.    Defenses. The obligations of the Borrower under this Note shall not be subject to reduction, limitation, impairment, termination, defense, set-off, counterclaim or recoupment for any reason.

13.    Attorneys' and Collection Fees. Should the indebtedness evidenced by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceedings, or this Note be placed in the hands of attorneys for collection or to defend or enforce any of Lender's rights hereunder, the Borrower agrees to pay, in addition to the Principal amount and accrued interest due and payable hereon, all costs relating thereto, including, without limitation, reasonable attorneys' fees and expenses, incurred by the Lender in collecting such indebtedness or enforcing this Note.

14.    Waiver of Presentment. The Borrower hereby waives presentment, demand for payment, notice of dishonor, notice of protest and all other notices or demands in connection with the delivery, acceptance, performance or default of this Note.

15.    Governing Law; Venue. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Florida, without regard to conflict of law principles that would result in the application of any law other than the law of the State of Florida. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in Brown County, State of Florida, in any action or proceeding arising out of or relating to this Note and agrees that all claims in respect of the action or proceeding shall only be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Note in any other court.

16.    Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE, ANY DOCUMENT DELIVERED UNDER THIS NOTE, THE LOAN EVIDENCED BY THIS NOTE OR THE ACTIONS OF BORROWER AND THE

7

LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

17. Application of Payments. Payments received hereunder by Lender shall be applied first to any accrued and unpaid interest due hereunder; and second, to the Principal amount.

18. Joint and Several Liability. If this Note is now or hereafter shall be signed or endorsed by more than one party or person, it shall be the joint and several obligation of all such parties or persons (including, without limitation, all makers, endorsers, guarantors and sureties), and shall be binding on all parties hereto and their successors and assigns.

19. Subordination Agreement Controls. This Note and the lien on and security interest in the Collateral granted hereunder are subordinated in the manner and to the extent set forth in the Subordination Agreement dated as of March ___, 2018 among the Lender, as Subordinated Creditor and Eric Herschmann, as Senior Creditor, and acknowledged and agreed to by the Borrower (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "Subordination Agreement"). Prior to the payment in full of all Senior Obligations (as defined in the Subordination Agreement), neither Borrower nor Lender shall take, or fail to take, any action to the extent that such action, or failure to take such action, would be prohibited by, or would in any way conflict with, the Subordination Agreement.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

8

   **IN WITNESS WHEREOF,** the Borrower has caused this Note to be executed
effective as of the day and year first above written.

                               BORROWER:

                               **ORLY GENGER**

9

# EXHIBIT C

## SECURED PROMISSORY NOTE

$58,059.30                                                                          April 23, 2018

FOR VALUE RECEIVED, the undersigned, **ORLY GENGER** (the "Borrower") hereby promises to pay to the order of **ARIE GENGER**, or any subsequent holder of this Secured Promissory Note (the "Lender"), the principal sum of Fifty-Eight Thousand Fifty-Nine Dollars and Thirty Cents ($58,059.30) (the "Principal"), plus interest accrued thereon as herein provided.

1.     Interest Rate. Interest shall accrue on the unpaid Principal balance owed on this Secured Promissory Note (the "Note") from time to time at the rate of 2.75% per annum, computed on the basis of a 365-day year counting the actual number of days elapsed. Accrued interest on the Principal amount of this Note which has not otherwise been paid shall be added to the Principal amount of this Note on December 31 of each year. Notwithstanding the foregoing, during the continuance of any uncured Event of Default (hereinafter defined), interest shall accrue on the unpaid Principal balance at the rate of 12% per annum, which interest shall be payable on demand.

2.     Payment; Maturity. This Note shall mature, and all principal and accrued interest thereunder shall be immediately due and payable on (i) May 31, 2020; or (ii) an Event of Default (the earliest to occur of (i) or (ii), the "Maturity Date").

