# EXHIBIT 55

## PART 2 OF 2

# EXHIBIT D

# UCC FINANCING STATEMENT

**FOLLOW INSTRUCTIONS**

A. NAME & PHONE OF CONTACT AT FILER (optional)
Stein Harris 2122230400

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Stein Harris
1211 Avenue of the Americas 40th Floor
New York, NY 10036
USA

**FILING NUMBER:** 18-0027401588
FILING DATE: 08/03/2018     04:52 PM
DOCUMENT NUMBER: 829030330003
FILED: Texas Secretary of State
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | Genger | Orly | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 210 Lavaca Street Unit 1903 | Austin | TX | 78701 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | Genger | Arie | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 17001 Collins Avenue Apt 2805 | Sunny Isles | FL | 33160 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All personal and real property and fixtures of the Debtor and interests therein whether now owned or hereafter acquired, including all accounts, all reserves, instruments, documents, notes, bills, and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Secured Party, bank and other deposits accounts, whether or not reposed with Secured Party's affiliates, general intangibles, (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Debtor's credit or in Secured Party's possession or in the possession of any of Secured Party's affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:                                                    6b. Check only if applicable and check only one box.
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor
ADDITIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

# EXHIBIT E

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Blanca                                      2122230400

**B. E-MAIL CONTACT AT FILER (optional)**
blanca.rodriguez@steinharris.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Blanca
1211 Avenue of the Americas
40th Floor
New York, NY 10036
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:52927326

08/03/18 15:53:25

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR **1b. INDIVIDUAL'S SURNAME** | | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| Genger | | Orly | | | |
| **1c. MAILING ADDRESS** | | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 210 Lavaca Street, Unit 1903 | | Austin | TX | 78701 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR **2b. INDIVIDUAL'S SURNAME** | | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| | | | | | |
| **2c. MAILING ADDRESS** | | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR **3b. INDIVIDUAL'S SURNAME** | | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| Genger | | Arie | | | |
| **3c. MAILING ADDRESS** | | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 17001 Collins Avenue, Apt 2805 | | Sunny Isles | FL | 33160 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
All personal and real property and fixtures of the Debtor and interests therein whether now owned or hereafter acquired, including all accounts, all reserves, instruments, documents, notes, bills, and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Secured Party, bank and other deposits accounts, whether or not reposed with Secured Party's affiliates, general intangibles, (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Debtor's credit or in Secured Party's possession or in the possession of any of Secured Party's affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| **6a.** Check only if applicable and check only one box: | **6b.** Check only if applicable and check only one box: |
| ☐ Public Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| **7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer | ☐ Bailee/Bailor   ☐ Licensee/Licensor |
| **8. OPTIONAL FILER REFERENCE DATA:** | |

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | |
|---|---|
| OR | 9b. INDIVIDUAL'S SURNAME |
| | Genger |
| | FIRST PERSONAL NAME |
| | Orly |
| | ADDITIONAL NAME(S)/INITIAL(S) |

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number: 52927326

08/03/18 15:53:25

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:
The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Commercial Code-Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| Blanca Rodriguez | 2122230400 |

**B. E-MAIL CONTACT AT FILER** (optional)
blanca.rodriguez@steinharris.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Blanca Rodriguez
1211 Avenue of the Americas
40th Floor
New York, NY 10036
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:52927456

08/03/18 16:15:59

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**1a. ORGANIZATION'S NAME**

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | Genger | Orly | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 210 Lavaca Street, Unit 1903 | Austin | TX | 78701 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

**2a. ORGANIZATION'S NAME**

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

**3a. ORGANIZATION'S NAME**

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | Genger | Arie | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 17001 Collins Avenue, Apt 2805 | Sunny Isles | FL | 33160 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
All personal and real property and fixtures of the Debtor and interests therein whether now owned or hereafter acquired, including all accounts, all reserves, instruments, documents, notes, bills, and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Secured Party, bank and other deposits accounts, whether or not reposed with Secured Party's affiliates, general intangibles, (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Debtor's credit or in Secured Party's possession or in the possession of any of Secured Party's affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. **ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

---

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | |
|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| Genger |
| FIRST PERSONAL NAME |
| Orly |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:52927456

08/03/18 16:15:59

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

| SUFFIX |
|---|

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

---

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

---

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

---

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest):

16. Description of real estate:

---

17. MISCELLANEOUS:
The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Commercial Code-Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| Blanca Rodriguez | 2122230400 |

**B. E-MAIL CONTACT AT FILER (optional)**
blanca.rodriguez@steinharris.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Blanca Rodriguez
1211 Avenue of the Americas
40th Floor
New York, NY 10036
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:52927573

08/03/18 16:46:43

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| Genger | Orly | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 210 Lavaca Street, Unit 1903 | Austin | TX | 78701 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| Genger | Arie | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 17001 Collins Avenue, Apt 2805 | Sunny Isles | FL | 33160 | US |

4. COLLATERAL: This financing statement covers the following collateral:
All personal and real property and fixtures of the Debtor and interests therein whether now owned or hereafter acquired, including all accounts, all reserves, instruments, documents, notes, bills, and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof, proceeds of insurance, other forms of obligations owing to Secured Party, bank and other deposits accounts, whether or not reposed with Secured Party's affiliates, general intangibles, (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Debtor's credit or in Secured Party's possession or in the possession of any of Secured Party's affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | State of New Jersey<br>Department of the Treasury<br>Division of Revenue & Enterprise Services<br>UCC Section<br>Filed |
|---|---|
| 9a. ORGANIZATION'S NAME | |

| OR | 9b. INDIVIDUAL'S SURNAME | Filing Number: 52927573 |
|---|---|---|
| | Genger | 08/03/18 16:46:43 |
| | FIRST PERSONAL NAME | |
| | Orly | |
| | ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

| 11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b) | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT:<br>☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:
The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Commercial Code-Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.

