# EXHIBIT 60

| Fill in this information to identify the case: |
| --- |
| Debtor 1   Orly Genger |
| Debtor 2 |
| (Spouse, if filing) |
| United States Bankruptcy Court   **Western District of Texas** |
| Case number:  **19−10926** |

**FILED**

**U.S. Bankruptcy Court**
**Western District of Texas**

12/9/2019

**Barry . Knight, Clerk**

## Official Form 410
## Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Dalia Genger

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Dalia Genger | |
| Name | Name |
| Law Office of Ira Daniel Tokayer, Esq. 420 Lexington Avenue, Suite 2400 New York, NY 10170 | |
| Contact phone     2126955250 | Contact phone |
| Contact email     imtoke@mindspring.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                                    Proof of Claim                                    page 1

Exhibit 60

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 12542488.00   **Does this amount include interest or other charges?**<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>See Constructive Trust Claim described in Ex. A. |

| | |
|---|---|
| **9. Is all or part of the claim secured?** | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☒ Other. Describe:   Proceeds from 2013 litigation settlement<br><br>**Basis for perfection:**   Agreement (Ex . B)<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ 32257001.00<br>**Amount of the claim that is secured:**   $ 12542488.00<br>**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate** (when case was filed)   2.43 %<br>☒ Fixed<br>☐ Variable |

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☐ No<br>☒ Yes. Identify the property:   See Addendum. |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No |
|---|---|---|
| | | ☐ Yes. *Check all that apply:* |

Amount entitled to priority

| | |
|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $_____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/9/2019
                    MM / DD / YYYY

/s/ Ira Daniel Tokayer, Esq.

Signature

Print the name of the person who is completing and signing this claim:

| Name | Ira Daniel Tokayer, Esq. |
|---|---|
| | First name    Middle name    Last name |
| Title | |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 420 Lexington Avenue, Suite 2400 |
| | Number   Street |
| | New York, NY 10170 |
| | City   State   ZIP Code |
| Contact phone | 2126955250    Email    imtoke@mindspring.com |

Official Form 410                    Proof of Claim                    page 3

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Orly Genger |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Western District of Texas |
| Case number | 19-10926-tmd |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. Who is the current creditor? | Dalia Genger | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Ira Daniel Tokayer, Esq.<br>Name<br>420 Lexington Avenue, Ste 2400<br>Number     Street<br>New York          NY          10170<br>City                State          ZIP Code<br><br>Contact phone (212) 695-5250<br><br>Contact email imtoke@mindspring.com | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br>Number     Street<br>City                State          ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ | |

Official Form 410                    **Proof of Claim**                    page 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

---

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**    $_____12,542,488.00   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Constructive Trust claim described in Exhibit A.

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:   Proceeds from 2013 litigation settlement

**Basis for perfection:**   2004 integrated agreement, attached as Exhibit B.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $   32,257,001.00

**Amount of the claim that is secured:**    $   12,542,488.00

**Amount of the claim that is unsecured:**   $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed) __2.43_ %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

---

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: See Addendum.

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  <u>12/09/2019</u>
　　　　　　　　　 MM / DD / YYYY

*/s/ Ira Daniel Tokayer, Esq.*
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Ira Daniel Tokayer, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 420 Lexington Avenue, Ste 2400 | | |
| | Number　　　　Street | | |
| | New York | NY | 10170 |
| | City | State | ZIP Code |
| Contact phone | (212) 695-5250 | Email | imtoke@mindspring.com |

## ADDENDUM TO PROOF OF CLAIM FILED BY
## DALIA GENGER

7.     Itemized Statement of Prejudgment Interest.

By Judgment dated August 17, 2018 in the case styled *Dalia Genger v. Sagi Genger*, #1:17-cv-08181 (attached as Exhibit C), creditor Dalia Genger was awarded prejudgment interest of $443,835, for which the debtor is responsible for one-half ($221,917) under the parties' 2004 integrated agreement (attached as Exhibit B).  In addition to the foregoing, pursuant to 28 U.S.C. § 1961(a), creditor seeks 2.43% post-judgment interest from the debtor on one-half of the total judgment of $6,443,835 which, as of the July 12, 2019 petition date, creditor calculates to be $70,571.  (Creditor also seeks interest on the balance of her claim in an as-of-yet unliquidated amount, as permitted by law.)   Adding the $292,488 in pre- and post-judgment interest to the $12,500,000 in principal owed under the 2004 integrated agreement (*i.e.,* $24,700,000 calculated by the U.S District Court in Exhibit D less $200,000 previously received by Dalia), creditor's claim against the debtor is for the total amount of $12,542,488.


11.     Right of Setoff.

In her schedules filed with the Court on August 8, 2019, the debtor lists: (a) a current legal action against Dalia Genger styled *Orly Genger vs. Dalia Genger*, #109749/09, for alleged breach of fiduciary duty; and (b) unidentified "Claims against Dalia Genger and related or affiliated entities or transferees and Dalia Genger As Trustee" in an "Unknown" amount.  If such claims were to be allowed, then creditor would be allowed to set-off its claims against the debtor's.

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 7** |
| **ORLY GENGER,** | § | |
| | § | **CASE NO. 19-10926-TMD** |
| Debtor. | § | |

## AMENDED AND CORRECTED

### OBJECTION AND RESPONSE OF DALIA GENGER AND D&K GP LLC TO THE TRUSTEE'S APPLICATION UNDER FEDERAL RULE OF BANRUPTCY PROCEDURE 9019 AND LOCAL RULE 9019 TO APPROVE COMPROMISE
### [Dkt No. 52]

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Dalia Genger ("**Dalia**") and D&K GP LLC, by and through the undersigned counsel of record, hereby files this Objection to the Application Under Federal Rule of Bankruptcy Procedure 9019 and Local Rule 9019 to Approve Compromise (the "**Settlement Motion**") filed by Ron Satija (the "**Trustee**"), the Chapter 7 trustee in the above-captioned bankruptcy case. In support of her objection, Dalia respectfully states as follows:

## I.
## INTRODUCTION

1. This Court is being asked to approve a settlement the effect of which (whether or not it was the Trustee's intent) would be to deprive Dalia, a senior homemaker with no source of income, of the assets she had set aside for her retirement. The proposed settlement basically blesses a scheme whereby the Debtor (who has been estranged from her mother for many years) earned $32.3 million, of which approximately $12.25 million belonged to Dalia, and instead fraudulently conveyed it to her husband, her father and his creditors. Just when, following years of litigation, the U.S. District Court for the Southern District of New York (SDNY) was about to

set aside those conveyances, the Debtor filed this case to aim for a better deal.

2.    The Court need not take Dalia's word for it—most of the critical determinations have already been rendered in two final judgments by the SDNY, both unanimously affirmed by the U.S. Court of Appeals for the Second Circuit.  For simplicity, and to avoid needless factual disputes, we quote below some of the relevant findings from those decisions, which were adjudicated against Orly, and therefore cannot be denied by the Trustee.

