IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| ORLY GENGER, | § | CASE NO. 19-13895-jlg |
| | § | |
| | § | |
| Debtor. | § | |

**SAGI GENGER'S MOTION *IN LIMINE* TO EXCLUDE
IRRELEVANT ARGUMENTS PREVIOUSLY REJECTED BY
U.S. DISTRICT COURT AND U.S. COURT OF APPEALS**

Judgment-creditor Sagi Genger ("Sagi") respectfully submits this Motion *in Limine*, pursuant to Section 4 of this Court's May 20, 2021 Amended Scheduling Order (Doc. 417), to exclude arguments expected to be made by the debtor Orly Genger (the "Debtor" or "Orly") and parties held to be in common interest with her from seeking to introduce, at the June 16-18, 2021 hearing on Sagi's motion to dismiss, any arguments or evidence as to the supposed "bad faith" of Sagi, or any other party held to be in common interest with him, on the grounds that: (a) such arguments are irrelevant as a matter of law; (b) such arguments were previously considered and rejected by the U.S. District Court and U.S. Court of Appeals; and (c) the introduction of such arguments will needlessly lengthen and complicate the hearing.

**INTRODUCTION**

By Judgment entered August 17, 2018 (the "Judgment"), Sagi is a creditor of the Debtor in the amount of $3,219,698 (plus legal fees and post-judgment interest in an amount yet to be quantified). On June 28, 2019, the U.S. Court of Appeals for the Second Circuit unanimously affirmed the Judgment. *Genger v. Genger*, 771 F. App'x 99 (Mem) (2d Cir. 2019). It is undisputed that *res judicata* and collateral estoppel extend to bankruptcy cases like any other. *See In re Ditech Holding Corp. et al.,* 2021 WL 2072029 (Bankr. S.D.N.Y. May 21, 2021).

Notwithstanding the foregoing, the Debtor has declared her intention to seek to use the June 16-18 hearing to retry the legal and factual findings that were adjudicated against the Debtor in the federal courts. Specifically, by letter dated March 10, 2021 (Doc. 379), Michael Bowen, Esq., who is the Debtor's current counsel (and who previously represented putative estate creditor Kasowitz in the same case) declared that: "Debtor's theory of the case includes evidence … that Sagi used Dalia and conspired with her to make knowingly false claims under the so-called 2004 letter agreements to drive Debtor into insolvency and bankruptcy."

Mr. Bowen did not identify any specific "knowingly false claims," for the obvious reason that there are none. The Debtor's obligations under the 2004 letter agreements are set forth in a written document that she signed, which signature she ultimately did not contest,[1] and which Judge Forrest then construed as a matter of law based on its plain language. *Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y.), *aff'd*, 663 F. App'x 44 (2d Cir. 2016).

The Debtor's "theory of the case" should be excluded for three reasons. First, as a matter of law, in a motion to dismiss a bankruptcy case under 11 U.S.C. §§ 305(a) and 707, what matters is the good or bad faith of the Debtor, not the movant. Second, even if the movant's good or bad faith might otherwise be relevant in the abstract, here, the very same issue was previously adjudicated by two final federal judgments, and consequently may not be relitigated. Third, the introduction of this legally impermissible "theory" would needlessly lengthen and complicate what already will be a lengthy and complicated hearing.

Accordingly, Sagi respectfully requests that his motion *in limine* be granted.

---

[1] As Judge Forrest recounts in her 2015 summary judgment ruling in favor of Sagi, Orly's counsel initially claimed Orly's signature on the 2004 document to be a "forgery." *Genger*, 76 F. Supp. 3d at 493 n.8. After the document was authenticated by handwriting experts and other contemporaneous evidence, however, Orly abandoned her forgery claim, and at summary judgment she did not "affirmatively deny the existence of the 2004 Indemnity, or that she signed it." *Id.*

**ARGUMENT**

A trial court is afforded broad discretion in its evidentiary rulings, including those made in connection with a motion *in limine*. *See Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008). As one treatise explained, "[Federal Evidence Rule 611] imposes on the trial court the duty of balancing the trial's primary function of ascertaining the truth concerning the dispute between the parties against the needs of the courts to conserve their time and to protect witnesses from harassment or undue embarrassment at the hands of overzealous advocates." 4 *Weinstein's Federal Evidence* § 611.02[2] [a] at 611-6 (2d ed. 2017). "Restrictions on examination and exclusion of testimony are within the discretion granted the district court by Rule 611. To avoid repetition and irrelevant testimony, the court may limit testimony or exclude it altogether." *Id.* § 611.02[2][b][i] at 611-28.3 to 611-29. The trial court has "wide latitude" under Rule 611 in controlling the presentation of evidence. *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC,* 467 F.3d 107, 119 (2d Cir. 2006) (quotation omitted).

