**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza,*
*Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Deborah J. Piazza, Esq.
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                     :
                                           :          Chapter 7
ORLY GENGER,                               :
                                           :          Case No.:  19-13895 (JLG)
                      Debtor.              :
                                           :
------------------------------------------------------------ x

### CHAPTER 7 TRUSTEE'S OBJECTION TO SAGI GENGER'S AMENDED MOTION TO DISMISS BANKRUPTCY CASE

TO:    THE HONORABLE JAMES L. GARRITY
       UNITED STATES BANKRUPTCY JUDGE

Deborah J. Piazza, the successor chapter 7 trustee (the "Trustee") of the estate of Orly Genger (the "Debtor") hereby submits this objection (the "Objection") to Sagi Genger's ("Sagi") amended motion to dismiss this bankruptcy case (the "Motion" or "Motion to Dismiss").  In support of the Objection, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.     Sagi is simply unable to satisfy his burden of demonstrating "cause" to dismiss the Debtor's chapter 7 case.  The parties in this case engaged in exhaustive discovery resulting in the exchange of thousands of pages of documents as well as the deposition testimony of over a dozen witnesses, at significant expense to the estate.  In conducting this exercise, not only did Sagi fail to prove his allegations, by refusing to withdraw the Motion to Dismiss and proceeding with discovery, he established a process by which the Trustee and other parties learned of certain

misconduct on the part of Sagi, Dalia, and Michael Oldner, individually and in his capacity as trustee of the Orly Genger 1993 Trust, and entitles that they control (collectively, the "Sagi Group") that potentially give rise to additional claims that may be pursued against them, absent a resolution thereof.

2.      The Trustee will touch on some of the allegations raised by Sagi that have been refuted through discovery, but in the interest of avoiding duplication with the Debtor's objection to the 25-page Motion to Dismiss (the "Debtor's Objection") [See Dkt. No. 425] which details the factual defenses to the allegations, subject ultimately to the evidentiary record to be established at the upcoming hearing, the Trustee will highlight the benefits that the continued administration of this case will have to the estate, and its creditors, as well as the judicial system as a whole.

3.      This case has been pending for almost two years, in large part, due to the significant discovery that was required in connection with Sagi's Motion to Dismiss.  Since the transfer of this case to New York in December 2019, the Court has held numerous conferences and resolved or determined various disputes amongst the parties, including numerous discovery issues.  Further, this Court has also reviewed thousands of pages of documents pertaining to this case, including as cited in the *Motion to Determine the Inapplicability of the Automatic Stay* to various actions pertaining to the Disputed Settlement Proceeds (defined below) and various objections thereto. See Dkt. Nos. 258, 273, 274, and 280. This Court also reviewed a similar amount of paper and heard oral argument in Dalia's constructive trust action pending in this Court, which pertain, in part, to the Disputed Settlement Proceeds. See Adv. Pro. Dkt. Nos. 12, 13, 14, 16, 24, 25, 27, 28, and 29, 36 and 38.  Moreover, in getting familiar with the facts, aside from the documents provided to the Court by the various parties in connection with pending matters before the Court, this Court has noted the "long history of litigation" and indicated that the Court reviewed some of the prepetition history of litigation. See *Memorandum Decision and Order Granting*

*Motion For Protective Order*, p. 2., fn. 2.  Lastly, the Court's institutional knowledge of this case will become even more informed at the upcoming evidentiary hearing.  In sum, this Court is in the best position to continue to oversee this case and various duplicative and derivative actions to their eventual conclusion.

4.     Through the filing of this bankruptcy case, an automatic stay went into effect to prevent a "race to the Courthouse" and allow the Trustee, in one collective proceeding, to administer this case for the benefit of all creditors with allowed claims.  Dismissal, on the other hand, will lead to continuation of numerous pending stayed actions, as well as the likelihood of commencement of future actions in multiple courts for years on end, to the detriment of the creditors and the judicial system as a whole while, at the same time, deprive what appears to be an "honest and unfortunate debtor" a discharge.

5.     Remarkably, one of the basis claimed by Sagi in support of his Motion to Dismiss is dismissal will allow him, and him alone, to continue his "turnover" proceeding in District Court. However, this argument is backwards.  Indeed, this is actually yet another reason for the Court to maintain jurisdiction as this Court should not dismiss a case to allow one disputed creditor, Sagi, to potentially collect on the Disputed Settlement Proceeds, to the exclusion of other creditors in the case.  Instead, in furtherance of the basic bankruptcy policy of "equality of distributions", all creditors are entitled to share *pro rata* in the fruits of any recovery from the Disputed Settlement Proceeds and any other assets recovered in this case.

6.     Through the Trustee's recent Settlement Motion with the Settling Parties, the Trustee has reached a settlement to resolve risky and uncertain litigation for over $2.55 million in cash, plus future potential recoveries, for the benefit of all creditors.  This settlement is an important step in the case and the Trustee hopes will provide a framework to lead to a global resolution of numerous disputes by and between the Sagi Group and the Settling Parties (defined

below).  While the Trustee is confident that the Court will find that the settlement is fair and reasonable and in the best interests of the estate such that it will be approved under the relevant Rule 9019 standards, the Sagi Group will have an opportunity to be heard in response to the Settlement Motion.  Certainly, dismissal, which would cause the estate to abruptly lose this certain substantial recovery from the Disputed Settlement Proceeds, would cause significant harm to the estate and creditors.

7.      The Trustee has always viewed the Motion to Dismiss as an inappropriate leverage play and litigation tactic that Sagi could "bargain" away if the Trustee "played ball" with the Sagi Group and simply let them continue the numerous actions pending and relating to the Disputed Settlement Proceeds.  Sagi's "strategy" in this regard did not work and unfortunately, caused the estate to incur significant legal fees and delays associated with discovery and related disputes and preparation for the upcoming evidentiary hearing that could otherwise have been avoided.

8.      The Trustee respectfully submits that the Court should deny the Motion to Dismiss.

## **RELEVANT BACKGROUND**

9.      On July 12, 2019 (the "Petition Date"), the Debtor commenced a chapter 7 case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Western District of Texas (the "Texas Bankruptcy Court").  The Honorable Tony M. Davis was the bankruptcy judge assigned to this case ("Judge Davis").

10.      On July 12, 2019, Ron Satija was appointed as the chapter 7 trustee of the Debtor's case (the "Prior Trustee").

11.      On August 25, 2019, the Prior Trustee held and closed the section 341(a) meeting of creditors, attended by the Debtor and counsel to all creditors in the case.

12.      On September 13, 2019, Sagi Genger ("Sagi"), the Debtor's brother, filed a motion

to dismiss the Debtor's bankruptcy case or alternatively transfer venue to this Court (the "Original Motion to Dismiss/Transfer Venue").

13.     Prior to this case being transferred to this Court, on September 27, 2019, the Prior Trustee entered into a settlement (the "Prior Trustee's Settlement") with ADBG, the Genger Litigation Trust, David Broser, Arnold Broser, Arie Genger, Eric Herschmann, Kasowitz Benson Torres LLP, and the Debtor, which among other things,  provided for, full resolution of the Potential Avoidance Action and the Homestead for consideration totaling $1.2 million, and which anticipated the retention by the Prior Trustee of Kasowitz Benson Torres LLP as counsel to the Prior Trustee on a contingency basis to pursue the Debtor's estate's causes of action against the Sagi Group.

14.     Judge Davis determined that he would not hear the dismissal aspect of the Original Motion to Dismiss/Transfer Venue, but that he would instead ascertain whether the case should be transferred to this Court.   Judge Davis also determined that he would not consider the Prior Trustee's Settlement until after deciding whether to transfer the case. During the same hearing, Judge Davis stated that he viewed dismissal as a "non-starter" and suggested that in light of all of the litigation between the parties "this sounds like it ought to be in bankruptcy somewhere". See Dkt. No. 140 (October 23rd Transcript, p. 6:15-16; p. 7:2:4).  Notably, Judge Davis also called the three coordinated briefs in support of the Motion to Dismiss "excessive advocacy", stating "all three of these briefs, there's more time spent calling Orly a liar than there is on the substance of the motion. That kind of pleading I find disgusting and unhelpful." See Dkt. No. 140 (October 23rd Transcript, p. 8:13 to 8:15).

15.     Against this backdrop, two weeks later, Judge Davis transferred the case and stated "I leave the alternative relief of dismissal for a decision by the Southern District of New York,". See Dkt. No. 173 (November 5th Transcript, p. 10:13 – 10:14).  By order entered on November 7,

2019, Judge Davis transferred this case to this Court. <u>See</u> Dkt. No. 168. Notwithstanding the transfer, the case did not arrive on this Court's docket until December 10, 2019. In light of the transfer of the case, Judge Davis never held a hearing on the Prior Trustee's Settlement, nor was the matter fully briefed.

16.     On December 11, 2019, Deborah J. Piazza was appointed as the successor Chapter 7 trustee in this case.

17.     On April 24, 2020, Sagi filed his amended and updated Motion to Dismiss (the "<u>Motion to Dismiss</u>"). <u>See</u> Dkt. No. 239. The Court has scheduled a hearing on June 16, 17, and 18, 2021 to consider the Motion to Dismiss.

