UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re

ORLY GENGER,

Chapter 7

Case No. 19-13895 (JLG)

Debtor.
---------------------------------------------------------------x

**OBJECTION OF ADBG LLC, TEDCO, INC., DAVID BROSER, ARNOLD BROSER, ARIE GENGER AND THE GENGER LITIGATION TRUST, AND JOINDER IN SUPPORT OF DEBTOR'S AND OTHER OBJECTIONS, TO SAGI GENGER'S MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT ARGUMENTS PREVIOUSLY REJECTED BY U.S. DISTRICT COURT AND U.S. COURT OF APPEALS**

Creditors ADBG LLC ("ADBG"), Arie Genger ("Arie") and the Genger Litigation Trust, and parties-in-interest David Broser and Arnold Broser (the "Brosers") and Tedco, Inc. (together with ADBG, Arie, the Genger Litigation Trust and the Brosers, the "Objecting Parties"), hereby submit this opposition (the "Opposition") to *Sagi Genger's Motion in Limine to Exclude Irrelevant Arguments Previously rejected by U.S. District Court and U.S. Court of Appeals* [Docket No. 429] (the "Motion") filed by Sagi Genger ("Sagi") on June 1, 2021, and hereby join in the Debtor's objection and any other objections or joinders to objections to the Motion filed by other parties in interest to the extent not inconsistent with the Objecting Parties' positions (collectively, the "Objections"). In support of this Opposition, the Objecting Parties submit as follows:

**PRELIMINARY STATEMENT**

1.  The Motion should be denied in its entirety for all of the reasons set forth in the Objections. It seeks unprecedented relief: to prevent not only Orly, but "all parties held to be in common interest with her" (e.g. the Objecting Parties, Eric Herschmann and Kasowitz Benson Torres LLP), from seeking to introduce at the June 16-18, 2021 hearing on Sagi's motion

to dismiss Orly's bankruptcy case, "any arguments or evidence as to the supposed 'bad faith' of Sagi, or any other party held to be in common interest with him" (e.g. Dalia, the Orly Genger 1993 Trust and their affiliates). (Motion at 1.) Thus, Sagi is effectively seeking an order that would permit him to hurl countless baseless accusations against Orly and the Objecting Parties but at the same time deny them the opportunity to present to the Court the substantial evidence of misconduct and bad faith that they have obtained through discovery in this case pertaining to Sagi and his cohorts. That is not the way it works.

2.  Sagi has advanced no basis to support his request, which is consistent with his general view of the world that he is somehow allowed to argue whatever he wants without any basis and that all things related to the motion to dismiss – discovery and now trial – be limited to Orly's alleged actions without allowing Orly an opportunity to present her side of the case. The evidence of Sagi & Co. misconduct, which the Objecting Parties expect will be presented by Orly at the hearing on the motion to dismiss, is absolutely critical to Orly's defense to the motion to dismiss and supports her good faith intentions in filing the case under circumstances that would lead an objectively reasonable person to conclude that he or she needed to seek bankruptcy relief. To deny Orly and the Objecting Parties the opportunity to present the substantial evidence of misconduct by Sagi and his cohorts – which even the independent Chapter 7 Trustee agrees was uncovered through discovery[1] – would turn due process on its head.

---

[1] "The parties in this case engaged in exhaustive discovery resulting in the exchange of thousands of pages of documents as well as the deposition testimony of over a dozen witnesses, at significant expense to the estate. In conducting this exercise, not only did Sagi fail to prove his allegations, by refusing to withdraw the Motion to Dismiss and proceeding with discovery, he established a process by which the Trustee and other parties learned of certain misconduct on the part of Sagi, Dalia, and Michael Oldner, individually and in his capacity as trustee of the Orly Genger 1993 Trust, and entitles that they control (collectively, the "Sagi Group") that potentially give rise to additional claims that may be pursued against them, absent a resolution thereof." (*See* Docket No. 433 ¶ 1)

3.      The Motion also seeks to bind the Objecting Parties – while not even naming any of them – to Sagi's distorted interpretation of prior decisions in actions to which they were not a party, without any factual or legal basis support whatsoever despite the fact that any such determinations are questions of fact for the trial court.  Thus, the relief sought by the Motion cannot possibly be the subject of a motion *in limine*.

## BACKGROUND

4.      The Chapter 7 Trustee's recent settlement motion includes a detailed factual background relating to the Genger family's litigation history and summarizes the numerous defenses the Objecting Parties have raised to any claims against them, which they submit are dispositive and would result in no liability.  (*See* Docket No. 421 (the "Settlement Motion") ¶¶ 7-104, 139.)  In the interest of brevity, the Objecting Parties assume familiarity with these facts and provide the following summary of certain pertinent facts related to the Motion for ease of reference.  Also for brevity, the Objecting Parties' applicable supporting exhibits are cross-referenced to the exhibits to the Settlement Motion (Docket No. 423).

5.      As the Court is aware, Orly Genger is the daughter of Arie and Dalia Genger ("Dalia"), who divorced in 2004, and the sister of Sagi.

6.      In 1985, Arie formed Trans Resources, Inc. ("TRI"), a company that specializes in manufacturing and producing chemicals for agricultural use.  *See Glencova Inv. Co. v. Trans-Resources, Inc.*, 874 F.Supp.2d 292, 295 (S.D.N.Y. 2012).   TRI was wholly owned by TPR Investment Associates, Inc. ("TPR"), which was controlled by Arie.  *Id.*

### The 2004 Divorce

7.      In 2004, Dalia Genger and Arie divorced.  Before then, Arie had indirectly held majority ownership of the company he founded and ran for 25 years, TRI through

his majority ownership of TPR.[2]  Pursuant to Dalia and Arie's divorce settlement, Arie caused TPR to transfer its 52.85% stake in TRI as follows:  Arie received approximately 14% of TRI's outstanding shares (the "Arie Shares"), and the Orly Trust and the Sagi Trust each received about 19.5% ("Orly Trust Shares" and "Sagi Trust Shares," respectively).[3]  Orly did not individually receive any TRI shares, nor has she ever owned any TRI shares.  Pursuant to the divorce settlement, Arie's interest in TPR was transferred to Dalia.  Upon gaining control of TPR, Dalia ceded control to Sagi and named him as CEO.  Despite the assignments of the TRI shares, Arie maintained voting rights in TRI.

8.    As part of that divorce, Arie and Dalia entered into a stipulation of settlement dated as of October 26, 2004 (the "2004 Divorce Agreement").[4]  The 2004 Divorce Agreement provides that TPR's shares of TRI "shall be distributed as follows:  (i) The Husband [Arie] will receive 794.40 shares of the TRI Stock representing 13.99468% of the common stock of TRI; [and] (ii) Each of Sagi Genger and Orly Genger, will receive in trust 1,102.80 shares of the TRI Stock representing 19.42766% of the common stock of TRI for each of Sagi and Orly and such trusts will simultaneously therewith execute and deliver proxies to Husband [Arie] for all of the TRI stock owned by the trusts."[5]  The "trusts" referenced therein are the Sagi Trust and the Orly Trust.

9.    Dalia received substantial consideration under the 2004 Divorce Agreement, including, among other property, all of Arie's interest in TPR.[6]  However, the 2004 Divorce Agreement made clear that, "[f]ollowing the foregoing transfers of TRI Stock, *the Wife*

---

[2] *See Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F. Supp. 2d 292, 295-96 (S.D.N.Y. 2012) ("*Glenclova*").
[3] *See* Ex. 1, *Genger v. Genger*, Index No. 651089/2010 (Sup. Ct. NY County) ("2010 Action") (Jan. 3, 2013) at 2.
[4] Ex. 64, 2004 Divorce Agreement.
[5] *Id.*, Art. II, § 9(a).
[6] *See generally, id.*, Art. II.

***[Dalia] will have no ownership interest in TRI***."[7] Separately, Sagi agreed to provide Dalia with future financial support capped at an amount equal to "all dividends, distributions, proceeds or other payment attributable to 794.40 shares of TRI (adjusted for splits or similar action) that have previously been paid to Orly, me or any trust for the benefit of either of us" (the "2004 Support Agreement").[8]

10.   Dalia and Sagi contend that Orly also "agreed to indemnify Sagi for 50% of the amounts [Sagi] paid to Dalia on account of" the 2004 Support Agreement pursuant to a one paragraph letter (the "2004 Indemnity", and together with the 2004 Support Agreement, the "2004 Agreements").[9] Dalia is not a party to the 2004 Indemnity, which is solely between Sagi and Orly.

### The TRI Litigation Begins

11.   In 2008, TRI needed money. Arie offered his then-minority investors, the Trump Group, the purchase of a TRI subsidiary, in exchange for a capital infusion. In the course of finalizing the deal, the Trump Group learned about Arie's 2004 transfer of TRI shares to himself and his children's trusts.[10] As a result, the financing deal collapsed. The Trump Group then contended that the 2004 transfers contravened a 2001 shareholders agreement,[11] rendering the 2004 transfers void and activating certain option rights for the Trump Group to acquire the improperly transferred shares.[12] Arie disagreed. When negotiations failed, litigation ensued.[13]

---

[7] *Id.*, Art. II, § 9(e)(emphasis added).
[8] Ex. 66, 2004 Support Agreement.
[9] Ex. 67, 2004 Indemnity.
[10] *Glenclova,* 874 F. Supp. 2d at 296.
[11] *Id.*; *see also TR Investors, LLC v. Genger*, C.A. No. 3994-VCS, 2010 WL 3279385, (Del. Ch. Aug. 9, 2010), *aff'd in part, rev'd in part, Genger v. TR Investors, LLC*, 26 A.3d 180 (Del. 2011).
[12] *Glenclova*, 874 F. Supp. 2d. at 296.
[13] *Id.*

**Sagi Sells the TPR Shares Without Arie or Orly's Consent**

12.     In August 2008, Sagi, in his alleged capacity as President of TPR, entered into two or more agreements with the Trump Group. In the first agreement, Sagi sold the Sagi Trust Shares to the Trump Group for approximately $26.7 million.[14] The theory being that Sagi had the ability to transfer title to those shares to the Trump Group, regardless of whether he was acting in his capacity as the Sagi Trust or in his capacity as president of TPR. Separately, pursuant to an August 22, 2008 side letter agreement (the "2008 Side Letter Agreement"), Sagi, in his capacity as president of TPR, purported to sell to the Trump Group both the Orly Trust's TRI shares (for $10.3 million) and Arie's TRI shares (for $7.4 million) without the consent of or prior consultation with Orly or Arie.[15] With this arrangement, the Trump Group immediately obtained control of TRI.[16] Sagi's stated rationale for selling the Orly Trust Shares and Arie Shares of TRI at such substantial discounts to the price he negotiated for his own shares was because his sale of his own shares caused the Trump Group to become majority shareholders, and thus, Sagi claimed, as minority shareholders, a discount was warranted. Even though Sagi's and Orly's trusts equally owned the same interests in TPR, Sagi procured all of the money, without a fair and equal distribution to the shareholders.

13.     Thereafter, in separate litigation, Sagi, without opposition from Dalia[17] (despite her then role as trustee of the Orly Trust), eventually successfully captured for himself the $10.3 million in funds that had been attributable to the Orly Trust's TRI shares and

---

[14] *See* Ex. 50, Sagi Trust Stock Purchase Agreement.
[15] *See* Ex. 49, 2008 Side Letter Agreement.
[16] *Glenclova*, 874 F. Supp. 2d at 296.
[17] *See* Ex. 36, June 30, 2013 Email ("Sagi should also be reminded that both he and Dalia (on behalf of the Orly Trust, through its counsel Bob Meister) strongly urged my clients to consummate the purchase of the Orly Trust Shares in February 2011); *see also* Ex. 37, *TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP, et al.*, No. 13-08243-JF (S.D.N.Y. April 29, 2014), Docket No. 45, Hearing Tr. 26:7-9 (counsel for Dalia, as trustee for the Orly Trust, stating, "we don't object if this Court would direct that the escrow [*i.e.*, the escrowed $10.3 million] be given to TPR.").

the $7.4 million attributable to Arie's TRI shares, by arguing that these TRI shares did not belong to Orly or the Orly Trust, but rather to TPR (then controlled by Sagi).[18] Thus, Sagi/TPR have now received all of the over $44 million in sale proceeds that Sagi/TPR had bargained for as the full and final consideration from the Trump Group for the sale of the TRI shares.

14. Sagi caused the over $44 million that he/TPR received in connection with his two agreements to be transferred to offshore accounts in Lichtenstein and the Cook Islands for his and/or Dalia's benefit.[19] Sagi has not transferred any of that money to Arie or to the Orly Trust (or Orly as its beneficiary) despite the express distribution of property provided for by the 2004 divorce agreement.

15. The Trump Group next started a separate proceeding in Delaware Chancery Court to void the 2004 TRI Transfers, among other things.[20]

16. Following several years of litigation, on January 3, 2013, the court in *Genger v. Genger*, Index No. 651089/2010, granted in part and denied in part the Trump Group's motion to dismiss Arie and Orly's complaint.[21] Arie then appealed this decision.

**The 2013 Settlement Agreement**

17. Following Arie's appeal, in June of 2013, Orly (in her individual capacity and in her capacity as beneficiary of the Orly Trust), Arie, Arnold Broser, David Broser, (in their individual capacity and on behalf of all entities managed, owned or controlled in any way by Arnold Broser or David Broser and which are in any way related to the subject matter of the 2013 Settlement Agreement (defined below))) (collectively defined as the "AG Group"), on the

---

[18] *See TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP*, No. 13-8243, 2014 WL 1979932, at *8 (S.D.N.Y. May 15, 2014).
[19] Ex. 48, *Genger v. Genger,* Index No. 109749/09 ("2009 Action") (Aug. 9, 2016) Hearing Tr. at 862:2-12.
[20] *TR Investors*, C.A. No. 3994-VCS, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010), *aff'd in part, rev'd in part, Genger v. TR Investors, LLC*, 26 A.3d 180 (Del. 2011). *Glenclova* was later stayed in favor of the Chancery court and New York Supreme court proceedings, discussed below. *See Glenclova*, 874 F. Supp. 2d at 314.
[21] *Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485 (Sup. Ct. NY County, Jan. 3, 2013).

one hand, and the Trump Group, on the other hand, (the "Trump Settlement Parties") entered into a settlement agreement to settle claims relating to the TRI shares (the "2013 Settlement Agreement" or the "Trump Group Settlement Agreement") that were being litigated against the Trump Group. The 2013 Settlement Agreement expressly provided that Orly was executing only "individually and as beneficiary of" the Orly Trust, rather than on behalf of the Orly Trust.[22] A prior draft had included terms that suggested the Orly Trust was also a party and was bound by the terms of the settlement, but the references to the Orly Trust were stricken before final execution to clarify that neither Orly nor any other party purported to act on behalf of the Orly Trust in entering that settlement.

18.     The 2013 Settlement Agreement documented a settlement, which in total encompasses approximately $50 million in value related to TRI shares.[23] A breakdown of the settlement follows:

| Total 2013 Settlement Agreement Consideration | $50 Million |
|---|---|
| Orly Trust TRI shares | Release claims to $10.3 Million held in escrow |
| Arie TRI shares | Release claims to $7.4 Million held in escrow |
| Additional consideration | $32.3 Million |

19.     The portions of the 2013 Settlement Agreement described above as additional consideration totaling $32.3 million, which portions are described in further detail below, are the subject of the nearly one dozen Derivative or Duplicative Actions (as defined in the Settlement Motion) that Sagi and his cohorts have since launched against the Objecting Parties and others in multiple courts, and are referred to herein as the "Disputed Settlement Proceeds."

---

[22] Ex. 14, 2013 Settlement Agreement.
[23] See id., at ¶ 2.

20. Pursuant to the 2013 Settlement Agreement, a total of $17,257,001 of the additional consideration in the settlement was paid in early July 2013 by a Trump Group entity, as transferor, not by the Orly Trust or Orly. The financial records show that the full $17,257,001 was transferred from the Trumps to the AG Group's designated payee William Wachtel, a long-time friend and lawyer for Arie, and, at Arie's direction, from Wachtel to an account controlled by the Genger Litigation Trust, and then to ADBG, which received a total of $16,325,000 ($17,200,000 minus $875,000 of that amount that was transferred to an IOLA account maintained by attorney Lance Harris, who then used it to pay unpaid legal bills related to the Genger actions to various attorneys, who collectively received a total of $968,878.68).[24] The amount received by ADBG was required to be repaid to ADBG both pursuant to the ADBG litigation funding agreement (as amended)[25] and a 2012 assignment by Arie and Orly of any proceeds of the ADBG-funded litigations to David Broser and Lance Harris, who were appointed to be trustees of a trust established in June 2012 by Arie and Orly known as the Genger Litigation Trust, which is then obligated to pay ADBG for the outstanding obligations owed to it.[26] ADBG, an entity owned by the Brosers, provided litigation funding to Arie that funded the various litigations that were settled by the 2013 Settlement Agreement. ADBG is still owed millions of dollars in unpaid loan obligations that it contends are improperly being held up by what it believes are Sagi and Dalia's frivolous claims, and has filed a claim in this chapter 7 case seeking all such amounts.[27] The Genger Litigation Trust has similarly filed a claim in this

---

[24] Ex. 54, Account Records.
[25] Ex. 68, ADBG Loan Documents.
[26] Ex. 38, Genger Litigation Trust Agreement.
[27] Ex. 55, Claim No. 5.

chapter 7 case seeking amounts owed to it under the Genger Litigation Trust Agreement in an unliquidated amount.[28]

21.     As part of the 2013 Settlement Agreement, the Trump Group also released claims to funds attributable to the Arie Shares and the Orly Trust Shares held in two escrow accounts, for $7.4 million and $10.3 million, respectively.  At the time, there was a pending dispute between Orly and TPR (controlled by Sagi) regarding this $10.3 million based on Sagi/TPR's August 2008 sale of those shares discussed above and those funds had been placed in escrow in a litigation between Orly and TPR.[29]  TPR prevailed in that lawsuit.[30]  Sagi/TPR have since received that money but failed to distribute it to Arie or the Orly Trust (or Orly as its beneficiary).  In May 2017, a New York State Court determined that Sagi had committed tortious acts against Orly but declined to award monetary damages.[31]  Orly has appealed the damages findings and that action is presently pending.[32]

22.     The remaining $15 million due under the 2013 Settlement Agreement has not been paid to anyone yet.  These funds are in the form of two $7.5 million notes, which have not yet been paid due to Dalia's pursuit of claims against the Trump Group (in addition to Orly, Arie, the Broser Parties and others).  Both notes suspend the obligation to pay so long as any legal action related to the Gengers is still pending against the Trump Group.  Dalia's claims against the Trump Group are improper, intentional attempts to interfere with and hold up payment of the notes.  Additionally, these notes are subject to ongoing depletion based on indemnity claims by the Trump Group.[33]  Based on invoices submitted to date, the indemnity

---

[28] Ex. 56, Claim No. 6.
[29] Ex. 14, 2013 Settlement Agreement at 2.
[30] *See TPR Investment Associates, Inc*, 2014 WL 1979932, at *23.
[31] Ex. 46, 2009 Action (Mar. 25, 2019), NYSECF No. 1594.
[32] Ex. 47, 2009 Action (April 26, 2019), NYSECF No. 1596.
[33] The Objecting Parties reserve all rights, claims and defenses with respect to any such indemnity claims by the Trump Group.

claims may exceed more than $3 million, which if allowable, leaves less than $12 million to be paid under the notes.

23. Members of the AG Group (as noted above, the term used to refer to the non-Trump Group parties to the 2013 Settlement Agreement), including Orly have consistently testified that Orly was not entitled to any portion of either the $17.3 million payment or the remaining $15 million under the 2013 settlement. And even if Orly ever did somehow receive any proceeds, she already assigned any such proceeds to David Broser and Lance Harris (the trustees)/the Genger Litigation Trust in 2012.

### The 2014 Action – The First Forrest Action

24. In February 2014, Dalia made a demand to Sagi seeking $200,000 pursuant to the 2004 Support Agreement. Sagi immediately sued Orly to enforce the 2004 Indemnity for 50% of that $200,000 demand made by Dalia. *Genger v. Genger*, 76 F. Supp. 3d 488, 494 (S.D.N.Y. 2015).

25. In the 2014 action, Orly challenged the enforceability of the 2004 Indemnity on the ground, among others, that it failed for lack of consideration. The United States District Court for the Southern District of New York (the "District Court") held, however, on summary judgment that Orly had "effectively monetized" the TRI shares by signing, as one of the members of the group that signed the 2013 Settlement Agreement, a settlement agreement with other parties who had competing legal claims pertaining to the shares, and that "monetization" was held to be consideration sufficient to render the 2004 Indemnity enforceable. *See id.* at 499-500. Sagi and Dalia have relied on this language to support their claims against the Objecting Parties but this quote is merely dicta and ***no court has ever ruled on what amount***

***<u>Orly had been paid, if anything, nor if any of the Disputed Settlement Proceeds even belong to her</u>***.

26. Indeed, as was clarified on appeal by the Second Circuit, that holding only means that Orly received "more than a peppercorn" of consideration: the "$32 million transaction" involving "her shares would confer upon her more than a peppercorn, which is all we need to conclude (*and all we do conclude*) as to the extent of any benefit she received." *Genger v. Genger*, 663 F. App'x 44, 49 (2d Cir. 2016) (emphasis added). That decision and the more recent decision granting Sagi his $3 million judgment against Orly in the 2017 Action discussed below under the alleged 2004 Indemnity says nothing about whether Orly ever received or is entitled to receive any funds paid by the Trump Group under the 2013 Settlement Agreement. That issue was *never* litigated in those courts and no court has *ever* heard any evidence that Orly received more than a peppercorn. Thus, despite what Sagi and Dalia would like the Court to believe, the Second Circuit did not ever determine what amount, if any, Orly was entitled to or did receive under the 2013 Settlement Agreement.

## The 2017 Action – The Second Forrest Action

27. Thereafter, in 2017, Dalia sued Sagi for breach of the 2004 Support Agreement seeking an award of $6,000,000 in damages. Within hours after that action was filed, Sagi then sued Orly again, for $3 million – half of the demand supposedly made by Dalia under the 2004 Support Agreement.

28. Upon information and belief, Dalia has only received $200,000 on account of her demands to Sagi, meaning that Sagi has not paid Dalia any of the remaining $24.5 million to which she is purportedly entitled to supposedly support her lifestyle.[34]

---

[34] Dalia Constructive Trust Action Compl., Ex. 71, ¶ 38 (". . . Orly must pay Dalia up to $12.25 million . . . representing 50% of the $24.7 million to which Dalia is entitled under the 2004 Agreements after deducting

29.     Sagi ultimately secured judgment on his $3 million demand in the District Court.  In June 2019, the Second Circuit affirmed this judgment.

30.     Sagi then aggressively sought to enforce his judgment, serving numerous subpoenas and restraining notices, often without regard for whether the assets actually belonged to Orly or could be attached/restrained.  For example, Sagi served a restraining notice on the Genger Litigation Trust's bank account despite the fact that it is a wholly separate legal entity from Orly.

31.     On June 11, 2019, as part of his post-judgment enforcement efforts, Sagi filed a turnover motion in District Court, claiming that the 2013 Settlement Agreements proceeds belong to Orly individually and seeking to recover such amounts from certain of the Objecting Parties.[35]  His turnover motion – which was just a dressed up fraudulent transfer claim – effectively sought to recover the Disputed Settlement Proceeds as if there had already been a determination that they belonged to Orly.  No such ruling ever occurred and the motion suffered from numerous legal and factual deficiencies.  However, that motion (and the entire action) was stayed as a result of Orly's bankruptcy filing over a month before the respondents' time to respond to that motion had even elapsed (contrary to Sagi's repeated assertions that the bankruptcy case was filed on the eve of his supposedly inevitable victory on that motion).

32.     On July 12, 2019, Orly filed this chapter 7 case.

## ARGUMENT

33.     The Objecting Parties were not parties to either of the 2014 Action or the 2017 Action.  Nor are they parties to the 2004 Promise or the 2004 Indemnity.  Until the post-judgment enforcement phase of the 2017 Action, the Objecting Parties had nothing whatsoever

---

$200,000 that Dalia received pursuant to her first demand.").
[35] Ex. 24, *Sagi Genger v. Orly Genger*, No. 17-cv-8181 (VSB) (S.D.N.Y. June 11, 2019), Docket Nos. 212-214.

to do with these actions. Rather, the 2014 Action and the 2017 Action were straightforward breach of contract actions seeking to enforce a one paragraph agreement between Sagi and Orly that the courts ultimately found to be enforceable. Simply put, there was no reason for the Objecting Parties to be a part of those actions. They are only now being sued because Sagi claims that the Disputed Settlement Proceeds belong to Orly as part of his judgment enforcement efforts.

34. To be clear, the Objecting Parties do not contest that judgment was entered against Orly in the 2014 Action or the 2017 Action and that such judgments are binding against Orly. However, the Objecting Parties object to the relief sought by the Motion because it seeks to distort those rulings and then bind the Objecting Parties to Sagi's inaccurate view of their import in a thinly veiled attempt to advance his own fraudulent transfer theories against the Objecting Parties. While now is not the time to litigate any alleged fraudulent transfer claim, the Motion seeks relief that could severely prejudice the Objecting Parties in their defense of the numerous Derivative and Duplicative Actions, as applicable, that Sagi and those held to be in common interest with him have asserted against the Objecting Parties by seeking to establish that Judge Forrest's "monetization" statement in her decision in the 2014 Action has preclusive effect and bars any party from challenging his unsupported contention that the Disputed Settlement Proceeds belong to Orly. As stated above, no court has ever determined whether the Disputed Settlement Proceeds belong to Orly.

35. The doctrine of collateral estoppel, or issue preclusion, is not applicable here. It "prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991). The doctrine applies only when: "(1) the issues in both proceedings are

identical, (2) the issue in the prior proceeding was *actually litigated and actually decided*, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was *necessary* to support a valid and final judgment on the merits." *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 364 (S.D.N.Y. 2020), quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (emphasis added).

36.   Because the issue here – whether any of the Disputed Settlement Proceeds belong to Orly – was never "actually litigated" or "actually" and was not "necessary" to support the final judgments in the federal decisions either issuing or reviewing the "monetized" ruling, these two cases (and related appellate decisions) have no preclusive effect with respect to that issue. Nothing in the holdings of these prior federal decisions turns on having *actually* or *necessarily* decided that Orly is entitled to or has already received the full $32.3 million in Disputed Settlement Proceeds. Rather, each time Orly made the factual claim in the prior federal proceedings that she neither received any portion of the $32.3 million and has no legal claim to that money, the court avoided deciding that issue by deciding instead (as all that needed to be decided and all that was decided) that she received at least "more than a peppercorn" of consideration or in the second case that the issue was precluded altogether on procedural grounds. *See Genger v. Genger*, 663 F. App'x 44, 49 (2d Cir. 2016).

37.   Because the Objecting Parties were not parties in the prior federal cases, those rulings, even as expansively interpreted by Sagi, have no preclusive effect on them: "[A] person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit." *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 42–43 (S.D.N.Y. 2015) ("As a general rule, a judgment or decree among parties to a

lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").

38. Moreover, the Objecting Parties are not so closely aligned with Orly as to be in privity with her for purposes of binding them to previous decisions in the 2014 Action or the 2017 Action. For purposes of res judicata, "requisite privity" does not exist unless there is a "substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted" such that the party to the previous action necessarily advocated the same position with the same efficacy that the nonparties would have done had they been before the court. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). That is not the case here. Orly's interest in the 2014 Action and the 2017 Action was to defend against breach of contract actions pertaining to the 2004 Indemnity. The Objecting Parties are not party to that agreement, and were only dragged into the litigation after Sagi already won the second of those actions, when he contended that the Objecting Parties were in possession of property he alleged belonged to Orly. Until that time, the Objecting Parties had no reason to think that Sagi was asserting claims against them in that action.

39. Sagi's position – that Orly is entitled to the $32.3 million in Disputed Settlement Proceeds because there is, in his view, no other explanation for why she is a party to that agreement – overlooks six indisputable and dispositive facts: (i) that Orly never individually owned a single share of TRI stock; (ii) that the 2013 Settlement Agreement consideration totaled $50 million, not $32.3 million, and that it contained the entirely separate $10.3 million in escrow (expressly related to the Orly Trust shares), as to which the Trumps agreed to withdraw any claim; (iii) that Orly signed the agreement in her individual capacity and as a beneficiary of the Orly Trust but expressly did not sign the agreement on behalf of the Orly Trust; (iv) that TRI was

Arie's company that he founded, built and ran for 25 years, and from which Arie asserted that he was wrongly ousted of control and of his ownership interests; (v) that other members of the AG Group – Arie and the Brosers – were also party to the 2013 Settlement Agreement; and (vi) that all testimony from members of the AG Group, including Orly, is consistent that the Disputed Settlement Proceeds do not belong to Orly. Under Sagi's own logic, Arie and the Brosers would be entitled to 100% of the Disputed Settlement Proceeds because they are signatories to the 2013 Settlement Agreement. Sagi simply cannot explain these fatal deficiencies.

40. Finally, courts have held that determinations of whether a party's interests in a case are representative of a non-party's interests for purposes of claim preclusion is an issue of fact for trial. *See Aerojet-General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir. 1975)("The question whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court."). Accordingly, such requested relief is not an appropriate subject of a motion *in limine* and should be denied.

## RESERVATION OF RIGHTS

41. The Objecting Parties reserve all rights, claims and defenses relating to Sagi's motion to dismiss, the 2013 Settlement Agreement, the Disputed Settlement Proceeds, the Derivative or Duplicative Actions, and otherwise.

## NO PRIOR REQUEST

42. No prior request for the relief sought herein has been made by any of the Objecting Parties to this or any other court.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Objections, the Objecting Parties' respectfully request that the Court (i) deny the Motion in its entirety, (ii) award the Objecting Parties reimbursement of their costs and expenses (including professionals'

fees) in connection with the Motion, and (iii) grant such other and further relief as is just and proper.

Dated: June 7, 2021
New York, New York

HUGHES HUBBARD & REED LLP

*/s/ Christopher Gartman*
Christopher K. Kiplok
Christopher Gartman
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
chris.kiplok@hugheshubbard.com
chris.gartman@hugheshubbard.com

*Attorneys for ADBG LLC, Tedco, Inc., David Broser and Arnold Broser*

TOGUT, SEGAL & SEGAL LLP

*/s/ Frank A. Oswald*
Frank A. Oswald
Jared Borriello
One Penn Plaza, Suite 3335
New York, NY 10119
(212) 201-5590
Fax : (212) 967-4258
Email: frankoswald@teamtogut.com
        jborriello@teamtogut.com

*Attorneys for Arie Genger*

*/s/ Lance Harris*
Lance Harris, Esq., as Trustee of
The Genger Litigation Trust