UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Orly Genger,<br><br>      Debtor. | Chapter 7<br><br>Case No. 19-13895-JLG |

**OPPOSITION TO SAGI GENGER'S MOTION IN LIMINE TO
EXCLUDE KBT AND HERSCHMANN FROM PARTICIPATING AT HEARING**

**I. INTRODUCTION**

Now that the hearing on his motion to dismiss this bankruptcy is approximately one week away, Sagi Genger ("Sagi"), in his "motion *in limine*" (cited herein as "Mot."), is attempting to prevent two creditors in this case – Kasowitz Benson Torres LLP ("KBT") and Eric Herschmann ("Herschmann") – from even participating in this matter, baselessly contending that they are no longer parties-in-interest in this case under 11 U.S.C. § 1109.[1]  Relying on a completely unsupportable reading of the law, as Sagi would have it, he should be the only creditor permitted to put on a case about Herschmann's and KBT's claims in the bankruptcy and the circumstances surrounding those claims, so that he can advance his baseless and entirely unproven (and unprovable) conspiracy theories without any resistance to argue that the Debtor filed this case in bad faith.

Sagi's frivolous motion must be denied because: (1) it is indisputable that both KBT and Herschmann *are* parties-in-interest with a "right to be heard" by this Court (and they have properly been treated as parties-in-interest for the close-to two years this case has been pending,

---

[1] It is questionable whether the provision on which Sagi relies in making this motion, 11 U.S.C. § 1109(b), even applies in Chapter 7 proceedings like this case.  *See, e.g.*, *In re Sharif*, 447 B.R. 853, 867 (Bankr. N.D. Ill. 2011) ("Section 1109(b), by its own terms, does not apply to this chapter 7 bankruptcy case, it applies to chapter 11 cases.")  This on its own provides a basis for the Court to deny Sagi's motion.

by the Court, the Chapter 7 Trustee, the debtor, and all other participants in this proceeding, *including Sagi himself*); (2) a motion *in limine* is brought to preclude the introduction of certain forecasted evidence at the trial – **not** to preclude parties from participating at trial to present evidence; and (3) Sagi's arguments are otherwise patently frivolous, made in bad faith, and, among other things, fundamentally conflict with Texas law, which controls the interpretation of the premarital agreement which is the focus of Sagi's motion.  KBT and Herschmann should be awarded attorneys' fees and costs they have been forced to incur in having to oppose the frivolous motion, and this Court should exercise its inherent authority to sanction Sagi and his counsel for wasting its time with it.

## II. SAGI'S MOTION IS AN ATTEMPT TO PREVENT THE COURT FROM LEARNING ABOUT HIS PRIOR CONFLICTING "TURNOVER" EFFORTS

It is clear why Sagi does not want KBT or Herschmann to confront him at the hearing.  While Sagi (and his lawyer Mr. Dellaportas) has continuously told the Court that he was "on the cusp" of winning his "turnover motion" in front of Judge Broderick, which Sagi claims precipitated Orly's purported bad-faith bankruptcy filing (ECF No. 239 at ¶ 4), Herschmann and KBT were able to establish, including at Sagi's deposition in this case, that that representation was not true.  First, the District Court was nowhere close to even considering, let alone ruling on, the merits of Sagi's "turnover motion" (which itself was procedurally defective); in fact, no party had even yet had a chance to file a response to it.  Most importantly, though, in making his motions *in limine* to preclude parties and evidence, Sagi attempts to conceal from the Court that he (and Dalia) have been making unsuccessful "turnover" attempts for *years*.[2]  Unlike

---

[2] In addition to this motion, Sagi also filed another motion *in limine* (ECF No. 429) in attempt to block *all* parties from presenting evidence at the hearing to refute Sagi's claims version of the events concerning the $32.3 million portion of the 2013 Trump Group settlement.  KBT and Herschmann join in the other interested parties' objections to that motion.

2

his claims to this Court, where Sagi vehemently argues that the $32.3 million of the 2013 Trump Group settlement proceeds belong to Orly individually (*see, e.g.*, ECF No. 239 ¶ 2), in the past Sagi has just as vehemently claimed that those proceeds actually belong exclusively to the Orly Genger Trust, and should be "turned over" to courts for that reason.

Herschmann questioned Sagi about some of his prior unsuccessful "turnover" efforts at his deposition in this case, and in particular about an attempt at turnover Sagi made in 2015 in a state court action (*see* ECF No. 424-34), where he and his trust expressly joined in the effort by Dalia to have the $32.3 million seized because Sagi claimed the funds belonged to the Orly Trust:

> Q. From 2015 'til 2019, you didn't get one court order anywhere that would order the money be paid into the court, correct?
>
> A. You're talking about the $32.3 million?
>
> Q. That's correct, sir.
>
> A. No, there's no such court order.
>
> Q. Let's go to page 1 [of Sagi's joinder, ECF No. 424-34]. This is an introduction paragraph two, "by her motion, trustee Dalia Genger (Dalia) seeks to recover for the Orly Genger 1993 trust, the Orly trust $32,300,000 in trust assets which Orly Genger has misappropriated for her own benefit and that of her father and the hedge fund investors who fund Arie's lawsuits. New York law requires that the proceeds from the settlement of the Orly Trust be paid into the court." You see that, sir?
>
> A. Yes.
> . . .
>
> Q. So you tried with Mr. Dellaportas for years now, to have the $32,300,000 paid into court, but you were never successful, right?
> . . .
>
> A. There has been no successful order of the $32,300,000 into court. This document is evidence that apparently at one point I tried.

June 7, 2021 Kurland Decl. Ex. 1 (July 15, 2020 Sagi Dep. Tr.) at 243:4-22, 246:21 to 247:5.

3

In his companion motions *in limine*, Sagi argues that neither KBT, Herschmann, nor any other party should be permitted to put on evidence regarding the "legal and factual findings that were adjudicated against the Debtor in the federal courts." ECF No. 429 at 2; *see also generally* ECF No. 430. That includes, according to Sagi, the first Judge Forrest decision in the case the parties have been referring to as "*Genger I*," *Genger v. Genger*, 76 F. Supp. 3d. 488 (S.D.N.Y. 2015), which he now relies on to argue that the $32.3 million belong to Orly individually, and not to the Orly Trust. *See, e.g.*, ECF No. 239 at ¶ 2.

Sagi believes only his version of the events matters, and wants to prevent any other interested party, including KBT and Herschmann, from being able to show the Court how he is wrong. For example, Sagi does not want to reveal to this Court or be questioned about the unsuccessful "turnover" effort he embarked on in 2015 shortly after Judge Forrest's decision in *Genger I*, which Herschmann questioned him about at his deposition. In connection with *that* "turnover" motion, Sagi argued the $32.3 million belongs *exclusively* to the Orly Genger Trust. ECF No. 424-34 at ¶ 1 ("Sagi Genger and the Sagi Genger Trust support and join in Trustee Dalia Genger's Motion . . . for an Order Directing [$32.3 million in] Settlement Proceeds To Be Paid Into Court" (emphasis in original); *id.* at ¶ 56 ("[Sagi and the] Sagi Trust beseech[] the Court to exercise its judicial oversight and help Dalia recover the Orly Trust's assets [the $32.3 million]").[3]

Obviously, Sagi's position in the 2015 motion he filed completely conflicts and cannot be squared with the position he is taking in this case. Sagi should be estopped from making the new

---

[3] Sagi's 2015 motion was particularly vindictive and nasty. John Dellaportas' affirmation in support of that motion, submitted on behalf of both Sagi and his trust, argued that "New York law recognizes the rights of Orly's own potential children, and Orly is not free to rob from them"; Orly "**is 36 and childless**" and Sagi and his trust "beseech[] the Court to exercise judicial oversight and help Dalia recover the Orly Trust's assets, so that she can preserve a portion of them for her daughter's children, **should Orly choose to have any**[.]" ECF No. 424-34 at ¶¶ 4, 46, 58 (emphasis added).

4

contradictory argument, yet, through this motion and his companion motion *in limine* (ECF No. 429), Sagi is trying to sweep his prior positions under the rug and ensure no one but him has an ability to present the Court with any case at all on these points. Sagi is doing everything he can to avoid being questioned about it by Herschmann and KBT at the upcoming hearing, to try to prevent the inconsistencies from being revealed. The Court should not entertain Sagi's latest effort to hide the truth.

### III.    SAGI'S MOTION IS PROCEDURALLY IMPROPER

As an initial matter, a motion *in limine* may only be brought to preclude the introduction of certain evidence at trial. *See U.S. v. Ozsusamlar*, 428 F. Supp. 25 161, 164 (S.D.N.Y. 2006); *Luce v. United States*, 469 U.S. 38, 41 n.2 (1984) (term used "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.") Sagi provides no authority to suggest that a motion *in limine* can be used to prevent a party from participating in a trial, because none exists. His motion should be denied for this reason alone.

The motion also must be denied because the purported motion *in limine* is actually just a claim objection, not an actual pretrial evidentiary motion. *See* Mot. at 1 n.1. But even if it were procedurally proper, Sagi's motion still must be denied because he has not – and cannot – prove that KBT and Herschmann are not parties in interest pursuant to Section 1109(b). That is because they undeniably are.

The Bankruptcy Code explicitly provides that any "party in interest," including any "creditor," "may raise and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Section 101(10)(A) of the Bankruptcy Code defines "creditor," in pertinent part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Further, Section 101(5)(A) defines "claim," in

5

pertinent part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed*, undisputed, legal equitable, secured, or unsecured." 11 U.S.C. §101(5)(A) (emphasis added).

Sagi admits, as he must, that both KBT and Herschmann timely filed proofs of claim in the Chapter 7 case. Moreover, debtor Orly Genger ("Orly") disclosed their respective claims on her bankruptcy schedules. *See* ECF No. 20, Schedule D at 2, Schedule E/F at 3. To date, no party has objected to such claims. At worst, according to Sagi, such claims are disputed (though not by the debtor or the Chapter 7 Trustee who has accepted those claims as being valid in her pending Rule 9019 Motion). *See* ECF No. 421 at 38-39. Sagi's arguments challenging the KBT and Herschmann claims does not negate the existence of the claims. As a result, KBT and Herschmann each hold a claim under section 101(5) of the Bankruptcy Code, are creditors under section 101(10) of the Bankruptcy Code, and therefore, may be heard on any issue in this case. *See, e.g.*, *AI Int'l Holdings (BVI) Ltd v. MUFG Union Bank, N.A. (In re Weinstein Co. Holdings)*, 595 B.R. 455, 465 (Bankr. D. Del. 2018) (noting that there is no dispute that entity was a creditor and had standing to appear in the bankruptcy case because it timely filed a proof of claim); *In re HBA East, Inc.*, 87 B.R. 248, 262-63 (Bankr. E.D.N.Y. 1988) (noting that entity had standing to appear and that a contention that it did not hold a claim was belied by debtors' schedules).

The cases cited by Sagi on this subject are completely inapposite. None of the cases hold that a creditor may be excluded from appearing in the bankruptcy. Instead, Sagi's own language refers to "peripheral parties." *See* Mot. at 2. Indeed, the Second Circuit in *In re Comcoach Corp.*, 698, F.2d 571, 574 (2d Cir. 1983) explicitly held that the entity in question was not a creditor. Neither KBT nor Herschmann are peripheral parties. They are creditors by virtue of

6

Orly's bankruptcy schedules, and their timely filed proofs of claim. Unless and until the claims are disallowed, Sagi's arguments that they are not entitled to participate in the upcoming hearing have no merit, and his motion must be denied.

Moreover, as set forth further below, Sagi's motion to exclude KBT and Herschmann from the upcoming hearing based on his arguments about the premarital agreement, the $2 million promissory note, and ethical rules are equally meritless, and provide no basis for the relief he seeks in the motion.

### IV. SAGI DELIBERATELY MISREPRESENTS THE PREMARITAL AGREEMENT

Sagi argues that Herschmann is not a creditor in this case based on a completely unsupportable interpretation of the premarital agreement that ignores long-standing Texas Family law regarding potential "reimbursement" obligations between spouses that may arise at the conclusion of a marriage. Specifically, Sagi uses his own interpretation of Texas law and the premarital agreement to (falsely) contend that the $2 million Herschmann loaned Orly and her father at the end of 2016 to pay her legal bills was actually "gifted" to her because the promissory note to both Orly and Arie was not signed in advance of the loan, and therefore, according to the Reimbursement section of the premarital agreement, Herschmann cannot be a creditor in this bankruptcy. Sagi is wrong.

The premarital agreement was negotiated and signed before Herschmann and Orly were married, and sets forth, among other things, the division of their assets in the event of divorce or death of either spouse. Following its execution, on October 24, 2016, the premarital agreement was upheld as valid, binding, and fully enforceable by the District Court of Travis County, Texas. Case No. D-I-GN-16-004247. Sagi is a complete stranger to the premarital agreement despite his obsession with it, and therefore lacks standing to raise any issues concerning the

7

agreement, as there is no privity between him and the parties to the agreement, Herschmann and Orly. He is also not a third-party beneficiary to the agreement. *See* Sagi Mot. Ex. A ¶ 32(b) ("Notwithstanding anything herein to the contrary, this agreement is for our exclusive benefit and not for the benefit of any third party.") Further, "to establish standing to assert a breach of contract cause of action, a party must prove its privity to the agreement or that it is a third-party beneficiary." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App. 2012) (dismissing contract claim for lack of standing). Sagi cannot establish either. Thus, he is in no position to challenge the parties' understanding of their own premarital agreement, and his opinions about how the agreement should be interpreted are irrelevant.

The premarital agreement is

**A. Premarital Agreement Paragraph 20 is Irrelevant to this Bankruptcy Case**

For these reasons, the concept of "reimbursement" has nothing to do with the present situation. Texas law is crystal-clear that the reimbursement obligation ***only applies in event of death, divorce or annulment,*** when one marital estate seeks to recover money from another marital estate. *See Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982) ("The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right ***which arises upon dissolution of the marriage*** through death, divorce or annulment.") (citing *Burton v. Bell*, 380 S.W.2d 561 (Tex. 1964); *Dakan v. Dakan*, 83 S.W.2d 620 (Tex. 1935)) (emphasis added); *Lucy v. Lucy*, 162 S.W.3d 770, 776 (Tex. App. 2005) (same); *Phillips v. Phillips*, 296 S.W.3d 656, 664 (Tex. App. 2009) (same). *See also* Tex. Fam. Code § 7.007(b) (In a ***decree of divorce or annulment***, the court shall determine the rights of both spouses in a claim for reimbursement…) (emphasis added). This has been the law in Texas for decades-upon-decades. *Burton*, 380 S.W.2d at 565 ("***until dissolution*** of the community, as by death or divorce, or the similar effects which may be produced by a decree of separation of property, ***there is no matured right to reimbursement*** for expenditures of the sort here in question") (emphasis added). It is hard to imagine that Sagi and the his attorneys did not know that any potential reimbursement obligation is irrelevant, considering for years Sagi has been espousing about the operation of Texas Law and its purported effects on Orly and Herschmann's marriage. *See, e.g.*, Nov. 13, 2018 Dellaportas letter to Judge Broderick, S.D.N.Y. Case No. 17-cv-8181, ECF No. 138, at 2 (Sagi letter describing purported operation of various provisions of the Texas Family Code as applied to Herschmann and Orly's premarital agreement). Simply put, Sagi and his three attorneys who appear on the signature block of his motion failed in their duty

9

of candor to this Court when they put forth such a patently baseless argument that is in direct conflict with Texas law. That conduct by itself warrants the award of attorneys' fees and costs.

While Sagi may be trying to destroy Orly and her marriage through his never-ending allegations of wrongdoing and driving her into bankruptcy, he has not done so. Therefore, because Orly and Herschmann's marriage remains, premarital agreement paragraph 20 has no effect. And even assuming, *arguendo*, that – despite a hundred and sixty years of consistent caselaw to the contrary (*see, e.g.*, *Rice v. Rice*, 21 Tex. 58, 58 (1858)) – the reimbursement section in the premarital agreement had any effect outside the context of a marital dissolution, the $2 million loan in question was not made exclusively to benefit Orly Genger's "separate estate." Both Orly and her father, Arie Genger, are borrowers on the loan and are jointly and severally liable to repay it.

### B. Premarital Agreement Paragraph 34(b) Does Not Support Sagi's Argument

Like a broken record, Sagi also once again completely misrepresents Paragraph 34(b) of the premarital agreement. Mot. at 5 n.2.

4

---

[4] Sagi's ever-shifting arguments about the limited pro bono work by KBT are themselves hard to follow and inherently self-contradicting. For example, he has argued that Herschmann was in

10

---

business with Arie and that is how KBT was getting paid (*See* ECF No. 397-1); that KBT was not being paid at all because all of its work was really done on a pro bono basis (*See, e.g.*, ECF No. 247 at 1-2; ECF No. 262); that KBT actually shifted what Sagi claims was supposed to be pro bono work to billable work to inflate the firm's bills to Orly so the firm could become a creditor, to the detriment of Sagi and Dalia (*See* ECF No. 391); and/or that KBT, contrary to all the records that were produced to Sagi, did not provide "proof that the payment was used to satisfy bills to Orly." ECF No. 235 at p. 6.

11

Sagi Mot. Ex. A ¶ 34(b) (highlighting added).

The provision also acknowledges the portion of the legal services provided to Orly on a pro bono basis – namely, that (i) Herschmann never billed any of the thousands of hours of his time in connection with his legal work for Orly, and (ii) that no lawyers billed for the trial time they logged in connection with Orly's fraud trial against Sagi in 2015 (in which Sagi was found liable) which collectively had a value of millions of dollars by May 2016.  *See, e.g.*, Rule 9011 Motion (ECF No. 411) at 7-9; KBT and Herschmann Joinder in Opposition to Motion to Dismiss (ECF No. 431) at 8-11.

### C. Other Provisions of the Premarital Agreement Confirm Sagi is Wrong

A multitude of other provisions in the premarital agreement also confirm Sagi's self-serving interpretation of the agreement is wrong.  For example, premarital agreement paragraph

12

Sagi Mot. Ex. A ¶ 25(b) (emphasis added).  No matter how Sagi attempts to skew the facts, the $2 million loan from Herschmann to Orly and her father did not amount to a gift of anything, or merge any portion of their separate property.  No one other than Sagi has made any such claim, and Orly and Arie acknowledge that the loan was made and the money is owed.  Moreover, because Orly and Herschmann "



," Sagi's ever-changing arguments and self-serving interpretation of events cannot be credited in any circumstance.  *Id.* at p. 31 (capitalization in original).

## V.    THE $2 MILLION LOAN IS DEFINITIVELY VALID

Sagi also claims that Herschmann's $2 million loan to Orly and Arie is barred under New York General Obligation Law Section 5-1105. Mot. at 6.  Again, he is wrong and has no standing to challenge the note, where he is not a party nor a beneficiary, especially not in a motion *in limine*.  But in any case, contrary to what Sagi argues, the promissory note is governed by the UCC, including Article 3, and not General Obligation Law 5-1105.  However, even if that law applied, it would *still* be a valid and enforceable legal obligation of Orly and her father.  *See, e.g., Formica Const. Co., Inc. v. Mills*, 9 Misc.3d 398, 404-05 (N.Y. Civ. Ct. 2005):

> [The] Note here is a negotiable instrument governed by Article 3, and not simply a promise to pay to be construed according to General Obligations Law § 5–1105.  However, even if GOL § 5–1105 was the only applicable statute, it would not bar enforcement of the Note.  On its face, the Note states that "FOR VALUE

13

> RECEIVED" [borrower] acknowledged himself indebted to [lender] in the stated amount. This language, coupled with the fact the Note was given for work already performed by [lender], is sufficient to satisfy the statute.

*See also* N.Y.U.C.C. § 3-408 ("no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind."); *Citicorp Int'l Trading Co. v. W. Oil & Refining Co.*, 790 F. Supp. 428, 435 (S.D.N.Y. 1992) (finding that a promissory note based on a pre-existing debt was supported by valid consideration); *Sun Forest Corp. v. Shvili*, 151 F. Supp. 2d 367, 391 (S.D.N.Y. 2001) (same).

Sagi also again repeats his claim the promissory note memorializing the $2 million loan is "backdated." Mot. at 3, 6. As explained previously to the Court, including in the recent joinder in the opposition to the motion to dismiss, the note is *not* backdated. *See* Herschmann and KBT's Joinder in Opposition to MTD, ECF No 431 at 17-18. As made clear on its face, the promissory note **has an effective date** of December 30, 2016 (the first day that interest began to accrue). Nowhere does it say that the agreement was executed on that date. *See* ECF No. 434-13. In fact, it definitively was not executed then, considering that the note explicitly references an escrow agreement dated March 31, 2017. *Id.* No one could possibly argue that it was signed in December 2016, and no one *has* claimed that, even though Sagi somehow thinks and pretends that they have. It is hard to understand how Sagi could continue to make his arguments purportedly in good faith since he has all the drafts of the promissory notes including metadata, communications reflecting its negotiation, the proof that the $2 million actually changed hands, testimony, and more. *See, e.g.*, ECF Nos. 431 (KBT Opp'n to MTD) at pp. 11-21; 434-4, 434-6, 434-14.

## VI.  NEITHER HERSCHMANN NOR KBT HAVE VIOLATED ANY ETHICAL RULES

As the Court knows from numerous filings concerning the matter, including the pending Rule 9011 motion for sanctions the Court authorized KBT to file against Sagi and Mr. Dellaportas as a result of their baseless claims regarding, *inter alia*, the partial pro bono billing arrangement KBT had with its client, at the time KBT began performing legal work for Orly in January 2015, Orly and the firm agreed that it would not bill for the time its attorneys spent in trial in connection with what was expected to be a three-day bench trial against Sagi for fraud.[5] This is documented in the firm's retainer agreement. ECF No. 434-1. The rest of the matters that the firm handled for Orly were always entirely billable, and all attorneys and personnel (except her husband) billed their time in connection with the representation. Orly paid her invoices as they came due until she no longer had the funds to do so. By the end of 2016, Orly had an outstanding balance of more than $2 million. Herschmann loaned Orly and her father $2 million to pay off the majority of the outstanding balance, and the rest was written off.[6]

The firm continued its representation of Orly in a multitude of Genger family litigations thereafter, in State Supreme Court, Surrogate's Court, and the Appellate Division, as well as in

---

[5] After the Court authorized the filing of the Rule 9011 sanctions motion against Sagi and Dellaportas, Sagi filed a retaliatory Rule 9011 motion of his own against KBT, claiming that KBT's Court-authorized Rule 9011 motion is meritless. Sagi filed his Rule 9011 motion without authorization from the Court, which should render it a nullity. His frivolous unauthorized motion is also definitively meritless, considering this Court already found that Sagi's allegations concerning Herschmann's hiding of the (nonexistent) Israeli bank account had no basis in reality. *See* ECF No. 348 at 15. Sagi refused to withdraw his false allegations concerning the account despite this, which is one of the reasons KBT and Herschmann filed the 9011 motion against him. The contentions in KBT and Herschmann's 9011 motion are accordingly definitively valid, proving beyond any doubt that Sagi has absolutely no basis to have brought *his* unauthorized Rule 9011 motion against KBT. Knowing no bounds, though, shortly after Sagi filed his retaliatory and frivolous Rule 9011 motion against KBT, Sagi filed his frivolous adversary complaint against Herschmann. Adv. Pro. No. 21-01135-JLG. As the Court remarked at the June 3 pretrial conference, this is pure "sport" for him.

[6] Sagi completely disingenuously misstates Herschmann's testimony regarding KBT's write-off of certain amounts Orly owed the firm for services it provided between January 2015 and December 2016. Mot. ¶ 8 n.3. The firm wrote off no amounts owed past that period, and no one but Sagi has ever suggested that it did. The proof of claim that the firm filed in this proceeding is supported by the billing records that prove this, and has already been accepted by the Chapter 7 Trustee after a thorough investigation.

15

the District Court and at the Second Circuit. Between January 2017 and the date she filed for bankruptcy, Orly incurred about $1.5 million in fees which she was unable to pay, which comprise KBT's claim against the bankruptcy estate in this proceeding.

Now Sagi claims that both Herschmann and KBT have violated various ethical rules in light of the $2 million loan that Herschmann made to Orly and her father. His arguments are so inherently inconsistent and self-contradictory that it is hard to comprehend them. When convenient for him, he argues that Herschmann's loan is "simply … an example of a wealthy spouse paying his less-wealthy spouse's bills." ECF No. 239 (Sagi MTD) at p. 14 n.4. But now he argues that it is "unethical" for Herschmann to have loaned money to his wife at all, because Herschmann is an attorney. That different argument is as absurd as it sounds.

As an initial matter, Herschmann did not lend the money as a lawyer to his client. He lent the money to his spouse, because she was desperate, needed to borrow it, and there was no one else who would lend her money. There is not, nor could there be, any ethical issue under these circumstances. To be perfectly clear, as Herschmann has explained all along – indeed as Sagi's own motion argues – the loan to Orly and her father was made by Herschmann as Orly's husband (which is why Sagi thinks it should be subject to their premarital agreement in the first place), and not in his capacity as her attorney or as a member of KBT. Just as Rule 1.8(j) understands the difference between a lawyer having sexual relations with a client as a condition of entering or continuing legal representation (forbidden) and a lawyer having sexual relations with a client who is their spouse (obviously permitted because they are having relations not in the capacity of their attorney-client relationship but as spouses), the clear meaning of Rule 1.8(e) is that while a lawyer usually may not advance financial assistance to a client unrelated to the legal representation, a spouse that is also a lawyer may obviously loan money as a spouse and

16

not as an attorney. Under Sagi's absurd theory, even though Orly is penniless, Herschmann could not give her any financial assistance to live because it would be "unethical" since he is a lawyer. This may be what Sagi had hoped for, but did not occur, which could explain his open animosity to Herschmann.[7] And, according to Sagi's theory, any lawyer/client couple could not share a bank account, because the client would be prohibited from even using their own funds. Notably, the case Sagi cites, *Wohlner & Assocs. v. Wesley Medical Ctr. (In re Wallace)*, 102 B.R. 174, 176 (W.D. Mo. 1989) involved a lawyer advancing money to a client to pay bills unrelated to the expenses of litigation, and acquiring an interest in the subject matter of the client's litigation; it had nothing to do with a spouse lending money to the other spouse so she could pay her legal fees.

Further, even if Rule 1.8(e) could somehow apply to the current circumstances, that rule explicitly permits an attorney "to advance court costs and expenses of litigation" to a client. Here the $2 million loaned was used exclusively for litigation expenses which had already been incurred by Orly, but which had not been paid by her.

Also, Rule 1.7, cited by Sagi, does not apply either. The KBT attorney who represented Herschmann in connection with the loan, Michael Rosenbloom, has never represented Orly and Arie. They were represented by a different attorney, Lance Harris, in connection with the loan, as documented in the promissory note and as clearly evidenced by the months of communications between the parties' legal representatives in connection with the loan, which Sagi obtained in discovery during this proceeding. This was always clearly understood, as is obvious from the written record. And as the comment to this very rule makes clear, a lawyer

---

[7] For example, Michael Oldner, the purported trustee for the Orly Genger Trust, testified at his deposition that Sagi called him the morning of his deposition to tell him that Herschmann is an "asshole."

17

may act in reliance on that consent so long as it is confirmed in writing with a reasonable time thereafter, which it was. Under all circumstances, Sagi again has no basis to make his claims regarding purported violations of ethical rules in a motion *in limine*. Even if there could conceivably be an ethical issue, which there is not, Orly is the only one who could have objected, and she most definitely has not.

It therefore is no surprise that all of the cases Sagi cites have fact patterns nowhere close to the instant situation, where a husband extended a loan to his spouse so that she could satisfy her obligations. Neither he nor KBT violated any ethical rules.

## CONCLUSION

Notice of this opposition to Sagi's motion *in limine* has been provided by electronic means through the Court's ECF system to: (i) Sagi Genger; (ii) Orly Genger; (iii) the Chapter 7 Trustee; (iv) any such other party entitled to notice pursuant to Local Bankruptcy Rule for the United States Bankruptcy Court for the Southern District of New York 9013-1(b). In light of the relief requested, KBT and Herschmann respectfully submit that no further notice is necessary. Additionally, no prior request for the relief sought herein has been made by KBT or Herschmann to this or any other court.

For the foregoing reasons, Sagi's motion should be denied in its entirety, and we respectfully ask this Court to exercise its inherent authority to sanction Sagi and his counsel for wasting its time with this frivolous motion, and award KBT and Herschmann the attorneys' fees and costs they have been forced to incur in having to oppose it.

Dated: June 7, 2021

| KASOWITZ BENSON TORRES LLP | ERIC HERSCHMANN, individually |
|---|---|
| By:/s/ Andrew R. Kurland<br>Andrew R. Kurland<br>1633 Broadway<br>New York, NY 10019<br>(212) 506-1700<br>AKurland@kasowitz.com | By: /s/ Eric D. Herschmann<br>Eric D. Herschmann<br>210 Lavaca Street, #1903<br>Austin TX 78701 |