# EXHIBIT 1

Page 1

```
 1

 2   IN THE UNITED STATES BANKRUPTCY

 3   SOUTHERN DISTRICT OF NEW YORK

 4   ------------------------------------------------X

 5   IN RE:

 6                                    Case No.:

 7                                    19-13895-jlg

 8   ORLY GENGER,

 9     Debtor.

10   ------------------------------------------------X

11

12                      July 15, 2020
                        9:48 a.m.
13

14                   *3RD REVISED*

15       INTERNET STREAMING EXAMINATION BEFORE

16   TRIAL of SAGI GENGER, the Non-Party Witness in

17   the above-entitled action, taken on behalf of

18   the aforementioned parties, held at the above

19   time and place, and taken before Dorene Glover,

20   a reporter and Notary Public within and for the

21   State of New York.

22

23

24

25   Job No. 181828
```

Page 6

GENGER

number one of the video recorded deposition of Sagi Genger, In Re: Orly Genger, in the United States Bankruptcy Court Southern District of New York. Case number 19-13895 JLG.

This deposition is being held via videoconference with all participants appearing remotely due to COVID-19 restrictions, on Wednesday, July 15th, 2020, at approximately 9:50 a.m.

My name is Tim Falk. I am the Legal Video Specialist from TSG Reporting Incorporated headquartered at 228 East 45th Street, New York, New York.

The court reporter is Dorene Glover in association with TSG Reporting.

Counsel, please introduce yourselves.

MR. HERSCHMANN: Eric Herschmann. Does anyone else want to do a --

MR. BOWEN: Michael Bowen with the law firm of Kasowitz, Benson & Torres.

MR. GERON: This is Yann Geron.

Page 7

GENGER

The law firm is Reitler, Kailas and Rosenblatt and we represent Orly Genger.

MR. CAVALIERE: Rocco Cavaliere Tarter, Krinsky & Drogin. On behalf of Debra Piazza P-I-A-Z-Z-A, the Chapter 7 trustee.

MR. GARTMAN: Chris Gartman from Hughes, Hubbard and Reed, on behalf of Creditor ADBG, LLC.

THE VIDEOGRAPHER: If that's everyone, will the court reporter please swear in the witness.

MR. DELLAPORTAS: This is John Dellaportas, D-E-L-L-A-P-O-R-T-A-S, of Emmet, Marvin and Martin, LLP on behalf of the witness Sagi Genger.

MR. BORRIELLO: This is Jared Borriello from Togut, Segal and Segal on behalf of creditor Arie Genger.

THE VIDEOGRAPHER: If the court reporter will please swear in the witness.

MR. KURLAND: We're still missing one. Paul has not appeared yet.

Page 8

GENGER

MR. LEBOV: Yeah, I'm here. You have my information. I e-mailed it to you. Paul Lebov on behalf of Dalia Genger.

MR. HERSCHMANN: We also have John Gonzalez. He is a paralegal. Can you swear in the witness, please?

THE WITNESS: Dorene, I would like to affirm.

S A G I  G E N G E R, the witness herein, having first been duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION

BY MR. HERSCHMANN:

Q. Mr. Genger, my name is Eric Herschmann. I'm going to ask you a series of questions today. I ask that you listen to my questions very carefully and only answer to the question that I pose to you. Is that okay?

A. I'll do my best.

Q. And just before we get started, Mr. Genger, are you familiar with the phone number 501-221-7574?

Page 9

GENGER

A. I may be. That's the number that was up before on the screen?

Q. That's correct, sir.

A. I think that's Mr. Oldner's number, but I'm not sure.

Q. Well, do you have a way of checking whether that's Mr. Oldner's number -- do you understand why Mr. Oldner would be dialing into your deposition and then did not identify himself?

A. No, I don't know why he would not identify himself or hang up.

Q. Did you discuss with him at all that you were having your deposition today?

A. Yes.

Q. Did you provide him the log-in information -- to your knowledge who provided him your log-in information to your deposition?

A. I did.

Q. To your knowledge, is Mr. Oldner now trying to listen in to the deposition either through Mr. Dellaportas' phone or anyone else's?

A. No. I don't know about it.

Page 242

GENGER

differently on the Judy Bachman letter of June 17th, how would you have drafted it differently?

A. I don't recall.

Q. Sorry?

A. I don't recall.

Q. Now, I want to show you a document that is from index number 651089-2010 it's a February 13th, 2015, affirmation of Mr. Dellaportas on behalf of Sagi Genger and the Sagi Genger Trust in support of and joining Elana Genger's motion to substitute and for payment into court. Pull that up for a moment, sir.

Mr. Genger, this is a filed document, Document 1229 on the court's docket. And I will represent to you on the last page, page 19, there's a signature from Mr. Dellaportas.

In 2015, you had asked along with your mother, that the proceeds from the Trump settlement agreement from 2015 be paid into the court, correct?

A. No, I remember someone asked --

Page 243

GENGER

there's something that happened, but I don't remember exactly what happened.

Q. From 2015 'til 2019, you didn't get one court order anywhere that would order the money be paid into the court, correct?

A. You're talking about the $32.3 million?

Q. That's correct, sir.

A. No, there's no such court order.

Q. Let's go to page 1. This is an introduction paragraph two, "by her motion, trustee Dalia Genger (Dalia) seeks to recover for the Orly Genger 1993 trust, the Orly trust $32,300,000 in trust assets which Orly Genger has misappropriated for her own benefit and that of her father and the hedge fund investors who fund Arie's lawsuits. New York law requires that the proceeds from the settlement of the Orly Trust be paid into the court."

You see that, sir?

A. Yes.

Q. Next paragraph, your lawyer, Mr. Dellaportas, says, "Orly is not the only victim when she steals from the Orly Trust."

Page 244

GENGER

You see that?

A. Yes.

Q. It says, right in the next sentence that Orly is not the sole beneficiary. In addition to Orly, the Orly trust also has a contingent remainder beneficiary, the Sagi trust.

You see that, sir?

A. Yes.

Q. Sir, you understand that your sister was the primary trust beneficiary of the Orly Genger 1993 trust, right, and that Orly -- that your trust was contingent beneficiaries, right?

MR. DELLAPORTAS: Objection. Calls for legal conclusions.

Q. Sir, did you challenge Mr. Dellaportas when he made this representation in court under oath? Did you make any filings to correct -- you told us earlier, you take all the filings that's Mr. Dellaportas makes on your behalf very seriously. Did you at any point make a filing in court or tell Mr. Dellaportas to make a filing in court and his

Page 245

GENGER

representations to the court were not accurate or truthful?

A. I made no such filing.

Q. Now, sir, turn now to page 2. Sir, you claim in this bankruptcy that -- let me -- go to paragraph six, can you go up?

A. Pause for a moment. Because normally I have all the documents. I just want to ask when is this document from? What year?

Q. 2015.

A. Okay.

Q. In 2015, you and your mother have made all types of filings and allegations trying to get the $32,300,000 paid into the court, but you've never been successful, right, sir? It's not a new allegation. It's been around for years, right?

A. She's made a request in surrogates court. So I'm going to just think about the question.

Q. Well, sir, this is an affirmation submitted by your lawyer. By your lawyer in the Supreme Court in the State of New York County of New York in support of your mother's

Page 246

```
                   GENGER
 1
 2  application.
 3          Are you telling us you didn't
 4  discuss this with Mr. Dellaportas before he
 5  filed it?
 6          MR. DELLAPORTAS:  Objection.  Calls
 7      for privileged communications.  Direct
 8      him not to answer.
 9      Q.   Is Mr. Dellaportas -- let me make
10  sure we are clear because this paragraph, this
11  whole thing says, "I am a member of the firm
12  counsel for Sagi Genger in the Sagi Genger 1993
13  Trust, Sagi Genger, the Sagi Genger Trust
14  supports and jointed trustee Dalia Genger's
15  motions to (inaudible) for plaintiff Orly
16  Genger or her derivative claims against the
17  Trump Group and for an order directing
18  settlement proceeds be paid into court.
19          Do you see that, sir?
20      A.   I do.
21      Q.   So you tried with Mr. Dellaportas
22  for years now, to have the $32,300,000 paid
23  into court, but you were never successful,
24  right?
25          MR. DELLAPORTAS:  Object to form.
```

Page 247

```
                   GENGER
 1
 2      A.   There has been no successful order
 3  of the $32,300,000 into court.  This document
 4  is evidence that apparently at one point I
 5  tried.
 6      Q.   With Mr. Dellaportas and your
 7  mother, right, sir?
 8      A.   I don't know if it's Mr.
 9  Dellaportas.  Unless he says otherwise on my
10  behalf, it's certainly on my behalf.
11      Q.   The first paragraph talks about
12  it's in support joining in your mother's
13  motion.
14      A.   As I'm trying to explain to you, I
15  don't remember the document in detail.  To the
16  extent then it says what it says, and I can't
17  really add or subtract it, but especially
18  without having the whole document in front of
19  me, I can't speak to it.  I'm sure the document
20  is genuine.  It rings a bell.
21      Q.   Sir, just so we're clear, you filed
22  a turnover motion after your sister -- you got
23  a judgment against your sister in the Southern
24  District of New York also by Mr. Dellaportas
25  trying to have the $32,300,000 paid into the
```

Page 248

```
                   GENGER
 1
 2  court, correct?
 3      A.   Correct.  I don't know if it's paid
 4  into the court.  I'm not sure if that's true.
 5  It's a turnover motion.  I'm not sure that's
 6  paying the court, but whatever it says, that's
 7  what it says.  I'm not going to change it here.
 8      Q.   Sir, you've made attempts for years
 9  and years before Orly did it and what was wrong
10  -- was your turnover motion scheduled for a
11  hearing in any court before the Orly's
12  bankruptcy?
13      A.   I don't know the answer to that.
14      Q.   Well, sir, did you have some
15  imminent ruling from the court that said we're
16  going to grant this application after all these
17  years and now all of sudden are going to give
18  in?  Do you have any ruling like that from any
19  court?
20      A.   I mean, I think that that's a
21  nonsensical ruling.
22      Q.   I agree, sir.  So how does your
23  lawyer Mr. Dellaportas tell the courts that
24  the -- tell other courts that the Southern
25  District of New York was imminently going to
```

Page 249

```
                   GENGER
 1
 2  rule when your turnover motion, when no one has
 3  even responded to it yet?
 4      A.   I think that you're
 5  mischaracterizing what he said.  However, I am
 6  a fact witness, not a witness on behalf of how
 7  much Mr. Dellaportas makes legal arguments.  So
 8  I don't think it's really appropriate for me to
 9  testify about that.  I think it's rather --
10      Q.   You think is the --
11      A.   It was rather clear that the
12  bankruptcy was filed to stop the turnover
13  proceeding from being adjudicated.
14      Q.   You think it's clear that that's
15  why it was done?  What's your basis for that
16  since you were told months beforehand that if
17  the judgment was upheld for an appeal, Orly
18  would be filing for bankruptcy?
19      A.   Because in your motion to dismiss,
20  you say that Orly filed a bankruptcy because of
21  the actions filed in district court and that
22  would include the turnover action.
23      Q.   Oh, I understand.  So you're making
24  the interpretation, I got it.  It's not because
25  you were aggressively pursuing your sister post
```

Page 354

```
 1                GENGER
 2      THE VIDEOGRAPHER:  This ends video
 3   number five.  This ends today's
 4   questioning.  We are off the record.
 5   The time is 6:33 p.m.
 6          (Whereupon, at 6:33 p.m., the
 7   examination of this witness was
 8   concluded.)
 9
10         _____
                 SAGI GENGER
11
12
13   Subscribed and sworn to before me
14   this _____ day of _____, 2020.
15
     _____
16         NOTARY PUBLIC
```

Page 355

```
 1                GENGER
 2                I N D E X
 3
 4   EXAMINATION BY              PAGE
 5   MR. KURLAND             5-300, 321-330
     MR. CAVALIERE             300-321
```

Page 356

```
 1                 GENGER
 2   E X H I B I T S (NOT MARKED DURING DEPOSITION)
 3   EXHIBIT   DESCRIPTION
 4   EXHIBIT 1     October 30, 2004 letter
     EXHIBIT 2     October 22, 2017 e-mail
 5   EXHIBIT 3     December 2, 2019 e-mail
     EXHIBIT 4     Settlement agreement
 6   EXHIBIT 5     Release
     EXHIBIT 6     June 17, 2019
 7   EXHIBIT 7     June 17, 2019 e-mail
     EXHIBIT 8     June 17, 2019 e-mail
 8   EXHIBIT 9     Affirmation
     EXHIBIT 10    Motion to Dismiss
 9   EXHIBIT 11    August 8, 2019 document
     EXHIBIT 12    January 23, 2015 letter
10   EXHIBIT 13    Invoice
```

Page 357

```
 1                GENGER
 2             C E R T I F I C A T E
 3
 4   STATE OF NEW YORK        )
                               ss.:
 5   COUNTY OF BRONX          )
 6
 7
 8        I, DORENE GLOVER, a Notary Public for
 9   and within the State of New York, do hereby
10   certify:
11        That the witness whose examination is
12   hereinbefore set forth was duly sworn and that
13   such examination is a true record of the
14   testimony given by that witness.
15        I further certify that I am not related
16   to any of the parties to this action by blood
17   or by marriage and that I am in no way
18   interested in the outcome of this matter.
19        IN WITNESS WHEREOF, I have hereunto set
20   my hand this 22nd day of July, 2020.
21
22            [signature: Dorene Glover]
             _____
23                 DORENE GLOVER
```