UNITED STATES BANKRUPTCY COURT      NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                                    :
                                                         :
                                                         :   Case No. 19-13895(JLG)
Orly Genger,                                              :   Chapter 7
                                                         :
                                  Debtor.                 :
------------------------------------------------------- x

**MEMORANDUM DECISION AND ORDER: (a) DENYING SAGI GENGER'S MOTION *IN LIMINE* TO EXCLUDE PARTIES LACKING PARTY-IN-INTEREST STANDING FROM THE JUNE 16-18, 2021 HEARING AND, (b) GRANTING IN PART, AND DENYING IN PART, SAGI GENGER'S MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT ARGUMENTS PREVIOUSLY REJECTED BY U.S. DISTRICT COURT AND U.S. COURT OF APPEALS**

**A P P E A R A N C E S :**

Emmet, Marvin & Martin, LLP[1]
*Attorneys for Sagi Genger*
120 Broadway, 32nd Floor
New York, New York 10271

Glenn Agre Bergman & Fuentes LLP
*Attorneys for Orly Genger*
55 Hudson Yards, 20th Floor
New York, New York 10001

Tarter, Krinsky & Drogin LLP
*Attorneys for Deborah Piazza, Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018

Kasowitz Benson Torres, LLP
*Attorneys for Kasowitz Benson Torres, LLP*
1633 Broadway
New York, New York 10019

Hughes Hubbard & Reed LLP
*Attorneys for ADBG LLC, Tedco, Inc.,
David Broser and Arnold Broser*
One Battery Park Plaza
New York, New York 10004

---

[1] Each of the parties listed herein filed papers in response to the Motions. The Motions are fully briefed. The Court did not conduct an argument on the Motions and issues this Memorandum Decision and Order.

Togut, Segal & Segal LLP
*Attorneys for Arie Genger*
One Penn Plaza, Suite 3335
New York, NY 10119

Eric D. Herschmann
*Appearing Pro Se*
210 Lavaca Street, #1903
Austin TX 78701

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction[2]

Orly Genger ("Orly" or the "Debtor") is a chapter 7 debtor herein. Deborah Piazza is the Chapter 7 trustee herein (the "Trustee"). Sagi Genger ("Sagi"), the Debtor's brother, is a judgment creditor in the case. Sagi has filed a motion under sections 305(a)(1) and 707(a) of the Bankruptcy Code to dismiss the case.[3] The Court has scheduled an evidentiary hearing on the Motion to Dismiss. The matters before the Court are Sagi's (i) Motion *In Limine* To Exclude Irrelevant Arguments Previously Rejected By the U.S. District Court and U.S. Court of Appeals;[4] and (ii) Motion *In Limine* To Exclude Parties Lacking Party-in-Interest Standing From The June 16-18 Hearing.[5] The Debtor, ADBG LLC, Tedco Inc., Davis Broser, Arnold Broser, Arie Genger and the Genger Litigation Trust (the "Objecting Parties"), the Trustee, Eric Herschmann ("Mr. Herschmann") and the law firm of Kasowitz Benson Torres LLP ("KBT") object to the motions.

---

[2] Terms not otherwise defined herein retain the meaning ascribed under the Motion *In Limine* To Exclude Irrelevant Arguments Previously Rejected By the U.S. District Court and U.S. Court of Appeals [ECF No. 429] and (ii) Motion *In Limine* To Exclude Parties Lacking Party-in-Interest Standing From The June 16-18 Hearing [ECF No. 450].

[3] *See* Judgment Creditor Sagi Genger's Amended and Updated Moton to Dismiss and Memorandum of Law In Support [ECF No. 239] ("Motion to Dismiss"). Objections were filed by (a) the Debtor [ECF No. 425] and (b) the Trustee [ECF No. 433]. Joinders to the Debtor's Objection were filed by (a) ADBG LLC [ECF No. 426], (b) Kasowitz Benson Torres LLP and Mr. Herschmann [ECF No. 431] and (c) Arie Genger [ECF No. 432].

[4] *See* Sagi Genger's Motion *In Limine* To Exclude Irrelevant Arguments Previously Rejected By U.S. District Court and U.S. Court of Appeals [ECF No. 429] ("Motion *in Limine* to Exclude Arguments").

[5] *See* Sagi Genger's Motion *In Limine* To Exclude Parties Lacking Party-in-Interest Standing From The June 16-18, 2021 Hearing [ECF No. 441] ("Motion *in Limine* to Exclude Parties").

1

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Discussion

As noted, in seeking to dismiss the case, Sagi relies on sections 305(a)(1) and 707(a) of the Bankruptcy Code. Section 305(a)(1) permits a bankruptcy court, after notice and hearing, to dismiss a bankruptcy case, or suspend all proceedings in a bankruptcy case, "if the interests of creditors and the debtor will be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). By its terms, section 305(a) applies to entire cases or all proceedings in a case, not particular proceedings in a case. Abstention under section 305 "is an extraordinary remedy and is appropriate only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal." *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004) (citations omitted). *See also In re Eastman,* 188 B.R. 621, 625 (9th Cir. BAP 1995) ("the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal."). The focus of section 707(a) is different. Under that section, a chapter 7 case may be dismissed for "cause." The Bankruptcy Code does not define the term "cause," although section 707(a) lists the following three nonexclusive illustrations of cause: (1) unreasonable delay by the debtor that is prejudicial to creditors, (2) nonpayment of required fees or charges, and (3) only on motion of the United States Trustee for a debtor's failure to file a list of creditors, schedules, and a statement of financial affairs as required under § 521(a). *See* 11 U.S.C. § 707(a); *see also Smith*

2

*v. Geltzer (In re Smith )*, 507 F.3d 64, 72 (2d Cir. 2007) ("[T]he three examples given in section 707(a) are illustrative, not exclusive.").

The Federal Rules of Evidence do not explicitly authorize *in limine* rulings; the practice has developed pursuant to the district court's inherent authority to manage the course of trials. *See Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). The purpose of an *in limine* motion is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). Thus, the focus of *in limine* motions is the admissibility of discrete items of evidence. *TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) (citing *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) ("The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Dial Corp. v. News Corp.*, No. 13CV6802, 2016 WL 690868, at *1 (S.D.N.Y. Feb. 17, 2016) (citing *United States v. Paredes,* 176 F.Supp.2d 179, 181 (S.D.N.Y.2001)).

Principles of *res judicata* and collateral estoppel extend to bankruptcy cases like any other. *See In re Ditech Holding Corp.,* No. 19-10412 (JLG), 2021 WL 2072029 (Bankr. S.D.N.Y. May 21, 2021). *Res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284–285 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). It "bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent

jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Motors Liquidation Co.*, 576 B.R. 313, 321 (Bankr. S.D.N.Y. 2017) (quoting *EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 624 (2d Cir. 2007) (alteration in original). That is to say that it bars re-litigation of *identical* claims and parties after a matter has been settled by a final judgment. *See Jolly v. Troisi*, No. 92 CIV. 5332 (DAB), 2000 WL 620304, at *4 (S.D.N.Y. May 11, 2000) (citation omitted). *See also Tucker v. Bonura,* 646 F.2d 721, 728 (2d Cir.1981) (reversing summary judgment and ruling that prior claim litigated was "similar but not the same").

Collateral estoppel, or issue preclusion, is distinct from *res judicata*. It bars the re-litigation of an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Gonzalez v. City of New York*, 845 F. App'x 11, 16 (2d Cir. 2021). *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) (noting that collateral estoppel has the dual purpose of "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.") In this way, it "is a narrower doctrine than res judicata, and serves to preclude parties from relitigating specific issues that were 'raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action.'" *In re Abreu*, 527 B.R. 570, 579 (Bankr. E.D.N.Y. 2015) (citations omitted). Thus, the doctrines of collateral estoppel and issue preclusion applies only when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and

4

final judgment on the merits." *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 364 (S.D.N.Y. 2020) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999)).

Motion *In Limine* To Exclude Parties
<u>Lacking Party-in-Interest Standing</u>

Section 1109(b) of the Bankruptcy Code provides that: "[a] party in interest, including the debtor, the trustee, a creditor's committee, an equity securities holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Mr. Herschmann and KBT have filed claims in this case. Nonetheless, Sagi contends that Mr. Herschmann and KBT are not creditors of the Debtor because neither has any legal right to payment from the Debtor.[6] In so arguing, Sagi purports to challenge the merits of the claims.[7] Pursuant to section 502(a) of the Bankruptcy Code, those claims are deemed "allowed" since no party in interest has objected to the claims. *See* 11 U.S.C. § 502(a) ("A claim . . . proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects"). As a general rule, "absent leave of court, the chapter 7 trustee alone may interpose objections to individual proofs of claim." *Pascazi* v. *Fiber Consultants, Inc.*, 445 B.R. 124, 129 (S.D.N.Y. 2011) (internal quotation marks omitted) (citations omitted). The Trustee has not objected to either claim, and Sagi has not sought or obtained leave to do so.

A motion *in limine* may be brought to preclude the introduction of certain evidence at trial. *See United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 165 (S.D.N.Y. 2006); *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (term used "in a broad sense to refer to any motion, whether

---

[6] *Id.* at 1.

[7] *Id.* at 3-7 (Mr. Herschmann's claim); 8 (KBT's claim).

5

made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.") It is not a substitute for a claim objection under the Bankruptcy Code. There is no authority for Sagi's use of a motion *in limine* to challenge Mr. Herschmann's and KBT's right to be heard at the evidentiary hearing as they are parties in interest with standing.

Accordingly, the Court denies the motion.

Motion *In Limine* To Exclude Irrelevant Arguments Previously
<u>Rejected By U.S. District Court and U.S. Court of Appeals</u>

By letter dated March 10, 2021,[8] the Debtor's counsel, declared that: "Debtor's theory of the case includes evidence . . . that Sagi used Dalia and conspired with her [Dalia] to make knowingly false claims under the so-called 2004 letter agreements to drive Debtor into insolvency and bankruptcy."[9] In the motion, Sagi seeks an order of the Court excluding arguments expected to be made by the Debtor and parties held to be in common interest with her, and barring them from seeking to introduce, at the hearing on Sagi's Motion to Dismiss, any arguments or evidence as to the supposed "bad faith" of Sagi, or any other party held to be in common interest with him, on the grounds that: (a) such arguments are irrelevant as a matter of law; (b) such arguments were previously considered and rejected by the U.S. District Court and U.S. Court of Appeals; and (c) the introduction of such arguments will needlessly lengthen and complicate the hearing.[10]

Sagi contends that Debtor's "theory of the case" should be excluded because as a matter of law, in a motion to dismiss a bankruptcy case under sections 305(a)(1) and 707 of the Bankruptcy Code, what matters is the good or bad faith of the Debtor, not the movant.[11] He also

---

[8]  *See* Letter from Michael Bowen dated March 10, 2021 [ECF No. 379].

[9]  Dalia Genger ("Dalia") is the Debtor and Sagi's mother.

[10]  *See* Motion *In Limine* To Exclude Arguments at 1.

[11]  *Id.* at 2.

6

contends that Orly's "theory of the case" is inadmissible because the Debtor has already litigated and lost this same issue, through two rounds of federal court actions, appeals, and final judgment (the "Federal Actions").[12] Finally, he contends that the introduction of this legally impermissible "theory" would needlessly lengthen and complicate what already will be a lengthy and complicated hearing.[13] Orly objects to the motion, disputes that contention and makes two arguments in support of her position.[14]

First, Orly asserts that the question that is squarely at issue in the Motion to Dismiss is whether and if so to what extent she is legally entitled to the $32.3 million in light of the claims to that same money by other members of the AG Group who are also signatories to the 2013 AG/Trump Settlement but who were not parties in the earlier proceedings.[15] Orly contends that each time she made the factual claim in the prior Federal Actions that she received no portion of the $32.3 million and has no legal claim to that money, the court avoided deciding that issue by deciding instead that she received at least "more than a peppercorn" or in the second case that the issue was precluded altogether on procedural grounds.[16] She maintains that nothing in the holdings in the Federal Actions turns on having actually or necessarily decided that Orly is entitled to or has already received the full $32.3 million.[17] The Objecting Parties join in that

---

[12] *Id.* at 5. *See Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y. 2015) ("*Genger I*"), *aff'd,* 663 F. App'x 44 (2d Cir. 2016) ("*Genger II*"); *Genger v. Genger*, No. 17-CV-8181 (KBF), 2018 WL 3632521, at *2 (S.D.N.Y. July 27, 2018) ("*Genger III*"), *aff'd,* 771 F. App'x 99 (2d Cir. 2019) ("*Genger IV*").

[13] *See* Motion *in Limine* to Exclude Arguments at 2.

[14] Objections were filed by (a) the Debtor [ECF No. 447], (b) the Trustee [ECF No. 449] and the Objecting Parties [ECF No. 445]. A joinder to the three objections was filed by (a) Kasowitz Benson Torres LLP and Mr. Herschmann [ECF No. 450].

[15] *See* Debtor's Objection to Creditor Sagi Genger's Amended and Updated Motion to Dismiss [ECF No. 425] ¶ 76.

[16] *Id.*

[17] *Id.*

7

argument.[18] They also contend that because they were not parties to the Federal Actions, those rulings, even as expansively interpreted by Sagi, have no preclusive effect on them.[19] They maintain that they are strangers to the litigation and are not so closely aligned with Orly as to be in privity with her for purposes of binding them to the decisions in the Federal Actions.[20]

Second, Orly contends that while she has no intention of "re-litigating" either Sagi's first federal judgment against her or his pending $3 million-plus judgment against her, the fact that no court has ever adjudicated her claim that Sagi and Dalia have acted in bad faith in pressing multi-million-dollar claims against her is relevant to her defense against Sagi's claim in his Motion to Dismiss that she filed her chapter 7 case in bad faith.[21] She asserts that a correct understanding of these prior decisions, supported by evidence of the conduct of the relevant parties thereafter, shows that Orly had a reasonable and good faith understanding that Sagi and Dalia are acting deliberately against her interests solely to secure the $32.3 million in settlement proceeds for themselves, without any care or regard as to whether those funds legally belong to her or other parties.[22] She says that argument, as supported by evidence, is directly germane to her defense

---

[18]   In support of their Opposition, they contend, in part, as follows:

> Because the issue here – whether any of the Disputed Settlement Proceeds belong to Orly – was never "actually litigated" or "actually" and was not "necessary" to support the final judgments in the federal decisions either issuing or reviewing the "monetized" ruling, these two cases (and related appellate decisions) have no preclusive effect with respect to that issue. Nothing in the holdings of these prior federal decisions turns on having *actually* or *necessarily* decided that Orly is entitled to or has already received the full $32.3 million in Disputed Settlement Proceeds.

*See* Objection of ADBG LLC, Tedco, Inc., David Broser, Arnold Broser, Arie Genger and the Genger Litigation Trust, and Joinder in Support of Debtor's and Other Objections, to Sagi Genger's Motion *in Limine* to Exclude Irrelevant Arguments Previously Rejected by U.S. District Court and U.S. Court of Appeals [ECF No. 445] ¶ 36.

[19]   *Id.* ¶ 37.

[20]   *Id.* ¶ 38.

[21]   *See* Debtor's Opposition to Movant's *In Limine* Motion to Exclude Arguments Based on Prior Decisions [ECF No. 447] ("Response") at 5.

[22]   *Id.*

8

that she acted in good faith in filing for bankruptcy.[23] Moreover, Orly contends that to the extent Sagi means to try to exclude his (and his cohorts') bad acts that *post*-date those decisions, he has articulated no basis for that and certainly no legal authority in support of such a sweeping position.[24] She says that Sagi's alleged bad-faith machinations in coordinating his and others' contradictory claims to the same $32.3 million are squarely at issue and inform Orly's decision-making and reasonable and good faith beliefs in filing this bankruptcy action.[25] They also are needed to show that Sagi himself has taken contradictory legal positions on the very same $32.3 million, which is directly relevant to Orly's good faith.[26]

The Court considers those matters below.

In January 2014, Dalia demanded $200,000 from Sagi under the 2004 Promise, which Sagi paid. In February 2014, Sagi demanded $100,000 from Orly under the 2004 Indemnity, which Orly refused to pay. Sagi sued Orly for breach of contract. In support of his complaint, Sagi alleged that he and Orly entered into a tri-party agreement with Dalia, under which Sagi and Orly received Dalia's marital share of the TRI shares in exchange for providing Dalia with financial support derived from the economic value obtained from those shares. Sagi contended that Orly breached that agreement and sought damages equal to 50% of the $200,000 that he paid to Dalia, plus costs and fees incurred in enforcing the agreement.[27] In opposing the complaint and summary judgment motion, Orly denied that the agreement was valid and enforceable. Her

---

[23]   *Id.*

[24]   *Id.* at 6.

[25]   *Id.*

[26]   *Id.*

[27]   *Genger I*, 76 F. Supp. 3d at 494.

9

19-13895-jlg    Doc 461    Filed 06/15/21    Entered 06/15/21 16:23:28    Main Document
Pg 12 of 17

principal argument was that she never received the promised shares of TRI, and therefore the agreement failed for lack of consideration.[28] In granting summary judgment to Sagi, the district court found that the 2004 Promise and the 2004 Indemnity constitute a single integrated agreement among Dalia, Sagi and Orly (the "2004 Integrated Agreement"), in which Sagi agreed to pay Dalia, upon demand, an amount up to the value of the TRI shares Dalia conveyed to the Orly Trust and Sagi Trust under the 2004 Divorce Agreement and Orly agreed to indemnify Sagi for half of the payments he makes to Dalia.[29] The court held that Orly breached her promise when she rejected Sagi's demand for indemnification.[30] The Second Circuit affirmed on appeal.[31]

Orly asserts that the district court held that Orly "effectively monetized" her claim to her portion of the TRI shares by being a party to the 2013 AG/Trump Agreement and that sufficed as "consideration" under New York contract law.[32] Orly describes as "dicta" the Court's finding that she had "effectively monetized" her interest in the TRI shares "to the tune of $32 million."[33]

---

[28]   *Id.* at 491.

[29]   *Id.* at 492-493.

[30]   *Id.* at 502. The court found that the 2004 Integrated Agreement provided each party with a benefit in exchange for a legal obligation and rejected Orly's claim that the 2004 Integrated Agreement was not supported by consideration because the Orly Trust never received the TRI shares. In so ruling, the district court reasoned, as follows:

> [T]he 2004 Promise states that Orly and Sagi are benefiting from receipt of *either* the TRI shares *or* 'beneficial interests in those shares,' by their respective trusts. . . . Thus, the question becomes whether Orly has benefited from the Orly Trust's receipt of beneficial interests in the TRI shares. There is no genuine dispute as to whether she has so benefited: Orly's claims to beneficial ownership of the TRI shares individually and as a trust beneficiary enabled her to obtain $32.3 million from the Trump Group under the 2013 Settlement Agreement. Further, no court has issued a binding final judgment that the Orly Trust did not receive a beneficial interest in the TRI shares.

*Id.* at 499.

[31]   See *Genger II*, 663 F. App'x at 44.

[32]   See Debtor's Objection to Creditor Sagi Genger's Amended and Updated Motion to Dismiss [ECF No. 425] ¶ 28.

[33]   *Id.* citing *Genger I*, 76 F. Supp.3d. at 491.

The Court disagrees that the finding constitutes dicta, but, in any event, in *Genger III*, in granting Dalia's motion for partial summary judgment against Sagi, the district court found that based on the rulings in *Genger I*, and the Second Circuit's subsequent affirmance in *Genger II*, "i[t] has been conclusively established that: (1) the 2004 Integrated Agreement is valid and enforceable; (2) Sagi and Orly monetized their beneficial interests in the TRI shares for a total of $69.3 million, a substantial portion of which was attributable to Dalia's conveyed marital interest; and (3) pursuant to the 2004 Integrated Agreement, Dalia is entitled to demand payment up to a certain amount in her 'sole and absolute discretion.'"[34] Those determinations were not challenged on further appeal and are plainly binding on Orly.

In *Genger II*, in its affirmance of *Genger I*, the Second Circuit held that "the [2004 Promise] and the [2004 Indemnity] form an integrated agreement in which Orly has a contractual duty to reimburse Sagi for half of the amount he pays Dalia for living expenses."[35] It also rejected Orly's assertion that the agreement failed for lack of consideration. Orly argues that in so ruling, the circuit clarified that the question whether or not she actually received any money from the TRI shares had not been adjudicated, holding instead that it did not matter because, as a signatory to the 2013 AG/Trump Agreement, she received some benefit even if nothing much more than a "peppercorn."[36] As relevant, in its decision, the circuit noted and rejected Orly's contention that she received no consideration for the TRI shares by suggesting that the record did not reveal that she received any money from the settlement:

---

[34] *Genger III,* 2018 WL 3632521, at *6.

[35] *Genger II ,* 663 F. App'x at 48.

[36] *See* Debtor's Objection to Creditor Sagi Genger's Amended and Updated Motion to Dismiss [ECF No. 425] ¶ 28.

This is not an adjudication of a fact issue.

11

> But surely any $32 million transaction for her shares would confer upon her more than a peppercorn, which is all we need to conclude (and all we do conclude) as to the extent of any benefit she received. Consideration encompasses more than just receiving cash: it "exists where there is 'either a benefit to the promisor or a detriment to the promisee.'" *See Hollander v. Lipman*, 65 A.D.3d 1086, 1087, 885 N.Y.S.2d 354 (2009) (quoting *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 444 (1982)). Orly does not dispute that she was part of a group that settled a claim involving the shares she was to receive as part of the Divorce. Orly benefitted from the shares regardless of whether the settlement money went to Orly, as a gift to Arie, or to pay debts owed to her litigation partners. Moreover, her argument oddly assumes that she derives no benefit from her brother's undertaking to support the mother of them.[37]

The circuit did not find that the TRI shares were not worth $32.3 million, or that Orly had not monetized the shares. It found that irrespective of where the funds were paid, Orly received a benefit on account of the shares and that benefit was more than a peppercorn. The Court finds that for purposes of the Motion to Dismiss, and a determination of the merits of Sagi's request for relief under sections 305(a)(1) and 707(a), it is enough that Orly monetized the shares, the shares were worth $32.3 million, and she benefitted from the monetization of the shares. It is irrelevant whether Orly received cash or is now legally entitled to receive cash. As the Second Circuit held, Orly benefited from the shares irrespective of where the funds were paid. The Court will not look behind that determination. That the determination may not be binding on the Objecting Parties is of no moment for purposes of this motion.

Turning to the second contention, Orly says that part of her legal defense in *Genger I* was her claim that she never received any money "attributable" to any TRI shares and therefore had no funds from which to contribute to "support her mother's lifestyle." She says that fact was framed in legal terms as lack of consideration for the 2004 Indemnity, which legal argument was rejected by the district court. She says that in so rejecting the argument, the district court did not

---

[37]   *Genger II,* 663 F. App'x at 49-50.

consider or rule upon any question of a bad faith demand under the 2004 Integrated Agreement. Rather it ruled on the defenses of judicial estoppel, mutual mistake, and lack of opportunity to defend.[38] She also contends that none of those defenses necessarily entailed any ruling on any claim of bad faith and that the terms "bad faith" and "good faith" do not appear in the decision.[39] She maintains that no fact was raised (or adjudicated) in *Genger I* relating to Sagi's and Dalia's alleged bad faith in making the demand under the 2004 letters.[40] She also contends that the Second Circuit did not rule on Orly's claims that Sagi and Dalia acted in bad faith.[41]

Orly asserts that evidence of Dalia and Sagi's alleged bad faith in demanding payment under the 2004 Promise and 2004 Indemnity will demonstrate that Orly had a reasonable and good faith understanding that Sagi and Dalia are acting deliberately against her interests solely to secure the $32.3 million in settlement proceeds for themselves, without any care or regard as to whether those funds legally belong to her or other parties, and that those facts are directly germane to her defense that she acted in good faith in filing for bankruptcy.[42] The 2004 Promise and 2004 Indemnity speak for themselves. In the Federal Actions, Orly did not challenge Sagi and Dalia's good faith in the demands for payment under those agreements. The Court rejects any request to do so in the context of this motion.

---

[38] *See* Response at 3 (citing *Genger I,* 76 F. Supp.3d. at 491).

[39] *Id.*

[40] *Id.*

[41] *Id.* at 5. She says that the circuit expressly did not even reach that issue, holding:

> Orly asserts that she or Sagi might have resisted [Dalia's] claim by challenging Dalia's need for the money she demanded. But Orly's speculation of Dalia's bad faith is insufficient to create a genuine dispute as to material fact.

*Genger II*, 663 F. App'x at 50.

[42] *Id.*

13

Bankruptcy protection "is a privilege, not a right" and "chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start." *In re O'Brien*, 328 B.R. 669, 674 (Bankr. W.D.N.Y. 2005). It "allows 'honest but unfortunate' debtors an opportunity to reorder their financial affairs and get a fresh start." *In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003) (citation omitted). Sagi is seeking to dismiss this case under sections 305(a)(1) and 707(a) of the Bankruptcy Code. Neither section points to the good faith of the movant as a factor relevant to a determination of the merits of motions under those sections. Orly has not cited to any case law in support of her assertion that Sagi's and Dalia's alleged bad faith in their dealings with her are relevant to the Motion to Dismiss, and the Court has not found any such case law.

However, Orly's complaint about the bad faith actions of her creditors is not limited to Sagi. In substance, she maintains that Sagi and Dalia have acted in concert with the Orly Trust, Recovery Effort, Inc. and Manhattan Safety Maine, Inc. to assert sometimes conflicting claims against Orly in an effort to destroy her financially.[43] Without limitation, she says that at times they have acted in violation of the automatic stay and at all times, they have acted in concert or otherwise, in bad faith. The Court need not review in depth Orly's allegations against those creditors. It suffices that the Court finds that those allegations might be relevant to the resolution of the Motion To Dismiss. Accordingly, the Court denies Sagi's Motion *in Limine* To Exclude Arguments as it relates to the alleged bad faith of Sagi, Dalia and the parties to an intercreditor agreement for actions that post-date the Federal Actions.

---

[43]   See *generally* Debtor's Objection to Creditor Sagi Genger's Amended and Updated Motion to Dismiss [ECF No. 425] ¶¶ 45-56.

14

**Conclusion**

Based on the foregoing, the Court denies the Motion *in Limine* to Exclude Parties, and grants, in part and denies in part the Motion *in Limine* to Exclude Arguments.

IT IS SO ORDERED.

Dated: New York, New York
       June 15, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge