UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* ORLY GENGER,<br><br>        Debtor. | Chapter 7<br><br>Case No. 19-13895 (JLG) |

**Objection of the Orly Genger Trust, by its Trustee Michael Oldner, to the
Chapter 7 Trustee's Motion to Approve Settlement**

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361
*Attorneys for the Orly Genger Trust,
by its Trustee Michael Oldner*

# Table of Contents

PRELIMINARY STATEMENT ............................................................1

    I.    The Non-Debtor Releases...................................................1

    II.   The Proposed Sale of the Orly Trust Claims..............................6

BACKGROUND.............................................................................7

    I.    The Genger Divorce and Related Litigation...............................8

    II.   The State Court Litigation, Leading to the 2013 Settlement.............10

    III.  The 2013 Resolution of the Derivative Claims...........................12

    IV.  Dalia attempted to protect the Orly Trust's interests, but the state courts never ruled on the merits of her applications. ...................15

    V.   The 2013 Settlement Proceeds Never Reach the Orly Trust...............18

ARGUMENT ..............................................................................19

    I.    The 2013 Settlement payment should have gone to the real party in interest. ...........................................................19

        A.   The Settlement proceeds belong to the real party in interest. .......19

        B.   The Brosers cannot share in the Orly Trust's interest in the 2013 Settlement. ........................................................21

    II.   The proposed permanent injunctions should not be approved. .................24

        A.   The actions affect the Orly Trust and *not* the bankruptcy estate. 25

            1.    The MSM Action ..............................................27

            2.    Surrogate's Court Turnover Action .............................28

            3.    Dalia 2010 Action Appeal .....................................29

        B.   The proposed injunction covers claims outside the Court's subject matter jurisdiction.............................................30

        C.   The proposed injunction is inappropriate. ........................33

            1.    The Orly Trust's claims do not affect the bankruptcy estate. ....................................................34

            2.    Payments made by the Settling Parties are not an "effect" on the bankruptcy estate for purposes of the proposed injunction. .......................................36

            3.    The only beneficiaries of the proposed injunction are the Settling Parties. ...........................................37

    III.  The proposed sale of "Estate Claims" should not be approved. .................39

        A.   The "Estate Claims" are not estate property and the Trustee has no authority to sell them........................................41

|   |   | 1. | The State Court Claim | 42 |
|   |   | 2. | The Surrogate Court Case | 45 |
|   |   | 3. | Claims Against the Orly Trust Trustees | 48 |
|   | B. | | The Trustee cannot sell property that's not in the bankruptcy estate. | 49 |
| IV. | | | The Proposed Agreement fails to satisfy Bankruptcy Rule 9019(a). | 51 |
|   | A. | | The Proposed Agreement is not fair or equitable. | 51 |
|   | B. | | The Proposed Agreement is actually a collusive payment to the Trustee. | 52 |

**CONCLUSION** ............................................................................................ **55**

# Table of Authorities

## Cases

*Bd. of Managers of 28 Cliff St. Condo. v. Maguire,*
  191 A.D.3d 25 (1st Dep't 2020) ....................................................................23

*Birnbaum v. Birrell,*
  17 F.R.D. 409 (S.D.N.Y. 1955) ....................................................................20

*Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins.,*
  955 F.3d 305 (2d Cir. 2020) .........................................................................32

*Certain-Teed Prod. Corp. v. Topping,*
  171 F.2d 241 (2d Cir. 1948) .........................................................................23

*Clarke v. Greenberg,*
  296 N.Y. 146 (1947) .....................................................................................20

*Culligan Soft Water, Co. v. Clayton Dubiler & Rice, LLC,*
  144 A.D.3d 611 (1st Dep't 2016) .............................................................22, 23

*Genger v. Genger,*
  121 A.D.3d 270 (1st Dep't 2014) ...............................................................8, 9

*Genger v. Genger,*
  144 A.D.3d 581 (1st Dep't 2016) .................................................................17

*Genger v. Genger,*
  2019 WL 1330905 (Sup. Ct., N.Y. Cty. Mar. 25, 2019) ..............................43

*Genger v. Genger,*
  76 F. Supp. 3d 488 (S.D.N.Y. 2015) ....................................1, 7, 9, 18, 19, 21

*Genger v. Genger,*
  966 N.Y.S.2d 346, 2013 WL 221485 (Sup. Ct., N.Y. Cty. 2013) .................11

*Genger v. Genger,*
  No. 109749/2009, 39 Misc. 3d 1235(A), 2013 WL 2396219
  (Sup. Ct., N.Y. Cty. May 29, 2013) .........................................13, 42, 43, 44

*Genger v. TR Inv'rs, LLC,*
  26 A.3d 180 (Del. 2011) ...............................................................................10

*Glenclova Inv. Co. v. Trans-Res., Inc.,*
  874 F. Supp. 2d 292 (S.D.N.Y. 2012) ............................................................8

*Hirsch v. Arthur Andersen & Co.,*
  72 F.3d 1085 (2d Cir. 1995) .........................................................................45

*In re Bernard L. Madoff Inv. Sec. LLC,*
  740 F.3d 81 (2d Cir. 2014) .............................................................................. 5, 31, 33, 35

*In re Boisseau,*
  2017 WL 395124 (N.D.N.Y. Jan. 30, 2017) ................................................................47

*In re Charter Commc'ns,*
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) ........................................................................51

*In re CIL Ltd.,*
  2018 WL 878888 (Bankr. S.D.N.Y. Feb. 9, 2018) ..................... 30, 31, 32, 33, 40, 44, 48

*In re Dewey & LeBoeuf LLP,*
  478 B.R. 627 (Bankr. S.D.N.Y. 2012) ........................................................................52

*In re Ditech Holding Corp.,*
  606 B.R. 544 (Bankr. S.D.N.Y. 2019) ........................................................................26

*In re Dow Corning Corp.,*
  280 F.3d 648 (6th Cir. 2002) .......................................................................................38

*In re EDC Holding Co.,*
  676 F.2d 945 (7th Cir. 1982) .......................................................................................49

*In re FirstEnergy Solutions Corp.,*
  Case No. 18-br-50757 (N.D. Oh. Apr. 4, 2019) ....................................................27, 34

*In re Greene,*
  103 B.R. 83 (S.D.N.Y. 1989) ......................................................................................25

*In re Hibbard Brown & Co., Inc.,*
  217 B.R. 41 (Bankr. S.D.N.Y. 1998) ..........................................................................54

*In re Hilsen,*
  405 B.R. 49 (Bankr. E.D.N.Y. 2009) ..........................................................................42

*In re Integrated Res., Inc.,*
  147 B.R. 650 (S.D.N.Y. 1992) ....................................................................................52

*In re Iridium Operating LLC,*
  478 F.3d 452 (2d Cir. 2007) ........................................................................................51

*In re Kiersz,*
  311 B.R. 145 (Bankr. W.D.N.Y. 2004) ......................................................... 40, 49, 50, 52

*In re Meffert,*
  232 B.R. 71 (Bankr. S.D.N.Y. 1998) ..........................................................................25

*In re Metromedia Fiber Network Inc.,*
  416 F.3d 136 (2d Cir. 2005) ........................................................................... 4, 26, 36, 37

*In re Munford, Inc.*,
  97 F.3d 449 (11th Cir. 1996) ........................................................................ 30

*In re Myerson & Kuhn*,
  121 B.R. 145 (Bankr. S.D.N.Y. 1990) .......................................................... 35

*In re Nudo*,
  147 B.R. 68 (Bankr. N.D.N.Y. 1992) ............................................................ 42

*In re Quigley Co., Inc.*,
  437 B.R. 102 (Bankr. S.D.N.Y. 2010) .......................................................... 26

*In re SL Liquidating, Inc.*,
  428 B.R. 799 (Bankr. S.D. Oh. 2010) ........................................................... 29

*In re Soundview Elite Ltd.*,
  565 B.R. 534 (Bankr. S.D.N.Y. 2017) .......................................................... 31

*In re SunEdison, Inc.*,
  576 B.R. 453 (Bankr. S.D.N.Y. 2017) ..................................................... 26, 30

*In re the Orly Genger 1993 Trust*,
  No. 0017/2008 (Sur. Ct., N.Y. Cty.) ............................................................. 46

*In re Treadway*,
  117 B.R. 76 (Bankr. D. Vt. 1990) ............................................................. 45, 48

*In re Tronox, Inc.*,
  855 F.3d 84 (2d Cir. 2017) ...................................................................... 32, 35

*In re W.R. Grace & Co.*,
  607 B.R. 419 (Bankr. D. Del. 2019) ...................................................27, 34, 39

*In re Washington Mutual, Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) .............................................................. 26

*In re World Parts, LLC*,
  322 B.R. 37 (Bankr. W.D.N.Y. 2005) ....................................................... 50, 52

*Jacobs v. Cartalemi*,
  156 A.D.3d 605 (2d Dep't 2017) ................................................................... 20

*Kaplan v. Bennett*,
  465 F. Supp. 555 (S.D.N.Y. 1979) ................................................................ 20

*Lefkowitz v. Bank of New York*,
  528 F.3d 102 (2d Cir. 2007) ......................................................................... 47

*MacArthur Co. v. Johns-Manville Corp.*
  837 F.2d 89 (2d Cir. 1988) ........................................................................... 35

*Matter of Estate of Sanders,*
  602 N.Y.S.2d 742 (Sur. Ct. 1991) ................................................................31

*Matter of Hecht,*
  54 B.R. 379 (Bankr. S.D.N.Y. 1985) ............................................................31

*Mokhiber on Behalf of Ford Motor Co. v. Cohn,*
  783 F.2d 26 (2d Cir. 1986) ...........................................................................20

*Papilsky v. Berndt,*
  466 F.2d 251 (2d Cir. 1972) .........................................................................20

*Regan v. Ross,*
  691 F.2d 81 (2d Cir. 1982) ...........................................................................42

*Ross v. Bernhard,*
  396 U.S. 531 (1970)......................................................................................43

*SEC v. Drexel Burnham Lambert Grp., Inc.,*
  960 F.2d 285 (2d Cir. 1992) ...................................................................26, 34

*Serino v. Lipper,*
  123 A.D.3d 34 (1st Dep't 2014).....................................................................20

*Togut v. Hecht,*
  69 B.R. 290 (S.D.N.Y. 1987) .........................................................................32

*TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP,*
  2014 WL 1979932 (S.D.N.Y. May 15, 2014).................................................13

*TR Inv'rs, LLC v. Genger,*
  2010 WL 2901704 (Del. Ch. July 23, 2010)....................................................9

*TR Inv'rs, LLC v. Genger,*
  2010 WL 3279385 (Del. Ch. Aug. 9, 2010) .....................................................9

*TR Investors, LLC v. Genger,*
  2013 WL 603164 (Del. Ch. Feb. 18, 2013).....................................................12

*Velez v. Feinstein,*
  87 A.D.2d 309 (1st Dep't 1982)......................................................................20

*Yudell v. Gilbert,*
  99 A.D.3d 108 (1st Dep't 2012)......................................................................43

**Statutes**

11 U.S.C. § 523 ....................................................................................................25

11 U.S.C. § 541 ....................................................................................32, 41, 45

Bus. Corp. L. § 626 ............................................................................22

CPLR § 5205(c)(1)............................................................................42

**Rules**

Bankruptcy Rule 9019(a) ........................................... 7, 39, 51, 52, 54

The Orly Genger 1993 Trust ("Orly Trust"), by its trustee Michael Oldner, submits this Objection in response to the Chapter 7 Trustee's 9019 Motion ("Motion," ECF no. 421) and proposed Settlement Agreement ("Proposed Agreement," ECF no. 421-1), both dated May 28, 2021.[1]

## PRELIMINARY STATEMENT

The Proposed Agreement seeks to: (1) provide both non-consensual debtor and non-debtor releases to the Debtor's father and family friends; and (2) sell claims belonging to the Orly Trust. The Trustee has no legal right to do either of these things.

## I.    The Non-Debtor Releases

The proposed non-debtor releases seek to shield the parties who received the proceeds from the "2013 Settlement"[2] when "Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million…." *Genger v. Genger*, 76 F. Supp. 3d at 493 (S.D.N.Y. 2015) ("*Genger I*"), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). But Orly individually never owned the shares at issue in that litigation. Instead, they were owned by the Orly Trust — the real party in interest — which hasn't seen a dime of the settlement.

The 2013 Settlement was facilitated by William Wachtel, the lawyer who was purportedly representing Orly in her action on behalf of the Orly Trust, but who in fact was (according to the Bankruptcy Trustee) "a long-time friend and lawyer for Arie."

---

[1] Recovery Effort, Inc. ("REI"), the assignee of the Orly Trust, and Manhattan Safety Maine, Inc. ("MSM"), its creditor, are both plaintiffs in *Manhattan Safety Maine, Inc. et al. v. Bowen et al.*, No. 19-cv-5642 (S.D.N.Y.), an action which the Trustee as a part of this motion seeks to enjoin. *See infra* Argument § 3(A)(1). REI and MSM, for the reasons stated herein to the extent applicable to them, join in the Orly Trust's opposition to the Trustee's Motion.

[2] Attached at Declaration of Adam Pollock ("Pollock Dec."), Exh. 1.

Motion ¶ 44. And indeed, in 2012, Arie Genger (Orly's father) and the Brosers (Arie's friends) had purportedly launched a vehicle to try to make off with the money from an eventual settlement of those claims asserted on behalf of the Orly Trust. As explained recently, and forthrightly, by Arie's current counsel:

> The creation of this [Genger Litigation Trust] agreement was triggered by the ruling of New York Supreme Court Justice Paul Feinman that Orly had standing to pursue [derivative] claims on behalf of the Orly Trust. … Thus, in the event that Arie or Orly recovered money from any of their litigations or settlements thereof, they were to be paid first to the Genger Litigation Trust—<u>and not to Arie, Orly, or the Orly Trust.</u>

*See* Memo from Arie Genger's counsel, Pollock Dec., Exh. 2, at 6.

Now, through the Motion, that plan first set in action in 2012, by way of this "Genger Litigation Trust," would come to fruition. As Arie's current counsel explained in a recent email, "Our position is and always has been that these settlement proceeds are solely the result of Arie and he alone arranging financing and then pursing HIS claims against the Trumps…. Thus all of the remaining settlement proceeds after the continuing Skadden fees, the claims of Brosers, and Eric and Kasowitz are paid[,] will go to Arie via the Genger Litigation Trust." Pollock Dec., Exh. 3.

Aiming for this outcome, at its core, the proposal is that Orly enters bankruptcy, making no claim to the $32.3 million settlement; but her father and his friends emerge from the bankruptcy with a full release and keeping almost all of the $32 million. To effect this plan, the Motion proposes that this Court should enjoin actions brought by the Orly Trust (and by its assignee REI[3]) that do not implicate the assets or liabilities of the bankruptcy estate. The proposed injunctions would allow Arie and the Brosers –

---

[3] The Orly Trust assigned its claims to its wholly-owned subsidiary REI.

i.e., non-debtors – to escape the claims that the Orly Trust has directly asserted against them and others to recover the $32 million in proceeds from the 2013 Settlement of the Orly Trust's claims.

<u>The Trustee (through counsel) knows that this is a problem and wanted to make sure that the bankruptcy estate gets paid regardless, writing by email:</u>

> We are concerned with the reach of the court's jurisdiction to be able to provide a global release that also releases direct claims by the Orly Genger Trustee … The concern we have is that we need some meaningful non refundable cash amount if we are not successful in getting a global release and are only successful in getting a limited release.

*See* Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 4, at 3.

And a week later, the Trustee's counsel raised the same concern in another email:

> I remain concerned that a strong risk exists that the Court will sustain Orly Genger Trust's objection to a release that includes the Orly Genger Trust's possible right to assert such claim. … As a result of this potential risk, before I incur months of time and thousands of dollars in legal fees on prosecuting a settlement motion (along with discovery that will be required), I need some assurance that if Judge Garrity were to approve the reasonableness of the settlement consideration but is only willing to provide releases of the estate's possible direct claim and its derivative claims of its creditors, which includes Sagi, as example, BUT NOT a specific release applying to Orly Genger Trust, that your client will still fund a settlement with the Trustee.

*See* Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 5, at 2.

And, in yet another email, the Trustee's counsel's payment demands continued:

> [A]s this settlement is very controversial and I am concerned about denial thereof, I would like you to consider some small payment to estate even if the settlement is not accepted by the Court.

*See* Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 6, at 1.

_To that end, the Proposed Agreement includes a "Non-Refundable Settlement_
_Payment" of $300,000._ And, presumably, the entire amount will be swallowed up by the
Trustee's super-priority claim for her attorneys' fees under § 726(b).

But even were the Orly Trust's claims the property of the bankruptcy estate—
which they're not—non-consensual third-party releases don't exist in a Chapter 7
bankruptcy. Or, as the Trustee's counsel explained by email, "I have not seen a chapter
7 case with broad releases of third party claims of a trust where Debtor is beneficiary."
Pollock Dec., Exh. 4, at 3.

Indeed, the Second Circuit in _In re Metromedia Fiber Network Inc._ warned that
"a nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield
itself from liability to third parties. In form, it is a release; in effect, it may operate as a
bankruptcy discharge arranged without a filing and without the safeguards of the
Code." 416 F.3d 136, 142 (2d Cir. 2005). Here, the circumstances make the Second
Circuit appear prophetic.

This Proposed Agreement could only possibly make sense if the recovery of the
$32.3 million in settlement proceeds implicated the _res_ of the Debtor's estate, i.e., if the
benefit of monetizing the Orly Trust's shares was Orly's asset to capture. If the money
were her asset — if she had scheduled it as an asset in her bankruptcy — then Arie and
the Brosers should pay the 2013 Settlement back to her bankruptcy estate and gain
peace. Here, however, as Judge Forrest determined, the $32.3 million represents the
monetization of the beneficial ownership of the Orly Trust's TRI shares, and _not_ Orly's
TRI shares (she had none). And, in the actions proposed to be enjoined, the Orly Trust

(through its assignee) asserts direct claims to recover those moneys from Arie and the Brosers (and their various entities), and *not the Debtor*.

More formally stated, the litigation on behalf of the Trust to recover those monies asserts particularized claims against non-debtor parties that do *not* affect property of the bankruptcy estate. Indeed, the Motion cites to the *Madoff* case for the un-remarkable point that "[e]state causes of action include claims against third parties that the debtor would have had standing to pursue." Motion ¶ 157. But nowhere does the Trustee assert, even in conclusory fashion, that Orly's bankruptcy estate would have claims against these third parties for the return of the 2013 Settlement proceeds.

Nor could the Trustee come to the conclusion that the Orly Trust's assets belong to the Debtor personally, as the bankruptcy estate has no economic interest in a spendthrift trust. Notably, Sagi and Orly's parents (Arie and Dalia) intentionally did *not* transfer wealth directly to their children. Instead, they put the assets in trusts for the benefit of their children and their descendants. And the Orly Trust has a responsibility to recover assets to benefit Orly and the other beneficiaries.

This proposed settlement of the bankruptcy would thus frustrate the original intentions of Arie and Dalia. The Trustee and Settling Parties would use this bankruptcy to allow the Debtor's supposed creditors — i.e., her father and his friends — to keep almost all of the $32.3 million from the 2013 Settlement they made off with. This outcome would be expressly the *opposite* of the purpose of a spendthrift trust. *See* Trustee's Counsel's Email, at Pollock Dec., Exh. 5, at 2 ("A spendthrift trust and its property is expressly not property of the estate under 541(c).").

This settlement is *not* supported by the facts or the law. Instead, the Orly Trust should recover its rightful assets, in which event there will be plenty of funds (secure from creditors) to provide for Orly (and the other beneficiaries).

II.    **The Proposed Sale of the Orly Trust Claims**

Separately, the Proposed Agreement seeks to sell claims for the benefit of the Orly Trust, against its former and current trustees, to a newly-formed LLC affiliated with Eric Herschmann (the Debtor's husband). But even if any money were collected on these claims, the funds would belong to the Orly Trust—the real party in interest of a derivative claim—and *not* to Orly Genger, nor to her bankruptcy estate.

As a consequence, the Trustee lacks standing to sell these claims, as they do not affect the bankruptcy estate. The Trustee (through counsel) knows that this proposed deal term is *also* a problem and, *again*, wants to make sure that the bankruptcy estate gets paid regardless:

> I assume … you agree that these Estate Claims (which relates to claims that the estate "may have") are being sold "as is, where as", and the Trustee is not asking the Court to make a determination at this stage as to whether the claims belong to the bankruptcy estate or the Orly Genger 1993 Trust, with all potential defendants' defenses to the Estate Claims preserved. And further, to the extent that the sale is approved, and there is a legal determination in the future that the Estate Claims belonged instead to the Orly Genger 1993 Trust (or any other party for that matter), then, in that instance, Claims Pursuit Inc. has no ability to pursue any damages against the estate.

*See* Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 7.

Here, the Trustee's counsel's concerns are on point — the claims belong to the Orly Trust and *not* to the Debtor's estate, and the Chapter 7 Trustee has no standing to sell the claims. The proposed "sale" of these claims is outside the scope of the Trustee's authority to sell or this Court's authority to approve. Indeed, the Trustee's counsel

frankly admitted as much to the Court: "We're not even saying that we necessarily commit that we have standing." Transcript of Apr. 2, 2021 Status Conference, at 22.

In exchange for purporting to sell claims she is not authorized to sell, the Trustee receives $50,000 of funds already held in escrow, along with a "hope note" of tiered percentages of shares in the potential recoveries from these claims. Proposed Agreement ¶ 4. Of course, even if the Trustee were authorized to sell these claims, which she isn't, their recoveries would belong to the Orly Trust, the real party in interest. In other words, the Trustee's "hope note" has no prayer—the estate cannot recover 75% of $0.

So, even if it were permissible to sell claims the Trustee has not confirmed (and does not affirmatively argue) are property of the estate, which it isn't, the "return" for the estate is a house of cards. The Trustee has not exercised her business judgment in selling claims she is not authorized to sell that, even if she could assign them, are worth nothing to the estate. If ever a settlement under Bankruptcy Rule 9019 fell below the lowest point in the range of reasonableness, this is that settlement.

*    *    *

For these reasons, the Orly Trust, along with REI and MSM to the extent applicable, respectfully request that the Court deny the Trustee's Motion to approve the settlement.

## **BACKGROUND**

As found by the District Court, in 2013, "Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million…." *Genger I*, 76 F. Supp. 3d at 493, *aff'd*, 663 F. App'x 44 (2d Cir. 2016). But reaching this fact — and its aftermath — requires some recitation of the history of the Genger litigation saga.

I.    **The Genger Divorce and Related Litigation**

In 1985, Arie Genger founded Trans-Resource, Inc. ("TRI"), a fertilizer company.
*Genger v. Genger*, 121 A.D.3d 270, 274 (1st Dep't 2014). Until 2001, TRI was a family-
held, wholly-owned subsidiary of TPR Investment Associates, Inc. ("TPR"). *Id.* Arie and
Dalia also formed two trusts for the benefit of their children and descendants, the Sagi
Genger 1993 Trust ("Sagi Trust") and the Orly Trust, and the trusts held indirect
interests in TPR.[4]

In 2001, a group of investors (the "Trump Group") purchased a minority stake in
TRI, under an agreement that restricted future transfers of TRI stock and provided a
right of first refusal. A transfer that violated those conditions would be void, those
shares would revert to TPR, and the Trump Group would have a right to purchase
those invalidly transferred shares.

In October 2004, Arie and Dalia entered into a divorce settlement. As part of
that settlement, TPR transferred the family's interests in TRI to (i) Arie, (ii) the Orly
Trust, and (iii) the Sagi Trust.

In 2008, the Trump Group sued TPR claiming that the 2004 transfers violated
the 2001 agreement and triggered their right of first refusal. *Glenclova Inv. Co. v.
Trans-Res., Inc.*, 874 F. Supp. 2d 292, 296 (S.D.N.Y. 2012).

While that litigation was pending, in 2008, TPR and the Sagi Trust reached a
two-part settlement with the Trump Group. (By then, Sagi ran TPR.) In the "Main
Agreement," TPR and the Sagi Trust agreed to sell the TRI shares purportedly held by

---

[4] Dalia, the Sagi Trust, and the Orly Trust owned an indirect minority stake in TPR
through a limited partnership. Arie owned a majority stake in TPR directly. Sagi and
Orly did not individually own any shares.

the Sagi Trust for approximately $26.7 million, regardless of whether a court determined that the 2004 transfers were void. 121 A.D.3d at 275; *see Genger I*, 76 F. Supp. 3d at 493. In the "Side Letter Agreement," TPR agreed to extend the Trump Group's option under the shareholder agreement to buy whatever rights TPR held in the TRI shares purportedly held by Arie and the Orly Trust for approximately $7.4 million and $10.3 million, respectively, or 60% less than the price paid for the Sagi Trust's stock. 121 A.D.3d at 275; *see Genger I*, 76 F. Supp. 3d at 493. This option would be triggered only if a court determined that the 2004 transfers were void, resulting in the legal and/or beneficial ownership of the TRI shares reverting to TPR.

Meanwhile, in 2008, the Trump Group filed suit against Arie in Delaware Chancery Court to determine control of TRI. In July 2010, the Chancery Court found that the 2004 transfers violated the 2001 agreement and that the Trump Group had majority control of TRI through the Main Agreement (with TPR and the Sagi Trust). *TR Inv'rs, LLC v. Genger*, 2010 WL 2901704 (Del. Ch. July 23, 2010), *aff'd*, 26 A.3d 180 (Del. 2011). Then, in August 2010, the court also determined that the 2004 Transfers to Arie and the Orly Trust were invalid and that the stock had reverted to TPR, triggering the Trump Group's option to buy the stock under the Side Letter Agreement. *TR Inv'rs, LLC v. Genger*, 2010 WL 3279385 (Del. Ch. Aug. 9, 2010), *rev'd in part*, 26 A.3d 180 (Del. 2011).

In 2011, the Delaware Supreme Court affirmed that the 2004 transfers were invalid, which meant that TPR held *record* ownership of the shares purportedly transferred to Arie and the trusts as a result of the 2004 transfers. The court also found that the Chancery Court's ruling that the transfer out of TPR was void was preclusive

as to Arie, as Arie was before the court. *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 202 (Del. 2011). Accordingly, this decision extinguished any claim Arie might have to the shares, subject only to an objection by TPR.[5]

II.    **The State Court Litigation, Leading to the 2013 Settlement**

While the Delaware litigation was pending, Orly and her father Arie jointly commenced the "2010 Action": *Arie Genger and Orly Genger, in her individual capacity and on behalf of The Orly Genger 1993 Trust v. Sagi Genger, et al.*, Supreme Court, New York County, No. 651089/2010.

The 2010 Action led to the 2013 Settlement at issue here. Arie and Orly (derivatively, on behalf of the Orly Trust) brought claims related to the ownership of the TRI shares and the Trump Group's allegedly unfair purchase price paid to TPR for the Orly Trust and Arie shares (i.e., the 60% discount compared to the price paid for the Sagi Trust's shares). Orly purported to bring her claims derivatively *and individually*, but because Orly never owned any shares in her individual capacity, her claims were *necessarily derivative* of the Orly Trust. In fact (as all parties agree), at *no* point did Orly *ever* directly or indirectly own any shares of TRI *as an individual*.

When defendants in the 2010 Action moved to dismiss Orly's derivative claims for lack of standing, Orly argued that "'as the beneficiary of the … Trust, [she] has a right to assert causes of action on behalf of the trust,'" quoting from an earlier holding

---

[5] The Delaware Supreme Court also ruled that the Chancery Court lacked the power to declare who owned the *beneficial* interests in the shares transferred by TPR to the Orly Trust because it lacked personal jurisdiction over the Orly Trust and TPR.

in the parallel "2009 Action."[6] In a subsequent brief, filed in February 2013, Orly

re-affirmed that: "As the caption in this case clearly states [referring to Orly being

listed in the caption as plaintiff both in her individual capacity and 'on behalf of the

Orly Genger 1993 Trust'], the Orly Trust remains a party to this case. Moreover, this

Court has already ruled that Orly has the right to prosecute actions on behalf of the

Orly Trust."[7]

On January 3, 2013, the state court granted in part and denied in part the

Trump Group's motion to dismiss the derivative claims, permitting to proceed the

breach of fiduciary duty and unjust enrichment claims, as pleaded by Arie and by Orly

on behalf of the Orly Trust. *Genger v. Genger*, 966 N.Y.S.2d 346, 2013 WL 221485 (Sup.

Ct., N.Y. Cty. 2013). The court adopted Orly's position that Orly "has legal standing to

represent the Orly Trust, per the holding of the previously assigned justice." *Id.* at *6.

---

[6] Plaintiff Orly Genger's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Nov. 22, 2011, at 1 (dkt. no. 182), attached as Pollock Dec., Exh. 8.

[7] Plaintiff Orly Genger's Memorandum of Law in Opposition to the Trump Group Defendants' Motion to Vacate or Modify Temporary Restraining Order, Feb. 26, 2013, at 4 (dkt. no. 341), attached as Pollock Dec., Exh. 9.

At an earlier motion hearing, Orly's then-counsel also argued that she had the right to pursue derivative claims on behalf of the Orly Trust:

> [T]here's no question that the Orly Trust is represented. The caption of the case says that Orly is representing both herself and the Orly Trust. The Orly Trust interests are represented here. If the Court agrees with me, it's being represented by me. If the Court agrees with [the Trustee's counsel] Mr. Meister -- I don't think that will happen -- but if it does, it's being represented by Mr. Meister and [the Trustee]. Everyone here, every trustee, every beneficiary is right before the court.

Transcript, Mar. 13, 2012, at 109 (dkt. no. 222), attached as Pollock Dec., Exh. 10.

III.    **The 2013 Resolution of the Derivative Claims**

In February 2013, the Delaware Chancery Court had indicated that it would hold a contempt proceeding against Arie for continuing the 2010 Action in New York, in violation of the Chancery Court's prior finding (affirmed by the Delaware Supreme Court) that the share transfers were void. *See TR Investors, LLC v. Genger*, 2013 WL 603164 (Del. Ch. Feb. 18, 2013). Then, in June 2013, with Arie days away from a likely contempt citation, TRI, Orly, Arie, the Brosers and their related entities, and the Trump Group entered into the 2013 Settlement. *See* Pollock Dec., Exh. 1.

This 2013 Settlement provided that the Trump Group would pay $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each) to "resolve all issues, disputes and disagreements between [the parties]," including "the issue of ownership of all [TRI] shares." Pollock Dec., Exh. 1, at 2.[8]

To that end, the parties agreed to have the state court "enter a definitive non-appealable order declaring that members of the Trump Group own all right, title and interest (beneficially, of record and otherwise) to the shares of Trans-Resources purportedly transferred by TPR in October 2004 to Arie Genger (the []'Arie Shares') and to the Orly Genger 1993 Trust (the 'Orly Trust Shares')." *Id.* at 5. And the 2013 Settlement further required the parties to "cause the Orly Genger 1993 Trust to release any and all claims against the Trump Group." *Id.* at 16.

---

[8] The two promissory notes are to be paid upon the happening of various events, some of which have not yet occurred. We understand that the two promissory notes are currently held by Michael Bowen (who is also the Debtor's counsel), as a successor escrow agent under the 2013 Settlement (in place of William Wachtel, Orly's prior litigation counsel and the agent named in the 2013 Settlement).

Thus, the 2013 Settlement made clear that the purpose of the settlement—and the only material consideration for the $32 million payment—was to settle the claims relating to the *Orly Trust* shares.[9]

On June 18, 2013, Arie's counsel informed the court of the settlement by letter: "Enclosed please find a Stipulation of Discontinuance with Prejudice ['First Stipulation']…. Arie Genger and Orly Genger, in her individual capacity *and on behalf of the Orly Genger 1993 Trust*; … Arnold Broser, David Broser and [their entities]; and [the Trump Group], and [TRI] have entered into a confidential settlement agreement to resolve all issues among the stipulating parties." *2010 Action*, Letter to the Court (dkt. no. 465), June 18, 2013, attached as Pollock Dec., Exh. 11 (emphasis added). On the enclosed stipulation of dismissal, Orly Genger signed "in her individual capacity and on behalf of the Orly Genger 1993 Trust." *Id.*; *see also 2010 Action*, Stipulation (Request to so Order) (dkt. no. 466), June 19, 2013, attached as Pollock Dec., Exh. 12 (including "on behalf of" Orly Trust language).

TPR and the Sagi Trust (in its capacity as a remainderman beneficiary of the Orly Trust) responded, objecting to Orly's proposed settlement of the derivative claims on behalf of the Orly Trust. *2010 Action*, Objections to Stipulation (dkt no. 467), June

---

[9] Also as part of the 2013 Settlement, the Trump Group agreed to "release all claims they may have to the … $10,314,005.00 plus interest held by with Pedowitz & Meister as escrow agent." Pollock Dec., Exh. 1, ¶ 2(a). The instant Motion now invents a post-hoc, revisionist, contra-textual theory that the release of these monies was part of a "$50 million" settlement. Motion ¶ 43. Ironically, TPR had previously tried to pay these funds to the Orly Trust, but Orly went to state court to block it. *Genger v. Genger*, No. 109749/2009, 39 Misc. 3d 1235(A), 2013 WL 2396219, at *4 (Sup. Ct., N.Y. Cty. May 29, 2013). Eventually, Judge Keenan ruled that because the 2004 transfers had been deemed void, "TPR is entitled to the [$10.3 million in] Proceeds paid by the Trump Group for those shares." *TPR Inv. Assocs., Inc. v. Pedowitz & Meister LLP*, No. 13 Civ. 8243 (JFK), 2014 WL 1979932, at *4 (S.D.N.Y. May 15, 2014).

19, 2013, attached as Pollock Dec., Exh. 13. The parties to the 2013 Settlement, through

the Trump Group's counsel, submitted a joint letter to the state court collectively

responding:

> I write on behalf of the parties to the [2013 Settlement], including
> Arie and Orly Genger and my clients, the Trump Group. A material
> term of the agreement among the settling parties was the dismissal
> of **all** claims presently pending against one another, in whatever
> capacity they were brought. Certain of Orly Genger's claims against
> the Trump Group in this action have been held by Justice Feinman
> to be derivative in nature, brought by Orly on behalf of the Orly
> Genger 1993 Trust.
>
> …
>
> The language that was drafted during yesterday's conference call as
> a potential "fix" for the issues raised by [counsel for the Sagi Trust]
> – that "nothing contained [in the Order] shall in any way affect any
> derivative claims presently before the Court" - - would have the
> effect of **not** dismissing Orly Genger's derivative claims against the
> Trump Group, contrary to the agreement of the settling parties.
> Excluding such claims from the claims that are to be dismissed is
> not what the Trump Group bargained and paid for in the settlement,
> and as a consequence we cannot stipulate to the entry of an order
> that includes such carve-out language.

*2010 Action*, Letter to Judge (dkt. no. 485), June 28, 2013, attached as Pollock Dec.,

Exh. 14 (bold in original, underline added).[10]

On June 26, 2013, a Second Amended Stipulation of Discontinuance with

Prejudice ("Second Stipulation") was filed. This stipulation was amended to replace the

phrase "on behalf of the [Orly Trust]" with the (notably ambiguous) phrase "as

beneficiary of [the Orly Trust]" (sometimes by physically crossing out "on behalf of" and

---

[10] The Motion quotes at length an email sent from the Trump Group to Sagi's counsel
on June 30, 2013. (Motion ¶ 50.) But that email is entirely consistent with the Trump
Group's June 28 letter: the Trump Group was paying to resolve *all* issues relating to
ownership of the Orly Trust shares.

hand-writing "as beneficiary of," including in the signature line for Orly's counsel). *2010 Action*, Second Stipulation (dkt. no. 471), June 21, 2013, attached as Pollock Dec., Exh. 15. On July 1, 2013, the Second Stipulation was so-ordered by the court with all instances of "on behalf of" crossed out and replaced with handwritten text stating "as beneficiary of." *2010 Action*, Stipulation of Discontinuance (dkt. no. 487), July 1, 2013, attached as Pollock Dec., Exh. 16. The Second Stipulation made no mention of the disposition of the settlement proceeds or even that consideration was given. Meanwhile, all of the settling parties refused to even provide the Trustee of the Orly Trust with a copy of the underlying 2013 Settlement Agreement.

IV. **Dalia attempted to protect the Orly Trust's interests, but the state courts never ruled on the merits of her applications.**

The 2013 Settlement Agreement was later produced, by order of the U.S. District Court. It said *nothing*, however, about how the $32.3 million should be distributed. Nonetheless, on July 1, 2013, $17.3 million of the proceeds of the 2013 Settlement were paid to Arie Genger and the Brosers and/or entities controlled by them.

Prior to the Second Stipulation, TPR and the Sagi Trust (in its capacity as a remainderman beneficiary of the Orly Trust), without the benefit of seeing the actual agreement, filed motions to try to stop court approval of the 2013 Settlement and to compel production of the 2013 Settlement and any related payment records. *See 2010 Action*, Motion (dkt. no. 472), June 26, 2013, attached as Pollock Dec., Exh. 17; *2010 Action*, Motion (dkt. no. 527), July 17, 2013, attached as Pollock Dec., Exh. 18.

The state court declined to compel production of the 2013 Settlement agreement materials, *see 2010 Action*, Order (dkt. no. 700), Dec. 23, 2013, attached as Pollock Dec., Exh. 19, and *declined* to decide to whom the monies were owed:

The remaining issues raised in this motion are whether Orly settled derivative claims of the Orly Trust, and if so, whether she should be enjoined from taking and using proceeds of the settlement for her sole benefit. Movants allege that, although the stipulation specifies that Orly settled claims against the Trump Group in her individual capacity and as beneficiary of the Orly Trust, she actually settled derivative claims belonging to the Orly Trust. Thus, they argue that the settlement proceeds belong to the Orly Trust.

…

In the settlement agreement, Orly stops short of releasing derivative claims. Rather, … she only agrees to "cooperate" and "cause" the Orly Trust to release any and all claims against the Trump Group. … I invite the parties to the settlement agreement to set forth the claims given up by Orly in her individual and beneficial capacities, and to explain why any derivative claims advanced in the complaint are not released by the agreement. *Unless and until the issue of derivative claims is resolved, I cannot determine whether some or all of the settlement proceeds with the Trump Group belong to Orly or the Orly Trust*, particularly when the Sagi Trust has asserted a contingent remainderman interest in the Orly Trust.

*2010 Action*, Decision & Order (dkt. no. 925), Mar. 21, 2014, attached as Pollock Dec., Exh. 20.

With that invitation, the Orly Trust's trustee moved to intervene. *See 2010 Action*, Motion (dkt. no. 1099), Aug. 11, 2014, attached as Pollock Dec., Exh. 21. And, as noted above, although Orly had purported to bring her claims derivatively *and individually*, because Orly never owned any shares in her individual capacity, her claims were *necessarily derivative* of the Orly Trust. Accordingly, the then-trustee of the Orly Trust argued that, because the derivative plaintiff (Orly) was clearly no longer pursuing the Orly Trust's interests, she should be allowed to intervene, and she sought to have the 2013 Settlement proceeds deposited with the court so that it could decide the proper disposition of the settlement. *See 2010 Action*, Mem. of Law (dkt. no. 1108), Aug. 11, 2014, attached as Pollock Dec., Exh. 22.

Then, on November 25, 2014, the state court entered an order confirming that the July 1, 2013 so-ordering of the Second Stipulation had indeed dismissed *all* of the claims against the Trump Group, including the claims brought by Orly on behalf of the Orly Trust. *See 2010 Action*, Order (dkt. no. 1153), Nov. 25, 2014, attached as Pollock Dec., Exh. 23.

The Orly Trust trustee appealed from the November 25, 2014 order. *See 2010 Action*, Notice of Appeal (dkt. no. 1155), Dec. 15, 2014, attached as Pollock Dec., Exh. 24. The Appellate Division affirmed the denial, holding once again that *all* of the derivative claims had already been dismissed by the prior state court orders on January 3, 2013 and July 1, 2013:

> Dalia Genger, as Trustee for the Orly Genger 1993 Trust (Orly Trust), failed to articulate any objection to the court's entry of the November 25, 2014 order dismissing plaintiff Orly Trust's breach of fiduciary duty and unjust enrichment claims [i.e. the derivative claims] against certain defendants…. In any case, that order did not dismiss any claims; rather, it recognized that all claims had previously been dismissed or discontinued by prior court orders ….

*See Genger v. Genger*, 144 A.D.3d 581, 581 (1st Dep't 2016).[11]

Meanwhile, the state court held the Orly Trust's trustee's motion to intervene "in abeyance," on the ground that Orly was simultaneously seeking removal of the Orly Trust trustee in Surrogate's Court. *See 2010 Action*, Interim Order (dkt. no. 1279), May 7, 2015, attached as Pollock Dec., Exh. 25. Finally, on February 19, 2019, the state court decided that "[i]n light of the dismissal of this action (*Genger v. Genger*, 144

---

[11] There are two *Genger* opinions from the Appellate Division from the same day that seem to share the citation 144 A.D.3d 581. This brief is referring to the *second* opinion that appears in Westlaw upon entering the citation 144 A.D.3d 581.

A.D.3d 581 [1st Dept 2016]), this motion is now moot." *See 2010 Action*, Decision &

Order (dkt. no. 1520), Feb. 19, 2019, attached as Pollock Dec., Exh. 26.

Thus, because the underlying derivative claims of the 2010 Action had already

been dismissed, the state court declined to resolve the issue of the disposition of the

2013 Settlement, nor did it address the merits of Dalia's position. But, to this day, the

issue of the proper owner of the settlement funds deriving from those derivative claims

on behalf of the Orly Trust has never been adjudicated in any forum.[12]

## V.    The 2013 Settlement Proceeds Never Reach the Orly Trust

Following the 2013 Settlement, the Trump Group wired $17.3 million in cash to

the IOLA account of the law firm of Wachtel Misry. William Wachtel had ostensibly

represented Orly as counsel of record in the 2010 Action which was being settled, but in

fact was "a long-time friend and lawyer for Arie." Motion ¶ 44. And even though Orly's

counsel had repeatedly reassured the state court that they were representing the

interests of the Orly Trust, when the money actually arrived, Mr. Wachtel released the

funds to Arie's creditors. This left the Orly Trust with *none* of the benefit of the

litigation brought on its behalf.

But Judge Forrest later recognized the legal reality of what had happened,

confirming that Orly had "monetized her beneficial interest in the Orly Trust shares for

$32.3 million," *Genger I*, 76 F. Supp. 3d at 501, *aff'd*, 663 F. App'x 44 (2d Cir. 2016). *See*

---

[12] Judge Forrest decided that all the funds were attributable to Orly's actions in
monetizing her trust's interest in the shares, but never decided whether Orly was
entitled to keep the funds, as the issue was not relevant to that litigation. *Genger I*, 76
F. Supp. 3d at 501. (At the time of the decision, the First Department had not yet ruled
that the trial court's order had dismissed the derivative claims.)

*also* ECF no. 461 at 17 ("it is enough that Orly monetized the shares, the shares were worth $32.3 million, and she benefitted from the monetization of the shares.").

## ARGUMENT

I.  **The 2013 Settlement payment should have gone to the real party in interest.**

As is undisputed, the Debtor never individually owned shares in TRI. Consequently, when Orly resolved her derivative claims in the 2013 Settlement, i.e. when "Orly monetized her beneficial interest in the Orly Trust shares for $32.3 million," *Genger I*, 76 F. Supp. 3d at 501, the proceeds necessarily belonged to the Orly Trust—the real party in interest.

### A.    **The Settlement proceeds belong to the real party in interest.**

However the signatories to the 2013 Settlement chose to dispose of the settlement proceeds, there is one thing that is absolutely clear: the settlement proceeds represent—substantially, if not entirely—the monetization of the claims brought by Orly on behalf of the Orly Trust. *See Genger I*, 76 F. Supp. 3d at 491 ("Orly has effectively monetized an interest in the [TRI] shares she claims not to have received to the tune of $32.3 million.").[13] Yet the Orly Trust never received a single penny from the $32 million settlement.

Without question, the proceeds of a settlement between a derivative plaintiff and a defendant belong to the real party in interest. "A derivative action represents prosecution of a claim belonging not to the individual [bringing the suit] but to the

---

[13] Likewise, Orly argued to the Second Circuit that the settlement "provid[ed] that the Trump Group would pay $32 million to the AG Group in exchange for a release of any ownership interest in the TRI shares." *Sagi Genger v. Orly Genger*, Case No. 15-350, App. Br., ECF no. 90 at 21 (2d Cir. July 30, 2015).

[principal] on whose behalf suit is brought.[14] *Kaplan v. Bennett*, 465 F. Supp. 555, 560 (S.D.N.Y. 1979); *see Serino v. Lipper*, 123 A.D.3d 34, 39 (1st Dep't 2014) ("It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation [even where] the wrongful acts may have diminished the value of the shares of the corporation."). The plaintiff in a derivative suit is only *nominal* and the "proceeds of the action belong to the [principal]." *Papilsky v. Berndt*, 466 F.2d 251, 256 (2d Cir. 1972); *see Jacobs v. Cartalemi*, 156 A.D.3d 605, 607 (2d Dep't 2017) ("[R]ecovery must enure to the benefit of the corporation." (quoting *Isaac v. Marcus*, 258 N.Y. 257, 264 (1932)); *Dabney v. Levy*, 191 F.2d 201, 203 (2d Cir. 1951) (proceeds of a derivative suit are "as much the corporation's property as its factories or apparatus").

Not surprisingly, derivative suits have long raised the specter of "the unsavory practice of private and collusive settlement." *Birnbaum v. Birrell*, 17 F.R.D. 409, 411 (S.D.N.Y. 1955). The concern has been that derivative plaintiffs will collusively settle with defendants for harms done to the principal without providing any benefit to the principal. *Mokhiber on Behalf of Ford Motor Co. v. Cohn*, 783 F.2d 26, 27 (2d Cir. 1986).

Notably, a derivative plaintiff should not recover proceeds of a derivative suit even if the derivative suit is discontinued by stipulation. *Clarke v. Greenberg*, 296 N.Y. 146 (1947) ("When one assumes to act for another, regardless of the manner or method used in accomplishing a successful termination, he should willingly account for his stewardship. The plaintiff-stockholder, in good conscience, should not be allowed to

---

[14] While many of the cases cited here reference *shareholder* derivative litigation, analogous principles apply to derivative litigation brought on behalf of *trusts*. *See Velez v. Feinstein*, 87 A.D.2d 309, 314 (1st Dep't 1982).

retain the proceeds of a derivative suit discontinued by stipulation, to his individual

use, in opposition to the corporation, any more than the proceeds of a judgment or a

settlement with court approval.").

Here, by its own terms, the 2013 Settlement resolved claims relating to "*Orly*

*Trust* shares." And in agreeing to pay $32 million, the Trump Group explicitly said that

it had "bargained and paid for" the resolution of the Orly Trust claims. Pollock Dec.,

Exh. 14; *see also Genger I*, 76 F. Supp. 3d at 501 (Orly "monetized her beneficial

interest in the Orly Trust shares for $32.3 million"). Yet the settlement proceeds were

diverted *away* from the real party in interest (the Orly Trust). Indeed, the proceeds of

that settlement went everywhere *but* the Orly Trust.

### B.  The Brosers cannot share in the Orly Trust's interest in the 2013 Settlement.

The Brosers' rightful share of any part of the 2013 Settlement could only come

from any share attributed to Arie Genger — their borrower — and *not* the proceeds of

the settlement of the claims asserted on behalf of the Orly Trust.

As described above and as recited in the Motion, the Brosers, through their

entity ADBG, "provided litigation funding to Arie." Motion ¶ 44. As a part of this

arrangement, Arie and Orly purportedly assigned any rights to the proceeds of their

litigations to ADBG via the Genger Litigation Trust.[15] *Id*. After the 2013 Settlement

was reached, ADBG received $16.325 million out of $17.3 million of the cash proceeds.

---

[15] As noted in the preliminary statement, counsel for Arie admitted in a recent memo to the Trustee that the Genger Litigation Trust was created to divert the proceeds of Orly's derivative claims on behalf of the Orly Trust: "in the event that Arie or Orly recovered money from any of their litigations or settlements thereof, they were to be paid first to the Genger Litigation Trust—and not to Arie, Orly, or the Orly Trust." Pollock Dec., Exh. 2, at 6.

Further, the yet-unpaid $15 million in notes under the 2013 Agreement has also
apparently been assigned to ADBG via the Genger Litigation Trust. *Id.* ¶¶ 92–93.

This arrangement between Arie, Orly, and the Brosers sought to give the
Brosers substantially all of the proceeds of the 2013 Settlement, while the Orly Trust,
the real party in interest, received nothing. The Chapter 7 Trustee now asks this Court
to apply its imprimatur to this arrangement by approving the Motion, which is
premised in relevant part on the Settling Parties' representations that the 2013
Settlement proceeds are theirs to keep.

But to return funds to the litigation funder, ahead of the real party in interest,
would be fundamentally contrary to the law concerning derivative actions. Specifically,
the derivative plaintiff and, by extension, her litigation funders, stand only to recover
at most a court-ordered fee award. In the context of derivative actions asserted on
behalf of corporations, the law provides that when a derivative plaintiff recovers money
(through settlement or otherwise), "the court *may* award the plaintiff … reasonable
expenses, including reasonable attorney's fees, *and shall direct him or them to account
to the corporation for the remainder of the proceeds so received by him….*" Bus. Corp. L.
§ 626(e) (emphasis added). In other words, a fee award based on a derivative claim
must be reasonable, that reasonableness is determined by the court, and whatever else
the plaintiff has recovered must go to the real party in interest.

Furthermore, New York courts have rejected proposed settlements of derivative
claims that do not benefit the real party in interest. For example, in *Culligan Soft
Water, Co. v. Clayton Dubiler & Rice, LLC*, a derivative plaintiff sought approval of
partial settlement of a derivative action for $4 million. 144 A.D.3d 611 (1st Dep't 2016).

- 22 -

The lower court approved the settlement. *Id.* However, the Appellate Division reversed, finding that "[t]he settlement does not provide for payment to the company." *Id.* The court explained that, under the proposed settlement, "Plaintiffs are to receive the bulk of the $4 million settlement in reimbursement for their legal fees in this case, and the remainder is to be turned over to their franchisee organization for future legal fees or for distribution, at the organization's discretion, to plaintiffs." *Id.* In light of that, the appellate court concluded that "they have not obtained a substantial benefit for the company, but have accomplished only getting their lawyers paid…." *Id.*; *see also Bd. of Managers of 28 Cliff St. Condo. v. Maguire*, 191 A.D.3d 25, 34 (1st Dep't 2020) ("The corporation is responsible for paying the legal fees, but only where the corporation benefits from the litigation."); *Certain-Teed Prod. Corp. v. Topping*, 171 F.2d 241, 243 (2d Cir. 1948) ("Defendant cannot evade his fiduciary responsibility to account to the corporation for all recovery resulting from his derivative action by the mere device of authorizing or permitting payment to his attorneys instead of himself.").

Here, although no attorney's fees application was ever made in connection with the 2013 Settlement, the Brosers are now trying to recast their trove of the 2013 Settlement under the guise of attorney's fees:

> ADBG funded the litigation that resulted in the 2013 Settlement Agreement, and has asserted that the 2013 Settlement Agreement would not have been possible but for its funding. ADBG claims that as is typical with litigation funding arrangements, it is required to be repaid from the proceeds of the litigation it funded.

Motion ¶ 94.

Here, the Motion proposes that the Orly Trust, as the real party in interest, would be enjoined from pursuing the Brosers, who under the guise of litigation funding, made off with the real party in interest's settlement proceeds. Motion ¶ 148; Proposed

Agreement ¶ 8. But this proposed injunction — effectively, non-debtor releases — runs directly contrary to the well-established New York law that rejects fee awards that are disproportional to the real party in interest's benefit from the litigation. In this case, the Brosers, as litigation funders for Orly's derivative claims on behalf of the Orly Trust, would receive nearly all of the proceeds from the 2013 Settlement, despite having asserted no claims in the litigation that was settled.[16]

In other words, the Motion essentially seeks to belatedly award facially unreasonable attorney's fees for the derivative litigation, while leaving the real party in interest without any benefit therefrom.

## II.  __The proposed permanent injunctions should not be approved.__

The Motion proposes to enjoin, *inter alia*, three actions of the Orly Trust (or its subsidiary REI). But those litigations seek to recover the Orly Trust's assets, asserting particularized claims against non-debtor parties to return property that never belonged to the Debtor. Accordingly, the Court lacks subject matter jurisdiction and thus, authority to issue the requested injunctions. But even if the Court has subject matter jurisdiction over the Orly Trust's claims, the proposed injunctions should not be granted because they have no effect on the estate and stand only to benefit the Settling Parties.

---

[16] Even the Brosers' own credit agreement (through their entity ADBG) with Arie recognized that they had no right to recover based on derivative claims on behalf of the Orly Trust without the Orly Trust's agreement to the credit arrangement. *See* Pollock Dec., Exh. 28, § 2.05.

A.    **The actions affect the Orly Trust and _not_ the bankruptcy estate.**

The Chapter 7 Trustee seeks to "enjoin the prosecution, and … otherwise support the dismissal" of certain actions listed in paragraph 8 of the Proposed Agreement. The Trustee would have this Court enjoin actions in which the Orly Trust seeks to recover the $32 million in settlement proceeds payable under the 2013 Settlement that are the rightful asset of the Orly Trust. But these cases inherently do _not_ involve bankruptcy estate assets as they only seek to recover the Orly Trust's assets: (1) claims against the Settling Parties and other related entities brought on behalf of the Orly Trust's assignee/subsidiary, No. 19-cv-5642 (S.D.N.Y.) (Vyskocil, J.) (the "MSM Action"); (2) a Surrogate Court's turnover action removed and transferred to this Court, No. 20-ap-01188 (Bankr. S.D.N.Y.) (Garrity, J.); and (3) an appeal by Dalia as trustee of the Orly Trust from the 2010 Action, No. 2019-4438 (N.Y. App. Div. 1st Dep't). Motion ¶ 148; Proposed Agreement ¶ 8.[17]

These are actions with direct claims asserted by and for the benefit of the Orly Trust to recover assets particular to the Orly Trust. Accordingly, this Court lacks authority to enjoin the above-listed actions.

---

[17] The Orly Trust also notes that the Trustee lacks the authority to control (and thus dispose of) the Orly Trust's non-dischargeability adversary proceeding, _Michael Oldner, as trustee of the Orly Genger 1993 Trust v. Orly Genger_, Case No. 20-ap-1447 (Bankr. S.D.N.Y.) (Garrity, J.), another case which she seeks to enjoin. _See_ 11 U.S.C. § 523(a)(4), 523(c)(1); _see also, e.g., In re Greene_, 103 B.R. 83, 88 n.11 (S.D.N.Y. 1989) ("the trustee does not have standing to establish the nondischargeability of an individual debt under 11 U.S.C. § 523(c)"); _see also In re Meffert_, 232 B.R. 71, 73 (Bankr. S.D.N.Y. 1998) (rejecting settlement pursuant to which debtor would pay creditor to withdraw its discharge objection; "objections to discharge cannot be settled in the same manner as other litigation" and so "[w]here an objection has been lodged, discharge is not a proper subject for negotiation and the exchange of a quid pro quo" (cleaned up)).

Notably, the proposed injunctions would serve as non-debtor releases for the

Settling Parties, who would stand to gain the primary benefit of this Chapter 7

personal bankruptcy. Injunctions which create a release of a third party are "proper

only in rare cases." *In re Metromedia Fiber Network Inc.*, 416 F.3d 136, 141 (2d Cir.

2005). At a minimum, the injunction must "play[] an important part in the debtor's

reorganization plan." *SEC v. Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d

Cir. 1992).[18] Furthermore, this Court only "has subject matter jurisdiction to enjoin

'third-party non-debtor claims that directly affect the *res* of the bankruptcy estate.'" *In

re Ditech Holding Corp.*, 606 B.R. 544, 626 (Bankr. S.D.N.Y. 2019) (Garrity, J.) (quoting

*In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008)).[19]

The inverse is equally true. If non-debtor claims "will only be able to execute

against" a third party's assets, and not the Debtor's, they cannot be "part of the *res* of

[the] bankruptcy estate." *In re W.R. Grace & Co.*, 607 B.R. 419, 448 (Bankr. D. Del.

---

[18] The use of the phrase "an important part in the debtor's *reorganization plan*" is a key (and repeated) distinction between this case and ones cited herein where injunctions against third parties were permitted as part of a Chapter 11 reorganization bankruptcy, rather than Chapter 7. It would be both unprecedented and structurally inappropriate to grant such a permanent injunction here because "there is no reorganization to protect by providing non-debtor releases." *In re Quigley Co., Inc.*, 437 B.R. 102, 145 (Bankr. S.D.N.Y. 2010); *see also In re Washington Mutual, Inc.*, 442 B.R. 314, 359 (Bankr. D. Del. 2011) ("[T]here is no mechanism under chapter 7 to grant third party releases to non-debtors.").

*See* Email from Rocco Cavaliere, attached at Pollock Dec. Exh. 4, at 3 ("I have not seen a chapter 7 case with broad releases of third party claims of a trust where Debtor is beneficiary.").

[19] "[T]he party asserting that the Court has subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (citing *Giammatteo v. Newton*, 452 Fed. App'x 24, 27 (2d Cir. 2011)).

2019); *see also In re FirstEnergy Solutions Corp.*, Case No. 18-br-50757, ECF no. 2478 at 16:13–17:10 (N.D. Oh. Apr. 4, 2019) ("*FirstEnergy Solutions*") (rejecting third-party releases that included "claims that do not lie at all against the Debtor, and yet result in the release of a non-Debtor").

Here, the Trustee has not offered any evidence that the Orly Trust's claims are "part of the *res* of [the] bankruptcy estate." Indeed, the Chapter 7 Trustee's counsel apparently agrees (or at least agreed) with our objection, writing by email:

> Judge Garrity takes these release issues seriously, as reflected in his detailed decision in In re CIL Limited…. I remain concerned that a strong risk exists that the Court will sustain Orly Genger Trust's objection to a release that includes the Orly Genger Trust's possible right to assert such claim.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 5, at 2.

Thus, the Trustee has no authority to seek the permanent injunction and/or dismissal of the following three actions.

### 1.    *The MSM Action*

On June 17, 2019, MSM and REI filed an action to recover the $32.3 million in proceeds from the 2013 Settlement of the 2010 state court derivative claims that should have been paid to the real party in interest: the Orly Trust. *Manhattan Safety Maine, Inc. et al. v. Bowen et al.*, No. 19-cv-5642 (the "MSM Action"), ECF no. 1 (S.D.N.Y. Jun. 17, 2019). REI, which is wholly owned by the Orly Trust, is the assignee of the Orly Trust's interest in the 2013 Settlement. *Id.* ¶¶ 13–14.

The claim for the return of the wrongfully diverted proceeds of the 2013 Settlement is a claim unique and particular to the Orly Trust (and its assignee REI and creditor MSM), and not one belonging to the Debtor or her creditors generally. The Debtor *never* owned any shares in TRI; only the Orly Trust owned shares in TRI. (And

of course, the litigation from which the 2013 Settlement arose was a *derivative* suit

brought *on behalf of the Orly Trust*.)

Therefore, the Debtor has—as she has repeatedly acknowledged—no claim

whatsoever to the settlement proceeds.[20] Rather, the 2013 Settlement proceeds

represent assets of the Orly Trust which were improperly transferred to the defendants

in the MSM Action[21] without fair consideration, and the misappropriation of such funds

forms the basis of the claims asserted in the MSM Action.

In sum, the claims asserted in the MSM Action do not affect the bankruptcy

estate, and only create potential liability for non-debtor third parties.

### 2.    *Surrogate's Court Turnover Action*

The Trustee also seeks to enjoin a Surrogate's Court action brought on behalf of

the Orly Trust.[22] The turnover petition was filed in 2016, when Dalia Genger, as Orly

---

[20] *See, e.g.*, Transcript of May 22, 2020 Status Conference, statement of Debtor's counsel, 24:5–8 ("They [the schedules] disclose the fact that the debtor does not believe that she has a right to collect on the notes, but she also discloses the actual litigation and the fact that there is no value to the debtor."). *See also* Joint Position Letter of Debtor Orly Genger, Arie Genger, ADBG LLC (the entity of David and Arnold Broser), et al., dated April 17, 2020 (ECF no. 237), at 11, 12, 15 (asserting that the Proceeds do not belong to Orly Genger or the Orly Genger Trust).

[21] The defendants in the MSM action are Michael Bowen, present-counsel for the Debtor, as the holder of the promissory notes from the 2013 Settlement, Arie Genger, Arnold Broser, David Broser (individually and as trustee of the Genger Litigation Trust), ADBG LLC, Tedco, Inc., and John Does 1–10.

[22] *See Petition of Dalia Genger, as Trustee of the Orly Genger 1993 Trust, Created by Trust Agreement Dated December 13, 1993 between Arie Genger, as Grantor, and Lawrence M. Small and Sash A. Spencer, as Trustees, to Turnover Property of the Orly Genger 1993 Trust*, Surr. Ct., N.Y. Cty., no. 2008-0017/E. This action was removed from Surrogate's Court to the District Court in this District, where it was docketed as 19 Civ. 09365, and was later transferred to this Court as **20-ap-01188** (JLG). On November 8, 2019, the Orly Trust filed a motion to remand, *see* 20-ap-01188, ECF no. 1-21. To date, no opposition has been filed during the ensuing 20 months.

Trust trustee, petitioned the Surrogate's Court for the "Turnover" of the Orly Trust's property — the settlement proceeds due to the Orly Trust in connection with the 2013 Settlement, as well as an accounting thereof. *See* Turnover Pet., No. 20-ap-01188, Dkt. no. 1-0, at 6.[23]

The turnover petition is addressed solely to Orly Trust assets and Orly Trust matters, and not to the Debtor's estate. The Debtor's bankruptcy estate has no interest in this dispute.

### 3.    *Dalia 2010 Action Appeal*

Third, as a part of the 2010 Action, Dalia, as the then-trustee of the Orly Trust, had moved to substitute herself as plaintiff in Debtor's claims against the Trump Group, and for the 2013 Settlement proceeds be paid into the court and ultimately to the Orly Trust. *2010 Action*, Notice of Appeal (dkt no. 1529), May 14, 2019, attached as Pollock Dec., Exh. 29, at 10. In 2015, the court decided to hold Dalia's motions in abeyance pending resolution of Orly's Surrogate's Court motion to remove Dalia as

---

[23] The turnover petition sought relief against the Debtor and other defendants believed to have received (or beneficially received) the proceeds of the 2013 Settlement. The turnover petition originally included Arie Genger, Arnold Broser, and David Broser as named respondents, but the amended turnover petition was discontinued as to these individuals on June 20, 2019. *See* 20-ap-01188, ECF no. 1-9, at 160. The amended turnover petition remains live as against the Debtor; Glencova Investment Company; R Investors, LLC; New TR Equity 1, LLC; New TR Equity 11, LLC; Trans-Resources, Inc.; John Does 1–20; and Jane Does 1–20. *Id.*

That the Debtor is named in the turnover action does not change its inapplicability to her bankruptcy estate with respect to the proposed injunction. There must be some "real threat to the debtor because such a suit … will deplete the assets of the estate." *In re SL Liquidating, Inc.*, 428 B.R. 799, 802 (Bankr. S.D. Oh. 2010) (cleaned up). The equitable relief sought in this action – the turnover of the 2013 Settlement proceeds – is not a real threat to the Debtor or the bankruptcy estate because the Debtor does not have any portion of, or claim to, the 2013 Settlement proceeds.

trustee. *Id.* at 8. But in 2019, with the Surrogate's Court action still unresolved, and citing the First Department decision that the derivative claims on behalf of the Orly Trust had already been dismissed, the court denied Dalia's motion as moot. *Id.* at 7. On March 22, 2019, Dalia filed a notice of appeal. *Id.* at 1–2. The appeal was then stayed by the bankruptcy case, and has not been briefed or ruled on.

Dalia's appeal, like the 2010 Action from which it originates, concerns the Orly Trust, its interest in Debtor's derivative claims, and its entitlement to the 2013 Settlement proceeds. The Debtor's bankruptcy estate has no interest in this dispute.

### B.    The proposed injunction covers claims outside the Court's subject matter jurisdiction.

As explained above, the only interest asserted in these cases is that of the Orly Trust, and not the Debtor. Consequently, this Court lacks subject matter jurisdiction to grant the proposed injunctions as to the Orly Trust's claims. *See In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) ("[T]he question is not whether the court has jurisdiction over the settlement that incorporates the third party release, but whether it has jurisdiction over the attempts to enjoin the creditors' [] claims against the third party."); *cf. In re Munford, Inc.*, 97 F.3d 449, 454 (11th Cir. 1996) ("It is not the language of the settlement agreement that confers subject matter jurisdiction…. Rather, it is the 'nexus' of those claims to the settlement agreement … that the bankruptcy court must approve….").

The Trustee cites several cases that analyze whether creditors may bring suit *on behalf* of the debtor. Motion ¶¶ 156–166. These cases involve derivative suits *of* the debtor, not *by* the debtor. *E.g.*, *In re CIL Ltd.*, 2018 WL 878888 (Bankr. S.D.N.Y. Feb. 9, 2018) (Garrity, J.); *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 89 (2d Cir.

2014); *In re Soundview Elite Ltd.*, 565 B.R. 534, 544 (Bankr. S.D.N.Y. 2017). Those cases examine whether an action proposed by creditors is derivative of the debtor (i.e., a claim of the debtor that is "general" to all creditors because it "could be brought by any creditor of the debtor") or whether an action is a direct claim of the creditor (i.e., "particular" to the creditor). *CIL,* 2018 WL 878888, at *5.

But that question does not arise where, as here, the Orly Trust's claims are not even remotely derivative of the Debtor. Indeed, the Trustee's counsel made exactly this point in prior email correspondence: "We are concerned with the reach of the court's jurisdiction to be able to provide a global release that also releases <u>direct claims</u> by the Orly Genger Trustee." Pollock Dec., Exh. 4 (emphasis added).

Here, the proceeds of the 2013 Settlement at issue arose out of a derivative suit *for the benefit of the Orly Trust*. Thus, the Motion ignores the Trustee's counsel's earlier correspondence and has now turned the caselaw inside out: if the *Orly Trust* were the debtor, then Orly would be enjoined from bringing the Trust's claims during the Trust's bankruptcy as derivative plaintiff of the Orly Trust. But here it is *Orly* who is the Debtor. Accordingly, the question of whether a claim is "particular" or "general" does not even arise: the direct claims belong to the Orly Trust.[24]

---

[24] One key purpose of a spendthrift trust such as the Orly Trust is to protect property from its beneficiaries' creditors. *Matter of Estate of Sanders*, 602 N.Y.S.2d 742, 742–43 (Sur. Ct. 1991) ("The purpose of a New York spendthrift trust is to protect a beneficiary against his own improvidence by giving him an interest that he cannot transfer and that his creditors cannot reach."). Thus, to allow a bankruptcy proceeding against one of the Trust's beneficiaries—the Debtor—to prevent the Trust from asserting its independent legal rights would frustrate its very purpose. *See Matter of Hecht*, 54 B.R. 379, 383 (Bankr. S.D.N.Y. 1985) ("A spendthrift trust prevents the beneficiary from transferring his right to future payments of income or capital; the creditors of the beneficiary are also prevented from attacking the beneficiary's interest to satisfy their

(continued...)

In *CIL*, this Court explained:

> The trustee has exclusive standing to prosecute estate causes of
> action; the automatic stay bars all other parties in interest from
> doing so. Estate causes of action include claims that could have been
> asserted *by the debtor* against third parties as of the petition date.
> In contrast, estate property does not include a cause of action that
> belongs *solely to a debtor's creditors* or shareholders.

*CIL*, 2018 WL 878888, at *4 (cleaned up; emphasis added).[25] Here, the actions proposed

to be enjoined do *not* seek to vindicate claims that belong to the Debtor, but instead are

claims that belong solely to the Orly Trust.[26]

Nor do the inter-relating facts give standing to the Chapter 7 Trustee. A claim

does not necessarily belong to a debtor's estate simply because it "aris[es] out of the

same general series of events and broad course of conduct." *CIL*, 2018 WL 878888, at *6

(citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008)). "Sometimes

---

claims."), *aff'd sub nom.*, *Togut v. Hecht*, 69 B.R. 290 (S.D.N.Y. 1987); *see also* 11 U.S.C.
§ 541(c)(2).

[25] The "cleaned up" parenthetical denotes that quotation marks, brackets, ellipses, and
citations may be omitted. It is becoming increasingly common, including in this Circuit.
*See, e.g.*, *Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins.*, 955 F.3d
305, 310 (2d Cir. 2020) (using "cleaned up" parenthetical).

[26] The Trustee's citation to *In re Tronox, Inc.*, 855 F.3d 84 (2d Cir. 2017), is similarly
inapposite. The court in *Tronox* restated the same principles concerning the distinction
between direct and derivative claims discussed above. *See id.* at 100 ("Derivative claims
in the bankruptcy context are those that arise[] from harm done to the estate and that
seek[] relief against third parties that pushed the debtor into bankruptcy …. [w]hereas
a derivative injury is based upon a secondary effect from harm done to [the debtor], an
injury is said to be 'particularized' when it can be directly traced to the third party's
conduct." (cleaned up)). The *Tronox* court then found, having determined that "the
harm [the tort claimants] allege to have suffered at the hands of [the new company] is
the same harm general to all Tronox creditors," that the claims were derivative. *Id.* at
106.

Here, in contrast, the harm suffered by the Orly Trust is unique and distinct.
Accordingly, these authorities directly undercut the Trustee's position that the Orly
Trust's claims are derivative or duplicative.

the same factual allegations may give rise to both derivative and independent claims."

*CIL*, 2018 WL 878888, at *6 (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 531 B.R.

345, 351 (S.D.N.Y. 2015)) (cleaned up).

Or, as the Trustee's counsel previously explained by email, in expressing his

concerns about the applicability of the Second Circuit's decision in the *Madoff* case:

> [W]hile [*Madoff*] may have used "duplicative" from time to time in
> its opinion, the essential holding was "we conclude that appellants[']
> purported conspiracy based claims against the Picower defendants
> are 'derivative' to those asserted by the Trustee … and therefore, the
> Bankruptcy Court was authorized to enjoin those actions. 740 F.3d
> 81, 93." …
>
> Indeed, one of the decisions cited in Madoff case, Hirsch v. Arthur
> Anderson, appears to be more on point, in which the court said the
> trustee is deemed to have standing to assert claims belonging to the
> debtor and did not have standing to assert claims that belonged to
> investors of a non-debtor partnership.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 5, at 1–2.

Here, these actions plainly assert only "particularized" harms. They allege harm

solely to the Orly Trust and do not allege harm to the Debtor or harm that accrues to all

creditors. After all, no one would suggest that Arie or the Brosers, creditors of the

Debtor, could assert the claims in the MSM Action. (Indeed, they are *the defendants* in

that Action.) Accordingly, these actions do not assert claims that "could be brought by

*any* creditor of the debtor." *See CIL*, 2018 WL 878888, at *5 (emphasis added).

## C.    <u>The proposed injunction is inappropriate.</u>

But even if this Court were to determine it had subject matter jurisdiction over

the Orly Trust's claims, the proposed injunction still should not be granted. Notably,

the Trustee has offered no evidence that the proposed injunction is necessary, or even

beneficial to the bankruptcy estate. Instead, the benefit of the non-debtor releases

would inure to *the Settling Parties*, several of whom are defendants in these actions
who will escape liability and keep the bulk of the proceeds of the 2013 Settlement if the
permanent injunction is granted.

       1.       *The Orly Trust's claims do not affect the bankruptcy estate.*

As stated above, a proposed injunction must "play[] an important part in the
debtor's reorganization plan." *Drexel Burnham Lambert*, 960 F.2d at 293. At a
minimum, as the Motion identifies, the inquiry into whether a bankruptcy court has
"jurisdiction [over a non-debtor's claim] remains whether its outcome might have any
'conceivable effect' on the bankruptcy estate." Motion ¶ 153 (quoting *In re Bernard L.
Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014)). Here, even though the Orly Trust
does *not* agree that this low standard is sufficient to justify a third-party injunction, the
Trustee cannot even meet this threadbare requirement.

The Trustee articulates two "conceivable effects" on the Debtor's estate that
actually are not effects at all. First, the Trustee argues that the Orly Trust's claims are
"based on the [] fact that Orly signed the 2013 Settlement Agreement." Motion ¶ 165;
*see also id.*, ¶ 183. The Trustee's argument—that related facts alone can be an effect on
the bankruptcy estate supporting granting of an injunction—is unsupported by case
law in this circuit or elsewhere. Indeed, the diversion of the 2013 Settlement proceeds
from the Orly Trust does not implicate the bankruptcy estate in any way. And when
claims "will have no effect on the *res* of [the] bankruptcy estate" because they would
result in a judgment against a third party, rather than the debtor, and would allow the
plaintiff "only [to] be able to execute against" a third party's assets and not the debtor's,
courts have determined such claims cannot be enjoined and should proceed. *W.R. Grace*,
607 B.R. at 448–49; *see also FirstEnergy Solutions* at 23:23–24 (rejecting proposed

third-party non-debtor releases for "independent claims against the [] non-Debtor parties, for which they have no recourse against the Debtors").

The circumstances are exactly the same in this case. The Debtor and the Settling Parties have already conceded the proceeds of the 2013 Settlement do not belong to the Debtor. The Orly Trust's actions and claims, if successful, will result in judgments against non-debtor third parties, and could only be executed against those non-debtor third parties, and would redound to the benefit of the Orly Trust and *not* the bankruptcy estate.

Overall, while the Motion essentially asserts that overlapping facts alone are a sufficient effect on the bankruptcy estate, Motion ¶¶ 165, 183, the caselaw requires much more than that.[27] In short, the Orly Trust's claims simply do not affect the bankruptcy estate.

---

[27] Appropriate non-consensual third-party releases or injunctions affirmed by the Second Circuit, by contrast, have been granted to protect against litigation that could "adversely affect property of the estate," for example in *MacArthur Co. v. Johns-Manville Corp.*, "to make sure that claims to [debtor's] insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the [debtor's] insurers." 837 F.2d 89, 93 (2d Cir. 1988); *see also In re Tronox Inc.*, 855 F.3d at 107 (affirming injunction of claims because, *inter alia*, "recovery would serve to increase the pool of assets available to all creditors"); *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d at 92 (affirming injunction because third-party claims were "inseparable from, and predicated upon, *a legal injury to the estate*" (emphasis added)).

Bankruptcy courts in this district have granted injunctions under such circumstances. *See, e.g.*, *In re Myerson & Kuhn*, 121 B.R. 145, 155 (Bankr. S.D.N.Y. 1990) ("Failure to enjoin these lawsuits would have significantly interfered with and irreparably harmed Debtor's ability to formulate a plan of reorganization, and *would have resulted in diminishing Debtor's assets....*" (emphasis added)).

Here, in contrast, the Trustee has not identified any adverse effect on the bankruptcy estate's property from these actions, nor any potential right of recovery for the bankruptcy estate.

    2.     *Payments made by the Settling Parties are not an "effect" on the bankruptcy estate for purposes of the proposed injunction.*

Second, the Trustee argues that the Settling Parties' payment to the bankruptcy estate would be "by far the estate's largest recovery to-date," and this justifies the proposed injunction. Motion ¶ 194. The Trustee points to *Metromedia*, claiming that in that case "the Second Circuit held that nonconsensual nondebtor releases and injunctions are proper in 'unusual circumstances' where, among other things, the debtor's estate has received substantial consideration." *Id.* ¶ 192.

The Trustee's recitation of *Metromedia* is the opposite of that court's holding. In *Metromedia*, a settlement plan included a proposed injunction of creditor claims against a trust created by and for the benefit of the debtor's insiders. 416 F.3d at 141 n.4. The court noted that whether the estate received "substantial consideration" is relevant to a bankruptcy court's evaluation of a proposed injunction. *Id.* at 142. However, the court rejected the proposed injunction for the trust in the case before it because "the sole finding made to justify the [] Comprehensive Release is that the [] Trust made a 'material contribution' to the estate. But there is no finding (or evidence presented) that the [] Comprehensive Release was *itself* important to the Plan...." *Id.* at 143. The court held that the injunction "is not adequately supported by consideration simply because the nondebtor contributed something to the reorganization and the enjoined creditor took something out" (but declined to reverse because the issue was equitably mooted). *Id.* at 143.[28]

---

[28] The situation in *Metromedia*, in fact, was preferable to that of the Orly Trust if the proposed injunction in this case were granted. In that case, the creditor "took something out." 416 F.3d at 143. In other words, the enjoined party still got something. Here, in contrast, the proposed injunction stands to end every viable claim the Orly

(continued...)

The Second Circuit's holding in *Metromedia* is clear – money alone is not enough to justify a third-party injunction. The injunction itself must be "important" to the resolution of the bankruptcy. But here, money is all the Trustee can offer to justify the proposed injunction, and that is not enough to support the approval of the injunctions in the Proposed Agreement.[29]

>    3.    *The only beneficiaries of the proposed injunction are the Settling Parties.*

Lacking an articulated effect on the Debtor or the bankruptcy estate, we are left with the heart of the matter – who is it that stands to benefit from the proposed injunction? The Settling Parties. As noted above, the Second Circuit in *Metromedia* warned about exactly this scenario: "a nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code." *Metromedia*, 416 F.3d at 142.

Here, the Trustee has agreed to ask this Court to enjoin actions that do not implicate the assets or liabilities of the bankruptcy estate as consideration for the payments of Settling Parties that are also (aside from the Debtor) the *defendants in those actions*. Arie, the Brosers, the Genger Litigation Trust, and ADBG, all of whom are Settling Parties, are named defendants in the MSM Action (along with other

---

Trust has to recover the 2013 Settlement proceeds, effectively condemning it to insolvency.

[29] Further, and as noted above, non-debtor releases don't even exist in a Chapter 7 bankruptcy. As the Trustee's counsel explained by email, "I have not seen a chapter 7 case with broad releases of third party claims of a trust where Debtor is beneficiary." Pollock Dec., Exh. 4, at 3.

individuals and entities affiliated with them).[30] They would also be subject to the

Turnover Action and/or the Orly Trust's claims in the 2010 Action if the Dalia Appeal

were successful. Thus, if the proposed injunction is granted, the Settling Parties keep

nearly all of the $32.3 million in proceeds from the 2013 Settlement and resolve all

their outstanding liability exposures, in a single proceeding, and at a substantial

discount. In other words, Orly enters bankruptcy, and her father and his friends would

reap all the benefit.

The Motion, with candor, explains the real reason why the proposed injunction is

in the Proposed Agreement: because the Settling Parties demanded it. The Trustee

explains that, given the supposed "never[-]ending quest to recover the Disputed

Settlement Proceeds … it is entirely understandable and justified as to why the

Settling Parties *demanded the inclusion of an injunction as a condition to their*

*willingness to expend significant sums to settle claims against them relating to the*

*Disputed Settlement Proceeds*…." Motion ¶ 193 (emphasis added).

This is precisely why "such an injunction is a dramatic measure to be used

cautiously…." *In re Dow Corning Corp.*, 280 F.3d 648, 657–58 (6th Cir. 2002). It is also

why courts have said that financial consideration for the estate alone is not enough to

justify an injunction of third-party claims. If it were enough, "a debtor could create

subject matter jurisdiction over any non-debtor third-party by structuring a plan in

such a way that it depended upon third-party contributions…. Where a court lacks

---

[30] In addition to the Settling Parties, the Debtor, who agreed to the Proposed
Agreement, is represented by another named defendant in the MSM Action who, if the
proposed injunction is granted, will also be released from his legal exposure.

subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." *W.R. Grace*, 607 B.R. at 451–52 (cleaned up).

*    *    *

In sum, the proposed non-debtor injunctions are not permitted in a Chapter 7 bankruptcy, do not affect or implicate the bankruptcy estate, run afoul of the warnings in the case law limiting the use of such injunctions, and only serve to benefit the Settling Parties. The Court should not approve the proposed injunctions.

III.    **The proposed sale of "Estate Claims" should not be approved.**

Separately, as a part of the Proposed Agreement, the Chapter 7 Trustee agrees to "sell" purported "Estate Claims" to an insider, Claims Pursuit, Inc.—dubbed the "Estate Claims Assignee" and owned by a trust set up for the benefit of the Debtor's infant daughter—in exchange for $50,000 plus potential additional contingent consideration tied to any recoveries. Proposed Agreement ¶ 4. The Trustee's counsel has identified Eric Herschmann—the Debtor's husband and the infant's father—as the representative of the Estate Claims Assignee. *See* Transcript of Court Conference, May 22, 2020, at 20.

The "Estate Claims" purportedly consist of certain claims, on behalf of the Orly Trust, against Dalia Genger and present, former, or successor trustees of the Orly Trust. *See* Proposed Agreement ¶¶ 3, 5(d). The proposed sale of these claims should not be approved because: (i) the "Estate Claims" are not part of the Debtor's bankruptcy estate and are therefore not the Trustee's claims to sell; (ii) the proposed sale raises the appearance of impropriety; and (iii) the purported sale of claims fails to satisfy even the lower standard of Bankruptcy Rule 9019(a).

Notably, and as previewed in the preliminary statement above, the Trustee's counsel acknowledged to this Court that he hasn't even determined that these are the bankruptcy estate's claims to sell: "We're not even saying that we necessarily commit that we have standing." Transcript of Apr. 2, 2021 Status Conference, at 22. And the Trustee's counsel acknowledged in an earlier email:

> I assume … you agree that these Estate Claims (which relates to claims that the estate "may have") are being sold "as is, where as", and the Trustee is not asking the Court to make a determination at this stage as to whether the claims belong to the bankruptcy estate or the Orly Genger 1993 Trust, with all potential defendants' defenses to the Estate Claims preserved. And further, to the extent that the sale is approved, and there is a legal determination in the future that the Estate Claims belonged instead to the Orly Genger 1993 Trust (or any other party for that matter), then, in that instance, Claims Pursuit Inc. has no ability to pursue any damages against the estate.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 7.

There's good reason that the Trustee's counsel isn't sure about standing: there is none. The claims proposed to be sold are derivative of the Orly Trust: if there's a recovery, it would go to the Orly Trust and not to the Debtor's estate. Therefore, there is nothing for the Chapter 7 Trustee to sell—the Trustee lacks standing to pursue claims brought on behalf of the Orly Trust. *See In re CIL Ltd.*, 2018 WL 878888, at *4 ("estate property does not include a cause of action *that belongs solely to a debtor's creditors* or shareholders.") (emphasis added),

Nor does the Trustee have the right to sell something that's not within the bankruptcy estate, even if the buyer "were willing to pay the trustee for something [the trustee] could not convey." *In re Kiersz*, 311 B.R. 145, 147–48 (Bankr. W.D.N.Y. 2004).

This portion of the Proposed Settlement should also be rejected.

A.    **The "Estate Claims" are not estate property and the Trustee has no authority to sell them.**

The proposed sale of "Estate Claims" fails as a matter of law: these claims are

not part of the Debtor's estate because they are claims belonging to the Orly Trust.

The Motion seeks to sell:

(1) a now-dismissed claim of alleged fraud—supposedly to the harm of the Orly Trust—asserted by the Debtor against Dalia Genger (Debtor's mother), which was previously pending in Supreme Court, New York County, no. 109749/2009 ("2009 Action");

(2) one case that was pending in Surrogate's Court involving derivative claims filed by the Debtor seeking to remove Dalia (who resigned last year) as trustee of the Orly Trust based on alleged breaches of fiduciary duty;[31]

(3) as-yet unasserted derivative claims against past, present, and future trustees of the Orly Trust, and "affiliated or related entities other than Sagi."

Motion ¶ 110; Proposed Agreement ¶ 3.

The Bankruptcy Code excludes "beneficial interest[s] of the debtor in a trust"

from the definition of "property of the estate" so long as "[a] restriction on the transfer"

of said beneficial interest "is enforceable under applicable nonbankruptcy law…."

11 U.S.C. § 541(c)(2). This provision applies to New York spendthrift trusts such as the

---

[31] The Surrogate's Court case is titled *Application of Orly Genger to remove Dalia Genger as Trustee of the Orly Genger 1993 Trust, Orly Genger, beneficiary of the Orly Genger 1993 Trust v. Dalia Genger, as trustee of the Orly Genger 1993 Trust and Sagi Genger 1993 Trust*, Surr. Ct., N.Y. Cty., no. 2008-0017 ("Removal Petition"). This action was removed from Surrogate's Court to the District Court, where it was docketed as 19 Civ. 09319, and was later transferred to this Court as **20-ap-01187** (JLG). On November 7, 2019, the Orly Trust filed a motion to remand, *see* 20-ap-01187, ECF no. 1–64. Like the other removed action, referenced above, no opposition has been filed during the ensuing 20 months.

Orly Trust.[32] CPLR § 5205(c)(1); *see also, e.g.*, *In re Hilsen*, 405 B.R. 49, 57 (Bankr. E.D.N.Y. 2009) ("[U]nless some other provision of law applies, a beneficiary's rights in a valid spendthrift trust are not property of a bankruptcy estate."); *In re Nudo*, 147 B.R. 68, 70 (Bankr. N.D.N.Y. 1992) ("[A] spendthrift trust actually operates as an *exclusion* from property of the estate." (emphasis in original)).[33]

      1.    *The State Court Claim*

First, the Chapter 7 Trustee seeks to sell the appeal of a now-dismissed claim of alleged fraud that the Debtor had asserted derivatively on behalf of the Orly Trust in the state court 2009 Action. *See* Motion ¶ 110; Proposed Agreement ¶ 3.

In the 2009 Action, the Debtor had asserted claims alleging that TPR (managed by Sagi Genger) purportedly engaged in a scheme to improperly foreclose on certain collateral (shares of TPR) for a promissory note for which the Orly Trust was indebted. The collateral was held by an entity in which the Orly Trust held a minority interest, and the Orly Trust was the obligor on a portion of the indebtedness under the promissory note. The 2009 Action <u>also</u> included a claim alleging that Dalia made fraudulent statements, upon which the Debtor allegedly relied, "which allegedly enabled Sagi to engage in [this] scheme." Motion ¶ 115.

Orly, as a beneficiary of the Orly Trust, brought the 2009 Action as a derivative claim on behalf of the Orly Trust, and the state court recognized that the claims against

---

[32] New York express trusts like the Orly Trust "are presumed to be spendthrift unless the settlor expressly provides otherwise." *Regan v. Ross*, 691 F.2d 81, 86 n.14 (2d Cir. 1982).

[33] Notably, the Trustee's counsel confirmed this point in conversations with counsel for the Settling Parties: "A spendthrift trust and its property is expressly not property of the estate under 541(c)." Pollock Dec., Exh. 5, at 2.

Dalia were derivative in nature. *See Genger v. Genger*, No. 109749/2009, 2010 WL

10807678, at *3 (Sup. Ct., N.Y. Cty. July 28, 2010). Accordingly, any benefit of the

Debtor's lawsuit alleging harm to the Orly Trust would inure to the Trust. *See Yudell v.

Gilbert*, 99 A.D.3d 108, 113 (1st Dep't 2012) ("A plaintiff asserting a derivative claim

seeks to recover for injury to the business entity. A plaintiff asserting a direct claim

seeks redress for injury to him or herself individually."); *Ross v. Bernhard*, 396 U.S.

531, 538 (1970) ("The claim pressed by the stockholder against directors or third parties

is not his own but the corporation's." (quotations omitted)).

Eventually, the state court in the 2009 Action found that the allegedly improper

foreclosure actually caused no damages whatsoever: "[T]he value of the [collateral TPR

shares] … was exactly what they were sold for, and … no damages were, therefore,

suffered." *See 2009 Action*, Transcript (dkt. no. 1510), May 4, 2017, attached as Pollock

Dec., Exh. 30, at 4, *adopted by Genger v. Genger*, 2019 WL 1330905, at *7 (Sup. Ct.,

N.Y. Cty. Mar. 25, 2019); *see also* Motion ¶ 115 ("The action also included a claim for

breach of fiduciary duty and related claims against Sagi, though on those claims the

court awarded no damages.").

By 2019, the fraud claim against Dalia was the only claim still outstanding. *See

2009 Action*, Decision & Order (dkt. no. 1652), Oct. 4, 2019, attached as Pollock Dec.,

Exh. 31. The state court ruled that because the alleged damages stemming from the

fraud claim had already been adjudicated as against TPR and Sagi (i.e., there were no

damages), the fraud claim had been properly dismissed as well. *Id.*

The Kasowitz Benson law firm (an alleged creditor in this bankruptcy and, until recently, the law firm of the Debtor's husband Eric Herschmann[34]) filed a notice of appeal, purportedly "authorized by" the Texas-based prior Chapter 7 Trustee, asserting that the state court's October 2019 decision improperly declined to restore the dismissed fraud claim. *See Genger v. Genger*, No. 2020-01940, Notice of Appeal (dkt. no. 1) (1st Dep't Oct. 22, 2019), attached as Pollock Dec., Exh. 32.

Although this fraud claim was asserted as a direct claim, it was by law a derivative claim, because Dalia's supposed fraudulent statements are alleged to have caused harm to the Orly Trust only, and so only the Orly Trust could recover, as it was the real party in interest.[35]

Thus, because this (now disposed) state court fraud claim was derivative in nature, there is nothing for the Chapter 7 Trustee to sell—the Trustee lacks standing to pursue *derivative* claims brought on behalf of the Orly Trust. *See In re CIL Ltd.*, 2018 WL 878888, at *4 ("estate property does not include a cause of action *that belongs solely to a debtor's creditors* or shareholders.") (emphasis added); Transcript of Apr. 2, 2021

---

[34] By letter dated August 3, 2020, Herschmann announced his resignation from Kasowitz to accept a position as "Senior Advisor to the [then-] President of the United States." *See* ECF no. 324.

[35] Indeed, Orly had argued exactly this to the Appellate Division, in a brief signed by her now-husband, Eric Herschmann: "Orly's fraud claim in this action against Dalia is based on Dalia's material misrepresentations and omissions in failing to advise Orly about Sagi's sham foreclosure on the D&K Note *that stripped Orly's trust of its indirect ownership in TPR*." *Genger v. Genger*, No. 109749/2009, Brief for Plaintiff-Respondent (1st Dep't Apr. 27, 2017), attached as Pollock Dec., Exh. 33, at 27 (emphasis added); *see also Genger*, 2010 WL 10807678, at *11 ("The evidence and arguments provided by both parties show that there is a question of fact as to whether Dalia Genger acted with intent to commit fraud *against plaintiff's trust*, and to lull plaintiff into a false sense of security *as to the status of her trust*." (emphasis added)).

Status Conference, at 22 ("We're not even saying that we necessarily commit that we have standing.").[36]

Further, the Chapter 7 Trustee's effort to sell claims that do not belong to the bankruptcy estate, but rather to the Orly Trust, is improper not merely as a bankruptcy law matter, but also because she is thereby interfering with the assets and administration of the Orly Trust, over which the Surrogate's Court, and not this Court, exercises authority.

2.    *The Surrogate Court Case*

Next, the Chapter 7 Trustee seeks to sell one case that was pending in Surrogate's Court, now docketed in this Court as **20-ap-01187**, which involved claims filed by the Debtor to remove Dalia as trustee of the Orly Trust. *See* Motion ¶¶ 110; Proposed Agreement ¶ 3. This Surrogate's Court case does not seek any monetary recovery against Dalia.

As relevant here, in 2008, the Debtor had applied to the New York State Surrogate's Court to, among other things, remove her mother Dalia from serving as the Orly Trust's trustee. In 2009, the state court rejected her application entirely. *See In re*

---

[36] *See also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) ("The trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings."); *In re Treadway*, 117 B.R. 76, 86–87 (Bankr. D. Vt. 1990) (the bankruptcy court does not have jurisdiction over proceeding which cannot have any effect on the debtor's bankruptcy estate); *see also* 11 U.S.C. § 541(b)(1) (the bankruptcy estate does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor").

Notably, the Debtor is not the sole beneficiary of the Orly Trust—her children are also beneficiaries. This is among the reasons that the distinction between Orly in her individual capacity (as the Chapter 7 Debtor) and Orly in her capacity as a trust beneficiary must be respected.

*the Orly Genger 1993 Trust*, No. 0017/2008, Decision (Sur. Ct., N.Y. Cty. Jan. 2, 2009)

(attached hereto as Pollock Dec., Exh. 34). In doing so, the state court's decision traced

the history of the Orly Trust's trustee appointments, found Dalia to be duly appointed

and acting as trustee, and held that the Debtor's request to remove Dalia was based on

"[w]hat appears to be a material misstatement" by Orly, and otherwise vague and

speculative allegations. In sum, the court denied the Debtor's requests. *Id.* at 6.

Despite this decision, the Debtor continued to petition the Surrogate's Court for

Dalia's removal. Currently pending is the Debtor's *third* amended petition for removal.

*See* 3d Am. Verified Pet. for Removal of Dalia Genger as Trustee, at 20-ap-01187, ECF

no. 1-9, at 21.

In June 2019, Dalia, facing health issues, appointed Michael Oldner as successor

trustee to the Orly Trust. Oldner is a retired bond trader who lives in Arkansas. He is a

disinterested professional unrelated to the Genger family. Thus, notwithstanding

unsupported allegations to the contrary, the Debtor's underlying complaint to remove

Dalia as Orly Trust trustee has been resolved and this aspect of the petition is now

moot. (Notably, Dalia too had been appointed at the time that Orly had sought to

remove the prior trustee, and yet the Surrogate's Court upheld her appointment in the

above-referenced decision. That is because there is no principle of New York law by

which the mere challenge of a beneficiary suspends a trustee's right under the trust

agreement to appoint his or her successor.)

The second part of the removed Surrogate's Court action is the Debtor's Petition

for a Compulsory Accounting and Related Relief Pursuant to Surrogate's Court

Procedure Act 2205, dated Oct. 5, 2012, at 20-ap-01187, ECF no. 1-8, at 123

("Accounting Petition"). In May 2013, Dalia Genger provided an accounting and sought

to have the New York Surrogate's Court judicially settle the matter. *See* Pet. for

Judicial Settlement of Account, dated May 9, 2013, at 20-ap-01187, ECF no. 1-30, at

143. That submission was still under consideration by the New York State Surrogate's

Court at the time the Chapter 7 Trustee filed her notice of removal.

No relief has been sought pursuant to that accounting. In any case, even if

damages were somehow awarded against Dalia in this Surrogate's Court case, they

would be awarded to the Orly Trust only, which would have been the victim of any

alleged accounting mismanagement—not to the Debtor's estate. Accordingly, like the

state court action described above, this would inherently be a derivative claim, and

therefore the Chapter 7 Trustee lacks standing to pursue this derivative claim on

behalf of the Orly Trust. *See* Transcript of Apr. 2, 2021 Status Conference, at 22 ("We're

not even saying that we necessarily commit that we have standing.").

In any event, as detailed in the pending remand motion, federal courts do not

exercise jurisdiction over matters involving probate generally or Surrogate's Court

matters in which an accounting is already under way. *See, e.g., Lefkowitz v. Bank of

New York*, 528 F.3d 102, 105 (2d Cir. 2007) ("The 'probate exception' is an historical

aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of

federal diversity jurisdiction.") (citing *Marshall v. Marshall*, 547 U.S. 293, 307 (2006)).

This exception exists to prevent "federal interference with state probate proceedings."

*In re Boisseau*, 2017 WL 395124, at *3 (N.D.N.Y. Jan. 30, 2017) (quotations omitted).

As a consequence, this matter—which has no effect on the bankruptcy estate—is

not bankruptcy estate property that can be sold or assigned by the Trustee.

3.    *Claims Against the Orly Trust Trustees*

Last, the Chapter 7 Trustee seeks to sell as-yet unasserted claims belonging to the Orly Trust against its unidentified past, present, and future trustees and "affiliated or related entities other than Sagi." *See* Motion ¶ 110; Proposed Agreement ¶ 3.[37]

Whether considering fiduciary duty claims against past, present, or future trustees of the Orly Trust, the same principle applies: the Chapter 7 Trustee has no standing to pursue claims against the Orly Trust trustees, as the proceeds would inure to the real party in interest (the Orly Trust), and would not have any effect on the Debtor's bankruptcy estate. *See In re CIL Ltd.*, 2018 WL 878888, at *4; *In re Treadway*, 117 B.R. at 86–87.

For example, if Michael Oldner were to cause damage to the Orly Trust, in breach of his fiduciary duty to the Orly Trust, the beneficiaries could bring a breach of duty suit against him on behalf of the Orly Trust. If that suit were successful, the benefits would redound to the Orly Trust—the real party in interest—and not directly to the derivative plaintiff bringing the suit. Consequently, as applied here, no benefit could accrue to the Debtor's bankruptcy estate, and these potential claims are not estate property over which the Trustee has any authority.[38]

---

[37] Prior to her bankruptcy, the Debtor had filed suits against two other former trustees of the Orly Trust: David Parnes and Leah Fang. She did not prevail in those actions either.

[38] Similarly, the Trustee promises to "seek to void each of the purported 'releases' dated August 15, 2019 that were provided by Michael Oldner, purportedly on behalf of the Orly Genger 1993 Trust … to Dalia, Sagi, Elana Genger, Dalia Genger, TPR, D&K GP, David Parnes…." Proposed Agreement ¶ 15. But these releases relate to the same potential derivative claims that would redound only to the Orly Trust's benefit. The Trustee does not cite any authority or make any argument as to why she has authority to pursue this course of action. *See* Motion ¶ 104. Instead, she states in conclusory

(continued…)

- 48 -

B.    **The Trustee cannot sell property that's not in the
bankruptcy estate.**

Thus, because the "Estate Claims" are not properly part of the Debtor's estate

(as the Chapter 7 Trustee has been repeatedly advised and as her counsel has

acknowledged in the emails), the Proposed Agreement raises the question of what the

Trustee is *really* selling. Although gaining some value in exchange for nothing may

seem harmless, it is not. A court would certainly look askance at an agreement that

purported to sell the Brooklyn Bridge to a creditor, as the exchange would create an

obvious appearance of impropriety.

Indeed, in a remarkably relevant case, *In re Kiersz*, the court held that a

bankruptcy trustee may *not* take any action that does *not* affect property of the estate—

even if the bankruptcy estate gets paid for the action. 311 B.R. 145, 149 (Bankr.

W.D.N.Y. 2004). The court explained that where the bankruptcy "estate had absolutely

no monetary interest in a certain lawsuit" involving the debtor's exempted property, the

bankruptcy trustee may not sell the debtor's rights, as the sale could not affect the

bankruptcy estate. *Id.* at 147.

The court explained that "[g]etting some money into the Chapter 7 estate might

seem to be 'bankruptcy purpose' enough. But … the mere fact that someone is willing to

pay the estate some money does not mean that it is the trustee's to sell …." *Id.*; *cf. In re

EDC Holding Co.*, 676 F.2d 945, 948 (7th Cir. 1982) (a buyer is not a "a purchaser in

good faith if it [buys] from [the debtor] property to which it knew the company did not

---

fashion that the releases "should be voided as a matter of law" because they "violate the
automatic stay," *id.*, without any explanation as to *how* they allegedly violated the stay.

have good title" (quoted in *In re LATAM Airlines Group S.A.*, 620 B.R. 722, at 794

(Bankr. S.D.N.Y. 2020) (Garrity, J.)).

> In short, selling nothing for something is impermissible:

>> All of a trustee's acts must relate to administering property in the custody of the court or to bringing property into such custody so that it may there be administered … There is a marked difference between administering "property of the estate" on the one hand, and selling the trustee's signature to confound adverse claims, on the other. A trustee has no license to extort or racketeer or to engage in champerty. Bankruptcy Court is not a "netherworld" in which "anything goes," and in which there is never such a thing as a deal too "dirty" to accept.

>> A trustee may not "sell" his or her ostensible "power" to simply cause trouble for others in aid of some private interest.

*In re Kiersz*, 311 B.R. at 149 (cleaned up); *see also In re World Parts, LLC*, 322 B.R. 37,

43 (Bankr. W.D.N.Y. 2005) (bankruptcy trustee cannot commence an action asserting

claims that do not belong to the debtor).

Here, the Trustee seeks to do exactly what the court in *Kiersz* forbade: she

proposes to sell adverse claims to an interested insider—all without any meaningful

benefit to the Debtor's estate. As explained above, the state-court claims cannot benefit

the bankruptcy estate, because—if successful—they would redound to the real party in

interest (the Orly Trust) and not the Debtor. For the same reason, as-yet unasserted

claims of the Orly Trust against its past, present, or future trustees would also be of no

benefit to the bankruptcy estate. And selling the Surrogate's Court claims against Dalia

(in 20-ap-01187), which would have affected only the administration of the Orly Trust,

would also have no effect on the bankruptcy estate.

IV.  **The Proposed Agreement fails to satisfy Bankruptcy Rule 9019(a).**

Even if the Proposed Agreement were permissible, which it is not, it would still fail to satisfy Bankruptcy Rule 9019.

"A bankruptcy court may approve a settlement under Rule 9019 *if* it is fair and equitable and in the best interests of the estate." *In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (emphasis added). The purpose of Rule 9019 approval is to "prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *In re Iridium Operating LLC*, 478 F.3d 452, 461 (2d Cir. 2007) (quotations omitted). Courts in this circuit apply the *Iridium* factors to determine whether a settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (cleaned up).

A.  **The Proposed Agreement is not fair or equitable.**

The Proposed Agreement does not satisfy Rule 9019 review. It is not fair, equitable, or in the best interest of the estate. Although the Motion describes the applicable standard at some length, it fails to address most of the *Iridium* factors. In particular, the Trustee ignores two critical *Iridium* factors: (1) "the paramount interests

of creditors including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" and (2) "whether other parties in interest support the settlement." *Iridium*, 478 F.3d at 462 (cleaned up). The interests of creditors and other interested parties are not advanced by the Proposed Agreement, as the numerous objections to this Agreement—indeed by virtually every party that is not a party to the Agreement—attest.

Instead of addressing these factors, the Trustee trumpets her recoveries for the estate: $2.5 million for the proposed non-consensual third-party injunctions, and $50,000 in cash, plus the "significant percentage of possible recoveries," Motion ¶ 138, for the "assigned" claims. But as explained above, after her legal fees, the Trustee's return for the estate and its creditors would be next to nothing. And the "significant" shared contingencies would be various percentages of $0 because the recoveries would belong to the Orly Trust.

At a minimum, for all the deference given under Rule 9019, it still requires an analysis of the Trustee's business judgment. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012). But quite simply, there is no business judgment in enjoining or selling claims that do not affect the estate. *See Kiersz*, 311 B.R. at 149; *World Parts*, 322 B.R. at 43; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (business judgment requires, among other things, due care and good faith).

### B.     The Proposed Agreement is actually a collusive payment to the Trustee.

The Proposed Agreement states that, regardless of whether it is approved, the Settling Parties must make a <u>non-refundable</u> $300,000 payment to the bankruptcy

estate. Proposed Agreement ¶ 2. And Claims Pursuit will pay $50,000 "which may be used by the Trustee" when the order is approved. Proposed Agreement ¶ 4. These up-front payments, along with the entire Proposed Agreement, will be little more than payments to the Bankruptcy Trustee to cover her outstanding legal fees.

Notably, the discovery produced in connection with the Motion confirms that, given the Trustee's counsel trepidation about the ownership of the claims sought to be enjoined and sold, the Trustee's counsel has demanded that the Settling Parties back-stop the Trustee's fees. These payment demands are front and center in the email correspondence:

> We are concerned with the reach of the court's jurisdiction to be able to provide a global release that also releases direct claims by the Orly Genger Trustee … The concern we have is that we need some meaningful non refundable cash amount if we are not successful in getting a global release and are only successful in getting a limited release.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 4, at 3.

> I remain concerned that a strong risk exists that the Court will sustain Orly Genger Trust's objection to a release that includes the Orly Genger Trust's possible right to assert such claim. … As a result of this potential risk, before I incur months of time and thousands of dollars in legal fees on prosecuting a settlement motion (along with discovery that will be required), I need some assurance that if Judge Garrity were to approve the reasonableness of the settlement consideration but is only willing to provide releases of the estate's possible direct claim and its derivative claims of its creditors, which includes Sagi, as example, BUT NOT a specific release applying to Orly Genger Trust, that your client will still fund a settlement with the Trustee.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 5, at 2.

> [A]s this settlement is very controversial and I am concerned about denial thereof, I would like you to consider some small payment to estate even if the settlement is not accepted by the Court.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 6, at 1.

to the extent that the sale is approved, and there is a legal determination in the future that the Estate Claims belonged instead to the Orly Genger 1993 Trust (or any other party for that matter), then, in that instance, Claims Pursuit Inc. has no ability to pursue any damages against the estate.

Email from Rocco Cavaliere, attached at Pollock Dec., Exh. 7.

Thus, with her legal fees secured, all of the concerns and disagreements the Trustee's counsel previously expressed by email about the Settling Parties' legal positions are now gone, and the Trustee is instead singing the Settling Parties' tune.

This Proposed Agreement should be rejected. It is little more than a gift basket for the Settling Parties, in particular Arie and the Brosers, with little to no legal support for its proposed terms, in exchange for guaranteed "estate" money to cover the Trustee's legal fees. A collusive settlement is *not* an arm's length settlement as required under Rule 9019. *See In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (in analyzing proposed settlement under Rule 9019, a court "must examine the process by which the settlement was reached to ensure that it was the product of arm's-length negotiation *rather than collusion*" (emphasis added)).

Indeed, the Proposed Agreement cannot be said to benefit the Debtor, to whom the Trustee owes a fiduciary duty. By its terms, the Settling Parties, including the Brosers, Arie, the Debtor's husband, and others, propose an up-front payment of $300,000 (plus $50,000 from Claims Pursuit), plus $2.2 million upon approval of the Proposed Agreement. Proposed Agreement ¶ 2. In exchange, the Trustee agrees to seek to enjoin numerous actions where the above-named individuals and entities *are defendants*, facing claims worth $32 million for the benefit of the Orly Trust.

- 54 -

And the writing is on the wall—the Trustee will seek to disallow the claims of the non-Settling Parties—leaving the $2.5 million to be repaid right back to the Settling Parties (after the Trustee's legal fees are covered).

These terms speak for themselves. They benefit the Settling Parties, the Trustee, and their lawyers, to the detriment of the Orly Trust and its beneficiaries, among others.

## <u>CONCLUSION</u>

For all of the foregoing reasons, we respectfully submit that the Court should deny the Chapter 7 Trustee's motion to approve the Proposed Agreement.

Dated: July 16, 2021

**POLLOCK COHEN LLP**

By: */s/ Adam Pollock*
    Adam Pollock
    Max Rodriguez
60 Broad St., 24th Floor
New York, NY 10004
Adam@PollockCohen.com
(212) 337-5361

*Attorneys for the Orly Genger Trust,*
*by its Trustee Michael Oldner*