## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

IN RE:

**ORLY GENGER,**

      **Debtor.**

</td><td>

**CHAPTER 7**

**CASE NO. 19-13895 (JLG)**

</td></tr>
</table>

### OBJECTION OF THE SAGI GENGER 1993 TRUST TO THE CHAPTER 7 TRUSTEE'S MOTION FOR ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) APPROVING THE SETTLEMENT AGREEMENT, AND (B) GRANTING RELATED RELIEF

The Sagi Genger 1993 Trust (the "**SG Trust**"), by and through its undersigned counsel of record, hereby files this objection (the "**Objection**") to the *Chapter 7 Trustee's Motion for Order Pursuant to Rules 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving the Settlement Agreement, and (B) Granting Related Relief* (the "**Motion**") filed by Deborah J. Piazza (the "**Trustee**"), the trustee in the above-captioned bankruptcy case. In support of the Objection, the SG Trust respectfully states as follows:

1.      The Settlement Agreement for which the Trustee seeks approval (the "**Settlement Agreement**") would have the estate sell claims owned by the Orly Genger 1993 Trust (the "**OG Trust**") to a special purpose entity, Claims Pursuit Inc. ("**CPI**"), owned by the Lily Dor Herschmann 2020 Lifetime Trust, a trust established for the benefit of the Debtor's children. The SG Trust objects, and does not consent, to this proposed sale.

2.      The SG Trust and the OG Trust are both New York spendthrift trusts which were established in 1993 for the benefit of Arie Genger's descendants. Under Article Second, Paragraph C of each Trust Agreement, each trust is the contingent remainder beneficiary of the other trust, meaning that under certain specified contingencies, the remaining assets of one trust could end up being distributed to the other trust. *See* Exhibit A, pp. 5-9.

3.      By Trial Order dated July 24, 2014, Surrogate Anderson of the New York County Surrogate's Court dismissed the Debtor's petition to remove the trustee of the OG Trust for "failure to join all necessary parties," because the SG Trust, as a "contingent remainder beneficiary," has "a cognizable interest in the proper administration of the [OG] trust." *In re Genger*, 2014 WL 536455 (Sur. Ct., N.Y. Cnty. July 24, 2014) (citing *Matter of Bellinger*, 35 A.D.2d 1078 (4th Dept 1970); *Matter of Silver*, 72 Misc. 2d 963 (Sur. Ct, Kings Cnty. 1973)).

4.      In *Regan v. Ross*, 691 F.2d 81, 85 (1982), the U.S. Court of Appeals for the Second Circuit held that 11 U.S.C. 541(c)(2) "preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law."  As the Second Circuit further explained in *Regan*: "A trust is considered 'spendthrift' in form if it restricts the beneficiary's right to alienate the income, principal, or both." *Id.* at 85 n.13 (citing 1 A. Scott, *The Law of Trusts* § 151, at 741 (1939); *Restatement (Second) of Trusts* § 152(2) (1959) ("A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust.")).

5.      The OG Trust is a spendthrift trust.  Specifically, Article Eleventh, Section C provides as follows:

> Neither the principal nor the income of any trust hereunder, or any part thereof, shall or may at any time be liable or subject in any manner whatsoever to the debts or liabilities of any beneficiary entitled to receive any principal or income therefrom; nor shall the principal or income of any trust hereunder be liable to attachment by garnishment proceedings or other legal process issued by any creditor of any beneficiary of such trust for debts heretofore or hereafter contracted by such beneficiary; <u>nor shall any assignment, conveyance, charge, encumbrance or order, either of principal or income, given by any such beneficiary be valid.</u>

Exhibit A, p. 30 (emphasis added).

6.      Further, even if the assets or income of the OG Trust could be alienated, which they cannot, the trustee of the OG Trust has testified that he will not do so.

7.    Accordingly, for the foregoing reasons, to the extent that the Trustee seeks approval of a Settlement Agreement purporting to alienate assets or income of the OG Trust, its Motion should be denied.

Dated:  New York, New York            EMMET, MARVIN & MARTIN, LLP
        July 16, 2021

                                       By: */s/ John Dellaportas*
                                       _____
                                          John Dellaportas
                                          120 Broadway
                                          New York, NY 10271
                                          Tel 212.238.3000
                                          *Attorneys for the Sagi Genger 1993 Trust*

**<u>EXHIBIT A</u>**

TRUST AGREEMENT

BETWEEN

ARIE GENGER

AS GRANTOR

AND

LAWRENCE M. SMALL AND SASH A. SPENCER

AS TRUSTEES

CREATING

THE ORLY GENGER 1993 TRUST

*Accounts rg —
og. Leah.*

Dated: December 13, 1993

Copy 3 Of 4

RUBIN BAUM LEVIN CONSTANT & FRIEDMAN

30 Rockefeller Plaza          New York, NY 10112

Index to the Orly Genger 1993 Trust Agreement

| Article | Contents | Page |
|---|---|---|
| FIRST: | Disposition of Principal and Income During the Life of the Grantor's Daughter, ORLY GENGER | 1 |
| SECOND: | Continuing Trust for Descendants of the Grantor's Daughter, ORLY GENGER | 5 |
| THIRD: | Disposition of Property if No Descendant of the Grantor is Living | 9 |
| FOURTH: | Additions to the Trusts | 13 |
| FIFTH: | Irrevocability | 13 |
| SIXTH: | Governing Law | 13 |
| SEVENTH; | Trustees | 13 |
| EIGHTH: | Compensation of Trustees | 18 |
| NINTH: | Settlement of Trustees' Accounts; Exoneration of Trustees | 18 |
| TENTH: | Definitions | 21 |
| ELEVENTH: | Administrative Powers | 22 |
| TWELFTH: | Provisions Relating to the GST | 32 |
| THIRTEENTH: | Release of Powers | 37 |
| FOURTEENTH: | Provision with Respect to Closely Held Businesses | 38 |
| FIFTEENTH: | Headings | 39 |
| SIXTEENTH: | Severability | 39 |

TRUST AGREEMENT dated December 13, 1993, between ARIE GENGER (now residing at 1067 Fifth Avenue, New York, New York), as Grantor, and LAWRENCE M. SMALL (now residing at 2804 Woodland Drive, Washington, D.C. 20008) and SASH A. SPENCER (now residing at 251 Crandon Boulevard, Townhouse 164, Key Biscayne, Florida 33149), as Trustees.

The Grantor hereby transfers to the Trustees, and the Trustees hereby acknowledge receipt of, the sum of Six Hundred Thousand Dollars ($600,000.00), to be held, administered and disposed of in accordance with the provisions of Article FIRST hereof. Said sum and any other property that may be received by the Trustees pursuant to the provisions of Article FOURTH hereof, and all investments and reinvestments thereof, and all proceeds thereof which constitute principal, are hereinafter collectively called "principal."

This Trust Agreement shall be known as the "Orly Genger 1993 Trust Agreement" and the trust created by Article FIRST hereof shall be known as the "Orly Genger 1993 Trust."

FIRST:   Disposition of Principal and Income
During the Life of the Grantor's Daughter,
ORLY GENGER.

A.   The Trustees shall hold, manage, invest and reinvest the principal of the trust created by this Article, IN TRUST, and, so long as the Grantor's daughter, ORLY GENGER, shall live, the Trustees are authorized and empowered to pay such part, parts or all, if any, of the net income of the trust

created by this Article (hereinafter referred to in this Article as "Orly's Trust") to, or apply such part, parts or all, if any, of such net income for the use or benefit of, such one or more of the following individuals living from time to time in such equal or unequal amounts or proportions, and at such time or times, as the Trustees, in their discretion, shall determine:

      1.    The <u>Grantor's daughter</u>, ORLY GENGER.

      2.    Each <u>descendant of ORLY</u> GENGER.

The Trustees shall <u>accumulate all income</u> of Orly's Trust not so paid to or applied and, at least annually, add such net income to the principal of Orly's Trust.

In making such distributions, the Trustees are requested (but they are not directed) to limit the total amount of the distributions made to any descendant of ORLY GENGER with respect to any calendar year to the amount necessary to increase such descendant's taxable income for United States income tax purposes for such year to the greatest amount that shall still result in such descendant not being subject to United States income taxes at the highest marginal rate in effect for such year, after taking into account all of such descendant's other income and deductions for such year.

B. The Trustees are authorized and empowered to pay to, or apply for the use or benefit of, <u>the Grantor's said daughter such part</u>, parts or all, if any, of the <u>principal</u> of Orly's Trust, and at such time or times, as said Trustees, in

-2-

their <u>discretion</u>, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of Orly's Trust.

C.    Upon <u>the death of the Grantor's said daughter</u>, the Trustees shall pay the then <u>principal</u> of Orly's Trust, together with all net income thereof then accrued but not yet collected, and collected but not yet disposed of, as follows:

1.    The Trustees shall pay <u>one-half</u> (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of <u>the descendants of the Grantor's said daughter</u>, and <u>upon such</u> terms, conditions and trusts, if any, as the Grantor's said <u>daughter</u>, by a provision <u>in her Will</u> expressly referring to this Article of this Trust Agreement, shall validly direct and appoint. If, or to the extent that, the Grantor's said daughter shall fail so validly to direct and appoint such principal and income, the Trustees, at the death of the Grantor's said daughter, shall pay the same, <u>per stirpes</u>, to such <u>of the descendants</u> of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, <u>if no descendant of the Grantor's said daughter shall survive her, per stirpes</u>, to such of the <u>Grantor's descendants</u> as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof.

-3-

2.    The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of the Grantor's said daughter as shall survive her, subject, however, to the provisions of Article SECOND hereof, or, if no descendant of *the* Grantor's said daughter shall survive her, per stirpes, to such of the Grantor's descendants as shall so survive, or, if no descendant of the Grantor shall so survive, in accordance with the provisions of Article THIRD hereof

3.    If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor, and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant but shall instead pay such per stirpital share to the trustees then acting under said trust agreement, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

D. Notwithstanding anything herein to the contrary, if any Trustee hereunder shall be one of the potential income beneficiaries of Orly's Trust, such Trustee shall not, in his or her capacity as such a Trustee, have any voice or vote or other-

-4-

wise participate in any decision pertaining to the payment or application of the income or principal of Orly's Trust to or for the use or benefit of him or her in his or her capacity as a beneficiary of such trust or to or for the use or benefit of any person whom he or she has an obligation to support, and, in each such event, the other Trustee or Trustees shall make all decisions relating to such trust that pertain to such matters.

> SECOND: Continuing Trusts for Descendants of the Grantor's Daughter, ORLY GENGER.

A.    If, under any provision of this Trust Agreement, any property is directed to be paid to a descendant of the Grantor's daughter, ORLY GENGER, subject to the provisions of this Article, such property shall not be distributed or paid to such descendant. Instead, the Trustees shall continue to hold such property, IN TRUST (in a separate trust for each such descendant which is referred to in this Article as "such descendant's trust"; provided, however, that if there shall be property so directed to be paid on more than one occasion to any such descendant, all such property shall be held in a single trust for such descendant), and, so long as such descendant shall live before attaining the age of twenty-one (21) years, the Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the net income of such descendant's

-5-

trust, and at such time or times, as said Trustees, in their discretion, shall determine, and the Trustees shall accumulate the balance of such net income, if any, and, at least annually, add it to the principal of such descendant's trust; and, so long as such descendant shall live after attaining the age of twenty-one (21) years, the Trustees shall pay to such descendant all of the net income of such descendant's trust in at least quarterly installments.

B.    The Trustees, other than such descendant if he or she shall be a Trustee hereunder, are authorized and empowered to pay to, or apply for the use or benefit of, such descendant, such part, parts or all, if any, of the principal of such descendant's trust, and at such time or times, as said Trustees, in their discretion, shall determine, without regard to the interest in the trust of any other person and without regard to the fact that any such payment or application may result in the termination of the trust.

C.    Upon the death of such descendant (hereinafter referred to in this Article as "such deceased descendant"), the Trustees shall pay the then principal of such deceased descendant's trust, together with all net income thereof accrued but not yet collected, and collected but not yet disposed of, as follows:

-6-

1.    The Trustees shall pay one-half (1/2) of such income and principal, in such equal or unequal amounts or proportions, to or for the use or benefit of such one or more of the descendants of such deceased descendant, and upon such terms, conditions and trusts, if any, as such deceased descendant, by a provision in his or her Will expressly referring to this Article of this Trust Agreement, shall validly direct and appoint. If, or to the extent that, such deceased descendant shall fail so expressly and so validly to direct and appoint such principal and income, the Trustees shall, at the death of such deceased descendant, pay the same, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

2.    The Trustees shall pay one-half (1/2) of such income and principal, per stirpes, to such of the descendants of such deceased descendant as shall survive such deceased

descendant, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, per stirpes, to such of the descendants as shall so survive of the ancestor of such deceased descendant closest in degree of relationship to such deceased descendant who (i) shall have descendants who shall so survive and (ii) shall have been a descendant of the Grantor or shall have been the Grantor, subject, however, to the provisions of this Article, or, if no such descendant shall so survive, in accordance with the provisions of Article THIRD hereof.

3. If, pursuant to the provisions of paragraph 1 or paragraph 2 of this Section C, the Trustees are directed to pay a per stirpital share of such income and principal to a descendant of the Grantor subject to the provisions of this Article, and if at the time the Trustees are so directed there shall be in existence a trust for such descendant under a trust agreement between Arie Genger, as grantor, and Lawrence M. Small and Sash A. Spencer, as trustees, executed on the date hereof and known as the "Sagi Genger 1993 Trust Agreement," the Trustees shall not pay such per stirpital share to such descendant subject to the provisions of this Article but shall instead pay such per stirpital share to the trustees then acting under said trust agreement, to be disposed of by them pursuant to the provisions of the trust for such descendant under said trust agreement.

D. Notwithstanding anything herein to the contrary, each trust created by the terms of this Article shall terminate, if not sooner terminated, upon the expiration of twenty-one (21) years after the death of the last surviving descendant of the Grantor's parents, SHARGA GENGER and DORA GENGER, who shall have been in being on the date hereof; and the Trustees shall thereupon pay the then principal of any trust terminated in accordance with the provisions of this Section, together with all net income thereof accrued but not yet collected and collected but not yet disposed of, to the descendant of the Grantor with respect to whom such trust is being held.

THIRD:    Disposition of Property if No Descendant of the Grantor is Living.

A. As used in this Article:

1.    The words "such time' shall mean the time as of which any property is directed to be paid in accordance with the provisions of this Article.

2.    The term "Qualified Charitable Organization" shall mean an organization that shall be qualified as an organization to which contributions and bequests are deductible for both United States income tax, gift tax and estate tax purposes under the provisions of Section 170, Section 2522 and Section 2055 of the Internal Revenue Code.

-9-

B. If under any provision of this Trust Agreement, any property is directed to be paid in accordance with the provisions of this Article, the Trustees shall pay such property as follows:

1.    If the Grantor, the Grantor's spouse and/or any one or more descendants of the Grantor shall have caused there to be created a foundation known as The Genger Foundation, and if at such time said Foundation shall be in existence and shall be a Qualified Charitable Organization, then, in such event, the Trustees shall pay such property to said Foundation.

2.    If at such time either The Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and if at such time the Trustees are authorized under applicable law to cause to be organized a corporation under and in accordance with the laws of any state of the United States which the Trustees, in their discretion, shall select, which corporation (i) shall be known by the name of The Genger Foundation (or by such other name as the Trustees, in their discretion, shall select if the name of The Genger Foundation shall not be available to be utilized as the name of said corporation), (ii) shall have as its purposes the encouragement, promotion, support and enhancement of non-orthodox study and education for children in the State of Israel pertaining to the customs, practices and ancient and modern history of the Jewish

-10-

people and shall maintain all of the property held by it, and use all of the net income thereof received from time to time, for the encouragement, promotion, support and enhancement of such study and education for children, (iii) shall be required to maintain all of the property held by it, and use all of the net income thereof received from time to time, for such purposes, with such property and income to be expended for such purposes in such amounts, at such time or times and to or for the use or benefit of such recipient or recipients as the directors, trustees and/or the officers of such corporation shall, in their discretion, determine from time to time, subject, however, to the other provisions of this paragraph 2, (iv) shall have as its initial directors or trustees the Trustees hereunder, the Grantor's cousin, JEREMIAH WOHLBERG (now residing at 2325 Lindenmere Drive, Merrick, New York), if he shall not then be a Trustee hereunder, and also such other individual or individuals, if any, as may be designated by the Trustees, and thereafter to have as directors or trustees such individuals as shall from time to time be determined as provided for in the certificate of incorporation and/or by-laws of said corporation, and (v) shall be organized and maintained in such manner as to be and continue to be a Qualified Charitable Organization, then, in such event, the Trustees shall organize such a corporation, and the Trustees shall pay such property to such corporation.

3. If at such time (i) either the Genger Foundation created as aforesaid shall not be in existence or said Foundation shall be in existence but shall not be a Qualified Charitable Organization, and (ii) the Trustees are not authorized under applicable law to cause to be organized a corporation of the nature referred to in paragraph 2 of this Section B, then, in such event, the Trustees shall pay such property to the JEWISH COMMUNAL FUND OP NEW YORK, New York, New York, to be held, administered and disposed of pursuant to the rules and regulations thereof as an Undesignated Philanthropic Fund to be known as the Genger Philanthropic Fund and with the privilege of making advisory recommendations with respect thereto to be held in the first instance by the Trustees, said JEREMIAH WOHLRERG, it he shall not then be a Trustee hereunder, and also by such other individual or individuals, if any, as the Trustees may designate, and thereafter by such other individual or individuals as such designees and their successors acting in such capacity may from *time* to time designate, and it is requested (but not directed) that the principal and income of such Fund shall be utilized to encourage, promote, support and enhance non-orthodox study and education for children in the State of Israel pertaining to the customs, practices and ancient and modern history of the Jewish people.

-12-

Fourth:      Additions to the Trusts.

Any person, including the Grantor, by a transfer to take effect during the life of such person or upon the death of such person, may, at any time or times, add to the principal of any trust hereunder any property or any kind or nature acceptable to the Trustees, and any such additional property so received by the Trustees pursuant to the provisions of this Article shall thereafter be deemed to be part of the principal of such trust subject to all of the terms, provisions and conditions of this Trust Agreement.

FIFTH:      Irrevocability.

This Trust Agreement and the trusts hereby created are irrevocable and not subject to amendment or change.

SIXTH:      Governing Law.

This Trust Agreement and the trusts hereby created shall be governed by the laws of the State of New York.

SEVENTH: Trustees.

A.   The initial Trustees acting hereunder shall be LAWRENCE M. SMALL and SASH A. SPENCER.

B.   Each individual acting as a Trustee hereunder (whether such Trustee is initially a party to this Trust *Agreement* or a successor Trustee named in Section C of this Article

or appointed pursuant to the provisions of this Section B) is authorized and empowered to appoint another individual (other than the Grantor) to act in his or her place and stead as a Trustee hereunder. Each appointment of a successor Trustee hereunder shall be made by the execution of an instrument of appointment signed and acknowledged by the individual who shall have made such appointment and by delivering such instrument in accordance with the provisions of Section G of this Article; and any such appointment may be revoked in the same manner by the individual Trustee who shall have made it at any time before the occurrence of the event or events as of which such appointment shall, by its provisions, become effective. Any appointment made in accordance with the provisions of this Section B shall be valid only if the individual so appointed shall, within thirty (30) days after the later of (i) the date on which a copy of such instrument of appointment is so delivered to him or her, and (ii) the occurrence of the event or events as of which such appointment shall, by its provisions, become effective, qualify as a successor Trustee under this Trust Agreement in accordance with the provisions of Section D of this Article. Each successor Trustee named in Section C of this Article or appointed in accordance with the provisions of this Section B shall be vested with the same powers and authority as the initial Trustees who are parties to this Trust Agreement; provided, however, that no such Trustee shall be permitted to exercise any authority or

-14-

*power* which such Trustee shall be prohibited from exercising by an express provision of this Trust Agreement.

C.        1.    If either LAWRENCE M. SMALL or SASH A. SPENCER shall cease to act as a Trustee hereunder, and <u>no successor Trustee appointed by</u> him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, <u>MARTIN A. COLEMAN</u> (now residing at 51 Cambridge Road, Great Neck, New York 11023) <u>shall act as Trustee hereunder</u>.

2.    If MARTIN A. COLEMAN shall fail or cease cease [sic] to act as a Trustee hereunder, and no successor Trustee appointed by him pursuant to the provisions of Section B of this Article shall quality and act as a Trustee hereunder, THOMAS G. HARDY (now residing at 935 Park Avenue, New York, New York 10028) shall act as a Trustee hereunder.

D.    Each successor Trustee hereunder shall qualify as such by accepting the trusteeship by the execution of a signed and acknowledged instrument of acceptance and by delivering such instrument in accordance with the provisions of Section G of this Article.

E.    Any individual Trustee hereunder may resign as such a Trustee by the execution of a signed and acknowledged instrument of resignation and by delivering such instrument in accordance with the provisions of Section G of this Article.

-15-

Any such resignation shall become effective upon the receipt of such instrument of resignation by each individual to whom it is delivered or mailed as aforesaid or at such later date as may be specified therein.

F. If any individual while acting as a Trustee hereunder shall become incapable of discharging his or her responsibilities and duties an such a Trustee by reason of a physical, emotional or intellectual incapacity and such incapacity shall be confirmed by each of two medical doctors in written statements, copies of which shall be delivered or mailed as hereinafter provided, the individual who is so incapacitated shall be deemed for the purposes of construing and applying all of the provisions of this Trust Agreement to have effectively resigned as such Trustee in compliance with the provisions of Section E of this Article, such resignation to be deemed to be effective upon the delivery or mailing of the aforesaid statements as hereinafter provided. Each of the aforesaid statements shall be signed and acknowledged by the medical doctor making the same and copies of the same shall be delivered or mailed by registered or certified mail to the individual, if any, who will become the successor Trustee hereunder in the place and stead of the incapacitated Trustee to whom such statement pertains, to each Trustee, if any, then acting hereunder (other than the incapacitated Trustee to whom such statement pertains), and also to either (i) the Grantor (or, if the Grantor shall not then be

- 16 -

living, to the executors, administrators or personal representa-
tives of the Grantor's estate), or (ii) any one or more of the adult
individuals to whom or for whose use or benefit the income of any
trust hereunder may then be paid or applied.

G.    Each instrument directed to be delivered in
accordance with the provisions of this Section G shall be delivered
in person or by mailing a copy of the same by registered or
certified mail to each Trustee, if any, then acting hereunder
(other than the Trustee, if any, who shall have executed such
instrument), and to either (i) the Grantor (or, if the Grantor is
not then living, to the executors, personal representatives or
administrators of the Grantor's estate), or (ii) any one or more
of the adult individuals to whom or for whose use or benefit the
income of any trust hereunder may then be paid or applied.

H.    No bond or other security shall be given by or
required in any jurisdiction (whether in the State of New York
or elsewhere) of any Trustee at any time acting hereunder
(whether such Trustee is named herein or appointed pursuant to
the provisions hereof) for the faithful performance of such
Trustee's fiduciary duties in any capacity hereunder regardless
of whether such Trustee is or may become a non-resident of the
State of New York or elsewhere.

-17-

Eighth:    Compensation of Trustees.

No Trustee hereunder, whether such Trustee is herein-above named or appointed pursuant to the provisions hereof, shall be entitled to any compensation (other than reimbursement for out-of-pocket expenses) for services rendered as a Trustee hereunder; and each Trustee who is a party to this Trust Agreement or who qualifies as a successor Trustee hereunder as provided herein shall be deemed to have agreed to serve as such Trustee without receiving any such compensation.

NINTH:    Settlement of Trustees' Accounts; Exoneration of Trustees.

A. To the fullest extent permitted by law, the Trustees shall not be required to file with or render to, and the Grantor waives and excuses the filing with or rendering to, any Court an account of their transactions or inventories, accounts, statements or reports of principal and/or income with respect to any trust created hereunder. Nevertheless, the Trustees may at any time have their accounts judicially settled with respect to any trust created hereunder, and in any such proceeding it shall not be necessary to serve any person who is under a disability if there is another party to the proceeding who is not under any disability and who has the same interest as the person who is under a disability, and, in such event, it shall not be necessary to appoint a guardian ad litem for any such party who is under a disability. The expenses of any such

-18-

account shall be a proper administration expense of the trust to which such account relates.

B.    If any Trustee shall resign as a Trustee hereunder, the continuing Trustee, if any, or, if there is no continuing Trustee, any successor Trustee who shall have qualified to act in accordance with the provisions of Section D of Article SEVENTH hereof, may deliver to the Trustee so resigning an instrument whereby such resigning Trustee shall be released and discharged, to the extent stated therein, of and from any and all accountability, liability and responsibility for    or omissions as Trustee. Any such release and discharge shall be binding upon all persons, whether or not then in being, then or thereafter interested in either the income or the principal of any trust hereunder and shall have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the judicial settlement of the account of such Trustee in which jurisdiction was obtained of all necessary and proper parties. The foregoing provision, however, shall not preclude any Trustee so resigning from having his or her account judicially settled, and in any such proceeding it shall not be necessary to serve any person who is under a disability if there is another party to the proceeding who is not under any disability and who has the same interest as the person who is under a disability, and, in such event, it shall not be necessary to appoint a guardian

-19-

ad litem for any such party who is under a disability. The expenses of any judicial account rendered by a Trustee who shall resign shall be a proper administration expense of the trust to which such account relates.

C.    In addition to the foregoing, the Trustees are hereby authorized, at any time and from time to time, with respect to any trust hereunder, to settle the account of the Trustees by agreement between the Trustees and the then adult individual or individuals to whom or for whose use or benefit the income of such trust may then be paid or applied and the adult or adults who would be entitled to the principal in case such trust were to terminate at the time of such agreement, excluding any such individual who is under a disability if there is a party to the agreement who is not under any disability and who has the same interest as the individual who is under a disability, which agreement shall bind all persons, whether or not then in being, then or thereafter interested in either the income or the principal of such trust. Any such settlement shall have the same force and effect as a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the judicial settlement of such account in which jurisdiction was obtained of all necessary and proper parties. The expenses of any such account shall be a proper administration expense of such trust.

-20-

D.    To the extent permitted by law, no Trustee shall be accountable, liable or responsible for any act, default, negligence, or omission of any other Trustee.

TENTH:    <u>Definitions.</u>

Wherever used in this Trust Agreement:

1.    The word "Trustees" and all references to the Trustees shall mean and refer to the Trustees and successor Trustees hereinabove named, any successor Trustee appointed pursuant to the provisions hereof, any substitute Trustee appointed by a court of competent jurisdiction, the survivors or survivor of them, and their and each of their successors or successor, as may be acting hereunder from time to time.

2.    The words "IN TRUST" shall mean "in trust, nevertheless, to hold, manage, invest and reinvest, and, until payment thereof as hereinafter directed, to receive the income thereof."

3.    The word "pay" shall, where applicable, mean "convey, transfer and pay" and the word "payment" shall, where applicable, mean "conveyance, transfer and payment."

4.    The words "descendant" and "descendants," when used with respect to any person, shall be deemed to include (i) every individual who is born to such person, (ii) every individual who is lawfully adopted by such person, and (iii)

-21-

every individual who is otherwise descended from such person, whether by birth, or by lawful adoption, or by a combination thereof.

5.    The words "Internal Revenue Code" shall mean and refer to "the United States Internal Revenue Code of 1986 (as amended from time to time)," and any reference to a specific section, chapter or other provision of the Internal Revenue Code shall mean and refer to said section, chapter or other provision and any successor statute thereto pertaining to the same subject matter as said section, chapter or other provision.

ELEVENTH: <u>Administrative Powers.</u>

A.    In addition to and in amplification of the powers given by law to trustees, the Trustees, but solely in their fiduciary capacities, are hereby authorized and empowered, in their discretion:

1.    To sell, exchange, make contracts with respect to, grant options on or otherwise dispose of, at public or private sale, at such prices, on such terms (including sales on credit with or without security) and at such time or times as the Trustees shall determine, any property, real or personal, which may at any time form part of any trust hereunder.

2.    To lease, for such periods (whether or not any such period shall extend beyond the period prescribed by law

or the probable term of any trust hereunder), on such terms and conditions and at such time or Limes as the Trustees shall determine, the whole or any portion or portions of any property, real or personal, which may at any time form part of any trust hereunder, whether the same be held in severalty or as tenant-in-common with others or in a partnership, syndicate or joint venture or otherwise, and release and convey any undivided interest in any such property for the purpose of effecting partition of the whole or any part thereof; and make, place, extend or renew mortgages, pledges, building loan agreements or build-ing loan mortgages upon or affecting any and all such property; and make, execute and deliver such mortgages, pledges and agreements, together with proper bonds, notes or other instruments of indebtedness to accompany the same, and such extension or renewal agreements, as to the Trustees shall seem necessary, advisable or proper; and also to repair, alter, reconstruct, build upon or improve any such property and on such terms and at such time or times as the Trustees shall determine, give and grant to others the right so to do, or agree in, or so modify any lease affecting any such property that the lessee may alter, repair, reconstruct, build upon, improve, mortgage and pledge any such property; and generally to make, alter and modify all agreements, leases, mortgages, pledges, building loans, sales, exchanges, transfers and conveyances of or affecting any such property which the Trustees shall determine to be necessary, advisable or proper for *the* preservation, improvement, enhancement

-23-

in value of, or betterment of or addition to, such property.

3.    To hold any part or all of the assets of any trust hereunder invested in the same form of property in which the same shall be invested when received by the Trustees, and invest and reinvest the assets of any such trust, or any portion thereof, in any form of investment which the Trustees may determine (including, without limitation, mutual funds, common trust funds, investment trusts, general partnerships and limited partnerships), whether or not such investment is of the nature prescribed by law as a legal investment for fiduciaries or is speculative in nature, and without regard to the percentage of the assets of such trust which such investment or similar investments may constitute.

4.    To vote in person or by proxy all stocks and other securities held by any trust hereunder; grant, exercise, sell or otherwise turn to account rights to subscribe for stock and securities and options of any nature; amortize or refrain from amortizing premiums on bonds or other securities which the Trustees may purchase or receive; participate in reorganizations, mergers, liquidations or dissolutions, and contribute to the expenses of, and deposit securities with, protective committees in connection therewith; participate in voting trusts; and generally exercise, in respect of said stock and securities, all

rights, powers or privileges which may be lawfully exercised by any person owning similar property in his or her own right.

5.    To employ any investment counsel, corporate custodians, agents, accountants, brokers and attorneys which the Trustees may select and pay the charges thereof (including charges for preparation of trust tax returns, the Trustees' accounts and any other necessary trust records); and the Trustees, or a partnership, corporation or other entity in which any Trustee shall be interested, or by which any Trustee may be employed, may be retained in any such capacity, and, in such event, the charges which shall be payable to such Trustee, or to any such partnership, corporation or other entity, shall be in addition to compensation otherwise allowable to such Trustee and may be paid without prior judicial approval.

6.    In any case in which the Trustees are authorized or required to pay or distribute any share of any trust hereunder, to make such payment or distribution in kind, or partly in kind and partly in money and, in connection therewith, to allocate equal or unequal interests in, or amounts of, specific property in satisfaction of such payment or distribution; provided, however, that any property distributed in kind shall be valued, for purposes of such distribution, at its fair market value on the date of distribution.

-25-

7.    To settle, adjust, compromise or submit to arbitration any dispute, claim or controversy in which any trust hereunder may be in any way interested.

8.    To borrow money from any person, partner-ship, corporation or other entity, who may be any Trustee or a partnership, corporation or other entity in which any Trustee may be interested, or by which any Trustee may be employed, for the purpose of meeting any and all charges against any trust hereunder or for any other purpose connected with the administration, preservation, improvement or enhancement in value of any such trust, and, in connection with any such borrowing, to pledge, hypothecate or mortgage any part or all of the assets of any such trust.

9.    To keep any or all of the securities at any time forming a part of any trust hereunder in the name of one or more nominees.

10.    In any case where doubt or uncertainty exists under applicable law or this Trust Agreement, to credit receipts and charge expenses to principal or income, or partly to each.

11.    By instrument or instruments signed by all of the Trustees qualified and acting as such at any time with respect to any trust hereunder, to delegate, in whole or in part, to any person or persons (including any one or more of the

-26-

Trustees) the authority and power to (i) sign checks, drafts or orders for the payment or withdrawal of funds from any bank account or other depository in which funds of such trust shall be held, (ii) endorse for sale, transfer or delivery, or sell, transfer or deliver, or purchase or otherwise acquire, any and all stocks, stock warrants, stock rights, bonds or other securities whatsoever with respect to such trust, and (iii) gain access to any safe deposit box which may be in the names of the Trustees and remove part or all of the contents of any such safe deposit box and release and surrender the same.

12. To pay or deliver to either parent or to the guardian of the property of any minor or to an adult with whom such minor resides, and, with respect to any person for whom it is permissible to do so under applicable law, to a custodian for such person under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state until the age of eighteen (18) years (or until such age in excess of eighteen (18) years as shall be permissible under applicable law and which the Trustees, in their discretion, shall select) any sum or property, including income, which such minor or such person shall either be entitled to receive or to have applied for his or her use or benefit under any of the provisions hereof, without requiring that such parent, adult or custodian obtain letters of guardianship or that such parent, guardian, adult or custodian give any bond or other security for any such payment or delivery

-27-

so made; and the receipt of such parent, guardian, adult or
custodian for the amount of such payment, or for the property so
delivered, shall be an absolute protection to the Trustees and a
complete release and discharge from all further accountability in
respect of any such payment or delivery.

13. If any beneficiary of any trust hereunder shall, in the
opinion of the Trustees, be or become incapacitated (whether by
reason of illness, age or other causes) the Trustees may, in
their discretion, wholly or partly in lieu of paying net income
or principal of such trust to such beneficiary as authorized or
directed by this Trust Agreement, dispose of the same in one or
more of the following ways:

>   (a)  by making payment of such net income
>   or principal to a legally appointed guardian or
>   other fiduciary of such beneficiary;

>   (b)  by making payment of such net income
>   or principal, on behalf of such beneficiary, to
>   any person with whom such beneficiary resides or
>   who has charge of his or her care; and/or

>   (c) by applying such net income or princi-
>   pal directly for the use or benefit of such ben-
>   eficiary.

14.    To remove the assets of, hold and administer any such assets in, and/or move the situs of the administration of any trust hereunder to, such location or locations (which may be in a state or other jurisdiction other than the State of New York) as the Trustees, in their discretion, shall select. If the Trustees, in their discretion, shall determine it advisable to move the situs of the administration of any trust hereunder to a location where the judicial administration of trusts is required or permitted, the Trustees are authorized to select and request a court in such location having jurisdiction over the administration of trusts to accept jurisdiction over the administration of such trust, and it is requested that such court accept, and that it be permitted to accept, jurisdiction over the administration of such trust; and it is directed that the administration of such trust shall be governed from time to time by the laws of the jurisdiction in which the administration of such trust is then located.

15.    To make, or refrain from making, elections or allocations permitted under any applicable tax law without regard to the effect of any such election or allocation on the interest of any beneficiary of any trust hereunder and, if any such election or allocation shall he made, to apportion, or refrain from apportioning, any benefits thereof among the respective interests of the beneficiaries of such trust, all in such manner as the Trustees shall deem appropriate.

-29-

16.    To retain or invest in solido the property held in any trust hereunder with the property held in one or more of the other trusts hereunder or with the property held in any other trust created by the Grantor or by any other person for purposes of convenience or for the better investment thereof.

17.    To exercise all authority, powers, privileges and discretion conferred in this Article after the termination of any trust created hereunder and until all of the assets of such trust are fully distributed.

B.    No person or party dealing with the Trustees shall be bound to see to the application of any money or other consideration paid by him or her to the Trustees.

C.    Neither the principal nor the income of any trust hereunder, or any part thereof, shall or may at any time be liable or subject in any manner whatsoever to the debts or liabilities of any beneficiary entitled to receive any principal or income therefrom; nor shall the principal or income of any trust hereunder be liable to attachment by garnishment proceedings or other legal process issued by any creditor of any beneficiary of such trust for debts heretofore or hereafter contracted by such beneficiary; nor shall any assignment, conveyance, charge, encumbrance or order, either of principal or income, given by any such beneficiary be valid.

-30-

D. Wherever in this Trust Agreement it is provided that an instrument is to be "acknowledged," such instrument shall be acknowledged in such manner as would be required if the same were a conveyance of real property entitled to be recorded in the State of New York.

E.   1.   To the fullest extent permitted by law, no transaction or decision involving any trust hereunder shall be deemed invalidated in any way by reason of any personal, beneficial or other interest which any Trustee may have with respect to such transaction or decision, including, without limitation, any transaction or decision with respect to any corporation, company, partnership, association, estate, trust or other entity in which any Trustee may have an interest in a capacity other than as a Trustee hereunder, regardless of any conflict of interest as to any such transaction or decision, and any such transaction or decision shall be lawful and proper and shall not be questioned unless such Trustee is guilty of fraud with respect thereto. Without limiting the foregoing, no Trustee shall be disqualified or barred from acting as such or have any liability hereunder in exercising any power, authority or discretion conferred upon the Trustees by reason of the fact that such Trustee may be a stockholder, officer, director, partner, executor, administrator, personal representative, trustee, beneficiary, or in any other way interested in the corporation, company, partnership, association, estate, trust or other entity

-31-

whose securities or property are the subject matter of the exercise of such power, authority or discretion.

2.  The Trustees hereunder shall be entitled to compensation as officers, directors, fiduciaries or other participants in any such entity notwithstanding the fact that they are Trustees hereunder and are also entitled to receive reimbursement for their out-of-pocket expenses as such Trustees.

F. The Trustees shall be under no duty or obligation and shall not be liable to any trust hereunder or to any person or persons interested in any trust hereunder or be surcharged for failure to buy, sell or engage in any transaction directly or indirectly involving securities issued or to be issued by any corporation or other business organization concerning which any of the Trustees, in a capacity other than as a Trustee hereunder, may have acquired any information which has not been disclosed to the public.

TWELFTH:  <u>Provisions Relating to the GST.</u>

A.  As used in this Article:

1.  "GST" shall mean and refer to "the United States generation-skipping transfer tax imposed by Chapter 13 of the Internal Revenue Code."

-32-

2.    The words "inclusion ratio" shall have the same meaning as those words are given in Section 2642 of the Internal Revenue Code.

3.    The words "Net Death Taxes" shall mean and refer to "the aggregate death taxes (including, without limitation, United States, state, local and other estate taxes and inheritance taxes but not including any interest and penalties thereon), after taking into account all applicable credits, payable with respect to the estate of such beneficiary."

B.    1.    Notwithstanding any other provision in this Trust Agreement to the contrary, and in addition to any other power of appointment hereinabove given *by* the previous provisions of this Trust Agreement to any individual at whose death the inclusion ratio with respect to any trust under this Trust Agreement would, but for the provisions of this Section B, be more than zero (such individual being referred to in this Article an "such beneficiary"), the Trustees of such trust are authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over such trust, if such Court shall accept such instrument for filing), (i) to create in such beneficiary a power (hereinafter referred to in this Section B as "such power"), to be exercised by a provision in his or her Will expressly referring to this Article of this Trust Agreement, to appoint to the creditors of his or her estate any portion of the

-33-

property held in such trust at the death of such beneficiary, and (ii) to limit such power, by formula or otherwise, to less than all of the property held in such trust at the death of such beneficiary; provided, however, that with respect to each such trust, the maximum amount of property over which such power may be created shall not, after taking into account the property, if any, over which any other such power is created in such beneficiary, exceed the amount, if any, above which any further addition to the amount subject to such power would increase the Net Death Taxes determined with respect to such beneficiary's estate by an amount equal to or greater than the net decrease in the aggregate of (x) the GST and (y) any state and/or local tax on generation-skipping transfers imposed as a result of the death of such beneficiary that would result from such further addition. Unless such beneficiary's Will otherwise provides by express reference to this Trust Agreement and such power, the increase in the Net Death Taxes on such beneficiary's estate resulting from such power shall be paid from that part of the principal of such trust over which such power is exercisable. If, or to the extent that, such beneficiary shall fail so expressly and so validly to exercise any power created in such beneficiary by the Trustees pursuant to the provisions of this paragraph, the unappointed portion (or, as the case may be, all) of the property subject to such power shall pass pursuant to the provisions of this Trust Agreement otherwise applicable to such property.

-34-

2.     The Trustees are further authorized and empowered, by an acknowledged instrument in writing (with such instrument to be filed with the court, if any, then having jurisdiction over the trust to which such power relates, if such court shall accept such instrument for filing), to revoke any power created by the Trustees pursuant to the provisions of paragraph 1 of this Section B at any time prior to the death of the beneficiary in whom such power was created, and to release, in the manner set forth in Article THIRTEENTH hereof, the right to create such a power. The Trustees shall not be liable for any exercise, release or failure to exercise the authority and power granted to them by the provisions of said paragraph 1 or for the revocation of any power created by them pursuant to the provisions of said paragraph 1, provided they utilize good faith in considering whether or not to exercise or release such power or to cause such revocation, whether such consideration be at their own instance or at the request of an individual who is a beneficiary of a trust hereunder, the guardian or other fiduciary of such an individual, or a member of his or her family.

C.     1.     Notwithstanding any other provision in this Trust Agreement to the contrary, if at any time any property is to be placed in a trust under the provisions of any Article of this Trust Agreement, the Trustees shall, if need be, and if it is possible to do so, divide such property and place the same in separate trusts to the end that one such trust shall have an

-35-

inclusion ratio of zero, and if any property which is directed to be added to a trust hereunder shall have an inclusion ratio which is different than the inclusion ratio of such trust, the Trustees shall not make such addition but shall instead administer such property in a separate trust under this Trust Agreement; and, in each such instance, the property to be placed or held in such a separate trust shall be held, administered and disposed of by the Trustees pursuant to provisions identical to the provisions of the trust to which, but for the provisions of this paragraph 1, such property would have been placed or added.

2.    If, pursuant to the provisions of paragraph 1 of this Section C, any property that would otherwise be held in a single trust hereunder is instead held in separate trusts hereunder, the Trustees of such trusts may, at any time or from time to time, (i) make different tax elections and allocations with respect to each such trust, (ii) expend principal and income and exercise any discretionary power differently with respect to each such trust, (iii) invest each such trust differently, and/or (iv) take all other actions consistent with such trusts being separate entities. Furthermore, the donee of any power of appointment with respect to such trusts may exercise such power differently with respect to each such trust.

D.    Notwithstanding the provisions of the foregoing Sections of this Article to the contrary, if any Trustee hereunder is a current beneficiary of the income of any trust hereunder,

-36-

or may, in the discretion of the Trustees, be a current income beneficiary of any such trust, then, in such event, such Trustee shall not, in his or her capacity as a Trustee of such trust, have any voice or vote or otherwise participate in any decision pertaining to the matters relating to such trust that are addressed in the foregoing Sections of this Article, and, in each such event, the other Trustee or Trustees of such trust shall make all decisions relating to such trust that pertain to such matters.

THIRTEENTH:    Release of Powers.

Any beneficiary and any Trustee hereunder may at any time or times release any discretionary power of appointment or discretionary power to distribute principal or income or any other discretionary power hereby given to such beneficiary or Trustee, either with or without consideration, with respect to the whole or any part of the property subject to such power and also in such manner as to reduce or limit the persons or objects or classes of persons or objects in whose favor such power would otherwise be exercisable, by an instrument signed and acknowl-edged by the beneficiary or Trustee releasing such power and delivered to (i) each Trustee then acting hereunder (other than the Trustee, if any, who shall have executed such instrument), (ii) the Grantor (or, if the Grantor is not then living, to the executors, administrators or personal representatives of the

Grantor's estate), or (iii) any one or more of the adult individuals to whom or for whose use or benefit the income of any trust hereunder may then be paid or applied. In the event of the release of any such power by any Trustee, the remaining Trustee or Trustees hereunder, if any, may thereafter exercise such power, other than any discretionary power which was not initially vested in such remaining Trustee or Trustees. The release of any power by any Trustee hereunder pursuant to the provisions of this Article shall not be binding upon any Trustee who may thereafter act as a Trustee hereunder unless such power shall have been released by all of the Trustees then in office who are vested with such power by their execution of a signed and acknowledged instrument specifically providing that such release is to be binding upon all successor Trustees hereunder.

FOURTEENTH:    Provision With Respect To
Closely Held Businesses.

Without limiting the powers and authority conferred upon the Trustees by Article ELEVENTH hereof but in extension thereof, the Trustees are specifically authorized and empowered, in their discretion, to retain for as long as they, in their discretion, shall deem advisable, any or all shares of stock in any closely held corporation, or any indebtedness owing by any such corporation, or any or all interests in any proprietorship, unincorporated business, partnership, joint venture, realty or

-38-

any other asset, whether owned individually, as tenant-in-common, partner or otherwise, regardless of whether such asset or assets shall be producing profits or losses through ownership or operation thereof, and regardless of the percentage of the trusts hereunder which such assets or similar assets may constitute; and their decision to retain and hold any such asset or liability shall be binding and conclusive upon and shall not be subject to question by any person interested, or who may become interested, in any of the trusts hereunder, and the Trustees shall not incur any liability by reason thereof.

FIFTEENTH:    Headings.

The Article headings contained herein are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope hereof or the intent of any provision hereof.

SIXTEENTH:    Severability.

Should any part, clause, provision or condition hereof be held to be void or invalid, then such invalidity shall not affect any other part, clause, provision or condition hereof, but the remainder hereof shall be effective as though such void

-39-

part, clause, provision or condition had not been contained herein.

WITNESS the due execution hereof by the Grantor and Trustees on the day and year first above written.

ARIE GENGER,
as Grantor

LAWRENCE M. SMALL,
as Trustee

SASH A. SPENCER,
as Trustee