

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

Rocco A. Cavaliere, Partner
Email: rcavaliere@tarterkrinsky.com
Phone: (212) 216-1141

July 22, 2021

**BY ECF AND BY HAND**

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

> Re:    In re Orly Genger
>        Chapter 7 Case No. 19-13895

Dear Judge Garrity:

Dalia Genger has filed an objection (the "Objection") to the *Chapter 7 Trustee's Motion For An Order Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure (A) Approving Settlement Agreement And (B) Granting Related Relief* (the "Settlement Motion") which was electronically filed with the court [ECF No. 421]. The Objection includes its own arguments and joins in the objections to the Settlement Motion filed by Sagi Genger and the Orly Genger Trust, all of which objections, including the Objection, total approximately 120 pages. Further, the Objection incorporates by reference Dalia's amended complaint in her constructive trust action pending before this Court and her objection to the defendants' motions to dismiss that action, all of which collectively total an additional approximate 80 pages, without exhibits. See "Joinder" of Dalia Genger. [ECF No. 494] ("In establishing the facts in tandem with the legal arguments made herein, Mrs. Genger relies on the statements made in her Amended Complaint Seeking Declaratory Judgement [sic] recognizing a constructive trust and/or equitable lien, found at Adv. Pro. No. 20-01010 (JLG) [Dkt. No. 8]…and in her Opposition to Various Motions to Dismiss [Dkt. No. 39]").

In connection with the Settlement Motion, the Trustee served Dalia Genger with a notice of deposition scheduled for June 22, 2021. After the hearing on the Settlement Motion was adjourned to August 3, 2021, the Trustee served an amended notice of deposition scheduled for July 22, 2021. The deposition did not take place for the reasons set forth below.

Honorable James L. Garrity, Jr.
July 22, 2021
Page 2 of 3

Without affirmatively seeking leave of the Court, and despite putting her claims and allegations squarely before the Court with respect to the Settlement Motion and arguing that they bar the Court from approving the Settlement Motion, Dalia's counsel, Paul Labov, has refused to produce Dalia for a deposition. In doing so, Mr. Labov, relies on Your Honor's separate prior ruling on June 15, 2021 relating to Sagi's motion to dismiss (as to which Dalia purported not to take a position), and states "In addition to Mrs. Genger's health issues (which you are now well aware of), there is simply no information Mrs. Genger could testify to in respect of your client's decision to enter into the settlement agreement. Given these issues, I am not planning on making Mrs. Genger available for a deposition." See Email at **Exhibit "A"**.

But the Bankruptcy Rules do not allow Mr. Labov to unilaterally decide whether or not to comply with the Trustee's discovery requests. In issuing its prior ruling, the Court noted "I'm denying that request and will adhere to my earlier ruling that Dalia would not be deposed in connection **with this hearing** and not be called as a witness **in this hearing**. **That is as it relates to this hearing and without prejudice as we move forward, if indeed it becomes relevant – that her testimony might be relevant in some other hearings**." See Transcript (relevant portion of which attached as **Exhibit "B"**), p. **7:13 to 7:19** (emphasis added). As I noted to Mr. Labov by email, the Court's prior ruling related solely to Dalia's testimony pertaining to Sagi's motion to dismiss this case, which she purports not to have joined, not the Settlement Motion, in which she most definitely has joined in other objections and objected on her own behalf. See Email at **Exhibit "C"**. And, notably, the Court squarely acknowledged Dalia's relevancy to this case, noting "Look, Dalia Genger is central to what's gone on in this case, just as Orly and Sagi are." [April 14 Transcript at 14:16-14:17]. A copy of the April 14th Transcript as annexed here as **Exhibit "D"**.

Moreover, Mr. Labov has previously acknowledged that Dalia's deposition would be warranted with respect to her constructive trust action. In an email dated June 10, 2020, Mr. Labov stated "… we request that [Dalia's] deposition be delayed until such time as her motion for constructive trust is scheduled. At that time, appropriate health precautions will be taken in light of the information then available." [June 10, 2020 E-mail, attached hereto as **Exhibit "E"**]. As noted above, the Objection expressly incorporates by reference and thus relies upon the claims and allegations that Dalia made in her amended complaint in the constructive trust action. As the Court knows, several parties, including the Trustee, filed motions to dismiss the constructive trust action, and it remains *sub judice* before the Court.

Dalia cannot have it both ways. She cannot seek relief from this Court with respect to the Settlement Motion, join in other parties' filings, make substantial allegations of misconduct against parties and yet evade discovery with respect to her own filings. Further, in light of Dalia's ability to review and approve her own Objection, which includes her own arguments and joins in other arguments of other parties, totaling over 120 pages in total, and her ability to direct counsel to file the Objection, Dalia cannot claim she is not medically fit to attend a virtual deposition. Given the filing and content of her Objection, Dalia's testimony is clearly relevant to the Settlement Motion, and it would severely prejudice the Trustee and the Settling Parties to be

Honorable James L. Garrity, Jr.
July 22, 2021
Page 3 of 3

denied the right to obtain discovery from Dalia with respect to her Objection, claims and allegations pertaining thereto.

In light of the foregoing, the Trustee respectfully requests that the Court either (i) compel Dalia to appear at a video deposition next week in advance of the August 3rd Hearing, or (ii) strike Dalia's opposition to the Settlement Motion and draw a negative inference against Dalia in accordance with Fed.R.Civ.P. 37(b)(2)(B), made applicable here by Bankruptcy Rule 7037.

Respectfully submitted,

/s/Rocco A. Cavaliere

Rocco A. Cavaliere

**EXHIBIT A**

**Sheree Nobles**

| | |
|---|---|
| **From:** | Rocco A. Cavaliere |
| **Sent:** | Thursday, July 22, 2021 9:05 PM |
| **To:** | Sheree Nobles |
| **Subject:** | FW: Genger |



**Rocco A. Cavaliere | Partner**
T: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio
Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10016
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

-----Original Message-----
From: Paul J. Labov <PLabov@pszjlaw.com>
Sent: Friday, July 16, 2021 11:44 AM
To: Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
Subject: [EXT] Genger

Rocco,

I received your email regarding deposing Mrs. Genger in connection with the Trustee's motion. In addition to Mrs. Genger's health issues (which you are now well aware of), there is simply no information Mrs. Genger could testify to in respect of your client's decision to enter into the settlement agreement. Given these issues, I am not planning on making Mrs Genger available for a deposition.

I am out this week but back next week if you'd like to speak further or bring this to the Judges attention. Thanks and enjoy the weekend.

Paul

Sent from my iPhone

1

**EXHIBIT B**

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  ORLY GENGER,                          Main Case No.

8          Debtor.                       19-13895-jlg

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              June 15, 2021

17              5:11 PM

18

19

20

21  B E F O R E:

22  HON. JAMES L. GARRITY, JR.

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Pre-Trial Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Stephanie Petersen

21    eScribers, LLC

22    352 Seventh Avenue, Suite #604

23    New York, NY 10001

24     (973)406-2250

25    operations@escribers.net

1          THE COURT:  All right.  Good afternoon.  It's Judge

2    Garrity, and we are together in the case of Orly Genger, case

3    number 19-13895.  This is a pre-hearing conference that I had

4    scheduled in order to address a couple of open items -- or

5    items that remained open prior to the hearing that will begin

6    tomorrow on the motion filed by Sagi to dismiss the Chapter 7

7    case.  There are three matters that I would like to address.

8          The first is the request that was made a couple of

9    weeks ago by Orly, through her counsel, for leave to conduct an

10   investigation -- not investigation, but an opportunity to do an

11   examination of Dalia and Dalia's fitness to provide testimony.

12   I've considered what -- the requests and the responses in the

13   letters most respectfully.  I'm denying that request and will

14   adhere to my earlier ruling that Dalia would not be deposed in

15   connection with this hearing and not be called as a witness in

16   this hearing.  That is as it relates to this hearing and

17   without prejudice as we move forward, if indeed it becomes

18   relevant -- that her testimony might be relevant in some other

19   hearings.  So that's the first thing.

20         The second matter I want to address, Mr. Bowen, did

21   you get a response to your June 13 letter to the Court as it

22   relates to the use of the transcripts?  Have you resolved that

23   issue?

24         MR. BOWEN:  Your Honor, it's Mike Bowen.  We have not

25   resolved the issue.  Mr. Dellaportas did send to me, on Sunday

**EXHIBIT C**

**Sheree Nobles**

| | |
|---|---|
| **From:** | Rocco A. Cavaliere |
| **Sent:** | Thursday, July 22, 2021 9:08 PM |
| **To:** | Sheree Nobles |
| **Subject:** | FW: [EXT] Confirmation - In re: Orly Genger - Dalia Genger 105793 |

 **Rocco A. Cavaliere | Partner**
T: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio
Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Tuesday, July 20, 2021 8:18 PM
**To:** Paul J. Labov <PLabov@pszjlaw.com>
**Subject:** RE: [EXT] Confirmation - In re: Orly Genger - Dalia Genger 105793

Paul,

I don't believe Mrs. Genger has any health issues whatsoever at this time. As a party filing a detailed frivolous objection in the case, which includes joining in other scandalous and frivolous objections, Dalia is obviously of sound mind and competence to make decisions at this time. Don't tell me that you prepared this objection yourself, without consultation with your client? Through her objection, she has made clear that she certainly has relevant information and as a result, she is required to testify, absent a court order otherwise. Not sure what you are waiting for, as I noticed Ms. Genger's deposition weeks ago and you still have not sought guidance from the Court on her deposition. This is a problem of your own making. Absent Court intervention, which you may seek at your convenience, the deposition will go forward on Thursday. If you believe you can demonstrate that her deposition should not go forward on Thursday, please bring it to the attention of Judge Garrity tomorrow, as this is not my burden. It is very clear that the Court's prior decision in reliance on old doctor's notes related only to the motion to dismiss, to which Mrs. Genger was not a party. Indeed, Judge Garrity made it abundantly clear that his decision was limited to the motion to dismiss and he was not deciding the need for her deposition on other matters in the case.

In sum, as we sit here today, I have no updated letters on her condition and not even a formal request by you of Judge Garrity to put off her deposition. Indeed, all I have in front of me is an 11 page objection that she directed you to file, after she analyzed and reviewed two other long objections filed to the settlement motion.

Rocco

 **Rocco A. Cavaliere | Partner**
T: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio
Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn
COVID-19 RESOURCE CENTER

**From:** Paul J. Labov <PLabov@pszjlaw.com>
**Sent:** Tuesday, July 20, 2021 6:43 PM

**To:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Subject:** Re: [EXT] Confirmation - In re: Orly Genger - Dalia Genger 105793

Thank you, Rocco. As I mentioned in my previous email, given Mrs Genger's health issues and the lack of any information in connection with your client's motion, Mrs. Genger will not be testifying absent court order. If you'd like to bring this issue to the court's attention, please let me know when works best for you and I will do my best to accommodate your schedule.

Sent from my iPhone

On Jul 20, 2021, at 5:20 PM, Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com> wrote:

Set forth below and attached is the confirmation/link for Dalia Genger's virtual deposition for this Thursday, July 22, 2021 at 11:30 a.m.

<http://www.tarterkrinsky.com>
<image416608.png>

Rocco A. Cavaliere
|
Partner

T: 212-216-1141<tel:212-216-1141>
|
F: 212-216-8001<fax:212-216-8001>

rcavaliere@tarterkrinsky.com<mailto:rcavaliere@tarterkrinsky.com>
|
Bio<http://tarterkrinsky.com/bios/rocco-cavaliere>

Tarter Krinsky & Drogin LLP
1350 Broadway
|
New York
|
NY
|
10018

www.tarterkrinsky.com<http://www.tarterkrinsky.com/>
|
LinkedIn<https://www.linkedin.com/company/tarter-krinsky-&-drogin-llp>

COVID-19 RESOURCE CENTER
<https://www.linkedin.com/company/tarter-krinsky-&-drogin-llp/>

From: Trustpoint Scheduling <email@trustpoint.one>
Sent: Tuesday, July 20, 2021 5:13 PM
To: Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
Cc: email@trustpoint.one; russell.mangold@trustpoint.one
Subject: [EXT] Confirmation - In re: Orly Genger - Dalia Genger 105793

Mimecast Attachment Protection has deemed this file to be safe, but always exercise caution when opening files.
_____

Good Day,

Thank you for scheduling with us. Attached please find the confirmation for the below referenced Videotaped
Deposition.

Please let us know if anything below is incorrect and confirm the estimated end time. If you need any of our additional
services such as a Videographer, Realtime, Deposition Summarization, etc. - and they are not listed below - please reach
out and we would be happy to add to your scheduling.

We will confirm this assignment again the business day prior to the scheduled time.

Thank you,


Initial Confirmation of Services Requested

Job No.


105793


Scheduled Date


7/20/2021


Attention


Rocco A. Cavaliere, Esq.


Attorney/Contact


Rocco A. Cavaliere, Esq.


Firm

3

Tarter Krinsky & Drogin, LLP 212.216.8000<votel://+12122168000>

This email is being sent as confirmation of the following proceedings:

Case

In re: Orly Genger

Witness(es)

Dalia Genger

Event Date

7/22/2021

Time

11:30AM - 6:30PM(GMT-05:00) Eastern Time (US & Canada)

Location

Zoom Meeting

NY

Phone:

Additional Details/Link: https://trustpoint-one.zoom.us/j/92925678522?pwd=Z05paStrOFFwWmh3aTFxK1dFblVCdz09<https://trustpoint-one.zoom.us/j/92925678522?pwd=Z05paStrOFFwWmh3aTFxK1dFblVCdz09>

4

Meeting ID: 929 2567 8522

Passcode: 713897

One tap mobile

+13017158592<votel://+13017158592>,,92925678522# US (Washington DC)

+13126266799<votel://+13126266799>,,92925678522# US (Chicago)


Dial by your location

+1 301 715 8592 <votel://+13017158592> US (Washington DC)

+1 312 626 6799 <votel://+13126266799> US (Chicago)

+1 929 205 6099 <votel://+19292056099> US (New York)

+1 253 215 8782 <votel://+12532158782> US (Tacoma)

+1 346 248 7799 <votel://+13462487799> US (Houston)

+1 669 900 6833 <votel://+16699006833> US (San Jose)

Meeting ID: 929 2567 8522

Find your local number: https://trustpoint-one.zoom.us/u/anzpj2OQp<https://trustpoint-one.zoom.us/u/anzpj2OQp>

Services

Service Item

Units

Court Reporter- 10 Business Day Delivery

1.00


Additional Info

5

Thank you for choosing Trustpoint / Alderson!

The terms and conditions listed below will be deemed as acceptable unless written notice is given upon receipt of this correspondence or

different arrangements have been made in advance of Trustpoint/Alderson providing its services.

Confirmation: We will confirm this assignment by email and/or phone the business day prior to the scheduled date.

Reporter Cancellation Policy: Late cancellation fees apply for assignments not cancelled by 5pm the business day prior to the scheduled assignment. Applies to in-person or remote services.

Video Cancellation Policy: Late cancellation fees apply for assignments not cancelled by 5pm the business day prior to the scheduled assignment. Applies to in-person or remote video services.

Interpreter Cancellation Policy: A late cancellation fee will apply for all assignments cancelled within 48 business hours of the scheduled start time. (Some exotic languages may require 72 business hours prior.) Applies to in-person or remote services.

Conference Room Charges: Conference room may incur a cancellation fee if not cancelled within 24-48 business hours prior to the start time, unless otherwise stated.

Conference room usage that does not require the services of a Court Reporter will incur a rental fee and cancellation fees may apply.

Billing: The party identified above is the contracting party unless agreed to in writing prior to the rendering of services. The party and/or firm is entirely responsible for the complete payment of fees incurred as described above (except services ordered by other parties' counsel). Payment is due upon receipt of invoice and is not contingent on client reimbursement. Invoice cannot be adjusted after thirty (30) days. Payment. If turned over for collection, you agree to pay all collection costs and attorneys' fees.

This communication may be privileged or contain confidential and proprietary information. If you are not the intended addressee, this message has been sent to you in error, and you are therefore prohibited from relying upon, disclosing,

6

distributing or copying the context of this email, including any and all attachments. If you have received this email in error, please delete and notify the sender via email immediately. Trustpoint.One® and Trustpoint International are not law firms and do not provide or offer legal advice, and no service performed or provided by either Trustpoint shall be deemed to be legal advice or the practice of law.

---

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.
<JobConfirmation-105793.pdf>
<105793.ics>

**EXHIBIT D**

**In Re:**

*ORLY GENGER*

*Main Case No. 19-13895-jlg*

---

*April 14, 2021*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*\*\*\*.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



Min-U-Script® with Word Index

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  ORLY GENGER,                                    Main Case No.

8         Debtor.                                  19-13895-jlg

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              April 14, 2021

17              5:11 PM

18

19

20

21  B E F O R E:

22  HON. JAMES L. GARRITY, JR.

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2    Discovery Conference (Doc # 378, 379, 380, 382, 383, 408)

3    Motion to File Under Seal (Doc #407)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Tamara Bentzur

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24    (973)406-2250

25   operations@escribers.net

1

2   A P P E A R A N C E S (All present by video or telephone):

3   GLENN AGRE BERGMAN & FUENTES LLP

4        Attorneys for Orly Genger, Debtor

5        55 Hudson Yards

6        20th Floor

7        New York, NY 10001

8

9   BY:   MICHAEL P. BOWEN, ESQ.

10

11

12  HUGHES HUBBARD & REED LLP

13       Attorneys for ADBG, LLP

14       One Battery Park Plaza

15       New York, NY 10004

16

17  BY:   CHRISTOPHER GARTMAN, ESQ.

18

19

20  ERIC HERSCHMANN

21       Attorneys for Eric Herschmann

22       210 Lavaca Street

23       Austin, TX 78701

24

25  BY:   ERIC HERSCHMANN, ESQ.

**4**

```
 1
 2   EMMET, MARVIN & MARTIN LLP
 3         Attorneys for Sagi Genger
 4         120 Broadway
 5         32nd Floor
 6         New York, NY 10271
 7
 8   BY:   THOMAS A. PITTA, ESQ.
 9         JOHN DELLAPORTAS, ESQ.
10
11
12   TOGUT, SEGAL & SEGAL LLP
13         Attorneys for Arie Genger
14         One Penn Plaza
15         New York, NY 10119
16
17   BY:   JARED C. BORRIELLO, ESQ.
18
19
20   TARTER KRINSKY & DROGIN LLP
21         Attorneys for Deborah J. Piazza, Chapter 7 Trustee
22         1350 Broadway
23         New York, NY 10018
24
25   BY:   ROCCO A. CAVALIERE, ESQ.
```

```
 1
 2    PACHULSKI STANG ZIEHL & JONES
 3          Attorneys for Dalia Genger
 4          780 Third Avenue
 5          34th Floor
 6          New York, NY 10017
 7
 8    BY:   PAUL J. LABOV, ESQ.
 9
10
11
12    POLLOCK COHEN LLP
13          Attorneys for Orly Genger Trust and Orly Genger 1993
14          Trust
15          60 Broad Street
16          24th Floor
17          New York , NY 10004
18
19    BY:   ADAM POLLOCK, ESQ.
20          MAX RODRIGUEZ, ESQ.
21
22
23
24
25
```

1

2    KASOWITZ BENSON TOREES LLP

3         Attorneys for Kasowitz Benson Torres LLP

4         1633 Broadway

5         New York, NY 10019

6

7    BY:   ANDREW R. KURLAND, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             P R O C E E D I N G S

2            THE COURT:  All right, good afternoon.  It's Judge

3    Garrity.  We're here on the Orly Genger case number 19-13895.

4    We've got a couple of matters on the calendar this afternoon.

5    The first that I would like to address is the request that is

6    found at document 407, and that is the request for an order

7    authorizing Dalia Genger to seal certain documents pursuant to

8    the confidentiality and protective order.

9            Mr. Labov, you submitted this, and what you're asking

10   is that the only parties who should -- who would be entitled to

11   access to the doctors' reports that are annexed to the

12   submission would be just the trustee and the parties that have

13   requested leave to depose Dalia Genger; is that right?

14           MR. LABOV:  That's -- good evening, Your Honor.  Paul

15   Labov, Pachulski Stang Ziehl & Jones on behalf of Dalia Genger.

16   That is correct.  If I could just update one thing.  Those

17   parties, Mr. Cavaliere, Mr. Bowen -- those parties -- although

18   it wasn't Mr. Bowen, but he represents the debtor, they served

19   third-party subpoenas on Ms. Genger.

20           And Mr. Kurland, although he did not serve a subpoena,

21   he did notice her deposition.  And what I understood from Your

22   Honor's discussion last week was that in order to fill out the

23   record -- to ensure a complete record, those parties -- the

24   parties that created the record should see them.

25           Just an update to Your Honor.  Mr. Cavaliere, Mr.

1    Kurland, and Mr. Bowen all agreed pending this Court's decision
2    that they would keep the records confidential and not share
3    them with any party or other counsel in the case.  They did get
4    a copy of those letters this past Monday.
5              THE COURT:  Okay, thank you.
6              MR. LABOV:  Yeah.
7              THE COURT:  I'm sorry.  I didn't mean to cut you off.
8    Was there something else you wanted to say, Mr. Labov?
9              MR. LABOV:  No, sir.
10             THE COURT:  All right.  Thank you.
11             Mr. Cavaliere.
12             MR. CAVALIERE:  Good evening, Your Honor.
13             THE COURT:  Okay.
14             MR. CAVALIERE:  Your Honor, I can confirm --
15             THE COURT:  Well, let me --
16             MR. CAVALIERE:  Yes --
17             THE COURT:  Yes, go ahead, please.
18             MR. CAVALIERE:  I did receive the letter.  I discussed
19   with or communicated with Mr. Labov last Friday regarding his
20   intention to file the motion to seal.  I expressed my view to
21   him that I thought that the Court's view was that all the
22   parties subject to the confidentiality order should receive a
23   copy, and then if he thought that he should limit it only to
24   myself and Mr. Kurland and Mr. Bowen, he'd have to make a
25   presentation subject to paragraph 11(b) of the confidentiality

1    order and demonstrate to the Court that that was appropriate.

2         With that said, I said I wasn't going to be taking a

3    position arguing vociferously because I indicated to him that I

4    think the other parties, to the extent they're interested in

5    seeing those letters, are certainly capable of doing so on

6    their own.  So that's all I really have to say, other than to

7    the extent Your Honor has any questions about the motion to

8    seal.  Otherwise, I'm happy to answer if I can.

9         THE COURT:  All right, thank you.

10        All right, Mr. Gartman, just one moment.  I see your

11   hand is up, but just one moment.  Okay?

12        Mr. Kurland, do you wish to be heard?

13        MR. KURLAND:  Your Honor, thank you.  Andrew Kurland

14   for Kasowitz Benson Torres.  Just to echo Mr. Cavaliere's

15   comments, we did receive the few letters.  I personally

16   received them by email.  I kept them under my eyes only,

17   haven't shared them with anyone else.  However, as I told Mr.

18   Labov via email, that's subject to this Court's ruling,

19   obviously.  And we think every party to the case is entitled to

20   see them as a standard confidential-type document pursuant to

21   the confidentiality order that's already in the case.

22        THE COURT:  All right, thank you.

23        Mr. Bowen, do you wish to be heard?

24        MR. BOWEN:  Just briefly, Your Honor.  This is Mike

25   Bowen.  Our position is that this was already addressed at the

1   past -- the last hearing before Your Honor.  And the Court

2   instructed Mr. Labov to file those letters -- those letters,

3   three letters, and then to provide them under the provisions of

4   the confidentiality order on an attorney's-eyes-only basis, to

5   everyone, because we're all in this proceeding.

6          So I thought that the effort to add conditions by Mr.

7   Labov was inappropriate and improper, and that's our current

8   position.  We accepted the letter under -- or the three

9   letters, I should say, under reservation of rights, so I have

10  reviewed them.  And I only feel more strongly that everybody

11  should see these letters, and that they're directly relevant to

12  things that need to be addressed on the motion to dismiss.

13         THE COURT:  All right, thank you.

14         Mr. Gartman, sorry to keep you waiting.

15         MR. GARTMAN:  No problem at all, Your Honor.  Chris

16  Gartman from Hughes Hubbard on behalf of ADBG, LLC.  Your

17  Honor, we are one of the parties that has not been provided

18  access to these doctors' notes.  We expressed our objection to

19  Mr. Labov on Friday, and we let him know that for the same

20  reasons that Mr. Bowen states, we believe that Your Honor made

21  clear on Friday that -- and I'm quoting from you directly, I

22  could use them, and the other parties could use them subject to

23  the limitations.

24         We don't think there's any restriction placed on who

25  could receive them, and we believe that all parties of record

1  should have access to the letters.  We've proceeded in this

2  case where there have been a few parties who have served these

3  subpoenas or deposition notices.  But all parties have had the

4  opportunity to attend a deposition, and to the extent they have

5  questions, to question the witnesses at that deposition, as

6  well as to receive the document productions, whether they

7  served a subpoena or not.

8         And I don't think that my client or anybody else

9  should have to serve a fourth or fifth or sixth subpoena, when

10 there's already three that are out there, and we have all these

11 other parties in the case.  And so it also just creates

12 difficulties in terms of a hearing like this where an issue

13 would be addressed in terms of gating item like whether she

14 could be deposed in the first place.  And because if you're

15 talking about the content of those letters, what are we doing

16 to do?  Are we going to knock some people off the call for a

17 short period of time, which doesn't make any sense,

18 particularly where I think all parties have been taking

19 positions as to the relevance of Dalia Genger's deposition.  We

20 certainly feel that she's probably the most critical witness in

21 this case.  And so we -- we feel that if this is something

22 that's being proposed as a reason why that access to that

23 discovery should be restricted, that all parties should have

24 equal access to it, and obviously, there are appropriate

25 protections under the confidentiality order that deal with this

1  as I believe Your Honor recognized at the last hearing.  So

2  that's all I have, unless you have any questions.

3         THE COURT:  No, I do not.  Thank you very much.

4         Mr. Herschmann.

5         MR. HERSCHMANN:  Thank you, Your Honor.  Eric

6  Herschmann.  I just echo and agree with Mr. Gartman and prior

7  counsel on this.  I've never seen a circumstance in which we

8  would all have to subpoena the same witness once they've

9  already been subpoenaed for a deposition, and we haven't

10 operated that way in this case at all.  So I think we're

11 entitled to see the letters.  I don't know what's in them, but

12 I know previously the issue dealt with COVID.  I presume that

13 issue's been resolved.  So I don't know what these are about,

14 but at the very least, I think we're entitled to see them.  And

15 at least, I believe they'll be relevant overall under any

16 circumstances.  Thank you, Your Honor.

17        THE COURT:  All right.  Thank you.

18        Mr. Labov.

19        MR. LABOV:  Your Honor, can you hear me?  My hand is

20 raised, but I don't know if I have to hit something else.

21        THE COURT:  No, no, I can hear you.  I saw your hand

22 was raised --

23        MR. LABOV:  Okay.

24        THE COURT:  -- which is why I called on you.

25        MR. LABOV:  Yeah, okay, thanks.  Yeah, I just wasn't

1  sure if you had to hit another button.

2          THE COURT:  Sure, no problem.

3          MR. LABOV:  Your Honor, just so we're clear, on Friday

4  I'm pretty sure the Court didn't order anything.  The Court

5  asked whether my client would be comfortable sharing the

6  letters.  After having a discussion about filling out the

7  record ensuring the full record in this matter, in order to

8  protect this incredibly private health information, we made a

9  compromise and said this is how we'd like to do it.  People

10 disagreed.  And that's why we filed the motion.  I don't

11 think -- I don't think Mr. Bowen's correct that we were ordered

12 to do anything.

13         I find it somewhat curious that Mr. Herschmann is

14 saying that he needs to see the letters.  If Your Honor may

15 recall, we, Dalia Genger, isn't allowed to see Mr. Herschmann's

16 prenuptial agreement because he got some sort of extended, very

17 closed-off discovery with respect to that.  So now he wants to

18 see private medical information from a nonmovant third party.

19 So I don't understand that position, but I'll take it even a

20 step further.

21         The parties that didn't seek to take her deposition,

22 right, they want to see a third-party nonmovant's private

23 medical information.  Makes no sense.  To sort of drive this

24 point home, it's not as if the deposition would go forward

25 where my client's medical issues are an issue on Sagi Genger's

1    motion to dismiss, so it's not as if they could start asking

2    questions about her medical issues.

3              This is Sagi Genger's motion to dismiss because of

4    Orly Genger's bad acts, not a motion about my client's medical

5    issues.  So while it's true, if Your Honor were to say she's

6    got to sit for a deposition, then Mr. Gartman and Mr.

7    Herschmann, I suppose they could all ask -- they could all show

8    up and ask questions.  That's true, subject to certain

9    provisions.  That's true.  But it's not as if they need to

10   understand her medical issues when she's a nonmovant to this.

11             We think the record is very full, Your Honor.  And

12   with respect to relevancy, we won't get into that, but

13   obviously Your Honor has that in front of him.  So this was a

14   request by the Court to fill out the record.  I think we've

15   done that.

16             THE COURT:  Look, Dalia Genger is central to what's

17   gone on in this case, just as Orly and Sagi are.  And yes, if

18   it's a third-party subpoena, and early on I said I would look

19   at -- when this issue first came up, that I would consider the

20   matter in camera.  I don't feel comfortable ruling on these

21   matters without all of the parties to the litigation getting

22   access to those letters, subject to the confidentiality

23   agreement that has been that has been entered into among the

24   parties to this litigation.  And yes, I asked you whether --

25             MR. LABOV:  Judge, and they --

1            THE COURT:  Excuse me.  Excuse me.

2            MR. LABOV:  Sorry.  Sorry.

3            THE COURT:  That's all right.  That's okay.  And I

4    asked you whether Ms. Genger, Dalia Genger was comfortable with

5    that in order to give you the opportunity to do what you've

6    done.  To consult with her and to come back, and you've made

7    the motion.  And I am most respectfully denying it.

8            And what I am saying is I think that those -- that

9    those reports should be available to the parties to this

10   litigation, again, subject to the confidentiality agreement.

11   Whatever was the determinations were made with respect to Mr.

12   Herschmann's prenuptial agreement, they were made.  I didn't

13   make them.  And they are what they are.  And most respectfully,

14   I don't really see how one has anything to do with the other,

15   so that's what I'm directing you do, and that that should be

16   done.

17           Now, as to the deposition, Mr. Labov, did you

18   understand that?

19           MR. LABOV:  I understand, Your Honor.  You'd like me

20   to make them available, and I will per Your Honor's direction.

21           THE COURT:  Thank you.

22           MR. LABOV:  Subject to the confidentiality order.

23           THE COURT:  Yes.  Yes, of course.

24           Okay, now as to the deposition, and I can make this

25   ruling -- I'm comfortable in making this ruling, not -- knowing

1   that there are folks in here who have not seen the letters.

2   All right?  I am not going to direct that Dalia Genger sit for

3   a deposition, and I'm not going to do so because I am concerned

4   that, based upon the reports from her doctor, that it could

5   adversely impact her health and her wellbeing.  You'll all see

6   the letters.  I'm not going to -- most respectfully, I'm not

7   going to discuss it further.  That's my determination as it

8   relates to those -- to that matter.  All right?

9           MR. LABOV:  Thank you, Your Honor.  I will make --

10  this is Paul Labov.  I will make the letters available in very

11  short order, this evening for sure.  And I suppose it's subject

12  to the confidentiality order, so there's not much more that

13  needs to be said about that -- just very sensitive stuff, as

14  you know.

15          THE COURT:  Yes.

16          MR. LABOV:  And if it's -- if it's okay, Your Honor, I

17  have a prior appointment.  May I be excused, or is there

18  something else relating to Dalia that needs to be discussed?

19          THE COURT:  Well, is it -- just one second.

20          Does anyone wish to be heard before Mr. -- I have no

21  problem with you being excused.  Let me just see if anyone

22  wants to be heard before Mr. Labov --

23          MR. HERSCHMANN:  Your Honor -- it's Eric Herschmann,

24  Your Honor.  If I could be heard?

25          THE COURT:  Yes.  Yeah.

1      MR. HERSCHMANN:  All right, so Your Honor, I haven't

2  seen the letters, so I don't know what they say.

3      THE COURT:  Okay.

4      MR. HERSCHMANN:  But I would at least like to have a

5  chance to review the letters and see if there's something that

6  we could put forth to the Court, at least address it.  I mean,

7  it's just impossible for me in a blind, to sit here.  I

8  understand Your Honor's ruling, but at the very least, I'd like

9  to see what the letters say.  And to have their -- just reserve

10  the right to potentially come back to the Court and raise

11  issues that Your Honor may or may not have considered, because

12  at least some of us are completely in the dark.  So I just

13  respectfully ask for that opportunity.

14      THE COURT:  All right, sure.  But as I told you -- and

15  Mr. Bowen, I see you have your hand up.

16      MR. BOWEN:  Yes, Your Honor.

17      THE COURT:  Yes, did you want to say something to add

18  to what Mr. Herschmann said or what?

19      MR. BOWEN:  Yes, Your Honor.  It's Mike Bowen.  It's

20  sort of -- I'm not exactly sure what Mr. Herschmann was asking

21  for, but in my view, the content of the letters is relevant to

22  some of the issues that will be addressed at the hearing for

23  the motion to dismiss.  And if those are under seal, and Ms.

24  Genger, Dalia Genger is not going to give a deposition or give

25  any testimony at all, I have two questions.

1        One is are we going to have the option to at least see

2    if she's available to testify at the time of the hearing?  And

3    then the second question is I would need an opportunity to ask

4    the Court to unseal the letters for purposes of the hearing, or

5    I guess have some kind of mechanism in place to have a closed

6    session where we can refer to the letters as part of the

7    hearing.  And I think Mr. Labov should be present when we're

8    discussing that.  So whether that's addressed today or some

9    other date, I just wanted to state those two ideas.

10        THE COURT:  All right.  Well, and that's fine.  I

11    don't think there's any reason why we couldn't address those

12    issues, if it becomes relevant, at a later date, as to the

13    content of the letters if they are, in fact -- if it is, in

14    fact, relevant to the matters before the Court in the motion to

15    dismiss or the motion to sell.  And I am very confident that

16    we'd be able to work through something.  Given the fact that

17    the hearing would be over the phone or via Zoom, we shouldn't

18    have any problem being able to do that.

19        But as to going back and re-examining it, Mr.

20    Herschmann, I don't need that, most respectfully.  And I

21    understand you're in the dark, but my determination is final.

22        MR. HERSCHMANN:  Your Honor.

23        THE COURT:  Yes, Mr. Herschmann.

24        MR. HERSCHMANN:  Your Honor, it's Eric Herschmann, and

25    I understand that.  I just -- I just respectfully, even though

1    Your Honor's made a determination, but there's nothing in the

2    record from us to even anticipate how this could be addressed.

3    So I understand how Your Honor's made a ruling, but I would

4    like if necessary or I believe it's appropriate to supplement

5    the record, obviously keeping the confidentiality.

6           THE COURT:  Sure, that's fine.

7           MR. HERSCHMANN:  That's all I ask for.

8           THE COURT:  That's fine.

9           MR. HERSCHMANN:  Okay, thank you, Your Honor.

10          THE COURT:  Thank you.

11          Mr. Cavaliere, something before Mr. Labov exits?

12          MR. CAVALIERE:  Yes, Your Honor.  I respect the

13   Court's decision, obviously, and I was -- I just raised my hand

14   to ask if it's possible for -- and I'd have to even consult

15   with I think some of the other moving parties, the other

16   parties here, Mr. Bowen and Mr. Kurland and possibly others as

17   to whether this would be an adequate substitute.

18          But in light of Your Honor's decision because of the

19   health concerns that you have for Ms. Genger and not sitting

20   for a deposition, whether in person or by video, as to whether

21   as an alternative, which I don't think is as good as a

22   deposition, but to the extent that we could perhaps, if it's a

23   good idea, to send some written deposition questions or

24   admissions.  It'd be something that I'd like to give some more

25   thought to, but as an alternative, which would not impose --

1    hopefully would not impose any burden on Ms. Genger and her

2    health, because she'd be able to provide those answers at her

3    own convenience with the assistance of counsel.  Again, not as

4    good as a deposition, but perhaps something -- I just wanted to

5    raise it with the Court if it's something that we could

6    potentially consider doing and serving in a relatively short

7    order upon Mr. Labov, if it's something that collectively we

8    think makes sense to do.

9           THE COURT:  That's fine.  Why don't you take it up

10   among the counsel, and if you think you want to do something

11   like that, reach out to Mr. Labov and work it out.  And if you

12   can't work it out, come back to me.

13          MR. CAVALIERE:  Thank you, Your Honor.

14          THE COURT:  Mr. Labov, you don't have any problem with

15   that?

16          MR. LABOV:  Your Honor, I have no problem with anybody

17   coming back (audio interference), sorry, making the suggestion.

18   But Your Honor obviously read the submissions with respect to

19   relevancy and with respect to the medical issues on what all of

20   this is creating.  And so, of course -- of course, if Mr.

21   Cavaliere comes back and we can agree to some reasonable

22   agreement, then I obviously will take that back to the client,

23   of course.

24          THE COURT:  Look, I think she has an ability -- not an

25   ability -- that now I've determined, given her medical state,

1   she's not able, I'm not going to ask her or direct that she be

2   deposed.

3          MR. LABOV:  Right.

4          THE COURT:  But that's not based on relevancy, and I

5   am -- and I understand, based upon what we had talked about as

6   it related to the trust and other matters that Mr. Bowen had

7   articulated at the last hearing or the hearing before, I could

8   see that there might be some relevant information that Ms.

9   Genger might have.  I'm not going to subject her to that

10  because of her medical condition.  So --

11         MR. LABOV:  Understood, yeah.  So --

12         THE COURT:  Okay.

13         MR. LABOV:  -- we'll take -- we'll take anything that

14  Mr. Cavaliere says.  I'm happy to create an audience for it.

15         THE COURT:  That's fine.  Thank you very much.

16         Okay, the other matter that we have on the -- on our

17  calendar is the letter, with respect to the letter that Mr.

18  Dellaportas filed and served, I guess, over ECF.  It's document

19  number 408.  Mr. Dellaportas, are you there?

20         MR. DELLAPORTAS:  Yes, Your Honor.

21         THE COURT:  All right, and now, Mr. Herschmann, you've

22  seen the letter?

23         MR. HERSCHMANN:  Your Honor, I have seen the letter.

24  And if Your Honor wants -- I'm sorry, it's Eric Herschmann.  I

25  could address the letter.

1          THE COURT:  Well, I'm going to ask Mr. Dellaportas to

2    address it first, and then ask you to do it.  Thank you.

3          MR. HERSCHMANN:  Okay, Your Honor.  Thank you.

4          THE COURT:  Unless you've worked it out.

5          MR. HERSCHMANN:  No, Your Honor, we haven't worked --

6          THE COURT:  Okay.  All right, Mr. Dellaportas.

7          MR. DELLAPORTAS:  So Your Honor, what we had initially

8    requested, we subpoenaed or document requested early in the

9    case a copy of the trust agreement.  We received it.  It had

10   redacted out the name of the trustee.  And at the --

11         THE COURT:  And Mr. Dellaportas -- Mr. Della -- I'm

12   sorry, Mr. Dellaportas, I apologize for interrupting you.  Is

13   that the only information that was blacked out?

14         MR. DELLAPORTAS:  There may have been some other

15   information on that -- on that, but there's nothing else I

16   think that was of significance to us.  I would have -- I'm

17   sorry, Your Honor.  I'd have to go back and check.  But

18   definitely, it was -- it was largely unredacted.

19         THE COURT:  Okay.

20         MR. DELLAPORTAS:  Other than the -- other than the

21   name of the trustee.  And so we had asked for an unredacted

22   copy.  Our proposed order had it that would tell us who the

23   trustee was when the significant events, the dealings with the

24   estate happened.  And we did ask Mr. McManus (ph.), who was put

25   in place by that trustee, and he indicated he knew who the

1    trustee was.  And when we gave the name of this person, which I

2    won't mention because it's confidential, he said he had never

3    heard that name before.

4           So now we're told admittedly, it feels about nine

5    months later, that that person is the trustee.  And we just

6    would like to know what happens, there's a number of

7    possibilities, but we believe that the most -- the most

8    straightforward way to figure out what's going on is to just

9    have the trust agreement with the -- with the name unredacted,

10   which will tell us who was the trustee as of the time of the

11   events in question.  And then obviously, if there's been some

12   change in the trustee, that's something that may be very

13   relevant to us.  We just -- we don't know, and I don't want to

14   speculate.

15          THE COURT:  All right, Mr. Herschmann.

16          MR. HERSCHMANN:  Thank you, Your Honor.  Your Honor,

17   I've gone back and looked at several things.  Your Honor

18   ordered me to do something, and I did it, no questions asked.

19   On March 5th and on April 2nd, Mr. Dellaportas wanted the

20   identity of the trustee.

21          His representations to you about what Bill McManus

22   testified to are not accurate.  Mr. McManus never testified he

23   knew the identity of the trustee.  I'm not going to get into

24   how Mr. Dellaportas asked questions, but I made a suggestion to

25   him that whether I was the trustee, or the debtor was or any

1   other creditor.  And Mr. Dellaportas's statement was I am not

2   going to play twenty questions with a witness.

3         He asked it.  There's only been one trustee.  It's

4   never been anyone else.  He didn't ask the questions

5   appropriately, and had he done so, he may have gotten answers.

6         But Your Honor, I think what's more troubling to me,

7   and it's just become a pattern, and I'm not certain how to stop

8   it any longer, it's the constant letter writing to the Court.

9   It's quasi representing what's happened or what has not

10  happened on behalf of the trustee.  And Your Honor, it's

11  just -- I don't even know any longer where to go with it,

12  because it literally sounds like he's saying I directly

13  violated your order.

14        And last week, Your Honor, when he put in his

15  seventeen-page letter, the very beginning of that letter was an

16  allegation that dealt with me, in which he said Briar &

17  Cummings (ph.), a prior trustee's counsel from Texas, told one

18  of the Texas lawyers in the creditor group that I directly

19  solicited a meeting with the trustee, we met outside the

20  presence of counsel at an art gallery for a few hours to

21  discuss a possible deal, and that the trustee returned from

22  that meeting with a settlement agreement in principle.

23        During a meet and confer, Mr. Dellaportas accused me

24  in front of Mr. Cavaliere, the prior trustee's counsel, and

25  others, of lying to the trustee in doing this.  Those exact

1   allegations that were just presented to this Court in writing

2   by Mr. Dellaportas as his basis for an allegation, Mr. Cummings

3   has written, "Each of those claims is untrue, as is any

4   assertion that I made them to anyone."

5          And at a certain point, Your Honor, it has to stop.

6   There is no way in the world that Your Honor directed me to do

7   something, and I didn't comply with that order.  I identified

8   for them specifically who the trustee is.  It's been the same

9   trustee from the beginning.

10          Mr. Dellaportas' representation to the testimony is

11  not correct.  He never asked the questions.  He didn't get the

12  enunciation right, he didn't understand what he was doing, and

13  he didn't want to do it.  There's only been one trustee.  I've

14  identified the person.  I gave it to them in writing.  I marked

15  it confidential, and enough of the allegations.  It really has

16  to stop already.  Thank you, Your Honor.

17          THE COURT:  All right.

18          Mr. Dellaportas.

19          MR. DELLAPORTAS:  So Your Honor, yes, I didn't attach

20  the deposition transcript because this has been marked

21  confidential, and I'm trying to limit sealing.  But I not only

22  asked Mr. McManus whether he had heard of this person, I

23  spelled her name out for the witness.  And I'm happy to show

24  that transcript, and Your Honor can decide who's being truthful

25  and who's being untruthful to the Court right now about this

1  deposition.

2           MR. HERSCHMANN:  I'll read it.  Your Honor, I could

3  read the transcript if you want.

4           THE COURT:  No.  No, no, no, no, I'm sorry.  I'm

5  sorry, I apologize.  Please.  I don't want to have any things

6  read to me about this.  This is really -- what I don't

7  understand, Mr. Herschmann, is what the problem is with just

8  producing the document with the name of the trustee unredacted.

9  Why is that a problem?

10           MR. HERSCHMANN:  Your Honor, honestly, I don't know

11  why Mr. Dellaportas didn't call me.  It wouldn't be a problem,

12  except I'm sitting in Texas in my apartment, and I didn't have

13  the ability of taking the document -- I don't have the document

14  with me at the moment, and unredact it.  So I did it in the way

15  that I thought would be the simplest.  I never dreamed that Mr.

16  Dellaportas would actually question my representation as an

17  officer of the court at your direction as to who's the trustee.

18  If he wants that, it's fine.  It's just at a certain point the

19  constant allegations that everything is a scam, and everything

20  is a lie just has to stop.

21           THE COURT:  All right --

22           MR. HERSCHMANN:  Because it can't continue on a

23  regular basis.  I've never seen anything like it.

24           THE COURT:  All right, so --

25           MR. HERSCHMANN:  He thinks I made up who the trustee

1  or I changed it, it's crazy.

2          THE COURT:  All right, Mr. Herschmann, what I'm going

3  to ask you to do then, most respectfully, is if you can maybe

4  work -- I don't know if you're able to work with somebody else

5  who can get access to the documents in a Word form and unredact

6  it, however you want to do that.  Just please provide that to

7  Mr. Dellaportas.  It'd be the document that you already

8  produced with one change, and the one change would be to

9  unredact the name of the trustee.

10          MR. HERSCHMANN:  Okay, Your Honor.

11          THE COURT:  If there are other -- if there are other

12  things that were redacted, we're not talking about any of that.

13  We're only talking about the name of the trustee.  All right?

14          Mr. Dellaportas, you understand that?

15          MR. DELLAPORTAS:  Yes, that's perfectly acceptable,

16  Your Honor.

17          THE COURT:  Fine, then that's what we'll do.

18          So Mr. Herschmann, thank you very much.

19          MR. HERSCHMANN:  Thank you, Your Honor.

20          THE COURT:  All right, so I think that then covers all

21  of the matters that we had on the calendar for today.  We

22  are -- so we're done.  Thank you all very much.

23          Oh wait, Mr. Kurland, I'm sorry.  I see you have your

24  hand up.

25          MR. KURLAND:  Yes, Your Honor.  Thank you, just very

1   briefly.  Andrew Kurland once again, for the record.  Your

2   Honor, last time we were together, we discussed the Rule 9011

3   motion.  And I just wanted to clarify something for the record.

4   I didn't have the motion that we had served with respect to the

5   pro bono issues that we had discussed last time in front of me,

6   and I apologize for that.

7            I have had a chance to review that motion from six

8   months or so ago.  And it is narrower than I remembered it, and

9   I represented -- Mr. Dellaportas represented it as being quite

10  broad.  And that's why he filed a lengthy seventeen-page letter

11  the other day.  And fully recognizing your court -- Your Honor,

12  rather, already addressed this issue and determined that you

13  would not be addressing the Rule 9011 motion that we'd like to

14  bring before the motion to dismiss, I just wanted to say that

15  we do intend to serve -- file and serve the same exact one,

16  because it is far narrower than I had remembered, and as Mr.

17  Dellaportas represented it to be.  Recognizing, however, that

18  the Court will not have a chance to address it until after the

19  motion to dismiss is handled.

20            THE COURT:  All right.  Thank you.

21            MR. KURLAND:  Thank you very much.

22            THE COURT:  Very good.  All right, Mr. Cavaliere.

23            MR. CAVALIERE:  Your Honor, Rocco Cavaliere for the

24  record.  I was just curious, Your Honor, if you had a sense of

25  timing on the decision on the constructive trust action I think

1    you had mentioned last week.  You certainly didn't commit to a

2    decision this week, nor do you have to.  But I was curious

3    whether there's another date in mind where you think we might

4    see that decision.

5           THE COURT:  Mr. Cavaliere, I'm working on it.  I hope

6    to get it done shortly.  But there are other things going on,

7    and trust me, there's no one who wants to get it done more than

8    I do.  None, even understanding how anxious all of you are.  No

9    one wants to get it done more than me.

10          MR. CAVALIERE:  Understood, Your Honor.

11          THE COURT:  So that's fine.

12          Mr. Pitta.

13          MR. PITTA:  Yes, Your Honor, just briefly.  I believe

14   that the parties have all consulted, and we have dates that are

15   available for us for the hearings on the motion to dismiss and

16   the trustee's financing and sale motion.  Would you like us to

17   address that with Ms. Rodriguez and get the order

18   (indiscernible) in?

19          THE COURT:  Yes, please.  Yeah, that would be fine, if

20   you'd just do that with her, we'll take care of it.

21          MR. PITTA:  We will, Your Honor.  And to the extent

22   the parties have motions in limine or anything along those

23   lines with respect to that, should we include dates --

24          THE COURT:  Yes.  Yes.

25          MR. PITTA:  -- for filing those in the scheduling

1 order?

2              THE COURT:  Please.

3              MR. PITTA:  Okay, will do.

4              THE COURT:  Yes, thank you very much.  Yeah, thank

5 you.

6              MR. PITTA:  Thank you, Your Honor.

7              THE COURT:  All right, Mr. Cavaliere, you still have

8 your hand up or is --

9              MR. CAVALIERE:  Yeah, no, I'm sorry.  I meant to take

10 it down.  I do -- I do just want to apologize, again, as I

11 said, I'm not trying to put pressure on you for that decision.

12             THE COURT:  No, no, Mr. Cavaliere, Mr. Cavaliere,

13 there's no need to apologize.

14             MR. CAVALIERE:  Okay, thank you.  Thank you.

15             THE COURT:  It's not a problem.

16             Thank you all very much.  All right.

17             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

18             THE COURT:  Is there something else, Mr. Cavaliere?

19             MR. CAVALIERE:  No.

20             THE COURT:  All right, good.  Thanks a lot.

21             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

22             THE COURT:  Bye-bye.

23          (Whereupon these proceedings were concluded at 5:45 PM)

24

25

1

2                                    I N D E X

3    RULINGS:                                      PAGE    LINE

4    Dalia Genger motion to file under seal         16      18

5    is denied.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Tamara Bentzur, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   Tamara Bentzur (CET-824)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   352 Seventh Ave., Suite #604

15   New York, NY 10001

16

17   Date:  April 21, 2021

18

19

20

21

22

23

24

25

## A

**ability (3)**
20:24,25;26:13
**able (5)**
18:16,18;20:2;
21:1;27:4
**acceptable (1)**
27:15
**accepted (1)**
10:8
**access (7)**
7:11;10:18;11:1,
22,24;14:22;27:5
**accurate (1)**
23:22
**accused (1)**
24:23
**action (1)**
28:25
**acts (1)**
14:4
**actually (1)**
26:16
**ADAM (1)**
5:19
**ADBG (1)**
10:16
**add (2)**
10:6;17:17
**address (7)**
7:5;17:6;18:11;
21:25;22:2;28:18;
29:17
**addressed (7)**
9:25;10:12;11:13;
17:22;18:8;19:2;
28:12
**addressing (1)**
28:13
**adequate (1)**
19:17
**admissions (1)**
19:24
**admittedly (1)**
23:4
**adversely (1)**
16:5
**afternoon (2)**
7:2,4
**again (4)**
15:10;20:3;28:1;
30:10
**ago (1)**
28:8
**agree (2)**
12:6;20:21
**agreed (1)**
8:1
**agreement (8)**
13:16;14:23;
15:10,12;20:22;

**22:9;23:9;24:22**
**ahead (1)**
8:17
**allegation (2)**
24:16;25:2
**allegations (3)**
25:1,15;26:19
**allowed (1)**
13:15
**along (1)**
29:22
**alternative (2)**
19:21,25
**although (2)**
7:17,20
**among (2)**
14:23;20:10
**ANDREW (3)**
6:7;9:13;28:1
**annexed (1)**
7:11
**anticipate (1)**
19:2
**anxious (1)**
29:8
**apartment (1)**
26:12
**apologize (5)**
22:12;26:5;28:6;
30:10,13
**appointment (1)**
16:17
**appropriate (3)**
9:1;11:24;19:4
**appropriately (1)**
24:5
**April (1)**
23:19
**arguing (1)**
9:3
**Arie (1)**
4:13
**art (1)**
24:20
**articulated (1)**
21:7
**assertion (1)**
25:4
**assistance (1)**
20:3
**attach (1)**
25:19
**attend (1)**
11:4
**Attorneys (6)**
4:3,13,21;5:3,13;
6:3
**attorney's-eyes-only (1)**
10:4
**audience (1)**
21:14
**audio (1)**
20:17

**authorizing (1)**
7:7
**available (5)**
15:9,20;16:10;
18:2;29:15
**Avenue (1)**
5:4

## B

**back (9)**
15:6;17:10;18:19;
20:12,17,21,22;
22:17;23:17
**bad (1)**
14:4
**based (3)**
16:4;21:4,5
**basis (3)**
10:4;25:2;26:23
**become (1)**
24:7
**becomes (1)**
18:12
**beginning (2)**
24:15;25:9
**behalf (3)**
7:15;10:16;24:10
**BENSON (3)**
6:2,3;9:14
**Bill (1)**
23:21
**blacked (1)**
22:13
**blind (1)**
17:7
**bono (1)**
28:5
**BORRIELLO (1)**
4:17
**Bowen (14)**
7:17,18;8:1,24;
9:23,24,25;10:20;
17:15,16,19,19;
19:16;21:6
**Bowen's (1)**
13:11
**Briar (1)**
24:16
**briefly (3)**
9:24;28:1;29:13
**bring (1)**
28:14
**Broad (2)**
5:15;28:10
**Broadway (3)**
4:4,22;6:4
**burden (1)**
20:1
**button (1)**
13:1
**Bye-bye (1)**
30:22

## C

**calendar (3)**
7:4;21:17;27:21
**call (2)**
11:16;26:11
**called (1)**
12:24
**came (1)**
14:19
**camera (1)**
14:20
**can (10)**
8:14;9:8;12:19,21;
15:24;18:6;20:21;
25:24;27:3,5
**capable (1)**
9:5
**care (1)**
29:20
**case (10)**
7:3;8:3;9:19,21;
11:2,11,21;12:10;
14:17;22:9
**CAVALIERE (26)**
4:25;7:17,25;8:11,
12,14,16,18;19:11,
12;20:13,21;21:14;
24:24;28:22,23,23;
29:5,10;30:7,9,12,
12,14,18,19
**Cavaliere's (1)**
9:14
**central (1)**
14:16
**certain (5)**
7:7;14:8;24:7;
25:5;26:18
**certainly (3)**
9:5;11:20;29:1
**chance (3)**
17:5;28:7,18
**change (3)**
23:12;27:8,8
**changed (1)**
27:1
**Chapter (1)**
4:21
**check (1)**
22:17
**Chris (1)**
10:15
**circumstance (1)**
12:7
**circumstances (1)**
12:16
**claims (1)**
25:3
**clarify (1)**
28:3
**clear (2)**
10:21;13:3

**client (3)**
11:8;13:5;20:22
**client's (2)**
13:25;14:4
**closed (1)**
18:5
**closed-off (1)**
13:17
**COHEN (1)**
5:12
**collectively (1)**
20:7
**comfortable (4)**
13:5;14:20;15:4,
25
**coming (1)**
20:17
**comments (1)**
9:15
**commit (1)**
29:1
**communicated (1)**
8:19
**complete (1)**
7:23
**completely (1)**
17:12
**comply (1)**
25:7
**compromise (1)**
13:9
**concerned (1)**
16:3
**concerns (1)**
19:19
**concluded (1)**
30:23
**condition (1)**
21:10
**conditions (1)**
10:6
**confer (1)**
24:23
**confident (1)**
18:15
**confidential (4)**
8:2;23:2;25:15,21
**confidentiality (11)**
7:8;8:2,22,25;9:21;
10:4;11:25;14:22;
15:10,22;16:12;19:5
**confidential-type (1)**
9:20
**confirm (1)**
8:14
**consider (2)**
14:19;20:6
**considered (1)**
17:11
**constant (2)**
24:8;26:19
**constructive (1)**
28:25

ORLY GENGER
Main Case No. 19-13895-jlg

April 14, 2021

consult (2)
15:6;19:14
consulted (1)
29:14
content (3)
11:15;17:21;18:13
continue (1)
26:22
convenience (1)
20:3
copy (4)
8:4,23;22:9,22
counsel (7)
8:3;12:7;20:3,10;
24:17,20,24
couple (1)
7:4
course (4)
15:23;20:20,23
COURT (82)
7:2;8:5,7,10,13,15,
17;9:1,9,22;10:1,13;
12:3,17,21,24;13:2,
4,4;14:14,16;15:1,3,
21,23;16:15,19,25;
17:3,6,10,14,17;
18:4,10,14,23;19:6,
8,10;20:5,9,14,24;
21:4,12,15,21;22:1,
4,6,11,19;23:15;
24:8;25:1,17,25;
26:4,17,21,24;27:2,
11,17,20;28:11,18,
20,22;29:5,11,19,24;
30:2,4,7,12,15,18,20,
22
Court's (4)
8:1,21;9:18;19:13
covers (1)
27:20
COVID (1)
12:12
crazy (1)
27:1
create (1)
21:14
created (1)
7:24
creates (1)
11:11
creating (1)
20:20
creditor (2)
24:1,18
critical (1)
11:20
Cummings (2)
24:17;25:2
curious (3)
13:13;28:24;29:2
current (1)
10:7
cut (1)

8:7

**D**

Dalia (11)
5:3;7:7,13,15;
11:19;13:15;14:16;
15:4;16:2,18;17:24
dark (2)
17:12;18:21
date (3)
18:9,12;29:3
dates (2)
29:14,23
day (1)
28:11
deal (2)
11:25;24:21
dealings (1)
22:23
dealt (2)
12:12;24:16
Deborah (1)
4:21
debtor (2)
7:18;23:25
decide (1)
25:24
decision (7)
8:1;19:13,18;
28:25;29:2,4;30:11
definitely (1)
22:18
Della (1)
22:11
DELLAPORTAS (24)
4:9;21:18,19,20;
22:1,6,7,11,12,14,20;
23:19,24;24:23;25:2,
18,19;26:11,16;27:7,
14,15;28:9,17
Dellaportas' (1)
25:10
Dellaportas's (1)
24:1
demonstrate (1)
9:1
denying (1)
15:7
depose (1)
7:13
deposed (2)
11:14;21:2
deposition (19)
7:21;11:3,4,5,19;
12:9;13:21,24;14:6;
15:17,24;16:3;
17:24;19:20,22,23;
20:4;25:20;26:1
determination (3)
16:7;18:21;19:1
determinations (1)
15:11

determined (2)
20:25;28:12
difficulties (1)
11:12
direct (2)
16:2;21:1
directed (1)
25:6
directing (1)
15:15
direction (2)
15:20;26:17
directly (4)
10:11,21;24:12,18
disagreed (1)
13:10
discovery (2)
11:23;13:17
discuss (2)
16:7;24:21
discussed (4)
8:18;16:18;28:2,5
discussing (1)
18:8
discussion (2)
7:22;13:6
dismiss (8)
10:12;14:1,3;
17:23;18:15;28:14,
19;29:15
doctor (1)
16:4
doctors' (2)
7:11;10:18
document (9)
7:6;9:20;11:6;
21:18;22:8;26:8,13,
13;27:7
documents (2)
7:7;27:5
done (8)
14:15;15:6,16;
24:5;27:22;29:6,7,9
down (1)
30:10
dreamed (1)
26:15
drive (1)
13:23
DROGIN (1)
4:20
During (1)
24:23

**E**

early (2)
14:18;22:8
ECF (1)
21:18
echo (2)
9:14;12:6
effort (1)

10:6
else (9)
8:8;9:17;11:8;
12:20;16:18;22:15;
24:4;27:4;30:18
email (2)
9:16,18
EMMET (1)
4:2
enough (1)
25:15
ensure (1)
7:23
ensuring (1)
13:7
entered (1)
14:23
entitled (4)
7:10;9:19;12:11,
14
enunciation (1)
25:12
equal (1)
11:24
Eric (4)
12:5;16:23;18:24;
21:24
ESQ (8)
4:8,9,17,25;5:8,19,
20;6:7
estate (1)
22:24
even (6)
13:19;18:25;19:2,
14;24:11;29:8
evening (3)
7:14;8:12;16:11
events (2)
22:23;23:11
everybody (1)
10:10
everyone (1)
10:5
exact (2)
24:25;28:15
exactly (1)
17:20
except (1)
26:12
Excuse (2)
15:1,1
excused (2)
16:17,21
exits (1)
19:11
expressed (2)
8:20;10:18
extended (1)
13:16
extent (5)
9:4,7;11:4;19:22;
29:21
eyes (1)

9:16

**F**

fact (3)
18:13,14,16
far (1)
28:16
feel (4)
10:10;11:20,21;
14:20
feels (1)
23:4
few (3)
9:15;11:2;24:20
fifth (1)
11:9
figure (1)
23:8
file (3)
8:20;10:2;28:15
filed (3)
13:10;21:18;28:10
filing (1)
29:25
fill (2)
7:22;14:14
filling (1)
13:6
final (1)
18:21
financing (1)
29:16
find (1)
13:13
fine (9)
18:10;19:6,8;20:9;
21:15;26:18;27:17;
29:11,19
first (3)
7:5;11:14;14:19;
22:2
Floor (3)
4:5;5:5,16
folks (1)
16:1
form (1)
27:5
forth (1)
17:6
forward (1)
13:24
found (1)
7:6
fourth (1)
11:9
Friday (4)
8:19;10:19,21;
13:3
front (3)
14:13;24:24;28:5
full (2)
13:7;14:11

**fully (1)**
28:11
**further (2)**
13:20;16:7

## G

**gallery (1)**
24:20
**Garrity (1)**
7:3
**Gartman (6)**
9:10;10:14,15,16;
12:6;14:6
**gating (1)**
11:13
**gave (2)**
23:1;25:14
**Genger (20)**
4:3,13;5:3,13,13;
7:3,7,13,15,19;
13:15;14:16;15:4,4;
16:2;17:24,24;
19:19;20:1;21:9
**Genger's (4)**
11:19;13:25;14:3,
4
**Given (2)**
18:16;20:25
**good (8)**
7:2,14;8:12;19:21,
23;20:4;28:22;30:20
**group (1)**
24:18
**guess (2)**
18:5;21:18

## H

**hand (7)**
9:11;12:19,21;
17:15;19:13;27:24;
30:8
**handled (1)**
28:19
**happened (3)**
22:24;24:9,10
**happens (1)**
23:6
**happy (3)**
9:8;21:14;25:23
**health (4)**
13:8;16:5;19:19;
20:2
**hear (2)**
12:19,21
**heard (7)**
9:12,23;16:20,22,
24;23:3;25:22
**hearing (10)**
10:1;11:12;12:1;
17:22;18:2,4,7,17;
21:7,7

**hearings (1)**
29:15
**Herschmann (34)**
12:4,5,6;13:13;
14:7;16:23,23;17:1,
4,18,20;18:20,22,23,
24,24;19:7,9;21:21,
23,24;22:3,5;23:15,
16;26:2,7,10,22,25;
27:2,10,18,19
**Herschmann's (2)**
13:15;15:12
**hit (2)**
12:20;13:1
**home (1)**
13:24
**honestly (1)**
26:10
**Honor (70)**
7:14,25;8:12,14;
9:7,13,24;10:1,15,
17,20;12:1,5,16,19;
13:3,14;14:5,11,13;
15:19;16:9,16,23,24;
17:1,11,16,19;18:22,
24;19:9,12;20:13,16,
18;21:20,23,24;22:3,
5,7,17;23:16,16,17;
24:6,10,14;25:5,6,
16,19,24;26:2,10;
27:10,16,19,25;28:2,
11,23,24;29:10,13,
21;30:6,17,21
**Honor's (6)**
7:22;15:20;17:8;
19:1,3,18
**hope (1)**
29:5
**hopefully (1)**
20:1
**hours (1)**
24:20
**Hubbard (1)**
10:16
**Hughes (1)**
10:16

## I

**idea (1)**
19:23
**ideas (1)**
18:9
**identified (2)**
25:7,14
**identity (2)**
23:20,23
**impact (1)**
16:5
**impose (2)**
19:25;20:1
**impossible (1)**
17:7

**improper (1)**
10:7
**inappropriate (1)**
10:7
**include (1)**
29:23
**incredibly (1)**
13:8
**indicated (2)**
9:3;22:25
**indiscernible (1)**
29:18
**information (6)**
13:8,18,23;21:8;
22:13,15
**initially (1)**
22:7
**instructed (1)**
10:2
**intend (1)**
28:15
**intention (1)**
8:20
**interested (1)**
9:4
**interference (1)**
20:17
**interrupting (1)**
22:12
**into (3)**
14:12,23;23:23
**issue (5)**
11:12;12:12;
13:25;14:19;28:12
**issues (9)**
13:25;14:2,5,10;
17:11,22;18:12;
20:19;28:5
**issue's (1)**
12:13
**item (1)**
11:13

## J

**JARED (1)**
4:17
**JOHN (1)**
4:9
**JONES (2)**
5:2;7:15
**Judge (2)**
7:2;14:25

## K

**KASOWITZ (3)**
6:2,3;9:14
**keep (2)**
8:2;10:14
**keeping (1)**
19:5
**kept (1)**

9:16
**kind (1)**
18:5
**knew (2)**
22:25;23:23
**knock (1)**
11:16
**knowing (1)**
15:25
**KRINSKY (1)**
4:20
**KURLAND (12)**
6:7;7:20;8:1,24;
9:12,13,13;19:16;
27:23,25;28:1,21

## L

**LABOV (35)**
5:8;7:9,14,15;8:6,
8,9,19;9:18;10:2,7,
19;12:18,19,23,25;
13:3;14:25;15:2,17,
19,22;16:9,10,16,22;
18:7;19:11;20:7,11,
14,16;21:3,11,13
**largely (1)**
22:18
**last (9)**
7:22;8:19;10:1;
12:1;21:7;24:14;
28:2,5;29:1
**later (2)**
18:12;23:5
**lawyers (1)**
24:18
**least (7)**
12:14,15;17:4,6,8,
12;18:1
**leave (1)**
7:13
**lengthy (1)**
28:10
**letter (11)**
8:18;10:8;21:17,
17,22,23,23,25;24:8,15,
15;28:10
**letters (24)**
8:4;9:5,15;10:2,2,
3,9,11;11:1,15;
12:11;13:6,14;
14:22;16:1,6,10;
17:2,5,9,21;18:4,6,
13
**lie (1)**
26:20
**light (1)**
19:18
**limine (1)**
29:22
**limit (2)**
8:23;25:21
**limitations (1)**

10:23
**lines (1)**
29:23
**literally (1)**
24:12
**litigation (3)**
14:21,24;15:10
**LLC (1)**
10:16
**LLP (6)**
4:2,12,20;5:12;
6:2,3
**longer (1)**
24:8,11
**Look (3)**
14:16,18;20:24
**looked (1)**
23:17
**lot (1)**
30:20
**lying (1)**
24:25

## M

**Makes (2)**
13:23;20:8
**making (2)**
15:25;20:17
**March (1)**
23:19
**marked (2)**
25:14,20
**MARTIN (1)**
4:2
**MARVIN (1)**
4:2
**matter (4)**
13:7;14:20;16:8;
21:16
**matters (5)**
7:4;14:21;18:14;
21:6;27:21
**MAX (1)**
5:20
**may (7)**
13:14;16:17;
17:11,11;22:14;
23:12;24:5
**maybe (1)**
27:3
**McManus (4)**
22:24;23:21,22;
25:22
**mean (2)**
8:7;17:6
**meant (1)**
30:9
**mechanism (1)**
18:5
**medical (9)**
13:18,23,25;14:2,
4,10;20:19,25;21:10

**meet (1)**
24:23
**meeting (2)**
24:19,22
**mention (1)**
23:2
**mentioned (1)**
29:1
**met (1)**
24:19
**might (3)**
21:8,9;29:3
**Mike (2)**
9:24;17:19
**mind (1)**
29:3
**moment (3)**
9:10,11;26:14
**Monday (1)**
8:4
**months (2)**
23:5;28:8
**more (6)**
10:10;16:12;
19:24;24:6;29:7,9
**most (8)**
11:20;15:7,13;
16:6;18:20;23:7,7;
27:3
**motion (19)**
8:20;9:7;10:12;
13:10;14:1,3,4;15:7;
17:23;18:14,15;28:3,
4,7,13,14,19;29:15,
16
**motions (1)**
29:22
**moving (1)**
19:15
**much (8)**
12:3;16:12;21:15;
27:18,22;28:21;30:4,
16
**myself (1)**
8:24

**N**

**name (9)**
22:10,21;23:1,3,9;
25:23;26:8;27:9,13
**narrower (2)**
28:8,16
**necessary (1)**
19:4
**need (5)**
10:12;14:9;18:3,
20;30:13
**needs (3)**
13:14;16:13,18
**New (6)**
4:6,15,23;5:6,17;
6:5

**nine (1)**
23:4
**None (1)**
29:8
**nonmovant (2)**
13:18;14:10
**nonmovant's (1)**
13:22
**nor (1)**
29:2
**notes (1)**
10:18
**notice (1)**
7:21
**notices (1)**
11:3
**number (3)**
7:3;21:19;23:6
**NY (6)**
4:6,15,23;5:6,17;
6:5

**O**

**objection (1)**
10:18
**obviously (8)**
9:19;11:24;14:13;
19:5,13;20:18,22;
23:11
**off (2)**
8:7;11:16
**officer (1)**
26:17
**once (2)**
12:8;28:1
**One (16)**
4:14;7:16;9:10,11;
10:17;15:14;16:19;
18:1;24:3,17;25:13;
27:8,8;28:15;29:7,9
**only (9)**
7:10;8:23;9:16;
10:10;22:13;24:3;
25:13,21;27:13
**operated (1)**
12:10
**opportunity (4)**
11:4;15:5;17:13;
18:3
**option (1)**
18:1
**order (20)**
7:6,8,22;8:22;9:1,
21;10:4;11:25;13:4,
7;15:5,22;16:11,12;
20:7;22:22;24:13;
25:7;29:17;30:1
**ordered (2)**
13:11;23:18
**Orly (5)**
5:13,13;7:3;14:4,
17

**others (2)**
19:16;24:25
**Otherwise (1)**
9:8
**out (12)**
7:22;11:10;13:6;
14:14;20:11,11,12;
22:4,10,13;23:8;
25:23
**outside (1)**
24:19
**over (2)**
18:17;21:18
**overall (1)**
12:15
**own (2)**
9:6;20:3

**P**

**PACHULSKI (2)**
5:2;7:15
**paragraph (1)**
8:25
**part (1)**
18:6
**particularly (1)**
11:18
**parties (24)**
7:10,12,17,17,23,
24;8:22;9:4;10:17,
22,25;11:2,3,11,18,
23;13:21;14:21,24;
15:9;19:15,16;29:14,
22
**party (3)**
8:3;9:19;13:18
**past (2)**
8:4;10:1
**pattern (1)**
24:7
**PAUL (3)**
5:8;7:14;16:10
**pending (1)**
8:1
**Penn (1)**
4:14
**people (2)**
11:16;13:9
**per (1)**
15:20
**perfectly (1)**
27:15
**perhaps (2)**
19:22;20:4
**period (1)**
11:17
**person (5)**
19:20;23:1,5;
25:14,22
**personally (1)**
9:15
**ph (2)**

22:24;24:17
**phone (1)**
18:17
**Piazza (1)**
4:21
**PITTA (7)**
4:8;29:12,13,21,
25;30:3,6
**place (3)**
11:14;18:5;22:25
**placed (1)**
10:24
**play (1)**
24:2
**Plaza (1)**
4:14
**please (5)**
8:17;26:5;27:6;
29:19;30:2
**PM (1)**
30:23
**point (3)**
13:24;25:5;26:18
**POLLOCK (2)**
5:12,19
**position (4)**
9:3,25;10:8;13:19
**positions (1)**
11:19
**possibilities (1)**
23:7
**possible (2)**
19:14;24:21
**possibly (1)**
19:16
**potentially (2)**
17:10;20:6
**prenuptial (2)**
13:16;15:12
**presence (1)**
24:20
**present (1)**
18:7
**presentation (1)**
8:25
**presented (1)**
25:1
**pressure (1)**
30:11
**presume (1)**
12:12
**pretty (1)**
13:4
**previously (1)**
12:12
**principle (1)**
24:22
**prior (4)**
12:6;16:17;24:17,
24
**private (3)**
13:8,18,22
**pro (1)**

28:5
**probably (1)**
11:20
**problem (10)**
10:15;13:2;16:21;
18:18;20:14,16;26:7,
9,11;30:15
**proceeded (1)**
11:1
**proceeding (1)**
10:5
**proceedings (1)**
30:23
**produced (1)**
27:8
**producing (1)**
26:8
**productions (1)**
11:6
**proposed (2)**
11:22;22:22
**protect (1)**
13:8
**protections (1)**
11:25
**protective (1)**
7:8
**provide (3)**
10:3;20:2;27:6
**provided (1)**
10:17
**provisions (2)**
10:3;14:9
**purposes (1)**
18:4
**pursuant (1)**
7:7;9:20
**put (4)**
17:6;22:24;24:14;
30:11

**Q**

**quasi (1)**
24:9
**quite (1)**
28:9
**quoting (1)**
10:21

**R**

**raise (2)**
17:10;20:5
**raised (3)**
12:20,22;19:13
**rather (1)**
28:12
**reach (1)**
20:11
**read (4)**
20:18;26:2,3,6
**really (4)**

ORLY GENGER
Main Case No. 19-13895-jlg

April 14, 2021

9:6;15:14;25:15;
26:6
**reason (2)**
11:22;18:11
**reasonable (1)**
20:21
**reasons (1)**
10:20
**recall (1)**
13:15
**receive (5)**
8:18,22;9:15;
10:25;11:6
**received (2)**
9:16;22:9
**recognized (1)**
12:1
**recognizing (2)**
28:11,17
**record (13)**
7:23,23,24;10:25;
13:7,7;14:11,14;
19:2,5;28:1,3,24
**records (1)**
8:2
**redacted (2)**
22:10;27:12
**re-examining (1)**
18:19
**refer (1)**
18:6
**regarding (1)**
8:19
**regular (1)**
26:23
**related (1)**
21:6
**relates (1)**
16:8
**relating (1)**
16:18
**relatively (1)**
20:6
**relevance (1)**
11:19
**relevancy (3)**
14:12;20:19;21:4
**relevant (7)**
10:11;12:15;
17:21;18:12,14;
21:8;23:13
**remembered (2)**
28:8,16
**reports (3)**
7:11;15:9;16:4
**representation (2)**
25:10;26:16
**representations (1)**
23:21
**represented (3)**
28:9,9,17
**representing (1)**
24:9

**represents (1)**
7:18
**request (3)**
7:5,6;14:14
**requested (3)**
7:13;22:8,8
**reservation (1)**
10:9
**reserve (1)**
17:9
**resolved (1)**
12:13
**respect (9)**
13:17;14:12;
15:11;19:12;20:18,
19;21:17;28:4;29:23
**respectfully (7)**
15:7,13;16:6;
17:13;18:20,25;27:3
**restricted (1)**
11:23
**restriction (1)**
10:24
**returned (1)**
24:21
**review (2)**
17:5;28:7
**reviewed (1)**
10:10
**right (33)**
7:2,13;8:10;9:9,
10,22;10:13;12:17;
13:22;15:3;16:2,8;
17:1,10,14;18:10;
21:3,21;22:6;23:15;
25:12,17,25;26:21,
24;27:2,13,20;28:20,
22;30:7,16,20
**rights (1)**
10:9
**ROCCO (2)**
4:25;28:23
**RODRIGUEZ (2)**
5:20;29:17
**Rule (2)**
28:2,13
**ruling (6)**
9:18;14:20;15:25,
25;17:8;19:3

**S**

**Sagi (4)**
4:3;13:25;14:3,17
**sale (1)**
29:16
**same (4)**
10:19;12:8;25:8;
28:15
**saw (1)**
12:21
**saying (3)**
13:14;15:8;24:12

**scam (1)**
26:19
**scheduling (1)**
29:25
**seal (4)**
7:7;8:20;9:8;17:23
**sealing (1)**
25:21
**second (2)**
16:19;18:3
**seeing (1)**
9:5
**seek (1)**
13:21
**SEGAL (2)**
4:12,12
**sell (1)**
18:15
**send (1)**
19:23
**sense (4)**
11:17;13:23;20:8;
28:24
**sensitive (1)**
16:13
**serve (4)**
7:20;11:9;28:15,
15
**served (5)**
7:18;11:2,7;21:18;
28:4
**serving (1)**
20:6
**session (1)**
18:6
**settlement (1)**
24:22
**seventeen-page (2)**
24:15;28:10
**several (1)**
23:17
**share (1)**
8:2
**shared (1)**
9:17
**sharing (1)**
13:5
**short (3)**
11:17;16:11;20:6
**shortly (1)**
29:6
**show (2)**
14:7;25:23
**significance (1)**
22:16
**significant (1)**
22:23
**simplest (1)**
26:15
**sit (3)**
14:6;16:2;17:7
**sitting (2)**
19:19;26:12

**six (1)**
28:7
**sixth (1)**
11:9
**solicited (1)**
24:19
**somebody (1)**
27:4
**somewhat (1)**
13:13
**sorry (12)**
8:7;10:14;15:2,2;
20:17;21:24;22:12,
17;26:4,5;27:23;
30:9
**sort (3)**
13:16,23;17:20
**sounds (1)**
24:12
**SPEAKER (2)**
30:17,21
**specifically (1)**
25:8
**speculate (1)**
23:14
**spelled (1)**
25:23
**standard (1)**
9:20
**STANG (2)**
5:2;7:15
**start (1)**
14:1
**state (2)**
18:9;20:25
**statement (1)**
24:1
**states (1)**
10:20
**step (1)**
13:20
**still (1)**
30:7
**stop (4)**
24:7;25:5,16;
26:20
**straightforward (1)**
23:8
**Street (1)**
5:15
**strongly (1)**
10:10
**stuff (1)**
16:13
**subject (10)**
8:22,25;9:18;
10:22;14:8,22;15:10,
22;16:11;21:9
**submission (1)**
7:12
**submissions (1)**
20:18
**submitted (1)**

7:9
**subpoena (5)**
7:20;11:7,9;12:8;
14:18
**subpoenaed (2)**
12:9;22:8
**subpoenas (2)**
7:19;11:3
**substitute (1)**
19:17
**suggestion (2)**
20:17;23:24
**supplement (1)**
19:4
**suppose (2)**
14:7;16:11
**sure (7)**
13:1,2,4;16:11;
17:14,20;19:6

**T**

**talked (1)**
21:5
**talking (3)**
11:15;27:12,13
**TARTER (1)**
4:20
**terms (2)**
11:12,13
**testified (2)**
23:22,22
**testify (1)**
18:2
**testimony (2)**
17:25;25:10
**Texas (3)**
24:17,18;26:12
**thanks (2)**
12:25;30:20
**Third (2)**
5:4;13:18
**third-party (3)**
7:19;13:22;14:18
**THOMAS (1)**
4:8
**though (1)**
18:25
**thought (5)**
8:21,23;10:6;
19:25;26:15
**three (3)**
10:3,8;11:10
**timing (1)**
28:25
**today (2)**
18:8;27:21
**together (1)**
28:2
**TOGUT (1)**
4:12
**told (4)**
9:17;17:14;23:4;

ORLY GENGER
Main Case No. 19-13895-jlg                                                    April 14, 2021

24:17
**TOREES (1)**
6:2
**Torres (2)**
6:3;9:14
**transcript (3)**
25:20,24;26:3
**troubling (1)**
24:6
**true (3)**
14:5,8,9
**Trust (7)**
5:13,14;21:6;22:9;
23:9;28:25;29:7
**Trustee (26)**
4:21;7:12;22:10,
21,23,25;23:1,5,10,
12,20,23,25;24:3,10,
19,21,25;25:8,9,13;
26:8,17,25;27:9,13
**trustee's (3)**
24:17,24;29:16
**truthful (1)**
25:24
**trying (2)**
25:21;30:11
**twenty (1)**
24:2
**two (2)**
17:25;18:9

**U**

**under (7)**
9:16;10:3,8,9;
11:25;12:15;17:23
**understood (3)**
7:21;21:11;29:10
**UNIDENTIFIED (2)**
30:17,21
**unless (2)**
12:2;22:4
**unredact (3)**
26:14;27:5,9
**unredacted (4)**
22:18,21;23:9;
26:8
**unseal (1)**
18:4
**untrue (1)**
25:3
**untruthful (1)**
25:25
**up (8)**
9:11;14:8,19;
17:15;20:9;26:25;
27:24;30:8
**update (2)**
7:16,25
**upon (3)**
16:4;20:7;21:5
**use (2)**
10:22,22

**V**

**via (2)**
9:18;18:17
**video (1)**
19:20
**view (3)**
8:20,21;17:21
**violated (1)**
24:13
**vociferously (1)**
9:3

**W**

**wait (1)**
27:23
**waiting (1)**
10:14
**wants (6)**
13:17;16:22;
21:24;26:18;29:7,9
**way (4)**
12:10;23:8;25:6;
26:14
**week (4)**
7:22;24:14;29:1,2
**wellbeing (1)**
16:5
**what's (5)**
12:11;14:16;23:8;
24:6,9
**Whereupon (1)**
30:23
**who's (3)**
25:24,25;26:17
**wish (3)**
9:12,23;16:20
**without (1)**
14:21
**witness (4)**
11:20;12:8;24:2;
25:23
**witnesses (1)**
11:5
**Word (1)**
27:5
**work (5)**
18:16;20:11,12;
27:4,4
**worked (2)**
22:4,5
**working (1)**
29:5
**world (1)**
25:6
**writing (3)**
24:8;25:1,14
**written (2)**
19:23;25:3

**Y**

**York (6)**
4:6,15,23;5:6,17;
6:5

**Z**

**ZIEHL (2)**
5:2;7:15
**Zoom (1)**
18:17

**1**

**10004 (1)**
5:17
**10017 (1)**
5:6
**10018 (1)**
4:23
**10019 (1)**
6:5
**10119 (1)**
4:15
**10271 (1)**
4:6
**11b (1)**
8:25
**120 (1)**
4:4
**1350 (1)**
4:22
**1633 (1)**
6:4
**19-13895 (1)**
7:3
**1993 (1)**
5:13

**2**

**24th (1)**
5:16
**2nd (1)**
23:19

**3**

**32nd (1)**
4:5
**34th (1)**
5:5

**4**

**407 (1)**
7:6
**408 (1)**
21:19

**5**

**5:45 (1)**
30:23
**5th (1)**
23:19

**6**

**60 (1)**
5:15

**7**

**7 (1)**
4:21
**780 (1)**
5:4

**9**

**9011 (2)**
28:2,13

**EXHIBIT E**

**Sheree Nobles**

| | |
|---|---|
| **From:** | plabov@foley.com |
| **Sent:** | Wednesday, June 10, 2020 6:30 PM |
| **To:** | Rocco A. Cavaliere; MBowen@kasowitz.com; ygeron@reitlerlaw.com |
| **Cc:** | DSpelfogel@foley.com |
| **Subject:** | Dalia Genger Discovery |

Rocco, Yann, Michael,

We are in receipt of your various discovery demands on our client, Dalia Genger. In the future, please direct all discovery demands/requests directed at Dalia to Doug Spelfogel and me (with copies on all parties). In respect of the document requests and admissions, we will prepare responses/respond and serve them in a timely manner on those parties requesting same.

In connection with the deposition notices, we first note that you have selected three separate dates and times to take Dalia Genger's deposition. Perhaps you were unaware of each other's requests?   More importantly, however, Dalia's deposition in connection with Sagi Genger's Motion to Dismiss and the Trustee's 9019 motion, serves no valid purpose.

In connection with the Trustee's 9019 Motion, and specifically, the claims sale portion, so long as Dalia Genger maintains all of her rights and defenses in connection with any claims that may eventually be brought, we have no objection to that portion of the motion. In connection with the loan portion of the 9019 Motion, Dalia Genger's objections are legal in nature. Moreover, if Dalia files a joinder or adds to Sagi's objection, the facts she'd rely on are already laid bare in court decisions that are in all of your collective possession.

Finally, please be reminded that Dalia Genger is 74 years old and has health issues which inhibited in-person meetings even prior to the pandemic. As such, and as she can provide no testimony relevant to either motion, her deposition appears to be an unwarranted health risk. Accordingly, we request that her deposition be delayed until such time as her motion for constructive trust is scheduled.   At that time, appropriate health precautions will be taken in light of the information then available.

Should you have any questions or comments, please do not hesitate to contact either Doug or me. Should we not be able to reach a consensual resolution to the above, we will follow the Scheduling Order and seek Court intervention.

Thank you,
Paul

Paul J. Labov

Foley & Lardner LLP
90 Park Avenue
New York, NY 10016-1314
Phone: 212.682.7474
Direct: 212.338.3411
Email: plabov@foley.com

View My Bio
Visit Foley.com



1

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.