UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re:                                                     :
                                                           :        Chapter 7
ORLY GENGER,                                               :
                                                           :        Case No.:  19-13895 (JLG)
                            Debtor.                        :
                                                           :
------------------------------------------------------------- x

### SUPPLEMENTAL DECLARATION OF ROCCO A. CAVALIERE IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) APPROVING SETTLEMENT AGREEMENT AND (B) GRANTING RELATED RELIEF

I, Rocco A. Cavaliere, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a Partner at the law firm of Tarter Krinsky & Drogin LLP, counsel to Deborah J. Piazza, the successor chapter 7 trustee of the estate of Orly Genger. I respectfully submit this Supplemental Declaration in further support of the *Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement and (B) Granting Related Relief* (the "Motion") [Dkt. No. 421] and in support of the Trustee's Reply to Various Objections to the Motion that is being filed contemporaneously herewith.

2.    Attached as **Exhibit 82** is a true and correct copy of an email chain between John Dellaportas and Rocco Cavaliere dated July 1 - 2, 2021.

3.    Attached as **Exhibit 83** is a true and correct copy of an email and term sheet dated May 4, 2020.

4.    Attached as **Exhibit 84** is a true and correct copy of a memorandum dated December 16, 2019, without exhibits, prepared by Emmet Marvin & Martin LLP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  July 27, 2021

*/s/Rocco A. Cavaliere*
Rocco A. Cavaliere
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

**EXHIBIT 82**

## Sheree Nobles

| | |
|---|---|
| **From:** | Rocco A. Cavaliere |
| **Sent:** | Tuesday, July 27, 2021 3:05 PM |
| **To:** | Sheree Nobles |
| **Subject:** | FW: Genger |

 **Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

**From:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Sent:** Friday, July 2, 2021 1:26 AM
**To:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Cc:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Subject:** Re: Genger

Good luck with that.

On: 02 July 2021 01:12,
"Rocco A. Cavaliere" <rcavaliere@tarterkrinsky.com> wrote:

Agreed that your motion to dismiss was completely unnecessary. And wasteful. My firm will either be paid its reasonable fees from the estate or possibly from your client, to the extent we decide to seek reimbursement of such fees after the motion to dismiss is denied. Either way is fine.

 **Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

**From:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Sent:** Friday, July 2, 2021 1:03 AM
**To:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Cc:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Subject:** Re: Genger

Any fees you incurred in connection with the motion to dismiss were completely unnecessary and hopefully will never be reimbursed from the estate.

On: 02 July 2021 00:54,
"Rocco A. Cavaliere" <rcavaliere@tarterkrinsky.com> wrote:


John, you caused our firm to incur significantly more in legal fees than were needed in this case due to the motion to dismiss you filed, and now you are complaining about our legal fees, which is a fraction of the $2.55 million recovery for the estate? This is a waste of time. I am sorry I bothered you with my email earlier. Good night.



**Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

**From:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Sent:** Friday, July 2, 2021 12:33 AM
**To:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Cc:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Subject:** Re: Genger

How much of that $2.55 million will be going to your firm, Rocco?

On: 02 July 2021 00:25,
"Rocco A. Cavaliere" <rcavaliere@tarterkrinsky.com> wrote:


John,

I respectfully disagree. There is nothing outrageous about a $2.55 million settlement that ensures a significant distribution to holders of allowed claims for the reasons set forth in the motion. On the other hand, your client's motion to dismiss and the significant costs that were required to be borne by all parties with that wasteful exercise is what is truly outrageous. Have a good evening counselor.

Regards,

Rocco

Sent from my iPhone



**Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

On Jul 2, 2021, at 12:00 AM, John Dellaportas <JDellaportas@emmetmarvin.com> wrote:


Rocco, it would have been better had you approached us before giving away the entire $32.3 million at issue to the debtor and her fraudulent transferees. As you know, we made several offers to you in that

regard, all of which you disregarded (except for the one you initially agreed to and then reneged on).  Now that you have given away the store, while securing a generous payout for your own law firm, you have left no pathway toward a meaningful resolution, short of withdrawing your outrageous 9019 motion.  We strongly suggest you do so.  John


**John Dellaportas**
Emmet, Marvin & Martin, LLP
120 Broadway 32nd Floor
New York, NY 10271
Tel: 212-238-3092
Fax: 212-238-3100
Email: jdellaportas@emmetmarvin.com

<0.jpg>

**Confidentiality Disclosure:** The information in this email and in attachments is confidential and intended solely for the attention and use of the named addressee(s). This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to and must not disclose, copy, distribute, or retain this message or any part of it.

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Thursday, July 1, 2021 11:57 PM
**To:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Cc:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Subject:** RE: Genger


Tom,

It has been exactly one month since I approached you about whether Sagi would be interested in the Trustee attempting to reach a global resolution by and between the Sagi/Dalia/Oldner group and the "Broser/Arie/Herschmann group", whereby the parties could exchange mutual releases. A global resolution, if one could be reached between the parties, could result in a seven figure payment for Sagi and would avoid any additional disputes concerning counterclaims and possible equitable subordination, while at the same time providing finality to the endless Genger family litigations. The Trustee and I are disappointed that you did not even bother to respond to our inquiry.


Rocco


**Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Tuesday, June 1, 2021 12:31 PM
**To:** Thomas A. Pitta <TPITTA@EMMETMARVIN.COM>
**Cc:** John Dellaportas <JDellaportas@EMMETMARVIN.COM>
**Subject:** Genger

Tom,

The Trustee has asked me to relay a proposal in the hopes of a potential global resolution of the case and the years of Genger family litigation.  Let me know if you have a few minutes to speak this afternoon. Thanks.

Rocco

**Rocco A. Cavaliere|Partner**
T: 212-216-1141|F: 212-216-8001
rcavaliere@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

---

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

---

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

---

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

**EXHIBIT 83**

**Sheree Nobles**

| | |
|---|---|
| **From:** | DSpelfogel@foley.com |
| **Sent:** | Monday, May 4, 2020 4:50 PM |
| **To:** | Rocco A. Cavaliere |
| **Subject:** | Settlement communication |
| **Attachments:** | Settlement Term Sheet Comparison (002).docx |

Rocco, here are our comments to the draft term sheet, this should not be controversial, these include a few items from our emails that didn't make it into the draft, we also included the provision for payment of $50K to the trustee irrespective of approvals by the court, to cover your costs, and general clean-up (we did not include anything re dismissal given this wasn't part of our deal, we are happy to discuss this if and when there is agreement (which we doubt) by otherside to dismiss with prejudice to a refiling).

Please let me know if you have any questions,

Thank you,

Doug

---

**From:** Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
**Sent:** Monday, May 4, 2020 10:43 AM
**To:** Spelfogel, Doug <DSpelfogel@foley.com>
**Subject:** RE: Settlement communication

**\*\* EXTERNAL EMAIL MESSAGE \*\***

FRE 408
Settlement Discussions Only

Doug,

As discussed, I am pleased to advise that the Trustee is prepared to move forward with a settlement with Sagi Genger and related parties. Thank you for your assistance. Please also extend my thanks to Sagi, John, Tom, Adam, and others.

In furtherance of the upcoming conference, I would like, if possible, to send the Court today a short letter enclosing a settlement term sheet so that the Court is aware of the terms of the settlement, which remain subject to a final settlement agreement between the parties. In that regard, as discussed, please find a draft settlement term sheet I put together quickly for your side's feedback. The settlement term sheet remains subject to the Trustee's review and approval.

Rocco



**Rocco A. Cavaliere | Partner**
D: 212-216-1141 | F: 212-216-8001
rcavaliere@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com

-----Original Message-----
From: DSpelfogel@foley.com <DSpelfogel@foley.com>
Sent: Sunday, May 3, 2020 9:18 PM
To: Rocco A. Cavaliere <rcavaliere@tarterkrinsky.com>
Subject: [EXT] Settlement communication


Rocco, was good talking earlier.

For good order wanted to provide recap re numbers, see below, if questions just let me know.

Payments to estate:

$350K cash upfront to estate guaranteed
$600K, to estate from first recoveries (after attorneys fees) from fraud litigation 50% to estate of recoveries above $23MM (calculated based upon the next recoveries after attorneys fees and the $950K paid/noted above)

All of which is subject to papering in agreement signed by both sides etc

If any questions, let me know.

Thanks,

doug



Douglas E. Spelfogel
Partner
Foley & Lardner LLP
90 Park Avenue
New York, New York 10016
Tel:  212-338-3566
Email: dspelfogel@foley.com


Sent from my iPhone


The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

DRAFT AND CONFIDENTIAL
PURSUANT TO FRE 408 -FOR SETTLEMENT PURPOSES ONLY

## <u>SETTLEMENT TERM SHEET</u> [Sagi/Dalia Comments]

This Settlement Term Sheet dated May 4, 2020 summarizes the salient terms of a proposed comprehensive settlement of disputes by and between the ~~Sagi~~Settling Parties (as defined below) and Deborah J. Piazza, the successor chapter 7 trustee of the estate of In re Orly Genger, Case Number (the "Bankruptcy Estate"):

1. The Trustee, on behalf of the Bankruptcy Estate, shall assign to Sagi Genger (or his designee) all of the Bankruptcy Estate's rights of any and all kinds in and to recover $32.3 million, plus interest, attorneys' fees, expenses and costs (the "Fraudulent Conveyance Action") which represents the settlement amount in a June 16, 2013 settlement agreement (with the "so-called Trump Group ~~Settlement"),~~, comprised of (i) $17.3 million in cash that was paid by the Trump Group (the "Settlement Cash Proceeds") through Orly Genger to entities controlled by Arnold Broser, David Broser, and Arie Genger and/or entities controlled by one or more of the foregoing, and (ii) two $7.5 million notes (the "Trump Notes") payable by the Trump Group, after satisfaction of certain conditions ~~(the "Fraudulent Conveyance Action").~~, together with all such rights, claims (including the pending litigation in the US District Court under Case No. _____), and proceeds of all of the foregoing (the "Trump Settlement Proceed Rights").

2. Sagi to pay (or cause to be paid) the estate $350,000 (the "Initial Settlement Payment") within five (5) business days of the execution of an executed settlement agreement (the "Settlement Agreement"), to be held in the Trustee's escrow account pending approval of any Settlement Agreement, ~~with~~provide however, that $50,000 of such monies shall be immediately released to the Trustee (and be retained by the Trustee irrespective of whether the Settlement Agreement is approved by the Court), with the balance of $300,000 of such monies released to Trustee's estate account immediately upon a~~entry of a final~~ Court order (the "Settlement Order") approving ~~a motion approving the Settlement Agreement.~~ the Settlement Agreement.  If the Court denies approval of the Settlement Order or the Settlement Agreement is not approved within 60 days of execution of the agreement (or such longer period as agreed by the parties), the Initial Settlement Payment shall be returned to Sagi within five (5) business days. This Initial Settlement Payment will become property of the estate upon ~~approval~~entry of the Settlement ~~Agreement~~Order, and is not dependent on the ultimate success of Sagi ~~in~~with regard to the Fraudulent Conveyance Action~~.~~ (provided however that $50,000 of such amount shall be released to the Estate immediately upon execution of the Settlement Agreement).  In addition, Sagi shall also make additional payments to the Trustee on behalf of the Bankruptcy Estate as follows: (i) $600,000 of the first recoveries from the Fraudulent Conveyance Action, after deduction for Sagi's attorneys' fees ~~and~~, costs, and expenses, within five (5) business days of collection therefrom, and (ii) 50% of any recoveries over $23,000,000 from the Fraudulent Conveyance Action, ~~within 5~~calculated based upon the next recoveries after Sagi's attorneys fees, costs and expenses and the $950,000 paid above, within five (5) business days of collection therefrom.

DRAFT AND CONFIDENTIAL
PURSUANT TO FRE 408 -FOR SETTLEMENT PURPOSES ONLY

3. Upon entry of the Settlement Order, Sagi, Dalia, and Michael Oldner on behalf of the Orly Genger 1993 Trust, the Sagi Genger 1993 Trust, and any of their successors and assigns (and any other party affiliated therewith, including TPR, Recovery Effort, Inc., Manhattan Safety Maine, Inc., and D&K) (collectively, the "SagiSettling Parties")[1] to withdraw alllimit their claims against the estate, provided however that any claims that Sagi may have against the Debtor arising from Judge Forrest's decision, approved by the Second Circuit, shall have recourse against the Fraudulent Conveyance Action only. Further, the Sagi solely to the Trump Settlement Proceed Rights. Further, upon the Court's approval of the Settlement Agreement, the Settling Parties---upon the written request of the Trustee-shall withdraw the pending discharge actions filed in the Bankruptcy Court and agree thatshall not object to the Debtor shall bebeing discharged from any debt owing to such parties as of the date the Court enters an order approving the Settlement Agreement.the Settlement Order, provided that the Settling Parties' claims against the Debtor shall be specifically preserved by the Settlement Order to the extent necessary for them to collect under the Fraudulent Conveyance Action. Further, Dalia Genger shall withdraw the constructive trust action filed in the Bankruptcy Case. Further, upon approvalentry of the Settlement AgreementOrder, the SagiSettling Parties (and any assignees or otherwise) shall not participate in the case, except as otherwise provided herein, it being anticipated that the rights of the SagiSettling Parties to collect on any claims they have asserted within the Bankruptcy proceeding will be limited to Sagi's successful pursuit of all claims in the Fraudulent Conveyance Actionto the Trump Settlement Proceed Rights. Nothing herein shall be understood as to limit the Proof of Claim of TPR Investment Associates, Inc. against the third-party sureties to recover on the bonds described in its Proof of Claim.

4. Mutual releases between the Trustee on behalf of the Bankruptcy Estate of all estate claims against the SagiSettling Parties.

5. Stay of all pending litigation and deadlines in all pending actions described in the Status Chart provided to the Court on April 17, 2020 while the Trustee prosecutes the Settlement Motion, including withdrawal of Sagi's dismissal motion upon Court's approval of a Settlement Agreement as provided herein.

6. Sagi to waive lien on homestead upon Court approval of the Settlement Agreement.

7. Trustee to use best efforts to request thatget Arie Genger to waive any lien against the Debtor's rights, if any, inwith respect to the Trump NotesSettlement Proceed Rights which may be owned by the Bankruptcy Estate; absent such consent, the Trustee shall provide Sagi with standing to pursue all rights of the Trustee for avoidance of such

---

[1] _____The definition of SagiSettling Parties will be written as broadly as possible to cover all parties associated in any way to the SagiSettling Parties, but specifically to exclude Orly Genger, Arie Genger, Eric Herschmann, Kasowitz and any other parties that are subjects of the Fraudulent Conveyance Action but could be considered "insiders" or "affiliates" or Sagi or Dalia Genger.

DRAFT AND CONFIDENTIAL
PURSUANT TO FRE 408 -FOR SETTLEMENT PURPOSES ONLY

lien on the Trump ~~Notes, if deemed necessary in connection with the Fraudulent Conveyance Action.~~ Proceed Settlement Rights.

8.      Estate retains the rights to pursue any and all assets and other causes of action that estate may have, except relating to (i) the ~~Fraudulent Conveyance Action~~ Trump Proceed Settlement Rights, which ~~is~~ claims are being assigned to Sagi, and (ii) the claims against the ~~Sagi~~ Settling Parties, which are subject of the mutual release set forth in paragraph no. 4. Thus, for the avoidance of all doubt, the Trustee retains all other rights to assets and causes of action, including the Bankruptcy Estate's claims against Zeichner Ellman for all possible acts or omissions that caused damage to the Debtor, except for Zeichner's acts and omissions relating to Trump Proceed Settlement Rights, including but not limited to the District Court action styled as *Recovery Effort Inc. v. Zeichner Ellman and Krause and Wachtel Misry,* S.D.N.Y. 19 Civ 5641 (Judge Broderick~~)~~).

9.      This Settlement Term Sheet is non-binding and remains subject to the execution of a mutually acceptable Settlement Agreement between the ~~Sagi~~ Settling Parties and the Trustee who shall use best efforts to execute by May ~~12~~ 15, 2020.

10.     The Trustee shall use best efforts to file a motion to approve the Settlement Agreement by May ~~26~~ 22, 2020;

11.     The parties to the Settlement Agreement shall provide such further cooperation as may become necessary to effectuate the terms of the agreement, and shall not take any steps which would frustrate the property rights of the other.

~~11.~~ 12.  The parties reserve their rights to include additional terms in the Settlement Agreement that are not otherwise inconsistent with the foregoing and are otherwise necessary to effectuate a global settlement between the parties.

ADD SIGNATURE BLOCK FOR COUNSEL TO FOREGOING PARTIES.

**EXHIBIT 84**



## EMMET, MARVIN & MARTIN, LLP
### COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000
Fax: 212-238-3100

**www.emmetmarvin.com**

# MEMORANDUM

| | |
|---|---|
| **TO:** | **Deborah Piazza, Esq.** |
| **FROM:** | **Thomas A. Pitta**<br>**John Dellaportas** |
| **DATE:** | **December 16, 2019** |
| **RE:** | *In re Orly Genger*, Case #: 19-13895-jlg |

---

Our firm represents judgment creditor Sagi Genger ("Sagi"). We write to provide you with a broad introduction to the above-referenced bankruptcy case, and to request a meeting at your earliest convenience to discuss our views on a way forward.

### Executive Summary

This is not an ordinary bankruptcy case. The debtor, Orly Genger ("Orly"), and her husband, Eric Herschmann, enjoy a collection of multi-million dollar homes around the world. Mr. Herschmann is a senior partner at a major New York law firm. At his prior job, he received an executive severance package of $50 million and use of a corporate jet. His exotic car collection includes a Rolls Royce, Bentley and Lamborghini. This case is an attempt to shield that wealth and Orly's prior diversion of tremendous value through fraudulent transfers intended to frustrate her legitimate creditors.

Most significantly, the U.S. District Court for the Southern District of New York, in decision later affirmed by the U.S. Court of Appeals for the Second Circuit, found that, in 2013, "**Orly had monetized her beneficial interest [in a family business] for $32.3 million**." *Genger v. Genger*, 2018 WL 3632521 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99 (2d. Cir. 2019). *See* Exhs. A, B. Post-judgment discovery has revealed that, in the ensuing six years, Orly purported to convey and encumber that $32.3 million to her family members—specifically, her husband, her father Arie Genger ("Arie"), and certain of his creditors—for no meaningful consideration. In June and July of this year, Sagi brought proceedings to set aside those fraudulent conveyances. Orly responded with this bankruptcy filing, in which she claims "total property" of only $56,628 plus a 50% interest in an Austin, Texas downtown condominium. *See* Exh. C.

NEW YORK, NEW YORK • MORRISTOWN, NEW JERSEY

EMMET, MARVIN & MARTIN, LLP

In a transparent attempt to frustrate collection, Orly filed for bankruptcy not in this District, in which these matters have been steadily litigated since 2008, but rather in the U.S. Bankruptcy Court for the Western District of Texas, where she claims to have recently moved. In September of this year, Sagi moved to dismiss the case as a bad faith filing, or in the alternative to transfer the case to this District. *See* Exh. D.

By Order dated November 7, 2019, the U.S. Bankruptcy Court granted the motion to transfer, while deferring on the motion to dismiss in favor of the transferee court. *See* Exh. E. Central to the Court's thinking was the missing $32 million:

> … [T]he bankruptcy will create a new layer of litigation that arises from the same transactions, facts and set of occurrences that are the subject of litigation that has been concluded and the litigation that remains pending in New York.
>
> **In particular I'm thinking of the Section 727 adversaries in which the Debtor will be required to explain what happened to 32 million dollars ….** The issues related to [Orly's Austin] condo, the gift and the pledge, will be only a fraction of the issues dealt with in the fraudulent conveyance and nondischarge cases. **The other issues all relate to the 32 million and where it went, all of which has been the subject of more than a decade of litigation pending in New York**.

Exh. F at 4, 5, 8 (emphases added).

Recovery of the $32.3 million for the Chapter 7 estate should be sufficient to pay most or all of the outstanding claims against the estate. Nor should such recovery be a particularly lengthy or challenging process. On June 11, 2019, Sagi filed a CPRL 5225 motion to set aside the conveyances, based on the findings of the U.S. District Court (discussed above). *See* Exh. G. Orly's lawyers responded by seeking a lengthy extension of Orly's response deadline, supposedly to accommodate vacation schedules. Instead, a few days before her response date, Orly filed this case and invoked the stay.

In other words, basically all that is left to recover the $32.3 million is a reply brief. Whether that reply brief is ultimately filed in the Bankruptcy Court or the District Court, the result should be the same. It has been fully adjudicated that Orly monetized her interest in the family business for $32.3 million, and it is undisputed that the parties who received that money gave her no consideration for it. Below, we provide the outlines for a potential settlement agreement that will recover that money for the estate, and thereby ensure that all estate creditors are paid in full.

EMMET, MARVIN & MARTIN, LLP

## The Missing $32.3 Million

On June 16, 2013, Orly entered into a settlement agreement (the "2013 Settlement Agreement") with certain third parties (together, the "Trump Group") whom she and Arie had sued over her claim to ownership of shares in a family business called Trans-Resources, Inc. ("TRI"). Orly fought for over a year to keep the settlement confidential, but ultimately the District Court directed its production. *See* Exh. H. In it, Orly settled her claims for $32.3 million, consisting of $17.3 million cash up front, plus two $7.5 million promissory notes to be paid once certain conditions were met.

Immediately upon receipt, Orly's then-attorney (at her direction) wired the first $17.3 million to a purported trust established for the benefit of her father's (not her) lenders, Arnold and David Broser. *See* Exh. I. Because, however, the remaining $15 million had not yet come due, the money could not be fraudulently conveyed. So instead, by agreement dated March 31, 2017, Orly assigned away a significant portion of her future payment—the first $4.5 million to the Brosers, and the second $2.0 million to her husband, with the balance to be paid in the future pursuant to hers and Arie's joint written instructions (which, to date, have not been given). *See* Exh. J.

In other words, <u>before</u> any fraudulent conveyance action need be brought, there is <u>already</u> $8.5 million in the estate (which Orly failed to list on her schedules).[1] While release of the funds requires Arie's consent, Arie has advised the IRS that Orly is entitled to 58.13% of any recovery under the 2013 Settlement Agreement, and the District Court found that that all 100% was attributable to Orly's claims. That means the estate's share of the $32.3 million, <u>at a minimum</u>, is worth $18.8 million. If the District Court's past findings are collateral estoppel, or if the Bankruptcy Court independently reaches the same findings, then the estate will be entitled to all $32.3 million.[2]

## Orly's Condominium Ownership

Other than her claim to the $32.3 million, Orly's only other material asset is her 50% interest (her husband owns the other 50%) in a multi-million dollar condominium atop the W Hotel in downtown Austin, Texas. According to real estate professionals, the apartment is worth at least $3 million in total. *See* Exh. M.

---

[1] The Trump Group asserts an offset claim against the notes in the amount of approximately $3 million.

[2] Because the litigation claims Orly settled were brought by Orly on behalf of her trust, the Orly Genger 1993 Trust, the Trust has separately brought its own fraudulent conveyance action seeking recovery of the $32.3 million. *See* Exh. K. Sagi and the Trust have entered into an Inter-Creditor Agreement to share any proceeds recovered as between the two of them. *See* Exh. L.

EMMET, MARVIN & MARTIN, LLP

### Orly's Claims against Sagi

As you will see from the various decisions, the Genger family, unfortunately, has been embroiled in litigation for over a decade.  Other than the litigations involving the $32.3 million, these suits are largely concluded and have little bearing on the current suit.  However, Orly currently has two suits with "live" claims against Sagi:

**#1:** ***Orly Genger v. Sagi Genger*, N.Y. Sup. Ct. 100697/2008.**  In this suit, Orly claimed that Sagi had fraudulently induced her into selling her 50% share in a Canadian real estate venture for only $100,000, when in fact her share was worth $12 <u>million</u>.  The Supreme Court assigned the matter to a CPA financial accounting expert to calculate the true value of her share.  Earlier this year, the CPA issued a 145-page report, finding that Orly's interest was worth between $99,551 and $132,374. *See* Exh. N at 63.

While Sagi disagrees with certain of the CPA's findings, in order to spare himself and the estate the burden and expense of a trial, he is willing to settle for the higher of the two numbers, and pay $32,374 as an offset on his claim against the estate.

**#2:** ***Orly Genger v. Dalia Genger et al*, N.Y. Sup. Ct. 109749/2009.**  In this suit, Orly claimed that Sagi had harmed her trust (the Orly Genger 1993 Trust) by selling shares of a business (TPR Investment Associates) in which her trust had an indirect interest, for less than market value.  Following a two-week trial before the late Judicial Hearing Officer Gammerman, which the Supreme Court adopted in full, it was found that the sale price was proper, and damages were $0. *See* Exh. O.  Orly has appealed.

Sagi does not believe Orly's appeal, if perfected, will be meritorious.  She will be seeking to have the Appellate Division overturn witness credibility findings made by a widely-respected judge, following a lengthy trial.  Further, even were she to prevail, any recovery would go to the Orly Genger 1993 Trust, not the estate.  Accordingly, we do not believe this claim belongs to the estate.  If, nonetheless, you believe you have authority to settle this case, and the Bankruptcy Court agrees, defendants Sagi, D&K GP LLC and TPR are willing to settle the case as a joint walk-away, in which they would drop their claims for $700,000 in legal fees and expenses for the wrongly-issued attachment and injunction, and the claims against all defendants would be dismissed.

### The Prior, Non-Approved Settlement

Prior to transfer, the former, Texas-based, Chapter 7 trustee (without offering anyone the opportunity to make a counter) entered into a proposed settlement agreement with the debtor, her husband, and the recipients of the aforementioned $32.3 million, whereby, in exchange for an upfront payment of $400,000 and a conditional, back-end payment of $800,000, the estate would abandon its claim to the 50% apartment interest, the $8.5 million in uncommitted future litigation proceeds, and the $23.8 million in fraudulently transferred and/or encumbered litigation proceeds.

EMMET, MARVIN & MARTIN, LLP

The settlement was never approved and—in transferring the case to this District—the Court made it clear the settlement was unlikely to have been approved even absent transfer. *See* Exh. F at 3 ("[T]he Trustee here has already… reached a settlement. A move to New York could lead to a new Trustee, and a need for that Trustee to… redo what has been done …. But it's not clear how much, in fact, has been done. The 9019 is only 14 pages and is mostly platitudes, very sparse description of the many facts in play here and it does not even identify, let alone discuss, the issues being settled.").

### Sagi's Proposed Settlement Terms

In any event, Sagi is prepared to offer the estate significantly better settlement terms than any which the debtor and her cohorts have offered or can offer.

**1.  DIP Loan.**   In order to ensure that the trustee has sufficient funds to proceed with the administration of the estate, Sagi is willing to provide the estate with an immediate, $150,000, interest-free DIP loan.

**2.  The Apartment.**   The trustee would agree to sell the entire apartment interest on the open market.  In exchange, Sagi would provide a stalking horse bid of $1.6 million--twice the implied value of the property under the prior, non-approved settlement between the former trustee and Eric Herschmann.

**3.  Orly's Cases against Sagi.**   Orly's cases against Sagi will be resolved in the manner proposed above.

**4.  The Missing $32.3 Million.**   As noted above, Sagi was on the cusp of getting a ruling from the District Court restoring the $32.3 million in fraudulent conveyances to the estate, when Orly filed for bankruptcy to stop that very outcome.  The CPLR 5225 motion is already briefed, and the estate has the right to proceed with that motion. Should it do so, Sagi would agree to front the litigation expenses for Emmet, Marvin & Martin, LLP to prosecute the remainder of briefing, any evidentiary hearing, and any appeal on behalf of the trustee (Sagi's collection costs to be recouped only from any recovery in the fraudulent conveyance action).

As noted above, the payment of the final $15 million of the $32.3 million is subject to certain contingencies (namely, the execution of certain third-party releases). Sagi will obtain the requisite releases from those third parties.  Lastly, if the estate wishes to enter into a sharing agreement with the Orly Genger 1993 Trust similar to the one Sagi has entered into, Sagi will use his best efforts to assist the parties in reaching such a deal.

**5.  Arie's Fraudulent Note and UCC Filing.**   Less than one year prior to the filing of the bankruptcy, Arie filed a UCC by which Orly purported to pledge all of her

EMMET, MARVIN & MARTIN, LLP

assets to her father.  Sagi is prepared to provide evidence demonstrating the promissory note that UCC filing purports to secure is backdated and fraudulent and largely reflects claims for which Orly has no legitimate liability.  Upon submission of such evidence, the trustee will retain Emmet, Marvin & Martin, LLP to object to Arie's claims and to bring an action to set aside the preferential filing of the UCC.

TP/JD