UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Orly Genger,

                    Debtor.

Chapter 7

Case No. 19-13895-JLG

## MOTION FOR RECONSIDERATION

Eric D. Herschmann respectfully submits this motion for reconsideration of and relief from the Order dated February 9, 2021 (the "Order," ECF No. 348).

## PRELIMINARY STATEMENT

In the Order, the Court denied my request for an order compelling Sagi Genger to produce an Israeli private investigator's report concerning my private affairs Sagi commissioned, holding that I did not show sufficient probable cause that the preparation of the report was illegal under Israeli law so as to justify the application of the crime/fraud exception.

Now, however, an Israeli court has issued a decision ("Israeli Court Decision"), on March 24, 2022, expressly holding, in a final judgment after trial in a lawsuit in Israel brought by Orly Genger against the investigator, that the investigator's conduct in obtaining her confidential personal information which he included in a report about Orly (the "Orly Report") – precisely the same conduct he engaged in to obtain my confidential personal information contained in the Herschmann Report – was illegal under Israeli statutes that make the conduct both civilly and criminally unlawful.[1]  Under this new decision, a certified translation of which is attached hereto

---

[1]  I also brought a lawsuit in Israel against the investigator and Jane Altshuler (the attorney from Mr. Parnes' firm who commissioned the Reports), which is pending. This Court has already found, by counsel for Sagi's own admission, that the Herschmann Report was created at the same time, and contained the same type of information, as the Orly Report. Order at 15.

as <u>Exhibit A</u>, there can be no legitimate doubt that the investigator's conduct was criminally
unlawful.

Thus, the Israeli court found that the travel information concerning Orly that the
investigator obtained "is confidential information as a *matter of law*" (Israeli Court Decision at
10) and that the information could only have been obtained by Sagi's investigator "*unlawfully*"
(*id*. p. 13) (emphasis added) through violations of Israel's Privacy Protection Law and
Computers Law, which are both civil and criminal in nature.  The Israeli court also noted that
"this is no generic infringement of Plaintiff's privacy, but rather an *illegal* infringement, which
cannot be legalized by good faith, nor by presenting in court the results of the infringing acts,
i.e., the presentation of the report produced by Respondent." (*id*. at 19) (emphasis in original),
and made clear that the lack of an indictment was irrelevant to consideration of the criminal
nature of the investigator's conduct.  *Id*. at 19.  As this Court correctly acknowledged, the
Herschmann Report contains the same information related to me.  (Order at 13) ("[T]he scope of
the reports is identical.  They include data reflecting the dates of Orly and Mr. Herschmann's
entries into and exits from Israel, and the location of Orly's and Mr. Herschmann's bank
accounts in Israel.")[2]

Sagi also misused the subpoena authority of this Court to try to cover up his
investigator's illegal conduct, impugning the integrity of these proceedings.

---

[2]  The Israeli court did not find a violation regarding the specific banking information in the Orly Report
because that information was 16 years outdated and incorrect (she no longer had a bank account in Israel),
and in that regard her privacy was not violated.  *Id*. at 9.  This finding would not be applicable to me,
considering I do currently maintain banking relationships in Israel.

## **ARGUMENT**

This Court has recognized that it is "well-settled" that the Court may revisit and reconsider the Order:

> [T]he Court has inherent power to reconsider a prior decision at any time before judgment. *See Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134–36 (2d Cir.) (Hand., L.J.), *cert. dismissed per stip.*, 352 U.S. 883 (1956). Accordingly, 'although FRCP 60(b) refers to relief from final orders, it does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires.' *Meyer v. Lennox (In re Lennox)*, 902 F.2d 737, 740 (9th Cir. 1990). "[B]ankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders."). *Id.* at 739-40.

*In re New York Racing Ass'n Inc.*, No. 06-12618 (JLG), 2016 WL 6081087, at *8 (Bankr. S.D.N.Y. Oct. 17, 2016). *See also* Bankruptcy Rule 9023, which incorporates Fed. R. Civ. P. 59, and Bankruptcy Rule 9024, which incorporates Fed. R. Civ. P. 60. Reconsideration is warranted here and production of the Herschmann Report should be ordered based on the crime fraud exception, as it has now been definitively determined in the Israeli Court Decision that the report, in which Sagi has claimed work product protection, was created in violation of law.

In the Order, the Court declined to apply the crime-fraud exception based on an insufficient showing of probable cause to believe that a crime or fraud had been attempted or committed in Israel and that the privileged communications furthered such crime or fraud. Order at 34. The Israeli verdict – issued this past month – now rectifies that deficiency. That verdict is conclusive proof that the investigator violated criminal laws in accessing Orly's Israeli travel records and constitutes, at a minimum, probable cause to believe that his accessing my travel records was also a crime.

These facts fully warrant application of the crime-fraud exception. *See* Order at 31 (citing and quoting *Meyer v. Kalanick*, No. 15-Civ.-9796, 2016 WL 3189961, at *3-4 (S.D.N.Y.

June 7, 2016)) ("The crime fraud exception has also been applied to deny privilege protection to

what would otherwise have been protected documents because of the misconduct of a party's

private investigators.")

A.  **The Israeli Verdict**

Sagi's investigator and his attorney in Israel have argued that Orly's and my Israeli

lawsuits against the investigator were a sham intended only to "interfere" with this bankruptcy

proceeding in the U.S.[3]  At trial, Sagi's investigator claimed "good faith" as a defense to charges

of violating Orly's privacy under the laws of Israel because he and Sagi's Israeli lawyers were

supposedly gathering evidence for use by Sagi in this proceeding and he was a "witness" who

was expected to testify in the proceeding.  As evidence for this claim, he offered a previously

undisclosed Rule 45 trial subpoena (attached hereto as Exhibit B) issued by Sagi's U.S. counsel

(John Dellaportas) in this proceeding, requiring Sagi's Israeli investigator to appear at a hearing

scheduled for October 2019 in Texas and to produce "all documents relating in any way to Orly

Genger or Eric Herschmann" (which would include the Herschmann and Orly Reports) (the

"Secret Subpoena").  At trial, the Israeli court soundly rejected that defense, noting that "should

we accept such an argument, then we will be forced to say that the statutory confidentiality

stipulated by the Population Registry Law should be abolished in every instance whereby an

opposing litigant desires to cross examine or even unlawfully infringe on the privacy."  Ex. A at

19.

The Israeli court's judgment that the investigator violated Israel's criminal laws by

obtaining nonpublic government records concerning Orly's travel in and out of Israel was based

---

[3] Sagi had argued to Your Honor just the opposite: "That Mr. Herschmann is instead seeking relief from
this Court suggests an effort to circumvent and undermine the Israeli Court's jurisdiction."  (Dellaportas
May 29, 2020 letter, ECF No. 252 at 9).

on, among other things, the testimony of Mr. Ido Talmi, Head of Cyber and Information Security

Division at the Population and Immigration Authority for the State of Israel, that a private

investigator has no authorization to access and review details contained in the databases of the

governmental Population Registry. *Id*. at 12.  The Israeli court concluded that

> Therefore, prima facie, the detailed information in the possession of
> Respondent arose from him unlawfully reviewing and/or having had
> access to the database. Respondent had several opportunities during
> his cross examination to explain whether the information came to
> his possession other than through penetrating a confidential
> database. However, Respondent was very particular in refraining
> from providing any reason or explanation on how the information
> came to his possession – other than by penetrating a confidential
> database."

*Id*. at 13.

The Israeli court ruled that Sagi's investigator's testimony was persistently evasive and

not credible, *id*. at 16, and that the investigator could not articulate how he could have obtained

these records legally.  *Id*. at 13.  The court concluded that "Had there been a foundation to

Respondent's arguments – he would have ensured it be brought forward and presented rather

than evade the matter with false statements concerning various employees he does not even

know who they are." *Id*. at 16.

## B.  Sagi's Misuse of the Secret Subpoena

On September 23, 2019, my Israeli counsel – Mr. Nachmani and Mr. Arad-Aylon – and I

met with Sagi's investigator.[4]  The investigator falsely claimed that my Israeli counsel and I

tried to "**intimidate him and prevent him from testifying**" in Orly's bankruptcy case.  *See*

Certified translation of relevant part of Investigator's Answer from Israeli proceeding, attached

---

[4]  Mr. Arad-Aylon was the long-time chairman of the National Ethics Committee of the Israel Bar Association and
was recently appointed as a Judge in Israel.  *See* Nitzen Shafir, "Twenty-Two New Judges Were Appointed to the
District", updated April 11, 2022, available at https://www.globes.co.il/news/article.aspx?did=1001408883 (last
visited April 14, 2022, attached hereto as Exhibit I).

hereto as Exhibit H, at ¶ 3 (emphasis in original).  Of course, that claim is knowingly false, since

no one other than Sagi, Parnes, and Dellaportas knew of the Secret Subpoena purportedly calling

for testimony, and the investigator had never been identified as a witness to the Court or anyone

else.  Not surprisingly, the Israeli Court rejected this bogus defense in finding the investigator

liable for committing unlawful acts.  *See* Ex. A at pp. 16-17.

However, the improper use of the Secret Subpoena in the Israeli court proceedings is now

clear.   In his statement to the Israel National Police, Sagi's investigator claimed that *after* the

September 23 meeting, he was contacted by Sagi's Israeli counsel, Mr. Parnes, who told him not

to provide me with a copy of the Herschmann Report – not because it was privileged or work

product, but because he was a "witness" in the U.S. proceedings.  ("After I arrived at a meeting

with Adv. Nachmani . . . I was contact[ed] by Adv. Parnas[.]") (*See* Transcript of February 18,

2021 Israel police suspect notice, attached hereto as Exhibit C, at lines 10-13).[5]  The use of the

Secret Subpoena to attempt to bolster the investigator's "good faith" defense that he was a

purported witness was also contained in the investigator's Answer to Orly's complaint against

him in the Israeli proceeding.  There the investigator claimed that he was "naturally" going to be

"call[ed] . . . to testify before the [Orly] Bankruptcy Court in Texas, U.S.A." after issuing his

Report, and he also attached a copy of the Secret Subpoena as proof.  *See* Ex. H at ¶ 2.   As

noted, the Israeli court rejected this defense.

To be clear, only during the recent Israeli proceedings was it disclosed that on October 3,

2019, Mr. Dellaportas sent a Rule 45 trial subpoena to the investigator, purportedly in connection

with this bankruptcy proceeding.   Until that time, Dellaportas and Sagi had hid the Secret

---

[5]  During his initial interview with Israeli police on February 18, 2021, Sagi's investigator first *denied*
ever having prepared the Herschmann Report before later admitting that he had in fact prepared it.  *See*
Ex. C at lines 4-8, 39-42.

Subpoena from the parties to this litigation and the Bankruptcy Court itself. But a Rule 45 trial

subpoena, of course, "may not be used as a means to engage in further discovery," or "to demand

documents not previously produced or identified." *Dodson v. CBS Broad., Inc.*, No. 02 CIV.

9270 (KMW) (S.D.N.Y. Nov. 29, 2005) at 1 (internal citations omitted); *see also Revander v.

Denman*, No. 00-cv-1810, 2004 WL 97693, at *1 (S.D.N.Y. Jan. 21, 2004) ("Trial subpoenas are

appropriate in certain circumstances, such as securing an original document previously disclosed

during discovery" but not to demand documents not previously produced or identified). The

Orly Report does not refer to Herschmann at all, and so for Mr. Dellaportas to have issued a

legitimate Rule 45 trial subpoena to the investigator for documents related to Herschmann, he

would have had to at the very least have known of the existence of the Herschmann Report.

The hearing referred to in the Secret Subpoena was held in October 2019 in Texas

(before venue was transferred to this Court). Sagi's investigator was *not* a witness at that

hearing. In fact, he was never identified on Sagi's or any other party's original or updated

witness lists. *See* ECF Nos. 522, 525. Nor did Sagi provide notice to any party that he had

issued the subpoena. Moreover, the Secret Subpoena – concealed from the parties and the Court

– was without any legal effect since it was issued to a foreign national in Israel over whom a

U.S. court had no jurisdiction. It is plain that Sagi's Secret Subpoena was nothing more than a

sham. It served no legitimate purpose in these U.S. proceedings, but instead appears to have

been improperly issued solely in a failed attempt to provide "cover" to Sagi's Israeli investigator

for his attempted good faith defense, which as noted above was rejected by the Israeli court.

Sagi has no legitimate justification for abusing the subpoena power in this way. Clearly,

it was not (and could not have been) used to summon a trial witness outside U.S. jurisdiction.

Nor was it used to obtain documents that had been previously disclosed in discovery leading up to that hearing.

Even apart from the illegal nature of the report, using a Rule 45 subpoena to supposedly obtain the report was doubly improper considering prior notice was never provided, and, "without question, Rule 45(b)(1) requires a party issuing a subpoena for the production of documents to a non-party to 'provide prior notice to all parties to the litigation.'" *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 222 (W.D.N.Y. 2000) quoting *Schweizer v. Mulvehill,* 93 F.Supp.2d 376, 411 (S.D.N.Y.2000). It is beyond dispute that no notice was provided here, as Mr. Dellaportas admits. *See* Ex. D (Oct. 13, 2021 Dellaportas email). "[W]hen an attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded." *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D.Md. 1999). *See DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) *citing United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991).

The existence of this subpoena also contradicts Mr. Dellaportas' earlier representations to this Court that he was unaware of any investigative report concerning me. On March 4, 2020, Mr. Dellaportas told this Court that he did not have a copy of the 'Herschmann Report' and that he was unaware of its very existence (ECF No. 227, March 4 Hr'g Tr. at 73:3-4): "We have nothing further beyond what we've provided (*i.e.*, the Orly Report)." Mr. Dellaportas subsequently represented to this Court that he first learned of the Report in April 2020 after he spoke with Sagi's Israeli counsel. (Dellaportas April 20, 2020 letter, ECF No. 241-1 at 2).[6]

---

[6] Had Mr. Dellaportas been mistaken or confused about the existence of the Herschmann Report, the time for him to have corrected the record would have been when he made these assertions to this Court.

However, counsel for Mr. Parnes, whose firm commissioned the Report (*see* Order at 22), told the Israeli court that Parnes does not have the Report in his possession, and that, "[i]t stands to reason that [the Report] was passed from the private investigator directly to the client, Sagi Genger." (Ex. E, Israel Court Protocol, p. 2).[7]  In that same hearing, Ms. Altshuler, an attorney with Parnes' firm (*see* Ex. G), who dealt directly with the investigator, claimed that even if the investigator *had* sent the Herschmann Report to her back in 2019, she would have immediately *destroyed* her only copy and permanently wiped any traces of it off of the computer system.  *See* Ex. C (Transcript) at lines 9-13, and Ex. E, Israeli Protocol, p. 2.  It is unclear, then, how Sagi's Israeli counsel could have sent a copy of the Herschmann Report to Mr. Dellaportas after the March 4, 2020 hearing if they had in fact destroyed all evidence of its existence back in 2019.

It is also hard to imagine that Sagi and Sagi's counsel in Israel never shared the Herschmann Report with Mr. Dellaportas, let alone even told him it existed, considering Mr. Dellaportas – who has worked alongside Sagi's Israeli counsel for years in jointly representing Sagi – had asserted that information contained in the Herschmann Report was "highly material" to this bankruptcy case.  ECF 241-1 at 2.  Additionally, Sagi was in Court for the March 4, 2020 hearing in which Mr. Dellaportas claimed he did not know of the Report's existence; it is therefore similarly hard to imagine that even at that point he still did not tell Mr. Dellaportas about the report's existence, and that Mr. Dellaportas had to wait and find out about it from Mr. Parnes months later.  Moreover, the Secret Subpoena is consistent with Parnes' and the investigators' version of events, and not Mr. Dellaportas' story, since that subpoena – signed by Mr. Dellaportas – explicitly requests the investigators' documents concerning not just Orly, but

---

[7]  As this Court has noted, "Sagi maintains that he has never met, spoken with, or written to [the Israeli investigator] Mr. Matityahu." Order at 23.

also me.  Mr. Dellaportas claimed that the reason he misrepresented to the Court that he was

"only aware of [a] single report from the investigator" is because he was "asked unexpectedly

about it" at the March 4 conference.  (Dellaportas May 4, 2020 letter, ECF No. 241 at 2).  That

too is belied by the record because the issue had been raised and discussed for "six months" – as

Mr. Dellaportas conceded in his letter to this Court.  (Dellaportas April 20, 2020 letter, ECF No.

241-1 at 1).

## C.    <u>Conclusion</u>

As shown, the recent issuance of the Israeli Court Decision confirms that the relief I am

seeking based on the crime-fraud exception should be granted.  There is now no question that the

Herschmann Report was created as part of a crime committed by Sagi's agents in Israel against

me.  A subpoena from this Court was improperly used by Sagi and his counsel to attempt to

subvert the course of justice in Israel.  While Sagi argued to this Court that my seeking a copy of

the Herschmann Report was designed to interfere with the Israeli court's jurisdiction, Sagi's

investigator and his counsel simultaneously argued that the Israeli court actions were designed

solely to interfere with his providing testimony in this bankruptcy proceeding.  This attempt to

play one court against another in two separate countries violates fundamental precepts of comity

and threatens the integrity of both.

Sagi's attorneys and his investigator in Israel claim to have destroyed their only copies of

the Herschmann Report – the same document that Mr. Dellaportas provided to Your Honor in

camera, months after it was supposedly destroyed – and therefore could not produce it during

discovery in Israel, which makes my need for this Court's relief all the more acute.

For the foregoing reasons, and as a form of sanction against Sagi and his counsel's

misconduct, I respectfully request that my application be granted and Sagi and his counsel now

be ordered: (i) to produce to me (and only to me) any and all reports or other documents,

including electronic and native format versions with metadata, that contain or refer to any of my

personal information not obtained by subpoena or court order; (ii) to identify all persons to

whom such information has been communicated; (iii) to produce the contents of those

communications; and (iv) to hold all such information, reports or other documents in strict

confidence pending further order of this Court.


Dated: April 15, 2022

Respectfully submitted,


/s/ Eric D. Herschmann
Eric D. Herschmann, *pro se*
210 Lavaca Street, #1903
Austin TX  78701