

# EMMET, MARVIN & MARTIN, LLP
## COUNSELLORS AT LAW

120 Broadway
New York, New York 10271
212-238-3000

**www.emmetmarvin.com**

Thomas A. Pitta
*Partner*
Tel: 212-238-3100
Fax: 212-238-3100
tpitta@emmetmarvin.com

June 14, 2022

**Via FedEx**
Honorable James J. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

    RE:   *In re Orly Genger*, Case No.: 19-13895-jlg

Dear Judge Garrity:

    This firm represents judgment creditor Sagi Genger ("**Sagi**") in the above Chapter 7 case. I write to address the adversary proceeding complaint filed the evening of Friday, June 10, 2022 (the "**Complaint**") (Docket No. 564) by the Chapter 7 Trustee (the "**Trustee**") and various parties aligned with the Debtor (the "**Plaintiffs**"), against various creditors of the estate, including Sagi, and others (the "**Defendants**").

    The Complaint makes three judicial admissions that directly contradict and undermine the positions taken by the Plaintiffs in connection with Sagi's pending Motion to Dismiss and the Trustee's 9019 Motion (collectively, the "**Pending Motions**"). We therefore request their addition to the record on each of the Pending Motions. A party is "bound throughout the course of the proceeding" by its prior arguments. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (party cannot contradict its own pleading with affidavits); *see also Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible") (internal quotation marks omitted).

### Orly's Entitlement to Proceeds of the 2013 Settlement

    As this Court is aware, the U.S. District Court twice found that Orly had "monetized her beneficial interest [in TRI] for $32.3 million." *Genger v. Genger*, 2018 WL 3632521 at *6 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99 (2d Cir. 2019), citing *Genger v. Genger*, 76 F. Supp.3d 488, 493-94 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016). Despite this final court adjudication, the Debtor and her fraudulent transferees consistently asserted throughout the bankruptcy case that the Debtor was not entitled to any of the $32.3 million (which the Court will recall is comprised of $17.7 million that was paid in 2013 and the two $7.5 million "Settlement Notes"), and that she was therefore insolvent.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
June 14, 2022
Page 2

Specifically, in her objection to the Motion to Dismiss, the Debtor argued with respect to the $32.3 million that (a) "she neither has this money nor, in her good faith view, a legal right to it" (Docket No. 425, at ¶ 74), (b) "Orly's interest extends only to the point of demonstrating that the funds do not belong to her" (*Id*., at ¶ 78), and (c) "Arie is entitled to that $32.3 million in cash" (*Id*., at ¶ 81). Similar arguments were made throughout the trial on the Motion to Dismiss by ADBG, Arie Genger, Eric Herschmann and Kasowitz to support their arguments that this bankruptcy should be allowed to continue and that the Debtor had not filed misleading schedules. Additionally, pre-petition, the Debtor argued to the U.S. Court of Appeals for the Second Circuit that "The remaining balance of $15 million [from the original $32.3 million] … has nothing to do with Orly." *See* Corrected Reply Brief for [Orly Genger], admitted as Movant's Trial Exh. 10, p. 21 (Docket No. 239-11).

Contrary to their prior arguments, Count VII of Plaintiffs' Complaint now asserts that <u>the Debtor</u> has been damaged by the Defendants' actions that have prevented the two $7.5 million "Settlement Notes" from maturing and otherwise sought to "interfere with and try to obtain for themselves the benefits of the 2013 Settlement." *See* Complaint ¶¶ 268-271. By necessity, the Debtor cannot be damaged by the failure of a third party to pay on notes to which the Debtor explicitly disclaims any right <u>unless the Debtor actually does have such a right</u>. She does. Sagi demonstrated at the trial on the Motion to Dismiss that the Debtor is entitled to direct the payment of a significant portion of the proceeds of the Settlement Notes pursuant to the March 31, 2017 Escrow Agreement. The Debtor's ownership of those proceeds was also reflected in Arie Genger's tax returns and elsewhere. Now that the Debtor finally acknowledges her claim to the proceeds of the Settlement Notes, the Court must consider that admission (and her prior, false denials) in connection with its decisions regarding the Pending Motions.

**The Debtor's Status as a Borrower from the Brosers**

The Debtor also argued (contrary to all of the relevant documentation) that she had borrowed money from her father and not the Brosers. According to the Debtor's post-trial brief in connection with the Motion to Dismiss, the Debtor "never did borrow any funds from the Brosers." (Docket No. 511, at ¶ 7). The brief cites to testimony at the trial by the Debtor, her father Arie, and David Broser all stating that she never borrowed money from the Brosers. *Id.* This argument was critical to the Debtor's position because, if the Debtor were obligated directly to the Brosers, she could not also be obligated for the same amounts to her father Arie, and the parties had gone to great lengths to make it appear that she was, including fabricating ten supposedly superseded notes.

Count VII of the Complaint also asserts damage to <u>the Debtor</u> on account of certain Defendants seeking to recover the $17.3 million previously paid to the Brosers. That amount was allegedly used to satisfy a portion of the loan obligations of Arie to the Brosers.

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
June 14, 2022
Page 3

The Debtor's claim of damage as a result of certain Defendants seeking to recover those amounts is directly contrary to the allegations made by the Debtor and the other Plaintiffs that the Debtor did not borrow any money directly from the Brosers.

These directly contradictory arguments by the Debtor are further evidence of her bad faith and should be considered by this Court in connection with the Pending Motions. *See In re Tamecki*, 229 F.3d 205, 229, n.2 (3d Cir. 2000) (holding that "where [the party objecting to discharge] has called into question debtor's good faith, and put on evidence sufficient to impugn that good faith, the burden then shifts to the debtor to prove his good faith"); *see also Piazza v. Keswani (In re Keswani)*, 20-10345-JLG (Bankr. S.D.N.Y. Jan. 7, 2022) (holding that "[o]nce the objecting party has produced evidence of a false statement, the burden shifts to the debtor to provide evidence that the misrepresentation was not intentional or provide another credible explanation").

**The Trustee Effectively Forfeits the Estate's Primary Asset**

The Complaint is also unfortunate in that the Trustee goes further in abandoning her fiduciary duty to the estate than she did in the 9019 Motion. While the 9019 Motion contained statements by the Trustee that would have undermined the potential value of the fraudulent transfer claims in the event the Court did not approve the settlement, the Complaint, to which the Trustee is a Plaintiff and signatory through counsel, states unequivocally in paragraph 4 that the "$32.3 million … was supposed to be paid to Arie and ADBG." As this Court is well aware, in order to preserve the value of their claims should the Court not approve a settlement, parties to bankruptcy settlements do not concede their opponent's position prior to approval of the settlement even in ordinary cases, let alone here, where the opponent's position is debunked by the prior judicial findings of the District Court, unanimously affirmed by the Second Circuit.

The Trustee has apparently become so certain of the righteousness of her potential opponents' position that she is willing to deviate from that standard and leave herself completely unable to recover the $32.3 million – far and away the estate's principal asset – if this Court does not approve her settlement. The Trustee's actions have created an even greater need for the Court to grant Sagi's cross-motion for *STN* standing in the event it does not grant the 9019 Motion, because the Trustee's allegations in the Complaint would certainly be used as a judicial admission against her in any future attempt to recover the $32.3 million. Furthermore, depending on the Court's disposition of the Pending Motions, Sagi reserves the right to seek redress for the Trustee's repeated abdication of her duties, including through a motion for removal for cause.

The Complaint is also completely frivolous for a number of other reasons, including that it follows through on the Trustee's unfortunate earlier promises to seek to re-litigate claims the Debtor previously lost in other courts. We will respond to the Complaint in full

EMMET, MARVIN & MARTIN, LLP

Honorable James J. Garrity, Jr.
June 14, 2022
Page 4

on its merits in due course but write here only to address aspects of the Complaint that are relevant to the Court's consideration of the Pending Motions.

    We thank the Court for its consideration.

                          Respectfully submitted,

                          /s/ *Thomas A. Pitta*
                          Thomas A. Pitta
                          Emmet, Marvin & Martin, LLP
                          120 Broadway, 32nd Floor
                          New York, New York 10271
                          *Attorneys for Sagi Genger*

Encl.