UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 7 |
|---|---|
| Orly Genger, | Case No. 19-13895-JLG |
| Debtor. | |

# MEMORANDUM OF LAW
# IN OPPOSITION TO SAGI GENGER'S
# MOTION FOR RECONSIDERATION

Chapter 7 Debtor Orly Genger ("Orly") and creditor Eric Herschmann ("Herschmann") submit this memorandum of law in opposition to Sagi Genger's motion ("Motion" or "Mot.," ECF No. 630) to reconsider two "findings" in this Court's order denying his motion to dismiss Orly's bankruptcy proceeding ("Order," ECF No. 615).

## PRELIMINARY STATEMENT

Sagi's motion to reconsider is devoid of any legal or factual basis.

Sagi asks this Court to revisit its finding "adopting," as Sagi puts it, Orly's supposed "advice-of-counsel" defense to Sagi's challenge to her bankruptcy filings and its finding that Herschmann's $2 million loan to Orly is enforceable. Sagi's Motion suffers from at least two fundamental and fatal defects, each of which independently requires its denial.

First, Sagi does not and cannot show, as he must, that the Court would have granted his motion to dismiss if the Court had made those two "findings" differently. As to Sagi's "advice-of-counsel" argument, the Court held not only that Orly's bankruptcy counsel had not erred in preparing her bankruptcy filings, but that even if he had, that would be no ground for dismissing her bankruptcy proceedings. As to Herschmann's loan, even assuming that the loan was not

enforceable (which it was, as the Court correctly held), that also would be no grounds for dismissal—given Orly's enormous other debts.

Second, Sagi does not and cannot show, as he must, that the Court overlooked anything in issuing its Order. The Court's finding that dismissal cannot be grounded on supposed errors by bankruptcy counsel is mandated by well-established law. Nor did the Court overlook anything in correctly concluding, based on its detailed analysis of the overwhelming and dispositive documentary and testimonial evidence, that Herschmann's loan was Orly's *bona fide* obligation.

Sagi complains that the Court overlooked certain legal arguments as to the loan's enforceability—but it was Sagi who overlooked those arguments by not raising them at all on his motion to dismiss, thereby waiving them. In any event, his complaint is false. The Court addressed and correctly rejected all of those meritless arguments in its June 15, 2021 Memorandum Decision and Order denying Sagi's motion *in limine* to exclude Herschmann and the Kasowitz firm from appearing at or participating in the hearing on the motion to dismiss. *See* ECF Nos. 441 (Sagi's MIL), 451 (MIL opposition), 461 (Court's decision and order denying MIL).

Sagi's frivolous Motion should be denied, and, under the Court's inherent power, Orly and Herschmann should be awarded their attorney's fees and costs incurred in opposing it.

## ARGUMENT

### I.   Sagi's Motion Fails Under Bankruptcy Rule 9023 and Local Rule 9023-1

In seeking reargument pursuant to Local Rule 9023-1, Sagi must identify "the matters or controlling decisions which counsel believes the Court has not considered." Local Rule 9023-1. The rule "is strictly construed to avoid repetitive arguments on issues that the court has already fully considered," and the "parties cannot advance new facts or arguments; a motion for

reargument is not a vehicle for presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *In re Best Payphones*, No. 01-15472 (SMB), 2008 WL 2705472, at *6 (Bankr. S.D.N.Y. July 3, 2008).

Likewise, under Federal Rule of Civil Procedure 59(a), which "Rule [9023] of the Rules of Bankruptcy Procedure makes applicable to motions for a rehearing of an issue decided by a bankruptcy court," the standard is "strict; a motion for a new trial may be granted in an action tried without a jury only if there is a manifest error of law or mistake of fact." *In re Cross Media Mktg. Corp.*, No. 06-cv-4228, 2006 WL 2337177, at *8 (S.D.N.Y. Aug. 11, 2006) (citing *Bell v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir. 1995)). *See also Zemon v. Papadopoulos (In re Papadopoulos)*, No. 12-13125 (Garrity, J.) at *4 (Bankr. S.D.N.Y. Mar. 13, 2015) ("[A] court can revisit a prior decision based upon an intervening change in the controlling law, the availability of new evidence, to correct manifest errors of law or fact upon which the judgment is based, or to prevent manifest injustice.").

None of the grounds for this Motion apply here: the Court did not overlook anything; Sagi has no new evidence; there has been no change in controlling law; there has been no "manifest injustice"; and there was no error, let alone manifest error, at all. The Order was and is fully warranted by the law and the facts. There is no basis for Sagi to have a second bite at the apple here.

Sagi claims to disagree with two "findings" in the Order, but he does not even contend that the Order would have been decided differently had the Court made the "findings" Sagi wishes it had made. *See* Mot. at 2. It would not have. Orly's bankruptcy filing was made in good faith, and therefore the denial of Sagi's motion was correct, regardless of any advice she may have received from counsel with respect to the preparation of her bankruptcy petition and

schedules. Even assuming, *arguendo* and contrary to law and fact and this Court's Order, that there were "failings" in Orly's bankruptcy statements (Mot. at 2), Sagi, in his motion, entirely fails to show that any such failings would or should have altered the Court's decision to deny the motion to dismiss the entire case as having been filed in bad faith. The "failings" Sagi complains of now are not any more indicative of any sort of bad faith than are the multitude of Sagi's other baseless allegations of supposed bad faith that the Court correctly rejected in denying the motion to dismiss.

With respect to the Herschmann loan, even if Sagi were right (and he is not) that that loan should not be considered part of Orly's obligations, Orly's bankruptcy filing was still undertaken in good faith, because she had enormous obligations she could not pay separate and apart from that loan, including, among others, her debt to Arie Genger (*see* Order at 86) and Sagi's own multimillion-dollar judgment against her. *See id.* at 91 ("[Orly's] debts were largely accrued through her obligations to fund years' worth of litigation. [Sagi's] 2018 Judgment is by no means the only claim against Orly's estate. While that judgment certainly did precipitate Orly's petition, as she concedes, it was not her sole motivation for the filing—on its face, that judgment simply represents an enormous debt outstanding, which Orly credibly represents that she cannot pay."). Sagi does not even attempt to argue in his Motion (Mot. at 5-9) that, had the Court disregarded the Herschmann loan, the Court would not have concluded, as it did, that the *Lombardo* factors mandated Sagi's motion to dismiss.

Nor, again contrary to Sagi, did the Court "overlook" any of Sagi's legal arguments concerning the *bona fide* nature of Herschmann's loan to Orly. *See* Section III, *infra*. Not only did the Court consider and reject all of those meritless arguments in denying Sagi's pre-hearing motion *in limine* ("MIL") in which Sagi sought to prevent Herschmann and the Kasowitz firm

4

from being able to attend and participate in the motion to dismiss hearing (*see* ECF Nos. 441 (Sagi's MIL); ECF No. 451 (MIL opposition); ECF No. 461 (Court's decision on MIL)), Sagi did not even bother to raise them in his motion to dismiss, at the hearing, or in his lengthy post-hearing memorandum.

Because Sagi cannot demonstrate that the two "findings" he prefers the Court had made in its Order would affect the outcome of the motion to dismiss—and they would not, or that there has been any manifest error of law or mistake of fact—and there has not been, Sagi's Motion must be denied.

## II. Orly Did Not Use Privilege as Both a Sword and Shield

Sagi asserts that the Court erroneously allowed Orly to invoke an "advice of counsel" defense, while also invoking attorney-client privilege, in ruling, in his words, that "various failings in Orly's bank[ruptcy] schedules were not made in bad faith because 'Orly prepared her Petition and Schedules with the advice of legal counsel.'" Mot. at 2, citing Order at 57. He argues that the Court's ruling runs afoul of the prohibition against using privilege as both a sword and shield.

Sagi's argument is flat wrong. Orly never invoked privilege with respect to any of the relevant communications in this regard—namely, her communications with her bankruptcy lawyer, Eric Taube. Contrary to the red herring Sagi raises, and as is evident from this Court's correct determination in the Order that Orly's schedules were accurate and complete, Orly did not withhold any information based on advice from counsel (Order at 56-59, 68), nor did she reveal and use selected legal advice as a "sword" while withholding other advice on the same subject matter as a "shield." There has been no waiver here, accordingly.

Moreover, a client who claims she acted on advice of counsel is perfectly entitled to invoke privilege on topics not the subject of that advice. *Cf. S.E.C. v. Wyly*, 2011 WL 3366491

5

at *2 (S.D.N.Y. July 27, 2011) ("A client who claims that he acted on advice of counsel cannot use the privilege to prevent inquiry into the communications that the client and lawyer had about *that* advice.") (emphasis added), *citing United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991). *See also In re Cnty of Erie*, 546 F.3d 222, 228-229 (2d Cir. 2008) (waiver, if any, does not extend beyond privileged advice relied on). That is all Orly did here. Sagi cannot point to a single instance where Orly invoked privilege to prevent inquiry into communications concerning the preparation of her filings, and Sagi never moved to compel the production of any documents over Orly's responses to Sagi's objectionable discovery requests. Nor can Sagi point to any instance where Orly objected on privilege grounds to any question Sagi asked about her communications with or advice from Mr. Taube, or to any assertion of privilege by Orly having to do with the specific purported issues with the Global Notes Orly filed.

In his typical fashion, of course, that does not stop Sagi from falsely asserting that "Orly asserted privilege over anything and everything." Mot. at 4. He likewise misleadingly claims that Orly refused to answer his questions about the March 2017 escrow agreement. He cites his motion seeking "preclusion and/or a negative inference," which he refers to in this Motion as a "motion to compel" (ECF No. 291), challenging a privilege objection interposed during Orly's first day of deposition. The Court denied that motion, as he admits, and correctly so for numerous reasons, including the fact that Orly *did* answer his questions about the escrow agreement on the second day of her deposition, a fact Sagi misleadingly omits. *See* ECF No. 354 (Opposition to Sagi's motion at ECF No. 291). Moreover, at trial, Sagi's lawyer questioned Orly on the agreement, and no privilege objection was interposed at all as to those questions. *See* June 17, 2021 Tr. 83:1 to 91:15.

6

On examination by her own lawyer at trial, Orly testified at length about her communications with her bankruptcy counsel and her bankruptcy lawyer's preparation of the Petition, Global Notes and Schedules. June 21, 2021 Tr. 45:23 to 59:12; Debtor Ex. 16. On redirect, no privilege objection was interposed when Sagi asked further questions about Orly's communications with Mr. Taube, and Sagi's counsel elected not to ask a single question about the preparation of her bankruptcy filing. June 21, 2021 Tr. 96:5 to 100:3. As the record demonstrates, at no time did Orly invoke any privilege "shield" with regard to her communications with Mr. Taube. *See, e.g.*, *id.* 98:17 to 100:3 (Orly testimony). *See also* June 18, 2021 Tr. 221:21 to 222:2 (Fischer testimony).

Accordingly, Sagi's entire premise for his sword/shield argument is false.

Moreover, the Court never ruled that there were any "failings" in Orly's Petition and Schedule. The pertinent rulings in the Order in this regard are as follows:

- "Orly has not submitted a false oath under section 727(a)(4) of the Bankruptcy Code," and Orly's bankruptcy counsel's "inclusion of the Global Notes with the Petition is not a ground for dismissing the Chapter 7 Case";

- "in executing the statement of oath in the preprinted form, as altered by counsel to read: 'subject to the Global Notes, attached,' Orly has not submitted a false oath under section 727(a)(4) of the Bankruptcy Code"; and

- "Orly adequately disclosed her assets in the Schedules."

Order at 57-58. There was therefore never any need for Orly to invoke, or the Court to rule on, any advice of counsel defense in the first place.

The Court further held that even if, as Sagi claimed, Orly's counsel had erred, under well-established law that is no ground for dismissing her bankruptcy case:

7

> Moreover, and in any event, under the facts of this case, to the extent Orly's counsel erred in including the Global Notes with the Petition, such an error would not be a ground for dismissing the Chapter 7 Case….Orly clearly did not write the legalese of the "Global Notes" preface or on her own put a condition on the statement of oath. That was her lawyer. She cannot be blamed for taking legal counsel in matters as complex as her financial and litigation affairs are.

Order at 58 n.51, *citing In re Nichols*, 362 B.R. 88, 96 (Bankr. S.D.N.Y. 2007) (noting that "dismissal of a bankruptcy case will often cause debtors to be irreparably harmed, and this result is unjust when it arises from attorney error that has not resulted in harm to any other party in interest"); *In re Fraleigh*, 474 B.R. 96, 105, 110 (Bankr. S.D.N.Y. 2012) (finding "mistakes in the schedules will not doom a debtor's discharge" where the debtor "reasonably relied on her attorney to make the appropriate use of [the debtors' financial] information in the legal work she had hired him to perform"); *see also In re Khan*, 172 B.R. 613, 627 (Bankr. D. Minn. 1994) (denying motion to dismiss when debtors' "schedules' shortfall … as to [debtor's] income and expenses … is attributed only to one thing: counsel's failure to give a competent, hardheaded review of the content to his client").

Nor did Orly disclose select privileged communications of legal advice on which she relied. Rather, she simply referred to settled case law that, because her bankruptcy forms were filled out by her bankruptcy lawyer, she should not be blamed for any mistake on his part, though there was none. *See* ECF No. 511 (Debtor's Post-Trial Memorandum Opposing Dismissal, dated July 30, 2021, at 18, ¶ 26); ECF No. 425 (Debtor's Objection, dated June 1, 2021, ¶¶ 82-85: "Errors in a filing done by counsel are not worthy of dismissal.").

The analysis in the Order reflects the Court's application of that settled law, which renders irrelevant the question whether the forms were properly filled out. Either way, as shown, Sagi's Motion must be denied.

### III. Sagi Waived His Challenge to Herschmann's $2 Million Loan And His Legal Arguments Concerning this Loan Are Meritless

With respect to the Herschmann loan, Sagi failed to raise any of the meritless legal arguments at issue on this Motion—that the loan is supposedly unenforceable under the New York General Obligations Law and the rules of professional conduct—in his motion to dismiss, at the trial on the motion to dismiss, or in his post-trial submissions. The arguments have accordingly been waived. As the Second Circuit has made clear, *Rosenfeld v. Basquiat*, 78 F.3d 84, 90 (2d Cir. 1996), "[w]hen a trial court has ruled on a motion made *in limine*, there must, in some circumstances, be another evidentiary ruling during the trial to preserve the matter for appeal," such as when the matter at issue "must be resolved in the developed context of the trial." Here, all of Sagi's arguments about the enforceability of the Herschmann loan, including those he raises on this Motion, had to be resolved, and were resolved, in the developed context of the motion to dismiss trial. For example, Sagi claims that the loan was made in violation of attorney ethics rules because Herschmann is an attorney, but Sagi ignores that, as the evidence at trial proved, Herschmann made the loan as Orly's spouse, not as her attorney. Because he elected not to re-raise his *in limine* arguments at trial, Sagi therefore cannot rely on the meritless arguments he makes concerning the enforceability of the loan on this Motion.

The only authority Sagi cites (Mot. at 5-6) in support of his argument that the Court can revisit its Order now to consider legal arguments he raised only in his pre-trial motion *in limine* is an inapposite criminal case concerning appellate review of an evidentiary issue, which has nothing to do with a motion for reconsideration—but in any event does not advance Sagi's position. In that case, *U.S. v. Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995), the court held that a court of appeals may consider an evidentiary issue not raised by a criminal defendant during trial

9

only if the issue could be and was finally decided in a pre-trial hearing.  On this Motion, Sagi raises alleged legal issues concerning Herschmann's loan, not evidentiary ones.  Moreover, as discussed above, matters concerning Herschmann's loan had to be addressed, and were addressed, at the motion to dismiss trial, though Sagi elected not to raise his purported legal arguments at that time.  Therefore, those arguments, which Sagi made only in his motion *in limine* (which was denied), were not preserved.

But in any event, Sagi's non-preserved legal arguments concerning the Herschmann loan have no merit.  First, Sagi contends that Herschmann's $2 million loan to Orly and Arie is barred under New York General Obligations Law Section 5-1105, which Sagi argues requires that past consideration for a promise be expressed in writing.  *See* GOL § 5-1105.  But contrary to what Sagi argues, because the promissory note amounts to an unconditional promise to pay a sum certain at a definite time, it is governed by the UCC, *see* NY UCC § 3-104, and not General Obligation Law 5-1105.

Sagi claims that the UCC does not apply because he says that the loan is not payable at a definite time.  Mot. at 7.  That is false.  The clear language of the promissory note confirms that in all circumstances the loan would become payable in full on a date certain: no later than March 31, 2020.  ECF No. 435-3 at § 2.  As it happened, however, the loan became due earlier than that—the moment Sagi obtained the judgment against Orly (which resulted in Orly having to file for bankruptcy).  *See* ECF No. 435-3 at § 2 and § 6(g) (loan immediately payable on an "Event of Default," which occurred on August 17, 2018, when Judge Forrest of the Southern District of New York entered a "judgment[] for the payment of money in excess of $100,000" against Orly).  Moreover, contrary to what Sagi argues, the enforceability of the promissory note was not "governed by" or conditioned on any other agreement, including what Sagi refers to (Mot at. 7)

10

as "the Broser's debt instrument." At most, the note merely is "subject to implied or constructive conditions" with respect to priority of payment in light of the reference therein to another obligation of the borrowers, which does not render it unenforceable or conditional according to the UCC. *See* NY UCC § 3-105(1)(a) ("A promise or order otherwise unconditional is not made conditional by the fact that the instrument …is subject to implied or constructive conditions").

Further, even if General Obligations Law Section 5-1105 did apply, Herschmann's loan would still be a valid and enforceable legal obligation of Orly because it is undisputed that the proceeds were used to satisfy Orly's preexisting debts—her legal bills (*see* Order at 79-80)—as reflected in the note itself which acknowledges that her promise to pay was made "FOR VALUE RECEIVED." *See*, *e.g.*, *Formica Const. Co., Inc. v. Mills*, 9 Misc.3d 398 (N.Y. Civ. Ct. 2005). There, the court held:

> [The] Note here is a negotiable instrument governed by Article 3, and not simply a promise to pay to be construed according to General Obligations Law § 5–1105. However, even if GOL § 5–1105 was the only applicable statute, it would not bar enforcement of the Note. On its face, the Note states that "FOR VALUE RECEIVED" [borrower] acknowledged himself indebted to [lender] in the stated amount. This language, coupled with the fact the Note was given for work already performed by [lender], is sufficient to satisfy the statute.

*Id.* at 404-05. Here, as the Court acknowledged in the Order, Orly utilized the loan to pay her existing bills to the law firm of which Herschmann was member. *See* Order at 79-80. And it does not matter that Herschmann paid the loaned funds directly to the Kasowitz firm, because payment constituted a benefit to Orly. *See Flooring Technologies v. Belarge*, 2008 N.Y. Slip Op. 31048, 3 (N.Y. Sup. Ct. 2008) ("Here, the defendant received a benefit in the fact that the money or services was given to a third party…by the plaintiff. In return for this benefit, the defendant promised to pay the obligation when due to the plaintiff.") *See also* N.Y.U.C.C. § 3-408 ("no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind"); *Citicorp Int'l Trading Co. v. W. Oil &*

11

*Refining Co.*, 790 F. Supp. 428, 435 (S.D.N.Y. 1992) (finding that a promissory note based on a pre-existing debt was supported by valid consideration); *Sun Forest Corp. v. Shvili*, 151 F. Supp. 2d 367, 391 (S.D.N.Y. 2001) (same).

Second, Sagi also rehashes his argument that Herschmann's loan should be deemed invalid because Sagi claims it was "unethical" for Herschmann, an attorney, to loan money to his wife. Mot. at 8-9. This argument fails too. As the Court correctly found—and as Sagi does not challenge on this Motion—Herschmann's $2 million loan was used to satisfy a portion of the fees she owed the Kasowitz firm for legal work. *See* Order at 79-81. Under Sagi's absurd theory, even though his own relentless litigation campaign has rendered his sister Orly penniless, Herschmann could not provide his wife any financial assistance and be repaid. This is just the latest in the many false stories Sagi has spun out of whole cloth (*e.g.*, that the Kasowitz firm's work was all performed on a pro bono basis, that no funds were transferred from Herschmann on account of the loan, that the Herschmann loan documents were backdated, that Orly's premarital agreement was part of a scheme to frustrate his efforts to collect on his judgment) to try to claim that Herschmann's loan was not legitimate. All of these stories were properly rejected by this Court because they are patently absurd and completely contrary to all of the evidence. *See* Order at 26, 79-81.

None of the authorities Sagi cites (Mot. at 8-9) has any relevance here or in any way bars a husband from lending money to his wife, whether or not he was or is her attorney. *Wohlner & Assocs. v. Wesley Medical Ctr. (In re Wallace)*, 102 B.R. 174, 176 (W.D. Mo. 1989) involved a lawyer advancing money to a client to pay bills unrelated to litigation expenses and acquiring an interest in the subject matter of the litigation. *Gorman v. Gordensky*, 130 Misc. 2d 837 (N.Y. Sup. Ct. 1985) concerned an attorney splitting his fees with a non-lawyer, in alleged

12

contravention of the Code of Professional Responsibility.  And *In re Worldpoint Interactive, Inc.*, 2005 WL 6960239, (B.A.P. 9th Cir. June 28, 2005) invalidated an agreement placing a lien in favor of a debtor's former law firm on the debtor's assets because the debtor had not had the advice of independent counsel.  None of these cases had anything to do with a spouse lending money to the other spouse to pay legal fees.

Moreover, the rule Sagi cites, Rule 1.8(e), explicitly permits an attorney "to advance court costs and expenses of litigation" to a client.  Here, as the Court has already ruled, because it was proven, that the $2 million that Herschmann loaned was intended to and was used exclusively to pay litigation expenses incurred by Orly.  Order at 79-80.  Notably, the rule Sagi cites also expressly recognizes that a spousal relationship must be taken into account.  *See* Rule 1.8(j) of the New York Rules of Professional Conduct (no bar to lawyer having sexual relations with a spouse who is also a client).

In short, if there has been any unethical conduct in connection with this loan, it is Sagi's lawyers' repeated assertion of this frivolous argument.

## CONCLUSION

For the foregoing reasons, Sagi's Motion should be denied in its entirety, and under the Court's inherent authority, Orly and Herschmann should be awarded the attorneys' fees and costs they have incurred in opposing it.

Dated: September 18, 2023

| | |
|---|---|
| GLENN AGRE BERGMAN & FUENTES LLP | ERIC HERSCHMANN, individually |
| By: /s/ Michael Paul Bowen<br>Michael Paul Bowen<br>1185 Avenue of the Americas, 22nd Floor<br>New York, New York 10036<br>T: 212-970-1607<br>mbowen@glennagre.com<br><br>*Attorneys for the Debtor Orly Genger* | By: /s/ Eric D. Herschmann<br>Eric D. Herschmann<br>210 Lavaca Street, #1903<br>Austin TX 78701<br>EDHNotice@gmail.com<br><br>*Pro se* |