# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**          NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                            :
                                                                  :
Orly Genger,                                                      :    Case No. 19-13895 (JLG)
                                                                  :    Chapter 7
                                          Debtor.                 :
-----------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER
### DENYING ERIC HERSCHMANN'S MOTION FOR RECONSIDERATION


**A P P E A R A N C E S:**

EMMET, MARVIN & MARTIN, LLP
*Attorneys for Creditor Sagi Genger*
120 Broadway, 32nd Floor
New York, NY 10271
By:    John Dellaportas
       Thomas A. Pitta


Eric D. Herschmann
*Appearing Pro Se*
210 Lavaca Street, #1903
Austin, TX 78701

1

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

By its Decision and Order (the "Order"),[2] the Court denied Eric Herschmann's ("Herschmann") request to compel Sagi Genger ("Sagi") to turn over to him all copies of the Herschmann Report in his possession and custody and granted Sagi's request for a protective order shielding the Herschmann Report from discovery. The matter before the Court is Herschmann's motion for reconsideration of the Order (the "Motion")[3] pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("FRCP"), made applicable to this case by Rule 9023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and to the Court's inherent authority to review its orders. Sagi opposes the Motion.

For the reasons set forth herein, the Court denies the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

On July 12, 2019 (the "Petition Date"), Orly Genger ("Orly" or the "Debtor") commenced her voluntary case under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case") in the United

---

[1] Capitalized terms shall have the meanings ascribed to them herein. References herein to "ECF No. ___" are to documents filed on the electronic docket of the Chapter 7 Case.

[2] *Memorandum Decision and Order Granting Motion for Protective Order*, ECF No. 348.

[3] *Motion for Reconsideration*, ECF No. 557.

2

States Bankruptcy Court for the Western District of Texas (the "Texas Bankruptcy Court"). Sagi and Herschmann are Orly's brother and husband, respectively. Both have filed proofs of claim against Orly in this case. Sagi filed a motion in the Texas Bankruptcy Court to dismiss the Chapter 7 Case or, alternatively, to transfer the venue of the case to this Court.[4] The Debtor opposed the motion. After a hearing, the Texas Bankruptcy Court directed the venue of the case be transferred to this Court.[5] In December 2019, the case was transferred to this Court.[6] Deborah Piazza is acting as the chapter 7 trustee of the Debtor's estate.

**The Orly and Herschmann Reports**

John Dellaportas ("Dellaportas")[7] is Sagi's lead counsel in the Chapter 7 Case. David Parnes ("Parnes") is Sagi's longstanding Israeli counsel. Sason Matityahu is a private investigator in Israel (sometimes referred to as the "Investigator"). In September 2019, he produced reports relating to Orly (the "Orly Report")[8] and Herschmann (the "Herschmann Report"). The reports are personal to each individual, but the scope of the reports is identical. Each includes data reflecting the dates of the subject's entries to and exits from Israel during the period of February 2019 through April 2019, and the location of each subject's bank accounts in Israel. The Orly Report is signed by the Investigator and is dated September 12, 2019. The Herschmann Report is unsigned and is dated September 16, 2019. Orly and Herschmann were not consulted when the Investigator created

---

[4] *See Judgment Creditor Sagi Genger's Motion to Dismiss Bankruptcy Case Or, Alternatively, To Transfer Venue, and Memorandum of Law in Support of Motion*, ECF No. 32 (the "Motion to Dismiss").

[5] *See Order Transferring Case*, ECF No. 168.

[6] *See Receipt of Inter District Transfer*, ECF No. 192.

[7] Dellaportas is a member of the law firm of Emmet, Marvin & Marvin LLP ("Emmet Marvin").

[8] An English translation of the Orly Report is annexed to the Declaration of Yovel Nachmani at Exhibit A, pages 16-17, ECF No. 205-13.

the reports, and do not consent to the Investigator's acquisition or dissemination of the information

contained in the reports. Only the Herschmann Report is at issue herein.

In September 2019, Dellaportas provided the Orly Report to Orly's counsel. At a

conference on March 4, 2020 (the "March 4 Conference"), Herschmann advised the Court that he

had learned that the Investigator had compiled the Herschmann Report and that it had been

provided to Sagi and possibly Dellaportas. March 4 Conf. Tr. at 71:13-72:9.[9] He maintained that

the Investigator obtained the information in the report illegally and asked that Sagi and Dellaportas

produce the report either to him or the Court. *Id.* at 72:9-15. Dellaportas advised the Court that he

was not aware of the existence of any report regarding Herschmann, or that the Investigator acted

illegally in creating the Orly Report. *Id.* at 72:20-73:9. He explained that Sagi retained the

Investigator because an issue relevant to the venue motion was whether, prior to the Petition Date,

Orly lived in Austin, Texas, and only Austin, Texas. *Id.* at 72:22-73:3. He said that the Investigator

had found that Orly had spent much of her time in Israel. *Id.* at 72:22-73:2. He advised that "the

[Orly Report] was provided in full to Mr. Herschmann" and that "[w]e have nothing further beyond

what we've provided." *Id*. at 73:2-5.

Dellaportas advised that after the March 4 Conference, he inquired of Parnes regarding the

Herschmann Report and learned that such a report existed. By a letter to Herschmann dated April

20, 2020 (the "Dellaportas April 20 Letter"),[10] Dellaportas confirmed the existence of the

Herschmann Report, and advised that the Investigator prepared the report for Parnes. In that letter,

he described the contents of the report, as "list[ing] your date of birth, Israeli ID number, Israeli

---

[9] *Transcript of March 4 Conference*, ECF No. 227.

[10] *Letter of Dellaportas, as Sagi's counsel, to Herschmann, dated April 20, 2020*, ECF No. 241-1, at 1-2.

entrances/exits, and bank names and addresses, albeit with no account numbers or other detail."

*See* Dellaportas April 20 Letter at 1-2. Further, he explained:

> To be clear, Sagi ordinarily would not care about your whereabouts or accounts. However, during post-judgment discovery . . . you made to the Courts multiple affirmatively false statements with respect to where you and the [D]ebtor were jointly living at the time, and about what joint accounts you and the Debtor held--matters which are highly material to the present bankruptcy case.

*Id.* at 2. Herschmann requested that Sagi provide him with the Herschmann Report. Sagi denied

the request.

In a letter to the Court dated May 4, 2020 (the "Dellaportas May 4 Letter"),[11] Dellaportas

confirmed the existence of the Herschmann Report. He accounted for his failure to advise the Court

of the report during the March 4 Conference, as follows:

> When I was asked unexpectedly about [the Herschmann Report] at the time of the [March 4 Conference], I was only aware of single report from the investigator, which I had already shared with Mr. Herschmann. After the conference, however, I spoke with Israeli counsel, who informed me of a second report, the details of which I then *also* provided to Mr. Herschmann in my April 20, 2020 letter to him. The second report--which provides only minimal financial information about Mr. Herschmann (names of banks)--is attorney work product and consequently we are not willing to share it with him. As reflected in my April 20, 2020 letter to him, however, we have offered to provide the report *in camera* so the Court can confirm that our description of it to Mr. Herschmann is correct.

Dellaportas May 4 Letter at 2.

**The Israeli Litigation**

Herschmann contends that Israeli law bars the disclosure of both Orly's and his personal

travel and banking/financial information, without their respective consents. In the wake of the

disclosure of the Orly Report, Orly commenced a civil action against the Investigator in the Tel

---

[11] *See Dellaportas May 4 Letter*, ECF No. 241.

Aviv Magistrate Court (the "Israeli Court") seeking to recover damages caused by the Investigator's alleged breach of Israeli privacy laws in creating the Orly Report (the "Orly ISR Civil Action"). After Herschmann learned of the existence of the Herschmann Report, he filed a criminal complaint against the Investigator (the "Herschmann ISR Criminal Complaint") with the Fraud Crimes Unit of The Central Unit in the Jerusalem District Police (the "Israeli Police"). He also commenced a civil action in the Israeli Court against the Investigator and Jane Altshuler ("Altshuler"), an Israeli attorney who dealt directly with the Investigator in Israel, for damages caused by their alleged breaches of Israeli privacy laws in creating the Herschmann Report (the "Herschmann ISR Civil Action"). Altshuler has joined Parnes as a third-party defendant in that action.

The Orly ISR Civil Action and Herschmann ISR Civil Action are pending before different judges in the Israeli Court. Both actions assert civil tort claims for invasion of privacy. Sagi is not a party to either action. There is no public access to legal dockets in Israel.

The Orly ISR Civil Action has gone to trial and on March 24, 2022, the Israeli Court entered a decision (the "Orly Israeli Court Decision")[12] in Orly's favor. Herschmann relies heavily on that decision in support of the Motion. The Herschmann ISR Civil Action has not gone to trial. However, the Israeli Court issued a ruling (the "Herschmann Israeli Court Ruling")[13] granting the defendants' applications to require Herschmann to post security for their costs in the litigation.

In response to the Herschmann ISR Criminal Complaint, after conducting an investigation, the Israeli Police issued a "Notice of Decision Not to Prosecute" (the "Israeli Police Decision"),[14]

---

[12] C.C. (MC TA) 62235-09-19 *Genger v. Matityahu* (Mar. 24, 2022) (Isr.). An English translation of the Orly Israeli Court Decision is annexed to the Motion as Exhibit A.

[13] An English translation of the Herschmann Israeli Court Ruling is annexed to the Opposition as Exhibit C.

[14] An English translation of the *Notice of Decision Not to Prosecute* is annexed to the Opposition as Exhibit A.

and closed the file on the grounds of "no criminal culpability." That decision has been affirmed on appeal to the State of Israel, Ministry of Justice, State's Attorney Office, Appellate Division.

**The Chapter 7 Case Confidentiality Order**

On June 10, 2020, the Court entered a "Confidentiality and Protective Order" in the Chapter 7 Case.[15] In connection with the entry of that order, by letter to the Court (the "Herschmann May 4 Letter"),[16] Herschmann requested that the Court order Sagi and his counsel to produce to him any and all documents not obtained by subpoena or court order containing his personal information. Specifically, Herschmann asked the Court to direct Sagi and his counsel:

> (i) to produce to me (and only to me) any and all reports or other documents, including electronic and native format versions with metadata, that contain or refer to any of my personal information not obtained by subpoena or court order; (ii) to identify all persons to whom such information has been communicated; (iii) to produce the contents of those communications; (iv) to hold all such information, reports or other documents in strict confidence pending further order of this Court; and (v) to identify all persons who have been provided a copy of my confidential pre-nuptial agreement.

Herschmann May 4 Letter at 4. By letter to the Court (the "Sagi May 29 Letter"),[17] Sagi objected to Herschmann's demand for the report and requested the entry of a protective order shielding the Herschmann Report from discovery. Sagi May 29 Letter at 7.

**Sagi Objection to Turnover and Request for a Protective Order**

In the Sagi May 29 Letter, in purporting to put his objection to the turnover of the Herschmann Report and request for a protective order into context, Sagi summarized the events leading to the entry of judgments in his favor against Orly and his unsuccessful attempts to collect

---

[15] *Confidentiality and Protective Order*, ECF No. 259.

[16] *May 4, 2020 Letter,* ECF No. 240.

[17] *May 29, 2020 Letter*, ECF No. 252.

those judgments. Sagi explained that as of the Petition Date, he held judgments against Orly based

upon his successful prosecution of claims against her in the United States District Court for the

Southern District of New York (the "New York U. S. District Court"), predicated on Orly's breach

of her agreement to indemnify Sagi for her share of payments made by Sagi to Dahlia Genger,

Orly's and Sagi's mother. Sagi May 29 Letter at 2 (citing *Genger v. Genger*, 76 F. Supp. 3d 488,

501 (S.D.N.Y.), *aff'd,* 663 F. App'x 44 (2d Cir. 2016) (the "2014 Lawsuit"); *Genger v. Genger*,

2018 WL 3632521 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99 (2d Cir. 2019) (the "2017

Lawsuit")). Sagi contended that he learned that after entry of judgment against Orly in the 2014

Lawsuit, Orly allegedly dissipated her interests in a $32.3 million settlement in other litigation (the

"Trump Settlement") to Herschmann and to her father and his business partners. *Id.* at 2.

Sagi argued that he retained the Investigator to investigate Orly's place of residence and

the location of her bank accounts in Israel, because she put those matters into issue both before

and after entry of the judgments against her. *Id.* at 8. Moreover, he argued that both the United

States District Court for the Western District of Texas (the "Texas U.S. District Court") and the

Texas Bankruptcy Court found that Orly and Herschmann took inconsistent positions regarding

their place of residence. *Id.* at 2-4.

First, Sagi contended that in the 2017 Lawsuit, when he attempted to effectuate service of

process on Orly at her homes in Texas and New Jersey, and at the Jerusalem address which she

had registered with the Israeli government, Orly moved to dismiss the action on the ground that

she could only be lawfully served at an address in Tel Aviv which Sagi said she would not disclose.

*Id.* at 2. Sagi stated that in response to that motion, he retained a private investigator in Israel (not

the Investigator) who discovered where in Tel Aviv Orly was residing and, thereafter, effectuated

service of process on Orly. *Id.* at 2-3.

8

Next, Sagi asserted that after service of process was effectuated on Orly in the 2017 Lawsuit, Orly again put the place of her residence in issue. She moved to dismiss the action for lack of diversity jurisdiction arguing, in part, that although she was a United States citizen, she was a permanent Israeli resident and, as such, she was a non-diverse party. *Id.* at 3. Sagi noted that in support of that motion, Orly relied on her declaration dated May 16, 2018 (the "Orly May 2018 Declaration") and a declaration from Herschmann dated January 25, 2018 (the "Herschmann January 2018 Declaration"). *Id.*[18] In substance, Sagi contended that in her declaration, Orly stated that she moved to Israel prior to the commencement of that action, that she intended to live permanently in Israel, and that Sagi's contention that she was domiciled in Texas was incorrect. *Id.* He asserted that in his declaration, Herschmann stated, in part, as follows: "Orly and I . . . were married [in Israel] in the fall of 2016. Since that time, Orly has lived in Tel Aviv, Israel. She lives here with me . . . ." *Id.* (quoting Herschmann January 2018 Declaration).

The New York U.S. District Court rejected Orly's jurisdiction-based defense, and ultimately entered judgment in Sagi's favor against Orly in the 2017 Lawsuit. Sagi served post-judgment discovery requests on Orly and Herschmann. Sagi May 29 Letter at 3. Sagi explained that in March 2019, he served Herschmann with a subpoena issued out of the New York U.S. District Court commanding his appearance and the production of documents in Austin, Texas, and that in response, Herschmann brought a motion to quash or modify the subpoena (the "Herschmann Motion to Quash") in the Texas U.S. District Court. *Id.* at 4. In support of the motion, Herschmann stated that he was a resident of Austin, Texas and had been since 2010. *Id.* (citations omitted).

---

[18] The *Orly May 2018 Declaration* and the *Herschmann January 2018 Declaration* are annexed to the Sagi May 29 Letter as Exhibits B and C, respectively.

Sagi maintained that at that time, the New York U.S. District Court ruling in the 2017 Lawsuit was on appeal to the Second Circuit Court of Appeals, and that one of the matters at issue in the appeal was whether the court erred in exercising subject matter jurisdiction over Sagi's claims against Orly. *Id.* at 4. The record on appeal included the Orly May 2018 Declaration and the Herschmann January 2018 Declaration. Sagi asserted that in a letter to Orly's counsel in the 2017 Lawsuit, Dellaportas contended that there was a discrepancy between Herschmann's assertion in the Herschmann Motion to Quash that he always resided in Texas, and his statement in the Herschmann January 2018 Declaration, that he was residing in Israel. Dellaportas complained to Orly's counsel that in her appeal to the Second Circuit, Orly continued to assert that she was an Israeli resident, notwithstanding that her (non-estranged) husband was now claiming to have always lived in Texas. *Id.* Sagi contended that in response to that letter, Orly's counsel threatened to seek sanctions against him for suggesting that Orly and Herschmann might actually be living in Texas as opposed to Israel. *Id.*

Finally, Sagi noted that on the Petition Date, Orly filed for bankruptcy in Texas. In the petition, she claimed Texas residency. On August 15, 2019, Orly testified at the 341 Creditors' Meeting that she had moved to Texas in late 2018 or early 2019. Sagi May 29 Letter at 5.

In support of his request for a protective order, Sagi also argued that both the Texas Bankruptcy Court and the Texas U.S. District Court noted the "ever-shifting" positions taken by Orly and Herschmann with respect to their residency. *Id.* at 6. He asserted that in transferring the Herschmann Motion to Quash back to the New York U.S. District Court, the Texas U.S. District Court stated, in part, that "[t]o put it mildly, however, the answer to the question of where Mr.

Herschmann and Ms. Genger reside is a moving target." *Id.*[19] He also contended that the Texas

Bankruptcy Court adopted the Texas U.S. District Court's findings. *Id.*

To summarize, in support of his objection to the turnover of the Herschmann Report to

Herschmann, and his request for a protective order, Sagi asserted that the dispute over the

production of the Herschmann Report "arises out of a series of false statements made during

discovery by the Debtor and her husband, which a federal court later found to be 'an attempt to

frustrate the post-judgment discovery being attempted by Sagi Genger.'" Sagi May 29 Letter at 2

(citation omitted). In that light, Sagi advanced three arguments in support of his request for relief.

First, he asserted that the Herschmann Report was protected attorney work product. *Id.* at

1, 7-8. Sagi represented as follows:

> Here, this bankruptcy litigation was the sole purpose of the [Herschmann]
> Report. Mr. Matityahu was retained following the Debtor's bankruptcy filing,
> first in anticipation of a contested venue motion, in order to investigate the
> Debtor's residency. Because Mr. Herschmann has previously used his own
> residency to bolster his wife's claims as to her residency, his whereabouts, too,
> were relevant. Second, Mr. Matityahu was retained to investigate the Debtor's
> bank and credit card accounts. These were important for two reasons—because
> the charges reflect the Debtor's location, and because they might also indicate
> the location of assets. Here as well, Mr. Herschmann's information was also
> relevant, by virtue of the fact that the Debtor was making most of her charges
> on the couple's joint AmEx card, the existence of which both had both falsely
> denied under oath.

---

[19] That court also found, as follows:

> The most charitable interpretation of [Herschmann's] very different sworn statements is that
> Herschmann moves between at least Austin and Tel Aviv—though nothing in any sworn document
> actually says this. The more likely actual state of affairs is that Herschmann and Genger, as owners
> of multiple residences, have used this fact to their legal advantage by claiming to reside in whichever
> location most suits their legal needs at the time. In this instance, in an attempt to frustrate the post-
> judgment discovery being attempted by Sagi Genger, Herschmann claims to have such a strong
> connection to Austin that it would be a burden for him to have to deal with his subpoena objections
> in Manhattan. The Court's not buying it.

Sagi May 29 Letter at 6 (citation omitted).

*Id.* at 8. He also stated that the "financial information was and is highly relevant to the pending motion to dismiss." *Id.* Accordingly, the Herschmann Report was "prepared in anticipation of litigation, as opposed to in the regular course of business." *Id.* Sagi did not specify that the Herschmann Report was the work product of any particular attorney. Instead, he said only that "Sagi's longstanding Israeli counsel, the Tel Aviv firm of Parnes & Co., retained Mr. Matityahu, an Israeli private investigator who is licensed under Israel's Private Investigators and Security Services Law, 5732-1972." *Id.* at 2. Further, he asserted that "Sagi has never met or even communicated with Mr. Matityahu, who was retained solely by counsel to assist in counsel's efforts in Israel." *Id.* at 2.

Second, Sagi argued that the report could not be the subject of a valid discovery request by Herschmann, because it contained no information that is likely to be relevant to his claim in the Chapter 7 Case as required by FRCP 26(b)(1) and Bankruptcy Rule 7026. Sagi May 29 Letter at 1. Sagi contended that Herschmann's filed claim in the Chapter 7 Case is based on a back-dated promissory note that Orly executed shortly after Herschmann and Orly's marriage. *Id.* at 8. He argued that the Herschmann Report only "lists his departure and arrival dates in and out of Israel, and the names of banks in which he has accounts (without account numbers or amounts)," and that such information has no bearing on Herschmann's claim. *Id.*

Third, Sagi asserted that litigation over the production of the Orly Report was pending before the courts in Israel, and Herschmann's attempt to have the document produced in the Chapter 7 Case is "an effort to circumvent and undermine the Israeli Court's jurisdiction." Sagi May 29 Letter at 9. Sagi pointed to the Orly ISR Civil Action. *Id.* ("Mr. Herschmann has neglected to inform this Court that last summer, during the pendency of this bankruptcy case, the . . . Debtor filed a lawsuit in Israel against Mr. Matityahu *over these same facts*."). He argued that Israeli

courts are uniquely qualified to assess whether an Israeli licensed private investigator violated Israeli law, and further noted that Matityahu is licensed by the State of Israel and all parties to the matter hold Israeli citizenship. *Id.* He contended that if the Israeli Court believes the Herschmann Report should be produced, it can direct that be done. *Id.*

**Herschmann Request for Turnover and Opposition to a Protective Order**

By letter to the Court (the "Herschmann June 5 Letter"),[20] Herschmann argued that the Court should compel Sagi to turnover the Herschmann Report and deny Sagi's request for a protective order. To summarize, he asserted:

> Mr. Dellaportas does not and cannot come close to showing that the investigators' reports were work product of an Israeli lawyer, as he claims, done at the direction and request of the attorney or reflected any attorney's mental impressions - and nowhere does he identify any individual lawyer, nor does he produce any correspondence, let alone an affidavit from the purported attorney evidencing that it was work product. The reason is plain. The reports were produced illegally, and either no attorney was in fact involved at all, or no attorney is willing to admit to participating in a crime. That is also plainly the reason Mr. Dellaportas is so strenuously resisting producing to me reports which contain only my personal information. The claim that I am not entitled to such reports is absurd on its face.

Herschmann June 5 Letter at 2.

In support of the opposition, Herschmann included a detailed recitation of the "Relevant Background," including a timeline regarding the Herschmann Report. *Id.* at 2-5. He raised a number of issues in opposing Sagi's request for a protective order.

---

[20] *June 5, 2020 Letter*, ECF No. 257. In that letter, Herschmann repeated his request for an order directing that Sagi and his counsel:

> (i) produce to me (and only to me) any and all reports or other documents, including electronic and native format versions with metadata, that contain or refer to any of my personal information not obtained by subpoena or court order; (ii) identify all persons to whom such information has been communicated; (iii) produce the contents of those communications; and (iv) hold all such information, reports or other documents in strict confidence pending further order of this Court.

Herschmann June 5 Letter at 1.

First, Herschmann maintained that Sagi could not establish that work product protection applied to his personal information. *Id.* at 6. He asserted that the Herschmann Report was addressed directly to Sagi, not to Dellaportas or another attorney. *Id.* Moreover, he argued that Sagi did not contend that the Investigator's reports contained an attorney's mental impression, opinion, or legal theories, and that even if the reports contained that content, the Court could examine the reports and redact those portions accordingly. *Id.*

Second, he asserted that Sagi failed to identify the attorney who asserted work product protection. Herschmann June 5 Letter at 7.[21] He noted that neither Parnes nor any other attorney had submitted an affidavit "or any other substantiation" to establish a basis for the work product claim. *Id.* at 7. Herschmann also observed that "Parnes is a long standing business associate of Sagi who has shown himself willing to lie on Sagi's behalf or assist Sagi in lying." *Id.* at 8. He included several paragraphs purporting to show examples of alleged false testimony by Parnes before New York state and federal courts. *Id.* at 8-9.

Third, he argued that Sagi could not justify his retention of the Investigator or the Investigator's conduct. Herschmann June 5 Letter at 9. He maintained that:

> Dellaportas tries to justify Sagi's use of private investigators to illegally obtain my personal travel and banking information by claiming: (i) that Orly tried to "dissipate the $32.3 million [Trump Settlement] to her husband . . .;" (ii) that Orly falsely claimed when she lived in Israel and when she moved back to Texas, and therefore our "joint whereabouts" are relevant; (iii) that "Orly continued to claim, to the Southern District of New York and on appeal to the Second Circuit, that she was an Israeli resident, notwithstanding that her (non-estranged) husband was now claiming to have *always* lived in Texas," (emphasis in original) and that Daniel R. Benson of the Kasowitz Benson law firm threatened Mr. Dellaportas with sanctions "for suggesting that [Orly] and

---

[21] Herschmann pointed to a discrepancy between the Sagi May 29 Letter, which said Parnes worked at "Parnes & Co." and the website for Parnes's firm that reflected Parnes actually works at "Parnes Raanan & Co." Herschmann June 5 Letter at 7.

> [I] might actually be living in Texas as opposed to Israel;" and (iv) that Sagi
> believes that Orly and I had a joint American Express account, and that she lied
> about it during her March 7, 2019 deposition testimony.

*Id.* at 9-10. Herschmann provided a detailed challenge to each of those assertions and argued that none justified the Investigator's alleged illegal conduct. *Id.* at 10-13.

Fourth, Herschmann asserted that Sagi conceded that his private investigation was illegal. *Id.* at 12. He said Sagi abandoned any claim that the Investigator could and did obtain his personal information legally, and instead only argued that Herschmann was improperly seeking to usurp/circumvent the role of the Israeli Court. *Id.* He maintained that Sagi abandoned any argument that personal travel and banking financial information is "commonly available" in Israel and anyone could get it without a subpoena. *Id.* He also contended that (i) Sagi argued, without justification, that the Investigator's reports were not relevant, *id.*; (ii) Sagi could not shield the Investigators' reports behind a claim of work product while at the same time using the Investigator's information to falsely accuse him of wrongdoing, *id.* at 13; (iii) Sagi's argument that he needed to know Herschmann's "whereabouts" was specious, *id.* at 13-14; (iv) Sagi's reason and timing for hiring the Investigator was impossible to determine based on inconsistent statements to the Court, *id.* at 14; and (v) Dellaportas's claim that he mistakenly told the Court that he was only aware of a single report related to Orly because he was unexpectedly asked about it at the March 4 Conference strains credulity, *id.* at 14-15.

Next, Herschmann argued that the crime-fraud exception defeats any work product claim. Herschmann June 5 Letter at 15-17. He maintained that, even assuming that the Herschmann Report is attorney work product, the information in that report was "clearly stolen," and work product protection "does not apply when a client consults a lawyer for the purpose of furthering an illegal or fraudulent act." *Id.* at 15. Specifically, he asserted that "the crime-fraud exception

applies because the [Herschmann Report] was gathered and distributed in violation of Israeli law . . . and in furtherance of illegal activity in the United States including, among other crimes, mail fraud, wire fraud and conspiracy." *Id.* at 16. He contended that the use of investigators to illegally obtain information and the transmission of that information via electronic means and via the mail and their use of those materials in the court proceedings to obtain money, satisfies the elements of 18 U.S.C. §§ 1341, 1343, 1349. *Id.* at 16, n.12

Finally, Herschmann argued that Sagi could not be trusted to accurately report the facts concerning his claim of work product protection because Sagi knowingly violated the protective order issued by Magistrate Judge Freeman. *Id.* at 17. Herschmann asserted that Sagi impermissibly shared copies of Herschmann's premarital agreement with parties that fell outside of the scope of that order. *Id.* at 17-18. He also asserted that on September 11, 2019, Sagi orchestrated, with Dellaportas, a plan to evade the protective order. *Id.* at 19.

**Sagi Reply to Herschmann Request for Turnover and Opposition to Protective Order**

By letter to the Court (the "Sagi June 12 Letter"),[22] Sagi reiterated that the Court should deny Herschmann's request that he turnover the Herschmann Report because it is attorney work product, it contains no information likely to be relevant to any claim or defense in this case, as required by FRCP 26(b)(1), and the matter is before the Israeli Court, which is uniquely qualified to address any supposed violations of Israeli law, and could also direct the Herschmann Report to be turned over if that court saw fit to do so. Sagi June 12 Letter at 1. In purporting to justify his retention of the Investigator and the work done by the Investigator, Sagi contended that:

> Herschmann filed multiple false affidavits, which a federal court found were designed to "frustrate" Sagi's post-judgment discovery. To overcome that barrier, Sagi retained a licensed private investigator, who uncovered

---

[22] *June 12, 2020 Letter*, ECF No. 262.

information the Bankruptcy Court later used to transfer venue. Now the perpetrator of those false affidavits, Mr. Herschmann, demands this Court grant him equity over his victim. His demand is without merit.

*Id.* In support of his request for relief, Sagi submitted a declaration of David Parnes (the "2020 Parnes Declaration")[23] and a declaration of Sagi Genger ("2020 Sagi Declaration").[24] In his declaration, Parnes asserts, as follows:

1. I am an attorney duly licensed to practice law in the State of Israel since 1997. For many years, I have acted as counsel to judgment creditor Sagi Genger and various entities with which he is affiliated. For the last year, I have been assisting Sagi in connection with enforcement in Israel of his judgment against Orly Genger, who at various times has claimed to be a permanent resident of Israel, and still maintains a home here. The name of my firm is "Parnes & Co." I also maintain a co-branding relationship with another practitioner under "Parnes Raanan & Co."

3. In August 2019, Sason Matityahu, a private investigator licensed in Israel, was retained through my firm to provide investigative services in connection with the aforementioned judgment collection efforts on Sagi's behalf. Mr. Matityahu thereafter provided my firm with two reports, one of which related to Orly Genger and the other of which related to her husband. I object to any disclosure of the latter report, which is part of my attorney work product.

2020 Parnes Declaration.[25]

In his declaration, Sagi asserts, as follows:

1. I am a judgment creditor in the above-referenced action. Parnes & Co. has represented me in connection with judgment enforcement efforts in Israel, where the judgment debtor maintains a residence.

2. It is my understanding that in August 2019, Parnes & Co. retained Sason Matityahu, a private investigator licensed in Israel, to provide investigative services in connection the aforementioned judgment collection efforts on my behalf. I have never met, spoken with, or written to Mr. Matityahu.

---

[23] *Declaration of David Parnes*, ECF No. 262-1.

[24] *Declaration of Sagi Genger*, ECF No. 262-2.

[25] Paragraph "3" of the declaration is misnumbered. It should read paragraph "2".

2020 Sagi Declaration.

Dellaportas argued that the declarations reflect that the Herschmann Report was procured through Parnes's law firm, which until Herschmann's recent inquiry, had the only copy. Sagi June 12 Letter at 2. He asserted that he obtained his copy of the report from Parnes, not Sagi, and that neither he nor Sagi were aware of any improper conduct by the Investigator. *Id.* at 2-3. Dellaportas also argued that the declarations demonstrate "that the [Herschmann Report] was procured exclusively through an attorney," *id.* at 2, and that Sagi did not hire the Investigator, and had neither met him nor communicated with him, *id.* He also contended that Herschmann had never demonstrated either that Sagi violated any laws in retaining the Investigator, or that the Investigator, who was a duly licensed private investigator in Israel, had broken any laws in compiling the Orly and Herschmann Reports. *Id*. at 2.

Sagi also maintained that Herschmann's arguments supporting turnover and opposing a protective order have no merit. To summarize, he argued that: (i) Herschmann's work product argument ignored binding precedent, (ii) Herschmann's assertions about Parnes's credibility were baseless and inappropriate, (iii) Sagi had not conceded that the private investigation was illegal, and Herschmann had not put forward evidence of any such illegality, (iv) Sagi had not waived work product protection as to anything dealing with Herschmann, and (v) Herschmann's arguments about the premarital agreement contravened express court rulings. Sagi June 12 Letter at 5-12. He also contended that Herschmann's request for relief was barred by unclean hands. *Id.* at 3. He argued that in his response, Herschmann made false statements about the joint account, places where he lived, the note executed by Orly, and the property transfer from Orly. *Id.*

**The Resolution of Conflicting Requests for Turnover and a Protective Order**

By its Order, the Court denied Herschmann's request to compel Sagi to turnover the Herschmann Report, and granted Sagi's request for the protective order. In doing so, before addressing the parties' arguments, the Court undertook an in-depth review of the relevant facts, including, among other things, those relating to Sagi's status as a judgment creditor, and his efforts to collect the judgments, including the post-judgment litigation. Order at 2-19. The Court also conducted an *in camera* review of the Herschmann Report. *Id.* at 25.

In addressing the merits of the request for a protective order, the Court found that the fact that the Herschmann Report may not contain information that is relevant to Herschmann's claim was not grounds for denying production of the report to Herschmann. *Id.* at 19. The Court noted that Sagi conceded that the places where Herschmann and Orly lived together, and what joint accounts they held were "matters which are highly material to the present bankruptcy case," *id*. (citation omitted), and such matters were relevant to the issues that Sagi raised in support of the Motion to Dismiss—particularly issues relating to Orly's and Herschmann's credibility, *id.* The Court also found that in seeking production of the Herschmann Report, Herschmann was not usurping/circumventing the role of the Israeli Court, which has jurisdiction over the Orly ISR Civil Action. *Id.* The Court noted that the Israeli Court was "[c]learly . . . best suited to determine any matters of Israeli law." *Id.*

In reviewing the application of the work product doctrine to the report, the Court held that it applies to "(1) a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." Order at 21 (quoting *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73-74 (S.D.N.Y. 2010)). The Court found that the Herschmann Report qualified as a "document," *id*. at 21, and that it was prepared in anticipation

19

of litigation, *id*. at 21-22. In considering the latter, the Court rejected Herschmann's argument that any post-judgment discovery by Sagi would have had to pre-date the Petition Date, and, as such, the report could not have been prepared in anticipation of litigation. *Id*. at 21-22. The Court credited Sagi's argument that from fall 2018 through spring 2020, he was unable to obtain discovery from Herschmann. *Id*. at 22. The Court held, as follows:

> Given the history of litigation among Orly and Sagi, it was not unreasonable for Sagi to conclude that information regarding Orly and Mr. Herschmann's residences and bank accounts in Israel could be relevant to matters arising in the Chapter 7 Case. The Court finds that Sagi has demonstrated that the Herschmann Report was prepared "because of" the prospect of litigation in the bankruptcy case.

*Id*. at 22 (footnote omitted). The Court also found that the undisputed facts demonstrated that Parnes's law firm retained the Investigator, the Investigator delivered the reports to the law firm, and that Parnes, as Sagi's counsel, objected to the disclosure of the Herschmann Report as attorney client work product. *Id.* at 24. Based on those findings, the Court held that Sagi made a prima facie showing that the Herschmann Report was his counsel's work product that is protected from disclosure. *Id.* at 24.

The Court reviewed Herschmann's opposition to the request for the protective order, and, in particular, his contentions that the Herschmann Report was not protected from disclosure because (i) it contained fact work product, not the mental impressions of counsel, (ii) Sagi waived the work product privilege as to the report, and (iii) the crime-fraud exception defeated Sagi's claim to privilege. Order at 24.[26] The Court found no merit to those arguments.

The Court found that the Herschmann Report contains facts and that the work product doctrine protects materials prepared by agents of an attorney, like the Investigator, in anticipation

---

[26] The Court also noted Herschmann's arguments in opposition to the motion in footnotes 38 and 43 of the Order.

of litigation. *Id.* at 26. In addition, the Court found that although the work product privilege could be waived, *id.* at 27-30, Herschmann had not demonstrated either an express or implied waiver of the privilege by Sagi, *id.* Finally, the Court found that the crime-fraud exception did not defeat Sagi's claim that the work product doctrine protects disclosure of the Herschmann Report. *Id.* at 31-34. As support for his contention that the information in the Herschmann Report was gathered and distributed in violation of Israeli law, Herschmann relied, in part, on declarations submitted by Mr. Yovel Nachmani, one of Herschmann's Israeli lawyers. *See id.* at 16. The Court found that Herschmann had not met his burden of demonstrating that there was probable cause to believe that the Investigator had committed a crime in gathering the data in the Herschmann Report and that the report furthered such a crime. *Id.* at 34.

**THE MOTION FOR RECONSIDERATION**

**Herschmann Motion for Reconsideration**

More than fourteen months after the Court issued the Order, Herschmann filed the Motion. Herschmann asserts that the Court has the inherent power to reconsider a prior decision at any time before judgment. Motion at 3 (citing *In re New York Racing Ass'n Inc.*, No. 06-12618, 2016 WL 6081087, at *8 (Bankr. S.D.N.Y. Oct. 17, 2016) ("*In re NYRA.*")). He also relies on Bankruptcy Rules 9023 and 9024, which incorporate FRCP 59 ("Rule 59") and FRCP 60 ("Rule 60"), respectively. *Id.*

Herschmann argues that there are two grounds for relief from the Order. First, he points to "newly discovered evidence" as support for the Motion. *See id.* Herschmann contends that in denying his request for the turnover of the Herschmann Report, the Court did not apply the crime-fraud exception to the work product doctrine because Herschmann had failed to demonstrate that there was probable cause to believe that a crime or fraud had been attempted or committed in Israel

21

in compiling the report, and that the privileged communications furthered such crime or fraud. *Id.* (citing Order at 34). He says that the Orly Israeli Court Decision is newly discovered evidence that "rectifies that deficiency," and provides the basis for applying the crime-fraud exception to the work product doctrine in this case. *Id.*

Second, Herschmann asserts that Sagi misused the Texas Bankruptcy Court's subpoena authority when he issued a trial subpoena under FRCP 45 ("Rule 45")[27] to the Investigator (the "Rule 45 Subpoena"),[28] in connection with the hearing on the venue motion scheduled to be heard by the Texas Bankruptcy Court on October 23, 2019 (the "October Hearing"). *Id.* at 6. He maintains that the subpoena is a "sham" and that Sagi issued it to cover up the Investigator's alleged illegal conduct in creating the Herschmann Report. *Id.* at 7. He says that in doing so, Sagi has impugned the integrity of these proceedings and subverted the course of justice in Israel. *Id.* at 1-2, 7-8. Relying on Altshuler's testimony and Parnes's counsel's arguments in the Herschmann ISR Civil Action, Herschmann also asserts that the existence of the Rule 45 Subpoena contradicts Dellaportas's representations to the Court in March 2020, that he was not aware of the existence of the report. *Id.* at 8-10. The Court considers those matters below.

### The Orly Israeli Court Decision

Herschmann argues that in the Orly Israeli Court Decision, the Israeli Court held that the Investigator's conduct in obtaining Orly's confidential personal information which he included in the Orly Report, was illegal under Israeli statutes that make the conduct both civilly and criminally unlawful. Motion at 1. He says that because the "scope of the [Orly and Herschmann Reports] is

---

[27] Rule 45 is made applicable herein by Bankruptcy Rule 9016.

[28] The Rule 45 Subpoena is annexed to the Motion as Exhibit B.

identical," it follows that the Herschmann Report was also created by criminal conduct in violation

of Israeli law. *Id.* at 2 (quoting Order at 13).

Herschmann maintains that the Orly Israeli Court Decision is "conclusive proof that the

investigator violated criminal laws in accessing Orly's Israeli travel records and constitutes, at a

minimum, probable cause to believe that his accessing [Herschmann's] travel records was also a

crime." *Id.* at 3. He asserts that the decision "was based on, among other things, the testimony of

Mr. Ido Talmi, Head of Cyber and Information Security Division at the Population and

Immigration Authority for the State of Israel, that a private investigator has no authorization to

access and review details contained in the databases of the governmental Population Registry." *Id.*

at 4-5 (citing Orly Israeli Court Decision at 12). He says that the decision held the Investigator's

testimony "was persistently evasive and not credible," and that the Investigator did not "articulate

how he could have obtained these records legally." *Id.* at 5 (citing Orly Israeli Court Decision

at 13, 16). In short, he says that the Orly Israeli Court Decision "confirms that the relief I am

seeking based on the crime-fraud exception should be granted. There is now no question that the

Herschmann Report was created as part of a crime committed by Sagi's agents in Israel against

me." *Id.* at 10.

### Rule 45 Subpoena

On September 23, 2019, Herschmann and his counsel met with the Investigator in Israel

(the "September 23 Meeting"). Motion at 5-6. Herschmann asserts that the Investigator falsely

claimed that they tried to intimidate him and prevent him from testifying in the Chapter 7 Case.

*Id.* at 5 (citing to the Investigator's Statement of Defense filed in the Orly ISR Civil Action.).[29] On

---

[29] An English translation of paragraphs 1-3 of the Introduction to the Statement of Defense is annexed to the Motion as Exhibit H.

23

or about October 3, 2019, Sagi, through Dellaportas, issued the Rule 45 Subpoena to the Investigator. The subpoena directed the Investigator to appear at the October Hearing, and to bring with him "documents, electronically stored information, or objects," as follows:

> All interactions with Eric Herschmann, Orly Genger, their attorneys or representatives, all recordings, images, videos, and all other documents relating in any way to either Orly Genger or Eric Herschmann.

Rule 45 Subpoena at 1. Sagi did not provide notice of the Rule 45 Subpoena to the parties to the venue motion. Motion at 7. The Investigator was not identified on Sagi's or any other party's witness list for the October Hearing. *Id.* (citations omitted). Ultimately, the Investigator did not appear at the October Hearing. *Id.*

Herschmann contends that Sagi hid the Rule 45 Subpoena from the parties to the Chapter 7 Case and the Texas Bankruptcy Court. *Id.* at 7. He says that he learned of the Rule 45 Subpoena only through his review of the Statement of Defense. *Id.* at 4, 6-7. He argues that the Investigator attempted to use the subpoena in the Orly ISR Civil Action to bolster his "good faith" defense to Orly's complaint in that action. *Id.* at 4. He notes that the Investigator contended that he was retained to compile the Orly Report for use in the Chapter 7 Case, and claimed that after he issued the report, he was "naturally" going to be "call[ed] . . . to testify before the . . . Bankruptcy Court in Texas, U.S.A." *Id.* at 7 (quoting Statement of Defense ¶ 2). The Investigator attached a copy of the Rule 45 Subpoena as support for his statement. *Id.* The Israeli Court rejected this defense. *See* Orly Israeli Court Decision at 19.

Herschmann asserts that the Rule 45 Subpoena was a sham because (i) the subpoena had no legal effect on the Investigator because he is a foreign national in Israel over whom United States courts had no jurisdiction, (ii) Sagi could not use the subpoena to obtain documents from the Investigator that had not been previously disclosed in discovery leading up to that hearing, and

(iii) Sagi failed to give notice of the subpoena to the parties to the October Hearing. Motion at 6-7. Herschmann argues that Sagi misused his subpoena power under Rule 45 in an effort to provide "cover" to the Investigator in support of his "good faith" defense in the Orly ISR Civil Action. *Id.* at 7. He says that Sagi has impugned the integrity of these proceedings. *Id.* at 2.

Herschmann says that Sagi's improper use of the subpoena is laid bare by the statement that the Investigator gave to the Israeli Police. He maintains that the Investigator told the police that after the September 23 Meeting, Parnes told him not to give Herschmann the Herschmann Report because the Investigator was a witness subpoenaed to testify in the United States bankruptcy proceedings—not because it constituted Parnes's work product. Motion at 6 (citing Israel Police Suspect Notice Transcript).[30] Herschmann says that in his Statement of Defense filed in the Orly ISR Civil Action, the Investigator contended that at the September 23 Meeting, Herschmann attempted to intimidate him in an effort to prevent him from testifying at the October Hearing. He pointed to the Rule 45 Subpoena as evidence of this obligation to testify. *See* Statement of Defense, at ¶ 3. Herschmann denies the Investigator's allegations. Motion at 5-6. He also says that the allegations are false because Sagi had not identified the Investigator as a witness at the October Hearing and only Sagi, Parnes, and Dellaportas knew that Sagi would be subpoenaing the Investigator to appear at the hearing. *Id.* at 6.

Herschmann argues that the existence of the Rule 45 Subpoena contradicts Dellaportas's representations to the Court in the Dellaportas May 4 Letter that he did not learn of the Herschmann Report until April 2020. Motion at 8. He maintains that because the Orly Report does not refer to Herschmann, Sagi could not have issued a legitimate Rule 45 trial subpoena seeking documents

---

[30] An English translation of paragraphs 1-3 of the Introduction to the "Israel Police Suspect Notice Transcript," recorded on February 18, 2021, is annexed to the Motion as Exhibit C.

relating to Herschmann unless Sagi knew that the Herschmann Report existed. *Id.* at 8-9. Moreover, Herschmann notes that, at a hearing in the Herschmann ISR Civil Action, Parnes's counsel told the Israeli Court that Parnes does not have the Herschmann Report in his possession, and that, "[i]t stands to reason that [the Herschmann Report] was passed from the private investigator directly to the client, Sagi Genger." *Id.* at 9 (citing Altshuler Israeli Court Protocol Testimony, p. 2).[31] He says that in that same hearing, Altshuler claimed that even if the Investigator had sent the Herschmann Report to her back in 2019, she would have immediately destroyed her only copy and permanently wiped any traces of it off her computer system. *Id.* at 9 (citing Israel Police Suspect Notice Transcript at lines 9-13, and Altshuler Israeli Court Protocol Testimony, p. 2.) Herschmann contends that, in that light, it is "unclear" how Sagi's Israeli counsel could have sent a copy of the Herschmann Report to Dellaportas after the March 4 Conference if they had in fact destroyed all evidence of its existence back in 2019. *Id.* He asserts that it is hard to imagine that Sagi and Sagi's counsel in Israel never shared the Herschmann Report with Dellaportas, let alone even told him it existed, considering Dellaportas—who has worked alongside Sagi's Israeli counsel for years in jointly representing Sagi—had asserted that information contained in the Herschmann Report was "highly material" to this bankruptcy case. *Id.* at 9-10. Moreover, he contends that his need to obtain the Herschmann Report is "all the more acute" because "Sagi's attorneys and investigator in Israel claim to have destroyed their only copies of the Herschmann Report—the same document that Mr. Dellaportas provided to [the Court] in camera, months after it was supposedly destroyed—and therefore could not produce it during discovery in Israel . . . ." *Id.* at 10.

---

[31] An English translation of portions of pages 2 and 3 of the "Altshuler Israeli Court Protocol Testimony" is annexed to the Motion as Exhibit E.

26

Herschmann argues that the Orly Israeli Court Decision confirms that the Herschmann Report was created as part of a crime committed against him by Sagi's agents in Israel, and that the Rule 45 Subpoena was improperly used by Sagi and his counsel to attempt to subvert the course of justice in Israel. Motion at 10. He says that while Sagi argued to this Court that Herschmann's efforts to obtain a copy of the Herschmann Report are designed to interfere with the Israeli Court's jurisdiction, the Investigator and his counsel simultaneously argued that Herschmann's actions in the Israeli Court were designed solely to interfere with his providing testimony in the Chapter 7 Case. *Id.* He contends that Sagi's attempt to play one court against another in two separate countries violates fundamental precepts of comity and threatens the integrity of both. *Id.* He argues that "as a form of sanction against Sagi and his counsel's misconduct," the Court should grant the Motion and direct Sagi and his counsel (i) to produce to Herschmann (and only to Herschmann) any and all reports or other documents, including electronic and native format versions with metadata, that contain or refer to any of his personal information not obtained by subpoena or court order; (ii) to identify all persons to whom such information has been communicated; (iii) to produce the contents of those communications; and (iv) to hold all such information, reports or other documents in strict confidence pending further order of this Court. *Id.* at 10-11.

**Sagi Opposition to the Motion**

In his opposition to the Motion (the "Opposition"),[32] Sagi makes the following arguments: (i) the Orly Israeli Court Decision does not support application of the crime-fraud exception, (ii) the discovery sought is not relevant to any pending motion or matter before the Court, (iii) the Motion is barred by the doctrine of unclean hands, (iv) the Rule 45 Subpoena was a valid response

---

[32] *Opposition to Non-Party Eric Herschmann's Motion for Reconsideration*, ECF No. 558.

to Herschmann's alleged witness intimidation, and (v) the Motion is time-barred. The Court
reviews them below.

### *The Orly Israeli Court Decision Does Not Support*
### *Application of the Crime-Fraud Exception*

Sagi denies that the Orly Israeli Court Decision establishes that the Herschmann Report
was produced by criminal means or in furtherance of a crime. Opposition at 4-5. Sagi does not
contest the Court's determination that the Orly Report and the Herschmann Report are similar in
scope. *Id.* at 3. However, he asserts that the Court only found that "in September 2019, Mr.
Matityahu had prepared a report for Israeli counsel concerning Mr. Herschmann that was similar
in scope to the Orly Report," and that this Court made no findings regarding how the information
in either report was gathered. *Id.* (quoting Order at 15).

Moreover, Sagi maintains that the Israeli Court held only that disclosure of Orly's travel
records (but not her banking records) in the Orly Report constituted an invasion of the Debtor's
privacy, a tort in Israel, and awarded the Debtor NIS 37,000 (about $11,408). Opposition at 3. He
says that Herschmann misplaces his reliance on that decision because the finding was premised on
a negative inference, and not affirmative evidence of wrongdoing, and because the Israeli Court
made no findings as to the Herschmann Report, or as to Sagi, who is not a party to the Orly ISR
Civil Action (and under Israeli procedure is barred from even accessing the docket). *Id.* (citing
*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388-89 (2d Cir. 1992)
(collateral estoppel cannot be invoked to establish facts against party who was not involved in
prior case)). He also argues that even if the decision was binding on Sagi, the litigation over the
Orly ISR Civil Action was a civil proceeding, with no fraud claim asserted. *Id.* at 3-4. He maintains
that "the Second Circuit has not added torts to the crime or fraud exception." *Id.* (quoting *Weissman
v. Fruchtman*, 1986 WL 15669, *16 (S.D.N.Y. Oct. 31, 1986) (rejecting argument that "crime-

28

fraud" exception should be extended to other "intentional torts")). Finally, Sagi contends that the controlling question is whether Sagi sought to use the Investigator to further a crime or fraud, not whether the Investigator used improper means to gather evidence. *Id.* at 4. He says this Court has already found Sagi's counsel retained the Investigator for a valid, non-criminal, non-fraudulent purpose. *Id.* (citing Order at 22 ("Given the history of litigation among Orly and Sagi, it was not unreasonable for Sagi to conclude that information regarding Orly and Mr. Herschmann's residences . . . in Israel could be relevant to matters arising in the Chapter 7 Case.")). Sagi argues that the crime-fraud exception "does not apply 'simply because privileged communications would provide an adversary with evidence of a crime or fraud, [and], if it did the [attorney-client] privilege would be virtually worthless.'" *Id.* (alterations in original) (quoting *In re Richard Roe*, 68 F.3d 38, 40-41 (2d Cir. 1995)).

Sagi also contends that the Israeli Police and the Israeli Court have rejected Herschmann's allegations of the Investigator's alleged wrongdoing. Opposition at 2. He notes that after investigating Herschmann's allegations against the Investigator, the Israeli Police issued the Israeli Police Decision not to prosecute the Investigator on the grounds of "no criminal culpability." *Id.* He also points to the Herschmann Israeli Court Ruling. *Id.* In it, the Israeli Court granted Altshuler's and the Investigator's applications to require Herschmann to post security for their costs in the litigation. *Id.* In granting the applications, the court concluded, as follows:

> [S]ince Plaintiff is a foreign resident and his residency in Israel has not been established satisfactorily, nor his capacity to meet the expenses if he is ruled against, Defendants' application is - granted. Under the circumstances, I have found it fitting to order Plaintiff to deposit a NIS 50,000 security for Defendants' costs.

Herschmann Israeli Court Ruling ¶ 10. In reaching that conclusion, the court also found that "a review of the parties' claims indicates that the prosecution's chances are not very high, and it

29

should be taken into significant consideration that the lawsuit's amount is greater than the standard

for lawsuits alleging various violations of the Protection of Privacy Law, 5741-1981, and does not

specify the requested remedy amount." *Id.* ¶ 9

### *The Discovery Sought is Not Relevant to Any Pending Motion or Matter Before This Court*

Sagi asserts that in the Order, the Court found that the Herschmann Report was relevant to

the Motion to Dismiss. Opposition at 5. Since then, trial on the motion has been completed, and

the record is now closed. *Id.* He argues that Herschmann does not connect his current request for

relief to proceedings in the Chapter 7 Case, and instead seeks the Herschmann Report for use in

the proceedings in the Israeli Court. *Id.* Sagi maintains that Herschmann must seek such relief

pursuant to an application to a district court under 28 U.S.C. § 1782 for an order in aid of a foreign

tribunal. *Id.* at 5-6. In the Order, the Court found that the Herschmann Report "contains

information of the kind described by Sagi's counsel in [the Dellaportas April 20 Letter]; i.e., Mr.

Herschmann's date of birth, his Israeli ID number, his Israeli entrances/exits, and the names and

addresses of Mr. Herschmann's banks in Israel (without account number or other detail)." Order

at 25. Sagi also argues that the Court should deny the Motion because the Herschmann Report

contains no facts that are unknown to Herschmann. Opposition at 6.

### *Herschmann's Request Is Barred By the Doctrine of Unclean Hands*

Sagi says that the "central basis" to Herschmann's opposition to Sagi's request for a

protective order was that the Investigator's reports were sent directly to Sagi with no involvement

by or copy to an attorney. Opposition at 7. He notes that in opposing the request, Herschmann

represented to the Court that during the September 23 Meeting, "the [I]nvestigator . . . admitted to

me and my counsel, Yovel Nachmani and Dror Arad Ayalon, that he prepared the reports for Sagi

and dealt directly with him." *Id*. (quoting Herschmann June 5 Letter at 7). The September 23 Meeting was transcribed, and the certified transcription is filed of record in the Israeli Court. Opposition at 8 (the "September 23 Transcript").[33] Sagi contends that September 23 Transcript is clear that the Herschmann Report was attorney work product. *Id.* He argues that Herschmann's assertion that the Herschmann Report was "sent directly to Sagi with no involvement by or copy to an attorney" is false and that on the strength of the September 23 Meeting, Herschmann knew it to be false. *Id.* at 8-9. Sagi cites to a portion of the transcript in which the Investigator denies having any connection with Sagi and states that his client was Altshuler. *Id.* at 8. Sagi contends that the Court should deny Herschmann's request for relief on the grounds that he has unclean hands. *Id.* at 9 (citing *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 969-70 (S.D.N.Y. 1992)).

### *The Rule 45 Subpoena Was a Valid Response To Herschmann's Alleged Witness Intimidation*

Sagi denies that the Rule 45 Subpoena contradicts Dellaportas's representation to the Court during the March 4 Conference that he was unaware of the Herschmann Report. Opposition at 9. He says that contrary to Herschmann's suggestion, the subpoena clearly did not seek a copy of the Herschmann Report.[34] *Id.* Moreover, Sagi maintains there is nothing inappropriate about the Rule 45 Subpoena. He contends that he subpoenaed evidence of Herschmann's "interactions" with the Investigator because he and his counsel had been informed that the Investigator had been

---

[33] An English translation of excerpted portions of the September 23 Transcript is annexed to the Opposition as Exhibit D.

[34] As noted, the Rule 45 Subpoena directed the Investigator to appear at the October Hearing, and to bring with him "documents, electronically stored information, or objects," as follows:

> All interactions with Eric Herschmann, Orly Genger, their attorneys or representatives, all recordings, images, videos, and all other documents relating in any way to either Orly Genger or Eric Herschmann.

Rule 45 Subpoena at 1.

threatened by Herschmann and therefore was refusing to testify at the October Hearing absent a subpoena. *Id.* As support for that contention, Sagi says that on September 25, 2019, two days after the September 23 Meeting, his counsel notified Bankruptcy Judge Davis that: "When Movant provided the underlying investigative report [to the Chapter 7 Trustee] . . . Herschmann responded . . . by having his Israeli attorney threaten the private investigator for supposedly revealing his wife's private information." *Id.* (quoting Expedited Motion to Show Cause, ECF No. 42, at 4). He also asserts that at a hearing before the Court on September 18, 2020, in response to Herschmann's claim that his inability to procure sworn testimony from the Investigator undermined his position, Dellaportas explained, as follows:

> Mr. Herschmann keeps asking why there's not an affidavit from this fellow. Mr. Herschmann knows darn well why there's not an affidavit from this fellow, which is, as he says, he flew all the way to Israel. He got a team of lawyers together. They cornered this guy in an office, and they scared the wits out of this guy, and as a result of which, since that meeting with Mr. Herschmann he doesn't want to talk to us anymore. So no, I'm not going to be able to get an affidavit.

*Id.* at 10 (quoting September 18, 2020 Hr'g. Tr. at 38:18-25).[35] Finally, Sagi points to excerpts from the September 23 Meeting which he contends support his assertion that Herschmann threatened the Investigator. *Id.* at 10-11. Sagi contends that the alleged witness intimidation worked, and even with the Rule 45 Subpoena, the Investigator refused to testify, and instead cut off all communication. *Id.* at 11. Sagi says that there is nothing inappropriate about the Rule 45 Subpoena, and that it never came into effect. *Id.*

---

[35] *Transcript of September 18, 2020 Hearing*, ECF No. 334.

*Herschmann Did Not Make His*
*Request Within a Reasonable Time*

Sagi asserts that under Rule 60(c)(1), Herschmann must make the Motion "within a reasonable time." Opposition at 11 (quoting Rule 60(c)(1)). He contends that "the courts have routinely denied as untimely Rule 60(b) motions for unexcused delays where the movant has waited more than three months before filing the motion." *Id.* (citing *Limon v. Double Eagle Marine, L.L.C.*, 771 F. Supp. 2d 672, 677-79 (S.D. Tex. 2011) (four month delay untimely); *Henriquez v. Astrue*, 499 F. Supp. 2d 55, 57 (D. Mass. 2007) (three month delay untimely); *Gould Entm't Corp. v. Bodo*, 107 F.R.D. 308, 311 (S.D.N.Y. 1985) (five month delay untimely)). Herschmann filed the Motion over fourteen months after the Court issued the Order. Accordingly, Sagi asserts that the Motion is time-barred.

**Herschmann Reply in Support of the Motion**

In his reply in support of the Motion (the "Reply"),[36] Herschmann asserts that Sagi does not dispute the following facts:

> (i) Sagi obtained confidential travel records from his Israeli investigator who, in violation of Israeli law, obtained them from an Israeli government database; (ii) Sagi issued the [Rule 45] Subpoena to the investigator whom Sagi never identified as a witness in this proceeding, as Sagi was required to do, and the investigator used it to try to create a defense in proceedings against him in Israel — a subpoena that Sagi never served on the parties to this proceeding, as he was also required to do, and that thus could not have been issued for any bona fide purpose in this proceeding; and (iii) after Sagi was sent the Herschmann Report containing illegally obtained information, the investigator and Israeli counsel immediately destroyed every copy of the report (conduct itself indicative of the report's criminal nature).

---

[36] *Reply in Further Support of Motion for Reconsideration*, ECF No. 559.

Reply at 1. He contends that the Orly Israeli Court Decision and Sagi's alleged misuse of the Rule 45 Subpoena support his claims for relief. He denies that the "unclean hands" doctrine is applicable herein. *Id.* at 2.

### *Orly Israeli Court Decision*

Herschmann asserts that in the Orly Israeli Court Decision confirms that the Herschmann Report is the product of unlawful conduct and, accordingly, is not protected work product. Reply at 1. He says, in that decision, the Israeli Court found "that Sagi's investigator's conduct was unlawful because it violated specific statutes imposing not just civil, but criminal, penalties for that conduct." *Id.* at 5. He rejects Sagi's argument that, because that decision addressed only the Orly Report, it does not relate to the Herschmann Report. *Id.* at 5. Herschmann observes that "Sagi himself has represented that the Herschmann Report and the Orly Report are identical for purposes relevant here." *Id.* (citing Dellaportas April 20 Letter at 1-2). Therefore, he says, "the legal and factual findings of the Israeli court apply equally to both reports, and Sagi does not and cannot show otherwise." *Id.* at 5-6. He contends that at the hearing, the Investigator contended that in obtaining the information, he was acting in good faith because he is a private investigator and may be called to testify in the United States. *Id.* at 6. He says that the Israeli Court rejected that defense and found that the type of information in the Herschmann Report is confidential as a matter of law, that a private investigator may not access and review details contained in the databases of the Israeli population registry, that the Investigator could not provide an innocent explanation as to how he obtained travel information, and that the Investigator's illegal conduct was not justified by his anticipated testimony in this case. *Id.* at 6-8.

***Rule 45 Subpoena***

Herschmann challenges Sagi's use of the Rule 45 Subpoena. Reply at 10-16. He reiterates that Sagi never gave notice of the subpoena to the parties to the October Hearing or the Texas Bankruptcy Court, and did not identify the Investigator as a potential witness (as required under that court's local rules). *Id.* at 10 (citing W.D. Tex. Bankr. R. 7016(c)(9)).

Herschmann rejects Sagi's argument that he had to issue the subpoena because Herschmann allegedly threatened the Investigator. *Id.* at 10-11. As support, Herschmann submits an audio recording of the September 23 Meeting. He argues that "the Court can hear from the tenor, tone, and topics discussed, the meeting was entirely proper, the investigator was not threatened, and he never claimed that he was supposed to be a witness in these proceedings." *Id.* at 10-11. However, much of the discussion is in Hebrew, and the Court has not received a full translation from any party (although the Court received a handful of translated paragraphs from Sagi). Herschmann also contests Sagi's assertion that Herschmann intimidated the Investigator from testifying and that a subpoena was therefore somehow necessary. *Id.* at 11.

Herschmann talks about the substance of the recorded conversation—again, much of which has been submitted only in Hebrew. He says that "the investigator disclosed for the first time that he had created a report concerning [Herschmann's] travel and banking records; that he had never met or heard of David Parnes; that we demanded only that the investigator not to destroy [sic] the tape; and provide the 'complete 100% truth' from him; that he asked for immunity from criminal prosecution before he would provide the Herschmann Report to me; and that [Herschmann] said that [he] knew as a former prosecutor . . . that there was no legal way to obtain these types of records." *Id.* at 12. The point about the Investigator never having met Parnes does not appear to be in the English portions of the recordings.

Herschmann accuses Dellaportas of misrepresenting when he learned of the existence of the Herschmann Report. Reply at 12-13. He maintains that Dellaportas says that he "was kept in the dark by Sagi and Mr. Parnes and knew nothing about the content of the meeting with the investigator or the Herschmann Report until he 'unexpectedly' learned about it from Mr. Parnes in March 2020 . . . ." *Id.* However, on October 3, 2019, Dellaportas issued the Rule 45 Subpoena and asked for "all recordings" and "all other documents relating in any way to either Orly Genger or Eric Herschmann." *Id.* at 12. Herschmann argues that this shows that Dellaportas actually knew as early as October 2019 that the recording of the September 23 Meeting existed, which means he also knew that the Herschmann Report existed. *Id.* at 12-13.

Herschmann says that Parnes contends that in September 2019, he destroyed any evidence of the Herschmann Report, and questions how Dellaportas obtained a copy of the Herschmann Report to submit to this Court for *in camera* review in connection with the Order. *Id.* at 13. He notes that Altshuler claimed "that even if the investigator had sent the Herschmann Report to her back in 2019, she would have immediately destroyed her only copy and permanently wiped any traces of it off the computer system." *Id.* He explains that Sagi says he never communicated with the Investigator, and Dellaportas says that he did not know about the Investigator "ever doing any type of report" on Herschmann until March or April 2020. *Id.* at 13. He says, "Mr. Parnes never spoke to the [I]nvestigator until after [the Investigator] met with [Herschmann] in [his] attorney's office on September 23, 2019 and [Parnes] told [the Investigator] not to provide [Herschmann] with a copy of the Herschmann Report—not because it was privileged work product, but because he was a 'witness' in the U.S. proceedings." *Id.* at 13-14 (citing Israel Police Suspect Notice Transcript at lines 10-13). Herschmann says that "[o]nly after the Parnes call where the

36

[I]nvestigator was told that he should not provide a copy of the Herschmann report to me, did Mr. Dellaportas send the [Rule 45] Subpoena" to the Investigator. *Id.* at 14.

Herschmann also challenges Sagi's claim that the Rule 45 Subpoena was necessitated by Herschmann's intimidation of the Investigator. *Id.* at 14-15. He says that at a trial in Israel, the Investigator testified that he has not testified in the United States because he is waiting for someone to tell him who will cover the cost of his flight and "who is paying me for this?" *Id.* at 15 (quoting Trial Transcript at 79).[37]

**Herschmann First Supplement to the Motion**

After filing his Reply in support of the Motion, Herschmann filed a supplement to the Motion (the "First Supplement").[38] Annexed thereto is an affidavit that Parnes filed on September 28, 2022, in defense of the third-party claims asserted against him by Altshuler in the Herschmann ISR Civil Action (the "2022 Parnes Affidavit").[39] The scope of the affidavit is narrow. As summarized below, in it, Parnes describes his relationship with Altshuler, the services Altshuler provided in connection with the creation of the Herschmann Report, and his role in the creation of that report.

Parnes says that he has known Altshuler since 2015, that he refers cases to her and, over the years, Altshuler has represented him in several personal matters. 2022 Parnes Affidavit ¶ 3. He is clear that Altshuler is neither his law partner nor his employee. *Id.* ¶ 4. In August 2019, Parnes reached out to Altshuler, on behalf of a client, seeking her assistance in locating a private investigator licensed in Israel for the purpose of conducting a "basic financial investigation." *Id.* ¶

---

[37] An English translation of two pages of the October 31, 2021 Trial Transcript from the Orly ISR Civil Action is annexed to the Reply as Exhibit M.

[38] *Supplement to Motion for Reconsideration*, ECF No. 581.

[39] The 2022 Parnes Affidavit is annexed to the First Supplement as Exhibit 1.

5. He asserts that to the best of his knowledge, Altshuler is not acquainted with the client, and has not spoken with him, nor met him. *Id.* ¶ 8. He says that he did not advise Altshuler why he was seeking a private investigator, and that he only shared with her the fundamental requirements for performing the investigation. *Id.* ¶ 7. Parnes explains that although Altshuler was staying overseas at the time, she provided him with three quotes by licensed private investigators, from which the Investigator was chosen. *Id.* ¶¶ 6, 7.

Parnes denies instructing the Investigator on the requirements of the investigation. He says that he did not request Altshuler to issue a report of entries into and exits out of Israel concerning Herschmann. *Id.* ¶¶ 9-10. He contends that until after the Investigator had prepared his findings, he did not know, nor had he met the Investigator. *Id.* ¶ 9.

Herschmann argues that the 2022 Parnes Affidavit is newly discovered evidence that directly contradicts representations that Sagi and his counsel made to this Court in advancing their work product claim and is contrary to certain findings in the Order that were based upon the 2020 Parnes Declaration. First Supplement at 1. He contends that the 2022 Parnes Affidavit further demonstrates that the Herschmann Report does not merit work product protection and should be produced to him. *Id.* at 1. The Court considers those matters below.

Herschmann says that in the 2020 Parnes Declaration, Parnes states that the Investigator was "retained through" Parnes's "firm to provide investigative services" "on Sagi's behalf" and that his firm was provided a copy of the Herschmann Report. *Id.* at 2 (quoting 2020 Parnes Declaration at ¶ 3). In contrast, the 2022 Parnes Affidavit does not mention Sagi at all and asserts that a "basic financial investigation" was performed for some unidentified "client" by an investigator whom neither he nor anyone at his firm ever interacted with before the issuance of the Report. *Id.* (quoting 2022 Parnes Affidavit at ¶ 5). Moreover, Herschmann notes that in the 2022

38

Parnes Affidavit, Parnes asserts that Altshuler was the sole person who dealt with, and directed the work of, the Investigator, before the creation of the Herschmann Report, and that she is not a partner or otherwise affiliated with his law firm. *Id.* at 1-2 (citing 2022 Parnes Affidavit ¶ 4). He contends that Parnes's "new claim" in the 2022 Parnes Affidavit that he did not ask the Investigator to obtain Herschmann's travel information is directly contrary to Dellaportas's and Sagi's representations to this Court that those travel records were "highly material" to this bankruptcy case and that one of the primary reasons that the investigator was hired in the first place by Parnes's law firm was to investigate "[Herschmann's] whereabouts." *Id.* at 3 (citing Order at 15, 21, 22; Dellaportas April 20 Letter at 1; Sagi May 29 Letter at 8).

In short, Herschmann argues that in the affidavit, Parnes attests that he never hired an investigator; that he never communicated with the Investigator to instruct the Investigator on what work was to be completed; that the Herschmann Report was never sent to him; and that Altshuler, who knew nothing about Sagi, was the only person who communicated with and received a copy of the Herschmann Report from the Investigator. First Supplement at 8. He contends that under these circumstances, the Herschmann Report could not be protected as Parnes's work product. *Id.*

Herschmann contends that the 2022 Parnes Affidavit contains facts that contradict Parnes's testimony in the 2020 Parnes Declaration, and the Court's findings in the Order. *Id.* at 2-3. First, in the Order, based on the Parnes 2020 Declaration, the Court found, "that in August 2019, [Parnes's] law firm retained [the Investigator] to provide investigative services in connection with Sagi's judgment collection efforts," Order at 22, and that the "undisputed facts demonstrate that the [Parnes] law firm retained the [I]nvestigator . . ." *id*. at 24. Herschmann argues that the 2022 Parnes Affidavit directly contradicts those "undisputed facts," because Parnes admits that he did not communicate with or direct the Investigator in any way and that he "never asked . . . to issue a

39

report of entries into and exits out of Israel concerning [Herschmann]).” First Supplement at 3-4

(citing 2022 Parnes Affidavit at ¶ 10). He contends that demonstrates unequivocally that the

Herschmann Report was not Parnes's "work product." *Id.* at 3.

Second, Herschmann argues that in the Order, the Court noted that Sagi represented to the

Court that the Investigator was retained for the following two reasons:

> To investigate the Debtor's residency, in anticipation of a contested venue
> motion. He asserts that because Mr. Herschmann has previously used his own
> residency to bolster his wife's claims as to her residency, his whereabouts, too,
> were relevant to the venue issues.
>
> To investigate the Debtor's bank and credit card accounts. He says that Mr.
> Herschmann's bank and credit card information was relevant, because the
> Debtor was making most of her charges on the couple's joint AmEx card, the
> existence of which he says both had both falsely denied under oath. He contends
> that those accounts were important because the charges reflect the Debtor's
> location, and because they might also indicate the location of the Debtor's
> assets.

First Supplement at 6-7 (citing Order at 21). Herschmann says that although Parnes now swears

that he "never" wanted any report concerning Herschmann's travel in and out of Israel, Dellaportas

and Sagi told this Court just the opposite, and they also told this Court that the information

concerning his travel was highly material to Orly's bankruptcy, and was one of the primary reasons

that Sagi hired an investigator in Israel in the first place. *Id.* at 7 (citing Dellaportas April 20 Letter

at 2).

On a different note, Herschmann says that the 2022 Parnes Affidavit and the testimony

given by Altshuler in the Herschmann ISR Civil Action, undercuts Dellaportas's assertion that he

did not learn of the existence of the Herschmann Report until April 2020. *Id.* at 5. Herschmann

says that Dellaportas claims that he never learned of, or saw, the Herschmann Report until

40

sometime in March 2020, *id.*,[40] and that he never received a copy of the Herschmann Report from Sagi, but rather got it from Parnes to submit for *in camera* review, *id.*[41] In the 2022 Parnes Affidavit, Parnes asserts that Altshuler "is not acquainted with the client, she hasn't spoken with, nor met him." 2022 Parnes Affidavit at ¶ 8. Herschmann contends that Altshuler told the Israeli Court that even if the Investigator had sent the Herschmann Report to her in 2019, she would have immediately destroyed her only copy and permanently wiped any traces of it off of the computer system. First Supplement at 4 (citing Altshuler Israeli Court Protocol Testimony, p. 2). Herschmann says, in light of those representations, Parnes could not have sent a copy of the Herschmann Report to Dellaportas after the March 4, 2020 hearing because Altshuler had destroyed all evidence of it. *Id.* at 4-5 (citations omitted). Moreover, Parnes's attorney in Israel represented to the court there that Parnes never had the Herschmann Report and it went from the investigator directly to Sagi. *Id.* at 5. Herschmann says that the Investigator, Parnes, Sagi, and Altshuler all assert that they have no copies of the Herschmann Report (in either electronic format or otherwise). *Id.* at 4. He says the fact that everyone involved in the creation of the Herschmann Report either now claims that they never had it or destroyed all evidence of it is proof of consciousness of guilt by all involved. *Id.*

Herschmann maintains that it is impossible to reconcile the various conflicting statements that Sagi and his counsel have proffered to this Court and the Israeli Court. First Supplement at 6. He says that Parnes now claims that Altshuler did not know Sagi's identity before the creation of

---

[40] Citing Dellaportas May 4 Letter at 2 ("When I was asked unexpectedly about [the Herschmann Report] at the time of the [March 4 Conference], I was only aware of single [sic] report from the investigator, which I had already shared with Mr. Herschmann. After the conference, however, I spoke with Israeli counsel, who informed me of a second report[.]").

[41] Citing June 12 Letter at 2 ("As the attached declarations reflect (Exhs. O-P), the [Herschmann] Report was procured through the law firm of Parnes & Co., which until Mr. Herschmann's recent inquiry, had the only copy. (I obtained the document from Mr. Parnes, not from Sagi.").

the Herschmann Report, Sagi and Parnes claim that they never communicated with the Investigator or identified Sagi as the client before the issuance of the Herschmann Report, and yet the Investigator addressed the Herschmann Report directly to Sagi. *Id.*[42]

In short, Herschmann asserts that the 2022 Parnes Affidavit makes these multiple ever-shifting stories impossible to believe, and again demonstrates that there is no longer any basis for this Court's order. *Id.* Moreover, Sagi does not claim that Altshuler owes him any duty of confidentiality regarding interactions with the investigator, Parnes or the Herschmann Report. *Id.* at 6. In fact, no one claims that Sagi was her client at any time. *Id.* Tellingly, no one has tried to assert that the Herschmann Report is Altshuler's work product. *Id.*

**Sagi Response to First Supplement**

Sagi addresses three issues in his response to the First Supplement (the "First Supplement - Response").[43] First, he denies that he has ever claimed that he does not have a copy of the Herschmann Report. First Supplement - Response at 1. Sagi says that neither he nor any firm appearing for him in this case has subsequently "destroyed" that report or anything else. *Id.* He asserts that Emmet Marvin has retained its copy of the Herschmann Report, along with a record of when and how it was received. *Id.* Next, he asserts that the 2020 Parnes Declaration is consistent with the 2022 Parnes Affidavit, and the latter provides "only additional detail." *Id.* at 2. He includes

---

[42] Herschmann argues:

> For all these statements to be true, the investigator just happened, on his own, to guess that the Herschmann Report should be addressed to Sagi (someone he never heard of); decided to obtain Mr. Herschmann's travel records for a specific period of time, without being asked to do so by Sagi or any of his counsel; and decided to include that information in a report that coincidentally happened to be something that Dellaportas needed as "highly material" information for his venue argument in Texas.

First Supplement at 6.

[43] *Response to Non-party Eric Herschmann's "Supplement to Motion for Reconsideration,"* ECF No. 582.

a chart with quotations from portions of each document. *Id.* Finally, he purports to correct Herschmann's alleged misstatements regarding Sagi's receipt of the Herschmann Report.

Sagi says that central to Herschmann's contention that attorney work product did not apply to the Herschmann Report is that the Investigator sent the report directly to Sagi with no involvement by or copy to an attorney. *Id.* at 3 (citing Herschmann June 5 Letter at 1). Sagi says that Herschmann represented that at the September 23 Meeting, the Investigator admitted to Herschmann and his counsel that he prepared the Orly and Herschmann Reports for Sagi and dealt directly with Sagi. *Id.* at 3. Sagi contends that those statements are false and, as support, cites to portions of the September 23 Transcript. *Id.* at 3-4.

**Herschmann Reply In Support of First Supplement**

In his reply in support of the First Supplement (the "First Supplement - Reply"),[44] Herschmann reiterates that in the 2022 Parnes Affidavit, Parnes admits that he "most certainly did not instruct" the Investigator "on the requirements of the investigation" and that he "never asked" Altshuler or the Investigator to "issue a report of [Herschmann's] entries into or exits out of Israel." First Supplement - Reply at 1, n.2 (citing 2022 Parnes Affidavit at ¶¶ 4, 9-10). He contends that admission effectively bars Sagi from asserting, let alone demonstrating, that the Herschmann Report is Parnes's work product. *Id.* at 1.

He also argues that there is no merit to Sagi's contention that the Investigator did not directly send him the Herschmann Report. *Id.* at 2. He says that in the Sagi June 12 Letter, Dellaportas told the Court that Sagi did not have a copy of the Herschmann Report. *Id.* at 2.[45] He

---

[44] *Reply in Further Support of Motion for Reconsideration*, ECF No. 583.

[45] As support, Herschmann cites to the June 12 Letter, as follows:

also reiterates that contrary to Dellaportas's contention, Parnes could not have sent Dellaportas the

report in 2020, because the documents show that Altshuler, as the only attorney who dealt with the

Investigator, had the only copy of the report, and she destroyed all evidence of its existence and

wiped it off the computer system in 2019. *Id.* at 3. He contends that Sagi does not attempt to refute

that showing. *Id.* at 3.

**Herschmann Second Supplement to Motion**

In his Second Supplement to the Motion (the "Second Supplement"),[46] Herschmann seeks

to introduce additional "newly discovered evidence" that he says further supports the Motion.

Second Supplement at 1-2.

Herschmann appealed the Israeli Police's decision to close the Herschmann ISR Criminal

Complaint to the State of Israel, Ministry of Justice, State's Attorney Office, Appellate Division

(the "SAO Appellate Division"). Pursuant to a decision dated October 18, 2022, the SAO

Appellate Division dismissed the appeal (the "SAO Appellate Division Decision").[47] In the

decision, the SAO Appellate Division first described the substance of Herschmann's complaint

against the Investigator, as follows:

> [Herschmann's] complaint is about a violation of privacy. According to the
> complaint, [Sagi], whom, between him and [Orly] there are ongoing civil legal
> proceedings, approached [the Investigator] and asked him for information about
> [Herschmann] and [Orly], including details of bank accounts and entries and
> exist [sic] in and out of Israel. [Investigator] approached one or more Authority

---

As the attached declarations reflect (Exhs. O-P), the Report was procured through the law firm of
Parnes & Co., which until Mr. Herschmann's recent inquiry, had the only copy. (I obtained the
document from Mr. Parnes, not from Sagi.) Sagi did not hire Mr. Matityahu, has never met him, and
has never even communicated with him. In other words, the Report was procured *exclusively*
through an attorney.

June 12 Letter at 2 (footnote omitted).

[46] *Second Supplement to Motion for Reconsideration*, ECF No. 589.

[47] The SAO Appellate Division Decision is annexed to the Second Supplement as Exhibit A.

Personnel, and through them obtained the information sought, and thereafter, delivered the same to [Sagi], against payment.

SAO Appellate Division Decision at 1.[48] The SAO Appellate Division then summarized Herschmann's arguments in support of the appeal, as follows:

> [T]hat there exists a body of evidence against one of the Authority Personnel and such person has not been investigated; [Investigator] admitted to having held the illegally obtained information; contrary to [Investigator's] claim during his police investigation, according to which he received the information from another private investigator, in the scope of the civil claim being conducted against him by [Herschmann], [Investigator] argued that he could not recall whether the private investigator he had mentioned in his investigation was indeed the one who had provided him with the information.

*Id.* The SAO Appellate Division noted that Herschmann argued that those factors "suffice[] to destroy [the Investigator's] defense and give rise to a reasonable chance of convicting [the Investigator]; the delivery of the information constitutes a joint breach of loyalty." *Id.*

The SAO Appellate Division found no merit to the appeal and determined that the closing of the case file was justified. *Id.* at 3. The SAO Appellate Division explained:

> A review of the investigation materials contained in the investigation file gave rise to the conclusion, that under the circumstances, the closing of the case file was justified, therefore, there is no room to intervene with that decision.

> A review of the evidence suggests that it is not possible to refute - according to criminal legal standards - [the Investigator's] claim that he received the information from another private investigator; it was found, that the chances of an investigation of the Authority Personnel would yield findings supporting the evidence in the case are slim, especially following the lapse of time; there exist indications that persons from other bodies other than the Population Authority had viewed the information about [Herschmann and Orly].

---

[48] The term "Authority Personnel" refers to those persons from the Israeli Population Authority who assisted the Investigator in obtaining information about Herschmann and Orly. *See* SAO Appellate Division Decision at 1.

45

*Id.* Based on those findings, the SAO Appellate Division determined "that there is little public benefit from a continued investigation[,]" and dismissed the appeal. *Id*. at 2.

In response to that decision, by letter dated December 20, 2022 (the "Herschmann December 20 Letter"),[49] Herschmann and Orly's counsel advised the SAO Appellate Division that his clients respected the SAO Appellate Division Decision, but nonetheless contended as follows:

> After reviewing the decision and its details, it is only reasonable that you issue a brief clarification, to the effect, that any remaining doubt in your view regarding the identity of the investigator who had received possession of the information, or the identity of the person that had provided said investigator with the information, does not derogate from the clear fact by which, the information was illegally extracted from the data base.

Herschmann December 20 Letter at 1. Counsel asked the SAO Appellate Division for "clarification . . . that nothing in [the SAO Appellate Division Decision] permits or stipulates, that receipt of the information by the private investigator (whoever he or she may be) in said circumstances is legal." *Id*. Counsel explained that Herschmann and Orly were requesting the clarification because "[Investigator's] principals have argued [to the Bankruptcy Court] that the criminal investigation has been concluded 'with no criminal liability being attached'" and that "[s]uch an argument equates to a representation of your decision as having legalized the offence committed against my clients." *Id*.[50] Counsel argued that "[i]n said circumstances, and despite the complaint not having evolved into an indictment, my clients are in the very least entitled to protection against the representation of the event and the results of the investigation in a distorted manner." *Id*. at 2.

---

[49] The December 20 Letter is annexed to the Second Supplement as Exhibit B.

[50] As support, counsel annexed Sagi's Opposition to the Motion, ECF No. 558.

By letter dated December 21, 2022 (the "SAO Appellate Division December 21 Letter"),[51] the SAO Appellate Division responded to the Herschmann December 20 Letter. In part, the letter advised, as follows:

> Following an additional review of your application, we found it appropriate to clarify that nothing in the decision to dismiss the appeal equates to a stipulation that no criminal offence has been committed against [Herschmann]. It is further noted that nothing in said decision permits the [Investigator] to view, hold, or use the confidential details of [Herschmann] contained in the confidential governmental computer systems.

SAO Appellate Division December 21 Letter. The letter also "emphasized" that "[t]he unlawful extraction of information and the use thereof constitute a criminal violation of the law." *Id.*

Herschmann argues that in its letter, the SAO Appellate Division confirmed that the representations made by Sagi in his Opposition regarding the dismissal of the Herschmann ISR Criminal Complaint are false and that "obtaining and even possessing personal information from an Israeli Government database is illegal under Israeli criminal law." Second Supplement at 2. He also says that the SAO Appellate Division's statement that the conduct of the Investigator was "criminal" is consistent with the Orly Israeli Court Decision. *Id.* He contends that "this new evidence further confirms that the Herschmann Report is not protected work product and the Motion to Reconsider should be granted." *Id.*

**Sagi Response to Second Supplement**

Sagi responded to the Second Supplement (the "Second Supplement - Response").[52] He contends that in its decision, the SAO Appellate Division reaffirmed the decision of the Israeli Police not to prosecute the Investigator. Second Supplement - Response at 1-2. He says that in

---

[51] The SAO Appellate Division December 21 Letter is annexed to the Second Supplement as Exhibit C.

[52] *Response to Non-Party Eric Herschmann's "Second Supplement to Motion for Reconsideration,"* ECF No. 595.

doing so, the SAO Appellate Division found that the chance of a successful prosecution of the Investigator was "slim" because the Investigator apparently had lawfully obtained the information from a third party who already had it. *Id.* at 2. He also asserts that in "clarifying" its decision, the SAO Appellate Division "would only state the unremarkable proposition that the 'unlawful extraction of information and the use thereof constitute a criminal violation of the law.'" *Id.* (citation omitted). He contends that has no bearing here because, according to the SAO Appellate Division, there was no evidence that the Investigator had unlawfully extracted any information. *Id.* Rather, the SAO Appellate Division found evidence that the information was obtained from a lawful source. *Id.* He argues that the government agencies best equipped to examine this matter have thoroughly investigated it and found "slim" to "no" evidence of criminal culpability. *Id.* at 3. Accordingly, and for that reason, he says the Court should deny the Motion. *Id.*

**Herschmann Reply in Support of Second Supplement**

In his reply in support of the Second Supplement (the "Second Supplement - Reply"),[53] Herschmann reiterates that there could be no attorney work product protection extended to the Herschmann Report. He asserts that there is no question that the SAO Appellate Division December 21 Letter and the Orly Israeli Court Decision contradict Sagi's position that accessing or using confidential Israeli government records without authorization is not criminally illegal under Israeli law. *Id.* at 3. He says that "[s]imply put, Sagi's investigator got caught stealing Mr. Herschmann's private information." *Id.* at 4.

Herschmann says that the Israeli Court found that "this is no generic infringement of Plaintiff's privacy, but rather an illegal infringement, which cannot be legalized by good faith, nor by presenting in court the results of the infringing acts, i.e., the presentation of the report produced

---

[53] *Reply in Further Support of Second Supplement to Motion for Reconsideration*, ECF No. 590.

by Respondent." *Id.* at 3 (quoting Orly Israeli Court Decision at 19). He maintains that the SAO Appellate Division found that the Investigator was involved in criminal conduct—not the opposite. *Id.* at 2 (citing SAO Appellate Division December 21 Letter). He contends that when Sagi's representations to this Court concerning the supposed legality of the Herschmann Report were brought to the attention of the SAO Appellate Division, it clarified that the Investigator committed a criminal violation of Israeli law by obtaining, possessing and using Herschmann's confidential information. *Id.* at 2-3.[54] Moreover, and in any event, he asserts that neither Sagi, nor his counsel, nor the Investigator have ever articulated a legal way to access a confidential Israeli Government database to obtain the information contained in the Herschmann Report—because none exists. *Id.* at 6.

Finally, Herschmann contends that the tape recording which he provided to this Court *in camera,* proves that Sagi falsely told this Court that at the September 23 Meeting the Investigator had been threatened with criminal prosecution and failed to appear to testify because he was supposedly "intimidated," and the Investigator himself flatly rejected under oath the notion that he had been intimidated, saying nothing of the sort when asked why he had not testified in the proceeding. *Id.* at 4-5.

---

[54] Herschmann relies on the follow language in the SAO Appellate Division December 21 Letter:

> [N]othing in the decision [affirming the dismissal of the complaint] equates to a stipulation that no criminal offence has been committed against [Herschmann]. It is further noted that nothing in said decision permits [Investigator], to view, hold, or use the confidential details of [Herschmann] contained in the confidential governmental computer systems. It is hereby emphasized: The unlawful extraction of information and the use thereof constitute a criminal violation of the law.

SAO Appellate Division December 21 Letter.

**Herschmann Third Supplement to Motion**

With his Third Supplement to the Motion (the "Third Supplement"),[55] Herschmann submits partially translated documents filed in the Herschmann ISR Civil Action by the Investigator and Parnes, respectively, in response to Herschmann's motion to disclose the Herschmann Report. *See Investigator's Response to Motion to Order Disclosure of Specific Document* (the "Investigator Response"),[56] *Parnes Response to Plaintiff's Motion to Order Disclosure of a Specific Document* (the "Parnes Response").[57] He also submits a translated transcript of certain "contemporaneous WhatsApp messages" between the Investigator and Herschmann's Israeli counsel (the "WhatsApp Messages") from September 22-24, 2019, and an excerpted portion of the Israeli Court protocol transcript generated in the Herschmann ISR Civil Action on October 31, 2021 (the "Oct. 31 Israeli Court Protocol Transcript").[58]

Herschmann asserts that in the Parnes Response, Parnes questions whether the Herschmann Report exists. Third Supplement at 3. He says that in the Investigator Response, the Investigator (i) claims that he was not asked to deliver information about Herschmann as was done in relation to Orly, (ii) denies being in possession of the Herschmann Report, and (iii) claims that the subcontractor that he used did not find anything about Herschmann or Orly. *Id.* at 3 (citations omitted).

Herschmann argues that through those submissions to the Israeli Court, Parnes and the Investigator are trying to distance themselves from the Herschmann Report while denying that it

---

[55] *Third Supplement to Motion for Reconsideration*, ECF No. 611.

[56] The Investigator Response is annexed to the Third Supplement as Exhibit 1A.

[57] The Parnes Response is annexed to the Third Supplement as Exhibit 1B.

[58] Those materials are annexed to the Third Supplement as Exhibit 2.

contains his information, positions that are completely contrary to the representations Sagi and Dellaportas have made to this Court. Third Supplement at 2. He says the reason they are doing so is because the Attorney General for Israel has now confirmed that to "view, hold or use the confidential details" of the Herschmann Report, let alone stealing the information contained in it from "confidential governmental computer systems," is a "criminal violation of the law." *Id.* at 2 (citation omitted). He asserts that the court filings in the Herschmann ISR Civil Action confirm that the representations by Sagi, Dellaportas, Parnes and the Investigator to this Court and the Israeli Court "are a tissue of falsehoods to try to cover up the illegal and criminal nature of their violation of applicable Israeli criminal law protecting the confidentiality of personal information stored on government computers, not to mention their end run around the proper discovery procedures applicable in this Court which was part and parcel of that attempted cover up." *Id.* at 1.

He says that together, the WhatsApp Messages and excerpted portion of the Oct. 31 Israeli Court Protocol Transcript confirm that the Investigator voluntarily attended the September 23 Meeting and was never intimidated by Herschmann or his counsel. *Id.* at 4.

**Herschmann Fourth Supplement to the Motion**

On the date of the hearing on the Motion, Herschmann sought to introduce a set of demonstratives. June 30 Hr'g. Tr. at 29:1-14.[59] Sagi objected on evidentiary grounds—namely, that the demonstratives were irrelevant to the Motion, and that they were not in the record of the Motion. *Id.* at 34:13-36:1. The Court adjourned oral argument and instructed the parties to submit

---

[59] *Transcript June 30 hearing*, ECF No. 628.

51

any demonstratives alongside a supplement explaining their relevance. *Id.* at 56:16-57:14. The

Court also instructed each party to respond to the other's supplement.

Herschmann submitted his Fourth Supplement to the Motion (the "Fourth Supplement").[60]

He attached the following evidence:

> Exhibit A: Deck of twenty-eight slides to be used as demonstratives (the "Demonstrative").
>
> Exhibit B: Declaration of Yovel Nachmani dated July 3, 2023. One exhibit was attached to this declaration: translations of WhatsApp Messages between Nachmani and the Investigator from September 22-24, 2019.
>
> Exhibit C: A transcript of the proceedings held June 30, 2023.

Additionally, Herschmann requested nine[61] forms of relief:

> (i) an order finding that under the crime/fraud exception, neither the attorney-client privilege, the common-interest privilege nor the work product doctrine protects any communications or documents in any way relating to Sagi and his counsel's illegally obtaining, using or disseminating my private and confidential information, including, without limitation, their use of private investigators to do so;
>
> (ii) an order authorizing me to take discovery, including document requests, subpoenas and depositions, related to, among other things, the full circumstances regarding the obtaining, using, and/or disseminating of any of my private information, and, for the period after we were married, Orly's private information, that was not obtained pursuant to a court order or properly served and noticed subpoena, including, without limitation, when and how Dellaportas and Sagi first learned of the existence of the Herschmann Report and when and how they used that information for any purpose;
>
> (iii) an order appointing a special master to oversee such discovery;
>
> (iv) an order requiring Dellaportas and Sagi to produce to me (and only to me) any and all reports or other documents, including electronic and native format

---

[60] *Corrected Fourth Supplement to Motion for Reconsideration*, ECF No. 618. The exhibits to the Fourth Supplement are docketed at ECF No. 617.

[61] Herschmann misnumbered the demands and does not include a fifth roman numeral.

versions with metadata, that contain or refer to any of my private information not obtained pursuant to a court order or properly served and noticed subpoena;

(vi) [sic] an order requiring that Sagi and Dellaportas identify all persons to whom such information has been communicated;

(vii) an order requiring that Sagi and Dellaportas produce to me (and only me) the contents of those communications in native format with metadata;

(viii) an order requiring Sagi and his counsel, agents and representatives to hold all such information, reports or other documents in strict confidence pending further order of this Court;

(ix) an order awarding me the reasonable attorney's fees and costs I have incurred in connection with this motion and addressing these issues; and

(x) and [sic] order awarding any other relief that this Court deems just and proper in light of the evidence.

Fourth Supplement at 3-4.

Herschmann contends that his demonstratives only "cite to or quote from court filings, correspondence with Dellaportas and court rulings and/or transcripts (with ECF cites), in order to summarize, for the convenience of the Court, the voluminous filings and proceedings in this matter that directly relate to my Motion for Reconsideration." *Id.* at 4. Herschmann explains the relevance of his demonstratives, addressing each of the twenty-eight slides individually. *Id.* at 6-10. Many of these slides refer to documents filed in this proceeding, in the Texas Bankruptcy Court before transfer, or in the New York U.S. District Court, including slides 2-6, 14-16, and 19-28. *Id.* Some of the slides serve as a timeline of events in this case, including slides 7-13 and 27-28. *Id.* at 7. Slide 18 is just "the word 'YET . . .' and is a transitional slide." *Id.* at 8.

As relevant, Herschmann's Fourth Supplement (as originally filed) includes three sections. The first, on pages 1-2, recites the standard for a reconsideration motion, using the same text Herschmann included in the pending Motion. *Id.* at 1-2. The second, on page 5, essentially accuses Dellaportas of professional misconduct in general terms and cites to authorities that deal with

various ethical obligations for attorneys in New York. *Id.* at 5. The third section, on pages 10-16, contains Herschmann's account of the September 23 Meeting and his attorney's contemporaneous interactions with the Investigator, which Herschmann supports by explaining the circumstances surrounding the WhatsApp Messages attached to Exhibit B to the Fourth Supplement. *Id.* 10-16. Herschmann asserts that the WhatsApp Messages refute Sagi's claim that Herschmann intimidated the Investigator and caused the Investigator to become hospitalized. *Id.* at 12-14.

**Sagi Motion to Strike**

The day after Herschmann filed his Fourth Supplement, Sagi moved to strike three sections of Herschmann's Fourth Supplement: the standard for reconsideration, the section accusing Dellaportas of unspecified ethical violations, and the lengthier section explaining Herschmann's side of the September 23 Meeting with the Investigator (the "Motion to Strike").[62] Sagi argued that those sections of the Fourth Supplement were outside the scope of the Court's briefing instructions. Motion to Strike at 2-3.

The Court held an expedited hearing on the Motion to Strike. The Court resolved the Motion to Strike at that hearing, striking only the portion making accusations against Dellaportas. A written order to that effect was entered shortly thereafter.[63]

**Sagi Response to Fourth Supplement**

Sagi raises a number of arguments in response to the Fourth Supplement (the "Fourth Supplement - Response").[64] He contends that, in the Motion as filed, Herschmann misplaces his reliance on the Orly Israeli Court Decision as providing probable cause that the creation of the

---

[62] *Expedited Motion to Strike Fourth Supplement to Motion for Reconsideration*, ECF No. 622.

[63] *Order on Sagi Genger's Motion to Strike the Fourth Supplement*, ECF No. 629.

[64] *Sagi Genger's Response to Eric Herschmann's "Fourth Supplement to Motion for Reconsideration,"* ECF No. 626.

Herschmann Report was illegal under Israeli law.[65] Fourth Supplement - Response at 2. He asserts

that the Court should accord no weight to the ruling because Sagi is not a party to the Orly ISR

Civil Action and that the Orly Israeli Court Decision has nothing to do with the Herschmann

Report. *Id.* Rather, it addresses civil liability under the Orly Report that Sagi never claimed as

privileged. *Id.* Moreover, he argues that in the Herschmann ISR Civil Action, the Israeli Court—

addressing the Herschmann Report—found that Herschmann has a low likelihood of success in

that action. *Id.* Sagi argues that, more significant than either of the Israeli Court rulings in the civil

actions, is that the Israeli Police, after investigating the allegations in the Herschmann ISR

Criminal Complaint against the Investigator, issued the Israeli Police Decision not to prosecute the

Investigator on the grounds of "no criminal culpability," and that on appeal, the SAO Appellate

Division affirmed that ruling. *Id.* (citations omitted).

Moreover, Sagi contends that in arguing that the Court should reconsider its determination

that the Herschmann Report is attorney work product and thus protected from disclosure,

Herschmann essentially has abandoned his original contention that it is subject to the "crime-

fraud" exception to work product status. Fourth Supplement - Response at 5. Sagi maintains that

with the supplements to the Motion, Herschmann is asserting a new theory in support of the

Motion. *Id.* at 3. He says that as set forth in Herschmann's slide deck, Herschmann demands that

---

[65] Sagi correctly contends that in the Motion, Herschmann argued that the basis for the Court to reconsider the Order was, as follows:

> [T]he Court denied my request for an order …[because] I did not show sufficient probable cause that the preparation of the report was illegal under Israeli law so as to justify the application of the crime/fraud exception. Now, however, an Israeli court has issued a decision … expressly holding, in a final judgment after trial in a lawsuit in Israel brought by Orly Genger against the investigator, that the investigator's conduct in obtaining her confidential personal information which he included in a report about Orly (the "Orly Report") … was illegal under Israeli statutes that make the conduct both civilly and criminally unlawful.

Fourth Supplement - Response at 2 (quoting Motion at 1).

this Court revisit a string of rulings made against him, during the years 2019 through 2021, by this Court, New York U.S. District Court, Texas U.S. District Court, and the Texas Bankruptcy Court. *Id.* at 4. He notes that according to Herschmann, these rulings were all the product of fraud on the court, entitling him to relief under Rule 60(b)(3). *Id.* (citation omitted). He denies that there is merit to those contentions, and notes that among Herschmann's allegations is that Dellaportas knew of the existence of the Herschmann Report in March 2020, and concealed it from the Court. *Id.*

Sagi denies those allegations. He asserts that Emmet Marvin has maintained a complete record of exactly when and how each of the Orly and Herschmann Reports were received, both in original Hebrew and in English translations. *Id.* With the response, Sagi submitted those emails to the Court *in camera*—in electronic form, with original metadata—allowing the Court to review them for itself. The Court conducted an *in camera* review of the following: (i) a September 2019 email in which Parnes sent to Dellaportas the Orly Report; (ii) an October 2019 email from Parnes to Dellaportas, essentially notifying Dellaportas of Orly's Israeli lawsuit against the Investigator; (iii) an April 2020 email from Parnes to Dellaportas, in which Parnes sent Dellaportas an English translation of the Herschmann Report; and (iv) a September 2020 email from Parnes to Dellaportas, in which Parnes sent Dellaportas a slightly revised English translation of the Herschmann Report and the original Herschmann Report in Hebrew.

Sagi also asserts that Herschmann may not revisit matters he lost in various courts from 2019-2021, and cannot move for reconsideration in order "to advance new issues or theories of relief that were not previously presented to the court." Fourth Supplement - Response at 5 (quoting *Mahadeo v. New York City Campaign Fin. Bd.*, 514 F. App'x 53, 55 (2d Cir. 2013) (summary order)). Sagi also maintains that Herschmann is barred from raising new matters in his reply. He

argues that the Second Circuit has a hard-and-fast rule: "new arguments may not be made in a reply brief." *Id.* at 7 (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir. 1999) (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). He maintains that Herschmann runs afoul of that standard. He argues that comparing Herschmann's arguments in the Motion with the matters he has raised in his eight replies/supplements,[66] shows that most of the arguments in Herschmann's slide deck are found only in the latter and that the Court should reject those arguments. *Id.* at 7-8.

Sagi asserts that in the Fourth Supplement, Herschmann makes clear that he is seeking relief under Rule 60(b)(3), whereby a Court may reconsider a final order in the event of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." *Id.* at 4 (citing Fed. R. Civ. P. 60(b)(3)). A motion for relief under Rule 60(b)(3) must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Sagi argues that Herschmann's request for relief is time-barred, as he filed the Motion more than fourteen months after the Court issued the Order. Fourth Supplement - Response at 8. Rule 60(b)(6) provides that relief may be granted for "any other reason justifying relief." Fed. R. Civ. P. 60(b)(6). That provision only applies "when no other subsection is available . . . ." *Nemaizer v. Baker*, 793 F.2d 58, 64 (2d Cir. 1986). Sagi says that Herschmann cannot obtain relief under Rule 60(b)(6) because he has expressly invoked Rule 60(b)(3). Fourth Supplement - Response at 8. A motion seeking relief under Rule 60(b)(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). He contends that Herschmann unreasonably delayed in relief under Rule 60(b)(3), and that the request for relief is time-barred. Fourth Supplement - Response at 8-9.

---

[66] ECF Nos. 559, 581, 583, 589, 590, 611, 618, 625.

57

At the hearing on the Motion, the Court directed Mr. Herschmann to "articulate, again, the relief that you're asking for through the motion, and then why that the documents are admissible in the context of the motion." June 30 Hr'g. Tr. at 57: 2-5. Sagi argues that in response to that directive, Herschmann improperly inserted a number of requests for relief not included in the Motion. Fourth Supplement - Response at 7-8. He contends that the Court must reject those demands for relief, as the party seeking reconsideration is always limited to the relief sought in the motion, as filed. *Id.* at 11.

Finally, Sagi maintains that the Court issued the Order while discovery was underway relating to Sagi's Motion to Dismiss and that the Court held that the Herschmann Report might be relevant to, *inter alia*, "the issues that Sagi raises in support of the Motion to Dismiss." *Id.* (quoting Order at 19). He maintains that now that the motion has been decided, Herschmann's Israeli travel and Israeli bank accounts are not relevant to any current open issue in the bankruptcy. *Id.* He argues that instead of connecting his current demand for production of the Herschmann Report to any pending matter before this Court, Herschmann has previously argued that his inability to obtain the Herschmann Report in the Israeli proceeding "makes my need for this Court's relief all the more acute." *Id.* Sagi maintains that if that is in fact the case, Herschmann must file an application with the district court pursuant to 28 U.S.C. § 1782 for an order in aid of a foreign tribunal, and meet the standards set forth in *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015). *Id.* at 11-12.

**Hearing and Post-Hearing Filings**

This Court heard argument on the Motion. Thereafter, Sagi and Herschmann filed the following documents.

58

*First Sagi Supplement*

Sagi filed a supplement that purports to clarify the nature of Altshuler's affiliation with Parnes's firm (the "First Sagi Supplement").[67] During the hearing on the Motion, the Court inquired as to Parnes's statement in the Parnes 2020 Declaration that "[i]n August 2019, Sason Matityahu, a private investigator licensed in Israel, was retained through my firm to provide investigative services in connection with the aforementioned judgment collection efforts on Sagi's behalf," *see* 2020 Parnes Declaration ¶ 3, in light of his statement in the 2022 Parnes Affidavit, to the effect that Altshuler (as the attorney who had direct communications with the Investigator) "is not employed by me nor is she my partner." 2022 Parnes Affidavit ¶ 3.

Sagi explains that, after the hearing, Dellaportas reached out to Parnes for additional information relating to Altshuler's affiliation with the Parnes law firm. First Sagi Supplement at 1. Sagi advises that Altshuler and Parnes ended their affiliation when Altshuler brought her third-party claim against Parnes in the Herschmann ISR Civil Action. *Id.* at 2. He said that was why Parnes correctly stated in 2022 that Altshuler "is not employed by me nor is she my partner." *Id.*

Attached to the supplement as Exhibit A is a photo of a business card bearing Altshuler's name with a "Parnes & Co" heading. *Id.*, Ex. A. Exhibit B consists of an empty email Altshuler sent in September 2019, which attached a two-page document primarily written in Hebrew but marked "Ministry of the Interior" and "State of Israel" in the letterhead. *Id.,* Ex. B. Sagi represents that the document consists of unspecified reports that Altshuler received "from the Israeli Ministry of Interior, in response to her official request to obtain the address of the debtor and her husband (what I understand to be akin to a FOIA request)." *Id.* at 1.

---

[67] *Sagi Genger's First Supplement in Further Opposition to Motion to Reconsider*, ECF No. 631.

*Herschmann Response to First Sagi Supplement*

As briefly discussed below, in responding to the First Sagi Supplement (the "First Sagi Supplement - Response"),[68] Herschmann (i) objects to the admission of the business card and email, (ii) contends that the record is clear that Altshuler has never been affiliated with Parnes law firm or Parnes's partner, and (iii) maintains that the 2020 Parnes Declaration cannot be reconciled with the 2022 Parnes Declaration and other submissions.

Herschmann argues that the Court should not admit the business card and September 2019 email attached to the Sagi First Supplement as Exhibits A and B into evidence because those documents are not "new" and should have been produced during the hearing, and because, in any event, they are inadmissible since they are not authenticated by either Parnes or Altshuler. First Sagi Supplement - Response at 1.

Herschmann says that the evidence of record shows that Altshuler was never affiliated with Parnes. *Id*. As support he points to the following:

> (i) Altshuler has never claimed that she was affiliated with or a partner at Parnes's law firm at any time, including August 2019. *Id.* at 2.

> (ii) Altshuler says that Parnes asked her for a favor, requesting her assistance in locating a private investigator to provide a financial investigation for a client who he did not identify, and that the only reason she did not Sagi because he is not a resident of Israel, and resides overseas, and that she lacks the financial resources to perform service outside of Israel. *Id.* at 2. Herschmann maintains that "[w]hat Altshuler says is hardly what a partner at a firm would say about a fellow partner or a client." *Id.*

> (iii) Parnes says that Altshuler is not acquainted with Sagi, and has not spoken with him or met him. *Id.* at 2.

---

[68] *Response to Sagi Genger's First Supplement in Further Opposition to Motion for Reconsideration*, ECF No. 633.

60

(iv) Sagi does not contend that Altshuler owes him any duty of confidentiality with regard to her interactions with the Investigator or Parnes, or in matters related to Herschmann Report. *Id.* at 3.

Finally, Herschmann details why he maintains that the 2020 Parnes Declaration cannot be reconciled with the 2022 Parnes Affidavit and other documents of record. *Id.* at 3.

### *Sagi Reply In Support of First Supplement*

Sagi filed a reply in further support of the Sagi First Supplement ("Sagi First Supplement - Reply").[69] In it, he responds to Herschmann's contention that Altshuler's business card, email address and email signature block are inadmissible because they are unauthenticated or accompanied by declaration. Sagi First Supplement - Reply at 1. He says that the documents are self-authenticating business records under Fed. R. Evid. 902(11). *Id.* In addition, Sagi includes what he says is an authenticating declaration from Parnes (the "2023 Parnes Declaration"). Parnes annexes to that declaration the documents that Sagi submitted in support of the First Supplement. Parnes represents that Exhibit B to the 2023 Parnes Declaration is a true and correct copy of an email and attachments that Altshuler sent to him on September 11, 2019, reflecting her signature block and email address while acting in affiliation with his firm. 2023 Parnes Declaration ¶ 3. He also says that the email attaches documents obtained in connection with his firm's investigation on behalf of Sagi Genger. *See Id.* ¶ 3. He also states that "Altshuler's affiliation with my firm ended prior to September 28, 2022." *Id.* ¶ 4. Finally, Sagi asserts that the 2023 Parnes Declaration and attached exhibits are fully consistent with representations to the Court by Sagi and his counsel on July 17, 2023, and otherwise. Sagi First Supplement - Reply at 2. He notes that he is not involved in, and has no access to, the Israeli Court proceedings. *Id.*

---

[69] *Sagi Genger's Reply in Further Support of His First Supplement in Opposition to Motion for Reconsideration*, ECF No. 634.

## DISCUSSION

### The Motion

In broad strokes, in the Order, the Court held that the Herschmann Report is protected from disclosure as Sagi's counsel's work product, and Herschmann failed to meet his burden of demonstrating the crime-fraud exception to the application of that doctrine. Order at 22-24, 34. As filed, the Motion seeks relief from the Order under Bankruptcy Rules 9023 and 9024, and the Court's inherent power to reconsider its orders, as set forth in *In re NYRA*. Motion at 3.

Bankruptcy Rule 9023 incorporates Rule 59, which, as relevant, regulates motions to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). Under that rule, "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004) (internal quotation marks omitted) (citations omitted). Bankruptcy Rule 9024 incorporates Rule 60. Under that rule, the court can grant relief from an order for a clerical mistake, Fed R. Civ. P. 60(a), or for "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief*," id.* 60(b)(1)-(6).

At oral argument, Herschmann clarified that in the Motion he is seeking relief from the Order under Rules 60(b)(2), (b)(3), and/or (b)(6), or, alternatively, under the Court's inherent power to modify its orders, as set forth in *In re NYRA*.

In the Motion, Herschmann points to two grounds in support of his claim to relief from the Order. First, he relies on "newly discovered evidence," to establish the crime-fraud exception to the work product doctrine. He argues that the Orly Israeli Court Decision qualifies as such evidence and is "conclusive proof that the investigator violated criminal laws in accessing Orly's Israeli travel records and constitutes, at a minimum, probable cause to believe that his accessing [Herschmann's] travel records was also a crime." Motion at 3. Second, he focuses on the Rule 45 Subpoena. He says that in issuing the subpoena to the Investigator, Sagi impugned the integrity of these proceedings and subverted the course of justice in Israel. *Id*. at 8-10. On those bases, in the Motion, as filed, Herschmann seeks the turnover of the Herschmann Report, as unprotected from disclosure by the work product doctrine. He also seeks, "as a form of sanction against Sagi and his counsel's alleged misconduct," an order of the Court directing Sagi and his counsel:

> (i) to produce to [Herschmann and only to Herschmann] any and all reports or other documents, including electronic and native format versions with metadata, that contain or refer to any of [his] personal information not obtained by subpoena or court order; (ii) to identify all persons to whom such information has been communicated; (iii) to produce the contents of those communications; and (iv) to hold all such information, reports or other documents in strict confidence pending further order of this Court.

*Id.* at 10-11 (the "Initial Request for Relief").

The first three supplements to the Motion purport to buttress Herschmann's "newly discovered evidence" argument. Collectively, in those supplements, Herschmann points to the Altshuler Israeli Court Protocol Testimony, the 2022 Parnes Affidavit, the SAO Appellate Division Decision, the SAO Appellate Division December 21 Letter, and the WhatsApp Messages, as additional evidence that the Investigator violated Israeli criminal (and civil) law in obtaining the information regarding Herschmann's entries to and exits from Israel, such that the crime-fraud

63

exception to the work product doctrine applies to the Herschmann Report. *See* First Supplement at 1-2, Ex. 1; Second Supplement at 2, Ex. A, Ex. C; Third Supplement at 4, Ex. 2.

The Fourth Supplement focuses on the Rule 45 Subpoena, but introduces issues not raised in the Motion, in support of a request for relief that is more expansive than the Initial Request for Relief. In that supplement, Herschmann does not argue that in issuing the Rule 45 Subpoena, Sagi merely impugned the integrity of the Israeli proceedings. Rather, he contends that the issuance of the Rule 45 Subpoena was an intentional act of wrongdoing by Sagi and Dellaportas that rises to the level of fraud on the Court. In addition to seeking the turnover of the Herschmann Report, and the imposition of the "sanctions" listed in the Initial Request for Relief, Herschmann seeks:

> (i) an order finding that under the crime/fraud exception, neither the attorney-client privilege, the common-interest privilege nor the work product doctrine protects any communications or documents in any way relating to Sagi and his counsel's illegally obtaining, using or disseminating my private and confidential information, including, without limitation, their use of private investigators to do so;

> (ii) an order authorizing Herschmann to take discovery, including document requests, subpoenas and depositions, related to, among other things, the full circumstances regarding the obtaining, using, and/or disseminating of any of his private information, and, for the period after he and Orly were married, Orly's private information, that was not obtained pursuant to a court order or properly served and noticed subpoena, including, without limitation, when and how Dellaportas and Sagi first learned of the existence of the Herschmann Report and when and how they used that information for any purpose;

> (iii) an order appointing a special master to oversee such discovery; and

> (iv) an order awarding Herschmann the reasonable attorney's fees and costs he has incurred in connection with the Motion and addressing these issues.

Fourth Supplement at 3-4 (the "Amended Request for Relief").

Sagi denies that Herschmann is entitled to the turnover of the Herschmann Report or to any of the sanctions he is seeking herein. Briefly, he says that the Motion is barred by application of

the doctrine of unclean hands, Opposition at 6-9, and that the Court should deny the Motion because Herschmann's Israeli travel and Israeli bank accounts are not relevant to any current open issue in the Chapter 7 Case, *id.* at 4-5. He contends that the Rule 45 Subpoena was a valid response to Herschmann's alleged witness intimidation, *id.* at 9, and denies that the Orly Israeli Court Decision provides the probable cause necessary to show that the creation of the Herschmann Report was illegal under Israeli law. Fourth Supplement - Response at 2.

Sagi maintains that the Israeli Police Decision not to prosecute the Herschmann ISR Criminal Complaint on the grounds of "no criminal culpability," and the SAO Appellate Division affirmance of that ruling, are the Israeli litigation-related documents most relevant to the issue of the Investigator's alleged criminal liability in Israel. *Id.* at 2-3. He says they establish that in creating the Herschmann Report, the Investigator committed no crime in Israel. *Id.* at 3. Alternatively, Sagi argues that even if Herschmann could establish that the creation of the Herschmann Report was illegal under Israeli law, the crime-fraud exception to the work product doctrine is nonetheless inapplicable because the report was not created in furtherance of a crime. Opposition at 4.

Sagi says that in the Fourth Supplement, Herschmann essentially abandoned his original contention that the Herschmann Report is subject to the "crime-fraud" exception to work product status. Fourth Supplement - Response at 5. Sagi maintains that in the Fourth Supplement, Herschmann demands that this Court revisit a string of rulings made against Herschmann, during the years 2019 through 2021, by this Court, the New York U.S. District Court, the Texas U.S. District Court and the Texas Bankruptcy Court. *Id.* at 4. He notes that according to Herschmann, these rulings were all the product of fraud on the court. *Id.* Sagi argues that Herschmann cannot move for reconsideration of the Order to advance new issues or theories of relief that were not

previously presented to the Court, and that Herschmann is certainly barred from raising these issues for the first time in his Fourth Supplement to the Motion. *Id.* at 7-9. Finally, he contends that, in any event, there is no merit to Herschmann's contentions and claims for relief. *Id.* at 4.

**Analysis**

Before considering Herschmann's application of the newly discovered evidence and Rule 45 Subpoena in support of the Motion, the Court finds that Sagi has not demonstrated that Herschmann's alleged "unclean hands" bars the Motion. The Court also finds that the issue of whether the Herschmann Report is protected from disclosure by the work product doctrine remains relevant to the Chapter 7 Case and was not mooted by the resolution of the Motion to Dismiss. Herschmann sought production of the Herschmann Report in response to the presentation of the Chapter 7 Case Confidentiality and Protective Order to the Court. In issuing the Order, the Court determined that the places where Herschmann and Orly lived together, and what joint accounts they held were "matters which are highly material to the present bankruptcy case," Order at 19, and that the Herschmann Report was prepared "because of" the prospect of litigation in the bankruptcy case, *id.* at 22 (footnote omitted). The Court further determined that the information in the Herschmann and Orly Reports was relevant to matters relating to Herschmann's and Orly's credibility and, in particular, at that time, as it related to the Motion to Dismiss. *Id.* at 19. The Court has resolved the Motion to Dismiss, but issues relating to the credibility of Sagi, Herschmann and Orly, and their respective counsel, color virtually every pleading filed in this case.

It is well settled that a party cannot move for reconsideration in order "to advance new issues or theories of relief that were not previously presented to the court." *Mahadeo,* 514 F. App'x at 55 (summary order) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.,* 265 F3d 97, 115 (2d Cir. 2001) (affirming rejection of argument raised for the first time on a motion for

reconsideration as untimely (collecting cases)); *see also In re Residential Cap., LLC*, No. 12-12020, 2022 WL 17836560, at *54 (Bankr. S.D.N.Y. Dec. 21, 2022), *report and recommendation adopted in part, rejected in part sub nom. Drennen v. Certain Underwriters at Lloyd's of London*, No. 23-CV-3385, 2024 WL 4476067 (S.D.N.Y. Oct. 11, 2024) ("Abundant authority holds that arguments raised for the first time in a reply brief are waived and need not be considered.") (collecting cases).

At issue in the Sagi May 29 Letter, and resolved by the Order is the application of the crime-fraud exception to the work product doctrine, not to the attorney client or common interest privileges. The Court will not consider those new matters in resolving the Motion. Moreover, the Court denies both Herschmann's request to conduct discovery into the circumstances relating to the creation of the Herschmann Report, and his request that the Court appoint a special master to oversee such discovery. Those matters were not raised in the Motion. Moreover, the Court finds no grounds for granting such relief. Finally, there are no grounds for awarding Herschmann reasonable attorney's fees and cost in connection with the Motion.

Rule 60(b) applies only to "final" judgments or orders. *Wyche v. Advanced Drainage Systems, Inc.,* 332 F.R.D. 109, 112 (S.D.N.Y. 2019) (citations omitted). It "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer,* 793 F.2d at 61 (citing *House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981)). Accordingly, the Rule "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Id.* (internal quotation marks and citations omitted).

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019). "The standard

for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Whether to grant a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Nemaizer,* 793 F.2d at 61). "Rule 60(b) motions are addressed to the broad discretion of the court and are granted 'only upon a showing of exceptional circumstances.'" *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 00 CIV.3457, 2002 WL 31176862, at *2 (S.D.N.Y. Sept. 25, 2002) (quoting *Nemaizer,* 793 F.2d at 61). "The moving party bears a heavy burden because Rule 60 provides extraordinary relief and is, therefore, generally viewed with disfavor." *In re Barquet Grp., Inc.*, 477 B.R. 454, 460-61 (Bankr. S.D.N.Y.) (citing *Bowman v. Jack Bond (In re Bowman)*, 253 B.R. 233, 240 (8th Cir. BAP 2000)), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012).

The Order granted Sagi a protective order, shielding the Herschmann Report, as Parnes's work product, from discovery by Herschmann. Order at 26 ("The Herschmann Report is protected from disclosure by the work product doctrine."). Courts have found that Rule 60(b) does not apply to interlocutory discovery orders. *See, e.g., Doresca v. IndyMac Bank, FSB, (In re Doresca),* Ch. 7 Case No. 8-16-75006, Adv. Pro. No. 8-17-08213, 2024 WL 3258796, at *6-7 (Bankr. E.D.N.Y. Jul. 1, 2024) ("By its express terms, Rule 60(b) applies only to 'final' judgments or orders . . . . Courts have recognized that Rule 60(b) does not apply to discovery orders.") (citations omitted); *Grand River Enters. Six Nations, Ltd. v. King*, No. 02-5068, 2009 WL 1739893, at *2 n.1 (S.D.N.Y. June 16, 2009) ("By its express terms, Rule 60(b) applies only to final orders and not

68

interlocutory ones. Since the discovery orders at issue here are interlocutory orders, Rule 60(b) has

no application." (citations omitted)).

It is settled that "a district court is vested with the power to revisit its decisions before the

entry of final judgment and is free from the constraints of Rule 60 in so doing . . . ." *Transaero,*

*Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996); *see also Meyer v. Lenox (In*

*re Lenox),* 902 F.2d 737, 740 (9th Cir. 1990) (Rule 60(b) "does not restrict the bankruptcy court's

power to reconsider any of its previous orders when equity so requires."). Accordingly,

"[b]ankruptcy courts . . . possess sufficient authority, pursuant to their equitable powers

under [section] 105 of the Bankruptcy Code, to modify or vacate their own interlocutory orders."

*Arms v. Keybank, N.A., (In re Arms)*, 238 B.R. 259, 260 (Bankr. D. Vt. 1999) (citations omitted);

*see also Scott v. Chipotle Mexican Grill, Inc.*, 103 F. Supp. 3d 542, 547 (S.D.N.Y. 2015) ("[T]he

qualifying word 'final' [in Rule 60(b)] emphasizes the character of the judgments, orders or

proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not

brought within the restrictions of the rule, but rather they are left subject to the complete power of

the court rendering them to afford such relief from them as justice requires." (quoting Fed. R. Civ.

P. 60 advisory committee's note to 1946 amendment) (the "Rule 60 Adv. Comm. Notes")).

A court's discretion to reconsider or modify its interlocutory orders, "is informed by the

law-of-the-case doctrine, which provides that when a court has ruled on an issue, that decision

should generally be adhered to by that court in subsequent stages in the same case." *Motors*

*Liquidation Co. v. JPMorgan Chase Bank, N.A., (In re Motors Liquidation Co.)*, 552 B.R. 253,

273 (Bankr. S.D.N.Y. 2016) (citing *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)).

"[C]ourts may find justification for reconsidering interlocutory orders when there is (1) an

intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct a

69

clear error of law or to prevent a manifest injustice." *Id.* at 274*; see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))).

Herschmann argues that he is entitled to relief from the Order based on newly discovered evidence and to prevent manifest injustice based upon Sagi's alleged fraud in connection with the issuance of the Rule 45 Subpoena. He relies on Rules 60(b)(2), (3) and/or (6). He also points to *In re NYRA*, where this Court, in the exercise of its inherent power to review its orders, granted reargument on whether an interlocutory protective order was justified under Rules 59(e) and 60(b)(1). *In re NYRA*, 2016 WL 6081087, at *14.

Sagi does not challenge Herschmann's resort to Rule 60(b) as the source of the Court's authority to modify the Order, either by direct application or through its exercise of its inherent power to modify its orders as in *In re NYRA*. However, Sagi denies that Herschmann is entitled to relief under Rule 60(b), both on the merits of his claim to relief, and, in part, because he is time barred. Because both parties relied on Rule 60(b) in addressing the merits of the Motion, in resolving the Motion, the Court will apply the legal principles applicable under Rule 60(b). *See Securities Investor Protection Corp. v. Madoff Investment Securities LLC (In re Securities Investor Protection Corp.)*, Adv. Pro. No. 08-01789, 2017 WL 6205381, at *3, n.5 (Bankr. S.D.N.Y. Dec. 6, 2017) (applying Rule 60(b) standards to request to reconsider order granting partial summary judgment where trustee did not challenge the defendants' reliance on Rule 60(b), and the parties' briefs focused exclusively on Rule 60(b)); *Black v. Buffalo Meat Serv., Inc.*, No. 15-cv-49S, 2016

70

WL 6962444, at *7-8 (W.D.N.Y. Nov. 29, 2016) (noting that Rule 60(b) does not apply to discovery orders, but finding that, on the merits, movant failed to demonstrate grounds for relief under Rules 60(b)(3) or (6)); *Scott,* 103 F. Supp. 3d at 545-47 (court considered the merits of the Rule 60(b) motion to review interlocutory discovery order, despite finding that there was no procedural basis for the motion).

Under Rule 60(b)(6) the Court can grant relief "for any other reason that justifies relief." It is "a broadly drafted 'umbrella provision,' which must be read in conjunction with the other sections of that Rule, and is applicable only where the more specific provisions do not apply." *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 898 (2d Cir. 1983). In other words, "a Rule 60(b)(6) motion must be based upon some reason other than those stated in clauses (1)-(5)." *United Airlines, Inc. v. Brien,* 588 F.3d 158, 175 (2d Cir. 2009) (citation and internal quotation marks omitted). Accordingly, "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391-92 (2d Cir. 2001) ("*Teamsters*") (citations omitted); *accord Am. Tissue, Inc. v. Arthur Andersen L.L.P.,* No. 02 Civ. 7751, 2005 WL 712201, at *2 (S.D.N.Y. Mar. 28, 2005).

The facts that Herschmann asserts in support of his request for relief in the Motion apply to relief available under Rules 60(b)(2) and (b)(3). Accordingly, Herschmann cannot avail himself of Rule 60(b)(6) as support for the Motion. *See, e.g., State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 178 (2d Cir. 2004) ("Where a claim sounds very much like a claim regarding newly discovered evidence, the claim is controlled by 60(b)(2) and should not be labeled as if brought under a different provision of Rule 60(b)." (citation and internal quotation marks omitted)); *Tufts v. Corp. of Lloyd's,* 981 F. Supp. 808, 814 (S.D.N.Y. 1996) ("The relief

71

Plaintiffs seek[] in this action is clearly premised on the alleged newly discovered evidence and, as such, falls squarely within Rule 60(b)(2). Plaintiffs therefore cannot also avail themselves of Rule 60(b)(6).”); *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 136 (S.D.N.Y. 2009) (holding that relief under Rule 60(b)(6) was not available to plaintiff and that “[b]ecause the instant action alleges that Fujitsu acted fraudulently in *LinkCo I,* this action can only proceed under Rule 60(b)(3)”) *aff’d sub nom. LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App’x 180 (2d Cir. 2010); *Aneja v. M.A. Andeliades, Inc.*, No. 05-9678, 2010 WL 199681, at *3 (S.D.N.Y. Jan. 12, 2010) (“Plaintiff’s claim of ‘fraud’ is ineligible for relief pursuant to Rule 60(b)(6). ‘Fraud’ is addressed explicitly by Rule 60(b)(3); to the extent Plaintiff argues that Rule 60(b)(6) applies to his assertion of fraud, his argument is without merit.”).

Rule 60(b) motions are subject to the following timing requirements:

> A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Fed. R. Civ. P. 60(c)(1). Thus, motions under subsections (1), (2), and (3) generally must be made within one year of the decision on which reconsideration is sought, while all Rule 60(b) motions (including those under Rule 60(b)(6)) must be brought “within a reasonable time.” *Id.*

“The one-year limitation period for Rule 60(b)[(1)-(3)] motions is absolute.” *Wang v. Int’l Bus. Machines Corp.*, 839 F. App’x 643, 646 (2d Cir. 2021) (summary order) (quoting *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.,* 466 F.3d 97, 100 (2d Cir. 2006)); *see also Korelis v. Pa. Hotel,* 199 F.3d 1322, No. 99-7135, at *1 (2d Cir. Oct. 8, 1999) (unpublished table decision) (“A motion for reconsideration on the basis of newly discovered evidence under Rule 60(b)(2) must be made within one year.”); *Anderson v. New York,* No. 07-cv-9599, 2012 WL 4513410, at *4 (S.D.N.Y. Oct. 2, 2012) (“As with Rule 60(b)(2),

72

there is a one year statute of limitation for claims brought under Rule 60(b)(3).") (footnote omitted).

Herschmann filed the Motion more than fourteen months after the Court entered the Order. Sagi asserts, and the Court agrees, that Herschmann is time-barred from obtaining relief under Rules 60(b)(2) and (b)(3). Moreover, even if the Court construes the Motion as a timely request for relief under the Court's inherent power to review the Order, Herschmann has failed to demonstrate that on the merits, in applying the legal principles applicable under Rule 60(b)(2) and (b)(3), he is entitled to relief from the Order either on the basis of newly discovered evidence or Sagi's alleged fraud in issuing the Rule 45 Subpoena.

### *Newly Discovered Evidence*

Rule 60(b)(2) is applicable when a movant presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2); *see also Aponte v. City of N.Y. Dep't of Corr.*, 377 Fed. Appx. 99, 100 (2d Cir. 2010) (summary order) ("Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation." (internal quotation marks omitted) (quoting *Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003))). The elements of a claim for relief under Rule 60(b)(2) are:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence is admissible and of such importance that it probably would have changed the outcome, and (4) the evidence is not merely cumulative or impeaching.

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146-47 (2d Cir. 2020) (citation omitted). Accordingly, "[t]he party seeking relief from judgment [under Rule 60(b)(2)] has an onerous standard to meet." *Teamsters,* 247 F.3d at 392.

Herschmann relies on the following as "newly discovered evidence" that supports his claim for relief under Rule 60(b)(2): (i) the Orly Israeli Court Decision, (ii) the Altshuler Israeli Court Protocol Testimony, (iii) the 2022 Parnes Affidavit, (iv) the SAO Appellate Division Decision, (v) the SAO Appellate Division December 21 Letter, and (vi) the WhatsApp Messages. As explained below, in part, Herschmann has failed to meet his burden of demonstrating that the evidence he relies on qualifies as "newly discovered evidence" under Rule 60(b)(2). He also failed to demonstrate that the evidence—even if admissible under Rule 60(b)(2)—provides grounds for granting him relief from the Order.

The Orly Israeli Court Decision, the SAO Appellate Division Decision, and the SAO Appellate Division December 21 Letter did not exist when the Court issued the Order. Accordingly, those documents do not qualify as "newly discovered evidence" under Rule 60(b)(2). *See Loftus v. Fin. Indus. Regulatory Auth., Inc.*, No. 20-cv-7290, 2022 WL 2829476 at * 2 (S.D.N.Y. July 20, 2022) (regulator's denial of administrative appeal after court dismissed action is not "newly discovered evidence" supporting relief under Rule 60(b)(2) because it did not exist at the time action was dismissed); *Gonzalez v. Gannett Satellite Info. Network, Inc.,* 903 F. Supp. 329, 332 (N.D.N.Y. 1995) (holding that actions taken by party after court granted summary judgment could not serve as a basis for relief under Rule 60(b)(2)).

The WhatsApp Messages existed when the Court issued the Order. However, they do not qualify as "newly discovered evidence" under Rule 60(b)(2) because they were in the possession of Herschmann's Israeli counsel when the Court entered the Order. "Evidence that was 'clearly available' at the time of the judgment is 'not "newly discovered"'" for the purposes of a motion under Rule 60(b)(2)." *Pryor v. Berryhill,* 286 F. Supp. 3d 471, 474 (E.D.N.Y. 2017) (quoting *Whitaker v. N.Y. Univ.*, 543 Fed. App'x 113, 114 (2d Cir. 2013)); *see also LaSalle Bank Nat'l*

*Ass'n v. Capco Am. Securitization Corp.*, No. 02-9916, 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006) ("Additionally, 'when newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession *nor available upon the exercise of reasonable diligence* at the time the interlocutory decision was rendered.'" (quoting *In re Rezulin Prods. Liab. Litig.,* 224 F.R.D. 346, 350 (S.D.N.Y. 2004))); *Johnson v. Askin Cap. Mgmt. L.P.,* 202 F.R.D. 112, 114 (S.D.N.Y. 2001) ("Evidence is not 'newly discovered' if it was in the moving party's possession prior to the entry of judgment." (citation omitted)).

The 2022 Parnes Affidavit includes facts in existence when the Court issued the Order, although those facts were not then known by Herschmann.[70] Those facts qualify as "newly discovered evidence" under Rule 60(b)(2), because they were in existence when the Court issued the Order, and were not then available to Herschmann. *See Griggs v. Schmauss*, No. 6:17-cv-06456, 2019 WL 111108, at *1-2 (W.D.N.Y. Jan. 4, 2019). The same holds true for that portion of the Altshuler Israeli Court Protocol Testimony in which Altshuler denies ever possessing the

---

[70] Specifically, Parnes avers that in August 2019:

(i) He sought the Altshuler's assistance, on behalf of a client, in locating a private investigator licensed in Israel, for the purpose of conducting a basic financial investigation. 2022 Parness Affidavit ¶ 5.

(ii) At that time, he did not share with Altshuler the reasons for seeking a licensed private investigator; he only shared the fundamental requirements for performing the investigation. *Id.* ¶ 7.

(iii) He never asked Altshuler to issue a report of entries into and exits out of Israel concerning Herschmann. *Id.* ¶ 10.

(iv) Altshuler provided him with 3 quotes by licensed private investigators, from which, the Investigator was chosen. *Id.* ¶ 7.

(v) He did not instruct the Investigator on the requirements of the investigation. *Id.* ¶ 9.

(vi) He did not know who the Investigator was until after he had prepared his findings and had never met the Investigator. *Id.* ¶ 9.

Herschmann Report.[71] The Court notes that in the 2022 Parnes Affidavit, Parnes states that

"Altshuler is not employed by me nor is she my partner, and often, she does not even know my

clients." 2022 Parnes Affidavit ¶ 4. That statement does not qualify as "newly discovered

evidence" as it is not evidence of a fact in existence when the Court issued the Order. It appears

that Parnes is testifying to Altshuler's status as of 2022, when he signed the affidavit.

The "newly discovered evidence" in the 2022 Parnes Affidavit and the Altshuler Israeli

Court Protocol Testimony does not support a claim for relief under Rule 60(b)(2). Testimony

offered to show that a witness did not accurately or truthfully provide evidence is a classic example

of impeachment. *Zink Communications v. Elliott*, No. 90 Civ. 4297, 1990 WL 170469, at *4

(S.D.N.Y. Oct. 26, 1990) ("To the extent the newly discovered evidence contradicts Morgan's

testimony, it impeaches it . . . ."). Herschmann relies on the 2022 Parnes Affidavit and the Altshuler

Israeli Court Protocol Testimony to impeach Sagi's, Dellaportas's and Parnes's credibility. On that

basis, he says the Court must modify the Order. *See* First Supplement at 6 ("In short, the [2022

Parnes Affidavit] makes these multiple ever-shifting stories impossible to believe, and again

demonstrates that there is no longer any basis for this Court's Order."). Impeachment is not a

proper basis for reconsideration under Rule 60(b)(2). *United States v. Int'l Bhd. of Teamsters,* 179

F.R.D. 444, 447-48 (S.D.N.Y. 1998) ("It is well established that evidence offered solely to

impeach the credibility of a witness does not meet the stringent standards for relief under Rule

---

[71] Altshuler testified, as follows:

> As for the document – the document is not in my possession. Plaintiff may motion for a court order
> to summon my computer. He can force me to undergo a polygraph. I offered several times. I wrote
> in an affidavit, even if the investigator had sent me the document, I deleted it two years ago. I deleted
> the document! I deleted the document! It is written in the affidavit. There is a motion for dismissal
> and an affidavit, all sorts of unclear transcripts, concerning the document I said was not in my
> possession. The affidavit also states that it is not in my possession. Will never be in my possession.

Altshuler Israeli Court Protocol Testimony at 2.

60(b)(2)" (citations omitted)). "It matters not that the point at issue is central to the case." *Zinc Communications*, 1990 WL 170469, at *4.

Moreover, even if it was determined that the Orly Israeli Court Decision, the SAO Appellate Division Decision, and the SAO Appellate Division December 21 Letter constitute "newly discovered evidence" that is relevant to the merits of the Motion, Herschmann nonetheless misplaces his reliance on those documents. In the Orly Israeli Court Decision, the Israeli Court held that disclosure of Orly's travel records (but not her banking records) in the Orly Report constituted an invasion of Orly's privacy, a tort in Israel, and awarded Orly NIS 37,000 (about $11,408). Opposition at 3. Sagi denies that the Orly Israeli Court Decision establishes that the Herschmann Report was produced by criminal means or in furtherance of a crime. *Id.* at 4-5. He contends that Herschmann misplaces his reliance on the Orly Israeli Court Decision as providing probable cause that the creation of the Herschmann Report was illegal under Israeli law. Fourth Supplement - Response at 2. He says the Israeli Court's holding was premised on a negative inference, and not affirmative evidence of wrongdoing, and the court made no findings as to the Herschmann Report, or as to Sagi, who is not a party to the Orly ISR Civil Action (and under Israeli procedure is barred from even accessing the docket). Opposition at 3.

Herschmann contends that the Israeli Court's findings with respect to the Orly Report apply equally to the Herschmann Report, and that it is of no moment that the Orly Israeli Court Decision does not address the Herschmann Report. Reply at 5-6. He argues that the Israeli Court determined "that Sagi's investigator's conduct was unlawful because it violated specific statutes imposing not just civil, but criminal, penalties for that conduct." *Id.* at 5. He maintains that the Israeli Court's findings include that the type of information in the Herschmann Report is confidential as a matter of law, a private investigator may not access and review details contained in the databases of the

Israeli population registry, the Investigator could not provide an innocent explanation as to how he obtained travel information, and the Investigator's illegal conduct was not justified by his anticipated testimony in this case. *Id.* at 6-8. He notes that "Sagi himself has represented that the Herschmann Report and the Orly Report are identical for purposes relevant here," *id.* (citing Dellaportas April 20 Letter at 1-2), and contends that it follows that "the legal and factual findings of the Israeli court apply equally to both reports, and Sagi does not and cannot show otherwise," *id.* at 5-6.

The Court disagrees. The Orly Israeli Court decision contains no findings relating to the Investigator's creation of the Herschmann Report; it does not address that Herschmann Report at all. Moreover, Sagi, is not a party to the Orly ISR Civil Action and it is undisputed that under Israeli procedure he is barred from accessing the docket. Herschmann has not demonstrated that, under Israeli law, the findings of fact and legal conclusions contained in the Orly Israeli Court Decision are binding on Sagi. To be sure, the Court found that Orly Report and the Herschmann Report are similar in scope. Order at 15. However, in doing so, the Court only determined that "in September 2019, Mr. Matityahu had prepared a report for Israeli counsel concerning Mr. Herschmann that was similar in scope to the Orly Report." *Id.* The Court made no finding regarding how the information in either report was gathered. *Id.* at 34.[72] Sagi correctly notes that in the

---

[72] Sagi argues that even if the decision were binding on him, the litigation over the Orly Report was a civil proceeding, with no fraud claim asserted. Opposition at 3. He maintains that "the Second Circuit has not added torts to the crime or fraud exception." *Id.* at 4 (quoting *Weissman v. Fruchtman*, No. 83 Civ. 8958, 1986 WL 15669, at *16 (S.D.N.Y. Oct. 31, 1986) (rejecting argument that "crime-fraud" exception should be extended to other "intentional torts")). The Court disagrees. No protections are afforded to any privileged communications or work product made in furtherance of a crime or fraud. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). The Orly ISR Civil Action falls outside those parameters, as it is a civil action that includes an intentional tort claim under Israeli law. However, notwithstanding *Weissman*, "there is a large body of caselaw that recognizes [the crime-fraud exception's] applicability even to non-fraud intentional torts." *Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, No. 98 Civ. 7775, 2004 WL 42280, at *9 (S.D.N.Y. Jan. 7, 2004) (internal citations omitted). "At a minimum . . . the attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system itself." *Madanes v. Madanes*, 199 F.R.D. 135, 149 (S.D.N.Y. 2001) (distinguishing *Weissman*).

Herschmann Israeli Court Ruling, the Israeli Court granted Altshuler and the Investigator's applications to require Herschmann to post security for their costs in the litigation. Opposition at 2 (citing Herschmann Israeli Court Ruling ¶ 10). In doing so, the court found, among other things, that "a review of the parties' claims indicates that the prosecution's chances are not very high, and it should be taken into significant consideration that the lawsuit's amount is greater than the standard for lawsuits alleging various violations of the Protection of Privacy Law, 5741-1981 and does not specify the requested remedy amount." Herschmann Israeli Court Ruling ¶ 9.

Sagi also argues that, in any event, in applying the crime-fraud exception to the work product doctrine, the "controlling question" is whether Sagi sought to use the Investigator to further a crime or fraud, not whether the Investigator used improper means to gather evidence. Opposition at 4. The Court finds merit to those assertions. It is settled that "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *In re Richard Roe*, 68 F.3d at 40-41. "Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud." *Id*. Accordingly, "[t]he crime[-]fraud exception to the attorney-client privilege cannot be successfully invoked merely upon a showing that the client communicated with counsel while the client was engaged in criminal activity." *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986) (crime-fraud exception inapplicable where the documents themselves in combination with government proffer did not support a finding "that those communications were in furtherance of those crimes").

Rather, the party seeking to defeat the work product doctrine through the crime-fraud exception must satisfy a two-step process. It must demonstrate that there is "probable cause to believe that a fraud or crime has been committed and that the communications in question were in

furtherance of the fraud or crime." *U.S. v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. U.S.,* 573 U.S. 351 (2014). Herschmann failed meet that burden. The Second Circuit has emphasized that "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *In re Richard Roe, Inc.*, 68 F.3d at 40. What Herschmann offers amounts to, at best, "circumstantial and highly contestable inferences." *Coan v. Dunne*, No. 3:15-00050, 2019 WL 1513462, at *3 (D. Conn. Apr. 8, 2019). Therefore, he failed to "meet the high threshold of particularized probable cause, much less a 'reasonable basis.'" *Lynch v. City of New York*, No. 16-7355, 2021 WL 5140728, at *8 (S.D.N.Y. Nov. 4, 2021). Even assuming, *arguendo*, that the Orly Israeli Court Decision establishes that the Investigator committed a crime in creating the Herschmann Report, Herschmann has failed to link "particular communications with specific examples" of fraudulent conduct or communications. *MacNamara v. City of New York*, No. 04-9216, 2007 WL 3196295, at *2 (S.D.N.Y. Oct. 30, 2007). Furthermore, the Court has already determined that counsel retained the Investigator for a valid, non-criminal, non-fraudulent purpose. Order at 22 ("Given the history of litigation among Orly and Sagi, it was not unreasonable for Sagi to conclude that information regarding Orly and Mr. Herschmann's residences . . . in Israel could be relevant to matters arising in the Chapter 7 Case.").[73]

Finally, Sagi correctly argues that the Israeli Police and Israeli Court have rejected Herschmann's allegations of the Investigator's wrongdoing. Opposition at 2. Sagi correctly notes

---

[73] To the extent that Herschmann disagrees with the Court's conclusion and seeks to relitigate whether the Investigator was retained for a valid purpose, such arguments are not allowed on reconsiderations. "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.,* 70 F.3d, 255, 257 (2d Cir. 1995). Rule 60(b) "does not entitle Plaintiff to a second bite at the apple . . . ." *Deng v. New York State Off. of Mental Health*, No. 1:13-cv-6801, 2018 WL 11176016, at *2 (S.D.N.Y. July 18, 2018), *aff'd sub nom. Ren Yuan Deng v. New York State Off. of Mental Health*, 783 F. App'x 72 (2d Cir. 2019).

that after investigating Herschmann's allegations against the Investigator, the Israeli Police issued a "Notice of Decision Not to Prosecute" the Investigator on the grounds of "no criminal culpability." *See* Israeli Police Decision at 2. That decision was affirmed on appeal to the SAO Appellate Division. *See* SAO Appellate Division Decision. Sagi says that in doing so, the SAO Appellate Division found that the chance of a successful prosecution of the Investigator was "slim" because the Investigator apparently had lawfully obtained the information from a third party who already had it. Second Supplement - Response at 2.[74] He also asserts that in "clarifying" its decision, the SAO Appellate Division "would only state the unremarkable proposition that the 'unlawful extraction of information and the use thereof constitute a criminal violation of the law.'" *Id.* (quoting SAO Appellate Division December 21 Letter).

Herschmann argues that in its letter, the SAO Appellate Division confirmed that the representations made by Sagi in his Opposition regarding the dismissal of the Criminal Complaint are false and that "obtaining and even possessing personal information from an Israeli Government database is illegal under Israeli criminal law . . . ." Second Supplement at 2. He also says that the SAO Appellate Division's statement that the conduct of the Investigator was "criminal" is consistent with the Orly Israeli Court Decision. *Id.* He contends that "this new evidence further confirms that the Herschmann Report is not protected work product and the Motion to Reconsider should be granted." *Id.*

---

[74] In part, the opinion states, as follows:

> A review of the evidence suggests that it is not possible to refute - according to criminal legal standards - Complainee's claim that he received the information from another private investigator; it was found, that the chances of an investigation of the Authority Personnel would yield findings supporting the evidence in the case are slim, especially following the lapse of time; there exist indications that persons from other bodies other than the Population Authority had viewed the information about appellant and his wife.

SAO Appellate Division Decision at 2.

However, neither the SAO Appellate Division Decision, nor the SAO Appellate Division December 21 Letter states that the Investigator's conduct was "criminal," although the letter "clarified that nothing in the decision to dismiss the appeal equates to a stipulation that no criminal offence has been committed against the appellant." SAO Appellate Division December 21 Letter.

Herschmann has not met his burden to demonstrate that "newly discovered evidence" provides grounds for relief from the Order.

### Rule 45 Subpoena

Rule 45 governs subpoenas issued to non-parties to an action. As relevant, Rule 45(a)(4) governs "Notice to Other Parties Before Service." Fed. R. Civ. P. 45(a)(4). It provides that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). This provision is mandatory. The failure to abide by this requirement in issuing a subpoena is grounds to quash the subpoena. *Mirra v. Jordan*, No. 13 Civ. 5519, 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014) (quashing 121 subpoenas issued by defendant in violation of Rule 45(a)(4)); *see also Cootes Drive LLC v. Internet Law Library, Inc.,* No. 01 Civ. 0877, 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002) (reiterating order quashing subpoena "solely on the lack of prior notice"); *Schweizer v. Mulvehill,* 93 F. Supp. 2d 376, 412 (S.D.N.Y.2000) ("[P]laintiff failed to provide notice to the defendants of the . . . subpoena prior to, or contemporaneously with, its issuance. Therefore, the subpoena, had it not been withdrawn, would properly be quashed." (footnote omitted)).

Rule 45(b) explicitly authorizes service of a subpoena in one of two ways:

(2) Service in the United States. A subpoena may be served at any place within the United States.

(3) Service in a Foreign Country. 28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country.

Fed. R. Civ. P. 45(b)(2)-(3). Accordingly, by its terms, Rule 45 does not explicitly allow for service of a subpoena on a person outside the United States that is not a United States national or resident. Non-nationals and non-residents outside United States cannot be served with a subpoena by Sagi. Fed. R. Civ. P. 45(b)(3); *see also In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 449 (Bankr. S.D.N.Y. 2022) (Courts have "disposed of similar arguments that Rule 45(b)(3) somehow implicitly allows for service of non-citizens outside the United States.").

On or about October 3, 2019, Dellaportas mailed the Rule 45 Subpoena to the Investigator (an Israeli national and resident) in Israel. The subpoena directs the Investigator to appear at the October Hearing and to bring all documents or electronically stored information relating to:

> All interaction with Eric Herschmann, Orly Genger, their attorneys and representatives, all recordings, images, videos, and all other documents relating in any way to either Orly Genger or Eric Herschmann.

Rule 45 Subpoena. Sagi did not provide notice of the subpoena to the parties to the hearing, and did not list the Investigator on the witness list for the hearing.

Rule 60(b)(3) addresses fraud on an adverse party in litigation. It permits a court to relieve such a party from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The purpose of Rule 60(b)(3) is to "protect the fairness and integrity of litigation in federal courts." *Zarelli v. New York City Bd. of Educ.* 199 F.3d 1325, at *1 (2d Cir. 1999) (table decision) (quoting *Lonsdorf v. Seefeldt,* 47 F.3d 893, 898 (7th Cir. 1995)).

To prevail on a claim for relief under this rule, "a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank*

*& Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (internal quotation

marks omitted) (quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)). The moving

party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud,

misrepresentation, or other misconduct. *See Fleming v. New York Univ.,* 865 F.2d 478, 484 (2d

Cir.1989*); see also Castro v. Bank of New York Mellon*, 852 F. App'x 25, 30 (2d Cir. 2021)

(summary order) ("[U]nsubstantiated assertion[s] do[] not satisfy the clear-and-convincing

standard required to show fraud.").

Accordingly, to prevail on his claim for relief under Rule 60(b)(3), Herschmann must

demonstrate that (i) Sagi engaged in fraud, misrepresentation, or other misconduct, (ii) the conduct

complained of substantially interfered with Herschmann's ability to fully and fairly present his

case in opposition to the Sagi May 29 Letter request for an order protecting disclosure of the

Herschmann Report, and (iii) the need for substantial justice outweighs the value of preserving the

finality of judgments such that reconsideration or relief from the Order is warranted. *Catskill Dev.,*

*L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 312-316 (S.D.N.Y. 2003); *see also*

*Thomas v. City of New York*, 293 F.R.D. 498, 503 (S.D.N.Y. 2013) ("To prevail on a motion for a

new trial pursuant to [Rule] 60(b)(3), the movant must show that (1) the adverse party engaged in

fraud, misrepresentation or misconduct by clear and convincing evidence and that (2) such

misconduct substantially interfered with the movant's ability to fully and fairly present its case."

(citation omitted) *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) (summary

order)).

Herschmann complains that Dellaportas sent the Rule 45 Subpoena to the Investigator on

October 3, 2019, in advance of the October Hearing, without notice to interested parties. Motion

at 6. He contends that Sagi had no legitimate basis for issuing the subpoena in the Chapter 7 Case

because he had not identified the Investigator as a witness for the hearing. *Id.* at 7-8. The Court

assumes, *arguendo*, that Sagi's failure to give notice of the subpoena constitutes "misconduct" that

satisfies the first element of the test under Rule 60(b)(3). *Cf. Catskill Dev.*, 286 F. Supp. 2d at 314-

15 (failure to disclose or produce requested materials in discovery can constitute misconduct, and

such a failure does not need to rise to the level of nefarious intent; even accidental omissions may

be sufficient).

The second element of the test focuses on the prejudice to Herschmann in opposing Sagi's

request for an order protecting the disclosure of the Herschmann Report. *See, e.g., TAL Properties

of Pomona, LLC v. Vill. of Pomona*, No. 17-CV-2928, 2019 WL 3287983, at *9 (S.D.N.Y. July

22, 2019) (The second element of the test under Rule 60(b)(3) is satisfied where "the concealment

precluded inquiry into a plausible theory of liability, denied [the movant] access to evidence that

could well have been probative on an important issue, or closed off a potentially fruitful avenue of

direct or cross examination.").

Herschmann complains that Sagi, through Dellaportas "misused" his power to issue

subpoenas under Rule 45 "to command a non-litigant to produce documents in this case, without

providing proper notice to the parties." Demonstrative # 22. He contends that states grounds for

relief under Rule 60(b)(3) because a consequence of Dellaportas's actions is that "public

confidence in the integrity of the court processes is eroded." *Id.* (quoting *Potomac Elec. Power

Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 380 (D. Md. 1999) ("*Potomac*").

In *Potomac*, PEPCO issued subpoenas to seven non-party witnesses without providing

notice to the defendants. Most of the subpoenas were served just days before the discovery

deadline. *Potomac*, 190 F.R.D. at 378. When defendants learned about these subpoenas, they

sought a protective order to preclude PEPCO's use of the documents obtained through the

subpoenas. *Id*. at 379. The *Potomac* court noted that Rule 45 provides that "prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party," with the purpose being "to afford other parties an opportunity to object to the production or inspection . . . ." *Id.* The court found that PEPCO's failure to provide notice of the subpoenas to the defendants ran afoul of Rule 45. *Id* at 380. However, the court denied the defendants' request to preclude use of the documents, instead imposing lesser sanctions and requiring PEPCO to disclose its intended use of the documents. *Id.* at 381-82.

In the Order, the Court found that Sagi made a prima facie showing that the Herschmann Report was his counsel's work product that is protected from disclosure. Order at 21-24. The Court also found that Herschmann failed to establish that the crime-fraud exception to the work product doctrine mandates disclosure of the report. *Id.* at 31-34. In contending that the Court should reconsider those determinations, Herschmann misplaces his reliance on *Potomac.* The issue before that court was whether the documents obtained through the subpoenas issued in violation of Rule 45 could be used in the pending litigation. The court fashioned a remedy for the violation in light of whether PEPCO's misconduct in failing to provide notice of the subpoenas prevented the defendants from fully and fairly presenting their case. In contrast, Herschmann is not seeking to preclude Sagi's use of documents obtained through the Rule 45 Subpoena (indeed, it appears the Investigator did not produce any documents in response to the subpoena).

Rule 60(b)(3) is typically "invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Matter of Emerg. Beacon Corp. v. Barr,* 666 F.2d 754, 759 (2d Cir.1981). In support of the Motion, Herschmann does not contend, let alone demonstrate, that Sagi's issuance of the Rule 45 Subpoena, without notice to the Texas Bankruptcy Court or to any party in interest to the October Hearing, had any impact on his ability

86

to fully and fairly present his defense to Sagi's request for a protective order. He does not complain that Sagi withheld material information, or intentionally supplied material incorrect or perjured information. Rather, he asserts that in issuing the subpoena, Sagi impugned the integrity of these proceedings and subverted the course of justice in Israel. Motion at 1-2, 7-8. That does not state a claim for relief under Rule 60(b)(3). *Cf. Walther v. Maricopa Int'l Corp.,* 97-civ-4816, 2002 WL 31521078, *4 (S.D.N.Y. Nov. 12, 2002) (denying Rule 60(b)(3) motion because allegedly perjurious testimony was not material to outcome of case and therefore did not prevent movant from fully and fairly presenting his case); *see also Gonzales* v. *Nat'l Westminster Bank, Plc,* 11-civ-1435, 2013 WL 6978874, at *7 (S.D.N.Y. Nov. 18, 2013) (denying Rule 60(b)(3) motion where the "new evidence of [defendant's] purported fraud could not change the ruling," because the plaintiffs could not show they were "prevented from fully and fairly presenting their case").

In the Fourth Supplement, Herschmann argues that the Rule 45 Subpoena is an "intentional act of wrongdoing" by Sagi and Dellaportas. Fourth Supplement at 2. Essentially, Herschmann asserts that he is entitled to relief under the Motion based on Sagi's and Dellaportas's fraud on the Court. Rule 60(b) does not provide grounds for relief from an order or judgment tainted by fraud on the court. Rather, in those circumstances, Rule 60(d)(3) provides the remedy.

Rule 60(d)(3) is part of the "savings clause" added to Rule 60 as part of the 1946 amendments. "The purpose of the amendment was to clarify that, while fraud is 'an express ground for relief by motion' (subject to a one-year time limit), it may also be 'urged as a basis for relief by independent action insofar as established doctrine permits.'" *Giurca v. Montefiore Health Sys., Inc.*, No. 18-cv-11505, 2023 WL 9102694, at *10 (S.D.N.Y. Dec. 21, 2023) (citing Rule 60 advisory committee's note to 1946 amendment), *report and recommendation adopted, Giurca v. Montefiore Health Sys., Inc.*, 18-cv-11505, 2024 WL 1193574 (S.D.N.Y. Mar. 20, 2024). It

87

provides that Rule 60 "does not limit a court's power to . . . set aside a judgement for fraud on the court." Fed. R. Civ. P. 60(d)(3). Under that rule, relief from a final judgment may be "obtained at any time by way of an *independent action* to set aside a judgment for 'fraud upon the court.'" *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988).

Although Rule 60(b)(3) and Rule 60(d)(3)'s saving clause both speak to "fraud," they provide different grounds for relief. *See King v. First American Investigations, Inc.,* 287 F.3d 91, 95 (2d Cir. 2002). "[T]he type of fraud necessary to sustain an independent action attacking the finality of a judgment [under Rule 60(d)(3)] is narrower in scope than that which is sufficient for relief by timely motion under Rule 60(b)(3) for fraud on adverse party." *Id.* (internal quotation marks omitted) (quoting *Gleason,* 860 F.2d at 558).

"[F]raud upon the court' [under Rule 60(d)(3)] as distinguished from fraud on an adverse party [under Rule 60(b)(3)] is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason,* 860 F.2d at 559. It embraces "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir.1995) (internal quotation marks omitted) (quoting *Kupferman v. Consol. Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir.1972). "A party seeking relief under Rule 60(d)(3) bears a formidable burden." *United States v. Ohle*, No. 08-cr-1109, 2015 WL 9647534, at *1 (S.D.N.Y. Dec. 30, 2015). That party "must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." *Mazzei v. The Money Store*, 62 F.4th 88, 93-94 (2d Cir. 2023).

Accordingly, it is settled that "allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action . . . ." *Gleason,* 860 F.2d at 559-60. That is because the withholding of material evidence and other discovery misconduct, "suggest[s] nothing more than a fraud upon a single litigant . . . rather than a fraud upon the Court and therefore cannot proceed under Rule 60(d)(3)." *LinkCo, Inc.*, 615 F. Supp. 2d at 136 (holding that neither "obstruction of discovery" nor "witness perjury" is grounds for setting aside a judgment under Rule 60(d)(3)). It is also settled that allegations of fraud on the court do not constitute grounds for relief under Rule 60(b)(3). Herschmann cannot state a claim for relief under Rule 60(b)(3) based on the alleged fraud on the court. He did not invoke the savings clause in Rule 60(d)(3) in support of the Motion. However, even if he did, as explained below, on this record, Herschmann has not stated grounds for relief under Rule 60(d)(3).

Central to Herschmann's assertion that Sagi and Dellaportas committed fraud on the Court is his contention that numerous and indisputable facts in the record show Dellaportas's issuance of the Rule 45 Subpoena was an intentional act of wrongdoing. Fourth Supplement at 2. To summarize, as support for that contention, Herschmann principally relies on the following: (i) Sagi provided false justification for his retention of the Investigator, (ii) Sagi issued the Rule 45 Subpoena in violation of Magistrate Judge Freeman's discovery order, (iii) Dellaportas misrepresented to the Court when he learned of the existence of the Herschmann Report, (iv) Sagi provided false justification for subpoenaing the Investigator, and (v) Sagi misused the Rule 45 Subpoena. The Court considers those matters below.

Sagi Provided False Justification For His Retention Of The Investigator

In the Order, the Court found that Sagi established that he retained the private investigator to investigate the Debtor's residency and the Debtor's and Herschmann's bank and credit card accounts. Order at 21-24. In part, the Court found, as follows:

> Given the history of litigation among Orly and Sagi, it was not unreasonable for Sagi to conclude that information regarding Orly and Mr. Herschmann's residences and bank accounts in Israel could be relevant to matters arising in the Chapter 7 Case. The Court finds that Sagi has demonstrated that the Herschmann Report was prepared "because of" the prospect of litigation in the bankruptcy case.

*Id.* at 22. In making that determination, the Court found that

> at a May 5 hearing, Mr. Dellaportas explained that "the issue that we have is that through post-judgment discovery we've now been trying for a year-and-a-half to get discovery from Mr. Herschmann. He hasn't produced a single document. He's never agreed to a single day to sit for a deposition.["] See May 5, 2020 Hr'g. Tr. at 72:20-24 [ECF No. 246]

*Id.* In support of the Motion, Herschmann complains that to justify his retention of an investigator, Sagi falsely contended that Herschmann failed to provide discovery and refused to sit for a deposition. Demonstrative ## 3-4. In his Demonstrative, Herschmann cites a letter dated April 12, 2019 (the "Herschmann April 2019 Letter") from his counsel to Dellaportas in which he produces documents to Dellaportas which counsel contends are responsive to Sagi's subpoena. *See* Demonstrative # 3. He also cites to a letter dated May 8, 2019, submitted by Herschmann's counsel to Magistrate Judge Freeman in response to Sagi's letter motion to strike Herschmann's declaration. *Id.* # 4. These documents provide some evidence that in his correspondence to the Court and during his Court appearances in May and June 2020, Sagi incorrectly stated that Herschmann had not produced *any* documents and *refused* to sit for a deposition. However, this does not establish that there were not good grounds for Sagi to retain investigators in this case.

90

<u>Issuance Of The Rule 45 Subpoena Violated Magistrate Judge Freeman's Discovery Order</u>

Herschmann contends that in issuing the Rule 45 Subpoena, Sagi ran afoul of Judge Freeman's orders directing Sagi not to issue any subpoenas without giving "advance notice" to anyone who "might have a confidentiality interest" and "to inform Eric Herschmann of the service of any subpoenas calling for the production of his financial or personal information." Fourth Supplement at 3 (citing Jan. 8, 2019 Hr'g Tr., ECF No. 257-4 141:2-142:6; May 16, 2019 Freeman Order, ECF No. 257-20)). As relevant, the subpoena asks for production of all "documents, electronically stored information, or objects" that relate to the Investigator's "interactions with Eric Herschmann." *See* Rule 45 Subpoena. The subpoena does not call for the production of documents containing Herschmann' s financial or personal information or documents in which he might have a confidential interest. It does not appear that Sagi violated Judge Freeman's order in issuing the Rule 45 Subpoena without first giving not to Herschmann. However, even if Sagi breached the order, Herschmann failed to demonstrate damages by reason of Sagi's breach of the discovery order. It appears that the Investigator did not comply with the subpoena and Sagi took no steps to enforce the subpoena.

<u>Dellaportas Misrepresented To The Court When He Learned Of The Existence Of The Herschmann Report</u>

Herschmann argues that Dellaportas's explanation of when and how he learned of the report is impossible to reconcile with the evidence submitted by Parnes and Altshuler in the Herschmann ISR Civil Action. Motion at 8-9. Herschmann notes that, at a hearing in the Herschmann ISR Civil Action, Parnes's counsel told the Israeli Court that Parnes does not have the Herschmann Report in his possession, and that, "[i]t stands to reason that [the Herschmann Report] was passed from the private investigator directly to the client, Sagi Genger." *Id.* at 9 (citing Altshuler Israeli Court Protocol Testimony, p. 2). At the same hearing, Altshuler claimed that even

if the Investigator had sent the Herschmann Report to her back in 2019, she would have immediately destroyed her only copy and permanently wiped any traces of it off her computer system. *Id.* (citing Israel Police Suspect Notice Transcript at lines 9-13, and Altshuler Israeli Court Protocol Testimony, p. 2.) Sagi is not a party to the Herschmann ISR Civil Action.

The Court attaches little weight to the statements by Altshuler and Parnes's counsel. In considering Dellaportas's claim that in March 2020 he was not aware of the existence of the Herschmann Report, the Court conducted an *in camera* review of the following: (i) a September 2019 email in which Parnes sent to Dellaportas the Orly Report; (ii) an October 2019 email from Parnes to Dellaportas, essentially notifying Dellaportas of the Orly ISR Civil Action against the Investigator; (iii) an April 2020 email from Parnes to Dellaportas, in which Parnes sent Dellaportas an English translation of the Herschmann Report; and (iv) a September 2020 email from Parnes to Dellaportas, in which Parnes sent Dellaportas a slightly revised English translation of the Herschmann Report and the original Herschmann Report in Hebrew (collectively, the "Herschmann Report Emails"). Those emails appear consistent with Dellaportas's assertion that Parnes was in possession of the Herschmann Report and Parnes provided it to Dellaportas in April 2020.

Herschmann also argues that it is incredible that Parnes translated the Orly Report in September 2019 but did not tell Dellaportas about the Herschmann Report at that time. Demonstrative # 26 (citing Sept. 18, 2020 Hr'g Tr., ECF No. 334 at 46-48)). He says that is especially unbelievable, because that report was "highly relevant" and "highly material" to matters relating to the Chapter 7 Case and Sagi's enforcement of his judgment against Orly and Parnes would not have left Dellaportas "in the dark" with respect to the Herschmann Report. *Id*. The Court

92

attaches little weight to that contention. The Court will not speculate regarding the working relationship between Parnes and Dellaportas in the Chapter 7 Case.

Finally, Herschmann argues that the existence of the Rule 45 Subpoena contradicts Dellaportas's representations to the Court in the Dellaportas May 4 Letter that he did not learn of the Herschmann Report until April 2020. Motion at 8. He says that Sagi's request that the Investigator produce "recordings" proves that Sagi was then aware of the September 23 Meeting and the Investigator's admission to Herschmann at that meeting that he compiled the Herschmann Report. The Court disagrees. The Court finds Sagi's assertions of when he learned of the Herschmann Report appear to be supported by the Herschmann Report Emails.

Sagi Provided False Justification For Subpoenaing the Investigator

Herschmann contends that Sagi falsely asserts that he issued the Rule 45 Subpoena because he did not believe the Investigator would appear at the hearing without a subpoena because he had been threatened by Herschmann at the September 23 Meeting. Herschmann denies any wrongdoing at the September 23 Meeting generally, and specifically denies that he threatened the Investigator in any way at any time. Fourth Supplement at 11. In the Fourth Supplement he seeks to establish that he did not threaten the Investigator. As support, he points to certain WhatsApp messages between the Investigator and Herschmann's Israeli counsel, the recording of the September 23 Meeting, the Investigators' sworn testimony, and statements made by the Investigator during his interview with the Israeli Police. Demonstrative ## 9-10. He also says that the affidavit of the Investigator dated June 23, 2022, submitted by the Investigator in the Herschmann ISR Civil Action, in which the Investigator contends that Herschmann and his counsel threatened, pressured and scared him, is false and, in any event, cannot support did not exist in September 2019 when Dellaportas made the statement. Fourth Supplement at 11.

93

The Court need not, and will not, resolve whether Herschmann has ever threatened the Investigator. What's relevant is whether, when he issued the Rule 45 Subpoena, Sagi had reason to believe that the Investigator would not attend the October Hearing without a subpoena. Sagi says that he and Dellaportas were advised that the Investigator would not attend the October Hearing voluntarily. *See* Opposition 9-11. Dellaportas made that representation to the Texas Bankruptcy Court. *Id.* at 10. The Court is satisfied that based on this record, it appears that Sagi had a good faith basis for issuing the subpoena.

Sagi Misused the Rule 45 Subpoena

Herschmann contends that Sagi used the subpoena to create a fake "good faith" defense for the Investigator both to the Israeli courts and the Israel National Police, and that both rejected it. Demonstrative # 21. Herschmann also asserts that Dellaportas "misused" his power under Rule 45 "to command a non-litigant to produce documents in" this case, without providing proper notice to the parties. Demonstrative # 22. It is undisputed that Sagi failed to provide notice of the Rule 45 Subpoena to parties in interest. Sagi does not dispute Herschmann's assertion that under Rule 45, Sagi should have provided him with notice of the subpoena.

Finally, in further support of his claim of Sagi's fraud on the Court, Herschmann contends that on prior occasions, Sagi has used investigators to illegally access information about Orly and Herschmann and that Dellaportas admits that Sagi has used the information in the Herschmann Report in these proceedings. Demonstrative ## 23-24. The record does not support Herschmann's assertion that Dellaportas admits to having used the Herschmann Report in these proceedings. Moreover, it is undisputed that in connection with Sagi's service of process on Orly in the 2017 Lawsuit, Sagi retained an investigator to find Orly's address in Tel Aviv. The Court is not aware

94

of any specific evidence supporting the allegation that the investigator illegally accessed information regarding Orly's address in Tel Aviv.

The Court finds that Herschmann has not demonstrated that Sagi and Dellaportas committed fraud on the Court in issuing the Rule 45 Subpoena. Herschmann has not established grounds for relief under Rule 60(d)(3). The claims of wrongdoing set forth in the Demonstrative, even if established, do not rise to the level of fraud, let alone "that species of fraud which does or attempts to, defile the court itself" or "fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.*, 48 F.3d at 1325 (citation omitted).

Herschmann has failed to demonstrate that he is entitle to relief under Rule 60(b)(3) or 60(d)(3).

## CONCLUSION

For the foregoing reasons, the Motion is denied.

IT IS SO ORDERED.

Dated: March 25, 2025
    New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

95