UNITED STATES BANKRUPTCY COURT                NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                                       :    Chapter 7
                                                             :
Orly Genger,                                                 :    Case No. 19-13895 (JLG)
                                                             :
                            Debtor.[1]                       :
------------------------------------------------------------ x

# MEMORANDUM DECISION AND ORDER DENYING
# SAGI GENGER'S MOTION FOR RECONSIDERATION

**A P P E A R A N C E S :**

EMMET, MARVIN & MARTIN, LLP
*Attorneys for Sagi Genger*
120 Broadway, 32nd Floor
New York, New York 10271
By:     Thomas A. Pitta
        John Dellaportas

GLENN AGRE BERGMAN & FUENTES LLP
*Attorneys for Debtor Orly Genger*
55 Hudson Yards, 20th Floor
New York, New York 10001
By:     Michael Paul Bowen

ERIC HERSCHMANN
*Pro se*
210 Lavaca Street, #1903
Austin, Texas 78701
By:     Eric D. Herschmann

---

[1] The last four digits of Orly Genger's social security number are 8893. The location of Orly Genger's services address for purposes of this Chapter 7 Case is: 210 Lavaca St., Unit 1903, Austin, TX, 78701.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Orly Genger ("Orly") is the debtor in this Chapter 7 Case. Eric Herschmann ("Herschmann") is Orly's husband. He asserts a claim against Orly that is evidenced by a $2 million promissory note from Orly to Herschmann, dated December 30, 2016 (the "Herschmann Note"). Sagi Genger ("Sagi") is Orly's brother. He is a judgment creditor of Orly. He filed a motion to dismiss the Chapter 7 Case pursuant to sections 305(a) and/or 707(a) of the Bankruptcy Code (the "Motion to Dismiss").[3] The Court denied the motion (the "Order").[4]

The matter before the Court is Sagi's motion pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9023") and Local Bankruptcy Rule 9023-1 asking the Court to reconsider two findings that it made in the Order (the "Motion").[5] Orly and Herschmann submitted a joint memorandum of law in opposition to the Motion (the "Opposition").[6] They argue that the Court should deny the Motion and, in the exercise of its equitable powers, award them their fees and costs incurred in opposing the Motion. Opposition at 2. Sagi did not submit a reply to the Opposition.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them herein or in the Court's Order. References to "ECF No. __" herein are to documents filed on the electronic docket in this Chapter 7 case, No.19-13895.

[3] *Judgment Creditor Sagi Genger's Amended and Updated Motion to Dismiss and Memorandum of Law in Support*, ECF No. 239.

[4] *Memorandum Decision and Order Denying Judgment Creditor Sagi Genger's Amended and Updated Motion to Dismiss*, ECF No. 615.

[5] *Motion of Sagi Genger Pursuant to Fed. R. Bankr. P. 9023 and Local Rule 9023–1 to Reconsider Memorandum Decision and Order Denying Motion to Dismiss with Respect To: (A) Enforceability of Herschmann Note and (B) Adoption of Orly's Advice of Counsel Defense*, ECF No. 630 (the "Motion").

[6] *Memorandum of Law in Opposition to Sagi Genger's Motion for Reconsideration*, ECF No. 635.

2

For the reasons stated herein, the Court denies the Motion. The Court denies Orly and Herschmann's request for the fees and costs incurred in opposing the Motion.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## THE MOTION AND OPPOSITION

Sagi contends that "[t]he only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." Motion ¶ 4 (quoting *In re Jamesway Corp.*, 203 B.R. 543, 546 (Bankr. S.D.N.Y. 1996)). He asserts that the Court overlooked evidence and controlling precedent establishing that: (a) Orly was not entitled to an advice of counsel defense over matters to which she had asserted attorney-client privilege; and (b) that the Herschmann Note is legally unenforceable. *Id.* He asks the Court to "reverse those two findings and, upon doing so, reconsider the implication of such reversal on the overall denial of his motion to dismiss." *Id.* ¶ 5.

Orly and Herschmann deny that the Court erred in crediting the "advice of counsel" defense or in finding that the Herschmann Note is enforceable. Opposition at 5. Moreover, they contend that even if the Court had made those two findings differently, as Sagi contends, Sagi does not and cannot show that it would have altered the outcome of the Motion to Dismiss. *Id.* at 3. Accordingly, they contend the Court should deny the Motion.

3

## LEGAL PRINCIPLES

Local Bankruptcy Rule 9023-1(a) provides, in part, that a "motion for reargument of a court order determining a motion" shall "set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." Local Bankruptcy Rule 9023-1(a). The rule derives from Former Local Bankruptcy Rule 13(j) and is an adaptation of Civil Rule 6.3 of the Local District Rules. *See* Local Bankruptcy Rule 9023-1, Comment. The standard applicable to motions for reargument is identical to that applicable to motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). *In re Bressler,* No. 06–11897, 2007 WL 98493, at *1 (Bankr. S.D.N.Y. Jan. 12, 2007) (citing *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1996); *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 739 F. Supp. 209, 210 (S.D.N.Y.1990)). Bankruptcy Rule 9023 incorporates Rule 59(e). *See* Fed. R. Bankr. P. 9023. It authorizes the filing of a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). While Rule 59(e) does not provide specific grounds for amending or reconsidering a judgment, it is settled that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Meghji v. Casla Realty LLC (In re Celsius Network LLC)*, No. 24-04002, 2024 WL 4521045 at * 2 (Bankr. S.D.N.Y. Oct. 17, 2024) (citing *In re Flatbush Square Inc.*, 508 B.R. 563, 569 (Bankr. E.D.N.Y. 2014) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu–Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)). A reconsideration motion cannot be

4

used to "plug the gaps" of a motion with new matters or new arguments. *Adelphia Communs. Corp. v. U.S. Specialty Ins. Co. (In re Adelphia Communs. Corp.)*, 639 B.R. 657, 661 (Bankr. S.D.N.Y. 2022) (quoting *Cruz v. Barnhart*, No. 04 CIV. 9794, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006)).

The standard for granting a Rule 59 motion for reconsideration "'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The burden is on the movant to "show that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *In re Asia Global Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (internal quotation marks omitted); *see also Zemon v. Papadopoulos (In re Papadopoulos)* No. 12-01907, 2015 WL 1216541, at *8 (Bankr. S.D.N.Y. Mar. 13, 2015) ("[A] court can revisit a prior decision based upon an intervening change in the controlling law, the availability of new evidence, to correct manifest errors of law or fact upon which the judgment is based, or to prevent manifest injustice." (citation omitted)). A Rule 59 motion should be granted only where matters the Court overlooked "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

## DISCUSSION

### Advice-of-Counsel Defense

Section 727(a)(4)(A) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A). In support of the Motion to Dismiss, Sagi argued that Orly's failure to make complete, candid disclosures in her bankruptcy

5

schedules violates section 727(a)(4) and provides grounds for dismissing the Chapter 7 Case as filed in bad faith. Order at 56-57.

Sagi contends that, in denying the Motion to Dismiss, "the Court held that the various failings in Orly's bank schedules were not made in bad faith because 'Orly prepared her Petition and Schedules with the advice of legal counsel . . . .'" Motion ¶ 2 (quoting Order at 57). He says that those failings include (i) her control over millions of dollars under a March 31, 2017 escrow agreement (the "Escrow Agreement") (disclosure required in Part 9, question 23 of Statement of Financial Affairs), (ii) her beneficial interest in the Genger Litigation Trust (disclosure required in Part 4, question 25 of Schedule A/B), and (iii) her establishment of the Genger Litigation Trust as a self-settled trust (disclosure required in Part 7, question 19). *Id.*

Sagi argues that the Court erred in crediting the "advice of counsel" defense because it "overlooked that Orly was repeatedly allowed to invoke attorney-client privilege to shield her counsel's communications from discovery and from cross-examination at trial." *Id*. ¶ 6. He says that he is entitled to relief because "[Orly] may not benefit from an advice of counsel defense." *Id*.

It is well settled "that 'the attorney-client privilege cannot at once be used as a shield and a sword.'" *In re Residential Capital, LLC*, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013) (citing *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). "The rationale for this rule is simple: 'A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.'" *Id.* (quoting *Trouble v. The Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (precluding advice of counsel defense because defendant waived defense "by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests" and precluding party from referring to advice of counsel—even in response to argument

6

of bad faith—where party previously stated in court filings that it had no intention of using advice of counsel)).

Sagi argues that "Orly asserted privilege over anything and everything." Motion ¶ 8. Specifically, he says that "[i]n her Responses and Objections to Sagi's Supplemental Request For Production, Orly repeatedly objected, both generally and specifically, to producing any documents on attorney-client privilege grounds." *Id.* (citation omitted). He asserts that absent her invocation of the attorney-client privilege in responding to Sagi's Supplemental Requests Nos. 23 and 25, Orly would have had to produce all communications with her counsel relating to the Escrow Agreement and the Genger Litigation Trust Agreement. *Id.* He says she produced none of those documents. *Id.*

Next, he asserts that at her deposition, Orly followed an instruction from her counsel, "based on the attorney-client privilege 'not to answer the questions as to what would happen with the remainder of the Settlement Proceeds,' forcing Sagi to file an (ultimately unsuccessful) motion to compel." *Id.* ¶ 9 (citation omitted).[7] He says that Orly asserted attorney-client privilege beyond just her own counsel, and that she invoked the privilege "to all communications between her and her counsel, on the one hand, and her husband, father and the Brosers and their attorneys, on the other hand." *Id*. ¶ 10 (citing *Declaration of Orly Genger,* ECF No. 307). Sagi says that the Court agreed, "shielding such communications from discovery on the ground that Orly and her cohort 'have identified common legal interests in the matters cited by Sagi, as those parties are . . . accused of defrauding the estates and its creditors and conspiring to do so, and three accused of having fraudulent transfers of estate property from Orly prior to the petition date.' . . . In turn, the

---

[7] Sagi contends that "Orly's understanding of the fate of the Settlement Proceeds, and in particular the as-yet-unpaid $15 million in promissory notes, underlies the primary deficiency in her schedules and statements, *i.e.* the failure to disclose her rights under the Escrow Agreement and the Genger Litigation Trust Agreement." *Id.* ¶ 9.

7

'fraudulent transfers of estate property' that those parties were accused of perpetrating involved the very same items Orly left off her bankruptcy schedules." *Id*. (citation omitted).

Finally, he says that at trial, Orly continued to assert attorney-client privilege in her testimony and the Court upheld the privilege. *Id.* ¶ 11 (citations omitted). He says that Sagi's counsel, "mindful of the Court's rulings sustaining Orly's privilege, carefully framed his questions so as not to draw out privileged communications." *Id.* (citations omitted).

In reviewing the Motion, the Court is aware that it should "exclude any testimony or evidentiary presentations by [Orly] at trial if that same testimony or evidence was withheld from [Sagi] during discovery based on attorney-client privilege." *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003). However, in issuing the Order, the Court did not run afoul of that standard in the Order. There are no grounds for the Court to reconsider its application of the advice-of-counsel doctrine in the Order.

Sagi argues that "the Court held that the various failings in Orly's bank schedules were not made in bad faith" because they were prepared with the advice of counsel. Motion ¶ 2. However, Sagi's assertion begs the question whether the Court held that there were "various failings in Orly's bank schedules." The Court did not make such a determination. Rather, it "f[ound] that Orly adequately disclosed her assets in the Schedules**.**" Order at 58.[8] Moreover, the Court held that even if, as Sagi claims, Orly's counsel had erred in compiling Orly's Schedules, her counsel's error is not grounds for dismissing the Chapter 7 Case. *Id.* at 57- 59.[9]

---

[8] The Court also found that "Counsel's inclusion of the Global Notes with the Petition is not a ground for dismissing the Chapter 7 Case," and "that in executing the statement of oath in the preprinted form, as altered by Orly's counsel to read: 'subject to the Global Notes attached,' Orly has not submitted a false oath under section 727(a)(4) of the Bankruptcy Code." Order at 57-58.

[9] As relevant, the Court stated, as follows:

> Moreover, and in any event, under the facts of this case, to the extent Orly's counsel erred in including the Global Notes with the Petition, such an error would not be a ground for dismissing the

8

Finally, Orly did not use the privilege as a sword and a shield. "A client who claims that he acted on advice of counsel cannot use the privilege to prevent inquiry into the communications that the client and lawyer had about that advice." *S.E.C. v. Wyly*, No. 10 Civ. 5760, 2011 WL 3366491 at *2 (S.D.N.Y. July 27, 2011) (*citing Bilzerian*, 926 F.2d 1285). Orly did not invoke the privilege with respect to her communications with Eric Taub, her bankruptcy lawyer. She did not withhold any information in her Schedules based on advice from counsel. *See* Order at 56-59. Moreover, at trial, on examination by her own lawyer, Orly testified about her communications with her bankruptcy counsel and her bankruptcy counsel's preparation of the Petition, Global Notes and Schedules. June 21 Hr'g Tr. 45:23-59:12.[10] On redirect, no privilege objection was interposed when Sagi asked further questions about Orly's communications with Mr. Taube. *Id.* 96:5-100:3. The record does not support Sagi's assertion that Orly invoked the privilege "shield" with regard to her communications with Mr. Taube. *See, e.g., id.* 98:17-100:3 (Orly testimony).

Sagi has failed to meet his burden of demonstrating that the Court overlooked controlling decisions or factual matters that might have materially influenced its application of the advice of counsel defense. Furthermore, as the Court found that Orly adequately disclosed her assets in her Schedules, *see* Order at 58, even if the Court were to find that Orly improperly invoked the advice-

---

Chapter 7 Case. *See, e.g., In re Nichols*, 362 B.R. 88, 96 (Bankr. S.D.N.Y. 2007) (noting that "dismissal of a bankruptcy case will often cause debtors to be irreparably harmed, and this result is unjust when it arises from attorney error that has not resulted in harm to any other party in interest"); *In re Fraleigh*, 474 B.R. 96, 105, 110 (Bankr. S.D.N.Y. 2012) (finding "mistakes in the schedules will not doom a debtor's discharge" where the debtor "reasonably relied on her attorney to make the appropriate use of [the debtors' financial] information in the legal work she had hired him to perform"); *see also In re Khan*, 172 B.R. 613, 627 (Bankr. D. Minn. 1994) (denying motion to dismiss when debtors' "schedules' shortfall . . . as to [debtor's] income and expenses . . . is attributed only to one thing: counsel's failure to give a competent, hardheaded review of the content to his client"). Orly clearly did not write the legalese of the "Global Notes" preface or on her own put a condition on the statement of oath. That was her lawyer. She cannot be blamed for taking legal counsel in matters as complex as her financial and litigation affairs are.

Order at 58, n.51.

[10] *Transcript, June 21 hearing*, ECF No. 485.

of-counsel defense, such improper invocation would not alter the Court's determination, making such error non-material. *See Shrader*, 70 F.3d at 257 (reconsideration should be granted where the Court overlooked matters that may "reasonably be expected to alter the conclusion reached by the court.").

**Enforceability of the Herschmann Note**

Sagi argues the Court overlooked his briefing as to the unenforceability of Herschmann Note. Motion ¶ 11. He takes issue with the Court concluding the Herschmann Note to be a "bona fide debt chargeable against Orly." *Id.* ¶ 3. As support, he points to the Motion in Limine[11] that he filed prior to the trial of the Motion to Dismiss. He says that motion "briefed how 'New York Law Bars Mr. Herschmann's Claim.'" *Id.* ¶ 13.[12] He argues that after having ruled in the In Limine Order that the merits of the claims were "off limits"[13] in the trial of the Motion to Dismiss, in

---

[11] *Sagi Genger's Motion in Limine to Exclude Parties Lacking Party-In-Interest Standing from the June 16-18, 2021 Hearing*, ECF No. 441 (the "Motion in Limine").

[12] He says the Motion in Limine addresses the following points that the Court overlook in the Order:

> The Herschmann Note contains a New York choice of law provision. Motion ¶ 15.
>
> The Herschmann Note is not a negotiable instrument under Article 3 of the N.Y. U.C.C. because it contains additional promises by Orly and is only payable after some other debts are satisfied. *Id.* ¶¶ 17–19.
>
> Because it is not a negotiable instrument, the Herschmann Note is governed by the New York General Obligations Law, under which it is unenforceable as a promise for past consideration because the loan from Herschmann to Orly is not explicitly recounted as consideration in the note itself. *Id.* ¶¶ 15, 19.
>
> The Herschmann Note is void because it violates the New York Rules of Professional Conduct. Motion ¶ 20. Sagi says that Herschmann made the loan to pay his own firm's legal bills for representing Orly, while taking a security interest in the litigation claims he was pursuing for her. Motion ¶ 21. This violates prohibitions on lawyers providing financial assistance to clients and acquiring property interests in the litigation. *Id.* ¶ 22-24.

[13] It is important to distinguish what was at issue in the Motion in Limine versus the Motion to Dismiss. In the Motion in Limine, Sagi sought only "to exclude putative 'creditors' Eric Herschmann and [Kasowitz Benson Torres LLP ("KBT")] from the [hearing on the Motion to Dismiss], other than as witnesses, on the ground that Mr. Herschmann and [KBT] lack party-in-interest standing under 11 U.S.C. §1109(b), and thus have no right to be heard on the motion to dismiss." Motion in Limine at 1. The Court denied that motion, holding "[t]here is no authority for Sagi's use of a motion in limine to challenge Mr. Herschmann's and KBT's right to be heard at the evidentiary hearing as they are parties in interest with standing." In Limine Order at 6. In that order, the Court did not consider the validity of the Herschmann Note and did not hold that the validity of the note was "off limits" to Sagi. In the Motion to Dismiss,

10

denying that motion, the Court erroneously "f[ound] that the Herschmann Note is bona fide debt chargeable against Orly." *Id*. (citing Order at 81). He says that having raised the argument regarding the enforcement of the Herschmann Note in the Motion in Limine, the matter has been preserved for post-trial and appellate review. *Id*. ¶ 14 (citing *U.S. v. Yu-Leung*, 51 F.3d 1116 (2d Cir. 1995)).

Orly and Herschmann argue that "'[w]hen a trial court has ruled on a motion made in limine, there must, in some circumstances, be another evidentiary ruling during the trial to preserve the matter for appeal,' such as when the matter at issue 'must be resolved in the developed context of the trial.'" Opposition at 9 (quoting *Rosenfeld v. Basquiat*, 78 F.3d 84, 90 (2d Cir. 1996)). They contend that Sagi waived his argument on the Herschmann Note by failing to raise it in his Motion to Dismiss, at the trial, or in his post-trial submissions. *Id*.[14] They also assert that Sagi does not

---

Sagi argued that the Herschmann Note "is a 'bogus,' backdated note that reflects 'advances' made by Herschmann to [KBT] in Orly's name." Order at 75; *see also* Motion to Dismiss ¶¶ 28-34. At trial, Sagi called Lance Harris to testify regarding the creation of the Herschmann Note. Transcript, June 17 hearing, at 200:2-213:2, ECF No. 484.

[14] The Motion in Limine sought "to exclude putative 'creditors' Eric Herschmann and [KBT] from the [hearing on the Motion to Dismiss], other than as witnesses, on the ground that Mr. Herschmann and [KBT] lack party-in-interest standing under 11 U.S.C. §1109(b), and thus have no right to be heard on the motion to dismiss." Motion in Limine at 1. Sagi argued that "as a matter of law neither one has any legal right to payment from the Debtor." *Id*. He asserted that Herschmann was appearing in the case only in his capacity as a "putative noteholder," and challenged his party-in-interest standing "on that basis." *Id*. at 3. He argued that Herschmann's claim was barred by his pre-nuptial agreement, New York law, and the New York Rules of Professional Conduct. *Id*. at 4-7. He argued that KBT "violated the same disciplinary rule, and accordingly it, too, should be barred from seeking fees." *Id*. 8. He contended "[t]he firm, like its former partner, Mr. Herschmann, has no legal right to payment from the Debtor, and thus it has no party-in-interest standing." *Id*.

Herschmann and KBT objected to the Motion in Limine (*Opposition to Sagi Genger's Motion in Limine to Exclude KBT and Herschmann from Participating at Hearing*, ECF No. 451 (the "Motion in Limine Objection")). Without limitation, they argued that the motion was procedurally improper, as such motions "may only be brought to preclude the introduction of certain evidence at trial." *Id*. at 5 (citing *U.S. v. Ozsusamlar*, 428 F. Supp. 161, 164 (S.D.N.Y. 2006)). They contended that the substance of the motion was a claim objection, not a pretrial evidentiary objection, and that Sagi's challenges to the claims did "not negate the existence of the claims" and therefore could not remove their party in interest status. *Id*. 6.

In sustaining the Motion in Limine Objection, and denying the Motion in Limine, the Court found that the focus on a motion in limine is the admissibility of discrete items of evidence, In Limine Order at 3, and that "[t]here is no authority for Sagi's use of a motion in limine to challenge Mr. Herschmann's and KBT's right to be heard at the evidentiary hearing as they are parties in interest with standing." *Id*. at 6. The Court found that, in the motion, Sagi "contended that Mr. Herschmann and KBT are not creditors of the Debtor because neither has any legal right to payment from the Debtor. In so arguing, Sagi purport[ed] to challenge the merits of the claims." *Id*. at 3 (footnotes

11

even attempt to argue that, if it was determined that the Herschmann Note is not enforceable, the Court would not have concluded, as it did, that application of the *Lombardo* factors mandated denial of the Motion to Dismiss. *Id*. at 4. Finally, they maintain that the Herschmann Note is enforceable as it contains an unconditional promise to pay, and that N.Y. U.C.C. § 3-104 applies to it, rather than N.Y. General Obligation Law § 5-1105. *Id.* at 10. They dispute Sagi's contention that the underlying loan is invalid because Herschmann, as an attorney, could not loan money to his wife. *Id.* at 12. They say that the $2 million that Herschmann loaned was intended to and was used exclusively to pay litigation expenses incurred by Orly, and that the New York Rules of Professional Conduct permit an attorney to advance the expenses of litigation to a client. *Id.* at 12-13.

There is no dispute that Sagi's latest arguments based on the New York Rules of Professional Conduct and the New York General Obligations Law were not raised in his Motion to Dismiss. In other words, Sagi's latest argument "formed no part of the underlying motion and is not properly considered on a motion for reconsideration." *Taggart v. Moody's Invs. Serv.*, No. 06-3388, 2007 WL 2809846, at *2 (S.D.N.Y. Sept. 26, 2007). Sagi cannot use a motion for reconsideration to "assert new arguments or claims which were not before the court on the original motion." *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 2033811, at *1 (S.D.N.Y. May 21, 2010) (citations omitted). At most, he attempted to introduce these arguments

---

omitted). The Court held "[t]here is no authority for Sagi's use of a motion in limine to challenge Mr. Herschmann's and KBT's right to be heard at the evidentiary hearing as they are parties in interest with standing." *Id.* at 6. The Court reached that determination because, pursuant to section 502(a) of the Bankruptcy Code, claims are deemed allowed until a party in interest objects to the claim. *Id.* at 5. The ability to object to individual proofs of claim is reserved to the chapter 7 trustee unless the Court grants leave. *Id*. The Court did not state that Sagi could not move for leave of the Court to file an objection to Herschmann's proof of claim; nor did it foreclose argument on the enforceability of the Herschmann Note.

in his Reply[15] to the Motion to Dismiss, where he purported to incorporate, by reference, his argument in the Motion in Limine. This is improper. *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014) ("It is well settled, however, that a court need not consider arguments relegated to footnotes or raised for the first time in a reply brief."); *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (arguments may not be made for the first time in a reply brief). Sagi failed to raise these arguments in his Motion to Dismiss and the Court declines to reconsider them now.

Nonetheless, the validity of the Herschmann Note was plainly raised as an issue in Sagi's Motion to Dismiss. Previously, in support of the Motion to Dismiss, Sagi challenged the bona fides of the Herschmann Note. Order at 33-34. He contended that to shield the Settlement Proceeds from him, Orly created the Herschmann Note, and thereafter caused UCC financing statements to be filed in Texas, Florida, and New Jersey, liening all of her assets in favor of Herschmann. *Id.* at 33. He asserted that the Herschmann Note "is a 'bogus,' backdated note that reflects 'advances' made by Herschmann to [KBT] in Orly's name." *Id.* at 75. He said that Orly never directly received any of the note proceeds and has not made any payments on account of the note. *Id.* He maintained that, contrary to Orly's assertions, the note is not on account of Herschmann's satisfaction of Orly's then-outstanding bill at KBT for work done in certain state court litigation, because KBT provided the lion's share of their legal services in that matter on a pro bono basis. *Id.*

And the Court addressed the validity of the Herschmann Note in its ruling on the Motion to Dismiss. The Court found that the Herschmann Note is a bona fide debt chargeable against Orly. *Id.* The note was executed to document a loan made by Herschmann to Orly and her father, Arie

---

[15] *Omnibus Reply of Sagi Genger to the Objections to Judgment Creditor Sagi Genger's Amended and Updated Motion to Dismiss the Bankruptcy Case*, ECF No. 443 (the "Reply").

13

Genger, to pay Orly's outstanding legal fees to KBT. *Id.* at 78-79. Herschmann wired the loan proceeds directly to KBT on December 29, 2016, to credit Orly's outstanding balance with the firm. *Id.* at 79. The Court found that "Orly benefitted from the Herschmann loan because the proceeds of the loan were used to satisfy $2 million of Orly's very real obligation to KBT." *Id.* at 80. The Court rejected Sagi's assertion that the loan was an advance to KBT, finding that it was "belied by the documentary evidence and Herschmann's unrefuted and credible testimony." *Id.* The Court also found that the note was not backdated to frustrate Sagi's efforts at recovery, as Herschmann provided "uncontroverted documentation of the negotiation of the terms of the written agreement, which all parties agree was dated December 30, 2016, to reflect the time at which Herschmann actually made the loan." *Id.* at 80-81.

It appears Sagi is merely attempting to "plug gaps" in his prior arguments challenging the Herschmann Note by arguing in the alternative after the Court already decided on that issue, which the Court must reject here. *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 472 (S.D.N.Y. 1996) ("a motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made"); *see also Allied Irish Banks, P.L.C. v. Citibank, N.A.*, No. 03-3748, 2015 WL 10792025, at *1 (S.D.N.Y. Aug. 24, 2015) (rejecting attempts to "fill in the gaps of a losing argument" using reconsideration). Sagi failed to present any grounds for reconsideration.

Sagi misplaces his reliance on *United States v. Yu-Leung*, 51 F.3d at 1121 (citations omitted). In *Yu-Leung*, the Second Circuit addressed the preservation of evidentiary issues in criminal proceedings for appellate review when those issues were decided in a pre-trial hearing. *Id.* Unlike in *Yu-Leung*, where the issue was properly raised pre-trial and finally decided, here, in this civil litigation, Sagi is improperly introducing new legal theories that were not properly

presented in his original Motion to Dismiss. To the extent that Sagi contending that he was not obligated to raise these new theories in his prior Motion to Dismiss, this position was already rejected in *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188, 2017 WL 456470, at *5 (S.D.N.Y. Feb. 2, 2017). In *Merryman*, plaintiffs similarly claimed "they were not obligated to raise" an argument earlier because "the parties were exclusively litigating" another issue. *Id.* The court rejected this position, holding that the plaintiffs "should have argued at the motion to dismiss stage" all available theories, and "cannot now raise this new [] argument on a motion for reconsideration." *Id.* Similarly, Sagi cannot demonstrate that the Court of overlooked his theory when he failed to raise that theory at the first place. Most importantly, *Yu-Leung* does not change the established principle that a motion for reconsideration is not a vehicle for "securing a rehearing on the merits." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *Dweck L. Firm, L.L.P. v. Mann*, No. 03-8967, 2004 WL 2202587, at *1 (S.D.N.Y. Sept. 30, 2004) (finding a motion for reconsideration is not a substitute for appeal, nor is it a vehicle to reargue those issues already considered when a party does not like the way the original motion was resolved).

Nonetheless, even if the Court were to determine that the Herschmann Note was legally unenforceable under New York law, this determination would not change the outcome of the Motion to Dismiss. *See Shrader*, 70 F.3d at 257 (reconsideration should be granted where the Court overlooked matters that may "reasonably be expected to alter the conclusion reached by the court."). The Court denied dismissal pursuant to section 305(a) of the Bankruptcy Code for a number of reasons, of which the validity of the Herschmann Note was, at best, a tertiary, non-material issue. Order at 40-41. The Court also denied dismissal pursuant to section 707(a) of the Bankruptcy Code after determining the Chapter 7 Case was not filed in bad faith after conducting a thorough review of the *Lombardo* factors. *See* Order at 41-99 (utilizing the test set forth in *In re*

15

*Lombardo*, 370 B.R. 506, 511 (Bankr. E.D.N.Y. 2007). The Court, after examining all of the arguments made by Sagi, held that not a single one of the fourteen *Lombardo* factors weighed in favor of dismissal. *See id* at 99. Finding the Herschmann Note to be illegitimate would not alter the Court's conclusion denying dismissal nor upset the Court's determination that Sagi failed to meet his burden of demonstrating that Orly filed the Chapter 7 Case in bad faith. *Id.*

## CONCLUSION

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: April 19, 2025
       New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge