UNITED STATES BANKRUPTCY COURT   NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:              :  Chapter 7

   Orly Genger,         :

                :

        Debtor.    :  Case No. 19-13895 (JLG)

------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER RESOLVING THE MOTION OF ORLY GENGER TRUST, BY ITS TRUSTEE MICHAEL OLDNER, RECOVERY EFFORT, INC., AND MANHATTAN SAFETY MAINE, INC. <u>REGARDING APPLICATION OF THE AUTOMATIC STAY</u>

<u>A P P E A R A N C E S :</u>

POLLOCK COHEN LLP
*Attorneys for the Orly Genger Trust,*
*by its Trustee Michael Oldner;*
*Recovery Effort, Inc.;*
*and Manhattan Safety Maine, Inc*
111 Broadway, Suite 1804
New York, NY 10006
<u>By:</u>   Adam Pollock

TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza, Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
<u>By:</u>   Rocco A. Cavaliere

HUGES HUBBARD & REED LLP
*Attorneys for Arnold Broser;*
*David Broser;*
*ADBG LLC,;*
*and TEDCO, Inc.*
One Battery Park Plaza
New York, New York 10004
<u>By:</u>   Christopher Gartman

TOGUT, SEGAL & SEGAL LLP
*Attorneys for Arie Genger*
One Penn Plaza, Suite 3335
New York, New York 10119
<u>By:</u>   Frank A. Oswald

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Prior to the Petition Date, Recovery Effort, Inc. ("REI") and Manhattan Safety Maine, Inc. ("MSM"), as plaintiffs (the "Plaintiffs"), commenced a lawsuit (the "MSM Action")[2] in the United States District Court for the Southern District of New York (the "District Court") seeking a determination of the rights to the proceeds of the 2013 Settlement Agreement among Orly Genger ("Orly" or the "Debtor"), the chapter 7 debtor herein, Arie Genger, the Broser Parties, and others. The matter before the Court is the motion of the Orly Trust, by its trustee Michael Oldner, together with REI and MSM (collectively, the "Movants"), for entry of an order confirming that the automatic stay under section 362 of the Bankruptcy Code, 11 U.S.C. § 362, does not apply to the MSM Action, or in the alternative, granting Movants relief from the automatic stay (the "Motion").[3]

The Trustee filed an objection to the Motion (the "Trustee Objection" or "Trustee Obj.").[4] David Broser (individually and in his capacity as trustee of the Genger Litigation Trust), together with Arnold Broser (with David Broser, the "Brosers"), individually and on behalf of Broser-related entities ADBG LLC ("ADBG") and Tedco, Inc. ("Tedco") (with the Brosers, the "Broser Parties"), and Arie Genger ("Arie," and with the Broser Parties, the "Broser Group"), filed an

---

[1] Capitalized terms shall have the meanings ascribed to them herein. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 19-13895.

[2] *See Manhattan Safety Maine, Inc. v. Bowen*, No. 19-cv-5642 (S.D.N.Y. filed June 17, 2019).

[3] *Motion of the Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for Entry of an Order Confirming that the Automatic Stay Does Not Apply to a Certain Non-Bankruptcy Litigation, or, in the Alternative, Relief from Any Stay*, ECF No. 689.

[4] *Chapter 7 Trustee's Objection to Motion of the Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order Confirming that the Automatic Stay Does Not Apply to a Certain Non-Bankruptcy Litigation, or in the Alternative, Relief From any Stay*, ECF No. 695.

objection to the Motion (the "Broser Group Objection" or "Broser Grp. Obj.").[5] In substance, the Trustee and the Broser Group contend sections 362(a)(1) and (3) stay the prosecution of the MSM Action. Alternatively, they maintain that if section 362 is not applicable to the MSM Action, the Court nonetheless should temporarily enjoin prosecution of the action pursuant to section 105(a) of the Bankruptcy Code. The Movants filed a reply in further support of the Motion (the "Reply").[6]

The Court heard arguments on the Motion. For the reasons stated herein, the Court finds that the automatic stay does not apply to the MSM Action and that the Trustee and Broser Group have not demonstrated grounds for staying prosecution of the MSM Action under section 105(a) of the Bankruptcy Code.

## <u>JURISDICTION</u>

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[5] *Objection of Arie Genger, Arnold Broser, David Broser, ADBG LLC and Tedco, Inc. to Motion of the Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order Confirming that the Automatic Stay Does Not Apply to Certain Non-Bankruptcy Litigation, or in the Alternative, Relief from Any Stay*, ECF No. 696.

[6] *Memorandum of Law in Further Support of the Motion of the Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for Entry of an Order Confirming that the Automatic Stay Does Not Apply to a Certain Non-Bankruptcy Litigation, or, in the Alternative, Relief from Any Stay*, ECF No. 689.

## BACKGROUND[7]

On July 12, 2019 (the "Petition Date"), Orly commenced her voluntary case under chapter 7 of the Bankruptcy Code (the "Chapter 7 Case") in the United States Bankruptcy Court for the Western District of Texas (the "Texas Bankruptcy Court"). *Genger I*, 2024 WL 4438857, at *1. Eric Herschmann ("Herschmann") is Orly's husband. Sagi Genger ("Sagi") is Orly's brother. *Id.* Arie and Dalia Genger ("Dalia") are Orly and Sagi's divorced parents. *Id.* Orly and Sagi are beneficiaries under the Orly Genger 1993 Trust ("Orly Trust") and the Sagi Genger 1993 Trust (the "Sagi Trust"), respectively.  *Id*. at *1-2.

Sagi is a judgment creditor of Orly. *Id.* at *6. On September 13, 2019, he filed a motion to dismiss the Chapter 7 Case or, alternatively, to transfer the case to this Court.[8] The Texas Bankruptcy Court directed the case be transferred to this Court.[9] Deborah J. Piazza (the "Trustee") is the successor chapter 7 trustee, and the legal representative of Orly's estate (the "Bankruptcy Estate"). *Id.* at *1.

In 1985, Arie founded Trans Resources Inc. ("TRI"), a fertilizer company, as a wholly-owned subsidiary of TPR Investment Associates, Inc. ("TPR"). *Id*. at *2. In 2001, a group of investors (the "Trump Group")[10] purchased a minority stake in TRI under an agreement that

---

[7] The facts relevant to this matter are set forth in the Court's *Memorandum Decision Denying Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement and (B) Granting Related Relief*, ECF No. 678 (the "Decision and Order"), and the District Court's *Order and Opinion*, ECF No. 735, affirming the Decision and Order. *In re Genger, No.* 19-13895, 2024 WL 4438857 (Bankr. S.D.N.Y. Oct. 5, 2024) ("*Genger I*"), *aff'd sub nom ADBG LLC v. Genger (In re Genger)*, 24-cv-8076, 2025 WL 1222580 (S.D.N.Y. Apr. 24, 2025) ("*Genger II*"), *appeal docketed* No. 25-1339 (2d Cir. May 27, 2025). *Genger II* is on appeal to the Second Circuit Court of Appeals. The Court assumes familiarity with those decisions.

[8] *See Judgment Creditor Sagi Genger's Motion to Dismiss Bankruptcy Case or, Alternatively, to Transfer Venue, and Memorandum of Law in Support of Motion*, ECF No. 32.

[9] *See Order Transferring Case*, ECF No. 168.

[10] The "Trump Group" is a group of investors unrelated to the United States' President.

restricted future transfers of TRI stock (the "2001 Stockholders Agreement"). *Id.* At the time, Arie was a majority shareholder of TPR, which held a majority stake in TRI. *Id.* In 2004, Arie caused TPR to transfer its controlling stake in TRI in distributions to Arie (the "Arie Shares"), the Orly Trust (the "Orly Trust Shares"), and the Sagi Trust (the "Sagi Trust Shares") (collectively, the "2004 Stock Transfers"). *Id.*

In August 2008, the Trump Group sued TPR claiming that the 2004 Stock Transfers violated the 2001 Stockholders Agreement and seeking to acquire the Arie, Orly Trust, and Sagi Trust Shares. *Id.* at *3. The Trump Group, Sagi Trust, and TPR (acting through Sagi, its president ("Sagi/TPR")) settled that litigation. *Id.* That settlement gave rise to litigation among the Trump Group, Orly (individually and in her capacity as beneficiary of the Orly Trust), Arie, the Brosers, and several of their related entities, in Delaware and New York. *Id.* at *3-4. In July 2013, the Trump Group, Orly, Arie, and the Brosers reached a settlement pursuant to which the Trump Group agreed to pay $32.3 million (comprised of $17.3 million in cash and two promissory notes of $7.5 million each (the "Trump Notes" and, with the cash, the "2013 Settlement Proceeds")) to resolve all disputes between the parties, including the ownership of all TRI shares (the "2013 Settlement Agreement"). *Id.* at *4-5.

**Orly Trust, Recovery Effort, Inc. and Manhattan Safety Maine, Inc.**

The Orly Trust, through Michael Oldner as successor trustee to Dalia, filed a proof of claim in the Chapter 7 Case seeking the amount of $41,622,588, consisting of the entirety of the 2013 Settlement Proceeds plus interest (the "Orly Trust Claim"). *Id.* at *5.

There is no dispute that Orly never directly owned shares of TRI. *Id.* The Orly Trust maintains that pursuant to the 2013 Settlement Agreement, Orly "monetized her beneficial interest in the Orly Trust shares for $32.3 million." *Id.* (quoting *Genger v. Genger*, 76 F. Supp. 3d 488, 501

5

(S.D.N.Y. 2015)). As such, it argues that it is the real party in interest and that it has "first call" on

the 2013 Settlement Proceeds. *Id.*

In June 2019, Recovery Effort, Inc. was incorporated in Arkansas as a wholly owned

subsidiary of the Orly Trust. Michael Oldner is identified as the President of REI. *Id.* In June 2019,

Manhattan Safety Maine, Inc. was incorporated in Maine. *Id.* On June 13, 2019, the Orly Trust

purported to sell and assign all of its rights, title and interest in or to the 2013 Settlement Proceeds

to REI. *Id.* The assignment did not include any of the trust's claims against either Orly or any

member of the Trump Group. *Id.*

### The MSM Action

In the wake of the execution of the 2013 Settlement Agreement, various parties, including

the Orly Trust directly or through REI, brought actions disputing who is entitled to the 2013

Settlement Proceeds. *Id.* at *16-17. On June 17, 2019, the Plaintiffs commenced the MSM Action.

They are suing Michael Bowen, Arie, the Broser Parties, and "John Does 1–10" to recover the

2013 Settlement Proceeds and related damages sustained by the Orly Trust arising out of their

alleged diversion of the proceeds. *Id*. at *26 (citing MSM Complaint ¶¶ 1-2, 11-22.).[11] They are

seeking a declaratory judgment that the Trump Notes allegedly held by Bowen belong to REI as

the Orly Trust's assignee, the imposition of a constructive trust on those notes, and monetary

damages against the defendants for the wrongful transfer and retention of the 2013 Settlement

Proceeds. *Id.* (citing MSM Complaint ¶¶ 57–81).

The MSM Complaint alleges that the 2013 Settlement Agreement resolved derivative

claims brought on behalf of the Orly Trust concerning the Orly Trust's shares of TRI. *Id.* (citing

---

[11] *First Amended Complaint, Manhattan Safety Maine, Inc. v. Bowen*, No. 19-5642 ECF No. 48 (S.D.N.Y. Nov. 8, 2019) (the "MSM Complaint").

MSM Complaint ¶¶ 26-37). The Plaintiffs contend that the 2013 Settlement Proceeds were improperly diverted from the trust—as the real party in interest—to entities controlled by the Brosers and to Arie. *Id.* (citing MSM Complaint ¶¶ 46-52). Specifically, they allege that of the $17.3 million cash payment, approximately $16.3 million went to Tedco, and most of the remainder went to Arie. *Id.* (citing MSM Complaint ¶¶ 9, 49-51). They contend that these transfers are fraudulent conveyances of the Orly Trust's assets made with the intent to hinder, delay, or defraud creditors of the Orly Trust, including TPR, which had assigned its rights to MSM. *Id.* at *27 (citing MSM Complaint ¶¶ 82-96). They seek to recover the 2013 Settlement Proceeds. *Id.* (citing MSM Complaint ¶¶ 10, 82-96).

### The Rule 9019 Motion

After the Petition Date, the Trustee filed a motion for an order pursuant to Bankruptcy Rule 9019[12] (the "Rule 9019 Motion")[13] for approval of a settlement agreement (the "Trustee Agreement") between the Trustee, and, without limitation, Orly, Herschmann, and the Broser Parties (the "Settling Parties").[14] The Settling Parties agreed to pay $2.5 million to the Bankruptcy Estate, in two payments: (i) a $300,000 "Non-Refundable Settlement Payment," to be paid upon execution of the Trustee Agreement; and (ii) $2.2 million to be paid within twenty-one days of the Effective Date of the executed Trustee Agreement.[15] *Id.* at *7 (citing Trustee Agreement § 2). In

---

[12] As used herein, the term "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

[13] *Chapter 7 Trustee's Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving Settlement Agreement and (B) Granting Related Relief*, ECF No. 421.

[14] The Trustee Agreement is between the Trustee, on the one hand, and, on the other hand, Orly, Herschmann, Arie, Kasowitz Benson Torres LLP (individually and in its capacity as escrow agent), David Broser (individually and in his capacity as trustee of the Genger Litigation Trust), Arnold Broser, ADBG, Tedco, Lance Harris (in his capacity as trustee of the Genger Litigation Trust), the Genger Litigation Trust, Michael P. Bowen, and Claims Pursuit, Inc.

[15] The Trustee Agreement also provides for transfer of Orly's interest in her condominium home to Herschmann. *Genger I*, 2024 WL 4438857, at *8 (citing Trustee Agreement § 7).

part, through the Trustee Agreement, the Settling Parties sought to end the competing claims for the 2013 Settlement Proceeds through the use of releases, a permanent injunction, and the dismissal of pending actions relating to the proceeds. *Id.* at *8-9. Specifically, the Trustee Agreement provided for the Bankruptcy Court to release the Settling Parties from all claims related to the 2013 Settlement Agreement and enter a permanent injunction barring "'any creditor of the Bankruptcy Estate, anyone acting on their behalf or in concert or participation with them, or any person whose claim in any way arises from or relates to the [2013 Settlement Proceeds] . . . or the other claims settled by [the Trustee] Agreement' from asserting certain claims against the Bankruptcy Estate or the Settling Parties." *Id.* (quoting Trustee Agreement § 8). To that end, the Trustee Agreement called for the Court to enjoin the prosecution of ten pending legal actions (the "Target Actions"), as well as "any similar action against any of the Parties hereto that are derivative or duplicative of the claims settled hereunder, or that could have been pursued by the Trustee." *Id.* at *9 (quoting Trustee Agreement § 8). The MSM Action is among the Target Actions. The Trustee Agreement provided that its terms were non-severable and that it would be void if a court found any term invalid. *Id.* at *17.

The Sagi Trust, Sagi/TPR, and the Orly Trust each opposed the Rule 9019 Motion. *Id.* at *1. Dalia joined the Sagi/TPR objection and the Orly Trust objection. *Id.* REI and MSM joined the Orly Trust objection. *Id.* at *1 n.9.

The Court denied the Rule 9019 Motion.

## The Decision and Order

As relevant, in support of the 9019 Motion, the Trustee argued that under the Trustee Agreement, the Court could enjoin prosecution of the MSM Action and release the underlying claims, because those claims are derivative of the Bankruptcy Estate's claims against the

8

defendants. *Genger I*, 2024 WL 4438857, at * 27. The Court rejected that contention. It found that the Trustee failed to demonstrate that the claims to recover the 2013 Settlement Proceeds in the MSM Action are derivative. *Id.* The Court reasoned that "[t]he nature of the alleged harm is specific to the Orly Trust, not to the Bankruptcy Estate or her creditors in general," and that on its face, the MSM Action alleged "a particularized harm to the Orly Trust, rather than a general harm to a debtor's estate or a broader group of creditors." *Id*. The Court also found that the Orly Trust is a spendthrift trust that is not part of the Bankruptcy Estate, and that the Trustee failed to demonstrate that Orly individually had any pre-bankruptcy entitlement to the 2013 Settlement Proceeds. *Id.*

The District Court affirmed. *Genger II*, 2025 WL 1222580, at *8. In considering whether this Court could enjoin the prosecution of the Target Actions, the District Court noted that "a bankruptcy court's power to enjoin claims against a third party is typically limited to those cases involving 'property of the estate,'" *id.* at *5 (quoting *Marshall v. Picard* (*In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 88 (2d Cir. 2014)), and that "[i]t goes without saying that not all claims that may be asserted by a creditor of an estate are 'property of the estate,'" *id.* (quoting *Stadtmauer v. Tulis* (*In re Nordlicht)*, 115 F.4th 90, 105 (2d Cir. 2024)). It found that the "'touchstone for bankruptcy jurisdiction remains' whether the outcome of a suit 'might have any conceivable effect on the bankruptcy estate.'" *Id*. (quoting *In re Quigley Co., Inc.,* 676 F.3d 45, 57 (2d Cir. 2012)).

The District Court distinguished between "general" or "derivative" claims and "personal" or "direct" or "particularized" claims. *Id.* It found that the former "arise from the harm done to the estate," and accordingly "could be brought by any creditor," but that "[s]uch claims are property of the estate because they 'inure to the benefit of all creditors' by enlarging the estate, 'making the trustee the proper person to assert the claim.'" *Id.* (quoting *In re Nordlicht*, 115 F.4th at 105). The

9

District Court cited fraudulent transfer claims as the "paradigmatic example" of a general claim, "because every creditor has a similar claim for the diversion of assets of the debtor's estate. . . . The factual origins of this injury, are, by their nature, general to all creditors,' and, if proven, the result would be that 'the fraudulent-conveyance scheme wronged *every* creditor.'" *Id.* (citing *In re Nordlicht*, 115 F.4th at 105-06) (internal quotation marks omitted). In contrast, the District Court found that "personal claims" are "claims for injury that are particular to the creditor, and in which other creditors generally have no interest." *Id*. (quoting *In re Nordlicht*, 115 F.4th at 105 & n.8). "Creditors are exclusively entitled to pursue personal claims, and the bankruptcy trustee is precluded from doing so." *Id.* (quoting *In re Nordlicht*, 115 F.4th at 105) (internal quotation marks omitted).

The District Court read the MSM Complaint to allege that "the 2013 Agreement resolved claims concerning shares of TRI in which the Orly Trust claimed an ownership interest, but that, despite this, certain proceeds from the 2013 Agreement were transferred to entities controlled by Arie and the Brosers, not the Orly Trust." *Id.* at *6. Applying the principles enunciated in *Nordlicht* to the MSM Action, the District Court found that "[t]he MSM Action does not allege harm done to Orly's estate, but rather harm done to the Orly Trust. Any recovery that may be obtained from the MSM Action could not, therefore, 'inure to the benefit of all [Orly's] creditors by enlarging the estate.'" *Id.* (quoting *In re Nordlicht*, 115 F.4th at 105). "Put differently, this is not a claim that any creditor of Orly could assert; only the Orly Trust and its assignees may do so." *Id.*

Next, the District Court noted that the appellants concede that the Orly Trust is "a spendthrift trust" and "separate from Orly's estate," *id.,* and rejected appellants' contentions "that the Bankruptcy Court improperly credited the MSM Action's allegations that the Orly Trust is entitled to proceeds from the 2013 Agreement and failed 'to give the same credence to the

allegations (by Sagi and the Trustee) that those same proceeds belong to Orly,'" *id.* As to the latter, citing *Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*, 194 B.R. 318, 325 (Bankr. S.D.N.Y. 1996), appellants argued that the Trustee needs to make only a "*prima facie* demonstration that Orly or her [Bankruptcy] Estate has an alleged claim to [the 2013 Settlement Proceeds]," and that upon that showing, any action asserting an interest in those proceeds may be enjoined by the Bankruptcy Court. *Id.* The District Court rejected that contention and found the appellants misconstrue *Granite Partners*. *Id.* That case explains that, "in evaluating whether a creditor's claim is a personal or a general one, a court does 'not pass on the legal sufficiency of the claims' asserted because to do otherwise would 'invade the province' of the district court where that action is pending." *Id.* (citation omitted). The District Court found that "the Bankruptcy Court did not err when it observed that 'if' the theory of recovery in the MSM Action is sound, 'then it is not Orly, and thus not her creditors generally, who would recover, but only the Orly Trust.'" *Id.* (citing *Genger I*, 2024 WL 4438857, at *27).

Finally, the District Court rejected appellants' contention that "even if the Orly Trust is a separate legal entity, the MSM Action is 'fundamentally' an action seeking relief based on Orly's allegedly improper acts relating to the [2013 Settlement Proceeds]." *Id*. The District Court found that "[w]hatever Orly's role in the alleged fraudulent transfers, it remains true that the MSM Action seeks a recovery for the Orly Trust, as the rightful owner of those proceeds." *Id.*

**The Motion**

The Movants argue that the MSM Action is not "a proceeding against the debtor" under section 362(a)(1), because the Debtor is not a party to the action. *See* Motion at 7, 9. They also contend that the property at issue in the action is not "property of the estate" under section 362(a)(3), because it is the property of the Orly Trust, a New York spendthrift trust, and is not the Debtor's property. *See id.* at 7-8 (citing 11 U.S.C. § 541(a)(1); *Togut v. Hecht (In re Hecht)*, 54 B.R. 379, 382 (Bankr. S.D.N.Y. 1985); *In re Quackenbush*, 339 B.R. 845, 848 (Bankr. S.D.N.Y. 2006); *In re Kleist*, 114 B.R. 366, 369 (Bankr. N.D.N.Y. 1990)). Citing the Decision and Order, they contend that the MSM Action does not involve the Debtor or Bankruptcy Estate property and is not duplicative or derivative of any action belonging to the Bankruptcy Estate. *Id.* at 9-10.

The Movants argue that this case does not present the unique and exceptional case where pursuant to section 105(a) of the Bankruptcy Code, the automatic stay may be extended to non-debtor actions or property. *Id.* at 110 (citing *In re Lazarus Burman Assocs.*, 161 B.R. 891, 898 (Bankr. E.D.N.Y. 1993); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)). Moreover, they maintain that section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity." *Id.* (quoting *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 491 B.R. 27, 38 (S.D.N.Y. 2013), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014)). They contend that the claims at issue in the MSM Action do not affect property of the Bankruptcy Estate and, therefore, there is no basis to extend the stay as to the MSM action. *Id.* at 11-12.[16]

---

[16] The Movants, in the alternative, request that if the Court declines to issue an order acknowledging the stay does not apply or lifting the stay, that the Court permit discovery to commence in the District Court. Motion at 12. Given the Court's resolution of the Motion, the Court does not reach that issue.

**The Trustee Objection**[17]

The Trustee asserts that the MSM Action seeks a determination of the allocation of the 2013 Settlement Proceeds, without her participation, and potentially at great detriment and harm to the Bankruptcy Estate. Trustee Obj. ¶ 2. She argues that she could, at some indeterminate point, bring an avoidance action or otherwise "pursue to monetize the Potential Avoidance Action" and settle the ownership of the 2013 Settlement Proceeds. *Id.* ¶ 2 n.2.[18] She contends that, because allowing the MSM Action to proceed would be determining what is property of the estate, this is a core matter and the Court should maintain jurisdiction and uphold the stay, at least temporarily. *Id.* ¶¶ 2-3.

The Trustee asserts that temporary or preliminary injunctions are frequently employed by bankruptcy courts under sections 105(a) or 362(a)(3) of the Bankruptcy Code to "temporarily enjoin litigation, not only against debtors but against third parties who may have assets or claims that could impact the *res* of the bankruptcy estate[.]" *Id.* ¶ 3 (citing *Maryland v. Purdue Pharma L.P. (In re Purdue Pharma L.P.)*, Adv. Pro. No. 19-23649, 2024 WL 4894349, at *7 (S.D.N.Y. Nov. 26, 2024), *appeal docketed*, No. 24-3156 (2d Cir. 2024)). She maintains that "this Court's findings in the [Decision and Order] denying a permanent injunction of the MSM Action are not a basis for approval of the Motion. . . . [T]he MSM Action should remain temporarily stayed by this Court." *Id.* ¶ 3. The Trustee contends that the Court should determine the remand motions pending in the

---

[17] The Trustee incorporates her prior objection to a prior motion for relief from stay filed by the Movants. *See Chapter 7 Trustee's Objection to Motion of The Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order Confirming that the Automatic Stay Does Not Apply to Certain Non-Bankruptcy Litigations* (the "Prior Objection"), ECF No. 274.

[18] The Trustee states that she expressly does not join in any portion of the Broser Group Objection that alleges the potential avoidance action lacks merit, or for which the potential defendants claim complete defenses. Trustee Obj. ¶ 8.

two adversary proceedings[19] that were removed to this Court from the New York Surrogate's Court before lifting the stay on the MSM Action. *Id.* ¶ 5.

The Trustee also contends that the MSM Action is duplicative, Prior Objection ¶¶ 20, 24-25, and the MSM Action is actually an action against the Debtor although she is not named therein, *id.* ¶ 26. She contends that the MSM Action implicates Bankruptcy Estate property and the administration of the Chapter 7 Case. *Id.* ¶ 27. She argues that the definition of "property of the estate" includes possible causes of action that may be maintained by the Trustee. *Id.* ¶ 28 (citing *In re CIL Ltd*, 13-11272, 2018 WL 878888 at *4 (Bankr. S.D.N.Y. Feb. 9, 2018)). The Trustee continues that, even were there a lack of clarity regarding whether the Movants or the Trustee is the proper party to pursue the avoidance action, the Court should confirm the automatic stay to allow the Trustee to properly administer an avoidance action in her exercise of business judgment. *Id.* ¶ 30. The Trustee states that the Movants have not demonstrated the MSM Action concerns a claim that is particularized or individualized to them. *Id.* The Trustee also questions whether the Orly Trust is actually a valid spendthrift trust, arguing that "for over a dozen years, the Orly Genger Trust has had trustees in place that were against the interest of the beneficiary (Orly) and who seemed aligned with Sagi Genger: a judgment creditor of the Debtor." *Id.* ¶ 33. Finally, the Trustee argues that Oldner's appointment as trustee of the Orly Trust may not have been legally permissible and, therefore, the assignment of the MSM Action from the Orly Trust to MSM may not have been legally permissible. *Id.* ¶ 44. The Trustee contends that the automatic stay applies to the MSM

---

[19] *In re Genger* (*Genger v. Genger*), No. 19-13895, Adv. No. 20-01187 (Bankr. S.D.N.Y. filed June 20, 2020); *In re Genger* (*Genger v. Genger*), No. 19-13895, Adv. No. 20-01188 (Bankr. S.D.N.Y. filed June 20, 2020).

Action and, to the extent the Court requires a formal request for an injunction, the Trustee requests that the Court enjoin the MSM Action from proceeding at this time. *Id.* ¶ 53.[20]

### The Broser Group Objection

The Broser Group asserts that there is a clear dispute about the ownership of the 2013 Settlement Proceeds as (i) Sagi contends that the proceeds belong to Orly, which would make them property of the estate; (ii) the Movants contend that the proceeds belong to the Orly Trust, (iii) Dalia claims that certain of the proceeds belong to Orly and are owed to her, and (iv) Arie and the Broser Parties dispute that the proceeds belong to Orly or the Orly Trust. Broser Grp. Obj. ¶ 37. It argues that even if the Orly Trust is a spendthrift trust, and the trust property is not property of the Bankruptcy Estate, there nonetheless must be a determination of whether or not the 2013 Settlement Proceeds are property of Orly's bankruptcy estate. *Id.* ¶ 35. It labels that as a gating issue that this Court has exclusive jurisdiction to resolve. *Id.* (citing *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park, L.P. (In re DeFlora Lake Dev. Assocs., Inc.)*, 571 B.R. 587, 593 (Bankr. S.D.N.Y. 2017); *Kraken Invs. Ltd. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 29 (S.D.N.Y. 2012); *JCF AFFM Debt Holdings L.P. v. Affirmative Ins. Holdings, Inc.* (*In re Affirmative Ins. Holdings, Inc.)*, 565 B.R. 566, 583 (Bankr. D. Del. 2017)).

The Broser Group contends that the automatic stay applies to the MSM Action because the action is a dispute over "potential estate property." *Id.* ¶ 35. It argues that the Court should stay prosecution of the MSM Action pursuant to section 362(a)(1) of the Bankruptcy Code because causes of action brought against third parties that seek the same funds that may be sought by the

---

[20] The Trustee also argues that the Court "should not make findings at this time in connection with the Motion that may have a bearing on the pending appeal, as the District Court, not this Court, currently has jurisdiction to decide similar legal issues . . . ." *Id.* ¶ 6. The District Court has since resolved the appeal. *See generally Genger II*, 2025 WL 1222580.

estate "have the potential to substantially undermine [the bankruptcy court's] jurisdiction, as further prosecution could ultimately result in another court's determining how potential estate funds are distributed." *Id.* ¶ 36 (quoting *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 429 B.R. 423, 437 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir. 2014)). It maintains that the automatic stay bars prosecution of the MSM Action because the 2013 Settlement Proceeds may be estate property, there is an ongoing dispute about whether the 2013 Settlement Proceeds are property of the Bankruptcy Estate, and the MSM Action seeks resolution of the ownership rights to the 2013 Settlement Proceeds. *Id.* ¶ 39. It argues that section 362(a)(1) bars prosecution of the MSM Action, notwithstanding that Orly does not and has never claimed an ownership interest in the 2013 Settlement Proceeds. *Id.* ¶ 38 (citing *In re Dreier LLP*, 429 B.R. 112, 119 (Bankr. S.D.N.Y. 2010)).

Alternatively, the Broser Group contends that, although Orly is not a party to the MSM Action, it is nonetheless an "action against the Debtor" that is stayed by section 362(a)(1) because, pursuant to Rule 19 of the Federal Rules of Civil Procedure ("Rule 19"), Orly is an indispensable party to the MSM Action. *Id.* ¶ 43. They also argue that section 362(a)(1) stays prosecution of the MSM Action because it is a third-party action to "recover a claim against the Debtor." *Id*. ¶ 44 (citing *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2nd Cir. 1992)).

It is undisputed that in 2016, prior to assigning the Orly Trust's claims in the MSM Action to REI, Dalia filed the Surrogate's Court Action against Orly, certain of the defendants in the MSM Action, and others, seeking to avoid and recover the transfers of the 2013 Settlement Proceeds as being alleged Orly Trust property. *Id*. ¶ 25. That action also identified Orly as being a party with an interest in the adjudication of the claim. *Id*. The Broser Group asserts that the Surrogate Court's

Action and the 2013 Settlement Agreement remain the basis for the Orly Trust's alleged $41.6 million proof of claim against Orly in this case. *Id.* It contends that, as a matter of law, REI, as assignee of the Orly Trust's claims, stands in the shoes of its assignor, the Orly Trust. *Id*. ¶ 46 (citation omitted). The Broser Group maintains that the fact that the Orly Trust dismissed the causes of action against certain of the defendants there and caused them to be refiled in the MSM Action does not change the nature of claims and the underlying facts, nor does it eliminate the need for Orly to be a party. *Id.* ¶ 47.

Finally, the Broser Group argues that under section 105(a) of the Bankruptcy Code, the Court has the power to enjoin actions against parties other than the debtor. *Id.* ¶ 49 (citing *Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 855 F.3d 84 (2d Cir. 2017)). The Broser Group cites to *In re Purdue Pharma L.P.*, 2024 WL 4894349, at *7, in support of the contention that the Court should enjoin actions against non-debtor third parties pursuant to section 105(a) where such actions may have an impact on the *res* of the bankruptcy estate. *Id.* ¶ 50. It argues that a determination of the ownership of the 2013 Settlement Proceeds could impact the *res* of the Bankruptcy Estate because Orly signed the 2013 Settlement Agreement and MSM alleges that Orly fraudulently transferred the 2013 Settlement Proceeds. *Id*. ¶ 51.

**The Reply**[21]

The Movants reiterate their argument that the automatic stay does not apply to the MSM Action. Reply at 3; Prior Reply at 1. They contend that the Decision and Order establishes that the MSM Action is not derivative or duplicative of a potential Bankruptcy Estate claim and therefore does not belong to the estate. Reply at 3.

They argue that the MSM Action is not equivalent to an action against the Debtor and, therefore, the automatic stay does not bar prosecution of the action. Reply at 3; Prior Reply at 8. They contend that Orly is not a necessary party to the MSM Action because no inconsistent obligations will be created by allowing that action to go forward. Reply at 3-4 (citing *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010)); Prior Reply at 14-15. They state that, in the MSM Action, they only seek to determine whether the Orly Trust has a valid claim. Reply at 4. They say that Orly is not an indispensable party because she cannot "claim a legally protected interest relating to the subject matter jurisdiction of the action." *Id.* at 5 (quoting *SafeNet, Inc.*, 758 F. Supp. 2d at 258).

The Movants maintain that there is no basis for the temporary injunction the Trustee seeks because the Trustee has not engaged in negotiations with the Movants and has not made progress whatsoever in discussions with other creditors. *Id.* at 6. They argue that, as there is no likelihood of a consensual resolution, there is no purpose to be served by the temporary injunction. *Id.* at 7. The Movants further argue that *Purdue* is inapposite, as that case concerned a reorganization and this case is a liquidation proceeding. *Id.* They assert that no harm will come to the Bankruptcy

---

[21] The Movants incorporate their prior reply to the Prior Objection. *See Memorandum of Law in Further Support of the Motion of the Orly Genger Trust, by its Trustee Michael Oldner, Recovery Effort, Inc., and Manhattan Safety Maine, Inc. for the Entry of an Order Confirming that the Automatic Stay does not Apply to Certain Non-Bankruptcy Litigations,* (the "Prior Reply") ECF No. 280.

Estate because the 2013 Settlement Proceeds do not belong to the estate, and there is no public interest that would weigh in favor of allowing the injunction. *Id.*

The Movants also contend that there is no need to await determination of the Surrogate's Court matters because neither action implicates whether the Orly Trust can be administered by the Trustee, and the Court has previously held that any challenges to Oldner's authority can be raised and adjudicated in the MSM Action. Reply at 9.

## LEGAL PRINCIPLES

The automatic stay embodied in section 362 of the Bankruptcy Code is "designed to promote equal treatment among creditors and to provide the debtor with a breathing spell from the financial pressures which drove the debtor into bankruptcy." *In re Harris*, 424 B.R. 44, 52 (Bankr. E.D.N.Y. 2010) (quoting *In re Winer*, No. 08-40476, 2008 WL 2074091, at *3 (Bankr. E.D.N.Y. May 13, 2008)). The stay "also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *In re Killmer*, 501 B.R. 208, 212 (Bankr. S.D.N.Y. 2013) (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir. 1993)). The purpose of the stay is to "grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (quoting *Penn Terra Ltd. v. Dep't of Env't Res.,* 733 F.2d 267, 271 (3d Cir. 1984)). In that way, the automatic stay allows "the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Id.* (quoting *United States Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re United States Lines, Inc.),* 197 F.3d 631, 640 (2d Cir. 1999)). "Given its fundamental importance to a debtor's bankruptcy case, the automatic stay is broadly

written and broadly construed." *Grinspan v. Grinspan (In re Grinspan)*, 597 B.R. 725, 733 (Bankr. E.D.N.Y. 2019) (internal quotation marks and citations omitted); *see also Feltman v. Wells Fargo Bank, N.A. (In re TS Emp., Inc.)*, 597 B.R. 494, 533 (Bankr. S.D.N.Y. 2019) ("The scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or the property of the bankruptcy estate." (quoting *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014))); *In re Hale*, 535 B.R. 520, 523 (Bankr. E.D.N.Y. 2015) (stay is applicable to all entities and encompasses "most actions against the debtor, the debtor's property and any property of the estate").

Sections 362(a)(1) and (3) of the Bankruptcy Code are relevant to the Motion. The focus of section 362(a)(1) is on "action[s] or proceeding[s] [against] the debtor . . . ." 11 U.S.C. § 362(a)(1). It provides that the filing of a bankruptcy petition is an automatic stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." *Id*. However, "[t]he stay of litigation does not protect nondebtor parties who may be subjected to litigation for transactions or events involving the debtor." 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2021); *see also Garcia v. Hatchet Works Corp.*, 659 B.R. 626, 631 (E.D.N.Y. 2024) ("It is well-established that automatic stays under § 362(a) are limited to debtors and do not automatically encompass non-bankrupt third-part[ies][.]").

In contrast, section 362(a)(3) centers on "property of the estate." It stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541(a) of the Bankruptcy Code broadly defines "property of the estate" to include "all legal or equitable interests of the debtor in

property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(c)(2) qualifies

that general rule. It provides that "[a] restriction on the transfer of a beneficial interest of the debtor

in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under

this title." 11 U.S.C. § 541(c)(2). Accordingly, it is settled that if a trust qualifies as a spendthrift

trust under applicable state law and the beneficiary of the trust is the debtor, the property of the

trust does not become "property of the estate" within the meaning of section 541(a)(1) and the

automatic stay of section 362(a)(3) does not apply. *See In re Hecht*, 54 B.R. at 382 ("Spendthrift

trusts . . . are excluded from [the] otherwise broad coverage [of § 541(a)(1)] by § 541(c)(2)"); *see*

*also In re Quackenbush*, 339 B.R. at 848-49 ("Section 541(c)(2) would typically be relevant to a

'spendthrift trust'" and prevents transfer of the debtor's interest in the trust to the bankruptcy

estate); *In re Kleist*, 114 B.R. at 369 (property held in a spendthrift trust is excluded from the

debtor's estate).

## <u>ANALYSIS</u>

In short, the Movants argue that sections 362(a)(1) and (3) do not bar the prosecution of

the MSM Action because the Debtor is not a party to the action, the action does not involve

property of the Bankruptcy Estate, and the action is not duplicative or derivative of estate claims.

The Trustee and Broser Group contest these arguments. In substance, they assert that the MSM

Action is pursuing actions that implicate the Debtor and property of the Bankruptcy Estate. They

also contend that if the stay does not apply, the Court should nonetheless enjoin prosecution of the

MSM Action. The Court considers those matters below.

## Application Of Section 362(a)(1) of the Bankruptcy Code

### Whether the MSM Action is a Proceeding Against the Debtor

As relevant, section 362(a)(1) of the Bankruptcy Code stays the "commencement or continuation" of "[an] action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1). The Debtor is not a party to the MSM Action. Accordingly, on that basis, by the plain language of the statute, prosecution of the MSM Action is not stayed by section 362(a)(1).

### Whether Orly is an Indispensable Party to the MSM Action

The Broser Group argues that despite the Plaintiffs' decision not to name Orly as a party to the MSM Action, section 362(a)(1) of the Bankruptcy Code bars prosecution of that action because the action is the equivalent of a claim "against the Debtor" because, under Rule 19, Orly is an indispensable party to the MSM Action. Broser Grp. Obj. ¶¶ 42-43.

Rule 19 sets forth a two-part test for determining whether a court must dismiss an action for failure to join an indispensable party. First, the court must determine whether the absent party should be joined if feasible, i.e., whether the party qualifies as a "necessary" party under Rule 19(a). *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir. 2000). Second, if the party is deemed necessary, the court must then determine whether the party's absence warrants dismissal pursuant to Rule 19(b). *Id.* at 725. The two situations in which Rule 19(a)(1) makes the joinder of a party necessary if feasible are if:

> (A) in the person's absence complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

22

       (ii) leave an existing party subject to a substantial risk of incurring double,
multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

The Movants deny that Orly is an indispensable party. Reply at 5. The Broser Group argues that under Rule 19(a), a nonparty is a required party to litigation if the court cannot provide complete relief among the existing parties in a lawsuit without the nonparty, or the claim exposes an existing party to a substantial risk of double, multiple, or inconsistent obligations because of the nonparty's claimed interest. Broser Grp. Obj. ¶ 43 (citing Fed. R. Civ. P. 19(a)(1)(A)). It contends that the MSM Action alleges that Orly caused the transfer of the 2013 Settlement Proceeds and cannot be decided without determining whether she has an ownership interest in the proceeds. *Id.* (citing MSM Complaint at 60 ("An actual controversy exists between the parties concerning ownership of the promissory notes . . . .")). It argues that because there are multiple pending disputes concerning the 2013 Settlement Proceeds in this case and other actions, it follows that Arie and the Broser Parties face a significant, unfairly prejudicial risk of inconsistent adjudications if the MSM Action is allowed to proceed outside of this Court. *Id.* It asserts that makes Orly an indispensable party to the MSM Action and that the Court should stay prosecution of the MSM Action because the parties are stayed by section 362(a)(1) from attempting to add Orly as a party to the action. *Id.* The Court finds no merit in those contentions.

In the MSM Action, the Orly Trust seeks a determination that it has a valid claim to the 2013 Settlement Proceeds. It is alleging a harm that is distinct to the trust. As such, complete relief can be accorded among the parties to the MSM Action. Under Rule 19(a)(1)(B)(ii), "[i]nconsistent obligations are not the same as inconsistent adjudication or results." *Gibbs Wire & Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 330 (D. Conn. 2009); *accord SafeNet, Inc.*, 758 F. Supp. 2d at 258 ("The touchstone is not inconsistent adjudications or results." (citing *Gibbs*, 255 F.R.D. at 330)).

23

"Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Yamaha Motor Corp. v. Ferrarotti,* 242 F.R.D. 178, 183 n.4 (D. Conn. 2007) (quoting *Delgado v. Plaza Las Americas, Inc.,* 139 F.3d 1, 3 (1st Cir. 1998)). In the MSM Action, the Orly Trust is alleging a harm that is distinct to the trust. *See Genger II,* 2025 WL 1222580, at *6 ("Whatever Orly's role in the alleged fraudulent transfers, it remains true that the MSM Action seeks a recovery for the Orly Trust, as the rightful owner of those proceeds"). As such, the defendants in the MSM Action are not at risk of inconsistent obligations arising out of that litigation. The Broser Group has not demonstrated grounds for relief under Rule 19.

### Whether the MSM Action is an Action to Recover a Claim Against the Debtor

The Broser Group contends that section 362(a)(1) stays prosecution of the MSM Action because it is a third-party action to "recover a claim against the Debtor." Broser Grp. Obj. ¶ 44. As support, it relies on *In re Colonial Realty Co.,* 980 F.2d 125. In that case, Colonial Realty Company ("Colonial") was a Connecticut general partnership that was involved in the formation and syndication of real estate limited partnerships throughout the United States. *Id.* at 127. Its business failed and, in 1990, the partnership and the general partners were put into chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Connecticut. *Id.* Their cases were consolidated, and a trustee was appointed in those cases. *Id.* Many of the banks that financed Colonial and the limited partnerships also failed, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed receiver of five such banks. *Id.* Post-petition, the FDIC, as receiver, commenced an action in the United States District Court for the Southern District of Florida (the "Florida Action") against, among others, the wife of one of Colonial's general partners, to avoid

and recover approximately $10 million that the partner allegedly fraudulently transferred to her. *Id.* at 127–28.

The chapter 7 trustee moved the bankruptcy court for an order determining that the Florida Action violated the automatic stay and enjoining the prosecution of the Florida Action. *Id.* at 128. The bankruptcy court granted the motion and the district court affirmed. *Id.* at 129–30. On appeal, the Second Circuit affirmed. As relevant, it held that a third-party action to recover fraudulently transferred property of the debtor is "properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to section 362(a)(1)." *Id.* at 131-132. In part, the court reasoned that

> While a fraudulent transfer action may be an action against a third party, it is also an action "to recover a claim against the debtor." Absent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor.

*Id.* at 132 (citation omitted).

The Broser Group contends that the MSM Action is an action to "recover a claim against the debtor" within the meaning of § 362(a)(1) because it expressly alleges that Orly fraudulently transferred the 2013 Settlement Proceeds, and the action, as well as various parties' avoidance claims, are based on the same fact that Orly was a signatory of the 2013 Settlement Agreement. Broser Grp. Obj. ¶ 45 (citing MSM Complaint ¶ 94). The Court disagrees. In the MSM Action, the Plaintiffs are asserting claims that are particular to them, and particularly against the defendants. They do not assert claims against the Debtor or claims that arise from the Debtor. The claims are based upon independent actions taken by the defendants. Section 362(a)(1) does not stay prosecution of the MSM Action.

**Application of Section 362(a)(3) of the Bankruptcy Code**

***Whether the MSM Action Involves Property of the Bankruptcy Estate***

The recovery MSM seeks in the MSM Action represents assets belonging to the Orly Trust, not to the Debtor. Moreover, the damage claims asserted in the MSM Action represent particularized claims for injuries experienced by the Orly Trust. *See Genger I,* 2024 WL 4438857, at *27 ("The underlying harm here is based on a failure to pay the Orly Trust directly, rather than a diminution of assets available to pay Orly's creditors. . . . This makes the harm specific and direct to the Orly Trust, and not to the Bankruptcy Estate."). The MSM Action does not seek "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, section 362(a)(3) does not stay prosecution of that action.[22]

---

[22] Quoting *In re Madoff,* 429 B.R. at 437, the Broser Group argues, in support of the application of the automatic stay to the MSM Action, that "[w]here causes of action brought against third parties seek the same funds that may be sought by the estate, these actions have the potential to substantially undermine [the bankruptcy court's] jurisdiction, as further prosecution could ultimately result in another court's determining how potential estate funds are distributed." Broser Grp. Obj. ¶ 36. In *Madoff*, the SIPA trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") sought an order pursuant to sections 362(a) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065, enforcing the automatic stay and enjoining the certain plaintiffs in Florida (the "Florida Plaintiffs") from litigating actions in the United States District Court for the Southern District of Florida (the "Florida Actions"). *In re Madoff,* 429 B.R. at 425. The trustee was litigating with certain defendants (the "Picower Defendants") when the Florida Plaintiffs commenced the Florida Actions against them. *Id.* at 429. In granting the SIPA trustee's motion, the court found that "[t]he Florida Plaintiffs violated the stay by usurping causes of action belonging to the estate under sections 363(a)(3) and 541 of the [Bankruptcy] Code." *Id.* at 430. In part, the court reasoned that the Florida Plaintiffs were "not seeking to redress a particularized injury or alleging harm caused directly to them by the Picower Defendants. In substance, the Florida Actions seek to redress the depletion of the BLMIS customer property fund, a harm that derivatively injures all customer claimants in the BLMIS liquidation." *Id.* at 431 (footnote omitted). The Court held that the Florida Plaintiffs were barred from doing so because "[t]he Trustee has exclusive standing to assert causes of action belonging to the estate. *Id.* at 430. The Court further noted that, "if the cause of action belongs solely to the . . . creditors, the trustee has no standing to assert it." *Id.* In that case, the claimants sought "to recover the very funds sought by the Trustee through his avoidance actions." *Id.* at 437. The Broser Group misplaces its reliance on *Madoff* because the MSM Action is not derivative or duplicative. It addresses a particularized harm to the Orly Trust. *Genger I*, 2024 WL 4438857, at *27; *Genger II*, 2025 WL 1222580, at *6.

The Broser Group also cites *In re 48th Street Steakhouse, Inc.*, 835 F. 2d 427, 431 (2d Cir. 1987) for the proposition that "actions against non-debtors that could impact potential property of the estate" are subject to the automatic stay. Broser Grp. Obj. ¶ 34. In that case, pre-petition, the debtor ("48th Street") assigned its lease of a restaurant to I.H.S. Liquidating Corp. ("I.H.S."), which, in turn, sub-let the premise to 48th Street. *In re 48th Street Steakhouse, Inc.*, 835 F. 2d at 429. The rent on the premises was in arrears when 48th Street commenced its case under chapter 11 of the

**Whether The MSM Action is a Dispute Over Potential Property of the Estate**

The Orly Trust's claims to the 2013 Settlement Proceeds are outside of the bankruptcy

estate:

> The nature of the alleged harm [in the MSM Action] is specific to the Orly Trust,
> not to the Bankruptcy Estate or her creditors in general. . . . On its face, this [is]
> a particularized harm to the Orly Trust, rather than a general harm to a debtor's
> estate or a broader group of creditors. . . . The Trustee has failed to demonstrate
> that Orly individually had any pre-bankruptcy entitlement to the 2013
> Settlement Proceeds.

*Genger I,* 2024 WL 4438857 at *27. Because there is no dispute as to any potential Bankruptcy

Estate property, section 362(a)(3) does not stay prosecution of the MSM Action.

---

Bankruptcy Code. *Id.* Post-petition, the landlord (the "Landlord") served a notice of default and lease termination notice on I.H.S. *Id.* The debtor sued the Landlord seeking a determination that it violated the automatic stay in sending the lease termination notice. *Id.* On appeal, the Second Circuit affirmed the bankruptcy and district courts' determination that the lease constituted estate property under section 541 of the Bankruptcy Code, and the landlord's attempt to terminate the lease as to I.H.S. violated section 362(a)(3) of the Bankruptcy Code. *Id.* at 430. The circuit found that "[i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *Id.* at 431. In reaching that determination, in part, the circuit reasoned that "[b]ecause [under state law] Landlord's attempt to terminate I.S.H.'s lease, if successful, would have resulted in the destruction of 48th Street's subtenancy, [the bankruptcy court] correctly held that Landlord's termination notice violated the automatic stay with respect to 48th Street and was therefore void." *Id.* at 431 (citation omitted). Here, the MSM Action cannot impact potential property of the Bankruptcy Estate, as that action is particularized to the Plaintiffs in that action. Prosecution of the action does not violate section 362(a)(3).

Finally, citing *In re Dreier, LLP,* 429 B.R. at 119, the Broser Group asserts that "the fact that Orly herself never claimed ownership over the 2013 Settlement Proceeds is inconsequential for purposes of determining whether the MSM Action is subject to the automatic stay." Broser Grp. Obj. ¶ 38. The Broser Group argues that claims are subject to the automatic stay regardless of allegations that the funds never became part of the debtor's estate because they were wrongfully diverted to a third party. *Id.* In *Dreier,* a claimant in the chapter 11 case of a law firm accused of operating a Ponzi scheme sought to recover specific funds from the Debtor on the grounds that they were owed specifically to him as a "defrauded client." *In re Dreier LLP,* 429 B.R. at 134. He argued that he should be allowed to trace those funds and receive such funds from the debtor who, he argued, was holding them in constructive trust. *Id.* at 135. He sought modification of the automatic stay in order to pursue that relief. *Id.* The Court disagreed. It reasoned, "[t]he reluctance to allow tracing and impose a constructive trust in bankruptcy is particularly compelling when it involves the commingled proceeds of a Ponzi scheme. The law applicable to equitable receiverships prohibits tracing, and promotes *pro rata* distribution to 'similarly situated' victims of a Ponzi scheme." *Id.* at 137. The Court further held that the funds sought by the claimant could be recovered by the trustee for the benefit of all similarly situated claimants. *Id.* at 138. Because he was not entitled to trace the funds and impose a constructive trust, the Court denied his motion to lift the automatic stay. *Id.* For the reasons stated above, the same is not true in this case.

### *Whether the MSM Action is Derivative or Duplicative of Bankruptcy Estate Claims*

The Chapter 7 Trustee and the Broser Group argue that the Court should stay the MSM
Action because it is "duplicative" of the Chapter 7 Trustee's "Potential Avoidance Action."[23] Prior
Objection ¶¶ 20, 24-25. The reason is that derivative and duplicative claims are based on injuries
to the Debtor that affected all creditors collectively, rather than particularized injuries to specific
creditors.

The Court finds no merit to that argument:

> The Trustee has failed to show that the claims brought by MSM and REI against
> Bowen, Arie, the Brosers, and others to recover the 2013 Settlement Proceeds
> are derivative. The nature of the alleged harm is specific to the Orly Trust, not
> to the Bankruptcy Estate or her creditors in general. The complaint in the action
> contends that the 2013 Settlement Agreement resolved claims concerning TRI
> shares in which the Orly Trust had an ownership interest, and that the proceeds
> were wrongfully diverted to entities controlled by Arie and the Brosers instead
> of being paid to the Orly Trust. On its face, this a particularized harm to the
> Orly Trust, rather than a general harm to a debtor's estate or a broader group of
> creditors.

*Genger I*, 2024 WL 4438857, at *27. Although the Court, in the Decision and Order, determined
that the MSM Action was not "derivative" as opposed to "duplicative," there is no functional
distinction between the two labels:

> [T]he Court of Appeals for the Second Circuit affirmed a bankruptcy court's
> power to enjoin claims that are "derivative or duplicative" of claims that "could
> have been or were asserted" by a bankruptcy trustee. It did not, however,
> distinguish "duplicative" from "derivative" claims. Rather, it affirmed that a
> bankruptcy court may enjoin claims that are "derivative or duplicative", which
> were terms that the bankruptcy court had used in its injunction. Recently, the
> Second Circuit explained that claims are either "general" (i.e., property of the
> estate) or "personal" (i.e., not property of the estate). That distinction between
> general and personal claims is the touchstone for defining a bankruptcy court's

---

[23] Derivative or duplicative claims are property of the bankruptcy estate. *In re Tronox Inc.*, 855 F.3d at 99.

jurisdiction, a distinction which the Bankruptcy Court in this case correctly applied.

*Genger II*, 2025 WL 1222580 at *7 (citations omitted). Contrary to the Trustee's and the Broser Group's assertions, the claims at issue in the MSM Action are not derivative of claims belonging to the Bankruptcy Estate. They are therefore not subject to the automatic stay.

## Application of Section 105(a) of the Bankruptcy Code

Section 105(a) of the Bankruptcy Code states that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is settled that in appropriate circumstances, courts may employ section 105(a) to enjoin actions filed against non-debtors. Accordingly, the Court must construe section 105(a) "liberally to enjoin suits that might impede the reorganization process—or, as here, the process of liquidation." *Lautenberg Found. v. Picard (In re Bernard L. Madoff Inv. Sec.)*, 512 F. App'x 18, 20 (2d Cir. 2013) (internal quotation marks omitted) (quoting *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988)); *see also In re Granite Partners, L.P.*, 194 B.R. at 337 ("[T]he court can and should enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts.") (citing *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville)*, 26 B.R. 420, 436 (Bankr.S.D.N.Y.1983)*, aff'd in part,* 40 B.R. 219 (S.D.N.Y.)*, rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y.1984); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),* 788 F.2d 994 (4th Cir.1985)).

In considering whether to enjoin suits against non-debtors under section 105(a), courts have examined a variety of factors including whether the suits would (i) threaten the debtor's insurance coverage, (ii) increase the debtor's indemnification liability, (iii) result in inconsistent judgments, (iv) expose the debtor to risks of collateral estoppel or *res judicata,* and (v) burden and distract the debtor's management by diverting its manpower from reorganization to defending

29

litigation. *See, e.g.*, *McHale v. Alvarez (In re 1031 Tax Group, LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (citing *In re Granite Partners*, 194 B.R.at 337). None of these factors is relevant in this Chapter 7 Case. The continued prosecution of the MSM Action plainly cannot interfere with a reorganization process or divert manpower from such a process. It does not impair the chapter 7 liquidation process because it does not involve, in any way, the Debtor's insurance coverage (if any), her indemnification liability (if any) or expose her to the risk of collateral estoppel or *res judicata*.

"Because injunctions under section 105(a) are authorized by statute, they need not comply with the traditional requirements of [Fed. R. Civ. P. 65]." *In re Madoff*, 429 B.R. at 436. "Rather, 'the bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'" *In re 1031 Tax Group, LLC*, 397 B.R. at 674 (quoting *Johns-Manville Corp. v. Colo. Ins. Guar. Ass'n (In re Johns-Manville Corp.)*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988)). Actions against non-debtors will be enjoined when they "will have an immediate adverse economic consequence for the debtor's estate." *Queenie,* 321 F.3d at 287. Examples of such actions are (i) a claim to establish an obligation of which the debtor is a guarantor, (ii) a claim against the debtor's insurer, and (iii) actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant. *Id.* None of these factors is relevant to this case. The MSM Action does not include claims against Debtor's insurers or to establish an obligation for which Orly in a guarantor. Moreover, Orly is not the real party defendant in the MSM Action.

Still, the Broser Group argues that the Court should enjoin prosecution of the MSM Action because it may impact the *res* of the Bankruptcy Estate. Broser Grp. Obj. ¶¶ 50-51. However, Orly has never asserted a right to the 2013 Settlement Proceeds. Moreover, "[t]he MSM Action does

not allege harm done to Orly's estate, but rather harm done to the Orly Trust." *Genger II*, 2025 WL 1222580, at *6.

Relying on *In re Purdue*, 2024 WL 4894349, the Trustee contends that the Court should temporarily enjoin prosecution of the MSM Action. Trustee Obj. ¶ 3. In *Purdue*, the matter before the District Court was the appeal of the bankruptcy court's decision pursuant to section 105(a) of the Bankruptcy Code, to continue to extend a preliminary injunction (the "Preliminary Injunction") in an adversary proceeding, that had been in place for more than five years—since the outset of the case. *In re Purdue*, 2024 WL 4894349 at *2. The injunction enjoined the prosecution of suits against the debtor by governmental units to enforce regulatory or police powers, and suits against third parties that might have an impact of the *res* of the bankruptcy estate. *Id.* In considering that matter, the District Court

> evaluat[ed] the traditional four factors for injunctive [relief], as applied specifically to a bankruptcy: (1) whether there is a likelihood of successful reorganization; (2), whether there is either imminent irreparable harm to the estate in the absence of an injunction, or the action to be enjoined is one that threatens the reorganization process; (3) the balance of the comparative harm[s] to the debtor, and to [the] debtor's reorganization, against that to the would-be-enjoined party should an injunction be issued, and (4) whether the public interest weighs in favor of an injunction.

*Id.* at *7 (quotation marks omitted) (internal citations omitted). It did so in light of an on-going mediation among the parties to the adversary proceeding. *Id.* at *8. In weighing those factors, the District Court held that the extension of the Preliminary Injunction was appropriate because it gave the parties an opportunity to try to reach a consensual resolution of the non-bankruptcy actions. *Id.* at *8-9 The District Court affirmed the bankruptcy court. *Id.* at *10.

To that end, in considering "the likelihood of a successful reorganization," the District Court found that the parties had made "continued and material progress" in the mediation and

noted that many of the parties to the adversary proceeding supported the requests to extend the Preliminary Injunction. *Id*. at *7. It found that there was a risk of "imminent irreparable harm" if the Preliminary Injunction was not continued, because "mediation [was] unquestionably the most cost-effective and efficient means that the Debtors have of recovering assets with which to pay their creditors[.]" *Id.* at *8. It found "this factor supports a continuation of the Preliminary Injunction." *Id.* Finally, in considering the "balance of harm and public interest," the District Court credited debtor's contention "that the best chance for claimants to recover significant value in the shortest amount of time is through global settlement[,]" and that "[i]f the Preliminary Injunction is lifted prior to settlement, . . . a chaotic, inequitable 'rush to the courthouse' will ensue, which would not be in the public interest." *Id*. at *9.

Applying these factors in this case, a preliminary injunction is not appropriate here. First, there have been no settlement discussions with the Brosers or the Trustee regarding the MSM Action, there is presently no likelihood of a consensual resolution. Second, it does not appear that there will be harm to the estate if the action is not enjoined because Orly does not claim an interest in the 2013 Settlement Proceeds, and this single case involves the Orly Trust, not the debtor, and will not affect the bankruptcy proceedings. Finally, there is no public interest at issue that would weigh in favor of an injunction. And one active case certainly would not create a "rush to the courthouse."

The Trustee and the Broser Group have not demonstrated grounds for relief under section 105 of the Bankruptcy Code.

## **CONCLUSION**

Based on the foregoing, the Court grants the Movants' request for an order confirming that the automatic stay under section 362 of the Bankruptcy Code does not apply to the MSM Action. In so holding, the Court denies the Trustee's and Broser Group's request to extend the automatic stay to the MSM Action pursuant to section 105(a) of the Bankruptcy Code. The Court does not address the Movants' alternative request for relief from the automatic stay.

**IT IS SO ORDERED.**

Dated:  June 20, 2025
      New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge