UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                                  :
                                                       :          Chapter 7
Orly Genger,                                           :          Case No. 19-13895 (JLG)
                                                       :
                         Debtor.                       :
---------------------------------------------------------------X

## PARTIAL JOINDER OF ADBG LLC, TEDCO, INC., THE GENGER LITIGATION TRUST, DAVID BROSER AND ARNOLD BROSER IN ORLY GENGER'S MOTION FOR SANCTIONS

ADBG LLC, Tedco, Inc., the Genger Litigation Trust, David Broser, and Arnold Broser (collectively, the "Broser Parties"), hereby partially join (this "Joinder"), to the extent relevant and not inconsistent with the Broser Parties' positions, in Orly Genger's motion for sanctions (as corrected, the "Sanctions Motion") (ECF No. 771), solely with respect to the request for sanctions against Sagi Genger, Dalia Genger, Michael Oldner, Recovery Effort, Inc. ("REI"), TPR Investment Associates, Inc. ("TPR"), D&K LP, D&K GP LLC, Robin Rodriguez, Manhattan Safety Company Limited ("MSL"), and Manhattan Safety Maine, Inc. ("MSM", and collectively, the "Sagi Parties"), and any party found to have acted in concert with them in connection with the relevant events, solely with respect to the relief sought herein.

The Broser Parties are differently situated from Orly and do not join in all of the allegations in the Sanctions Motion. For example, the Broser Parties are not involved in the various issues regarding the Israeli investigative reports and related matters. The Broser Parties thus do not seek all of the same relief as the Sanctions Motion and only seek the limited relief specified in this Joinder. The Broser Parties are hereby seeking sanctions against the Sagi Parties, and any party found to have acted in concert with them in connection with the relevant events, in the form of payment of all of the Broser Parties' attorneys' fees and expenses incurred in connection with this

chapter 7 case (including related adversary proceedings) and the events at issue, as well as any other form of sanction that the Court deems appropriate.

The Broser Parties assume familiarity with the long history of the Genger litigation and the record in this chapter 7 case, including the Broser Parties' filings and legal positions.

**The Sagi Parties Wrongfully and Intentionally Targeted and Harmed the Broser Parties**

The Broser Parties seek sanctions because they are victims of the Sagi Parties' fraud on this court (and other courts). Since even before the filing of this chapter 7 case, the Broser Parties have been improperly and intentionally targeted and labeled by the Sagi Parties as conspirators with Orly Genger and others aligned with her. It has now become clear from recent document production made by MSM and REI, summarized in the Sanctions Motion, that the Sagi Parties' litigation tactics were intentionally pursued as part of a long-running scheme to try to steal for themselves money to which they have no entitlement based on the June 2013 settlement to which they are not parties (indeed, the money at issue would not exist but for the Broser Parties because the settlement was the result of litigation funded by ADBG). For more than a decade, including the almost seven years that this bankruptcy case has been pending, the Broser Parties have been dragged through the mud by the Sagi Parties in connection with what has now been revealed to be their "nuclear option"/"plan" all along – to manufacture claims against Orly to bankrupt her in order to cause her to drop her claims against them.

In connection with the Motion to Dismiss and their other overall litigation strategy across most of their court filings, the Sagi Parties have wrongfully accused the Broser Parties of various wrongful acts and pursued various forms of claims and relief against them. The Broser Parties were subject to wide-ranging discovery efforts in connection with the Motion to Dismiss, including document requests and a deposition, and David Broser was called to testify at the Motion to

2

Dismiss hearing.  Sagi has wrongfully accused David Broser of perjury, an allegation rejected by this Court.[1]  Sagi has wrongfully executed his judgment against Orly against the Genger Litigation Trust's bank account and has refused to release the restraint, which has frozen over $50,000 for approximately seven years.  And the Sagi Parties have sued the Broser Parties and pursued claims against them in a number of courts and different actions, seeking to recover as their own amounts that litigation funder ADBG LLC properly lent to Arie Genger to fund Genger family litigation stemming from the misdeeds of the Sagi Parties.

Through the Sagi Parties' wrongful efforts, the Broser Parties have incurred substantial damages and reputational harm.  The Broser Parties have been forced to incur millions of dollars defending against the Sagi parties' fraud on the court and wrongful conduct relating to the Motion to Dismiss and their overall litigation positions, and have had their money tied up for more than a decade while doing so.

The Motion to Dismiss was an intentional and wrongful litigation tactic to benefit the Sagi Parties and to further harm Orly and those aligned with her, including the Broser Parties, who were alleged to have conspired with Orly.  This self-proclaimed "nuclear option" involved intentionally bankrupting Orly – who they acknowledged had no liquidity to pay – by concocting millions of dollars of claims.  They then moved to dismiss the bankruptcy filing and seek to deny Orly a discharge based on allegations of bankruptcy fraud and concealment of assets despite intentionally causing her to file for bankruptcy and admitting her inability to pay.

The Motion to Dismiss had no basis in fact or law and was properly denied.  In its 103-page decision denying the Motion to Dismiss, the Court properly considered and rejected all of

---

1.   *See* ECF No. 615 at 63 (Bankr. S.D.N.Y. June 30, 2023) ("David Broser's answer is consistent with his understanding that the Settlement Proceeds were all to go to Arie. If Mr. Dellaportas wanted to ask an open-ended question about any settlement agreement in general, he had the opportunity to make that clarification three times. Id. at 12–14. He declined to do so, and his confusing question received a confused answer. That is not perjury.").

Sagi's baseless allegations against the Broser Parties. Sagi admitted that the Motion to Dismiss was a "means" and an "instrument" for him to pursue the Disputed Settlement Proceeds for his and Dalia's benefit. (6/24 Tr. 73:6-14.) It is now clear from the newly produced documents from a joint MSM/REI document production on February 22, 2026, which are summarized in the Sanctions Motion, that the "means" and "instrument" was the intentional, egregious "nuclear option" "plan" that Sagi concocted and executed with his cohort.

The newly produced documents make clear that the scheme began long ago, and was intended to litigate around prior court rulings that barred the Sagi Parties from pursuing their claims.[2] Staring at potential liability for their actions, Sagi and Dalia tried to get creative to evade their impact, and used the other Sagi Parties (controlled and/or created by them) to further their wrongful conduct.

Shortly thereafter, Rodriguez joined the scheme no later than early 2012 (and possibly earlier), when he formed MSL in St. Kitts. He then used MSL to solicit investments to buy into the scheme and engaged in a series of sham transactions with Sagi and Dalia relating to the D&K

---

2.    *See, e.g., TPR Inv. Assocs. v. Fischer*, 87 A.D.3d 876, 876-877 (App. Div. 1st Dep't 2011) (finding that not only were Dalia's claims regarding TRI barred by her 2004 divorce with Arie and a related arbitration decision, but so were those of parties in privity with her and that TPR Investment Associates, Inc. (controlled by Sagi after Dalia obtained a controlling interest in her divorce with Arie and wielded it to Sagi) and D&K LP (of which Dalia was a general partner) were in privity with Dalia and thus were barred from pursuing claims relating to TRI and the other "transactions and occurrences that were considered in the [divorce] arbitration proceeding."); *Dalia Genger v. Arie Genger,* Case No. 13 170 Y 00996 07 (American Arbitration Assn., Commercial Arbitration Tribunal, NYC 2008) (finding that the "D&K note was a part of the estate planning scheme to transfer wealth to the children. The parties never intended for this note to be collected and to do so would re-transfer wealth back to the parents and defeat their estate plan."); *Genger v. Genger,* No. 651089/10 (NYSCEF 150) (N.Y. Sup. Ct. Oct. 26, 2011) (the "2010 Action") (TRO enjoining Dalia from proceeding with a Delaware action she filed on behalf of the Orly Trust and commencing any new actions concerning the TRI shares and related matters); *Genger v. Genger,* No. 651089/10 (NYSCEF 165) (N.Y. Sup. Ct. Nov. 26, 2011) (TRO enjoining TPR from taking any actions concerning the subject matter of the 2010 Action); *Genger v. Genger, 39 Misc. 3d 1235(A)*, *8-9 (N.Y. Sup. Ct. May 29, 2013); aff'd by *Genger v. Genger*, 120 A.D.3d. 1102 (App Div. 1st Dep't 2014); *Genger v. Genger,* No. 109749/09, , 2016 BL 118251, slip op. at 9-10, 13, 15-16 (N.Y. Sup. Ct. Apr. 8, 2016); *Genger v. Genger*, 147 A.D. 3d 443 (App Div. 1st Dept. 2017); *Genger v. Genger*, No. 109749/09 (N.Y. Sup. Ct. May 4, 2015).

4

Note that were voided by the New York Supreme Court and affirmed by the Appellate Division.[3]

Thus, Sagi (including TPR, and both D&K entities, all of which he controls) and Dalia, used Rodriguez, Sagi's close friend and business partner, as a front to further their misdeeds through MSL and MSM.  Rodriguez then brought in his former co-worker Oldner to further those misdeeds through the Orly Trust and REI.[4]

**Relief Requested**

The Broser Parties request that they be awarded sanctions against the Sagi Parties, and any party found to have acted in concert with them in connection with the relevant events, in the form of payment of all of the Broser Parties' attorneys' fees and expenses incurred in connection with this chapter 7 case (including related adversary proceedings) and the events at issue, as well as any other form of sanction that the Court deems appropriate.[5]

The Broser Parties also join in Orly's request for discovery.  The Sagi Parties have withheld unknown quantities (assuredly large) of communications on the basis of privilege, including the common interest privilege.  Given that discovery of those communications has not been possible to date, the Broser Parties reserve all rights to supplement this Joinder, raise additional arguments and seek additional relief against the Sagi Parties and any party found to have acted in concert with them in connection with the relevant events.

---

3.  *See Genger v. Genger*, 39 Misc. 3d 1235(A), *8-9 (N.Y. Sup. Ct. May 29, 2013), *aff'd*, *Genger v. Genger*, 120 A.D.3d. 1102 (N.Y. App Div. 1st Dep't 2014); *see also Genger v. Genger*, No. 109749/09, slip op. at 9-10, 13, 15-16 (N.Y. Sup. Ct. Apr. 8, 2016), *aff'd*, *Genger v. Genger*, 147 A.D. 3d 443 (N.Y. App. Div. 1st Dep't 2017).

4.  As the Court is aware, the shell entities MSM and REI have filed claims (purportedly assigned to them by TPR and the Orly Trust (by Dalia) shortly after their creation in the days before the action was filed) against the Broser Parties and others that are being litigated in District Court in the action styled *Manhattan Safety Maine, Inc., et al. v. Arie Genger, et al.*, No. 1:19-cv-5642 (MKV) (VF).

5.  *See, e.g.*, *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 460-62 (S.D.N.Y. 2002) (fraud on the court justified the sanction of dismissal with prejudice); *In re Town & Country Event Ctr. LLC*, No. 25-24205-C-11, 2026 WL 384244, at *5 (Bankr. E.D. Cal. Feb. 11, 2026) (imposing monetary sanctions for fraud on the court).

Dated: April 23, 2026
      New York, New York

HUGHES HUBBARD & REED LLP

*/s/ Christopher Gartman*
Christopher Kiplok
Christopher Gartman
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
Email:  chris.kiplok@hugheshubbard.com
           chris.gartman@hugheshubbard.com