UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

*In re Orly Genger*,

                          Debtor

------------------------------------------------------------

                                           Chapter 7

                                           Case No. 19-13895 (JLG)

**MEMORANDUM OF LAW ON BEHALF OF ADAM L. POLLOCK, ESQ.,
IN OPPOSITION TO DEBTOR'S MOTION FOR SANCTIONS
AND IN SUPPORT OF CROSS-MOTION FOR SANCTIONS**

LAW OFFICE OF DANIEL F. WACHTELL

Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10004
917-667-6954
dan@danwachtell.com

July 3, 2026

**Table of Contents**

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND .....................................................................................................2

LEGAL STANDARD.................................................................................................................5

ARGUMENT ..............................................................................................................................6

**I.    Debtor's Motion for Sanctions Against Pollock Should Be Denied** ............................6

    *1.  Pollock Had No Involvement in Inducing Debtor's Bankruptcy Filing* ......................7

    *2.  Pollock Did Not Unreasonably Multiply Litigation Proceedings* ................................8

    *3.  Pollock Did Not Engage in Discovery Misconduct* ......................................................10

    *4.  Pollock's Joint Representation Is Proper*.....................................................................12

**II.   Debtor's Counsel Should Be Sanctioned for Filing the Sanctions Motion** .................15

CONCLUSION...........................................................................................................................18

## Table of Authorities

### Cases

Almeciga v. Ctr. for Investigative Reporting, Inc.,
185 F. Supp. 3d 401 (S.D.N.Y. 2016) ........................................................................ 6

Anderson v. Credit One Bank NA (*In re Anderson*),
641 B.R. 1 (Bankr. S.D.N.Y. 2022) ..........................................................................12

Bonilla v. Volvo Car Corp.,
150 F.3d 88 (1st Cir. 1998) ....................................................................................... 7

CAT3 LLC v. Black Lineage, Inc.,
164 F. Supp. 3d 488 (S.D.N.Y. 2016) ..................................................................... 12

Daval Steel Products v. M/V Fakredine,
951 F.2d 1357 (2d Cir. 1991)...................................................................................12

Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy L.L.P. (*In re Enron Corp.*),
2003 WL 223455 (S.D.N.Y. Feb. 3, 2003) ..............................................................14

Glassman v. Feldman (*In re Feldman*),
597 B.R. 448 (Bankr. E.D.N.Y. 2019) ..................................................................... 12

Huebner v. Credit One Bank, N.A.,
897 F.3d 42 (2d Cir. 2018) ....................................................................................... 5

In re Galgano,
358 B.R. 90 (Bankr. S.D.N.Y. 2007) ........................................................................ 9

In re Nedd,
2026 WL 839201 (Bankr. E.D.N.Y. Mar. 26, 2026) ................................................ 10

In re WorldCom, Inc.,
311 B.R. 151 (Bankr. S.D.N.Y. 2004) ................................................................ 13, 14

Keller v. Mobil Corp.,
55 F.3d 94 (2d Cir. 1995) ......................................................................................... 6

KLG Gates LLP v. Brown,
506 B.R. 177 (E.D.N.Y. 2014) ................................................................................ 13

Lamborn v. Dittmer,
873 F.2d 522 (2d Cir. 1989) .................................................................................... 13

Liebowitz v. Bandshell Artist Mgmt.,
    6 F.4th 267 (2d Cir. 2021) .................................................................................... 5

Markus v. Rozhkov,
    615 B.R. 679 (S.D.N.Y. 2020) ............................................................................. 12

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986) ................................................................................ 8

Pastor v. Trans World Airlines, Inc.,
    951 F. Supp. 27 (E.D.N.Y. 1996) ........................................................................ 14

Residential Funding Corp. v. DeGeorge Fin. Corp.,
    306 F.3d 99 (2d Cir. 2002) ...................................................................................12

Revson v. Cinque & Cinque, P.C.,
    221 F.3d 71 (2d Cir. 2000) .................................................................................... 8

Salovaara v. Eckert,
    222 F.3d 19 (2d Cir. 2000) .................................................................................... 6

Schlaifer Nance & Co. v. Estate of Warhol,
    194 F.3d 323 (2d Cir. 1999) ............................................................................. 5, 6

Secured Worldwide, LLC v. Kinner,
    2015 WL 4111325 (S.D.N.Y. June 3, 2015) ...................................................... 14

Shafi v. British Airways PLC,
    83 F.3d 566 (2d Cir. 1996) .................................................................................... 6

Sorenson v. Wolfson,
    170 F. Supp. 3d 622 (S.D.N.Y. 2016) .................................................................. 8

Ted Lapidus, S.A. v. Vann,
    112 F.3d 91 (2d Cir. 1997) .................................................................................... 7

United Realty Advisors, LP v. Verschleiser,
    2015 WL 3498652 (S.D.N.Y. June 3, 2015) ...................................................... 10

United States v. Int'l Bhd. of Teamsters,
    948 F.2d 1338 (2d Cir. 1991) ................................................................................ 6

Unite Here v. Cintas Corp.,
    500 F. Supp. 2d 332 (S.D.N.Y. 2007) ................................................................ 10

iv

West Virginia v. Chas. Pfizer & Co.,
    440 F.2d 1079 (2d Cir. 1971) ................................................................... 6

Wolters Kluwer Fin. Servs., Inc. v. Scivantage,
    564 F.3d 110 (2d Cir. 2009) ............................................................. 5, 6, 8

**<u>Statutes and Rules</u>**

28 U.S.C. § 1927 ........................................................................... *passim*

Fed. R. Bankr. P. 7037 .................................................................... 12

Fed. R. Bankr. P. 9011 .................................................................... *passim*

Fed. R. Civ. P. 11 .......................................................................... 15

Fed. R. Civ. P. 37 ...................................................................... 12, 13

INTRODUCTION

Adam Pollock, Esq. respectfully submits this Memorandum of Law (a) in Opposition to the Motion for Sanctions, dated April 26, 2026, filed by counsel for Debtor Orly Genger; and (b) in Support of Pollock's Cross-Motion for Sanctions against Debtor's counsel Michael Bowen, Esq. and the law firm of Herschmann Benson Bowen LLP, made pursuant to Bankruptcy Rule 9011 and filed herewith, notice of which was given on May 4, 2026.

The gravamen of this Opposition and Cross-Motion are the same: Debtor and her counsel have filed what amounts to an omnibus motion seeking an array of relief for a supposed wide-ranging conspiracy by Pollock, Pollock's clients, related parties, non-parties, and other attorneys to engage in litigation actions that they believe to be detrimental to Debtor. Debtor's Motion lumps together these individuals, entities, parties, non-parties, and attorneys into various defined groupings – Pollock, together with his client the Orly Genger Trust (the "Trust") and its trustee, Michael Oldner, are the "OGT Parties" – and then collectively defines all of these groupings as "Co-Conspirators" and attempts to attribute to each of them (including Pollock) the conduct of others, even where that conduct occurred before Pollock was involved with this matter, or where the facts alleged make clear that Pollock was completely uninvolved. The Sanctions Motion, by its own admission, seeks to elevate activity that is "not illegal or fraudulent" (Sanctions Mot. at 32) into conduct warranting sanctions, attorney's fees, and even criminal and ethical referrals. Doing so under the auspices of a motion for sanctions under 28 U.S.C. 1927 is wildly improper and prejudicial, and (at least as to Pollock, for the purposes of this Memorandum) cannot have been undertaken by Debtor's counsel in good faith. The Sanctions Motion should thus be denied, and Debtor's counsel held to account through the imposition of sanctions under Rule 9011.

FACTUAL BACKGROUND

This Memorandum adopts by reference the facts recited in the Declaration of Adam Pollock, sworn July 3, 2026 ("Pollock Decl.") and filed herewith, and recites the below facts as relevant to this Opposition and Cross-Motion.

As this Court is aware, this dispute between Debtor Orly Genger and her father Arie Genger, on the one hand, and Orly's brother Sagi Genger and mother Dalia Genger, on the other, is one of long standing.  In the years leading up to Orly's 2019 bankruptcy, a dispute arose between Orly and Sagi regarding, among other things, their respective obligations to provide $3 million each in financial support to Dalia, as well as whether Orly and Arie had conspired to divert a $32 million settlement payment away from Orly's trust, of which Dalia was the trustee. In June 2019, with these disputes looming, (1) Dalia resigned as trustee and was replaced by Michael Oldner; (2) Recovery Effort, Inc. ("REI") was established as a subsidiary of the Trust; and (3) REI, Sagi, the Trust, Manhattan Safety Maine, Inc. ("MSM"), and two other entities entered into an Intercreditor Agreement reflecting their common, aligned interest in recovering the diverted settlement payment.

Orly's bankruptcy was originally filed in Texas the following month, on July 12, 2019. (W.D.Tx. Bankr. No. 19-10926.)  At that time, as attested to in Pollock's aforementioned Declaration, Pollock had never heard of – much less been engaged to represent – any individual or entity involved with this dispute.  Pollock was retained by REI and MSM a month later, on August 20, 2019, to represent them in the two district court actions in the Southern District of New York.  On September 12, 2019, Sagi Genger filed a motion to dismiss the bankruptcy or, in the alternative, to transfer venue; this motion was joined by the Orly Genger Trust through its counsel in Texas. (Docket Nos. 32, 108.)  Pollock was uninvolved.

2

On November 15, 2019, the bankruptcy court in the Western District of Texas granted the motion to transfer venue to this Court. (Docket No. 179; *see also* S.D.N.Y. Bankr. No. 19-13895, Docket No. 215 (transcript).)  In April 2020, Sagi Genger then refiled his amended motion to dismiss in this Court, and the Trust – through Pollock – explicitly did not take a position on the motion.  *See* Letter, dated June 17, 2020 (Docket No. 264) ("The Orly Trust takes no position with respect to the Motion to Dismiss and does not intend to file any papers in connection therewith.").

On June 3, 2020 – in the throes of the Covid pandemic – the Bankruptcy Trustee and the Herschmann Parties (that is, Orly Genger and Kasowitz Benson Torres LLP) emailed six (defective) "subpoenas" containing over 300 document requests to the Orly Genger Trust and its trustee, Michael Oldner, each in connection with Sagi's Motion to Dismiss.  Following meet-and-confer discussions with counsel for the Bankruptcy Trustee and the Herschmann Parties, Pollock made a production on June 22, on behalf of Oldner and the Trust, of over 5,500 pages gathered from Oldner during the preceding weeks.

Meanwhile, on June 19, 2020, the Bankruptcy Trustee (Rocco Cavaliere) also served document requests to MSM, REI, and the Trust; these requests were made in connection with a motion by MSM and REI which sought a declaration that the two aforementioned district court actions (in which Pollock had appeared as counsel) should not be subject to an automatic bankruptcy stay.  Pollock and Cavaliere conferred on June 22, 2020, and Cavaliere agreed to hold his requests in abeyance given the significant production made that same day by Oldner and the Trust, as well as on account of the logistical burdens of the pandemic.  The Bankruptcy Trustee never thereafter renewed the discovery requests, and Sagi's Motion to Dismiss was resolved in favor of Debtor in 2023.

On June 20, 2025, this Court issued a decision confirming that the pending, parallel district court action in question (the "MSM Action") was not subject to the automatic stay. (The issue of a stay of the other district court action – the REI Action – had been resolved in the meantime.) Discovery thus commenced in the MSM Action, and Oldner made a new search of his files and discovered additional documents that he had never previously shared with Pollock in response to the Herschmann Parties' 2020 requests. Pollock produced those documents in due course earlier this year. (Pollock Decl. ¶¶ 10–12.) Separately, MSM (through its principal Robin Rodriguez) also collected and produced documents in MSM Action discovery, including the emails that Debtor now refers to as the "nuclear option" messages. Those emails – which Pollock, in any event, did not know to exist at the time – had not previously been collected or produced, given the Bankruptcy Trustee's June 22, 2020 agreement to hold the MSM document requests in abeyance. (*Id.* ¶¶ 26–28.)

Debtor's Sanctions Motion claims that these newly produced documents evince a long-running conspiracy to, first, force Orly Genger into bankruptcy for improper reasons and, then, turn around and move in bad faith to dismiss that bankruptcy; the failure to produce the documents sooner (along with other conduct wholly unrelated to Pollock, such as the purported falsification of documents by unaffiliated attorneys) is asserted by Debtor as proof of the conspiracy's existence and of Pollock's participation therein. The specific allegations contained in the Sanctions Motion, however, relate to Pollock in only limited part: that "Pollock, while purportedly acting as counsel for the Orly Trust, is also simultaneously representing Rodriguez's controlled Manhattan Safety Maine against Orly in direct violation of the Rules of Professional Conduct"; and that Pollock, in 2020, "served on behalf of Oldner blanket objections to [Herschmann's] discovery requests as improper and supposedly 'irrelevant' to Sagi's motion to

4

dismiss the bankruptcy. . . in bad faith since the concealed documents are clearly relevant."

Other allegations assert that the "OGT Parties" – which includes both Pollock, the Trust, and

Oldner – pursued bad-faith litigation positions:  (1) they forced Debtor into bankruptcy for the

purpose of extracting a settlement through the threat of exposing her husband's finances, rather

than for any legitimate purpose; and (2) they "joined in the Sagi Parties' original motion to

dismiss Orly's bankruptcy, but when the Sagi Parties filed an amended motion, the OGT Parties

instead pursued the same relief in their own adversary proceeding."[1]

## LEGAL STANDARD

Under clear Second Circuit precedent, in order to impose sanctions under 28 U.S.C.

§ 1927, "a court must find clear evidence that (1) the offending party's claims were entirely

without color, and (2) the claims were brought in bad faith—that is, motivated by improper

purposes such as harassment or delay."  *Huebner v. Midland Credit Mgmt, Inc.*, 897 F.3d 42, 55

(2d Cir. 2018); *see also Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110,

114 (2d Cir. 2009) (same).  Proving an attorney's bad faith by clear and convincing evidence is

"a prerequisite to imposing sanctions under both § 1927" and under the inherent power of the

court.  *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 n. 22 (2d Cir. 2021); *Schlaifer*

*Nance & Co., Inc., v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (standard for sanction

under court's inherent power nearly identical to that under Section 1927).  Specific allegations

---

[1] The Sanctions Motion makes various allegations about the conduct of "Co-Conspirators," a wide-ranging group of individuals and entities.  This Memorandum does not specifically address each of these allegations because, as set forth hereinbelow: (1) it is improper to move for sanctions on the basis of non-particularized allegations; (2) much of the conduct allegedly undertaken by the "Co-Conspirators" occurred before Pollock's involvement with the matter or was completely unrelated to Pollock; and/or (3) was co-extensive with the allegations against Pollock and/or the OGT Parties described in the foregoing paragraph.

5

and findings must be made against each party to be sanctioned; sanctions liability cannot be imposed vicariously or by attribution. *Wolters Kluwer*, *supra* at 114.

A court's imposition of sanctions is considered "highly unusual." *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir.), *cert. denied* 404 U.S. 871 (1971). As a result, sanctions are awarded only upon a "particularized showing" of bad faith, *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991), and even then, only in extreme cases, *see, e.g.*, *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016), as Section 1927 applies "only if actions are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Shafi v. British Airways, PLC*, 83 F.2d 566, 571 (2d Cir. 1996) (*quoting Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995)). Even the "continuation of proceedings" that are a product of no "more than 'poor legal judgment,'" without persuasive and credible evidence to show bad faith, is not sufficient for sanctions to be imposed. *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000), *citing Schlaifer Nance*, 194 F.3d at 342.

## ARGUMENT

### I.    Debtor's Motion for Sanctions Against Pollock Should Be Denied

As best can be determined from Debtor's prolix and convoluted Sanctions Motion, she has four primary complaints about Pollock specifically. All four completely lack any substantive merit. The Motion is procedurally improper as it makes threat of sanctions against Pollock on the basis of non-particularized, non-individualized allegations undertaken by others, in a manner more akin to the pleading of a civil conspiracy.[2]  And, because the allegations against Pollock

---

[2] It is expected that in reply, Debtor may argue – as Mr. Bowen argued at the previous status conference before this Court – that Pollock entered into a "criminal conspiracy" and thus should be liable to be sanctioned for all allegedly sanctionable conduct of his supposed "co-conspirators," even those acts that occurred prior to his own direct involvement. But whatever

cannot possibly be proven and wholly lack evidentiary support, Debtor's counsel is liable to be sanctioned under Bankruptcy Rule 9011 as a result. *See* Part II, *infra*.

### A. Pollock Had No Involvement in Inducing Debtor's Bankruptcy Filing

First, Debtor asserts that the so-called "Co-Conspirators," including Pollock, "planned and carried out a scheme [and] generated crushing debt obligations against [Debtor] they knew she could not pay, forced her into bankruptcy, and used the bankruptcy proceeding and this Court for improper purposes—namely, to try to coerce Orly into abandoning her meritorious lawsuit against Sagi and to extort her spouse, Eric Herschmann, whom they called Orly's 'billionaire husband/lawyer,' into paying the Co-Conspirators tens of millions of dollars." Sanctions Mot. at 1.

Putting aside the fact that this is a tortured, prejudicial description of the actual contours of the dispute, the so-called "scheme" cannot form the basis of a sanctions award against Pollock:  he had absolutely nothing to do with it. By its own terms, the scheme *culminated in* Debtor's bankruptcy filing in July 2019. And it must have; the alleged objective of the plan was to force Debtor to file. But Pollock, as Debtor and counsel are plainly aware, was not involved in this matter in any way whatsoever until the following month – August 2019. Section 1927 demands a showing of an individual attorney's direct involvement in improper conduct, which is a factual impossibility here. *See Bonilla v. Volvo Car Corp.*, 150 F.3d 88, 93 (1st Cir. 1998) (overturning sanctions order that "attribute[d] misconduct to all codefendants indiscriminately without adequate supporting findings"); *Ted Lapidus, S.A., v. Vann*, 112 F.3d 91, 97 (2nd Cir. 1997) ("a sanctioned attorney must receive specific notice of the conduct alleged to be

---

the viability of that argument as a matter of criminal law, it fails under the Second Circuit's view of Section 1927 and inherent-authority civil sanctions. Such sanctions require a "high degree of specificity in the factual findings," as "bad faith is personal" and "may not automatically be visited on others." *Wolters Kluwer*, 564 F.3d at 114.

7

sanctionable and the standard by which the conduct will be assessed, and an opportunity to be heard on the matter”); *Wolters Kluwer*, 564 F.3d at 114-116 (overturning sanctions orders where actions did not evince personal, specific, bad-faith intent).

### B.  Pollock Did Not Unreasonably Multiply Litigation Proceedings

Moreover, the complained-of conduct, if proven – and even if Pollock were involved – does not fall within the ambit of Section 1927, which by its terms only applies to instances in which an attorney “multiplies the proceedings *in any case* unreasonably and vexatiously.”  *See, e.g.*, *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 632-33 (S.D.N.Y. 2016), *aff'd* 683 F. App'x 33 (2d Cir. 2017) (Section 1927 “is not a catch-all provision designed to penalize attorneys for making bad arguments”).

To the extent that Debtor means to complain generally of a supposed conspiracy to force her into bankruptcy for improper reasons – even including to induce her to abandon a separate “meritorious lawsuit” – Section 1927 is not the proper mechanism by which to raise such allegations.  This is because even intemperate pre-litigation threats are not enough to warrant sanctions under § 1927 or under the court's inherent authority, unless the actions in the litigation that followed were “entirely without color” or “so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.”  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 82 (2d Cir. 2000) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272-73 (2d Cir. 1986)).  By way of example, in *Revson*, the Court of Appeals overturned the district court's imposition of sanctions where a lawyer's admittedly offensive pre-litigation threats, including that threatened litigation would involve the “legal equivalent of a proctology exam,” were not grounds for sanctions.  *Id.* at 75.

8

Moreover, the plain language of the rule provides sanction for multiplying the proceedings "in any case" – not for causing *additional* cases or proceedings to be instigated. Debtor cites no cases for the proposition that Section 1927 could plausibly apply on these facts, either. *Cf. In re Galgano*, 358 B.R. 90, 104 (Bankr. S.D.N.Y. 2007) (debtor violated § 1927 by filing bankruptcy action *and then* inducing creditor to make multiple motions, thereby "multiplying the proceedings").

The same analysis is true to the extent that the Debtor asserts that sanctions are appropriate because the "OGT Parties" – defined to include Pollock – "joined in the Sagi Parties' original motion to dismiss Orly's bankruptcy," and later "did not file a joinder with respect to the amended motion to dismiss [but] has continued to pursue its bad-faith adversary proceeding against Orly objecting to her discharge." (Sanctions Mot. at 33.)

For much the same reasoning as set forth above, none of these allegations against the so-called "OGT Parties" suffice to merit sanctions under Section 1927 against Pollock, an attorney. Only in the context of Debtor's convoluted (and procedurally improper) allegation of the existence of a "conspiracy" does it possibly make sense that moving to dismiss a bankruptcy filing, or contesting the filing through an adversary proceeding, could be said to be "unreasonable" or "vexatious" or to have no colorable purpose other than delay. Even accepting *arguendo* Debtor's theory that there *was* a scheme to force her into bankruptcy, Pollock by definition had nothing to do with it, as it was complete before he was ever involved with the case.

The subsequent opposition to the Debtor's motion to dismiss the adversary proceeding seeking the non-discharge of a particular debt was an ordinary litigation filing; even if it represented a change in strategy, only through Debtor's conspiratorial lens does that become

9

questionable.  Even then, it does not remotely approach the threshold needed to impose Section 1927 liability on *Pollock*, in particular:  he did not file the Motion to Dismiss, nor did he file the complaint that commenced the Adversary Proceeding.  He has filed *one* substantive brief in the Adversary Proceeding, an opposition to a motion to dismiss.  Debtor does not even try to explain how Pollock, by filing this single opposition *to Debtor's own motion*, could possibly have "unreasonably multiplied" any proceeding.  *See Utd. Realty Advisors, LP v. Verschleiser*, No. 14 Civ. 5903, 2015 WL 3498652, at \*2 (S.D.N.Y. June 3, 2015) ("[Section] 1927 is not a catch-all provision designed to penalize attorneys for making bad arguments."); *In re Nedd*, 2026 WL 839201, at \*15 (Bankr. E.D.N.Y., Mar. 26, 2026); *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332, 335 (S.D.N.Y. 2007) (sanctions under court's inherent authority were unwarranted even where motives might have been "questionable" but party "had facially valid theories to support its claim").

Nor did Debtor raise any objection on Section 1927 grounds (or Rule 9011, for that matter) either when the Adversary Proceeding was filed in 2019 or when Pollock filed his opposition to the motion to dismiss in 2025.  Only when Debtor supposedly became "aware" from a recent document production of a throughgoing "conspiracy" did she recast these stale events as the grounds for a sanctions motion.  This attempt to impose personal liability on Pollock should be squarely rejected.

### C.  Pollock Did Not Engage in Discovery Misconduct

Debtor likewise has no colorable argument that Pollock himself engaged in any discovery misconduct.  Even if she did, however, there would be no basis for sanctioning Pollock, as his conduct clearly did not violate any judicial order, which is a prerequisite for the imposition of sanctions; no such order exists.

10

The Sanctions Motion contends that the "co-conspirators" knowingly withheld discovery in 2020, as described in the factual background section hereinabove.  But this allegation is completely baseless:  the documents that Debtor points to were not turned over to Pollock until many years later.  (Pollock Decl. ¶¶ 10–14, 26–28.)  And, Pollock's participation in the discovery process during the time in question – June 2020 – did not remotely approach a sanctionable level:  he produced the documents belonging to the Orly Trust and/or REI that he knew about at the time, with limited exclusions based on relevance.  He did not produce documents in response to separate requests from the bankruptcy trustee because the trustee had agreed to hold those requests in abeyance.  (Pollock Decl. ¶¶ 17–25.)  There is nothing improper (nor does Debtor point to anything improper) about an attorney asserting relevance-based objections, nor withholding documents for the same reason.  (This is especially true given that, in the instant situation, Debtor's counsel was completely unwilling to narrow their extraordinarily broad document requests whatsoever. (Pollock Decl. ¶¶ 3–7.))  Nor, of course, is there anything improper about not making a document production when the proponent of those document requests explicitly consented to their being held in abeyance.

Nor did Pollock do anything improper when the so-called "nuclear option" documents were disclosed to him by his client MSM in 2025.  As noted above, those emails – which Pollock, in any event, did not know to exist in 2020 – had not previously been collected or produced, given the Bankruptcy Trustee's June 22, 2020 agreement to hold the MSM document requests in abeyance.  (Pollock Decl. ¶¶ 26–28.)  When discovery separately recommenced in late 2025 in the separate MSM district court action, Pollock produced the documents at issue on behalf of MSM in that matter.

11

But, as noted above, any analysis of the propriety of Pollock's conduct is immaterial given that sanctions could only be properly imposed if he had contravened an existing judicial order. In every case cited by Debtor, *see* Sanctions Mot. at 36-37, sanctions were issued only after an order compelling discovery was issued by the court and the contumacious conduct continued. Sanctions were thus appropriate under Rule 37 or Bankruptcy Rule 7037 – and those cases are inapposite here. *See e.g.*, *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 102, 107-112 (2d Cir. 2002) (analyzing sanctions in context of failure to comply with court's discovery order); *Daval Steel Prods. v. M/V Fakredline,* 951 F.2d 1357, 1365 (2d Cir. 1991) (sanctions warranted under Rule 37 "[p]rovided that there is a clearly articulated order of the court requiring specified discovery") (citing *Jones v. Uris Sales Corp.*, 373 F.2d 644, 647–48 (2d Cir. 1967)); *Anderson v. Credit One Bank NA (In re Anderson)*, 641 B.R. 1, 23 (Bankr. S.D.N.Y. 2022) (sanctions under Rule 37 appropriate "only when a party fails to obey an order to provide or permit discovery"); *Markus v. Rozhkov*, 615 B.R. 679, 711 (S.D.N.Y. 2020); *Glassman v. Feldman (In re Feldman)*, 597 B.R. 448, 463-465 (Bankr. E.D.N.Y. 2019) (discussing party's failure to comply with court's discovery orders); *CAT3 LLC v. Black Lineage, Inc.,* 164 F. Supp. 3d 488, 492, 502-503 (S.D.N.Y. 2016) (sanctions for destruction of evidence after court ordered production).

### D.  Pollock's Joint Representation Is Proper

Debtor's Motion is furthermore replete with allegations and insinuations that Pollock's joint representation of multiple clients connected with the various Genger family disputes is improper – specifically, that "Pollock, while purportedly acting as counsel for the Orly Trust, is also simultaneously representing Rodriguez's controlled Manhattan Safety Maine against Orly in direct violation of the Rules of Professional Conduct." (Sanctions Mot. at 4.)  While this does

not apparently form an independent claimed ground for sanctions in Debtor's Motion papers, it is raised with the clear intention of influencing this Court's consideration of the substance of the motion and thus bears discussion.

The simple response is that Debtor has already litigated this issue, and lost, five years ago.  At that time, this Court considered and rejected challenges to the propriety of a joint-prosecution agreement between the Orly Genger Trust (by Michael Oldner as trustee); TPR Investment Associates, Inc.; Recovery Effort, Inc.; Manhattan Safety Company LTD; and Manhattan Safety Maine, Inc.  The Court found the agreement to be completely appropriate, given the shared objective (amongst the parties to that agreement) of litigating their entitlement to the $32 million at issue.  *See* Tr., dated Feb. 24, 2021 (ECF No. 373).  That objective, as this Court is aware, was memorialized in a controlling Intercreditor Agreement, signed in 2019, which remains enforceable at present.

Instead of moving for formal disqualification of Pollock, Debtor now seeks to sanction Pollock, re-raising this purported (and non-existent) conflict issue in order to muddy the waters and create the appearance of impropriety.  This, like Debtor's attempt to obtain discovery sanctions without a Rule 37 order, is an end-run around proper procedure, and calculated for strategic reasons:  had she moved to disqualify counsel a half-decade ago, that motion would have been rejected by this Court – recognizing the force and effect of the Intercreditor Agreement – in the same way that this Court found the joint-prosecution agreement to be proper.

Putting aside the clear *res judicata* effect of the Court's prior ruling on this issue, it is hard to see this as anything other than a strategic attempt to gain an inappropriate advantage in this litigation.  As the Second Circuit has made clear, "[b]ecause courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny." *Lamborn*

13

*v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).  What is more, "[a]n unjustified delay in bringing a motion to disqualify provides a separate ground to deny the relief requested in the underlying motion."  *KLG Gates, LLP v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014) (*quoting In re WorldCom, Inc.*, 311 B.R. 151, 166–67 (Bankr. S.D.N.Y. 2004)); *see also, e.g.*, *Pastor v. Trans World Airlines, Inc.*, 951 F. Supp. 27, 32 (E.D.N.Y. 1996) ("[A] court may find an implied waiver if a party delays its disqualification motion unreasonably.'").  Even a brief delay of just a few months has been deemed enough to warrant denial of a motion to disqualify if the delay is unjustified.  *See, e.g.*, *Secured Worldwide, LLC v. Kinner*, No. 15 Civ. 1761, 2015 WL 4111325, at *6 (S.D.N.Y. June 24, 2015) (rejecting "belated (and suspiciously timed)" motion to disqualify counsel where party "expended substantial resources" in defending itself for three months without objection from moving party); *Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy L.L.P. (In re Enron Corp., et al.)*, 2003 WL 223455, at *4 n. 2 (S.D.N.Y. Feb. 3, 2003) (bankruptcy court found motion to disqualify untimely where motion was brought nearly two months after basis for disqualification became known).

It cannot be disputed that Debtor's counsel was aware of this issue more than six years ago, raised it then in a collateral challenge to the joint-prosecution agreement, and was rejected by this Court.  She gives no reason why she has delayed until now to raise this issue as a basis for sanctions; it would be an understatement to say that Pollock's disqualification, after six years of representing his clients, would be prejudicial to those clients.  This Court should reject Debtor's effort out of hand, as it is yet another example of Debtor and her counsel using every possible lever at their disposal, no matter how lacking in merit, to burden her adversaries and this Court.  The motion should be denied.

## II.     Debtor's Counsel Should Be Sanctioned for Filing the Sanctions Motion

In addition to denying Debtor's Sanctions Motion for the reasons stated hereinabove, this Court should sanction Debtor's counsel Michael Bowen (and the law firm of Herschmann Benson Bowen LLP) (together, "Bowen") under Bankruptcy Rule 9011 for his filing and for related conduct, which knowingly includes allegations that plainly lack evidentiary support. Bowen was given proper and timely safe-harbor notice and an opportunity to withdraw the motion, and did not do so.

After the Sanctions Motion was initially filed on April 21, 2026 (ECF No. 771), Pollock informed Debtor's counsel during this Court's April 24, 2026 status conference that factual statements in the Motion were wholly lacking in factual support.  This Court thus directed "Mr. Herschmann, Mr. Bowen, and Mr. Pollock … to meet and confer following this conference regarding the asserted factual errors in the sanctions motion." (ECF No. 777.)  Later that day, Pollock had two meet-and-confer calls with Messrs. Herschmann and Bowen during which he identified the contentions in the Sanctions Motion that lacked factual basis, such as the allegation that Pollock specifically took actions (such as forging documents) that Debtor's counsel knew he had not taken, irrespective of whether those actions were undertaken by other individuals. (Pollock Decl. ¶¶ 30 *et seq*.)[3]

Pollock raised these points again during a status conference with this Court on April 28, 2026.  But even after two status conferences and two meet-and-confer calls, Bowen and Herschmann still refused to appropriately amend or withdraw their sanctions brief.  Accordingly,

---

[3] The response that Mr. Bowen advanced before this Court, i.e. that Pollock is liable for his alleged co-conspirators' conduct, plainly fails. In no court – whether criminal or civil – can a litigant allege that an individual undertook specific acts when the party knows the individual not to have done so.

15

in a Notice of Motion timely delivered to Bowen by email on May 4, 2026 ("Notice"), Pollock

gave Bowen – consistent with the safe-harbor provisions of Fed. R. Civ. P. 11 and Bankruptcy

Rule 9011 – notice of the bases for Pollock's intended cross-motion and a corresponding

opportunity to for Bowen to withdraw his own motion.[4] As noted above, these points had been

reiterated multiple times to Bowen, both in writing and in meetings and court conferences, and

nevertheless Bowen continued to maintain the Sanctions Motion against Pollock rather than

withdrawing it.

Specifically, the Notice of Motion informed Bowen that the basis of the motion would be

that "Respondents violated Fed. R. Bankr. P. 9011(b) by presenting to the Court allegations and

factual contentions having no evidentiary support," including that "the Sanctions Motion defines

the 'OGT Parties' to include Movants, and then alleges that the OGT Parties undertook various

acts that Respondents are fully aware (a) had either been completed before Movants were ever

involved in this matter, or (b) Movants were not substantively involved with." (Notice at 1.) In

support of this overarching proposition, the Notice referenced testimony of Michael Oldner, from

his June 2020 deposition (conducted by Bowen), that Pollock Cohen LLP was retained for the

first time in <u>August</u> 2019. (Oldner Tr., dated June 25, 2020, at 132:6-9.)[5] Yet the motion

repeatedly accuses the "OGT Parties" and alleged "Co-Conspirators" (both of which terms are

defined to include Pollock) of alleged conduct that *culminated in* Debtor's <u>July</u> 12, 2019

bankruptcy filing in Texas – in other words, *before* Pollock was ever engaged.

---

[4] During a status conference on April 28, 2026, Bowen consented on the record to receive service of Pollock's contemplated notice of cross-motion by email. Pollock also sent a courtesy copy to Bowen via FedEx.

[5] Pollock reminded Herschmann of this in a recent email, on April 24, 2026, copying Bowen, in response to Herschmann's specific question: "When did you first get retained?" (Pollock Decl. ¶ 33.)

The Notice further identified the following examples of allegations against Pollock, excerpted from Bowen's Sanctions Motion, as clearly "having no evidentiary support" as to Pollock:

- "The Co-Conspirators' initial demand might have been based on … their belief that it would be easier to initially extort Herschmann to pay a $3 million demand rather than a $10 million demand. In any event, shortly after Orly filed for bankruptcy, the Co-Conspirators increased their demand to more than $20 million dollars…."

- "Parnes and Dellaportas Submit 'Forged' Evidence to This Court[:] The Co-Conspirators, it is clear, advanced their fraud-on-the-court Nuclear Option through fabricated evidence as well."

- "Co-Conspirators planned and carried out a scheme, which they called the 'Nuclear Option.' Pursuant to that scheme, they generated crushing debt obligations against Sagi's sister, Orly Genger, they knew she could not pay, forced her into bankruptcy, and used the bankruptcy proceeding and this Court for improper purposes—namely, to try to coerce Orly into abandoning her meritorious lawsuit against Sagi and to extort her spouse, Eric Herschmann, whom they called Orly's 'billionaire husband/lawyer,' into paying the Co-Conspirators tens of millions of dollars."

- "When it became clear that, as a result of the Co-Conspirators' own efforts, Orly was left with no 'liquidity personally,' and that therefore her bankruptcy would not produce any recovery for them, they decided to try to coerce Herschmann because, as co-conspirator Robin Rodriguez, Sagi's longtime 'very close' friend and business associate, put it, Herschmann 'would not want' his finances exposed in his wife's bankruptcy proceeding."

- "The OGT Parties— which include the trustee of Orly's own trust— joined in the Sagi Parties' original motion to dismiss Orly's bankruptcy."

- "As the Co-Conspirators admitted in writing, Sagi used a test case demand in 2014 to confirm that this scheme would work before executing the plan in full."

(Notice at 2-3.)

Whatever the merits of those allegations against others, Pollock had nothing to do with any of them. Pollock had no relationship with any of the named parties, had not been retained in the bankruptcy action, and had no involvement in Orly's bankruptcy filing or the events preceding it. And there has never been any allegation that Pollock had anything to do with the

17

allegations with respect to Messrs. Dellaportas and Parnes propounding allegedly "fabricated evidence." Thus, Debtor's persistence in alleging that Pollock sought to "extort Herschmann" or "fabricated evidence" is a textbook violation of Rule 9011(b)(3). Moreover, Bowen, who has been engaged longer than Pollock has on this matter, certainly is well aware of the lack of factual basis for each and every one of these allegations, which do not bear repeating here. Yet upon receiving the Notice of Motion evidencing Pollock's intent to cross-claim for sanctions, Bowen did not withdraw the offensive Sanctions Motion; indeed, <u>he did not respond at all</u>.

Consequently, it could not be clearer that Bowen's filings have been meant to tarnish Pollock's reputation with this Court and to attempt to sway this Court's determination of substantive issues. They are not made in good faith, and forcing Pollock to respond to them is a textbook violation of Bankruptcy Rule 9011.

## CONCLUSION

For the reasons stated herein, Adam Pollock respectfully requests that this Court deny the Sanctions Motion filed by Debtor on April 26, 2026. Pollock further requests that this Court impose upon Michael Bowen, Esq. and Herschmann Benson Bowen LLP, Debtor's counsel, such sanctions as this Court deems fit and proper under Bankruptcy Rule 9011, including but not limited to an order directing the payment of Pollock's legal fees expended in contesting the Sanctions Motion.

Dated:  New York, New York
      July 3, 2026

LAW OFFICE OF DANIEL F. WACHTELL

_____
    Daniel F. Wachtell
90 Broad Street, 23rd Floor
New York, New York 10017
917-667-6954
dan@danwachtell.com

*Attorneys for Adam L. Pollock, Esq.*

18