UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* ORLY GENGER, | Chapter 7 |
| Debtor. | Bankr. No. 19-13895 (JLG) |

**MICHAEL OLDNER'S OPPOSITION TO DEBTOR ORLY GENGER'S
MOTION FOR SANCTIONS [ECF NOS. 771, 776]**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................I

TABLE OF AUTHORITIES .................................................................................................II

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

I.      HISTORY OF THE GENGER LITIGATION BEFORE OLDER BECOMES
        TRUSTEE.................................................................................................................. 2

II.     OLDNER'S ACTIONS AS TRUSTEE.................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.      THE MOTION DOES NOT SEEK RELIEF AGAINST OLDNER PERSONALLY,
        AND NONE OF THE ALLEGEDLY SANCTIONABLE CONDUCT WAS HIS........... 5

II.     OLDNER HAS NOT PARTICIPATED IN A "FRAUD ON THE COURT" ................... 7

        A.      Pursuit of a Meritorious Claim is Neither An "Improper Purpose" Nor a Fraud on
                the Court.........................................................................................................9

        B.      The Trust's Adversary Proceeding is a Colorable Effort to Preserve Its Claim to
                the 2013 Settlement Proceeds ................................................................. 11

        C.      The Trust's Adversary Proceeding Is Neither An "Improper Purpose" Nor A
                Fraud On the Court ................................................................................. 13

III.    DEBTOR'S DISCOVERY SANCTIONS THEORY FAILS BECAUSE NO ORDER
        TO PRODUCE DOCUMENTS WAS EVER SOUGHT OR ENTERED ...................... 15

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bullock v. BankChampaign, N.A.*,
569 U.S. 267 (2013)................................................................................................ 12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).................................................................................................... 9

*Chisolm Co. v. Janowitz*,
166 B.R. 706 (D. Colo. 1994).................................................................................... 6

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991).............................................................................. 15, 16

*Eastern Financing Corp. v. JSC Alchevsk Iron and Steel Works*
258 F.R.D. 76 (S.D.N.Y. 2008)............................................................................... 10

*Genger v. Genger*,
76 F. Supp. 3d 488 (S.D.N.Y. 2015)................................................................. passim

*Genger v. Genger*,
2018 WL 3632521 (S.D.N.Y. July 27, 2018) ........................................... 1, 2, 3, 10

*Genger v. Genger*
663 F. App'x. 44 (2d Cir. 2016) ............................................................................... 3

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988)..................................................................................... 17

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995)................................................................................... 7, 8

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*
322 U.S. 238 (1944) .................................................................................................. 8

*In re Briarpatch Film Corp.*,
2003 WL 23967010 (Bankr. S.D.N.Y. July 25, 2003) ............................................. 5

*In re Feldman*,
597 B.R. 448 (Bankr. E.D.N.Y. 2019)..................................................................... 15

*In re Food Mgmt. Grp.*,
380 B.R. 677 (Bankr. S.D.N.Y. 2008)..................................................................... 10

ii

*In re Genger*,
No. 19-13895 (JLG), 2024 WL 4355593 (Bankr. S.D.N.Y. Sept. 30, 2024) ........................... 14

*In re Genger,*
No. 19-13895 (JLG), 2025 Bankr. LEXIS 1478 (Bankr. S.D.N.Y. June 20, 2025) .................14

*In re Grabis*,
No. 13-10669-JLG, 2020 WL 7346467 (Bankr. S.D.N.Y. Dec. 11, 2020) ........................... 7, 8

*In re Old Carco LLC*,
423 B.R. 40 (Bankr. S.D.N.Y. 2010) ................................................................................. 8, 10

*King v. First Am. Investigations, Inc.*,
287 F.3d 91 (2d Cir. 2002) ........................................................................... 7, 8, 9, 14

*Kupferman v. Consol. Research & Mfg. Corp.*,
459 F.2d 1072 (2d Cir. 1972) ................................................................................... 9

*Leventhal v. New Valley Corp.*,
148 F.R.D. 109 (S.D.N.Y. 1993) ................................................................................ 5

*Mirarchi v. Nofer (In re Nofer)*,
514 B.R. 346 (Bankr. E.D.N.Y. 2014) .................................................................... 12

*Mokhiber v. Cohn*,
783 F.2d 26 (2d Cir. 1986) ...................................................................................... 12

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986) ............................................................................ 9, 11

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999) ........................................................... 9, 11, 13, 14

*Torres v. Univ. Music Grp. N.V.*,
No. 24-cv-5323, 2025 WL 2710114 (S.D.N.Y. Sept. 23, 2025) ................................ 8

*Wolters Kluwer Fin. Servs. v. Scivantage*,
564 F.3d 110 (2d Cir. 2009) ............................................................................. 9, 11

**Statutes**

11 U.S.C. § 523(a)(4) ...................................................................... 1, 12, 13, 14

28 U.S.C. § 1927 .................................................................................. 2, 9, 11

**<u>Rules</u>**

Fed. R. Bankr. P. 4007(a) ................................................................................................ 12

Fed. R. Bankr. P. 7001(6) ................................................................................................ 12

Fed. R. Bankr. P. 7037 ..................................................................................................... 15

Fed. R. Bankr. P. 9014(c) ................................................................................................ 15

Fed. R. Civ. P. 37 ....................................................................................................... 15, 16

Fed. R. Civ. P. 37(a) ........................................................................................................ 16

Fed. R. Civ. P. 37(b)(2) .................................................................................................... 15

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................................. 16

Michael Oldner respectfully submits this Memorandum of Law in Opposition to Debtor Orly Genger's Motion for Sanctions (the "Motion"). ECF Nos. 771, 776.

## PRELIMINARY STATEMENT

Debtor's Motion is a sanctions motion in name only. It is a sprawling effort to recast every adverse claim asserted during this long-running family dispute as part of a single criminal conspiracy—and then asks this Court to impose the law's harshest sanctions as collective punishment on Michael Oldner, trustee of the Orly Genger 1993 Trust (the "Trust"), personally, and on everyone else she places beneath the label "Co-Conspirators." Yet in more than fifty pages, it never identifies the rule that authorizes such relief, the statement before this Court that was false, or any act by Mr. Oldner beyond the open pursuit of a legitimate claim.

What the Motion calls a "fraud on the court" is the ordinary work of the adversary system. Debtor has litigated the enforceability of her obligation to indemnify her brother for payments made to their mother under a series of agreements tied to a 2004 divorce several times and has lost each time. *See Genger v. Genger*, 76 F. Supp. 3d 488 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x. 44 (2d Cir. 2016) (affirming holding that Debtor's indemnification obligation was valid and enforceable and requiring Debtor to pay Sagi Genger $100,000); *Genger v. Genger*, 2018 WL 3632521 (S.D.N.Y. July 27, 2018), *aff'd*, 771 F. App'x 99, 101 (2d Cir. 2019) (Debtor had "unambiguous obligation" to indemnify Sagi for $3 million). Debtor's bankruptcy—the collateral consequence of litigating a meritorious claim—cannot provide the basis for a "fraud on the court."

Nor did the Trust step outside of what the Bankruptcy Code provides when it filed an adversary complaint under 11 U.S.C. § 523(a)(4) to preserve its claim to the $32.3 million in settlement proceeds that the Debtor—acting as the Trust's fiduciary—monetized and then diverted away from it. That claim has been litigated in the open for years, and this Court has already recognized that the recovery "represents assets belonging to the Orly Trust, not to the Debtor."

1

ECF No. 755 at 26. Recovering what this Court has said belongs to the Trust is no fraud; it is why the nondischargeability remedy exists.

The Motion's theories each fail, as shown below. The Trust's adversary proceeding is a colorable, openly litigated claim—not an intentional deception proven by clear and convincing evidence that fraud on the court requires. The purported "failure to produce documents" rests on no court order and no motion to compel. And the fabricated-evidence allegations target other parties, not Mr. Oldner. Nothing was concealed; 28 U.S.C. § 1927 does not reach a party; and the Motion identifies no false statement Mr. Oldner made to this Court—because there is none. It should be denied.

## STATEMENT OF FACTS

As Debtor's Motion implicitly concedes, the vast majority of the purportedly sanctionable conduct occurred years before Oldner was named Trustee or did not involve him in any way. *See* Mot. at 9–20, 26–28. The few allegations directed at Oldner specifically reflect nothing more than a fiduciary acting in the best interest of the Trust and a run-of-the-mill discovery dispute.

## I.    HISTORY OF THE GENGER LITIGATION BEFORE OLDER BECOMES TRUSTEE

In 2004, as part of Arie and Dalia Genger's divorce, Dalia agreed to convey 794.40 shares of TRI to trusts benefiting Sagi and the Debtor, respectively, in exchange for Sagi's agreement to pay Dalia financial support up to the value of the TRI stock conveyed. *See Genger*, 2018 WL 3632521 at *1. The agreement gives Dalia "sole and absolute discretion" to demand funds from Sagi. *Id.* In connection with that arrangement, Debtor promised to indemnify Sagi for half of "all payments [and] liabilities" arising from Sagi's promise to pay Dalia. *Id.*

Contrary to the framing in the Motion, the purported "nuclear option" consists of a series of demands and payments made pursuant to the Genger 2004 divorce settlement agreements that

2

have all been litigated and upheld as valid. In 2014, Dalia demanded $200,000 from Sagi under the 2004 divorce agreements. Sagi paid the $200,000 request and sought to obtain $100,000 from Debtor under the indemnity agreement. *See Genger*, 2018 WL 3632521 at *2. A federal court held that Sagi's promise to Dalia and Debtor's promise to indemnify Sagi constituted a single integrated agreement that was valid and enforceable. *Genger*, 76 F. Supp. 3d at 493. The Second Circuit affirmed, forcing Debtor to reimburse Sagi half of what he had paid Dalia. *Genger*, 663 F. App'x. 44 (2d Cir. 2016).

In 2017, Dalia demanded an additional $6 million from Sagi. *See Genger*, 2018 WL 3632521, at *2. Sagi refused, citing Debtor's unwillingness to honor her indemnification obligation, and arguing it would be inequitable for him to pay the full $6 million to Dalia without Debtor's reimbursement. *Id*. Dalia then sued Sagi for breach of contract, and Sagi filed a third-party complaint against Debtor. *Id.* Although the Motion describes these events as "escalating demands" proving sanctionable misconduct, Mot. at 18, Judge Forrest thought differently, finding "there is simply no question as to Orly's liability," that Orly was "seeking to relitigate issues already conclusively decided," and "the plain language of the 2004 Integrated Agreement makes clear that Orly is obligated to indemnify Sagi for half of Dalia's demand." *Genger*, 2018 WL 3632521, at *7–8. The Second Circuit affirmed based on Debtor's "unambiguous obligation" to indemnify Sagi. *See Genger v. Genger*, 771 F. App'x 99, 101 (2d Cir. 2019).

## II.   OLDNER'S ACTIONS AS TRUSTEE

When Oldner stepped into the role of trustee in June 2019, the Trust had millions of dollars in liabilities, no cash with which to pay them, and a single asset of substantial value: its claim to the $32.3 million settlement Debtor had improperly diverted from the Trust in 2013. *See* Mot. at 13–14; *see Genger*, 76 F. Supp. 3d at 493–94 (describing Debtor's settlement of New York state court lawsuit where she recovered $32.3 million suing derivatively on behalf of the Trust). Faced

3

with that difficult situation, Oldner took steps to attempt to recover the $32.3 million settlement on behalf of the Trust. None of his actions—all of which have been previously disclosed to this court—constitute a fraud on the court.

For example, Oldner executed the Inter-Creditor Agreement (the "ICA") on behalf of the Trust, which aligns various creditors holding claims to the $32.3 million settlement that Debtor improperly diverted from the Trust and allocates the proceeds of any litigation recovery among those creditors. *See* ECF No. 771-22. Indeed, the same facts that Debtor casts as a nefarious scheme supporting sanctions have been described by this Court as a legitimate litigation strategy advanced by parties with a shared legal interest:

> "The members of the creditor group take the position that the 32.3 million dollars belongs to the debtor. They each argue a distinct view as to in what capacity Orly holds the funds or the rights to those funds, that is a personal capacity as a quasi-fiduciary to the Orly Trust or in part as construct[ive] trust[] for Dalia. Those distinct arguments are each based on a good faith interpretation of the facts which is why they contend that the compromises between the parties have ensued in the form of the written agreement as to how to treat the recovered assets. The Court credits that argument and finds that through the intercreditor agreement, the creditor group parties share a common legal interest in seeing recovery of the 32.3 million dollars."[1]

After executing the ICA, and in pursuit of the $32.3 million to which the Trust is entitled, Oldner filed an adversary proceeding alleging that a single, specific debt arising from Debtor's diversion of the 2013 settlement proceeds is nondischargeable. *See In re Genger*, Adv. Pro. No. 19-01447-jlg, ECF No. 1.

## ARGUMENT

Debtor's Motion raises two distinct arguments in support of her request for sanctions and other relief against Oldner: (1) Oldner is participating in a fraud on the court through his role

---

[1] Hr'g Tr. 49:4–17, Feb. 24, 2021, *In re Orly Genger*, No. 19-13895 (JLG), Dkt. No. 373-1 (Bankr. S.D.N.Y.)

4

"forcing Orly to file for bankruptcy for improper reasons" and continuing to litigate the "bad-faith" adversary proceeding, Mot. at 29–34; and (2) Oldner failed to produce documents in this bankruptcy proceeding that Debtor believes he should have produced, Mot. at 34–36. Because Debtor's other sanctions theories—such as the "fabrication" of evidence—do not concern Oldner, they are not addressed here.[2] As a threshold matter, the Motion's own requested relief and the conduct it identifies confirm that virtually none of it is directed at Mr. Oldner personally.

## I.   THE MOTION DOES NOT SEEK RELIEF AGAINST OLDNER PERSONALLY, AND NONE OF THE ALLEGEDLY SANCTIONABLE CONDUCT WAS HIS

The Motion's demand that Oldner be sanctioned fails on its own terms, because every action it identifies as sanctionable or fraudulent was taken by either the Trust or REI, not by Oldner in his individual capacity. The adversary proceeding was brought by "Michael Oldner, as Trustee of The Orly Genger 1993 Trust," through counsel, in a representative capacity. The Inter-Creditor Agreement was executed on behalf of the Trust. The discovery responses were served on behalf of the Trust and Oldner in his capacity as Trustee. And the various litigation decisions the Motion characterizes as part of a coordinated scheme were made by the Trust and REI through their respective counsel—not by Oldner personally. None of the actions the Motion identifies were taken by Oldner in his personal capacity. *See, e.g., In re Briarpatch Film Corp.*, 2003 WL 23967010 (Bankr. S.D.N.Y. July 25, 2003) ("Movants cite no authority for the proposition that sanctions can be imposed on a corporate officer as the alleged 'alter ego' of the corporation."); *Leventhal v. New Valley Corp.*, 148 F.R.D. 109, 112 (S.D.N.Y. 1993) ("Walters was an affiant-witness, who happened also to be an attorney. His corporate office is sufficient to visit liability for sanctions upon New Valley, if Walters' conduct upon behalf of that party was in fact sanctionable; but there

---

[2] To the extent applicable, Oldner joins and adopts the arguments set forth in the memoranda of law opposing Debtor's Motion filed by the other responding parties.

5

is no basis in the Rule for sanctioning Walters himself."); *Chisolm Co. v. Janowitz*, 166 B.R. 706, 715 (D. Colo. 1994) ("the bankruptcy court erred as a matter of law in sanctioning Bamford under Rule 9011 because he did not sign the pleadings in his individual capacity").

The Motion's prayer for relief confirms the point. Of the eight categories of relief Debtor requests (Mot. at 7), the vast majority do not seek any relief against Oldner at all: *See* Dkt. No. 776 at 7.

Item 1 seeks equitable subordination of claims—but Oldner does not personally hold an equitable subordination claim. *Id.* That relief runs against the Trust.

Item 2 seeks dismissal of the adversary proceeding (*id.*)—but that proceeding was brought by and belongs to the Trust, not to Oldner individually.

Item 3 seeks a finding of fraud on the court (*id.*), which is the only theory arguably directed at Oldner—and which fails on the merits as shown below.

Item 4 seeks sanctions for failure to comply with document subpoenas (*id.*)—but the Motion does not request any relief against Oldner personally for subpoena noncompliance.

Items 5, 6, and 7 concern the alleged falsification of documents (*id.*)—conduct in which Oldner has no alleged involvement whatsoever.

Item 8 seeks attorneys' fees as a derivative remedy that depends entirely on the success of the foregoing requests. *Id.*

In short, when examining what it is the Motion actually asks the Court to do, virtually none of it is directed at Oldner personally. Only Item 3 even arguably targets him—and it fails for the reasons set forth below.

6

The point is underscored by the procedural history of the Motion itself. Debtor originally sought sanctions against REI as well, but subsequently withdrew her motion as to that entity.[3] Having voluntarily dismissed her sanctions claims against REI—the entity that actually took many of the actions she now characterizes as sanctionable—Debtor cannot repackage those same actions as the basis for personal sanctions against Oldner. If the conduct of REI does not warrant sanctions against REI in Debtor's own estimation, it certainly cannot warrant sanctions against Oldner, who acted only in a representative capacity on behalf of a different entity—the Trust.

None of the actions the Motion identifies were taken by Oldner in his personal capacity. The Trust's adversary proceeding is a legitimate exercise of a creditor's statutory right, litigated in the open and grounded in findings this Court has already made. And Debtor's own decision to withdraw her sanctions motion against REI forecloses any effort to hold Oldner personally responsible for that entity's conduct. The Motion's request to sanction Oldner should be denied.

## II.   OLDNER HAS NOT PARTICIPATED IN A "FRAUD ON THE COURT"

At the outset, "fraud upon the court" is a deliberately narrow doctrine that is confined to misconduct that "seriously affects the integrity of the normal process of adjudication" and prevents the judicial machinery from performing its ordinary, impartial function. *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995). The essence of the doctrine is "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *In re*

---

[3] Debtor has also filed a Verified Petition in New York state court seeking to remove Oldner as trustee based on the same unsupported claims raised in the Motion. *See Genger v. Oldner*, Case No. 156331/2026 (Sup. Ct. N.Y. Cnty.). In that action, the court granted an *ex parte* temporary restraining order preventing Oldner from acting on behalf of the Trust in any capacity without prior court approval. It was only at that point, when Oldner was effectively restrained from responding to the Motion on behalf of REI, that Debtor sought to avoid delaying briefing by voluntarily dismissing her sanctions claims against REI.

*Grabis*, No. 13-10669-JLG, 2020 WL 7346467, at *7 (Bankr. S.D.N.Y. Dec. 11, 2020); *see id.* (fraud on the court "encompasses conduct that prevents the court from fulfilling its duty of impartially deciding cases"). The burden is exacting, and the fraud must be proven by clear and convincing evidence. *King*, 287 F.3d at 95. A party does not commit fraud on the court merely by disputing an opponent's version of the law or facts; that is "exactly what is expected in the normal adversary process." *Hadges*, 48 F.3d at 1325; *see also In re Old Carco LLC*, 423 B.R. 40, 53 (Bankr. S.D.N.Y. 2010) (issues that "may have been addressed through the unimpeded adversary process are not appropriately attacked on the basis of fraud upon the court"). Instead, this "heightened standard" is only met by "the most egregious misconduct directed to the court itself, such as bribery of a judge or jury, or fabrication of evidence by counsel." *In re Old Carco LLC*, 423 B.R. at 54.

The cases Debtor invokes illustrate how far the allegations against Oldner fall below that standard. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, a patent-holder and its attorneys secretly authored an ostensibly independent trade-journal article, had it published under another person's name, and then used that manufactured evidence to persuade the court of appeals to sustain a patent. 322 U.S. 238, 240–46 (1944). *Torres* likewise confirms that the severe sanctions the Motion seeks are reserved for cases involving "prolonged and repetitive campaigns of egregious conduct designed to prevent the factfinder from discovering the untruthfulness of [the] claims," and for fabricated evidence "central" to a party's case. *Torres v. Univ. Music Grp. N.V.*, No. 24-cv-5323, 2025 WL 2710114, at *6 (S.D.N.Y. Sept. 23, 2025). Where those features are absent, *Torres* counsels against the drastic relief the Motion demands. *Id.* And in *King*, the Second Circuit rejected the very theory the Motion now advances, and held that where the complaining party "did no more than complain that the [opponents] disputed his version of the law and facts,"

8

he alleged no fraud at all, because "[t]his type of dispute is exactly what is expected in the normal adversary process." *King*, 287 F.3d at 95.

To the extent the Motion seeks sanctions under the Court's broader inherent power, the standard is more demanding still and the same deficiency exists. Such sanctions "must be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), and in this Circuit may be imposed only on "clear and convincing evidence" that the challenged claim "[is] entirely without color" *and* that it was pursued "in bad faith"—a conjunctive test under which "neither meritlessness alone [n]or improper purpose alone" will suffice. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999); *see also Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir. 2009) (inherent power sanctions require "clear evidence" that the specific conduct was both "entirely without color" and undertaken for an improper purpose, supported by factual findings of a "high degree of specificity"). A claim is colorable whenever it has some factual and legal support; and because "bad faith is personal," it "may not automatically be visited on others." *Wolters Kluwer*, 564 F.3d at 114.

Debtor therefore cannot establish Mr. Oldner's personal bad faith by defining him into an alleged conspiracy and then relying principally upon statements made by Rodriguez, Sagi, or their attorneys. And 28 U.S.C. § 1927, which the Motion cites only in passing, authorizes sanctions "only against attorneys," not against a party such as Oldner. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Oldner's alleged actions satisfy none of these standards.

A.      **Pursuit of a Meritorious Claim is Neither An "Improper Purpose" Nor a Fraud on the Court**

The core requirement of fraud on the court is that the conduct "defile the court itself," not merely harm an opposing party by asserting a valid claim. *See Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). Presenting a valid claim to a court—that is

9

ultimately determined to be meritorious—cannot and is not conduct that rises to the level of defiling a court's ability to oversee the adversarial process simply because it creates economic pressure or forces a litigant into bankruptcy. The very legal actions the Motion claims constitute an "improper purpose" were in fact found to be meritorious claims asserted against Debtor. *See Genger*, 76 F. Supp. 3d 488, *aff'd*, 663 F. App'x. 44 (2d Cir. 2016); *Genger*, 2018 WL 3632521, *aff'd*, 771 F. App'x 99, 101 (2d Cir. 2019). The "newly produced documents" Debtor relies on as "damning" evidence of a fraud on the court do nothing to change this reality. Mot. at 7–9, 30–31. Nothing in any of the documents cited even addresses conduct directed *at this Court*.

Conduct courts find to constitute fraud on the court are of an entirely different character than Debtor's claims here. For example, in *Eastern Financing Corp. v. JSC Alchevsk Iron and Steel Works*, the court determined that an attorney's knowing sponsorship of his client's misrepresentation and perjury rose to the level of fraud on the court because it was intended to deceive the court. 258 F.R.D. 76, 88 (S.D.N.Y. 2008). Similarly, the bankruptcy court has held that the failure of debtor's counsel to disclose material facts to the court regarding the process and outcome of an asset sale can constitute fraud on the court. *See In re Food Mgmt. Grp.*, 380 B.R. 677, 715 (Bankr. S.D.N.Y. 2008). And the paradigmatic examples of fraud on the court involve "bribery of a judge or jury" and "fabrication of evidence by counsel." *In re Old Carco, LLC*, 423 B.R. at 54. Even taking Debtor's characterization of the events precipitating Debtor's bankruptcy filing at face value, there is simply no basis in the law to find that parties who brought meritorious claims in federal court, won on those claims, and then sought to collect the judgments awarded are somehow perpetrating a fraud on this bankruptcy Court.

The argument that Oldner is personally responsible for a fraud on the court by engineering Debtor's bankruptcy filing fails for the additional and obvious reason that Oldner was not involved

10

in any of the actions that Debtor claims support her requested relief. The "newly produced documents" underpinning her argument do not show Oldner's involvement in the alleged "nuclear option" at all. The specific emails Debtor cites, *see* Mot. at 33 (describing how Oldner participated in a "scheme" to "deliberately [drive] Orly into bankruptcy"), were sent years before Oldner's appointment as trustee, do not include Oldner as a recipient, and do not mention Oldner at all. *See* ECF Nos. 771-2, 771-6. The legal claims that allegedly "executed" the "scheme" were all adjudicated between 2014 and 2018—again predating Oldner's involvement by years. And, of course, Debtor filed this bankruptcy proceeding less than one month after Oldner was named trustee in June 2019. Mot. at 20, 22. Debtor does not and cannot explain how Oldner personally is responsible for engineering her bankruptcy when he was not involved in any of the events she claims led to her filing.

Further, Section 1927 authorizes sanctions "only against attorneys," not parties. *Oliveri*, 803 F.2d at 1273. And an inherent-power sanction against Mr. Oldner personally would require "clear and convincing evidence," *Schlaifer Nance*, 194 F.3d at 336, that he himself made a knowing misrepresentation to this Court—a specific finding of personal bad faith that the Motion does not, and cannot, support. Because "bad faith is personal," it "may not automatically be visited on others." *Wolters Kluwer*, 564 F.3d at 114 (2d Cir. 2009). The Motion identifies no false statement Oldner made to this Court in any proceeding. Disagreement with the Trust's legal position is not a fraud committed by its trustee.

> ## B.    The Trust's Adversary Proceeding is a Colorable Effort to Preserve Its Claim to the 2013 Settlement Proceeds

The Motion repeatedly conflates three distinct applications to the Court: Sagi's amended motion to dismiss Debtor's entire bankruptcy as a bad-faith filing; the Trust's separate claim to the 2013 Settlement Proceeds; and the Trust's Adversary Proceeding seeking nondischargeability of a

11

specific debt. The Motion concedes that the Trust did not join Sagi's amended motion to dismiss, yet it immediately asserts that the Trust has continued a "bad-faith adversary proceeding" supposedly "objecting to [Orly's] discharge." Mot. at 33. That characterization is inaccurate.

A creditor who contends that a debtor's obligation is nondischargeable does not petition the Court for special dispensation; it files an adversary complaint. The Bankruptcy Rules expressly provide as much: a proceeding "to determine the dischargeability of a particular debt" is an adversary proceeding, Fed. R. Bankr. P. 7001(6), and "[a] debtor or any creditor may file a complaint" to obtain that determination, Fed. R. Bankr. P. 4007(a).

That is exactly, and only, what the Trust did. Adversary Proceeding No. 19-01447 does not seek denial of Debtor's general discharge and does not allege that she filed bankruptcy in bad faith. It asserts a single cause of action under 11 U.S.C. § 523(a)(4): that a specific debt arising from Debtor's alleged diversion of the 2013 Settlement Proceeds while acting in a fiduciary capacity is nondischargeable. That is a textbook § 523(a)(4) claim. To state it, the Trust need allege only "(i) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (ii) a defalcation committed by the debtor in the course of that relationship." *Mirarchi v. Nofer (In re Nofer)*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014); *see Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013) (defalcation under § 523(a)(4) requires a culpable state of mind).

Both elements are present, and each rests on facts already established of record. Debtor prosecuted the 2010 Action derivatively on behalf of the Trust, and a derivative plaintiff owes fiduciary duties to the entity on whose behalf she sues. *Mokhiber v. Cohn*, 783 F.2d 26, 29 (2d Cir. 1986). Acting in that fiduciary capacity, she "monetized her beneficial interest in the Orly Trust shares for $32.3 million" in the June 2013 Settlement, *Genger*, 76 F. Supp. 3d at 501, *aff'd*, 663 F. App'x 44 (2d Cir. 2016)—and then directed those proceeds away from the Trust, to her own

12

lawyer and to an unrelated litigation trust, and used them to collateralize debts that were not the Trust's, leaving the Trust with nothing.

Whether Debtor's conduct satisfies every element of § 523(a)(4) remains a merits question. But filing the procedurally prescribed complaint to preserve a disputed Trust claim—particularly one supported by pleaded facts, governing authority, and a longstanding controversy over the ownership of the same identifiable settlement proceeds—cannot itself constitute fraud on the court absent proof that the claim was knowingly false or supported through deception. The supposed "new" evidence does not change the pleaded facts or reveal any deception in the Adversary Proceeding. The Trust has always openly asserted that the settlement resolved claims prosecuted derivatively for the Trust, that the proceeds were diverted elsewhere, and that the Trust was entitled to recover them. Debtor has always disputed those propositions and remained free to challenge standing, fiduciary status, ownership, scienter, and dischargeability. The "new" documents at most provide Debtor with an additional argument concerning the motives she attributes to certain creditors. They do not identify a false allegation in the complaint or show that Oldner interfered with the Court's ability to adjudicate the claim. Under *King*, that is an ordinary adversarial dispute, not fraud on the court.

### C.      The Trust's Adversary Proceeding Is Neither An "Improper Purpose" Nor A Fraud On the Court

Stripped of its rhetoric, the Motion's theory reduces to the proposition that the Trust litigated its § 523(a)(4) action for the improper purpose of preventing the discharge of Orly's debt to it. But seeking to prevail on a claim the law provides is not an improper purpose. "Improper purpose" in the context of a sanctions motion means harassment, delay, or the pursuit of some collateral objective divorced from the merits, *see Schlaifer Nance*, 194 F.3d at 337; it does not encompass a creditor's efforts to obtain the very relief the Bankruptcy Code affords. The Trust

13

seeks a ruling that its debt is nondischargeable—precisely the relief § 523 promises a creditor who proves defalcation. Seeking such relief cannot be sanctionable.

Nor can the Trust's claim be deemed "entirely without color"—the independent, conjunctive requirement for any inherent-power sanction. *Schlaifer Nance*, 194 F.3d at 336. To the contrary, the factual predicates of the claim have already been established by the findings of this Court and others. This Court has recognized that "[t]here is no dispute that Orly never directly owned shares of TRI." *In re Genger*, No. 19-13895 (JLG), 2025 Bankr. LEXIS 1478, at *7 (Bankr. S.D.N.Y. June 20, 2025). The District Court found that Orly "monetized her beneficial interest in the Orly Trust shares for $32.3 million." *Genger*, 76 F. Supp. 3d at 501. And this Court has held that a derivative plaintiff "is not entitled to retain the direct benefits of h[er] derivative action," because she "sues only nominally in h[er] own name, but actually on behalf of the entity" she represents. *In re Genger*, No. 19-13895 (JLG), 2024 WL 4355593, at *10 (Bankr. S.D.N.Y. Sept. 30, 2024) (quotation omitted). A claim built on findings this Court itself has made is the antithesis of one "entirely without color."

Whether the Trust ultimately prevails on its § 523(a)(4) theory is a question to be decided on the merits—not a basis for sanctions, and certainly not evidence of fraud. The remedy for a claim a party believes meritless is to litigate and defeat it, or to move to dismiss it; it is not to recast the opponent's advocacy as a crime against the Court. *See King*, 287 F.3d at 95. The Motion's suggestion that the Trust's litigation "drove" Orly toward bankruptcy or created settlement pressure changes nothing. A creditor is entitled to press a bona fide claim even though litigation burdens the debtor and even though it may create leverage toward settlement; that is true of every meritorious claim. The Code channels exactly this dispute—whether Orly's debt to the Trust

14

survives her discharge—into the adversary proceeding the Trust filed. Using the process for its intended purpose is not an abuse of it.

### III.   DEBTOR'S DISCOVERY SANCTIONS THEORY FAILS BECAUSE NO ORDER TO PRODUCE DOCUMENTS WAS EVER SOUGHT OR ENTERED

The Motion's request for sanctions for a supposed "failure to produce documents" likewise fails as a threshold matter because it identifies no discovery obligation that Oldner violated. It asserts that broad categories in subpoenas and requests sent in 2020 encompassed documents that REI and MSM then produced in a separate action in 2026. Mot. at 25–28. To the extent the request rests on Rule 37 (applied here through Fed. R. Bankr. P. 7037 and 9014(c)), it requires a court order the movant never obtained. Rule 37(b) authorizes sanctions only against a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37; *see Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) ("[T]here must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)."). Even the Motion's own authority frames sanctions as the remedy for a "failure to comply with a court order." *In re Feldman*, 597 B.R. 448, 463 (Bankr. E.D.N.Y. 2019).

The Motion's own prayer for relief underscores the absence of any viable sanctions theory against Oldner on this issue. Item 4 of the Motion's eight-item request (Mot. at 7) seeks sanctions for failure to comply with document subpoenas—but does not seek that relief against Oldner personally. The Motion thus implicitly concedes that whatever discovery dispute may exist does not implicate Oldner individually.

The subpoenas on which the Motion relies suffer from additional threshold defects. The proof-of-service pages attached to the versions Debtor filed with the Court are blank—meaning there is no evidence that the subpoenas were ever actually served. And most of the subpoenas at issue were not even issued by Debtor. The Motion cannot establish a discovery violation against

15

Oldner based on subpoenas that were never properly served and that were not issued at Debtor's behest.

But Oldner did not wholly fail to respond: he served written objections to the requests and agreed, at most, to produce responsive documents from 2016 forward. That date cutoff was not selected randomly; January 1, 2016 was the time limitation imposed by the bankruptcy Trustee's document subpoena. *See* Ex. 1 at 5; *see also* Ex. 4 at 3 (stating that responses to document requests would "use the time period proposed by the Chapter 7 Trustee (January 1, 2016 to the present)"); Ex. 6 at 3 (same).

Since the document requests directed to Oldner personally were subpoenas, Rule 45 supplied the relevant procedure: after receiving the objections, Debtor was required to move to compel, at which point the Court could determine relevance, scope, burden, and possession, custody, or control. Fed. R. Civ. P. 45(d)(2)(B). She never did so. She filed no motion to compel, obtained no ruling defining what Oldner was required to produce, and secured no order that Oldner later disobeyed. An unchallenged objection is not a discovery violation; the remedy was a motion to compel under Rule 37(a), which no one ever filed. The Motion cannot bypass those steps and leap directly to sanctions—least of all against Oldner personally. Indeed, an unenforced subpoena or document request is not such an order as is needed to justify sanctions under Rule 37. *See Daval Steel Prods.*, 951 F.2d at 1365 (reversing Rule 37 sanctions against a party that was served only subpoenas, with no order to compel).

Finally, there is no concealment or cognizable prejudice. The Court conducted an extensive evidentiary hearing, heard testimony from the principal witnesses, and ultimately denied Sagi's bad-faith motion. Mot. at 27–28. Even an established discovery nondisclosure would not, without evidence that Mr. Oldner intentionally corrupted the adjudicative process, constitute fraud on the

16

court. *Gleason v. Jandrucko*, 860 F.2d 556, 559–60 (2d Cir. 1988). Because Debtor never obtained

an order compelling the disputed production and offers no clear evidence of misconduct personal

to Oldner, her request for sanctions against him should be denied.

## CONCLUSION

For the foregoing reasons, Debtor's motion as to Michael Oldner should be denied.

Dated: New York, New York      Respectfully submitted,
      July 3, 2026

By: */s/ Christman Rice*
Christman Rice
Kevin Wallace
Kelsie A. Docherty
200 Madison Avenue, 23rd Floor
New York, NY 10016
(646) 829-9403
rice@braunhagey.com
kwallace@braunhagey.com
docherty@braunhagey.com

*Counsel for Creditor Michael Oldner*

Meredith Stonitsch
Adam Governale

Of Counsel

17