3.     Prepayment. The Borrower may prepay the Principal amount of this Note, either in whole or in part, upon the provision of notice to the Lender. Any such prepayment shall be accompanied by all accrued and unpaid interest on the Principal amount being prepaid.

4.     Subordination. This Note is subordinate in right and time of payment of principal and interest to certain indebtedness of the Borrower to Eric Herschmann in the principal amount of Two Million Dollars ($2,000,000) (the "Senior Indebtedness"). Borrower represents and warrants that as of the date of this Note (i) the outstanding principal amount of the Senior Indebtedness is Two Million Dollars ($2,000,000); and (ii) no default has occurred and is continuing in respect of the Senior Indebtedness. This Note is senior in right and time of payment of principal and interest to any other current indebtedness of Borrower other than the Senior Indebtedness and the indebtedness between the parties hereto which is evidenced by a Secured Promissory Note dated December 31, 2016 in the principal amount of $5,372,324.73 (the "Secured Promissory Note #1").

1

Until payment in full of all amounts due hereunder, Borrower shall not incur any indebtedness that is either parri passu or senior in right or time of payment to the indebtedness evidenced hereby (other than the current indebtedness under the Senior Indebtedness and the Secured Promissory Note #1) and shall not grant any type of security interest in or lien upon the Collateral without the prior written consent of the Lender (other than the security interest in favor of Lender granted under Secured Promissory Note #1 and pursuant to Section 5 below).

5.    Creation and Perfection of Security Interests.

a)    As security for any and all Obligations (hereinafter defined), Lender shall be entitled to hold, and Borrower hereby grants to Lender, a continuing lien upon, security interest in and to, and right of set off on or against all of the following, whether now or hereafter existing or acquired, and wherever located (collectively, the "Collateral"): all personal and real property and fixtures of the Borrower and interests therein, including all accounts, all reserves, instruments, documents, notes, bills and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Lender, bank and other deposit accounts, whether or not reposed with Lender's Affiliates (hereinafter defined), general intangibles (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Borrower's credit or in Lender's possession or in the possession of any of Lender's Affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form. The continuing lien upon, security interest in and to, and right of set off on or against the Collateral shall attach to the foregoing without further action on the Borrower's or Lender's part.

b)    "Obligations" shall mean and include all loans, advances, indebtedness, liabilities, debit balances, letter of credit, acceptances, covenants, duties and obligations of whatever kind and nature at any time owing by Borrower to Lender or any of Lender's Affiliates, whether fixed or contingent, due or to become due, matured or unmatured, no matter how or when arising and whether under this Note or otherwise. For the purposes hereof, "Affiliate" shall mean any person, firm or corporation directly or indirectly controlling, controlled by or in common control with Lender or any corporation the stock of which is owned or controlled directly or

2

indirectly by Lender. This Note includes all Obligations of Borrower to Lender and supersedes all previous notes.

c)      Borrower guarantees that the Obligations will be paid strictly in accordance with the terms of the Note, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Borrower with respect thereto.

d)      Borrower irrevocably and unconditionally authorizes Lender (or its agent) to file at any time and from time to time such financing statements in any jurisdiction with respect to the Collateral naming Lender or its designee as the secured party and such Borrower as debtor, as Lender may require, and including any other information with respect to such Borrower or otherwise required by part 5 of Article 9 of the Uniform Commercial Code of such jurisdiction as Lender may determine, together with any amendment and continuations with respect thereto, which authorization shall apply to all financing statements filed on, prior to or after the date hereof. Borrower hereby authorizes Lender to adopt on behalf of such Borrower any symbol required for authenticating any electronic filing. In the event that the description of the Collateral in any financing statement naming Lender or its designee as the secured party and any Borrower as debtor includes assets and properties of such Borrower that do not at any time constitute Collateral, whether hereunder or otherwise, the filing of such financing statement shall nonetheless be deemed authorized by such Borrower to the extent of the Collateral included in such description and it shall not render the financing statement ineffective as to any of the Collateral or otherwise affect the financing statement as it applies to any of the Collateral. In no event shall any Borrower at any time file, or permit or cause to be filed, any correction statement or termination statement with respect to any financing statement (or amendment or continuation with respect thereto) naming Lender or its designee as secured party and such Borrower as debtor.

e)      Borrower shall take any other actions reasonably requested by Lender from time to time to cause the attachment and perfection, and the ability of Lender to enforce, the security interest of Lender in any and all of the Collateral, including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the UCC or other applicable law, to the extent, if any, that any Borrower's signature thereon is required therefore, (ii) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment,

3

perfection or priority of, or ability of Lender to enforce, the security interest of Lender in such Collateral, and (iii) obtaining the consents and approvals of any governmental authority or third party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, and taking all actions required by any law, as applicable in any relevant jurisdiction.

f)     Borrower represents and warrants that: (i) Borrower owns each item of the Collateral upon which she purports to grant a lien hereunder and have rights in or the power to transfer each item of Collateral in which a lien is granted by it hereunder, free and clear of any liens or encumbrances other than as identified herein and (ii) this Note is effective to create a valid and continuing lien upon the Collateral subject to existing liens as identified herein. Upon filing of appropriate financing statements, Lender shall have a perfected lien on the Collateral which shall have priority over all other liens, except as identified herein.

6.     Default. An "Event of Default" will occur if any of the following occurs:

a)     the Borrower fails to make any payment to Lender when such payment is due hereunder;

b)     the Borrower breaches any representation or warranty contained in, or fail to comply with, any of the terms or covenants of this Note other than a payment obligation (governed under subsection (a) above), and such breach or failure is not cured within 15 days after the Lender has given the Borrower written notice of such breach;

c)     Intentionally left blank.

d)     involuntary proceedings shall have been commenced against either Borrower (i) under federal bankruptcy law or under any applicable federal or state bankruptcy, insolvency, or similar law, which seek the general adjustment of a Borrower's debts, or (ii) seeking the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Borrower or for any material part of Borrower's property, or (iii) seeking an order winding up or liquidating the assets of Borrower, are initiated and continue for a period of 45 days;

e)     (i) a voluntary proceeding shall have been commenced under federal bankruptcy law, or any other applicable federal or state bankruptcy, insolvency, or other similar law, (ii) the consent by Borrower to the appointment of, or taking possession by, a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Borrower or for

4

any material part of Borrower's property, (iii) Borrower making any assignment for the benefit of creditors, (iv) the failure or admission in writing of Borrower generally to pay the its debts as they become due, or (v) the taking of any formal action by Borrower in furtherance of any of the foregoing;

      f)    Intentionally left blank; or

      g)    judgment(s) for the payment of money in excess of $100,000, individually or in the aggregate, shall have been rendered by a court of record against Borrower, and such judgment shall continue unsatisfied and in effect for a period of 30 consecutive days without being vacated, discharged, satisfied or bonded pending appeal.

    7.    Remedies on Default, Etc.

      a)    Upon the occurrence of an Event of Default, the entire unpaid Principal amount and accrued and unpaid interest on this Note, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, be forthwith due and payable, and the Lender may, among other things, proceed to protect and enforce its rights hereunder by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein, or for an injunction against a violation of any of the terms hereof or thereof or in the exercise of any power granted hereby or thereby or by law.

      b)    Lender shall have, in addition to all rights and remedies of a secured party under the Uniform Commercial Code or other applicable statute or rule, the following rights and remedies:

      i.    Lender may peaceably by his own means or with judicial assistance enter the Borrower's, or any other premises, and take possession and unencumbered ownership of the Collateral described herein, and remove or dispose of it. Borrower agrees not to resist or interfere with such action.

      ii.    Lender may require the Borrower to assemble or disassemble all or any part of the Collateral described herein and make it available to Lender at any place designated by Lender and reasonably convenient to both Parties.

5

iii.   Borrower agrees that a notice sent to Borrower at least 5 days before the date of any intended public sale or the date after which any private sale or other intended disposition of the assets described herein is to be made, shall be deemed to be reasonable notice of such sale or other disposition. All notice is waived if the assets described herein are perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

iv.   In the event of any such public or other disposition, Borrower will pay to Lender on demand any deficiency remaining after crediting the net proceeds of sale, less all expenses of taking, handling, and sale, including reasonable counsel fee. All rights of redemption are waived. Lender shall account to Borrower for any surplus.

c)   No right conferred upon the Lender hereby shall be exclusive of any other right referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

8.   Intentionally left blank.

9.   Notice. Any and all notices, consents or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or 3 days after the date mailed, postage prepaid, by first class registered or certified mail, return receipt requested or 1 business day after being sent by recognized overnight courier, addressed to the parties at the addresses set forth above (or at such other address as any party may specify by notice to all other parties given as aforesaid). A copy shall also be sent to Lance G. Harris, Esq., Stein & Harris, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 and Jack Schulman, Esq., Kasowitz Benson Torres, 1633 Broadway, New York, NY 10019.

10.   Severability. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect and in no way shall be affected, prejudiced, or disturbed thereby.

6

11.    Transferability. No sale, pledge or transfer of this Note will be accepted or recognized by the Lender without the Lender's prior written consent.

12.    Defenses. The obligations of the Borrower under this Note shall not be subject to reduction, limitation, impairment, termination, defense, set-off, counterclaim or recoupment for any reason.

13.    Attorneys' and Collection Fees. Should the indebtedness evidenced by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceedings, or this Note be placed in the hands of attorneys for collection or to defend or enforce any of Lender's rights hereunder, the Borrower agrees to pay, in addition to the Principal amount and accrued interest due and payable hereon, all costs relating thereto, including, without limitation, reasonable attorneys' fees and expenses, incurred by the Lender in collecting such indebtedness or enforcing this Note.

14.    Waiver of Presentment. The Borrower hereby waives presentment, demand for payment, notice of dishonor, notice of protest and all other notices or demands in connection with the delivery, acceptance, performance or default of this Note.

15.    Governing Law; Venue. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Florida, without regard to conflict of law principles that would result in the application of any law other than the law of the State of Florida. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in Brown County, State of Florida, in any action or proceeding arising out of or relating to this Note and agrees that all claims in respect of the action or proceeding shall only be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Note in any other court.

16.    Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE, ANY DOCUMENT DELIVERED UNDER THIS NOTE, THE LOAN EVIDENCED BY THIS NOTE OR THE ACTIONS OF BORROWER AND THE

7

LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

17. Application of Payments. Payments received hereunder by Lender shall be applied first to any accrued and unpaid interest due hereunder; and second, to the Principal amount.

18. Joint and Several Liability. If this Note is now or hereafter shall be signed or endorsed by more than one party or person, it shall be the joint and several obligation of all such parties or persons (including, without limitation, all makers, endorsers, guarantors and sureties), and shall be binding on all parties hereto and their successors and assigns.

19. Subordination Agreement Controls. This Note and the lien on and security interest in the Collateral granted hereunder are subordinated in the manner and to the extent set forth in the Subordination Agreement dated as of March ___, 2018 among the Lender, as Subordinated Creditor and Eric Herschmann, as Senior Creditor, and acknowledged and agreed to by the Borrower (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "Subordination Agreement"). Prior to the payment in full of all Senior Obligations (as defined in the Subordination Agreement), neither Borrower nor Lender shall take, or fail to take, any action to the extent that such action, or failure to take such action, would be prohibited by, or would in any way conflict with, the Subordination Agreement.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

8

IN WITNESS WHEREOF, the Borrower has caused this Note to be executed effective as of the day and year first above written.

BORROWER:

ORLY GENGER