# ATTACHMENT 2

## SECURED PROMISSORY NOTE

$2,000,000                                                          December 30, 2016

FOR VALUE RECEIVED, the undersigned, **ORLY GENGER**, having an address at 210 Lavaca Street, Unit 1903, Austin, Texas 78701, and **ARIE GENGER**, having an address at 17001 Collins Avenue, Apt. 2805, Sunny Isles, Florida 33160 (each individually, a "Borrower" and collectively, the "Borrowers") hereby jointly and severally promise to pay to the order of **ERIC HERSCHMANN**, having his home address at 210 Lavaca Street, Unit 1903, Austin, Texas 78701, or any subsequent holder of this Secured Promissory Note (the "Lender"), the principal sum of Two Million Dollars ($2,000,000) (the "Principal"), plus interest accrued thereon as herein provided.

1.     Interest Rate. Interest shall accrue on the unpaid Principal balance owed on this Secured Promissory Note (the "Note") from time to time at the rate of 2.75% per annum, computed on the basis of a 365-day year counting the actual number of days elapsed. Accrued interest on the Principal amount of this Note which has not otherwise been paid shall be added to the Principal amount of this Note on December 31 of each year. Notwithstanding the foregoing, during the continuance of any uncured Event of Default, interest shall accrue on the unpaid Principal balance at the rate of 12% per annum, which interest shall be payable on demand.

2.     Payment; Maturity. This Note shall mature, and all principal and accrued interest thereunder shall be immediately due and payable, on the earliest to occur of: (i) March 31, 2020; (ii) The receipt of funds by Borrowers under the Settlement Agreement and Release dated June 16, 2013 (the "Settlement Agreement") between the Borrowers, Arnold Broser, David Broser and TR Investors, LLC, Glencova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, LLC, Jules Trump, Eddie Trump and Mark Hirsch; or (iii) an Event of Default (as hereinafter defined) (the earliest to occur of (i), (ii) or (iii), the "Maturity Date").

3.     Prepayment. The Borrowers may prepay the Principal amount of this Note, either in whole or in part, upon the provision of notice to the Lender. Any such prepayment shall be accompanied by all accrued and unpaid interest on the Principal amount being prepaid.

1



4. Subordination. This Note is subordinate in right and time of payment of principal and interest to certain indebtedness of the Borrowers to ADBG LLC in the principal amount of \$4,520,530.40 (the "Senior Indebtedness"). Borrowers represent and warrant that as of the date of this Note (i) the outstanding principal amount of the Senior Indebtedness is \$\$4,520,530.40, (ii) the Senior Indebtedness does not bear interest, (iii) the Senior Indebtedness is unsecured, (iv) the Senior Indebtedness is due and payable solely out of payments received by the Borrowers pursuant to the Settlement Agreement from one or more members of the Trump Group (as such term is defined in the Settlement Agreement) and (v) no default has occurred and is continuing in respect of the Senior Indebtedness. This Note is senior in right and time of payment of principal and interest to any other current indebtedness of Borrowers other than the Senior Indebtedness. Until payment in full of all amounts due hereunder, Borrowers shall not incur any indebtedness that is either parri passu or senior in right or time of payment to the indebtedness evidenced hereby (other than the current indebtedness under the Senior Indebtedness) and shall not grant any type of security interest in or lien upon the Collateral, without the prior written consent of the Lender (other than the security interest in favor of Lender granted pursuant to Section 5 below).

5. Creation and Perfection of Security Interests.

a) As security for any and all Obligations (hereinafter defined), Lender shall be entitled to hold, and each Borrower hereby grants to Lender, a continuing first priority lien upon, security interest in and to, and right of set off on or against all of the following, whether now or hereafter existing or acquired, and wherever located (collectively the "Collateral"): all personal and real property and fixtures of the Borrowers and interests therein, including all accounts, all reserves, instruments, documents, notes, bills and chattel paper, receivables, letter of credit rights, litigation claims and proceeds thereof (including, without limitation, any claims pursuant to those certain litigation proceedings titled *Genger v. TR Investors, LLC*, No. 168, 2013 (Del.); *TR Investors, LLC v. Genger*, C.A. No. 6697-CS (Del. Ch.); *Trans-Resources, Inc. v. Genger*, C.A. No. 4391-CS (Del. Ch.); *TR Investors, LLC, et al. v. Genger*, C.A. No. 3994-CS (Del. Ch.); *Glenclova Investment Co. v. Trans-Resources, Inc., et al.*, No. 08 Civ. 7140 (JFK) (S.D.N.Y.); *Arie Genger and Orly Genger v. Sagi Genger, et al.*, Index No. 651089/2010 (N.Y. Supr.); *Dalia Genger, as Trustee of the Orly Genger 1993 Trust v. TR Investors, LLC, et al.*, C.A. No. 6906-CS (Del. Ch.); *Orly Genger v. Sagi Genger*, Index No. 100697/2008 (NY Sup. Ct.); *Orly Genger v. Dalia Genger, Sagi Genger, Leah*

2

*Fang, D & K GP LLC, and TPR Investment Associates, Inc.*, Index No. 109749/2009 (NY Sup. Ct.) and the Settlement Agreement and any proceeds thereof, proceeds of insurance, other forms of obligations owing to Lender, bank and other deposit accounts, whether or not reposed with Lender's affiliates, general intangibles (including without limitation all tax refunds, contract rights, trade names, trademarks, trade secrets, customer lists, software and all other licenses, rights, privileges and franchises), all balances, sums and other property at any time to Borrowers' credit or in Lender's possession or in the possession of any of Lender's affiliates and all books and records relating to any of the foregoing, including the cash and non-cash products and proceeds of all of the foregoing in any form. The continuing first priority lien upon, security interest in and to, and right of set off on or against the Collateral shall attach to the foregoing without further action on the Borrowers' or Lender's part.

b)     "Obligations" shall mean and include all loans, advances, indebtedness, liabilities, debit balances, letter of credit, acceptances, covenants, duties and obligations of whatever kind and nature at any time owing by Borrowers to Lender or any of Lender's Affiliates (hereinafter defined), whether fixed or contingent, due or to become due, matured or unmatured, no matter how or when arising and whether under this Note or otherwise. For the purposes hereof, "Affiliate" shall mean any person, firm or corporation directly or indirectly controlling, controlled by or in common control with Lender or any corporation the stock of which is owned or controlled directly or indirectly by Lender.

c)     Borrowers guarantee that the Obligations will be paid strictly in accordance with the terms of the Note, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Borrowers with respect thereto.

d)     Each Borrower irrevocably and unconditionally authorizes Lender (or its agent) to file at any time and from time to time such financing statements in any jurisdiction with respect to the Collateral naming Lender or its designee as the secured party and such Borrower as debtor, as Lender may require, and including any other information with respect to such Borrower or otherwise required by part 5 of Article 9 of the Uniform Commercial Code of such jurisdiction as Lender may determine, together with any amendment and continuations with respect thereto, which authorization shall apply to all financing statements filed on, prior to or after the date hereof. Each Borrower hereby authorizes Lender to adopt on behalf of such Borrower any symbol required

3

for authenticating any electronic filing. In the event that the description of the Collateral in any financing statement naming Lender or its designee as the secured party and any Borrower as debtor includes assets and properties of such Borrower that do not at any time constitute Collateral, whether hereunder or otherwise, the filing of such financing statement shall nonetheless be deemed authorized by such Borrower to the extent of the Collateral included in such description and it shall not render the financing statement ineffective as to any of the Collateral or otherwise affect the financing statement as it applies to any of the Collateral. In no event shall any Borrower at any time file, or permit or cause to be filed, any correction statement or termination statement with respect to any financing statement (or amendment or continuation with respect thereto) naming Lender or its designee as secured party and such Borrower as debtor.

e)       Each Borrower shall take any other actions reasonably requested by Lender from time to time to cause the attachment, perfection and first priority of, and the ability of Lender to enforce, the security interest of Lender in any and all of the Collateral, including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the UCC or other applicable law, to the extent, if any, that any Borrower's signature thereon is required therefore, (ii) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Lender to enforce, the security interest of Lender in such Collateral, and (iii) obtaining the consents and approvals of any governmental authority or third party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, and taking all actions required by any law, as applicable in any relevant jurisdiction.

f)       Borrowers, jointly and severally, represent and warrant that: (i) Borrowers own each item of the Collateral upon which they purport to grant a Lien hereunder and have rights in or the power to transfer each item of Collateral in which a lien is granted by it hereunder, free and clear of any liens or encumbrances and (ii) this Note is effective to create a valid and continuing lien upon the Collateral. Upon filing of appropriate financing statements, Lender shall have a perfected lien on the Collateral which lien shall be prior to all other liens.

6.       Default. An "Event of Default" will occur if any of the following occurs:

4

a)      The Borrowers fail to make any payment to Lender when such payment is
due hereunder;

b)      the Borrowers breach any representation or warranty contained in, or fail to
comply with, any of the terms or covenants of this Note other than a payment obligation (governed
under subsection a) above), and such breach or failure is not cured within 15 days after the Lender
has given the Borrower written notice of such breach; or

c)      a default under the Senior Indebtedness resulting in an acceleration of the
payment obligations due under the Senior Indebtedness.

d)      involuntary proceedings shall have been commenced against either
Borrower (i) under federal bankruptcy law or under any applicable federal or state bankruptcy,
insolvency, or similar law, which seek the general adjustment of a Borrower's debts, or (ii) seeking
the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar
official) of either Borrower or for any material part of either Borrower's property, or (iii) seeking
an order winding up or liquidating the assets of a Borrower, are initiated and continue for a period
of 45 days; or

e)      (i) a voluntary proceeding shall have been commenced under federal
bankruptcy law, or any other applicable federal or state bankruptcy, insolvency, or other similar
law, (ii) the consent by either Borrower to the appointment of, or taking possession by, a receiver,
liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of either Borrower or
for any material part of either Borrower's property, (iii) a Borrower making any assignment for the
benefit of creditors, (iv) the failure or admission in writing of either Borrower generally to pay the
its debts as they become due, or (v) the taking of any formal action by either Borrower in
furtherance of any of the foregoing;

f)      Either Borrower breaches any representation or warranty contained
in, or fail to comply with, any of the terms or covenants of that certain Agreement dated as of
March 31, 2017 between the Borrowers, David Broser, the Lender and the escrow agent named
therein; or

g)      judgment(s) for the payment of money in excess of $100,000, individually
or in the aggregate, shall have been rendered by a court of record against either Borrower, and such

5

Confidential                                          OG_17cv8181_jdgmt_0000753

judgment shall continue unsatisfied and in effect for a period of 30 consecutive days without being vacated, discharged, satisfied or bonded pending appeal.

7. Remedies on Default, Etc.

a) Upon the occurrence of an Event of Default, the entire unpaid Principal amount and accrued and unpaid interest on this Note, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, be forthwith due and payable, and the Lender may, among other things, proceed to protect and enforce its rights hereunder by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein, or for an injunction against a violation of any of the terms hereof or thereof or in the exercise of any power granted hereby or thereby or by law.

b) Lender shall have, in addition to all rights and remedies of a secured party under the Uniform Commercial Code or other applicable statute or rule, the following rights and remedies:

i. Lender may peaceably by his own means or with judicial assistance enter the Borrowers', or any other premises, and take possession and unencumbered ownership of the Collateral described herein, and remove or dispose of them. Borrowers agree not to resist or interfere with such action.

ii. Lender may require the Borrowers to assemble or disassemble all or any part of the Collateral described herein and make it available to Lender at any place designated by Lender and reasonably convenient to both Parties.

iii. Borrowers agree that a notice sent to Borrowers at least five (5) days before the date of any intended public sale or the date after which any private sale or other intended disposition of the assets described herein is to be made, shall be deemed to be reasonable notice of such sale or other disposition. All notice is waived if the assets described herein are perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market.

iv. In the event of any such public or other disposition, Borrowers will pay to Lender on demand any deficiency remaining after crediting the net proceeds of sale, less all expenses of taking, handling, and sale, including reasonable counsel fee. All rights of redemption are waived. Lender shall account to Borrowers for any surplus.

6

c)     No right conferred upon the Lender hereby shall be exclusive of any other right referred to herein or now or hereafter available at law, in equity, by statute or otherwise.

8.     Amendment of Senior Indebtedness. Without the prior written consent of Lender, the Senior Indebtedness, and any documents, agreements and/or instruments relating thereto (collectively, the "Senior Documents"), may not be amended, restated, supplemented, modified, substituted, renewed or replaced, including, without limitation, (a) any increase of the interest rate, (b) any change in the maturity date, (c) any increase in the principal amount, (d) modify in any way or make the covenants or events of default in respect of the Senior Indebtedness more restrictive to the Borrower than the existing covenants contained in any Senior Document and (e) any increase of the non-monetary obligations of either Borrower.

9.     Notice. Any and all notices, consents or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or three (3) days after the date mailed, postage prepaid, by first class registered or certified mail, return receipt requested or one (1) business day after being sent by recognized overnight courier, addressed to the parties at the addresses set forth above (or at such other address as any party may specify by notice to all other parties given as aforesaid). A copy shall also be sent to Lance G. Harris, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 and Jack Schulman, Esq., Kasowitz Benson Torres, 1633 Broadway, New York, NY 10019.

10.    Severability. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect and in no way shall be affected, prejudiced, or disturbed thereby.

11.    Transferability. No sale, pledge or transfer of this Note will be accepted or recognized by the Lender without the Lender's prior written consent.

7

Confidential

OG_17cv8181_Jdgmt_0000755

12.    Defenses. The obligations of the Borrowers under this Note shall not be subject to reduction, limitation, impairment, termination, defense, set-off, counterclaim or recoupment for any reason.

13.    Attorneys' and Collection Fees. Should the indebtedness evidenced by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceedings, or this Note be placed in the hands of attorneys for collection or to defend or enforce any of Lender's rights hereunder, the Borrowers agree to pay, in addition to the Principal amount and accrued interest due and payable hereon, all costs relating thereto, including, without limitation, reasonable attorneys' fees and expenses, incurred by the Lender in collecting such indebtedness or enforcing this Note.

14.    Waiver of Presentment. The Borrowers hereby waive presentment, demand for payment, notice of dishonor, notice of protest and all other notices or demands in connection with the delivery, acceptance, performance or default of this Note.

15.    Governing Law; Venue. This Note shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles that would result in the application of any law other than the law of the State of New York. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in New York County, State of New York, in any action or proceeding arising out of or relating to this Note and agrees that all claims in respect of the action or proceeding shall only be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court.

16.    Waiver of Jury Trial. EACH OF THE BORROWERS HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE, ANY DOCUMENT DELIVERED UNDER THIS NOTE, THE LOAN EVIDENCED BY THIS NOTE OR THE ACTIONS OF BORROWERS AND THE LENDER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT THEREOF.

8

OG_17cv8181_Jdgmt_0000756

17. <u>Application of Payments</u>. Payments received hereunder by Lender shall be applied first to any accrued and unpaid interest due hereunder; and second, to the Principal amount.

18. <u>Joint and Several Liability</u>. If this Note is now or hereafter shall be signed or endorsed by more than one party or person, it shall be the joint and several obligation of all such parties or persons (including, without limitation, all makers, endorsers, guarantors and sureties), and shall be binding on all parties hereto and their successors and assigns.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

9

Confidential

**IN WITNESS WHEREOF,** the Borrowers have caused this Note to be executed effective as of the day and year first above written.

BORROWERS:

ORLY GENGER

ARIE GENGER

10

Confidential

OG_17cv8181_jdgmt_0000758

## SUBORDINATION AGREEMENT

**Eric Herschmann**
**210 Lavaca Street, Unit 1903**
**Austin, Texas 78701**

Gentlemen:

WHEREAS, the undersigned, Arie Genger ("**AG**" or, together with his successors and assigns, "**Subordinated Creditor**"), wishes to memorialize and consolidate an existing loan to Orly Genger ("**OG**") to be evidenced by that certain Secured Promissory Note dated as of the date hereof in the principal amount of Five Million Three Hundred Seventy-Two Thousand Three Hundred Twenty-Four Dollars and 73/100 Cents ($5,372,324.73) (as amended, supplemented, restated, or otherwise modified from time to time to the extent permitted hereunder, the "**Subordinated Note**", and all indebtedness to Subordinated Creditor in respect of the Subordinated Note, including any and all interest accrued or to accrue thereon, and any other indebtedness, liabilities and obligations of OG to Subordinated Creditor of any kind now existing or hereafter arising being hereinafter referred to collectively as the "**Subordinated Obligations**"); and

WHEREAS, Eric Herschmann (together with his successors and assigns, the "**Senior Creditor**") has extended a loan to AG and OG, jointly and severally as **Borrowers,** as evidenced by that certain Secured Promissory Note dated December 30, 2016, in the original principal amount of Two Million Dollars ($2,000,000) (as amended, supplemented, restated, or otherwise modified from time to time, the "**Senior Note**", and all indebtedness to Senior Creditor in respect of the Senior Note, including any and all interest accrued or to accrue thereon, and any other indebtedness, liabilities and obligations of AG and/or OG to Senior Creditor of any kind now existing or hereafter arising being hereinafter referred to collectively as the "**Senior Obligations**").

**NOW,** THEREFORE, in order to induce Senior Creditor to consent to the Subordinated Obligations, Subordinated Creditor acknowledges, covenants and agrees as follows:

1.  Subordinated Creditor does hereby subordinate the payment to Subordinated Creditor of the Subordinated Obligations (including any renewals, amendments, substitutions or revisions thereof) in right and time of payment of principal and interest to the payment in full of the Senior Obligations to Senior Creditor.

2.  Subordinated Creditor agrees to legend any note, debenture, or other interest evidencing the Subordinated Obligations and any and all documents related to security for the Subordinated Obligations, that the same are subject to the terms of a certain Subordination Agreement with Senior Creditor dated December 31, 2016, and the Subordinated Creditor

1

CONFIDENTIAL

AGENGER000308

shall provide evidence to Senior Creditor that all such documents contain the above described legend.

3. Upon any distribution of any assets of OG, whether by reason of sale, reorganization, liquidation, dissolution, arrangement, bankruptcy, receivership, assignment for the benefit of creditors, foreclosure or otherwise, Senior Creditor shall be entitled to receive payment in full of the Senior Obligations prior to the payment of all or any part of the Subordinated Obligations. To enable Senior Creditor to assert and enforce its rights hereunder in any such proceeding or upon the happening of any such event, Senior Creditor or any person whom Senior Creditor may designate is hereby irrevocably appointed attorney in fact for the undersigned with full power to act in the place and stead of the undersigned, including the right to make, present, file and vote such proofs of claim against OG on account of all or any part of the Subordinated Obligations as Senior Creditor may deem advisable and to receive and collect any and all dividends or other payments made thereon and to apply the same on account of the Senior Obligations. By execution and delivery of this Agreement, the undersigned grants to Senior Creditor full power and authority to take any and all acts as may be necessary to enforce any and all of the Subordinated Obligations, to exercise any rights as assignee of any security for payment of the Subordinated Obligations, to effectuate the aforesaid power of attorney, and to effect collection of any and all dividends or other payments which may be made or required at any time on account thereof; and no further documents or instruments of any kind whatsoever shall be required to effectuate the Senior Creditor's rights under this Agreement or to implement the provisions of this Agreement.

4. Notwithstanding anything contained in the provisions of the Uniform Commercial Code or any other applicable law relative to the priority of such security interests of the parties hereto as may now or in the future be perfected by the parties hereto, Subordinated Creditor acknowledges and agrees that (a) its security interests (if any) in OG's assets are hereby made subordinate and junior in priority to the security interests of Senior Creditor and (b) it shall not, prior to repayment in full of all Senior Obligations, foreclose on any security interest or lien (consensual or non-consensual) it may now or hereafter have in or upon any asset or property of OG or take any action that would, or could reasonably be expected to, hinder, in any manner, any exercise of remedies by Senior Creditor. Notwithstanding the foregoing or anything to the contrary herein, Subordinated Creditor may file proofs of claim against OG in any proceeding and may make such other demands or file such claims as may be necessary to prevent the waiver or bar of such claims under applicable statutes of limitations or other statutes, court orders or rules of procedure, provided that Subordinated Creditor may not take any other action or receive any cash payment in connection therewith.

5. Except as expressly permitted in Section 4 above, Subordinated Creditor agrees not to ask, demand, sue for, take or receive payment of or security for all or any part of the Subordinated Obligations or to exercise any rights which Subordinated Creditor may have by agreement or by law, unless and until all and every part of the Senior Obligations have been fully paid and discharged.

2

AGENGER000309

6.     Subordinated Creditor understands that there is no commitment or obligation on Senior Creditor's part to make further loans or advances or to extend further credit to Borrowers; provided, however, that Subordinated Creditor further understands that such agreements may be modified, altered, or amended, without notice to or consent of Subordinated Creditor.

7.     Subordinated Creditor and OG agree not to (a) modify, alter or amend any payment amount or payment term of the Subordinated Note or any other document, instrument or agreement evidencing the Subordinated Obligations, (b) modify, alter or amend any other term of the Subordinated Note, or any other document, instrument or agreement evidencing the Subordinated Obligations, and (c) grant (in the case of OG) and receive (in the case of Subordinated Creditor) any additional collateral or other security of any nature to secure the Subordinated Obligations or any other indebtedness of the Obligors to any Subordinated Creditor, in each case without first obtaining the written consent of Senior Creditor hereunder, which may be granted or denied in its sole and absolute discretion.

8.     Subordinated Creditor agrees not to sell, assign, transfer, pledge or hypothecate all or any part of the Subordinated Obligations without first obtaining the written consent of Senior Creditor hereunder, which may be granted or denied in its sole and absolute discretion. Subordinated Creditor shall legend any documents evidencing the Subordinated Obligations, any security documents and/or financing statements to indicate that the Subordinated Obligations are subject to the terms of this Agreement.

9.     Senior Creditor may at any time, in its discretion, renew or extend the time of payment of all or any of the Senior Obligations or waive or release any collateral which may be held therefor, and Senior Creditor may enter into such agreements with Borrowers as Senior Creditor may deem desirable without notice to or further assent from the undersigned and without in any way affecting Senior Creditor's rights hereunder.

10.     In the event the Subordinated Obligations are not evidenced by an instrument in writing, Subordinated Creditor and OG agree, at Senior Creditor's request, to reduce the Subordinated Obligations to writing and Subordinated Creditor further agrees to endorse such instruments as aforesaid. Failure to comply with this paragraph does not limit and other parts of this Agreement.

11.     Senior Creditor shall have no obligation to collect the Subordinated Obligations. Further, Senior Creditor shall have no obligation whatsoever for maintenance, protection, preservation or liquidation of any security for the Subordinated Obligations.

12.     In the event any payments are made by OG to Subordinated Creditor or any amounts are received by Subordinated Creditor contrary to the provisions of this Agreement, Subordinated Creditor will promptly remit said payments or amounts to Senior Creditor. Upon failure to so remit, Senior Creditor shall have the right to proceed directly against Subordinated Creditor for any such amount.

3

CONFIDENTIAL                                              AGENGER000310

13.     Subordinated Creditor agrees to pay all counsel fees and expenses which the Senior Creditor may incur in protecting or enforcing any of its rights hereunder against Subordinated Creditor.

14.     The parties acknowledge that breach of this Agreement by Subordinated Creditor could cause irreparable harm to Senior Creditor for which there may be no adequate remedy at law; and, therefore, Senior Creditor is entitled to injunctive relief in the event of an anticipated or actual breach by Subordinated Creditor of the terms hereof.

15.     This Agreement shall be binding upon Subordinated Creditor and his successors and assigns, and all of Senior Creditor's rights hereunder shall inure to the benefit of his successors and assigns.

16.     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles that would result in the application of any law other than the law of the State of New York. Each of the parties submits to the exclusive jurisdiction of any state or federal court sitting in New York County, State of New York, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding shall only be heard and determined in any such court. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court.

17.     Any and all notices, consents or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or three (3) days after the date mailed, postage prepaid, by first class registered or certified mail, return receipt requested or one (1) business day after being sent by recognized overnight courier, addressed to the parties at the addresses set forth above (or at such other address as any party may specify by notice to all other parties given as aforesaid). A copy shall also be sent to Lance G. Harris, 1211 Avenue of the Americas, 40th Floor, New York, New York 10036 and Jack Schulman, Esq., Kasowitz Benson Torres, 1633 Broadway, New York, NY 10019

18.     **WAIVER OF JURY TRIAL. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT: OR ANY OTHER DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF ANY PARTY.**

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

4

CONFIDENTIAL                                          AGENGER000311

IN WITNESS WHEREOF, Subordinated Creditor has caused this Agreement to be executed as of the 31 day of December, 2016.

**ARIE GENGER**

5

CONFIDENTIAL

AGENGER000312

Eric Herschmann
210 Lavaca Street, Unit 1903
Austin, Texas 78701

Gentlemen:

As of the 31st day of December, 2016, Orly Genger ("OG") hereby acknowledges notice of the within and foregoing Subordination Agreement and agrees to be bound by all the terms, provisions and conditions thereof. OG further agrees, except as may be specifically permitted under the foregoing Subordination Agreement, without Senior Creditor's written consent thereto first procured, not to repay all or any part of the Subordinated Obligations or to issue any note or other instrument evidencing the same or to give any security therefore.

ORLY GENGER

6

CONFIDENTIAL

AGENGER000313

**AGREEMENT**

**THIS AGREEMENT** ("Agreement") dated as of March 31, 2017, by and between **ARIE GENGER**, an individual (together with his afilliates and their respective successors and assigns, "AG"), **ORLY GENGER**, an individual (together with her afilliates and their respective successors and assigns, "OG"; and collectively with AG, the "Genger Parties"), **ADBG LLC**, a Delaware limited liability company, as Lender ("ADBG"), **ERIC HERSCHMANN**, an individual ("EH") and **KASOWITZ BENSON TORRES LLP**, as escrow agent ("Escrow Agent").

RECITALS:

**WHEREAS**, AG, as Borrower, and ADBG, as Lender, are parties to that certain Credit Agreement, dated as of September 19, 2008, as amended by that certain First Amendment to Credit Agreement dated as of _____, 2012 (the "ADBG Credit Agreement");

**WHEREAS**, AG and OG, as Borrowers, issued that certain Secured Promissory Note dated as of December 30, 2016, to EH (the "EH Note");

**WHEREAS**, AG and OG entered into that certain Settlement and Release Agreement, dated as of June 16, 2013, between AG, OG, Arnold Broser, David Broser and TR Investors, LLC, Glencova Investment Co., New TR Equity I, LLC, New TR Equity II, LLC, Trans-Resources, LLC, Jules Trump, Eddie Trump and Mark Hirsch (the "Settlement Agreement").

**WHEREAS**, AG, OG, ADBG and EH wish to set forth their agreement with respect to payments to AG and OG pursuant to the Settlement Agreement; and

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

1. Representations. AG and ADBG hereby represent and warrant to EH as follows:

(a) As of the date of this hereof, the total outstanding indebtedness of AG and/or OG to ADBG under the ADBG Credit Agreement is $4,520,530.40 (the "ADBG Obligation").

(b) Other than the ADBG Obligation, there is no outstanding indebtedness of any nature owed by AG and/or OG to ADBG, its principals or their respective affiliates.

(c) The ADBG Obligation shall be due and payable solely upon distribution or payment of funds to or for the account of AG and/or OG pursuant to the Settlement Agreement by or for the account of one or more members of the Trump Group (as such term is defined in the Settlement Agreement).

2. Distribution of Settlement Proceeds.

(a) AG and OG and ADBG hereby agree that notwithstanding any provisions to the contrary of the ADBG Credit Agreement (including without limitation Section 2.05(b)



CONFIDENTIAL

thereof) or any other agreement, in the event of any distribution or payment of funds to or for the account of AG or OG pursuant to the Settlement Agreement, whether upon the occurrence of a Realization Event (as such term is defined in the ADBG Credit Agreement) or otherwise ("Settlement Proceeds"), (i) AG and OG and ADBG shall cause all Settlement Proceeds to be paid directly to an escrow account maintained by Escrow Agent; (ii) upon receipt, Escrow Agent shall distribute Settlement Proceeds in the following order of priority:

> (1) *first*, to ADBG in payment of the ADBG Obligation, up to the maximum amount of $4,520,530.40;
>
> (2) *second*, to EH in payment of the EH Note, up to the maximum amount of $2,000,000.00, plus all accrued interest and any fees or costs payable to EH under the EH Note; and
>
> (3) *third*, in accordance with joint written instructions of AG and OG in respect of any remaining Settlement Proceeds after payment of the foregoing amounts.

(b)     Should any of the parties receive Settlement Proceeds from a source other than the Escrow Agent, such party will promptly deliver, or cause to be delivered, the same to Escrow Agent and until so delivered, such Settlement Proceeds shall be held in trust by such party and shall not be commingled with other funds of such party.

(c)     Should (i) ADBG receive Settlement Proceeds in excess of the amount needed to pay the ADBG Obligation in full, or (ii) EH receive Settlement Proceeds in excess of the amount needed to pay the EH Note in full, ADBG or EH (as applicable) will promptly deliver, or cause to be delivered, the excess Settlement Proceeds to Escrow Agent and until so delivered, such excess Settlement Proceeds shall be held in trust by such party and shall not be commingled with other funds of such party.

3.      Amendments of ADBG Credit Agreement. ADBG and AG shall not, at any time, without the written consent of EH, amend, restate, supplement, modify, substitute, renew or replace the ADBG Credit Agreement.

4.      Escrow Agent.

(a)     Escrow Agent will not receive a fee for its services hereunder, and will be reimbursed for its reasonable out-of-pocket expenses incurred in performing its duties hereunder.

(b)     Escrow Agent will not be responsible for any act or failure to act hereunder except in the case of its gross negligence or willful misconduct. AG and OG will jointly and severally indemnify Escrow Agent and hold it harmless from and against any claims, damages, losses, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and court costs) that arise out of or in connection with this Agreement or the performance by Escrow Agent of its obligations hereunder; provided, that AG and OG have no obligation to indemnify Escrow Agent to the extent, but only to the extent, that any of such claims, damages, losses, liabilities, costs or expenses arise out of the gross negligence or willful misconduct of Escrow Agent. As between them, to the extent they are jointly and severally

2

CONFIDENTIAL

liable for any such claims, damages, losses, liabilities, costs and/or expenses, AG and OG shall each be liable for 50% of such expenses.

(c) The duties, responsibilities and obligations of Escrow Agent shall be limited to those expressly set forth herein and no duties, responsibilities or obligations shall be inferred or implied.

(d) Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder by reason of any occurrence beyond the control of Escrow Agent (including but not limited to any act or provision of any present or future law or regulation or governmental authority, any act of God or war).

(e) Escrow Agent may rely upon, and will be protected in acting or refraining from acting upon, any written notice, instruction or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties. Escrow Agent may act in reliance upon the reasonable advice of counsel satisfactory to it in reference to any matter connected with its obligations hereunder and will not incur any liability for any action taken in accordance with such advice. In case of any dispute regarding this Agreement, Escrow Agent is entitled to deposit all or any portion of the proceeds with any court of competent jurisdiction and thenceforth be relieved of any further duty or responsibility hereunder.

(f) Escrow Agent shall not be obligated to take any action which in its reasonable judgment would involve it to take on any expense or expose it to liability unless it has been furnished with an indemnity or other security reasonably satisfactory to it.

(g) The terms and obligations of this Section 4 shall survive the termination of this Agreement, the payment of all amounts hereunder and the resignation or removal of Escrow Agent.

5. Miscellaneous.

(a) This Agreement may be executed in counterparts, and all such executed counterparts shall constitute the same agreement. Signatures to this Agreement and any amendment hereof delivered electronically via facsimile, .pdf or similar electronic format shall be deemed an original signature and fully effective as such for all purposes.

(b) This Agreement contains all of the terms agreed upon between the parties with respect to the subject matter hereof, and all prior agreements, understandings, representations and statements, oral or written, between the parties are merged into this Agreement.

(c) This Agreement may not be changed, modified or terminated, except by an instrument executed by all parties.

(d) This Agreement shall be governed by the laws of the State of New York without giving effect to conflict of laws principles thereof. Any legal suit, action or proceeding arising out of or based upon this Agreement may be instituted in the courts of the

3

CONFIDENTIAL

State of New York in each case located in New York County in the city of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

(e)    This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and permitted assigns.

### [SIGNATURE PAGE TO FOLLOW]

4

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**ARIE GENGER**

**ORLY GENGER**

**ADBG LLC**

By: _____
Name: David Broser
Title: Authorized Person

**ERIC HERSCHMANN**

**KASOWITZ BENSON TORRES LLP,** as
Escrow Agent

By: _____
Name: _____
Title: _____

5

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_____
**ARIE GENGER**


_____
**ORLY GENGER**


**ADBG LLC**

By: _____
Name: David Broser
Title: Authorized Person


_____
**ERIC HERSCHMANN**


**KASOWITZ BENSON TORRES LLP,** as Escrow Agent

By: _____
Name: _____
Title: _____

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.


_____

**ARIE GENGER**


_____

**ORLY GENGER**


**ADBG LLC**

By: _____
Name: David Broser
Title: Authorized Person


_____

**ERIC HERSCHMANN**


**KASOWITZ BENSON TORRES LLP,** as
Escrow Agent

By: _____
Name:  Michael  Rosenbloom
Title:  Partner

5

CONFIDENTIAL

September 16, 2018

**BY HAND**

Arie Genger
19111 Collins Avenue, Apt. 706
Sunny Isles, Florida 33160

Orly Genger
Rokah Shim'On 35
Tel Aviv, Israel 65148

Lance G. Harris, Esq.
1211 Avenue of the Americas, 20th Floor
New York, New York 10036

## NOTICE OF EVENT OF DEFAULT

Reference is hereby made to (i) the Secured Promissory Note, dated as of December 31, 2016 (as heretofore amended, supplemented and otherwise modified, the "Note"), among Arie Genger and Orly Genger (each individually, a "Borrower" and collectively, the "Borrowers"), and Eric Herschmann (the "Lender"). Capitalized terms used in this letter and not otherwise defined herein shall have the meanings assigned to them in the Note.

**YOU ARE HEREBY NOTIFIED** that an Event of Default has occurred under Section 6(g) of the Note as a result of a judgment in excess of $100,000 being rendered by a court of record against one or both of the Borrowers on August 17, 2018 in the case Sagi Genger, Third-Party Plaintiff vs. Orly Genger, Third-Party Defendant, Civil Action No. 1:17cv8181, which judgment remains unsatisfied and in effect as of the date of this notice without being vacated, discharged, satisfied or bonded pending appeal. As a result of such Event of Default, Lender has the right to exercise all rights and remedies available to Lender under the Note and under law and equity.

**YOU ARE HEREBY FURTHER NOTIFIED** that (a) pursuant to Section 7(a) of the Note, the entire unpaid Principal amount and accrued and unpaid interest on this Note, is hereby immediately due and payable, (b) pursuant to Section 1 of the Note, the principal of, and all accrued and unpaid interest on, the Principal, and any other outstanding obligations of the Borrowers under the Note shall continue to bear interest from the date the Event of Default occurred at the rate of 12% per annum, which interest shall be payable on demand, (c) Lender intends to commence the exercise of certain of its remedies available under the Note against Borrower including, without limitation, Lender's right to enter the Borrowers' or any other premises, and take possession and unencumbered ownership of the Collateral pursuant to Section 7(c) of the Note and (d) pursuant to Section 13 of the Note, Borrowers are obligated, jointly and severally, to reimburse the Lender all costs and expenses (including, without limitation,



OG_17cv8181_Jdgmt_0000799

reasonable attorneys' fees and expenses) incurred by the Lender in collecting the indebtedness under the Note.

The Lender hereby expressly reserves all rights and remedies provided under the Note or by law with respect to the Event of Default and any other Events of Default and Defaults.

Very truly yours,

ERIC HERSCHMANN

cc:   Jack Schulman
      Michael Rosenbloom

Confidential