3.    The story begins with Dalia's divorce from Arie in 2004:

> **As part of the divorce, Dalia agreed to convey her marital rights to 794.40 shares of [Genger family-owned business Trans-Resources, Inc., aka] TRI to trusts benefiting Sagi and Orly (the "Sagi Trust" and the "Orly Trust," respectively) in exchange for a commitment by Sagi and Orly to financially support her.  This arrangement was effectuated via three documents.**

> **First, Dalia and Arie signed a stipulation of settlement finalizing the terms of their divorce settlement (the "2004 Divorce Stipulation"), which was fully executed on October 30, 2004. …  In the 2004 Divorce Stipulation, Dalia promised to convey equal interests in a total of 794.40 shares of TRI to the Orly Trust and the Sagi Trust. …  The 2004 Divorce Stipulation contains an "entire understanding" clause, which is subject to a carve-out for other agreements … "entered into concurrently herewith." …**

> **The second was a letter signed by Sagi and Dalia dated October 30, 2004 (the "2004 Promise"). …  In the 2004 Promise, Sagi agreed to pay Dalia up to an amount equal to all dividends, distributions, proceeds or other payments attributable to the TRI shares, upon Dalia's demand. …The 2004 Promise also states that the agreement is made "in consideration of" the following: "Orly and [Sagi] are benefiting by the receipt of a total of 794.40 shares of [TRI], or beneficial interests in those shares, by trusts for [their] benefit." …**

> **At the time the 2004 Promise was signed, Orly was vacationing in Fiji, and thus could not contemporaneously sign the 2004 Promise. …  However, before Sagi signed the 2004 Promise, Orly verbally agreed to indemnify Sagi for 50% of the payments he would have to make under the 2004 Promise. …**

> **The third agreement was a letter signed by Sagi and Orly dated November 10, 2004 (the "2004 Indemnity").  …  In the 2004 Indemnity, Orly agreed to indemnify Sagi "for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations ..., including [Sagi's] reasonable counsel and other professional**

fees, expenses and costs, which arise from [Sagi's] undertakings in the [2004 Promise]." …

On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with the Trump Group and others regarding her claims to ownership of the TRI shares. … **The agreement provides that Orly, Arie, and their litigation funders, will receive $32.3 million** in exchange for a declaration that the Trump Group owns "all right, title and interest (beneficially, of record, and otherwise)" to the TRI shares, and that Orly waives all of her claims to the TRI shares ….

*Genger v. Genger*, 76 F. Supp. 3d 488, 492 (S.D.N.Y. 2015) (emphasis added).

4.      Orly claimed she never actually got the money, and therefore should be relieved of her financial obligation to her mother. The District Court disagreed, holding that: "**as it turns out, Orly has effectively monetized an interest in the very [TRI] shares she claims not to have received to the tune of $32.3 million.**" 76 F. Supp. 3d at 491.

5.      Orly appealed, arguing that, because she turned over the first tranche of settlement proceeds to her father and/or the Brosers, the agreement was unenforceable. The Second Circuit was not swayed, finding: "**Orly benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation partners.**" *Genger v. Genger*, 663 Fed. Appx. 44, *48 (2d Cir. Sept. 29, 2016).

6.      No sooner had that litigation concluded then Orly repudiated her financial commitment yet again, necessitating further litigation. Although entitled under the agreement to over $24 million from Orly and Sagi, requested less than a quarter of that amount, which she believed would be sufficient to carry her through her retirement. In the follow-on litigation, the District Court calculated the exact amount owed to Dalia by Orly and Sagi:

**…Both Dalia and Sagi agree that Dalia's conveyed marital interest of 794.4 shares represents 36% of the total TRI shares that were monetized. Using that figure, the maximum amount payable to Dalia under the 2004 Integrated Agreement is approximately $24.7 million (or 36% of the total $69.3 million value). Orly has not specifically disputed the 36% figure, though she has raised**

**unrelated questions about how the so-called "cap" in the 2004 Integrated Agreement affects her obligations to Sagi.**

*Genger v. Genger*, 2018 U.S. Dist. Lexis 126958, *18 n.5 (S.D.N.Y. July 27, 2018).

7.      Once again, Orly appealed; and once again, the Second Circuit affirmed, finding

that Orly could not evade her financial obligations to her mother:

> **…the 2004 Promise states that Sagi must, at Dalia's request, pay her "an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of TRI ... that have previously been paid to Orly, [Sagi] or any trust for the benefit of either of us." … This provision does indeed include a "cap" on the amount that Sagi is obliged to pay Dalia. It says nothing, however, about Orly's indemnification obligation. The 2004 Indemnity unconditionally requires Orly to "indemnify, defend, and hold [Sagi] harmless, for and against one-half (1/2) of any and all payments, ... claims, ... judgments or obligations" arising from the 2004 Promise. … We are not free to disregard the agreement's unambiguous terms.**

*Genger v. Genger*, 771 Fed. Appx. 99, 100 (2d Cir. 2019).

8.      In summary, and while the background facts are a long-winded tragic path of a

family's litigation, this case is actually fairly simple.  Arie Genger lied to his wife when they got

divorced to induce her to transfer millions of dollars in property—the "TRI Stock"—to their

daughter's trust.  This Chapter 7 bankruptcy is about monetizing those lies through the proposed

Settlement Agreement, for a fraction of the actual fraudulent transfers, leaving the remainder with

the fraud-actors.  Arie now seeks, with the assistance of his Debtor-daughter, her husband and his

law firm, to have Dalia's financial support funds transferred to them through a blessing of their

fraudulent scheme in the guise of a bankruptcy "settlement."

9.      The Settlement Agreement seeks to assign rights to the $15 million in promissory

notes—that portion of the $32.3 million litigation settlement which is yet to be paid—*to Debtor's*

*father and husband* with nothing to be retained by the estate.[1]  As set out herein, Dalia already

---

[1]      The $1 million contingent payment outlined in the agreement is meaningless as the payors security interest is being left undisturbed despite being created within the 1 year preference period.

enjoys a constructive trust over that consideration by operation of New York Law. Accordingly, her interest is superior to that of the Trustee under Fifth Circuit precedent. The Settlement Motion contravenes all manner of laws, and should be rejected outright.

## II.
## ARGUMENT

### A. THE TRUSTEE NEVER CONSULTED DALIA BEFORE ENTERING INTO THIS SETTLEMENT AND SHOWING UP IN NEW YORK COURT SEEKING TO REINITIATE LITIGATION AGAINST DALIA THAT HAS BEEN DISMISSSED

10. Dalia regrets having to burden the Court with this dispute. Had the Trustee bothered to consult Dalia and her counsel, review the relevant Court decisions, and become broadly acquainted with the basic facts, all this could be avoided. But he did not.

11. Contrary to the representations he makes in the proposed Settlement Motion that all parties were consulted, the Trustee never consulted with Dalia or her counsel before making his Settlement Motion. Neither Mr. Satija nor his counsel reached out to Dalia or her counsel, even though she is listed as a creditor in her individual capacity on Orly's schedule of financial affairs. Of all of the people, the Trustee should not be ignoring is Dalia, who is the principal target of this bankruptcy filing. Making matters worse, the Trustee has thus refused to share critical documents the Trustee has under the SDNY Protective Order (despite a commitment by Dalia's counsel to execute a confidentiality agreement). It is clear to Dalia that the Trustee is not disinterested and has determined that Dalia's rights and her input into this process are unnecessary, notwithstanding his fiduciary duties to her as creditor.

12. The Settlement Motion is the direct consequence of this fiduciary breach.

### B. DALIA HAS A CONSTRUCTIVE TRUST AGAINST THE PROPERTY TRANSFERRED TO AND FROM DEBTOR

13. As noted above, it has been finally adjudicated that Dalia enjoys superior rights to

$12.25 million of the $32.3 million that the Trustee proposes to give away to the Debtor's cohorts. Accordingly, the Trustee, a successor in interest to Debtor, is bound to those findings under principals of collateral estoppel, estoppel by judgment, and *res judicata*.

14. Under governing New York law, Dalia is entitled to a constructive trust over the remaining $12.25 million of that *res*, and therefore her interest is superior to that of the Bankruptcy Trustee under Fifth Circuit precedent.

15. A constructive trust under New York law is an equitable remedy imposed to prevent unjust enrichment. *See Simonds v Simonds*, 45 N.Y.2d 233 (1978); *Sharp v Kosmalski*, 40 N.Y.2d 119 (1976). According to the New York Court of Appeals, the constructive trust is "the formula through which the conscience of equity finds expression. Where property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" 45 N.Y.2d at 120 (citing *Beatty v Guggenheim Exploration Co.*, 225 N.Y. 380, 386 (1919)). "[I]ts applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *Latham v Father Divine*, 299 N.Y. 22, 27 [1949].

16. Mostly, this principal is applied to transfers between family members. In *Sharp v. Kosmalski*, a case reviewed by the New York Court of Appeals, property was transferred to the daughter. There the court construed an <u>implied</u> promise of support that was broken creating a constructive trust. Here, Debtor has already been adjudicated to have made such an express promise. A promise which is reflected in a written instrument. That case, and a panoply of New York decisions discussed below outline the legal principals at work.

17. Constructive trusts are honored in bankruptcy. In *In re Southmark Corp.*, 49 F.3d 1111, 1118 (5th Cir. 1995), the Fifth Circuit held "funds in question were held in "quasi" (or

constructive) trust by Southmark for ARA. Section "541(d) excludes property subject to a constructive trust from the bankruptcy estate." *Id.* at *1115 n.8* (citing *In re Carolin Paxson Advertising, Inc.,* 938 F.2d 595, 597 (5th Cir. 1991)) ("A constructive trust generally arises when a person with legal title to property owes equitable duties to deal with the property for the benefit of another."); *accord In re Bullion Reserve of N. Am.,* 836 F.2d 1214, 1217 n. 3 (9th Cir.) (explaining that presumption that funds in debtor's account belong to its estate is overcome by showing that funds were held in constructive trust for another).

18.  Since the Trustee's proposed Settlement Agreement not only interferes with those rights but in fact acts to also destroy those rights, it should not be approved.  The Trustee's Settlement Agreement seeks to approve the theft of property owned by Dalia pursuant to her marital settlement which incorporated the contemporaneous Integrated Agreement executed by the Debtor.  Dalia's current and ongoing priority rights to the constructive trust encumbering those funds under New York law is clear:

> …the court has indicated that a constructive trust, similar to an express trust, 'springs from the intention of the testator and the promise of the legatee, and not from any act of the court.  (citations omitted).
> …
> It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when the duty is subsequently enforced.

*United States v. Fontana*, 528 F.Supp. 137, 144, 146 (Dist Ct SD NY 1981).

19.  Dalia's rights to constructive trust sprung into existence not later than when Orly repudiated her of support triggering her duty as Dalia's constructive trustee to make restitution. This rule is recognized in a bankruptcy proceeding. In *N Geltzer v. Balgobin (In re Balgobin)*, 490 B.R. 13, *22 (Bankr. E.D.N.Y. 2013) the Bankruptcy Court explained:

> … the duty of restitution does not arise until the constructive trustee breaches or repudiates the agreement…

… For this reason, the few cases in this Circuit in which a constructive trust has been imposed against a bankruptcy estate have found some pre-petition unjust conduct by the debtor relating to the property upon which the constructive trust was sought to be imposed…

20.     Of course, here there is far more than "some pre-petition unjust conduct" by the Debtor.   There is a total repudiation of the Integrated Agreement, and actual fraud in accomplishing the denuding of this Debtor.   Notwithstanding the unambiguous language (so found by the federal courts), Orly and her father simply agreed Dalia would get nothing and implemented years of losing and wasteful litigation.   Quickly thereafter, Orly suffered two judgments in excess of $3 million for the support payments due Dalia.   The threat of these judgments, and the full extent of Orly's future liability triggered her decision to transfer and encumber the $32 million and file for bankruptcy.   When the judgments against Orly were entered, this triggered the second round of fraud to occur—the Debtor encumbered the $15 million in unmatured promissory notes, by pledging them as security for millions of dollars in false liabilities to, her father and lawyer-husband.   Dalia has a right to recoup those funds the subject of her constructive trust from each of the transferees (all non-debtors).

21.     As part of the Court's analysis in recognizing Dalia's constructive trust, it should be noted that under New York law that Orly was a fiduciary to her mother at the time of the transfer.   Dalia enjoyed a confidential or fiduciary relationship with both her children and her soon to be ex-husband.   Under New York law, absent prior litigation, family members stand in a fiduciary relationship with each other as the New York Court of Appeals explained in *Braddock v. Braddock*, 871 N.Y.S.2d 68, 72 (1st Dep't 2009):

> Family members stand in a fiduciary relationship toward one another in a co-owned business venture … A fiduciary relationship is "[f]ounded upon trust or confidence reposed by one  person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and

abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another" …

(Citations omitted.)

22.     A trustee of a constructive trust has a fiduciary duty to restore the property to its rightful owner. Dalia is now the beneficiary of the constructive trust.  The Settlement Agreement has the effect of causing the trustees of that constructive trust, Debtor and her attorney, Michael Bowen, to breach their duty to Dalia.  The Court should not countenance it.

### C.     THE SETTLEMENT AGREEMENT ALSO INTEFERES WITH DALIA'S RIGHT TO ENFORCE (AND PROTECT) EQUITABLE DISTRIBUTIONS FROM A DIVORCE SETTLEMENT AND DOMESTIC SUPPORT

23.     As the District Court found, the Divorce Settlement Agreement and the Integrated Agreement are conditioned on each other, and both deal directly with the relinquishment of Dalia's marital property in exchange for support obligations.  At least $12.25 million of the $32.3 million represents an equitable distribution of that property.  That property is being used in lieu of maintenance, in the nature of a Domestic Support Obligation.  The effect of the Settlement Agreement is to transfer that property back to Dalia's ex-husband.  Bankruptcy courts are generally barred from redistributing marital property post-divorce decree.

24.     The Trustee's Settlement Agreement purports to convey and release the $32.3 million, including the $12.25 million found to be owing to Dalia.  Dalia holds a prior, superior right pursuant to her constructive trust and divorce decree to that property.  Her claims cannot be discharged, nor may her property be forfeited by a Settlement Agreement among the Debtor and her insiders.  For this reason as well, the Settlement should not be approved.

### D.     THE SETTLEMENT AGREEMENT IGNORES JUDICIAL COMITY BETWEEN THE FEDERAL AND STATE COURTS' MULTIPLE ORDERS, JUDGMENTS AND OPINIONS

25.     Everything sought by the Settlement Agreement to be adjudicated in a summary

contested Rule 9019 Settlement Agreement is now pending in the SDNY.  As discussed in *Am.*

*Bankers Life Assurance Co. v. Overton,* 128 F. App'x 399, 403 n.16 (5th Cir. 2005), "[t]he federal

courts have long recognized that the principle of comity requires federal district courts—courts of

coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's

affairs." (citations and quotations omitted); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

961 F.2d 1148, 1161 n. 28 (5th Cir. 1992) ("The *West Gulf* and *First City* cases deal with the so-

called first-to-file rule, which comes into play when a plaintiff files similar lawsuits in two different

federal districts."); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th

Cir. 1985) ("To avoid these ills, a district court may dismiss an action where the issues presented

can be resolved in an earlier-filed action pending in another district.")."  The same rule applies

when parallel proceedings are pending – ("Under the first-to-file rule, when related cases are

pending before two federal courts, the court in which the case was last filed may refuse to hear it

if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*,

174 F.3d 599, 603 (5th Cir. 1999).

26.     Rather than grant this egregious Settlement, the far more lawful and equitable

course would be to dismiss this case and allow the SDNY to complete its adjudication of the rights

of the parties.  Simply put, there is no compelling reason to reward the beneficiaries of this

Settlement Agreement with a $32.3 million windfall, after their long history of fraud, including

fraud that allowed them to obtain these funds in the first place.  This is nothing more than bad faith

and abuse of the bankruptcy system which the courts have long since rejected.  *See*, *e.g.*, *Krueger*

*v. Torres (In re Krueger),* 812 F.3d 365 (5th Cir. 2016); *Jacobsen v. Sramek (In re Jacobsen)*, 609

F.3d 647, 649 (5th Cir. 2010);  *In re Jacobsen*, 432 F. App'x 341 (5th Cir. 2011);  *In re Newton*,

No. MW 01-031, 2002 Bankr. LEXIS 2089 (B.A.P. 1st Cir., 2002);  *Condon v. Brady (In re Condon)*, 358 B.R. 317 (B.A.P. 6th Cir. 2007);  *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353 (B.A.P. 8th Cir. 2003).  It should be rejected here as well.

<div style="text-align:center">

**III.**
**ADOPTION AND INCORPORATION BY REFERENCE OF SAGI GENGER
AND THE ORLY GENGER 1993 TRUST OPPOSITION PLEADINGS**

</div>

27.     Dalia adopts and incorporates by reference, as if set out herein verbatim, the facts, arguments and authorities set forth in the respective objections of Sagi Genger and The Orly Genger 1993 Trust to approval of this Settlement Agreement, to the extent not inconsistent with the arguments made herein.

WHEREFORE, Dalia Genger request an order denying the approval of the Trustee's Settlement Agreement and dismissing this bankruptcy case, or alternative to dismissal, to transfer the venue of this bankruptcy to the Southern District of New York, where all other litigation and proceedings are pending, and for such other and further relief that Objectors, or any one of them, may be justly entitled, both at law and in equity.

Dated: October 18, 2019

Respectfully submitted,

  /s/ *Shelby A. Jordan*                         
Shelby A. Jordan
Texas Bar No. 11016700
**JORDAN HOLZER & ORTIZ, P.C.**
500 N. Shoreline Blvd., Suite 900
Corpus Christi, Texas 78401
Telephone:  (361) 884-5678
Facsimile: (361) 888-5555
sjordan@jhwclaw.com
**ATTORNEYS FOR DALIA GENGER AND
D&K GP LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served on this 18th day of October 2019 upon the parties listed in the attached service list and via ECF notification.

*/s/ Shelby A. Jordan*
Shelby A. Jordan

**Via ECF**
United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd., Suite 230
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan St., Suite 1800
San Antonio, TX 78205

**Via ECF**
c/o Trustee Ron Satija
Brian Talbot Cumings
Graves, Dougherty, Hearon & Moody
401 Congress Avenue, Suite 2700
Austin, Texas 78701

**Via ECF**
Arie Genger
c/o Deborah N. Williamson
Dykema Gossett PLLC
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

**Via ECF**
Eric Herschmann
c/o Raymond Battaglia
66 Granburg Circle
San Antonio, TX 78218-3010

**Via ECF**
Sagi Genger
c/o Sabrina Streusand & TPR Investment
Streusand, Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746

**Via ECF**
Eric J. Taube
Waller Lansden Dortch & Davis, LLC
100 Congress Ave, Suite 1800
Austin, Texas 78701

**Via ECF**
Thomas A. Pitta
Emmet, Marvin & Martin, LLP
120 Broadway
New York, NY 10271

**Via ECF**
The Orly Genger 1993 Trust
c/o Jay Ong
Munsch Hardt Kopf & Harr PC
303 Colorado Street, #2600
Austin, Texas 78701

**Via ECF**
SureTec Insurance Co.
c/o Ryan Brent DeLaune
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, Texas 75202

**Via ECF**
Ron Satija
P.O. Box 660208
Austin, TX 78766-7208

# EXHIBIT B

19-13895-jlg 19-13895-jlg Doc 61 Filed 06/01/21 ... Filed 12/06/19 ... Pg 1205443 Exhibit 60
Case 1:17-cv-03881-KBF Document 80-19 Filed 05/31/18 Page 1 of 2
Pg 24 of 47

**Sagi Genger**
**1121 Park Avenue**
**New York, NY 10028**

November 10, 2004

Orly Genger
1965 Broadway
New York, NY

Dear Orly:

In connection with the attached letter (the "Promise") from me to our mother, Dalia Genger, dated October 30, 2004, you agree to indemnify, defend, and hold me harmless, for and against one-half (1/2) of any and all payments, liabilities, damages, claims, actions, losses, settlements, penalties, judgments or obligations (each a "Claim"), including my reasonable counsel and other professional fees, expenses and costs, which arise from my undertakings in the Promise.

I will notify you promptly of any Claims.

Very truly yours,

*[signature]*

Sagi Genger

AGREED TO AND ACCEPTED
THIS        DAY OF NOVEMBER, 2004

*[signature]*

Orly Genger

Case 1:19-cv-09319 Document 8 Filed 03/08/19 Page 2 of 2

**Sagi Genger**
**1121 Park Avenue,**
**New York, NY 10028**

October 30, 2004

Dalia Genger
210 East 65th St.
New York, NY 10021

**Promise**

Dear Mom,

    This letter confirms our understanding with respect to certain payments that I am prepared to make to you in consideration of the following. My sister Orly and I are benefiting by the receipt of a total of 794.40 shares of Trans-Resources, Inc. ("TRI"), or beneficial interests in those shares, by trusts for our benefit. In reliance on this letter and in consideration of the trusts' receipt of these shares and other consideration, you are giving up valuable marital rights, and you desire further assurance that you will have sufficient funds to support your lifestyle.

    If you, in your sole and absolute discretion, from time to time desire funds to support your lifestyle, you may request in writing that I make payment to you as provided in this letter. Promptly upon receipt of the request, I will pay to you (1) an amount equal to all dividends, distributions, proceeds or other payments attributable to 794.40 shares of TRI (adjusted for any splits or similar action) that have previously been paid to Orly, me or any trust for the benefit of either of us, less any amounts previously paid to you pursuant to this letter, or (2) any lesser amount indicated in your request.

    We intend for this letter to be a binding agreement under New York law. Please confirm that this letter correctly reflects your understanding by signing below.

Sincerely,

Sagi Genger

Agreed

Dalia Genger

1268584.3

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DALIA GENGER,                                           Case no. 17-CV-08181 KBF-DCF

                                    Plaintiff,

            -against-

                                                        **JUDGMENT**

SAGI GENGER,

                        Defendant/Third-Party Plaintiff,

            -against-

ORLY GENGER,

                        Third-Party Defendant.
-----------------------------------------------------------------x

The above-captioned action having been commenced by DALIA GENGER ("DALIA") as

plaintiff, against SAGI GENGER ("SAGI") as defendant, in the United States District Court for

the Southern District of New York, seeking, *inter alia,* damages for breach of contract; and SAGI

having appeared and defended herein; and SAGI having joined ORLY GENGER ("ORLY") as a

third-party defendant; AND ORLY having appeared and defended herein; and DALIA having

moved pursuant to FRCP 56(a) for an order granting summary judgment to Dalia on her breach of

contract claim against Sagi (ECF Doc. 70); and this Court (Forrest, J.) having granted DALIA'S

motion for summary judgment in its decision and order dated July 27, 2018, entered by the Clerk

of this Court on the same date, and attached hereto (ECF Doc. 101); it is hereby

**ORDERED, ADJUDGED AND DECREED**, that plaintiff DALIA GENGER, on her

breach of contract claim against Sagi (ECF Doc. 70), do recover of defendant SAGI GENGER and

the Clerk is directed to enter judgment in favor of DALIA GENGER in the amount of $6,000,000

in damages, plus statutory interest in the amount of $443,835 pursuant to CPLR Article 50 at 9%

per annum from October 21, 2017 through entry of this Judgment, plus reasonable counsel and

other professional fees, expenses and costs in connection with this action, in an amount to be determined and that plaintiff DALIA GENGER have execution therefor.

**AND**, pursuant to Fed. R. Civ. P. 54(d)(2), any motion for attorney's fees shall be made no later than 14 days following the entry of this Judgment. Dated: New York, New York 8/17, 2018 SO ORDERED. _____

JUDGMENT, signed this 17th day of August 2018.

ENTER: _____

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
DALIA GENGER,                        :
                    Plaintiff,       :
                                     :
            v.                       :
                                     :
SAGI GENGER,                         :
                    Defendant/Third-Party :
                    Plaintiff,       :
                                     :
            v.                       :
                                     :
ORLY GENGER,                         :
                    Third-Party Defendant. :
------------------------------------------------------------X
```

<div style="border:1px solid">
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>July 27, 2018</u>
</div>

17-cv-8181 (KBF)

<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

Once again before the Court is the seemingly never-ending saga of the Genger family.[1] Joining the fray for the first time is Dalia Genger, the family matriarch. The other two parties—siblings Sagi and Orly Genger—are frequent fliers. The present dispute, like those that came before it, stems from the contentious divorce of Dalia and Arie Genger, Sagi and Orly's parents.

All three parties have filed dispositive motions—Dalia moved for summary judgment against Sagi, Sagi moved for summary judgment against Orly, and Orly moved to dismiss the third-party complaint. Those motions are now fully briefed. Though at first glance the issues raised appear complex, the Court's resolution of this action is not; many if not all of the relevant questions have been decided in prior proceedings.

---

[1] For the sake of clarity, in this Opinion & Order the Court will refer to the members of the Genger family by their given names.

19-13895-jlg19-13895-jlg Doc 61 Claim 9-1 Filed 07/21/21 Filed 12/06/19 Pg 31 of 47 Entered 06/09/21 17:05:43 Exhibit 60
Pg 31 of 47

Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 2 of 18

For the reasons stated below, the Court hereby DENIES Orly's motion to
dismiss, GRANTS Dalia's motion for summary judgment, and GRANTS Sagi's
motion for summary judgment.

I.   BACKGROUND

What follows is a brief recitation of the facts[2] most relevant to resolution of
the outstanding motions.  The facts are undisputed unless otherwise noted.

A.   Factual Background

1.   Divorce and Integrated Agreement

In 2004, Arie and Dalia Genger divorced.  As part of the divorce, Dalia agreed
to convey her marital rights to 794.40 shares of Trans-Resources, Inc. ("TRI") to
trusts benefiting Sagi and Orly.  In exchange, Sagi and Orly committed to
financially support Dalia.  This arrangement was effectuated via three separate
agreements:

- First, Dalia and Arie signed a stipulation of settlement finalizing the
  terms of their divorce settlement (the "2004 Divorce Stipulation"),
  which was fully executed on October 30, 2004.

- Second, Sagi and Dalia signed a letter dated October 30, 2004 (the
  "2004 Promise") pursuant to which Sagi agreed to pay Dalia up to the
  value of the TRI stock she conveyed to the two trusts, upon Dalia's

---

[2] The following facts are derived from: (1) the Local Civ. R. 56.1 statements submitted by the parties
in connection with the two motions for summary judgment (ECF Nos. 73, 75, 92, 94); (2) supporting
materials submitted by the parties in connection with their motions; and (3) public records of the
parties' prior judicial proceedings, including those in this Court.  The Court primarily recites facts
relevant to the claims and defenses currently at issue, but also includes some facts that, while not
directly material to the present dispute, are nonetheless important to understanding the context of
this litigation.

demand.  The 2004 Promise further specifies that Dalia has "sole and
absolute discretion" to demand funds under the agreement.

- Third, Sagi and Orly signed a letter dated November 10, 2004 (the
"2004 Indemnity") pursuant to which Orly agreed to indemnify Sagi
"for and against one-half (1/2) of any and all payments, liabilities,
damages, claims, actions, losses, settlements, penalties, judgments or
obligations . . . , including [Sagi's] reasonable counsel and other
professional fees, expenses and costs, which arise from [Sagi's]
undertakings in the [2004 Promise]."

In a prior proceeding in this Court, it was determined that Orly was
vacationing in Fiji at the time the 2004 Promise was signed, and therefore could not
contemporaneously sign the document.  See Genger v. Genger, 76 F. Supp. 3d 488,
493 (S.D.N.Y. 2015) ("Genger I").  However, before Sagi signed the 2004 Promise,
Orly verbally agreed to indemnify Sagi for one-half of the payments he would have
to make under the 2004 Promise.  Id.  As such, and for the reasons set forth in the
Court's Opinion & Order dated January 5, 2015, the Court held that the 2004
Promise and 2004 Indemnity constituted a single integrated agreement, noting
"neither agreement makes any sense without the promises expressed in the other."
See id. at 497.  The Second Circuit subsequently affirmed that decision.  See Genger
v. Genger, 663 F. App'x 44 (2d Cir. 2016) ("Genger II").  Accordingly, the 2004
Promise and 2004 Indemnity will be referred to collectively as the "2004 Integrated
Agreement" for purposes of this Opinion & Order.

2.    The 2014 Demand and Lawsuit

On or about January 22, 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise (the "2014 Demand"), which Sagi paid.  Sagi subsequently informed Orly of Dalia's demand, and on February 17, 2014 formally demanded payment of $100,000 pursuant to the 2004 Indemnity.  Orly refused to pay, and Sagi filed suit in this Court the very next day (the "2014 Lawsuit").

The Court resolved the 2014 Lawsuit by Opinion & Order dated January 5, 2015.  See generally Genger I.  As previously noted, the Court held that the 2004 Promise and 2004 Indemnity constituted a single integrated agreement (the "2004 Integrated Agreement"), and that the 2004 Integrated Agreement was valid and enforceable.  The Court further found that Sagi had monetized his beneficial interest in the TRI shares for $37.0 million, and that Orly had monetized her beneficial interest for $32.3 million, a substantial portion of each attributable to Dalia's conveyed marital interest.  Id. at 493-94.  Finally, the Court held that Orly was liable for breach of contract as a result of her failure to pay Sagi $100,000 (representing one-half of Sagi's payment to Dalia).  Id. at 502.

Orly appealed, and on September 29, 2016, the United States Court of Appeals for the Second Circuit (the "Second Circuit") issued an Opinion affirming this Court's decision in full.  See generally Genger II.  The Second Circuit explicitly held that "the [2004 Promise] and the [2004 Indemnity] form an integrated agreement in which Orly has a contractual duty to reimburse Sagi for half of the

4

19-13895-jlg 19-13895-jlg Doc 461 Claim 0-0 Filed 06/01/21 Filed 06/09/21 Pg 305 of 543 Exhibit 60
Pg 34 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 5 of 18

amount he pays Dalia for living expenses." Id. at *48. The Second Circuit further

held that because the 2004 Promise gave Dalia "sole and absolute discretion" to

demand funds up to the value of the TRI stock she conveyed, there was "no merit" to

the argument that Sagi or Orly could avoid payment by "challenging Dalia's need

for the money she demanded." Id. at *50.

### 3.   The 2017 Demand and Procedural History

On October 21, 2017, Dalia demanded $6,000,000 from Sagi under the 2004

Promise (the "2017 Demand"). Unlike the 2014 Demand, however, Sagi refused to

pay. As a result, Dalia commenced the instant breach of contract action against

Sagi three days later, on October 24, 2017. (See generally Compl., ECF No. 1.)

Dalia subsequently filed an Amended Complaint on March 23, 2018. (See Amend.

Compl., ECF No. 58.)

In answering the operative complaint, Sagi conceded that the 2004 Promise

was valid and enforceable, but argued "the payment obligation was a joint

obligation of his with Orly, who has recently indicated she will not honor that

obligation, and thus it would be inequitable for Sagi to once again make a payment

to Dalia without Orly's immediate reimbursement." (See Answ. to Amend. Compl.

and First. Amend. Third-Party Compl. ("Third-Party Compl.") ¶ 10, ECF No. 59.)

Accordingly, Sagi brought a third-party complaint against Orly for breach of the

2004 Indemnity. (Id. at 3-8.)

5

19-13895-jlg  19-01362-jlg  Claim 0-67  Filed 06/07/21  Entered 06/09/21 3:05:43  Exhibit 60
Pg 35 of 47
Case 1:17-cv-08181-KBF  Document 101  Filed 07/27/18  Page 6 of 18

B.    Orly's Motion to Dismiss

On May 16, 2018, Orly filed a motion to dismiss Sagi's third-party complaint.
(ECF No. 64.) Orly argues that because she is a United States citizen domiciled in
Israel, she is a non-diverse party and the Court lacks subject-matter jurisdiction.
(See Mem. of Law in Support of Mot. to Dismiss ("Orly MTD Mem.") at 4-6.) Orly
further argues, in sum, that the Court lacks supplemental jurisdiction over the
third-party claims because there is no actual legal controversy between Dalia and
Sagi, and therefore she is properly considered a defendant in this action (not a
third-party defendant). (Id. at 7-9.)

Sagi opposed Orly's motion to dismiss as part of his omnibus memorandum
dated May 30, 2018. (See Sagi Mem. at 5-17.)[3] Sagi argues that Orly's domicile is
irrelevant with regards to the primary action, and that the Court has supplemental
jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1367(a). (Id. at 6-9.)
With respect to Orly's argument that the parties should be "realigned," Sagi argues
that there is a bona fide controversy between himself and Dalia as a result of his
refusal to pay. (Id. at 7-8.) Sagi further denies that there was any collusion
between himself and Dalia. Orly replied on June 6, 2018, reiterating many of the
same arguments she had previously made. (ECF No. 86.)

On June 4, 2018, the Court solicited further briefing from the parties
regarding Orly's argument that the parties should be realigned, with a specific focus

_____

[3] For purposes of this Opinion & Order, "Sagi Mem." refers to Sagi's omnibus "Memorandum of Law
in Opposition to Orly Genger's Motion to Dismiss and Dalia Genger's Motion for Partial Summary
Judgment and in Support of His Cross-Motion for Partial Summary Judgment," filed at ECF No. 76.

on "[t]he scope of a district court's power to realign parties" and "the nature and application of the 'collision of interests' test in the Second Circuit." (ECF No. 83.) In doing so, the Court noted "if Orly's argument is correct, the result would be full dismissal of this action . . . for lack of subject matter jurisdiction." (Id.) All three parties to this action subsequently filed supplemental briefs addressing those questions on June 22, 2018. (ECF Nos. 97, 98, 99.)

    C.   Motions for Summary Judgment

Subsequent to Orly's motion to dismiss, both Dalia and Sagi filed motions for partial summary judgment. Those motions (and corresponding responses) are briefly summarized below:

- On May 22, 2018, Dalia moved for partial summary judgment on her breach of contract claim against Sagi, arguing that because this Court previously held the 2004 Promise to be valid and enforceable, there is no triable issue as to whether Sagi is required to pay Dalia's demand in full. (See Mem. of Law in Supp. of Mot. for Summ. J. ("Dalia SJ Mem."), ECF No. 72.) Sagi responded as part of his of his omnibus memorandum dated May 30, 2018, but did not raise any substantive arguments on his own behalf in opposition to Dalia's motion. (See Sagi Mem. at 17.) Sagi did, however, note that he was refusing to pay "[g]iven Orly's prior insistence that she be afforded an opportunity to defend any claim by Dalia." (See id. at 3.) Dalia replied on June 5, 2018.

- On May 30, 2018, as part of an omnibus memorandum opposing the other dispositive motions in this case, Sagi moved for partial summary against Orly. (See Sagi Mem. at 17-19.) Sagi argues, in sum, that there are no triable issues of material fact, and that Orly is required to indemnify him in the amount of $3,000,000 pursuant to the 2004 Indemnity. (Id.) Sagi further argues that it doesn't matter that he hasn't paid Dalia's demand, because the 2004 Indemnity calls for indemnification of all "claims." (Id. at 19.) Orly opposed Sagi's motion on June 13, 2018, arguing that further discovery is necessary pursuant to Fed. R. Civ. P. 56(d). (See Mem. of Law in Opp'n to Sagi Genger's Mot. for Partial Summ J. ("Orly SJ Opp'n") at 9-12, ECF No. 89.) Specifically, Orly argues that the following potential issues require further discovery: (1) whether Orly's obligation to Sagi is "capped" by virtue of the 2004 Promise; (2) whether the money demanded by Dalia is necessary to support her lifestyle; and (3) whether Dalia and Sagi violated the implied duty of good faith and fair dealing. (Id. at 9.) Orly further argued that Sagi is not entitled to summary judgment because he has not yet paid Dalia's demand. (Id. at 13-14.) Sagi replied on June 20, 2018. (ECF No. 93.)

Both motions for summary judgment are now fully briefed.

19-13895-jlg 19-13895-jlg Doc 61 Claim 0-07 Filed 06/11/21 Filed 12/09/21 Pg 34 of 43 Exhibit 60
Pg 38 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 9 of 18

## II.   LEGAL PRINCIPLES

### A.   Summary Judgment Standard

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Only disputes relating to material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Id. at 248; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In reviewing a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

9

summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

B.   Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, federal courts may exercise "diversity jurisdiction" over civil actions between citizens of different States, between U.S. citizens and foreign citizens, and by foreign states against U.S. citizens when the matter in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Courts have consistently interpreted § 1332 as requiring complete diversity; that is, "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) (citations omitted).

For purposes of diversity jurisdiction, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990); accord Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001). Indeed, "the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." Cresswell, 922 F.2d at 68. Even if one

10

19-13895-jl 19-13895-jlg 61 Claim-06 Part 1 Filed 02/06/12 Pg 3651743 Exhibit 60
Pg 40 of 47
Case 1:17-cv-08181-KBF    Document 101    Filed 07/27/18    Page 11 of 18

party is a foreign citizen, the presence of another party who is a U.S. Citizen

domiciled abroad prohibits maintenance of the action on the basis of diversity. <u>Id.</u>

at 68-69.

That being said, a federal court may, in certain circumstances, exercise

supplemental jurisdiction over non-diverse third-party claims. <u>See</u> 28 U.S.C. §

1367(a). The court may do so when such third-party claims "are so related to claims

in the action within such original jurisdiction that they form part of the same case

or controversy." <u>Viacom Int'l, Inc. v. Kearney</u>, 212 F.3d 721, 726-27 (2d Cir. 2000).

Section 1367(b) prevents <u>plaintiffs</u> from bringing third-party claims against non-

diverse parties, but not defendants. <u>See</u> 28 U.S.C. § 1367(b). This reflects

"Congress' intent to prevent original plaintiffs—but not defendants or third

parties—from circumventing the requirements of diversity." <u>Viacom</u>, 212 F.3d at

726.

C.    <u>Realignment of Parties</u>

In <u>Indianapolis v. Chase Nat'l Bank</u>, 314 U.S. 63, 69 (1941), the Supreme

Court held that "[d]iversity jurisdiction cannot be conferred upon the federal courts

by the parties' own determination of who are plaintiffs and who are defendants." In

other words, the parties themselves may not manufacture diversity jurisdiction by

manipulating the pleadings. To protect against such occurrences, the Court must

"look beyond the pleadings and arrange the parties according to their sides in the

dispute." <u>Id.</u> (internal quotation omitted); <u>see also</u> <u>Maryland Cas. Co. v. W.R. Grace</u>

<u>& Co.</u>, 23 F.3d 617, 623 (2d Cir. 1993) (holding that "[t]he purpose in realigning

19-13895-jlg  19-13895-jlg  61  Claim 0-0  7 of 11  Filed 06/09/21  Pg 3705543  Exhibit 60
Pg 41 of 47
Case 1:17-cv-08181-KBF  Document 101  Filed 07/27/18  Page 12 of 18

parties is to make sure that there is a <u>bona fide</u> controversy between, as the [diversity jurisdiction] statute commands, citizens of different states.")

In determining whether realignment is warranted, the court must inquire as to whether there is a "collision of interests" between the parties as named in the pleadings. <u>See</u> <u>Maryland Cas. Co.</u>, 23 F.3d at 622. Under the so-called "collision of interests" test, the court must satisfy itself that there exists "an actual, substantial controversy" between the parties, and not merely "[h]ypothetical conflicts manufactured by skillful counsel." <u>Id.</u> at 622-23 (citations omitted). Realignment is a "fact-specific inquiry" which requires the court to examine not only the pleadings themselves, but also "the realities of the record." <u>Id.</u> at 623 (quoting <u>Indianapolis</u>, 314 U.S. at 69.)

D.     <u>Breach of Contract</u>

Under New York law, to recover for breach of contract, a plaintiff must prove "(1) the existence of a contract between [plaintiff] and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." <u>Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011) (citation omitted); <u>see also</u> <u>Flomenbaum v. N.Y. Univ.</u>, 71 A.D.3d 80, 91 (N.Y. App. Div. 2009); <u>Clearmont Prop., LLC v. Eisner</u>, 58 A.D.3d 1052, 1055 (N.Y. App. Div. 2009).

III.   DISCUSSION

For purposes of this Opinion & Order, the Court addresses each of the three

pending motions separately, in the order in which they were filed.

A.   <u>Orly's Motion to Dismiss</u>

Orly's motion to dismiss is premised on the argument that, as a U.S. citizen

domiciled in Israel, she is a non-diverse party over whom the Court lacks subject-

matter jurisdiction.  Because the Court concludes, however, that there is an actual

controversy between Dalia and Sagi (and therefore no basis to realign the parties),

it need not actually resolve the contested question of Orly's domicile.

As previously noted, it is well-established that federal courts may exercise

supplemental jurisdiction over non-diverse third-party claims that are "so related to

claims in the action . . . that they form part of the same case or controversy."  28

U.S.C. § 1367(a); <u>see also</u> <u>Viacom Int'l, Inc.</u>, 212 F.3d at 726-27.  As such, assuming

that Orly was properly brought into this action as a third-party, her domicile is

effectively irrelevant—since § 1367(a) gives the Court supplemental jurisdiction

over Sagi's third-party claims, it makes no difference whether the Court would have

original jurisdiction over those same claims.

Orly, however, argues that she was <u>not</u> properly brought into this action as a

third-party, and that is the crux of her motion to dismiss.  According to Orly, there

is no true "collision of interests" between Dalia and Sagi.  Instead, Orly alleges that

Dalia and Sagi have improperly manipulated the pleadings in an attempt to

19-13895-jlg 19-13895-jlg Doc 61 Claim 6 Filed 06/01/21 Entered 06/01/21 Exhibit 60
Pg 43 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 14 of 18

artificially manufacture supplemental jurisdiction, and that the Court should realign the parties according to their true interest in this action.

The Court understands Orly's argument. It certainly appears, based on the timing of the pleadings and certain similarities in the language used, that there was some coordination between Dalia and Sagi. Furthermore, Sagi has not seriously contested his own legal obligation to pay the 2017 Demand. Indeed, he has conceded that the 2004 Promise is valid and enforceable, and does not appear to contest the amount of Dalia's demand. The only "defense" Sagi has raised is that it would be inequitable for him to pay without immediate reimbursement, and his "opposition" to Dalia's motion for summary judgment is limited to just four sentences. (See Sagi Mem. at 17.) All of these factors suggest that Dalia and Sagi may have more in common than they let on.

Nonetheless, the practical reality is that Sagi has refused to pay. In determining whether parties should be realigned, the relevant inquiry is whether there exists a "bona fide controversy" (or "collision of interests") between the parties as named in the pleadings. See Maryland Cas. Co., 23 F.3d at 623. Here, Sagi's refusal to perform under the 2004 Promise represents such a controversy. Although Sagi may not have any legal basis to refuse (and although he may be well aware of that), there is simply no indication that Sagi will pay the 2017 Demand absent a Court order requiring him to do so. For that reason alone, there is a justiciable controversy between Dalia and Sagi, and therefore no basis to rearrange the parties.

19-13895-jlg 19-13895-jlg 61 Claim 0-1 Doc 670-1 21 Filed 12/09/21 Pg 44 of 543 Exhibit 60
Pg 44 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 15 of 18

Because the Court concludes that realignment is not warranted, and because the Court has supplemental jurisdiction over Sagi's third-party claims against Orly, the Court hereby DENIES Orly's motion to dismiss at ECF No. 64.

## B.   Dalia's Motion for Partial Summary Judgment

Dalia has moved for summary judgment against Sagi on her breach of contract claim.[4] Based on the prior rulings of this Court in Genger I (and the Second Circuit's subsequent affirmance in Genger II), is has been conclusively established that: (1) the 2004 Integrated Agreement is valid and enforceable; (2) Sagi and Orly monetized their beneficial interests in the TRI shares for a total of $69.3 million, a substantial portion of which was attributable to Dalia's conveyed marital interest; and (3) pursuant to the 2004 Integrated Agreement, Dalia is entitled to demand payment up to a certain amount[5] in her "sole and absolute discretion." Sagi has not contested any of those facts, and has not made any legal arguments in defense of his own liability besides a vague assertion that it would be "inequitable" for him to pay without immediate indemnification by Orly.

In New York, a breach of contract claim requires: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4)

---

[4] Dalia has not moved for summary judgment on her second cause of action for declaratory judgment. (See Amend. Compl. ¶¶ 17-21.)

[5] Both Dalia and Sagi agree that Dalia's conveyed marital interest of 794.4 shares represents 36% of the total TRI shares that were monetized. Using that figure, the maximum amount payable to Dalia under the 2004 Integrated Agreement is approximately $24.7 million (or 36% of the total $69.3 million value). Orly has not specifically disputed the 36% figure, though she has raised unrelated questions about how the so-called "cap" in the 2004 Integrated Agreement affects her obligations to Sagi. In any event, there has been absolutely no suggestion by any party that Dalia's demand for $6 million exceeds the amount attributable to her conveyed marital interest of 794.4 shares, and indeed the figure cited by Dalia and Sagi is consistent with documents previously submitted to the Court in connection with the 2014 Lawsuit.

19-13895-jlg 19-1388952 Doc 61 Claim 0-1 Filed 07/21/21 Entered 12/09/21 Pg 45 of 47 Exhibit 60
Pg 45 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 16 of 18

damages to the plaintiff caused by that breach. <u>See</u> <u>Diesel Props. S.r.l.</u>, 631 F.3d at

52. Based on the established facts recited above, there is no triable issue as to

whether all of the elements of Dalia's breach of contract claim are satisfied.

Accordingly, the Court hereby GRANTS Dalia's motion for partial summary

judgment at ECF No. 70.

> C.   <u>Sagi's Motion for Partial Summary Judgment</u>

Sagi has moved for partial summary judgment against Orly on: (1) his breach

of contract claim; (2) his promissory estoppel claim; and (3) his declaratory

judgment claim to the extent of the $3,000,000 liability sought in this action.[6] As

previously noted, it has already been conclusively established that the 2004

Integrated Agreement is valid and enforceable, and therefore that Orly is required

to indemnify Sagi for half of any payments made pursuant to the 2004 Promise.

Indeed, Sagi's third-party claims in this action are nearly identical to the claims he

prevailed on in the 2014 Lawsuit, the only difference being the quantum of Dalia's

demand (and the fact that Sagi has yet to pay). The Court has reviewed all of Orly's

arguments in opposition to summary judgment, and finds them to be without merit

for the reasons below.

First, Orly argues that she is entitled to further discovery under Fed. R. Civ.

P. 56(d). But summary judgment can only be postponed pursuant to Rule 56(d)

when further discovery is reasonably expected to create a genuine issue of material

---

[6] Sagi has not moved for summary judgment on his third cause of action to the extent it seeks declaratory judgment in excess of the $3,000,000 sought in this action. (<u>See</u> Third-Party Compl. ¶¶ 25-28.)

19-13895-jlg 19-13895-jlg Claim 61 Filed 06/01/21 Filed 06/01/21 Pg 46 of 47 Exhibit 60
Pg 46 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 17 of 18

fact.  See Hoffmann v. Airquip Heating & Air Conditioning, 480 F. App'x 110, 112

(2d Cir. 2012).  Here, there is simply no question as to Orly's liability, and therefore

no reasonable likelihood that further discovery will affect the outcome of Sagi's

motion.  Indeed, Orly's Rule 56(d) affidavit makes clear that she is effectively

seeking to relitigate issues already conclusively decided in Genger I.  For instance,

Orly seeks discovery related to, inter alia, Dalia's assets and financial expenses.

(See Decl. of Michael Paul Bowen ("Bowen Decl.") ¶ 7, ECF No. 90.)  But the Second

Circuit has already explicitly held that there is "no merit" to the argument that Sagi

or Orly could avoid payment by challenging Dalia's need for the payment.  See

Genger II at *50.  The other discovery sought by Orly—including records related to

Sagi's potential control of certain funds and whether Dalia and Sagi have acted in

bad faith—are simply irrelevant.  Orly's contractual obligation to indemnify Sagi for

payments made under the 2004 Integrated Agreement has nothing to do with the

relationship between Dalia and Sagi or any other litigation the parties are currently

involved in.

Second, Orly argues that Sagi is not entitled to summary judgment because

he has not yet paid Dalia.  As an initial matter, that argument is now moot in light

of this very Opinion & Order, which grants Dalia's motion for summary judgment

against Sagi.  Furthermore, Orly's refusal to pay (which does not appear to have

been conditioned on Sagi's own refusal) constitutes an anticipatory breach of the

2004 Indemnity.  Sagi is entitled to seek relief for that anticipatory breach in the

form of a judgment setting the amount of Orly's liability.

19-13895-jlg 19-13895-jlg Claim 6 Filed 07/01/21 Filed 12/06/19/21 Pg 435 543 Exhibit 60
Pg 47 of 47
Case 1:17-cv-08181-KBF   Document 101   Filed 07/27/18   Page 18 of 18

Put simply, the plain language of the 2004 Integrated Agreement makes clear that Orly is obligated to indemnify Sagi for half of Dalia's demand, and there is no triable issue of fact with regards to Sagi's three causes of action.  Orly did not have any valid defense in the 2014 Lawsuit, and she does not have any valid defense today.

For the reasons set forth in Genger I and reaffirmed in this Opinion & Order, the Court GRANTS Sagi's motion for partial summary judgment at ECF No. 74.

IV.   CONCLUSION

For the reasons stated above, the Court hereby:

- DENIES the motion to dismiss at ECF No. 64;

- GRANTS the motion for summary judgment at ECF No. 70; and

- GRANTS the motion for summary judgment at ECF No. 74.

The Clerk of Court is directed to close all open motions.  The parties are directed to meet and confer and file a joint letter not later than **Monday, August 13, 2018** setting forth a schedule for resolution of the outstanding claims.

SO ORDERED.

Dated:     New York, New York
           July 27, 2018

_____
       KATHERINE B. FORREST
       United States District Judge