As noted above, the Debtor's "theory of the case" should be excluded for multiple reasons. First, as a matter of law, even if these nebulous allegations of Sagi's supposed "bad faith" were true (here, they have been adjudicated as false), they would be irrelevant, as the movant's alleged bad faith neither absolves the Debtor of her own bad faith, nor entitles her to the remedies afforded good faith debtors under the Bankruptcy Code. As one Court explained:

> [T]he issue raised by the bankrupt is whether a creditor may file objections to the bankrupt's discharge which are facially within the proscription of Section 14 of the Bankruptcy Act if the creditor's conduct is not in good faith …. The bankrupt's argument elides the point that the bankruptcy court must exercise its equitable powers to protect all creditors of the estate. … Thus, <u>the objecting creditor's conduct or motive is irrelevant to the issue of whether the bankrupt is entitled to receive a discharge of his obligations</u>. A bankrupt whose conduct does not justify the salutary benefits afforded by a discharge of his obligations to all of his creditors should not be heard to say that, notwithstanding such conduct, his objecting creditor lacks clean hands or proper motives in bringing to light his objectionable activities.

*Matter of Silverman*, 1 B.R. 107, 112-113 (Bankr. S.D.N.Y. 1979) (emphasis added, citations omitted), *aff'd In re Silverman*, 13 B.R. 270 (Bankr. S.D.N.Y. 1981); *accord*, *e.g.*, *Comstock v. Group of Institutional Invs.*, 335 U.S. 211, 234-35 (1948) (dissent agreeing with majority that motives that led creditor to acquire its claims and object "are not pertinent to the performance of the District Court's duty of testing the fairness of the reorganization plan"); *In re Eddington Thread Mfg. Co., Inc.,* 181 B.R. 826, 832 (Bankr. E.D. Pa. 1995) (holding that "motivations are irrelevant because this Court has an independent duty to determine whether a reorganization plan meets the confirmation requirements of 11 U.S.C. §1129").

The foregoing rule should not be confused with a debtor's right to assert an unclean hands defense in connection with a §523 action to oppose dischargeability of a specific debt, where the creditor "benefitted from his complicity in the debtor's scheme." *In re Bromley*, 126 B.R. 220, 223 (Bankr. D. Md. 1991). That has no bearing here, first because there is no allegation that Sagi was complicit in the Debtor's scheme, which rather involves a conspiracy to frustrate Sagi's valid judgment against her. Second, Sagi is not just seeking denial of discharge for his own claim, but dismissal for the benefit of all creditors, which makes this a broader issue than just Sagi. As the Bankruptcy Court explained in *Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 682 (Bankr. N.D.N.Y. 1990): "the plaintiff who commences an adversary proceeding pursuant to Code 727 opposing the Chapter 7 debtor's discharge becomes the trustee of that action as it 'inures to the benefit of all creditors.' … A creditor commencing an adversary proceeding based upon Code 523, on the other hand, seeks to 'vindicate only its own debt.' … A creditor's withdrawal of an objection to discharge, therefore, is a unilateral act which affects the entire class of creditors." (quoting *Cunningham v. Elco Distributors, Inc.,* 189 F.2d 87, 89 (6th Cir. 1951); *Austin Farm Center v. Harrison (In re Harrison),* 71 B.R. 457, 459 (Bankr.D.Minn.1987)).

Further, even if the Debtor's "theory of the case" were not *per se* inadmissible, it would be inadmissible here, because the Debtor has already litigated and lost this same issue, through two rounds of federal court actions, appeals, and final judgments. In opposition to Sagi's first motion for summary judgment, for example, the Debtor argued that:

> <u>Sagi's promissory estoppel claim also fails because of Sagi's unclean hands</u>. Specifically, Sagi, as President of TPR, promised to do all that was necessary to effectuate the transfer of TRI shares to his sister …. Sagi instead executed the Side Letter Agreement agreeing to sell the Orly Trust's TRI shares. …Thereafter, Sagi successfully argued to this Court that … TPR — and not the Orly Trust — should have received the $10.3 million in proceeds for those shares. <u>Under these circumstances, Sagi is foreclosed from seeking any equitable relief</u>. … Having first taken for himself all the Orly Trust TRI shares and their millions in proceeds, Sagi now turns around and claims his gratuitous promise to his mother still must be borne 50-50 by his sister. Sagi is wrong.

Case 1:14-cv-05683-KBF-DCF Doc. 53, pp. 23-25 (emphases added).

District Judge Forrest rejected the Debtor's argument and awarded Sagi summary judgment on his equitable claim for promissory estoppel (in addition to his legal claim for breach of contract) as a matter of law. As the District Court explained:

> [O]n July 24, 2014, the Appellate Division … held that as an officer of TPR, Sagi's fiduciary duty was to the corporation and its stockholders, and that Sagi had not breached any duty to Orly in failing to honor the agreement to transfer the TRI shares to her trust. *Genger v. Genger*, 121 A.D.3d 270, 278-79 (N.Y. App. Div. 2014). Sagi's behavior here is consistent with his duty to TPR and its shareholders, and does not rise to the immoral or unconscionable level required to bar him from relief under the doctrine of unclean hands.

*Genger v. Genger*, 76 F. Supp. 3d at 503.

Orly appealed that ruling to the U.S. Court of Appeals for the Second Circuit, arguing, *inter alia*, that the District Court erred in rejecting her "unclean hands" defense. Her appeal was argued by the same Mr. Bowen who now represents her in this bankruptcy. In 2016, the Court of Appeals unanimously affirmed the District Court's 2015 grant of summary judgment in Sagi's favor. In doing so, the Second Circuit expressly rejected Orly's argument that "Dalia's bad faith" was

sufficient "to create a genuine dispute as to material fact," holding that: "we find <u>no merit</u> in [Orly's] argument." *Genger,* 663 F. App'x at 50 (emphasis added).

Not dissuaded, Orly raised the same argument in the second District Court action in 2017. For a second time, Judge Forrest rejected the argument, noting that: "Orly's Rule 56(d) affidavit makes clear that she is effectively seeking to relitigate issues already conclusively decided in *Genger I*. For instance, Orly seeks discovery related to, *inter alia*, Dalia's assets and financial expenses. (*See* Decl. of Michael Paul Bowen …)." *Genger v. Genger*, 2018 WL 3632521, *7 (S.D.N.Y. July 27, 2018). As the District Court further held: "the Second Circuit has already explicitly held that there is '<u>no merit</u>' to the argument that Sagi or Orly could avoid payment by challenging Dalia's need for the payment." *Id.* (emphasis added).

Once again, the Debtor appealed, and once again, she lost her appeal. In a June 28, 2019 Summary Order, the Court of Appeals dispensed with this same argument for a second time, expressly rejecting Orly's contention "that the District Court failed to consider evidence that Dalia and Sagi engaged in bad faith. Even assuming that we left open in *Genger II* the possibility that Sagi—or Orly, as Sagi's putative indemnitor—could assert a bad-faith defense to a request by Dalia under the 2004 Promise, Orly has failed to do so here." *Genger*, 771 F. App'x at 101. Further, the Second Circuit held, "Orly cannot explain how Dalia and Sagi's alleged bad faith bears on her unambiguous obligation to Sagi under the 2004 Indemnity." *Id.*

Now, the Debtor seeks to misuse the June 16-18, 2021 hearing as a *third* bite at the apple. She should not be permitted to do so. The matters presented to this Court by Sagi's motion to dismiss will be challenging enough, without the Debtor trying to relitigate irrelevant arguments she has already litigated and lost, no less than twice. The hearing should be limited to the matters raised in Sagi's motion, and whether they justify dismissal of this case.

## CONCLUSION

Accordingly, Sagi respectfully requests the Court enter an *in limine* order excluding all arguments and evidence as to the Debtor's above-referenced "theory of the case."

Dated: June 1, 2021                         **EMMET, MARVIN & MARTIN, LLP**

/s/ *John Dellaportas*
Thomas A. Pitta
John Dellaportas
Beth Claire Khinchuk
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, New York 10271
(212) 238-3000
jdellaportas@emmetmarvin.com