18.     On May 28, 2021, the Trustee filed the *Motion for An Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement and (B) Grantign Related Relief* (the "<u>Settlement Motion</u>"). The Settlement Motion seeks approval of a Settlement Agreement dated May 26, 2021 (the "<u>Settlement Agreement</u>") between the Trustee, solely in her capacity as successor chapter 7 trustee and not in her individual capacity, on the one hand, and Orly Genger ("<u>Orly</u>"), Eric Herschmann ("<u>Herschmann</u>"), Arie Genger ("<u>Arie</u>"), Kasowitz Benson Torres LLP ("<u>Kasowitz</u>"), individually and in its capacity as escrow agent, David Broser (individually and in his capacity as trustee of the Genger Litigation Trust) and David Broser and related entities ADBG LLC and Tedco, Inc. (collectively, the "<u>Broser Parties</u>"), Lance Harris, solely in his capacity as trustee of the Genger Litigation Trust ("<u>Harris</u>"), the Genger Litigation Trust, Michael P. Bowen, and Claims Pursuit Inc. ("<u>Estate Claims Assignee</u>", together with Orly, Herschmann, Arie, KBT, the Broser Parties, Harris and Bowen, the "<u>Settling Parties</u>"). The Settlement Agreement resolves, among other things, the significant disputes regarding litigation claims against the Settling Parties seeking the return of approximately $32.3 million arising from a certain 2013 settlement agreement (the "<u>Disputed Settlement Proceeds</u>").

## OBJECTION TO MOTION TO DISMISS

19.     As demonstrated herein and at the upcoming hearing, it would be in the best interests of the Debtor's estate and creditors for this case to remain in Chapter 7.   The Motion to Dismiss should therefore be denied.

**A.      It Does Not Appear that the Bankruptcy Case
         Was Filed in Bad Faith Or That Sagi Has
         Otherwise Satisfied the Standards For Dismissal**

20.     In Sections A through C of the Motion to Dismiss with references to certain allegations in the Background section of the Motion to Dismiss, Sagi claims that this case should be dismissed as a bad faith filing.  Among other things, Sagi alleges the following acts or omissions that he claims supports his position:

> (a) The filing was in response to Sagi's judgment and she has made no attempt to pay any of her judgment to him (see Motion to Dismiss, ¶ 48);
>
> (b) Orly continues to live the lifestyle of a very rich woman (Id);
>
> (c) Orly transferred assets right before filing for bankruptcy to her lawyer who could not account for it (see Motion to Dismiss, ¶¶36 and 48);
>
> (d) Orly made "special arrangements" for the benefit of her father, Arie, and her husband, Eric Herschmann (see Motion to Dismiss, ¶¶ 28, 29, 33, 34, and 48), and
>
> (e) Orly was "less than candid in her bankruptcy schedules" (see Motion to Dismiss, ¶¶ 39, 40, 53 -59.

21.     First, the Court should quickly reject Sagi's argument that the case should be dismissed because Orly decided to file for bankruptcy to avoid collection on Sagi's judgment.  As the court is well aware, it is very common for a debtor to file for bankruptcy protection when such debtor has been financially ruined by a creditor's judgment and enforcement efforts.  Thus, this reason alone does not support a dismissal of this case for bad faith or otherwise.

22.     Second, in numerous filings in this Court, including the Motion to Dismiss, Sagi

alleges, with no legal support, that because Orly's husband is "wealthy", Orly "lives the lifestyle of a very rich woman", thereby suggesting she does not have a right to file for bankruptcy protection. This is not a supportable basis for dismissal. Whether Hershmann is wealthy or not, thereby allowing Orly an opportunity to live in a home and have her current and future household expenses paid by him is not a basis for the Court to dismiss the bankruptcy case of a debtor that seeks a fresh start from her debts. When they got married, Orly's debts did not become Herschman's debts.

23.    Third, the documents produced during discovery, including depositions of Orly and Lance Harris reflect that Orly liquidated less than $100,000 in bank accounts in August 2018 and sent such monies to Lance Harris, who was responsible for paying her past due legal fees and expenses to various law firms. In addition, through the depositions of Orly, Arie, Herschmann, Harris, and Kasowitz, among others, there was no evidence to support the assertions by Sagi that Herschmann's note for $2,000,000 relating to an actual payment he made to Kasowitz in late December 2016 was fabricated or that Kasowitz worked "pro bono" on all of its litigation matters. See also generally, *Kasowitz's Motion For Sanctions Against Sagi Genger and His Counsel* dated April 19, 2021 [Dkt. No. 411]. Likewise, Orly, Arie and Lance Harris, among others, testified that Arie loaned millions of dollars to Orly, as reflected in a Consolidated Note between Arie and Orly, and that the parties signed prior notes as reflected in the Whereas clauses of the Consolidated Note. The transcripts of the deposition testimony of the various witnesses who were deposed will be part of the record.

24.    It appears that many of the allegations made by Sagi in the Motion to Dismiss were as unsupportable as Sagi's allegations made earlier in the bankruptcy case while in Texas as it related to Orly's alleged bank account in Israel. The Court has already determined that "Sagi's concern about undisclosed bank accounts allegedly maintained by Orly in Israel were not well

taken. Orly did not fail to disclose a bank account in Israel, and there was no substance to Sagi's assertions to the contrary. The evidence that Orly produced to the Texas Trustee after she learned of the Orly Report showed that she had no accounts at Bank Hapoalim and only had one account that was opened at that branch and closed several years pre-petition." See Court's Memorandum and Decision dated February 9, 2021, p. 16. [Dkt. No. 348].

25.    Finally, notwithstanding various allegations about Orly's failure to list the potential claim relating to the Disputed Settlement Proceeds on her schedules, including the existence of the $15 million in notes, it is quite clear from a review of the Schedules that on page 3 therein, there was a reference as follows: "Third parties have asserted, in various litigation, that Debtor may have claims that the Debtor does not believe exist". See Schedules [Dkt. No. 20].  Further, in question 33 of the Schedules, Orly goes on to list all of the third party claims that exist, including those that refer to the Disputed Settlement Proceeds (which includes the pursuit of claims in connection with the "Trump Notes").  Thus, there was no effort to mislead or hide the existence of this asset from any creditors, notwithstanding there is not a separate specific entry in her Schedules relating to the "Trump Notes".  Clearly, this dispute concerning the rightful owner of the Disputed Settlement Proceeds is a significant issue in the case, and Sagi knew all about it, well before the filing of the bankruptcy case, as he started the "turnover" action to attempt to recover the Disputed Settlement Proceeds for himself prior to the commencement of the case.  See e.g. Dilworth v. Boothe, 69 F.23d. 621, 624 (5th Cir. 1934) ("the charge that [debtor] concealed assets and made a false oath because the equity he believed he had in the royalties was not mentioned in the schedules is technical in the extreme. The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural").  This is not a case, like some of the cases cited by Sagi in his Motion to Dismiss, where a debtor failed to disclose an asset in his or her schedules in order to intentionally hide its existence from his or her creditors.

26.    Aside from Sagi's unsupportable factual allegations, some of which were outlined above, and the balance of which have been addressed in the Debtor's Objection or will be addressed at the upcoming evidentiary hearing, Sagi's case law support fares no better.

27.    In In re Uddin, 196 B.R. 19, 21 (Bankr. S.D.N.Y.), on the motion of the Office of the United States Trustee, pursuant to section 707(b) of the Bankruptcy Code (which is not relevant herein), this Court dismissed the case of a debtor that incurred consumer credit card debt of over $170,000 in the 6 month period prior to filing for bankruptcy, including a total of approximately $60,000 of indebtedness in connection with debtor's purchase of airline tickets, clothing, jewelry, toys, a radio, a television, a microwave oven, a body massage machine, perfumes and cosmetics. The facts of that case warranted the relief of dismissal.  Such is not the case here as the Debtor does not have consumer debt and has no income to pay Sagi on account of his $3.2 million judgment or any other creditor.

28.    Sagi also cites to a number of inapplicable cases in which a debtor, not a creditor, seeks to dismiss an *involuntary* petition filed against such debtor.  See In re Murray, 900 F.3d 53, 61 (2d Cir. 2018) (finding that debtor that did not want to be in bankruptcy court was better served by dismissal of *involuntary* petition and that creditor could not show it will be substantially prejudiced by relying on New York remedies) (emphasis added); In re Selectron Mgmt. Corp., 2010 WL 3811863 at *6 (Bankr. E.D.N.Y. Sept. 27, 2010) (dismissing *involuntary* petition at request of debtor).  As such, these cases are distinguishable on this basis alone.

29.    In addition, Sagi also seems to misunderstand the purposes of Chapter 11 versus Chapter 7 and differences between corporations and individuals.  In re Syndicom Corp., 268 B.R. 26 (Bankr. S.D.N.Y. 2001), cited by Sagi, is a chapter 11 case in which a landlord was granted stay relief in response to a bad faith filing of a corporate shell debtor.  Another case, In re Loco Realty Corp. 2009 WL 2883050 at *7 (Bankr. S.D.N.Y. June 25, 2009), involved a corporate

debtor in which the Court found that "a debtor who has no realistic chance of successfully emerging from bankruptcy should no longer be in chapter 11". <u>CT-C 9th Ave Partnership</u>, 113 F.3d 1304 (2d Cir. 1997), which is quoted in <u>Loco Realty</u>, and cited in the Motion to Dismiss, is also a chapter 11 case that has no bearing on this Chapter 7 case, which is governed by section 707(a)'s standard for dismissal.

30.    In re Krueger, 812 F.3d 365, 374-75 (5th Cir 2016), a non-binding decision cited by Sagi, is a good example of an extreme case in which bad faith dismissal may be appropriate.  In <u>Krueger</u>, the debtor, who was the only witness at the evidentiary hearing in support of his petition, was found not to be credible, and was accused of false testimony and filings, misleading the court and threatening a witness, among other things.   In determining to dismiss the case, the Court also found that "the automatic stay…has no place being deployed against honest but unfortunate creditors who stand in the path of a dishonest bankrupt". <u>Id</u>. at 373.  This Court will, at the upcoming evidentiary hearing, determine whether Sagi is the "honest but unfortunate creditor" that was victimized in the <u>Krueger</u> case.

31.    Sagi also suggests that this Court must evaluate his Motion in the context of a fourteen factor bad faith test articulated in <u>In re Lombardo</u>, 370 B.R. 506, 512 (Bankr. E.D.N.Y. 2007).  It is questionable that this factoring test is the applicable standard commonly used by lower courts in the Second Circuit, but even if it were, the facts and circumstances of the <u>Lombardo</u> case clearly are distinguishable from the case at hand.  First, the debtor in <u>Lombardo</u> decided not to appear at an evidentiary hearing as a witness, whereas here, Orly has been deposed twice during this case and is expected to testify at the upcoming hearing in support of her bankruptcy petition. Further, the chapter 7 trustee in <u>Lombardo</u> did not take a position on the motion to dismiss and had instead filed a notice of no distribution, finding that there were no assets to administer. <u>Id</u>. at 507. In this case, the Trustee disputes the Motion to Dismiss and has entered into a settlement for $2.55

million, and the estate stands to gain significantly more in litigation recoveries from the Estate

Claims Assignee, to the extent of any recoveries on the Estate Claims being sold as part of the

Settlement Agreement before the Court. Further, in <u>Lombardo</u>, the Court found the debtor's

conduct in misleading her former lawyer in providing services to the debtor in a divorce proceeding

with no intent to pay, despite the lawyer's good services, was "egregious" and constituted bad faith

on the part of the debtor in that case. <u>Id</u> at 513.

**B.** **Ironically, Even if Some of Sagi's Allegations Are Proven, They**
**<u>Support Keeping the Case in Chapter 7 To Redress the Alleged Wrongs</u>**

32.    As noted, there does not appear be evidentiary support for numerous allegations in

the Motion to Dismiss but even if some of the allegations were proven true, it does not necessarily

follow that dismissal would be in the best interest of the estate and creditors.

33.    For instance, Sagi has accused Arie of "backdating" notes relating to loans by him

to his daughter Orly and that Kasowitz worked "pro bono" for years on various litigation matters.

Sagi goes further to highlight that Arie obtained a UCC lien in the one year period of the

bankruptcy filing in connection with such alleged obligations. Sagi claims that if these allegations

are true, the case should be dismissed.

34.    The Trustee disagrees with Sagi's assertions.  The Bankruptcy Code includes a

claims reconciliation process that allows a trustee to review claims to ascertain whether they

should be allowed or disallowed or subordinated.  In addition, the Bankruptcy Code provides that

an insider party that files a lien within the one year of bankruptcy could have such lien avoided as

a preferential transfer under section 547 of the Bankruptcy Code.  Indeed, through the proposed

Settlement Agreement, while the Trustee has not yet reconciled and fixed Arie's claim, the Trustee

has already negotiated away his lien for the benefit of the estate.  And, if the proposed Settlement

Agreement is not ultimately approved by the Court, the Trustee could otherwise easily file an

adversary proceeding to avoid such lien for the benefit of the estate, and to the extent the claim is

"inflated", an objection to the proof of claim can be filed.[1]  Dismissal of the bankruptcy case, on

the other hand, would require Sagi to prove an actual or constructive fraudulent transfer occurred

in favor of Arie, if Sagi sought to avoid such lien, through his enforcement actions.

35.    Likewise, while the Trustee has seen no evidence to support Sagi's assertion that

Kasowitz worked *pro bono* for years such that its $1.57 million claim was not valid, if the Court

were to agree with Sagi's assertions, this case need not be dismissed on that basis alone.  Instead,

all other creditors, including Sagi, would benefit from a claim objection under section 502(b)(1)

of the Bankruptcy Code that could quickly decide the issue, rather than lengthier and more costly

state court litigation to set aside a disputed claim (or any subsequent payments of Orly's property

outside of bankruptcy to a so-called disputed creditor).  The same holds true for any creditor that

has asserted an invalid proof of claim.

36.    Moreover, aside from preferential transfer law, which is a Bankruptcy Code created

remedy that does not exist outside of bankruptcy, keeping this case in chapter 7 will also keep

open the possibility that certain claims can be equitably subordinated under section 510(c) of the

Bankruptcy Code.  All of these tools and remedies (and others) available to a trustee under the

Bankruptcy Code could be utilized here to maximize value for creditors in this case.

37.    Finally, like the Prior Trustee, the Trustee believes that this case should remain in

Chapter 7 to allow the Trustee to maximize value for the benefit of the bankruptcy estate and its

creditors.

### C.    This is Not a Two Party Dispute Justifying Dismissal Under Section 305(a)(1)

38.    In Section D of the Motion to Dismiss, Sagi claims that this is a "two party" dispute

---

[1] Likewise, Sagi's defective abstract of judgment, which does not create a lien under Texas law, such that it can be voided for this reason alone, is also subject to being avoided as a preferential transfer having been filed in the one year period before the bankruptcy petition was filed.  Efforts to resolve Sagi's inflated proof of claim claim and the Trustee's potential counterclaims have not been successful because Sagi has frequently advised that any resolution of his claim would require the pursuit of a claim pertaining to the Disputed Settlement Proceeds.

that justifies dismissal under section 305(a)(1) of the Bankruptcy Code, stating among other things, "there has been no showing of any financial pressure on the Debtor by any creditor other than Sagi, making this essentially a two-party dispute." <u>See</u> Motion to Dismiss, 61.  This statement is unsupported by any case law, and as the Court knows, this is not a "two party" dispute.   Sagi implicitly acknowledges this fact by referring to this matter as a "two-party dispute between *two family factions*".  <u>See</u> Motion to Dismiss, ¶ 61.  A total of 14 proofs of claim have been filed in the case.  The Settling Parties are compromised of, among others, Arie, Herschmann, ADBG LLC, the Genger Litigation Trust, and Kasowitz, a total of <u>five</u> parties that have filed claims in the case.  Meanwhile, the Sagi Group is comprised of Sagi, TPR, Dalia, D&K GP LLC, and the Orly Genger Trust, a total of <u>five</u> parties that have filed proofs of claim in this case.

39.     Sagi goes on to say that "the involvement of every other party or alleged creditor is derivative of, and would be resolved as part of, the adjudication by the District Court of that two-party dispute".  <u>Id</u>.  This statement is also unsupported and is rebutted by well-established law that the best forum for determining a resolution of derivative claims is the bankruptcy court. <u>See generally</u>, Settlement Motion, ¶¶ 147 to 206) (citing numerous cases that stay or otherwise enjoin duplicative and derivative claims).

**D.    Sagi's Actions and Potential Claims Against Him Should Be Considered By the Court As It Exercises Its Discretion on the Relief Requested**

40.     The Trustee respectfully submits that as the Court considers the evidence at the upcoming hearing, the Court should consider whether Sagi's actions *vis a vis* the Debtor and this estate should be rewarded by the approval of his Motion to Dismiss.

41.     In the Original Motion to Dismiss/Transfer Venue filed in Texas in September 2019, Sagi accurately reflected that he maintained a claim arising from the judgment in the Forrest action in the amount of approximately $3.2 million.  However, as the bar date for claims approached on December 10, 2019, Sagi elevated that claim from roughly $3.2 million to over $12

million based on a post-petition "Settlement agreement dated December 5, 2019" between Dalia
and Sagi in which Sagi agreed to consent to an enhanced claim of over $24 million to Dalia based
on a footnote in the Forrest decision.  In turn, Sagi then takes the position that ½ of the amount
owed to Dalia can now be asserted against the bankruptcy estate .  The Trustee believes that this
roughly $12 million claim filed against the estate should be reduced to reflect the actual amount
of the $3.2 million judgment, subject to any counterclaims that may exist that may further reduce
the amount of Sagi's claim.

42.    In the Motion to Dismiss, Sagi argues that he has won all his cases against Orly,
attempting to cast himself as a victim of spurious litigation by Orly against him.  However, the
facts are clear that Sagi has received over $44 million of the family's wealth, including all of
amounts that Sagi negotiated for his trust, the Orly Trust, and Arie Genger.  It should not be a
surprise that Orly hired counsel, and with the assistance of her father, Arie, pursued her rights in
connection with certain state court actions.

43.    While the actions against Sagi, thus far, have not resulted in large damage awards,
those actions have not been finally resolved.  For instance, in the action styled Orly Genger v. Sagi
Genger, Index No. 100697/2008, the Debtor pursued Sagi on account of his alleged fraud in
connection with the sale of Orly's interest in a Canadian real estate interest to her brother for
considerably less than the actual value.  After a trial on the fraud claim, Sagi was found liable for
fraud.  The Appellate Division, however, reversed the liability finding and remanded for a
reopened trial limited to the issues of (i) whether Orly sustained any pecuniary loss, an essential
element of liability for fraudulent inducement, and (ii) calculation of damages, if any, so that a
unified judgment may be entered:

> [T]he court's finding of liability is vacated and the matter remanded for a reopening
> of the trial on the limited issue of whether Orly suffered actual pecuniary loss.  In
> the event the court finds such a loss, it shall, in the same proceeding, determine the
> amount of Orly's damages.  The evidence otherwise supported the court's finding

that Orly had satisfied her burden of proving the remaining elements of her cause of action for fraud in the inducement. We find no basis to disturb the court's factual findings and credibility determinations.

*Genger v. Genger*, 144 A.D.3d 581, 582-83 (1st Dep't 2016).

44.     Thereafter, Michael Kupka of Mazars LLP was appointed as an expert on damages and issued a report in June 2019, right before the bankruptcy filing, which calculated the value of Orly's interest in the Canadian real estate venture to be $99,551 with a "discount for lack of marketability" applied, and $132,734 without such a discount. While the damages are lower than what Orly and her counsel expected, it is clear that even a small amount of damages reflects that there was a pecuniary loss, the final element of a fraud liability finding.

45.     Notwithstanding this Court's request that the parties hold matters in abeyance pending the outcome of the Motion to Dismiss, Sagi attempted, on August 31, 2020, to dismiss this state court action, a claim that belongs to the estate and is "property of the estate". On September 14, 2020, the Trustee filed an objection, which was sustained by Judge Jaffe. A more detailed description of this state court action is included in the *Trustee's Memorandum of Law in Opposition to Sagi's Motion to Dismiss for Abandonment Or, In the Alternative, Want of Prosecution*, annexed hereto as **Exhibit "A"**, along with a copy of Judge Jaffe's decision. Mr. Mazars' report is not a final adjudication of the damages in this action and the trial will need to be continued to assess whether the report is a proper calculation of damages or whether the damages are actually far greater than the amounts in his report. After Justice Jaffe sustained the Trustee's objection, the Trustee and Sagi agreed that the trial can be delayed until after this Court's determination of the Motion to Dismiss this bankruptcy case.

46.     In another action styled as *Orly Genger v. Dalia Genger, Sagi Genger, Leah Fang, D&K GP, LLC, & TPR Investment Assoc., Inc., Index No. 109749/2009 (N.Y Sup. Ct. N.Y. Cnty.)*, Orly pursued various causes of action, including Dalia Genger for fraud and Sagi Genger for

breach of fiduciary duty. The Court made a determination years ago that Sagi had breached his

fiduciary duty to Orly, but in or about March 2019, during the damages phase of the action, the

court awarded no damages.  The appeal of the damages determination has been noticed but has not

yet been perfected.  The Appellate Division Clerk handling such appeal advised counsel to the

Debtor in December 2019 that in light of the pending bankruptcy of the appellant (Orly) and the

automatic stay, the time to perfect the appeal was stayed.  Absent a resolution with Sagi, the

Trustee will consider a perfection of this appeal against Sagi.

47.    Finally, as more fully set forth in the Debtor's Objection and the Trustee's

Settlement Motion, Sagi engaged in various acts, starting in June 2019, that could give rise to

additional counterclaims for damages.

48.    Separate and apart from the above-mentioned counterclaims, it is clear that all of

these actions, including a finding of fraud in the 2008 Action could potentially lead to the equitable

subordination of Sagi's claim in this case.  As indicated, the Trustee desires a resolution with Sagi

concerning his inflated proof of claim and potential counterclaims and hopes that a settlement of

these discrete issues is possible without the need for litigation.

49.    Sagi, in his Motion to Dismiss, cites to a non-bankruptcy case from the Supreme

Court that describes the "good faith" requirement of litigants. See Precision Instrument Mfg. Co.

v. Auto Main. Mach. Co., 324 U.S. 806, 814-15 (1945) as follows:

> The guiding doctrine…is the equitable maxim that 'he who comes into
> equity must come with clean hands.' This maxim is…a self imposed
> ordinance that closes the doors of a court of equity to one tainted with
> inequitableness or bad faith relative to the matter in which he seeks relief,
> however improper may have been the behavior of the defendant.  That
> doctrine is rooted in the historical concept of court of equity as a vehicle for
> affirmatively enforcing the requirements of conscience and good
> faith…Thus while 'equity does not demand that its suitors shall have led
> blameless lives,'…it does require that they shall have acted fairly and
> without fraud or deceit as to the controversy in issue.

This direct quote taken from Sagi's Motion to Dismiss, which is designed to attack Orly's good

faith in the bankruptcy case, can also be applied to Sagi, as the moving party, who seeks relief from this court through the Motion to Dismiss.

50.    For these reasons, the Trustee respectfully submits that this Court may consider the foregoing as it weighs the evidence and the credibility of the witnesses at the upcoming hearing.

## JOINDER IN OTHER OBJECTIONS

51.    The Trustee hereby joins in any other objections filed by parties in interest, only to the extent not inconsistent herewith.  The Trustee expressly does not join in any portion of any objections that allege that the Trustee has no rights in the Disputed Settlement Proceeds.

## RESERVATION OF RIGHTS

52.    The Trustee reserves the right to further supplement this Objection at or prior to the evidentiary hearing to consider the Motion to Dismiss.  The parties await the completion of briefing on the Motion to Dismiss as Sagi's reply is due on June 7, 2021. The Trustee expressly reserves the right to submit any exhibits and evidence into the record in advance of or at the evidentiary hearing in accordance with any deadlines established by the Court.

**WHEREFORE**, the Trustee respectfully requests that this Court (a) deny the Motion to Dismiss consistent with this Objection and any other objections to the Motion, to the extent not inconsistent herewith, and (b) grant such other and further relief as is just and proper.

Dated: New York, New York
        June 1, 2021

                        **TARTER KRINSKY & DROGIN LLP**
                        *Attorneys for Deborah J. Piazza*
                        *Chapter 7 Trustee*


                By:      /s/Rocco A. Cavaliere
                        Deborah J. Piazza
                        Rocco A. Cavaliere
                        1350 Broadway, 11th Floor
                        New York, New York 10018
                        (212) 216-8000

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ORLY GENGER,

           Plaintiff,

    -against-

SAGI GENGER,

           Defendant.

Index No.: 100697/08

Motion Seq. No. 054

**MEMORANDUM OF LAW OF DEBORAH J. PIAZZA, AS SUCCESSOR
CHAPTER 7 TRUSTEE OF THE ESTATE OF ORLY GENGER IN SUPPORT OF HER
OPPOSITION TO DEFENDANT SAGI GENGER'S MOTION TO DISMISS FOR
ABANDONMENT OR, IN THE ALTERNATIVE, FOR WANT OF PROSECUTION**

TARTER KRINSKY & DROGIN LLP
Rocco A. Cavaliere
Jonathan E. Temchin
1350 Broadway, 11th Floor
New York, New York 10018
Tel: 212-216-8000
Fax: 212-216-8001
rcavaliere@tarterkrinsky.com
jtemchin@tarterkrinsky.com

*Counsel for Deborah J. Piazza,*
*Successor Chapter 7 Trustee*

{Client/086201/1/02181510.DOCX;2 }

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ................................................................................................ 6

    A.   The Fraud Trial, Damages Remand, and Court-Directed Audit .................................... 6

    B.   July 2019 Bankruptcy and August Mediation Calendar Court Date ............................. 8

ARGUMENT .......................................................................................................................... 10

  I.   No Statutory Authority Permits Dismissal of this Case for General Delay ...................... 10

    A.   CPLR 3404 Is Inapplicable to this Case, Which Was Not Restored
        to Nor Stricken Off the Trial Calendar ......................................................................... 11

    B.   CPLR 3216 Does Not Authorize Dismissal of this Post-NOI Case ............................. 12

  II.   The Trustee Has Not Abandoned This Meritorious Case And Sagi Has
     Demonstrated No Prejudice ............................................................................................. 14

CONCLUSION ....................................................................................................................... 17

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM
INDEX NO. 100697/2008

NYSCEF DOC. NO. 970
19-13895-jlg    Doc 433    Filed 06/01/21    Entered 06/01/21 13:50:32    Main Document
RECEIVED NYSCEF: 09/14/2020

Pg 23 of 44

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arroyo v. Bd. Of Educ. Of the City of New York,*
    110 A.D.3d 17 (2nd Dep't 2013) ...................................................................................2, 11, 17

*Berardo v. Guillet,*
    86 A.D.3d 459 (1st Dep't 2011) ..................................................................................................10

*Berde v. N. Shore-Long Island Jewish Health Sys., Inc.,*
    98 A.D.3d 932 (2d Dep't 2012) ...................................................................................................12

*Fuller v. Rolm Telecomms. Co.,*
    255 A.D.2d 485 (2d Dep't 1998) .................................................................................................14

*Genger v. Genger,*
    144 A.D.3d 581 (1st Dep't 2016) ........................................................................................2, 3, 7, 14

*Genger v. Genger,*
    2016 WL 551444 (Sup. Ct. Feb. 10, 2016) ...........................................................................2, 6, 7

*Hebert v. Chaudrey,*
    119 A.D.3d 1170 (1st Dep't 2014) ..............................................................................................12

*Johnson v. Sam Minskoff & Sons, Inc.,*
    287 A.D.2d 233 (1st Dep't 2001) ....................................................................................11, 13, 14

*Lopez v. Imperial Delivery Serv., Inc.,*
    282 A.D.2d 190 (2d Dep't 2001) ...........................................................................................13, 14

*Nunez v. Goodman,*
    186 A.D.2d 521 (1st Dep't 1992) ................................................................................................11

*In re Orly Genger,*
    No. 19-13895-JLG ..........................................................................................................................1

*Salles v. Manhattan and Bronx Surface Transit Operating Authority,*
    224 A.D.2d 334 (1 Dep't 1996) ...............................................................................................5, 11

*Wells Fargo Bank, N.A. v. Vazquez,*
    57 Misc. 3d 941 (N.Y. Sup. Ct. 2017) ........................................................................................11

**Other Authorities**

22 NYCRR 202.45 ................................................................................................................. 2, 12

(22 NYCRR) § 202.27 .......................................................................................................... 13

Administrative Order of the Chief Administrative Judge No. AO/78/20 ....................................... 5

CPLR 3216 ......................................................................................................................... *passim*

CPLR 3216 and 3404 ................................................................................................................ 11

CPLR 3216(b) ............................................................................................................................. 3

CPLR 3216(d) ........................................................................................................................ 3, 12

CPLR 3404 ......................................................................................................................... *passim*

CPLR 3404 and 3216 .......................................................................................................... 13, 17

Executive Order Nos. 202.8 ...................................................................................................... 5

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM   INDEX NO. 100697/2008

NYSCEF DOC. NO. 970   19-13895-jlg   Doc 433   Filed 06/01/21   Entered 06/01/21 13:50:32   Main Document   RECEIVED NYSCEF: 09/14/2020

Pg 25 of 44

Deborah J. Piazza, solely in her capacity as the court-appointed Chapter 7 trustee in the bankruptcy case captioned *In re Orly Genger*, No. 19-13895-JLG, pending in the United States Bankruptcy Court for the Southern District of New York (the "Trustee"), acting for and on behalf of the bankruptcy estate of plaintiff Orly Genger ("Orly"), submits this memorandum of law in opposition to the motion to dismiss this action, dated August 31, 2020, filed by Sagi Genger ("Sagi").

## PRELIMINARY STATEMENT

The Trustee has no doubt that the frivolous and wasteful Motion filed by Sagi was the last thing that this Court desired come across its desk while it manages its docket to impart justice to deserving litigants during this unfortunate worldwide epidemic facing this country. Indeed, the bankruptcy filing by Orly in July 2019 has resulted in a welcome reprieve to numerous Judges in both federal and state courts, including this Court, who have otherwise had to endure the unfortunate Genger family drama for too many years. The Trustee, a court-appointed fiduciary overseeing the Orly bankruptcy estate since December 2019, is an independent party with no Genger blood in her veins, and has had no desire to prematurely foist onto this Court a damages hearing to support the findings of liability against Sagi several years ago. Unfortunately, the Motion is just the latest example of a bad faith maneuver and tactic by Sagi in furtherance of some overall litigation strategy, which burdens this Court, at a time in which the Trustee is administering Orly's bankruptcy estate for the benefit of all creditors. Sagi's Motion should be denied for the reasons set forth herein.

By his Motion, Sagi seeks to dismiss this case on the ground of general delay even though it has already been tried and is pending a reopened trial solely on damages. He seeks this dismissal <u>after</u> a months-long bench trial resulted in a court ruling that he made material false statements to

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM

NYSCEF DOC. NO. 970

INDEX NO. 100697/2008

RECEIVED NYSCEF: 09/14/2020

19-13895-jlg    Doc 433    Filed 06/01/21    Entered 06/01/21 13:50:32    Main Document
Pg 26 of 44

his younger sister and only sibling, Orly; <u>after</u> the Appellate Division upheld that ruling; and <u>after</u> a court-supervised forensic audit on remand determined that Sagi's fraudulent inducement caused Orly actual pecuniary loss, confirming this court's prior trial ruling that Sagi is liable for fraudulently inducing Orly to sell him her share of the family Canadian business. *See Genger v. Genger*, 2016 WL 551444 (Sup. Ct. Feb. 10, 2016); *see also Genger v. Genger*, 144 A.D.3d 581 (1st Dep't 2016). Despite that undisputed – and lengthy – record of Orly's diligent prosecution of this action and indisputable merit of her case, Sagi argues that dismissal is mandated by CPLR 3404 and CPLR 3216 because the reopened trial on damages following remand has not yet resumed. He is wrong in every respect.

It is settled law that courts in New York have no authority to dismiss an action for general delay unless either CPLR 3404 or CPLR 3216 applies. *See Arroyo v. Bd. Of Educ. Of the City of New York,* 110 A.D.3d 17, 19-20 (2nd Dep't 2013) (power to dismiss for general delay is statutory and the courts otherwise have "no power whatsoever" to dismiss on this ground). Neither statute, however, applies here.

Section 3404 governs post-note-of-issue cases stricken from a trial calendar. It is inapplicable here because this case, upon remand, was not immediately restored to the trial calendar. The trial court instead appointed the forensic accountant, who reviewed the trial record and submissions from both sides for months, before issuing his report in June 2019, just one month before the bankruptcy filing. Neither party has reset the matter on the trial calendar by filing the requisite "notice to reschedule." 22 NYCRR 202.45 ("Where a new trial is granted by an appellate court, a notice to reschedule shall be filed with the appropriate clerk."). As demonstrated herein, the case law is abundantly clear that, because the case was not on the trial calendar (and therefore it was not and could not have been stricken from it), CPLR 3404 is inapplicable.

Section 3216 is likewise inapplicable.  While Sagi invokes subsection "(d)" of that statute, he failed to cite controlling case law authority from the First Department that clarifies that Section 3216 applies only to cases in which the note of issue has not yet been filed, *i.e.* pre-NOI cases. CPLR 3216(d) is a sentence fragment that refers to post-NOI cases but provides no authority for dismissal other than reiterating that dismissal is *not* permitted if the NOI was filed within the 90-day "safe harbor" provision of CPLR 3216(b):

> (d) After an action has been placed on the calendar by the service and filing of a note of issue, with or without any such demand, provided, however, if such demand has been served, within the said ninety day period [set forth in 3216(b)], *the action may not be dismissed* by reason of any neglect, failure or delay in prosecution of the action prior to the said service and filing of such note of issue.

CPLR 3216(d) (emphasis added).  As demonstrated herein, the Appellate Division has addressed the interplay of this CPLR provision with CPLR 3404 and has clarified that CPLR 3216 applies only to pre-NOI cases.  This case, however, is a <u>post</u>-NOI case.  The Note of Issue (at NYSCEF No. 232) precipitated the prior months-long trial, a lengthy trial decision by the Court (most of which was affirmed on appeal) as well as the appeal and remand.  *See Genger v. Genger*, 144 A.D.3d 581 (1st Dep't 2016).

Sagi cannot avoid this legal authority and controlling case law, which is conveniently omitted from his Motion.  Instead, his Motion is predicated on an August 5 2019 settlement-conference calendar at which Orly did not appear.  This appearance date was not set by the trial judge, but was administratively set as part of newly instituted "Non-Jury Mediation Calendar for various *post note of issue cases*."  Sagi Mot. Ex. A (emphasis added).  Importantly, Orly had no authority to direct her counsel to appear at the calendar call because, by that time, she was penniless and had filed for bankruptcy the previous month – of which Sagi is well aware since he has been an active creditor-litigant in those ongoing bankruptcy proceedings.  Upon filing for bankruptcy,

Orly ceded control, as a matter of federal law, over all of her assets, including her legal claims in this action, to Ronald Satija, the predecessor bankruptcy trustee (the "Predecessor Trustee") appointed in her Texas bankruptcy proceeding, before the transfer of her bankruptcy proceeding to New York in December, at which time the Trustee became the successor trustee. Under section 323 of the Bankruptcy Code, the Trustee is now the legal representative of the bankruptcy estate and has the authority to pursue causes of action that are "property of the estate" under section 541 of the Bankruptcy Code.[1] That missed appearance by the Predecessor Trustee and Orly, however, is not grounds for dismissal. In fact, the Court's own docketing system confirms that the case remains "active."

Moreover, the ensuing months of delay are not the fault of Orly, the Predecessor Trustee or the Trustee, and certainly are not evidence of abandonment of the case. The reasons why the damages hearing has not been scheduled are plentiful. First, the main reason for delay relates to Sagi's own motion to dismiss the bankruptcy case which he has refused to withdraw, and which is on the Bankruptcy Court's calendar for a hearing on October 30, 2020. The Trustee has repeatedly advised the parties, including Sagi, and the Bankruptcy Court, that once such motion is disposed of, the Trustee can complete her investigation of a number of matters, including the issues pertaining to the claims in this action. Indeed, the Bankruptcy Court has delayed hearings on numerous other matters in the case while we await the Bankruptcy Court's disposition of Sagi's motion to dismiss the bankruptcy. Second, any delays in scheduling a trial date relate, in part, to the worldwide pandemic emergency and statewide closure of the courts in New York. Under various orders of the Governor and the Chief Administrative Judge, this Court closed entirely and

---

[1] Sagi's action in filing the Motion at this time, and without notice to the Trustee, which attempts to wrest away a potential cause of action that implicates "property of the estate" and the claims reconciliation process may be actionable in their own right. The Trustee reserves all rights to seek costs and attorneys' fees in the Bankruptcy Court at the appropriate time.

was not open for filings of any kind, including any "notice to reschedule," for close to three months.  Executive Order Nos. 202.8 (tolling all deadlines for "the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding" as of March 20, 2020; *see also* Administrative Order of the Chief Administrative Judge No. AO/78/20, dated March 22, 2020 ("effective immediately and until further order, no papers shall be accepted for filing by a county clerk or a court in any matter" not deemed essential).  Moreover, the courts have not scheduled trials of any kind since last February – over *six months ago*.  This judicial district has only just recently announced that some select civil trials are set for the end of this month.  Thus, obviously, even if the Trustee were to have asked this Court to expedite a trial damages hearing, it is unlikely this Court would have been in a position to do so.

None of this systemic delay can be attributed to the Trustee (or Orly or the Predecessor Trustee) and none of it caused any prejudice to Sagi.  He certainly demonstrates no prejudice.  The remaining issues for the reopened trial all concern calculation of damages.  And that calculation will be based in large part on the business records of the companies at issue, the financial records maintained by the accountants, and the analysis of the court-appointed accountant as further elucidated by testimony concerning and based upon these records.

The very idea that the bankruptcy estate should be stripped of a cause of action of already demonstrated merit because the continued trial following remand was not scheduled to occur in the last twelve months – ***during which most of that time the courts were closed and/or no trials were permitted at all*** – is nothing short of absurd.  It offends basic notions of fairness, not to mention violates the laws of this State, including the oft-stated principle that New York favors disposition on the merits.  *Salles v. Manhattan and Bronx Surface Transit Operating Authority*, 224 A.D.2d 334, 334 (1 Dep't 1996) (three-year delay in filing notice to reschedule following

remand not a basis for dismissal "given the general policy favoring dispositions on the merits, a showing of merit, the absence of prejudice, and a not wholly implausible reading of the court rule as being self-executing").

In sum, the Trustee, as a court-appointed fiduciary in the Orly bankruptcy estate, has a right to administer the Orly bankruptcy estate for the benefit of all creditors. One of the potential assets that exist relates to the claims asserted in this action, which impacts "property of the estate" and the claims reconciliation process in the bankruptcy case.

## RELEVANT BACKGROUND

### A.  The Fraud Trial, Damages Remand, and Court-Directed Audit

After about 30 days of trial, this Court ruled that Sagi was liable for defrauding Orly out of her once-equal interest in the Genger family real estate venture in Canada through a "bill of sale" transaction that he orchestrated with his friend David Parnes. *Genger v. Genger*, 2016 WL 551444 (Sup. Ct. Feb. 10, 2016). On Sagi's appeal, the Appellate Division upheld all of this Court's factual and credibility findings, including the finding that Sagi was not credible. Indeed, this Court made the following findings as it related to Sagi:

> As defendant was plaintiff's first witness, I address his credibility first. Given the long and close personal and business relationship between defendant and Parnes, defendant's claim that he did not recognize Parnes's handwriting on the documents underlying the transaction is incredible, a conclusion buttressed by defendant's too-careful testimony that plaintiff may have filled in the figures on the bill of sale. This prevarication, as well as defendant's evasiveness and equivocation about the transaction, warrant doubt as to defendant's general credibility. Plaintiff counsel's aggressiveness in questioning defendant, while occasionally inappropriate, cannot be blamed for defendant's evasiveness.

> Defendant's evasiveness as to whether he owed plaintiff a fiduciary duty warrants additional doubt as to his credibility, for even absent such a duty, what he owed to plaintiff in terms of familial concern should have been sufficient motivation for him to find another, legal, way for plaintiff to handle the tax issue.

> Moreover, as defendant knew that the suspension of plaintiff's TPR stipends was due to plaintiff's September 2004 receipt of the $150,000 check for White Box, and

> given his intent that the promissory note not be paid until after January 1, 2006, his testimony that the transaction was a mechanism for satisfying plaintiff's need for funds has no basis. I also reject his contention that plaintiff declined payment of the $57,000 balance on the promissory note.

Genger, 2016 WL 551444 at *6.

The Appellate Division, however, reversed the liability finding and remanded for a reopened trial limited to the issues of (i) whether Orly sustained any pecuniary loss, an essential element of liability for fraudulent inducement, and (ii) calculation of damages, if any, so that a unified judgment may be entered:

> [T]he court's finding of liability is vacated and the matter remanded for a reopening of the trial on the limited issue of whether Orly suffered actual pecuniary loss. In the event the court finds such a loss, it shall, in the same proceeding, determine the amount of Orly's damages. The evidence otherwise supported the court's finding that Orly had satisfied her burden of proving the remaining elements of her cause of action for fraud in the inducement. We find no basis to disturb the court's factual findings and credibility determinations.

*Genger v. Genger*, 144 A.D.3d 581, 582-83 (1st Dep't 2016).

Following remand, in 2018 and over Orly's objection, this Court selected Michael Kupka, CPA, of Mazars USA, to conduct a damages analysis, and – also over Orly's objection – ordered that Orly and Sagi split the cost of his fees.

Upon information and belief, Mr. Kupka performed his analysis primarily based on the books and records Sagi provided him. Mr. Kupka issued his report on June 4, 2019. A month later, Orly filed for bankruptcy, as described below. In the report, Mr. Kupka found that Orly *had* incurred actual pecuniary loss caused by Sagi's fraud. Specifically, he calculated the value of Orly's interest in the Canadian real estate venture to be $99,551 with a "discount for lack of marketability" applied, and $132,734 without such a discount. Both amounts are *well more* than the $43,000 Sagi paid Orly for her interest, as already determined by this Court's trial decision.

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM
INDEX NO. 100697/2008
NYSCEF DOC. NO. 970
19-13895-jlg   Doc 433   Filed 06/01/21   Entered 06/01/21 13:50:32   Main Document
RECEIVED NYSCEF: 09/14/2020
Pg 32 of 44

Mazars submitted its report to the Court, both electronically and in hard copy, in June 2019. Neither party thereafter filed a notice to reschedule trial. This action has not been at any time following remand and remittitur restored to the trial calendar, nor has any order issued striking the matter from the trial calendar. To the contrary, the case remains "active" on the eCourts system.

### B. July 2019 Bankruptcy and August Mediation Calendar Court Date

Orly filed for bankruptcy on July 12, 2019, after Sagi obtained a roughly $3.2 million judgment against Orly and began enforcement proceedings against her. At that time, she owed millions of dollars to various parties, as set forth in the bankruptcy schedules she filed with the Bankruptcy Court, including the $3.2 million judgment that was obtained under unusual circumstances.[2]

Orly originally filed her bankruptcy case in Texas, where she lives. Sagi challenged venue and also moved to dismiss, resulting in months of delay in that action through the end of 2019. Around the same time that Orly filed for bankruptcy in July 2019, the administrative order setting this matter for an August 5, 2019 court appearance on the newly instituted Non-Jury Mediation Calendar was issued. *See* Sagi Mot. Ex. A. Orly's then-counsel in this action, Kasowitz Benson Torres LLP, however, had ceased work given the automatic bankruptcy stay and the fact that the Predecessor Trustee now was responsible for directing any legal work in this action (as well as Orly's other pending matters involving Sagi and Dalia). The Predecessor Trustee had only been recently appointed a few weeks before the August 5, 2019 conference, and Orly's section 341(a) meeting in the case had not yet even taken place. Notwithstanding Sagi's recognition that the

---

[2] In 2014 and 2017, Dalia Genger (Orly and Sagi's mother) commenced actions in federal court against Sagi Genger for "support" under a certain 2004 letter agreement between Dalia and Sagi. Pursuant to a separate indemnity agreement between Sagi and Orly, Orly had apparently agreed to indemnify Sagi for one-half of the "support" of Dalia. Dalia obtained a judgment against Sagi for approximately $6 million, and in turn, Sagi, obtained a judgment of roughly $3.2 million against Orly. Notwithstanding the judgment against her wealthy son, Dalia has failed to collect the full amount of her judgment. This is not surprising since it is generally known and understood that Dalia and Sagi get along, and in fact, even share the same counsel that signed the Motion.

claims in this action belonged to the Predecessor Trustee, upon information and belief, no effort was made by Sagi or his counsel to communicate with the Predecessor Trustee about his possible appearance at the August 5, 2019 conference. Indeed, the only communication Sagi sent with respect to the August 5, 2019 conference was to the Debtor's former counsel on the morning of the conference. See Ciparick Aff., Exh. B. Sagi now inappropriately attempts to use that one missed appearance, together with a one sentence email to former counsel to Orly (as opposed to the Predecessor Trustee) to support dismissal of an action in which liability was established at trial, at which time Sagi was found to have made fraudulent statements.

During the bankruptcy case in Texas, Sagi had filed a motion to dismiss the bankruptcy case or alternatively, to transfer venue to the Southern District of New York. The Texas court granted the change of venue (but did not decide the dismissal relief in the motion), and the case was transferred to the Southern District of New York in December 2019. The New York Bankruptcy Court appointed the Trustee, Deborah J. Piazza, as the successor Chapter 7 trustee for Orly's bankruptcy estate. However, unfortunately, in an obvious litigation tactic, and as noted herein, Sagi has continued to press his motion to dismiss the entire bankruptcy case, which hearing is scheduled for October 30, 2020. The Trustee has repeatedly advised Sagi that after the Bankruptcy Court disposes of the motion to dismiss the bankruptcy case, the Trustee will attempt, if possible, to reach a global resolution of the $3.2 million judgment Sagi obtained against Orly, as well as the Trustee's claims against Sagi in this case and other cases, as well as unasserted causes of action that the Trustee could bring. Unfortunately, Sagi filed this wasteful motion instead. Clearly, as Sagi is well aware, the Trustee has never indicated a desire to abandon the potentially valuable claims that are included in this action.

Since her appointment, the Trustee has been evaluating potential assets of the estate for the benefit of creditors, with a principal focus on alleged fraudulent transfer claims with a potential value of $32.3 million against various third parties.   Due to the Genger family's history of litigation, the Bankruptcy Court requested that the Trustee work with the various parties to submit a status report highlighting the pendency of various litigations.   That effort culminated in a non-binding Status Report dated April 17, 2020.[3]   An abridged version of the Status Report was attached to the Ciparick Affirmation.   A full copy of the Status Report highlighting all of the various litigations, is attached as Exhibit "A" to the Cavaliere Affirmation, submitted herewith.[4] Sagi fails to advise this Court that most of the litigations on the Status Report have essentially been held in abeyance by the Bankruptcy Court pending the determination of the motion to dismiss the bankruptcy case.   This case is no different.   There is simply no need for this Court to proceed with a trial on damages at this time, when the Trustee is administering other aspects of the bankruptcy case and has indicated a desire to try to resolve this matter after Sagi's motion to dismiss the bankruptcy case is denied by the Bankruptcy Court.   Unless otherwise settled, which is a possibility, the claims in this action should be decided on their merits in the future.

**ARGUMENT**

### I.   No Statutory Authority Permits Dismissal of this Case for General Delay

It is "the strong public policy of this State to dispose of cases on their merits," and not based on technicalities or procedural defaults.   *Berardo v. Guillet*, 86 A.D.3d 459, 459 (1st Dep't

---

[3] The Status Report includes a footnote no. 1 on page 2 which was regrettably not included in the Ciparick Affirmation.  The footnote includes, among others, the following sentences: "Overall, the descriptions herein are not intended to waive any parties' rights (including the Trustee) in any pending action but are provided to the Court to provide a brief background, the current status, and the positions of the parties in connection with such actions, where appropriate. Further, to the extent that that a party has described or failed to describe their view of the current status of the pending actions aor has failed to refute any party's assertions herein does not prejudice any party's rights in any pending action or in this bankruptcy case."

[4] Citations are to the accompanying Affirmation of Rocco A. Cavaliere, Esq. ("Cavaliere Aff.) in support of this Opposition.

2011). This principle has been applied uniformly to strongly disfavor dismissal due to general delay either pre-NOI or post-NOI. *See Salle*, *supra*, 224 A.D.2d at 334.

Following Court of Appeals precedent, moreover, the Appellate Division has settled the law on this point by holding that the courts have no inherent authority to dismiss cases for general delay, except as provided by statute in CPLR 3404 and CPLR 3216. *Arroyo*, 110 A.D.3d at 20 (applying Court of Appeals precedent and holding that "courts lack the inherent authority" to dismiss for "general delay," even under equitable laches principles, and that dismissal for general delay is governed solely by CPLR 3404 and CPLR 3216). *See also Wells Fargo Bank, N.A. v. Vazquez*, 57 Misc. 3d 941, 944–45 (N.Y. Sup. Ct. 2017) ("Case law, as well as the McKinney's Commentary to CPLR 3216 and 3404, make clear that those two sections are the statutory authority for a court to dismiss a case for failure to prosecute: CPLR 3216 deals with cases pre-note of issue, CPLR 3404 with cases post-note of issue.").

In his motion, Sagi improperly ignores the controlling case law in arguing that he is entitled to dismissal under either or both CPLR 3404 and CPLR 3216. As demonstrated below, the law is settled, and it is black and white, that neither CPLR provision applies here.

### A. CPLR 3404 Is Inapplicable to this Case, Which Was Not Restored to Nor Stricken Off the Trial Calendar

CPLR 3404 authorizes a court to dismiss cases that have been on and were stricken from the court's trial calendar, but only after the plaintiff fails for a year to seek to have the case restored to the trial calendar. CPLR 3404. "CPLR 3404 governs cases marked off a trial calendar only." *Johnson v. Sam Minskoff & Sons, Inc.*, 287 A.D.2d 233, 235 (1st Dep't 2001). Accordingly, if the case has *not* been stricken from the trial calendar, the provision is inapplicable. *Nunez v. Goodman*, 186 A.D.2d 521, 522 (1st Dep't 1992) ("The court properly held that defendants could not rely on the August 24 order since it contained no judicial determination that the matter was stricken from

the trial calendar. Since the case was not stricken from the trial calendar, there was no basis to invoke CPLR 3404.").

Here, this case was <u>not</u> stricken from the court's calendar for the simple reason that it was never restored to that calendar following remand. It is undisputed that neither party filed a notice to reschedule under 22 NYCRR 202.45, nor was the case otherwise restored to the trial calendar for the reopened trial of this matter. Accordingly, by its plain terms CPLR 3404 is not applicable, and no dismissal for any delay is authorized by this statute. *See Berde v. N. Shore-Long Island Jewish Health Sys., Inc.*, 98 A.D.3d 932, 932 (2d Dep't 2012) ("Where a case is not marked off or stricken from the trial calendar, but is removed from the calendar for another reason, CPLR 3404 does not apply."). *See also* Siegel, N.Y. Prac. § 375 (6th ed.) (CPLR 3404 "does not apply to strikings from other calendars, like motion or pretrial calendars or any other pre-note of issue calendar").[5]

### B.    CPLR 3216 Does Not Authorize Dismissal of this Post-NOI Case

Sagi also relies on CPLR 3216(d). But, as noted above, that provision does not expressly authorize dismissal of post-NOI cases; instead it *prohibits* dismissal of post-NOI cases where the note of issue was submitted within the 90-day period specified by that statute. That provision, which (as also noted above) is an incomplete sentence, has generated controversy concerning that statute's interplay with CPLR 3404, which expressly governs dismissal of post-NOI cases for general delay. What Sagi omits from his motion, however, is the case law that definitively settled

---

[5] The one case Sagi cited, *Hebert v. Chaudrey*, 119 A.D.3d 1170 (1st Dep't 2014), is inapposite. In that case, a trial date had actually been set on, and later was stricken from, the trial calendar after the court found that the plaintiff failed to comply with discovery obligations. *Id.* at 1171. Thereafter, the plaintiff waited more than two years to seek to restore the action. Furthermore, even if CPLR 3404 were to be applicable, Sagi cannot meet the rigorous standards for dismissal in light of the Court's findings on liability and lack of prejudice to Sagi, as more fully set forth herein,

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM
INDEX NO. 100697/2008
NYSCEF DOC. NO. 970
19-13895-jlg    Doc 433    Filed 06/01/21    Entered 06/01/21 13:50:32    Main Document
RECEIVED NYSCEF: 09/14/2020
Pg 37 of 44

the matter by holding that CPLR 3216 applies only to pre-NOI cases – and, therefore, does not govern this case, which is post-NOI.

In *Lopez v. Imperial Delivery Serv., Inc.*, 282 A.D.2d 190 (2d Dep't 2001) the Appellate Division expressly decided this issue. After analyzing the legislative history of both CPLR 3404 and 3216, the Second Department held: "Accordingly, CPLR 3216 is clearly intended to apply to cases which have not yet reached the trial calendar." *Id.* at 193-94. Applying the statutes to that case, the Appellate Division held that it was "improper" to dismiss the case for general delay occasioned after failure to appear at a non-trial calendar appearance:

> [W]e disapprove of the action taken in this case based upon the plaintiffs' failure to appear at a conference. Accordingly, because this action was never properly dismissed there was no need for a motion to restore. The case was, while perhaps comatose, still alive.

*Id.* at 200. *See generally* Siegel, N.Y. Prac. § 375 (6th ed.) (noting "extensive treatment" in *Lopez*, which "lined up the two statutes, traced their histories, described their scope and purpose, and drew a sharp line between them designed to avoid the mutual invasions that had been characterizing their application").

The statutory analysis and holdings in *Lopez* were expressly adopted by the First Department in *Johnson v. Sam Minskoff & Sons, Inc.*, 287 A.D.2d 233 (1st Dep't 2001), which is controlling law here and which Sagi failed to cite. After explicitly adopting the Second Department's "thorough analysis of the interplay among CPLR 3404, CPLR 3216 and Uniform Rules for Trial Courts (22 NYCRR) § 202.27," the First Department held:

> ***CPLR 3216 prohibits the dismissal of an action on the ground of general delay or for failure to serve and file a note of issue where the plaintiff has not been served with a 90-day demand to serve and file a note of issue*** (subd [b] [3]; *see*, *Chase v. Scavuzzo*, 87 N.Y.2d 228*; Greene v. New England Mut. Life Ins. Co.*, 257 A.D.2d 521). The statute requires that the 90-day notice be served by registered or certified mail (subd [b] [3]). This notice provision reflects the Legislature's effort to protect an unoffending

client from the severe penalty of summary dismissal or dismissal upon
notice for a lawyer's tardiness, without unduly hampering the courts.

*Johnson*, 287 A.D.2d at 237 (emphasis added). Here, of course, Sagi never served the requisite

90-day demand to serve and file a note of issue; nor would such demand be apposite to this case

because this is a *post*-NOI case, as to which CPLR 3216 does not apply.

In fact, research uncovered not a single case where a court dismissed a post-note of issue

case, like this one, pursuant to CPLR 3216 – and Sagi cites none, certainly none that post-date the

holdings in *Lopez* and *Johnson*. The one case he does cite, *Fuller v. Rolm Telecomms. Co.*, 255

A.D.2d 485 (2d Dep't 1998), is from 1998, years before the Appellate Division's decision in *Lopez*,

which supersedes the cursory statutory analysis in *Fuller*. And even in *Fuller*, the Second

Department affirmed the *denial* of the CPLR 3216 motion to dismiss given the evidence negating

intentional abandonment of a meritorious case.

## II.     The Trustee Has Not Abandoned This Meritorious Case And Sagi Has Demonstrated No Prejudice

The merits of this case have already been proven. Prior to her bankruptcy filing, Orly

prevailed in the prior trial decision on each element of her cause of action for fraudulent

inducement, save damages, and the decision on each of those elements was affirmed on appeal.

*See Genger*,144 A.D.3d at 581 ("the evidence otherwise supported the court's finding that Orly

had satisfied her burden of proving the remaining elements of her cause of action for fraud in the

inducement.    We find no basis to disturb the court's factual findings and credibility

determinations."). The court-supervised audit following remand also confirmed that Orly did incur

actual pecuniary loss caused by Sagi's fraud, which is the last element needed to affirm the finding

of liability against Sagi for fraud against his own sister.

In his motion, Sagi asserts that "Mr. Kupka found that Orly had suffered 'no loss' from the challenged transactions when the lack of marketability of the property at issue was taken into account." Sagi Mot. at 4. If that is his honest assessment, he is mistaken. The report states that there is "no loss" *only if* (i) a discount for lack of marketability (DLOM) is applied *and* (ii) $100,000 had been paid by Sagi in "consideration" for the company shares at issue in the "Bill of Sale" transaction. But, as this Court already ruled at the prior trial, Sagi paid only $43,000. The following chart appears at the conclusion of Mr. Kupka's report:

**Illustration 44 – Summary Conclusion**

| Summary | | No DLOM | With DLOM |
|---|---|---|---|
| Calculated Value of Orly's Ownership Interest ( USD$) | $ | 132,734 | $ 99,551 |
| Consideration amount for Orly's interest | | 100,000 | 100,000 |
| Difference USD$ | $ | 32,734 | no loss |

Sagi Mot. Gunther Ex. B (Kupka Report) at 63.

As the evidence adduced at trial proves, and as Sagi admitted, he paid Orly only $43,000 (through two separate checks) for her share of the companies, not the $100,000 he promised her as part of his fraudulent inducement. See Cavaliere Aff., Exh. B. Therefore, while the Trustee disputes Mr. Kupka's conclusions as to the valuation of Orly's interest in the Canadian venture (and the inadequacy of the expert's findings will be demonstrated at the reopened trial on damages), taking Mr. Kupka's numbers at face value conclusively proves Orly incurred actual pecuniary loss in the amount, at minimum, of either $56,551 or $89,734. Of course, those amounts do not include pre-judgment interest at the statutory rate of 9% since January 1, 2004, the purported effective date of the Bill of Sale. Therefore, according to Mr. Kupka, the minimum amount of the judgment against Sagi at the reopened trial including interest is either approximately $140,000 or $225,000. At the continuation of the trial, unless this matter is otherwise settled, it will be shown that in reality the damages are far greater than these amounts.

FILED: NEW YORK COUNTY CLERK 09/14/2020 05:23 PM
INDEX NO. 100697/2008
NYSCEF DOC. NO. 970
RECEIVED NYSCEF: 09/14/2020

19-13895-jlg    Doc 433    Filed 06/01/21    Entered 06/01/21 13:50:32    Main Document
Pg 40 of 44

Having no valid argument as to the merits of Orly's claim, which the Trustee may prosecute as the legal representative of Orly's estate, Sagi next misleadingly tries to find evidence of the Trustee's alleged intent to "abandon" this meritorious case by grossly mischaracterizing the Status Report filed by the Trustee, at the direction of the Bankruptcy Court, and which report included comments from parties in interest in the case. In his Motion, Sagi claims – falsely – that the Trustee's "intent is to abandon this case." Sagi Mot. at 7. As support, Sagi cites to the following excerpt from the Status Report: "subsequent to the CPA's [Mr. Kupka's] report being made to the Court, Sagi's counsel asserts that Orly left the case dormant. A Mandatory Court conference to set a trial date was not attended by any counsel on behalf of either Orly or the estate.[6] Accordingly, according to Sagi's counsel the case is ripe for dismissal for want of prosecution". However, as the quoted language makes clear, this is simply Sagi's position that this action is "ripe for dismissal." As the Status Report makes clear, the Trustee in fact rejected Sagi's position concerning abandonment. *See* Cavaliere Aff., Ex. A, hereto at pp. 13 (from SDNY Bankr. Dkt. No. 234: "the Trustee dispute[s] Sagi's counsel's assertion in the description below that the matter is ripe for dismissal for the alleged failure of the Debtor to appear at a court conference").

Finally, Sagi has not and cannot show any prejudice from any "general delay" – much of which, as noted above, is attributable, through no fault of the Trustee, to the systemic closure of the courts and inability to schedule any civil trials in this judicial district for many months caused by the global and truly unprecedented pandemic shutdown. No one, including Sagi, can argue with this obvious fact.

---

[6] This description of a "Mandatory Conference to set a trial date" provided in the Status Report by Mr. Dellaportas is contrary to the actual purpose of the special mediation conference which was noticed by this Court. See Ciparick Aff., Exh. A.

Even apart from the worldwide pandemic and statewide court closures, as the Appellate Division held, a "defendant cannot sit idly by while memories fade and evidence spoils," and even though "extensive delay in prosecuting an action may, at times, prejudice a defendant's ability to defend against a suit, a defendant has the statutory means of avoiding such prejudicial delay" by serving a demand to resume prosecution of the action or otherwise seeking intervention of the court. *Arroyo*, 110 A.D.3d at 21. Sagi did none of these things and thus some blame for this delay can be attributed to Sagi. Further, he was well aware at all times that the Trustee has been inundated with significant discovery and depositions required by Sagi's own motion to dismiss the bankruptcy case. Ultimately, putting aside all of the arguments of the parties as to the reasons for the delay on the scheduling of the trial on damages, the pandemic itself overwhelmingly constitutes sufficient reason and justification for the delay in prosecution of this action.

In all events, this general delay does not qualify for dismissal under the controlling statutes and is otherwise excusable given the extraordinary circumstances of the pandemic and Sagi's own cynical gamesmanship.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for general delay pursuant to CPLR 3404 and 3216 should be denied in its entirety. Alternatively, the Court should delay a decision on the Motion until after the Bankruptcy Court has decided the motion to dismiss the bankruptcy case. As noted herein, after the distraction of the motion to dismiss the bankruptcy case is behind us (which is expected on October 30, 2020), the Trustee hopes that global settlement discussions with Sagi regarding numerous issues and claims could be pursued. If informal settlement discussions do not work, the Trustee would be pleased to appear at either a special mediation conference or pretrial conference in early November 2020, to the extent the Court deems

appropriate.  A trial on damages may ultimately be required, but the Trustee respectfully submits

a pretrial conference would, at the very least, be appropriate in advance of any such trial.

Dated: New York, New York
      September 14, 2020

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza,*
*Successor Chapter 7 Trustee*

By:   /s/Rocco A. Cavaliere
      Rocco A. Cavaliere
      Jonathan E. Temchin
      1350 Broadway
      New York, New York 10018
      Tel.: (212) 216-8000
      Email: rcavaliere@tarterkrinsky.com
      Email: jtemchin@tarterkrinsky.com

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. BARBARA JAFFE** | PART | **IAS MOTION 12**
---|---|---

*Justice*

-------------------------------------------------------------------------------X

ORLY GENGER,

INDEX NO. 100697/2008

Plaintiff,

MOTION DATE

MOTION SEQ. NO.    054

- v -

SAGI GENGER,

**DECISION + ORDER ON MOTION**

Defendant.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 054) 954-973
were read on this motion for        dismiss for lack of prosecution        .

By notice of motion dated August 31, 2020, defendant moves pursuant to CPLR 3404 for

an order dismissing this action as abandoned, or in the alternative, pursuant to CPLR 3216, for

an order dismissing this action for want of prosecution. He alleges that more than a year has

passed since a court-ordered mediation conference was held on August 5, 2019 at which plaintiff

did not appear. Plaintiff opposes.

Defendant's allegation that more than a year passed without prosecution of this case by

the bankruptcy trustee fails to account adequately for the Governor's suspension of deadlines

from March 2020 to November 4, 2020 due to the COVID19 pandemic. Moreover, that there

was no appearance for plaintiff on August 5, 2019 is irrelevant to whether she abandoned the

action within the meaning of CPLR 3404, as the case has remained active on the court's docket

this entire time and had neither been marked off nor struck. Thus, there is nothing to restore. Nor

does defendant demonstrate that there was an intentional failure to appear on August 5.

The applicability of CPLR 3126 here is also questionable. (*See* 2PT1 West's McKinney's

Forms Civil Practice Law and Rules § 5:250 [delay in prosecuting does not alone provide ground for dismissal for want of prosecution; court may not, either *sua sponte* or on motion, dismiss complaint merely due to delay; rather, plaintiff must have "failed to take some required action, pursuant to a demand, by a specified date;" laches does not replace demand made pursuant to CPLR 3216 and will not necessarily lead to dismissal]). Even if CPLR 3216 applies in these circumstances, again, defendant fails to account adequately for the suspension of deadlines referenced above. There is thus no basis for finding that plaintiff unreasonably delayed prosecution of this matter.

Given this result, defendant's remaining contentions need not be addressed. Accordingly, it is hereby

ORDERED, that defendant Sagi Genger's motion is denied in its entirety; and it is further

ORDERED, that the parties, within 30 days of the date of this order, jointly contact the court by email to cpaszko@nycourts.gov to schedule the trial.

20201113094717B/AFFEC4BE56A0C8184A1E83E7DA29DAC77C87

__11/13/2020__
**DATE**

**BARBARA JAFFE, J.S.C.**

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED   ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |